(Rev. 11/2012)

### PETITION UNDER 28 USC § 2254 FOR WRIT OF
### HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District **EASTERN** |
|---|---|
| Name (under which you were convicted):<br>TUNC URAZ | Docket or Case No.: |
| Place of Confinement: **MDOC THUMB CORRECTIONAL FAC** | Prisoner No.: **114653** |

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody) |
|---|---|
| **TUNC URAZ**                          v. | **FREDEANE ARTIS, WARDEN** |

| The Attorney General of the State of: **MICHIGAN** |
|---|

Case: 4:25-cv-10608
Assigned To : Kumar, Shalina D.
Referral Judge: Grand, David R.
Assign. Date : 3/5/2025
Description: HC TUNC URAZ V
FREDEANE ARTIS (SS)

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

    **INGHAM COUNTY 30TH CIRCUIT COURT**

    **313 W. KALAMAZOO STREET, LANSING, MICHIGAN 48933**

    (b) Criminal docket or case number: **16-001064-FH & 16-001065-FC**

2. Date of judgment of conviction: **JANUARY 24, 2018**

3. Identify all counts and crimes for which you were convicted and sentenced in this case:

    **AGGRAVATED STALKING, MCL § 750.411I(2) - (36M TO 90M); 3 COUNTS OF SOLICITATION TO COMMIT MURDER, MCL § 750.157B(2). (200M TO 360M) CONCURRENT.**

4. Length of sentence for each count or crime for which you were convicted in this case:

    **(36 MONTH TO 90 MONTH) AGGRAVATED STALKING - MCL § 750.411I(2)**
    **(200 MONTH TO 360 MONTH) SOLICITATION TO COMMIT MURDER. - MCL § 750.157B(2)**

5. (a) What was your plea?
    - Not guilty ☒
    - Guilty ☐
    - Nolo contendere (no contest) ☐

POOR QUALITY ORIGINAL

(b)  If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details:

**N/A**

6.  If you went to trial, what kind of trial did you have? (Check one)
   (a)  Jury ☐ **XX**
   (b)  Judge only ☐

7.  Did you testify at the trial?  Yes **X** ☐  No ☐

8.  Did you file a direct appeal to the Michigan Court of Appeals from the judgment of conviction?  Yes **X** ☐  No ☐

9.  If you did appeal, answer the following:

   (a)  Date you filed:  **2/22/2019**

   (b)  Docket or case number:  **343695 & 343696**

   (c)  Result:  **CONVICTIONS AFFIRMED.**

   (d)  Date of result:  **1/19/2023**

   (e)  Grounds raised:  **SEE BRIEF**

   **Please submit, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

   (g)  Did you seek further review of the decision on appeal by the Michigan Supreme Court?  Yes **X** ☐  No ☐

      If yes, answer the following:
      (1)  Date you filed:  **4/14/2023**
      (2)  Docket or case number:  **165560-61**
      (3)  Result:  **CONVICTIONS AFFIRMED**
      (4)  Date of result:  **1/3/2024**

(5)  Grounds raised: _____ SEE BRIEF _____

_____

_____

_____

**Please submit, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(h)  Did you file a petition for certiorari in the United States Supreme Court?  Yes ☐  No ☒

If yes, answer the following:

(1)  Date you filed: _____

(2)  Docket or case number: _____

(3)  Result: _____

(4)  Date of result: _____

(5)  Grounds raised: _____

_____

_____

_____

10.  Did you file a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules with respect to the judgment of conviction and sentence?  Yes ☐  No ☒

11.  If your answer to 10 was "yes," give the following information:

(a)  (1)  Date you filed: _____

(2)  Name of court: _____

(3)  Docket or case number: _____

(4)  Grounds raised: _____

_____

_____

_____

(5)  Did you receive a hearing where evidence was given on your motion?  Yes ☐  No ☐

(6)  Result: _____

(6)  Date of result: _____

**Please submit, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

- 3 -

(b) If you sought further review of the decision in the Michigan Court of Appeals, please answer the following:

    (1) Date you filed: __2/7/2023__

    (2) Docket or case number: __343695-96__

    (3) Result: __AFFIRMED__

    (4) Date of result: __2/22/2023__

    (5) Grounds raised: __MOTION FOR RECONSIDERATION__

**Please submit, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(c) If you sought further review of the decision in the Michigan Supreme Court, please answer the following:

    (1) Date you filed: __4/14/2023__

    (2) Docket or case number: __165560-61__

    (3) Result: __DENIED__

    (4) Date of result: __1/30/2024 - RECONSIDERATION DENIED 4/29/2024__

    (5) Grounds raised: __MOTION FOR RECONSIDERATION__

**Please submit, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

12. Other than a direct appeal or a motion for relief from judgment, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?  Yes ☒ No ☐

13. If your answer to 12 was "yes," give the following information: **[Attach additional sheets of paper, if necessary, to answer the following for each petition, application, or motion you filed.]**

    (a) (1) Date you filed: __3/18/2020__

        (2) Name of court: __30TH CIRCUIT__

        (2) Docket or case number: __16-1064-FH__

        (3) Nature of the proceeding: __GINTHER HEARING__

(4) Grounds raised: __INEFFECTIVE ASSISTANCE OF COUNSEL- MENTAL ILLNESS__
__SEE BRIEF__ _____

_____

_____

(5) Did you receive a hearing where evidence was given on your motion?  Yes ☒  No ☐

(6) Result: __DENIED__ _____

(7) Date of result: __8/8/2022__ _____

**Please submit, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(b) Did you appeal to the highest court having jurisdiction the result of action taken on any petition, application or motion?
Yes ☒ No ☐

If yes, please provide the following:

(1) Date you filed: __4/14/2023__ _____

(2) Name of court: __MICHIGAN SUPREME COURT__ _____

(3) Result: __DENIED__ _____

(4) Date of result and case number: _____

(5) Grounds raised: __INEFFECTIVE ASSISTANCE OF COUNSEL-MENTAL ILLNESS__

_____

_____

_____

**Please submit, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(c) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

14. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** _____

_____

(a) Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.): _____

_____

_____

_____

_____

_____

_____

(b)  **Direct Appeal of Ground One**:

    (1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes □  No □

    (2)  If you did not raise this issue in your direct appeal, explain why: _____

    _____

    _____

(c)  **Post-Conviction Proceedings**:

    (1)  Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?  Yes □  No □

    (2)  If your answer to Question (d)(1) is "Yes," state:

Date motion was filed: _____

Name and location of the court where the motion was filed: _____

_____

Docket or case number: _____

Result (attach a copy of the court's opinion and order, if available): _____

_____

Date of result: _____

    (3)  Did you receive a hearing on your motion?  Yes □  No □

    (4)  Did you appeal from the denial of your motion?  Yes □  No □

    (5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  Yes □  No □

If yes, answer the following:

Date you filed: _____

Name and location of court: _____

Docket or case number: _____

Result (attach a copy of the court's opinion and order, if available) : _____

_____

Date of result: _____

(d) **Other Remedies**: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

(e) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____


**GROUND TWO**: _____

_____

(a) Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim): _____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Two**:

   (1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐  No ☐

   (2)  If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings**:

(1)  Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?  Yes ☐  No ☐

(2)  If your answer to Question (d)(1) is "Yes," state:

Date motion was filed: _____

Name and location of the court where the motion was filed: _____

_____

Docket or case number: _____

Result (attach a copy of the court's opinion and order, if available): _____

_____

Date of result: _____

(3)  Did you receive a hearing on your motion?  Yes ☐  No ☐

(4)  Did you appeal from the denial of your motion?  Yes ☐  No ☐

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  Yes ☐  No ☐

If yes, answer the following:

Date you filed: _____

Name and location of court: _____

Docket or case number: _____

Result (attach a copy of the court's opinion and order, if available) : _____

_____

Date of result: _____

(d)  **Other Remedies**:  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

(e) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim): _____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐  No ☐

    (2)  If you did not raise this issue in your direct appeal, explain why: _____

    _____

    _____

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules?  Yes ☐  No ☐

    (2)  If your answer to Question (d)(1) is "Yes," state:

    Date motion was filed: _____

    Name and location of the court where the motion was filed: _____

    _____

    Docket or case number: _____

    Result (attach a copy of the court's opinion and order, if available): _____

    _____

    Date of result: _____

    (3)  Did you receive a hearing on your motion?  Yes ☐  No ☐

    (4)  Did you appeal from the denial of your motion?  Yes ☐  No ☐

    (5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  Yes ☐  No ☐

If yes, answer the following:

Date you filed: _____

Name and location of court: _____

Docket or case number: _____

Result (attach a copy of the court's opinion and order, if available) : _____

_____

Date of result: _____

(d) **Other Remedies**:  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

(e) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim): _____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Four**:

(1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐  No ☐

(2)  If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings**:

(1) Did you raise this issue in a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules? Yes □ No □

(2) If your answer to Question (d)(1) is "Yes," state:

Date motion was filed: _____

Name and location of the court where the motion was filed: _____

_____

Docket or case number: _____

Result (attach a copy of the court's opinion and order, if available): _____

_____

Date of result: _____

(3) Did you receive a hearing on your motion? Yes □ No □

(4) Did you appeal from the denial of your motion? Yes □ No □

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? Yes □ No □

If yes, answer the following:

Date you filed: _____

Name and location of court: _____

Docket or case number: _____

Result (attach a copy of the court's opinion and order, if available) : _____

_____

Date of result: _____

(d) **Other Remedies**: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

(e) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

15. Have you previously filed any type of petition, application or motion in a federal court regarding the conviction that you challenge in this petition?  Yes ☐  No ☒

   If "Yes," state the date of filing, the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available:

   _____
   _____
   _____
   _____
   _____

16. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, as to the judgment you are challenging?  Yes ☐  No ☒

   If "Yes," state the date of filing, the name and location of the court, the docket or case number, the type of proceeding, and the issues raised:

   _____
   _____
   _____
   _____
   _____

17. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

   (a)  At preliminary hearing:  MICHAEL J. NICHOLS (P59391)

   (b)  At arraignment and plea:  NICHOLS (P59391) & JACOB A. PERRONE (P 71415)

   (c)  At trial:  JACOB A. PARRONE & ERIC SCHROEDER (P79518)

   (d)  At sentencing:  DUANE P. SILVERTHORN (P36964)

   (e)  On appeal:  SUSAN K. WALSH (P40447)

- 12 -

    (f)  In any post-conviction proceeding: _____

_____

    (g)  On appeal from any adverse ruling in a post-conviction proceeding: _____

_____

18.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment you are challenging? Yes ☐  No ☑

    (a)  If so, give the name and location of court which imposed the sentence to be served in the future: _____

_____

    (b)  Give the date the other sentence was imposed: _____

    (c)  Give the length of the above sentence: _____

    (d)  Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? Yes ☐  No ☐

19.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

\*The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was itially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the cla im or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.


Therefore, petitioner asks that the Court grant him or her the relief to which he may be entitled in this proceeding.


I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on ___02/12/2025_____(month, date, year).

___Tone Urve_____     ___02/12/2025_____
Signature of Petitioner     Date


_____
Signature of Attorney (if any)


If the person signing is not petitioner or an attorney, state relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____

_____

- 14 -

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

---

| TUNC URAZ | DOCKET NO. _____ |
|---|---|
| MICHIGAN DEPARTMENT OF CORRECTIONS THUMB CORRECTIONAL FACILITY (TCF) 3225 JOHN CONLEY DRIVE LAPEER, MICHIGAN 48446 | MDOC PRISONER NO. 114653 |
| PETITIONER: | RESPONDENT: |
| TUNC URAZ | FREDEANE ARTIS, WARDEN |
| TUNC URAZ THUMB CORRECTIONAL FACILITY (TCF) 3225 JOHN CONLEY DRIVE LAPEER, MICHIGAN 48446 | MICHIGAN OFFICE OF ATTORNEY GENERAL ATTORNEY FOR RESPONDENT 525 WEST OTTAWA STREET, 7TH FLOOR P.O. BOX 30212 LANSING, MICHIGAN 48009 |

BRIEF IN SUPPORT OF PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO
28 U.C.S. § 2254(A)

*   *   *

SUBMITTED BY:

TUNC URAZ #114653
PETITIONER IN PRO PER

1.

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................. iii-viiii.

STATEMENT OF QUESTIONS PRESENTED...................... x-xi

STATEMENT OF FACTS.................................... 4

VERIFICATION......................................... xii

DECLARATION.......................................... xiii

ARGUMENTS:

### ISSUE- I

PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHERE TRIAL COUNSEL FAILED TO REQUEST A CONTINUANCE OR WITHDRAW AS COUNSEL WHEN HE WAS NEARING A MENTAL BREAKDOWN WHICH IMPACTED HIS ABILITY TO REASONABLY REPRESENT HIS CLIENT THROUGHOUT THE PROCEEDINGS IN VIOLATION OF U.S. CONST. AMS VI AND XIV 1963 ART. I § 20......................................... 16.

### ISSUE- II

PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY WHEN JUROR #2 CONCEALED HIS USE OF A DUAL IDENTITY AND WHERE HIS DISHONESTY WOULD HAVE PROVIDED A VALID BASIS TO CHALLENGE FOR CAUSE.................................... 39.

### ISSUE- III

THE SIXTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION GUARANTEES A CRIMINAL DEFENDANT WILL RECEIVE A FAIR TRIAL BY AN IMPARTIAL AND UNBIASED JURY. U.S. CONST. AMEND. VI & XIV, CONST. 1963 ART. 1 & 20............ ............................................ 43.

### ISSUE- IV

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE COURT'S DECISION DENYING HIS MOTION FOR SEVERANCE, WHERE THE SHEER NUMBER OF PRIOR BAD ACTS, AS WELL AS UNRELATED AND UNFOUNDED ALLEGATIONS ADMITTED INTO EVIDENCE RESULTED IN AN UNFAIR PREJUDICIAL TACTICAL ADVANTAGE IN VIOLATION OF UNITED STATES SUPREME COURT PRESIDENT............................ 47.

i.

## ISSUE- V

PETITIONER WAS DENIED HIS STATE AND FEDERAL
CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE
INTRODUCTION OF UNDULY PREJUDICIAL EVIDENCE CONCERNING
PRIOR BAD ACTS ................................................... 53.

## ISSUE- VI

PETITIONER WAS DENIED HIS STATE AND FEDERAL
CONSTITUTIONAL RIGHT WHEN THE TRIAL COURT ADMITTED INTO
EVIDENCE A VIDEO TAPE AND TRANSCRIBED CONVERSATION THAT
WAS OBTAINED IN VIOLATION OF THE PETITIONER'S SIXTH
AMENDMENT RIGHT TO COUNSEL................................... 60.

## ISSUE- VII

THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S
MOTION TO DISMISS BASED ON ENTRAPMENT OF A CRIME THAT
WAS MANUFACTURED BY LAW ENFORCEMENT AND THEIR
AGENTS/INFORMANTS AND WHERE THE MICHIGAN COURTS FURTHER
BASED THEIR DENIAL UPON AND UNREASONABLE APPLICATION OF
FACT AND LAW, CONTRARY TO UNITED STATES AND MICHIGAN
SUPREME COURT PRESIDENT....................................... 66.

*   *   *

# INDEX OF AUTHORITIES

## UNITED STATES SUPREME COURT                          PAGE No.

BREWER V. WILLIAMS,

    430 US 387, 401; 97 S.CT 1232 (1977).............          23

CALIFORNIA V. TRAMETTA,

    467 US 479, 485; 104 S.CT 2528; 81 LED2D 413 (1984)...........          21

CHAMBERS V. MISSISSIPPI,

    410 US 284, 296-302; 93 S.CT 1038; 35 LED2D 297 (1973)...........          22

FIFTH FELLERS V. US,

    540 US 519 (2004)....................          24

HUDDLESTON V. US,

    485 US 681, 687-690 (1988)....................          58

JACKSON V. DENNO,

    378 US 368; 84 S.CT 1774; 12 LED 908 (1964)..................          55

LISENBA V. CALIFORNIA,

    314 US 219; 62 S.CT 280; 36 LED 166 (1991)..............          53, 54

MAIN V. MOULTEN,

    474 US 159 (1985)....................          23, 60

METISH V. LANCASTER,

    569 US 351; 375 N2 (2003).......          41, 46, 52, 58, 64, 74

MESSIAH V. US,

    377 US 201; 84 S.CT 1199.........          60, 61, 64

McDONOGH POWER EQUIP' V. GREENWOOD,

    464 US 548, 556 (1984)....................          39, 40

OLD CHIEF V. US,

    519 US 172 (1997)....................          50

PIONEER INVESTMENT CO,

    508 US AT 397......................        35

REMMER V, US,

    347 US 227, 229-230 (1954)............    39, 41, 42

SILVERTHORN V, US,

    251 US 385; 40 S.CT 182 (1920).........      64

STATE V, MESSIAH,

    377 US 201; 84 S.CT 1199 (1964)..................    22, 34

SHERMAN V, US,

    356 US 369, 376-378......................    58, 66

STRICKLAND V, WASHINGTON,

    466 US 668; 104 S.CT 2052; 80 LED2D 674 (1984)....  16, 19, 20, 22, 28, 33

TEXAS V, COBB,

    532 US 162 (2001).........................    24, 63

TRUMP V, US,

    603 US 593, 656-657..............................    24, 57

US V, RUSSELL,

    411 US 423-429; 93 S.CT 1637; 36 LED2D 366 (1973).........  66, 71, 72

US V, LANE,

    474 US 438, 446 N8; 106 S.CT 725; 88 LED2D 814 (1986).................    47

US V, MARTINEZ,

    528 US 304; 145 LED2D 792; 120 S.CT 774 (2000)..................    45

UNITED COIN METER CO, V, SEABOARD COATLINE RR,

    708 F2D 839, 846 (6TH CIR. 1983).............    35

US V, HENRY,

    447 US 264 (1980)..........................    23, 61, 63

WASHINGTON V, TEXAS,

    388 US 14, 19; 87 S.CT 1920; 18 LED2D 1019 (1967)......................    21

WAGNER V. SHAVER,
    574 US 40, 45 (2014)........................    39

WIGGINS V. SMITH,
    539 US 510, 521; 123 S.CT 2557 (2003)..........  16, 37, 42, 46, 52, 59, 65, 74


FEDERAL

AYERS V. HUDSON,
    623 F3D 301, 311-312 (2010).............    23

BLACKBURN V. FOLTZ,
    828 F2D 1177 (CA 6, 1987)...............................    19

CALDWELL V. STATE,
    780 A2D 103 AT HN 27-29...........................    27, 29, 45

CLEMMONS V. SOWDENS,
    34 F3D 352-355 (6TH CIR. 1994).............    39

DAVIS V. COLE,
    475 F3D 761, 777 (6TH CIR. 2007)..........................    47

FRANKLIN V. ANDERSON,
    2002 US LEXIS 26814.............................    45

GORDIN V. US,
    313 F2D 641 (CA 1, 1963)............................    67

HILL V. CURTIN,
    792 F3D 670, 676 (RTH CIR. 2015)............    37, 42, 46, 52, 65, 74

HUGHES,
    258 F3D AT 453...................................    45

PILCHER V. CAMPER,
    935 E2D 149 (8TH CIR. 1991)........................    33

V.

## MICHIGAN SUPREME COURT

PEOPLE V. ALLEN,
    429 MICH. 558 (1998)................................ 21

PEOPLE V. GODDARD,
    429 MICH. 505 (1988)................................ 50

PEOPLE V. GOLOCITOWICZ,
    413 MICH. 298, 308 (1982)................................ 50

PEOPLE V. GINTHER,
    390 MICH. 436; 212 NW2D 922 (1973)......................... 17

PEOPLE V. JULLIET,
    439 MICH. 34 (1991).................... 72

PEOPLE V. SCHRAM,
    378 MICH. 145 (1966)....................... 41

PEOPLE V. STARR,    457 MICH. 490, 495 (1998).................... 51

PEOPLE V. WINANS,
    187 MICH. 294; 466 NW2D 731 (1991).......................... 19

STATE V. MARSHALL,
    882 NW2D 68 (2016)......................... 63, 70

## MICHIGAN COURT OF APPEALS

PEOPLE V. ADAMS,
    232 MICH. APP. 128 (1988).................... 72

PEOPLE V. DALESSANDRO,
    165 MICH. APP. 569, 577-588; 419 NW2D 609 (1988).................... 19

PEOPLE V. JACKSON,
    292 MICH. APP. 583 (2001).................... 45

PEOPLE V. JONES,

    48 MICH. APP. 334 (1994)..................................... 71

PEOPLE V. NICKSON,

    120 MICH. APP. 681; 327 NW2D 333 (1982)........................ 19

PEOPLE V. SHELINE,

    64 MICH. APP. 193 (1975)............................. 71

PEOPLE V. STUBLI,

    163 MICH. APP. 376, 380; 413 NW2D 804 (1984)................................. 19


USC

28 U.S.C. § 2254(A)..................................... 1

28 USC § 2254(B)(1)..................................... 16, 39, 43, 47, 53, 60, 65

28 U.S.C. § 2254D(1).....................................16,.39, 42, 47, 53, 60, 65

28 U.S.C. § 2254D(2)........................... 16, 42, 47, 53, 60, 65

28 U.S.C. § 2254D(1)(2)................................. 16, 37


MICHIGAN COURT RULE

MCR 6.120.................................................. 51


FRCP

R.8 .................................................... 51


MCLA

750.157B ........................................ 48

750.411I ........................................ 48

    ...

768.2A .......................................... 48

768.20(2)(c) ....................................... 27

768.36(c) .......................................... 27

*   *   *

RAMONEZ V. BERGHUIS,

    490 F3D 482 (CA 6, 2007)............................ 28

SANDOVAL V. CALDREN,

    241 F3D 765, 722 (CA 9, 2008)..................... 51

STATE V. WILBOURN,

    2018 WASH APP LEXIS 1442................................. 45

SOSNOWSKY V. STATE,

    989 S.O.2D 686 (2008)....................... 60

STATE V. LOPEZ,

    190 WN2D 104 (2018)................. 32, 35, 37



TOWNSEND V. SMITH,

    395 F3D 251, 258 (6TH CIR. 2001)......................... 22, 28

US V. GONZALAZ,

    214 F3D 1109, 1111 (9TH CIR. 2000)...........................45

US V. DAVIS,

    177 F3D 522 (CA 6, CIR, 1999)..................... 44

US V. TERZADO-MADRUDA,

    897 F2D 1099 (11TH CIR. 1990)........................... 62

US V. SHERMAN,

    200 F2D 880 (CA 2, CIR. 1952)........................... 67

WILDMAN V. JOHNSON,

    261 F3D 831, 840-841 (CA 9, CIR. 2001).............................. 51

## STATEMENT OF QUESTIONS PRESENTED

### ISSUE- I

WAS PETITIONER DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHERE TRIAL COUNSEL FAILED TO REQUEST A CONTINUANCE OR WITHDRAW AS COUNSEL WHEN HE WAS NEARING A MENTAL BREAKDOWN WHICH IMPACTED HIS ABILITY TO REASONABLY REPRESENT HIS CLIENT THROUGHOUT THE PROCEEDINGS IN VIOLATION OF U.S. CONST. AMS VI AND XIV 1963 ART. I § 20?

### ISSUE- II

WAS PETITIONER DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY WHEN JUROR #2 CONCEALED HIS USE OF A DUAL IDENTITY AND WHERE HIS DISHONESTY WOULD HAVE PROVIDED A VALID BASIS TO CHALLENGE FOR CAUSE?

### ISSUE- III

DOES THE SIXTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION GUARANTEE A CRIMINAL DEFENDANT WILL RECEIVE A FAIR TRIAL BY AN IMPARTIAL AND UNBIASED JURY AND WAS PETITIONER PREJUDICED BY THE DEPRIVATION IN VIOLATION OF <u>U.S. CONST. AMEND. VI & XIV, CONST. 1963 ART. 1 & 20</u>?

### ISSUE- IV

WAS PETITIONER DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE COURT'S DECISION DENYING HIS MOTION FOR SEVERANCE AND WHERE THE SHEER NUMBER OF PRIOR BAD ACTS, AS WELL AS UNRELATED AND UNFOUNDED ALLEGATIONS ADMITTED INTO EVIDENCE RESULTED IN AN UNFAIR PREJUDICIAL TACTICAL ADVANTAGE IN VIOLATION OF UNITED STATES SUPREME COURT PRESIDENT?

### ISSUE- V

WAS PETITIONER DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE INTRODUCTION OF UNDULY PREJUDICIAL EVIDENCE CONCERNING PRIOR BAD ACTS?

## ISSUE- VI

WAS PETITIONER DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT WHEN THE TRIAL COURT ADMITTED INTO EVIDENCE A VIDEO TAPE AND TRANSCRIBED CONVERSATION THAT WAS OBTAINED IN VIOLATION OF THE PETITIONER'S SIXTH AMENDMENT RIGHT TO COUNSEL?

## ISSUE- VII

DID THE TRIAL COURT ERR WHEN IT DENIED PETITIONER'S MOTION TO DISMISS BASED ON ENTRAPMENT OF A CRIME THAT WAS MANUFACTURED BY LAW ENFORCEMENT AND THEIR AGENTS/INFORMANTS AND WHERE THE MICHIGAN COURTS FURTHER BASED THEIR DENIAL UPON AND UNREASONABLE APPLICATION OF FACT AND LAW, CONTRARY TO UNITED STATES AND MICHIGAN SUPREME COURT PRESIDENT?

\*   \*   \*

# V E R I F I C A T I O N

I, TUNC URAZ, DO HEREBY CERTIFY, STATE AND DEPOSE UNDER OATH AND PENALTY OF PERJURY THAT THE FOLLOWING REPRESENTATIONS ARE TRUE AND CORRECT, BASED UPON MY PERSONAL KNOWLEDGE AND BELIEF:

1) THAT, I AM THE PETITIONER ACTING IN PROPRIA PERSONA IN THE CAPTIONED CAUSE MATTER;

2) THAT, I AM A PRISONER INCARCERATED IN THE MICHIGAN DEPARTMENT OF CORRECTIONS LOCATED AT THE THUMB CORRECTIONAL FACILITY AT THE TIME OF SUBMISSION;

3) THAT, I BELIEVE I AM ENTITLED TO HABEAS RELIEF ON EACH OF THE GROUNDS PRESENTED IN MY PETITION;

4) I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.  28 U.S.C. § 1746(2).

/s/. _Tunc Uraz_                         EXECUTED ON: 02/12/2025

TUNC URAZ #114653
THUMB CORRECTIONAL FACILITY
3225 JOHN CONLEY DRIVE
LAPEER, MICHIGAN 48446

**xii.**

## DECLARATION OF MAILING

I, TUNC URAZ, PETITIONER, DO DECLARE OR (CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT AND THAT THIS PETITION FOR WRIT OF HABEAS CORPUS WAS HAND DELIVERED TO MY UNIT (PC) PRISONER COUNSELOR FOR MAILING VIA PRISONER LEGAL EXPEDITED MAILING AT REGULAR U.S. POSTAL FIRST-CLASS RATE FOR DELIVERY TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF SOUTHERN MICHIGAN ON 02/12/2025.

/s/. _Tunc Uraz_

TUNC URAZ

## STANDARD OF REVIEW

THE UNITED STATES DISTRICT COURT (USDC) REVIEWS HABEAS CLAIMS AND CONSTITUTIONAL CLAIMS PURSUANT TO THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA).   AEDPA PROHIBITS A FEDERAL COURT FROM GRANTING HABEAS RELIEF BASED ON ANY CLAIM "ADJUDICATED ON THE MERITS" IN STATE COURT, UNLESS THE PETITIONER CAN ESTABLISH THAT THE STATE COURT ADJUDICATION:

> (1) RESULTED IN A DECISION THAT WAS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES; OR
>
> (2) RESULTED IN A DECISION THAT WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING.

28 U.S.C. § 2254(D)

UNDER THE "CONTRARY TO" CLAUSE OF § 2254(D)(1), PETITIONER, MR. URAZ MUST ESTABLISH THAT "THE STATE COURT ARRIVE[D] AT A CONCLUSION OPPOSITE TO THAT REACHED BY [THE SUPREME COURT] ON A QUESTION OF LAW OR... DECIDE[D] MR. URAZ'S CASE DIFFERENTLY FROM THAT OF [THE SUPREME COURT] HAS ON A SET OF MATERIALLY INDISTINGUISHABLE FACTS."   METRISH V. LANCASTER, 569 U.S. 351, 357 N.2 (2013) (INTERNAL QUESTION MARKS AND CITATION OMITTED).

UNDER THE "UNREASONABLE APPLICATION" CLAUSE OF § 2254(D)(2), MR. URAZ MUST ESTABLISH THAT, AFTER "IDENTIFYING THE CORRECT GOVERNING LEGAL PRINCIPLE FROM THE SUPREME COURT'S DECISIONS, [THE STATE COURT] UNREASONABLY APPLIE[D] THAT PRINCIPLE TO THE FACTS OF [HIS] CASE."   HILL V. CURTIN, 792 F.3D 670, 676 (6TH CIR. 2015) (EN BANC)(ALTERATION OMITTED).   "[T]HE STATE COURT'S DECISION MUST HAVE BEEN MORE THAN INCORRECT OR ERRONEOUS", RATHER, IT MUST HAVE BEEN "SO LACKING IN JUSTIFICATION THAT THERE

2.

WAS AN ERROR WELL UNDERSTOOD AND COMPREHENDED IN EXISTING LAW BEYOND ANY POSSIBILITY FOR FAIRMINDED DISAGREEMENT." ID. (QUOTING WIGGINS V. SMITH, 539 U.S. 510, 520-21 (2003).

A DISTRICT COURT'S LEGAL CONCLUSIONS ARE REVIEWED DE NOVO AND ANY FACTUAL FINDINGS ARE REVIEWED FOR CLEAR ERROR. FLEMING V. METRISH, 556 F.3D 520, 524 (6TH CIR. 2009). THE APPLICATION OF A PROCEDURAL BAR IS REVIEWED DE NOVO AS WELL. SEE PIRKEL V. BURTON, 970 F.3D 684, 691 (6TH CIR. 2020). A DECISION ON A MOTION TO STAY IS REVIEWED FOR AN ABUSE OF DISCRETION. CARTER V. MITCHELL, 829 F.3D 455, 464 (6TH CIR. 2016).

"THE STANDARD FOR REVIEWING STATE-COURT DETERMINATIONS ON HABEAS, BY CONTRAST, IS GOVERNED BY THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), CODIFIED AT 28 U.S.C. § 2254(D)." IVORY V. JACKSON, 509 F.3D 284, 291 (7TH CIR. 2007) (CLEANED UP). HERE, THE STATE TRIAL COURT ADJUDICATED MR. URAZ'S CONSTITUTIONAL CLAIMS ON THE MERIT'S, ENTITLING THAT DECISION TO DEFERENCE UNDER AEDPA, RICHTER, 562 U.S. AT 101. (AEDPA REQUIRES FEDERAL HABEAS COURTS TO REVIEW STATE COURT DECISIONS WITH "DEFERENCE AND LATITUDE," AND "[A] STATE COURT'S DETERMINATION THAT A CLAIM LACKS MERIT PRECLUDES HABEAS RELIEF SO LONG AS 'FAIRMINDED JURIST COULD DISAGREE' ON THE CORRECTNESS.")(CLEANED UP). MR. URAZ HAS MET HIS BURDEN UNDER THIS HIGHLY DEFERENTIAL STANDARD OF REVIEW AND THIS COURT SHOULD GRANT HABEAS RELIEF, OR IN THE ALTERNATIVE, GRANT MR. URAZ A (COA) CERTIFICATE OF APPEALABILITY.

* * *

3.

## STATEMENT OF FACTS

REFERENCES TO THE PROCEEDINGS ARE ABBREVIATED AS FOLLOWS:

---

THE TRIAL TRANSCRIPTS REFERENCED ARE DELINEATED BY INITIALS OF "TT" WITH ROMAN NUMERALS "II", "III", "IV", "V" & "VI" INDICATING TRIAL DAY RESPECTIVELY. THE ABBREVIATION "PE" REFERENCE THE PRELIMINARY EXAMINATION FOLLOWED BY ARABIC NUMBERS. "ET" IS REFERENCED TO THE EVIDENTIARY TRANSCRIPTS WITH ARABIC NUMBERS FOLLOWED. ALL CORRESPONDING PAGE NUMBERS ARE IN ARABIC NUMBERS.

---

THE PRESENT CASE INVOLVES A SITUATION WHERE A MAN IN HIS LATE 40'S, A HUSBAND AND A FATHER WITH NO CONTACTS WITH THE CRIMINAL JUSTICE SYSTEM, EXPERIENCED HIS LIFE CRUMBLING BEFORE HIS EYES. DUE TO THE STRAIN OF THE EVENTS AND MIDLIFE CRISIS, PETITIONER ("MR. URAZ"), MADE GRAVE ERRORS OF JUDGMENT THAT LED TO CHARGES OF THE INITIAL AGGRAVATED STALKING CHARGE TO WHICH HE PLEAD GUILTY AND WAS READY TO PAY HIS DEBT TO SOCIETY. HOWEVER, DURING HIS INCARCERATION, JAIL-HOUSE INFORMANTS LODGED IN THE INGHAM COUNTY JAIL TOOK ADVANTAGE OF HIS NAIVETE. MR. URAZ CONTENDS THAT THESE INMATES TWISTED HIS STATEMENTS AND USED THEM IN AN EFFORT TO CURRY FAVOR WITH THE PROSECUTOR'S OFFICE BY CONTENDING THAT MR. URAZ WAS ATTEMPTING TO HIRE SOMEONE TO KILL ERIKA L. MELKE HE WAS CHARGED WITH STALKING. ONCE THESE INMATES MADE THESE ALLEGATIONS, HIS STALKING CASE AND HIS SOLICITATION CASE WERE JOINED AND ANY CHANCE FOR MR. URAZ TO HAVE A FAIR TRIAL WAS EXTINGUISHED.

MR. URAZ IS OF TURKISH DECENT AND ALL OF HIS FAMILY NOW LIVES IN TURKEY. MR. URAZ WAS BORN IN THE UNITED STATES, BUT HIS FAMILY MOVED BACK TO TURKEY WHEN HE WAS ONE YEAR OLD. MR. URAZ MOVED BACK TO THE UNITED STATES AT COLLEGE AGE TO ATTEND COLLEGE AND HAS A MASTER'S DEGREE IN HOSPITALITY MANAGEMENT FROM MICHIGAN STATE UNIVERSITY. MR. URAZ WORKED FOR MSU FOR 25 YEARS AND HAD NEVER BEEN IN JAIL OR HAD ANY CONTACT WITH THE CRIMINAL JUSTICE SYSTEM BEFORE THE EVENTS THAT LEAD TO THIS CASE. AT AN

4.

ENTRAPMENT HEARING HELD BEFORE TRIAL, MR. URAZ EXPLAINED THAT HIS MARRIAGE STARTED TO BREAK UP IN 2015 AND THAT HIS WIFE HAD BI-POLAR DISORDER AND LEFT FOR TURKEY, EVIDENTIARY HEARING (ET) 10-20-17 AT 9-12. DURING THIS TIME MR. URAZ BEGAN ABUSING ALCOHOL AND ZANAX, ET 11. MR. URAZ HAS BEEN DIAGNOSED WITH PTSD, MANIC DEPRESSION AND SUBSTANCE ABUSE, ET 11. IN APRIL OF 2016 HE WAS FIRED FROM HIS JOB, ET 9-10. IN JUNE 2015, ERIKA MELKE, THE COMPLAINANT, BROKE OFF THE RELATIONSHIP SHE HAD WITH MR. URAZ. ET 12.

MR. URAZ WAS DISTRAUGHT ABOUT HIS LIFE AND THE BREAKUP WITH MS. MELKE AND HE ENDEAVORED TO CONTACT HER AGAINST HER WILL AND ULTIMATELY OBTAINED A PERSONAL PROTECTION ORDER (PPO). MR. URAZ VIOLATED THE PPO AND WAS CHARGED WITH AGGRAVATED STALKING. HE PLEAD GUILTY TO THIS CHARGE AND REMANDED HIMSELF TO BEGIN HIS PRESUMED JAIL SENTENCE WITH THE RECOMMENDATION OF HIS ATTORNEY, CHRISTOPHER BERGSTROM. INGHAM COUNTY DOCKET NO. 16-534-FH. WHILE HE WAS IN THE JAIL, MR. URAZ WAS WITHDRAWING FROM HIS MEDICATIONS AND ALCOHOL AND DRUG ADDICTIONS AND HE WAS PLACED IN SOLITARY CONFINEMENT (SEGREGATION) WHERE HE WAS NOT ALLOWED TO MAKE PHONE CALLS OR MAINTAIN CONTACT WITH HIS FAMILY AND ATTORNEY, ET 13. HE ALSO WAS NOT BEING MEDICATED FOR HIS ONGOING MENTAL HEALTH ISSUES. DURING THIS TIME PERIOD, MR. URAZ WAS PLACED IN THE SAME CELL/POD WITH JAIL-HOUSE INFORMANTS, (CHARLES ALLEN AND REGINALD CLOSE) WHO WOULD ULTIMATELY TESTIFY AGAINST HIM AT TRIAL. THESE TWO INMATES WERE EXCESSIVELY INTERESTED IN HIS CASE, STOLE AND READ MR. URAZ'S JOURNAL WITHOUT HIS EXPRESSED PERMISSION, AND TOLD HIM THAT THAT THEY WOULD HELP HIM WITH HIS CASE IN AN ATTEMPT TO GAIN MR. URAZ'S TRUST, ET 14. MR. URAZ TESTIFIED THAT HE DID NOT KNOW THAT HE SHOULD NOT DISCUSS THE DETAILS OF HIS CASE WITH OTHER INMATES WHO MAY TRY TO TAKE ADVANTAGE OF HIM, ET 14.

AT THE ENTRAPMENT HEARING, MR. URAZ DENIED THAT HE EVER WAS SERIOUS

5.

ABOUT TRYING TO KILL MS. MELKE, ET 23, 33. HE CLAIMED THAT MR. ALLEN AND MR. CLOSE WERE TRYING TO GET MONEY FROM HIM AND TOOK ADVANTAGE OF HIM IN AN ATTEMPT TO WIN FAVOR WITH THE PROSECUTOR'S OFFICE, ET 28. MR. URAZ DENIED THE STATEMENTS MR. CLOSE AND MR. ALLEN ALLEGED HE MADE TO THEM ABOUT TRYING TO HIRE SOMEONE TO KILL MR. MELKE, ET 62, 64. THE TRIAL COURT DENIED MR. URAZ'S ENTRAPMENT MOTION, ET 107, 114.

OVER OBJECTION BY THE DEFENSE, THE COURT ALSO ALLOWED THE INTRODUCTION OF NUMEROUS PRIOR BAD ACTS, SIMILAR ACTS MOTION HEARING 10-11-17 AT 18-25. THE TRIAL COURT ALSO ALLOWED THE INMATES TO PROVIDE TESTIMONY REGARDING ALLEGED STATEMENTS BY MR. URAZ TO SUPPORT THE PRIOR BAD ACTS. THE TRIAL COURT JOINED THE CASES FOR TRIAL PURSUANT TO MCR 6.120(B)(1)(C), JOINDER MOTION HEARING 2-28-17 AT 17-19.

THE PROSECUTOR STARTED THE TRIAL BY PRESENTING NUMEROUS WITNESSES TO TESTIFY AS TO THE PRIOR BAD ACTS OF STALKING TO HAVE BEEN PERPETRATED BY MR. URAZ. MERIDIAN TOWNSHIP OFFICER DANIEL KING TESTIFIED THAT HE WAS CALLED TO INVESTIGATE AN ALLEGED PPO VIOLATION ON MARCH 26, 2016, TTII, 129-130. HE WAS DIRECTED TO A BEST BUY PARKING LOT WHERE HE SPOKE WITH THE COMPLAINANT, ETIKA MELKE. HE SAW A MAN IN A PONTIAC WHO LEFT RIGHT AWAY WHEN HE ARRIVED,. TTII, 131. HE TESTIFIED THAT MS. MELKE WAS UPSET AND SHOWED HIM PICTURES ON HER PHONE OF MR. URAZ, TTII, 133. HE WAS 60-70% SURE THAT THE MAN HE SAW IN THE PONTIAC WAS MR. URAZ, TTII, 135.

MS. MELKE'S ROOMMATE NEXT TESTIFIED THAT ON JULY 17, 2016, SHE SAW MR. URAZ IN THE PARKING LOT OF THEIR APARTMENT COMPLEX, TTII, 146-148.

NOEL VANSLEMBROUCK TESTIFIED THAT MS. MELKE WAS HER BEST FRIEND AND THAT THEY HAD LIVED TOGETHER FROM 2011 TO 2015, TTII, 160. SHE MOVED OUT RIGHT AT THE TIME THAT MS. MELKE ENDED HER RELATIONSHIP WITH MR. URAZ, TTII, 161. SHE TESTIFIED THAT ON 12-31-2015 SHE WAS IN UTICA AT THE DAVE &

6.

BUSTERS WITH MS. MELKE AND STAN WHITE HER BOYFRIEND, , TTII, 162-163. SHE STATED THAT MR. URAZ SHOWED UP AND BEGAN CONFRONTING THEM AND HE WOULD NOT LEAVE. HE CALLED MS. MELKE A SLUT AND A LIAR AND MANAGEMENT HAD TO INTERVENE AND ESCORT MR. URAZ FROM THE PREMISES, TTII, 164-167. ON CROSS-EXAMINATION, MS. VANSLEMBROUCK ADMITTED THAT SHE NEVER HEARD MR. URAZ THREATEN TO KILL OR HARM MS. MELKE AND THAT IN ALL THE TIME MS. MELKE AND MR. URAZ WERE TOGETHER SHE NEVER HEARD THEM ARGUING OR HEARD OR WITNESSED ANY DOMESTIC VIOLENCE BETWEEN THEM. TTII, 170-171.

MR. STAN WHITE TESTIFIED THAT HE MET MS. MELKE IN AN X-RAY CLASS AT LANSING COMMUNITY COLLEGE AND THAT HE HAD A PAST DATING RELATIONSHIP WITH MS. MELKE FROM THE MIDDLE OF 2015 UNTIL 2016, TTII, 174-175. HE TESTIFIED ABOUT THE INCIDENT AT DAVE & BUSTERS AND CLAIMED THAT MR. URAZ WOULD NOT STOP TALKING TO MS. MELKE, TTII, 176-177. HE TESTIFIED THAT THEY NEEDED TO GET AN UBER HOME FROM DAVE & BUSTERS AND THAT HE WENT TO GET HIS CAR THERE THE NEXT DAY, HE HAD A FLAT TIRE FROM A SIDE PUNCTURE, TTII, 178-179. HE CLAIMED THAT HE RECEIVED RANDOM MESSAGES ASKING IF HE WAS DATING ANYONE AND THAT HE HAD TO BLOCK (4) FOUR DIFFERENT NUMBERS FROM CALLING HIM, TTII, 179-180. HE TESTIFIED THAT HIS TIRES WERE PUNCTURED THREE TIMES AND THAT MS. MELKE'S VEHICLE WAS EGGED IN HIS DRIVEWAY, TTII, 183. MR. WHITE THEN READ FROM A TEXT MESSAGE THREAD THAT HE EXCHANGED WITH MR. URAZ WHERE THEY DISCUSSED THE POSSIBILITY OF MEETING, TTII, 184-189. MR. WHITE TESTIFIED THAT MR. URAZ MADE HIM NERVOUS BUT ADMITTED THAT THE ONLY TIME HE EVER SAW MR. URAZ WAS AT DAVE & BUSTERS, TTII, 198.

ON THE SECOND DAY OF TESTIMONY, AFTER THE JURY WAS SWORN IN, THE TRIAL COURT INDICATED THAT IT HAD RECEIVED WORD THAT ONE OF THE JURORS HAD STATED THAT HE HAD A BIAS AGAINST PEOPLE FROM TURKEY AND THAT HE DID NOT BELIEVE HE COULD BE A FAIR AND IMPARTIAL JUROR. THE TRIAL COURT INDICATED THAT IT WAS

GOING TO STRIKE THIS JUROR AT THE CLOSE OF PROOFS, DID NOT REPLACE THE JUROR
WITH A "RANDOM" ALTERNATE PICK AND DENIED THE DEFENSE REQUEST TO QUESTION
THE JUROR, TTII, 4-6.

ERIKA MELKE THEN TESTIFIED THAT SHE IS 25 YEARS OLD AND MET MR. URAZ AT
AN MSU CAFETERIA, TTIII, 8.  FIRST SHE WAS STUDENT DINING AT THE CAFETERIA
AND THEN SHE WORKED THERE, TTIII, 9.  SHE FIRST HAD A FRIENDSHIP WITH MR.
URAZ AND THEN SHE STARTED DATING HIM IN LATE 2012, EARLY 2013, TTIII, 10.

SHE TESTIFIED THAT IN JULY OF 2015 SHE MOVED TO COLLEGE TOWN APARTMENTS
AND THAT MR. URAZ HELPED HER MOVE, TTIII, 12-14.  SHE CLAIMED THAT HER CAR
WAS KEYED AND HER LICENSE PLATE TABS WERE REMOVED IN AUGUST OF 2015, TTIII,
15.  SHE TESTIFIED THAT ON SEPTEMBER 29, 2015, MR. URAZ APPROACHED HER AT A
GROCERY   STORE   AND   STARTED   ASKING   HER   QUESTIONS   ABOUT   HER   DATING
RELATIONSHIPS, TTIII, 18-20.  SHE WAS SCARED SO SHE FILED FOR AND RECEIVED A
PPO, TTIII, 21-22.  SHE TESTIFIED ABOUT THE DAVE & BUSTERS INCIDENT AND
CLAIMED THAT ON FEBRUARY 13, 2016, SHE RECEIVED A TEST MESSAGE THAT STATED
ONLY, "HO.", TTIII, 20-22, 24.  SHE BELIEVED THAT IN MARCH OF 2016, MR. URAZ
FOLLOWED HER TO BEST BUY, TTIII, 25-26.  IN APRIL OF 2016, SHE WAS IN
PETOSKEY VISITING HER MOTHER.  HER MOTHER RECEIVED A PHONE CALL FROM THE
PHONE OF MR. URAZ'S MOTHER, TTIII, 29.

ALSO, IN MAY OF 2016, SHE BEGAN NOTICING THAT THINGS WERE MISSING FROM
HER BEDROOM.  SHE BOUGHT A CAMERA AND SET IT UP IN HER ROOM.  ON MAY 25,
2016, SHE CAPTURED FOOTAGE OF MR. URAZ IN HER ROOM WHILE SHE WAS AT WORK,
TTIII, 31-34.  ON JULY 17, 2016, SHE CLAIMED THAT SHE SAW MR. URAZ IN HER
APARTMENT PARKING LOT, TTIII, 36.

AT ONE POINT HER FACEBOOK PASSWORD WAS CHANGED AND AN INSTAGRAM ACCOUNT
WAS CREATED IN HER NAME, TTIII, 38-39.  A PHOTOGRAPH FROM HER PHONE THAT SHE
CLAIMED SHE DID NOT GIVE MR. URAZ WAS ON THE INSTAGRAM PAGE, TTIII, 37-40.

8.

THERE WAS ALSO A PICTURE FROM HER FACEBOOK ACCOUNT ON THE INSTAGRAM, TTIII, 38-40. ON AUGUST 27, 2016, AND AUGUST 31, 2016, SOMEONE WAS TRYING TO CHANGE HER FACEBOOK PASSWORD, TTIII, 42. WHEN MR. URAZ WAS IN HER APARTMENT THERE WERE TICKETS FROM A DRAKE CONCERT IN HER ROOM AND ON THE NIGHT OF THE CONCERT ALL OF HER TIRES WERE SLASHED, TTIII, 48. SHE CLAIMED THAT HER TRIES WERE PUNCTURED ON THREE OTHER OCCASIONS, TTIII, 49-50. AT THE END OF AUGUST SHE RECEIVED A PHONE CALL FROM THE INGHAM COUNTY JAIL AND IN THE PART OF THE CALL WHERE THE INMATE IS SUPPOSED TO RECORD HIS NAME IT STATED "I HOPE YOU'RE HAPPY," TTIII, 46-47.

NEXT, MR. URAZ'S PRIOR ATTORNEY FOR HIS PRIOR STALKING CASE, CHRIS BERGSTROM, WAS ALLOWED TO TESTIFY AS TO THE DETAILS OF THAT CASE, TTIII, 65-74. HE TESTIFIED THAT MR. URAZ DENIED USING ILLEGAL SUBSTANCES IN HIS PSIR AND STATED THAT HE ONLY USED ALCOHOL, TTIII, 70-72. HE ALSO TESTIFIED ABOUT A LETTER THAT MR. URAZ GAVE TO HIM ON AUGUST 23, 2016, THAT MR. URAZ ASKED MR. BERGSTROM TO SHOW TO THE PROSECUTOR, TTIII, 72. THE LETTER WAS FROM MR. URAZ TO MS. MELKE, TTIII, 73. MS. MELKE ALSO RECEIVED AN ANONYMOUS EMAIL FROM EMELKE20@GMAIL.COM WHICH WAS THE IDENTICAL LETTER. MS. MELKE DID NOT CREATE THE GMAIL ADDRESS THAT SHE GOT THE LETTER FROM, TTIII, 73-74. ON CROSS-EXAMINATION MR. BERGSTROM ADMITTED THAT MR. URAZ FILED A GRIEVANCE AGAINST HIM ALLEGING UNPROFESSIONAL CONDUCT PRIOR TO HIS TESTIMONY AT TRIAL, TTIII, 76. AT NO TIME DID MR. URAZ RELEASE ATTORNEY BERGSTROM FROM ATTORNEY-CLIENT PRIVILEGE.

RICHARD LAING TESTIFIED THAT HE IS THE FOUNDER OF SPARTAN NET WHICH IS THE INTERNET PROVIDER FOR APARTMENTS IN THE LANSING AREA, TTIII, 81. HE TESTIFIED THAT THE EXPIRED IP (INTERNET PROTOCOL) ADDRESSES AND MAC (MACHINE ACCESS CODE) FOR DEVICES WHICH IS A UNIQUE ADDRESS PER DEVICE AND LINKED TO THE EVIDENCE PRESENTED ABOUT ATTEMPTING CHANGES TO MS. MELKE'S FACEBOOK

9.

PASSWORD WERE FROM APARTMENTS IN THE NORTHPOINTE APARTMENT COMPLEX BUILDING C, TTIII, 91.  HE ADMITTED THAT HE WAS NOT ABLE TO IDENTIFY THE EXACT APARTMENT BUT THAT THE IP ADDRESS WOULD ENCOMPASS AUGUST 27 AND 31 OF 2016, TTIII, 96, 101.

HEATHER HEITMEN TESTIFIED THAT SHE IS THE DTN MANAGEMENT PROPERTY MANAGER, TTIII, 103.  SHE TESTIFIED REGARDING A 2016 LEASE WITH BURAK ATAMER FOR NORTHPOINT APARTMENTS UNIT C10 FOR BUILDING C, TTIII, 109.  SHE CLAIMED THAT MR. ATAMER STILL LIVED THERE AND THAT MR. URAZ USED TO LIVE IN THE COMPLEX IN BUILDING B, TTIII, 109.  SHE CLAIMED THAT MR. URAZ BROUGHT MR. ATAMER TO THEM TO RENT AN APARTMENT, TTIII, 110.

BERNARD BROWN OF SENTINAL OFFENDER SERVICE TESTIFIED THAT HE IS THE BRANCH MANAGER OF INGHAM COUNTY JAIL RUNNING THE GPS TETHER PROGRAM, TTIII, 115-116.  HE TESTIFIED THAT THE GPS DATA FROM MR. URAZ PLACED HIM AT 4869 DUNKEL ROAD, IN LANSING AND AT 1240 HASLETT ON AUGUST 31, 2016, TTIII, 122-124.

NOT UNTIL THE LAST WITNESS ON THE THIRD DAY OF TRIAL WAS THERE ANY TESTIMONY ON THE SOLICITATION OF MURDER CHARGES.  JAIL HOUSE INFORMANT, REGINALD CLOSE TESTIFIED THAT HE MET MR. URAZ WHILE HOUSED IN THE INGHAM COUNTY JAIL, TTIII, 133.  FOR ONE NIGHT HE WAS HOUSED IN THE MEDICAL DORM WITH MR. URAZ AND JAIL-HOUSE INFORMANT, CHARLES ALLEN, TTIII, 135-136.  HE CLAIMED THAT MR. URAZ TOLD HIM THAT MS. MELKE RUINED HIS LIFE AND HE WANTED TO GET RID OF HER, TTIII, 138.  MR. CLOSE CLAIMED THAT MR. URAZ ADMITTED TO HIM THAT HE STALKED MS. MELKE AND THAT HE WENT TO HER HOUSE AND SLASHED HER TIRES ON THE DAY OF THE DRAKE CONCERT, TTIII, 138-140.  MR. URAZ ALLEGEDLY TOLD HIM THAT HE LOST HIS JOB BECAUSE HE ASKED A COWORKER ABOUT GETTING A GUN AND THAT HE WANTED TO KILL MS. MELKE, TTIII, 139.  MR. CLOSE CLAIMED THAT WHILE HE WAS IN THE MEDICAL DORM WITH MR. URAZ, MR. URAZ ASKED HIM IF

10.

HE KNEW ANYONE WHO COULD KILL MS. MELKE, TTIII, 143.

MR. CLOSE TESTIFIED THAT HE TOLD MR. URAZ TO WRITE NOTES TO HIM ABOUT IT AND THAT HE SENT THE NOTES TO HIS ATTORNEY AND WAS GIVEN IMMUNITY FOR HIS TESTIMONY AT THIS TRIAL, TTIII, 145-146. HE ADMITTED TO TELLING MR. URAZ THAT HE KNEW SOMEONE WHO WOULD DO IT FOR $1,000.00. THE PEOPLE ADMITTED THREE PAGES OF NOTES BETWEEN MR. URAZ AND MR. CLOSE, TTIII, 149-153. IN THE LETTERS THERE WAS REFERENCE TO STAN WHITE AND MIKE TOVES AS PEOPLE THAT MS. MELKE HAD DATED AND THE VEHICLES THEY DROVE AND MR. WHITE'S ADDRESS WRITTEN IN MR. CLOSE'S HAND WRITING, TTIII, 154-155. HE TESTIFIED THAT MR. URAZ'S ROOMMATE PUT MONEY IN HIS JAIL ACCOUNT AND THAT THIS WAS A DOWN PAYMENT, TTIII, 157.

WHILE MR. CLOSE TESTIFIED THAT HE RECEIVED NO PLEA OFFERS OR REDUCED CHARGES FOR HIS TESTIMONY IN THIS CASE, HE DID ADMIT THAT HE PROFFERED ON TWO OTHER CASES PREVIOUS TO THIS CASE, TTIII, 160-161, TTIV, 80-81.

AT THE CLOSE OF THE DAY, DEFENSE COUNSEL INDICATED THAT HE WAS GOING TO BRING A MOTION FOR A MISTRIAL DUE TO A BRADY VIOLATION IN THE LATE PRODUCTION OF THE NOTES BETWEEN MR. CLOSE AND ANOTHER JAIL INMATE, JOHN PIERCE, TTIII 170-172. THESE NOTES WERE REGARDING ANOTHER PROFFER BY MR. CLOSE AND SUPPORTED THE DEFENSE THEORY THAT MR. CLOSE WAS MERELY TRYING TO GARNER FAVOR FROM THE PROSECUTOR.

MR. CLOSE WAS CROSS-EXAMINED ON THE FOURTH DAY OF TRIAL AND ADMITTED THAT HE PROBABLY WROTE IN THOSE NOTES THAT HE WAS A GOOD LIAR, TTIV, 39. THE NOTES CONTAIN A STATEMENT THAT THE AUTHOR WAS SUCH A GOOD LIAR HE COULD PASS A POLYGRAPH. IT SHOULD ALSO BE NOTED THAT AT THE PRELIMINARY EXAMINATION HELD IN THIS CASE, THE PROSECUTION MOVED TO AMEND THE INFORMATION, PE 12-1-16 AT 191. THE ORIGINAL INFORMATION CONTAINED ONLY TWO COUNTS OF SOLICITATION OF MURDER WITH MOBLEY AND CLOSE ALLEGATIONS COMBINED

11.

IN ONE COUNT. THE PROSECUTION MOVED TO SEPARATE THIS COUNT INTO TWO COUNTS WITH A THIRD COUNT REGARDING ONLY MOBLEY. THE DISTRICT COURT GRANTED THE MOTION BUT STATED THE FOLLOWING ABOUT THE MOBLEY COUNT:

> I THINK THERE IS DEFINITELY A REASONABLE DOUBT ABOUT WHAT THAT CONVERSATION MEANS (THE JAIL CALL BETWEEN MR. URAZ AND MR. MOBLEY(. YOU KNOW, THAT IS NOT PROOF BEYOND A REASONABLE DOUBT. I WISH THE PROSECUTION GOOD LUCK AS IT RELATED TO THAT INDIVIDUAL CLAIM. PE AT 208.

PATRICK BURNETT, AN MSU CULINARY ATTENDANT, TESTIFIED THAT HE PREVIOUSLY WORKED WITH MR. URAZ, TTIV, 90-91. HE CLAIMED THAT IN APRIL OF 2016, MR. URAZ ASKED HIM IF HE COULD GET HIM A GUN AND BULLETS, TTIV, 93. MR. URAZ ALLEGEDLY TOLD HIM THAT HE DID NOT WANT TO GET THE GUN LEGALLY, TTIV, 96. WHEN MR. URAZ CONTINUED TO QUESTION HIM ABOUT THE GUN HE TOLD HIS SUPERVISOR AND MR. URAZ WAS FIRED, TTIV, 97-99. MR. BURNETT ADMITTED THAT MR. URAZ NEVER STATED WHY HE WANTED THE GUN, TTIV, 100.

DETECTIVE ANDREW HOGAN OF THE LANSING POLICE DEPARTMENT TESTIFIED THAT HE INTERVIEWED MR. CLOSE ON OCTOBER 17, 1016, TTIV, 106. HE CONFIRMED THAT $160 WAS PUT ON MR. CLOSE'S JAIL ACCOUNT, TTIV, 113. HE DID ADMIT THAT HE MET WITH MR. CLOSE ON AUGUST 24, 2016, REGARDING A DIFFERENT CASE AND THAT HE DID GIVE MR. CLOSE A PROFFER AGREEMENT AS TO THAT CASE, TTIV, 114.

FRANK MOBLEY OF THE LANSING POLICE DEPARTMENT TESTIFIED THAT HE WORKS AS AN UNDERCOVER OFFICER AND THAT IN THAT CAPACITY HE INITIATED A CALL TO MR. URAZ AND SPOKE TO HIM ON A VIDEO CALL AT THE JAIL ON OCTOBER 24, 2016, TTIV, 117, 122. THE VIDEO WAS PLAYED FOR THE JURY AND THE JURY WAS ALSO ALLOWED TO VIEW A TRANSCRIPT OF THE PHONE CONVERSATION THEREAFTER. DEFENSE COUNSEL OBJECTED TO THE JURY BEING ALLOWED TO HAVE THE TRANSCRIPT OF THE CONVERSATION, TTIV, 125-126. IN THE VIDEO, MR. URAZ CAN BE SEEN DISCUSSING GETTING RID OF SOME TRASH. THE OFFICER ATTEMPTS SEVERAL TIMES TO GET AN ADDRESS OR OTHER INFORMATION FROM MR. URAZ ABOUT MS. MELKE AND MR. URAZ DOES NOT GIVE THE

INFORMATION, TTIV, 145. OFFICER MOBLEY ADMITTED THAT HE ATTEMPTED TO CALL MR. URAZ BACK AND THAT MR. URAZ HUNG UP THE PHONE AND WALKED AWAY, TTIV, 148.

SERGEANT KEVIN JEWELL TESTIFIED THAT HE RECEIVED A KITE ON OCTOBER 24 2026, FROM CHARLES ALLEN ABOUT A POSSIBLE SOLICITATION TO MURDER AND HE SENT IT TO THE PROSECUTOR'S OFFICE, TTIV, 153-154.

CHARLES ALLEN TESTIFIED THAT HE IS 24 YEARS OLD AND HE WAS RELEASED FROM JAIL ON JANUARY 23, 2017, TTV, 5. HE MET MR. URAZ IN AUGUST AND SEPTEMBER OF 2016. AS THEY TALKED ABOUT THEIR GIRLFRIENDS, MR. URAZ WOULD SAY "THIS BITCH GOT TO PAY", TTV, 13. MR. ALLEN CLAIMED THAT MR. URAZ WANTED MS. MELKE TO BE BEATEN WITH A BAT AND THAT HE WANTED PROOF THAT IT WAS DONE, TTV 16-17. HE FURTHER CLAIMED THAT MR. URAZ ASKED HIM FOR A GUN FOR MS. MELKE'S BOYFRIEND, TTV, 21-22.

MR. ALLEN CLAIMED THAT HE DECIDED TO TELL A DEPUTY AND WAS ULTIMATELY GRANTED IMMUNITY FOR HIS TESTIMONY IN THIS TRIAL, TTV, 22-23. HE CLAIMED THAT HE SENT ONE KITE AND RECEIVED NO RESPONSE. HE THEN SENT A SECOND KITE  AND WAS ULTIMATELY INTERVIEWED BY DETECTIVE MATT KRUMBACK, TTV, 27. HE IMMEDIATELY ASKED DETECTIVE KRUMBACH IF HE COULD GET OUT OF JAIL AND THE DETECTIVE TOLD HIM THAT HE WOULD TELL HIS PROBATION AGENT THAT HE WAS HELPFUL, TTV, 27-28. MR. ALLEN CLAIMED THAT HE RECEIVED NOTHING FOR HIS TESTIMONY, TTV, 28-29.

ON CROSS-EXAMINATION, MR. ALLEN ADMITTED THAT HE WAS ON RESTRICTION IN THE JAIL BECAUSE HE WAS NOT FOLLOWING THE RULES AND THAT HE WAS IN JAIL BECAUSE OF WHAT HE DID TO HIS GIRLFRIEND, TTV, 31. HE TESTIFIED THAT HE HAD A CHILD ON THE WAY WHEN HE SENT THE KITES, TTV, 50. HE EXPLAINED THAT MR. URAZ APPEARED VERY LOST WHEN HE FIRST ARRIVED AT THE JAIL AND HE BELIEVED THAT IT WOULD BE EASY FOR MR. URAZ TO BE TAKEN ADVANTAGE OF, TTV, 39, 47. HE ADMITTED THAT HE TRIED TO USE THE SITUATION TO GET OUT OF JAIL EARLY AND THAT DETECTIVE

KRUMBACH TOLD HIM HE WOULD SPEAK TO THE JUDGE, TTV, 51. HE ALSO ADMITTED THAT HE WOULD INITIATE CONTACT WITH MR. URAZ, TTV, 56.

AT THIS POINT IN THE PROCEEDINGS THE PROSECUTOR STATED IN FRONT OF THE JURY:

> MR. ROTH: "YOUR HONOR, I AM GOING TO OBJECT. THIS IS THREE MINUTES BETWEEN QUESTIONS. THIS CROSS-EXAMINATION RAMBLES ON FOR HOURS.
> THE COURT: I CAN'T HELP THAT.
> MR. ROTH: WE TOOK A BREAK SO HE WOULD GATHER HIS THOUGHTS.
> THE COURT: I CAN'T PRESS THAT.
> MR. ROTH: THANK YOU.
> THE COURT: THIS IS A SERIOUS MATTER. SO HE CAN UTILIZE WHATEVER STRATEGY HE SO DESIRES. TTV, 60-61.

JAIL DEPUTY SANDRA DOUSE WAS CALLED TO GO OVER THE MOVEMENT RECORDS FROM THE JAIL. THESE RECORDS INDICTED THAT MR. URAZ, MR. CLOSE AND MR. ALLEN WERE ALL IN THE MEDICAL DORM ON SEPTEMBER 27, 2016, TTV 75-87. MR. URAZ, AND MR. CLOSE WERE IN THE MEDICAL DORM TOGETHER UNTIL OCTOBER 5, 2016, TTV, 84-87.

DETECTIVE MATT KRUMBACH TESTIFIED THAT HE GOT A SEARCH WARRANT FOR THE IP ADDRESS RELATED TO THE ATTEMPTS TO CHANGE MS. MELKE'S FACEBOOK PASSWORD, TTV, 118. THE IP ADDRESSES WERE NEVER NORTH POINT APARTMENTS BUILDING C AND THROUGH GPS TETHER HE FOUND THAT MR. URAZ WAS IN THE AREA OF APARTMENT C10 ON AUGUST 27, AND AUGUST 31, 2016, TTV, 119-123. HE DISCOVERED THAT BURAK ATAMER RESIDED IN APARTMENT C10. AFTER MAKING THESE DISCOVERIES HE LEARNED ABOUT ALLEGATIONS OF SOLICITATION OF MURDER AND HE HAD AN INTERVIEW WITH MR. CLOSE, TTV, 127-129. HE CLAIMED THAT HIS INTERVIEWS WITH MR. CLOSE AND MR. ALLEN WERE NOT PROFFER INTERVIEWS, TTV, 130-136. HE REVIEWED VIDEO CHATS BETWEEN MR. URAZ AND MR. ATAMER. HE SAW THAT MR. ATAMER HAD A VIDEO CHAT WITH MR. URAZ ON THE SAME DAY THAT MR. ATAMER PUT $160 ON MR. CLOSE'S ACCOUNT, TTV, 138, 140-141. MR. KRUMBACH ALSO ADMITTED THAT HE KNEW PRIOR TO INTERVIEWING MR. CLOSE THAT MR. CLOSE HAD MADE ANOTHER PROFFER BUT HE DID NOT KNOW THE DETAILS OF THAT PROFFER, TTV, 156-167.

AT THE CLOSE OF THE PROSECUTION'S PROOFS, THE DEFENDANT MADE A MOTION FOR DIRECTED VERDICT ON THE SOLICITATION OF MURDER CHARGES ARGUING THAT THE WITNESSES AGAINST MR. URAZ WERE NOT CREDIBLE AND THAT MR. URAZ WAS ENTRAPPED, TTVI, 52-55. THE TRIAL COURT DENIED THE MOTION, TTVI, 55-58.

MR. URAZ WAIVED HIS RIGHT TO TESTIFY. THE DEFENSE FIRST CALLED MDOC INMATE JOHN PIERCE. MR. PIERCE TESTIFIED THAT HE MET WITH MR. CLOSE IN SEGREGATION AND THAT HE OBSERVED MR. CLOSE AND MR. URAZ TALKING OFTEN, TTVI, 61-64.

MDOC INMATE FATEEN MUHAMMAD TESTIFIED THAT HE WAS IN SEGREGATION WITH MR. ALLEN, TTVI, 68. HE TESTIFIED THAT IN JAIL INMATES ARE TRYING TO FIND A WAY TO GET OUT OF TROUBLE, TTVI, 75. HE STATED THAT HE FOUND MR. URAZ TO BE KIND AND CARING AND OPINED THAT MR. URAZ SHOULD NOT HAVE SHARED ABOUT HIS CASE, TTVI, 77.

DURING HIS CLOSING ARGUMENT, THE PROSECUTOR BEGAN BY EMPHASIZING HOW STRONG THE EVIDENCE WAS IN THE AGGRAVATED STALKING CASE, TTVI, 103-104. THEN THE PROSECUTOR STATED REGARDING MR. CLOSE AND MR. ALLEN, "NEITHER OF THESE MEN HAD ANY INCENTIVE TO DISCLOSE THIS INFORMATION TO THE POLICE." TTVI, 105.

WITHIN A DAY AFTER TRIAL, TRIAL DEFENSE COUNSEL WHO SUFFERS FROM SCHIZOAFFECTIVE BI-POLAR TYPE-1 DISORDER INDUCED BY POLYSUBSTANCE ABUSE HAD A SEVERE MENTAL BREAKDOWN AND WAS HOSPITALIZED, SEE HEARING TRANSCRIPT 12-12-2017. DEFENSE COUNSEL WAS REMOVED FROM HIS CASES FOR THE MONTHS OF DECEMBER (2017) AND JANUARY (2018) AND WAS UNABLE TO REPRESENT MR. URAZ AT HIS SENTENCING.

MR. URAZ WAS SENTENCED TO THREE COUNTS CONCURRENT TERMS OF 200 MONTHS TO 360 MONTHS RESPECTIVELY FOR THE HOMICIDE-SOLICITATION OF MURDER, MCL § 750.157B2, TO RUN CONCURRENT TO CASE NUMBER 16-1064-FH WHERE MR. URAZ WAS SENTENCED TO 36 MONTHS TO 90 MONTHS RESPECTIVELY FOR AGGRAVATED STALKING, MCL § 750.411I.

FURTHER FACTS WILL BE SET FORTH IN THE ISSUES WHERE NECESSARY.

15.

## ISSUE- 1

PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, WHERE TRIAL COUNSEL FAILED TO REQUEST A CONTINUANCE OR WITHDRAW AS COUNSEL WHEN HE WAS NEARING A MENTAL BREAKDOWN WHICH IMPACTED HIS ABILITY TO REASONABLY REPRESENT HIS CLIENT THROUGHOUT THE PROCEEDINGS IN VIOLATION OF U.S. CONST. AMS VI AND XIV 1963 ART. 1 § 20.

### AEDPA APPLICATION AND EXHAUSTION

IN ACCORDANCE WITH 28 § U.S.C.S. 2254 (B)(1), THIS ISSUE HAS BEEN FULLY EXHAUSTED IN THE STATE COURTS. IN ADJUDICATING PETITIONER'S CLAIM, THE STATE COURT'S DECISION WAS BASED ON AN UNRELIABLE CONTRAVENTION OF CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT. § 2254(D)(1) AND UNDER THE UNREASONABLE APPLICATION CLAUSE OF § 2254(D)(2).

THE TRIAL COURT HELD AN EVIDENTIARY HEARING ON THE MATTER AND DENIED RELIEF BASED UPON AN UNREASONABLE APPLICATION OF FACTS AND LAW. 28 U.S.C. § 2254(D)(1)(2).

### LEGAL ANALYSIS OF INEFFECTIVE ASSISTANCE OF COUNSEL AND ITS APPLICATION

TO PREVAIL ON A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL, A CRIMINAL DEFENDANT MUST SHOW THAT COUNSEL'S PERFORMANCE FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS, AND AS A RESULT DEFENDANT SUFFERED PREJUDICE. WIGGINS V. SMITH, 539 U.S. 510, 521; 123 S.CT 2557 (2003); STRICKLAND V. WASHINGTON, 466 U.S. 668. 104 S.CT 2052; 80 L.ED 2D 674 (1984).

TO ESTABLISH PREJUDICE THE DEFENDANT MUST SHOW THAT THERE IS A REASONABLE PROBABILITY THAT, BUT FOR COUNSEL'S UNPROFESSIONAL ERRORS, THE RESULTS OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT. STRICKLAND V. WASHINGTON, 466 AT 694.

### ARGUMENT

IN THE INSTANT MATTER, PETITIONER CONTENDS THAT HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WAS VIOLATED WHEN HIS TRIAL COUNSEL'S (JACOB PERRONE) MENTAL FACULTIES WERE SPERATIC AND RAPIDLY DECLINING THROUGHOUT THE PRE-TRIAL AND TRIAL PROCEEDINGS, AS EVIDENT BY COUNSEL'S NUMEROUS UNREASONABLE ERRORS, APPLICATION

**16.**

OF LAW AND UNPROFESSIONAL BEHAVIOR. ALL THE WHILE CONCEALING HIS MENTAL DECLINATION FROM BOTH THE COURT AND HIS CLIENT AS IT WAS DISCOVERED POST-TRIAL BUT PRIOR TO SENTENCING OF THE PETITIONER THAT TRIAL COUNSEL WAS SUFFERING FROM COMPLICATIONS OF HIS LONG STANDING AND BI-POLAR DISORDER, TO WHICH, THE INGHAM COUNTY PROSECUTORS OFFICE SUCCESSFULLY PETITIONED TO HAVE MR. PERRONE REMOVED FROM ALL COURT CASES IN THAT COUNTY. MR. PERRONE WAS SHORTLY THEREAFTER DETAINED AND HOSPITALIZED.

DURING AN EVIDENTIARY HEARING CONDUCTED PURSUANT TO PEOPLE V. GINTHER, 390 MICH 436; 212 NW2D 922 (1973), THE PROSECUTION PARADED A LITANY OF CO-WORKERS AND COUNTY PROSECUTOR'S WHOM ALL CLAIMED THAT THEY DID NOT NOTICE ANY AFFECT OF HIS MENTAL DISORDERS DURING THE TRIAL, AND THAT IN THEIR OPINION HE DID A GOOD JOB (SIC). THE COURT THEN DENIED RELIEF. (SEE: EH, 10-4-21).

HOWEVER, UPON RECEIPT OF JACOB PERRONE'S HOSPITAL ADMISSION PAPERS DATED NOVEMBER 14, 2017, AT THE REQUEST OF HIS FATHER JOSEPH PERRONE, IT WAS DISCOVERED THAT JACOB PERRONE HAD BEEN SUFFERING AND ACTING OUT FROM COMPLICATIONS OF HIS BI-POLAR DISORDER ON A WEEKLY BASIS FOR THE PAST (2) TWO YEARS PRIOR TO PETITIONER'S TRIAL, DATING AS FAR BACK AS 2015. MR. PERRONE SUFFERED SYMPTOMS TO INCLUDE GRANDIOSE, BELIEVING HE WAS GOD, THREATENING TO KILL HIS WIFE AND DESTROYING EVERYONE. MR. PERRONE EVEN PLANNED TO TAKE OVER LANSING AND RULE WITH AN IRON FIST! (SEE: EXHIBIT-A ). IT WAS LATER DISCOVERED THAT ON AUGUST 17, 2017, JUST PRIOR TO PETITIONER'S TRIAL, MR. PARRONE WENT TO SPARROW HOSPITAL SUFFERING FROM COMPLICATIONS OF HIS DISORDER AND AGAIN IN NOVEMBER OF 2017, BUT CHECKED HIMSELF OUT AGAINST MEDICAL ADVISE.

THE PRIMARY CONCERN IN THIS MATTER IS; WAS TRIAL COUNSEL SUFFERING FROM COMPLICATIONS OF HIS MENTAL DISORDER DURING THE PRE-TRIAL AND TRIAL PHASES OF THIS CASE AT BAR? AND DID IT COMPROMISE HIS PROFESSIONAL JUDGMENT AND DUTIES HE OWED TO PETITIONER AS HIS CLIENT IN TRUST AND AS PETITIONER'S RETAINED COUNSEL? PETITIONER CONTENDS THAT IT DID!

17.

THE AFORE MENTIONED PSYCHIATRIC HOSPITAL ADMISSION DOCUMENTS WHICH WERE FILLED OUT AND SIGNED BY TRIAL COUNSEL'S FATHER, JOSEPH PERRONE WERE OBTAINED BY PETITIONER AFTER THE EVIDENTIARY HEARING ON THE MATTER CONDUCTED IN THE TRIAL COURT. PETITIONER SUBMITTED THE DOCUMENTS TO APPELLATE COUNSEL, SUSSAN K. WALSH AND REQUESTED SHE SUBMIT FOR RECONSIDERATION PROCEEDINGS ON THE ISSUE, HOWEVER, SHE NEGLECTED TO SUBMIT THE REQUEST. THE SAME DOCUMENTS WERE ALSO SENT TO THE TRIAL COURT AND TO MICHIGAN COURT OF APPEALS WHO GAVE NO CONSIDERATION EXCEPT TO QUESTION HOW PETITIONER OBTAINED THE MEDICAL DOCUMENTS, BUT DID NOT RULE THEIR INADMISSIBILITY.

DURING THE EVIDENTIARY HEARING TO DETERMINE COUNSEL INEFFECTIVENESS, TESTIMONY BY INGHAM COUNTY PROSECUTOR, CHARLES KOOP AND JOHNOTHAN ROTH WHO HAD REQUESTED MR. PARRONE'S REMOVAL FROM THE CASE, AS WELL AS ALL OTHERS IN THAT COUNTY, WHO ALSO HAD KNOWLEDGE OF THE PSYCHIATRIC HOSPITAL ADMISSION DOCUMENTS COMPLETELY OMITTED THIS INFORMATION FROM THE POST-TRIAL PROCEEDINGS WHILE CLAIMING THEY DID NOT NOTICE ANY MENTAL DEFICIENCIES OR COMPLICATIONS DURING TRIAL. THIS IS IN STARK CONTRAST TO HIS FATHER'S CLAIM OF KNOWLEDGE, WHO HAS NO STOCK IN THE GAME, THAT IS OWN SON'S MENTAL STABILITY WAS COMPROMISED ON A WEEKLY BASIS FOR THE PAST (2) TWO YEARS, TOGETHER WITH DELUSIONAL THOUGHTS, ASSAULTIVE BEHAVIOR AND BELIVING HE WAS GOD.

PETITIONER CONTENDS THAT THE HEARING WAS A FARCE AND THAT THE TRIAL COURT'S OPINION AND ORDER DENYING A NEW TRIAL WAS BASED ON AN INACCURATE ASSESSMENT OF THE FACTS PRESENTED AS IT WAS CLEARLY ESTABLISHED THAT TRIAL COUNSEL'S MENTAL STABILITY WAS AT ISSUE PRIOR TO, DURING AND AFTER PETITIONER'S TRIAL AFFECTING HIS PERFORMANCE AND THE JURIES DECISION. HAD THESE MEDICAL DOCUMENTS BEEN ADMITTED AND NOT SUPPRESSED, THERE IS A REAL LIKELIHOOD THAT THE OUTCOME OF THE EVIDENTIARY HEARING, PURSUANT TO PEOPLE V. GINTHER, ID. WOULD HAVE HELD A DIFFERENT AND AND NEW TRIAL WOULD HAVE BEEN ORDERED.

LIKEWISE, BUT FOR COUNSEL'S MULTITUDE OF OUTCOME DETERMINATIVE ERRORS, UNPROFESSIONAL AND UNETHICAL BEHAVIORS, MISSUNDERSTANDING AND MISSAPLICATION OF

**18.**

CONTROLLING LAW AND MR. PERRONE'S UNWILLINGNESS TO INVESTIGATE AND PREPARE A MEANINGFUL DEFENSE, PETITIONER'S TRIAL WAS RENDERED FUNDAMENTALLY UNFAIR.

THE FOLLOWING IS A SYNOPSIS OF NOTABLE ERRORS AND BEHAVIORS INDICATING TRIAL COUNSEL'S INEFFECTIVENESS PREJUDICING PETITIONER'S CASE IN CHIEF:

### SUB-ISSUE- A:

### DID PETITIONER'S TRIAL COUNSEL'S MENTAL ILLNESS EFFECT HIS ABILITY TO ADEQUATELY REPRESENT HIS CLIENT DURING PRE-TRIAL AND TRIAL PROCEEDINGS?

PETITIONER CONTENDS THAT HIS STATE AND FEDERAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN HIS TRIAL COUNSEL'S MENTAL ABILITY TO TRY HIS CASE DECLINED DURING TRIAL THAT NEGATIVELY AFFECTED THE OUTCOME AND AS SUCH, PETITIONER HAD A RIGHT TO KNOW HIS COUNSEL WAS SUFFERING FROM THE MENTAL BREAKDOWNS SO THAT HE COULD MAKE A REASONABLE DECISION TO RETAIN ALTERNATIVE COUNSEL. WHILE CONCEDING THAT AN INDIVIDUAL WITH A MENTAL HEALTH CONDITION MAY PROPERLY TRY A CASE WHILE IN GOOD HEALTH AND/OR PROPERLY MEDICATED, THE RECORD SUPPORTS THE CONCLUSION THAT TRIAL COUNSEL, MR. PERRONE, BEGAN HAVING DIFFICULTIES PRIOR TO AND DURING PETITIONER'S TRIAL.

IN MICHIGAN, FAILURE TO INVESTIGATE, PREPARE, OR PRESENT A SUBSTANTIAL DEFENSE HAS BEEN GROUNDS FOR INEFFECTIVE ASSISTANCE. SEE: PEOPLE V. NICKSON, 120 MICH APP 681; 327 NW2D 333 (1982); PEOPLE V. WINANS, 187 MICH 294; 466 NW2D 731 (1991). THE ROLE OF DEFENSE COUNSEL IS TO CHALLENGE THE PROSECUTION'S CASE IN AN ADVERSARIAL PROCESS – TO PRESENT TO THE TRIER OF FACT THROUGH CROSS-EXAMINATION, PRESENTATION OF EVIDENCE, MOTIONS AND ARGUMENT THAT A REASONABLE DOUBT EXISTS AS TO THE ACCUSED GUILT. COURTS HAVE RECOGNIZED THAT AN UNREASONABLE OR HARMFUL TACTIC IS NOT PROTECTED SOLELY BECAUSE IT IS TERMED "STRATEGY." PEOPLE V. STUBLI, 163 MICH APP 376, 380; 413 NW2D 804 (1984); PEOPLE V. DALESSANDRO, 165 MICH APP 569, 577-588; 419 NW2D 609 (1988)(HOLDING THAT STRICKLAND, SUPRA, REQUIRES THAT COUNSEL ENGAGE IN "SOUND TRIAL STRATEGY"). ALSO SEE: BLACKBURN V. FOLTZ, 828 F2D 1177 (CA 6, 1987).

THE SOLICITATION CHARGE AGAINST PETITIONER WAS FAR FROM UNASSAILABLE. "[A]

VERDICT OR CONCLUSION ONLY WEEKLY SUPPORTED BY THE RECORD IS MORE LIKELY TO HAVE BEEN AFFECTED BY ERROR THAN ONE WITH OVERWHELMING RECORD SUPPORT." STRICKLAND, 466 U.S. AT 696.   THE ONLY EVIDENCE AGAINST PETITIONER FOR THESE OFFENSES WERE JAILHOUSE "PROFESSIONAL" INFORMANTS TESTIMONY AND A VAGUE PHONE CONVERSATION WITH AN UNDERCOVER POLICE OFFICER.

GENERALLY, TO ESTABLISH INEFFECTIVE ASSISTANCE OF COUNSEL, A DEFENDANT MUST SHOW:  (1)  THAT  COUNSEL'S  PERFORMANCE  WAS  BELOW  AN  OBJECTIVE  STANDARDS  OF REASONABLENESS UNDER PREVAILING PROFESSIONAL NORMS; (2) THAT THERE IS A REASONABLE PROBABILITY THAT, BUT FOR COUNSEL'S ERROR, THE RESULT OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT; AND (3) THAT THE RESULTANT PROCEEDINGS WERE FUNDAMENTALLY UNFAIR OR UNRELIABLE.   US CONST. AMS VI, XIV; CONST 1963, ART I, § 20, STRICKLAND V. WASHINGTON, 466 U.S. 668; 104 S.CT 2052; 80 L.ED2D 674 (1984).

HERE, TRIAL COUNSEL HAD MENTAL BREAKDOWNS REQUIRING HOSPITALIZATION PRIOR TO AND AGAIN JUST DAYS AFTER PETITIONER'S TRIAL WAS COMPLETED.  (IN CHAMBERS CONFERENCE, 12-12-17 & HEARING, 12-13-17 AT 3).

DURING THE FIFTH DAY OF TRIAL THE PROSECUTOR STATED IN FRONT OF THE JURY:

> "MR. ROTH:
>
> "YOUR HONOR, I AM GOING TO OBJECT.  THIS IS THREE MINUTES BETWEEN QUESTIONS.  THIS CROSS-EXAMINATION RAMBLES ON FOR HOURS."
>
> THE COURT:
> "I CAN'T HELP THAT."
>
> MR. ROTH:
> "WE TOOK A BREAK SO HE WOULD GATHER HIS THOUGHT."
>
> THE COURT:
> "I CAN'T PRESS THAT".
>
> MR. ROTH:
> "THANK YOU".

THE COURT:

"THIS IS A SERIOUS MATTER. SO HE CAN UTILIZE WHATEVER
STRATEGY HE SO DESIRES." (JTV, 60-61).

PETITIONER CONTENDS THAT THIS WAS NO STRATEGY BUT A RED FLAG THAT COUNSEL'S
MENTAL FACULTIES WERE, IN FACT, RAPIDLY DECLINING. ALSO, DURING THIS TIME FRAME,
MR. PERRONE SENT AN E-MAIL TO PETITIONER'S SISTER THAT SUPPORTS A FINDING THAT MR.
PERRONE WAS NEARING A BREAKDOWN. THIS E-MAIL BOASTED THAT HE WAS SURE OF VICTORY
WHILE DISPLAYING A PICTURE OF HIS BARE CHEST AND HIS TATTOO OF A DRAGON, TO WHICH HE
REFERRED HIMSELF TO, CULMINATING INTO AN DERANGED EPISODE OF GRANDIOSITY. THIS E-
MAIL WAS ENTERED INTO RECORD DURING THE SENTENCING PHASE. (SEE: EXHIBIT- B ).
DEFENSE COUNSEL ALSO FAILED TO IMPEACH MR. ALLEN AND MR. CLOSE (JAILHOUSE
INFORMANTS) WITH THEIR PRIOR CONVICTIONS OF THEFT. MR. ALLEN WAS CONVICTED OF
MISDEMEANOR LARCENY, AND MR. CLOSE WAS CONVICTED OF FELONY HOME INVASION 3RD. UNDER
MRE 609 MISDEMEANORS THAT CONTAIN AN ELEMENT OF DISHONESTY OR FALSE TESTIMONY MAY BE
USED FOR IMPEACHMENT PURPOSES. PEOPLE V. ALLEN, 429 MICH 558 (1988). FURTHERMORE, A
REVIEW OF DEFENSE COUNSEL'S EXAMINATION OF THE DEFENSE WITNESSES JURY VOIR DIRE AND
CLOSING ARGUMENT SUPPORTS THE CONCLUSION THAT DEFENSE COUNSEL WAS UNABLE TO PROPERLY
REPRESENT PETITIONER.

AN ATTORNEY'S FAILURE TO PRESENT CERTAIN EVIDENCE CONSTITUTES INEFFECTIVE
ASSISTANCE OF COUNSEL IF IT DEPRIVES THE ACCUSED OF A "SUBSTANTIAL DEFENSE."
WASHINGTON V. TEXAS, 388 U.S. 14, 19; 87 S. CT 1920, 18 L.ED2D 1019 (1967)(THE RIGHT
TO PRESENT A DEFENSE IS ESSENTIAL BECAUSE IT ALLOWS THE DEFENDANT TO PLACE HIS
VERSION OF THE FACTS TO THE JURY SO IT MAY DECIDE WHERE THE TRUTH LIES.") "THE
PROSECUTOR'S CASE MUST BE SUBJECT TO AND SURVIVE THE TRUTH RATHER THAN A ONE-SIDED
REPRESENTATION BY THE PROSECUTION." CALIFORNIA V. TRAMETTA, 467 U.S. 479, 485; 104
S.CT 2528; 81 L.ED2D 413 (1984). "[A]T A MINIMUM...CRIMINAL DEFENDANT'S HAVE A

21.

RIGHT TO...PUT BEFORE THE JURY EVIDENCE THAT MIGHT INFLUENCE THE DETERMINATION OF
'INNOCENCE'." CHAMBERS V. MISSISSIPPI, 410 U.S. 284, 296, 302; 93 S.CT 1038; 35
L.ED2D 297 (1973). THIS RIGHT IS EMBODIED IN U.S. CONST. V, VI, VIV, CONST. 1963,
ART. 1 § 17. INVESTIGATION RELATED TO THE CREDIBILITY OF PROSECUTION WITNESSES IS
INCLUDED IN COUNSELOR'S DUTY. STRICKLAND, ID. **TOWNSEND,**        395 F.3D AT 258.
HERE, THE CREDIBILITY OF THE PROSECUTIONS STAR WITNESSES FOR SOLICITATION TO MURDER
WAS CRITICAL. DEFENSE COUNSEL'S PRESENTATION TO THE JURY AS THE END OF TRIAL WAS
RAMBLING, INCOHERENT, INADEQUATE AND GREATLY PREJUDICIAL TO PETITIONER'S DEFENSE
INDICATING THAT MR. PERRONE'S MENTAL STATE WAS UNSTABLE AND RAPIDLY DETERIORATING
PRIOR TO AND DURING THE TRIAL PROCEEDINGS.


SUB-ISSUE- B:

TRIAL COUNSEL FAILED TO CONTEST THE USE OF INCRIMINATING STATEMENTS OBTAINED IN
VIOLATION OF THE PETITIONER'S SIXTH AMENDMENT RIGHT PURSUANT TO STATE V. MESSIAH,
377 U.S. 201; 84 S.CT 1199 (1964)

IN THIS MATTER, PETITIONER WAS INCARCERATED IN THE INGHAM COUNTY JAIL AWAITING
SENTENCING ON A STALKING CHARGE. WHILE WAITING TO BE SENTENCED, PETITIONER WAS
ARRAIGNED ON A SECOND STALKING CHARGE AGAINST THE SAME SAME ALLEGED COMPLAINANT.
PETITIONER WAS REPRESENTED BY RETAINED COUNSEL (CHRISTOPHER BERGSTROM). DURING THIS
TIME UNDERCOVER INVESTIGATORS IN CONCERT WITH (2) TWO JAILHOUSE CAREER INFORMANTS
DELIBERATELY ELICITED INCRIMINATING STATEMENTS FROM PETITIONER THROUGH THE GUISE OF
MURDER FOR HIRE, SUBSEQUENTLY PETITIONER WAS THEN CHARGED WITH MULTIPLE COUNTS OF
SOLICITATION TO COMMIT MURDER.

THE SIXTH AMENDMENT RIGHT O COUNSEL ENDURES THAT AN ACCUSED RECEIVES THE
ASSISTANCE OF COUNSEL WHEN CONFRONTED WITH "THE INTRICACIES" OF THE LAW. MASSIAH,
ID., WHILE MESSIAH WAS AWAITING TRIAL HE BECAME SUBJECT TO COMPLETELY EXTRA
JUDICIARY ORCHESTRATED PROCEEDINGS DESIGNED TO OBTAIN INCRIMINATING STATEMENTS. THE
COURT FOUND THAT THE AGENTS DELIBERATELY ELICITED THE STATEMENTS FROM THE DEFENDANT

"IN THE ABSENCE OF COUNSEL", AND THE STATEMENTS WERE THEN RULED INADMISSIBLE.  ALSO SEE: MAINE V. MOULTEN, 474 U.S. 159 (1985).  ALTHOUGH THIS RULING LEFT SOME QUESTIONS TO ITS VIABILITY THEREAFTER, THE ISSUE WAS RESOLVED IN BREWER V. WILLIAMS, 430 U.S. 387, 401; 97 S.CT 1232 (1977), IN WHICH THE SUPREME COURT HELD THAT DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN POLICE, POST ARRAIGNMENT ELICITED INCRIMINATING INFORMATION IN THE ABSENCE OF COUNSEL.

PETITIONER'S CASE IS A CARBON COPY OF THE SIXTH AMENDMENT VIOLATION FOUND IN BOTH MASSIAH AND  BREWER, IN THAT, BY INTENTIONALLY CREATING A SITUATION LIKELY OF INDUCING PETITIONER TO MAKE INCRIMINATING STATEMENTS WITHOUT THE ASSISTANCE OF COUNSEL.  THE GOVERNMENT VIOLATED .PETITIONERS SIXTH AMENDMENT RIGHT, ALSO SEE: U.S. V. HENRY, 447 U.S. 264 (1980)

IN THIS MATTER, UNDERCOVER POLICE INVESTIGATOR, MORLEY, ARRANGED A VIDEO VISIT WITH THE INGHAM COUNTY JAIL WHERE HE MET WITH PETITIONER PORTRAYING A KILLER FOR HIRE.  IT IS EVIDENT BY THE VIDEO AND VIDEO TRANSCRIPTS THAT PETITIONER HAD NO IDEA WHO THIS PERSON WAS OR WHY HE WAS THERE.  PETITIONER WAS AN UNWARY PARTICIPANT.  THE UNDERCOVER OFFICER DELIBERATELY ELICITED PETITIONER INTO MAKING INCRIMINATING STATEMENTS AND INFERENCES WHICH WERE USED AS THE BASIS FOR CHARGES AGAINST THE PETITIONER FOR (3) THREE COUNTS OF SOLICITATION TO COMMIT MURDER.

## JAILHOUSE INFORMANTS

THE "DELIBERATELY ELICIT" STANDARD MUST EXTEND TO THE JAILHOUSE INFORMANTS, CHARLES ALLEN AND REGINALD CLOSE AS IT PERTAINS TO ANY ALLEGED INCRIMINATING STATEMENTS THEY CLAIMED THE PETITIONER MADE TO THEM BECAUSE; "THE SUPREME COURT IN U.S. V. HENRY, SUPRA, RULED THAT THE DEFENDANT'S RIGHTS ARE ATTACHED TO THE INFORMANTS AS WELL DUE TO THE COMMENCEMENT OF FORMAL PROCEEDINGS." THE 6TH CIRCUIT COURT FURTHER DEFINED THE ATTACHMENT OF JAILHOUSE INFORMANTS ACTING AS "IMPLIED AGENCY" QUOTING AYERS V. HUDSON, 623 F3D 301, 311-312 (2010).

23.

IN THIS INSTANT MATTER, THERE WAS NO WRITTEN AGREEMENT WITH THE INFORMANTS OTHER THAN IMMUNITY FOR THEIR TESTIMONY. HOWEVER, THEIR AGENCY CAN EASILY BE APPLIED BY THEIR ACTIONS AND THE RECORD AS A WHOLE WHEN:

1) THE INFORMANTS ORIGINAL MOTIVE FOR COMING FORWARD WAS TO TRY AND LESSEN THEIR OWN PENALTIES IN EXCHANGE FOR COOPERATION;

2) THEY ADMITTED TO DELIBERATELY ELICITING INCRIMINATING STATEMENTS FROM THE PETITIONER WHILE ACTING AS CONFIDANTS WHO WERE AIDING IN THE PLANING AND CARRYING OUT OF THE ALLEGED MURDER PLOT;

3) AFTER THEIR CONTACT WITH INVESTIGATORS, THEY WERE BOTH PLACED BACK INTO THE SAME CELL-BLOCK WITH PETITIONER WHERE THEY INITIATED, INDUCED AND GATHERED MORE INCRIMINATING INFORMATION TO AID THE POLICE AND PROSECUTION IN THEIR PURSUIT OF CHARGING PETITIONER WITH SOLICITATION OF MURDER.

4) THEY WERE BOTH KNOWN TO HAVE ACTED AS JAILHOUSE INFORMANTS IN THE PAST AND WERE EACH ACTIVELY INVOLVED AND/OR SEEKING OPPORTUNITY TO "JUMP ON" OTHER CASES IN THE INGHAM COUNTY JAIL AT THE SAME TIME THEY INVOLVED THEMSELVES IN THIS MATTER.

BECAUSE OF THESE LISTED FACTS, "IMPLIED AGENCY" IS APPLICABLE IN DETERMINING THAT THE INFORMANTS WERE, IN FACT, INTIMATELY ATTACHED TO THE INVESTIGATION.

## DELIBERATELY ELICIT STANDARD

THE "DELIBERATELY ELICIT STANDARD" IS APPLICABLE TO PETITIONERS CASE UNDER PETITIONER'S SIXTH AMENDMENT RIGHT TO COUNSEL, AND IS DISTINGUISHABLE FROM FIFTH FELLERS v. UNITED STATES, 540 U.S. 519 (2004). IN THIS MATTER, PETITIONER WAS NOT BEING QUESTIONED BY INVESTIGATORS, HE WAS THE TARGET OF AN UNDERCOVER INVESTIGATION DESIGNED TO ELICIT INCRIMINATING EVIDENCE OF AN ALLEGED ESCALATION OF A STALKING CHARGE FOR WHOM HE HAD RETAINED COUNSEL.

## CLOSE FACTUAL RELATIONSHIP

IN TEXAS v. COBB, 532 U.S. 162 (2001), THE COURT RULED; "THE SIXTH AMENDMENT PROTECTION CANNOT BE USED IN FUTURO OR VIEWED AS PROPHYLACTIC PROTECTION FOR SUSPECTS, 'NOT WITHSTANDING A CLOSE FACTUAL RELATIONSHIP TO THE CHARGED CRIME FORE WHICH THE DEFENDANT HAD COUNSEL'." IN THE CASE AT BAR, THERE IS A DEFINITE "CLOSE

24.

FACTUAL RELATIONSHIP" TO THE CHARGED OFFENSE(S). PETITIONER HAD BEEN ARRAIGNED ON A NEW STALKING CHARGE WHILE AWAITING SENTENCING ON ANOTHER. THEN, WHILE INCARCERATED IN THE INGHAM COUNTY JAIL, THE MATTER ESCALATED TO (3) THREE COUNTS OF SOLICITATION OF MURDER AGAINST THE SAME ALLEGED COMPLAINANT, ERIKA MELKE. THESE MATTERS WERE SO CLOSELY RELATED (REASON BASED ON BEING THE SAME COMPLAINANT BUT NOT BASED ON DIFFERENT CONDUCT OR TRANSACTIONS) THAT THE TRIAL COURT JOINED THE SECOND STALKING CHARGE WITH THE SOLICITATION TO COMMIT MURDER INTO (1) ONE TRIAL USING THEIR RELATIONSHIP AS GROUNDS TO DO SO.

## PREJUDICE

COUNSEL'S FAILURE TO CONTEST THE ILLEGALLY OBTAINED STATEMENTS ON THESE GROUNDS HAS PREJUDICED THE PETITIONER, DEPRIVING HIM OF A SUBSTANTIAL CONSTITUTIONAL RIGHT, BUT FOR COUNSEL'S ERROR THERE IS A REASONABLE PROBABILITY THAT THE OUTCOME WOULD BE DIFFERENT HAD THOSE "DELIBERATELY ELICITED STATEMENTS BEEN SUPPRESSED."

## SUB-ISSUE- C:

TRIAL COUNSEL FAILED TO INVESTIGATE, PRESENT EVIDENCE, OR CONSULT AN EXPERT AFTER ASSERTING THAT PETITIONER'S MENTAL STATE OF MIND AT THE TIME OF THE OFFENSE WOULD UNDERMINE THE SPECIFIC INTENT NECESSARY TO COMMIT SOLICITATION OF MURDER.

IN THIS MATTER, THE EVIDENTIARY HEARING CONDUCTED ON OCTOBER 20, 2017 SET THE STAGE FOR THE REST OF THE PROCEEDINGS. DEFENSE COUNSEL HAD FILED A MOTION TO DISMISS DUE TO ENTRAPMENT AND IN THAT MOTION USED THE PETITIONER'S MENTAL HEALTH AND STATE OF MIND AS A FACTOR IN SUPPORT OF THE MOTION. AT THE OCTOBER 20, 2017 EVIDENTIARY HEARING, DEFENSE COUNSEL FURTHERED THE ASSERTION THAT PETITIONER'S MENTAL STATE SUPPORTED DISMISSAL.

PG. 13:   PETITIONER DESCRIBES HIS DIMINISHED STATE OF MIND DURING THE TIME OF ALLEGED OFFENSE.

PG 106:   DEFENSE COUNSEL ARGUES MENTAL CAPACITY IS AN ISSUE DURING THE TIME OF ALLEGED OFFENSE.

PG 152: The prosecution points out that "no" forensic evaluation has been conducted and defense was asserting that the mental state of defendant was in question.

PG 154-155: Defense counsel argues that he is trying to "provide evidence to the jury" that will undermine specific intent, calling the defendant's mental state diminished due to his circumstances.

PG 155-156: The presiding judge is attempting to clarify defense counsel's argument of diminished capacity versus specific intent. Defense counsel's reply was; "We will figure it out."

Petitioner also provided his counsel documents and correspondence from Dr. Sharon Hobbs, a therapist petitioner was seeing prior to his arrest on the solicitation to murder and second aggravated stalking charges, which clearly pointed to his impaired mental state, with deterioration chaotic emotional state, depression, anxiety, suicidal thoughts and ideology as well as psychosis features.

In January of 2017, the petitioner sent letters to his attorney's Mr. Michael Nichols and Mr. Jacob Perrone requesting, per MCL 768.2a that he would be sent to forensics center for mental health evaluation and also requesting an independent examination be performed to support his defense. This never happened.

## Denied a substantial defense

In the case at bar, there was enough evidence presented to defense counsel that his client's mental state of mind prior to and at the time of the alleged offense was an issue in question. Counsel clearly advanced this argument in his motion and at the evidentiary hearing without the benefit of a mental forensic evaluation, available documents, or an expert witness to support his assertions that petitioner lacked specific intent or criminal responsibility due to his mental state of mind at the time of the alleged offences. Further, a foundation has been laid so that in the very least, a continuance should have been requested in order to conduct the proper forensic evaluation.

The XIV amendment due process clause entitles a defendant to an adjudication to determine his or her mental state of mind. It also entitles a defendant to a competent psychologist who will conduct an appropriate examination to assist the

DEFENSE.

MCLA § 768.20(2)(C) AMD MCLA § 768.36(C) PROVIDE FOR DEFENDANT'S DIMINISHED MENTAL STATE WHO LACK THE APPRECIATION FOR THE WRONGFULNESS OF THEIR ACTIONS DUE TO MENTAL CONDITIONS EITHER PERMANENTLY OR TEMPORARILY.

## PREJUDICE

HAD THE COUNSEL IN THIS CASE PRESENTED ACTUAL AND/OR AVAILABLE EVIDENCE IN CONJUNCTION WITH EXPERT TESTIMONY THERE IS A REASONABLE PROBABILITY THAT THE RESULTS OF THE TRIAL PROCEEDINGS WOULD HAVE BEEN DIFFERENT. STRICKLAND v. WASHINGTON, 466 U.S. 668; 104 S.CT 2052; 80 L.ED2D 674 (1984). COUNSEL'S SCOPE OF INEFFECTIVENESS GOES BEYOND THE EVIDENTIARY HEARING. AT PETITIONERS EVIDENTIARY HEARING, COUNSEL STATED; "THERE IS HIGH INTENT TO PROVIDE THE JURY WITH EVIDENCE THAT WOULD UNDERMINE SPECIFIC INTENT THAT THE DEFENDANT'S WILL WAS OVERBORN DUE TO HIS CIRCUMSTANCES, YET STILL DID NOT REQUEST THAT PROPER FORENSIC TESTING BE CONDUCTED PRIOR TO TRIAL. COUNSEL HAD THE DUTY TO MAKE A REASONABLE DECISION THAT MAKES A PARTICULAR INVESTIGATION UNNECESSARY. STRICKLAND.

WHETHER OF NOT AN INSANITY DEFENSE WAS ASSERTED AT TRIAL, COUNSEL IN THIS CASE HAD THE OBLIGATION TO CONDUCT  FURTHER INVESTIGATIONS BY HIS OWN ADMISSION. COUNSEL'S DECISION TO FORGO ANY INVESTIGATION INTO THE VALIDITY OF HIS CLIENTS MENTAL CONDITIONS OR NOT TO CONSULT AN EXPERT CANNOT BE CONSIDERED SOUND TRIAL STRATEGY. IN THE VERY LEAST A FORENSIC EVALUATION WAS WARRANTED.

IN PEOPLE V. TRAKHTENBERG, 493 MICH 38 (2012), THE COURT STATED; "A DEFENSE ATTORNEY MAY BE DEEMED INEFFECTIVE FOR FAILING TO CONSULT AN EXPERT WHEN COUNSEL HAD NEITHER THE EDUCATION NOR THE EXPERIENCE TO EVALUATE THE EVIDENCE FOR REASONABLE INFORMED DETERMINATION AS TO WHETHER AN EXPERT SHOULD BE CONSULTED AND CALLED TO THE STAND.

IN DANDO V. YUKINS, 461 F3D 791 (2006), THE SIXTH CIRCUIT COURT REVERSED THE PLEA BASED CONVICTION DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO

**27.**

CONSULT AN EXPERT OR INVESTIGATE THE DEFENDANTS ASSERTION OF DURESS AND OTHER MENTAL ISSUES.  IN THIS MATTER, PETITIONER'S COUNSEL'S REPRESENTATION MUST FALL BELOW THE STANDARDS SET FORTH IN <u>STRICKLAND</u>.  NOT ONLY DID PETITIONER'S COUNSEL FAIL TO INVESTIGATE OR CONSULT AN EXPERT, HE ADVANCED THE USE OF PETITIONERS MENTAL STATE AS GROUNDS TO DISMISS WITHOUT ANY SUPPORTING EVIDENCE.


## SUB-ISSUE- D:

TRIAL COUNSEL ADMITTEDLY FAILED TO INVESTIGATE, INTERVIEW OR CALL RELEVANT AND MATERIAL WITNESSES CRUCIAL TO MOUNTING A SUBSTANTIAL DEFENSE, CLAIMING HE WAS NOT BEING RE-IMBURSED FOR WITNESS INVESTIGATIONS IN OTHER PRIOR CASES.

AS A MATTER OF LAW, AN INCOMPLETE INVESTIGATION CAN BE UNREASONABLE, JUST AS WELL AS A COMPLETELY ABSENT INVESTIGATION.  IN <u>RAMONEZ V. BERGHUIS</u>, 490 F3D 482 (CA 6, 2007), COUNSEL WAS FOUND TO BE CONSTITUTIONALLY DEFICIENT FOR NOT MAKING REASONABLE EFFORTS TO INTERVIEW WITNESSES BEFORE COMING TO HIS ULTIMATE CHOICES AT TRIAL.

IN THE CASE AT BAR, DEFENSE COUNSEL'S SOLE REASONING FOR FAILING TO INVESTIGATE THE (30) THIRTY PLUS WITNESSES NAMED ON THE DEFENSE WITNESS LIST WAS BECAUSE OF HIS PAST DIFFICULTIES BEING REIMBURSED FOR HIS TIME WHEN CONDUCTING WITNESS INVESTIGATIONS.  (SEE EH, 10/20"2017, TT PG. 129-132).  IT IS WELL ESTABLISHED THAT COUNSEL HAS A DUTY TO MAKE REASONABLE INVESTIGATIONS OR TO MAKE REASONABLE DECISIONS THAT MAKE A PARTICULAR INVESTIGATION UNNECESSARY.  <u>TOWNSEND V. SMITH</u>, 395 F3D 251, 258 (6TH CIR. 2001)(QUOTING <u>STRICKLAND . WASHINGTON</u>, 466 U.S. AT 691).  THE DUTY ENCOMPASSES THE OBLIGATION TO INVESTIGATE ALL WITNESSES WHO MAY HAVE INFORMATION CONCERNING HIS OR HER CLIENT'S GUILT OR INNOCENCE AND ALTHOUGH A PARTICULAR DECISION TO INVESTIGATE MUST BE DIRECTLY ASSESSED FOR REASONABLENESS IN ALL CIRCUMSTANCES APPLYING A HEAVY MEASURE OF DEFERENCE TO COUNSEL'S JUDGMENTS.  <u>STRICKLAND</u> AT 491. <u>ID</u>. COURTS HAVE NOT HESITATED TO FIND INEFFECTIVE ASSISTANCE IN VIOLATION OF THE SIXTH AMENDMENT WHEN COUNSEL FAILS TO CONDUCT A REASONABLE INVESTIGATION.

In petitioner's case, the defense's theories were as follows:

1) That (2) two jailhouse informants, Mr. Close and Mr. Allen instigated and escalated a scenario in hopes of benefiting from their cooperation, which resulted in an extra judiciary orchestrated proceeding designed to elicit incriminating statements from petitioner.

2) That the defendant was being extorted by Mr. Close.

3) That the defendant's language barrier was a key factor in his misunderstanding of the references used by police investigator Mr. Mobley.

4) That the defendant was suffering from mental conditions that inhibited his ability to have the specific intent to commit the charged offenses.

During an evidentiary hearing conducted on October 20, 2017 the following colloquy took place:

Pg. 124: The prosecution challenged the defense witness list of over (30) thirty people.

Pg. 127: Defense counsel then states he can offer proofs as to people on the list.

Pg. 127: The court inquires as to why the defense was late filing the (30) thirty plus witness list.

Pg. 129: Counsel states that he has had difficulty in the past being reimbursed for witness investigations in an attempt at reasoning why he was not put any effort into investigating of contacting any witness on the list.

Pg. 129-130: The trial judge states; "Let me get this on the record, so that there won't be any dispute with the court of appeals, you do not feel you were adequately compensated for your services on some other cases?"

Pg. 130-133: The court then provides defense counsel with the means to contact and interview his witnesses through prosecutor's office (counsel only contacted (2) two MDOC inmates via video meeting).

Pg. 152: The prosecutor predicts that most of the defense witnesses will fall off anyways.

It is clear that a review of the hearing transcripts, pages 128-152 solidifies a mockery of justice and counsel's complete failure in professional conduct and the ineffective assistance of counsel.

## Other Facts

1)   By the time of trial, defense counsel had contacted only (3) three potential witnesses and called to the stand (2) two witnesses on behalf of the defense.

2)   Counsel did not begin witness investigations until two days before trial.

**29.**

## Witnesses Not Contacted and Their Relevance for Investigation:

1) **Kathy Edmonds:** Defendants next door neighbor knew he had abundance of garbage (trash) that needed to be disposed of from defendants foreclosed home in July of 2016.

2) **Sean Moon:** Was an Ingham County jail inmate worker (trustee) who witnessed the interactions between petitioner and the two jailhouse informants at the time of the solicitations, communications extortion tactics by Mr. Close and Mr. Allen.

3) **Johnathan Foster:** Was and Ingham County jail inmate worker (trustee) who witnessed the interactions between petitioner and the two jailhouse informants at the time of the solicitations, communications extortion tactics by Mr. Close and Mr. Allen.

4) **Chris Shimberger:** He was another Ingham County jail inmate who was also subject to Mr. Close's "case jumping" scheme at or around the same time as petitioner.

5) **Kenneth E. McDaniels:** Subjected to and witnessed Mr. Closes "case jumping" schemes.

6) **Gregory Taylor:** Subjected to and witnessed Mr. Allens "case jumping" scheme.

7) **Tava Jacobs:** Was also subjected to and witnesses Mr. Close's "case jumping" scheme's at or around the same time as petitioner.

8) **Jackie Close:** Mr. Close's brother was subjected to and witnessed his own brother's "case jumping" scheme's at or around the same time as petitioners.

9) **Douglas Smith:** Michigan State University police officer whom knew the petitioner for (20) twenty years was not interviewed or called to testify to petitioner's character.

10) **Mr. Cihat Oz:** Was with petitioner on December 31, 2015 during the Dave & Buster incident.

11) **Mr. Burak Atamer:** Petitioner's roommate who deposited money in Mr. Close's jail inmate account because petitioner was being extorted.

12) **Tim Horan:** Private Investigator who researched Mr. Close's shady background and his current crimes and interviewed Mr. Close's victim and mother-in-law to learn his motive for his habitual "case jumping".

13) **Dr. Sharon Hobbs:** Therapist who was treating petitioner just prior to the alleged offenses from January 2016 to August 2016.

14) **Wellness Mental Health Center:** Therapist mental health records from August 29, 2016 to August 31 2016.

15) **Michigan State University Police Detective Marueen Kennedy:** Knew about the MSU gun incident police report.

16) **Habib Jarwan:** Mr. Hraz's part time work manager would have testified about petitioner's whereabouts on August 27, 2016.

30.

THE RECORD CANNOT BE DISPUTED THAT DEFENSE COUNSEL NEGLECTED HIS DUTIES BECAUSE OF REIMBURSEMENT DIFFICULTIES WITH OTHER INDIGENT CLIENTS AND THE STATES FAILURE TO PAY IN THE PAST. HIS LATE FILING AND UNPROFESSIONAL READINESS TO MAKE GOOD ON HIS STATEMENT TO THE COURT. "THAT HE CAN OFFER PROOFS" AS TO THE WITNESSES LISTED IS ANOTHER CONFIRMATION OF HIS DEFICIENT PERFORMANCE WHEN REPRESENTING PETITIONER. (SEE EH, 10/20/2017, PG. 127-132).

## THE FOLLOWING IS A BRIEF CASE SUMMARY AND POINTS IN SUPPORT OF THE LISTED WITNESSES:

THE PROSECUTION'S SOLICITATION CASE HINGED SOLELY ON WHETHER OR NOT PETITIONER UNDERSTOOD OR KNEW THAT THE UNDERCOVER INVESTIGATOR'S USE OF THE WORDS "TRASH" AND "TAKE OUT TRASH" MEANT "BODIES" OR "DISPOSE OF BODIES." IT SHOULD BE NOTED THAT THE PETITIONERS SECOND LANGUAGE IS ENGLISH. TO ASSUME HE UNDERSTOOD THE REFERENCES OF "TRASH" TO MEAN ANYTHING OTHER THAN "REFUGE" IN THE LITERAL SENSE OF THE WORD IS MATERIAL TO THE PROSECUTIONS CASE AND TO PETITIONERS DEFENSE.

DEFENSE COUNSEL WAS PROVIDED WITH INFORMATION FROM PETITIONER'S NEXT DOOR NEIGHBOR, MS. KATHY EDMONDS FOR (10) TEN YEARS THAT PETITIONER HAD RECENTLY FORECLOSED ON HIS HOME (JUNE 2016), AND DID, IN FACT, HAVE A LOT OF "GARBAGE/TRASH" (REFUGE) AND HOUSEHOLD DISCARDED ITEMS IN HIS GARAGE THAT WAS IN NEED OF DISPOSAL. THIS WITNESS WAS RELEVANT AND WAS ON THE WITNESS LIST AND PRESENT AT THE COURTHOUSE DURING TIME OF TRIAL WILLING TO TESTIFY TO THE FACTS BUT WAS NEVER INTERVIEWED, INVESTIGATED OR CALLED TO THE STAND TO TESTIFY BY DEFENSE COUNSEL. THE INFORMATION WAS MATERIAL TO GUILT OR INNOCENCE AND THE NEXUS BETWEEN THE FACTS OF THE CASE AND HER NEED TO TESTIFY WAS ESTABLISHED. THE INFERENCE BY THE PROSECUTION THAT PETITIONER UNDERSTOOD THE REFERENCES OF THE UNDERCOVER AGENT WAS LEFT UNCHALLENGED.

NEXT, COUNSEL WAS AWARE THAT THE PROSECUTION WITNESS, MR. CLOSE WAS KNOWN TO BE A "CASE JUMPER" AND THAT THIS WAS NOT THE FIRST OR ONLY CASE MR. CLOSE WAS INVOLVED

31.

IN AS AN INFORMANT. IN FACT, COUNSEL WAS PROVIDED WITH BOTH VERBAL AND DOCUMENTED INFORMATION THAT MR. CLOSE HAD BEEN PREVIOUSLY INVOLVED IN AS MANY AS (5) FIVE OTHER CASES IN WHICH HE TESTIFIED ON FOR THE PROSECUTION AND ATTEMPTED TO "CASE JUMP" ON AT LEAST (2) TWO OTHER CASES AT OR AROUND THE SAME TIME HE BECAME INVOLVED WITH THIS INSTANT MATTER. SEE (JOHN PIERCE STATEMENT, EXHIBIT-C).

COUNSEL HAD KNOWLEDGE THAT MR. CLOSE WAS KNOWN TO FABRICATE INFORMATION WHILE GROOMING OTHER UNSUSPECTED INMATES, ESCALATING INVESTIGATIVE SITUATIONS WHILE LAYING THE GROUNDWORK FOR HIS "GOOD SAMARITAN" FACADE IN HOPES OF OBTAINING LENIENCE. THE COURT MADE EVERY EFFORT IN PROVIDING COUNSEL WITH THE MEANS TO CONTACT THESE FIVE + POTENTIAL WITNESSES, HOWEVER, COUNSEL CONTACTED ONLY TWO, MR. PIERCE AND MR. MOHAMMED TWO DAYS BEFORE TRIAL WAS TO COMMENCE.

THE DEFENSE THEORY WAS THAT MR. CLOSE HAD EXTORTED MONEY FROM PETITIONER, TAKING ADVANTAGE OF HIS VULNERABLE STATE OF MIND AND CONDITIONS.

THE RECORD INDICATES THAT COUNSEL HAD SIX MONTHS TO PREPARE FOR TRIAL, YET WAITED UNTIL THE FINAL HOURS TO BEGIN HIS PREPARATION AND INVESTIGATION OF WITNESSES THAT GARNERED NOTHING FOR DEFENSE. HIS LATE FILINGS, LACK OF FILING, DISSATISFACTION WITH REIMBURSEMENT FOR PAST INVESTIGATIONS, UNWILLINGNESS TO CALL WITNESSES OR MOUNT A MEANINGFUL DEFENSE LEFT PETITIONER WITHOUT A SUBSTANTIAL DEFENSE OR AN ABILITY TO IMPEACH.

## DISCUSSION

WHEN COUNSEL'S ABILITY TO ADEQUATELY INVESTIGATE, PREPARE, COMMUNICATE OR PRESENT A CLIENTS CASE IS IMPAIRED BY DISABILITY, COUNSEL'S PERFORMANCE MIGHT WELL BE DEFICIENT UNDER PREVAILING PROFESSIONAL NORMS. IF COUNSEL'S PERFORMANCE WAS DEFICIENT, SOMETIMES FACTUAL DATA INVOLVES EVIDENCE OF DEFENSE COUNSEL'S MENTAL HEALTH. SEE STATE V. LOPEZ, 190 WN2D 104 (2018). WHEN EVALUATING THE EFFECT OF A DISABILITY ON AN ATTORNEY'S PERFORMANCE, THE SAME TEST FOR INEFFECTIVE ASSISTANCE OF

32.

COUNSEL APPLIES AS UNDER STRICKLAND WHILE EVALUATING THE ATTORNEY'S CONDUCT IN LIGHT OF TRIAL AND IN LIGHT OF ALLEGATIONS OF A MENTAL ILLNESS.  LOPEZ ID., PILCHER V. CAMPER, 935 F.2D 149 (8TH CIR. 1991).

IN LOPEZ, A DEFENDANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL'S SEVERE DEPRESSION DURING PRETRIAL AND TRIAL PHASES OF DEFENDANTS CASE PREVENTED HIM FROM PERFORMING BASIS TASKS OF REPRESENTATION AND THE DEFENDANT WAS PREJUDICED AS A RESULT.

IN PETITIONER'S CASE, IT WAS DISCOVERED FOUR DAYS AFTER TRIAL BUT PRIOR TO SENTENCING THAT DEFENSE COUNSEL SUFFERED A SEVERE MENTAL BREAKDOWN AS A RESULT OF HIS BIPOLAR DISORDER WHICH RESULTED IN HIS HOSPITALIZATION.  IT WAS NOT MADE KNOWN THAT DEFENSE COUNSEL WAS HOSPITALIZED FOR MENTAL COMPLICATIONS JUST PRIOR TO TRIAL, BUT OPTED TO CHECK HIMSELF OUT.  WHEN FIGHTING FOR LIFE AND LIBERTY, PETITIONER HAD A RIGHT TO KNOW HIS COUNSEL WAS MENTALLY ILL AND SUFFERING FROM MENTAL HEALTH COMPLICATIONS AT THE TIME OF HIS TRIAL SO OTHER CHOICES COULD HAVE BEEN MADE AS TO ALTERNATE REPRESENTATION.

ON DECEMBER 13, 2017, THE TRIAL COURT HELD ANOTHER HEARING CONFERENCE.  THIS TIME WITH THE PETITIONER BEING PRESENT TO INFORM THE COURT THAT HE WAS BEING APPOINTED A NEW ATTORNEY FOR SENTENCING.

THE EFFECTIVE ASSISTANCE OF COUNSEL INCLUDES MANY THINGS.  IT IS IMPOSSIBLE TO EXHAUSTIVELY DEFINE THE OBLIGATIONS OF COUNSEL OR FORM A CHECKLIST FOR JUDICIAL EVALUATIONS OF AN ATTORNEY'S PERFORMANCE.  NEVERTHELESS, EFFECTIVE REPRESENTATION ENTAILS CERTAIN BASIS DUTIES. SUCH AS LOYALTY, A DUTY TO AVOID CONFLICT OF INTEREST, THE OVERCHARGING DUTY TO ADVOCATE THE DEFENDANTS CAUSE AND MORE PARTICULAR A DUTY TO CONSULT WITH HIS CLIENT AND KEEP HIM REASONABLY INFORMED AT TO TRIAL HAPPENINGS ON IMPORTANT DECISIONS AND TO KEEP HIS CLIENT INFORMED OF IMPORTANT DEVELOPMENTS IN THE CASE.  WHEN REVIEWING THE CASE AT BAR, WITH A SPOTLIGHT ON PETITIONERS COUNSEL'S PERFORMANCE, IT IS EVIDENT THAT AS THE CASE BECAME MORE COMPLEX, HIS PERFORMANCE

FALTERED, BECOMING CONFUSED, INEFFECTIVE AND WITHOUT DIRECTION.

## PRETRIAL ERRORS

During pretrial proceedings conducted on October 20, 2017, following counsel's unsuccessful challenging of entrapment, the court shifted to late filing of a witness for defense. Defense counsel was challenged to validate and offer proofs to each witness on the submitted list. Defense counsel assured the court that he could. However, following some questions and answers by the court judge, it was discovered that he could not offer any substantive proofs. He simply failed to contact and investigate any listed witness. In an attempt to explain away his failure, counsel stated the following:

"I have had difficulties in the past with reimbursement for my time when conducting witness investigations." See (10/10/2017 EH TT pg. 129-132).

This was (10) ten days prior to the start of trial.

Counsel further neglected to address key points of his clients defense such as timely filings, witness investigations, challenging the statements made to undercover police agents under the sixth amendment right to counsel pursuant to Messiah and failure to request a continuance to have a psychiatric evaluation performed after advancing to the court that petitioner's mental deteriorated state of mind at the time of the alleged offense did undermine specific intent. Counsel further failed to present or investigate available documented professional evidence from Dr. Sharon Hobbs in support of his assertion to the court.

## TRIAL ERROR

The transcriped record during jury selections will again reflect conduct which would question defense counsel's professionalism and mental stability when he asked senseless questions to potential jurors and in some instances, he was disrespectful and condescending with regarding innuendos that would inflame most people. See

34.

(10/31/2017 AND 11/02/2017 TT JURY VOIR DIRE).

DURING TRIAL, COUNSEL RESENTED VIRTUALLY NO DEFENSE ON BEHALF OF HIS CLIENT. COUNSEL'S CROSS EXAMINATIONS WERE MEANINGLESS AND CONFUSING, DELUSIONAL AND INCOHERENT AT TIMES. COUNSEL BECAME SO DISENGAGED THAT HIS ASSISTANT, WHO WAS NOT AN ATTORNEY OF RECORD (ERIC SCHROEDER) TOOK OVER THE CROSS EXAMINATION OF ONE OF THE PROSECUTION'S LEAD WITNESS (ERIKA MELKE). CLINICALLY, DEFENSE COUNSEL "CHECKED OUT". A COMMON TRAIT OF BIPOLAR DISORDER. IT SEEMS VERY PROBABLE THAT COUNSEL WAS EXPERIENCING EFFECTS OF HIS BIPOLAR DISORDER DURING THESE PROCEEDINGS REQUIRING FURTHER INVESTIGATION.

MENTAL BREAKDOWNS DUE TO MEDICATION OR NON-MEDICATION COMPLICATIONS DO NOT JUST OCCURRED OVER NIGHT. COUNSEL AS A PROFESSIONAL ADVOCATE HAD THE DUTY TO INFORM HIS CLIENT AND THE COURT. INSTEAD, COUNSEL MAINTAINED A STATE OF DENIAL THAT PREJUDICED THE DEFENSE AND PETITIONER WITH SUBSTANDARD REPRESENTATION. THERE CAN BE NO TACTICAL OR STRATEGIC REASONING AS TO COUNSEL'S LACK OF INVESTIGATION, HIS MISAPPLYING LAWS, HIS CONDUCT OR HIS OVERALL UNPROFESSIONALISM TOWARDS HIS CLIENT, THE COURT AND THE JURY.

EVIDENCE OF COUNSEL'S FAILURE TO ACT BECAUSE HE/SHE "CHECKED OUT" OF THE CASE FOR WHAT EVER REASONING (E.G., SLEEPING, MENTAL HEALTH, DRUG USE, ETC.) IS CERTAINLY RELEVANT TO REBUT THE PRESUMPTION THAT COUNSEL HAD A TACTICAL REASON FOR FAILING TO ACT. LOPEZ ID.

THE ISSUE OF AN ATTORNEY'S INEFFECTIVENESS DUE TO UNSTABLE MENTAL CONDITIONS WAS ALSO ADDRESSED IN UNITED COIN METER CO. v. SEABOARD COATLINE PR, 705 F2D 839, 846 (6TH CIR. 1983), ADOPTING WHAT IS REFERRED TO AS THE "UNITED COIN METER TEST" WHERE ONE MUST SHOW EXCEPTIONAL OR EXTRAORDINARY CIRCUMSTANCES EXIST THAT WOULD JUSTIFY RELIEF, AND IN DOING SO, SHOW COUNSEL'S GROSS NEGLIGENCE AS A BASIS FOR RELIEF FROM JUDGMENT. THIS COURT SHOULD FOCUS ON "NEGLECT" OF COUNSEL. ALSO SEE, PIONEER INVESTMENT SERVICE CO. 507 U.S. AT 397.

35.

In the instant case, details of counsel's mental illness was not brought to light until counsel responded to an attorney grievance filed by petitioner in July of 2018. It was revealed that counsel did in fact suffer a mental breakdown just days after the trial because of a possible medication or non-medication impalance, exacerbated with personal issues. On December 12 and 13, 2017, the court did not specify details as to why counsel was being removed from petitioners case, nor did the prosecution explain why they were requesting counsels removal. See December 12 & 13, 2017 TT. When reviewing the record as a whole, including post-trial correspondences from counsel to petitioner's family, there is a real likelihood that counsel was suffering from complications of his illness prior to his hospitalization and throughout most of the proceedings.

## Bipolar Disorder

Bipolar disorder is recognized by the American Psychiatric Association and is listed in the American Psychiatric Association Diagnostics and Statistical Manual of Mental Disorders. The disorder is biochemically in nature and involves abnormal levels of neurotransmitters in the brain which involves trigger cycles between manic and depressive phases of the illness.

Symptoms of bipolar disorder is often displayed in erratic behavior, instability, depression inflated self-esteem, decreased sleep, distraction, flights of fancy, agitation or engaging in dangerous activities. In extreme cases, the disorder can cause manic depression and even psychosis requiring immediate hospitalization which is what transpired in this case. Additionally, the rate in which a person swings from one extreme to another can vary between a few hours to several months. A typical phase lasts two to three weeks.

In the case at bar, there has been no meaningful inquiry into counsel's conduct or the effects of his illness as it pertains to counsels ability to effectively

36.

REPRESENT HIS CLIENT. WE DO KNOW THAT COUNSEL'S BIPOLAR REACHED A LEVEL THAT REQUIRED HIM TO BE REMOVED FROM THE INGHAM COUNTY COURT SYSTEM TO INCLUDE BEING REMOVED FROM PETITIONERS CASE AT SENTENCING. OSTENSIBLY CLOSING THE BARN DOOR AFTER THE HORSE GOT OUT. ATTORNEY'S AND JUDGES MAY HAVE DISABILITIES OF ALL KINDS TO INCLUDE MENTAL AS WELL AS PHYSICAL BUT THAT ALONE DOES NOT DISABLE THEM FROM PRACTICING LAW OR ADJUDICATING CASES. THE ABILITY TO BE EFFECTIVELY PROFESSIONAL DEPENDS INSTEAD ON ACTUAL EFFECT OF THE DISABILITY. LOPEZ. WHEN CONNECTING THE DOTS IN THIS MATTER, COUNSEL'S FAILURES AND UNPROFESSIONAL DEMEANORS, THUSLY, BECOMES EXPLAINABLE.

PETITIONER CONTENDS THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS A RESULT OF HIS COUNSELS ILLNESS APPARENT PRIOR TO AND DURING HIS TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION RENDERING HIS TRIAL FUNDAMENTALLY UNFAIR.

## CONCLUSION

PETITIONER HAS ESTABLISHED THAT "THE STATE COURT ARRIVE[D] AT A CONCLUSION OPPOSITE TO THAT REACHED BY THE [SUPREME COURT] ON A QUESTION OF LAW OR... DECIDED THIS CASE DIFFERENTLY THAN THE SUPREME COURT HAS ON A SET OF MATERIALLY INDISTINGUISHABLE FACTS. METISH V. LANCASTER, 569 U.S. 351, 357 N.2 (2013) (INTERNAL QUESTION MARKS AND CITATIONS OMITTED). UNDER THE "UNREASONABLE APPLICATION" CLAUSE OF § 2254(D)(1) ° (2), PETITIONER HAS ESTABLISHED THAT, AFTER HE IDENTIFIED THE CORRECT GOVERNING LEGAL PRINCIPLE FROM THE SUPREME COURT'S DECISION, [THE STATE COURT] UNREASONABLY APPLIED THAT PRINCIPLE TO THE FACTS OF HIS CASE. HILL V. CURTIN, 792 F.3D 670, 676 (6TH CIR. 2015)(EN BANC). THE STATE COURT'S DECISION WAS SO LACKING IN JUSTIFICATION THAT THERE WAS AN ERROR WELL UNDERSTOOD AND COMPREHENDED IN EXISTING LAW BEYOND ANY POSSIBILITY FOR FAIRMINDED DISAGREEMENT. WIGGINS V. SMITH, 539 U.S. 510, 520-521 (2003).

HABEAS CORPUS RELIEF SHOULD BE GRANTED.  IN THE ALTERNATIVE, A COA (CERTIFICATE OF APPEALABILITY) SHOULD BE GRANTED BECAUSE THE ISSUE IS NOT PLAINLY FRIVOLOUS AND A [FAIRMINDED JURIST COULD CONCLUDE THERE IS A REASONABLE PROBABILITY THAT HAD PETITIONER'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED, THE ERROR WOULD HAVE CHANGED THE OUTCOME OF TRIAL].

*   *   *

38.

## ISSUE- II

PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY WHEN JUROR #2 CONCEALED HIS USE OF A DUAL IDENTITY AND WHERE HIS DISHONESTY WOULD HAVE PROVIDED A VALID BASIS TO CHALLENGE FOR CAUSE.

### AEDPA APPLICATION AND EXHAUSTION

IN ACCORDANCE WITH 28 § U.S.C. 2254(B)(1), THIS ISSUE HAS BEEN FULLY EXHAUSTED IN THE STATE COURTS. IN ADJUDICATING PETITIONER'S CLAIM, THE STATE COURT'S DECISION WAS BASED ON AN UNRELIABLE CONTRAVENTION OF CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT, § 2254(D)(1).

ON JULY 13, 2023, PETITIONER REQUESTED BUT WAS DENIED AN EVIDENTIARY HEARING IN ACCORDANCE WITH REMMER V. UNITED STATES, 347 U.S. 227, 229-230 (1954).

### LEGAL ANALYSIS OF JUROR BIAS AND IT'S APPLICATION

TO SUCCEED ON A CLAIM OF JUROR DISHONESTY AND BIAS DURING VOIR DIRE, A PETITIONER MUST FIRST DEMONSTRATE THAT A JUROR FAILED TO ANSWER HONESTLY, A MATERIAL QUESTION... AND THEN FURTHER SHOW THAT A CORRECT RESPONSE WOULD HAVE PROVIDED A VALID BASIS FOR A CHALLENGE FOR CAUSE. McDONOGH POWER EQUIP', V. GREENWOOD, 464 U.S. 548, 556 (1984); CLEMMONS V. SOWDENS, 34 F.3D 352, 355 (6TH CIR. 1994)

FED R. EVID. 606(B)(1) STATES IN RELEVANT PART; "A POST CONVICTION MOTION FOR A NEW TRIAL ON THE GROUNDS OF VOIR DIRE DISHONESTY PLAINLY ENTAILS 'AN INQUIRY INTO THE VALIDITY OF THE VERDICT'." IF A JUROR WAS DISHONEST DURING VOIR DIRE AND ANY HONEST ANSWER WOULD PROVIDE A VALID BASIS TO CHALLENGE THAT JUROR FOR CAUSE, THE VERDICT MUST BE INVALIDATED. WAGNER V. SHAVER, 574 U.S. 40, 45 (2014)(QUOTING McDONOGH POWER EQUIP' V. GREENWOOD AT 556 ID.)

### ARGUMENT

IN MAY OF 2023, PETITIONER RETAINED THE SERVICES OF PRIVATE INVESTIGATOR, CHARLES W. MARTELL (AGENCY NO. 3701206460) OF HAMILTON RESEARCH ASSC. LLC. MR.

MARTELL, A (10) TEN YEAR VETERAN POLICE OFFICER WAS ASKED TO CONTACT AND INVESTIGATE JUROR'S #1, #2, #11 AND HIS CHOICE OF A FORTH JUROR FOR A RANDOM VALID INQUIRY INTO THE DISCREPANCIES ASSOCIATED WITH JUROR #2, MR. NASHON.  IN HIS INVESTIGATIONS PERFORMED, MR. MARTELL DISCOVERED THE FOLLOWING EVIDENCE:

JUROR #2 WAS BORN IN 1972 WITH THE BIRTH NAME, RYAN GIBBS CARTER.  HE RECEIVED HIS FIRST DRIVERS LICENSE AT THE AGE OF 16 WITH THE NAME, RYAN GIBBS CARTER, LICENSE NO. C637-755-279-574.  ACCORDING TO THE MICHIGAN SECRETARY OF STATE (M.S.O.S.) RYAN GIBBS CARTER HELD (5) FIVE DIFFERENT MICHIGAN DRIVERS LICENSE NUMBERS UNDER THE NAME CARTER UNTIL HE LEGALLY CHANGED HIS NAME IN 2023 TO RYAN GIBBS PETTY, MICHIGAN DRIVERS LICENSE NO. P300-755-279-574. (EXHIBIT- D )

THE SIGNIFICANCE OF THIS INFORMATION BECOMES RELEVANT WHEN IN 2017 HE FALSELY REPRESENTED HIMSELF TO THE INGHAM COUNTY COURT SYSTEM USING THE NAME, RYAN GIBBS PETTY, ACCORDING TO JUROR COORDINATOR, GLORIA MCGRUYER, AND INGHAM COUNTY COURT ADMINISTRATOR, SCOTT LEROY.  IT WAS FURTHER DISCOVERED BY INVESTIGATOR, MARTELL THAT IN 1990, 2001, 2004, ACCORDING TO VOTER REGISTRATION RECORDS, THAT RYAN GIBBS CARTER VOTED UNDER THE NAME CARTER AND THAT THIS SAME PERSON VOTED UNDER THE NAME RYAN GIBBS PETTY IN 1996, 2008, 2016 AND 2022.  THIS SAME MAN EITHER COMMITTED A CRIME OF VOTING FRAUD UNDER THE NAME CARTER, OR COMMITTED A CRIME WHEN VOTING UNDER THE NAME PETTY.  HE DID NOT LEGALLY CHANGE HIS NAME TO PETTY UNTIL 2023.

FURTHER, IN 2018 THIS SAME PERSON RECEIVED A SPEEDING TICKET USING THE RYAN GIBBS CARTER ONE YEAR AFTER HE CLAIMED HIS NAME WAS PETTY.  THE RECORD ALSO INDICATES CONFIRMATION THAT THIS IS THE VARY SAME MAN PURSUANT TO IDENTICAL SOCIAL SECURITY NUMBERS THROUGHOUT THE YEARS OF MR. CARTER OR PETTY'S DUAL IDENTITY LIFE APPLICATIONS.

THERE IS NO DOUBT THAT LITIGANTS HAVE AN UNQUESTIONABLE RIGHT TO TRUTHFUL

40.

ANSWERS FROM A PROSPECTIVE JUROR AND THAT ON VOIR DIRE TRIAL COUNSEL HAS A RIGHT TO RELY ON THE TRUTHFULNESS OF A JURY QUESTIONAIRE AS IT IS DESIGNED TO PROVIDE A BASIS FOR INTELLIGENT CHALLENGING. PEOPLE V. SCHRAM, 378 MICH 145 (1966).

IN 2017, MR. RYAN GIBBS CARTER REPRESENTED HIMSELF AS RYAN GIBBS PETTY TO THE INGHAM COUNTY COURT SYSTEM, AND PROCEEDED WITH THE SAME NAME PETTY ON HIS JUROR QUESTINAIRE AND THROUGHOUT VOIR DIRE. HE DID NOT LEGALLY CHANGE HIS NAME UNTIL 2023 TO PETTY. A HISTORICAL ANALYSIS OF RYAN GIBBS CARTER REVEALED, VOTER FRAUD, BANKRUPTCY, TRAFFIC VIOLATIONS AND MULTIPLE DRIVERS LICENSES ISSUES TO THIS MAN, TO WHICH IT APPEARS HE USED AT HIS CONVENIENCE IN AN ATTEMPT TO CONCEAL OR DISGUISE HIS ACTUAL IDENTITY FROM PUBLIC, COURTS, GOVERNMENT AND FROM PETITIONER. THESE FACTS BRING FORTH A VALID BASIS TO CHALLENGE FOR CAUSE IN WHICH PETITIONER WAS DEPRIVED OF. MCDONOGH AT 556 ID.

## ASSERTED NEED FOR AN EVIDENTIARY HEARING

IN THIS MATTER, AN EVIDENTIARY HEARING IS WARRANTED AND REQUIRED PURSUANT TO REMMER V. UNITED STATES, 347 U.S. 227, 229-230 (1954) IN ORDER TO ANSWER THE QUESTIONS PRESENTED AND TO MAKE A VALID RECORD FOR A PROPER APPEAL. THE STATE COURTS REFUSAL TO HOLD AN INQUIRY HAS DENIED PETITIONER HIS DUE PROCESS RIGHTS AS THERE IS MORE THAN ENOUGH VALID INFORMATION TO JUSTIFY THE NEED.

## CONCLUSION

PETITIONER HAS ESTABLISHED THAT "THE STATE COURT ARRIVE[D] AT A CONCLUSION OPPOSITE TO THAT REACHED BY THE [SUPREME COURT] ON A QUESTION OF LAW OR... DECIDED THIS CASE DIFFERENTLY THAN THE SUPREME COURT HAS ON A SET OF MATERIALLY INDISTINGUISHABLE FACTS. METISH V. LANCASTER, 569 U.S. 351, 357 N.2 (2013) (INTERNAL QUESTION MARKS AND CITATIONS OMITTED). UNDER THE "UNREASONABLE

41.

APPLICATION" CLAUSE OF § 2254(D)(1) & (2), PETITIONER HAS ESTABLISHED THAT, AFTER HE IDENTIFIED THE CORRECT GOVERNING LEGAL PRINCIPLE FROM THE SUPREME COURT'S DECISION, [THE STATE COURT] UNREASONABLY APPLIED THAT PRINCIPLE TO THE FACTS OF HIS CASE. HILL V. CURTIN, 792 F.3D 670, 676 (6TH CIR. 2015)(EN BANC). THE STATE COURT'S DECISION WAS SO LACKING IN JUSTIFICATION THAT THERE WAS AN ERROR WELL UNDERSTOOD AND COMPREHENDED IN EXISTING LAW BEYOND ANY POSSIBILITY FOR FAIRMINDED DISAGREEMENT. WIGGINS V. SMITH, 539 U.S. 510, 520-521 (2003).

HABEAS CORPUS RELIEF SHOULD BE GRANTED. IN THE ALTERNATIVE, A COA (CERTIFICATE OF APPEALABILITY) SHOULD BE GRANTED BECAUSE THE ISSUE IS NOT PLAINLY FRIVOLOUS AND A [FAIRMINDED JURIST COULD CONCLUDE THERE IS A REASONABLE PROBABILITY THAT HAD PETITIONER'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED, THE ERROR WOULD HAVE CHANGED THE OUTCOME OF TRIAL].

LASTLY, PETITIONER REQUEST THIS COURT GRANT A REMMER HEARING IN THIS MATTER FOR THE REASONS SET FORTH ABOVE.

*   *   *

## ISSUE- III

THE SIXTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION GUARANTEES A CRIMINAL DEFENDANT WILL RECEIVE A FAIR TRIAL BY AN IMPARTIAL AND UNBIASED JURY. U.S. CONST. AMEND. VI & XIV, CONST. 1963 ART. 1 & 20.

### AEDPA APPLICATION AND EXHAUSTION

THIS CLAIM OF ERROR WAS FULLY EXHAUSTED IN THE STATE COURTS AND IS ELIGIBLE FOR HABEAS REVIEW. 28 U.S.C. § 2254(B)(1).   THE STATE COURT'S OPINION AND ORDER IS CONTRARY TO FEDERAL LAW AND UNITED STATES SUPREME COURT PRESIDENT.

### ARGUMENT

THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION GUARANTEES PETITIONER WILL RECEIVE A FAIR AND IMPARTIAL TRIAL BY AN IMPARTIAL AND UNBIASED JURY.  U.S. CONST. AMEND. VI AND XIV, 1963 ART. 1 § 20.  THE TRIAL COURT "MUST" TAKE APPROPRIATE STEPS TO ENSURE THAT JURORS WILL NOT BE EXPOSED TO INFORMATION OR INFLUENCES THAT COULD AFFECT THEIR ABILITY TO RENDER AN IMPARTIAL VERDICT, BASED ON THE EVIDENCE ADMITTED IN COURT.

IN THIS CASE, ON THE THIRD DAY (11/03/2017) OF TRIAL PROCEEDINGS, JUROR NO. 1, (LARRY R. NISHON) INFORMED THE COURT CLERK OF A BIAS HE HAS TOWARDS THE DEFENDANT DUE TO HIS TURKISH DECENT.

DEFENCE COUNSEL REQUESTED THE COURT TO CONDUCT AN INQUIRY INTO THE MATTER. (SEE: TT, PAGE 5, 11/03/2017).  HOWEVER, THE PRESIDING JUDGE, WITHOUT FURTHER INQUIRY INTO THE ISSUE, MADE AN ASSUMPTION THAT JUROR NUMBER ONE WAS LOOKING FOR A WAY TO BE EXCUSED, BASED ON HIS EXPERIENCE IN OTHER CASES. (SEE: TT, PAGES 3-4). THE COURT'S ONLY REMEDY WAS TO STRIKE JUROR NUMBER ONE AFTER THE CLOSING ARGUMENTS AND PROOFS THREE DAYS LATER ON NOVEMBER 9, 2017.

DURING JUROR SELECTIONS, PROSPECTIVE JURORS WERE ADVISED BY DEFENSE COUNSEL THAT THE ISSUE OF RACE WAS GOING TO BECOME A TOPIC STATING: "THE ISSUE THAT IS AT A

FOCAL POINT OF OUR NATION." (SEE: TT, 10/31/2017, PAGE 96). ADDITIONALLY, JURORS WERE ASKED BY DEFENSE COUNSEL IF ANYONE ASSOCIATED WITH INTERNATIONAL NATURE OF THIS CASE THAT WOULD PROVIDE ANY TYPE OF INABILITY TO BE FAIR AND IMPARTIAL. (SEE: TT, 10/31/2017, PAGE 140). AND AGAIN ON THE SECOND DAY OF TRIAL, THE PRESIDING JUDGE ADDRESSED THE ENTIRE JURY PANEL ABOUT THE ISSUE OF BIAS. (SEE: TT, 11/02/2017, PAGE 5).

PETITIONER IN THIS MATTER IS, IN FACT, A U.S. BORN TURKISH/AMERICAN MUSLIM. IT IS WELL KNOW THE CLIMATE THIS ISSUE CREATES AMONG MANY AMERICANS CONCERNING A TURKISH MUSLIM ACCUSED OF A HORRIFIC CRIME AND TO KNOWINGLY ALLOW AN ETHNICALLY BIAS JUROR TO REMAIN ON A JURY PANEL FOR THE FULL (6) SIX DAYS WITHOUT AN INQUIRY, HEARING OR A CAUTIONARY INSTRUCTION AND ALLOWED THE ONE BIAS JUROR TO INFECT THE OTHER JURORS WITH A POTENTIAL BIAS THEMSELVES IS A MISCARRIAGE OF JUSTICE. THE TRIAL COURT FAILED TO PROTECT PETITIONERS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY AN IMPARTIAL JURY AS THERE IS NOW, NO WAY OF DETERMINING HOW OR IF THIS JUROR'S PRESENCE AFFECTED THE OTHER JURY MEMBERS OPINIONS, INFERENCES, DISCUSSIONS, BIASES OR DECISION MAKING PROCESS.

IN UNITED STATES V. DAVIS, 177 F3D 522 (CA 6, 1999) THE SIXTH CIRCUIT COURT OF APPEALS RULED THAT THE LOWER COURT ERRED WHEN IT FAILED TO QUESTION THE JURY ABOUT THE AFFECTS OF PREJUDICIAL EXTRANEOUS INFORMATION WHEN A JUROR ASKED TO BE EXCUSED BECAUSE OF FEAR OF RETALIATION WHICH HE DISCUSSED WITH OTHER JURORS. THAT COURT ALSO EXCUSED THE JUROR, BUT DETERMINED THAT AN INQUIRY INTO THE MATTER WAS NECESSARY TO ENSURE AN IMPARTIAL JURY.

IN THIS CASE, THERE WAS NO INQUIRY CONDUCTED AND WE HAVE NO WAY OF KNOWING IF JUROR NUMBER ONE'S PERSONAL BIAS WAS EXPOSED TO ANY OTHER JUROR NOR TO WHAT EXTENT HIS PREJUDICE LIES. BECAUSE THERE WAS NO INQUIRY INTO THE MATTER, WE HAVE NO RECORD IN WHICH TO GAGE THIS JUROR'S BIAS OR THE INFLUENCE HE MAY HAVE HAD ON THE REST OF THE JURORS. IN MICHIGAN, A GOOD EXAMPLE OF APPROPRIATE STEPS THE TRIAL COURT SHOULD

44.

HAVE TAKEN TO ENSURE AN IMPARTIAL JURY WAS PANELED CAN BE FOUND IN PEOPLE V. JACKSON, 292 MICH APP 583 (2001) WHERE THAT COURT DID NOT COMMIT ERROR BECAUSE IT QUESTIONED THE DISMISSED JUROR WHICH DID NOT REVEAL ANYTHING SUGGESTING THAT THE OTHER JURORS HAD BEEN INFLUENCED. IN THIS CASE, PETITIONER WAS NOT AFFORDED THAT SAME PROTECTION AGAINST A POTENTIALLY IMPARTIAL JURY WHERE A SIMPLE INQUIRY COULD HAVE REMEDIED THE ERROR. THE TRIAL COURT'S REFUSAL TO CONDUCT A NECESSARY INQUIRY INTO THE MATTER HAS DENIED PETITIONER THE ONLY OPPORTUNITY HE HAD TO DEVELOP AN ACCURATE RECORD OF THIS ISSUE.

A BIAS JUROR CONSTITUTES A STRUCTURAL ERROR. FRANKLIN V. ANDERSON, 2002 U.S. DIST. LEXIS 26814, QUOTING "JUROR'S ARE TREATED AS PARTIAL JUDGES." FURTHERMORE, IN STATE V. WILBOURN, 2018 WASH APP LEXIS 1442, THAT COURT DETERMINED THAT AN ACTUAL BIAS JUROR SITTING ON A CRIMINAL CASE CANNOT BE "HARMLESS". IT REQUIRES A NEW TRIAL WITHOUT HAVING TO SHOW PREJUDICE. HUGHES, 258 F3D AT 453 (QUOTING U.S. V. GONZALEZ, 214 F3D 1109, 1111 (9TH CIR. 2000). IN CALDWELL V. STATE, 780 A 2D 103 AT HN 27-29 THE COURT OPINED THAT A JUROR'S POTENTIAL BIAS DISCOVERED DURING TRIAL WILL TAINT THE JURY'S VERDICT. THE DECISION TO SEAT A BIASED JUROR CANNOT BE A DISCRETIONARY OR STRATEGIC DECISION. ID. AT 463 (CITING U.S. V. MARTINEZ, 528 US 304, 145 L ED. 2D 792; 120 S. CT 774 (2000).

IN THIS CASE, THE TRIAL COURT'S DECISION TO ALLOW AN ETHNICALLY BIAS JUROR TO REMAIN ON THE JURY PANEL FOR AN ADDITIONAL THREE DAYS AFTER BEING NOTIFIED OF THE BIAS, THEN TO FORGO ANY INQUIRY RESULTED IN A STRUCTURAL ERROR WARRANTING HABEAS RELIEF.

## CONCLUSION

PETITIONER HAS ESTABLISHED THAT "THE STATE COURT ARRIVE[D] AT A CONCLUSION OPPOSITE TO THAT REACHED BY [THE SUPREME COURT] ON A QUESTION OF LAW OR... DECIDE[D] THIS CASE DIFFERENTLY THAN [THE SUPREME COURT] HAS ON A SET OF MATERIALLY

45.

INDISTINGUISHABLE FACTS.  METISH v. LANCASTER, 569 U.S. 351, 357 N.2 (2013) (INTERNAL QUESTION MARKS AND CITATIONS OMITTED).  UNDER THE "UNREASONABLE APPLICATION" CLAUSE OF § 2254(D)(1)&(2), PETITIONER HAS ESTABLISHED THAT, AFTER HE IDENTIFIED THE CORRECT GOVERNING LEGAL PRINCIPLE FROM THE SUPREME COURT'S DECISIONS, [THE STATE COURT] UNREASONABLY APPLIE[D] THAT PRINCIPLE TO THE FACTS OF HIS CASE. HILL v. CURTIN, 792 F.3D 670, 676 (6TH CIR. 2015)(EN BANC).  THE STATE COURT'S DECISION WAS SO LACKING IN JUSTIFICATION THAT THERE WAS AN ERROR WELL UNDERSTOOD AND COMPREHENDED IN EXISTING LAW BEYOND ANY POSSIBILITY FOR FAIRMINDED DISAGREEMENT. ID.  WIGGINS v. SMITH, 539 U.S. 510, 520-521 (2003).

HABEAS CORPUS RELIEF SHOULD BE GRANTED.  IN THE ALTERNATIVE, A COA (CERTIFICATE OF APPEALABILITY) SHOULD BE GRANTED BECAUSE A "[FAIR-MINDED JURIST COULD CONCLUDE THERE IS A REASONABLE PROBABILITY THAT HAD PETITIONER'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED, THE ERROR WOULD HAVE CHANGED THE OUTCOME OF TRIAL.

* * *

46.

## ISSUE- IV

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE COURT'S DECISION DENYING HIS MOTION FOR SEVERANCE, WHERE THE SHEER NUMBER OF PRIOR BAD ACTS, AS WELL AS UNRELATED AND UNFOUNDED ALLEGATIONS ADMITTED INTO EVIDENCE RESULTED IN AN UNFAIR PREJUDICIAL TACTICAL ADVANTAGE IN VIOLATION OF UNITED STATES SUPREME COURT PRESIDENT.

### AEDPA APPLICATION AND EXHAUSTION

IN ACCORDANCE WITH 28 U.S.C.S. 2254 (B)(1), THIS ISSUE HAS BEEN FULLY EXHAUSTED IN THE STATE COURTS. IN ADJUDICATING PETITIONER'S CLAIM, THE STATE COURT'S DECISION WAS BASED ON AN UNRELIABLE CONTRAVENTION OF CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT. § 2254(D)(1) AND UNDER THE UNREASONABLE APPLICATION CLAUSE OF § 2254(D)(2).

### ARGUMENT

ALTHOUGH, "IMPROPER JOINDER DOES NOT IN ITSELF VIOLATE THE UNITED STATES CONSTITUTION," UNITED STATES VS. LANE, 474 U.S. 438, 446 N8; 106 S.CT 725; 88 L.ED2D 814 (1986), IN PETITIONER'S INSTANT CASE, IT HAS.

FOR PETITIONER TO OBTAIN FEDERAL HABEAS RELIEF ON IMPROPER JOINDER/MIS JOINDER CLAIMING A VIOLATION OF STATE LAW, PETITIONER "MUST SHOW" THAT MIS JOINDER OF THE COUNTS RESULT[ED] IN PREJUDICE SO GREAT AS TO DENY [H]IM HIS... RIGHT TO A FAIR TRIAL. DAVIS VS. COYLE, 475 F.3D 761, 777 (6TH CIR. 2007). (QUOTING LANE), "WITHOUT QUESTION A RISK OF UNDUE PREJUDICE EXISTS WHENEVER JOINDER OF COUNTS PERMITS INTRODUCTION OF EVIDENCE OF OTHER CRIMES THAT WOULD OTHERWISE BE INADMISSIBLE". ID. (EMPHASIS ADDED).

TO JUSTIFY A GRANT OF HABEAS RELIEF, A PETITIONER MUST SHOW "ACTUAL PREJUDICE AND NOT MERELY THE POTENTIAL FOR PREJUDICE". DAVIS, 475 F.3D AT 777. IN THE INSTANT CASE, THE MICHIGAN COURT'S ERRONEOUSLY DETERMINED THAT JOINDER OF A SECOND

AGGRAVATED STALKING CHARGE, MCL § 750.411I WITH THE LATTER THREE COUNTS OF
SOLICITATION OF MURDER, MCL § 750.157B WAS NOT AN ABUSE OF DISCRETION, CAUSING AN
UNFAIR PREJUDICE... (M.C.O.A. OPINION AND ORDER, PG. #4), AND THAT SOME SEVENTEEN
(17) COUNTS OF OTHER PRIOR BAD ACTS EVIDENCE RANGING FROM HARASSMENT TO VANDALISM
TO PETITIONER'S COMPLETELY UNRELATED ATTEMPT TO PURCHASE A HANDGUN WOULD BE MORE
PROBATIVE THAN PREJUDICIAL.  HOWEVER, IN THIS MATTER, PREJUDICE HAS ENSUED AND
PETITIONERS FUNDAMENTAL RIGHT TO A FAIR TRIAL HAS BEEN VIOLATED NOT ONLY DUE TO
THE SHEER NUMBER OF UNFOUNDED ALLEGATIONS ALLOWED TO INFECT THE TRIAL, BUT MAINLY
DUE TO PETITIONER'S UNIQUE CIRCUMSTANCES TO DEFEND AGAINST THE AGGRAVATED STALKING
CHARGES, IN CONTRAST TO THE CIRCUMSTANCES UNIQUE TO DEFENDING AGAINST THE
SOLICITATION TO MURDER ALLEGATIONS THAT GAVE THE STATE AN UNFAIR TACTICAL
ADVANTAGE OVER PLAINTIFF.

THE COURT'S ALLOWANCE OF THE SEVENTEEN (17) PRIOR BAD ACTS COMPELLED TRIAL
COUNSEL TO STATE TO THE COURT:

### MR. PERRONE:

"...THERE IS REALISTICALLY, I THINK THE MOST TELLING FACTORS
ASSOCIATED WITH THAT IS THE POTENTIAL FOR CONFUSION OR
PREJUDICE, I MEAN, ARE WE GOING TO TRY A SOLICITATION OF
MURDER CASE BASED UPON HOWEVER MANY ALLEGED EVENTS THAT WERE
OF AGGRAVATED STALKING, ITS GOING TO LEAD THE JURY TO BE
SIGNIFICANTLY CONFUSED... I DON'T THINK THAT IT REASONABLE AND
MAY BE EXTREMELY PREJUDICIAL."

\* \* \*

### COURT:

"SO EVEN IF I SEVERED IT, OKAY, THE ISSUE IS, ISN'T THAT
CONDUCT RELEVANT TO AGGRAVATED STALKING CHARGE – I MEAN
SOLICITATION CHARGES FORMING A BASIS FOR WHY HE IS DOING WHAT
HE IS DOING?"

\* \* \*

### MR. PERRONE:

"WELL, IT CUTS BOTH WAYS.  I MEAN, AS FAR AS ALLEGATIONS
UNDERLYING, ITS GOING TO BE EXTREMELY DIFFICULT TO PREVENT THE
JURY OF JURIES FORM HEARING THE DEFENDANT ALLEGATIONS
ASSOCIATED WITH SOLICITATION TO MURDER CASE AND THE AGGRAVATED
STALKING CASE, MCL § 750.411I, DEPENDS ON EFFICACY OF WHETHER
OR NOT THAT SHOULD BE ENTERTAINED FOR 404B... THAT'S GOING TO
BE ENTIRELY PREJUDICIAL..." (MOTION HEARING, 2-28, 2017, PG(S)
13-14).

In the state's motion was an itemized list of seventeen (17) proposed alleged prior bad acts to be introduced in order to show intent, common plan or scheme pursuant to MCE 404B.

The court granted in part and denied in part, granting items 1, 2, 3, 5, 6, 8, 9, 10, 12, 13, 14, 15 and 17 while denying items 4, 7, 11 and 16. It was the court's position that any of the proposed other prior bad acts evidence "unrelated" to Erika Melke (complainant) would not be allowed in. (TT, 10-11-17, pg 19-23).

In the case at bar, the state's case for solicitation of murder, relied on information and testimony from two (2) jail house informants who both had an extensive criminal history of convictions involving dishonesty and deceit and were motivated by the promise of lessening their criminal punishments in concert with an undercover police operation that produced only inferences of murder based on coded references to the word "trash" and the numbers "two and five". As a matter of fact, the only person that related the word "trash" with an inference to kill was the undercover officer, Mobley. (TTII, 184-186). Item #7 of the states motion to admit other prior bad acts pursuant to MRE 404B (FRE 404B equivalent) was an incident at petitioner's place of employment (M.S.U.) where months prior (April 2016) he had inquired into possibly purchasing a handgun and ammunition from a co-worker for the stated purpose of harming himself in an attempted suicide. There was no evidence linking the (M.S.U.) incident to the solicitation charges other than an inference by the state that undoubtedly caused a prejudicial inference. This incident was originally excluded due to it's unrelatedness and the risk of overwhelming prejudice it posed. However, the court later granted reconsideration to the state referencing petitioner's testimony at the (10-20-2017, pg(s) 48-50) entrapment hearing as it's basis for admission. (TT, 10/13/17)

49.

PG(S) 11-14) STARING FIRST DAY OF TRIAL.

THIS ABUSE OF DISCRETION WILL BE DISCUSSED LATER IN PETITIONER'S PETITION.

IN MICHIGAN, TO ADMIT PRIOR BAD ACTS EVIDENCE UNDER MRE 404B, THERE MUST BE "SUBSTANTIAL EVIDENCE" THAT THE DEFENDANT ACTUALLY PERPETRATED THE BAD ACTS SOUGHT TO BE INDUCED. PEOPLE V. GODDARD, 429 MICH. 505 (1988). IN THE INSTANT MATTER, THE STATE'S PRIOR BAD ACTS ITEMS 1, 2, 9, 10 AND 15 (10-11-2017, MOTION TO ADMIT OTHER BAD ACTS EVIDENCE, PG(S) 19-23) WERE UNPROVEN INCIDENTS WHERE SOME SORT OF DAMAGES WAS DISCOVERED TO MELKE AND STAN WHITE'S VEHICLES AT VARIOUS TIMES AND LOCATIONS. REPORTS WERE FILED AND IT WAS ASSUMED THAT PETITIONER URAZ MIGHT HAVE BEEN RESPONSIBLE. YET, NO CHARGES WERE FILED, NO PHYSICAL EVIDENCE WAS INTRODUCED AND THERE WERE NO EYE WITNESSES IMPLICATING PETITIONER TO THE UNPROVEN AND HIGHLY PREJUDICIAL ALLEGATION. (TT, 11-2-2017, PG(S) 178-188)

ITEMS 2, 5, 10 AND 11 (10-11-2017, MOTION TO ADMIT OTHER BAD ACTS EVIDENCE, PG(S) 19-23) REFERENCED FACEBOOK AND TEXT MESSAGES FROM AN "UNKNOWN SOURCE", ASSUMING PETITIONER MAY HAVE SENT THEM BASED ON CIRCUMSTANCES AND CONTENT. (TT SUPRA) FRE 403'S TERM FOR "UNFAIR PREJUDICE" SPEAKS TO THE CAPACITY OF SOME CONCEDEDLY RELEVANT EVIDENCE TO LURE THE FACT FINDER INTO DEFENDANT'S GUILT ON AN IMPROPER BASIS, RATHER THAN PROOF SPECIFIC TO THE OFFENSE CHARGED. SUCH IMPROPER GROUNDS CERTAINLY INCLUDE GENERALIZED PAST BAD ACTS THAT A DEFENDANT IS BY PROPENSITY THE PROBABLE PERPETRATOR OF THE CURRENT CRIME. OLD CHIEF V. UNITED STATES, 519 U.S. 172 (1997).

THE MICHIGAN SUPREME COURT HAS HELD THAT:

> "BEFORE EVIDENCE OF THE DEFENDANT'S OTHER MISCONDUCTS MAY BE ADMITTED; (1) THERE MUST BE 'SUBSTANTIAL EVIDENCE' THAT THE DEFENDANT ACTUALLY PERPETRATED THE ACT SOUGHT TO BE INTRODUCED; (2) THERE MUST BE SOME SPECIAL QUALITY OR CIRCUMSTANCES OF THE BAD ACT TENDING TO PROVE DEFENDANT'S IDENTITY OR MOTIVE, INTENT, ABSENCE OF MISTAKE OR ACCIDENT, SCHEME, PLAN, OR SYSTEM IN DOING THE ACT; (3) ONE OR MORE OF THESE FACTORS MUST BE MATERIAL TO THE DETERMINATION OF DEFENDANT'S GUILTY OF THE OFFENSE; (4) PROBATIVE VALUE OF THE EVIDENCE SOUGHT TO BE INTRODUCED MUST NOT BE SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE OR CONFUSING THE JURY." PEOPLE V. GOLOCITOWICZ, 413 MICH 298, 308 (1982);

PEOPLE V. STARR, 457 MICH 490, 495 (1998).

IN ADDITION, FRE 404B, LIKE MRE 404B PROVIDES THAT EVIDENCE OF ANY OTHER CRIME, WRONG OR ACT IS NOT PERMISSIBLE TO PROVE A PERSONS CHARACTER IN ORDER TO SHOW THAT ON A PARTICULAR OCCASION THE PERSON ACTED IN ACCORDANCE WITH THE CHARACTER.  IN THIS CASE, THE VARIANCES IN THE PRIOR BAD ACT ALLEGATIONS HAD NO SYSTEM, OR MOTIVE AND THEREFORE WAS INTRODUCED AND ADMITTED TO SHOW PROPENSITY AND CHARACTER INTENDED TO PAINT PETITIONER AS A "BAD MAN" PROHIBITED IN STATE AND FEDERAL PROSECUTIONS.

THIS IS THE PREJUDICE THAT OCCURRED WHEN THE COURT ALLOWED JOINDER.

IN WILDMAN V. JOHNSON, 261 F.3D 832, 840-841 (CA. 9, 2001), THAT COURT EXPLAINED THAT IN CERTAIN CIRCUMSTANCES, THE JOINDER OF OFFENSES FOR TRIAL MAY VIOLATE A DEFENDANT'S DUE PROCESS RIGHTS UNDER U.S. CONST., AM XIV.  ALSO IN SANDOVAL V. CALDREN, 241 F.3D 765, 772 (CA. 9, 2008), THAT COURT HELD THAT JOINDER DOES NOT VIOLATE DUE PROCESS "UNLESS SIMULTANEOUS OF MORE THAN ONE OFFENSE ACTUALLY RENDERED PETITIONER'S STATE TRIAL FUNDAMENTALLY UNFAIR", SO A SUBSTANTIAL AND INJURIOUS EFFECT OR INFLUENCE IN DETERMINING THE "JURY'S VERDICT". ID.  IN SANDOVAL WE RECOGNIZED THAT SUCH PREJUDICE ARISES WHEN JOINDER ALLOWS OTHERWISE INADMISSIBLE EVIDENCE OF OTHER CRIMES TO BE INTRODUCED IN TRIAL, OR WHEN A STRONG EVIDENTIARY CASE IS JOINED WITH A WEAKER ONE.  [EMPHASIS ADDED].

## CONCLUSION

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE STATE COURT DENIED SEVERANCE AND IMPROPERLY ALLOWED JOINDER, MCR 6.120, MICHIGAN'S EQUIVALENT TO FRCP R.8, AND INTRODUCED UNPROVEN OTHER PRIOR BAD ACTS MEANT TO BOLSTER PETITIONER'S "BAD CHARACTER" IN VIOLATION OF DUE PROCESS AND APPLICABLE SUPREME COURT PRESIDENT RESULTING IN PETITIONER BEING DENIED A FAIR AND IMPARTIAL TRIAL.

PETITIONER HAS ESTABLISHED THAT "THE STATE COURT ARRIVE[D] AT A CONCLUSION OPPOSITE TO THAT REACHED BY [THE SUPREME COURT] ON A QUESTION OF LAW OR... DECIDE"[D] THIS CASE DIFFERENTLY THAN [THE SUPREME COURT] HAS ON A SET OF MATERIALLY INDISTINGUISHABLE FACTS. METISH V. LANCASTER, 569 U.S. 351, 357 N.2 (2013) (INTERNAL QUESTION MARKS AND CITATIONS OMITTED). UNDER THE "UNREASONABLE APPLICATION" CLAUSE OF § 2254(D)(1)&(2), PETITIONER HAS ESTABLISHED THAT, AFTER HE IDENTIFIED THE CORRECT GOVERNING LEGAL PRINCIPLE FROM THE SUPREME COURT'S DECISIONS, [THE STATE COURT] UNREASONABLY APPLIE[D] THAT PRINCIPLE TO THE FACTS OF HIS CASE. HILL V. CURTIN, 792 F.3D 670, 676 (6TH CIR. 2015)(EN BANC). THE STATE COURT'S DECISION WAS SO LACKING IN JUSTIFICATION THAT THERE WAS AN ERROR WELL UNDERSTOOD AND COMPREHENDED IN EXISTING LAW BEYOND ANY POSSIBILITY FOR FAIRMINDED DISAGREEMENT. ID. WIGGINS V. SMITH, 539 U.S. 510, 520-521 (2003).

HABEAS CORPUS RELIEF SHOULD BE GRANTED. IN THE ALTERNATIVE, A COA (CERTIFICATE OF APPEALABILITY) SHOULD BE GRANTED BECAUSE A "[FAIR-MINDED JURIST COULD CONCLUDE THERE IS A REASONABLE PROBABILITY THAT HAD PETITIONER'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED, THE ERROR WOULD HAVE CHANGED THE OUTCOME OF TRIAL.

\* \* \*

## ISSUE- V

### PETITIONER WAS DENIED HIS STATE AND FEDERAL RIGHT TO A FAIR TRIAL BY THE INTRODUCTION OF UNDULY PREJUDICIAL EVIDENCE CONCERNING PRIOR BAD ACTS.

### AEDPA APPLICATION AND EXHAUSTION

IN ACCORDANCE WITH 28 § U.S.C.S. 2254 (B)(1), THIS ISSUE HAS BEEN FULLY EXHAUSTED IN THE STATE COURTS.  IN ADJUDICATING PETITIONER'S CLAIM, THE STATE COURT'S DECISION WAS BASED ON AN UNRELIABLE CONTRAVENTION OF CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT.  § 2254(D)(1) AND UNDER THE UNREASONABLE APPLICATION CLAUSE OF § 2254(D)(2).

### ARGUMENT

IN THIS MATTER, A WRIT OF HABEAS CORPUS IS REQUIRED DUE TO THE TRIAL COURT'S ERROR IN ADMITTING PRIOR ALLEGED EPISODES OF HARASSMENT, VANDALISM AND OTHER UNRELATED ALLEGATIONS OF BAD ACTS WHICH SHOULD HAVE BEEN EXCLUDED BY MRE 403 AND FRE 403, FEDERAL EQUIVALENT, DUE TO THE SHEER VOLUME OF UNFAIR PREJUDICE.  BOTH THE DUE PROCESS GUARANTEES OF THE MICHIGAN AND UNITED STATES CONSTITUTION REQUIRE FUNDAMENTAL FAIRNESS IN THE USE OF EVIDENCE AGAINST A CRIMINAL DEFENDANT.  CONST. 1963, ART. 1 § 17, U.S. CONST. AM XIV. SEE LISENBA V. CALIFORNIA, 314 U.S. 219, 62 S.CT 280; 36 L.ED 166 (1941).

PURSUANT TO MRE 403 AND FRE 403, EVIDENCE IS NOT ADMISSIBLE IF "ITS PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUE OR MISLEADING THE JURY.

IN PETITIONERS CASE, THE STATE REGALED THE JURY WITH AN ONSLAUGHT OF UNPROVEN PRIOR BAD ACTS OF HARASSMENT, VANDALISM AND CYBER-STALKING UNDER THE ASSUMPTION THAT PETITIONER WAS THE PERPETRATOR OF THESE INCIDENTS IN WHICH THERE WAS NO WAY

TO FAIRLY DEFEND THE ACTUAL CHARGES OF SOLICITATION OF MURDER AND PETITIONER
CONTENDS THAT THE SHEER VOLUME OF PRIOR BAD ACTS EVIDENCE THAT WAS PRESENTED AT
TRIAL WAS FUNDAMENTALLY UNFAIR AND VIOLATED PETITIONERS RIGHT TO A FAIR TRIAL AS
GUARANTEED UNDER THE UNITED STATES CONSTITUTION 1963, ART 1 § 17, U.S. AM. VI AND
XIV.

THE STALKING CHARGE IN THIS CASE INVOLVED ALLEGED ACTIVITIES IN VIOLATION OF
THE (PPO) PERSONAL PROTECTION ORDER THAT OCCURRED IN THE LAST HALF OF THE MONTH OF
AUGUST 2016.   HOWEVER, IN THE STATES PRETRIAL MOTION TO ADMIT SIMILAR ACTS
EVIDENCE, THE STATE REQUESTED THE ADMISSION OF (17) DIFFERENT PRIOR BAD ACTS GOING
BACK TO AUGUST OF 2015.   (SEE STATES MOTION TO ADMIT OTHER ACTS EVIDENCE AT PP 6-
10).   THE TRIAL COURT GRANTED THE MOTION EXCEPT FOR ONE INCIDENT WHERE PETITIONER
ALLEGEDLY SENT MS. MELKE'S MOTHER A LETTER.   (MH, 10-11-17 AT 18-23).

THE TRIAL COURT ORIGINALLY DENIED THE STATE'S REQUEST TO ADMIT TESTIMONY
REGARDING PETITIONER'S ALLEGED ATTEMPT TO PURCHASE A HANDGUN FROM A CO-WORKER AT
MSU, BUT THE STATE LATER FILED A MOTION FOR RECONSIDERATION TO WHICH THE COURT
GRANTED.   THE TRIAL COURT FURTHER ALLOWED SOLICITATION OF MURDER WITNESSES TO
BUTTRESS THE STALKING TESTIMONY.

PETITIONER CONTENDS THAT THE STATE PUSHED SO HARD FOR THIS EVIDENCE BECAUSE
IT KNEW THAT THE SOLICITATION OF MURDER CASE WAS WEAK FROM IT'S ONSET, PRIMARILY
BASED ON INCREDIBLE TESTIMONY FROM UNRELIABLE JAIL HOUSE INFORMANTS WORKING WITH
STATE INVESTIGATORS AND VAGUE STATEMENTS MADE BY PETITIONER IN A POOR QUALITY
VIDEO CALL.   THESE RULINGS DENIED PETITIONER OF THE RIGHT TO A FAIR TRIAL AND
FUNDAMENTAL FAIRNESS.  SEE GENERALLY- LISENBA V. CALIFORNIA, 314 U.S. 219; 62 S.CT
220; 86 L.ED 166 (1941).

THE BASIS FOR THE COURTS RECONSIDERATION OF THE ATTEMPT TO PURCHASE A HANDGUN
INCIDENT WAS THAT THE STATE CLAIMED THAT AT AN ENTRAPMENT HEARING, DEFENSE COUNSEL
DISCLOSED THAT HE INTENDED TO ASSERT THAT PETITIONER WAS COERCED INTO HAVING

54.

CONVERSATIONS ABOUT WANTING TO KILL Ms. MELKE WITH THE (2) TWO JAIL HOUSE INFORMANTS, REGENALD CLOSE AND CHARLES ALLEN. THE JAIL HOUSE INFORMANTS LATER CLAIMED THAT PETITIONER TOLD THEM HE WANTED TO BY A GUN TO KILL Ms. MELKE THEN FLEE TO MEXICO THEN TO TURKEY WERE HIS FAMILY RESIDED. THERE WAS NOT OTHER EVIDENCE PRESENTED BY THE STATE CORROBORATING THIS ASSERTION. NOT EVEN THE CO-WORKER FROM MSU WHOM PETITIONER ASKED TO GET THE GUN COULD CORROBORATE THE STATE'S THEORY. PSYCHIATRIC REPORTS FROM PETITIONER'S MENTAL HEALTH PROVIDER INDICATED THAT PETITIONER WANTED THE GUN TO KILL HIMSELF. THESE REPORTS WERE WRITTEN AS PART OF MSU'S ASSESSMENT DURING THEIR INVESTIGATION LONG BEFORE MR. CLOSE AND MR. ALLEN MET PETITIONER. HOWEVER, THE COURT'S GRANTING OF RECONSIDERATION ALLOWING THE MSU INCIDENT WAS PRE-MATURE, AS THE DEFENSE NEVER ASSERTED THAT THEORY DURING TRIAL FOR THE JURY TO CONSIDER. HIS ORIGINAL RULING TO NOT ALLOW THIS EVIDENCE IN DUE TO IT'S OVERWHELMING PREJUDICE CERTAINLY SHOULD HAVE STOOD. A GRAVE ERROR OCCURRED WHEN THE COURT GRANTED RECONSIDERATION UPON SOMETHING THAT NEVER WAS PRESENTED AT TRIAL. THIS MADE THE PROCEEDING ONE-SIDED THAT UNFAIRLY BENEFITED THE PROSECUTION AND WAS FUNDAMENTALLY UNFAIR TO PETITIONER.

THE TRIAL COURT ABUSED ITS DISCRETION WHEN GRANTED RECONSIDERATION OF THE STATE'S MOTION TO ADMIT OTHER BAD ACTS EVIDENCE ON THE GROUNDS THAT THE DEFENDANT'S TESTIMONY AT HIS ENTRAPMENT HEARING DISQUALIFIED THE EVIDENCE TO BE ADMITTED AT TRIAL IN VIOLATION OF HIS RIGHT TO DUE PROCESS. THE MICHIGAN SUPREME COURT HAS STATED IN PEOPLE V. D'ANGELO, 401 MICH 167, 176-178 (1977), "WHEN A DEFENDANT RAISES THE ISSUE OF ENTRAPMENT, WHETHER BEFORE OR DURING TRIAL, THE APPROPRIATE PROCEDURE WILL REQUIRE THE TRIAL COURT TO CONDUCT AN EVIDENTIARY HEARING IN THE JURY'S ABSENCE.. THE DEFENDANT WILL NOT BE REQUIRED TO ADMIT THE CRIMINAL ACT IN ORDER TO RAISE THE ENTRAPMENT ISSUE..." ALSO SEE, JACKSON V. DENNO, 378 U.S. 368; 84 S.CT 1774; 12 L.ED2D 908 (1964).

"ANY TESTIMONY HE GIVES AT THE HEARING WILL NOT BE ADMISSIBLE AGAINST HIM IN

THE CASE IN CHIEF FORE SUBSTANTIVE PURPOSES."

IN THE INSTANT CASE, AT THE OCTOBER 11, 2017 MOTION TO ADMIT OTHER BAD ACTS EVIDENCE PURSUANT TO MRE 404B, THE COURT RULED, GRANTING IN PART AND DENYING IN PART THE ADMISSION OF OTHER BAD ACTS EVIDENCE, AND THE COURT DENIED ITEM SEVEN (7) OF THE STATES MOTION STATING IT WAS MORE PREJUDICIAL THAN PROBATIVE.

ITEM NUMBER SEVEN (7) WAS AN INCIDENT THAT TRANSPIRED AT THE PETITIONERS LONG-TIME (25 YEARS) PLACE OF EMPLOYMENT, MICHIGAN STATE UNIVERSITY (MSU) WHERE HE WAS TERMINATED FOR ASKING A CO-WORKER TO HELP HIM PURCHASE AN ILLEGAL FIREARM FOR "NO" SPECIFIED REASON.

ON OCTOBER 20, 2017, AT THE ENTRAPMENT HEARING, PETITIONER TESTIFIED IN SUPPORT OF THE MOTION ON HIS OWN BEHALF. THE DEFENSE BRIEFLY TOUCHED UPON THE DEFENDANT'S TERMINATION FROM MSU AS THE SOURCE OF HIS DEPRESSION AND MENTAL ISSUES HE WAS EXPERIENCING AT THE TIME OF THE ALLEGED OFFENSES. THE STATE, ON CROSS EXAMINATION EXPLOITED THE MSU INCIDENT FOR THE BETTER PART OF (30) TRANSCRIBED PAGES OF QUESTION AND ANSWER, IN AN ATTEMPT TO LINK THE INCIDENT TO THE SOLICITATION OF MURDER CHARGES. (SEE, 10/20/2017 TT, 13, 35-75)

ON OCTOBER 31, 2017, (FIRST DAY OF TRIAL), JUST PRIOR TO JURY SELECTIONS, THE STATE MOVED FOR RECONSIDERATION TO ADMIT THIS INCIDENT AND TESTIMONY OF THE CO-WORKER PATRICK BURNETT INTO EVIDENCE.

THE COURT GRANTED THE MOTION STATING THAT THE TESTIMONY BY DEFENDANT AT THE ENTRAPMENT HEARING QUALIFIED THIS EVIDENCE TO BE ADMITTED AT TRIAL. (SEE, 10/31/2017 FIRST DAY OF TRIAL TT, 11-14).

IN THIS REGARD, THE DEFENDANT'S TESTIMONY AT HIS ENTRAPMENT HEARING WAS USED TO SUBSTANTIATE THE ADMISSION OF OTHER BAD ACTS EVIDENCE, WHICH WOULD HAVE BEEN EXCLUDED HAD PETITIONER NOT TESTIFIED, THUS HIS TESTIMONY WAS USED AGAINST HIM IN THE CASE AT CHIEF, WHICH IS NOT ALLOWED, AS PETITIONER NEVER TESTIFIED AT TRIAL.

THIS EVIDENCE ALLOWED, UNFAIRLY PREJUDICED PETITIONER AS IT INFERRED A LINK

BETWEEN THE ATTEMPTED PURCHASE OF A GUN, AND AN INTENT TO KILL ERIKA MELKE WHICH HAD NEVER BEEN ESTABLISHED. THIS EVIDENCE WAS MORE PREJUDICIAL THAN PROBATIVE AND SHOULD NOT HAVE BEEN ALLOWED.

HERE, LIKE THE OTHER SEVENTEEN (17) OTHER PRIOR BAD ACTS INTRODUCED, THE STATE, WITH THE TRIAL COURT'S BLESSING, WAS ALLOWED TO THROW EVERY CONCEIVABLE NOTION OF ALLEGED PRIOR BAD ACTS EVIDENCE TO SUPPORT THEIR THEORY, WITH NO REGARD TO PETITIONER'S RIGHTS TO A FAIR AND IMPARTIAL TRIAL. THE STATE COULD HAVE SEEMINGLY ACCUSED PETITIONER OF BEING THE "SECOND GUNMAN ON THE GRASSY KNOLL" AND THE COURT WOULD HAVE ALLOWED IT IN.

FRE 403, LIKE MRE 403 STATES THAT EVIDENCE IS NOT ADMISSIBLE IF "ITS PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, OR MISLEADING THE JURY." "UNFAIR PREJUDICE MAY EXIST WHERE THERE IS A DANGER THAT THE EVIDENCE WILL BE GIVEN UNDUE OR PREEMPTIVE WEIGHT BY THE JURY OR WHERE IT WOULD BE INEQUITABLE." FRE 403, (ALSO FRE 105) REQUIRES THE COURT TO RESTRICT THE EVIDENCE TO ITS PROPER SCOPE AND INSTRUCT THE JURY ACCORDINGLY. SEE, TRUMP V. UNITED STATES, 603 U.S. 593, 656-657 (2024).

IN THE INSTANT MATTER, (2) TWO UNRELIABLE JAIL HOUSE INFORMANTS ACTING AS AGENTS FOR THE STATE AND WORKING UNDER THE DIRECTION OF POLICE INVESTIGATORS HOPING TO LESSEN THEIR RESPECTIVE CRIMINAL WOES, WAS THE ONLY LINK TO THE STATES THEORY THAT PETITIONER WANTED TO PURCHASE A GUN FOR THE PURPOSE OF HARMING MS. MELKE. SIMILARLY, THEY WERE THE ONLY CORROBORATING LINK TO (17) OTHER INTRODUCED PRIOR BAD ACTS EVIDENCE ADMITTED INTO THE TRIAL. THE RECORD IS VOID OF THE TRIAL COURT RESTRICTING THE EVIDENCE TO ITS PROPER SCOPE AND INSTRUCTING THE JURY ACCORDINGLY. HERE, THERE WAS NOT ONLY THE DANGER OF UNFAIR PREJUDICE, BUT AN ABSOLUTE OUTCOME DETERMINATIVE REALITY THAT THE OTHER PRIOR BAD ACTS EVIDENCE WAS GIVEN UNDUE PREEMPTIVE WEIGHT BY THE ALLOWING THE JURY TO CHARACTERIZE PETITIONER AS A BAD MAN CAPABLE OF SUCH ACTIONS.

IN HUDDLESTON V. UNITED STATES, 485 U.S. 681, 687-690 (1988), THE COURT STATED IN PERTINENT RELEVANT PART":

> "THERE MUST BE A "PREPONDERANCE" OF EVIDENCE THAT THE ACCUSED HAS ENGAGED IN THE ACT(S)."

> "PREPONDERANCE", IN ACCORDANCE WITH BALLENTINES LAW DICTIONARY, 3RD EDITION STATES:

1. THE WEIGHT - CREDIT AND VALUE OF THE AGGRAVATED EVIDENCE ON EITHER SIDE, THE GREATER WEIGHT OF EVIDENCE, THE GREATER WEIGHT OF CREDIBILITY EVIDENCE IN THE LAST ANALYSIS, THE PROBABILITY OF TRUTH...

2. WEIGHT, CREDIT, VALUE.

IN THIS INSTANT CASE, THERE WAS A REAL DANGER THAT MR. CLOSE AND MR. ALLEN'S INFORMATION AND TESTIMONY WAS FABRICATED AND IN THE VARY LEAST MOLDED INTO A STATE OF USEFULNESS TO SERVE THEIR OWN PURPOSES, DRIVEN BY THE HOPES OF LESSER PUNISHMENT FOR THEMSELVES. PRIOR BAD ACTS SOUGHT TO BE ADMITTED INTO EVIDENCE, UNDER THESE CIRCUMSTANCES MUST REQUIRE ADDITIONAL SAFEGUARDS-BEYOND THE SOLE DISCRETION OF AN IMPARTIAL GATE KEEPER AS DEFINED IN FRE 403, WHERE THERE EXISTS A REAL DANGER OF UNDER WEIGHT BY THE JURY... AND IN THIS INSTANT MATTER WITHOUT PROPER SCOPE AND INSTRUCTION TO THE JURY.

## CONCLUSION

PETITIONER HAS ESTABLISHED THAT "THE STATE COURT ARRIVE[D] AT A CONCLUSION OPPOSITE TO THAT REACHED BY [THE SUPREME COURT] ON A QUESTION OF LAW OR... DECIDE[D] THIS CASE DIFFERENTLY THAN [THE SUPREME COURT] HAS ON A SET OF MATERIALLY INDISTINGUISHABLE FACTS. METISH V. LANCASTER, 569 U.S. 351, 357 N.2 (2013) (INTERNAL QUESTION MARKS AND CITATIONS OMITTED). UNDER THE "UNREASONABLE APPLICATION" CLAUSE OF § 2254(D)(1)&(2), PETITIONER HAS ESTABLISHED THAT, AFTER HE IDENTIFIED THE CORRECT GOVERNING LEGAL PRINCIPLE FROM THE SUPREME COURT'S DECISIONS, [THE STATE COURT] UNREASONABLY APPLIE[D] THAT PRINCIPLE TO THE FACTS OF HIS CASE. HILL V. CURTIN, 792 F.3D 670, 676 (6TH CIR. 2015)(EN BANC). THE STATE

COURT'S DECISION WAS SO LACKING IN JUSTIFICATION THAT THERE WAS AN ERROR WELL UNDERSTOOD AND COMPREHENDED IN EXISTING LAW BEYOND ANY POSSIBILITY FOR FAIRMINDED DISAGREEMENT.  ID.  WIGGINS V. SMITH, 539 U.S. 510, 520-521 (2003).

HABEAS CORPUS RELIEF SHOULD BE GRANTED.  IN THE ALTERNATIVE, A COA (CERTIFICATE OF APPEALABILITY) SHOULD BE GRANTED BECAUSE A "[FAIR-MINDED JURIST COULD CONCLUDE THERE IS A REASONABLE PROBABILITY THAT HAD PETITIONER'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED, THE ERROR WOULD HAVE CHANGED THE OUTCOME OF TRIAL.

*    *    *

## ISSUE- VI

PETITIONER WAS DENIED HIS STATE AND FEDERAL
CONSTITUTIONAL RIGHTS WHEN THE TRIAL COURT
ADMITTED INTO EVIDENCE A VIDEO, TAPE AND
TRANSCRIBED CONVERSATION THAT WAS OBTAINED IN
VIOLATION OF THE PETITIONER'S SIXTH AMENDMENT
RIGHT TO COUNSEL.

## AEDPA APPLICATION AND EXHAUSTION

IN ACCORDANCE WITH 28 § U.S.C.S. 2254 (B)(1), THIS ISSUE HAS BEEN
FULLY EXHAUSTED IN THE STATE COURTS. IN ADJUDICATING PETITIONER'S
CLAIM, THE STATE COURT'S DECISION WAS BASED ON AN UNRELIABLE
CONTRAVENTION OF CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE
SUPREME COURT. § 2254(D)(1) AND UNDER THE UNREASONABLE APPLICATION
CLAUSE OF § 2254(D)(2).


THE SIXTH AMENDMENT RIGHT TO COUNSEL ENSURES THAT AN ACCUSED
RECEIVES THE ASSISTANCE OF COUNSEL WHEN CONFRONTED WITH THE
"INTRICACIES" OF THE LAW. MESSIAH V. UNITED STATES, 377 U.S. 201; 84
S.CT 1199 (1964).

IN MESSIAH, WHILE AWAITING TRIAL THE DEFENDANT BECAME SUBJECTED
TO A COMPLETELY EXTRA JUDICIARY ORCHESTRATED PROCEEDING DESIGNED TO
OBTAIN INCRIMINATING STATEMENTS. THE SUPREME COURT FOUND THAT AGENTS
DELIBERATELY ELICITED STATEMENTS FROM THE DEFENDANT IN ABSENCE OF
COUNSEL, AND THE STATEMENTS WERE DEEMED INADMISSIBLE. ALSO, SEE: MAIN
V. MOULTON, 474 U.S. 159; 106 S.CT 477 (1985).

MORE RECENTLY IN SOSNOWSKY V. STATE, 989 S.O.2D 686 (2008), THE
DEFENDANT WHO WAS AN INMATE, FOLLOWING HIS ARREST FOR ATTEMPTED SECOND
DEGREE MURDER, TRIED TO ARRANGE THROUGH A CELL-MATE TO HAVE THE VICTIM

AND WITNESS KILLED. THROUGH THE CELL-MATE, DEFENDANT WAS PLACED IN CONTACT WITH AN UNDERCOVER OFFICER WHO WAS REPRESENTED TO BE A "HIT MAN" AND SOLICITED THE OFFICER TO COMMIT MURDER. ALTHOUGH SOLICITATION WAS NOT THE CHARGED OFFENSE IN THE CASE, THE TRIAL COURT OVER DEFENSE OBJECTION, ADMITTED THE TAPED CONVERSATIONS INVOLVING THE SOLICITATION AND ALLEGED KILLINGS OF THE VICTIM AND WITNESSED BY THE HIT-MAN. THE APPELLATE COURT FOUND THAT BECAUSE DEFENDANT WAS REPRESENTED BY COUNSEL, HIS STATEMENTS TO THE UNDERCOVER OFFICER WERE INADMISSIBLE. THE JUDGMENT WAS REVERSED AND A NEW TRIAL GRANTED.

SIMILARLY, IN THE CASE AT BAR, PETITIONER WAS BEING HELD IN INGHAM COUNTY JAIL AWAITING SENTENCING ON A STALKING CHARGE AGAINST ERIKA MELKE. WHILE AWAITING SENTENCING, PETITIONER WAS ARRAIGNED ON A SECOND STALKING CHARGE AGAINST THE SAME PERSON, ERIKA MELKE. THE PETITIONER WAS REPRESENTED BY RETAINED COUNSEL, CHRIS BERGSTROM. DURING THIS SAME TIME FRAME OR SEQUENCE OF EVENTS WHILE PETITIONER WAS REPRESENTED BY COUNSELUNDERCOVER INVESTIGATORS IN CONCERT WITH THE INGHAM COUNTY PROSECUTOR'S OFFICE, INGHAM COUNTY JAIL AND TWO (2) JAILHOUSE INFORMANTS ACTING AS AGENTS FOR THE STATE, DELIBERATELY ELICITED INCRIMINATING STATEMENTS FROM PETITIONER THROUGH THE GUISE OF MURDER FOR HIRE. PETITIONER WAS SUBSEQUENTLY CHARGED WITH THREE (3) ADDITIONAL COUNTS OF SOLICITATION TO COMMIT MURDER AGAINST THE COMPLAINANT, ERIKA MELKE.

THE TRIAL COURT ADMITTED THE VIDEO RECORDING INTO EVIDENCE DESPITE THE PETITIONER'S CONTINUED OBJECTION ON THE RECORD.

IN ADDITION, IN UNITED STATES V. HENRY, 477 U.S. 264; 100 S.CT 2183; 65 L.ED2D 115 (1980), INTERPRETED MASSIAH, ID., TO REQUIRE SUPPRESSION OF STATEMENT'S MADE TO JAIL-HOUSE INFORMANT WHO WAS PLACED

BY THE STATE IN THE SAME CELL AS THE DEFENDANT, AND ACTING AS AN AGENT FOR THE STATE AND INSTRUCTED TO BE ALERT TO ANY INCRIMINATING STATEMENTS BY THE DEFENDANT. SEE UNITED STATES v. TERZADO-MADRUGA, 897 F2D 1099 (11TH CIR. 1990). IN THIS MATTER, PETITIONER'S CELL-MATES AND JIALHOUSE INFORMANTS, CHARLES ALLEN AND REGINALD CLOSE WERE KEPT IN CLOSE PROXIMITY OF THE PETITIONER AFTER THEY HAD INFORMED INVESTIGATORS THAT THE DEFENDANT WANTED TO HAVE HIS EX GIRLFRIEND KILLED.

IN THIS CASE, THE CELL-MATE, REGINALD CLOSE WAS SENT BACK BY POLICE INVESTIGATORS TO BE IN CLOSE PROXIMITY OF THE PETITIONER AFTER INFORMING POLICE INVESTIGATORS OF THE SOLICITATION. SEE (11/06/2017 TT, PG. 31-32) WHERE THE FOLLOWING TESTIMONY TOOK PLACE:

Q. WERE YOU STILL DISCUSSING THESE ISSUES WITH HIM (PETITIONER) AFTER SPEAKING WITH LANSING POLICE DEPARTMENT?

A. YEAH.

Q. YOUR PUT BACK WITH MR. URAZ?

A. YES.

Q. YOU'RE CONTINUING TO TALK TO HIM?

A. YES.

Q. ABOUT THE PLOT?

A. YES.

IT IS ALSO EVIDENT THAT REGINALD CLOSE WAS ACTIVELY OFFERING SUGGESTIONS AND GIVING FEEDBACK WHILE GATHERING INCRIMINATING STATEMENTS AND DOCUMENTATION.

IN THE CASE OF CHARLES ALLEN, HE TOO WAS RETURNED BY POLICE TO THE SAME CELL BLOCK AS PETITIONER AFTER SENDING INFORMATIVE CORRESPONDENCES (KITES) TO THE JAIL AUTHORITIES AND SPEAKING WITH INVESTIGATORS. MR. ALLEN CONSISTENTLY STATES THAT HE WAS INITIATING CONVERSATIONS WITH THE

62.

DEFENDANT IN REGARDS TO THE MURDER FOR HIRE.   SEE 11/7, 2027 TT, PG. 44-55 & 61-69 WHICH STATE THE FOLLOWING:

> Q. AFTER YOU'RE REMOVED FOR THE ISSUES WITH MUHAMMAD, YOU'RE PUT BACK ON POST WITH MR. URAZ?
>
> A. YES, I BELIEVE SO.
>
> Q. IS THAT BEFORE OR AFTER YOU WROTE THE FIRST LETTER?
>
> A. THAT'S AFTER.
>
> Q. WHEN YOU WROTE THE SECOND LETTER ON 10/24/2016, ARE YOU STILL ON THE SAME POST WITH MR. URAZ?
>
> A. YES.

ALLEN STATES HE QUESTIONED THE DEFENDANT, MR. URAZ, ABOUT HIS INTENT BECAUSE HE WANTED TO KNOW.   SEE (TT PG. 54-55) AND AGAIN MR. ALLEN STATES HE INITIATED THE CONVERSATION WITH PETITIONER.   SEE (TT PG. 61) AND AT TT PG. 69 MR. ALLEN STATES HE WAS GATHERING INFORMATION PRIOR TO HIS SECOND KITE TO AUTHORITIES.

BECAUSE THE TWO JAILHOUSE INFORMANTS WERE ACTIVELY INVOLVED, PETITIONER'S SIXTH AMENDMENT RIGHT MUST ATTACH TO THEM AS WELL AS THE POLICE INVESTIGATORS.   SEE HENRY, SUPRA.   ALSO SEE, STATE V. MARSHALL, 882 NW2D 68 (2016), WHERE THAT COURT DETERMINED THAT JAILHOUSE INFORMANTS ACTING AS AGENTS WITHOUT AN EXPRESSED AGREEMENT CAN BE AN "INFERRED AGENCY" THROUGH THEIR ACTION AND INVLVEMENT.

IN TEXAS V. COBB, 522 U.S. 162 (2001), THAT COURT WROTE: THE SIXTH AMENDMENT PROTECTION CAN NOT BE USED IN 'FUTURO' OR VIEWED AS A PROPHYLACTIC PROTECTION FOR SUSPECTS, NOTWITHSTANDING A CLOSE FACTUAL RELATIONSHIP IF THE DEFENDANT HAD COUNSEL."

IN THE INSTANT CASE, THERE WAS MOST CERTAINLY A CLOSE FACTUAL RELATIONSHIP IN THE CHARGED OFFENSES IN SO MUCH THAT THE TRIAL COURT JOINED THE SECOND STALKING CHARGE WITH THE SOLICITATION CHARGE AT

TRIAL, USING THEIR CLOSE RELATIONSHIP AS GROUNDS TO DO SO. SEE MOTION FOR SEVERANCE HEARING, 2/28/2017). ONCE THE POLICE IMPERMISSIBLE ACTION IS DISCOVERED AND PROVEN, THE EXCLUSIONARY RULE WILL APPLY AND WILL OPERATE TO SUPPRESS THE PRIMARY EVIDENCE AS WELL AS ALL DERIVATIVE EVIDENCE OBTAINED AS "FRUIT OF THE POISONOUS TREE". SEE SILVERTHORN V. UNITED STATES, 251 U.S. 385; 40 S.CT 182 (1920). PETITIONER CONTENDS THAT POLICE AND PROSECUTION KNEW THAT PETITIONER WAS REPRESENTED BY COUNSEL AT THE TIME OF THE UNDERCOVER POLICE VIDEO VISIT. POLICE AND JAILHOUSE INFORMANTS/AGENTS DELIBERATELY ELICITED INCRIMINATING STATEMENTS, IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHT TO COUNSEL AS OUTLINED IN MASSIAH V. UNITED STATES, SUPRA.

## CONCLUSION

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE STATE COURT DENIED SEVERANCE AND IMPROPERLY ALLOWED JOINDER, MCR 6.120, MICHIGAN'S EQUIVALENT TO FRCP R.8, AND INTRODUCED UNPROVEN OTHER PRIOR BAD ACTS MEANT TO BOLSTER PETITIONER'S "BAD CHARACTER" IN VIOLATION OF DUE PROCESS AND APPLICABLE SUPREME COURT PRESIDENT RESULTING IN PETITIONER BEING DENIED A FAIR AND IMPARTIAL TRIAL.

PETITIONER HAS ESTABLISHED THAT "THE STATE COURT ARRIVE[D] AT A CONCLUSION OPPOSITE TO THAT REACHED BY [THE SUPREME COURT] ON A QUESTION OF LAW OR... DECIDE[D] THIS CASE DIFFERENTLY THAN [THE SUPREME COURT] HAS ON A SET OF MATERIALLY INDISTINGUISHABLE FACTS. METISH V. LANCASTER, 569 U.S. 351, 357 N.2 (2013) (INTERNAL QUESTION MARKS AND CITATIONS OMITTED). UNDER THE "UNREASONABLE APPLICATION" CLAUSE OF § 2254(D)(1)&(2), PETITIONER HAS ESTABLISHED THAT, AFTER HE IDENTIFIED THE CORRECT GOVERNING LEGAL PRINCIPLE FROM THE SUPREME

COURT'S DECISIONS, [THE STATE COURT] UNREASONABLY APPLIE[D] THAT PRINCIPLE TO THE FACTS OF HIS CASE. HILL V. CURTIN, 792 F.3D 670, 676 (6TH CIR. 2015)(EN BANC). THE STATE COURT'S DECISION WAS SO LACKING IN JUSTIFICATION THAT THERE WAS AN ERROR WELL UNDERSTOOD AND COMPREHENDED IN EXISTING LAW BEYOND ANY POSSIBILITY FOR FAIRMINDED DISAGREEMENT. ID. WIGGINS V. SMITH, 539 U.S. 510, 520-521 (2003).

HABEAS CORPUS RELIEF SHOULD BE GRANTED. IN THE ALTERNATIVE, A COA (CERTIFICATE OF APPEALABILITY) SHOULD BE GRANTED BECAUSE A "[FAIR-MINDED JURIST COULD CONCLUDE THERE IS A REASONABLE PROBABILITY THAT HAD PETITIONER'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED, THE ERROR WOULD HAVE CHANGED THE OUTCOME OF TRIAL.

*   *   *

## ISSUE- VII

**THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S MOTION TO DISMISS BASED ON ENTRAPMENT OF A CRIME THAT WAS MANUFACTURED BY LAW ENFORCEMENT AND THEIR AGENTS/INFORMANTS, AND WHERE THE MICHIGAN COURTS FURTHER BASED THEIR DENIAL UPON AN UNREASONABLE APPLICATION OF FACT AND LAW, CONTRARY TO UNITED STATES AND MICHIGAN SUPREME COURT PRESIDENCE.**

### AEDPA APPLICATION AND EXHAUSTION

THIS CLAIM OF ERROR WAS FULLY EXHAUSTED IN THE STATE COURTS AND IS ELIGIBLE FOR HABEAS REVIEW. 28 U.S.C. § 2254(B)(1). THE TRIAL COURT HELD AN EVIDENTIARY HEARING ON THE MATTER, AND DENIED RELIEF BASED UPON AN UNREASONABLE AND INACCURATE ASSESSMENT OF FACT AND LAW. 28 U.S.C. § 2254(D)(1)(2).

### LEGAL ANALYSIS OF ENTRAPMENT APPLICABLE TO PETITIONER

A VALID ENTRAPMENT DEFENSE HAS TWO RELATED ELEMENTS: GOVERNMENT INDUCEMENT OF THE CRIME, AND A LACK OF PREDISPOSITION ON THE PART OF THE DEFENDANT TO ENGAGE IN THE CRIMINAL CONDUCT. PREDISPOSITION, THE PRINCIPLE ELEMENT IN THE DEFENSE OF ENTRAPMENT, FOCUSES UPON WHETHER THE DEFENDANT WAS AN "UNWARY INNOCENT" OR INSTEAD, AN "UNWARY CRIMINAL" WHO READILY AVAILED HIMSELF OF THE OPPORTUNITY TO PERPETRATE THE CRIME. SHERMAN v. US, 356 U.S. 369, 376-378 (1958).

IN MICHIGAN, LIKE IN FEDERAL JURISDICTIONS, THE PURPOSE OF THE ENTRAPMENT DOCTRINE IS TO DETER UNLAWFUL GOVERNMENT ACTIVITIES AND TO PRECLUDE THE IMPLICATION OF JUDICIAL APPROVAL OF IMPERMISSIBLE GOVERNMENT CONSTRAINT. PEOPLE v. D'ANGELO, 401 MICH 167, 173 (1977); QUOTING SHERMAN, 356 U.S. 369, 372-373; 78 S.CT 819; 2 L.ED2D 848 (1958); UNITED STATES v. RUSSELL, 411 U.S. 423, 428-429; 93 S.CT 1637; 36 L.ED2D 366 (1973).

66.

## ARGUMENT

In claiming entrapment, the accused directs the judicial inquiry away from the issue of his guilt or innocence, and makes a collateral charge that the government is guilty of a corrupt abuse of it's law enforcement authority. It is a charge that places the defendant in an accusational posture upon which the courts have said, "Its is irrelevant to his guilt or innocence." Gorin v. United States, 313 F2d 641 (CA. 1, 1963); United States v. Sherman, 200 F2d 880 (CA. 2, 1952).

## I - Entrapment occured

In this matter, the petitioner, after turning himself into the Ingham County Sheriff's Department for violation of a (PPO) Personal Protection Order, resulting in a second stalking charge, and was jailed pending sentencing. While in the Ingham County Jail he was befriended by (2) two jailhouse "career" informants, Reginald Close and Charles Allen, who immediately began working on petitioner after discovering his charges and that he was vulnerably new to the jail system. Seeing that petitioner was distraught over the situation with his estranged girl friend, Mr. Allen stated to petitioner "bitch gotta' pay." Mr. Close then got involved and began to develop his plan. Ultimately, these two informants working in concert with law enforcement entrapped petitioner into a solicitation of murder plot. These two informants conspired to entice petitioner into committing a crime initiated and manufactured by them a and Detective Mobely of the Ingham County Sheriff's department.

67.

N THIS MATTER, REGINALD CLOSE AND CHARLES ALLEN, BY THEIR ACTIONS AND PARTICIPATION, BECAME AGENTS FOR LAW ENFORCEMENT.

IT WAS REGINALD CLOSE WHO DEVISED A PLAN TO HIRE A "HIT MAN" TO KILL PETITIONER'S ESTRANGED GIRLFRIEND, ERIKA MELKE.  MR. CLOSE THEN MADE CONTACT WITH HIS LAWYER AND THEN THE INGHAM COUNTY SHERIFF'S DEPARTMENT.  MR. CLOSE AND MR. ALLEN INITIATED THE CONVERSATIONS AND INSTIGATED THE FORMULATION OF PLANS WITH PETITIONER TRYING TO GET HIM TO AGREE TO THE MURDER PLOT.  BOTH INFORMANTS CLOSE AND ALLEN SPOKE WITH POLICE OFFICERS AND WERE THEN SENT BACK INTO THE JAIL TO OBTAIN MORE INCRIMINATING INFORMATION AND FURTHER THE PLOT, ALL UNDER THE DIRECTION OF INGHAM COUNTY LAW ENFORCEMENT.  MR. ALLEN, WHOM HAD A BABY ON THE WAY, HAD PREVIOUSLY PETITIONED THE JAIL FOR EARLY RELEASE. WHILE MR. CLOSE HAD ALREADY PROFFERED INFORMATION ON OTHER INMATE CASES AND DESCRIBED HIMSELF AS A "GOOD LIAR".  THESE JAILHOUSE CAREER INFORMANTS, AFTER THEIR INITIAL CONTACT WITH LAW ENFORCEMENT, WERE SENT BACK TO THE VERY SAME CELL BLOCK AS PETITIONER, WHERE THEY REMAINED IN "CLOSE PROXIMITY" OF PETITIONER AND CONTINUED TO ADVANCE THE PLOT AND ELICIT INCRIMINATING MANUFACTURED EVIDENCE AGAINST PETITIONER UNDER THE SUPERVISION AND GUIDANCE OF AUTHORITIES.

TESTIMONY AT TRIAL REVEALED:

## REGINALD CLOSE

## NOVEMBER 6, 2017 TESTIMONY:

Q.    WERE YOU STILL DISCUSSING THESE ISSUES WITH HIM AFTER SPEAKING WITH THE PROSECUTOR?

A.    YES.

Q.    SO AFTER YOU WERE SPEAKING WITH POLICE?

A.    YES.

68.

Q.   YOU WERE CONTINUING TO TALK TO HIM?

A.   YES.

Q.   ABOUT THE PLOT?

A.   YES.

## CHARLES ALLEN

### NOVEMBER 7, 2017 TRANSCRIPTS:

Q.   AFTER YOU WERE REMOVED FOR ISSUES WITH MUHAMAD, YOU'RE PUT BACK ON POST WITH MR. URAZ?

A.   YES.

Q.   IS THAT BEFORE YOU WROTE THE FIRST LETTER?

A.   THAT'S AFTER.

Q.   WHEN YOU WROTE THE SECOND KITE ON OCTOBER 24, 2016, ARE YOU STILL ON POST WITH MR. URAZ?

A.   YES.

Q.   WHO INITIATED THE CONVERSATION AS TO "BITCH GOTTA PAY". DID YOU INITIATE THE CONVERSATION?

A.   I WOULD SAY, PROBABLY.

Q.   THE BITCH GOTTA PAY. THE TIME YOU SENT THE FIRST KITE, WHAT'S GOING ON THOSE FEW WEEKS THAT YOU DIDN;T SEND IT RIGHT AWAY?

A.   I WAS GATHERING INFORMATION.

IN THIS MATTER THESE TWO JAILHOUSE CAREER INFORMANTS BY ACTION AND TESTIMONY WERE, IN FACT, ACTING AS GOVERNMENT AGENTS EMPLOYED AND DIRECTED BY THE STATE. THEIR INSTRUCTIONS AND INTENT WAS TO OBTAIN INCRIMINATING INFORMATION THAT THEY COULD THEN FORWARD TO INGHAM COUNTY AUTHORITIES. BOTH INFORMANTS INDUCED AND INSTIGATED CONVERSATION, DEVELOPED PLANS AND ENCOURAGED PETITIONER TO MOVE FORWARD WITH THE PLOT, THEN WERE GRANTED IMMUNITY IN THEIR

69.

PARTICIPATION IN THE THE SOLICITATION OF MURDER. WEREFORE, THEIR AGENCY CAN BE INFERRED BY THE CIRCUMSTANCES AND RECORD AS A WHOLE. SEE: STATE V. MARSHALL, 882 NW2D 68 (2016). MICHIGAN HAS BEEN AT THE FOREFRONT OF PROTECTING PERSONS FROM BEING CONVICTED OF CRIMES INSTIGATED, INDUCED, OR MANUFACTURED BY GOVERNMENT AGENTS.

### DETECTIVE MOBLEY

PETITIONER ALSO POINTS OUT THAT DETECTIVE MOBLEY, WHO WAS THE UNDERCOVER AGENT IN CONCERT WITH MR. CLOSE SET-UP THE STING OPERATION BY ARRANGING A VIDEO VISIT WITH PETITIONER WHERE MOBLEY INITIATED CONVERSATION ABOUT SOLICITATION OF MURDER USING CRYPTIC AND CODED LANGUAGE, TO WHICH PETITIONER WAS COMPLETELY UNAWARE, INFERRING THAT REFERENCES TO "TRASH" MEANT BODIES AND THAT THE NUMBERS "2" AND "5" WERE CODE FOR $2,000.00 AND $500.00. AT NO TIME DID PETITIONER ACKNOWLEDGE UNDERSTANDING OF THE CODED MESSAGES NOR DID HE EVER ARRANGE TO SEND MONEY COMPLETING A TRANSACTION. IT SHOULD BE DULY NOTED THAT DETECTIVE MORLEY'S SECOND ATTEMPT TO VISIT PETITIONER WAS DENIED BY PETITIONER AND NO FURTHER CONVERSATIONS TOO PLACE WITH DETECTIVE MOBLEY.

IN THIS MATTER, INGHAM COUNTY POLICE INVESTIGATORS ACTED AS INSTIGATORS, THEY "DID NOT" MERELY PROVIDE THE OPPORTUNITY FOR PETITIONER TO INCRIMINATE HIMSELF, THEY INTERJECTED THE DETAILS AND REFERENCE TO MURDER AND PAYMENT. (A REVIEW OF THE VIDEO VISIT TRANSCRIPT WILL PROVE THAT OFFICER MOBLEY INSTIGATED THE SOLICITATION IN COUNT-III OF THE INFORMATION). SEE EXHIBIT E

**70.**

TRIAL TRANSCRIPT, NOVEMBER 6, 2017, PG. 135:

MOBLEY:

"BASICALLY, I WAS TRYING TO GET HIM TO INCRIMINATE HIMSELF, IT WAS EASY."

THE VIDEO VISIT TRANSCRIPTS AND DETECTIVE MOBLEY'S TESTIMONY PROVES THAT MOBLEY WAN NOT JUST THERE TO OBTAIN EVIDENCE. BUT, HE "DELIBERATELY SOUGHT" TO INDUCE, AND INSTIGATE A SITUATION LIKELY TO CREATE A CRIMINAL ACT OR INFERENCE THAT A CRIMINAL ACT HAD OCCURRED. SEE IN GENERAL; UNITED STATES V. RUSSELL, SUPRA; PEOPLE V. SHELINE, 64 MICH APP 193 (1975).

THE RECORD IN THIS INSTANT CASE IS ABUNDANTLY CLEAR THAT PETITIONER DID NOT SEEK OUT AND INITIATE ANY CONTACT OR SEEK THE ASSISTANCE OF THE UNDERCOVER "HITMAN" (MOBLEY). HE DID NOT INITIATE CONTACT OR CONVERSATION AND HE DID NOT REFERENCE PAYMENT OF ANY KIND.

## II - THE TRIAL COURT'S RULING IS ERROR

AT THE ENTRAPMENT HEARING CONDUCTED ON OCTOBER 20, 2017, THE TRIAL COURT STATED IN PERTINENT RELEVANT PART AT (PG. 106-114):

"HE IS SAYING HE DIDN'T DO IT RIGHT?
)PAGE 106, LINE 13-15)

LET ME GO BACK TO HIS POSITION AT TRIAL IS THAT HE DIDN'T DO IT CORRECT?
(PAGE 106, LINE 18-19)

ARE YOU TRYING TO MAKE A NUANCE? YOU MIGHT SAY, IT MAY HAVE HAPPENED BUT WASN'T MY INTENT? IS THAT WHAT YOU'RE SAYING?
(PAGE 106, LINE 21-23)

I DON'T NEED TO GO BEYOND THE JONES CASE TO ENUMERATE WHY I'M GOING TO DENY THIS MOTION BECAUSE IT CLEARLY STATES:

'DEFENDANT CANNOT SIMULTANEOUSLY DENY THE COMMISSION OF A CRIME AND ASSERT THE DEFENSE OF ENTRAPMENT WHICH IS WHAT THE COURT CONCLUDES HERE." SEE: PEOPLE V. JONES, 48 MICH APP 334 (1994).

IT IS EVIDENT FROM THE RECORD THAT THE COURT GAVE GREAT WEIGHT TO ITS MISGUIDED CONCERN THAT PETITIONER'S PREDISPOSITION AND CLAIM OF GUILT OR INNOCENCE WAS RELEVANT TO ITS RULING, "IT IS NOT!"  AND IT IS WELL ESTABLISHED TO BE JUST THE OPPOSITE IN BOTH MICHIGAN AND FEDERAL JURISDICTIONS.

IN MICHIGAN PEOPLE v. JULLIET, 439 MICH 34 (1991) THE SUPREME COURT HELD THAT, "MICHIGAN FOLLOWS THE 'OBJECTIVE TEST' TO DETERMINE IF AN ENTRAPMENT OCCURRED."  ALSO SEE: PEOPLE v. D'ANELO, SUPRA. WHICH STATES IN PERTINENT PART: "ENTRAPMENT IS DETERMINED BY THE COURTS EVALUATION OF THE GOVERNMENTS CONDUCT NOT THE PREDISPOSITION OF THE DEFENDANT."  UNITED STATES v. RUSSELL, 411 U.S. 423 (1973); THE OBJECTIVE STANDARD DISPENSES WITH THE ELEMENT CONCERNING DEFENDANT'S CRIMINAL DISPOSITION AND FOCUSES ON THE CONDUCT OF THE INVOLVED POLICE, WHETHER THEIR ACTS HAVE GONE BEYOND THE SIMPLE OFFERINGS OF A CHANCE TO COMMIT A CRIME.

PEOPLE v. ADAMS, 232 MICH APP 128 (1988) CLEARLY DESCRIBES A DEFENDANT'S PREDISPOSITION AS "SUBJECTIVE" WHILE CONFIRMING THE "OBJECTIVE TEST".  ID.

IN THIS MATTER, THE TRIAL COURT FAILED TO APPLY THE "OBJECTIVE TEST" AND INCORRECTLY RELIED PRIMARILY ON THE PETITIONER'S PREDISPOSITION:

### THE TRIAL COURT
OCTOBER 20, 2017 ENTRAPMENT HEARING:

"THE FIRST PRONG THAT WE HAVE HERE IS CONTINUED ESCALATION OF ACTIVITIES ON BEHALF OF DEFENDANT URAZ, TO THE DANGER OF THE VICTIM ERIKA MELKE." (PAGE 108)

\*   \*   \*

72.

"WE HAVE ALL THESE THINGS LEADING UP TO THIS
SITUATION.  MR. URAZ IS AWAITING SENTENCING ON A
STALKING CHARGE, WE HAVE A CONVICTION FOR STALKING
THIS VERY SAME VICTIM."
(PAGE 109)

\* \* \*

"WE HAVE CONDUCT TO INDICATE HE WOULD DO THIS."
(PAGE 110)

\* \* \*

"WHETHER DEFENDANT WAS KNOWN TO COMMIT THE CRIME
WITH WHICH HE WAS CHARGED NOT NECESSARILY THE
SOLICITATION, BUT THE AGGRAVATED STALKING."
(PAGE 112)

\* \* \*

"DOESN'T APPEAR TO BE A TARGETED INVESTIGATION, IT
APPEARS BASED ON MR. URAZ'S ESCALATING HISTORY."
(PAGE 113)

\* \* \*

"FOR ALL THESE REASONS, I DON'T NEED TO GO BEYOND
THE JONES CASE..."
(PAGE 114)

\* \* \*

BY THE TRIAL COURT'S OWN ADMISSION, ABOVE, THE BASIS FOR DENYING

THE MOTION WAS ERRONEOUSLY BASED ON THE PETITIONER'S PRETRIAL

POSITION OF NOT GUILTY AND HIS ALLEGED CONDUCT LEADING UP TO THE

UNCONSTITUTIONAL UNDER COVER "STING OPERATION."  THERE IS NOTHING IN

THE COURTS RULING THAT ELUDES TO THE "OBJECTIVE TEST" STANDARD OF

REVIEW AND BECAUSE THIS ENTRAPMENT IS A CLAIM OF THE GOVERNMENT AND

THEIR AGENTS RESPONSIBLE BEHAVIOR, BOTH MICHIGAN AND FEDERAL LAW

MANDATES THAT THE PREDISPOSITION OF THE PETITIONER IS IRRELEVANT.

ACCORDINGLY, THE STATE COURT'S RULINGS ARE IN ERROR AND TO ALLOW THE

CONVICTION TO STAND WOULD BE A TRAVESTY OF JUSTICE.