STATE OF MICHIGAN

THIRTIETH JUDICIAL CIRCUIT COURT (INGHAM COUNTY)

PEOPLE OF THE STATE OF MICHIGAN

vs

File No. 16-1064-FH
16-1065-FH

TUNC URAZ

Defendant.

 ORIGINAL

/

## MOTION

BEFORE CLINTON CANADY III, CIRCUIT COURT JUDGE

Lansing, Michigan - February 28, 2017

APPEARANCES:

For the Plaintiff:

CHARLES KOOP (P75188)
Assistant Prosecuting Attorney
303 W. Kalamazoo St., 4th Fl.
Lansing, MI 48933

For the Defendant:

MICHAEL NICHOLS (P59139)
The Nichols Law Firm
3452 E Lake Lansing Rd.
East Lansing, MI 48823

JACOB PERRONE (P71915)
Perrone Law PC
221 W Lake Lansing Rd., Ste. 200
East Lansing, MI  48823

Recorded & Transcribed By:

Sheila Burger, CER 6651
517-483-6300 Ext 6310

TABLE OF CONTENTS

<u>WITNESSES:</u>

NONE

<u>OTHER MATERIAL IN TRANSCRIPT:</u>

|  | INTRODUCED | ADMITTED |
|---|---|---|
| <u>EXHIBITS:</u> |  |  |
| NONE |  |  |

Lansing, Michigan

February 28, 2017 - 3:11 p.m.

THE COURT: We have Mr. Koop here on behalf of the Prosecution. Mr. Nichols and Mr. Perrone here on behalf of Mr. Uraz. He has two files pending, 16-1064-FH with Mr. Perrone is representing him on and 16-1065 which Mr. Nichols is representing him on. This is Defendant's motion for severance.

MR. NICHOLS: Thank you, your Honor. May it please the Court, I filed a motion citing to the court rule and the relevant case law and also I would add People versus Sabin. People versus Sabin. People versus Sabin is at 463 Mich 43. The spelling is S-A-B-I-N, a 2000 case. That's a 404B case that I'll comment about in a moment but it comes down to really is there relevant evidence on the aggravated stalking case that is admissible in the solicitation to commit murder case.

The solicitation to commit murder case is based on - the first count would be with a gentleman named Reginald Close. Based on the preliminary examination testimony of Mr. Close, as well as a recorded interview, the date that Mr. Uraz allegedly solicited Mr. Close is not totally clear but there is no way it could have happened anywhere before mid-September at the earliest. That's important because the aggravated stalking charges would

have been completed I believe the day that Mr. Uraz arrived at the jail and allegedly attempted to make contact with the victim in this case. So you look at the dates and there's no spill over. The aggravated stalking charges, I believe the charges in 1066 are - the conduct is completed well before the conduct in the solicitation. Then you have the issue of the solicitation elements. This is a crime of inducement. It's completed once the person - in this case Mr. Uraz - if he had the intent to actually induce the person on the other end of the conversation to commit the crime, made an offer in exchange for consideration, you do this and I'll either forgive this debt or I'll pay you this money, then the crime is completed. The - the alleged victim in the aggravated stalking case isn't necessary and quite frankly other than the fact that she's the name who he wanted to have killed, that doesn't become relevant at all.

THE COURT: Why wouldn't it be relevant? Wouldn't it go to show - I mean I'm just thinking out loud.

MR. NICHOLS: Sure.

THE COURT: It's the same party, same person that he was convicted of previously. He then has another aggravated stalking charge with the same person and that's the person he was soliciting apparently to have murdered. So, I mean, it seems to me it's just an extension of the

stalking. I mean, in other words you switch from stalking to solicitation to murder. Maybe because he was incarcerated he couldn't be out there doing it himself, I don't know, but it seems to me that it's still a continuation of the same conduct.

MR. NICHOLS: And that's a great question and it made a point that I wanted to make. The stalking, that crime is all about terrorizing, threatening making somebody know you're there and you're watching and either you want to control them or make them feel harassed or intimidated. But this here is a crime of hey I'm doing this, I can get into your Facebook, I can get in your cell phone. It's almost the opposite with solicitation to commit murder. That's inducing someone to kill the alleged victim and when you're presumably trying to accomplish, if you really want to accomplish the crime of murder, the alleged victim, you know, you really wouldn't want them to know you're coming.

THE COURT: Right but it's the same victim. I mean, it would seem that you had a regular case and you had a aggravated case and then you had a solicitation to murder. The victim is the same throughout. All right? It's the same victim. So I guess the argument is well Judge it might be the same victim but here it's not evidence of him continuing to harass this person. Well, it seems solicitation for murder is the ultimate harassment

maybe, I don't know. It seems like it's a series of connected incidents and I think that's one of the standards on the motion to set severe, is it a series of connected incidents and it appears that it is a series of connected incidents from a basic charge to a aggravated stalking charge to a solicitation of murder. All involve the same person, victim that is, in a connected series of events. It seems to be that way.

MR. NICHOLS: The similarity stops at though the victim. That's where the similarity stops and here's why: Because murder is a different crime that stalking. I mean, you might have a stalking case that results in a murder but stalking is I want this person to feel harassed or intimidated. In other words, this person knows I'm there and I'm doing something and I'm not going to give up on trying to make contact or make you feel intimidated. Murder is murder. I mean the person—

THE COURT: But in this case the other factor though is he allegedly makes the solicitation when he's incarcerated for previously having cases involving the same victim. So he makes the solicitation while he's in jail. So, I mean, that would seem - I understand what you're saying it's not a direct - it's not a direct ongoing harassment. I think you used the term "in your face" but it is implied ongoing harassment because he's now in jail

when the alleged offense arises and it's the same thing it's just he's doing what he could do, in the light most favorable to the prosecution, since he was incarcerated.

MR. NICHOLS: And we look at it this way. What from those stalking allegations and you know there's one conviction because he pled to it and was serving his sentence then. So what about all of that would be admissible in the prosecution and the trial for solicitation to commit murder?

THE COURT: Well, I think we'd have to look at - look at that but it could be interpreted, I don't know, the prosecution hasn't filed anything, as an ongoing scheme, intent and design and he's continuing to harass this victim and that he's had, in essence, three bites at the apple. He had one and then he has an aggravated stalking charge that arose before or at the time of sentencing on the other one, I can't recall exactly, and then when he gets into the jail within a short time period, somewhere in there, he is accused of soliciting to murder the same person that he has been stalking previously. So when you talk about the stalking, I acknowledge that, you know, that the stalking is direct under the aggravated stalking but here I think it would be implied that since this is his intended victim, that he was really continuing the same harassment that he had engaged in before, just elevated it to a much higher

level.

MR. NICHOLS: Let me pick up on that question and that point. We talk about a common scheme and I think the Court said this is his plan, a common plan. Sabin says just a general similarity is not enough, you have to look at what's the connection. The scheme or the plan with stalking is the ultimate act of making this person feel harassed or intimidated. The plan or the scheme was solicitation to commit murder is obviously to commit the murder. And I can't-

THE COURT: Well, okay. The commit to murder but it's the same victim. That's where I'm struggling with, all right? In other words, it's the same victim who would be - I would rule with you if it was a sister, okay, or if it was an Aunt but here it's the same person. He's just continuing to take actions that could be considered harassing and intimidating to her. I understand that she doesn't have knowledge. I understand your argument on that, that the victim doesn't have knowledge that he's doing that and so you're distinguishing that between aggravated stalking and solicitation because she doesn't have knowledge. But his actions would seem to be a concerted effort in line with the other cases that is a series of connected acts.

MR. NICHOLS: I think we maybe come at it from a

standpoint of what would be relevant for Mr. Koop's prosecution of my client, Mr. Uraz, if at the trial if we were just going to trial on the solicitation to commit murder, what would be the relevant evidence and—

THE COURT: I would think it might be relevant if he files a motion why he was attempting to solicit murder. So I think it might be relevant that there was a prior relationship between the parties, that he had previously been convicted of harassment, that he subsequently then was convicted of — not convicted but charged with aggravated stalking while waiting sentence on the other case, if I recall correctly and then after that he then solicited for murder. So it would seem that at a trial for solicitation to establish why he was doing this, it might be relevant.

MR. NICHOLS: And I think what I'm hearing the Court say is its not necessarily motive, it's more Mr. Uraz's state of mind although motive is a state of mind—

THE COURT: Setting the state of mind and it would appear, I don't know, but it would appear that on solicitation for murder there's a pattern of lesser acts. So in other words, we have accelerating acts that lead up to this final one and I don't know, I don't have that before me now but it would seem that that probably would be relevant for his trial for solicitation, even if it was severed. I mean, even if we severed it, suppose we did

sever it, well it would still seem that that's going to be relevant to give the jury the information about how did we get here.

MR. NICHOLS:  That's where I think I probably should and let me hear from Mr. Koop what that theory of admissibility would be.  So with that, ah, I'll yield.

THE COURT:  Mr. Perrone?

MR. PERRONE:  Yes.  In order to adequately preserve the record at this point in time I was waiting for the joinder motion to file a motion to severe on the basis of the joinder.  From my perspective, 6.120 is controlling in this case.  Mr. Uraz would have a right to have the cases severed if it was determined that these are not related.  This is not the same conduct.

There are a number of grounds, same conduct, series of connected acts or a series of acts constituting parts of a single plan or scheme.  This isn't the same conduct.  There are temporal limitations-

THE COURT:  But isn't it the same conduct just taken to a different level?  I understand the nuance of the argument but you have a person who started off just, you know, regular we'll say stalking and then continued, escalated it to a charge of aggravated stalking and then escalated it further so a solicitation of murder.  So, I mean, that's why I'm saying even if I said he's entitled to

a separate trial and that, I think how you got to the solicitation is going to — is relevant. So if we're going to allow that in, I don't know, perhaps then why severe it? Then it becomes a judicial economy issue because even if it's severed it would seem, subject to the prosecution's motion, that it's going to be relevant. We aren't going to be able to have a trial and have problems with Mr. Uraz defending his solicitation of murder in vacuum because the jury is going to want to know how did he get here, why is he doing this, what's the nature of this, what's the nature of their relationship, when has happened before. So to me it seems more that's a connected series of acts versus specifically what happened.

MR. PERRONE: Right. Well in regards to that, as far as the same conduct, this is isolated in time for the same conduct to the grounds arising to facilitate joinder.

As far as a series of connected acts, we're looking at the acts, multiple offenses committed to aide in accomplishing another is not his - the alleged underlying circumstances regarding the aggravated stalking did not aide in any way his alleged actions associated with the solicitation to murder.

THE COURT: Okay. Well that same court rule, 6.120 under B(1) says joinder is appropriate if the offenses are related. For purposes of this rule offenses

are related if they're based on (a) the same conduct or transaction (you're saying that is not the same conduct or transaction) or a series of connected acts (we do have a series of connected acts) or a series of acts constituting parts of a single scheme or plan. I think that is potentially the same - a part of a scheme or plan. Too, if it's nothing more than to harass this lady, although I know there's a knowledge under the solicitation of murder, but the plan is, you know, focusing on the victim.

MR. PERRONE: Again, in order to adequately preserve the record at this point in time-

THE COURT: I understand.

MR. PERRONE: -as far as the series of acts constitute parts of the single scheme, you have a relationship aspect of that whereas the allegations underlying the aggravated stalking in no way aided the allegations underlying the charges associated with solicitation to murder. They're just too far different. You've got polar opposite crimes here. You've got a capital offense versus a five year aggravated stalking offense and the allegations underlying the conduct associated with the aggravated stalking were allegedly an e-mail that was sent and allegedly that he had gotten into the Facebook account and posted a picture on her Facebook account. That's significantly different than allegedly

trying to hire a hit man to murder someone.

Further, beyond the initial factors, the Court must have discretion on the basis (inaudible) circumstances are entertained by 6.120(B)(2) there is realistically I think the most telling factors associated with that is the potential for confusion or prejudice. I mean, are we going to try a solicitation of murder case based upon however many alleged events that there were of aggravated stalking, it's going to lead a jury to be significantly confused. My case we're going to be - that's more than relevant for my case, all of the prior issues associated with aggravated stalking, as to whether or not he was the individual associated with the IP address that's on these two isolated occurrences which is going to be a fairly short trial overall, it won't that much time, wouldn't take away from the judicial economy from the resources of the Court. I don't think that it's reasonable and may be extremely prejudicial to try Mr. Uraz on a capital offense based upon all of these prior incidents of aggravated stalking. That's not-

THE COURT: So even if I severed it, okay, the issue is isn't that conduct relevant to the aggravated stalking charge - I mean to the solicitation charges forming a basis for why he was doing what he was doing?

MR. PERRONE: Well, it cuts both ways. I mean,

as far as the allegations underlying, it's going to be extremely difficult to prevent the jury or juries from hearing the different allegations association (sic) with the solicitation to murder case and the aggravated stalking case depending upon the efficacy of whether or not that should be entertained for 404B, that's still yet to be determined but that's going to be extremely prejudicial to the aggravated stalking case with the allegations underlying the solicitation case from my perspective. My case is going to be more difficult-

THE COURT: We have to see but I think under 404B they could use subsequent contact to show the continuing intent, scheme and design. So-

MR. PERRONE: If it was not unfairly prejudicial, which I would make the argument it's extremely unfairly prejudicial to try an aggravated stalking case on the basis of facts associated with a solicitation of murder case-

THE COURT: Really it would be-

MR. PERRONE: -and I think it works both ways.

THE COURT: -the other way around, it would be trying the felony solicitation case and bringing the aggravated stalking. Okay. Anything else for the record?

MR. PERRONE: I'm okay being the little brother in this whole thing.

THE COURT: All right. Mr. Koop, you got

anything to add?

MR. KOOP: Thank you, Your Honor.

It is the People's intention to join these cases and I guess now would be a great time to make that motion. It's the People's position that we do have a, ah, under 6.120(B), we do have at least the same conduct or a series of connected acts. The solicitation of murder as it's presented doesn't occur without the aggravated stalking. The Defendant is, ah, his bond is revoked at the time of his plea. He goes to jail and it's while he's in jail awaiting sentencing that the solicitation of murder first comes about. So, the aggravated stalking is charged 8-23-16 through 9-26-16 and he began in late September I believe it was, late September/early October, the first report of possible solicitation of murder of the Defendant by at least Reginald Close. So, I think we first have escalated behavior by the Defendant in terms of the aggravated stalking. Then the aggravated stalking turns into the home invasion, excuse me, the solicitation of murder.

So, it's the People's position that first we have other acts evidence that that's not just the aggravated stalking that we would seek to join in this case. So, there's even the prior stalking and home invasion that we would seek under 404B to introduce and the Court can at that time in People file that notice and motion weigh on

any prejudice. But as it relates to these two cases, it's the People's position that we have same conduct and most certainly a series of connected acts and I think that's what's most important is that series of connected acts because it would go to show the Defendant's motive, intent or at least negate any argument of mistake or accident that I didn't know what I was doing when I was talking to this person on -- this random person on the phone about taking trash out of my house for $1,000 a bag. So, I think it most certainly goes to his motive and intent and without that -- but without that aggravated stalking case the jury will be left questioning who's -- who is the victim in this case to the Defendant and why is all of a sudden he trying to solicit the murder? Well, he's trying to solicit the murder for her because he's about to get sentenced on an aggravated stalking charge and he's upset that he just got another charge of aggravated stalking with her. So, I think they are, at a minimum, a series of connected acts but I think that also evidence of same conduct and that the jury -- that they should be tried together. Thank you.

MR. NICHOLS: I have a question.

THE COURT: Yes.

MR. NICHOLS: So, if the prosecutor says well it's to show state of mind, he was upset, that's why he tried to solicit these murders from first two inmates and

then there's an undercover who comes and makes one of these video calls to him. Those are the three counts. I say well he wasn't upset, he wasn't really trying to get her killed. He was planning for these guys to go tell on him and it would get back to her and this would be more stalking.

THE COURT: That's a defense?

MR. NICHOLS: Doesn't that fly in the face of Mr. Perrone's defense on the stalking? I just made my guy a stalker because it's a less serious offense than-

THE COURT: Maybe that's the strategy you employ, I don't know.

MR. NICHOLS: But I think Mr. Perrone and I are pointing at each other.

THE COURT: But let me just, so that the record is clear, so on August 23rd Mr. Uraz pled guilty to aggravated stalking case in 16-534-FH. There he was charged with home invasion second and aggravated stalking with Erica Melke. At that time the Court had to revoke his bond and remand him because he wouldn't leave the victim alone. We had to suspend his phone privileges because he wouldn't leave the victim or her mother alone and he was sentenced on November 8th to six months in jail with credit for 68 days followed by 60 months of probation.

Somewhere between August 23rd and September 15th -

September 26th, 2016 the Defendant again admitted to having engaged in harassing conduct against the same victim - that's Mr. Porrone's case, file number 16-1064 - while he was still in jail awaiting sentence in the prior case. Then somewhere between August 31st of 2016 and October 31st 2016 the Defendant managed to have solicited three people to murder the same victim, Erica Melke. All three of the alleged solicitations occurred while he was in jail. apparently awaiting sentence on the first case.

So the Court is - first of all, it's a relatively condensed time period that all these things are occurring. The Court has already had an analysis of MCR 6.120(B) where the Court is indicating that's the same conduct or transaction, it's a series of connected acts and it appears that it's a series of acts constituting parts and I think that's the key language under (B)(1)(c), a series of acts constituting parts of a single scheme or plan and that the Court is going interpret it under. The information I have at this time, it's just an ongoing attempted act, the ultimate aggravation would be death.

So, the Court looking at that, I have to consider whether joinder is possible, I have look at the relevant facts and then decide whether those facts constitute related offenses. I do - I find that they are related.

Next question of fact and law, I guess if the

Court of Appeals wants to look at it, is (inaudible-coughing) clear error and identical standard review. The offenses are related for purposes are joinder if the Defendant engaged in on-going acts constituting parts that was overall scheme or plan. The Court is going to find that it appears he has done that.

Temporal proximity is not required. We don't really have that issue here, all this took place in a condensed period of maybe two minutes, three minutes, so it's not an issue.

Joinder of other crimes cannot prejudice the Defendant more than he would have been by the admissibility of other evidence in a separate trial. I think on the capital offense that's not an issue. On the aggravated stalking maybe, all right, I can see where maybe that's a possibility.

But none of these, nor have I heard any claim presented by either Mr. Perrone or Mr. Nichols that the Defendant is somehow prejudiced by a joint trial when — because it does not restrict his ability to present a defense. I have not heard anything on that. So based on that, the Court would consolidate the cases under C, I guess, consolidate the cases and deny the motion for severance.

MR. NICHOLS: I'll have an order. I brought one

with me.

THE COURT:  You brought one with you or you did not?

MR. NICHOLS:  I have one with me but it's in my bag.

THE COURT:  All right.

MR. NICHOLS:  While Mr. Uraz is in the courtroom, two things perhaps, Your Honor?

THE COURT:  All right.

MR. NICHOLS:  We did discuss at the bench, I related to the Court and to Prosecutor Koop and Attorney Perrone, Mr. Uraz's concerns about the Court's February 7th order not getting implemented at this time.  So, I did bring that up and advised the Court I filed an affidavit and motion for show cause.  I filed it on this case though. Maybe I should have filed the separate case.

THE COURT:  Well, this is the case where the order came from.  So, I don't think it would be a separate case.

MR. NICHOLS:  Okay.  And then I have legal mail while I have contact with him I'd like to give him.

THE COURT:  Well, it has to go to the Sheriff. If it's legal is it yours or you're making a representation that it's your mail, you wrote it?

MR. NICHOLS:  Yes.  Its some documents I wanted

him to have and it's got our law firm's letterhead and address on the envelope. I don't mind if Deputy Calkins takes a look at it.

THE COURT: Yeah, probably better look at it. All right. Just look at it and see if it's legal in nature.

All right. So other than that, do we have anything else today? I see the pretrial is set for next - it's supposed to be next week. Okay. See everybody back next week.

MR. PERRONE: Thank you, Your Honor.

(At 3:40 p.m. hearing concluded)

STATE OF MICHIGAN        )

                         )

COUNTY OF INGHAM         )


I certify that that this transcript, consisting of 21 pages, is a complete, true, and correct transcript of the proceedings and testimony taken to the best of my ability in this case on February 28, 2017.



*Sheila Burger*

Sheila Burger, CER 6651
Veteran's Memorial Courthouse
313 West Kalamazoo Avenue
Lansing, Michigan 48933
517-483-6300 ext. 6310

STATE OF MICHIGAN

THIRTIETH CIRCUIT COURT FOR THE COUNTY OF INGHAM

PEOPLE OF THE STATE OF MICHIGAN

vs

File No. 16-1064-FH
File No. 16-1065-FH
Hon. CLINTON CANADY III

TUNC URAZ

Defendant

/

NOTICE OF FILING TRANSCRIPT

TO:   Clerk Court of Appeals
Po Box 30022
Lansing, MI 48909

Ingham County Prosecutor's Office
Appellate Division
303 W. Kalamazoo St.
Lansing, MI 48933

Ingham County Circuit Court
Clerk's Office
313 W. Kalamazoo St., 1st Fl.
Lansing, MI 48933

Susan Kaestner Walsh
Appellate Attorney for Defendant
PO Box 96
Milford, MI 48381

PLEASE TAKE NOTICE THAT on July 17, 2018, I filed the 2/28/17 hearing transcript in the above-entitled cause with the Thirtieth Circuit Court Clerk's Office for the County of Ingham, State of Michigan.

Sheila Burger, CER 6651
Veteran's Memorial Courthouse
313 West Kalamazoo Avenue
Lansing, Michigan 48933
517-483-6300 ext 6310

Approved, SCAO

| | | | |
|---|---|---|---|
| | Distribution of Form: | Original-Appellate court<br>1st copy – Trial court<br>2nd copy – Appellee/Attorney   JIS Code: RRC | 3rd Copy – Appellant/Attorney<br>4th Copy – Reporter/Recorder |

| | | CASE NO. |
|---|---|---|
| **STATE OF MICHIGAN**<br>30th Judicial Circuit – Family Division<br>**INGHAM COUNTY** | **REPORTER/RECORDER CERTIFICATE<br>OF ORDERING OF<br>TRANSCRIPT ON APPEAL**<br>Appeal to:   ☒ Court of Appeals   ☐ Circuit | 16-1064 FH<br>16-1065 FC |

Court Address: 313 W. Kalamazoo Street, Lansing, MI 48933

Court Telephone: (517) 483-6105

| | |
|---|---|
| Plaintiff/Petitioner name(s) and address(es)   ☒ Appellant   ☐ Appellee<br><br>TUNC URAZ | Defendant/Respondent name(s) and address(es)   ☐ Appellant   ☒ Appellee<br>**v**<br>PEOPLE OF THE STATE OF MICHIGAN |
| Attorney, bar no., address and telephone no.<br><br>SUSAN K. WALSH   (P-40447)<br>ATTORNEY AT LAW<br>P.O. BOX 96<br>MILFORD, MI 48381<br>(248) 563-9149 | Attorney, bar no., address and telephone no.<br><br>PROSECUTING ATTORNEY<br>INGHAM COUNTY 30TH JUDICIAL CIRCUIT COURT<br>303 WEST KALAMAZOO AVE.<br>LANSING MI 48933<br>(517) 483-6108 |

☐ Probate      In the matter of:      **SEE ABOVE**

> This certificate must be filed by appellant or reporter/recorder within 7 days on appeals to the Court of Appeals.
> This certificate must be filed by appellant within 7 days on appeals to the Circuit Court.

I am a certified court reporter/recorder for the court designated above and I certify that:

1. On ___6-20-18___   ☐ a portion of the   ☒ the complete   transcript of proceedings, taken in this case
   Date

   before Judge ___CLINTON CANADY III___   on ___3-22-17___   was ordered by
   Date(s)

   ☒ a. ___SUSAN K. WALSH___ , attorney for ___TUNC URAZ___
       Attorney name (type or print)          Name (type or print)

   ☐ b. the appellant, _____
       Name (type or print)

   ☐ c. the court.

   ☒ 2. Payment has been secured and the transcript will be furnished by me ___8-17-18___
       Estimated dates of completion

   Estimated number of pages is ___20___

   ☐ 3. The transcript has been filed with the court and furnished as requested.   Date filed: _____

   ☐ 4. There is no record to be transcribed.

I declare that the statements above are true to the best of my information, knowledge and belief.

___6-26-18___
Date
_Rita Yvette Nicholson_
Reporter/Recorder signature
RITA YVETTE NICHOLSON
Name (type or print)

CER 4732
Certification, designation and number
303 WEST KALAMAZOO STREET
Business address
LANSING MI 48933
City, state, zip

List names, certification designations and numbers, and dates or each proceedings or each reporter or recorder who reported or recorded or transcribed any part of the proceedings.

MCR 7.101©(3)©, MCR 7.210(B)(3)(a)

**MC 501 (3/05) REPORTER/RECORDER CERTIFICATE OF ORDERING OF TRANSCRIPT ON APPEAL**

STATE OF MICHIGAN
IN THE 30th CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE PEOPLE OF THE
STATE OF MICHIGAN,

vs.                                    Case No.:   16-1064-FH
                                                   16-1065-FC
                                       Hon. Clinton Canady, III

TUNC URAZ,

                    Defendant.
_____/

REPORTER'S NOTICE OF FILING TRANSCRIPT

TO:   Court of Appeals Clerk's Office
      PO Box 30022
      Lansing, MI 48909

      30th Circuit Court - Ingham County
      Lansing, MI  48933
      Ingham Prosecuting Attorney's Office

      Susan Kaestner Walsh
      PO Box 96
      Milford, MI 49301

           PLEASE TAKE NOTICE That I have filed, on today's
date, in the 30th Circuit Court, in the above-entitled cause,
a true and correct transcript dated: December 13, 2017.


Teresa J. Abraham, CSR-3445
Official Court Reporter
Ingham County Circuit Court


Date:    June 21, 2018