STATE OF MICHIGAN

IN THE 30th JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM

PEOPLE OF THE STATE OF MICHIGAN

V

TUNC URAZ

    Defendant.

HON. CLINTON CANADY III
File No. 16-1064 FH
    16-1065 FC

PRETRIAL CONFERENCE
BEFORE THE HONORABLE CLINTON CANADY III, CIRCUIT COURT JUDGE
Lansing, Michigan - Wednesday, March 22, 2017

APPEARANCES:

For the People:

CHARLES T. KOOP (P-75188)
ASSISTANT PROSECUTING ATTORNEY
INGHAM COUNTY CIRCUIT COURT
303 WEST KALAMAZOO AVE.
LANSING MI   48933
(517)483-6108

For the Defendant:

JACOB PERRONE (P-71915)
ATTORNEY AT LAW
221 W. LAKE LANSING RD., STE 200
EAST LANSING MI   48823
(517) 351-0332

For the Defendant:

MICHAEL NICHOLS (P-59391)
ATTORNEY AT LAW
3452 E. LAKE LANSING RD.
EAST LANSING MI   48823
(517) 432-9000

RECORDED/TRANSCRIBED BY:

R. Yvette Nicholson, CER 4732
Certified Electronic Recorder
303 W. Kalamazoo Street
Lansing MI   48933
(517) 483-6374

1

ORIGINAL

TABLE OF CONTENTS

WITNESSES:                                      PAGE

NONE

EXHIBITS:                          IDENTIFIED      ADMITTED

NONE

Lansing, Michigan

Wednesday, March 22, 2017 - at 10:20 a.m.

MR. KOOP: Next Your Honor People v Tunc Uraz file number 16-1064-FH and 16-1065-FC.

THE COURT: We have Mr. Perrone here on file number 16-1064 and we have Mr. Nichols here on file number 16-1065. This is the time set for the final pretrial; what are we doing today?

MR. NICHOLS: Your Honor Michael Nichols on behalf of Mr. Uraz on 1065 which based on the negotiations, discussions and other moving parts of the case, appears to be the driving force. Having talked to Mr. Uraz a number of times about the plea offer, the sentencing guidelines and the COBBS agreement based on the plea, sentencing guidelines based on a possible outcome of the trial when Mr. Uraz is sentenced on everything, after being convicted on everything, Mr. Uraz has advised me of his choice at this point and time. His choice is to decline to avail himself of the offer. Also, based on other representation issues I have a motion to withdraw as counsel which Mr. Uraz and I have talked about several times. I have a copy for him to serve him today. I've provided service to both Mr. Perrone and Mr. Koop. I've set it on for a hearing to give Mr. Uraz an opportunity to file a response. He says he opposes it at this time; I'd

be happy to facilitate getting his response filed with the Court if the Court gives him a week or two for a hearing and a motion.

THE COURT:  Alright, Mr. Koop would you just place the last plea offer on the record so Mr. Uraz can hear that?

MR. KOOP:  Yes Your Honor.  The offer is that in file number 16-1065-FC, that is the solicitation of murder case, that the defendant plea guilty to one count of solicitation of murder with a Killebrew agreement that he be sentenced on the "A" grid, cell "C-3" which places him at 81-135.  There is also a, and in exchange in this file--

THE COURT:  --it would be 81 to what?

MR. KOOP:  135 months.

THE COURT:  Okay, alright.

MR. KOOP:  And that in exchange the People would dismiss the balance of charges not plead to in 16-1065-FC as well as dismiss the habitual offender notice and also dismiss in full file 16-1064-FH, which is the aggravated stalking charge.

THE COURT:  Okay, in addition the Court indicated that pursuant to a COBBS that I would agree to a cap of up to 96 months.  So that's not saying I would sentence you to 96 months, it's just saying I would not go

any higher than 96 months within that guideline range of 42-135. So, you've had a chance to review and discuss that plea offer Mr. Uraz?

THE DEFENDANT:  Yes I have Your Honor.

THE COURT:  Okay, and now tell me why you want another attorney.

THE DEFENDANT:  I don't want another attorney; I was happy with Mr. Nichols it's just that I--

THE COURT:  --alright, let's hear from Mr. Nichols and why he wants to withdraw.

MR. NICHOLS:  Your Honor it is, I adopt and incorporate the motion that I've drafted and I will provide the report.  It's both the issue of MRPC 1.2 and MRPC 1.16(b)(4)-(6).  We have a contract, I did not attach that contract to the motion but if the Court wanted to see it for in camera review I'd be happy to do that.  I would say in essence having knowingly entered into that contract agreement and knowing the cost to have a trial and having made representations that he wanted his trial and would do what it takes that there was the ability to fund those legal services.  I think perhaps his position has changed in terms of the availability of funds; I don't want to go into specific details.  But as I indicated in my motion to withdraw and I don't want to prejudice the client, it's very important not to do that but you get to a point and

time when you have to make decisions on things to invest in. He knows my view of the risk-reward for this trial and my view of the case and my opinion. I've given him my professional opinion after reviewing hundreds and hundreds of pages of documents and perhaps over two hours of video recordings and other documentary evidence, preliminary exam transcripts, other transcripts, had private investigators interview some witnesses, in particular potential witnesses on the two, we'll call them jail house snitch witnesses who are sort of the driving factors in this case. And I think perhaps Mr. Uraz has changed his mind about the need to put money into that investment. He wants to have a trial; that's his right and I don't begrudge him that right. But if he has a limited right to the counsel of his choosing, the financial hardship to the attorney was aggrandized when the Court agreed to merge the aggravated stalking charges with the solicitation to commit murder charges which makes the trial a little bit longer and a little bit more complex. There are some other issues in the representation Your Honor, I don't want to get into details. I've exercised my professional judgment on what not to file, I'll put it that way, what not to do, what to say and what not to say. There are certain things that lawyers just shouldn't do if it's not their professional judgment to do it. I don't want to

prejudice Mr. Uraz so I'm not going to go into details. I would adopt and incorporate my motion to withdraw as counsel. I did tell Mr. Uraz, I think it was almost 28 days ago, with a verbal communication followed up by a letter that is in my file, that this may be coming if we didn't resolve some of my concerns and issues. So he certainly had reasonable notice. Mr. Perrone is here, as another lawyer, I don't think Mr. Uraz would be prejudiced if the Court allowed this firm to withdraw. I think all of the factors militating towards granting the motion under the rules of professional conduct are there for the Court to grant the motion. I don't know what Mr. Uraz has to say, if he wants to think about it some more and put something in writing; I told him I'd be happy to give a written response to the Court so the Court could hear him out too. But I'd ask the Court to consider the motion and grant it.

THE COURT: So Mr. Uraz, do you wish to write a written response so that the record would be clear in this matter?

THE DEFENDANT: I can tell him my response or I could write it down if you want--

THE COURT: --alright--

THE DEFENDANT: --whatever you prefer--

THE COURT: --okay you can tell me today.

THE DEFENDANT:  Your Honor I hired Mr. Nichols November 23.  My first response was if you don't see hope in this because I do want to go to trial please don't waste my time and money.  That was exact, and he said he would represent me regardless.  Maybe I misunderstood it but at that time I'm still on full restriction and I was administrative segregation at the jail also so I had no contact outside with my sister who controls my funds.  And therefore I believe Mr. Nichols was paid full amount of the retainer fee at that time, everything.  And I never received detail charges until yesterday.  And I'm kind of frustrated, I was kept in the dark and I couldn't communicate with my family about what's going on with money wise or how should we pay this, should we do monthly payments or not.

THE COURT:  Alright, so--

THE DEFENDANT:  --just, that's my frustration I'm going through right now with and I'm very happy with the work that Mr. Nichols has done--

THE COURT:  --okay--

THE DEFENDANT:  --I have no problem with that.

THE COURT:  So there are two things as I see it okay?

THE DEFENDANT:  Yes sir.

THE COURT:  One is are you going to be able to

meet your financial commitments by taking the matter to trial or are you still reflecting on the fact that you don't want to waste your money if Mr. Nichols maybe has advised you of his opinion of the facts in the case?

THE DEFENDANT:  Your Honor I have taken so much money from my family already, they're already in hardship. I have not worked in almost six months, almost a year right now.  I need to work to be able to support the whole thing.

THE COURT:  Okay, so--

THE DEFENDANT:  --that's my frustration--

THE COURT:  --the answer is you're not going to be able to meet--

THE DEFENDANT:  --no--

THE COURT:  --any additional--

THE DEFENDANT:  --no, it would be unfair to son--

THE COURT:  --and that the fact that you've been unemployed for six months--

THE DEFENDANT:  --more than six months--

THE COURT:  --and other than perhaps having some assistance from your family you, yourself though, are indigent; is that correct?  You don't have any other monies independently of yourself without having to rely upon family members to assist you?

THE DEFENDANT: Exactly.

THE COURT: Alright, and then I guess part of it is that it's been indicated that there might be a difference of opinion between Mr. Nichols and yourself as to how to proceed; did you perceive that as well?

THE DEFENDANT: I was informed about the difference of opinion, of his opinion by January 31, which is the first pretrial that we had here. Until that time I was not informed of any difference because he was doing his investigation.

THE COURT: But you acknowledge that apparently there is a difference of opinion at this time, right?

THE DEFENDANT: Yes, that is correct.

THE COURT: Alright, comments Mr. Koop?

MR. KOOP: Your Honor the People will take no position as to Mr. Nichols' motion and defer to the Court.

THE COURT: Are you on the "A" list?

MR. PERRONE: I am.

THE COURT: Do you want to take on the whole thing or not?

MR. PERRONE: As I understand it it has to get sent back to Leigh Ann but--

THE COURT: --no it doesn't have to--

MR. PERRONE: --based upon my--

THE COURT: --it doesn't have be--

MR. PERRONE:   --understanding--

THE COURT:   --sent back to Leigh Ann if your're--

MR. PERRONE;   --based upon my--

THE COURT:   --on the "A" list--

MR. PERRONE:   --understanding it's highly likely that she would be appointing myself as I was initially appointed to represent Mr. Uraz on the "A" case.

THE COURT:   Alright, okay, so it only has to go back to her if you were not on the "A" list.

MR. PERRONE:   As I understand it it's supposed to go back to her but--

THE COURT:   --it's up to me.

MR. PERRONE:   I don't always understand everything.

THE COURT:   Right, well, it's up to me, you were already on it.   Alright--

MR. PERRONE:   --the only thing that I would ask--

THE COURT;   --what about you?  Do you want a second attorney Mr. Uraz because currently you have two?  You have Mr. Perrone who apparently represented you initially on both cases and then Mr. Nichols came in on the major case, we'll call it, and now Mr. Nichols and you apparently have sort of a meeting of the minds that he

11

should step back and withdraw because I'm not going to make him go forward and not get paid according to the contract, okay; I'm not going to do that. So then the question is do you want Mr. Perrone back or do you wish to have me appoint somebody else and meet with that person and then go forward at that time? That might be better just so that you can have an independent opinion, I don't know.

THE DEFENDANT: I'm happy with Mr. Perrone; I have no problems with Mr. Perrone. But you appoint a second attorney just to help Mr. Perrone?

THE COURT: Well, it's up to you; I'm making it your choice. So I'm prepared to appoint Mr. Perrone back on the file--

THE DEFENDANT: --I'm fine with Mr. Perrone--

THE COURT: --since he was on the file originally so--

THE DEFENDANT: --yes--

THE COURT: --he would be further along than anybody else who might come in, alright?

THE DEFENDANT: I'm happy with Mr. Perrone.

THE COURT: That's okay with you?

THE DEFENDANT: Yes sir.

THE COURT: Alright, okay--

MR. PERRONE: --if I could just request the

courtesy to have a little bit of time to get up to speed on all of the facts as I was not privy to a lot of the facts after Mr. Nichols came in. I don't need that much time but some additional time--

THE COURT: --well if it's going to be a trial, we might as well get on and get the date set. I mean that's where we are at this time. I mean, I think under my policy it doesn't appear as if there will be any reduced charges being offered, okay? The guidelines in this matter are pursuant to any plea, well I guess there could be a component on that because I probably wouldn't accept that so I don't know what the actual guidelines are. Do we know what the actual guidelines are rather than a stipulated C-3, would they be something different?

MR. KOOP: Uhm, I'm trying to make sense of my various notes. I think they could, I think they're at right around at the low end, maybe 126 to 210.

THE COURT: Okay, without the C-3 Killebrew portion?

MR. KOOP: Correct.

THE COURT: Alright, okay, so.

MR. KOOP: That's a conservative number though Your Honor, it could be higher.

MR. PERRONE: If I may Your Honor, due to the complexity of the facts associated with the "A" case I

13

only have a preliminary understanding of the facts associated with the "A" case given the complexity and severity of the potential punishment associated--

THE COURT:  --I'm not a spiel guy Mr. Perrone, I mean it's just a lot better to say give me some time rather than coming up with this spiel.  You've been here at every proceeding working along the case so, you handled the preliminary examination did you not?

MR. PERRONE:  I did not do the preliminary examination.

THE COURT:  You read it--

MR. PERRONE:  --I haven't--

THE COURT:  --I mean, I don't need all of that, just say I need some time without all of this, what do I call it?

MR. PERONE:  Lawyering.

THE COURT:  Alright, so we're going to allow Mr. Nichols to withdraw for the reasons set forth, but you need to file the motion anyway so that his file will be complete later.  So you need to go ahead and get that filed and the record should reflect that Mr. Nichols made an oral representation of the contents of the motion.  Mr Uraz indicated he had no objections and going on and us hearing that motion today.  And so I'm granting Mr. Nichols' request to withdraw.  Okay, we are going to

14

appoint Mr. Perrone who was initially on the case but apparently got off before the preliminary examination. So we're going to appoint Mr. Perrone now to represent Mr. Uraz on both cases, including the 65 file on the grounds that he was originally appointed before Mr. Nichols came in. So therefore we're going to re-appoint him and we'll call it a re-appointment to the 16-1065 file and then we're going to give him a month to come up to speed. So we're going to come back for another final pretrial on April 25th at 2 o'clock.

MR. PERRONE: I'm planning on attempting to go to Disney World; I haven't booked the tickets yet but it's the week of my wife's birthday.

THE COURT: That week?

MR. PERRONE: That week, yes.

THE COURT: I can go to May 2nd, May 2nd?

MR. PERRONE: That works.

THE COURT: Alright, so May 2nd at 2, a Tuesday. Alright, anything else?

MR. NICHOLS: I have the original; does the Court want a Judge's copy of the motion?

THE COURT: No, just hand the original to the clerk so she can file it. I just want it in the file if there is ultimately a review of this matter and this question. Anything else Mr. Koop?

15

MR. KOOP: I would just ask, per my office policy, that Mr. Perrone get discovery from Mr. Nichols. I think they should align up but just in case there is an overlap and then Mr. Perrone you're welcomed to come to my office and view my file to make sure you have everything.

MR. PERRONE: I'll get everything coordinated with Mike.

THE COURT: Okay, so we'll see you back on May 2nd Mr. Uraz.

THE DEFENDANT: Thank you Your Honor.

MR. NICHOLS: I'll get an order done--

THE COURT: --alright--

MR. NICHOLS: --that includes the appointment of Mr. Perrone too?

THE COURT: Yes.

MR. NICHOLS: Okay, thank you.

(At 10:38 a.m., Proceeding Concluded)

STATE OF MICHIGAN    )

                     )

COUNTY OF INGHAM     )

I certify that that this transcript, consisting of 17 pages, is a complete, true, and correct transcript of the proceedings and testimony taken in this case on Wednesday, March 22, 2017.

July 27, 2018

R. Yvette Nicholson, CER 4732

30th Judicial Circuit Court

313 West Kalamazoo Avenue

Lansing, Michigan 48933

517-483-6374

17