STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

THE PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

vs.                       File No. 16-1064-FH

                              16-1065-FC

TUNC URAZ,

        Defendant.

_____/

STATUS CONFERENCE

BEFORE THE HONORABLE CLINTON CANADY III, CIRCUIT COURT JUDGE

Lansing, Michigan - Tuesday - August 15, 2017

APPEARANCES:

For the Plaintiff:        CHARLES THOMAS KOOP, II (P75188)
                        303 West Kalamazoo Street Fl. 4R
                        Lansing, MI 48933
                        (517)483-6517

For the Defendant:        JACOB ALAN PERRONE (P71915)
                        221 West Lake Lansing Road Ste. 200
                        East Lansing, MI 48823
                        (517)351-0332

RECORDED BY:              Susan C. Melton, CER 7548
                        Certified Electronic Reporter
                        (517) 483-6500 x6703

TABLE OF CONTENTS

| WITNESSES: | | PAGE |
|---|---|---|
| NONE | | |

| WITNESSES: | | |
|---|---|---|
| NONE | | |

| EXHIBITS | MARKED | ADMITTED |
|---|---|---|
| NONE | | |

Lansing, Michigan

Tuesday, August 15, 2017 – 2:54 p.m.

MR. ROSS: Scheduled for Status Conference, People versus Tunc Uraz, docket number 16-1065 and 16-1064 FC and FH respectively. Attorney Jacob Perrone, Prosecutor, Charles Koop.

THE COURT: We have Mr. Koop here in regard to Mr. Uraz, Mr. Perrone, and you're Tunc Uraz, Sir?

MR. URAZ: Yes, your Honor.

THE COURT: All right. What are -- what are we doing today, if anything?

MR. KOOP: Seems like we're just leaving it set for trial, your Honor. Last time I thought we were close to a -- a number. It seems like Defendant's got even lower, so we're at different ends of spectrum here.

THE COURT: So refresh my memory as to where we were, what your proposal was?

MR. KOOP: The proposal was for a Killebrew that Defendant be sentenced on the A-Grid, Cell C3, which put him at 81 to 135 months and he would be pleading guilty to one count of Solicitation of Murder. We would dismiss the balance of charges in that file, meaning two additional counts of Solicitation of Murder and plead -- excuse me dismiss the pending Aggravated Stalking charge as well. I believe the Court had set a cap -- Cobbs for a cap of upfront not to --

3

upfront not to exceed 96 months minimum sentence.

THE COURT: Okay.

MR. KOOP: A Cobb upfront minimum sentence not to exceed 96 months.

THE COURT: That's the Cobb, but your proposal is 81 months?

MR. KOOP: Our Killebrew was 81 to be sentenced on the A-Grid, Cell C3 --

THE COURT: Lowering the guidelines --

MR. KOOP: Those are in the -- those are the guidelines, 81 to 135 months.

THE COURT: And Mr. Perrone, any counter proposals?

MR. PERRONE: Not at this time, your Honor. I've spoken with Mr. Koop in regards to my client's position a little further off then we need to be at this point --

THE COURT: Well, this is it. So, I mean I'm not coming back again. I already have given you an additional chance. I see we have, I think, a motion or something set on Wednesday, but I won't be coming back talking about any plea discussions.

MR. PERRONE: I would request a consultation with Mr. Koop that we defer until next week, your Honor's determination as far as any plea deals are concerned, I was out of the office last week with -- I was sick.

THE COURT: Well, I mean it just doesn't look like

4

we're close, so I don't -- I mean --

MR. PERRONE: I think we should entertain at least for another week, your Honor, if we may?

THE COURT: Well, but I've been doing that for you all along, Mr. Perrone. At some point it's not like every time we come in let's go another time period. That's how we got here today because I gave you that, right? So at some point we have to just bring some closure and get ready for trial in this case.

MR. KOOP: I would also like to put the maximum -- or score guidelines as I have at trial if convicted. I have him conservatively at 171 to 356 months as a Habitual Offender Second. Depending on how some of the OV's, offense variables are scored could be as high as 225 on the minimum, 2, 4 and 68 to life on the maximum.

THE COURT: All right. Anything else? Well, don't we have some motions set in this?

MR. PERRONE: We're in the process of setting them, yes, your Honor.

THE COURT: Oh you haven't even had those yet?

MR. PERRONE: No.

THE COURT: Huh?

THE CLERK: We have a motion set on the 25th.

MR. PERRONE: We have a bond motion, but we have some additional motions on both sides.

THE COURT: What's been the delay in getting the motions filed? I mean this --

MR. PERRONE: At this point in time it's been my docket, your Honor. It's been very busy this summer and a lot of unanticipated personnel changes, resulting in my associate going out with some family issues. Can you be ready to hear them in the next month, if the Court is ready --

THE COURT: Well, I mean we can hear the motions, but I mean, I'm not going to be extending plea negotiations till that time, if that's what you're asking.

MR. PERRONE: That's fine.

THE COURT: So, we can have the motions and try to narrow the issues for trial. I mean, it's a substantial potential penalty here. So, I don't want to preclude there from being a resolution, but I'm not going to just keep kicking it down -- down the road.

MR. PERRONE: I again understand, your Honor. I can -- just put it on the record.

THE COURT: And Mr. Uraz, I've read all your letters, but I have to consider you a flight risk, Sir. I'll just tell you that now, you can tell whatever you want. Your son's in Ukraine, so there's no way that I can do anything about that. I can't see releasing you, cause there's nothing you can do while he's there in Ukraine. I did get another letter from the consulates, so they've been very diligent in setting forth

your position, but with the potential sentence here, and the fact that you hold dual citizenship, it's just a flight risk issue for the Court.

MR. URAZ: May I say something?

THE COURT: Well, you can say it today or tomorrow, yeah. You can say it. Yeah, go ahead.

MR. URAZ: You know Lansing Police Department has my passport already. I turned it in last year.

THE COURT: Well, I understand. But I mean people have gotten out without a passport before so, I'm not the -- I don't know what the status of the Consulate is. I assume the Consulate would re-issue you a Turkish passport and you could use that. That's just the way I would assume since they've been actively involved in your case. So I would think you probably if you were leaving, you would be leaving on a Turkish passport, not with a United States passport. That would be my opinion. Okay.

MR. URAZ: It doesn't work that way, but --

THE COURT: All right. Fair enough. All right. So, remain set for trial on November 2nd on -- in these matters.

MR. PERRONE: And regards to the issues associated because the sole motion that we have next week is as to bond. The issue associated with Mr. Uraz getting a -- some form of a bond in this case in order to try to get out so he can care for his son, as he is the only remaining parent and family

7

member available to do so based upon my correspondence with his sister in Turkey. If we're able to get any type of reduction, if we could do that now, we may be able to save addressing the issue for next week.

THE COURT: Okay. Well, I've already expressed my concern that he's a flight risk. And on the 180 days that was due in part to Mr. Uraz discharging his prior attorney, Mr. Nichols. He's been in custody for longer than 180 days, but I don't know if he's been in on this particular case for that time cause he was already incarcerated at the time this charge arose, he was a resident of the Ingham County Jail. So, I'm not positive on that timeline, but I think we made a adequate record last time. That's why we set it when we did due to the trial schedule, due to the Grant Taylor matter, and other capital offenses we set it and gave him a firm date of November 2nd.

So, I don't believe anything is changed from that Time. So part of the delay is attributable Mr. Perrone being brought up to speed on this particular case. And I think we have established that Mr. Uraz's son is in the Ukraine and so, as such, I don't know -- I mean it creates a issue of a flight risk in my mind. And his cooperation with the Turkish Consulate would seem to indicate that they might cooperate in him leaving the country.

I'm also concerned that this case arose while he was

I certify that this transcript, consisting of 10 pages, is a complete, true, and accurate record of the proceedings and testimony taken in this case as recorded on Tuesday, August 15, 2017.


Date:_____                    _____

                                          Sidra Alvi-Waller – CER: 9246

                                          30th Circuit Court

                                          313 West Kalamazoo Avenue

                                          Lansing, Michigan 48901

                                          517-483-6500 ext. 6340

10