*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

           Plaintiff-Appellee,

v

TUNC URAZ,

           Defendant-Appellant.

UNPUBLISHED
January 19, 2023

Nos. 343695; 343696
Ingham Circuit Court
LC Nos. 16-001064-FH;
        16-001065-FC

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of aggravated stalking, MCL 750.411i(2), and three counts of solicitation to commit murder, MCL 750.157b(2). The trial court sentenced defendant to 36 to 90 months' imprisonment for the stalking conviction and to three terms of 200 to 360 months' imprisonment for the solicitation to commit murder convictions. The court also imposed various fees and costs. We affirm defendant's convictions and sentences, but vacate the $60 fee for deoxyribonucleic acid (DNA) testing and also vacate a $100 fine.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant and the victim, EM, were in a romantic relationship for approximately 2½ years. Defendant was displeased when EM terminated their relationship. He began harassing her and eventually pleaded guilty—in a separate case from those involved in this appeal—to aggravated stalking. Defendant's prior harassing behavior consisted of many acts, such as invading EM's home, confronting her unexpectedly at an out-of-town restaurant, and damaging her car. The prosecution presented evidence that, while housed in the Ingham County Jail, defendant solicited two fellow inmates and an undercover police officer to murder EM. Accordingly, defendant was charged with three counts of solicitation to murder. He was also charged with aggravated stalking for certain telephone and computer activities that took place in late August of 2016, after the earlier acts encompassed by the prior stalking conviction. Defendant was convicted as charged.

After the trial was completed but before sentencing, defendant's trial counsel suffered from a mental health episode and was hospitalized. He received a diagnosis and treatment. The trial court appointed new counsel to represent defendant at sentencing. In the brief on appeal, defendant

alleged that he received ineffective assistance of counsel at trial because trial counsel's mental breakdown began during trial as evidenced by the deficient questioning of witnesses. We granted defendant's motion for a *Ginther* hearing[1] and remanded the matter to the trial court.

On remand,[2] the court heard testimony from the prosecutors, defendant's trial counsel and junior members of his team, and defendant. The trial court concluded that defendant failed to show that trial counsel acted unreasonably by failing to introduce evidence of theft-related convictions of the two inmates that defendant approached to kill EM. It noted that trial counsel sought to undermine the testimony of the inmates by noting their incarceration and motive to obtain a benefit from the disclosure, the failure to introduce MRE 609 evidence may have been a matter of trial strategy to prevent a distraction from the motive theory, and the evidence may be considered cumulative. The trial court also rejected the contention that trial counsel engaged in a lengthy delay when questioning the witnesses and that his closing argument rambled on for hours, noting that defendant failed to cite to the record and merely announced his position without offering authority in support. Furthermore, at the *Ginther* hearing, trial counsel explained that any delay between questions was caused by his consultation with defendant. Ultimately, the trial court concluded that there was no evidence that trial counsel suffered from a mental breakdown during the trial. Defendant opined that the breakdown occurred much earlier because of his experience with the mental conditions of family members, but the trial court noted that defendant did not offer expert, only self-serving, opinion. And the attorneys familiar with trial counsel testified that his actions and behavior at the trial were consistent with his normal demeanor. Defendant relied on an e-mail communication that trial counsel sent to defendant's family members. The trial court found that the e-mail did not demonstrate a mental breakdown but was merely overly optimistic and contained exaggerations. Finally, the trial court determined that even if it assumed that trial counsel acted unreasonably, defendant failed to demonstrate prejudice, particularly in light of the overwhelming evidence of his guilt. Thus, the trial court denied relief premised on ineffective assistance of counsel.

## II. JOINDER AND OTHER-ACTS EVIDENCE

Defendant was charged in two separate cases for stalking and for solicitation to commit murder. He contends that the trial court deprived him of a fair trial by allowing the two cases to be joined for trial and further submits that evidence of prior stalking activities unfairly prejudiced the solicitation charges such that they should have been excluded from trial. We disagree.

When evaluating a joinder decision, the appellate court reviews the trial court's factual findings for clear error and reviews de novo its conclusion regarding whether the charged offenses were "related" offenses for which joinder was appropriate. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). Additionally, a trial court's decision regarding the admission of evidence

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). See *People v Uraz*, unpublished order of the Court of Appeals, entered March 6, 2020 (Docket Nos. 343695; 343696). The scope of the remand order was limited to the issue raised in the motion.

[2] Defendant requested to attend the hearings in-person. Consequently, there was a delay in conducting the hearings because of COVID restrictions.

is reviewed for an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017); *People v Muhammad*, 326 Mich App 40, 47; 931 NW2d 20 (2018).

MCR 6.120 states, in part:

> **(B) Postcharging Permissive Joinder or Severance.** On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

> (a) the same conduct or transaction, or

> (b) a series of connected acts, or

> (c) a series of acts constituting parts of a single scheme or plan.

> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

> *   *   *

> **(C) Right of Severance; Unrelated Offenses.** On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1).

When a logical relationship exists between joined counts as well as overlapping proofs, joinder is appropriate. *Williams*, 483 Mich at 237. The admission of evidence in other trials is also a consideration when examining whether joinder is appropriate because the joinder of other crimes cannot prejudice defendant. *Id*. A temporal requirement is not delineated in MCR 6.120, and the acts need not be committed at the same time, but nonetheless must be connected acts or acts constituting a single scheme or plan. *Id*. at 241. An error in the decision to join cases is not grounds for disturbing the judgment unless refusal to take such action appears to be inconsistent with substantial justice. *Id*. at 243. Moreover, an error in the joinder of cases does not affect the outcome of the proceedings when evidence of each charged offense could have been introduced under MRE 404(b). See e.g., *People v Sabin (After Remand)*, 463 Mich 43,56-58; 614 NW2d 888 (2000).

The stalking charge was based on conduct that occurred between August 23, 2016, and September 26, 2016. It was during this timeframe that defendant telephoned EM and engaged in certain computer-related activities such as hacking into EM's online accounts. These incidents

were part of defendant's continued harassment of EM, which culminated in his solicitation of her murder. The various acts undertaken by defendant and charged by the prosecutor in the two lower court cases at issue here were indeed a "series of connected acts[.]" MCR 6.120(B)(1)(b).

One stalking charge and three solicitation charges were submitted to the jury, and these offenses were related. MCR 6.120(B)(1). The evidence pertaining to each charge was not particularly complex, and defendant has not established that considerations under MCR 6.120(B)(2) warranted severance. Defendant's contention that the charges resulted in jury confusion is not supported by the record evidence. When there is a lack of evidence of jury confusion and the offenses are related as defined in the court rule, a challenge to the joinder of claims is without merit. See *People v Collins*, 298 Mich App 458, 469-470; 828 NW2d 392 (2012).

Defendant essentially intertwines his severance argument with his argument addressing other-acts evidence, asserting that the other-acts evidence admitted in support of the stalking charge unfairly prejudiced the solicitation case. Defendant does not submit that the prior incidents were irrelevant and inadmissible as propensity evidence under MRE 404. And indeed, the other incidents were relevant and were admissible for non-propensity reasons, such as to show intent and motive with regard to all four counts that defendant faced. See MRE 404(b)(1). That defendant had harassed EM in the past made it more likely that he willfully hacked into her online accounts and contacted her for purposes of harassment, see MCL 750.411i(1)(d) and (e). EM documented defendant's property damage and unwanted contact, obtained a personal protection order (PPO) against him, and reported his violations of the PPO to the police. EM's report of defendant's harassment and its consequences made it more likely that he had a motive to have her killed.

Defendant submits that the extensive admission of acts of stalking diverted the jury from a rational consideration of the evidence addressing the weaker charges of solicitation to commit murder and did not satisfy the balancing test of MRE 403. Thus, defendant contends that his constitutional right to a fair trial was violated. We disagree.

The " '[i]mproper joinder of offenses does not, in itself, violate the Constitution. Rather misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. ' " *Williams*, 483 Mich at 245, quoting *US v Lane*, 474 US 438, 446 n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986). Relying upon intermediate federal court caselaw,[3] defendant explains that prejudice is demonstrated when "the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Sandoval v Calderon*, 241 F3d 765, 772 (CA 9, 2000). The *Sandoval* Court concluded that prejudice arises when the joinder allowed otherwise inadmissible evidence of other crimes to be introduced in a trial, or when a strong evidentiary case is joined with a weaker one. *Id*. As analyzed below, however, the prior acts of stalking were admissible to set forth the foundation and motivation to solicit individuals to kill EM because defendant blamed her for the adverse events

---

[3] "The decisions of intermediate federal courts are not binding on this Court, although they may be considered for their persuasive value." *People v Lucynski*, ___ Mich ___, ___; ___NW2d ___ (2022) (Docket No. 162833), slip op at 14 n 10.

in his life. And, contrary to defendant's assertion, the aggravated stalking charge did not serve to buttress the substantially weaker charges of solicitation to commit murder.

MRE 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Our Supreme Court has explained that evidence is "probative" if it makes the existence of a consequential fact more probable than it would be without the evidence. *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010); see also MRE 401. MRE 403 does not prohibit prejudicial evidence but only prohibits evidence that is *unfairly* prejudicial. *Id*. at 198. This unfairness arises if there is a danger that marginally probative evidence will be given undue weight by the jury. *Id*.

In the present case, defendant's prior instances of stalking were highly, not marginally, probative. That is, they showed both that defendant had engaged in aggravated stalking while performing certain acts between August 23, 2016, and September 26, 2016, see MCL 750.411i, and showed that defendant was escalating a series of actions to the point that he was motivated to solicit EM's murder, see MCL 750.157b.

The presentation of the full background of defendant's stalking history allowed the jury to determine whether defendant was merely a scorned partner having emotional difficulty with the end of the relationship or whether defendant actually wanted to kill EM. The history of defendant's acts against her and her new boyfriend placed the charged acts into context. It was not an abuse of discretion for the trial court to give the jury a full picture of the dealings between defendant and EM and to conclude that the probative value of this full picture was not substantially outweighed by the danger of unfair prejudice. MRE 403.

In his supplemental brief, defendant contends that it was not proven that defendant was the person who damaged EM's vehicle and the vehicle of her new boyfriend and that, therefore, evidence of the prior acts of vehicle damage should have been excluded. But this was an entirely reasonable inference from the sequence of events, viewed as a whole. There was substantial evidence that defendant actually perpetrated the acts in question. *People v Goddard*, 429 Mich 505, 515-516; 418 NW2d 881 (1988). Additionally, defendant contends that certain text or online messages as listed in the prosecutor's motion to admit other-acts evidence were not proven to have come from defendant. But the description of item 10 adequately shows in context that the messages emanated from defendant. And as for item 5, EM explicitly testified that the text in question came from defendant. With regard to item 2, defendant inaccurately represents that the court admitted a message mentioned in that item. The court admitted a statement about the out-of-town restaurant incident but did not, contrary to defendant's implication on appeal, admit a Facebook message sent on the afternoon of December 31, 2015. Thus, the trial court properly reviewed the other-acts evidence for factual support, and its rulings were not inconsistent or irrational.

Defendant makes a separate argument in his supplemental brief about an incident during which defendant attempted to obtain a gun from a coworker at Michigan State University (MSU). He asserts that the court admitted evidence of this incident based on defendant's testimony during a pretrial entrapment hearing and that this amounted to a violation of the qualified privilege a defendant is allowed when testifying at an entrapment hearing. See *People v D'Angelo*, 401 Mich 167, 178; 257 NW2d 655 (1977) ("Any testimony the defendant gives at the entrapment hearing, including his possible admission of the crime charged or some aspect of it, will not be admissible against him in the case in chief for substantive purposes as an admission[.]"). The *D'Angelo* holding, however, was not violated because defendant's testimony from the entrapment hearing was not, in fact, admitted against him at trial. The MSU incident was brought out through the coworker's testimony. Also, it is simply not apparent from the record that the trial court relied on defendant's testimony at the entrapment hearing when admitting the evidence about the MSU incident, the facts of which were admitted through other witnesses.

Because a logical relationship existed between the stalking and the solicitation to commit murder offenses as well as overlapping proofs, joinder was appropriate. *Williams*, 483 Mich at 237. Defendant failed to establish error with regard to the joinder of the cases or with regard to the admission of the other-acts evidence. Furthermore, defendant did not demonstrate that the joinder of offenses rendered his trial substantially unfair such that he suffered prejudice. To the contrary, the trial court instructed the jury regarding the limitations of the other-acts evidence as well as the need to consider each of the charges separately. Therefore, defendant was not deprived of a fair trial. *Sandoval*, 241 F 3d at 772.

## III. ALLEGED *BRADY* VIOLATION

Defendant contends that certain notes written by jail inmate Reginald Close were favorable to the defense and were not disclosed in discovery in violation of *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We disagree.

We review de novo an allegation of a *Brady* violation. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). The components of a *Brady* violation are that the prosecution suppressed evidence, the evidence was favorable to the defendant, and the evidence was material. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching," and whether the prosecutor acted in good faith is irrelevant. *Id*. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

Defendant has not established a *Brady* violation. First, the notes were, in fact, given to the defense,[4] and defense counsel cross-examined Close about the notes, insinuating that Close had a

---

[4] On November 2, 2017, before voir dire continued, the parties discussed the disclosure of notes that were written on toilet paper, the difficulty reading the notes, and the problem deciphering the author of some content. On the record, the prosecutor stated that he had turned over the notes to

habit of trying to learn about the cases of other inmates in order to help himself. Second, testimony showed that the potentially most relevant portion of the notes—i.e., the portion wherein someone referred to being a good liar and being able to fool a polygraph examiner—was written by Close's correspondent and not by Close. Defense counsel himself admitted, "Based upon my review of [the notes] it doesn't appear that the statement that was made by the individual in the notes, associated with being able to pass a polygraph test, is Reginald Close." The notes were, quite simply, not particularly helpful to the defense. Defendant contends that the notes would likely have led to the dismissal of the solicitation to commit murder charges "as based upon testimony from a witness who was an admitted liar," but there is no indication from the record that Close admitted to being a liar in the notes. This claim of error does not entitle defendant to appellate relief.

## IV. ENTRAPMENT

Defendant contends that the trial court erred in failing to conclude that defendant was entrapped by the undercover officer, FM, who posed as a hitman and had a video call with defendant at the county jail. We disagree.

"A trial court's finding of entrapment is reviewed for clear error." *People v Johnson*, 466 Mich 491, 497; 647 NW2d 480 (2002). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 497-498. Entrapment occurs if "(1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated." *Id*. at 498. "A defendant has the burden of establishing by a preponderance of the evidence that he was entrapped." *Id*.

First, there is no evidence of particularly reprehensible conduct by the police in connection with FM's video call. A police detective testified that Close, who was *not* associated with the police, provided information about solicitation to commit murder, the police investigated the details Close provided, and only then was FM used as an undercover officer. The police were simply attempting to ascertain whether defendant was, indeed, willing to have EM killed. In other words, "[T]he police did nothing more than provide defendant with an opportunity to commit a crime. Such conduct was not reprehensible and does not establish entrapment." *Id*. at 508.

---

defense counsel "late last week." There was also a discussion of a "tissue" paper note that pertained to an unrelated matter. Nonetheless, the trial court concluded that all notes should be given to the defense. During trial, defendant's counsel questioned whether he received all relevant notes in discovery and that he might move to dismiss premised on a *Brady* violation. But no motion was filed in the trial court. Thus, on appeal, defendant's contention, that pertinent discovery addressing defendant's case was not provided until trial, is not supported by the record. Rather, it was a letter pertaining to an unrelated matter that was disclosed during trial. And, during the course of cross-examining the witnesses, defense counsel learned that potential impeachment evidence on the toilet paper notes was not authored by the jail inmates that interacted with defendant regarding EM. Thus, the factual predicate to support the *Brady* violation is lacking.

The *Johnson* Court stated:

> When examining whether governmental activity would impermissibly induce criminal conduct, several factors are considered: (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Id*. at 498-499.]

There was no evidence here of any appeals to sympathy or of any favors, inducements, pressure, or threats by the police. In addition, there was no "escalation" of culpability by the police because defendant had already solicited Close to murder EM before FM's call. As in *Johnson*, "[t]he undercover activity at issue in this case did nothing more than present defendant with an opportunity to commit" a crime that the defendant had already committed. *Id*. at 503. The *Johnson* Court indicated that in such a situation, "no escalation occurred." *Id*. Defendant contends that the trial court relied too heavily on defendant's predisposition to commit the crime, but *Johnson* indicates that the fact of a defendant's having committed the same crime earlier is a *relevant consideration* regarding whether the police induced an escalation of criminality. While a few of the factors cited in *Johnson* could be viewed in defendant's favor—such as the targeted investigation—the majority of the factors favor the prosecution, and the trial court did not clearly err by finding that dismissal on the basis of entrapment was not appropriate with regard to the evidence gathered by FM.[5]

Defendant also contends that the trial court did not properly follow an objective test, focused "on the investigative and evidence-gathering procedures used by the governmental agents," but instead used a subjective test, "which focuses on the defendant's predisposition or motivation to commit a new crime." See *People v Juillet*, 439 Mich 34, 53; 475 NW2d 786 (1991) (opinion of BRICKLEY, J.). Furthermore, "[u]nder a proper approach, factors of both the subjective and objective tests can be considered and utilized to determine if entrapment occurred." *Id*. Contrary to defendant's assertion, the trial court's ruling did in fact rely quite heavily on objective

---

[5] Defendant argued below that all three solicitation charges should be dismissed because of entrapment and is continuing to argue as much on appeal. But entrapment is based on police conduct, and the evidence clearly showed that the solicitation information from Close and another jail inmate did not arise from police involvement.

police conduct. This case is in accordance with *Johnson*, and no error requiring reversal is apparent.[6]

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel was ineffective in several respects. We disagree.

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error and its conclusions of law de novo. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). To obtain relief on the basis of ineffective assistance of counsel, a defendant "must show that counsel's performance fell short of [an] . . . objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the . . . trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). A defendant must overcome a strong presumption that counsel's actions were based on sound trial strategy. *Id*. at 388.

## A.  COUNSEL'S ILLNESS

On remand, the court conducted an evidentiary hearing to address trial counsel's mental health to determine whether it deprived defendant of the effective assistance of counsel. Trial counsel testified that he was not sleeping well during and after the trial. He took a trip after defendant's trial was complete, but was required to return home early to address a family matter. After his return, trial counsel was hospitalized and treated for a mental health issue.[7] The prosecutors and second chair defense counsel did not notice or report that trial counsel suffered from a mental health issue during the trial. One of the prosecuting attorneys attended law school with trial counsel and had known him for many years. He did not observe any issues that arose during the trial. Although the jail inmates solicited to commit murder had theft-related convictions, trial counsel did not elicit this information, but focused on their motivation to lie. One

---

[6] Given the clear evidence that no entrapment occurred, defendant's argument about whether a defendant can claim entrapment and also assert innocence in a pretrial proceeding need not be reached.

[7] In his pro se supplemental brief filed after remand, defendant purportedly cites to the mental health records of trial counsel. There is no indication that those records were admitted at the *Ginther* hearing. It is unclear how defendant obtained the records and whether it was in compliance with the laws protecting the privacy of individual health information. We limit our evaluation of the mental health issue to the testimony elicited at the hearing. As a general rule, "[a]ppeals to the Court of Appeals are heard on the original record," MCR 7.210(A), and the parties may not expand the record on appeal, *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013).

of the prosecutors opined that deficient performance by trial counsel did not occur in failing to elicit this impeachment evidence.  He cited to the limited attention span of the jury and the lack of import of a "shoplifting" conviction, the knowledge that the jail inmates were incarcerated at the time of the solicitation, and the inmate's motivation to benefit from being cooperative with the authorities.

Although defendant testified that he had exposure to individuals with mental illness and opined that trial counsel suffered from the effects before and during trial, the trial court found that this testimony was self-serving.  It noted that defendant never objected to trial counsel's performance and was willing to have trial counsel continue his representation after the disclosure of the mental health issue.

Defendant alleges that trial counsel was ineffective for failing to seek a continuance when he began to suffer from mental health issues during the trial as evidenced by his failure to effectively cross-examine witnesses, especially those convicted of theft-related offenses.[8]  The trial court, however, did not find that a mental health issue arose during the trial, and we cannot conclude that this finding was clearly erroneous.  *Miller*, 326 Mich App at 726.  Further, the trial court did not find that trial counsel's questioning of witnesses was ineffective.  Rather, it concluded that, in light of the nearly 30 witnesses that trial counsel interviewed, it was a matter of trial strategy to focus on the motivation of the jail inmates to lie to obtain favorable treatment.  And, the record reveals that defendant was provided a different attorney when the illness manifested after trial and before sentencing and that defendant acquiesced to this substitution.  Defendant points to an e-mail that trial counsel sent to defendant's sister, contending that it demonstrates that trial counsel was acting erratically.  Although this e-mail was overly positive and exaggerated the potential success of the criminal trial and possible civil claims, it simply does not reflect that trial counsel was somehow incapacitated during material portions of his representation of defendant or that his

_____

[8] Defendant contends that trial counsel was ineffective for failing to cross-examine Allen and Close with certain prior convictions, producing Internet Criminal History Access Tool (ICHAT) information purportedly reflecting a 2011 misdemeanor larceny conviction property valued over $200, but less than $1,000, MCL 750.356(4)(a), for Allen and a 2003 felony conviction for third-degree home invasion, MCL 750.110a(4), for Close.  The attached ICHAT records reflect that they were obtained after defendant's conviction, but before his sentencing and they were not part of the lower court record.

Assuming arguendo that we could take judicial notice of such convictions, MRE 201, decisions whether and how to cross-examine witnesses are matters of trial strategy.  *People v Petri*, 279 Mich 407, 413; 760 NW2d 882 (2008); *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).  Even so, counsel's failure to develop defenses by adequately impeaching witnesses may establish ineffective assistance.  *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

As to Allen, this Court has held that a misdemeanor larceny conviction does not contain an element of dishonesty and is not admissible for impeachment under MRE 609(a)(1).  See *People v Parcha*, 227 Mich App 236, 245; 575 NW2d 316 (1997).  As to Close, the record does not reflect that that third-degree home invasion necessarily contained an element of theft, as required by MRE 609(a)(2), or an element of dishonesty or false statement, as required under MRE 609(a)(1).

representation of defendant fell below an objective standard of reasonableness. *Ackley*, 497 Mich at 389.

In further support of his claim of ineffective assistance at trial, defendant relies on cross-examination when trial counsel allegedly took a long pause between questions. This contention is premised on a comment by the prosecutor that three minutes was occurring between the questioning. But trial counsel testified that he took time between questions to confer with defendant. Furthermore, the defense counsel acting as second-chair testified that the lapse of time argued by the prosecutor was an exaggeration. The trial court also did not find that trial counsel rambled in his closing argument. Thus, the evidence does not reflect that trial counsel's representation of defendant fell below an objective standard of reasonableness. *Id*. The court remarked that counsel acted in an acceptable manner in defending such a serious case. Defendant has established no basis for a reversal in connection with trial counsel's illness.

## B. DEFENDANT'S MENTAL STATE

In defendant's pro se brief, defendant contends that trial counsel was aware of defendant's poor mental state and should have further investigated, presented evidence of, and consulted an expert after counsel recognized defendant's diminished state of mind at the time of the offense undermined the specific intent necessary to prove the solicitation to commit murder charges. Additionally, defendant asserts that counsel should have requested a continuance to have defendant undergo the necessary psychiatric evaluation. Despite the limited nature of defendant's statement of the question presented, see MCR 7.212(C)(5), defendant also cites MCL 768.20a, which governs the raising of an insanity defense, and argues counsel failed to request that he be sent to the forensic center for evaluation. And defendant further contends that he lacked an appreciation of the wrongfulness of his acts, and, if counsel had presented expert testimony, presumably in support of an insanity defense, there was a reasonable probability of a different outcome at trial.

Defendant did not move for a *Ginther* hearing in connection with this issue, and his earlier motion to remand for such a hearing did not include this issue. Instead, defendant simply argues that his convictions should be reversed and a new trial should be granted.[9] When a *Ginther* hearing has not been requested to address a particular issue, review is limited to the record, and "[i]f the appellate record does not support defendant's assertions, he has waived the issue." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

Defense counsel, however, has a duty to prepare, investigate, and present all substantial defenses. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "[F]ailure to conduct a complete investigation" can constitute ineffective assistance of counsel if the failure creates a "reasonable probability that the result of [the] trial would have been different had the evidence in question been presented." *People v Grant*, 470 Mich 477, 498; 684 NW2d 686 (2004).

---

[9] To support his claims, defendant attaches several documents. Only trial counsel's October 17, 2017 motion to dismiss for entrapment, is in the lower court record, and we cannot consider defendant's additional documents defendant now provides. *Nix*, 301 Mich App at 203.

-11-

Defense counsel "is [also] given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). The decision to present an insanity defense can be an issue of trial strategy, and we will not reverse where the failure to raise an insanity defense was a matter of trial strategy. *People v Newton (After Remand)*, 179 Mich App 484, 493; 446 NW2d 487 (1989). Likewise, counsel's decision not to present an insanity defense is a matter of trial strategy where counsel chooses to pursue another defense based on a tactical choice. *People v Lotter*, 103 Mich App 386, 390-391; 302 NW2d 879 (1981). Again, this Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *Rockey*, 237 Mich App at 76-77.

A defendant may also opt to present inconsistent defenses. *People v Lemons*, 454 Mich 234, 245; 562 NW2d 447 (1997). But trial counsel's decision not to present a defense that is inconsistent with counsel's theory is likewise a matter of trial strategy that this Court does not second-guess. *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999).

"[M]ental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent." *People v Carpenter*, 464 Mich 223, 237; 627 NW2d 276 (2001). Thus, diminished capacity is not a defense available in our state.[10] *Id*. at 226. And trial counsel was not ineffective for failing to pursue a non-existent defense. *Sabin (On Second Rem)*, 242 Mich App at 660.

To establish an insanity defense, a defendant bears the burden of proving by a preponderance of the evidence that he had a mental illness that caused him to lack the "substantial capacity either to appreciate the nature and quality or the wrongfulness of his . . . conduct or to conform his . . . conduct to the requirements of the law" at the time of the charged offense. MCL 768.21a(1), (3). But when an individual is "under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his . . . alleged offense" he "is not considered to have been legally insane solely because of being under the influence of alcohol or controlled substances." MCL 768.21a(2). Importantly, a defendant, who employs an insanity defense concedes that he committed the charged criminal conduct, and asserts this affirmative defense to avoid criminal responsibility. *People v Mette*, 243 Mich App 318, 328-329; 621 NW2d 713 (2000).

In this case, weeks before trial, defense counsel filed a motion to dismiss for entrapment, alleging that defendant had been in a vulnerable mental state, "off his medications, . . . going through alcohol and sever[e] prescription pain killer[] and benzo withdrawals, . . . [and being] mentally ill." The record also reflects that the trial court had earlier ordered that defendant could have a psychiatrist or psychologist visit at the jail.

From the existing record, it appears that the decision not to pursue an insanity defense was a matter of strategy. And it is not evident that trial counsel made a poor strategic decision by emphasizing the alleged unreliability of the key prosecution witnesses as opposed to pursuing an

---

[10] Our Supreme Court recently scheduled oral argument to address whether *Carpenter* should be overruled. *People v Tyson*, ___ Mich ___; 974 NW2d 838 (2022).

insanity defense and admitting that defendant had committed the charged crimes. See *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995) (defense counsel's decision regarding the defense to be pursued is a matter of trial strategy.). Recognizing that defendant made some reference below to depression and post-traumatic stress disorder, we conclude that defendant has not overcome the presumption of sound trial strategy, see *Ackley*, 497 Mich at 388, concerning trial counsel's attempt to obtain a not-guilty verdict by challenging the credibility of the prosecution witnesses. Simply put, counsel could have reasonably decided that his chances of persuading the jury that defendant did not comprehend the wrongfulness of his actions—thrice soliciting EM's murder and stalking EM for two years in the face of PPOs—stood less chance of success than persuading the jury that the government's witnesses lacked credibility.

## C. INVESTIGATION AND CALLING OF WITNESSES

Defendant contends that trial counsel should have investigated and called various witnesses for the defense. Defendant provides a list of thirteen witnesses whom he believes should have been called at trial. Defendant does not ask for a remand to explore their potential testimony further, but instead argues that reversal is warranted because of trial counsel's failure to call them. A defendant has the burden of establishing the factual predicate for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). In other words, the defendant must prove his claim. *Id*. See also MCR 7.212(C)(7) (stating that facts pertinent to an appellant's argument must be supported by references to the lower court record). Defendant's list of names does not prove his claim of ineffective assistance of counsel. In fact, defendant himself says that "[t]he above named witnesses were all *potentially relevant* to defense theory and facts." (Emphasis added.) The mere *potential* for relevance does not demonstrate that trial counsel acted below an objective standard of reasonableness, see *Ackley*, 497 Mich at 389, by failing to call the potential witnesses. The decision regarding whether to call a witness is presumed to be trial strategy, *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004), and in light of the existing record, defendant has not overcome this presumption or established that the failure to call the witnesses affected the outcome of the proceedings, *Ackley*, 497 Mich at 389.

Indeed, when discussing witnesses below, trial counsel mentioned some of the potential witnesses defendant lists, but did not indicate what testimony they would provide. The exception is Kathy Edmonds; trial counsel stated that Edmonds would be able to testify that defendant had actual trash at his house around the time that defendant and FM had their conversation at the jail, during which they used coded language about "taking out trash."[11] But even if we were to conclude that trial counsel's offer of proof about Edmonds—in the absence of an affidavit from Edmonds herself—is sufficient to *prove* that Edmonds would have testified in this manner, it is not apparent that the failure to call Edmonds fell below an objective standard of reasonableness or affected the outcome of the case. While the beginning of the conversation between FM and defendant might lead to the conclusion that the two were speaking about actual trash, by the end it is abundantly clear that actual trash at defendant's home was not the subject of the conversation. No reasonable

---

[11] The defense insinuation was that when FM agreed to take out trash for defendant, this was not a "coded message" referring to EM's murder but resulted from defendant's desire to have actual trash cleared from his home.

jury, even if it heard from Edmonds that defendant had actual trash at his house, would have concluded that the conversation between defendant and FM was about actual trash.

## D.  OTHER ALLEGATIONS

Defendant states that trial counsel's "cross examinations were meaningless." Yet, defendant provides no examples of how the cross-examination of witnesses was inadequate. An appellant may not simply make an assertion and leave it up to this Court to discover the basis for his claims. *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013). At any rate, trial counsel's cross-examination of key witnesses was reasonable. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Defendant also argues that "a review of defense counsel's examination of the defense witnesses . . . supports the conclusion that defense counsel was unable to properly represent [defendant]." Once again, defendant provides no examples of how the cross-examination of these witnesses was inadequate. *Bowling*, 299 Mich App at 559-560. One defense witness seemed to have little pertinent information to offer, although trial counsel did elicit from him that defendant was "kind and caring." As for the second defense witness, trial counsel insinuated through his questioning that inmates Charles Allen and Reginald Close may have been conspiring to set defendant up.

Defendant also contends that trial counsel's closing argument was "rambling and inadequate." Once again, defendant does not indicate *how* the argument was inadequate and thus his briefing is deficient. *Id*. At any rate, trial counsel raised the issue of the credibility of jail informants, discussed the vague language used in the video call between defendant and FM, argued that the police manufactured the solicitation charges to escalate the stalking situation, and submitted that the police investigation into internet-protocol addresses was inadequate. The closing argument was not deficient.

Defendant also contends that trial counsel acted improperly during jury voir dire. In support of this argument, defendant cites to the entire voir dire transcript and once again offers no specific examples. An appellant may not leave it up to this Court to unravel his arguments for him. *Id*. Defendant has established no basis for relief on appeal in conjunction with his claims of ineffective assistance of counsel.

## VI.  PROSECUTORIAL ERROR

Defendant argues that the prosecutor made improper comments that prejudiced him. We disagree.

Defendant did not object below to the comments he deems improper on appeal. As such, the issue is not preserved. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). This Court reviews unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain-error doctrine, defendant must show a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Id*. And, even if this standard is satisfied,

> an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness,

-14-

integrity or public reputation of judicial proceedings independent of the defendant's innocence.  [*Id*. at 763-764 (citation, quotation marks, and brackets omitted).]

While cross-examining Allen, trial counsel asked him probing questions regarding exactly how he obtained information from defendant about the murder-for-hire scheme and whether Allen had initiated some of the pertinent conversations.  Trial counsel also attempted to impeach Allen with his preliminary examination testimony.  Counsel's cross-examination questions were appropriate.  The prosecutor then said, "Your Honor, I am going to object.  This is three minutes between questions.  This cross-examination rambles on for hours."  The court said, "I can't help that."  The prosecutor said that trial counsel had to take a break to gather his thoughts, and the court said, "I can't press that."  The court added, "This is a serious matter.  So he can utilize whatever strategy he so desires."

A prosecutor may not personally attack defense counsel.  *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003).  Nor may a prosecutor suggest that counsel is attempting to mislead the jury.  *Unger*, 278 Mich App at 236.

There was no clear or obvious error, see *Carines*, 460 Mich at 763, in connection with the prosecutor's comments.  As in *McLaughlin*, 258 Mich App at 647, the prosecutor merely had a "momentary expression of impatience" that was fairly "unremarkable[.]"[12]  And, "[t]he prosecutor's momentary expression of impatience was too fleeting and unremarkable to constitute an obvious error that denied defendant a fair trial."  *Id*.  In addition, the court in the present case made clear to the jury that in a serious case such as the one at issue, counsel was entitled to use a strategy, such as taking considerable time between cross-examination questions.  Given this assurance from the court, any expression to the contrary by the prosecutor was not outcome-determinative.  *Carines*, 460 Mich at 763.  Defendant has established no entitlement to appellate relief in connection with the prosecutor's comments.

## VII.  VIOLATION OF RIGHT TO COUNSEL

Defendant contends that his Sixth Amendment right to counsel was violated because when FM, the undercover police officer, spoke with him at the jail by video call, defendant was represented by an attorney, who was not present during the video call.  We disagree.  This issue was not raised below and is thus reviewed under the plain-error standard of *Carines*, 460 Mich at 763-764.

Defendant's primary authority for his argument is *Massiah v United States*, 377 US 201; 84 S Ct 1199; 12 L Ed 2d 246 (1964).  In that case, the Court ruled that the defendant had been denied Sixth Amendment protections "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of counsel" that the defendant had already retained.  *Id*. at 202, 206.  In *Brewer v Williams*, 430 US 387, 401; 97 S Ct 1232; 51 L Ed 2d 424 (1977), the Court stated that the "clear rule of *Massiah* is that once adversary [sic] proceedings have commenced

---

[12] Indeed, at the *Ginther* hearing, the prosecutor opined that trial counsel was engaged in a delay tactic to dilute the import of particularly effective direct examination.

-15-

against an individual, he has a right to legal representation when the government interrogates him." The Court referred to the commencement of adversarial proceedings as a formal charge, preliminary hearing, indictment, information, or arraignment. *Id*. at 398.

We reject defendant's reliance on *Brewer* and *Massiah* for the proposition that he was entitled to counsel during the video call with FM in light of *Texas v Cobb*, 532 US 162; 121 S Ct 1335; 149 L Ed 2d 321 (2001). The defendant in that case was indicted for burglary and obtained an attorney to represent him for that charge. *Id*. at 165. The police questioned the defendant about people who had disappeared from the burgled home, and the defendant confessed to murdering them during the burglary. *Id*. at 165-166. The defendant argued that "his right to counsel had attached when" an attorney was appointed for the burglary case and that the police "were therefore required to secure [the attorney's] permission before proceeding with the interrogation" about the missing people. *Id*. at 166. A lower court agreed with this argument, concluding that the murders were factually intertwined with the burglary. *Id*. at 167. The Supreme Court disagreed, ruling that the Sixth Amendment right to counsel is " 'offense specific.' " *Id*. at 165.

It is not in dispute that defendant was in jail and represented by an attorney when the October 24, 2016 call with FM occurred. At that time, he had representation for purposes of a *prior stalking charge*. The warrant for solicitation to murder is dated November 10, 2016, and the bindover occurred on December 13, 2016. The warrant for the current stalking charge—i.e., the charge at issue at trial and at issue in this appeal—is dated October 26, 2016, and the bindover occurred on December 14, 2016. Even if the prior stalking offense had a "relationship" with the instant offenses, under the rule of *Cobb*, no Sixth Amendment violation occurred during the call with FM because the right to counsel is offense-specific, and at the time of the video call, adversarial proceedings had not commenced in the current cases.

Defendant contends that his statements to Allen and Close were obtained in violation of his Sixth Amendment right to counsel because they were essentially acting as agents of the police. But this is simply not accurate. There was no evidence that the police directed Allen or Close to obtain information. Instead, the two witnesses obtained the information and chose to share it with the police. Defendant cites *State v Marshall*, 882 NW2d 68 (Iowa, 2016),[13] in support of his argument, but in that case the court agreed that the government is not prohibited from using evidence it obtains through luck or happenstance, see *id*. at 83, which is essentially what occurred here. There is no evidence of a "proffer agreement or any kind of meaningful relationship between" Allen and the police or between Close and the police in connection with defendant's cases. *Id*. at 101.[14]

---

[13] Out-of-state caselaw is not binding, but may be persuasive. *People v Spaulding*, 332 Mich App 638, 648 n 2; 957 NW2d 843 (2020).

[14] Because defendant's Sixth Amendment arguments were without merit, counsel's failure to raise them below did not, contrary to defendant's assertion, fall below an objective standard of reasonableness. *Ackley*, 497 Mich at 389.

VIII.  EXTRANEOUS INFLUENCE ON JURY

In the midst of trial, a juror expressed bias toward defendant's ethnic origin.  The court stated that it would dismiss the juror, as an alternate, before the start of deliberations, and it did so. Defendant contends that the trial court should have held a hearing to determine whether the juror improperly influenced other jurors who actually deliberated.  We disagree.

Issues pertaining to the trial court's decision to remove a juror are reviewed for an abuse of discretion.  See *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011).

Because the juror in question was struck, defendant's argument, at its essence, is that the remaining jurors were likely subjected to an improper extraneous influence—i.e., subjected to the biased juror's improper mindset.  "A jury verdict may be challenged on the basis of juror misconduct . . . when the verdict is influenced by matters unrelated to the trial proceedings." *People v Fletcher*, 260 Mich App 531, 540-541; 679 NW2d 127 (2004).  Bias arising from defendant's ethnicity is certainly not a proper matter for the trial and is thus "unrelated to the trial proceedings."  To establish error requiring reversal on the basis of an extraneous influence on the jury, a defendant bears the burden of showing that the jury was exposed to an extraneous influence and that this influence created a substantial and real possibility of affecting the verdict.  *Id*. at 540.

Defendant, however, failed to show that the jury was exposed to an extraneous influence. While one juror expressed bias, there is nothing in the record to show that he communicated this bias to any other juror.  The court specifically addressed the concern about possible communication among jurors by stating that the jurors were not allowed to discuss the case among themselves until deliberations started.  And indeed, the jurors were given this preliminary instruction.  Jurors are presumed to follow their instructions.  *Unger*, 278 Mich App at 235.  An appellant has the burden of providing this Court with a record to verify the factual basis of an argument upon which reversal is allegedly warranted.  *People v Everett*, 318 Mich App 511, 523; 899 NW2d 94 (2017). Defendant has not done so and merely speculates that some sort of error occurred that might have come out during further questioning of the biased juror.

In support of his appellate argument, defendant relies on *People v Jackson*, 292 Mich App 583, 593; 808 NW2d 541 (2011).  In *Jackson*, the trial court questioned an "overwhelmed" juror, who was dismissed, about what she might have said to other jurors, and it found that she had said nothing of import to them.  While the trial court, like in *Jackson*, *could* have questioned the biased juror in the present case, it elected to forgo such questioning and rely on the jurors' instruction that they were not to discuss the case until deliberations started.  This was not an unreasonable approach, and defendant has not shown that the deliberating jurors were exposed to an extraneous influence.  *Fletcher*, 260 Mich App at 540.  Defendant contends that he is unable to show such an exposure *because* the trial court did not hold a hearing, but (1) the trial court did not abuse its discretion by handling the matter in the way it did and (2) defendant did not move for a new trial and attempt to impeach the jury verdict with additional evidence of actual juror misconduct.  See, e.g., *id*. at 538-540 (stating that impeachment of a verdict, such as by way of juror affidavits, can be appropriate due to improper influences unrelated to the trial proceedings).  Defendant, on the basis of the existing record, has set forth no ground for reversal.

## IX.  BINDOVER

Defendant contends that the district court erred by binding over defendant on three counts of solicitation to murder, instead of merely two.  He argues that while the evidence arguably supported a bindover in relation to the alleged solicitation of Close and Allen, the count relating to the solicitation of FM was duplicative of the count relating to Close because FM was simply posing as a hitman mentioned by Close.  He also contends that FM was the one who engaged defendant as opposed to defendant engaging FM.  We disagree.

As an initial matter, defendant's argument is focused on the bindover.  He does not make the separate argument that the evidence at trial was insufficient to support a finding of guilt in connection with the solicitation of both Close and FM.  In *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010), this Court stated that "the presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless."  Given defendant's failure to make a sufficiency challenge on appeal, this claim of error does not entitle defendant to appellate relief.  *Id*.  See also *People v Wilson*, 469 Mich 1018; 677 NW2d 29 (2004) ("If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover.").

## X.  *MIRANDA* VIOLATION

Defendant contends that when FM conducted the video call with defendant at the Ingham County Jail, this amounted to a police interrogation while defendant was in custody.  He argues that because he was not informed of his rights under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), any statements he made to FM or to any state officials thereafter should have been suppressed.  We disagree.

In *Howes v Fields*, 565 US 499, 511; 132 S Ct 1181; 182 L Ed 2d 17 (2012), the United States Supreme Court indicated that the fact of incarceration alone "is not enough to create a custodial situation" such that *Miranda* warnings must be given.  "[S]ervice of a term of imprisonment, without more, is not enough to constitute *Miranda* custody."  *Id*. at 512.  The pertinent custody question is whether a prisoner is detained and interrogated *within the context of his current environment*—i.e., subject to restrictions or police coercions not inherent in life in the general jail population.  See, e.g., *id*. at 514.  Defendant freely participated in the video call with FM, did not even know that FM was a police officer, and was free to end the call at any time and go back to his regular day-to-day life in the jail.  See, e.g., *id*., at 515-517.  He was not in custody for purposes of *Miranda* and his appellate argument is without merit.

## XI.  OV 6 AND JURY INSTRUCTIONS

Defendant contends that it was improper to score 50 points for Offense Variable (OV) 6 of the sentencing guidelines.  We disagree.

OV 6 deals with the "offender's intent to kill or injure another individual[.]"  MCL 777.36.  MCL 777.36(1)(a) provides for a score of 50 points if

> [t]he offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or

third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer[.]

A score of 25 points is appropriate if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result[.]"  MCL 777.36(1)(b).  Ten points are to be assessed if "[t]he offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life[.]"  MCL 777.36(1)(c).  Zero points are appropriate if "[t]he offender had no intent to kill or injure[.]"  MCL 777.36(1)(d).  MCL 777.36(2)(a) states, "The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury."

Defendant seemingly submits that MCL 777.36(1)(b), (c), and (d)—not just MCL 777.36(1)(a)—must be available to use in a solicitation-to-murder case.  And he contends that a score of 25, 10, or zero points under these other subparagraphs might have been appropriate in the present case because there was evidence that defendant had abandoned the idea of killing EM and evidence that defendant had been in emotional turmoil for some time around the time of the alleged solicitations to murder.  Defendant argues that because MCL 777.36(2)(a) mandates that the variable be scored in accordance with the jury verdict, it was imperative that the jurors be allowed to consider lesser charges, so that the sentencing court could consider lesser offenses while scoring OV 6.  Defendant alternatively argues that the 50-point score for OV 6 should be removed.

Firstly, MCL 777.22(1) states that OV 6 is to be scored for "solicitation to commit a homicide[.]"  The trial court properly assessed 50 points for this variable in light of the jury's verdict.  See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded in part by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019) (discussing the standard of review for the scoring of OVs).[15]  Indeed, the jury found defendant guilty of three counts of solicitation to commit murder and therefore implicitly found that defendant purposefully and repeatedly—in connection with three different would-be accomplices—sought the murder of EM.  The jurors, to reach their verdict, would necessarily have concluded that defendant had a premeditated intent to kill.  Defendant's argument that the score for OV 6 should have been zero is without merit.

In addition, defendant has established no plain error[16] in connection with the fact that OV 6 allows for different scoring options but that only one of the options—i.e., the 50-point option—will generally be available in a solicitation-to-murder case.  Defendant points to no authority indicating that all scoring options for an OV must be theoretically available for every crime to which the OV applies and as such has demonstrated no clear or obvious error concerning the fact

---

[15] Defendant did challenge the scoring of OV 6 below.

[16] Defendant's jury-instruction argument is not preserved.

that no instructions on lesser offenses were provided.  It is certainly not "clear or obvious," see *Carines*, 460 Mich at 763, that the OVs should dictate whether a jury should be instructed on particular crimes.  No error requiring reversal is apparent.

<div align="center">XII.  OV 4 AND OV 10[17]</div>

Defendant contends that the scores for OVs 4 and 10 were not supported by admissions from him or by the jury verdict; he argues that this amounted to a constitutional error and that, therefore, a remand is necessary to determine if the trial court would have imposed a materially different sentence absent the error.  He also contends that OVs 4 and 10 were improperly scored based on the record evidence.  We disagree.  These issues are not preserved and are subject to review under the plain-error doctrine.  *People v Kimble*, 470 Mich 305, 310-312; 684 NW2d 669 (2004); *Carines*, 460 Mich at 763-764.

First, with regard to his constitutional argument, defendant was sentenced well after the issuance of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).  Thus, the argument that the OV score must be in accordance with the jury verdict or in accordance with admissions by defendant is outdated.  In *Lockridge*, our Supreme Court remedied any constitutional violation connected with judge-found facts by making the guidelines advisory only.  *Id*. at 365.  There is no indication that the trial court, when sentencing defendant in 2018, did not follow the mandate of the 2015 *Lockridge* decision.

OV 4 deals with "psychological injury to victim[.]"  See MCL 777.34.[18]  Defendant received 10 points for OV 4.  Ten points are appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]"  MCL 777.34(1)(a).  MCL 777.34(2) states, "Score 10 points if the serious psychological injury may require professional treatment.  In making this determination, the fact that treatment has not been sought is not conclusive."  A statement from EM was presented at sentencing.  She stated that the impact of the case on her had been "too traumatic and tremendous to even put into words."  She reported she was "treated for anxiety and depression currently," and knew she needed counseling to help her begin the process of rebuilding her life as well as getting past her constant fearful state.  She mentioned the stalking and the solicitation to murder and stated that she had "been violated in so many ways, that I don't know it's possible to ever trust again."  Defendant's actions were an escalating series of events during which he persisted in contacting EM, despite PPOs, and eventually, and repeatedly, solicited her

---

[17] Defendant was granted permission to file a pro se supplemental brief following the remand for the *Ginther* hearing.  *People v Uraz*, unpublished order of the Court of Appeals, entered November 17, 2022 (Docket Nos. 343695; 343696).  But defendant's brief exceeded the scope of the issue addressed on remand in the circuit court, the issue of ineffective assistance of counsel.  See *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975).  For the first time on appeal, defendant raised challenges to the scoring of OVs 9 and 13.  These issues are not properly before us.  In any event, defendant's arguments do not entitle him to appellate relief.

[18] MCL 777.34 was amended by 2018 PA 652, effective March 28, 2019.  The amendment does not affect the language at issue here.

<div align="center">-20-</div>

murder.  The record is adequate to support a 10-point score for OV 4 in both the stalking and the solicitation cases.

Defendant received 15 points for OV 10, addressing exploitation of a vulnerable victim. MCL 777.40(1)(a) provides for a score of 15 points for OV 10 if "[p]redatory conduct was involved[.]"[19]  "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization."  MCL 777.40(3)(a).  In *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008), the Court set forth the following framework for determining whether 15 points should be assessed for OV 10:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

The Supreme Court has identified "stalking" as being predatory in nature.  *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011).

Defendant engaged in other stalking activities before the stalking offense at issue in this case.  Victimization was defendant's primary purpose for engaging in the prior stalking activities. In addition, during these prior stalking activities, EM had a readily apparent susceptibility to injury—at least to psychological injury—because of the prior romantic relationship between her and defendant and because of *even earlier* stalking activities.  The assessment of 15 points for OV 10 in the stalking case was not plainly erroneous.

With regard to the solicitation case, defendant contends that the 15-point score was inappropriate because he "was incarcerated in the Ingham [C]ounty [J]ail at the time of the alleged solicitation, and he was neither lying in wait nor physically stalking the complain[]ant at that time." But looking again to the framework set forth in *Cannon*, 481 Mich at 162, defendant engaged in stalking conduct before the solicitation to kill EM.  EM was susceptible to injury due to the fear instilled by the even earlier stalking.[20]  And defendant's motivation for engaging in the pre-solicitation stalking was victimization.  No plain error is apparent with regard to the scoring of OV 10 for the solicitation case.

---

[19] MCL 777.40 also was amended by 2018 PA 652, effective March 28, 2019.  The amendment does not affect the language at issue here.

[20] It is likely that the continuation of the various stalking activities made EM's suffering and fear, when she finally learned that defendant was intending to have her killed, even greater than it would have been in the absence of these preoffense activities.

## XIII. RESTITUTION, FEES, FINES, AND COSTS

Defendant contends that the court improperly ordered $2,273 in restitution for damage to EM's vehicle; he contends that this amount pertained to uncharged conduct and speculative actions and that he should not have been ordered to pay it. He further argues that because the lower court cases were consolidated into one proceeding, the imposed costs, fines, attorney fees, and crime victim's fees should have been one single assessment. Finally, he contends that there should have been no charge for DNA testing because this fee was paid in an earlier case. We grant relief in part.

Defendant's arguments are not preserved and thus we review them under the plain-error doctrine of *Carines*, 460 Mich at 763-764.

It appears that a plain error did occur with regard to restitution and that it affected the outcome of defendant's sentencing conditions. See *People v McKinley*, 496 Mich 410, 420; 852 NW2d 770 (2014) ("Conduct for which a defendant is *not* criminally charged and convicted is necessarily *not* part of a course of conduct that gives rise to the conviction."). The car damage occurred *before* acts comprising the current stalking charges. Yet, as noted in *Carines*, 460 Mich at 763-764, even when an outcome-determinative plain error occurs, an appellate court has discretion regarding whether to reverse, and reversal

> is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [Citation, quotation marks, and brackets omitted.]

Defendant's guilt or innocence is not at issue in terms of ordering restitution, so the question is whether the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. We conclude that it did not. First, defendant's stalking actions and solicitation to murder were all part of one broader scheme to harass and harm EM. In addition, the prosecutor stated at sentencing that the $2,273 restitution amount had been "communicated" to defense counsel and "[t]here is not an objection." Defense counsel made no response to this comment by the prosecutor. While counsel's silence may not have amounted to an outright waiver of the current restitution issue, it provides strong support for imposing the order of restitution. Further, defendant stated at sentencing that at a certain point in the past he had indeed wanted to "somehow compensate [EM] for her losses." Under the circumstances of the present case, we decline to reverse the order of restitution.[21]

Defendant contends that he should not have been assessed court costs and fees for each lower court file. The trial court imposed, for LC No. 16-001065-FC, a crime victim's fee of $130,

---

[21] Defendant makes no argument that the $2,273 was inaccurate in terms of capturing the damage to EM's vehicle. He *does* argue on appeal that it was not proven that he was the person who inflicted the damage. This, however, was a reasonable inference from the evidence and defendant's admission to Close that defendant had damaged EM's car.

state costs of $204, attorney fees of $600, a fine of $100, court costs of $700, and a DNA assessment fee of $60.  For LC No. 16-001064-FH, the trial court imposed a crime victim's fee of $130, state costs of $68, attorney fees of $600, a fine of $100, court costs of $700, and a DNA assessment fee of $60.[22]  The state minimum costs were mandatory for defendant's four felonies.  See MCL 769.1k(1)(a) and MCL 769.1j(1)(a).  As for the crime victim's fees, MCL 780.905(2) states that a court "shall order a defendant to pay only 1 [crime victim's fee] . . . per criminal case."  Defendant has not met his burden of showing a clear or obvious error with respect to the imposition of two such fees because there were two criminal cases initiated by two separate informations, even if they were resolved in one trial.  It is true that in *People v Earl*, 495 Mich 33, 41; 845 NW2d 721 (2014), the Court noted that the fee does not depend on the number of *charges*, but here there were two *cases*—one consisting of one charge and one consisting of three charges.

As for attorney fees and court costs, defendant has not established any clear or obvious error with regard to the bare assertion that they were improperly imposed for each criminal case because each case involved some separate attorney work and some separate court expenditures and work.[23]  And indeed, defendant provides no authority in support of his argument that two separate but jointly tried cases cannot support the imposition of separate costs and attorney fees.  *Bowling*, 299 Mich App at 559-560.[24]

MCL 769.5 states as follows with regard to criminal fines:

(1) If a statute provides that an offense is punishable by imprisonment and a fine, the court may impose imprisonment without the fine or the fine without imprisonment.

(2) If a statute provides that an offense is punishable by fine or imprisonment, the court may impose both the fine and imprisonment in its discretion.

MCL 750.411i(3) provides that aggravated stalking is punishable by imprisonment or a fine; accordingly, the imposition of a $100 fine was permissible for the stalking case.  MCL 750.157b, however, provides that solicitation to murder is punishable by imprisonment and does not mention this it is punishable by a fine.  Therefore, a clear or obvious error occurred that affected the fairness of judicial proceedings because a fine was imposed in the solicitation case—without authorization by the very penal statute in question.  See *People v Johnson*, 315 Mich 163, 198-199; 889 NW2d 513 (2016).

---

[22] Restitution was ordered only once.

[23] For example, in *People v Cameron*, 319 Mich App 215, 231; 900 NW2d 658 (2017), the Court noted that court costs are concerned with "the . . . cost of a criminal case."  Again, there were two cases at issue here.

[24] In addition, defendant does not in any way elaborate upon his brief statement about a defendant's ability to pay.

Finally, in light of MCL 28.176(3), the prior taking of a DNA sample exempts defendant from having to pay for an additional assessment.  In light of this provision, it is clear or obvious that defendant was improperly assessed two $60 DNA fees in violation of clear statutory language, and, therefore, we vacate one of the fees.  *Carines*, 460 Mich at 763.  Defendant contends that he should be required to pay *nothing* as a DNA fee for the instant cases because he already paid a DNA fee in a *prior* case.  Although he attempts to prove this prior payment by way of an attachment to his appellate brief, and an appellant may not expand the record on appeal.  *Nix*, 301 Mich App at 203.

We affirm defendant's convictions and sentences in both appeals.  We vacate the $100 fine and the $60 DNA fee in Docket No. 343696, but affirm the remainder of the ordered restitution, fees, costs, and fines in both appeals.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Anica Letica

| STATE OF MICHIGAN<br>30TH JUDICIAL COURT<br>INGHAM COUNTY | CLAIM OF APPEAL<br>ORDER APPOINTING COUNSEL<br>Order Amended | CASE NO. AND SUFFIX<br>16-1064 FH |
|---|---|---|

Amended Reason: Additional transcripts

**Court Address**

VETERANS MEMORIAL COURTHOUSE, 313 W. KALAMAZOO ST., LANSING, MI 48901

**Court Telephone**

(517) 483-6500

| THE PEOPLE OF THE STATE OF MICHIGAN | Address | Date of Birth: 10/2/1967 | Inmate No.: 114653 |
|---|---|---|---|
| v | SAGINAW CORRECTIONAL FACILITY<br>9625 PIERCE ROAD<br>FREELAND, MI 48623 | | |

| Defendant's Name, Last | First | Middle |
|---|---|---|
| URAZ | TUNC | |

### Terms of Sentence

| Offense Information | | | | | | | Minimum | | | Maximum | | | | | | Probation | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Description | PACC Code | H | C | A | S | Y | M | D | Y | M | D | K | P | J | Y | M | D |
| STALKING - AGGRAVATED | 750.411I | | | | | | 36 | | | 90 | | | X | | | | |

H=Habitual C=Conspiracy A=Attempt S=Solicitation Y=Year M=Month D=Day K=Consecutive P=Prison J=Jail TS=Time Served

The defendant claims an appeal from a final judgment or order entered on 1/24/2018 in the 30th Circuit Court, INGHAM COUNTY, Michigan by Judge CLINTON CANADY 23262. Copies of the final judgment or order being appealed and docket entries are attached for the Court of Appeals, appointed counsel, and Michigan Appellate Assigned Counsel System.

On 1/26/2018, the defendant filed a request for appointment of counsel and a declaration of indigency.

IT IS ORDERED:    SUSAN KAESTNER WALSH 40447        Phone: (248) 563-9149
                  P.O. Box 96
                  Milford, MI 48381

Is appointed counsel for the defendant in post-conviction proceedings. If appointed counsel can not or will not accept this appointment, he/she shall notify the court immediately. Copies of the final judgment or order being appealed and docket entries are attached for appointed counsel and Michigan Appellate Assigned Counsel System (MAACS).

The court reporter(s)/recorder(s) shall file with the trial court clerk the transcripts checked below and any other transcripts requested by counsel in this case not previously transcribed. Transcripts shall be filed within 28 days for pleas or 91 days for trials from the date ordered or requested [MCR 7.201(B)]. Reporter(s)/recorder(s) shall be paid as provided by law.

| Transcripts Ordered | | | Previously | | Court Reporter/Recorder | |
|---|---|---|---|---|---|---|
| Proceeding | Date | Description | Ordered | Filed | Name | Number |
| Hearing | 8/31/2016 | District Court | | | AUDIO RECORDING | |
| Hearing | 10/19/2016 | District Court | | | AUDIO RECORDING | |
| Arraignment | 1/4/2017 | | | | Teresa Abraham | 3445 |
| Hearing | 2/28/2017 | | | | Teresa Abraham | 3445 |
| Pretrial | 3/8/2017 | | | | Teresa Abraham | 3445 |
| Pretrial | 3/22/2017 | | | | Teresa Abraham | 3445 |
| Pretrial | 5/2/2017 | | | | Teresa Abraham | 3445 |
| Status Conference | 8/15/2017 | | | | Teresa Abraham | 3445 |
| Motion | 8/28/2017 | | | | Teresa Abraham | 3445 |
| Motion | 10/11/2017 | | | | Teresa Abraham | 3445 |
| Motion | 10/20/2017 | | | | Teresa Abraham | 3445 |
| Hearing | 10/31/2017 | | | | Teresa Abraham | 3445 |
| Jury Trial | 11/2/2017 | | X | | Teresa Abraham | 3445 |
| Jury Trial | 11/3/2017 | | X | | Teresa Abraham | 3445 |
| Jury Trial | 11/6/2017 | | X | | Teresa Abraham | 3445 |
| Jury Trial | 11/7/2017 | | X | | Teresa Abraham | 3445 |

CC403 (3/13)            Page 1 of 2            MCR 6.425(G), MCR 6.433, MCR 7.210(B)(3)

| Jury Trial | 11/9/2017 | | | | Teresa Abraham | 3445 |
|---|---|---|---|---|---|---|
| Status Conference | 12/13/2017 | | | | Teresa Abraham | 3445 |
| Sentence | 12/20/2017 | Adjourned | | | Teresa Abraham | 3445 |
| Sentence | 1/24/2018 | | X | | Teresa Abraham | 3445 |
| Sentence | 1/25/2018 | | | | Teresa Abraham | 3445 |

The clerk shall immediately send to counsel a copy of the transcripts ordered above or requested by counsel as they become available. The clerk shall forward documents upon request by counsel [MCR 6.433].

4-25-18
_____
Date

Judge   JOYCE A. DRAGANCHUK

Bar No.  39417

## CERTIFICATE OF SERVICE

I certify that on this date I served a copy of this claim of appeal to appointed counsel, defendant, court reporter(s)/recorder(s), prosecutor, Court of Appeals, and the Michigan Appellate Assigned Counsel System (MAACS). I also served a copy of the final judgment or order being appealed and the docket entries to appointed counsel, the Court of Appeals, and MAACS. I also served a copy of the defendant's request for appointment of counsel to appointed counsel, the prosecutor, and MAACS.

MAACS and appointed counsel have agreed to accept electronic service of this order and related documents through the MAACS electronic case assignment system.

4/26/18
_____
Date

_____
Signature

# Ingham County, Michigan - Court Record Search

**Navigation**

New Search

Return to ROA Results

Logout

### Case Summary

| | |
|---|---|
| **Case Title:** | THE STATE OF MICHIGAN vs URAZ, TUNC |
| **Case Number:** | 16-001064-FH |
| **Judge:** | CLINTON CANADY |
| **DEFENDANT:** | TUNC URAZ |
| **Case Status:** | CLOSED |
| **Disposition:** | 1BC - JURY VERDICT - 01/24/2018 |
| **File Date:** | 12/19/2016 |

### Charge, Disposition & Sentencing

| | |
|---|---|
| Charge 1: | STALKING AGGRAVATED |
| Disposition: | C30 GUILTY VERDICT BY JURY |
| Sentence: | Fines, Costs & Restitution: $ 800.00 |

Remarks: (36) MOS TO (90) MOS MDOC WITH CREDIT FOR (453) DAYS SERVED; STATE COST $68; CVA $130; DNA $60; COURT COST $700; ATTY $600; FINE $100; CONCURRENT WITH FILE #16-1065-FC

Prison: Minimum - 36 (months) ; Maximum - 90 (months) ; Credit for - 453 (days)

### Case Events

| | | |
|---|---|---|
| 154 | 04/03/2018 | CERTIFICATE OF APPEAL OF COURT REPORTER - TRANSCRIPTS OF PROCEEDINGS HELD BEFORE HON. CLINTON CANADY, III ON NOVEMBER 2, 3, 6, 7 AND 9 OF 2017 AND JANUARY 24, 2018. TRANSCRIPTS WILL BE FURNISHED NO LATER THAN JUNE 1, 2018. REPORTED BY: TERESA J. ABRAHAM, CSR-3445 |
| 153 | 04/03/2018 | CERTIFICATE OF APPEAL OF COURT RECORDER THAT T. ABRAHAM, CSR-3445 CERTIFY ON 3-26-18, RECEIVED A REQUEST TO PRODUCE TRANSCRIPTS 012518; 103117; 102717; 102017; 101117; 081517; 050217; 032217; 030817; 021817; 013117; 010417 |
| 152 | 03/06/2018 | CERTIFICATE OF APPEAL OF COURT REPORTER - TRANSCRIPTS OF PROCEEDINGS HELD BEFORE HON. CLINTON CANADY, III ON NOVEMBER 2, 3, 6, 7 AND 9 OF 2017 AND JANUARY 24, 2018. TRANSCRIPTS WILL BE FURNISHED NO LATER THAN JUNE 1, 2018. REPORTED BY: TERESA J. ABRAHAM, CSR-3445 |
| 151 | 02/26/2018 | CLAIM OF APPEAL ORDER APPOINTING APPELLATE COUNSEL; W/ PROOF OF SERVICE |
| 150 | 01/31/2018 | NOTICE OF RIGHT TO APPELLATE REVIEW AND REQUEST FOR APPOINTMENT OF ATTORNEY SIGNED BY DEFENDANT ON 1/26/18 |
| 149 | 01/30/2018 | ORDER TO REMIT PRISONER FUNDS FOR FINES, COSTS, AND ASSESSMENTS - DEF OWES $1,658 - IT IS ORDERED THAT THE MDOC SHALL COLLECT 50 PERCENT OF ALL FUNDS RECEIVED BY DEFENDANT OVER $50 EACH MONTH; W/ PROOF OF SERVICE |
| 148 | 01/25/2018 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: SENTENCING SCHEDULED FOR 01/24/2018 AT 8:30 AM HAS BEEN |

|  |  |  |
|---|---|---|
| | | RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 147 | 01/24/2018 | FELONY MINIMUM COST |
| 146 | 01/24/2018 | MISCELLANEOUS CORRESPONDENCE AS TO DEFENDANT'S EXHIBIT A |
| 145 | 01/24/2018 | **ALERT CANCELLED** CONDITIONAL BOND RELEASE CANCELED ON: 01/24/2018 FOR: URAZ, TUNC |
| 144 | 01/24/2018 | JUDGMENT OF SENTENCE / COMMITMENT DEPARTMENT OF CORRECTIONS |
| 143 | 01/24/2018 | CRIME VICTIM'S RIGHTS ASSESSMENT - CIRCUIT COURT |
| 142 | 01/24/2018 | PA 352 COSTS - CIRCUIT COURT |
| 141 | 01/24/2018 | SENTENCING INFORMATION REPORT |
| 140 | 01/24/2018 | COURT APPOINTED ATTORNEY - FINAL FEES |
| 139 | 01/24/2018 | DNA |
| 138 | 01/24/2018 | CASE CLOSED C30 |
| 137 | 01/24/2018 | C30 - SENTENCE INFORMATION - CT 1 (36) MOS TO (90) MOS MDOC WITH CREDIT FOR (453) DAYS SERVED; STATE COST $68; CVA $130; DNA $60; COURT COST $700; ATTY $600; FINE $100; CONCURRENT WITH FILE #16-1065-FC |
| 136 | 01/24/2018 | FINES - CIRCUIT COURT |
| 135 | 12/13/2017 | HEARING SET: THE FOLLOWING EVENT: SENTENCING SCHEDULED FOR 12/20/2017 AT 8:30 AM HAS BEEN RESCHEDULED AS FOLLOWS: EVENT: SENTENCING DATE: 01/24/2018 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 134 | 12/13/2017 | ADJOURNED ON THE RECORD THE FOLLOWING EVENT: SENTENCING SCHEDULED FOR 12/20/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: C30 ADJOURNED - ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 133 | 12/13/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: STATUS CONFERENCE SCHEDULED FOR 12/13/2017 AT 11:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 132 | 12/12/2017 | HEARING SET: EVENT: STATUS CONFERENCE DATE: 12/13/2017 TIME: 11:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 131 | 11/09/2017 | JURY TRIAL CONCLUDED: STRIKE AND SWEAR AS TO JURORS #1 AND 5 @ 2:00 P.M. - JURY DELIBERATIONS @ 2:02 P.M. |
| 130 | 11/09/2017 | JURY TRIAL CONTINUED (JURORS SERVED FULL DAY) RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 129 | 11/09/2017 | HEARING SET: EVENT: SENTENCING DATE: 12/20/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: C30 ADJOURNED - ON THE RECORD |
| 128 | 11/09/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 11/09/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |

| 127 | 11/09/2017 | VERDICT FORM (COPY OF JURY INSTRUCTIONS ATTACHED) |
| 126 | 11/09/2017 | GUILTY VERDICT BY JURY REACHED @ 3:58 P.M. - SENTENCE: SET FOR DECEMBER 20, 2017 AT 8:30 A.M. |
| 125 | 11/09/2017 | GUILTY VERDICT BY JURY - CT 1 GUILTY VERDICT BY JURY; REFER PROBATION; BOND CANCELLED; SENTENCE: DECEMBER 20, 2017 @ 8:30 A.M. |
| 124 | 11/07/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 11/09/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 123 | 11/07/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 11/07/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL |
| 122 | 11/07/2017 | JURY TRIAL CONTINUED (JURORS SERVED FULL DAY) |
| 121 | 11/06/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 11/06/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 120 | 11/06/2017 | WRIT OF HABEAS CORPUS - FATEEN MUHAMMAD TO APPEAR BEFORE HON. CLINTON CANADY, III ON THURSDAY, NOVEMBER 9, 2017 @ 8:30 A.M. TO TESTIFY IN THE MATTER OF PEOPLE V TUNC URAZ |
| 119 | 11/06/2017 | WRIT OF HABEAS CORPUS - JOHN PIERCE TO APPEAR BEFORE HON. CLINTON CANADY, III ON THURSDAY, NOVEMBER 9, 2017 @ 8:30 A.M. TO TESTIFY IN THE MATTER OF PEOPLE V TUNC URAZ |
| 118 | 11/06/2017 | WRIT OF HABEAS CORPUS - KEN MCDANIELS TO APPEAR BEFORE HON. CLINTON CANADY, III ON THURSDAY, NOVEMBER 9, 2017 @ 8:30 A.M. TO TESTIFY IN THE MATTER OF PEOPLE V TUNC URAZ |
| 117 | 11/06/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 11/07/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 116 | 11/06/2017 | JURY TRIAL CONTINUED |
| 115 | 11/03/2017 | JURY TRIAL CONTINUED - JURORS SERVED (FULL DAY) |
| 114 | 11/03/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 11/06/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 113 | 11/03/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 11/03/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 112 | 11/02/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 11/03/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 111 | 11/02/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 11/02/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 110 | 11/02/2017 | JURY TRIAL CONTINUED - JURORS SEATED AT 10:56 A.M. (JURORS SERVED 1 FULL DAY) |
| 109 | 11/02/2017 | WRIT HABEAS CORPUS - REGINALD CLOSE, JR. TO APPEAR BEFORE |

|     |            | HON. CLINTON CANADY, III TO TESTIFY IN PEOPLE V. TUNC URAZ ON MONDAY, NOVEMBER 6, 2017 AT 8:30 A.M. |
|-----|------------|--------|
| 108 | 11/01/2017 | REQUEST FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS - LANSING STATE JOURNAL |
| 107 | 11/01/2017 | TRANSCRIPT OF PROCEEDINGS - MOTIONS HELD BEFORE HON. CLINTON CANADY, III ON FRIDAY, OCTOBER 20, 2017. REPORTED BY: TERESA J. ABRAHAM, CSR-3445 |
| 106 | 11/01/2017 | WRIT HABEAS CORPUS - DEFENDANT TO APPEAR BEFORE HON. CLINTON CANADY, III ON THURSDAY, NOVEMBER 2ND AND NOVEMBER 3RD 2017 AT 8:30 A.M. FOR JURY TRIAL |
| 105 | 10/31/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 10/31/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 104 | 10/31/2017 | JURY TRIAL COMMENCED - JURORS ASSEMBLED AT 10:55 A.M. - (POTENTIAL JURORS 1 FULL DAY) |
| 103 | 10/31/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 11/02/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 102 | 10/27/2017 | HEARING SET: THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 10/30/2017 AT 8:30 AM HAS BEEN RESCHEDULED AS FOLLOWS: EVENT: JURY TRIAL CRIMINAL DATE: 10/31/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 101 | 10/27/2017 | HEARING ADJOURNED THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 10/30/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: C30 ADJOURNED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 100 | 10/26/2017 | WRIT HABEAS CORPUS - (KEN MCDANIELS) TO APPEAR BEFORE HON. CLINTON CANADY, III ON TUESDAY, OCTOBER 31, 2017 AT 8:30 A.M. |
| 99 | 10/26/2017 | NOTICE TO APPEAR (KEN MCDANIELS) TO TESTIFY BEFORE HON. CLINTON CANADY, III ON TUESDAY, OCTOBER 31, 2017 AT 8:30 A.M. |
| 98 | 10/26/2017 | SUBPOENA - (KEN MCDANIELS) ORDER TO APPEAR AND/OR PRODUCE ON TUESDAY, OCTOBER 31, 2017 AT 8:30 A.M. BEFOR EHON. CIINTON CANADY, III |
| 97 | 10/26/2017 | WRIT OF HABEAS CORPUS - DEF TO APPEAR BEFORE HON. CLINTON CANADY, III ON TUESDAY, OCTOBER 31, 2017 AT 8:30 A.M. |
| 96 | 10/26/2017 | NOTICE TO APPEAR TESTIFY OF FATEEN MUHAMMAD ON OCTOBER 31, 2017 AT 8:30 A.M. BEFORE HON. CLINTON CANADY, III |
| 95 | 10/26/2017 | SUBPOENA - (FATEEN MUHAMMAD) ORDER TO APPEAR AND/OR PRODUCE ON TUESDAY, OCTOBER 31, 2017 AT 8:30 A.M. BEFOR EHON. CIINTON CANADY, III |
| 94 | 10/26/2017 | WRIT OF HABEAS CORPUS - DEF (JOHN PIERCE) SHALL APPEAR BEFORE HON. CLINTON CANADY, III ON TUESDAY, OCTOBER 31, 2017 AT 8:30 A.M. |
| 93 | 10/26/2017 | NOTICE TO APPEAR (JOHN PIERCE) TO TESTIFY BEFORE HON. CLINTON CANADY, III ON TUESDAY, OCTOBER 31, 2017 AT 8:30 A.M. |
| 92 | 10/26/2017 | SUBPOENA - (JOHN PIERCE) ORDER TO APPEAR AND/OR PRODUCE ON TUESDAY, OCTOBER 31, 2017 AT 8:30 A.M. BEFOR EHON. CIINTON CANADY, III |
| 91 | 10/24/2017 | ORDER - IT IS ORDERED THAT PLAINTIFF'S MOTION TO RECONSIDER PRIOR MRE 404(B) RULING IS HEREBY GRANTED; W/PROOF OF SERVICE |

| 90 | 10/24/2017 | ORDER GRANTING IN PART AND DENYING IN PART PEOPLE'S MOTION TO ADMIT OTHER ACTS EVIDENCE PURSUANT TO MRE 404(B) - IT IS HEREBY ORDERED THAT THE PEOPLE'S MOTION TO ADMIT OTHER ACTS EVIDENCE PURSUANT TO MRE 404(B) IS GRANTED AS IT RELATED TO PARAGRAPHS, 1, 2, 3 5, 6, 8, 9, 10, 12, 13, 14, 15 AND 17. IT IS FURTHER ORDERED THAT THE PEOPLE'S MOTION TO ADMIT OTHER ACTS EVIDENCE PURSUANT TO MRE 404(B) IS DENIED AS IT RELATED TO THE FOLLOWING PARAGRAPHS 4, 7, 11 AND 16 |
| 89 | 10/24/2017 | EVENT CANCELLED THE FOLLOWING EVENT: SHOW CAUSE HEARING SCHEDULED FOR 10/24/2017 AT 3:00 PM HAS BEEN RESULTED AS FOLLOWS: RESULT: CANCELLED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 88 | 10/23/2017 | PEOPLE'S MOTION TO RECONSIDER PRIOR MRE 404(B) RULING; W/PROOF OF SERVICE |
| 87 | 10/23/2017 | HEARING SET: EVENT: SHOW CAUSE HEARING DATE: 10/24/2017 TIME: 3:00 PM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: CANCELLED |
| 86 | 10/23/2017 | WRIT OF HABEAS CORPUS - DEF SHALL APPEAR BEFORE HON. CLINTON CANADY, III ON NOVEMBER 2, 2017 THROUGH NOVEMBER 3, 2017 AT 8:30 A.M. FOR JURY TRIAL |
| 85 | 10/20/2017 | ORDER - IT IS HEREBY ORDERED THAT DEFENDANT'S MOTION TO DISMISS FOR ENTRAPMENT IS DENIED FOR REASONS STATED ON THE RECORD |
| 84 | 10/20/2017 | ORDER - IT IS HEREBY ORDERED THAT DEFENDANT'S MOTION TO CHANGE VENUE OR RESTRICT MEDIA IS DENIED FOR THE REASONS STATED ON THE RECORD |
| 83 | 10/20/2017 | HEARING NOT HELD THE FOLLOWING EVENT: MOTION TO DISQUALIFY SCHEDULED FOR 10/20/2017 AT 10:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING NOT HELD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 82 | 10/20/2017 | DENIED ON THE RECORD THE FOLLOWING EVENT: MOTION (MISC) SCHEDULED FOR 10/20/2017 AT 10:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: DENIED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 81 | 10/20/2017 | DENIED ON THE RECORD THE FOLLOWING EVENT: MOTION (MISC) SCHEDULED FOR 10/20/2017 AT 10:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: DENIED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 80 | 10/20/2017 | HEARING IN OPEN COURT - HELD ON THE RECORD - MOTION TO TO DISMISS FOR ENTRAPMENT DENIED; MOTION FOR CHANGE OF VENUE AND RESTRICT MEDIA DENIED WITHOUT PREJUDICE; PEOPLE'S OBJECTION TO WITNESS LIST AND SECOND DISCLOSURE GRANTED IN PART; MOTION TO DISQUALIFY NOT HELD |
| 79 | 10/20/2017 | DENIED ON THE RECORD THE FOLLOWING EVENT: MOTION TO CHANGE VENUE SCHEDULED FOR 10/20/2017 AT 10:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: DENIED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 78 | 10/20/2017 | GRANTED IN PART - DENIED IN PART ON THE RECORD THE FOLLOWING EVENT: MOTION (MISC) SCHEDULED FOR 10/20/2017 AT 10:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: GRANTED IN PART - DENIED IN |

|    |            | PART JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
|----|------------|---|
| 77 | 10/19/2017 | NOTICE OF HEARING - PEOPLE'S OBJECTION TO WITNESS LIST AND SECOND DISCLOSURE DEMAND WILL BE HEARD BEFORE HON. CLINTON CANADY, III ON FRIDAY, OCTOBER 20, 2017 AT 10:30 A.M.; W/ PROOF OF SERVICE |
| 76 | 10/19/2017 | HEARING SET: EVENT: MOTION (MISC) DATE: 10/20/2017 TIME: 10:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: GRANTED |
| 75 | 10/19/2017 | PEOPLE'S OBJECTION TO DEFENDANT'S WITNESS LIST AND SECOND DISCLOSURE DEMAND ATTORNEY: ROTH, JONATHAN C (72030) |
| 74 | 10/19/2017 | HEARING SET: EVENT: MOTION (MISC) DATE: 10/20/2017 TIME: 10:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL |
| 73 | 10/18/2017 | PEOPLE'S REPSONSE TO DEFENDANT'S MOTION TO DISMISS FOR ENTRAPMENT; W/ PROOF OF SERVICE |
| 72 | 10/18/2017 | PEOPLE'S PROPOSED JURY INSTRUCTIONS; W/PROOF OF SERVICE |
| 71 | 10/18/2017 | PEOPLE'S RESPONSE TO DEFENDANT'S MOTION TO CHANGE VENUE OR RESTRICT MEDIA; W/ PROOF OF SERVICE |
| 70 | 10/18/2017 | WRIT OF HABEAS CORPUS - DEF SHALL APPEAR BEFORE HON. CLINTON CANADY, III ON THURSDAY, NOVEMBER 2, 2017 THRU NOVEMBER 3, 2017 AT 8:30 A.M. |
| 69 | 10/12/2017 | HEARING SET: EVENT: MOTION TO DISQUALIFY DATE: 10/20/2017 TIME: 10:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING NOT HELD |
| 68 | 10/12/2017 | HEARING SET: EVENT: MOTION TO CHANGE VENUE DATE: 10/20/2017 TIME: 10:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: DENIED |
| 67 | 10/12/2017 | HEARING SET: EVENT: MOTION (MISC) DATE: 10/20/2017 TIME: 10:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: DENIED |
| 66 | 10/12/2017 | HEARING SET: EVENT: MOTION (MISC) DATE: 10/20/2017 TIME: 10:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: DENIED |
| 65 | 10/11/2017 | HEARING IN OPEN COURT IN OPEN COURT - MOTION TO ADMIT OTHER ACTS GRANTED IN PART - DENIED IN PART |
| 64 | 10/11/2017 | GRANTED IN PART/DENIED IN PART, ON THE RECORD THE FOLLOWING EVENT: MOTION (MISC) SCHEDULED FOR 10/11/2017 AT 9:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: GRANTED IN PART, DENIED IN PART JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 63 | 10/11/2017 | DEFENDANT'S REQUEST FOR PRODUCTION OF WITNESSES; W/PROOF OF SERVICE |
| 62 | 10/10/2017 | HEARING SET: THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 11/02/2017 AT 8:30 AM HAS BEEN RESCHEDULED AS FOLLOWS: EVENT: JURY TRIAL CRIMINAL DATE: 10/30/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: C30 ADJOURNED |
| 61 | 10/10/2017 | RESPONSE TO PEOPLE'S MOTION TO ADMIT OTHER ACTS EVIDENCE PURSUANT TO MRE 404(B); W/ PROOF OF SERVICE |
| 60 | 10/10/2017 | HEARING ADJOURNED THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 11/02/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: C30 ADJOURNED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: |

STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445

| | | |
|---|---|---|
| 59 | 10/09/2017 | PEOPLE'S AMENDED WITNESS LIST; W/PROOF OF SERVICE |
| 58 | 10/03/2017 | PEOPLE'S MOTION TO ADMIT OTHER ACTS EVIDENCE PURSUANT TO MRE 404 (B); W/ PROOF OF SERVICE |
| 57 | 09/28/2017 | PEOPLE'S WITNESS LIST; W/ PROOF OF SERVICE |
| 56 | 09/27/2017 | HEARING SET: EVENT: MOTION (MISC) DATE: 10/11/2017 TIME: 9:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: GRANTED |
| 55 | 09/11/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 10/23/2017 TIME: 9:00 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: SCHEDULED IN ERROR |
| 54 | 09/11/2017 | SCHEDULED IN ERROR THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 10/23/2017 AT 9:00 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: SCHEDULED IN ERROR JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 53 | 08/15/2017 | EVENT CANCELLED THE FOLLOWING EVENT: MOTION (MISC) SCHEDULED FOR 08/23/2017 AT 11:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: CANCELLED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 52 | 08/15/2017 | HEARING IN OPEN COURT - HELD ON THE RECORD - MOTION FOR 180 DAY BOND - DENIED ON THE RECORD |
| 51 | 08/15/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: STATUS CONFERENCE SCHEDULED FOR 08/15/2017 AT 2:00 PM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT RECORDER: SUSAN MELTON |
| 50 | 08/09/2017 | HEARING SET: THE FOLLOWING EVENT: MOTION (MISC) SCHEDULED FOR 08/09/2017 AT 11:30 AM HAS BEEN RESCHEDULED AS FOLLOWS: EVENT: MOTION (MISC) DATE: 08/23/2017 TIME: 11:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: CANCELLED |
| 49 | 08/09/2017 | HEARING ADJOURNED THE FOLLOWING EVENT: MOTION (MISC) SCHEDULED FOR 08/09/2017 AT 11:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: C30 ADJOURNED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL |
| 48 | 08/02/2017 | PROOF OF SERVICE - COPY OF NOTICE OF HEARING, MOTION FOR 180 DAYS BOND, BRIEF IN SUPPORT AND PROOF OF SERVICE SERVED UPON CAROL A. SIEMON BY EMAIL ON AUGUST 2, 2017 |
| 47 | 08/02/2017 | NOTICE OF HEARING - DEFENDANT'S MOTION FOR 180 DAY BOND WILL BE HEARD BEFORE HON. CLINTON CANADY, III ON WEDNESDAY, AUGUST 9, 2017 AT 11:30 A.M. |
| 46 | 08/02/2017 | BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PERSONAL RECOGNIZANCE BOND |
| 45 | 08/02/2017 | DEFENDANT'S MOTION FOR 180 DAY BOND |
| 44 | 07/21/2017 | HEARING SET: EVENT: MOTION (MISC) DATE: 08/09/2017 TIME: 11:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: C30 ADJOURNED |
| 43 | 06/12/2017 | HEARING ADJOURNED THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 06/19/2017 AT 9:00 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: C30 ADJOURNED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: |

STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445

| | | |
|---|---|---|
| 42 | 05/08/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 06/19/2017 TIME: 9:00 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: C30 ADJOURNED |
| 41 | 05/02/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: CRIMINAL PRETRIAL CONFERENCE SCHEDULED FOR 05/02/2017 AT 2:00 PM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 40 | 05/02/2017 | HEARING SET: EVENT: STATUS CONFERENCE DATE: 08/15/2017 TIME: 2:00 PM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 39 | 05/02/2017 | HEARING IN OPEN COURT - HELD ON THE RECORD - PLEA OFFER READ ON THE RECORD - JURY TRIAL SCHEDULED THURSDAY, NOVEMBER 2, 2017 @ 8:30 A.M. - STATUS CONFERENCE HEARING ON AUGUST 15, 2017 @ 2:00 P.M. |
| 38 | 05/02/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 11/02/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: C30 ADJOURNED |
| 37 | 04/07/2017 | HEARING ADJOURNED THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 02/13/2017 AT 9:00 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: C30 ADJOURNED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 36 | 04/07/2017 | HEARING ADJOURNED THE FOLLOWING EVENT: JURY TRIAL CRIMINAL SCHEDULED FOR 04/17/2017 AT 9:00 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: C30 ADJOURNED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 35 | 03/23/2017 | ORDER SETTING SECOND CRIMINAL PRETRIAL CONFERENCE - DEFENDANT MUST BE PRESENT; W/ PROOF OF SERVICE |
| 34 | 03/22/2017 | HEARING IN OPEN COURT - HELD ON THE RECORD - FINAL PRETRIAL MAY 2, 2017 AT 2:00 P.M. |
| 33 | 03/22/2017 | HEARING SET: EVENT: CRIMINAL PRETRIAL CONFERENCE DATE: 05/02/2017 TIME: 2:00 PM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 32 | 03/22/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: CRIMINAL PRETRIAL CONFERENCE SCHEDULED FOR 03/22/2017 AT 10:00 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT RECORDER: YVETTE NICHOLSON |
| 31 | 03/09/2017 | HEARING SET: THE FOLLOWING EVENT: CRIMINAL PRETRIAL CONFERENCE SCHEDULED FOR 03/08/2017 AT 10:00 AM HAS BEEN RESCHEDULED AS FOLLOWS: EVENT: CRIMINAL PRETRIAL CONFERENCE DATE: 03/22/2017 TIME: 10:00 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 30 | 03/09/2017 | ORDER SETTING SECOND CRIMINAL PRETRIAL CONFERENCE; W/ PROOF OF SERVICE |
| 29 | 03/08/2017 | HEARING IN OPEN COURT - HELD ON THE RECORD - PLEA OFFER READ ON THE RECORD - MATTER ADJOURN TO MARCH 22, 2017 AT 10:00 A.M. |

| 28 | 03/08/2017 | ADJOURNED ON THE RECORD THE FOLLOWING EVENT: CRIMINAL PRETRIAL CONFERENCE SCHEDULED FOR 03/08/2017 AT 10:00 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: C30 ADJOURNED - ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 27 | 03/06/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 04/17/2017 TIME: 9:00 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: C30 ADJOURNED |
| 26 | 03/02/2017 | AMENDED BOND ORDER - IT IS ORDERED THAT THE FEBRUARY 7, 2017 ORDER IS HEREBY AMENDED TO LIMIT DEFENDANT'S WEEKLY CONTACT WITH HIS SON OR SISTER TO VIDEO VISITS ONLY. IT IS FURTHER ORDERED THAT ALL OTHER PROVISIONS AND CONDITIONS OF THE FEBRUARY 7, 2017 ORDER REMAIN IN FULL FORCE AND EFFECT; W/ PROOF OF SERVICE |
| 25 | 02/07/2017 | ORDER ON DEFENDANT'S MOTION FOR BOND |
| 24 | 02/06/2017 | DEMAND FOR DISCOVERY |
| 23 | 02/06/2017 | PROOF OF SERVICE - COPY OF DEMAND FOR DISCOVERY AND PROOF OF SERVICE SERVED UPON JUDICIAL ASSISTANT TO JUDGE CANADY, INGHAM COUNTY PROSECUTOR'S OFFICE, CLERK OF THE 30TH CIRCUIT COURT ON FEBRUARY 2, 2017 |
| 22 | 02/02/2017 | ORDER SETTING SECOND CRIMINAL PRETRIAL CONFERENCE - DEFENDANT MUST BE PRESENT; W/ PROOF OF SERVICE |
| 21 | 01/31/2017 | C30 HEARING HELD ON THE RECORD THE FOLLOWING EVENT: CRIMINAL PRETRIAL CONFERENCE SCHEDULED FOR 01/31/2017 AT 2:00 PM HAS BEEN RESULTED AS FOLLOWS: RESULT: HEARING HELD ON THE RECORD JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 20 | 01/31/2017 | HEARING SET: EVENT: MOTION TO MODIFY DATE: 01/31/2017 TIME: 2:00 PM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: DENIED |
| 19 | 01/31/2017 | HEARING SET: EVENT: MOTION (MISC) DATE: 02/28/2017 TIME: 2:00 PM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL |
| 18 | 01/31/2017 | HEARING SET: EVENT: CRIMINAL PRETRIAL CONFERENCE DATE: 03/08/2017 TIME: 10:00 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: C30 ADJOURNED - ON THE RECORD |
| 17 | 01/31/2017 | CRIMINAL PRE-TRIAL CONFERENCE ORDER |
| 16 | 01/31/2017 | DENIED IN PART/ GRANTED IN PART ON THE RECORD. BOND DENIED. CONTINUE TO HOLD WIHTOUT BOND. GRANTED AS FOLLOWS: 1) TURKISH CONSOLATE MAY VISIT 2) MAY HAVE PSYCHIATRIST/PSYCHOLOGIST VISIT AT THE JAIL 3) MAY BE ALLOWED 1 PHONE CALL PER WEEK FOR 15 MIN FROM SON (WHO RESIDES WITH SISTER). ALL CALLS MUST BE IN ENGLISH OR ARE SUBJECT TO IMMEDIATE TERMINATION. IF ANY TURKISH IS SPOKEN BEFORE CALL TERMINATED, DEFENDANT MUST PAY FOR INDEP TRANSLATOR OF PROSECUTOR'S CHOICE. THE FOLLOWING EVENT: MOTION TO MODIFY BOND SCHEDULED FOR 01/31/2017 AT 2:00 PM HAS BEEN RESULTED AS FOLLOWS: RESULT: DENIED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |
| 15 | 01/31/2017 | HEARING IN OPEN COURT - PLEA OFFER READ ON THE RECORD - MOTION FOR BOND MODIFICATION DENIED - FINAL PRETRIAL MARCH 8, 2017 AT 2:00 P.M. |
| 14 | 01/20/2017 | CERTIFICATE OF SERVICE - COPY OF AMENDED FELONY INFORMATION |

|  |  | AND HABITUAL OFFENDER NOTICE SERVED UPON JACOB PERRONE, ATTORNEY FOR DEFENDANT BY ELECTRONIC MAIL, PER STIPULATION ON 1/20/17; AN ORIGINAL COPY ALSO SERVED UPON INGHAM COUNTY CIRCUIT COURT CLERK'S OFFICE VIA HAND DELIVERY ON 1/20/17 |
|----|------------|----|
| 13 | 01/20/2017 | AMENDED FELONY INFORMATION |
| 12 | 01/05/2017 | HEARING SET: EVENT: JURY TRIAL CRIMINAL DATE: 02/13/2017 TIME: 9:00 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: C30 ADJOURNED |
| 11 | 01/04/2017 | HEARING IN OPEN COURT - HELD ON THE RECORD - WRITTEN WAIVER OF ARRAIGNMENT - PRETRIAL SET JANUARY 31, 2017 AT 2:00 P.M. |
| 10 | 01/04/2017 | HEARING SET: EVENT: CRIMINAL PRETRIAL CONFERENCE DATE: 01/31/2017 TIME: 2:00 PM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: HEARING HELD ON THE RECORD |
| 9 | 01/04/2017 | ORDER SETTING CRIMINAL PRETRIAL CONFERENCE; W/ PROOF OF SERVICE |
| 8 | 01/04/2017 | INFORMATION FELONY |
| 7 | 12/22/2016 | **ALERT ISSUED** CONDITIONAL BOND RELEASE ISSUED ON: 10/28/2016 FOR: URAZ, TUNC BOND AMT: |
| 6 | 12/22/2016 | CONDITIONAL BOND RELEASE ORDER - NO CONTACT W/ ERIKA MELKE OR BE W/IN 500 FT OF WHERE SHE LIVES, WORKS, OR GOES TO SCHOOL |
| 5 | 12/22/2016 | ARREST BOND ARREST BOND ADDED TO CASE WITH: ACTION CODE: STALKING AGGRAVATED ARREST DATE: 09/26/2016 BOND STATUS: C30 BOND NOT POSTED STATUS DATE: 12/22/2016 BLANKET BOND: NO OKAY TO APPLY: NO BOND TYPE: CR CASH/SURETY BOND AMOUNT: 25000 |
| 4 | 12/21/2016 | HEARING SET: EVENT: ARRAIGNMENT DATE: 01/04/2017 TIME: 8:30 AM JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL RESULT: WRITTEN WAIVER FILED |
| 3 | 12/21/2016 | WRITTEN WAIVER OF ARRAIGNMENT THE FOLLOWING EVENT: ARRAIGNMENT SCHEDULED FOR 01/04/2017 AT 8:30 AM HAS BEEN RESULTED AS FOLLOWS: RESULT: WRITTEN WAIVER FILED JUDGE: CANADY III, CLINTON LOCATION: COURTROOM 6 - VETERANS MEMORIAL |
| 2 | 12/19/2016 | WRITTEN WAIVER OF ARRAIGNMENT |
| 1 | 12/19/2016 | DISTRICT COURT BINDOVER RECEIVED RESULT STAFF: STAFF: COURT REPORTER: ABRAHAM, TERESA CERTIFICATION NUMBER: 3445 |

Return to Case Summary

Approved, SCAO

| | |
|---|---|
| Original - Court | 3rd copy - MI State Police CJIC |
| 1st copy - Corrections | 4th copy - Defendant |
| 2nd copy - Corrections (for retu... | 5th copy - Prosecutor |

| STATE OF MICHIGAN<br>30TH JUDICIAL CIRCUIT<br>INGHAM COUNTY | JUDGMENT OF SENTENCE<br>COMMITMENT TO<br>DEPARTMENT OF CORRECTIONS | CASE NO<br>16-001064-FH-C30 |
|---|---|---|

| ORI: MI-330055J | Court Address | Court Telephone No. (517) 483- |
|---|---|---|

6500    Police Report No.                    313 W. Kalamazoo Lansing, MI 48933

| THE PEOPLE OF THE STATE OF MICHIGAN | V | Defendant name, address, and telephone no.<br>TUNC URAZ<br>1250 HASLETT RD #10<br>HASLETT, MI 48840 |
|---|---|---|

| | | CTN/TCN<br>331600740501 | SID<br>5235046K | DOB<br>10/02/1967 |
|---|---|---|---|---|

| Prosecuting attorney's name \ Bar no.<br>CAROL SIEMON  P32946 | Defendant attorney's name \ Bar no.<br>JACOB A PERRONE  P71915 |
|---|---|

## THE COURT FINDS:

1. The Defendant was found guilty on 11/09/2017 of the crime(s) stated below.

| Count | CONVICTED BY | | | DISMISSED BY* | CRIME | CHARGE CODE(S)<br>MCL citation/PACC Code |
|---|---|---|---|---|---|---|
| | Plea* | Court | Jury | | | |
| 1 | | | G | | STALKING AGGRAVATED | 750.411I |
| | | | | | | |
| | | | | | | |
| | | | | | | |

*For plea: insert "G" for guilty plea, "NC" for nolo contendere, or "MI" for guilty but mentally ill.  For dismissal: insert "D" for dismissed by court or "NP" for dismissed by prosecutor/plaintiff.

☐ 2.  The conviction is reportable to the Secretary of State under MCL 257.625(21)(b).                    Defendant's driver's license number
☐ 3.  HIV testing and sex offender registration are completed.
☐ 4.  The defendant has been fingerprinted according to MCL 28.243.
☐ 5.  A DNA sample is already on file with the Michigan State Police from a previous case. No assessment is required.

## IT IS ORDERED:

☐ 6.  Probation is revoked.
7.  Participating in a special alternative incarceration unit is ☐ prohibited. ☐ permitted.
8.  The defendant is sentenced to custody of the Michigan Department of Corrections.  This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM | | | MAXIMUM | | DATE SENTENCE BEGINS | JAIL CREDIT | | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Years | Mos. | Days | Years | Mos. | | Mos. | Days | |
| 1 | 01/24/2018 | | 36 | | | 90 | 01/24/2018 | | 453 | Concurrent to Sentence in #16-1065-FC |
| | | | | | | | | | | |
| | | | | | | | | | | |

☐ 9.  Sentence(s) to be served consecutively to (If this item is not checked, the sentence is concurrent.)
☐ each other. ☐ case numbers _____ .

10.  Defendant shall pay:

| State Minimum | Crime Victim | Restitution | DNA Assess. | Court Costs | Attorney Fees | Fine | Other Costs | Total |
|---|---|---|---|---|---|---|---|---|
| $68 | $130 | $ | $60 | $700 | $600 | $100 | $ | $1,658 |

The due date for payment is January 24, 2018.  Fine, costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty         on the amount owed.
☐ 11.  The concealed weapon board shall  ☐ suspend for         days  ☐ permanently revoke  the concealed weapon license, permit number                     , issued by                     County.
☐ 12.  The defendant is subject to lifetime monitoring under MCL 750.520n.
13.  Court recommendation:  **Concurrent to Sentence in #16-1065-FC**

January 24, 2018
DATE                                                        Judge CLINTON CANADY III    Bar no. P23262

I certify that this is a correct and complete abstract from the original court records.  The sheriff shall, without needless delay, deliver the defendant to the Michigan  Department of Corrections at a place designated by the department.

(SEAL)

Deputy Court Clerk, DIANE CHILLERS

CC 219b (3/16) **JUDGMENT OF SENTENCE, COMMITMENT TO DEPARTMENT OF CORRECTIONS**

MCL 765.15(2), MCL 769.1k, MCL 769.16a, MCL 775.22,
MCL 780.766, MCR 6.427

# Court of Appeals, State of Michigan

## ORDER

| | |
|---|---|
| People of MI v Tunc Uraz | Thomas C. Cameron<br>Presiding Judge |
| Docket Nos.   343695; 343696 | Douglas B. Shapiro |
| LC Nos.   16-001064-FH; 16-001065-FC | Anica Letica<br>Judges |

The motion for reconsideration is DENIED.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

February 22, 2023

Date

Chief Clerk

Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4254B01
Date: 01/30/2023 19:55:37

Please do not reply to this email

*1)RECONSIDERATION

STATE OF MICHIGAN
COURT OF APPEALS

PLAINTIFF:

PEOPLE OF THE STATE OF MICHIGAN

RECEIVED

2023 FEB -7 AM 11: 06

COURT OF APPEALS
LANSING OFFICE

V.                           COA#'s343695, 343696
                 30th.Cir. Ct.LC#'s 16-00164-FH,16-001065-FC

DEFENDANT

TUNC URAZ
-------------------------/

***ORAL ARGUMENT REQUESTED***

MOTION FOR RECONSIDERATION BRIEF  PER MCR 7.215 (I) FOR PEOPLE V. URAZ 2023 MICH APP 487, 01/19/2023

MOTION FOR REMAND GINTHER HEARING TO EXPAND THE RECORD ABOUT HIS ATTORNEY'S MENTAL ILLNESS GOING BACK TO 2015.

MR. JACOB A. PERRONE'S (P71915) HAD A MENTAL IMPAIRMENT HISTORY BEFORE TRIAL,  DURING TRIAL AND AFTER TRIAL.

NOW COMES THE DEFENDANT MR. TUNC URAZ PER PER AND MOVES THIS HONORABLE COURT TO GRANT RECONSIDERATION AND HONOR THE NEWLY DISCOVERED/AVAILABLE EVIDENCE OBTAINED FROM OAKLAND COUNTY PROBATE COURT PER PROSECUTOR JONATHAN C. ROTH'S TESTIMONY DURING GINTHER HEARING ON 04/13/2022. (see pg.20 lines 20-25, pg.21 lines 1-3)

COURT OF APPEALS IGNORED/DID NOT PAY ATTENTION DEFENDANTS' ACTUAL/REAL EVIDENCES AND HIS BRIEF SUBMITTED ON 11/17/2022 DEFENDANTS' SUPPLEMENTAL STANDARD 4 AND ITS ATTACHMENTS BASED ON WHEN DEFENDANT MANAGED TO PUT 21 ISSUES ON RECORD DURING HIS TESTIMONY ON 04/13/22, PGS. 26-63)

DURING SENTENCING ON 01/24/2018 DEFENDANT MANAGED TO PUT 16 ISSUES AGAIN ON THE RECORD (see pgs 23-35) SINCE HIS SENTENCING ATTORNEY KEPT SAYING (D. SILVERTHORN) HE WAS NOT AT THE TRIAL AND HE DID NOT KNOW, WHAT IS BEING DISCUSSED.

THIS IS WHY DEFENDANT HAS A RIGHT TO "RECONSIDERATION APPEAL"  TO CORRECT THE MISCONCEPTIONS AN

DEFENDANT WISHES THAT JUDGES AND THEIR LAW CLERKS PAY ATTENTION TO DETAILS OF THE CASE

AND TRANSCRIPTS.

MICHIGAN LAW IS CLEAR THAT REMAND/REVERSE/VACATE OF CONVICTION CAN ONLY BE GRANTED IF NEW EVIDENCE IS SHOWN TO THE COURT, EVIDENCE THAT COULD NOT HAVE BEEN OBTAINED BY DUE DILIGENCE ON THE IN THE ORIGINAL PROCEEDINGS. IT IS NOT SUFFICIENT TO MAKE AN ALLEGATION THAT THERE IS A NEW EVIDENCE, BUT IT MUST ALSO BE PROVEN THAT THE NEW EVIDENCE; DISCOVERY OF EXCULPATORY EVIDENCE.

HERE ARE THE FACTS OF THIS APPEAL BASED ON TRANSCRIPTS:

ELEMENTS OF THE SOLICITATION TO MURDER; (used in 12/01/2016 and 12/13/2016 prelim. exam)

IN PEOPLE V VANDERLINDER, 192 MICH APP 447 (1992); A SOLICITATION TO MURDER OCCURS WHEN THE SOLICITOR:

a) "PURPOSELY SEEKS" TO HAVE SOMEONE KILLED AND..
b) "TRIES TO ENGAGE" SOMEONE TO DO THE KILLING

JACOB A. PERRONE WAS MY COURT APPOINTED ATTORNEY UNTIL 12/14/2017 SEE ATTACHED E-MAIL MESSAGE FROM 30TH. CIRCUIT COURT CLERK LEIGH ANN WHIPPLE DATED 12/14/2017 APPOINTING DUANE SILVERTHORN AS A SENTENCING ATTORNEY ONLY

PERRONE COULD NOT HAVE REPRESENTED DEFENDANT FOR 12/12/2017 AND 12/13/2017 HEARINGS, WHERE PERRONE REPRESENTED HIS OWN INTERESTS NOT DEFENDANTS/ DEFENDANT DID NOT HAVE A 'CONFLICT FREE ATTORNEY" DURING THOSE HEARINGS TO PROTECT HIS SIXTH AMEND. RIGHTS, DEFENDANT NEVER AGREED PERRONE TO REPRESENT HIM BECAUSE HE NEVER CAME TO JAIL TO ASK MY OPINION (see jail logs)

Perrone could not have "helped" Silverthorn because he was still going through court ordered Mental health treatment for 80 days per Oakland county Judges order on 11/30/2017 (see attached)

I AM NOT SURE WHY COA WOULD NOT ACKNOWLEDGE PERRONE'S MENTAL ILLNESS GOING BACK TO 2015

1) BASIC FACT AND PROCEDURAL HISTORY

DEFENDANT WAS IN JAIL BETWEEN 08/23/2016-08/25/2016 AND REMANDED HIMSELF TO JAIL PERMANENTLY STARTING ON 08/31/2016 TO START HIS PRESUMED JAIL SENTENCE (width the recommendation of his attorney then Chris Bergstrom)

HE DID NOT COME TO JAIL "PURPOSEFULLY" TO SEEK/ENGAGE ANYONE TO HURT ERIKA MELKE (EM) . HE HAD PLEA DEAL FOR HIS FIRST STALKING CHARGE TO 0-3 MONTHS IN JAIL AND HE WAS SUPPOSE TO MOVE BACK TO TURKEY TO BE WITH HIS FAMILY

HE DIDN'T DO ANY TELEPHONE AND COMPUTER ACTIVITIES BEFORE OR AT JAIL. SEE ATTACHED JAIL PHONE LOGS. SECOND STALKING CHARGE WAS BASED ON PERJURY BY EM, BOTCHED LANSING POLICE, INGHAM COUNTY JAIL AND JAILHOUSE INFORMANTS' PROSECUTORS' FABRICATED STORIES. (EVIDENCE WAS SENT ON 01/17/2017 W/ SUPP STAND.4)

DEFENDANT WAS PUT IN SOLITARY CONFINEMENT FOR ALLEGED PHONE CALL TO MELKE ON 09/01/2016 FOR MONTH, WHEN JUDGE PUT HIM ON "PHONE RESTRICTIONS" INDEFINITELY FOR SOMETHING HE DID NOT DO (see jail phone logs)

FOR 1 MONTH HE WAS PUT IN A SOLITARY CONFINEMENT (ACCORDING TO U.N. MANDELLA PRISONERS' RIGHTS STANDARD ANYTHING MORE THAN 15 DAYS OF SOLITARY CONFINEMENT IS CONSIDERED A

To : Information Services
Date : 1/30/2023 7:55:16 PM EST   Letter ID: 1688353049
Location : MCF
Housing : UNIT 4254B01

TORTURE)
see:
https://silenced.in/michigan/voices/tunc-uraz
www.yahoo.com/entertainment/hung-myself-prisoner-share-tales-1740221194.html

DEFENDANT WAS TAKEN OUT OF SOLITARY CONFINEMENT AFTER A MONTH AND PUT IN THE SAME "CELL" WITH JAILHOUSE INFORMANTS ON PURPOSEFULLY. (C. ALLEN AND R. CLOSE) see Jail movement records

DEFENDANT WAS EXTORTED AND HIS JOURNAL INCLUDING A MAP THAT HE KEPT WAS STOLEN FROM HIM BY THESE JAILHOUSE INFORMANTS AND USED AGAINST HIM BY FABRICATING THEIR OWN STORIES TO BENEFIT THEMSELVES.
(see jail "CATS" substance abuse Therapist TIM HELD report ABOUT DEFENDANT'S JOURNAL)

JACOB A. PERRONE WAS DEFENDANT'S COURT APPOINTED ATTORNEY FOR SOLICITATION CASE ON 11/16/2016 BUT WHEN DEFENDANT DECIDED TO HIRE ANOTHER ATTORNEY (MICHAEL NICHOLS), PERRONE WAS SWITCH TO SECOND STALKING CHARGE WITHOUT DEFENDANT'S CONSENT (Perrone forged def. initials on the sub form without defendants' consent)see attached.

MCR 9.121(C) INVESTIGATING MENTALLY IMPAIRED ATTORNEYS
THE MAJOR FLAW OF SUBSECTION (C) IS THAT SOLE PRACTITIONER ANSWERING  THEIR OWN GRIEVANCES WHO MAY SUFFER FROM A MENTAL DISABILITY MAY NOT RECOGNIZE THAT HE OR SHE EVEN HAS A DISABILITY WHICH MAY MITIGATE THE ALLEGED MISCONDUCT. THE FRIGHTENING ASPECT OF CLINICAL DEPRESSION IS THAT; IT HAS USUALLY LASTED SUCH A LONG TIME THAT IT BECOMES THE NORM AND IS RECOGNIZED BY THE PERSON AND OTHERS AS "NORMAL"

Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4254B01
Date: 01/30/2023 19:56:09

Case 1:25-cv-00669-DK-DRG   ECF No. 10-29, PageID.1921   Filed 09/08/25   Page 42 of 150

Please do not reply to this email

*2) RECONSIDERATION

ALTHOUGH THIS IS NOT THE VENUE TO BRING UP (INEFFECTIVE ASSISTANT OF APPEAL COUNSEL) IAAC . MS SUSAN K. WALSH.
DEFENDANT TRIED TO GET HELP HIS FOR APPEAL COUNSEL FROM THE POINT GINTHER HEARING GRANTED TO DEFENDANT ON 03/06/2020.

DEFENDANT WROTE TO SADO AND ASKED FOR ASSISTANCE FOR MS. WALSH TO HELP HER WITH GINTHER HEARING FOR A UNIQUE CASE LIKE THIS BUT HE WAS TOLD THAT, SHE IS AN EXPERIENCED ATTORNEY BY SADO.

SHE  FAILED TO BRING AN MENTAL HEALTH EXPERT TO TESTIFY ABOUT "UNTREATED, UNMEDICATED, UNDIAGNOSED BIPOLAR DISORDER". SHE ONLY HIRED A PRIVATE INVESTIGATOR WHOM ASKED ATTORNEY'S ABOUT THEIR PERCEPTION OF PERRONE'S MENTAL ILLNESS. SHE FAILED TO PUT MANY TRIAL ISSUES AS WELL  FOR REMAND MOTIONS THAT SHE FILED.

Defendant choose "in person hearing" because," the kind of hearing (zoom-video) is "dehumanizing" and it would resemble the defendant as a "cartoon character" more than a real person provides implicit psychological platform for the judge prosecutor and attorney to abandon any "emphaty" he might have otherwise exhibit towards defendant regardless of evidence or lack thereof.
Defendant would be mere spectator to the process, one's representation may suffer by the wholesale deprivation  of legal assistance at this (zoom-video) hearings. "Mute" button on the microphone is controlled by court where defendant could have put everything on record.

2) JOINDER AND OTHER ACTS

 THERE WERE NO AREA OF OVERLAPPING PROOFS BETWEEN THE TWO CASES. THE OFFENSES DO NOT SHARE ELEMENTS OR THE OFFENSE DATE. THEY DO NOT SHARE WITNESSES. DEFENDANT IS THE ONLY COMMON THREAD BETWEEN THE TWO CASES.

STALKING IS NOT A ELEMENT OF SOLICITATION TO MURDER.
JOINING  THE CASES WERE MORE PREJUDICIAL THAN PROBATIVE UNDER MRE 403, WHERE IT DISTRACTED, CONFUSED, INFLAMED THE PASSIONS OF THE JURORS DURING #"MEETOO" MOVEMENT IN 2017

THE PROSECUTOR'S  THEORY OF THE CASE :
11/09/2017 CLOSING ARGUMENT Pg.160  "FALSITY OF INFERENCES"
"HE WANTS THE GUN BECAUSE HE IS DESPERATE BECAUSE IF HE CANT HAVE MELKE NOBODY CAN"

THE FALLACY OF  STATE'S POSITION MAY MOST BE STATED AS A SIMPLE ALGEBRAIC EQUATION, ACCORDING TO PROSECUTION'S MATHEMATICS IF CRIMINAL INTENT:

A= MSU ATTEMPTED GUN INCIDENT
B= STALKING
C= SOLICITATION TO MURDER

SO THIS MEANT  > A=B=C  > THEREFORE  A=C

THIS IS NOT A RIGHT LOGIC TO FOLLOW AND WRONG EQUATION.

DEFENDANT ACKNOWLEDGES THAT HE ATTEMPTED TO PURCHASE GUN AND ACTED IN A STALKING MANNER, ADMISSIBLE EVIDENCE OF HIS DESIRE TO PURCHASE A GUN TO COMMITT SUICIDE BUT IT WAS "NOT" CONCLUSIVE PRESUMPTION OR PROOF THAT HE SOLICITED MURDER.

THIS CRATED A COMPOUNDED CONFUSION ON JURY.

3) BRADY VIOLATION

MICHAEL NICHOLS AND JACOB PERRONE REQUESTED BRADY INFORMATION IN NOVEMBER 2016 AND FEBRUARY OF 2017.
BASED ON LANSING POLICE REPORT #LLA161027011556 (10/27/2016)  PG.4 POLICE AGENT R. CLOSE "AS RECENTLY HAD BEEN PROFFERED BY LANSING POLICE DETECTIVES LEWANDOSKI AND HOGAN REGARDING TO ANOTHER CASE BEFORE DEFENDANT'S (JOHN PIERCE AND CHRIS SHENBERGER CASE IN AUGUST 2016)

PER BASED ON DETECTIVE HOGAN'S TESTIMONY ON 11/06/2017  PG.114-116 CONFIRMS THAT R. CLOSE HAS BEEN JAILHOUSE INFORMANT ON OTHER CASES.

FOOTNOTE #4 AS THE BRIEF TALKS ABOUT THAT BRADY MATERIAL GIVEN TO PERRONE "late last week" IS LIE BECAUSE 0N 10/26/2017 Thursday (trial start day was changed by Prosecution on 10/11/2017 to 10/30/2017 and again 10/31/2017)
PERRONE BY THE FORCE OF JUDGE (because Perrone has not contacted anyone until than on witness list)  TO CONTACT JOHN PIERCE (MDOC INMATE) VIA ZOOM AT PROSECUTOR OFFICE WHERE PIERCE TOLD PERRONE THAT REGINALD CLOSE WAS PROFFERING ON HIS CASE AND ON OTHERS AS WELL.(see 10/20/2017 Evid. Hear. pgs 124-147)

ALTHOUGH DEFENDANTS' ATTORNEYS THEN NICHOLS AND  PERRONE BOTH REQUESTED BRADY MATERIAL INFORMATION IN NOVEMBER OF 2016 AND AGAIN AFTER BIND OVER IN FEBRUARY OF 2017, BUT IT WAS IGNORED BY PROSECUTION AND PROS. ROTH'S  RESPONSE WAS :I just came in contact with this "notes" Tuesday 10/31/2017" (see 11/02/2017 second day of T.T. pgs 4-11, and also where judge denied other proffers given to Reginald Close dating back to 2011 due to not being close proximity) so again this proves and R.CLOSE has been a police agent for a long time. (see attached proffer letter)

4)ENTRAPMENT

ELEMENTS OF THE SOLICITATION TO MURDER;
IN PEOPLE V VANDERLINDER, 192 MICH APP 447 (1992); A SOLICITATION TO MURDER OCCURS WHEN THE SOLICITOR:
a) "PURPOSELY SEEKS" TO HAVE SOMEONE KILLED AND..
b) "TRIES TO ENGAGE" SOMEONE TO DO THE KILLING

DEFENDANT WAS PURPOSELY SOUGHT AND ENGAGED BY JAIL HOUSE INFORMANTS AND U/C POLICE

JUDGE CANADY "YOU CANT ARGUE SIMULTANEOUSLY,  DENY THE COMMISSION OF THE CRIME AND ASSERT THE DEFENSE OF ENTRAPMENT, (SEE PG.108 10/20/2017)

JUDGE  MADE A "SUBJECTIVE DECISION", NOT "OBJECTIVE" BY USING A WRONG CASE AS AN EXAMPLE PEOPLE V JONES 48 MICH APP 33 (1974) (in the middle of the trial defense attorney claimed entrapment in a drug case)

HOWEVER IN MATHEWS V. UNITED STATES 465 U.S. 88 (1988) (LE HN 4b) BY SCOTUS AGREED THAT ACCUSED CAN DENY THE COMMISSION OF CRIME AND ENTRAPMENT SIMULTANEOUSLY (long standing entrapment defense rule was ABROGATED)

A CLAIM OF ENTRAPMENT IS DISTINCT FROM OTHER DEFENSES SUCH AS INSANITY, SELF-DEFENSE, A LACK OF SPECIFIC INTENT WHICH INVOLVE AN ASSESSMENT OF GUILT OR INNOCENCE

A CLAIM OF ENTRAPMENT DOS NOT INVOLVE AN ASSESSMENT OF GUILT OR INNOCENCE, BUT RATHER EXPRESSES POLICY THAT THERE SHOULD BE NO PROSECUTION AT ALL. PEOPLE V. ALVIN JOHNSON 396 MICH 424 (1976)

SEE POLICE REPORT LLA #161027011556 pgs 7-12 and the video transcript that Det.Mobley used "ruff" name first at the video call and def. went along with it because Reginald Close's nick name confirmed as is ROUGH see trial trans. 11/03/2017 pg. 131 lines 10-13
and on 12/1/2016 and 12/13/2016 prelim hearings no one confirmed, indicated R. Close's nick name being "Rough" or "Ruff" or who had that name? So there was no proper identification done at all.

Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UN-7 325-3 Bot
Date: 01/30/2023 19:50:07

Case 1:23-cv-00254-RJJ-SJB   ECF No. 1-1   PageID.1924   Filed 09/08/25   Page 45 of 150

Please do not reply to this email

*3) RECONSIDERATION

The Johnson standards (466 Mich 491) confirms reprehensible actions by Mobley, FACT he set up the account contacted defendant first on 10/19/2016 when def. was still in the same pod with CLOSE and ALLEN, this is why Mobley cancelled the video visit (see attached jailhouse movement for CLOSE) BOTH CONFIRMED POLICE AGENTS.
HERE ARE THE REPREHENSIVE Police actions
1)Mobley acted like friend to R. CLOSE and to def. and C. Allen was watching the video visit 6 feet behind the defendant
2) unreliable jailhouse informants police interviews and their fabricated stories accused def. for the crime charged, DEFENDANT WAS PUT IN THE SAME CELL WITH INFORMANTS the day that search warrant signed by prosecution/magistrate 09/27/2016 based on false/missing information, defendant was housed with them for 4 weeks 09/27/16-10/28/2016 which paved the way for solicitation charges, since search warrant was an initiation of a judicial act defedant's SIXTH AMED. right to counsel was violated
4) & 5)&7)&9) Mobley's police report; he says more than 25 time "I asked Mr. Uraz, he was rude and used a foul language, THREATS AND PRESSING the def. (SEE ATTACHED POLICE REPORT AND MOBLEY VIDEO VISIT TRANS).
10) MOBLEY SET UP THE ACCOUNT, CONTACTED DEF, DID ALL THE INDUCEMENTS, THREATS, OFFERINGS, CODED LANGUAGE WHICH ESCALATED, THE CRIMINAL CULPABILITY OF THE DEFENDANT (ENGLISH IS DEFENDANT'S SECOND LANGUAGE)
11) THERE WAS A POLICE CONTROL OVER INFORMANTS( R. CLOSE AND C. ALLEN)
 12) INVESTIGATION WAS TARGETED "PURPOSEFULLY" TOWARDS THE DEFENDANT.


5) INEFFECTIVE ASSISTANCE OF COUNSEL

"INEXPLICABLY INCOMPETENT" STANDARD

WHICH IS A CRONIC STANDARD BEING ABSENT MENTALLY AND PHYSICALLY (3 TIMES JAIL VISIT ONLY)

U.S V CRONIC 466 US 648 (1984)

the time afforded for investigation and preparation; PERRONE DID NOT DO ANY INVESTIGATION, DEFENDANT SENT HIM MANY LETTERS SINCE HE WAS APPOINTED TWO CASES IN MARCH 2017, HE DID NOTHING UNTIL LAST WEEK BEFORE TRIAL STARTED
the experience of counsel, IT WAS HIS FIRST CAPITAL CASE (see Ginther hearing trans. 10/04/2017 pg. 11 lines 1-17
the gravity of charge DEFENDANT WAS CHARGED WITH SOLICITATION WITH MURDER (3 COUNTS) AND (1 COUNT) OF AGGV. STALKING ON A JOINED TRIAL
the complexity of possible defenses MANY COMPLEX ISSUES AND TECHNICAL ISSUES (IP ADDRESSES) THAT PERRONE DIDN'T INVESTIGATE
the accessibility of witnesses to counsel DEFENDANT SENT HIM 30 NAMES IN APRIL 2017 AND HE DID NOT BOTHER TO INTERVIEW ANY OF THEM UNTIL LAST WEEK BEFORE TRIAL AND ONLY MDOC INMATES WITH THE HELP OF PROSECUTOR'S OFFICE (see 10/20/2017 Evidentiary hearing pg. 124-147) because he did not get paid last time from the county and expected prosecutor to subpoena them

THE COA ERRED IN UTILIZING AND INFERENTIAL APPROACH IN DETERMINING  WHETHER DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL HAD BEEN VIOLATED

A) COUNSEL'S MENTAL ILLNESS

SEE ATTACHED OPEN LETTER TO COA JUDGES

DEFENDANT PROVED THAT PERRONE HAD MENTAL ILLNESS:

> BEFORE HIS TRIAL
> DURING HIS TRIAL
>AFTER HIS TRIAL


BASED ON ROTH'S TESTIMONY ON 04/13/2022 PG. (see pg.20 lines 20-25, pg.21 lines 1-3)

AND BASED ON 12/18/2017 DOCS SENT TO SILVERTHORN

AND

PERRONE ADMITTED THAT HE WAS UNDIAGNOSED, UNTREATED, UNMEDICATED FOR BIPOLAR DURING TRIAL AND BEFORE  DURING HIS TESTIMONY ON 12/12/2017 IN JUDGES' CHAMBERS
see 12/12/2017 trans. pg 7 lines4-9
"I AM BIPOLAR AT THIS POINT IN TIME, I'M APPROPRIATELY MEDICATED"

SO ACCORDING TO COA BRIEF SUBMITTED ON 01/19/2023, IT ONLY FOCUSES ON PERRONE'S MENTAL ILLNESS AFTER TRIAL AND HIS PERJURED TESTIMONY

PERRONE HAD MENTAL ISSUES GOING BACK TO 2015  SEE PRT FROM FILLED BY PERRONE'S FATHER DATED 11/14/2017
(see attached)

THE MENTAL ILLNESS RECORDS COULD NOT HAVE BEEN ADMITTED    AT GINTHER HEARING BECAUSE NONE OF THE DOCS. WERE SHARED WITH DEFENDANT AND HIS APPEAL ATTORNEY.


DEFENDANTS' FIRST STANDARD 4  (APRIL 2019) BRIEF INCLUDED ;

>PERRONE'S FIRST MENTAL HOSPITAL STAY 11/14/2017 (HIS MEDICATION AND ADMISSION DOCUMENTS) it was given to defendant on 12/13/2017 by Perone.
>HIS CRAZY TEXT MESSAGES TO HIS SISTER BETWEEN 11/13/2017-12/06/2017,  HIS CRAZY EMAIL MESSAGE TO HIS SISTER DURING TRIAL DATED 11/08/2017
>PERRONE WAS GRIEVED TO ATTORNEY GRIEVANCE COMMISSION (AGC # 18-956) APRIL 2018, BY DEFENDANT.

AS THE BRIEF SUGGESTS THAT, I AGREED TO CONTINUE WITH PERRONE WHEN I ACKNOWLEDGED JUDGE THAT I AM OK WITH THE SWITCH OF ATTORNEYS, PLEASE SEE THE TRANSCRIPT ON THE 12/13/2017, I ONLY AGREED WHAT I WAS TOLD BY JUDGE, REGARDLESS, PERRONE COULD NOT HAVE REPRESENTED ME BECAUSE ;


1) HE WAS ORDERED TO GO TO MENTAL HEALTH TREATMENT WITH COMMUNITY MENTAL HEALTH ON 11/30/2017 BY OKLND COUNTY JUDGE FOR 80 DAYS AND 10 DAYS IN A MENTAL HOSPITAL

2) SEE THE ATTACHMENT #8 SENT BY M. CRINO RESPONSE TO GRIEVANCE FILED IN OCTOBER 2022


(SEE ITEM d) PERRONE WAS ALSO GRIEVED BY AN UNKNOWN PROSECUTOR ON 12/11/2017 AND PERRON WAS AN APPOINTED ATTORNEY FOR THAT CASE ABOUT TO GO TO  TRIAL IN DECEMBER 4th 2017,

HOWEVER PLEASE SEE THE ATTACHED FILE LABELED 12/11/2017 AND PLEASE READ ENTIRE DOC. TO UNDERSTAND REALITY AND SERIOUSNESS OF THE SITUATION

on 11/21/2017 this unknown Ingham county prosecutor met with an unknown judge in his chambers with Eric Schroeder (Perrone's "legal associate"  and Tiffany DeBruin who was acting as Mr. Perrone's representative, they both told judge that Perrone had been "hospitalized" so therefore judge postponed the trial to April 23 2018 and REMOVED PERRONE ATTORNEY AND REQUESTED ANOTHER ATTORNEY TO BE APPOINTED

3) PER SILVERTHORN'S TESTIMONY ON 10/04/2021, PG 57, WHEN HE MET PERRONE AFTER THE HEARING " HE WAS AGITATED, RAMBLING, DIFFICULTY FOCUSING AND HIS RESPONSE TO PRIVATE INVESTIGATOR IN SEPTEMBER 2021, PERRONE WAS ACTING LIKE A "AMPHETAMINE USER" NON-STOP TALKER ALMOST "PATHOLOGICALLY" SEEMED TO BE FLYING

FOR ALL THE REASONS ABOVE AND MORE PERRONE COULD NOT HAVE "HELP" SILVERTHORN DUE TO HIS MENTAL TREATMENT

*4) RECONSIDERATION

C) INVESTIGATION AND CALLING OF WITNESSES D) OTHER ALLEGATIONS

HIS CROSS- EXAMINATION OF WITNESSES WAS FLAWED BECAUSE HE NEVER DID ANY INVESTIGATION NOR LOOKED AT THE HARD EVIDENCE I AND MY FAMILY PROVIDED HIM WITH.

HE DID NOT TALK TO 30 WITNESSES THIS IS PERJURY SEE
10/20/2017 EVIDENTIARY HEARING TRANS, PGS 124-147
SINCE HE DID NOT GET PAID LAST TIME FROM COUNTY TO PRIOR CASE PG. 129, EVEN JUDGE SAID "BECAUSE YOU WERE NOT ADEQUATELY COMPENSATED OR DID NOT GET PAID, SO YOU WAITED UNTIL ONE DAY BEFORE THIS HEARING?"PG. 130,131

HE WANTED PROSECUTION BRING IN DEFENSE WITNESSES 10 DAYS BEFORE TRIAL COMMENCED, HE DID NOT EVEN KNOW WHO IS WHO ON THE LIST. PROSECUTION HAD TO SENT 3 REQUESTS TO PERRONE TO GET A LIST, FORCED PERRONE TO AMEND WITNESS LIST SINCE HE WAS LATE TURNING IT IN. PERRONE NEVER ASKED ME WHO IS WHO ON THE LIST.

SEE T.T. 10/31/2017 PG 32-37

MR. BURAK ATAMER, DEF. ROOMMATE WAS NOT BROUGHT IN TO TESTIFY BECAUSE PERRONE NEVER REACHED OUT TO HIM.
this is the person deposited money to R.Close's jail account on 10/13/2016,  because he was extorting def. for  the contents of his journal that he stole from def. Mr. Uraz was trying to protect Melke not hurt her, he was scared of her and his life from these criminals.

PG 45  PERRONE READ NAMES TO POTENTIAL JURORS HE NEVER BOTHERED TO CONTACT( MR. CIHAT OZ, (he was with def. 10/31/2015 out of town restaurant incident, def. did not do any damages) Tim Horan (P/I hired by atty. Nichols where he discovered some dirt about R.Close's crime/trial where his victim did not show up to trial because she was scared of him), Ashley Close (R.Closes' wife she was beaten up by CLOSE), Cathy EDMOND (DEFENDANT'S NEIGHBOUR SHE WAS CONTACTED BY POLICE ONLY ON 10/24/2017 see attached entry report # 11556),  ANDREW NITCHMEN,(Melke neighbour) JACKIE CLOSE (brother of CLOSE)

11/02/2017 VOIR DIRE ODD QUESTIONING BY PERRONE  FOR JURY SELECTION SEE PGS 21-28,  32-33, 50-52, ALL THIS CONDESCENDING QUESTIONS UPSET TURNED THE JURY OFF

11/03/2017 pg. 163-165  prosecutor asking Perrone if he is going to call any of the witnesses above if so they all needed attorneys
since Jackie Close is in Arkansas than Perrone asks for extra ordinary expenses to bring him up in the middle of the trial (Friday 4:00pm)

AND SEE TRIAL.TRANS. 11/06/2017  pg.170-172, no writs were sent to MDOC TO BRING IN INMATES TO TESTIFY, HE FORGOT TO SEND THEM AND HE WAS TALKING ABOUT CLOSING ARGUMENTS THEN BRING THE INMATES..

11/07/2017 PG 59-60 LINES 22-25, PERRONE WAS NOT CONFERING WITH ME HE WAS SUFFERING FROM HEIGHTENED MENTAL  GRADATIONS DUE TO HIS UNTREATED BIPOLAR DISORDER AND AS IT READS IN THE 11/14/2017 PSYC. DR. GLICK REPORT ITEM #6  PERRONE HAD A AMPHETAMINE (ADDEROLL) INDUCED BIPOLAR DISORDER. THIS CANNOT BE A "TRIAL STRATEGY"

11/09/2016  PERRONE FAILED TO CALL KENNETH MCDANIELS TO TESTIFY WHEN HE WAS READY TO DOWNSTAIRS ( HE WAS IN THE SAME CLASSWITH R. CLOSE WHERE R.CLOSE TOLD HIM HOW HE FABRICATED THE WHOLE STORY TO GET BETTER DEAL IN WITH HIS CHARGES.

pg.52-59 motions for a directed verdict  LAST DAY OF TRIAL WITH NO NEW EVIDENCE

PG 135 Perrone ODD CLOSING ARGUMENTS, SEE pgs 135-142 (I DONT HAVE TO PRESENT ANY EVIDENCE IT'S STATE BURDEN....)

PLEASE STOP REFERRING JAILHOUSE INFORMANTS CRIMINAL BACKGROUND AS "MISDEMEANORS" I HAVE ATTACHED THEIR CRIMINAL BACKGROUNDS TO MY 11/17/2022 SUPP. STAND. 4 BRIEF AND I AM ATTACHING ANOTHER R.CLOSE'S COURT DOCS. TO THIS BRIEF AS WELL.

PERRONE INCIDENTS/DELUSIONS

10/20/2017 PG 144 PERRONE AND ROTH STARTED YELLING AT EACH OTHER

11/07/2017 PG 170 LINE 6-8 ROTH TO PERRONE

11/09/2017
PG 123 VERBAL ARGUMENT WITH PERRONE AND ROTH
PG.131 ASKING JUDGE ABOUT DET. KRUMBACH
"IF HE IS GOING TO LAUGH AT ME AGAIN? ALL HE DOES IS LAUGH!"

YELP.COM REVIEW ABOUT PERRONE'S BEHAVIOUR DURING TRIAL BY AN SPECTATOR....ANGEL R. 11/10/2017

B) DEFENDANT'S MENTAL STATE

I PROVIDED ALL THE COPIES OF MY MENTAL STATE DOCS INCLUDING FMLA PAPERS WHICH WERE SIGNED BY DR. SHARON HOBBS OF EAST LANSING, I TOLD MY ATTORNEY THEN TO MICHAEL NICHOLS IN NOVEMBER 2016 AND PERRONE IN APRIL 2017 TO SEND ME TO FORENSICS CENTER AND I ALSO TOLD MY APPEAL ATTORNEY WHEN I SUBMITTED MY STANDARD 4 IN APRIL,
AS ALL COURT APPOINTED ATTORNEY TRIAL AND APPEAL "MINIMAL" APPROACH IS A STANDARD BECAUSE OF MONEY GET PAID IS DIRECTLY CORRELATED WITH THE AMOUNT OF WORK THEY DO.

SO THEIR LAZINESS SHOULD NOT BECOME MY BURDEN BECAUSE I PROVIDED ALL THE DOUMENTATION TO MS. WALSH FOR GINTHER HEARING SHE HAD ALMOST 2 YEARS TO PREPARE FOR IT
AND PERRONE HAD 10 MONTHS TO PREPARE FOR A TRIAL, HIS MOTION FOR ENTRAPMENT WAS LAST MINUTE BRIEF PREPARED HAPHAZARDLY. NONE OF THEM INVESTIGATED, ANYTHING ABOUT DEFENDANT'S MENTAL ISSUES AND WHAT SOLITARY CONFINEMENT DOES TO ONE'S MENTAL HEALTH.

SO AS A RESPONSE TO YOUR DIMINISHED CAPACITY DEFENSE NOT AVAILABLE AS A DEFENSE IN MICHIGAN.

SEE ATTACHED AMICUS CURIAE SUBMITTED BY DEFENDANT TO MI SUPREME COURT FOR THE CASE TYSON 2022 MICH LEXIS 1142 (2022)

SINCE DIMINISHED CAPACITY DEFENSE IS NOT ALLOWED AS A DEFENSE THEREFORE;

WHY MENTALLY IMPAIRED (DIMINISHED CAPACITY REPRESENTATION) COURT APPOINTED ATTORNEY IS ALLOWED TO REPRESENT INDIGENT DEFENDANTS?

THESE TWO STATEMENTS ARE INTERTWINED WITH EACH OTHER
" IF ONE CANNOT FORM A SPECIFIC INTENT TO COMMIT A CRIME DUE TO MENTAL IMPAIRMENT, HOW CAN ATTORNEY WITH A MENTAL IMPAIRMENT CAN FORM A SPECIFIC INTENT TO DEFEND A DEFENDANT OR HAVE STRATEGY?

AS PERRONE'S STRATEGY "THE DEFENSE OF POLICE OVERREACH BY PERRONE WAS NOT AFFIRMATIVE DEFENSE BECAUSE DEFENDANT DID NOT BEAR THE BURDEN OF NEGATING INTENT"

11/09/2017 PG 3 JURY INSTRUCTIONS BY PERRONE WHICH HE DIDNT FILE LAST DAY BUT FILED ON THE FIRST DAY OF TRIAL BEFORE JURY SELECTION STARTED 10/31/2017 PGS 37-38

BRIEF KEPT SAYING WHY DIDN'T I ASK FOR A CHANGE OF ATTORNEY BEFORE  TRIAL BECAUSE I DIDN'T KNOW MY RIGHTS BACK THEN. AND EVERYONE KEPT TELLING ME DON'T EXPECT FROM INDIGENT ATTORNEYS

Sent by: CAMERON TOPPEN (628934)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4254B01
Date: 01/30/2023 19:55:33

Please do not reply to this email

*5) RECONSIDERATION

6)PROSECUTORIAL ERROR

CLOSING ARGUMENT BY ROTH WAS PURPOSEFULLY ALTERED
ON 11/09/207 JUDGE AND PERRONE AGREED ON
PG. 8 LINE 1-25 -ROTH ; PURPOSEFULLY SEEKING TO HAVE SOMEONE KILLED THAT IS THE INTENT
JUDGE: I' M GOING TO GO WITH THAT

ROTH'S FIRST CLOSING ARGUMENT ON PGS. 114, 115,116 HE CHANGED THE WORDING TO "INTENDED"
FROM "PURPOSEFULLY"
TO CONFUSE THE JURY TO BENEFIT POSECUTION

PERRON OBJECTED ON PGS 120-123 WHY ROTH CHANGED THE WORDING TO "INTENDED"? THEY HAD A
VERBAL ARGUMENT.

PGS 124-127 JUDGE AGAIN CHANGES IT TO "PURPOSEFULLY SOUGHT" WHICH CREATED A PRESUMPTIVE
GUILT ON DEFENDANT.

PG 127 LINE 19-25 JUDGE REFUSES TO GIVE CURATIVE INSTRUCTION ABOUT ALTERED JURY
INSTRUCTION

PG 131 LINE 5-3
PERRONE  PRESERVE THE OBJECTION THAT JURY INSTRUCTION FOR SOLICITATION  TO MURDER
INSTRUCTION IS MISSING AN INTENT ELEMENT FOR COURT OF APPEALS

PG 133 HERE IS THE SECOND ELEMENT READS

"THAT THE DEFENDANT PURPOSEFULLY SOUGHT BY HIS WORDS OR ACTIONS THAT WHAT HE SAID OR
DID WOULD CAUSE REGINALD CLOSE, OR CHARLES ALLEN, AND FRANK MOBLEY OR ANYONE ON HIS
BEHALF KILL MELKE."

THESE ELEMENTS AND THE SUFFICIENCY OF EVIDENCES DID NOT MATCH, BECAUSE IF YOU LOOK THE
CROSS EXAMINATION OF
ALLEN, CLOSE AND MOBLEY THEY ALL SAID THEY INITIATED THE CONVERSATIONS DELIBERATELY TO
GET THE DEFENDANT MAKE INCRIMINATING STATEMENTS.

ROTH MADE JAILHOUSE INFORMANTS LOOK LIKE AN ANGELS TO JURY INCLUDED LIES SUCH AS THEY
NEVER RECEIVED ANY DEALS

(CLOSE AND ALLEN WERE NEVER CHARGED WITH ANY HABITUAL ENHANCEMENT AND CLOSE'S VICTIM
DID NOT SHOW UP TO TESTIFY AT TRIAL YET HER PRELIMINARY EXAM TESTIMONY WAS NOT USED,
R.CLOSE WAS GIVEN PAROLE BECAUSE HE "COOPERATED" WITH LAW ENFORCEMENT

PERRONE FAILED TO BRING IN AN EXPERT WITNESS TO EDUCATE JURY ABOUT JAILHOUSE INFORMANTS
UNRELIABLE FABRICATED TESTIMONY TO FIT THE NARRATIVE OF CRIME AND ALWAYS GET FUTURE
DEALS WHICH IS A VERY UNREGULATED AREA WITH PROSECUTORS, AND COURTS. "IF A PROSECUTOR
AND POLICE ARE WILLING TO LIE ABOUT INFORMANTS HOW CAN THEIR INFORMANTS BE BELIEVED."

7) VIOLATION OF RIGHT TO COUNSEL

THE SEARCH WARRANT FOR "EXPIRED IP ADDRESSES" ISSUED BY MAGISTRATE ON 09/27/2016, WITH POLICE AND PROSECUTOR TRIGGERED THE INITIATION OF JUDICIAL PROCEDURE AGAINST DEFENDANT IN LIEU OF SIXTH AMEND. PROTECTION OF "PROPHYLACTIC" RIGHT TO HAVE A COUNSEL, THEREFORE ANY INCRIMINATING STATEMENTS DEFENDANT MADE TO JAILHOUSE INFORMANTS SHOULD BE SUPPRESSED.

THE ISSUANCE OF A SEARCH WARRANT IS "UNQUESTIONABLY" A JUDICIAL ACT.

 BURNS V REED 500 US 478(1991)
LOMAZ V HENNOSY 151F3 (6TH CIR, 1998)
IRELAND V TUNIS 113F3D1433 (6TH. CIR 1997)
PEOPLE V MARSACK 231 MICH PP 364 (1998)

THIS WAS A "INFERENCE OF FALSITY" SEARCH WARRANT BASED ON EXPIRED AND WRONG IP NUMBERS, WRONG EQUIPMENT,
see 11/03/2017 RICHARD LAING TESTIMONY PG 92-93

THE IP ADDRESSES TRACED TO AN ACTUAL APPLE/MAC ADDRESS MELKE OWNED AN IPHONE(BUT THE SEARCH WARRANT SAID GALAXY PHONE FOR CHANGE FOR INSTAGRAM)
THE PASSWORD CHANGE WAS DONE WITH AN EMAIL BELONG TO MELKE NOT DEFENDANT (RIKA_THINKGREN@HOTMAIL.COM)

3 IP ADDRESSES ALL EXPIRED AND NONE OF THEM MATCHES THE ONES ON SEARCH WARRANT

PERRONE NEVER INVESTIGATED ANY OF THIS, PERRONE SHOWED TO JAIL ON 12/13/2014 AFTER 9:00PM (AFTER ATTY. VISIT HOURS ,HE WILL BE MY SECOND STALKING CHARGE ATTY.) ON 12/14/2017 HE SHOWED UP LATE TO PRELIM HEARING LATE AND BOUND IT OVER BECAUSE HE WAS NOT READY FOR ANY OF THIS EVIDENCE AND HE WAS HIGH ON DRUGS, HE DID NOT HAVE HIS STATE BAR ID WITH HIM, SEE JAIL LOGS.

DELIBERATELY CREATED STANDARD

DEFENDANT WAS PLACED IN THE SAME CELL WITH ALLEN AND CLOSE ON 09/27/2016 - 10/28/2016,
ON SEPARATE OCCASIONS ALLEN AND CLOSE ASKED TO SPEAK TO THE POLICE
09/27/2016 R.CLOSE SENT A LETTER TO HIS ATTORNEY ABOUT DEF. INCRIMINATING STATEMENTS WHICH HE HAS DONE ON TWO OTHER INMATES S WELL,

THE GOVERNMENT VIOLATED THE DEF'S RIGHTS BY "INTENTIONALLY CREATING A SITUATION TO INDUCE, ELICIT
(THE DEFENDANT) TO INCRIMINATING STATEMENTS WITHOUT THE ASSISTANCE OF COUNSEL (US. V HENRY 477 US 264 (1980)

8) EXTRANEOUS INFLUENCE ON JURY

SEE 11/02/217 PG.12-16 BIAS JURY LARRY R. NISHON EXTENSIVELY QUESTIONED BY JUDGE, PROS. ROTH AND PERRONE (pgs 21-23) BECAUSE HE WAS FIRST ONE CALLED FOR VOIR DIRE

pg. 98 line 2-5 after jury sworn in JUDGE TELLS JUROR THAT ALTERNATES WOULD BE CHOSEN BY "DRAW LOTS"

MANIFEST NECESSITY : AFTER JURY SWORN IN ON 11/03/2017 pg.4  BIAS JUROR #1 TELLS COURT THAT HE IS BIASED AGAINST TURKISH PEOPLE UNTIL THAT POINT NO ONE TOLD TO ANY POTENTIAL JURORS THAT DEF. HAS TURKISH DESCENT, AGAINST THE JUDGES INSTRUCTIONS JURY, BIAS JUROR MUST HAVE GOOGLED DEF. NAME "TUNC URAZ" TO LEARN THAT HE IS FROM TURKEY.

TO : Information Services
Date : 1/30/2023 7:55:12 PM EST    Letter ID: 1688353000
Location : MCF
Housing : UNIT 4254B01

11/03/2017 PGS 4,5

BOTH PERRONE AND ROTH TOLD JUDGE THAT JURY NEEDS TO BE REPLACED ASAP

PG.6
INSTEAD OF HOLDING A REMMER HEARING ", JUDGE'S "THEORY"WAS STRIKE HIM AFTER THE PROOFS, BECAUSE IF HE DOES "THE OTHER WAY" IT STARTS STAMPEDE WITH OTHER JURORS WHO DOESN'T WANT TO BE IN A JURY POOL.

PER MCR 6.411 AND MCL 768.18 THE ALTERNATE JURORS MUST BE REPLACED BY RANDOW DRAW NOT KNOWINGLY AND THIS WAS "JUDICIAL LAW MAKING" "ABSURD RESULTS" JAVENS 469 MICH1032 (2004) AND JI 3.11A REPLACEMENTS JUROR INSTRUCTIONS AND JI 3.3 DEFENDANT NOT TESTIFYING INSTRUCTION WERE NOT GIVEN TO THE JURY, SEE 11/09/2017 PG.164

JI 5.6 CAUTIONARY INSTRUCTION REGARDING ACCOMPLICE TESTIMONY WAS NOT GIVEN SINCE IMMUNITY WAS GRANTED BASED ON INFORMANTS WOULD NOT BE CHARGED WITH AIDING AND ABETTING/ACCOMPLICE, ALSO THEIR IMMUNITY GRANTED
ON 12/01/2016, WAS NOT GRANTED DURING TRIAL SEE T.T. 10/31/2017 PG 30,31, SO INFORMANT'S PERJURED TESTIMONY WAS NOT IMMUNIZED

9) BINDOVER
SEE 12/13/2016 JUDGE THOMAS PRELIM TT PGS 207LINE 10-13 JUDGE FOUND IT 100% CIRCUMSTANTIAL PG 208 ,209

THERE WAS NEVER ANY MONEY AMOUNT OFFERED BY DEFENDANT
THE AMOUNTS WERE ALL OFFERED BY R.CLOSE AND MOBLEY.
SEE PRELIM EX. 12/13/16, PG 155 R. CLOSE TESTIMONY, VIDEO CALL 10/24/2016,

Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT-2
Date: 01/30/2023 19:49:47

Case 1:23-cv-00610-RJJ-PJG ECF No. 1-12, PageID.1933 Filed 09/08/25 Page 54 of 150

Please do not reply to this email

*6) RECONSIDERATION

SEE NOTES EXCHANGED BETWEEN DEF. AND R.CLOSE INITIATED OFFERINGS

MOBLEY'S AND ALLEN'S WERE ALL ABOUT OUT BEATING MELKE

SEE 11/06/2017 T.T. PG 122-145 MOBLEY TESTIMONY HE INITIATED
THE CONVO.

R.CLOSE TT 11/06/2017 PG 5-40 HE INITIATED THE CONVERSATION AND PERRONE DID NOT CONFIRM
WHO IS HAND WRITING ON THE NOTES EXCHANGED BETWEEN PIERCE AND R.CLOSE (NO HAND WRITING
EXPERT WERE CALLED)

see 11/07/2017 TT PG 50-77, ALLEN INITIATED THE CONVERSATION
def. did not give any address, hair color, description to Mobley
THE FACT PRESENTED AT THE PRELIM. DO NOT SUPPORT THAT A SEPARATE AND INDEPENDENT CRIME
WAS COMMITTED (3rd. Solicitation charge)

see People v Salazar 140 Mich App 137 (1985)

10) MIRANDA VIOLATION

DEFENDANT WAS NEVER INTERVIEWED BY ANY POLICE WHILE IN JAIL OTHER THAN POLICE AGENTS R.
CLOSE AND ALLEN WHICH WAS A "CUSTODIAL INTERROGATION"/PROPHYLACTIC RIGHT TO COUNSEL
ARISING FROM FIFTH AMD. SELF INCRIMINATION EDWARDS V ARIZONA 451 US 477 (1981), MCNEIL V
WISCONSIN 501 US 171 (1991)

12)

OV 10 FOR SOLICITATION TO MURDER SCORED 15 POINTS IS WRONG BECAUSE SOLICITATION IS NO AN
OVERT ACT,

COA BRIEF 01/19/20123
"DEFENDANT'S MOTIVATION WITH REGARD TO SCORING OF OV 0 FOR THE PRE- SOLICITATION STALKING
WAS VICTIMIZATION" IS A WRONG ANALOGY BECAUSE:

1) DEF. PROVED THIS COURT THAT SECOND STALKING CHARGE WS BASED ON FALSE EVIDENCE,
INFERENCES AND PERJURED TESTIMONY BY MELKE

2) HIS SENTENCING ATTORNEYS' INEFFECTIVENESS IS OBVIOUS BECAUSE HE WAS HIDING PERRONE'S
MENTAL PRT, POLICE AND PROBATE COURTS DOCS FROM DEFENDANT AND PER JUDGES REQUEST
ONLY PERRONE'S CRAZY EMAIL TO HIS SISTER WS ADMITTED TO RECORD, DEFENDANT ALSO GAVE
SILVERTHORN PERRONE'S FIRST HOSPITAL STAY DRUG INFORMATION SHEET 11/14/2017 BUT HE
CHOOSE NOT TO PUT ON RECORD BECAUSE JUDGE TOLD HIM NOT TO SEE 01/24/2018 PG 3 (JUDGE HAD
A PRIOR DISCUSSION WITH SILVERTHRN ABOUT WHAT TO PUT ON RECORD FOR PERRONE'S MENTAL
ILLNESS)WHICH MAKES SILVERTHORN AN ACCOMPLICE TO THIS COVER UP (WHICH HE IS GRIEVED FOR
CURRENTLY AT AGC)

3) 15 POINTS ASSESSED TO OV 10 BASED ON A ALLEGED MAP DRAWN (SEE 01/24/2018 PG 14)  BY DEFENDANT WHICH WAS STOLEN FROM HIM BY R.CLOSE
BUT JUDGE ABUSED HIS DISCRETION AND ALLOWED IN THE EVIDENCE ALTHOUGH IT WAS A HEARSAY MRE 801 SEE
10/20/2017 PG 20 LINE 6-25 ABOUT MAP TESTIMONY BY DEFENDANT , AGAIN HIS TESTIMONY WAS USED AGAINST HIM AT TRIAL, WHICH SHOULD HAVE BEEN INADMISSIBLE

FOR OV 9 THERE WAS ONLY ONE VICTIM FOR BOTH CRIME JUDGE JOINED THE CHARGES BASED ON THAT ON 02/28/17 JOINDER HEARING SAYING "IT IS THE SAME VICTIM FOR BOTH CRIMES.
SILVERTHORN NOT BEING READY FOR SENTENCING CREATES IS "NOT PRESERVED FOR THE RECORD"

SEE 10/19/2016 AND 11/02/2016 (CASE #16-534-PP) SENTENCING TRANSCRIPTS FOR FIRST STALKING SINCE MR. BERGSTROM BY RETAINED ATTORNEY SHARED A LETTER WITH PROS MR. KOOP ON 08/23/2016 WHEN DEF, ACCEPTED A PLEA DEAL FOR HIS FIRST STALKING CHARGE, THAT LETTER WAS USED AGAINST DEFENDANT AT TRAIL BASED ON DEF. EVIDENTIARY HEARING ON 10/20/2017
CHRIS BERGSTROM VIOLATED ATTORNEY CLIENT PRIVILAGE BY TESTIFYING AGAINST DEFENDANT ON 11/03/2017 PG 61-62
MR. KOOP ALSO BECAME A WITNESS AT DEFENDANT'S TRIAL BY ACKNOWLEDIGING THE LETTER SHOWN AND LATER THE SAME LETER WAS ALLEGELY EMAILED TO MELKE FROM AN ACCOUNT EMELKE20@GMAIL.COM WHICH BELONGED TO MELKE SINCE 2009
THIS ALLEGED LETTER WAS SHOWN TO PROSECUTOR KOOP BEFORE THE FIRST STALKING PLEASE DEAL
AND ACCORDING TO U.S. V ZOLIN 491 U.S. 554 (1989) SCOTUS
..protect the "wrong doers" not to "PRIOR" WRONG DOING BUT TO "FUTURE" wrong doing

DEFENDANT WAS IN JAIL WHEN THIS ALLEGED EMAIL SENT TO MELKE T 3:32 PM SEE GPS RECORDS 08/31/2016

PERRONE  DID NOT OBJECT TO THIS AS WELL.

13) RESTITUTION, FEES AND COSTS

11/03/2017 PG 18 LINE 10-16 MELKE DID NOT HAVE THE CAR  BY SUMMER OF 2017 BEFORE TRIAL AND THE RECEIPTS SUBMITTED
TO COURT WERE ONLY TIRE DAMAGE RECEIPTS OF $273.00 SO

01/24/2018
THIS ARBITRARY AMOUNT OF $ 2000.00 (DOOR SCRATCHES)  WAS FOR  A CAR DOES NOT EXIST ANYMORE. THERE WERE  NO  REPAIR  RECEIPTS  SUBMITTED  AS  WELL,  IT  WAS  JUST  ROTH "COMMUNICATED" TO SILVERTHORN IS A PERJURY BECAUSE

SEE
PG. 9 LINE 19-25  "I DID NOT CONDUCT THE TRIAL SO I DON'T KNOW HOW EVIDENCE FELL (ALL THAT EXTRA TIME 35 DAYS  JUDGE GAVE TO SILVERTHORN STILL NOT READY)

PG13 LINES  13-25
SILVERTHORN : AGAIN NOT BEING PRESENT, NOT BEING THE PERSON THAT DEFENDED THE CASE, AND TRIED IT....

SEE ATTACHED LIST FROM DEF. SISTER ABOUT HIS SON'S  EXPENSES IN TURKEYS AND STATE IS TAKING HIS PENSION FROM DEF. UNDER SCFRA SINCE 2019 AND DEFENDANT HAS BEEN WORKING IN PRISON AND GETTING PAID ONLY $11.00 PER MONTH THEREFORE ONLY INCOME HE IS DEPENDING ON TO SURVIVE IN PRISON . EVERY AMOUNT GETS DEPOSITED FROM 10% OF SCFRA TO DEF. ACCOUNT IS TAKEN RIGHT AWAY, BECAUSE OF TWO SPERATE CHARGES .

DNA

PEOPLE V ORT 2020 MICH APP LEXIS 4049 (2020) DNA WAS ALREADY ON FILE WHEN DEF. WAS CONVICTED FROM PRIOR CASE

DEFENDANT ACCEPTED A PLEA DEAL FOR HIS FIRST STALKING ON 08/23/2016 AND HIS DNA WAS COLLECTED FROM HIM FOR THAT CASE ON 03/26/2016 SEE MERIDIAN TOWNSHIP POLICE REPORT PLEASE CANCEL THE OTHER DNA FEE

BASED ON COA BRIEF BASED ON TWO SPERATE ATTORNEY WORK WHICH IS NOT TRUE BECAUSE PERRON DID NOT DO HIS INVESTIGATION DEFENDANT TRIED TO POINT OUT "PERRONE'S MISHAPS" PER TRIAL TRANS.


PROOF OF SERVICE

DEFENDANT URAZ SERVED THE COPIES OF THIS BRIEF TO  INGHAM COUNTY PROSECUTORS OFFICE  ON
VIA MDOC EXPEDITED MAIL PROCEDURE.

TUNC URAZ 114653

MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 01/30/2023 19:59:20

Please do not reply to this email

CASES FOR RECONSIDERATION

COMMONWEALTH V DOWNS 2020 Ky. Lexis 222  Supreme Court of Kentucky , 07/09/2020
EDWARDS V ARIZONA 451 US 477 (1981)
MATTHEWS V U.S. 465 US 88 (1988)
MCNEIL V WISCONSIN 501 US 171 (1991)
U.S. V CRONIC 466 US 648 (1984)
US V ZOLIN 491 U.S. 554 (1989)
PEOPLE V ALVIN JOHNSON, 396 MICH 424 (1976)
PEOPLE V D'ANGELO 401 MICH 167 (1977) HN8
PEOPLE V JONES 48 MICH APP 33 (1974)
PEOPLE V KANKA 2006 MICH APP 3570 (2006) PINPOINT 4 AND 5
PEOPLE V ORT 2020 MICH APP LEXIS 4049 (2022)
PEOPLE V SALAZAR 140 MICH APP 137 (1985)
PEOPLE V TYSON 2022, MICH LEXIS 1142 (2022)
PEOPLE V URAZ 2023 MICH APL 487 (01/19/2023)
People V Uraz 2019 Mich App 742 (04/15/2019)
People V Uraz 2020 Mich App Lexis 1740,  (03/06/2020)

PEOPLE V VANDERLINDER 192 MICH APP 447 (1992)

FIFTH AMENDMENT
SIXTH AMENDMENT

OV 9, OV 10
MICH CRIM JI 3.3, 3.11a, 5.6
MRE 403
MRE 801
MCR 6.411
MCL 768.18
MCL 800.401

*Exhibits attached,*

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 01/30/2023 06:07:28

*RECEIVED*

Please do not reply to this email

*2023 FEB -7 AM 11: 07*

OPEN LETTER TO COA HONORABLE JUDGES CAMERON, SHAPIRO, LETICA

*COURT OF APPEALS
LANSING OFFICE*

People v URAZ, 2023 App 487, 01/19/2023

COA# 343695, 343696
LC NOS 16-1064-FH, 16-1065-FC

DEAR HONORABLE JUDGES CAMERON, SHAPIRO, LETICA

FACTS:

1) MR. PERRONE A MENTAL BREAKDOWN BEFORE  DURING AND AFTER THE TRIAL WHERE HE ENDED UP IN  MENTAL HOSPITALS TWICE IN THE MONTH OF NOVEMBER 2017 (11/14/2017 AND 11/20/2017).
 Mr. Uraz's trial was over on 11/09/2017.

PERRONE  HAD DOCUMENTED MENTAL ISSUES GOING BACK TO 2015. (see the bottom of PRT form filled by his Father on 11/14/2017.

When I first grieved Mr. Perrone in April 2018 (AGC Case # 18-0956) and send a rebuttal to Perrone's response in July of 2018, I did not hear back from AGC until I wrote a letter in January of 2022 inquiring if there has been a decision made about the grievance?

On 18th. May 2022 after "4 years of investigation" AGC'S response was: (in part) And its monthly session on 03/16/2022, the AGC determined that the evidence reviewed did not warrant further action by commission... investigation closed...

2)My family requested to see prosecution's file from Ingham County in May 2022 , in late July, once I received the files, I discovered that 12/18/2017, prosecutor Mr. Koop informed Mr. Duane Silverthorn  about Perrone's Second mental impairment dated 11/20/2017 along with Lansing Police report and PRT form, Oakland County judge's decision dated 11/30/2017. (although the document said Clinton county with two case numbers # 17-29766-MI [Clinton]  and  2017-380,077-MI [Oakland] (a line was drawn over it)

I immediately grieved Ms. Crino AGC# (22-1542), Mr. Roth (22-1543) and Mr. Koop (22-1544) late July and August of 2022 for not disclosing this information to my Appeal Attorney Ms. Susan K. Walsh and myself before my Ginther hearings and sentencing (01/24/2018)

3) Late July 2022, based on Mr. Roth's Ginther hearing testimony in April 13th 2022 (pgs 20,21) , my family requested under FOIA all Perrone and case  related documents  from Clinton County Probate Court, she was told none of the  records exist/ not located # 17-29766-MI from Clinton County Clerk ;Deb Sutherland and Deputy clerk; Courtney Beard.

So on 07/21/2022  my family checked with Oakland County Case # 2017-380,077-MI,  requested all documents related to Perrone and she was told that documents are not available under FOIA but anyone can come down and request the documents  in Person as long as willing to pay $1.00 per page (27 pages total) so one of her friend's went down to Oakland County Probate Court Clerk  and retrieved them. (see attached message from Mr. Edward Hutton III , Oakland Probate Court)

At the same time my family obtained Lansing Police bodycam footage about Perrone's erratic behavior on

11/20/2017.

I immediately asked my family to email them to all AGC members ASAP on 08/26/2022.

On 08/21,23,26, 2022 ,I also sent same docs and police video to my Appeal attorney SUSAN K. WALSH and asked her to motion Court of Appeals for a SECOND Ginther Hearing TO EXPAND THE RECORD ABOUT THESE NEW DISCOVERED/AVAILABLE PROBATE COURT DOCS.

SHE DID NOT RESPOND TO ME AT ALL.

I wanted AGC to restart the investigation against Perrone with this newly found/discovered available evidences.

3) Response from AGC which I received  on 08/29/2022 only stated verbatim :
 (in part) "After a Ginther hearing, the court denied your motion, finding that Mr. Perrone did not provide ineffective assistance of counsel. The commission investigation determined Mr. Perrone's medical issues occurred "SEVERAL DAYS AFTER" your trial, and there was insufficient evidence that they affected your trial."

AGC was only focusing on Perrone's Second Mental impairment dated 11/20/2017, ignoring the FIRST Mental Impairment  dated 11/14/2017 WHERE PERRONE'S FATHER TALKS ABOUT PERRONE'S MENTAL ISSUES GOING BACK TO 2015)

PLEASE SEE (attached) :PETITION FOR MENTAL HEALTH TREATMENT" FORMS FILED BY PERRONE'S FATHER JOSEPH V. PERRONE ON 11/14/2017 AND PRT FORM FILLED BY LANSING POLICE OFFICER (which was part of the 27 page documents obtained from Oakland County and sent to AGC members via e-mail on 08/26/2022)

My jury trial ended on 11/09/2017 at 4:45pm. Perrone was at UofM mental hospital in the morning  on 11/14/2017 (less than 90  hours later).
I am sure Perrone had a mental breakdown before 11/14/2017.

SEE SECTION (D)(i):
08/17 Went to Sparrow Hospital with severe anxiety [before my trial]

11/17 went to Sparrow Hospital w/chest pains left Against medical advice (most likely right after my trial ended 11/09/2017)

sec (ii)
"Punches holes in walls, is verbally abusive to his wife, has said he will "KILL" &/or destroy everyone, will take over Lansing + w/an iron fist..

****"THIS HAPPENS WEEKLY FOR  THE LAST TWO YEARS AT LEAST"****

(this means Perrone has been  Paranoid Schizoaffective disorder, Bipolar Type at least since 2015 or even before, untreated, unmedicated, undiagnosed)

2nd page
SEC 4 (a)
"HE  HAS  MANY  ANGRY  OUTBURSTS,  DISORGANIZED  THOUGHTS,  HE  THINKS  HE  IS  THE  MOST INTELLIGENT PERSON IN THE WORLD, HE WILL "DESTROY" OR KILL EVERYONE, HE HAD CALLED HIMSELF "MY SUICIDAL SON", HAS MANY ANGER  ISSUES.
signed by Joseph V. Perrone 11/14/2017

SEE THE REST OF THE PROBATE (CLINTON/OAKLAND) COURT DOCUMENTS (ATTACHED).  ATTORNEY JACOB  PERRONE,  PSCY  EVALUATIONS,  PERRONE  REFUSED  FOR  TREATMENT  AND  MEDICATION  AND REFUSED TO MEET COURT APPOINTED ATTORNEY MS. LISA ZATYKO on 11/30/2017 (see attached email end of the brief)

THE GINTHER HEARING WAS GRANTED SOLELY BASED  ON PERRONE'S BIZARRE/VULGAR  E-MAIL to his sister,  brother (dated 11/08/2017 one day before the trial ended) , HIS TEXT MESSAGES TO HIS SISTER,  HIS PSCY MEDS GIVEN TO HIM ON 11/14/2017 AT HEALTHSOURCE WHITE PINE MENTAL HOSPITAL (PERRONE handed them to me accidentally on 12/13/2017 before in court hearing)

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 01/30/2023 06:07:28

Please do not reply to this email

2) REBUTTAL COA

see COA Register of Actions Case #'s 343695 and 343696   (People V Uraz 2019 Mich App 742 (04/15/2019) and
People V Uraz 2020 Mich App Lexis 1740,  (03/06/2020)


GINTHER HEARING ONLY ADDRESSED ONY PERRONE'S SECOND MENTAL HOSPITALIZATION ON
11/20/2017. NOT THE FIRST ONE ON 11/14/2017.

HERE ARE THE FACTS : MY MAACS/COURT APPOINTED APPEAL ATTORNEY MS. SUSAN K. WALSH, DID
NOT REQUEST ANY DISCOVERY PACKAGE FROM INGHAM COUNTY PROSECUTOR, SHE ONLY
REQUESTED PRE-TRIAL, TRIAL AND SENTENCING TRANSCRIPTS. (Per Mr. Perrone's response to AGC
[#18-0956] dated 05/29/2018 pg. 7 "I have yet to hear heard from his appeal attorney and will make copies available
upon request". I turned over over copies of documents requested by Mr. Uraz at his sentencing through his attorney.
Further, I sent Mr. Uraz copies of his file in its entirety on May 29, 2018. ( there were so many documents "missing,
not disclosed documents compare to Prosecution's file I received in July 2022.

When Mr. Silverthorn requested (01/10/2018) discovery package from prosecutor's office, he was told to contact
Perrone to get them from him (mentally impaired attorney) (see attached e-mail messages)

see SILVERTHORN'S TESTIMONY ON 10/04/2021 pg. 57 - ABOUT HIS EXPERIENCE WITH PERRONE IN
DECEMBER 2018 AND HIS EXPLANATION TO P/I IN SEPTEMBER OF 2021.
(HE WAS GRIEVED TO AGC # (22-2095) FOR NOT DISCLOSING THE 12/18/2017 DOCS TO ME AND MY
APPEAL ATTORNEY)

INGHAM COUNTY COURT NEGLECTED TO SEND 12/18/217 DOCS RELATED TO PERRONE SECOND MENTAL
IMPAIRMENT EPISODE TO MY APPEAL ATTORNEY IN MARCH 2018 WHEN IT WAS REQUESTED BY MS.
WALSH.

ON 12/12/2017 hearing was held at judge's chambers (see attached transcript) in this meeting :
Jonathan Roth, Charles Koop, Jacob Perrone, Eric Schroeder, Nick Fernandez were in attendance.

I WAS DEPRIVED OF MY RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE
PROCEEDINGS (12/12/2017, JUDGES IN-CHAMBERS MEETING) WHEN  (PERRONE)  WAS PLACED IN THE
UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO HIS CLIENTS?
(Perrone admitted on record that he was not medicated before and during trial )pg.7 lines 4-9

PERRONE PERJURED SAYING THAT I HAD MY APPROVAL TO REPRESENT ME FOR SENTENCING, THIS
COULD HAVE BEEN IMPOSSIBLE BECAUSE THE 12/18/2017 DOCS SENT TO SILVERTHORN CONTAINED A
"Initial order after hearing on petition for mental heath treatment" ORDER FROM JUDGE HALLMARK (Oakland
County) SIGNED ON 11/30/2017,  FOR PERRONE SPENT 10 DAYS IN HOSPITAL AND 80 DAYS OUTPATIENT
TREATMENT (COMBINED ORDER), THEREFORE PERRONE WAS NOT ELIGIBLE/FIT TO REPRESENT ME.

THIS IS WHY PROSECUTOR ROTH OBJECTED PERRONE TO REPRESENT ME (12/12/2017, pg 4 line 22-25 and
pg 5 lines 1-13, (state Bar and Chief Judge (Richard Gracia)  is aware of Perrone's mental impairment and him
removed from other cases)

ON 12/13/2017 WHEN I WAS CALLED TO COURT TO "LAY OUT OPTIONS" WHETHER PERRONE WOULD
CONTINUE TO REPRESENT ME FOR SENTENCING, YET THE DECISION WAS ALREADY MADE BY JUDGE TO

DROP PERRONE  AND APPOINT SILVERTHORN TO REPRESENT ME.
see attached (12/13/2017) transcripts.

ONCE AGAIN I WAS DENIED TO HAVE A CONFLICT-FREE ATTORNEY TO REPRESENT MY INTEREST IN THIS
HEARING AS WELL 12/13/2017. PERRONE WAS NOT ALLOWED TO SIT NEXT TO ME AND Mr. Silverthorn
(appointed officially on 12/14/2017) arrived last 3 minutes of the hearing
(please request to see camera footage of this hearing, my family tried but they were told not available to public).

(please see attached as a precedent case from Kentucky Supreme Court July 2020 decision based on exact same
circumstances as mine, the conviction was overturned for not having a conflict-free attorney to represent the
defendant).
(Downs v Commonwealth, 2020 Ky. Lexis 222
Supreme Court of Kentucky , 07/09/2020

MS. CRINO'S BRIEF (10/20/2022) TO AGC HER EXPLANATION SECOND PARAGRAPH (PG .2) (in part) ..."I have
a personal practice of providing discovery to any appellate attorney who has trouble obtaining discovery from trial
counsel...I did not locate a request from Ms. Walsh.... (most likely Ms. Walsh did not request any discovery package
neither from Perrone NOR Silverthorn) therefore the 12/18/2018 docs. sent to Silverthorn from KOOP were never
disclosed to Ms. SUSAN Walsh NOR myself.

This means Ms. Crino failed to provide this vital document (12/18/2017, Perrone PRT forms) to Ms. Walsh and I
regardless with her (don't ask, don't tell policy).

Ginther hearing was granted 03/06/2020 and with Covid delays my first hearing was on 10/04/2021 (18 months later
and another 6 months later on 4/13/2022 when I testified total of 24 months). (it was postponed because Roth was
the prosecutor for Governor Kidnapping Plot, with U.S. Federal Courts). Ms. Crino had Plenty of time to review/read
any "trial level correspondence".

THIRD PARAGRAPH PG.2 (in part) I do not routinely read trial-level correspondence as part of an appeal unless
there is a special reason to do so...I was not personally aware ...they existed Before Mr. Uraz's Ginther hearing...)
(COMPLACENCY)

Please take look at Ms. Crino's Ginther hearing transcripts dated 10/04/2021, MS. CRINO WAS VERY THROUGH
EXAMINING EACH WITNESS. (see pgs from 12-45)

SHE TOOK HER TIME AND ASKED VERY DETAILED QUESTIONS TO PERRONE AND TO SCHROEDER (which
he is not qualified to answer about mental health)

(ERIC SCHROEDER WAS GRIEVED TO AGC# 22-2094 IN NOVEMBER 2022 FOR NOT DISCLOSING THIS
12/18/2017 DOCS AND PERJURING ON RECORD ON 10/04/2021,(see pgs. 43-52) GINTHER HEARING AND TO
P/I IN SEPTEMBER OF 2021).

SHE ASKED PERRONE IF HE HAD A MENTAL BREAKDOWN EACH DAY OF THE TRIAL DAY BY DAY IF
PERRONE NOTICED ABOUT PERRONE'S BEHAVIOR OR ANY "INEFFECTIVENESS" REPRESENTING ME
DURING THE TRIAL.

(this doesn't make sense because what is mentally impaired person is going to say about their behavior, how would
they even understand, know, diagnose their own ailments , ANASOGNOSIA one denying their own mental illness )

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 01/30/2023 06:07:26

Please do not reply to this email

3) REBUTTAL COA

See the flaw in MCR 9.121 Section (C) asking the respondent/ sole practioner answering their own grievances who may suffer from a mental disability may not recognize that he or she even has a disability which may mitigate the alleged misconduct.

ONE MORE ASPECT OF CLINICAL DEPRESSION IS THAT IT HAS USUALLY LASTED SUCH A LONG TIME THAT BECOMES THE NORM AND IS RECOGNIZED BY THE VICTIM (IN THIS CASE ATTORNEY) AS NORMAL. (SEE ARTICLE BY CHARLES F. JUSTIAN. 75 MI BAR JNL.1026
OCTOBER 1996)

FEATURE: MALPRACTICE/ ATTORNEY DISCIPLINE: A TIME FOR CHANGE; HELPING ATTORNEYS WHO HAVE MENTAL OR PHYSICAL ILLNESSES THAT PRECIPITATE GRIEVANCES

MS.CRINO'S FOURTH ,FIFTH and SIXTH PARAGRAPH explanation

MY APPEAL ATTORNEY WAS NOT EVEN READY FOR THIS HEARING AT ALL , ALTHOUGH I SENT HER SEVERAL DOCUMENTS, QUESTIONS TO ASK EACH WITNESS, SHE DIDN'T EVEN BRING IN A EXPERT WITNESS TO TESTIFY ABOUT TRAITS OF BIPOLAR/ SCHIZOAFFECTIVE DISORDER, BORDERLINE-PERSONALITY DISORDER AND ADDERALL-USE DISORDER (AMPHETAMINE).

COURT OF APPEALS REMAND ORDER Dated 03/06/2020 specifically stated: "ARE LIMITED TO THE ISSUES RAISED IN THE MOTION TO REMAND"

Here are the issues Ms. Walsh raised on her motion to remand 02/22/2019

1) Severance of cases based on sheer number of prior bad act evidence
2) introduction of Unduly prejudicial evidence concerning prior bad acts
3) prosecution's failure to disclose Brady Material (same as now)
4)Denial Mr. Uraz's motion to dismiss based on entrapment
5)defense counsel Mental breakdown of trial counsel during trial, (not effectively try the case, failed to cross examine witnesses (defense and prosecution), failed to impeach based on their theft related conviction
6)Prosecution's misconduct which consisted of denigrating defense counsel in front of the jury.

AFTER MS. WALSH'S VERY "LIMITED" QUESTIONING OF PERRONE, MS. CRINO STARTED ASKING QUESTIONS BEYOND THE SCOPE OF THE ISSUES RAISED IN MS. WALSH'S BRIEF TO PERRONE. SEE GINTHER HEARING TRANSCRIPTS PGS.14 -16 (10/04/2021).

ALTHOUGH MS. WALSH OBJECTED THIS LINE OF QUESTIONING, JUDGE ALLOWED IT.

THIS WAS A CLEAR ABUSE OF DISCRETION BY ALLOWING PROSECUTOR TO QUESTION MR. PERRONE ANS HIS BEHAVIOR DURING TRIAL AND ONLY "HAND PICKED" ISSUES TO SHOW "FAVORABLE" OUTCOME FOR MR. PERRONE.

 MS. CRINO IGNORED THE BIZARRE E-MAIL PERRONE SENT TO MY FAMILY ON 11/08/2017 (day before trial ended)

****FACT NO ONE COMES DOWN WITH A MENTAL ILLNESS OVERNIGHT, IT IS A LIFE LONG STRUGGLE, (see Perrone's father PRT form filled on 11/14/2017, which says he has been like that least 2 years)

PERRONE'S ORGANIC BRAIN DAMAGE SCHIZOPHRENIA AND BIPOLAR DISORDER CAN CONSPRIRE TO CREATE SEVERAL MENTAL IMPAIRMENT PSYCHOSIS AND OTHER SERIOUS MENTAL HEALTH PROBLEMS THAT BURDENED HIM COULD LEAD TO DANGEROUS BEHAVIOR.   BUT HIS BEHAVIOR WAS A MANIFESTATION OF SERIOUS ILLNESS NOT A REFLECTION OF HIS CHARACTER.

SO HERE ARE  PERJURY COMMITED BY PERRONE ON RECORD ON 10/04/2021   GINTHER HEARING TRANSCRIPTS :

After Ms. Crino's very specific questioning of Perrone see pgs. 12-35 finally the main question:

Pg 35 Lines 4-25
Crino : Did an issue arise with your mental health?

Perrone: Yes about a week after the trial, I took a trip to Dallas right after I got done with the trial and didn't sleep really, I had to fly sooner than anticipated for a family issue, which caused "significant exhaustion" which led to me having some different---I had to go to hospital because of the "exhaustion"  which caused my family significant concern, which ended up leading to having an episode, A "BIPOLAR DISORDER"

Crino: OK is it fair to say, then a week after the verdict in this case, you had an episode and that episode led to a mental health diagnosis?

Perrone: Yes

Crino: OK you mentioned Bipolar, Is that the diagnosis that you ultimately received?

Perrone : Yes

FACT : HERE IS THE PERJURY BY PERRONE

See attachments sent by Ms. Crino (Answer to AGC grievance response provided another grievance filed by against PERRONE by an unknown Ingham county prosecutor)

1) attachment# 8  This Person grieved Perrone on 12/11/2017 to Attorney Grievance Commission due to Perrone harassing him constantly during that time period.

He wanted to stay anonymous if you look at attachment# 9 it talks about email from Elizabeth Allen to Roth about "Bill" (William Crino) is being harassed by Perrone constantly. I am assuming he is related to Ms. Kahla Crino.

Mr. Roth based on his interview gave to P/I on 09/23/202 and his testimony on 04/13/2022, HE COMMITTED PERJURY ON RECORD FOR NOT DISCLOSING 12/18/2017 docs and contentents of e-mail that sent to him on 11/30/2017 by Ms. Allen who WHO was worried about Perrone being released from mental hospital and his threatening behavior towards another prosecutor.

SO BASED ON PERRONE'S FATHER PRT FORM DATED 11/14/2017 AND UNKNOWN PROSECUTOR'S EXPLANATION OF PERRONE'S THREATENING BEHAVIOR TOWARDS HIM,  THE TIMELINE, my trial ended 11/09/2017

FROM UNKNOWN PERSON AGC GRIEVANCE:

first meeting scheduled 11/15/2017 for a jury trial about the start on 12/04/2017  (murder).

Perrone sent this person message on 11/10/2017 Veterans day to his work e-mail to call him after 11:30 on 11/13/2017 Monday : phone call/left message from Perrone about family problems mainly related to his "father".

Second meeting scheduled 11/17/2017 called this person and told him "everything is resolved" THAT WAS THE DAY

PERRONE LEFT SAGINAW WHITE PINE MENTAL HOSPITAL WITH HIS OWN WILL.

11/19/2017, Sunday Perrone sent a email wanted to have meeting on 11/20/2017, But he didn't show up
11/21/2017 Perrone called this person told him that "his father inappropriately  put him in a f...ing psyc ward at Sparrow Hospital"

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 01/30/2023 06:07:29

Please do not reply to this email

4) COA REBUTTAL

11/21/2017 (see item # d)
SCHROEDER WAS AWARE OF PERRONE'S ISSUES ON THE DATE ABOVE BECAUSE HE HAD A MEETING WITH UNKNOWN INGHAM COUNTY PROSECUTOR AND JUDGE IN HIS CHAMBERS ABOUT PERRONE'S "HOSPITALIZATION" AND JUDGE SWITCH HIM WITH ANOTHER ATTORNEY AND POSTPONED TRIAL  TO A FUTURE DATE.

THIS IS WHY SCHROEDER IS BEING GRIEVED TO AGC BECAUSE HE LIED UNDER OATH AT GINTHER HEARING AND TO P/I IN SEPTEMBER 2021 ABOUT PERRONE'S MENTAL ISSUES.

2) Attachment #9 by Ms Crino and same attachment #2  from Roth's letter to AGC on 10/12/2022 ;  Is talking about Ms. Elizabeth Allen Prosecutor at Ingham County sent an emal to ROTH about Perrone being "PRT'ed past two weeks and was calling Bill from there he had a hearing this week in Clinton County

ON 11/30/2017 Elizabeth Allen sent a message to Roth about Perrone calling Bill Crino 5-6 times a day, Leaving phone messages , placed phone to ROTH, "SEVERAL TIMES" , rambling voicemails, about Roth and how Perrone is obsessed with about Roth "lied" and "cheated" on the URAZ case, Bill is approached her and told her that he is concerned about Perrone obsession and anger towards Roth.

If Perrone was released , she was thinking about someone "Boeve" to patrol Roth's house randomly, she thinks it's more serious.

DEC 2nd 2017 email to Ms. Allen from
Roth: He is concerned about Perrone's harassing calls, if he is released or not.

SO BASED ON BOTH MS. CRINO'S (#8-9) attachments AND MR. ROTH'S  ATTACHMENT (#2) AND MR. PERRONE'S FATHER'S PRT FORM FILED ON 11/14/2017,

(see attached perjury committed by Roth  his response to  AGC and Ginther H. Trans. 04/13/2022).

FACT:

UNKNOWN PERSON WHO FILED A GRIEVANCE AGAINST PERRONE ON 12/11/2017 (Bill Crino) the reason it is redacted because he is related to Ms. Crino which makes her an "ACCOMPLICE" TO THIS COMPLACENCY  in this matter. She should had had known about this grievance regardless

***IT IS OBVIOUS THAT MR. PERRONE DID NOT GO TO DALLAS, HE WAS SENT TO MENTAL HOSPITAL PSYCH WARD ON OR BEFORE 11/14/2017 INVOLUNTARY BY HIS FATHER AND WIFE.

Pg. 36 continued 04/13/2022 Ginther hearing
Crino: Did you share that information with Uraz the next time you saw him?
Perrone : Yes
Crino: How and when exactly did that occur?
Perrone: As soon as I was available, I spoke with Uraz and explained to him why I had been unavailable and then, we had to address the court with it.
Crino: Did Mr. Uraz tell you that he wanted you to continue representing him?
Perrone: He did
Crino: What did he say exactly?

Perrone: Given the nature of our relationship at that point in the time he was happy with I have done and the efforts that I'd put it, so he told me that he wanted me to continue as his attorney.

FACT : HE DIDN'T SHARE ANYTHING WITH ME,. MY FAMILY TOLD ME AFTER HIS CRAZY TEXT MESSAGES TO MY SISTER.

04/13/2022 GINTHER HEARING TESTIMONY PG. 43-51 MS. CRINO BADGERED MR. URAZ ABOUT 12/13/2017 DECISIONS MADE BY JUDGE TELLING HIM PERRONE WOULD BE REPLACED BY SILVERTHORN AND PERRONE WOULD HELP HIM OUT IF NEEDED FOR SENTENCING.

ALL I DID WAS TO ACKNOWLEDGED WHAT I HEARD FROM JUDGE, BUT

AFTER SEEING OAKLAND/CLINTON COUNTY RECORDS, ON 11/30/2017 JUDGE ORDERED PERRONE TO HAVE 90 DAYS OF MENTAL HEALTH TREATMENT 10 DAYS WAS ALREADY SPENT INTERMITTENTLY BETWEEN 11/14/2017 -11/30/2017.

JUDGE ORDERED TO HAVE 80 DAYS OF OUTPATIENT TREATMENT AT LOCAL COMMUNITY MENTAL HEALTH CENTER WITH HIS PSYCH MEDS.

PERRONE COULD NOT HAVE REPRESENTED ME REGARDLESS BECAUSE OF COURT ORDER TREATMENT. THIS IS WHY MR. ROTH INSISTED ON SWITCHING PERRONE.

I did not agree to him representing me for my sentencing on originally scheduled  12/20/2017 and it was postponed to 11/24/2018 due change of attorneys.

FACT: MS. CRINO KEEP SAYING THAT MR. PERRONE'S MENTAL ILLNESS HAPPENED AFTER TRIAL BUT HE WAS STILL MY ATTORNEY ON RECORD UNTIL 12/13/2017 IN COURT HEARING WHEN IT WAS SWITCHED TO SILVERTHORN ON 12/14/2017.

FACTS :

>SINCE ALL THESE ATTACHMENTS BY MS. CRINO AND ROTH ARE COMMING IN LIGHT
AND
>MS. ELIZABETH ALLENS E-MAIL MESSAGES
AND
>THE GRIEVANCE FILED AGAINST PERRONE BY THIS "UNKNOWN" PERSON ON 12/11/2017 , 1 DAY BEFORE JUDGE'S CHAMBERS MEETING.

MS. CRINO SHOULD HAVE KNOWN ABOUT PERRONE'S EXTENDED MENTAL ISSUES.  HER EXCUSE OF I DIDN'T KNOW, I WAS NOT AWARE OF THIS IS NOT A EXCUSE ESPECIALLY PERRONE HARASSING/STALKING/THREATENING SOMEONE SHE KNOWS (BILL CRINO)

> 12/18/2017 KOOP MESSAGE TO SILVERTHORN ABOUT 11/20/2017 POLICE REPORT AND PRT REPORT ABOUT PERRONE. WHICH WAS NOT SHARED WITH ME BEFORE SENTENCING AND WITH MY APPEAL ATTORNEY

>AGC'S COMPLACENCY TOWARDS 12/11/2017 GRIEVANCE AGAINST PERRONE BY AN UNKNOWN INGHAM COUNTY PROSECUTOR
AND
>MY GRIEVANCE AGAINST PERRONE IN APRIL 2018,
 AND
>AGC'S RESPONSE TO ME 4 YEARS LATER SAYING THAT, THERE WAS NOTHING WRONG WITH PERRONE
 ALTHOUGH THERE IS CLEAR PATTERN OF MISCONDUCT BY PERRONE.
AND
>I HAD TO FILE GRIEVANCES AGAINST CRINO, ROTH, KOOP SILVERTHORN, SCHOREDER IN JULY OF 2022 AND NOVEMBER OF 2022  BASED ON ATTACHED 11/20/2017 PERRONE PRT AND POLICE FORMS, TO GET

THEM ADMIT PROVIDE MORE EVIDENCE AND THEY ALL FAILED TO DISCLOSE THESE DOCS WITH ME AND MY APPEAL ATTORNEY
AND THEY ALL PERJURED WITH THEIR TESTIMONY DURING GINTHER HEARINGS AND THEIR RESPONSES TO PRIVATE INVESTIGATOR IN SEPTEMBER 2021.

> PROBATE COURT DOCUMENTS  27 pages  FROM OAKLAND AND CLINTON DISCOVERED THAT ON 11/14/2017 PERRONE'S FATHER ON HIS PRT FORM SAYING THAT PERRONE HAS BEEN MENTALLY ILL AT LEAST PRIOR TO MY TRIAL (2015)

I DID ASK MY APPEAL ATTORNEY TO FILE MOTION FOR A SECOND GINTHER HEARING TO EXPAND THE RECORD BY INCLUDING
JOSEPH V. PERRONE (Perrone's Father)
Ashley Perrone (His wife)
Lansing Police officer (McBride)
Ron Perrone (not sure relationship)
William Perrone (Perrone's uncle) his name is on police report.

BUT SHE DID NOT RESPOND TO ME AT ALL.

SHE IGNORED AND DID NOT WANT TO DO ANYTHING ABOUT THIS MATTER AS WELL JUST LIKE OTHER ATTORNEYS

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 01/30/2023 06:07:23

Please do not reply to this email

5) COA REBUTTAL

IT IS NOT ACCEPTABLE FOR CRINO AND ROTH ACTING NONCHALANTLY TO THIS SERIOUS MATTER BY SAYING "I DIDN'T KNOW" AND NOT DISCLOSING IT DURING GINTHER HEARINGS.

I AM ASKING COA TO ACKNOWLEDGE PERRONE'S MENTAL ILLNESS, REQUEST ANOTHER HEARING TO EXPAND THE RECORD BY APPOINTING ANOTHER ATTORNEY FOR ME , A NEW PROSECUTOR AND A PSYCHOLOGIST TO EVALUATE PERRONE'S HISTORY OF MENTAL ILLNESS, REACH OUT EVERY ONE NAMED ABOVE TO GET THEIR NAMES INCLUDING JUDGES RICHARD GARCIA, CLINTON CANADY AND ANY OTHER UNKNOWN JUDGE AND PROSECUTOR WHO KNEW ABOUT OR EXPERIENCED PERRONE'S MENTAL AILMENTS.

APPOINT AN INDEPENDENT INVESTIGATOR TO DELVE INTO PERRONE'S LIFE TO SEE HOW LONG HE HAS BEEN MENTALLY ILL. PER ABA RULES/STANDARDS

PER MRPC 8.3, 8.4, 6.5 and 1.1 and
Michigan State Bar rule 13 and 15
"character And fitness" to be an attorney

 MCR 9.121 "ATTORNEY DECLARED TO BE INCOMPETENT OR ALLEGED TO BE INCAPACITATED OR ASSERTING IMPAIRED ABILITY"
(this is the only rule/policy deals with attorney misconducts such as, drugs, alcohol, mental impairment, illegal attorney misconducts.)

and follow per:

MCR 9.114 , MCR 9.122, MCR 9.126 PROPER INVESTIGATION OF A MISCONDUCT BY AGC


I AM EXPECTING COA TO TAKE AN ACTION AGAINST ALL ATTORNEYS INCLUDING JUDGES WHO HAS INVOLVED WITH THIS COVER UP.
INCLUDING AGC IT SELF AS AN ORGANIZATION TO APPROACH MENTAL ILL/IMPAIRED  ATTORNEYS WITH MORE SERIOUS INVESTIGATION AND CHANGE MCR 9.121 SECTION (C) stop asking what is wrong the very same person who is mentally impaired to defend themselves.

SO HERE ARE THE REALITY OF THIS EGREGIOUS ACTS COMMITTED BY AGC, COURTS, PROSECUTORS, JUDGES AND COURT APPOINTED ATTORNEYS.

IT DOESN'T MATTER WHETHER PERRONE'S MENTAL ILLNESS HAPPENED AFTER MY TRIAL OR NOT WHAT MATTER IS THE FACT THAT NO ONE EXCEPT I AND AN UNKNOWN PERSON PROSECUTOR HAD THE GUTS TO GRIEVE PERRONE FOR HIS MISCONDUCT OF NOT REPORTING HIS MENTAL IMPAIRMENTS.

IT IS PROSECUTOR'S SWORN DUTY TO PROTECT DEFENDANT'S RIGHTS NOT IGNORE THEM, BY HIDING THIS EVIDENCE FROM ME IS NOT RIGHT.

THIS IS A MAJOR BRADY VIOLATION ON THEIR PART :

"TRYING TO MINIMIZE THEIR CULPABILITY BY SAYING," I DIDN'T KNOW OR I FORGOT" ARE NOT ACCEPTABLE.

CRINO, ROTH , SILVERTHORN, SCHROEDER, KOOP,  JUDGES  ALL HAVE BEEN HOLDING ON TO THIS EXCULPATORY EVIDENCE SINCE 2017.

PERRONE HAS BEEN HIDING OR NOT AWARE OF  HIS MENTAL CONDITION SINCE 2015 OR EARLIER, BUT ONCE IT WAS DISCOVERED HE SHOULD HAVE NOTIFIED AGC AND STATE BAR

THIS IS PEOPLE'S LIFE AT STAKE HERE,

WOULD YOU FLY WITH A PILOT WHO IS MENTALLY IMPAIRED, NOT MEDICATED, UNTRATED, UNDIAGNOSED?

WOULD YOU LET A DOCTOR/SURGEON TO OPERATE ON YOU WHO HAS A MENTAL ILLNESS? NOT MEDICATED? OF COURSE NOT.

THESE ARE ALL LEGAL MALPRACTICES.

WHY IT IS NOT THE SAME FOR ATTORNEYS WITH MENTAL ILLNESS?

DIMINISHED CAPACITY DEFENSE IS NOT ALLOWED FOR DEFENDANT IN MICHIGAN, THEREFORE WHY DIMINISHED CAPACITY  ATTORNEY IS ALLOWED TO REPRESENT A CLIENT?
THESE TWO ISSUES ARE INTERTWINED WITH EACH OTHER.

ONE CANNOT FORM A SPECIFIC INTENT TO DEFEND SOMEONE WHEN THEY HAVE  MENTAL ILLNESS.

MICHIGAN LAWYERS WEEKLY NEWSPAPER (MILAWYERSWEEKLY.COM)

SEE VOLUME 34 NUMBER 26 APRIL 27 2020
"Michigan Supreme Court revises mental health inquiry on bar exam application : "conduct-based question"  will replace "diagnoses-based questions" , meaning potential lawyer/attorney will be asked a conduct based question "if any behavior IN THE PAST 5 YEARS COULD CALL INTO QUESTION their ability to practice law properly.

SO IN THE STATE BAR MICHIGAN  IS ASKING MENTALLY IMPAIRED POTENTIAL ATTORNEY CANDIDATES : WHAT IS WRONG WITH THEM ONLY 5 YEARS PRIOR TO THEIR APPLICATION ANYTHING BEFORE THAT CUT OFF DATE DOES NOT MATTER. (IF THEY HAVE THE CHARACTER AND FITNESS TO BE AN ATTORNEY)

I UNDERSTAND COA HESITANCY ABOUT MAKING A DECISION AGAINST     ANY MENTALLY IMPAIRED ATTORNEY AND ITS IMPLICATIONS ON CRIMINAL JUSTICE SYSTEM ESPECIALLY ANY CASE PERRONE HAD BETWEEN 2015-2017 COULD BE AFFECTED.

PLEASE SEE: GRIEVANCE ADMINISTRATION V FIEGER 476 MICH 231 (2006) MI SUPREME COURT
HN33 (IN PART) ...A JUDGE IS OBLIGATED TO INFORM THE ATTORNEY GRIEVANCE COMMISSION ON ATTORNEY'S PERCEIVED MISCONDUCT ; TO FAIL TO DO SO IS TO VIOLATE ON EXPLICIT ETHICS RULE....A JUDGE MUST EITHER TURN A BLIND EYE TO ATTORNEY MISCONDUCT OR RISK DISQUALIFICATION. THIS CANNOT BE. ON THE CONTRARY, A JUDGE WHO MEETS HIS OR HER ETHICAL OBLIGATION TO REPORT ATTORNEY'S MISCONDUCT IS NOT THEREBY ASSUMED TO BE BIASED OR UNABLE TO REVIEW IMPARTIALLY CASES THAT CAME BEFORE HIM OR HER...


FROM CHILDHOOD ON WE ARE EDUCATED AND TRAINED FOR OUR OWN PROFESSION FOR OUR CIVIL AND CIVIC DUTIES, FOR MILITARY SERVICE, TO TAKE CARE OF BODILY NEED; TO BEHAVE WELL, EVEN TO APPRECIATE BEAUTY; BUT NEITHER OUR EDUCATION, NOR OUR UP BRINGING, NOR OUR EXPERIENCE PREPARES US IN THE SLIGHTEST FOR THE GREATEST TRIAL OF OUR LIVES. WE ARE EXPOSED THE LECTURES ON EVERYTHING UNDER THE SUN AND WE ARE EVEN HERDED TO LISTEN TO THEM.
BUT NO ONE IS GOING TO LECTURE US ABOUT THE TRUE AND EXTENDED SIGNIFICANCE AND CRIMINAL CODE; AND THE CODE THEMSELVES ARE NOT OPEN SHELVES IN OUR LIBRARIES, NOR SOLD IN

NEWSSTANDS, NOT DO THEY FALL INTO THE HANDS OF THE HEEDLESS YOUNG. IT SEEMS A VIRTUAL FAIRY TALE THAT SOMEWHERE, AT THE ENDS OF THE EARTH AND ACCUSED PERSON CAN AVAIL HIMSELF A LAWYER'S HELP. THIS MEANS HAVING BESIDE YOU IN THE MOST DIFFICULT MOMENT YOUR LIFE :

"A CLEAR MINDED" ALLY WHO KNOWS THE LAW.
AND I DID NOT HAVE THAT...

"A mistake repeated more than once is a decision"
Paulo Coelho

THANK YOU FOR ALLOWING ME TO RESPOND


RESPECTFULLY SUBMITTED



TUNC URAZ

*[signature]*


PROOF OF SERVICE

ON  02/02/23 I MAILED/SERVED A COPY OF OF THIS LETTER TO INGHAM COUNTY PROSECUTOR'S OFFICE VIA MDOC EXPITED LEGAL MAIL


TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

COURT OF APPEAL LANSING OFFICE
2023 FEB -7 AM 11:07
RECEIVED

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 01/30/2023 06:07:24

Please do not reply to this email

4) PERJURY BY JONATHAN C. ROTH GINTHER HEARING TESTIMONY 04/13/2022

Ginther hearing was granted 03/06/2020 and with Covid delays my first hearing was on 10/04/2021 (18 months later and another 6 months later on 4/13/2022 when I testified total of 24 months). (it was postponed because Roth was the prosecutor for Governor Kidnapping Plot, with U.S. Federal Courts during that time).

04/13/22 pg. 6 Line 3
WALSH TO ROTH
Q: DO YOU THINK THAT MR. PERRONE'S CONDITION AFFECTED HIS ABILITY TO PROPERLY DEFEND MR. URAZ DURING THE TRIAL?
A: I DO NOT
Q: WHAT DO YOU BASE THAT OPINION?
A: I'VE KNOWN PERRONE A LONG TIME, I WENT TO LAW SCHOOL WITH HIM. HE WAS IN MY SECTION IN MY FIRST YEAR OF LAW SCHOOL.
SO BY THE TIME WE TRIED THE CASE, I HAD KNOWN HIM PROBABLY 10,12 YEARS. I DIDN'T NOTICE ANYTHING DIFFERENT ABOUT HIM DURING THE COURSE OF TRIAL, THAN I DID ANY TIME BEFORE. I DON'T THINK THAT HE MADE ANY DECISIONS THAT INDICATED THAT HE WAS HAVING DIFFICULTIES MAKING GOOD DECISIONS, SO THERE WAS NOTHING THAT...I NOTICED THAT WOULD INDICATE THAT.

***PERJURY***#1

04/13/2022, pg 20 line 20
Crino : NOW SOMETIME AFTER THE JURY'S VERDICT YOU 'VE INFORMED THAT MR. PERRONE HAD SOME TYPE OF EPISODE. HOW IS IT THAT YOU WERE INFORMED OF THAT?
PG 21
A: BY THE EMAIL, IT WAS AROUND... I THINK IT WAS ON 12/02/2017, I RECEIVED AN EMAIL INDICATING THAT...HE HAD HAD WHAT WE REFER AS PRT PROCEEDINGS, I THINK IN OAKLAND COUNTY AND THAT IS THE EXTENT OF THE DETAIL THAT I KNOW
Q: PERRONE DID NOT REPRESENT THE DEFENDANT AT SENTENCING, SILVERTHORN DID ?
A: THAT'S CORRECT MR. PERRONE DID REPRESENT HIM AT A HEARING THAT WE HAD WITH---WITH YOUR HONOR IN THE JURY ROOM, SO SOMETIME BETWEEN VERDICT AND SENTENCING, SO THERE WAS SOME CONTINUED REPRESENTATION
Q: AND THAT WAS ACTUALLY AT THE DEFENDANTS REQUEST IF I RECALL
A : THAT IS CORRECT.

FACTS: PERRONE WAS MY APPOINTED ATTORNEY UNTIL 12/12/2017 AND BECAUSE OF HIS MENTAL IMPAIRMENTS PROSECUTOR ROTH OBJECTED PERRONE TO REPRESENT ME FOR SENTENCING ON 01/24/2018
ON 12/12/2017 JUDGES CHAMBERS HEARING ABOUT PERRONE MENTAL IMPAIRMENT STATUS.

FACT:

See "initial order after hearing on petition for mental health treatment" pgs 5/20 - 6/20 (this document was part of 12/18/2017 documents given to Silverthorn by prosecutor Koop)

FACTS ****AND "SUPPOSEDLY ONLY" THIS TWO PAGE DOCUMENT FAXED TO INGHAM COUNTY PROSECUTOR'S OFFICE ON 12/06/2017 FROM OAKLAND COUNTY PROBATE COURT, WHICH IS HARD TO

BELIEVE THAT REST OF PERRONE MENTAL PROBATE COURT DOCUMENTS WERE NOT SENT AT THE SAME TIME? AND PROSECUTOR KOOP CHOSE NOT TO SHARE THE REST OF THE PROBATE DOCS WITH SILVERTHORN (another cover up by Ingham County prosecutor's office)

*04/13/2022 GINTHER HEARING TESTIMONY PG. 43-51 MS. CRINO BADGERED MR. URAZ ABOUT 12/13/2017 DECISIONS MADE BY JUDGE TELLING HIM PERRONE WOULD BE REPLACED BY SILVERTHORN AND PERRONE WOULD HELP HIM OUT IF NEEDED FOR SENTENCING.

ALL I DID WAS TO ACKNOWLEDGED WHAT I HEARD FROM JUDGE, BUT MS. CRINO SOMEHOW BELIEVED THAT I AGREED TO THIS ARRANGEMENT.

WELL AFTER SEEING OAKLAND/CLINTON COUNTY RECORDS, ON 11/30/2017 JUDGE ORDERED PERRONE TO HAVE 90 DAYS OF MENTAL HEALTH TREATMENT 10 DAYS WAS ALREADY SPENT INTERMITTENTLY BETWEEN 11/14/2017 -11/30/2017.

PERRONE COULD NOT HAVE REPRESENTED ME ANYWAYS BECAUSE HE WAS ORDERED TO GO MENTAL HEALTH TREATMENT THROUGH COMMUNITY MENTAL HEALTH FOR 80 DAYS.

THIS IS WHY MR. ROTH INSISTED ON SWITCHING PERRONE. ON 12/12/2017 , ON 12/14/2017 SILVERTHORN WAS APPOINTED.

****FACT: MS. CRINO KEEP SAYING THAT MR. PERRONE'S MENTAL ILLNESS HAPPENED AFTER TRIAL BUT HE WAS STILL MY ATTORNEY ON RECORD UNTIL 12/13/2017 IN COURT HEARING WHEN IT WAS SWITCHED TO SILVERTHORN

"CONFLICT FREE ATTORNEY"

12/12/2017 hearing was held at judge's chambers (please request a transcript of both  hearings from Ms. Crino) in this meeting. :
Jonathan Roth, Charles Koop, Jacob Perrone, Eric Schroeder, Nick Fernandez were in attendance.

I WAS  DEPRIVED OF MY RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (12/12/2017, JUDGES IN-CHAMBERS MEETING) WHEN  (PERRONE) WAS PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO HIS CLIENTS? (Perrone admitted on record that he was not medicated before and during trial )pg.7 lines 4-9

AND on 12/13/2017 in court hearing about appointing SILVERTHORN

****PERJURY #2

 MR. ROTH'S ANSWERS TO PRIVATE INVESTIGATOR JAMES D. HOPPE

ROTH'S INTERVIEW ON 09/23/2021 JAMES D. HOPPE "HE IS NOT AWARE THAT PERRONE SUFFERED ANY MENTAL OR PHYSICAL HEALTH CRISIS" (see attached report)

ROTH NOT DISCLOSING ATTACHMENT 2 OF HIS BRIEF IN HIS TESTIMONY

Attachments #9 by Mr. Roth ;  Is talking about Ms. Elizabeth Allen Prosecutor at Ingham County sent an emal to ROTH about Perrone being "PRT'ed past two weeks and was calling Bill from therez he had a hearing this week in Clinton County (11/30/2017)

If Perrone was released , she was thinking about someone "Boeve" to patrol Roth's house randomly, she thinks it's more serious.

DEC 2nd 2017 email to Ms. Allen

Roth: He is concerned about Perrone's harassing calls, if he is released or not?

LANSING POLICE REPORT WAS FILED ON 11/20/2017, AND YES IT WAS "PRINTED" ON 12/05/2017 HOWEVER SOMEONE FROM INGHAM COUNTY PROSECUTOR OFFICE PROBABLY REQUESTED IT THAT IS WHY IT WAS PRINTED ON 12/05/2017

THE HEARING WAS AT OAKLAND COUNTY ON 11/30/2017, NOT AT CLINTON COUNTY, (INITIAL ORDER AFTER HEARING ON PETITION FOR MENTAL HEALTH TREATMENT" WAS HELD ON RECORD AT OAKLAND COUNTY PROBATE COURT  AND THAN IT WAS FAXED TO CLINTON COUNTY ON 12/06/2017

(OC FAX SERVER STANDS FOR OAKLAND COUNTY)

PLEASE PAY ATTENTION TO CASE NUMBERS CLINTON COUNTY IS : 17-29766-MI AND OAKLAND COUNTY IS 2017-380,077-MI

INTERESTINGLY MY ORIGINAL COPY THAT I HAVE FROM OAKLAND COUNTY DOES NOT HAVE FAX HEADING (see attached)

HOWEVER  OAKLAND COUNTY CASE NUMBER HAS LINE OVER IT AFTER IT WAS FAXED TO CLINTON COUNTY.

AND IT WAS FILED ON 12/06/2017 STAMP FROM CLINTON COUNTY

**Brenton, Erika**

| | |
|---|---|
| **From:** | Whipple, Leigh Ann |
| **Sent:** | Thursday, December 14, 2017 10:33 AM |
| **To:** | Roper, Valerie; Chillers, Diane; Roth, Jonathan; Koop, Chas; Brenton, Erika; Prieskorn, Amy |
| **Subject:** | ATTORNEY |

TUNC URAZ
16-1064-FH & 16-1065-FC
DUANE SILVERTHORN        P36964


*Offical date  Mr. Silverthorn appointed.*

RECEIVED
2023 FEB -7  AM 11: 08
COURT OF APPEAL
LANSING OFFICE

1

## Brenton, Erika

| | |
|---|---|
| **From:** | Lori- Silverthorn Law <offmgr.silverthornlaw@gmail.com> |
| **Sent:** | Tuesday, January 09, 2018 4:17 PM |
| **To:** | pa_policerpt |
| **Subject:** | PEOPLE v TUNC URAZ 16-2960-D01-FY |
| **Attachments:** | APP 010918.pdf; STIPULATION FOR ELECTRONIC DISCOVER010918.pdf |

Dear Sir/Madam:

Attached please find an Appearance and Stipulation for Electronic Discovery in the above-cited matter. Please forward copies of the police reports and any additional discovery to our office as soon as possible.

Thank you.

Lori Silverthorn
Administrative Legal Assistant

Duane D. Silverthorn, Esq.

## HOWELL
2130 W. Grand River Ave.
Howell, MI  48843
(517) 548-6767
(517) 548-6768

## OKEMOS
2155 Commons Parkway
Okemos, MI 48864
(517) 349-8259 -Telephone
(517) 349-1260 - Fax

This e-mail is covered under the Electronic Communications Privacy Act, 18 USC 2510-2521 and is legally privileged. The information contained in this e-mail is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify my office immediately at the above number and destroy the original message. Thank you.

**Brenton, Erika**

| | |
|---|---|
| **From:** | Brenton, Erika |
| **Sent:** | Wednesday, January 10, 2018 7:55 AM |
| **To:** | 'DDLSILVERTHORN@GMAIL.COM' |
| **Cc:** | 'jacob@perronelawpc.com'; Sheppard, Amy |
| **Subject:** | P v Tunc Uraz CC 16-001065-FC / CTN 16007836 |

Good morning Mr. Silverthorn,
We are in receipt of your appearance and e-stip.
The previous DA on this case, Jacob Perrone, has already received discovery in this matter. Please contact his office in order to receive discovery.

Thank you,

Erika Brenton
Legal Assistant
Ingham County Prosecutors Office
517-483-6209
ebrenton@ingham.org



1

Printed by:  mkrumbach

Printed date/time:   10/25/17 8:51

**Narratives**

Page 1 of 1

**LANSING POLICE DEPARTMENT**
**120 W MICHIGAN AVE**
**LANSING, MICHIGAN 48933**
**(517) 483-4600**

Incident Number: **LLA161027011556**

ENTERED DATE/TIME: 10/25/2017 08:41:48
NARRATIVE TYPE:  SUPPLEMENTAL
SUBJECT:  DETECTIVES ACTIONS
AUTHOR:  KRUMBACH, MATTHEW

Detectives Actions:

On 10/23/2017, R/O received information from the ICPO regarding possible defense witness Kathy Edmond, who
was a former neighbor of the accused Tunc Uraz.

On 10/24/2017, at approx.13:35 hours, R/O met with witness Kathryn Edmond at her residence of ███████
████████████        Mrs. Edmond provided her telephone number of ████████████

Statement of Kathryn Edmond:

Mrs. Edmond advised that she had been the neighbor of accused Tunc Uraz, for approx. the last ten to twelve
years, while he lived at ██████████ with his family.  Mr. Uraz lived with his wife, son, and mother in-law, until she
had passed away.  Mrs. Edmond described the Uraz family as good neighbors, up to the point accused Tunc
Uraz was placed under arrest for his current activity.

R/O inquired if Mrs. Edmond had a regular trash pick-up service, which she stated " Yes, Granger picks up our
trash."  Mrs. Edmond advised that Granger picks up everyone's trash on ███████ including her former neighbors
the Uraz family.  Edmond advised that trash pick-up day is every Tuesday.

26March2021

Dear Tunc Uraz

Referring to your request regarding your son  Tony Arda Uraz's (DOB:11October2005)  caring expenses monthly, please find below monthly expenses for him for 1st January-to 24March2021 . As you know, he has been in Turkish foster care since July  2018 ,I am trying to meet his expenses on the behalf of you from the money your friend sending me from your  ex bank account in US and by myself.

Your son  is seeing private psychologist since January 2019 , 2 times in a month  which  Dr's  1 hour therapy  session is 65 usd. So 65X2=130 USD monthly  fee on the behalf of you.

Psychiatrist at public hospital: Every month 50 usd and medicine monthly:25 usd
Besides, for corresponding with you via jpay app,video visit  I am paying 50  usd  monthly
His needs for clothing(shoes, pullover, pants etc)   monthly 80 usd sometimes 150 usd depending season
Dentist every 6 month to check his teeth 85 usd
monthly phone and internet bill: 130 usd
Ophthalmologist (eye doctor) 85 usd and also buy new eye glasses 165usd
Holiday trip for a week during school breaks: 550 usd including flight tickets,hotel accommodation and food, sightseeing tours
School expenses: stationery, books, notebooks, school bag, school bus, private  courses (for3,5 months until end of 2nd.term of school )etc. I paid for 3 months 1000 usd in total

### As a result monthly payment for your child

Psychologist fee:130 usd
Psychiatrist at public hospital and medicine :75 usd
Jpay and gtlvideo visit app:50 usd
Clothing:100 usd
Dentist:85 usd
Ophthalmologist (eye doctor) 85 usd
New eye glasses165usd
School expenses:333 usd monthly
Internet&phone  bill:130 usd
Weekend and school break Trips:100usd

### TOTAL:    1253 usd

### For 3month expenses in total:  3759 USD

Best Regards
Halime Ayşem Uraz

----- İletilmiş Mesaj -----
Kimden: Aysem UraZ < aysemu@yahoo.com>
Kime: Jacob A. Perrone < jacob@perronelawpc.com>
Gönderilen: 15 Eylül 2017 Cuma 18:28:54 GMT+3   9/15/2017
Konu: tunc ichat request

Dear Mr.Perrone please find enclosed ichat crimal records for tunc uraz and his jail mates.which will be helpful for case kind regards

----- İletilmiş Mesaj -----
Kimden: Emrah < aliemrahk@yahoo.com>
Kime: Jacob A. Perrone < jacob@perronelawpc.com>
Cc: Aysem UraZ < aysemu@yahoo.com>
Gönderilen: 18 Ekim 2017 Çarşamba 23:21:48 GMT+3   10/18/2017

Konu: Re: Tunc uraz additional witness list

Oh sorry just realized what you meant. No i do not know their contact info.

On Oct 18, 2017, at 11:44 AM, Jacob A. Perrone < jacob@perronelawpc.com> wrote:
Do you have contact information?

On Thu, Oct 12, 2017 at 9:12 PM, Emrah < aliemrahk@yahoo.com> wrote:
Mr. Perrone,

Tunc would like to add the following people to his witness list.

Jordan Lawalle
Kazam Sheikh
Andrew Nitchman
Noel Van Slenbrouck
Cihat Oz

Regards,
Emrah Kocak


--
Jacob A. Perrone (P-71915)
Perrone Law, P.C.
221 W. Lake Lansing Rd., Ste 200
East Lansing, MI 48823
Phone: (517) 351-0332
Fax: (517) 913-6287

Approved, SCAO

Original - Court
1st copy - Corrections
2nd copy - Corrections (for return)

5th copy - MI State Police CJIC
4th copy - Defendant
5th copy - Prosecutor

| STATE OF MICHIGAN 30TH JUDICIAL CIRCUIT INGHAM COUNTY | JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS | CASE NO 09-000034-FH-C30 |
|---|---|---|

ORI: MI-330055J
Police Report No.

Court Address
313 W. Kalamazoo Lansing, MI 48933

Court Telephone No. (517) 483-6500

| THE PEOPLE OF THE STATE OF MICHIGAN | V | Defendant name, address, and telephone no. REGINALD GARFIELD CLOSE |
|---|---|---|

| | CTN/TCN 33-08-010094-01 | SID | DOB |

Prosecuting attorney's name \ Bar no.
STUART J DUNNINGS III  P31089

Defendant attorney's name \ Bar no.
FREDERICK BLACKMOND  P29696

1. The Defendant was found guilty on 11/16/10 of the crime(s) stated below.

| Count | Plea* | CONVICTED BY Court | Jury | DISMISSED BY* | CRIME | CHARGE CODE(S) MCL citation/PACC Code |
|---|---|---|---|---|---|---|
| 5 | G | | | | CON SUB - DEL/MANU - METHAMPHETAMINE/ECSTASY / HAB II | 333.74012B1   / 769.10 |
| | | | | | | |
| | | | | | | |

*For plea: insert "G" for guilty plea, "NC" for nolo contendere, or "MI" for guilty but mentally ill. For dismissal: insert "D" for dismissed by court or "NP" for dismissed by prosecutor/plaintiff.

☐ 2. The conviction is reportable to the Secretary of State under MCL 257.625(21)(b).

☐ 3. HIV testing and sex offender registration is completed.

☐ 4. The defendant has been fingerprinted according to MCL 28.243.

Defendant's driver's license number

**IT IS ORDERED:**

☐ 5. Probation is revoked.

6. Participating in a special alternative incarceration unit is ☐ prohibited. ☐ permitted.

7. The defendant is sentenced to custody of the Michigan Department of Corrections. This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM Years | Mos. | Days | MAXIMUM Years | Mos. | DATE SENTENCE BEGINS | JAIL CREDIT Mos. | Days | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 12/22/10 | | 30 | | 20 | | | | 94 | |
| | | | | | | | | | | |
| | | | | | | | | | | |

■ 8. Sentence(s) to be served concurrent to count one in file 10-34-FH and file 09-1099-FH.

9. Defendant shall pay:

| State Minimum | Crime Victim | Restitution | Court Costs | Attorney Fees | Fine | Other Costs | Total |
|---|---|---|---|---|---|---|---|
| $68 | $ | $ | $ | $ | $ | $ | $68 |

The due date for payment is 12/22/10. Fine, costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty on the amount owed.

☐ 10. The concealed weapon board shall ☐ suspend for _____ days  ☐ permanently revoke the concealed weapon license, permit

number _____, issued by _____ County.

☐ 11. The defendant is subject to lifetime monitoring under MCL 750.520n.

12. Court recommendation:

December 22, 2010

Judge JAMES R GIDDINGS  Bar no. P13960

I certify that this is a correct and complete abstract from the original court records. The sheriff shall, without needless delay, deliver the defendant to the Michigan Department of Corrections at a place designated by the department.

(SEAL) CIRCUIT COURT

Deputy Court Clerk

MCL 765.15(2), MCL 769.1k, MCL 769.16a, MCL 775.22, MCL 780.766, MCR 6.427

CC 219b (3/10) JUDGMENT OF SENTENCE, COMMITMENT TO DEPARTMENT OF CORRECTIONS

CTN: 33-16004454-01 TM CI1

| STATE OF MICHIGAN 54A JUDICIAL DISTRICT 30L JUDICIAL CIRCUIT | INFORMATION FELONY | DISTRICT: 2016004454 CIRCUIT: |
|---|---|---|

| District Court ORI: MI- MI330075J 124 W. MICHIGAN AVE. LANSING, MI 48933 517-483-4433 | Circuit Court ORI: MI- 30L 313 W. KALAMAZOO P.O. BOX 40771 LANSING, MI 48901 517-483-6500 |
|---|---|

| | Defendant's name and address | Victim or complainant |
|---|---|---|
| THE PEOPLE OF THE STATE OF MICHIGAN | V Reginald Garfield Close Jr | ASHLEY CLOSE |
| | | Complaining Witness |
| | | OFC KURT MARTENS |
| | Sex: M    Race: Black | |

| Co-defendant(s) | | | | Date: On or about 07/01/2016 |
|---|---|---|---|---|

| City/Twp./Village City of Lansing | County in Michigan INGHAM | Defendant TCN K816752147A | Defendant CTN 33-16004454-01 | Defendant SID | Defendant DOB |
|---|---|---|---|---|---|
| Police agency report no. 33LLA 160701006706 | Charge See below | DLN Type: | Vehicle Type | Defendant DLN | |

[ ] A sample for chemical testing for DNA identification profiling is on file with the Michigan State Police from a previous case.

Witnesses

## STATE OF MICHIGAN, COUNTY OF INGHAM

**IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN:** The prosecuting attorney for this County appears before the court and informs the court that on or about 07/01/2016 at ▮▮▮▮▮ City of Lansing, Ingham County, the defendant:

**COUNT 1:** HOME INVASION - 1ST DEGREE
did break and enter, or did enter without permission a dwelling located at ▮▮▮▮▮ and, while entering, present in, or exiting, did commit an assault, and while entering, present in, or exiting the dwelling was armed with a pistol, a dangerous weapon, and/or while entering, present in, or exiting the dwelling, ▮▮▮▮▮ and/or ▮▮▮▮▮ and/or ▮▮▮▮▮ were lawfully present therein; contrary to MCL 750.110a(2). [750.110A2]
FELONY: 20 Years and/or $5,000.00. A consecutive sentence may be imposed for any other conviction arising out of the same transaction.

**COUNT 2:** WEAPONS - CARRYING CONCEALED
did carry a dangerous weapon, to wit: a pistol, concealed on or about his or her person; contrary to MCL 750.227. [750.227]
FELONY: 5 Years or $2,500.00; Mandatory forfeiture of weapon or device [See MCL 750.239]

**COUNT 3:** WEAPONS - FIREARMS - POSSESSION BY FELON
did possess a firearm when ineligible to do so because he or she had been convicted of Deliver & Manufacture Controlled Substance Less Than 50 Grams, a felony punishable by imprisonment for 4 or more years, and the requirements for regaining eligibility had not been met; contrary to MCL 750.224f. [750.224F]
FELONY: 5 Years and/or $5,000.00; Mandatory forfeiture of weapon or device [See MCL 750.239]

**COUNT 4:** WEAPONS - FELONY FIREARM
did carry or have in his/her possession a firearm, to-wit: a pistol, at the time he/she committed or attempted to commit a felony, to-wit: Home Invasion and/or Felon in Possession; contrary to MCL 750.227b. [750.227B-A]
FELONY: 2 Years consecutively with and preceding any term of imprisonment imposed for the felony or attempted felony conviction; Mandatory forfeiture of weapon or device [See MCL 750.239]

9/15/2017                                      ICHAT : Printer friendly search results

     

**MICHIGAN.GOV**

Michigan's
Official
Website

Search Results - Printer Friendly Format

**Data Searched on:**   [ Close ]  [ Print ]

| Last Name | First Name | Middle Initial | DOB | Race | Sex | More Criteria |
|-----------|-----------|----------------|-----|------|-----|---------------|
| ALLEN | CHARLES | | 8/1/1993 | Black | Male | |

Based on the information provided, the following is a certified result of the search as of 9/15/2017 10:01 AM

---

**Important: Information Contained in this Record**

THE RECORD RESULTS PROVIDED HERE ARE BASED ON A COMPUTER MATCH AS EXPLAINED ON THE ICHAT HOME PAGE. THE ICHAT SYSTEM HAS LIMITATIONS THAT MAY CAUSE FALSE POSITIVES OR FALSE NEGATIVES. PLEASE REVIEW THE RESULTS CAREFULLY AND DO NOT TAKE ADVERSE ACTION BASED SOLELY ON THIS RECORD. IF YOU CANNOT DETERMINE THAT THESE RESULTS DO NOT BELONG TO THIS INDIVIDUAL, AND THE INDIVIDUAL IS DISPUTING THE RECORD, PLEASE PROVIDE THAT INDIVIDUAL WITH A COPY OF THIS REPORT AND OFFER THAT INDIVIDUAL THE OPPORTUNITY TO PERFORM A RECORD CHALLENGE BY SUBMITTING FINGERPRINTS. THIS IS EXPLAINED AT THE BOTTOM OF THIS PAGE. SINCE ARRESTS, CONVICTIONS, OR CRIMINAL RECORD DELETIONS MAY OCCUR AT ANY TIME, DO NOT USE THIS INFORMATION FOR FUTURE CLEARANCES.

---

```
MICHIGAN CRIMINAL HISTORY RECORD INFORMATION MEETING DISSEMINATION CRITERIA
FOR SID: 3518170J AS OF 09/15/2017

   NAM: ALLEN,CHARLES MARICE              SID: 3518170J
   RAC: B        SEX: M       DOB: 08/01/1993
   HGT: 600      WGT: 188     HAI: BRO
   EYE: BRO      POB: MI
                                          MNU:


   CIZ:



   ADDITIONAL IDENTIFIERS AND COMMENTS:

   NAM: ALLEN,CHARLES MAURICE

   DOB: 08/19/1993
```

```
CRIMINAL TRACKING NUMBER: 331000779601          INCIDENT DATE: 09/07/2010
TCN/OCA: K811020593H/100907062209
NAME USED: ALLEN,CHARLES MARICE
```

| ARREST SEGMENT | : | CHARGE SEGMENT | : | JUDICIAL SEGMENT |
|---|---|---|---|---|
| DATE: 04/01/2011 | : | DATE: 09/07/2010 | : | DATE: 05/02/2011 |
| MI3351900 | : | MI330013A | : | MI330075J |
| LANSING POLICE | : | INGHAM COUNTY | : | 54A DISTRICT COURT |
| DEPARTMENT | : | PROSECUTING ATT | : | LANSING |
| OCA: 100907062209 | : | 1 CNT MCL 750.3564A | : | CFN: 11-01251 |
| 1 CNT OF 2300 | : | MISDEMEANOR | : | |
| MISDEMEANOR | : | LARCENY - $200 OR | : | CNT-1 MCL 750.3564A |
| LARCENY | : | MORE BUT LESS THAN | : | MISDEMEANOR |
| DISP: CHGD BY PROSECUTOR | : | $1,000 | : | LARCENY - $200 OR |
| | : | | : | MORE BUT LESS THAN |
| | : | | : | $1,000 |
| | : | | : | DISP: PLED GUILTY |
| | : | | : | SENT/REMARKS: |
| | : | | : | F/C/R $908/PROB 6 MO |

```
CRIMINAL TRACKING NUMBER: 331200227301          INCIDENT DATE: 03/21/2012
TCN/OCA: T512123907H/12-C-2396
NAME USED: ALLEN,CHARLES MARICE
```

| ARREST SEGMENT | : | CHARGE SEGMENT | : | JUDICIAL SEGMENT |
|---|---|---|---|---|
| DATE: 03/21/2012 | : | DATE: 03/21/2012 | : | DATE: 05/14/2012 |
| MI3313300 | : | MI330013A | : | MI330085J |
| INGHAM COUNTY SHERIFF | : | INGHAM COUNTY | : | 55TH DISTRICT COURT |
| DEPARTMENT | : | PROSECUTING ATT | : | MASON |
| OCA: 12-2396 | : | 1 CNT MCL 257.6251-A | : | CFN: 1200906 |
| 1 CNT OF 5400 | : | MISDEMEANOR | : | |
| MISDEMEANOR | : | OPERATING WHILE | : | CNT-2 MCL 257.6251-A |
| TRAFFIC OFFENSE | : | INTOXICATED | : | MISDEMEANOR |
| DISP: CHGD BY PROSECUTOR | : | 1 CNT MCL 257.6251C | : | OPERATING WHILE |
| | : | MISDEMEANOR | : | INTOXICATED |
| | : | OPERATING WITH A HIGH | : | DISP: PLED GUILTY |
| | : | BAC | : | SENT/REMARKS: |
| | : | | : | F/C/R $1857/PROB 12 |
| | : | | : | MO/JAIL 93 DAYS |

```
CRIMINAL TRACKING NUMBER: 331200569901          INCIDENT DATE: 08/06/2012
TCN/OCA: K812062764M/120806008968
NAME USED: ALLEN,CHARLES MARICE
```

| ARREST SEGMENT | : | CHARGE SEGMENT | : | JUDICIAL SEGMENT |
|---|---|---|---|---|
| DATE: 06/14/2012 | : | DATE: 08/07/2012 | : | DATE: 10/02/2012 |
| MI3351900 | : | MI330013A | : | MI330075J |
| LANSING POLICE | : | INGHAM COUNTY | : | 54A DISTRICT COURT |
| DEPARTMENT | : | PROSECUTING ATT | : | LANSING |
| OCA: 120806008968 | : | 1 CNT MCL 750.237 | : | CFN: 12-03596 |
| 2 CNT OF 5200 | : | MISDEMEANOR | : | |
| MISDEMEANOR | : | WEAPONS - FIREARM - | : | CNT-2 MCL 750.237 |
| WEAPONS OFFENSE | : | POSSESSION UNDER THE | : | MISDEMEANOR |
| DISP: CHGD BY PROSECUTOR | : | INFLUENCE | : | WEAPONS - FIREARM - |
| | : | 1 CNT MCL 752.862-A | : | POSSESSION UNDER THE |
| | : | MISDEMEANOR | : | INFLUENCE |
| | : | WEAPONS - FIREARMS - | : | DISP: PLED GUILTY |
| | : | CARELESS | : | SENT/REMARKS: |
| | : | DISCHARGE/PROPERTY | : | F/C/R $75/JAIL 90 DAYS |
| | : | DAMAGE $50 OR LESS | : | |

```
============================================================================
CRIMINAL TRACKING NUMBER: 331300122201          INCIDENT DATE: 02/19/2013
TCN/OCA: K813070376M/130219001697
NAME USED: ALLEN,CHARLES MARICE
============================================================================
ARREST SEGMENT          : CHARGE SEGMENT         : JUDICIAL SEGMENT
======================= : ====================== : ==========================
DATE: 02/19/2013        : DATE: 02/20/2013       : DATE: 05/21/2013
MI3351900               : MI330013A              : MI330075J
LANSING POLICE          : INGHAM COUNTY          : 54A DISTRICT COURT
  DEPARTMENT            :   PROSECUTING ATT      :   LANSING
OCA: 130219001697       : 1 CNT MCL 750.812      : CFN: 13-00745
1 CNT OF 1300           :   MISDEMEANOR          :
  MISDEMEANOR           :   DOMESTIC VIOLENCE    : CNT-1 MCL 750.812
  ASSAULT EXCLUDING     :                        :   MISDEMEANOR
  SEXUAL                :                        :   DOMESTIC VIOLENCE
DISP: CHGD BY PROSECUTOR :                       : DISP: PLED GUILTY
                        :                        : SENT/REMARKS:
                        :                        : F/C/R $845/PROB 9 MO
============================================================================
CRIMINAL TRACKING NUMBER: 331300361801          INCIDENT DATE: 05/20/2013
TCN/OCA: K813091552M/130520005156
NAME USED: ALLEN,CHARLES MARICE
============================================================================
ARREST SEGMENT          : CHARGE SEGMENT         : JUDICIAL SEGMENT
======================= : ====================== : ==========================
DATE: 05/20/2013        : NO DATA RECEIVED       : DATE: 05/28/2013
MI3351900               :                        : MI330075J
LANSING POLICE          :                        : 54A DISTRICT COURT
  DEPARTMENT            :                        :   LANSING
OCA: 130520005156       :                        : CFN: 13-02210
2 CNT OF 5400           :                        :
  MISDEMEANOR           :                        : CNT-2 MCL 257.6256B
  TRAFFIC OFFENSE       :                        :   MISDEMEANOR
1 CNT OF 2400           :                        :   OPERATING - WHILE
  FELONY                :                        :   INTOXICATED/IMPAIRED
  STOLEN VEHICLE        :                        :   - 2ND OFFENSE NOTICE
DISP: WARRANT REQUESTED :                        : DISP: PLED GUILTY
                        :                        : SENT/REMARKS:
                        :                        : F/C/R $1405/PROB 15
                        :                        :   MO/JAIL 180 DAYS
============================================================================
CRIMINAL TRACKING NUMBER: 331500823601          INCIDENT DATE: 11/26/2015
TCN/OCA: K815109220A/151125030834
NAME USED: ALLEN,CHARLES MARICE
============================================================================
ARREST SEGMENT          : CHARGE SEGMENT         : JUDICIAL SEGMENT
======================= : ====================== : ==========================
DATE: 11/26/2015        : DATE: 11/27/2015       : DATE: 12/16/2015
MI3351900               : MI330013A              : MI330075J
LANSING POLICE          : INGHAM COUNTY          : 54A DISTRICT COURT
  DEPARTMENT            :   PROSECUTING ATT      :   LANSING
OCA: 151125030834       : 2 CNT MCL 750.841B     : CFN: 15-05401
2 CNT OF 1300           :   FELONY               :
  FELONY                :   ASSAULT BY           : CNT-2 MCL 750.812
  ASSAULT EXCLUDING     :   STRANGULATION        :   MISDEMEANOR
  SEXUAL                :                        :   DOMESTIC VIOLENCE
DISP: CHGD BY PROSECUTOR :                       : DISP: PLED GUILTY
                        :                        : SENT/REMARKS:
```

9/15/2017                                              ICHAT : Printer friendly search results

```
                                    :                    : JAIL 52 DAYS
=================================================================================
CRIMINAL TRACKING NUMBER: 331600000801           INCIDENT DATE: 01/02/2016
TCN/OCA: K816109600E/16010200025
NAME USED: ALLEN,CHARLES MARICE
=================================================================================
ARREST SEGMENT         : CHARGE SEGMENT        : JUDICIAL SEGMENT
====================== : ===================== : ========================
DATE: 01/02/2016       : DATE: 01/02/2016      : DATE: 01/13/2016
MI3351900              : MI330013A             : MI330075J
LANSING POLICE         : INGHAM COUNTY         : 54A DISTRICT COURT
  DEPARTMENT           :   PROSECUTING ATT     :   LANSING
OCA: 16010200025       : 1 CNT MCL 333.74032D  : CFN: 16-00026
1 CNT OF 5700          :   MISDEMEANOR         :
  MISDEMEANOR          :   CONTROLLED SUBSTANCE : CNT-2 MCL 750.813
  INVASION OF PRIVACY  :   - POSSESSION OF     :   MISDEMEANOR
1 CNT OF 1300          :   MARIJUANA OR        :   DOMESTIC VIOLENCE
  FELONY               :   SYNTHETIC EQUIVALENTS :   AND/OR KNOWINGLY
  ASSAULT EXCLUDING    : 1 CNT MCL 750.110A4   :   ASSAULTING A
  SEXUAL               :   FELONY              :   PREGNANT INDIVIDUAL
1 CNT OF 3500          :   HOME INVASION - 3RD :   - 2ND OFFENSE NOTICE
  MISDEMEANOR          :   DEGREE              : DISP: PLED NOLO CONTD
  DANGEROUS DRUGS      : 1 CNT MCL 750.812     : SENT/REMARKS:
DISP: CHGD BY PROSECUTOR :  MISDEMEANOR        : F/C/R $1215/PROB 24 MO
                       :   DOMESTIC VIOLENCE   :
=================================================================================
                                                 INCIDENT DATE: 08/22/2008
TCN/OCA: K808004318X/080822061650
NAME USED: ALLEN,CHARLES MARICE
=================================================================================
ARREST SEGMENT         : CHARGE SEGMENT        : JUDICIAL SEGMENT
====================== : ===================== : ========================
DATE: 08/22/2008       : NO DATA RECEIVED      : NO DATA RECEIVED
MI3351900              :                       :
LANSING POLICE         :                       :
  DEPARTMENT           :                       :
OCA: 080822061650      :                       :
1 CNT OF 1300          :                       :
  MISDEMEANOR          :                       :
  ASSAULT EXCLUDING    :                       :
  SEXUAL               :                       :
DISP: WARRANT REQUESTED :                       :
=================================================================================
                                                 INCIDENT DATE: 06/12/2013
TCN/OCA: V613006350L/INGHAM
NAME USED: ALLEN,CHARLES MARICE
=================================================================================
ARREST SEGMENT         : CHARGE SEGMENT        : JUDICIAL SEGMENT
====================== : ===================== : ========================
DATE: 06/12/2013       : NO DATA RECEIVED      : NO DATA RECEIVED
MI3336400              :                       :
EAST LANSING POLICE DEPT :                      :
OCA: INGHAM            :                       :
1 CNT OF 5000          :                       :
  MISDEMEANOR          :                       :
  OBSTRUCTING JUDICIARY :                      :
  OR CONGRESS OR       :                       :
  LEGISLATURE OR       :                       :
  COMMISSION           :                       :
```

9/15/2017                                        ICHAT : Printer friendly search results

```
DISP: NOTICE TO APPEAR       :                                    :
===========================================================================
DISSEMINATION OF CRIMINAL HISTORY INFORMATION IS SUBJECT TO MICHIGAN AND FEDERAL
RULES AND REGULATIONS. REFER TO LEIN ADMINISTRATIVE RULES AND TITLE 28, USC.
USE OF THIS RECORD IS LIMITED TO THE PURPOSE OF INQUIRY.
PURPOSE CODE USED NOT FORWARDED TO NCIC III
END MSG.
©Michigan State Police : http://www.michigan.gov/ichat [9/15/2017 10:01 AM]
```

## Procedures for Correcting a Record

The steps for correcting a mistaken or inaccurate record are as follows:

### 1. Records That Do not Belong to the Individual Whose Name has Been Searched

- If the individual believes that the record does not belong to him or her, the individual should go to the nearest law enforcement agency and request to be fingerprinted on a state applicant fingerprint card for the purposes of "Record Challenge"; call ahead to verify fees and/or service hours.  There is no charge for such fingerprinting if it is done at a Michigan State Police post.
- This card should be mailed to the Criminal Justice Information Center with a copy of this record and a letter requesting the Criminal Justice Information Center to verify that the enclosed criminal record does not belong to him/her. There is no fee. The address is:

> **Michigan State Police -- CJIC**
> **Attn:  Record Challenge**
> **P. O. Box 30634**
> **Lansing, MI 48909**

### 2. Inaccurate Records

- Sometimes records inadvertently contain errors. For example, the nature or date of the conviction might be wrong, or the record might contain a conviction that should have been removed from the record.
- In such cases the individual should obtain certified copies of the court judgment or other documents which show that the information contained on the criminal record is incorrect. If the proof provided is satisfactory, the Michigan State Police will modify the record accordingly.  You may send the documents to:

> **Michigan State Police -- CJIC**
> **Attn:  Criminal History Record Correction**
> **P. O. Box 30634**
> **Lansing, MI 48909**

`Close`  `Print`

Copyright © 2001-2016 State of Michigan - State Police

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/21/2022 7:40:04 PM EST, Letter ID: 1638422481
Location : MCF
Housing : UNIT 4100B01

RECEIVED
NOV 30 2022
LARRY S. ROYSTER
CLERK SUPREME COURT

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 11/21/2022 19:40:08

Please do not reply to this email

1) AMICUS CURIAE

MICHIGAN SUPREME COURT

AMICUS CURIAE BRIEF FOR

PEOPLE V TYSON 2022 MICH LEXIS 1142 (6/17/22)
SC# 162968
COA# 350932

"ORAL ARGUMENT REQUESTED"

MR. TUNC URAZ IS ASKING THIS HONORABLE COURTS' PERMISSION TO GRANT HIM TO ADMIT HIS AMICUS CURIAE FOR THE CASE NAMED ABOVE PER THE ORDER OF MICHIGAN SUPREME COURT, MCR 7.305 (H)(4).

TITLE:

IF DIMINISHED CAPACITY DEFENSE IS NOT ALLOWED AS A DEFENSE IN MICHIGAN SINCE CARPENTER CASE (2001)
THEREFORE:
WHY MENTALLY IMPAIRED (DIMINISHED CAPACITY REPRESENTATION ) COURT APPOINTED ATTORNEY IS ALLOWED TO REPRESENT INDIGENT DEFENDANTS?

WHAT IS THE DIFFERENCE?

THESE TWO STATEMENTS ARE INTERTWINED WITH EACH OTHER.

IF ONE CANNOT FORM A SPECIFIC INTENT TO COMMIT A CRIME DUE TO THEIR DIMINISHED CAPACITY THEN (which is not allowed as a defense in Michigan)
THEN WHY :

IF CAN ONE (ATTORNEY) FORM A SPECIFIC INTENT/STRATEGY TO DEFEND SOMEONE IN COURTS WHEN THEY HAVE DIMINISHED CAPACITY? (mental illness)

THE KEY COMPONENT OF THE DIMINISHED CAPACITY DEFENSE IS THE EVIDENCE THAT THE DEFENDANT COULD NOT FORM THE "REQUISITE INTENT" TO COMMIT THE CRIME. THAT IS, THE DEFENSE IS AN ATTEMPT TO AVOID OR REDUCE CRIMINAL RESPONSIBILITY FOR PARTICULAR OFFENSE BASED ON LACK OF MENTAL CAPACITY TO FORM THE SPECIFIC INTENT REQUIRED AS AN ELEMENT OF THE OFFENSE. HENCE, A DEFENDANT IS NOT ENTITLED TO OFFER EVIDENCE OF A LACK OF MENTAL CAPACITY FOR THE PURPOSE OF AVOIDING OR REDUCING CRIMINAL RESPONSIBILITY BY NEGATING THE INTENT ELEMENT OF AN OFFENSE.

HOWEVER THE flaw in MCR 9.121 Section (C) asking the respondent/ sole practioner answering their own grievances who may suffer from a mental disability may not recognize that he or she even has a disability which may

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/21/2022 7:40:04 PM EST,    Letter ID: 1638422481
Location : MCF
Housing : UNIT 4100B01

mitigate the alleged misconduct.

ONE MORE ASPECT OF CLINICAL DEPRESSION IS THAT IT HAS USUALLY LASTED SUCH A LONG TIME THAT BECOMES THE NORM AND IS RECOGNIZED BY THE VICTIM (IN THIS CASE ATTORNEY) AS NORMAL. ANASOGNOSIA one denying their own mental illness

(SEE ARTICLE BY CHARLES F. JUSTIAN. 75 MI BAR JNL.1026 OCTOBER 1996)

FEATURE: MALPRACTICE/ ATTORNEY DISCIPLINE: A TIME FOR CHANGE; HELPING ATTORNEYS WHO HAVE MENTAL OR PHYSICAL ILLNESSES THAT PRECIPITATE GRIEVANCES

PLEASE CHANGE MCR 9.121 SECTION (C) stop asking what is wrong the very same person who is mentally impaired to defend themselves.

PERRONE'S MENTAL/IMPAIRMENTS EPISODES

PERRONE WAS PRESCRIBED AN ANTIPSYCHOTIC MEDICATION (OLANZAPINE) SCHIZO-AFFECTIVE DISORDER, BIPOLAR TYPE AND HIS DISEASE MANIFESTED IN PARANOIA AND MOOD SWINGS (MANIC-DEPRESSIVE ILLNESS), HISTORY OF MR. PERRONE'S ACTIONS (AT LEAST SINCE 2015 (see attached PRT forms) BEFORE MY TRIAL IN (2017) WERE ACTS OF DEEPLY AND FUNDAMENTALLY DECLINING DELUSIONAL AND IRRATIONAL MOTIVATION ON HIS PART.

PERRONE WAS ACTIVELY PSYCHOTIC "WAS EXPERIENCING DELUSIONS, AND APPEARED TO BE RESPONDING TO "INTERNAL STIMULI" "EXPERIENCED HALLUCINATIONS"
PERRONE WAS EXPERIENCING A SUBSTANTIAL DISORDER OF THOUGHT AND MOOD THAT SIGNIFICANTLY IMPAIRED HIS JUDGEMENT, BEHAVIOR, CAPACITY TO RECOGNIZE REALITY AND ABILITY TO COPE WITH THE ORDINARY DEMANDS OF LIFE SURROUNDING THE TIME OF THE IMPAIRMENTS.
HE EXHIBITED TANGENTIAL AND DISORGANIZED THOUGHT, LOOSE ASSOCIATIONS WITH REALITY, DELUSIONAL THOUGHT CONTEXT AND REPORTED AUDITORY HALLUCINATIONS THAT, IN BOTH EVALUATORS' OPINIONS, SIGNIFICANTLY IMPAIRED HIS ABILITY TO RECOGNIZE REALITY AT THE TIME OF TRIAL.

PERRONE LACKED THE SUBSTANTIAL CAPACITY TO APPRECIATE THE NATURE AND QUALITY OF THE SITUATION.

PERRONE LIKELY DID HAVE "THE CAPACITY TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF THE LAW (i.e. the ability to assess and choose alternative behaviors before, during and after trial).

NEVERTHELESS, BECAUSE PERRONE LACKED THE ABILITY TO APPRECIATE THE NATURE AND QUALITY OF HIS ACTS.

THEREFORE PERRONE MET THE CRITERIA FOR LEGAL INSANITY:

MCL 768.21a(1) Person declined legally insane, Burden of proof

INSANITY IS AN AFFIRMATIVE DEFENSE REQUIRING PROOF THAT "AS RESULT OF MENTAL ILLNESS PERRONE "LACK(ED) SUBSTANTIAL CAPACITY EITHER TO APPRECIATE THE NATURE AND QUALITY OR THE WRONGFULNESS OF HIS CONDUCT TO THE REQUIREMENTS OF THE LAW.

DOCTORS EVALUATED PERRONE RELIED ON THE FIRST ALTERNATIVE THAT PERRONE WAS UNABLE TO "APPRECIATE" THE WRONGFULNESS OF HIS ACTIONS.

I DID SENT A BRIEF TO HONORABLE
JUDGE BERNSTEIN IN FEBRUARY OF 2019 BASED ON AN ARTICLE AT :
(see attached)

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/21/2022 7:40:04 PM EST,    Letter ID: 1638422481
Location : MCF
Housing : UNIT 4100B01

MICHIGAN LAWYERS WEEKLY #228
"Should the mental health be on bar exam application?"
I had limited information about my Mentally impaired attorney Jacob A. Perrone (P71915).

AND THEN :

MICHIGAN LAWYERS WEEKLY NEWSPAPER

SEE VOLUME 34 NUMBER 26 APRIL 27 2020
"Michigan Supreme Court revises mental health inquiry on bar exam application : "conduct-based question"  will
replace "diagnoses-based questions" , meaning potential lawyer/attorney will be asked a conduct based question "if
any behavior IN THE PAST 5 YEARS COULD CALL INTO QUESTION their ability to practice law properly.

SO IN THE STATE BAR OF MICHIGAN IS ASKING MENTALLY IMPAIRED POTENTIAL ATTORNEY CANDIDATES
:  WHAT IS WRONG WITH THEM ONLY 5 YEARS PRIOR TO THEIR APPLICATION ANYTHING BEFORE THAT
CUT OFF DATE DOES NOT MATTER. (IF THEY HAVE THE CHARACTER AND FITNESS TO BE AN ATTORNEY)

THIS IS PEOPLE'S LIFE AT STAKE HERE :

WOULD  YOU  FLY  WITH  A  PILOT  WHO  IS  MENTALLY  IMPAIRED,  NOT  MEDICATED,  UNTRATED,
UNDIAGNOSED?

WOULD YOU LET A DOCTOR/SURGEON TO OPERATE ON YOU WHO HAS A MENTAL ILLNESS? OR NOT
MEDICATED?  WHAT WOULD HAPPEN IF ONE DIES UNDER THESE CIRCUMSTANCES?

THESE ARE ALL MALPRACTICES.
 WHY IT IS NOT THE SAME FOR ATTORNEYS WITH MENTAL ILLNESS?

ONE'S ORGANIC BRAIN DAMAGE SCHIZOPHRENIA AND BIPOLAR DISORDER CAN CONSPRIRE TO CREATE
SEVERAL MENTAL IMPAIRMENT PSYCHOSIS AND OTHER SERIOUS MENTAL HEALTH PROBLEMS THAT
BURDENED  HIM/HER  COULD  LEAD  TO  DANGEROUS  BEHAVIOR.    BUT  HIS  BEHAVIOR  WAS  A
MANIFESTATION OF SERIOUS ILLNESS NOT A REFLECTION OF HIS CHARACTER.

---

You have received a **jpay** letter, the fastest way to get mail

---

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/21/2022 7:40:03 PM EST,    Letter ID: 1638422466
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 11/21/2022 19:40:07

Please do not reply to this email

2)AMICUS CURIAE

THUS FOR A DIMINISHED CAPACITY DEFENSE TO EXIST, THE DEFENDANT MUST HAVE A MENTAL ILLNESS,.AS DEFINED BY MCL 330.1400(g) that rendered him unable to formulate the specific intent to commit a crime. Ppl v Mette , 243 Mich App 318 (2000)

LEGAL SANITY "RANDOM BEHAVIOR" WITH NO "THOUGHT" BEHIND HER ACTIONS" ONE CANNOT APPRECIATE WRONGFULNESS OR NOT BE ABLE TO CONFORM

MCL 330.1400 (g); "MENTAL ILLNESS" MEANS : A SUBSTANTIAL DISORDER OF THOUGHT OR MOOD THAT SIGNIFICANTLY IMPAIRS JUDGEMENT, BEHAVIOR, CAPACITY TO RECOGNIZE REALITY OR ABILITY TO COPE WITH THE ORDINARY DEMANDS OF LIFE.

THE ADA OF 1990 42 USCS 12101 DEFINES A "DISABILITY" AS "A PHYSICAL OR MENTAL IMPAIRMENT THAT SUBSTANTIALLY LIMITS ONE OR MORE OR THE MAJOR LIFE ACTIVITIES OF AN INDIVIDUAL 42 USCS 12102 (2)(A) BECAUSE THE "PHRASE" "SUBSTANTIALLY LIMITS" APPEARS IN THE ACT IN THE PRESENT INDICATIVE VERB FORM, THE LANGUAGE IS PROPERLY READ AS REQUIRING THAT A PERSON BE PRESENTLY - NOT POTENTIALLY OR HYPOTHETICALLY SUBSTANTIALLY LIMITED IN ORDER TO DEMONSTRATE DISABILITY.
A "DISABILITY" EXISTS ONLY WHERE AN IMPAIRMENT "SUBSTANTIALLY LIMITS" MAJOR LIFE ACTIVITY, NOT WHERE IT MIGHT, COULD , OR WOULD BE SUBSTANTIALLY LIMITING IF MITIGATING MEASURES WERE NOT TAKEN.
A PERSON WHOSE PHYSICAL OR MENTAL IMPAIRMENT IS CORRECTED BY MEDICATION OR OTHER MEASURES DOES NOT HAVE AN IMPAIRMENT THAT "PRESENTLY" SUBSTANTIALLY LIMITS A MAJOR LIFE ACTIVITY.
BELLAMY V CAGDELL 974 F2D 302 (2nd Cir COA).
MENTALLY IMPAIRED LAWYER IN BANC HEARING

ATTORNEY PERRONE'S MENTAL IMPAIRMENT WAS ONLY REPORTED BY ME AND ANOTHER INGHAM COUNTY PROSECUTOR.

INGHAM COUNTY JUDGES, PROSECUTORS AND STAFF IGNORED THIS MISCONDUCT BY PERRONE AND FAILED TO REPORT IT TO ATTORNEY GRIEVANCE COMMISSION PER MRPC 8.3, 8.4, THEY IGNORED THEIR ETHICAL OBLIGATIONS.

FROM CHILDHOOD ON WE ARE EDUCATED AND TRAINED FOR OUR OWN PROFESSION FOR OUR CIVIL AND CIVIC DUTIES, FOR MILITARY SERVICE, TO TAKE CARE OF BODILY NEED; TO BEHAVE WELL, EVEN TO APPRECIATE BEAUTY; BUT NEITHER OUR EDUCATION, NOR OUR UP BRINGING, NOR OUR EXPERIENCE PREPARES US IN THE SLIGHTEST FOR THE GREATEST TRIAL OF OUR LIVES. WE ARE EXPOSED THE LECTURES ON EVERYTHING UNDER THE SUN AND WE ARE EVEN HERDED TO LISTEN TO THEM.
BUT NO ONE IS GOING TO LECTURE US ABOUT THE TRUE AND EXTENDED SIGNIFICANCE AND CRIMINAL CODE; AND THE CODE THEMSELVES ARE NOT OPEN SHELVES IN OUR LIBRARIES, NOR SOLD IN NEWSSTANDS, NOT DO THEY FALL INTO THE HANDS OF THE HEEDLESS YOUNG. IT SEEMS A VIRTUAL FAIRY TALE THAT SOMEWHERE, AT THE ENDS OF THE EARTH AND ACCUSED PERSON CAN AVAIL HIMSELF A LAWYER'S HELP. THIS MEANS HAVING BESIDE YOU IN THE MOST DIFFICULT MOMENT YOUR LIFE :
"A CLEAR MINDED" ALLY WHO KNOWS THE LAW.

---

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/21/2022 7:40:03 PM EST,     Letter ID: 1638422466
Location : MCF
Housing : UNIT 4100B01


AND I DID NOT HAVE THAT.....


PLEASE ACCEPT MY AMICUS CURIAE BRIEF WITH ATTACHED DOCUMENTS AND EXHIBITS.


RESPECTFULLY SUBMITTED

TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442


FOOTNOTES:


E-MAIL MESSAGE FROM MS. LISA ZYTKO DATED 09/05/2022 ABOUT PERRONE'A MENTAL IMPAIRMENT HEARING SCHEDULED ON 11/30/2017.

see websites below Mr. Uraz's Ingham County Jail experiences

https://silenced.in/michigan/voices/tunc-uraz

www.yahoo.com/entertainment/hung-myself-prisoner-share-tales
-174021194.html

>Perrone is still practicing as an appeal attorney as of now see: COA # 362737
11/03/2022

9/15/2017 — ICHAT : Printer friendly search results

**ICHAT**
Internet Criminal History Access Tool

Search Results - Printer Friendly Format

Close   Print

**Data Searched on:**

| Last Name | First Name | Middle Initial | DOB | Race | Sex | More Criteria |
|---|---|---|---|---|---|---|
| CLOSE | REGINALD | | 3/26/1982 | Black | Male | |

Based on the information provided, the following is a certified result of the search as of 9/15/2017 9:59 AM

**Important: Information Contained in this Record**

THE RECORD RESULTS PROVIDED HERE ARE BASED ON A COMPUTER MATCH AS EXPLAINED ON THE ICHAT HOME PAGE. THE ICHAT SYSTEM HAS LIMITATIONS THAT MAY CAUSE FALSE POSITIVES OR FALSE NEGATIVES. PLEASE REVIEW THE RESULTS CAREFULLY AND DO NOT TAKE ADVERSE ACTION BASED SOLELY ON THIS RECORD. IF YOU CANNOT DETERMINE THAT THESE RESULTS DO NOT BELONG TO THIS INDIVIDUAL, AND THE INDIVIDUAL IS DISPUTING THE RECORD, PLEASE PROVIDE THAT INDIVIDUAL WITH A COPY OF THIS REPORT AND OFFER THAT INDIVIDUAL THE OPPORTUNITY TO PERFORM A RECORD CHALLENGE BY SUBMITTING FINGERPRINTS. THIS IS EXPLAINED AT THE BOTTOM OF THIS PAGE. SINCE ARRESTS, CONVICTIONS, OR CRIMINAL RECORD DELETIONS MAY OCCUR AT ANY TIME, DO NOT USE THIS INFORMATION FOR FUTURE CLEARANCES.

MICHIGAN CRIMINAL HISTORY RECORD INFORMATION MEETING DISSEMINATION CRITERIA
FOR SID: 2280532IX AS OF 09/15/2017

| RNM: CLOSE,REGINALD GARFIELD | | |
|---|---|---|
| RAC: B | SEX: M | DOB: 03/26/1982 | SID: 2280532IX |
| HGT: 603 | WGT: 200 | HAI: BLK | |
| EYE: BRO | FBI: MI | | NMN: |

CII:

SCAR/MARK/TATTOO:   TAT R ARM   TAT BACK

ADDITIONAL IDENTIFIERS AND COMMENTS:

RNM: CLOSE, REGINALD   CLOSE, REGINALD GARFIELD JR

---

9/15/2017 — ICHAT : Printer friendly search results

CRIMINAL TRACKING NUMBER: 9003232231401
ICN/OCA: A10345995S3F/022727   INCIDENT DATE: 10/30/2002
NAME USED: CLOSE, REGINALD GARFIELD

| ARREST SEGMENT | CHARGE SEGMENT | JUDICIAL SEGMENT |
|---|---|---|
| DATE: 10/30/2002 | NO DATA RECEIVED | DATE: 10/31/2002 |
| MI6498100 | | MI6301157 |
| OAK PARK DPS | | 45B OAK PARK DISTRICT |
| OCA: 022727 | | COURT |
| 1 CNT OF 5400 | | CFN: 0232179DKOT |
| TRAFFIC OFFENSE | | CHG-1 MCL |
| ORDINANCE VIOL. | | ORDINANCE VIOL. |
| DISP: CHGD BY PROSECUTION | | DISP: PLED GUILTY |
| | | SENT/REMARKS: |
| | | DROVE WHILE UNLIC OR |
| | | NOT VALID CONF-10D |
| | | F/C/R-5360 |
| | | CHG-2 MCL |
| | | ORDINANCE VIOL. |
| | | DISP: PLED GUILTY |
| | | SENT/REMARKS: |
| | | POSS CONTROLLED |
| | | SUBSTANCES F/C/R-$125 |

CRIMINAL TRACKING NUMBER: E2011229S601
ICN/OCA: D103015635W/5916767   INCIDENT DATE: 04/24/2003
NAME USED: CLOSE,REGINALD GARFIELD

| ARREST SEGMENT | CHARGE SEGMENT | JUDICIAL SEGMENT |
|---|---|---|
| DATE: 04/24/2003 | DATE: 04/24/2003 | DATE: 07/01/2003 |
| MI8240900 | MI8200283A | MI8210952 |
| DISTRICT POLICE | WAYNE COUNTY | 3RD CIRCUIT COURT |
| DEPARTMENT | PROSECUTING ATT | CRIMINAL DIV DETROIT |
| OCA: 1111111111111 | 1 CNT MCL 750.110A2 | CFN: 0300537001 |
| 1 CNT OF 5200 | FELONY | CHG-1 MCL 750.110A4 |
| ATTEMPT-FELONY | HOME INVASION - 1ST | FELONY |
| WEAPONS OFFENSE | DEGREE | HOME INVASION - 3RD |
| DISP: CHGD BY PROSECUTION | | DEGREE |
| | | DISP: PLED GUILTY |
| | | SENT/REMARKS: |
| | | 1YEAR TO SYM |
| | | CHG-2 MCL 750.110A4 |
| | | FELONY |
| | | HOME INVASION - 3RD |
| | | DEGREE |
| | | DISP: PLED GUILTY |
| | | SENT/REMARKS: |
| | | CONFINEMENT OVER 18MTH |
| | | 00DAY TO 05YR 00MTH |
| | | 00DAY PROB 05YR 00MTH |
| | | 00MTH 00DAY |

ICHAT: Printer friendly search results

## Left record

CRIMINAL TRACKING NUMBER: 500010005401
TCN/OCA: K09000063773/081210005169
NAME USED: CLOSE, REGINALD GARFIELD

INCIDENT DATE: 12/10/2008

**ARREST SEGMENT**

DATE: 12/17/2008
MI3951900
LANSING POLICE
DEPARTMENT
OCA: 081210005169
2 CRI OF 3500

FELONY
DANGEROUS DRUGS
DISP: CHGD BY PROSECUTOR

**CHARGE SEGMENT**

DATE: 12/18/2008
MI3306634
INGHAM COUNTY
30TH CIRCUIT COURT
PROSECUTING AIT
LANSING
4 CRT MCL 333.74012A4
CRI: 200934

CRT-A MCL 333.74012A4
FELONY
CONTROLLED
SUBSTANCE-DEL/MFG
(COCAINE, HEROIN OR
ANOTHER NARCOTIC)
LESS THAN 50 GRAMS

1 CRT MCL 333.74012281
FELONY
CONTROLLED SUBSTANCE
DELIVERY/MANUFACTURE
DISP: PLED GUILTY
JAIL 90D, CREDIT 90D

**JUDICIAL SEGMENT**

METHAMPHETAMINE/ECSTA
SY
- MAINTAINING A DRUG
HOUSE
MISDEMEANOR
- CONTROLLED SUBSTANCES
CONC

## Middle record

CRIMINAL TRACKING NUMBER: 539000148301
TCN/OCA: K09000030829M/090221011007
NAME USED: CLOSE, REGINALD GARFIELD

INCIDENT DATE: 02/22/2009

**ARREST SEGMENT**

DATE: 02/23/2009
MI3951900
LANSING POLICE
DEPARTMENT
OCA: 090221011067
1 CRI OF 5400

MISDEMEANOR
OPERATING-LICENSE
SUSPENDED, REV,
DENIED/ALLOWING SUSP
PERSON TO
OPERATE-2ND OR SUB
OFF

**CHARGE SEGMENT**

DATE: 02/23/2009
MI3901752
INGHAM COUNTY
54A DISTRICT COURT
LANSING
1 CRT MCL 257.9041C
CRI: 09-01267

CRT-1 MCL 257.9041C
MISDEMEANOR
TRAFFIC OFFENSE
OPERATING-LICENSE
SUSPENDED, REV,
DENIED/ALLOWING SUSP
PERSON TO
OPERATE-2ND OR SUB
OFF
DISP: PLED GUILTY
SENT/REMARKS:

## Right record (top)

CRIMINAL TRACKING NUMBER: 538900076601
TCN/OCA: K09902522X/091510001606
NAME USED: CLOSE, REGINALD GARFIELD

INCIDENT DATE: 05/18/2009

**CHARGE SEGMENT**

DATE: 05/20/2009
MI3300353
INGHAM COUNTY
30TH CIRCUIT COURT
PROSECUTING AIT
LANSING
CRI: 20091099

CRT-2 MCL 333.74012A5
MISDEMEANOR
CONTROLLED SUBSTANCE
USE
(NARCOTIC/COCAINE/ECS
TASY)
DISP: PLED GUILTY
JAIL 90D, CREDIT 90D

## Right record (bottom)

CRIMINAL TRACKING NUMBER: 593300070301
TCN/OCA: K019090261LJ/1312070013894
NAME USED: CLOSE, REGINALD GARFIELD

INCIDENT DATE: 12/07/2013

**ARREST SEGMENT**

DATE: 12/07/2013
MI3951900
LANSING POLICE
DEPARTMENT
OCA: 1312070013894
1 CRI OF 5400

MISDEMEANOR
TRAFFIC OFFENSE
OPERATING - LICENSE
SUSPENDED, REVOKED,
DENIED
DISP: CHGD BY PROSECUTOR

**CHARGE SEGMENT**

DATE: 12/09/2013
MI3300353A
INGHAM COUNTY
54A DISTRICT COURT
LANSING
CRI: 13-05287

CRT-1 MCL 257.9041C
MISDEMEANOR
OPERATING-LICENSE
SUSPENDED, REV,
DENIED/ALLOWING SUSP
PERSON TO
OPERATE-2ND OR SUB
OFF
DISP: PLED GUILTY
SENT/REMARKS:

9/15/2017

ICHAT - Printer friendly search results

```
TCN*/OCA: D9135260739J/13-81483                 : F/C/R §75
                                                 :
NAME USED: CLOSE, REGINALD GARFIELD             :
                                                 :
===================================================================
ARREST SEGMENT      :  CHARGE SEGMENT           :  JUDICIAL SEGMENT
                    :                            :
DATE: 12/15/2013    :  NO DATA RECEIVED         :  INCIDENT DATE: 12/15/2013
MI231280G           :                            :
EATON COUNTY SHERIFF:                            :
  DEPT             :                            :
CCA: 20131818       :  DATE: 12/12/2014         :
1 CNT OF 9500       :  MI230082J                :
  MISDEMEANOR      :  LANSING POLICE           :
  OBSTRUCTING POLICE:  54A DISTRICT COURT       :
DISP: WARRANT REQUESTED:  CHARLOTTE             :
                    :  CTN: 13-2327            :
                    :                            :
                    :  CHG-1 MCL 750.81D1       :
                    :   MISDEMEANOR            :
                    :   ASSAULT - RESISTING/    :
                    :   OBSTRUCTING           :
                    :  DISP: FILED GUILTY       :
                    :  SENT/REMARKS:           :
                    :  F/C/R §236J/JAIL 2 DAYS :
===================================================================
ARREST SEGMENT      :  CHARGE SEGMENT           :  JUDICIAL SEGMENT
                    :                            :
TCN*/OCA: KS1107022T/1506062023152              :  INCIDENT DATE: 06/04/2015
                                                 :
NAME USED: CLOSE, REGINALD GARFIELD JR          :
                                                 :
DATE: 06/04/2015    :  NO DATA RECEIVED         :
MI351900            :                            :
LANSING POLICE      :  DATE: 06/17/2015        :
  DEPARTMENT        :  MI3300757               :
CCA: 1506062023152  :  54A DISTRICT COURT       :
1 CNT OF 5400       :  LANSING                 :
  ORDINANCE VIOL   :  CTN: 13-02577           :
  TRAFFIC OFFENSE  :                            :
DISP: WARRANT REQUESTED:  CHG-1 MCL 257.311     :
                    :   ORDINANCE VIOL         :
                    :   OPERATING WITHOUT A    :
                    :   LICENSE ON PERSON       :
                    :  DISP: FILED GUILTY       :
                    :  SENT/REMARKS:           :
```

```
CRIMINAL TRACKING NUMBER: 3316D0445401          : F/C/R §75/JAIL 13 DAYS
TCN*/OCA: KS1675214YA/16071030670G             :
                                                 :
NAME USED: CLOSE, REGINALD GARFIELD JR          :
                                                 :
===================================================================
ARREST SEGMENT      :  CHARGE SEGMENT           :  JUDICIAL SEGMENT
                    :                            :
DATE: 07/01/2016    :  DATE: 07/01/2016         :  INCIDENT DATE: 07/01/2016
MI230925J           :                            :
LANSING POLICE      :  INGHAM COUNTY            :
  DEPARTMENT        :  PROSECUTING ATT          :
DCA: 16071030670G   :  1 CNT MCL 750.110A2      :
2 CNT OF 2300       :   FELONY                  :
  MISDEMEANOR      :   HOME INVASION - 1ST    :
  ASSAULT EXCLUDING:   DEGREE                  :
  SEXUAL           :  1 CNT MCL 750.224F       :
1 CNT OF 1300       :   FELONY                  :
  FELONY           :   WEAPONS - FIREARMS -    :
  BURGLARY          :   POSSESSION BY FELON     :
  ASSAULT EXCLUDING:  1 CNT MCL 750.227        :
  SEXUAL           :   FELONY                  :
DISP: CHRG BY PROSECUTOR:   WEAPONS-CARRYING   :
                    :   CONCEALED             :
                    :  1 CNT MCL 750.812        :
                    :   MISDEMEANOR            :
                    :   DOMESTIC VIOLENCE      :
```

```
TCN*/OCA: DA1420859K/14064260299                : F/C/R §75/JAIL 13 DAYS
                                                 :
NAME USED: CLOSE, REGINALD GARFIELD JR          :
                                                 :
===================================================================
ARREST SEGMENT      :  CHARGE SEGMENT           :  JUDICIAL SEGMENT
                    :                            :
DATE: 06/24/2014    :  NO DATA RECEIVED         :  INCIDENT DATE: 04/24/2014
MI234900            :                            :
DETROIT POLICE      :                            :
  DEPARTMENT        :                            :
CCA: 14064260208    :                            :
1 CNT OF 5000       :                            :
  MISDEMEANOR      :                            :
  OBSTRUCTING JUDICIARY:                        :
  LEGISLATURE OR    :                            :
  COMMISSION        :                            :
DISP: WARRANT REQUESTED:                        :
```

```
                                                 : F/C/R §75
                                                 :
                                                 :
===================================================================
                    :  CHARGE SEGMENT           :  JUDICIAL SEGMENT
                    :                            :
                    :  DATE: 02/13/2017         :  INCIDENT DATE: 07/01/2016
                    :  MI300552J                :
                    :  30TH CIRCUIT COURT       :
                    :  LANSING                 :
                    :  CTN: 2016655            :
                    :                            :
                    :  CHG-5 MCL 750.812        :
                    :   MISDEMEANOR            :
                    :   DOMESTIC VIOLENCE      :
                    :  DISP: FOUND GUILTY       :
```

https://apps.michigan.gov/ICHAT/PrinterFriendlyResults.aspx?Id=17538700

https://apps.michigan.gov/ICHAT/PrinterFriendlyResults.aspx?Id=17528700

Procedure for Correcting a Record

The steps for correcting a mistaken or inaccurate record are as follows:

1. Records That Do not Belong to the Individual Whose Name has Been Searched
   - If the individual believes that the record does not belong to him or her, the individual should go to the nearest law enforcement agency and request to be fingerprinted on a state applicant fingerprint card for the purposes of "Record Challenge"; call ahead to verify fees and/or service hours. There is no charge for such fingerprinting if it is done at a Michigan State Police post.
   - The card should be mailed to the Criminal Justice Information Center with a copy of this record and a letter requesting the Criminal Justice Information Center to verify that the enclosed criminal record does not belong to him/her. There is no fee. The address is:

DISSEMINATION OF CRIMINAL HISTORY INFORMATION IS SUBJECT TO MICHIGAN AND FEDERAL RULES AND REGULATIONS. REFER TO MI ADMINISTRATIVE RULES AND TITLE 28, USC. USE OF THIS RECORD IS LIMITED TO THE PURPOSE OF INQUIRY.

8/4/2017

ICHAT - Printer friendly search results

## Inaccurate Records

- Sometimes records inadvertently contain errors. For example, the nature or date of the conviction might be wrong, or the record might contain a conviction that should have been removed from the record.
- In such cases the individual should obtain certified copies of the court judgment or other documents which show that the information contained on the criminal record is incorrect. If the proof provided is satisfactory, the Michigan State Police will modify the record accordingly. You may send the documents to:

Michigan State Police -- CRC
Attn: Record Challenges
P.O. Box 30634
Lansing, MI 48909

Michigan State Police -- CRC
Attn: Criminal History Record Correction
P.O. Box 30634
Lansing, MI 48909

[ Print ]   [ Close ]

# Court of Appeals, State of Michigan

## ORDER

People of MI v Tunc Uraz

Docket Nos.   343695; 343696

LC Nos.   16-001064-FH; 16-001065-FC

Thomas C. Cameron
Presiding Judge

Douglas B. Shapiro

Anica Letica
Judges

The motion to seal the exhibits attached to Defendant-Appellant's supplemental standard 4 brief is GRANTED.  This Court finds good cause to seal the exhibits based on the grounds stated in the motion, and determines there are no less restrictive means to adequately and effectively protect the interest asserted. MCR 7.211(C)(9)(e).

The Clerk shall disclose or provide copies of any order or opinion entered in this appeal, MCR 8.119(I)(5); MCR 7.211(C)(9)(c), but sealed pleadings or other contents of the file shall not be disclosed or made available for public viewing.

The Clerk is directed to forward a copy of this order to the Clerk of the Supreme Court and to the State Court Administrative Office.  MCR 8.119(I)(7); MCR 7.211(C)(9)(c).

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 5, 2022
Date

_____
Chief Clerk

# Court of Appeals, State of Michigan

## ORDER

Thomas C. Cameron
  Presiding Judge

People of MI v Tunc Uraz

Docket Nos.    343695; 343696

Douglas B. Shapiro

LC Nos.      16-001064-FH; 16-001065-FC

Anica Letica
  Judges

The motion to file a supplemental Standard 4 brief after remand is GRANTED, but is limited to the issues pertaining to the ineffective assistance of counsel claim.

The supplemental brief filed with the motion is accepted.  A responsive brief may be filed within 14 days of the Clerk's certification of this order.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

November 17, 2022
Date

Chief Clerk

**STATE OF MICHIGAN**

**IN THE COURT OF APPEALS**

**PEOPLE OF THE STATE OF MICHIGAN**

Plaintiff-Appellee

**Lower Court No.s** 16-1064 FH & 16-1065 FC

**Honorable Clinton Canady III**
COA#s 343695 & 343696

-vs-

**TUNC URAZ,**

Defendant-Appellant.

_____/

**INGHAM COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee
_____

**SUSAN K. WALSH (P40447)**
Attorney for Defendant-Appellant
_____

**APPELLANT'S MOTION TO ALLOW FILING OF SUPPLEMENTAL STANDARD 4 BRIEF ON APPEAL REGARDING _GINTHER_ HEARING AND DENIAL OF NEW TRIAL**

NOW COMES Defendant, **TUNC URAZ**, through his attorney, SUSAN K. WALSH, and moves this Honorable Court to grant this motion stating:

1) Defendant-Appellant filed his supplemental brief on August 26, 2022.

2) Plaintiff-Appellant filed their supplemental brief on September 12, 2022.

3) This case has not yet been scheduled for oral argument.

RECEIVED by MCOA 11/9/2022 3:25:00 PM

4)   This Court has authority under MCR 7.216(A)(7) to enter any judgment or order or grant further or different relief as the case may require.  Rejecting Mr. Uraz's brief would inevitably lead to collateral appeals under MCR 6.500 et. seq., creating additional burdens for the trial courts of this state as well as for this Court in the future.

     WHEREFORE, Defendant respectfully requests that this Honorable Court grant this motion and allow for entry of Mr. Uraz's Supplemental Standard 4 brief which is attached as Appendix A.

     Respectfully submitted,

     BY:  /s/ Susan K. Walsh
     SUSAN K. WALSH (P 40447)
     P.O. Box 157
     Northville, MI 48167

Dated: November 9, 2022

APPENDIX A HAS BEEN FILED SEPARATELY
(Appendix A does not contain the attachments but these will be filed in the event that this Court grants this motion)

RECEIVED by MCOA 11/9/2022 3:25:00 PM

STATE OF MICHIGAN COURT OF APPEALS

Supplemental Standard 4 Brief by Defendant after Ginther Hearings

People of the State of Michigan

v.                                               C.O.A. 343695 & 343696

                                                 Case LC. 16-1064-FH - 16-1065-FC

TUNC URAZ

        Defendant

================================/

STATEMENT OF APPELLATE JURISDICTION

Jurisdiction was conferred through Const. 1963; Art 1&20, MCL 600.308(1); MCL 770.3; MCR 7.203(A) MCR 7.204(A)(2), MCR 6.425(F)(3). The final judgement was 01/24/2018. Petition of counsel was made on 01/26/2018 Pursuant to MCR 6.425 (F)(3). The claim of appeal issued 02/04/2018. Ginther Hearing was GRANTED on 03/06/2020. In-Person Ginther Hearings held on 10/04/2021 and 04/13/2022. Lower Court Ordered denial for new trial on 08/08/2022.

STATEMENT OF QUESTIONS:

I.  WAS DEFENDANT DEPRIVED OF HIS RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (12/12/2017, JUDGES IN-CHAMBERS MEETING) WHEN HIS COUNSEL (PERRONE) WAS PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO HIS CLIENTS

    WAS DEFENDANT DEPRIVED AN ATTORNEY ON 12/13/2017 IN COURT HEARING, CRITICAL STAGE FOR SIXTH AMENDMENT PURPOSES INCLUDES CIRCUMSTANCE IN WHICH ACCUSED MUST FIND HIMSELF CONFRONTED JUST AS AT TRIAL, BY THE PROCEDURAL SYSTEM, OR BY HIS EXPERT ADVERSARY, OR BY BOTH?

    DEFENDANT SAYS: Yes
    PROSECUTION SAYS: No

II. WAS ATTORNEY PERRONE MENTALLY IMPAIRED AT LEAST 2 YEARS PRIOR (2015) TO DEFENDANT'S TRIAL " 10-31-17 to 11-09-17 ". DID PERRONE END UP IN A MENTAL HOSPITAL TWICE WITH IN THE SAME MONTH AFTER THE TRIAL? (ON 11/14/2017 AND ON 11/20/2017.

    DEFENDANT SAYS: Yes
    PROSECTION SAYS: No

*** LANSING POLICE DEPARTMENT REPORT ON 11/20/2017, BODY CAM FOOTAGE ABOUT PERRONE'S ERRATIC, IRRATIONAL BEHAVIORS" WAS SENT TO MR. GARY CHAMBON ON 09/13/22 TO BE AVAILABLE AS PART OF DEFENDANT'S STANDARD 4 BRIEF.

"PROSECUTION AND COURTS FAILED TO PROVIDE DEFENDANT ABOVE PROBATE RECORDS TO DEFENDANT AND HIS APPEAL ATTORNEY AS A BRADY MATERIAL FOR GINTHER HEARING ON 10/04/2021 AND 04/13/2022.

III WAS DEFENDANT OVER SCORED FOR OV 9, OV 10, OV 13 ON HIS PSIR WHICH INCREASED HIS SENTENCING GUIDELINE, POINTS DUE TO HAVING A DIFFERENT ATTORNEY REPRESENTED HIM ON SENTENCING DAY?

DEFENDANT SAYS: Yes
PROSECUTION SAYS: No

1) Conflict-Free Representation  ( i-ϑϑ)

Index of Cases

People v Bailey, 2019 Mich App Lexis 5750 (2019)

People v Bailey, 2008 Mich App 227 (2008)

People v Baskin, 145 Mich App 526; 378 NW2d 535 (1985)

People v Clyburn, 55 Mich App 454; 222 NW2d 775 (1974)

People v Dobek, 274 Mich App 58, 63; 732 NW2d 546 (2007)

People v Kregger, 335 Mich 457; 56 NW2d 349 (1953)

People v Landwer, 254 Ill App 3d 129 (1993)

People v Mitchell, 454 Mich 145 (1997)

People v Smith, 456 Mich 543 (1998)

People v Willing, 267 Mich App 208 (2005)

Mitchell v Mason (on remand) 325 F3d 732 (CA6, 2003)

Olden v US f3d 561 (CA6, 2000)

Downs v Commonwealth, 2020 KY LEXIS 222 (2020) Supreme Court of Kentucky ***
(See Exhibit A).

U.S. v Gonzales-Lopez, 548 U.S. 140 (2006)

U.S. v Schor, 418 F2d 26 (2nd. Cir. (1969)

Holloway v Arkansas, 435 U.S. 475 (1978)

Hopt v Utah, 110 U.S. 574, 4 SCt 202; 28 L.ed 262 (1884)


MCR 6.104

MCR 9.121

MCLS 330.1401

MCLS 600.934

MCLS 600.937

MCLS 600.940


Anasognosia (one denying their own Mental Illness)

U.S. Const. Am VI Const 1963, Art 1 & 20

RECEIVED by MCOA 11/9/2022 3:25:00 PM

2) Jacob A. Perrone's mental impairment documents (Oakland and Clinton County Probate Court "person requiring treatment" (PRT FORMS) (29-38)

He was sent to Mental Hospital involuntarily twice 3 days (11/14/2017 and 7 days (11/20/2017) after Defendant's trial completed (11/09/2017)

See attached documents from Oakland and ClintonCounty Probate Courts which were obtained (July and August 2022) Under FOIA and based on Jonathan Roth's testimony on 04/13/2022, and Ingham County Prosecutor's office (Prosecutor's file) Exhibit-B.

These documents were not shared with Defendant nor with his Appeal Attorney before both Ginther Hearing on (10/04/2021 and 04/13/2022). This is major Brady material violation.

1) See pages 002/008 - 003/008
"Petition for mental health treatment" request filled by Joseph V. Perrone (Jacob A. Perrone's father) dated 11/14/2017 where Perrone was admitted to UOFM hospital by 9:00 am

2) See Clinical Certificates by two Psychiatrist about Perrone's condition

First Hospital: 11/13/2017
UOFM Hospital, Ann abror
See pg. 6 004/008 - 005/008

Mr. Perrone was at UOFM Hospital (Mental Ward) in Ann Arbor by 9:00 am on 11/14/2017 see Dr. Rachel L. Glick's evaluation of Perrone by 11:30 am

Second Hospital: 11/14/2017 by 10:00 pm. Saginaw, MI. see pgs 006/008 - 007/008

On 11/14/2017 Perrone was sent Saginaw Health Source White Pine Mental (involuntarily) hospital on the same day by 10:00 pm. See attached Dr. Usha Movva's Evaluation of Perrone on 11/15/2017 at 9:00 am

3) He left early without completing treatment on 11/17/2017 (see letter dated 11/24/2017 by Health Source letter sent to Clinton County Probate Court to Sandra Burk)

4) Lansing police department case report # 175106153 (see attached) Dated 11/20/2017 (Body cam footage was sent to Court of Appeals senior administrator Mr. Gary Chambon on 09/13/2022.

Petition to mental health treatment (by Lansing police officer Mcbride, Perrone's father and Perrone's wife Ashley Perrone) second time.

5) Third hospital 11/20/2017
He was sent to (involuntarily) Havenwyck Mental Hospital in Auburn Hills, Mi Where he refused treatment (see attached Demand for hearing document by Carmella Mitchell dated 11/21/2017

6) 11/28/2017 Ms. Carol Polly, social worker: patient requires hospitalization, no insight, refusing medication (Order and report on alterative Mental Health Treatment).

RECEIVED by MCOA 11/9/2022 3:25:00 PM

7) Perrone was ordered to be seen by Judge Hallmark of Oakland County. And appointed Ms. Lisa Zatyko where Mr. Perrone did not want to be seen by an attorney, he did not testify at the court about his condition on 11/30/2017. (See attached e-mail message from Ms. Zatyko dated 09/03/22).

8) See "initial order after hearing on petition for mental health treatment" pgs. 5/20 - 6/20. He was order to complete 10 days in hospital and 90 days outpatient treatment Community Support Services."
The respondent shall take medication as prescribed attend counseling and therapy sessions as directed and maintain residence as directed" signed by Judge Hallmark on 11/30/2017.

9) On 12/12/2017 he went on the record saying that he still could represent me for my sentencing (where again he perjured by saying I was Ok with it, yet he was still under treatment). He was representing his own interest at that hearing where I did not have "conflict free attorney" to represent my interest. He admitted on record that he was unmedicated before and during trial.

FACT
PERRONE COULD NOT HAVE REPRESENTED DEFENDANT REGARDLESS DUE TO COURT ORDERED MENTAL HEALTH TREATMENT FOR 90 DAYS.

10) See prosecution later dated 12/18/2017, telling Mr. Duane Silverthorn that "out an abundance caution: they were appointing him not Perrone. (not shared with Defendant). See Exhibit A.

3) Sentencing Issues for OV's see attachment (39-48) Exhibit C
OV 9 MCL 777.39
OV 10 MCL 777.40
OV 13 MCL 777.43

People v Carll, Mich App 690 (2018)
People v Cannon, 481 Mich 152 (2008)
People v Frasisco, 474 Mich 82 (2006)
People v Huston, 489 Mich 451 (2011)
People v Jamison, 292 Mich App 440 (2011)
People v Lockridge, 698 Mich 358 (2015)
People v Mc Craw, 484 Mich 120 (20019)
Statev v Melton, 821 S.E.2d 424 (N.C. 2018)
Townsend v Burke, 334 U.S. 736; 68 SCt 1252; 92 L.Ed.2d 1690 (1984)
U.S v Crosby Scotus

Statues and Rules
MCR 6.120
MRE 801 hearsay
MCL 777.39
MCL 777.40
MCL 777.43
MCL 777.14(6)
MCLS 777.62
MDOC Policy Dir. 06.01.140
U.S. Constitution v Amend., VI Amend., Fourteenth Amend.
Michigan Const. 1963 Art 1 & 17

EXHIBIT D—5

ISSUES AND NEW EVIDENCE DEFENDANT PUT ON RECORD AT HIS GINTHER HEARING TESTIMONY ON 04/13/2022

PERRONE'S MISHAPS PRETRAL AND WITNESS DEBACLE ON EVIDENTIARY HEARING (10/20/2017 pg 124-147)
PRETRIAL MOTIONS WERE NOT FILED ON TIMELY MANNER SEE PRETRIAL HEARINGS 08/15/2017, 10/11/2017, 10/20/2017 FIRST 5 PAGES OF ALL HEARINGS WHERE JUDGE IS QUESTIONING PERRONE WHY IS HE LATE OR NOT READY FOR THESE MOTIONS.
EVEN THE PROSECUTOR ROTH MADE COMMENT ABOUT PERRONE'S BRIEF DID NOT MAKE ANY SENSE (10/11/2017 pg. 8)

EVIDENTIARY HEARING TESTIMONY (10/20/2017) USED AGAINST DEFENDANT (PEOPLE V D'ANGELO 401 MICH 167) (1977) HN8
(PEOPLE V KANKA 2006 MICH APP 3570 (2006) PINPOINT 4 AND 5), IF DEFENDANT CHOOSES NOT TO TESTIFY, DEFENDANT'S EVIDENTIARY HEARING COULD NOT BE USED AGAINST HIM.

MSU GUN INCIDENT, (PAST BAD ACTS MRE 404b , it was found prejudicial and was denied by judge on 10/20/2017 and allowed back in first day of trial 10/31/2017).
DEFENDANT'S STATEMENTS TO MSU HR USED AGAINST HIM AT HIS CRIMINAL TRIAL , GARRITY RIGHTS (IN GARRITY, 385 U.S. AT 500)

PERSON WITH BIPOLAR TRAITS (manic depressive psychosis ) LASTS 2-3 WEEKS (started before trial and crashed right after)

DEFENDANT'S WITNESS LIST FILED VERY LATE by Perrone on 10/11/2017 amended on 10/23/2017.
DID NOT SUBPOENA ANY WITNESSES DIRECTLY CONNECTED TO THE TIRAL.
Perrone did not know who is who on the list he was very confused about it.
MDOC Prisoners was not writ until 11/6/2017 (middle of the trial) , HE WANTED TO HAVE THE CLOSING ARGUMENT ON 11/07/2017 AND THEN BRING IN THE MDOC WITNESSES.
PERRONE DID NOT DO ANY INVESTIGATION NOR CONTACTED NOR SUBPOENAED ANY OF THE DEFENSE WITNESSES. HE DIDN'T KNOW WHO IS WHO ON THE LIST, MIXING UP NAMES,
see evidentiary hearing pgs 10/20/2017 124-147 (witness debacle)

DID NOT IMPEACH JAILHOUSE INFORMANTS BASED ON THEIR CRIMINAL BACKGROUND. MRE 609

PROSECUTION TRIED TO MINIMIZE THEIR CRIMINAL BACKGROUNDS "CALLING THEM MISDEMEANORS". (SEE ATTACHED CRIMINAL RECORDS)

DEFENDANT'S RETAINED ATTORNEY (CHRIS BERGSTROM) TESTIFIED AGAINST HIM AT THE TRIAL (VIOLATED ATTORNEY CLIENT PRIVILEGE) , PROSECUTOR KOOP BECAME A WITNESS BY SEEING THE ALLEGED LETTER SENT TO MS. MELKE (SEE SENTENCING TRANSCRIPT FOR FIRST STALKING CHARGE) (11/02/2016)

THE ALLEGED E-MAIL ACCOUNT WAS CREATED BY ERIKA MELKE IN 2009,
DEFENDANT DID NOT SENT THAT LETTER. (emelke20@gmail.com)



RECEIVED by MCOA 11/9/2022 3:25:00 PM



ALLEGED STOLEN CONCERT TICKETS (Dismissed HOME INVASION CHARGE 05/25/2016) IT WAS NOT MENTIONED ON POLICE REPORT ON 05/25/2016.
TICKETS WENT ON SALE ON (05/26/2016) WHERE YEAR BEFORE SHE PURCHASED THEM ELECTRONICLY, THERE WERE NO PHYSICAL TICKETS AT ALL.
ERIKA MELKE LIED ON THE STAND AND POLICE REPORTS.
ON 08/16/2016 POLICE REPORT SHE MENTIONED "MISSING CONCERT TICKETS" FROM ALLEGED HOME INVASION ON 05/25/2017

DEFENDANT DID NOT HAVE CONFLICT FREE ATTORNEY TO REPRESENT HIS INTEREST ON 12/12/2017. JUDGE'S CHAMBERS and on 12/13/2017 appointment of his sentencing attorney)

JURY INSTRUCTIONS FILED BY PERRONE ON THE FIRST DAY OF TRIAL 10/31/2017 NOT AFTER CLOSING ARGUMENTS ON 11/09/2017.
see. footnote #1
Missing jury instructions

DISMISSAL PROCEDURE OF BIAS JUROR; KEPT ON THE JURY PANEL FOR 6 DAYS UNTIL AFTER THE CLOSING ARGUMENTS FINISHED AND HE WAS DISMISSED KNOWINGLY NOT RANDOMLY BY JUDGES ORDERS NOT FOLLOWING MCR 6.411 AND MCL 768.18 , AND JUDGE FAILED TO HOLD A REMMER HEARING TO SEE IF THE JURORS WERE TAINTED/POISONED?

DEFENDANT NOTIFIED JUDGE CANADY BY 7/28/2022 ABOUT NEWLY DISCOVERED PERRONE'S PROBATE COURT , POLICE REPORT MENTAL ISSUES AND ABOUT PERRONE'S FATHER INITIATING PERRONE TO BE SENT TO MENTAL HOSPITAL INVOLUNTARY TWICE IN NOVEMBER 2017 (3 DAYS AND 7 DAYS AFTER TRIAL) BUT JUDGE IGNORED THIS BRADY VIOLATION AND IMPORTANT DISCOVERY.
ACCORDING TO HIS FATHER'S WRITTEN REQUEST PERRONE HAS BEEN LIKE THIS SINCE 2015.

PERRONE CAME TO JAIL TO MEET DEFENDANT 4 TIMES.

SILVERTHORN WAS APPOINTED ON 12/14/2017 NOT 12/06/2017 (SEE ATTACHED EMAIL FROM LEIGH ANN WHIPPLE DATED 12/14/20170

OTHER EVIDENCE ISSUES PERRONE DID NOT INVESTIGATE.



ALLEGED PHONE CALL TO ERIKA MELKE FROM JAIL ON 08/31/2016 YET SEE DEFENDANT'S JAIL PHONE LOGS (ATTACHED), FIRST CALL WAS MADE ON 09/01/2016 AT 1:00PM AND DEFENDANT WAS IN JAIL HOLDING CELL BY 3:30PM AND 8:44 PM PROCESSED AND TAKEN TO HIS POD/CELL. (one's phone account does not turn on immediately usually between 12 and 24 hour after being processed)

IT WAS HER OWN EMAIL ACCOUNT CHANGED HER OWN FACEBOOK PAGE RIKA_THINKGREEN@HOTMAIL.COM (SEE ATTACHED SEARCH WARRANT BASED ON PERJURY)

FAULTY GPS TIMES AND LOCATIONS

CONCESSIONS (ON THEIR OWN SENTENCES, CRIMES) GIVEN TO JAILHOUSE INFORMANTS WITH LENGTHY CRIMINAL RECORDS, IMMUNITY GIVEN WAS BASED ON PERJURY BY PROSECUTION /POLICE

HER ROOMATE CARMEN ELIAS TESTIFIED THAT DEFENDANT ALLEGEDLY LOOSENED HE CAT TIRE LUG NUTS (SEE 3 POLICE REPORTS FILED IN JULY 2016) NONE OF THEM MENTIONS THAT.

PERRONE WAS SENT TO MENTAL HOSPITAL TWICE AFTER TRIAL (TRIAL ENDED 11/09/2017 BY 5:00PM AND HE WAS INVOLUNTARILY ADMITTED FIRST HOSPITAL AT ANN ARBOR BY 9:00AM (11/14/2017) LESS THAN 90 hours (3.5 days). HE PERJURED BY SAYING THAT HE WAS AT DALLAS WEEK AFTER TRIAL ON 10/04/2021 GINTHER TESTIMONY

RECEIVED by MCOA 11/9/2022 3:25:00 PM

1) CONFLICT-FREE REPRESENTATION

1)  WAS DEFENDANT MR. TUNC URAZ DENIED THE RIGHT TO "CONFLICT-FREE" COUNSEL AT
    A CRITICAL STAGE OF THE PROCEEDINGS UNDER THE SIXTH AMENDMENT DURING IN
    CHAMBERS HEARING 12/12/2017 AND NEXT DAY IN COURT HEARING, 12/13/2017. THE
    TRIAL COURT CONDUCTED FITNESS AND ABILITY OF DEFENDANT'S ATTORNEY (JACOB
    A. PERRONE)?

2)  DID THE PROSECUTION HID/NOT SHARED, NOT DISCLOSED, COMMITTED PERJURY ABOUT
    PERRONE'S "MENTAL IMPAIRMENTS" 11/14/2017,  11/20/2017  INVOLVING LANSING
    POLICE, CLINTON AND OAKLAND COUNTY PROBATE COURTS PER MCL 330.1401 FROM
    DEFENDANT AND HIS APPEAL ATTORNEY FOR HIS APPEAL/GINTHER HEARINGS?
    10/04/2021, 4/13/2022

STANDARD OF REVIEW:

Judge's abuse of discretion is reviewed de novo.

Facts of the Case

    Defendant was found guilty on 11/09/2017 to 3 counts of Solicitation to
Murder (MCL 750.157b)  and  1 count of Aggravated Stalking MCL 750.411I. His
sentencing day was scheduled originally on 12/20/2017. Until the Ginther hearing
on 04/13/2022 Defendant was not aware how Mr. Perrone was admitted to mental
hospital for the "second time" (Involuntary Admission) See below.

    Per Mr. Roth's (prosecutor then) testimony pg. 20-21, 04/13/2022 Ginther
hearing.

    Prosecutor Crino: now sometime after the jury's verdict (11/09/2017) you
have indicated that you were informed that Mr. Perrone had some type of episode
how is it that you were informed of that?

    Prosecutor "Roth:" by the way of an-e-mail, it was on December 2nd, 2017, I
received an e-mail indicating that he had has what we refer as PRT proceedings,
I think in Oakland County, and that's extent of the detail that I know". (this
means per MCL 330.1401(a)(b)(c) person requiring treatment (PRT) see attached
MCL) and per probate court orders Perrone must have been sent to:

    (1) Saginaw Health Core psychiatric hospital for an "involuntary admission:
on 11/14/2017 11:41 pm (see attached hospital admission records).

RECEIVED by MCOA 11/9/2022 3:25:00 PM

1

(2) Mr. Perrone had a "second mental" impairment incident on 11/20/2017 which was not shared with Defendant and his appeal attorney for his Ginther Hearing and Defendant's appeals process. This "second" mental impairment documents were only shared with Mr. Silverthorn Defendant's sentencing attorney on 12/18/2017 (see attached e-mail by Pros Koop) after the hearings on 12/12/2017 and 12/13/2017 about Perrone's Second Mental Impairment. However, Mr. Silverthorn failed to share this information with Defendant.

Based on newly discovered by the first week of July 2022 received by the Defendant, (copy of "prosecution's file" was requested at the end of April). Defendant discovered document that were hidden and not disclosed, shared by Ingham County Prosecutor office related to Mr. Perrone's 'Second" mental impairment episode was on November 20th 2017.

This information was not disclosed by Ms. Crino Igham County prosecutor to Defendant's appeal attorney and to Defendant for his Ginther hearing and appeal process.

NEWLY DISCOVERED EVIDENCE:

Mr. Perrone was sent to a mental hospital "Second" time Per MCL 330.1401 started PRT Proceedings (person requiring treatment) and per Oakland Probate Court orders dated 11/20/2017. These document consistent of (see attached documents),

(1) Lansing Police Department report about Mr. Perrone's Second mental breakdown on 11/20/2017 Case No. 175190653,

(2) "Petition for metal health treatment" form filled by police officer on 11/20/2017, see sec. (4); observation of the person doing the following acts saying the following things, as I drove past Perrone, he yelled "fuck you Quincy". Perrone said he is #1 defense attorney in the world, Perrone states he would kill a bunch of people", (3) "initial order after hearing on petition for

2

mental treatment" Clinton County Probate Court filed on 12/06/2017 all 27 pages faxed to courts) defendant only had #5 and #6, (4) Defendant obtained all 27 pages of Perrone's mental hospital records on 08/19/22 see attached Second Mental Impairment by Perrone involved Lansing Police initiating (PRT) Producers on 11/20/2017.

Because unity now there was only one mental impairment incident known to defendant with Mr. Perrone and the whole Cinther hearing was given based on that incident 11/14/2017. (Maybe the court's were not aware of First Mental Episode by Perrone on 11/14/2017).

HERE IS THE TIME LINE:

(1) Perrone sent an e-mail to defendant's family on 11/08/2017 one day before trial ended (see attached email). (2) Perrone sent to Mental Hospital on 11/14/2017. (3) Perrone was released from Mental Hospital on 11/19/2017, see attached text messages Defendant's sister sent a text message to Perrone on 11/13/2017. First response by Perrone was on 11/19/2017 after he was released from Saginaw Mental Hospital. (4) 11/20.2017 Perrone was sent to mental hospital by police on 11/26/2017 Defendant's sister sent another message since he had not heard from Perrone. Perrone responded on 12/05/2017 and 12/06/2017 (see attached texts). (5) Oakland County Probate Court faxed Perrone's (PRT) documents to Clinton County on 12/06/2017 because Perrone's home address is located in Clinton County 27 pages (see attached) $\mathcal{B}$

A prosecutor's role and responsibility is to seek justice and not merely convict. People v Dobek, 274 Mich App 58, 63; 732 NW2d 546 (2007). The prosecutor may request a rigid adherence to procedural rule than taking a stand against the most appalling assault upon the integrity and reputation of any court-perjury. Perjury shows a deep disrespect to the Court and complete lack of concern for the outcome to the Defendant. The Legislature takes false statements

3

RECEIVED by MCOA 11/9/2022 3:25:00 PM

committed in courts very seriously. What is even most bothersome in this case is that the prosecution was made aware of Mentally incapacitated attorney Jacob Perrone by 12/12/2017 - 12/06/2017 Per Mr. Roth's testimony on 4/13/2017 Ginther hearing.

2) CONFLICT-FREE REPRESENTATION

Oakland County probate court faxed "Initial order after the hearing on Petition for mental treatment" for Jacob Perrone (Case No. 2017-380077-MI) Documents to Clinton County Probate Court Case No. 17-29766-MI. On 12/06/2017 because Perrone lives in Clinton County. (See attached).

This Court have the power to avoid the grave injustice of a man being in prison, while his U.S. born son is suffering from major depression in a Orphanage in Turkey.

On 12/12/2017 Judge Canady III had a "in chambers meeting" with Prosecutors Johnathan Roth, Charles Koop II and Defendant's trial attorney Jacob Perrone and his assistants Eric Schroeder, Nicholas Fernandez. (see attached Summary of the hearing). In this meeting Perrone told the judge that he had spoken to defendant Mr. Uraz about "what is happening here". (See Hearing transcripts 12/12/2017 pg. 3,4). This was never acknowledged approved by the Defendant (See attorney visit log in jail that defendant had, Perrone never came to see Defendant in jail after trial). Mr. Perrone insisted on representing defendant for his sentencing, however, Prosecutor Roth did not want Perrone to continue to represent the defendant. (pg. 4 line 22).

Due to Mr. Perrone's condition Roth: "Chief Judge is aware of some ongoing issues, I believe the State bar may be aware of some ongoing issues. Mr. Perrone has been removed from some other cases in the County." We don't think it would be appropriate for him to continue with representation" (pg. 5 Line 1-5). (See attached letter sent by Pros. Koop dated 12/18/2017). Judge decided to bring in

4

defendant the next day "to lay out those options for him" and "if that's what Mr. Uraz wants to do" (pg. 5 Lines 6-18). Perrone for the record "I did have a family situation that was addressed. I am bipolar, at this point in time I'm appropriately medicated". (pg. 7 Lines 4-9).

So this meant, Mr. Perrone "was not medicated at all before and during the trial". (he told the defendant that he uses THC to clam him down) which was illegal in the State of Michigan at that time 2017 unless one had a "Medical Marijuana" card. Judge raised the issue if Perrone "was properly medicated during the trial"? (pg. 7 Lines 10-13, 12/12/2017).

Perrone: "I was NOT having an active episode at the time DURING the trial" however he did not make any comment about if he was appropriately medicated or not. Therefore, Judge scheduled another hearing the next day with defendant on 12/13/2017 and explained to him that, Mr. Perrone could not be able top represent him anymore for sentencing and Mr. Silverthorn was allegedly already appointed for sentencing only (scheduled on 01/24/2018) See trans. 12/13.2017 pgs. 3,4). Mr. Sliverthorn arrived very late towards the end of the hearing although judge commented on 12/12/2017 hearing that Sliverthorn was supposedly appointed on 12/06/2017, but actually he was appointed on 12/14/2017 officially by the Courts (See attached email confirmation by Court Clerk Ms. Whipple).

Although prosecutor Crino kept pushing the defendant to admit that "he had no objections for Perrone to help with sentencing, in reality it was the prosecution who did not want Perrone to represent the Defendant see attached letter dated 12/18/2017; the people requested that new counsel be appointed for sentencing out abundance of caution". Defendant only acknowledged what the judge told him that he is going to do.

RECEIVED by MCOA 11/9/2022 3:25:00 PM

ANALYSIS:

defendant was denied his right to have a CONFLIC-FREE COUNSEL, at a critical stage of an proceeding under the Sixth Amendment during an in chambers hearing and in court hearing the next day trial court conducted on the fitness and ability of Defendant attorney to continue to represent him for his sentencing and whether Defendant had a fit attorney representing him before and during trial was of utmost important to the fairness of his trial and at the very least Defendant should have been given an opportunity to retain an "independent conflic-free" counsel to advocate his interests". Michigan Courts require a fair trial, not a perfect trial, Pickens Supra 314.

Mr. Uraz claims he was denied the right to conflic-free counsel at a critical stage of his proceedings during an in chambers hearing the trial Court conducted on the fitness and ability of his court appointed attorney Mr. Jacob A. Perrone.

Michigan case law is settled that a complete absence of counsel at a critical stage of a criminal proceedings is a pre se Sixth Amendment violation warranting reversal of a conviction, a sentence or both, as applicable, without analysis for prejudice or harmless error, People v LaBlanc, 465 Mich 575, 579; 640 NWd 246 (2002).

Mr. Uraz was in jail while his attorney and the prosecutor's had a meeting in judge's chambers. As Mr. Perrone's life long friend and his administrative assistant (Mr. Nick Ferrnandez) testified on 10/04/2021 at a Ginther gearing that Mr. Perrone has always been an "Excitable Guy, High Energy and Naturally Hyper person".

While noting the importance of Defendant's right to counsel of his choice, the Court might had been observed Mr. Perrone's behavior before and during the trial and Mr. Perrone's relationship with Mr. Uraz appropriately interacting

6

RECEIVED by MCOA 11/9/2022 3:25:00 PM

throughout the proceedings and Mr. Uraz had not asked the Court to intervene, or looked to the Court as though there was a problem. The Court must have assume, believed that to question Mr. Uraz about Mr. Perrone's fitness at this point would prejudice their relationship. This Court never asked Mr. Uraz about Mr. Perrone's behavior before, during or after trial. (until Cinther hearing on 04/13/2022). Mr Uraz argues that he had the right to be represented by "Conflict-Free" counsel and to have been present during the "In Chambers" hearing.

MCR 6.104 States, in part, "The defendant shall be present at the arraignment, at every critical stage of the trial including the empanelling of the jury and the return of the verdict, and at the imposition of the sentence. In deed, it is well settled that a criminal defendant has a right to be represented by counsel that extends beyond the actual trial to every critical stage proceedings. An analysis of a critical stage necessary involves a retrospective inquiry as to the nature and consequences of each step in the proceedings. Particular attention must be given to how counsel would have benefited the defendant at theses moments. A portion of a criminal proceeding is a critical stage if a reasonable likelihood exists that the defendant was prejudiced by the absence of counsel.

Mr. Uraz asserts that the in-chambers hearing on Perrone's fitness to continue to represent Uraz was a critical stage of proceedings and that he was prejudiced by not having conflic-free counsel represent him. Defendant point out that the hearing turned on "contested facts", rather than mere "legal arguments", which distinguishes from situation involving only legal arguments between the court and counsel, or other minimal events for which the defendant's present makes no difference. Mr. Uraz emphasize that no one in-chambers was representing his interests, Mr. Perrone was acting as a fact witness for the

RECEIVED by MCOA 11/9/2022 3:25:00 PM

subject matter of the hearing and not in his capacity as Mr. Uraz attorney.

Mr. Uraz argues that Mr. Perrone's insistence to represent Mr. Uraz reveals the inherent Conflict; Mr. Perrone was seeking to preserve his attorney-client relationship with Mr. Uraz, rather than serving as an advocate for Mr. Uraz. In People v Bailey 2008 Mich App Lexis 227 (2008). Right to "Conflict-Free" counsel as guaranteed by the Sixth Amendment Scotus (Halloway v Arkansas), 435 US 475 (1978). To establish a Conflict of Interest, a defendant must demonstrate that an actual conflict of interest existed and that it negatively impacted his or her attorney's performance. People v Smith, 456 Mich 543 (1998).

Defendant was deprived of his right to "conflict-Free" counsel during a critical stage in the proceedings when his counsel was placed in the "UNTENABLE" position of defending his own interests which were adverse to his clint's.

As Michigan Supreme Court and Scotus has noted, what constitutes a "Critical Stage for "Sixth Amendment" purposes includes those circumstance in which "the accused must find himself confronted, just as at trial, by the procedural system, or by his expert adversary or both.

Here the trial courts in-chambers hearing failed to include the person most affected by the issues raised, Mr. Uraz, who was convicted for three counts of solicitation of murder and aggravated stalking at a jointed trial.

Whether Mr. Uraz had a fit attorney representing him at trial is of utmost importance to the fairness of his trial.

While Mr. Uraz was not placed in an adversarial situation without counsel, Mr. Uraz was excluded from participating in the procedural system during a fact-based inquiry that bore directly on his counsel's physical and mental

RECEIVED by MCOA 11/9/2022 3:25:00 PM

ability to represent him completely and effectively.

At the very least, Mr. Uraz should have been informed of the allegations against Mr. Perrone before the in-chambers hearing took place. Mr. Uraz should have been given the opportunity to retain independent (Conflict-Free) counsel to advocate his interests.

Mr. Uraz's right to Conflict-free counsel outweighed Mr. Perrone's desire to keep his attorney-client relationship intact and outweighed any potential inconveniences suffered by delaying the trial and sentencing to conduct a proper hearing on the issues raised.

While the court effort to investigate the concerns in a confidential and professional manner, The Court's decision not to inform Mr. Uraz of the Court's In-Chambers meeting and next day in Court hearing about Mr. Perrone condition and not offer Mr. Uraz opportunity to retain independent counsel to represent his interests was error of constitutional magnitude and mandates a reversal.

Therefore because Defendant Tunc Uraz was deprived of his right to counsel at a critical stage of the proceedings, trial court and appeals court SHOULD reverse his judgment of conviction and sentence and remand for further proceedings.

See Attached:🗚
Downs v. Commonwealth
2020 Ky. LEXIS 222 (2020)
Supreme Court of Kentucky
July 9, 2020 Rendered


Jonathan C. Roth perjury on record, please see that attached report of interview done by Mr. James D. Hoppe JDH consulting services, LLC. with Jonathan Roth on

RECEIVED by MCOA 11/9/2022 3:25:00 PM

09/23/2021 (attachment)

Part: Roth was involved in the prosecutor of Uraz and he is NOT "aware" that Perrone suffered any mental or physical health crises. Roth advised that Perrone is still practicing law at this time.

Dunde Silverthorn's statement to private investergor (James D. Hoppe) on 09/27/2021 by JDH consulting services (see attachment)

Part: Silverthorn described Perrone as being "off" and as non-stop talker almost "pathologically" so. in Silverthorn's opinion Perrone seemed to be "flying", almost as if he was an "amphetamine" user.

Nicholas Fernandez

LIFELONG FRIENDS OF MR. PERRONE.

Statement to private investigator (James D. Hoppe) on 10/01/2021, JDH Consulting Services,

Part: Mr. Fernandez advised that during the Uraz trial he noticed a "downturn" in the behavior of Perrone indicating that Perrone seemed to lose his temper more frequently and had more emotional outbursts.

(CASE PRECEDENTS)

1) What constitutes a critical stage for Sixth amendment purpose includes those circumstances in which the accused must find himself confronted, just as at trial, by the procedural system, or by his expert adversary or both.

The in-chambers hearing on Perrone's fitness to continue to represent Uraz was a

RECEIVED by MCOA 11/9/2022 3:25:00 PM

10

critical stage of proceedings and that he was prejudiced by not having conflict-free counsel represent him.

Defendant points out the hearing turned on consented facts, rather mere arguments, which defendant distinguishes from situation involving only legal argument between the court and counsel or other minimal events for which the defendant emphasizes that no one is chambers was representing his interests: Attorney Perrone was acting as a witness for the subject matter of the hearing and NOT in his capacity as defendant's attorney.

Defendant was deprived of his right to conflict-free counsel during a critical stage in the proceedings when his counsel was placed in the "UNTENABLE POSITION" of defending his own interests which were adverse to his clint's.

1) Defense counsel's absence from trial, during the presentation of evidence that tended to implicate defendant, denied Defendant his right to counsel at a critical stage of the proceedings. To determine whether defendant validly waived his right to counsel, the Sixth Amendment requires that a trial court conduct a colloquy similar to that conducted when a defendant seeks to represent himself. While defendant stated that he had no objection to allowing substitute counsel during his attorney's absences, the trial court failed to ascertain whether defendant knew of his right to have his own counsel, his right to reject substitute counsel and his right to request a continuance. Remand was required to determine whether defendant knowingly and intelligently accepted substitute counsel and waived the right to have his own attorney present (Olden v US 224 F3d 561 (CA 6, 2000).

RECEIVED by MCOA 11/9/2022 3:25:00 PM

11

2) Defendant experienced A "Total deprivation of counsel" at a critical stage of the proceedings and reversal is required without the necessary of showing prejudice. although defendant was assisted by a standby counsel, standby counsel is not "counsel" within the meaning of the Sixth Amendment. The walker and entrapment hearing were critical stages, and there is no doubt that results of the ruling affected the entire proceeding. People v Willing, 267 Mich App 208 (2005).

3) People v Bailey, 2019 Mich App Lexis 5750 (2019), Substitution of counsel is reviewed by courts as "plain error".

Defendant argues that the trial court erred and violated his right to counsel when it "sua sponte" substituted his appoint defense counsel. This constitute plain error affecting defendant's substantial right by not having a "conflict-free" representation for the meeting held in Judge's chambers.

4) The erroneous deprivation of a criminal defendant's counsel of choice is structural error. Which entitles the defendant to a new trial. The Sixth Amendment Right to counsel of choice commands not that a trial be fair, but that a particular guarantee of fairness be provided, and that the accused be defended by the counsel he believes to be best. Defendant's right to counsel of choice was violated,and no additional showing of ineffectiveness of substitute counsel or prejudice is required to make the violation "complete". U.S. v Gonzalez-Lopez, 548 US 140 (2006).

5) In CHAMBERS CONFLICT-PRESENCE OF DEFENDANT

RECEIVED by MCOA 11/9/2022 3:25:00 PM

In People v Baskin, 145 Mich App 526; 378 NW2d 535 (1985) at 544-545.

"[11] A defendant's presence at a conference is required only where his substantial right might be affected.

US Const, Am VI Const 1963, ART 1 & 20. Generally, defendant's right to be present at trial extends to all conferences or occurrences at the trial wherein or whereby his substantial rights may be affected. Hopt v Utah, 110 U.S. 574; 4 S.Ct 202; 28:.Ed 262 (1984). United States v Schor, 418 F2d 26 (2nd Cir. 1969); People v Kregger, 335 Mich 457; 56 NW2d 349 (1953). Often Courts distinguish defendant's right to be present when substantive matters are discussed from defendant's from defendant's discretionary presence when matter of procedure of law are discussed...

People v Clyburn, 55 Mich App 454; 222 NW2d 775 (1974) at 460

[4] Defendant's presence at conference is required only where his substantial rights may be affected. An in-Chambers conference to discuss matter of procedure or law attended by his counsel to which the defendant raises no objection, does not violate defendant's right to be present during his trial and does not constitute reversible error.

Mr. Uraz feels that Courts, attorney Grievance commission, prosecutor, judges involved with this case blatantly minimizing Perrone's mental impairments and acting like it is not a big deal. It is almost a cover up.

Therefore Defendant request from this Court to overturn trial court's conviction and remand for a new trial.

1) 12/12/2017 IN JUDGES CHAMBERS MEETING
ATTENDEES:

RECEIVED by MCOA 11/9/2022 3:25:00 PM

Prosecutors Johnathon Roth, Chaz Koop II

Trial attorneys Jacob Perrone, Eric Schroeder, Nicholas Fernandez

Defendant did not have a conflict-free attorney to represent him and his interests. This hearing was a very important one of the several "critical stages" of this trial.


PG 3

Judge: I did not want it necessary to have to be in the courtroom, this meeting that's taking place post-conviction by a jury, but prior to the sentencing, which is scheduled on December 20th 2017,

"A request for a meeting has been made."


Prosecutor Roth: to Perrone pg 3 line 24-25 before we start, you are okay waiving your client's presence?


PG 4 Line 1-2

Perrone: Yes, I have spoken to my client in regards to what's happening here

Judge: Okay all right

**(FACT) Perrone never told, spoken, asked Defendant about waiving his right to be in that meeting. Defendant never waived his right be there)

PG 4 Line 4-10

Perrone: I don't think that there is necessity to appoint another attorney at this point in time. I think it would be realisticly have a negative effect. My client at this point in time, intends to utilize my services through the sentencing, based upon conversation I have had with him.


JUDGE Line 11-19

RECEIVED by MCOA 11/9/2022 3:25:00 PM

Okay, I don't have any issue with that. I meant, the issue that came up due to the question of when your availability was going to be present at the time, I suggested that we needed to appoint someone in the event that was necessary so that they would have some time to prepare for sentencing. But if you don't have an availability issue, I don't have any problem with you continuing.

Perrone: I do not

Judge: All right

PG 4 Line 22-25

Roth: ***We do***


Judge: Okay

Roth: Based upon information and belief, the chief judge is aware of some ongoing issues. I believe State Bar may be aware of some ongoing issues. Mr. Perrone has been removed from some other cases in this Court recently.


We don't think it would be appropriate for him to continue with representation in this case. (pg 5 Line 1-5).


(pg 5 Line 6-18)

Judge: Well, you have to sort of enumerate why you feel that would be the case. I mean, I know chief Judge is aware of somethings. So, I don't know. I guess the question is, what is Mr. Perrone's status currently? And it would seem that if he is like certified, clear to go, that "would be up to Mr. Uraz", I think to lay out those options for him. So we might have to come back tomorrow and have Mr. Uraz, brought over so that we can make a record, if that's what Mr. Uraz wants to do. I guess I don't have any difficulties with it. Okay?

RECEIVED by MCOA 11/9/2022 3:25:00 PM

Perrone: I would have no problem with that

Judge: All right, one of the concerns I do have, is in the light of the timing of your health situation, did that have an impact or effect on your representation for Mr. Uraz during the trial?

**PG 6

Perrone: No

Judge: Well, I know that's your opinion. I'm just saying

Perrone: The record speaks for itself

PG 6 Line 5

Judge: Well I don't want this case coming back because someone later, suppose you arent the appellate counsel, all right, look at it and raise the issue on what was your status at the time of the trial. I am just being realistic here. And even though "you have indicate that Mr. Uraz wants you to continue", which is his right, So if I make that record, okay. But I would think at some point that might be an issue.

Perrone: I discussed with Mr. Uraz the propriety of any ineffective assistance of counsel arguments as it pertains to the appellate issues and deferred to the appropriate appellate counsel on those issues, and told him, quite frankly, if he would intend to go down that road, that he would have the ability.
Now frankly based upon my review, it doesn's appear that's going to be a very good argument, given the record that was established over two weeks in this trial.

RECEIVED by MCOA 11/9/2022 3:25:00 PM

PG 7

Perrone: So I anticipate based upon my conversations with Mr. Uraz, that he would intend to move forward


***(Never happened)


Perrone for the record "I did have a family situation that was addressed.
*** I am bipolar. At this point in time I'm appropriately medicated". (pg 7 line 4-9). Some of the most successful and highly intelligent people in society have symptoms of Bipolar.
***(This means Mr. Perrone was not medicated during and before the trial)


PG 7 Line 10-13

Judge: Well I don't have any bias against that. I guess the question is, *** Were you properly medicated during the trial. I can see that being and issue somewhere down the road.


***Perrone: I wasn't having an active episode at the time during trial, and the record speaks for itself, Everyone is entitled to a defense, I understand


Judge: Well I would agree the record speaks for itself, but I am just raising the issue now.


The other issue is that "one of your associates was insisting that we provide the transcripts prior to the time of claim of appeal being filed. We don't do that. You have to filed your claim of appeal, which entitles Mr. Uraz to the transcripts convalescing (recovering). And we continually indicated that the

RECEIVED by MCOA 11/9/2022 3:25:00 PM

17

right to transcripts arises upon the claim of appeal being filed. We were not going to do it before

Perrone: Again, I intend to respect the process, anticipating that it may be viable attempt to get transcripts for preservation purposes. But again, I will defer to the record.

Judge: Well you are always eligible, and I think it was communicated to your associates you can buy the transcripts and preserve it. But if you want the County to pay for it it has to arise only upon Mr. Uraz executing his appellate rights form. We are prepared to do that, so that its clear once it becomes an issue.

Judge: pg 8 Line 16

We are going to have to bring Mr. Uraz over, make a separate record, make sure he is informed on theses issues, and we will go from there.

***(FACT): I this means that Mr. Perrone "was not medicated" at all before and during trial? (he told the defendant that he use THC to calm him down) which was illegal in the State of Michigan at the time unless one had a "Medical Marijuana" Card. 2017

Judge Had private meeting after attorney released from the hospital in his chambers but did have "conflict-free" attorney to represent defendant in that meeting on 12/12/2017.

**(FACT if Perrone was "properly medicated why the prosecutor and judge did not want Perrone to represent defendant for sentencing)**

RECEIVED by MCOA 11/9/2022 3:25:00 PM

18

(See pg 3 Line 23-24 hearing transcripts on 12/13/2017). And based on Perrone's explanation if he was properly medicated after the trial judge could have adjourned the sentencing again to 1/24/2018 just to give time for Perrone to prepare for sentencing as well. If Perrone was "available" at that time)**

**(FACT) Mr. Duane Silverthorn was already appointed to defendant to represent him for sentencing on 12/06/2017 (He was appointed originally on 12/16/2017 see attached e-mail from Leanne Whipple)

***(This document was discovered as of July 2022 in the prosecution's file sent under FOIA **** See attached letter to Silverthorn from prosecutor Koop dated 12/18/2017

***It was the prosecution who demanded the change of attorneys see attached letter dated 12/18/2017 from prosecutor Koop to Mr. Silverthorn (defendant's sentencing attorney) about switching of attorney last sentence: "People requested new counsel be appointed for sentencing out an overabundance of caution"

**(FACT one does not become mentally ill overnight it is a life long struggle)** It is Chemical Inbalance in the Brain,

FACT***(Perrone never asked defendant if he wants to continue with him or not for sentencing)

*** In Michigan other than MCR 9.121. there is really nothing to address this

RECEIVED by MCOA 11/9/2022 3:25:00 PM

important issue.


Feature: Malpractice/Attorney Discipline, A time for change, helping attorney who have mental physical illness that precipitate Grievances,

Reporter 75 MI Bar Jnl. 1026 October 1996 by Charles F. Justian

Pinpoint 4

It should be noted that, when an attorney, or more likely his or her family member or legal counsel, notifies the Attorney Grievance Commission that a grievance cannot be responded to because of the attorney's illness or incapacity, the attorney may be placed on VOLUNTARY INACTIVE STATUS. At least, this is the experience of the attorney who received a grievance during his hospital stay for depression. In the event that there is subsequent disciplinary suspension, however, the attorney receives no credit for time period of voluntary removal from the practice of law or even inacacity-type proceedings brought to MCR 9.121.


Pinpoint 6

It should be noted that MCR 9.121(B) allows the Attorney Grievance Commission to allege inacpacity of an attorney. In such case the rule requiring a hearing panel to appoint counsel for an unrepresented attorney. I know of no statistics on how many formal complaints are filed by the Attorney Grievance Commission that allege incapacity; however, where such allegation is not made, an attorney can assert, as provided by subsection (C) of MCR 9.121, that he or she suffered an incapacity, including a mental disability.


The major flaw of subsection (C) however, is that sole practitioners answering their own grievances who may suffer from a mental disability which may mitigate

RECEIVED by MCOA 11/9/2022 3:25:00 PM

the alleged misconduct. One more frighten aspects of clinical depression is that it has usually lasted such a long time that it becomes the norm and is recognized by the person as "Normal" (Anosognosia). As a result, the depression attorney referred to did not raise his clinical depression in his response to a formal complaint filed against him and, unlike subsection (B), Hr appeared at the hearing without an attorney and no attorney was appoint for him. The hearing panel learned nothing of his eight week in a hospital or his three years of weekly therapy with a clinical psychologist while it weighed his alleged misconduct, subsection (C) ia a valuable tool for an attorney who can recognize his or her mental incapacity at the time that he or she responds to a formal complaint.

Pinpoint 7

The incidence of suicide in men is higher than in women. The reason for suicide is often tired to question of depression. Again, we have the example of Vince Forst (the white Counsel during Clinton presidency) In men, however, the reason suicide is more prevalent than in women, is referred to by the experts as the JOHN WAYNE SYNDROME, which means that men have taught that they CANNOT ADMIT THAT THEY MAY BE WEAK, SO THEY ARE AFRAID OR UNABLE TO SEEK HELP. This issue was addressed on the good morning america program on Wednesday, July 31, 1996 ABC.

12/13/2017

Hearing about Perrone's condition and appointing another attorney to defendant Mr. Uraz

Judge: (pg 3 Line 14-25)

And so what happened yesterday at the meeting Mr. Uraz is that Mr. Perrone had

RECEIVED by MCOA 11/9/2022 3:25:00 PM

an illness, apparently, after the completion of the trial, but before the time of sentencing. And at one point "we did not know how long or the extent of his situation, when he would be able to return. So I knew that sentencing was set for Dec. 20th and so we proceeded to appoint Mr. Silverthorn in place of Mr. Perrone. That had been done apparently, earlier this last week "December 6th." May be (he was appointed on 12/16/2017 officially see attached email from Leanne Whipple Court Administrator then dated 12/16/2017.

***(FACT so the other attorney was already appointed on allegedly on *(Dec. 6th) (it was 12/16/2017) long before judge had a meeting with Perrone in his Chambers and defendant next day, so who made this decision without asking defendant? or who represented defendants interest at that time)?

***PG 4 Line 25
Judge: All right, it is my understanding yesterday at the meeting, Mr. Perrone was saying he wanted to continue to represent you. I indicated that if you consented to that, I would go along with it.
"But today I have been advised that Silverthorn is going to represent you with the assistance of Mr. Perrone, is that your understanding?"

**(FACT who changed, advised Judge to drop Perrone on the last minute?)*** As of 12/12/2017 pg. 5 Lone 12-13 Defendant was supposed to be asked about "those options****

****This document was discovered as of July 2022 in the prosecution's file sent under FOIA *** see attached letter to Silverthorn from prosecutor Koop dated 12/18/2017

RECEIVED by MCOA 11/9/2022 3:25:00 PM

22

***It was the prosecution who demanded the change of attorneys, see attached letter dated 12/18/2017 from prosecutor Koop to Mr. Silverthorn (defendant's sentencing attorney) about switching of attorney's last sentence:

People required new counsel be appointed for sentencing out an over abundance of caution

Defendant yes (pg. 4)

Judge: So that Mr. Silverthorn would be the attorney of record. Mr. Perrone says that he is available, due to the complexities of the case, or work with Mr. Silverthorn. But Mr. Silverthorn would be the attorney of record.

Defendant: I understand

Judge: is that fine with you? Is that how you wish to handle this matter?

Defendant: Yes Your Honor

Judge: I have to ask these questions.

Defendant: I understand

Judge: Nobody has been making you do this, no threats or other forms of coercion. You haven't consumed any alcohol or drugs have you?

RECEIVED by MCOA 11/9/2022 3:25:00 PM

23

Defendant: Not in last 60 months (Meant 16)


**[Defendant only acknowledged what he heard from judge]***


Judge: Mr. Silverthorn has already been appointed, now that put us in a situation where he can't be ready by next Wednesday (12/20/2017) to handle your sentencing okay?

There will be technology update here in the court room so, the court room is not available until after January 10th


PG 6

Judge: All right any questions for me?


Defendant: Not at this time your Honor


Silverthorn: No I have been able to listen to all, I will work with Mr. Perrone, work with Mr. Uraz, Jan. 24th five or six weeks away, should be plenty of time to be completely and adequately prepared.


Judge: Any comments from prosecution?


Koop: My office will also work with Mr. Silverthorn to make sure he as all discovery to review before the time of sentencing any exhibits that were admitted.


Judge: So I would imagine, which all will aid you, I assume that probation probably be brining up the report that they had scheduled for the 20th on

RECEIVED by MCOA 11/9/2022 3:25:00 PM

Friday. So he can get that and see they are talking about.

***FACTS (Silverthorn came towards the end of the hearing, Perrone did not help him with sentencing look at Silverthorn's sentencing memorandum and sentencing transcript (I was not there I did not know what happen, comments)***

BIPOLAR DISORDER: An Organically Based Mental Disorder
*** Mr. Perrone's organic brain damage, Schizophrenia, and Bipolar Disorder can conspire to create several mental impairment, psychosis and other serious mental health problems that burdened him could lead to dangerous behavior, but his behavior was a manifestation of serious illness, not a reflection of his character.

Mr. Jacob Perrone suffered from an extreme case of Bipolar Disorder.

In re Disciplinary proceeding against Mclendon, 120 WN2d 761 Supreme Court of Washington (1993)

Attorney suffered from Bipolar Disorder, the Court found uncontroverted psychiatric testimony that the attorney suffered from an extreme case of an organic brain, disease which involuntary, through a Biochemical process, altered his judgment. In fact, the Court found that prior to the on set of the disorder, the attorney had an excellent reputation and was a capable and well prepared lawyer. Attorney was suspended from practice of law for two years.

An attorney's suffering from bipolar disorder "(An organically based mental disorder)" during the entire time of the attorney's commission of misconduct and

RECEIVED by MCOA 11/9/2022 3:25:00 PM

25

the abatement of the symptoms of the disorder and the misconduct following proper diagnosis and treatment.

Bipolar Disorder is recognized by american psychiatric association, is listed in the American Psychiatric Association diagnostic and statistical manual of mental disorders and has specific diagnostic criteria.

The disorder is Biochemical in nature and involves abnormal levels of neurotransmitters in the brain which involuntarily trigger cycling between the manic and depressive phases of the illness.

"The Symptoms of the manic phase" are increased activity manifested by increased spending, increased physical activity, agitation, irritability and hostility, the increased activity is accompanied by feelings of Elation, Grandiosity, Exaggerated Self-Esteem, and Impaired Judgement.

Anything they do ordinarily would be increased to the point where it goes beyond judgment.... Frequently in a manic state the person had ideals of grandiosity such as wanting to develop (AN) unrealistic lifestyle, or something that is totally unrelated to their usual activities... Manic phase include "Consequences of actions resulting from impaired judgment, such as financial losses and illegal activities.

Depressive phase are social withdrawal, indecision even in mundane matters, such as attire, lack of confidence, inability to concentrate and think well, and feeling sad, tearful, and suicidal, regarding the severe extent to which judgment is impaired in both phases of Bipolar Disorder is unconverted.

RECEIVED by MCOA 11/9/2022 3:25:00 PM

If we have person suffering from a bipolar disorder that would be in a manic stage, how would that affect their mental state, "their ability to form an intent or the ability to know that they acted and be aware of the consequences?"

It would be severely impaired, the same hold true for depression. It accurate being present during a bipolar disorder, particularly the upside, the manic or hypomanic side, is the symptom of impaired judgment.

A person on bipolar manic phase makes decisions that rational people around would say are foolish, foolhardy. A person does not recognize the consequences of those decision or denies them... they don't have the capacity to balance their thinking and their actions,

"It is a Biological change, this is a Biochemical, physiological problem."

Mr. Jacob Perrone suffered from an extreme" case of bipolar disorder before during and after trial.

In this case at the Ginther Hearing, there were no expert witnesses, no psychiatrist to explain about bipolar disorder symptoms.
Courts ignored this matter and only relied Mr. Perrone and his associates then (Mr. Schroeded, Mr. Fernandez, Mr. Vuchkovic) (Prosecutor Mr. Koop and Mr. Roth) and sentencing attorney Mr. Silverthorn.

MRPC 8.3(a) Reporting Professional Misconduct: (a) A lawyer having a knowledge that another lawyer has committed a significant violations of the Rules of

<div style="writing-mode: vertical">RECEIVED by MCOA 11/9/2022 3:25:00 PM</div>

Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness, or FITNESS as a lawyer shall inform the Attorney Grievance Commission.

Attorney Perrone's mental condition before and during trial according to his peers testimony at Ginther Hearing on 10/04/2021 Nick Fernandez

"Excitable" Guy

Nick: I wouldn't say he "losses his temper" he is an ***Excitable Guy***
Duane Silverthorn: sentencing attorney (after trial)

Duane: Oh I don't recall the date, but it was following the trial and prior to the sentencing.

Walsh did you see anything concerning about Perrone's behavior?

Duane: He was agitated had diffucuity in focusing, was speaking really fast, he was cordial but like I said agitated
**(This is after Perrone's hospital stay, when he was supposedly medicated)***

Therefore Mr. Uraz is asking this court to reverse the conviction and order a new trial based on his attorney's mental illness impairments going back to 2015.

RECEIVED by MCOA 11/9/2022 3:25:00 PM

2)

Attorney Jacob A. Perrone (P71915), Mental Impairments court documents from Clinton Oakland County Probate Courts, Lansing Police Report

These documents attached from Oakland, Clinton County probate Court and Lansing Police Department Report and body cam footage of Perrone's major mental issues since 2015.

This is a major Brady material violation by prosecutor, because this information was not shared with defendant and his appeal attorney for both Ginther Hearings. Only 11/20/2017 Lansing police report was shared with Defendant's sentencing attorney Silverthorn where he did not share with defendant on 12/18/2017.

History of mental issues and he committed perjury on record when Mr. Perrone testified under oath on 10/04/2021 Ginther Hearing.

Mr. Perrone, his associates (Eric Schroeder, Nick Fernandez), prosecutor Charles Koop, Jonathan Roth, Kahla Crino. They all failed to inform Mr. Uraz, Courts/State Bar/Attorney Grievance Commission/Attorney Discipline Board extend Perrone's mental issues/ Character and fitness to be an attorney in the State of Michigan.

Mr. Perrone had mental impairments since 2015 about his "UNTREATED MENTAL ISSUES" (Bipolar Disorder and Schizophrenia)

This is a major misconduct by Perrone, 30th, circuit court judges, and anyone involved with this case; Per MRPC 6.5 and 8.3, and by not disclosing this information to State Bar per Rule 15, (charter and fitness of an attorney) and to Uraz (Defendant).

Defendant reached out to Attorney Grievance Commission, LARA, Attorney Disciplinary Board, State Bar of Michigan, Michigan indigent defense counsel (MIDC), Supreme Court of Michigan

Unfortunately in the State of Michigan the standard for handling mentally impaired attorneys is very low. (As long as they show up to trial and do

RECEIVED by MCOA 11/9/2022 3:25:00 PM

"Minimal" expectations) it does not matter if one has a mental impairment or not.

Per MCR 9.121 attorney's with character and fitness issues section (C) asks the very same person who is mentally impaired "to defend themselves". This is a major flaw in the process of figuring out if the attorney is really mentally impaired or not.

Here are five (5) independent observations related to Mr. Perrone's action, behaviors, irrational, erratic delusional tendencies. (See attachment A)

***see attachment #1 "Petition for mental health treatment" filled out by Mr. Joseph V. Perrone (Jacob A. Perrone's father) on 11/14/2017 for his involuntary admission to mental hospital in Ann Arbor, MI according to his father on the form section (3)(d):

"08/17 went to Sparrow Hospital with severe anxiety"
(see pretrial status conference hearing transcript 08/15/2017, Perrone not being ready for several motions and judge questions Perrone why he has not done anything for his client and see Perrone's excuses)

"11/17 went to Sparrow Hospital with chest pains left against medical advice"

(The exact date is unknown if Perrone went to hospital during or after the trial, the trial dates for defendant Uraz were between 10/31/2017 - 11/09/2017)

Section (d)(ii):
"Punches holes in walls, is verbally abusive to his wife - had said he will "kill" &/or destroy everyone, will take over Lansing + rule w/ an iron fist,

Perrone's father's statement on the record on 11/14/2017

***THIS HAPPENS WEEKLY FOR THE LAST 2 YEARS AT LEAST***

THIS MEANS PERRONE HAD MENTAL IMPAIRMENTS ILLNESS SINCE 2015 UNMEDICATED AND UNTREATED

30

RECEIVED by MCOA 11/9/2022 3:25:00 PM

section 4: "He has many angry outbursts, disorganized thoughts. He think he is the most intelligent person in the world, he will "destroy" or "kill" everyone, he called himself "my suicidal son"  has many anger issues.

11/14/2017 signed by Joseph V. Perrone 15880 Brook Rd. Lansing, MI 48906

See Clinical Certificates  by  two  Prominent  Psychiatrist  about  Perrone's condition ***(attachments #2 and #3)

2) First Mental Hospitalization for Perrone
Clinical  Certificate  filled  by  Dr.  Rachel  L.  Glick  M.D.  (psychiatrist)  at  UMHS in Ann Arbor MI, on 11/14/2017 at 11:30 am (See attached #2)

Section 5: Other drug dependence: Adderoll (amphetamine, upper)

Section  6:  Her  diagnosis  about  Perrone's  condition:  "Manic,  R/O  Bipolar,  R/O Substance included"

Section 7: "Patient is hyperverbal, agitated + disorganized, family reports he has  been worsening, additionally + has been making suicidal statements, has... + has no insight in to symptoms

Section  8(a):  DENIES....  but  family  report  he  has  made  threats  +  at  risk  of unintentional  harm given manic state. (b) Denies... but in current state is at risk  of  unintentional  harm.  (d)  No  insight  into current situation, says family is  trying  to  make  him  out  to  be sick. I conclude the individual is a person requiring treatment.

I recommend hospitalization
11/14/2017 16:00 pm signed by Dr. Glick.

3) Second Mental Hospitalization for Perrone

Clinical  Certificate  by  Dr.  Usha  Movva,  M.D. (Psychiatrist)  on   11/15/2017  at 9:00 am at Saginaw Health Source White Pine Mental Health Clinic (See atached

RECEIVED by MCOA 11/9/2022 3:25:00 PM

#3)

Section 4: mentally ill (has a substantial disorder of thought or mood that significantly impairs judgement behavior capacity to recognize reality or ability to cope with the ordinary demands of life)

Sec. 6: Bipolar Disorder NOR
Sec. 7: M. Perrone admitted... ov... petition    ... clinical    certificate; reportedly punching walls, verbally abusive, reportedly said "he will destroy everyone, talktive.... in.... psyco... certificate...
Sec. 8(a): Impaired Judgment (d) Poor. Pose in... Dose not want to take medication

9) I conclude the individual is person requiring treatment
10) Recommend Hospitalization
11/15/17 9:30 am signed by Dr. Usha Movva, MD

**(see Case 17-29766-MI "request to defer hearing on commitment" by Clinton County Probate Court

Sec. 1(c) Combined hospitalized and alternative treatment up to 90 days with hospitalization not exceed 60 days signed by Barbara Tomeal (P42771)
and "notice of Hospitalization and certificate of service" dated 11/16/2017 signed by Marlene Forles

Letter dated 11/24/2017 to Sandra Burk Clintion County Probate Court from White Pine Mental Health Center about Perrone Involuntarily Admitted to Health Source Saginaw White Mental Health Center Perrone being discharged on 11/17/2017 "under a current" Request to defer Mental Health dated 11/16/2017. There remain 59 Hospitalization days under the above document after his discharge.

4) Petition for mental Health Treatment by Lansing Police Officer Robert McBride and the Police report filed on 11/20/2017 at 3:45 pm related to the incident Perrone caused. (See attachment #4)

Sec. 2: Perrone was taken to Sparrow Hospital E.R. #9

RECEIVED by MCOA 11/9/2022 3:25:00 PM

Sec. 3: I believe the individual has metal illness (intentionally or unintentionally seriously physically injure self or others, and has engaged in an ACT or ACTS or MADE significant threats that are substantially supportive of his expectation)

Sec. 4: my personal observation:
"As I drove past Perrone he yelled "F..k you quincy", Perrone said he is #1 attorney in the world, Perrone states he would kill a bunch of people"

Sec 5: The persons interested in these proceedings are: Ashley Perrone (Spouse); Ron Perrone

Signed by Lansing Police Officer McBride

See attached Police Report #1751906153, See page 3
Officers action at the hospital and see attached Body Cam footage
Mr. Gary Chambon, Senior Clerk, has this footage sent by defendant's family.

5) Third mental hospitalization for Perrone
Mr. Perrone was sent to Havenwyck Mental Hospital in Auburn Hills MI 48326 for the "Second time" on 11/20/2017

On 11/21/2017, Clintion County demand for hearing form for Case #17-29766-MI filed by Carmella Mitchell about Perrone:

Sec 2: "PERRONE REFUSES TO ACCEPT PRESCRIBED" treatment

On 11/26/2017 "Order Appointing Attorney"Ms. Lisa Zatyko P74810, appointed to represent Perrone, signed by Judge Lisa Sullivan for Case #17-29766-MI

11/27/2017 Clintion County Probate Court "Notice of Hearing on Petition for Hospitalization assisted outpatient treatment/judicial admission requested Jacob A. Perrone Case #17-29766-MI

Sec 1: This court is requested to detain you for treatment in a hospital/center

RECEIVED by MCOA 11/9/2022 3:25:00 PM

based on petition and the clinical certificates served to you.

Sec 2: A hearing on petition scheduled Oakland County Probate Court on 11/30/2017 before judge Linda S. Hallmark (P28066)

Sec 3: Court appointed attorney Lisa Zatyko (P74810) to represent Perrone signed by Karen Case on 11/27/2017, Mental Health Contact for Clinton County Probate Court.

On 11/27/2017, Clinton County Probate Court "Order and report on alternative health treatment"
It is Order that "Clinton County Counseling Center/Community Mental Health" shall prepare a report assessing the current available following an initial period of court-ordered hospitalization/60 day Order signed by Judge Lisa Sullivan.

On 11/27/2017 Oakland County Probate Court Issued a "subpoena (Order to Appear and/or Produce) or the
Case #2017-380-007-MI (Perrone's second mental episode/impairment) Dr. Leonard Swistak of Havenwyxck Mental Hospital ordered to appear on 11/30/2017 at 8:30 am in the matter of.

Jacob Perrone.
via Clinton County Probate Court request made by Karen Case

On 11/28/2017, Oakland County Probate Court "Notice of hospitalization and certificate of service" for
Case #2017-380-007-MI served personally to Jacob A. Perrone on 11/28/2017 at 9:00 am signed by Bridge...

On 11/28/2017 by Oakland County Probate Court "Certificate of legal counsel/ waiver of attendance" from that Lisa Zatyko attorney appointed for Perrone have seen/consulted Perrone 24 hours before the time set for the hearing.

On 11/29/2017 Clinton County Probate Court Form "Order and Report on Alternative Mental Health Treatment" Case #2017-380-077-MI (Oakland County)by Ms. Carol

RECEIVED by MCOA 11/9/2022 3:25:00 PM

Polly, Social Worker from Clinton County CMH.
Sec 2(d): PT requires inpatient hospitalization
Sec 3(e): PT requires inpatient hospitalization
Sec 5: I recommend hospitalization for 30 days, followed by alternative treatment Clinton County CMH (Center for Mental Health)
Sec 6: No insight, refusing medication
Sec 7: "Havenwyck is an acute care psychiatric facility" to provide prescribe treatment program
Sec 8: Clinton County CMH as an alternative treatment
Sec 9: individual has an Blue Cross
signed by Carol Polly on 11/29 2017


On 11/30 2017 Oakland County Probate Court and Clinton County Probate Court "Initial Order after hearing on petition for mental health treatment" for cases # 17-29766-MI (Clinton County) and 2017-380-077-MI (Oakland County) for two separate mental episodes by Perrone
11/14/2017 and 11/20/2017, before Judge Linda Hallmark


1) After the hearing on 11/30/2017 before judge Linda S. Hallmark (P28066)
2) A petition has been filed by Carmella Mitchell (Havenwyck Hospital Director) on 11/21/2017 and Joseph V. Perrone (Jacob A. Perrone's Father on 11/14/2017)


The Court find finds PER: "Stipulation of the parties"
Sec 6: Testimony was given by Dr. Leonard Swistak
Sec 8: There is not an available treatment program that is an alternative to hospitalization or that follows an initial period of hospitalization adequate to meet the individual's treatment needs and is sufficient to prevent harm that the individual may inflict upon self or others within the near future.
Sec 9: Havenwyck Hospital or other suitable hospital can provide treatment. It is Ordered;
Sec 13: The individual receive alternative treatment for no longer than 90 days, supervised by "Community Support Services"
"The respondent shall take medication as prescribed, attend counseling and therapy sessions as directed and maintain residence as direct.
"The individual shall be hospitalized for up to 10 days of the 90-day alternative treatment period".

RECEIVED by MCOA 11/9/2022 3:25:00 PM

35

SeC 16: If the individual refuses to comply with a psychiatrist's order for hospitalization. a peace officer shall take individual into protective custody and transport the individual to the hospital designated by the psychiatrist. Signed by Judge Linda Hallmark on 11/30/2017

Mental Health Hearing Disposition Sheet
Case #2017-380-077-MI
Matter of: Jacob A. Perrone on assignment for Clinton County.

Attendees:
Lisa Zatyko (attorney foe Perrone)
Corp/Petitioner's Counsel: Heather Lewis
Testifying Doctor: Dr. Leonard Swistak

Order Stipulation
1) Combined order (Hospital/alternative treatment)
10 days in/80 days out
Signed by Judge Hallmark on 11/30/2017
"PERRONE COULD NOT HAVE REPRESENTED DEFENDANT FOR SENTENCING DUE TO COURT ORDERS FOR MENTAL TREATMENT"
On 12/06/2017 "Order" by Oakland County Probate Court:
Attorney Services are no longer required and the attorney is released, signed by Judge Hallmark on 12/06/2017

FOOTNOTE:
From: Lisa Zatyko - Zatykolaw@mail. com
Date: Sat, Sep. 3, 2022 at 1:49 AM
Subject: Re: Jacob A. Perrone
To; Tony Ur - tonyur@gmail.com

Hi Tony,

You're welcome. There was not hearing for Jacob on 11/30/2017 as he treatment *agreed to* prior to the hearing. The prosecutor and I went on the record (transcript) to let the judge know this. Heather Lewis was the Assistant prosecutor in Oakland County on Jacob's case.

RECEIVED by MCOA 11/9/2022 3:25:00 PM

I only had contact with Jacob the day of the hearing and a few days before the hearing. He essentially refused to speak with me at Havenwyck when I met with him prior to the hearing. Additionally, I only have the court documents that you have.

Take Care,

Lisa Zatyko

MCLS 330.1401

Involuntary Admission To Mental Hospital

1) As used in this chapter person requiring treatment means (A)(B)(C)

SECTION (D) WAS DELETED AS OF MARCH 2019 WHICH MR. PERRONE WAS SUBJECTED TO THEN AT PROBATE COURT HEARING IN 2017

(A) An individual who has mental illness can be reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself or another individual and who has engaged in act or acts or made significant threats that are substantially supportive of the expectation.

(B) An individuals who has mental illness, who as a result of that metal illness is unable to attend to those of his or her basic physical needs such as food, clothing or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic needs.

(C) An individuals who has mental illness, whose judgement is so impaired by that mental illness, and whose lack of understanding of the need for treatment has cause him or her to demonstrate an unwillingness to voluntarily particpipate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition and presents a substantial risk of significant physical or mental harm to the individuals or others in the near future.

2) An individual whose mental processes have been weakened or impaired by dementia, an individuals with primary diagnosis of epilepsy, or an individual with alcoholism or other drug dependence is not a person require treatment (PRT)

RECEIVED by MCOA 11/9/2022 3:25:00 PM

37

under this chapter unless the individual also meets the criteria specified in subssection:

(i)  An  individual described in this section may be hospitalized under the informal or formal voluntary hospitalization provisions of this chapter if he or she is considered clinically suitable fore hospitalization by the hospital director.

Section (D) was removed in 2019 which applied attorney Jacob Perrone in 2017. (D) an individual who has mental illness, whose understanding at the need for treatment is impaired to the point that he or she is unlikely to voluntarily participate in or adhere to treatment that has been determined necessary to prevent a relapse of harmful deterioration of his or her condition, and whose non-complaince with treatment has been a factor in the individual placement in a psychiatrist hospital prison or jail at least 2 (TWO) times within the last 48 months or whose non-complaince with treatment has been a factor in the individual's committing 1 (one) or more acts attempts nor threats of "serious" violent behavior within the last 48 months. An individual under this subdivision is only eligible to receive assisted outpatient treatment.

---------- Forwarded message ---------
From: Lisa Zatyko < zatykolaw@gmail.com>
Date: Sat, Sep 3, 2022 at 1:49 AM
Subject: Re: Jacob A. Perone
To: Tony Ur < tonyur@gmail.com>

Hi Tony,

You're welcome. There was no hearing for Jacob on 11/30/2017 as he agreed to treatment prior to the hearing. The prosecutor and I went on the record (transcript) to let the judge know this. Heather Lewis was the Assistant prosecutor in Oakland County on Jacob's case.

I only had contact with Jacob the day of the hearing and a few days before the hearing. He essentially refused to speak with me at Havenwyck when I met with him prior to the hearing. Additionally, I only have the court documents that you have.

Take care,
Lisa Zatyko

RECEIVED by MCOA 11/9/2022 3:25:00 PM

38

3) MCL 777.39 (OV 9)

Was Defendant scored incorrectly for (OV 9) MCLS 777.39 (Number of victims: Scored)

\*\*OV 9 MCLS 777.39(c) For number of victims (2 to 9 Victims), Defendant was scored 10 points for Solicitation to Murder charges, However if you look at the information (see Attached Complaint Sheets for both charges only have 1 (one) "Victim"/ "Complainant" name is shown as Erika Melke. OV 9 MCLS 777.39(c)(d)

(c) There were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss... ... 10 points

ANALYSIS:

This issue was unpreserved for Court of Appeals to review since it was not objected during sentencing. Unpreserved claims or error for "Plain Error" Lockridge, 498 Mich at 392-393. To establish entitlement to relief under Plain-Error Review, the Defendant must establish that error was occurred and the Error was Plain.

In order to determine whether Defendant is entitled to relief under Lockridge, we must determine whether facts admitted by Defendant or found by the jury were sufficient to access the minimum number of OV parts necessary for "Defendants' score to fall in the cell t the sentencing grid number which he... was sentenced. Lockridge, 498 Mich at 394. If they were not then an "Unconstitutional Constraint" actually impaired the Defendant's Sixth Amendment Right Id. 395 and the Defendant is entitled to have the case "Remanded to the trial court to determine whether that Court would have imposed a materially different sentence but for the Constitutional error.

OV 9 is limited to the facts of the sentencing offense, OV 9 can only be scored in reference to the sentencing offense, People v McGraw, 484 Mich 120 (2009).

RECEIVED by MCOA 11/9/2022 3:25:00 PM

39

2) MCL 777.40 (OV 10)

Was Defendant scored incorrectly 15 points under OV 10 (MCL 777.40) for predatory conduct where the conduct described in the record does not even reflects nothing more than run-of-the-mill planing by jail house informants (Solicitation to Murder is not an "OVERT ACT") to effect crime based on hearsay wrongly admitted abuse of discretion evidence? And for Aggravated Stalking charge scoring was based on falsified perjured evidence and testimony by the Complainant? Both charges were tried at Court "Jointly" under MCR 6.120.

This issue was unpreseved for appellate review because Defendant's "Fill in lawyer" on record did not object this error which is reviewed as "Plain Error". (Defendant's trial Lawyer was switched due to his Mental Incapacitation by the trial Court).
Solicitation to Murder is a offense, "that wouldn't have premeditation. That wouldn't have malice towards it because it is "Not an overt act".

The reason Defendant was scored 15 points based on prosecutor's misrepresentation of the facts based on hand drawn map to his sister about Complainants apartment building which was stolen from him. And based on Complaint's (Erika Melke) perjured testimony and falsified evidence.

01/24/2018 SENTENCING DATE
*** Prosecutor Roth Page 11:
The other thing that I can add for OV 10 Specific predatory conduct: the Map Defendant drew for the other inmates to enable them to find her and her residence, including her apartment number of her residence. Which he should not have known at that time, so that all goes to predatory conduct.
**(Misrepresentation of facts the Map was part of Defendant journal).

RECEIVED by MCOA 11/9/2022 3:25:00 PM

40

Here are the excerpts from pre-trial evidentiary hearing 10/20/2017 and trial (11/03/2017) Sentencing 01/24/2018.

10/20/2017 Evidentiary Hearing
MRE 801, 803 Hearsay Abuse of Discretion decision by Judge about the "Map". pg. 20 Line 6-25.
Roth: The third part of the note, is this also part of the same conversation or a separate (Map)?
Uraz: No it was stolen from me.
Roth: Stolen from you?
Uraz: Because this part of my other documents. (My journal)
Roth: Ok so this is not a note passed between you two?
Uraz: No
Roth: Very good I have no objection to the admission or what described as one and two (Note): To this point I don't think there is any relevance to number three (Map). And he is saying this was not given to somebody

Judge: But he said he wrote it
Roth: He said he wrote it, which would be hearsay. As I understand it, pages one and two re admitted to show the effect on the listener's the effect on the Defendant, if the Defendant is testifying to page 3, (Map) was not given to somebody, then it wouldn't have that relevance. So I have no objection to admitting pages one and two (Notes)

Judge: but it wouldn't be a hearsay, its his document that he wrote
Roth: Right and so we can put in because he is our party opponent. Because its his own "party", it wouldn't be applicable

Perrone: If you look this Map, the nature of drawing on the Map and that could be indicative of Defendant's "Mental State" at the time of the drawing of the Map.

Judge: I hear you so this is an evidentiary hearing, so I am going to allow it.
Roth: That's fine, I ask that it will be separates A and B

RECEIVED by MCOA 11/9/2022 3:25:00 PM

pg. 21 Line 19

Judge: "A" should be two pages that were actually authorized by Mr. Uraz and exchanged with other persons. That's a two page document . And that then Exhibit "B" is a document that is simply authorized by Mr. Uraz, but not "Distributed" to anybody all right.

Roth: Thank you Your Honor. (DX# A&B)

Perrone: Move for admission

11/06/2017

*PG 149 Line 13-25

Perrone Exhibit # 39:

Is this first sentence is your handwriting?

Close: yes, that's my handwriting?

***Line 22-24

Perrone: where it says you have to draw me a map, is that your handwriting?

***Close: yes

***PG 151 Line 9-16

The notes written between Defendant was done in one setting not multiple settings.

***Lines 20-21

Prosecutor Koop: whose handwriting is this top line

***(Close: was doing the engagement with all his suggestions)

***Close: that's mine.

***At the end of writing (last entry was close ripped the rest of paper because Defendant wrote "No, I do not want anything to happen to her" Close was suppose to flush all handwritten notes exchanged in the toilet but he ticked the defendant by ripping and throwing the rest away and keep the originals.

***This is why there are two separate documents. (Ex. B, #31, #40) Exhibit

#40

***Close after stealing my journal he added Mike Toves's car color and make and Stan White's home address

RECEIVED by MCOA 11/9/2022 3:25:00 PM