# Order

**Michigan Supreme Court**
**Lansing, Michigan**

January 30, 2024

Elizabeth T. Clement,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden,
Justices

165560-1 & (150)(152)

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v                                                         SC:  165560-1
                                                          COA:  343695, 343696
                                                          Ingham CC:  16-001064-FH
TUNC URAZ,                                                           16-001065-FC
        Defendant-Appellant.

_____/

        On order of the Court, the motion to file a supplement is GRANTED.  The application for leave to appeal the January 19, 2023 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.  The motion to stay and hold in abeyance is DENIED.



        I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 30, 2024
_____                    
                                                          Clerk

s0122

---

## TITLE PAGE

**INSTRUCTIONS: This application is for use in *criminal* appeals only**. If you are appealing a Court of Appeals decision involving a civil action, use the form designed for that appeal type. Answer each question completely and add more pages if necessary.

---

## IN THE MICHIGAN SUPREME COURT

## PRO PER CRIMINAL APPLICATION FOR LEAVE TO APPEAL

I am appealing a Court of Appeals decision that affirmed my conviction(s) and sentence(s) in whole or in part, affirmed the trial court's denial of my motion for relief from judgment, or denied my application for leave to appeal in that court.

PEOPLE OF THE STATE OF MICHIGAN,

                    Plaintiff-Appellee,

v

*TUNC URAZ*,
(Print your name)

                    Defendant-Appellant.

Supreme Court No. _____
(Leave blank)

Court of Appeals No. *343695 ; 34-3696*
(See Court of Appeals decision)

Trial Court No. *16-001064-FH; 16-001065-FC*
(See Court of Appeals decision or PSIR)

I am currently incarcerated in a Michigan, federal, or other state correctional facility. ☒ Yes ☐ No

If Yes, provide the name and address of the correctional facility:

*Muskegon Correctional facility*
(Print name of correctional facility)

*2400 S. Sheridan Dr.*
(Print street address of correctional facility)

*Muskegon, MI 49442*
(Print city, state and zip code of correctional facility)

*(stamp: RECEIVED APR 14 2023 LARRY S. ROYSTER CLERK SUPREME COURT)*

**FILING DEADLINE:** For incarcerated persons, the application will be accepted as timely filed by the Supreme Court if received on or before the 56-day filing deadline or if it bears a date stamp from the correctional facility on or before the filing deadline <u>and</u> (1) the case involves a criminal appeal, (2) you are incarcerated, (3) you are acting without an attorney, and (4) you include a sworn statement identifying the date the papers were given to the correctional facility for mailing to the Court and indicating that first-class postage was prepaid. MCR 7.305(C)(4).

For persons who are not incarcerated, the application must be received by the Supreme Court on or before the 56-day deadline or it will be rejected as untimely. No extensions can be given to the filing deadline.

Page 2

STATEMENT OF QUESTIONS PRESENTED

A)    SIXTH AMENDMENT VIOLATIONS PER CRONIC (ABSENT LAWYER)

WAS ATTORNEY JACOB A. PERRONE P(71915) MENTALLEY ILL?IMPAIRED AT LEAST 2 YEARS PRIOR (GOING BACK TO 2015) TO DEFENDANT'S TRIAL TOOK PLACE BETWEEN 10/31/2017 - 11/09/2017?

DID PERRONE ENDED IN A HOSPITAL (SPARROW) BEFORE TRIAL (8/2017, 11/2017) WITH ANXIETY ATTACKS AND TWICE AT MENTAL HOSPITAL WITH ON THE SAME MONTH AFTER THE TRIAL? (ON 11/14/2017 AND ON 11/20/2017)

WAS DEFENDANT' DEPRIVED OF HIS RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (12/12/2017), JUDGES IN-CHAMBERS MEETING) WITH HIS COUNSEL (PERRONE) WAS PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO HIS CLIENTS? WAS DEFENDANT DEPRIVED AN "CONFLICT-FREE" ATTORNEY ON (12/13/2017) IN COURT HEARING, CRITICAL STAGE FOR SIXTH AMENDMENT PURPOSES INCLUDES CIRCUMSTANCE IN WHICH ACCUSED MUST FIND HIMSELF CONFRONTED JUST AS AT TRIAL BY THE PROCEDURAL SYSTEM, OR BY HIS EXPERT ADVERSARY, OR BY BOTH?

DEFENDANT SAY: YES
PROSECUTION SAY: NO

B)    MALICIOUS PROSECUTION

i)    WERE PROSECUTORS KAHLA CRINO, JONATHAN ROTH, CHARLES KOOP II, AND ATTORNEY ERIC SCHROEDER, DUANE SILVERTHORN FAILED TO DISCLOSE PERRONE'S MENTAL IMPAIRMENT DOCUMENTS (BRADY MATERIAL VIOLATION) AND HIS INVOLUNTARY MENTAL HOSPITAL ADMISSION BEFORE TRIAL AND TWICE IN THE SAME MONTH OF TRIAL (NOVEMBER 2017). THEY ALL FAILED TO PRODUCE CLINTON (11/14/2017) AND OAKLAND (11/20/2017) COUNTY PROBATE COURTS DOCUMENTS AND LANSING POLICE REPORT FILED AGAINST PERRONE ON 11/20/2017 AND POLICE CAM FOOTAGE FOR DEFENDANT'S BEFORE GINTHER HEARING TOOK PLACE ON 10/04/2021 AND 04/13/2022?

ii)   WAS DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHT VIOLATED BY "FALSITY OF INFERENCES" BOTCHED, PERJURED EVIDENCE(S), PERJURED TESTIMONY BY PROSECUTION WITNESSES; AND PROSECUTION USED TO OBTAIN SEARCH WARRANT (09/27/2016) AND IMMUNITY GIVE WAS BASED ON PERJURY TO JAILHOUSE INFORMATION? (12/01/2016) Preliminary Hearing

iii)  DID PROSECUTOR ROTH CONFUSED JURY ON HIS FIRST CLOSING ARGUMENT BY TELLING THEM PURPOSEFULLY "ALTERED" SOLICITATION TO MURDER INSTRUCTIONS DIFFERENT THAN WHAT WAS AGREED BY JUDGE ON 11/09/2017, T.T. PG.8 LINES 1-25 (HE USED THE WORD "INTENDED" INSTEAD OF ("PURPOSEFULLY SEEKING") AND JUDGE REFUSED TO GIVE A CURATIVE INSTRUCTIONS TO JURY FOR THIS CONFUSION?

iv)   DID THE PROSECUTION USED DEFENDANT'S EVIDENTIARY HEARING TESTIMONY AGAINST HIM AT TRIAL TO INTRODUCE PAST BAD ACTS WHERE DEFENDANT DID NOT TESTIFY AT HIS TRIAL? 10/20/2017

DEFENDANT SAYS: YES
PROSECUTION SAYS: NO

C)   STRUCTURAL ERRORS IN IMPANELED JURORS

WAS DEFENDANT'S ATTORNEY PROVIDED JURY INSTRUCTIONS ON THE FIRST DAY OF TRIAL 10/31/2017 (RATHER THAN LAST DAY) TO COURT AND COURT GAVE BURDEN SHIFTING PRESUMPTIVE GUILT INSTRUCTIONS ON THE LAST DAY OF TRIAL? (PURPOSEFULLY SOUGHT)? DID TRIAL COURT HAVE MISSING JURY INSTRUCTIONS NOT BEING READ TO JURY?

WAS TRIAL COURT IN ERR BY IMPROPERLY DISMISSING BIAS JUROR #1 "MR NISHON" AT THE END OF CLOSING PROOFS ON (11/09/2017) WITHOUT HOLDING ANY REMMER HEARING CONDUCTED BY JUDGE TO SEE IF THE IMPANELED JURY WAS POISONED (EXTRANEOUS INFLUENCE).

WHEN JURY #1 MR. NISHON DISCLOSED HIS BIAS AGAINST TURKISH PEOPLE ON RECORD ON (11/03/2017) AFTER HE WAS SWORN-IN AS A JUROR ON (11/02/2017), HE WAS KEPT IMPANELED JURY FOR 8 EXTRA DAYS. HE WAS DISMISSED "KNOWINGLY" NOT RANDOMLY PER MCR 6.411 AND MCL 768.18

DEFENDANT SAYS: YES
PROSECUTION SAYS: NO

D)   INEFFECTIVE ASSISTANCE OF APPEAL COUNSEL

WAS DEFENDANT'S APPELLATE COUNSEL INEFFECTIVE;

1)   BY NOT RAISING THE ISSUES NECESSARY NOT PROPERLY INVESTIGATING ACTUAL INNOCENCE CLAIMS BASED ON AVAILABLE/DISCOVERED EVIDENCES BY DEFENDANT. APPEAL ATTORNEY APPOINTED FOR 4 YEARS TO DEFENDANT AND

2)   IGNORING PERRONE'S MENTAL ISSUES GOING BACK TO 2015 AND SHE WOULD/DID NOT REQUEST A SECOND GINTHER HEARING BASED ON NEWLY DISCOVERED EVIDENCE ABOUT PERRONE'S MENTAL ISSUES?

3)   NOT BEING FULLY PREPARED FOR GITHER HEARINGS ALTHOUGH SHE HAD 18 MONTHS TO GET READY AND

4)   FAILED TO BRING IN A MENTAL HEALTH EXPERT A PSYCHIATRIST TO EXPLAIN ON RECORD ABOUT SCHIZOPHRENIA EFFECTED BIPOLAR WITH SUBSTANCE ABUSE DISORDER AND IT'S LONG TERM EFFECTS ON HUMAN BRAIN.

INSTEAD SHE HIRED A PRIVATE INVESTIGATOR TO ASK OTHER ATTORNEYS IF THEY NOTICED PERRONE'S MENTAL ISSUES/IMPAIRMENTS.

5)   DEFENDANT'S APPEAL ATTORNEY FAILED TO INVESTIGATE ISSUES DEFENDANT "PRESERVED ON RECORD" DURING HIS SENTENCING 01/24/2018 AND AT HIS GINTHER HEARING ON 04/13/2022 UP TO 35 ISSUES WERE PRESERVED BY DEFENDANT SINCE HIS

*his sentencing attorney D. SILVERTHORN did not have the discovery package, he was not at the trial, he failed to share Perrone "second" mental impairment (11/20/2017), and police report, on 12/18/2017 it was sent to him by prosecutor KOOP

*his appeal attorney SUSAN K. WALSH failed to investigate actual innocence claims and discovered/available evidence presented to her in 2019.

*appeal counsel failed to get the discovery package and object the BRADY MATERIAL VIOLATION based on; defendant's sentencing attorney SILVERTHORN, prosecutors (KOOP, ROTH, CRINO), 30th. circuit court, judges (CANADY, R. Garcia), attorney (Eric Schroeder) all failed to disclose Perrone's mental illness going back to 2015 and his mental hospitalization (twice with in 10 days after trial ended) and his Probate Court documents from Oakland County, Clinton, Lansing Police report.

*trial attorney PERRONE failed to investigate actual innocence claims and subpoena important/necessary witnesses on timely basis before trial.

DEFENDANT SAYS: YES
PROSECUTION SAYS: NO

E)   BIAS JUDGE

6)   WAS DEFENDANT'S TRIAL JUDGE CANADY INEFFECTIVE, BIAS, ABUSED HIS DISCRETION AND PIERCED VEIL OF JUDICIAL IMPARTIALITY. VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO FAIR TRIAL; BEFORE, DURING AND AFTER TRIAL (GINTHER HEARING) WITH HIS RULINGS WHICH DISQUALIFIED HIM AS A JUDGE BASED ON TOTALITY OF CIRCUMSTANCES? (JOINDER OF TWO CASES, EVIDENTIARY/ENTRAPMENT HEARING, 404b BAD ACTS DECISION CAUSE PREJUDICE).

JUDGE KNEW ABOUT PERRONE'S MENTAL ILLNESS BY 11/30/2017, BUT HE CHOOSE NOT TO REPORT IT TO AGC THEREFORE, HE BECAME A WITNESS IN GINTHER HEARINGS AND AN ACCOMPLICE BY NOT REPORTING IT AND COVERING IT UP?

DEFENDANT SAYS: YES
PROSECUTION SAYS: NO

F)   SUFFICIENCY

7)   WERE SUFFICIENCY OF EVIDENCES AND FACTS DID NOT MATCH TO THE ELEMENTS OF THE CRIMES (SOLICITATION TO MURDER AND AGGRAVATED STALKING) DEFENDANT WAS CHARGED WITH; AND TRIAL AND APPEAL ATTORNEYS AND FAILED TO INVESTIGATE READILY AVAILABLE EVIDENCES BEFORE DEFENDANT TRIAL AND BEFORE GINTHER HEARINGS?

ELEMENTS OF THE CRIME; SOLICITATION TO MURDER

PER; PEOPLE V VANDERLINDER 192 MICH APP 447 (1992).

1)   "PURPOSELY SEEKS" TO HAVE SOMEONE KILLED OR

2)   TRIES TO "ENGAGE SOMEONE TO DO THE KILLING"

DEFENDANT SAYS: YES
PROSECUTION SAYS: NO

8)   WAS RETAINED ATTORNEY MR. BERGSTROM VIOLATED ATTORNEY – CLIENT PRIVILEGE
COMMUNICATION BY TESTIFYING AGAINST DEFENDANT AT HIS TRIAL AND PROSECUTOR
KOOP BECAME A WITNESS FOR THE SAME ISSUE AT THE TRIAL? (PROSECUTION/JUDGE
VIOLATED, DID NOT RESPECT NOR CONSIDER ATTORNEY/CLIENT PRIVILEGE

DEFENDANT SAYS: YES
PROSECUTION SAYS: NO

9)   WAS DEFENDANT OVER SCORED FOR  OV  9, OV 10, OV 13, ON HIS PSIR WHICH
INCREASED HIS SENTENCING GUIDELINES, POINTS DUE TO HAVING  A  DIFFERENT
ATTORNEY REPRESENTED HIM ON SENTENCING DAY DUE TO HIM NOT INVESTIGATING NOR
HAVING  A  DISCOVERY  PACKAGE  NOT  GIVEN  TO  HIS  SENTENCING  ATTORNEY
SILVERTHORN? (he was not provided a discovery  package and was told to get
it from mentally impaired attorney PERONE who was not allowed to represent
anyone) See attached emails dated (01/09/, 10/2018)

DEFENDANT SAYS: YES
PROSECUTION SAYS: NO

10)  DID MENTALLY IMPAIRED TRAIL ATTORNEY PROVIDED  "INEXPLICABLY INCOMPETENT"
BEHAVIOR WITH HIS OFF REMARK QUESTIONS TO JURY DURING VOIR DIRE AND HIS
REPRESENTATION BY NOT INVESTIGATING READILY AVAILABLE EVIDENCE(S) AND
PRESENTING REASONABLE DOUBT(S) TO TRIAL COURT AND JURY?

See attached history and list of major ineffectiveness by Perrone.

DEFENDANT SAYS: YES
PROSECUTION SAYS: NO

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ_____, Appellant    Court of Appeals No._343695, 343696_

(Print your name)

**INSTRUCTIONS:** In the sections below, write out those issues you want to raise in the Supreme Court that were raised in the Court of Appeals in either a brief prepared by your attorney or a supplemental brief that you prepared. To raise new issues, go to page 8.

## ISSUES RAISED IN COURT OF APPEALS

WAS DEFENDANT DEPRIVED OF HIS RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (12/12/2017), JUDGES IN-CHAMBERS MEETING) WITH HIS COUNSEL (PERRONE) WAS PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO HIS CLIENTS? WAS DEFENDANT DEPRIVED AN "CONFLICT-FREE" ATTORNEY ON (12/13/2017) IN COURT HEARING, CRITICAL STAGE FOR SIXTH AMENDMENT PURPOSES INCLUDES CIRCUMSTANCE IN WHICH ACCUSED MUST FIND HIMSELF CONFRONTED JUST AS AT TRIAL BY THE PROCEDURAL SYSTEM, OR BY HIS EXPERT ADVERSARY, OR BY BOTH?

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☒ 1.  The issue raises a serious question about the legality of a law passed by the legislature.
☒ 2.  The issue raises a legal principle that is very important to Michigan law.
☒ 3.  The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☒ 4.  The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

●CONFLICT-FREE REPRESENTATION
(CASE PRECEDENTS)

1)What constitutes a critical stage for Sixth amendment purposes includes those circumstances in which the accused must find himself confronted, just as at trial, by the procedural system, or by his expert advesary, or by both.
The in-chambers hearing on Perrone's fitness to continue to represent Uraz was a critical stage of proceedings and that he was prejudiced by not having conflict-free counsel represent him.
Defendant points out the hearing turned on consented facts, rather mere arguments, which defendant distinguishes from situations involving only legal arguments between the court and counsel or other minimal events for which the defendant's presence makes no difference.
Defendant emphasizes that no one in chambers was representing his interests: Attorney Perrone was acting as a witness for the subject matter of the hearing and NOT in his capacity as defendant's attorney.
Defendant was deprived of his right to conflict-free counsel during a critical stage in the proceedings when his counsel was placed in the UNTENABLE POSITION OF defending his own interests which were adverse to his client's.
DOWNS V. COMMONWEALTH  (See attached)
2020 KY. LEXIS 222 (2020)
SUPREME COURT OF KENTUCKY    Michigan Case analysis for Missing Attorney per MCR 6.505(A)
JULY 9 2020 RENDERED

IN PEOPLE V PAGE 2001 MICH LEXIS 833 (2001) MICHIGAN SUPREME COURT

The circuit court record shows that the judge heard oral argument by the prosecution on the defendant's motion for relief from judgement but he did NOT APPOINT A COUNSEL TO REPRESENT DEFENDANT AT THAT HEARING AS REQUIRED BY MCR. 6.505(A). On remand, the Genesse County Cir. Ct. MUST APPOINT COUNSEL TO REPRESENT THE DEFENDANT AND THEN RECONSIDER
then reconsider the defendant's motion for relief from Judgement after hearing Oral argument by appointed counsel and prosecutor.

IN People v EVANS 2023 MICH APP 2151 (2023) INGHAM COUNTY 30th Circuit Court.

"The motion for preemptory reversed pursuant to MCR 7.211 (C)(4) is granted for reason that the Circuit Court heard oral Argument on defendant's motion for relief from judgement, BUT DID NOT APPOINT COUNSEL TO REPRESENT DEFENDANT AT THE HEARING CONTRARY TO MCR 6.505(A)......on remand the Circuit Court shall appoint counsel to represent defendant and it must hear oral argument from appointed counsel.....

Page 3

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ _____, Appellant   Court of Appeals No. 343695
(Print your name)                                              343696

## ISSUE II:

WAS ATTORNEY JACOB A. PERRONE P(71915) MENTALLEY ILL?IMPAIRED AT LEAST 2
YEARS PRIOR (GOING BACK TO 2015) TO DEFENDANT'S TRIAL TOOK PLACE BETWEEN
10/31/2017 – 11/09/2017?

DID PERRONE ENDED IN A HOSPITAL (SPARROW) BEFORE TRIAL (8/2017, 11/2017)
WITH ANXIETY ATTACKS AND TWICE AT MENTAL HOSPITAL WITH ON THE SAME MONTH
AFTER THE TRIAL? (ON 11/14/2017 AND ON 11/20/2017)

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the boxes you think apply
to this issue, but you must check at least 1.)

☒ 1.  The issue raises a serious question about the legality of a law passed by the legislature.
☒ 2.  The issue raises a legal principle that is very important to Michigan law.
☒ 3.  The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☐ 4.  The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any cases and state any facts that
you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you
think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may
add more pages.

(1) Perrone lied on record on 10/04/21 Ginther hearing, see pg 35
he did not get to DALLAS see Mental health records by outdated probate courts

(2) No one including Judges, Attorneys, prosecuters did not report
his Mental impairments to AGC except one unknown prosecuter.
see
in attached

8.3 REPORTING PROFESSIONAL MISCONDUCT.

(a) A lawyer having a knowledge that another lawyer has committed a significant violations of the Rules of
Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or FITNESS as
a lawyer shall inform the Attorney Grievance Commission.

Notes : Self-regulation of the legal profession requires when they know of a violation of the Rukest of Professional
Conduct (MPRC). Lawyer have a similar OBLIGATION with respect to judicial misconduct. An apparently isolated
violation my indicate a pattern of misconduct that only a disciplinary investigation can uncover. REPORTING A
VIOLATION is especially important where the VICTIM is unlikely to discover the offense.

If a lawyer were obliged to report every violation of the rules, the failure to report any violation would it self be a
professional offense. Such a requirement existed in many jurisdictions but proved to be unenforceable. This rule limits
the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A
measure of judgement is, therefore required in complying with the provisions of this rule. The term "substantial" refers
to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.

In, Grievance Administration V Fieger, 476 Mich 231 (2006) Michigan Supreme Court. (comments made were outside
the courtroom)

HN33
IN OTHER WORDS, A JUDGE IS OBLIGATED TO INFORM THE ATTORNEY GRIEVANCE COMMISSION ON
ATTORNEY'S PERCEIVED MISCONDUCT; TO FAIL TO DO SO IS TO VIOLATE ON EXPLICIT ETHICS RULE.
THIS RULE DOES NOT DISTINGUISH BETWEEN A JUDGE WHO OBSERVES THE ALLEGED MISCONDUCT
AND A JUDGE WHO IS THE OBJECT OF IT. BUT UNDER JUSTICE WEAVER'S REASONING, A JUDGE MUST
EITHER TURN A BLIND EYE TO ATTORNEY MISCONDUCT OR RISK DISQUALIFICATION. THIS CANNOT BE.
ON THE CONTRARY, A JUDGE WHO MEETS HIS OR HER ETHICAL OBLIGATION TO REPORT ATTORNEY'S
MISCONDUCT IS NOT THEREBY ASSUMED TO BE BIASED OR UNABLE TO REVIEW IMPARTIALLY CASES
THAT CAME BEFORE HIM OR HER.

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ _____, Appellant    Court of Appeals No. 34 3695
(Print your name)                                            34 3696

**ISSUE V:**

WAS DEFENDANT OVER SCORED FOR OV 9, OV 10, OV 13, ON HIS PSIR WHICH INCREASED HIS SENTENCING GUIDELINES, POINTS DUE TO HAVING A DIFFERENT ATTORNEY REPRESENTED HIM ON SENTENCING DAY DUE TO HIM NOT INVESTIGATING NOR HAVING A DISCOVERY PACKAGE NOT GIVEN TO HIS SENTENCING ATTORNEY SILVERTHORN? (he was not provided a discovery package and was told to get it from mentally impaired attorney PERONE who was not allowed to represent anyone) See attached emails dated (01/09/16/10/2018)

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☒ 1. The issue raises a serious question about the legality of a law passed by the legislature.
☒ 2. The issue raises a legal principle that is very important to Michigan law.
☒ 3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☒ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

① See Attached PSIR's
② See Sentencing attorney's AGC letter's with attachments for Adults Sentencing, where he neglected put on record Perrone's Mental impairment episode and his hospital medication list (11/3/17) (first episode) (Second)
See his AGC response 3/31/23 Perrone's (11/20/2017)
③ Sentencing attorney neglected to turn over Perrone's Second mental episode probate court docs to defendant and his appellate attorney (12/6/17) Attach B.
④ Kahla D. Crino, Jonathan C. Roth, Charles T. Koop II, Eric Schroeder all failed to report Perrone's mental impairments the AGC and failed to disclose these probate court docs to Defendant, did not disclose them during Ginther hearings. see attached Briefs, responses to AGC

Page 7

1) Conflict-Free Representation (1-28)

Index of Cases

People v Bailey, 2019 Mich App Lexis 5750 (2019)

People v Bailey, 2008 Mich App 227 (2008)

People v Baskin, 145 Mich App 526; 378 NW2d 535 (1985)

People v Clyburn, 55 Mich App 454; 222 NW2d 775 (1974)

People v Dobek, 274 Mich App 58, 63; 732 NW2d 546 (2007)

People v Kregger, 335 Mich 457; 56 NW2d 349 (1953)

People v Landwer, 254 Ill App 3d 129 (1993)

People v Mitchell, 454 Mich 145 (1997)

People v Smith, 456 Mich 543 (1998)

People v Willing, 267 Mich App 208 (2005)

Mitchell v Mason (on remand) 325 F3d 732 (CA6, 2003)

Olden v US f3d 561 (CA6, 2000)

Downs v Commonwealth, 2020 KY LEXIS 222 (2020) Supreme Court of Kentucky ***
(See Exhibit A).

U.S. v Gonzales-Lopez, 548 U.S. 140 (2006)

U.S. v Schor, 418 F2d 26 (2nd. Cir. (1969)

Holloway v Arkansas, 435 U.S. 475 (1978)

Hopt v Utah, 110 U.S. 574, 4 SCt 202; 28 L.ed 262 (1884)


MCR 6.104

MCR 9.121

MCLS 330.1401

MCLS 600.934

MCLS 600.937

MCLS 600.940


Anasognosia (one denying their own Mental Illness)

U.S. Const. Am VI Const 1963, Art 1 & 20

2) Jacob A. Perrone's mental impairment documents (Oakland and Clinton County Probate Court "person requiring treatment" (PRT FORMS) (39-38) Exb B

He was sent to Mental Hospital involuntarily twice 3 days (11/14/2017 and 7 days (11/20/2017) after Defendant's trial completed (11/09/2017)

See attached documents from Oakland and ClintonCounty Probate Courts which were obtained (July and August 2022) Under FOIA and based on Jonathan Roth's testimony on 04/13/2022, and Ingham County Prosecutor's office (Prosecutor's file) Exhibit-B.

These documents were not shared with Defendant nor with his Appeal Attorney before both Ginther Hearing on (10/04/2021 and 04/13/2022). This is major Brady material violation.

1) See pages 002/008 - 003/008
"Petition for mental health treatment" request filled by Joseph V. Perrone (Jacob A. Perrone's father) dated 11/14/2017 where Perrone was admitted to UOFM hospital by 9:00 am

2) See Clinical Certificates by two Psychiatrist about Perrone's condition

First Hospital: 11/13/2017
UOFM Hospital, Ann abror
See pg. 6 004/008 - 005/008

Mr. Perrone was at UOFM Hospital (Mental Ward) in Ann Arbor by 9:00 am on 11/14/2017 see Dr. Rachel L. Glick's evaluation of Perrone by 11:30 am

Second Hospital: 11/14/2017 by 10:00 pm. Saginaw, MI. see pgs 006/008 - 007/008

On 11/14/2017 Perrone was sent Saginaw Health Source White Pine Mental (involuntarily) hospital on the same day by 10:00 pm. See attached Dr. Usha Movva's Evaluation of Perrone on 11/15/2017 at 9:00 am

3) He left early without completing treatment on 11/17/2017 (see letter dated 11/24/2017 by Health Source letter sent to Clinton County Probate Court to Sandra Burk)

4) Lansing police department case report # 175106153 (see attached) Dated 11/20/2017 (Body cam footage was sent to Court of Appeals senior administrator Mr. Gary Chambon on 09/13/2022.

Petition to mental health treatment (by Lansing police officer Mcbride, Perrone's father and Perrone's wife Ashley Perrone) second time.

5) Third hospital 11/20/2017
He was sent to (involuntarily) Havenwyck Mental Hospital in Auburn Hills, Mi Where he refused treatment (see attached Demand for hearing document by Carmella Mitchell dated 11/21/2017

6) 11/28/2017 Ms. Carol Polly, social worker: patient requires hospitalization, no insight, refusing medication (Order and report on alterative Mental Health Treatment).

7) Perrone was ordered to be seen by Judge Hallmark of Oakland County. And appointed Ms. Lisa Zatyko where Mr. Perrone did not want to be seen by an attorney, he did not testify at the court about his condition on 11/30/2017. (See attached e-mail message from Ms. Zatyko dated 09/03/22).

8) See "initial order after hearing on petition for mental health treatment" pgs. 5/20 - 6/20. He was order to complete 10 days in hospital and 90 days outpatient treatment Community Support Services."
The respondent shall take medication as prescribed attend counseling and therapy sessions as directed and maintain residence as directed" signed by Judge Hallmark on 11/30/2017.

9) On 12/12/2017 he went on the record saying that he still could represent me for my sentencing (where again he perjured by saying I was Ok with it, yet he was still under treatment). He was representing his own interest at that hearing where I did not have "conflict free attorney" to represent my interest. He admitted on record that he was unmedicated before and during trial.

FACT
PERRONE COULD NOT HAVE REPRESENTED DEFENDANT REGARDLESS DUE TO COURT ORDERED MENTAL HEALTH TREATMENT FOR 90 DAYS.

10) See prosecution later dated 12/18/2017, telling Mr. Duane Silverthorn that "out an abundance caution: they were appointing him not Perrone. (not shared with Defendant). See Exhibit A.

3) Sentencing Issues for OV's see attachment (39-48) Exhibit C
OV 9 MCL 777.39
OV 10 MCL 777.40
OV 13 MCL 777.43

People v Carll, Mich App 690 (2018)
People v Cannon, 481 Mich 152 (2008)
People v Frasisco, 474 Mich 82 (2006)
People v Huston, 489 Mich 451 (2011)
People v Jamison, 292 Mich App 440 (2011)
People v Lockridge, 698 Mich 358 (2015)
People v Mc Graw, 484 Mich 120 (20019)
Statev v Melton, 821 S.E.2d 424 (N.C. 2018)
Townsend v Burke, 334 U.S. 736; 68 SCt 1252; 92 L.Ed.2d 1690 (1984)
U.S v Crosby Scotus

Statues and Rules
MCR 6.120
MRE 801 hearsay
MCL 777.39
MCL 777.40
MCL 777.43
MCL 777.14(6)
MCLS 777.62
MDOC Policy Dir. 06.01.140
U.S. Constitution v Amend., VI Amend., Fourteenth Amend.
Michigan Const. 1963 Art 1 & 17

1) CONFLICT-FREE REPRESENTATION

1)   WAS DEFENDANT MR. TUNC URAZ DENIED THE RIGHT TO "CONFLICT-FREE" COUNSEL AT
     A CRITICAL STAGE OF THE PROCEEDINGS UNDER THE SIXTH AMENDMENT DURING IN
     CHAMBERS HEARING 12/12/2017 AND NEXT DAY IN COURT HEARING, 12/13/2017. THE
     TRIAL COURT CONDUCTED FITNESS AND ABILITY OF DEFENDANT'S ATTORNEY (JACOB
     A. PERRONE)?

2)   DID THE PROSECUTION HID/NOT SHARED, NOT DISCLOSED, COMMITTED PERJURY ABOUT
     PERRONE'S "MENTAL IMPAIRMENTS" 11/14/2017, 11/20/2017 INVOLVING LANSING
     POLICE, CLINTON AND OAKLAND COUNTY PROBATE COURTS PER MCL 330.1401 FROM
     DEFENDANT AND HIS APPEAL ATTORNEY FOR HIS APPEAL/GINTHER HEARINGS?
     10/04/2021, 4/13/2022

STANDARD OF REVIEW:

Judge's abuse of discretion is reviewed de novo.

Facts of the Case

     Defendant was found guilty on 11/09/2017 to 3 counts of Solicitation to

Murder (MCL 750.157b) and 1 count of Aggravated Stalking MCL 750.411I. His

sentencing day was scheduled originally on 12/20/2017. Until the Ginther hearing

on 04/13/2022 Defendant was not aware how Mr. Perrone was admitted to mental

hospital for the "second time" (Involuntary Admission) See below.

     Per Mr. Roth's (prosecutor then) testimony pg. 20-21, 04/13/2022 Ginther

hearing.

     Prosecutor Crino: now sometime after the jury's verdict (11/09/2017) you

have indicated that you were informed that Mr. Perrone had some type of episode

how is it that you were informed of that?

     Prosecutor "Roth:" by the way of an-e-mail, it was on December 2nd, 2017, I

received an e-mail indicating that he had has what we refer as PRT proceedings,

I think in Oakland County, and that's extent of the detail that I know". (this

means per MCL 330.1401(a)(b)(c) person requiring treatment (PRT) see attached

MCL) and per probate court orders Perrone must have been sent to:

     (1) Saginaw Health Core psychiatric hospital for an "involuntary admission:

on 11/14/2017 11:41 pm (see attached hospital admission records).

(2) Mr. Perrone had a "second mental" impairment incident on 11/20/2017 which was not shared with Defendant and his appeal attorney for his Ginther Hearing and Defendant's appeals process. This "second" mental impairment documents were only shared with Mr. Silverthorn Defendant's sentencing attorney on 12/18/2017 (see attached e-mail by Pros Koop) after the hearings on 12/12/2017 and 12/13/2017 about Perrone's Second Mental Impairment. However, Mr. Silverthorn failed to share this information with Defendant.

Based on newly discovered by the first week of July 2022 received by the Defendant, (copy of "prosecution's file" was requested at the end of April). Defendant discovered document that were hidden and not disclosed, shared by Ingham County Prosecutor office related to Mr. Perrone's 'Second" mental impairment episode was on November 20th 2017.

This information was not disclosed by Ms. Crino Igham County prosecutor to Defendant's appeal attorney and to Defendant for his Ginther hearing and appeal process.

NEWLY DISCOVERED EVIDENCE:

Mr. Perrone was sent to a mental hospital "Second" time Per MCL 330.1401 started PRT Proceedings (person requiring treatment) and per Oakland Probate Court orders dated 11/20/2017. These document consistent of (see attached documents),

(1) Lansing Police Department report about Mr. Perrone's Second mental breakdown on 11/20/2017, Case No. 175190653,

(2) "Petition for metal health treatment" form filled by police officer on 11/20/2017, see sec. (4); observation of the person doing the following acts saying the following things, as I drove past Perrone, he yelled "fuck you Quincy". Perrone said he is #1 defense attorney in the world, Perrone states he would kill a bunch of people", (3) "initial order after hearing on petition for

mental treatment" Clinton County Probate Court filed on 12/06/2017 all 27 pages faxed to courts) defendant only had #5 and #6, (4) Defendant obtained all 27 pages of Perrone's mental hospital records on 08/19/22 see attached Second Mental Impairment by Perrone involved Lansing Police initiating (PRT) Producers on 11/20/2017.

Because unity now there was only one mental impairment incident known to defendant with Mr. Perrone and the whole Ginther hearing was given based on that incident 11/14/2017. (Maybe the court's were not aware of First Mental Episode by Perrone on 11/14/2017).

HERE IS THE TIME LINE:

(1) Perrone sent an e-mail to defendant's family on 11/08/2017 one day before trial ended (see attached email). (2) Perrone sent to Mental Hospital on 11/14/2017. (3) Perrone was released from Mental Hospital on 11/19/2017, see attached text messages Defendant's sister sent a text message to Perrone on 11/13/2017. First response by Perrone was on 11/19/2017 after he was released from Saginaw Mental Hospital. (4) 11/20/2017 Perrone was sent to mental hospital by police on 11/20/2017 Defendant's sister sent another message since he had not heard from Perrone. Perrone responded on 12/05/2017 and 12/06/2017 (see attached texts). (5) Oakland County Probate Court faxed Perrone's (PRT) documents to Clinton County on 12/06/2017 because Perrone's home address is located in Clinton County 27 pages (see attached) Ex. B

A prosecutor's role and responsibility is to seek justice and not merely convict. People v Dobek, 274 Mich App 58, 63; 732 NW2d 546 (2007). The prosecutor may request a rigid adherence to procedural rule than taking a stand against the most appalling assault upon the integrity and reputation of any court-perjury. Perjury shows a deep disrespect to the Court and complete lack of concern for the outcome to the Defendant. The Legislature takes false statements

committed in courts very seriously. What is even most bothersome in this case is that the prosecution was made aware of Mentally incapacitated attorney Jacob Perrone by 12/12/2017 - 12/06/2017 Per Mr. Roth's testimony on 4/13/2017 Ginther hearing.

2) CONFLICT-FREE REPRESENTATION

Oakland County probate court faxed "Initial order after the hearing on Petition for mental treatment" for Jacob Perrone (Case No. 2017-380077-MI) Documents to Clinton County Probate Court Case No. 17-29766-MI. On 12/06/2017 because Perrone lives in Clinton County. (See attached).

This Court have the power to avoid the grave injustice of a man being in prison, while his U.S. born son is suffering from major depression in a Orphanage in Turkey.

On 12/12/2017 Judge Canady III had a "in chambers meeting" with Prosecutors Johnathan Roth, Charles Koop II and Defendant's trial attorney Jacob Perrone and his assistants Eric Schroeder, Nicholas Fernandez. (see attached Summary of the hearing). In this meeting Perrone told the judge that he had spoken to defendant Mr. Uraz about "what is happening here". (See Hearing transcripts 12/12/2017 pg. 3,4). This was never acknowledged approved by the Defendant (See attorney visit log in jail that defendant had, Perrone never came to see Defendant in jail after trial). Mr. Perrone insisted on representing defendant for his sentencing, however, Prosecutor Roth did not want Perrone to continue to represent the defendant. (pg. 4 line 22).

Due to Mr. Perrone's condition Roth: "Chief Judge is aware of some ongoing issues, I believe the State bar may be aware of some ongoing issues. Mr. Perrone has been removed from some other cases in the County." We don't think it would be appropriate for him to continue with representation" (pg. 5 Line 1-5). (See attached letter sent by Pros. Koop dated 12/18/2017). Judge decided to bring in

618

4

defendant the next day "to lay out those options for him" and "if that's what Mr. Uraz wants to do" (pg. 5 Lines 6-18). Perrone for the record "I did have a family situation that was addressed. I am bipolar, at this point in time I'm appropriately medicated". (pg. 7 Lines 4-9).

So this meant, Mr. Perrone "was not medicated at all before and during the trial". (he told the defendant that he uses THC to clam him down) which was illegal in the State of Michigan at that time 2017 unless one had a "Medical Marijuana" card. Judge raised the issue if Perrone "was properly medicated during the trial"? (pg. 7 Lines 10-13, 12/12/2017).

Perrone: "I was NOT having an active episode at the time DURING the trial" however he did not make any comment about if he was appropriately medicated or not. Therefore, Judge scheduled another hearing the next day with defendant on 12/13/2017 and explained to him that, Mr. Perrone could not be able top represent him anymore for sentencing and Mr. Silverthorm was allegedly already appointed for sentencing only (scheduled on 01/24/2018) See trans. 12/13.2017 pgs. 3,4). Mr. Sliverthorn arrived very late towards the end of the hearing although judge commented on 12/12/2017 hearing that Silverthorn was supposedly appointed on 12/06/2017, but actually he was appointed on 12/14/2017 officially by the Courts (See attached email confirmation by Court Clerk Ms. Whipple).

Although prosecutor Crino kept pushing the defendant to admit that "he had no objections for Perrone to help with sentencing, in reality it was the prosecution who did not want Perrone to represent the Defendant see attached letter dated 12/18/2017; the people requested that new counsel be appointed for sentencing out abundance of caution". Defendant only acknowledged what the judge told him that he is going to do.

ANALYSIS:

Defendant was denied his right to have a CONFLIC-FREE COUNSEL, at a critical stage of an proceeding under the Sixth Amendment during an in chambers hearing and in court hearing the next day trial court conducted on the fitness and ability of Defendant attorney to continue to represent him for his sentencing and whether Defendant had a fit attorney representing him before and during trial was of utmost important to the fairness of his trial and at the very least Defendant should have been given an opportunity to retain an "independent conflic-free" counsel to advocate his interests". Michigan Courts require a fair trial, not a perfect trial, Pickens Supra 314.

Mr. Uraz claims he was denied the right to conflic-free counsel at a critical stage of his proceedings during an in chambers hearing the trial Court conducted on the fitness and ability of his court appointed attorney Mr. Jacob A. Perrone.

Michigan case law is settled that a complete absence of counsel at a critical stage of a criminal proceedings is a pre se Sixth Amendment violation warranting reversal of a conviction, a sentence or both, as applicable, without analysis for prejudice or harmless error, People v LaBlanc, 465 Mich 575, 579; 640 NWd 246 (2002).

Mr. Uraz was in jail while his attorney and the prosecutor's had a meeting in judge's chambers. As Mr. Perrone's life long friend and his administrative assistant (Mr. Nick Ferrnandez) testified on 10/04/2021 at a Ginther gearing that Mr. Perrone has always been an "Excitable Guy, High Energy and Naturally Hyper person".

While noting the importance of Defendant's right to counsel of his choice, the Court might had been observed Mr. Perrone's behavior before and during the trial and Mr. Perrone's relationship with Mr. Uraz appropriately interacting

6

throughout the proceedings and Mr. Uraz had not asked the Court to intervene, or looked to the Court as though there was a problem. The Court must have assume, believed that to question Mr. Uraz about Mr. Perrone's fitness at this point would prejudice their relationship. This Court never asked Mr. Uraz about Mr. Perrone's behavior before, during or after trial. (until Ginther hearing on 04/13/2022). Mr Uraz argues that he had the right to be represented by "Conflict-Free" counsel and to have been present during the "In Chambers" hearing.

MCR 6.104 States, in part, "The defendant shall be present at the arraignment, at every critical stage of the trial including the empanelling of the jury and the return of the verdict, and at the imposition of the sentence. In deed, it is well settled that a criminal defendant has a right to be represented by counsel that extends beyond the actual trial to every critical stage proceedings. An analysis of a critical stage necessary involves a retrospective inquiry as to the nature and consequences of each step in the proceedings. Particular attention must be given to how counsel would have benefited the defendant at theses moments. A portion of a criminal proceeding is a critical stage if a reasonable likelihood exists that the defendant was prejudiced by the absence of counsel.

Mr. Uraz asserts that the in-chambers hearing on Perrone's fitness to continue to represent Uraz was a critical stage of proceedings and that he was prejudiced by not having conflic-free counsel represent him. Defendant point out that the hearing turned on "contested facts", rather than mere "legal arguments", which distinguishes from situation involving only legal arguments between the court and counsel, or other minimal events for which the defendant's present makes no difference. Mr. Uraz emphasize that no one in-chambers was representing his interests, Mr. Perrone was acting as a fact witness for the

subject matter of the hearing and not in his capacity as Mr. Uraz attorney.

Mr. Uraz argues that Mr. Perrone's insistence to represent Mr. Uraz reveals the inherent Conflict; Mr. Perrone was seeking to preserve his attorney-client relationship with Mr. Uraz, rather than serving as an advocate for Mr. Uraz. In People v Bailey 2008 Mich App Lexis 227 (2008). Right to "Conflict-Free" counsel as guaranteed by the Sixth Amendment Scotus (Halloway v Arkansas), 435 US 475 (1978). To establish a Conflict of Interest, a defendant must demonstrate that an actual conflict of interest existed and that it negatively impacted his or her attorney's performance. People v Smith, 456 Mich 543 (1998).

Defendant was deprived of his right to "conflict-Free" counsel during a critical stage in the proceedings when his counsel was placed in the "UNTENABLE" position of defending his own interests which were adverse to his clint's.

As Michigan Supreme Court and Scotus has noted, what constitutes a "Critical Stage for "Sixth Amendment" purposes includes those circumstance in which "the accused must find himself confronted, just as at trial, by the procedural system, or by his expert adversary or both.

Here the trial courts in-chambers hearing failed to include the person most affected by the issues raised, Mr. Uraz, who was convicted for three counts of solicitation of murder and aggravated stalking at a jointed trial.

Whether Mr. Uraz had a fit attorney representing him at trial is of utmost importance to the fairness of his trial.

While Mr. Uraz was not placed in an adversarial situation without counsel, Mr. Uraz was excluded from participating in the procedural system during a fact-based inquiry that bore directly on his counsel's physical and mental

ability to represent him completely and effectively.

At the very least, Mr. Uraz should have been informed of the allegations against Mr. Perrone before the in-chambers hearing took place. Mr. Uraz should have been given the opportunity to retain independent (Conflict-Free) counsel to advocate his interests.

Mr. Uraz's right to Conflict-free counsel outweighed Mr. Perrone's desire to keep his attorney-client relationship intact and outweighed any potential inconveniences suffered by delaying the trial and sentencing to conduct a proper hearing on the issues raised.

While the court effort to investigate the concerns in a confidential and professional manner, The Court's decision not to inform Mr. Uraz of the Court's In-Chambers meeting and next day in Court hearing about Mr. Perrone condition and not offer Mr. Uraz opportunity to retain independent counsel to represent his interests was error of constitutional magnitude and mandates a reversal.

Therefore because Defendant Tunc Uraz was deprived of his right to counsel at a critical stage of the proceedings, trial court and appeals court SHOULD reverse his judgment of conviction and sentence and remand for further proceedings.

See Attached: E✓ A
Downs v. Commonwealth
2020 Ky. LEXIS 222 (2020)
Supreme Court of Kentucky
July 9, 2020 Rendered

Jonathan C. Roth perjury on record, please see that attached report of interview done by Mr. James D. Hoppe JDH consulting services, LLC. with Jonathan Roth on

09/23/2021 (attachment)

Part: Roth was involved in the prosecutor of Uraz and he is NOT "aware" that Perrone suffered any mental or physical health crises. Roth advised that Perrone is still practicing law at this time.

Dunac Silverthorn's statement to private Investigator (James D. Hoppe) on 09/27/2021 by JDH consulting services (see attachment)

Part: Silverthorn described Perrone as being "off" and as non-stop talker almost "pathologically" so. in Silverthorn's opinion Perrone seemed to be "flying", almost as if he was an "amphetamine" user.

Nicholas Fernandez
LIFELONG FRIENDS OF MR. PERRONE.
Statement to private investigator (James D. Hoppe) on 10/01/2021, JDH Consulting Services,
Part: Mr. Fernandez advised that during the Uraz trial he noticed a "downturn" in the behavior of Perrone indicating that Perrone seemed to lose his temper more frequently and had more emotional outbursts.

(CASE PRECEDENTS)

1) What constitutes a critical stage for Sixth amendment purpose includes those circumstances in which the accused must find himself confronted, just as at trial, by the procedural system, or by his expert adversary or both.

The in-chambers hearing on Perrone's fitness to continue to represent Uraz was a

critical stage of proceedings and that he was prejudiced by not having conflict-free counsel represent him.

Defendant points out the hearing turned on consented facts, rather mere arguments, which defendant distinguishes from situation involving only legal argument between the court and counsel or other minimal events for which the defendant emphasizes that no one is chambers was representing his interests: Attorney Perrone was acting as a witness for the subject matter of the hearing and NOT in his capacity as defendant's attorney.

Defendant was deprived of his right to conflict-free counsel during a critical stage in the proceedings when his counsel was placed in the "UNTENABLE POSITION" of defending his own interests which were adverse to his clint's.

1) Defense counsel's absence from trial, during the presentation of evidence that tended to implicate defendant, denied Defendant his right to counsel at a critical stage of the proceedings. To determine whether defendant validly waived his right to counsel, the Sixth Amendment requires that a trial court conduct a colloquy similar to that conducted when a defendant seeks to represent himself. While defendant stated that he had no objection to allowing substitute counsel during his attorney's absences, the trial court failed to ascertain whether defendant knew of his right to have his own counsel, his right to reject substitute counsel and his right to request a continuance. Remand was required to determine whether defendant knowingly and intelligently accepted substitute counsel and waived the right to have his own attorney present (Olden v US 224 F3d 561 (CA 6, 2000).

2) Defendant experienced A "Total deprivation of counsel" at a critical stage of the proceedings and reversal is required without the necessary of showing prejudice. although defendant was assisted by a standby counsel, standby counsel is not "counsel" within the meaning of the Sixth Amendment. The walker and entrapment hearing were critical stages, and there is no doubt that results of the ruling affected the entire proceeding. People v Willing, 267 Mich App 208 (2005).

3) People v Bailey, 2019 Mich App Lexis 5750 (2019), Substitution of counsel is reviewed by courts as "plain error".

Defendant argues that the trial court erred and violated his right to counsel when it "sua sponte" substituted his appoint defense counsel. This constitute plain error affecting defendant's substantial right by not having a "conflict-free" representation for the meeting held in Judge's chambers.

4) The erroneous deprivation of a criminal defendant's counsel of choice is structural error. Which entitles the defendant to a new trial. The Sixth Amendment Right to counsel of choice commands not that a trial be fair, but that a particular guarantee of fairness be provided, and that the accused be defended by the counsel he believes to be best. Defendant's right to counsel of choice was violated,and no additional showing of ineffectiveness of substitute counsel or prejudice is required to make the violation "complete". U.S. v Gonzalez-Lopez, 548 US 140 (2006).

5) In CHAMBERS CONFLICT-PRESENCE OF DEFENDANT

In People v Baskin, 145 Mich App 526; 378 NW2d 535 (1985) at 544-545.

"[11] A defendant's presence at a conference is required only where his substantial right might be affected.

US Const, Am VI Const 1963, ART 1 & 20. Generally, defendant's right to be present at trial extends to all conferences or occurrences at the trial wherein or whereby his substantial rights may be affected. Hopt v Utah, 110 U.S. 574; 4 S.Ct 202; 28:.Ed 262 (1984). United States v Schor, 418 F2d 26 (2nd Cir. 1969); People v Kregger, 335 Mich 457; 56 NW2d 349 (1953). Often Courts distinguish defendant's right to be present when substantive matters are discussed from defendant's from defendant's discretionary presence when matter of procedure of law are discussed...

People v Clyburn, 55 Mich App 454; 222 NW2d 775 (1974) at 460

[4] Defendant's presence at conference is required only where his substantial rights may be affected. An in-Chambers conference to discuss matter of procedure or law attended by his counsel to which the defendant raises no objection, does not violate defendant's right to be present during his trial and does not constitute reversible error.

Mr. Uraz feels that Courts, attorney Grievance commission, prosecutor, judges involved with this case blatantly minimizing Perrone's mental impairments and acting like it is not a big deal. It is almost a cover up.

Therefore Defendant request from this Court to overturn trial court's conviction and remand for a new trial.

1) 12/12/2017 IN JUDGES CHAMBERS MEETING

ATTENDEES:

Prosecutor; Johnathon Roth, Chaz Koop II

Trial attorney; Jacob Perrone, Eric Schroeder, Nicholas Fernandez

Defendant did not have a conflict-free attorney to represent him and his interests. This hearing was a very important one of the several "critical stages" of this trial.


PG 3

Judge: I did not want it necessary to have to be in the courtroom, this meeting that's taking place post-conviction by a jury, but prior to the sentencing, which is scheduled on December 20th 2017,

"A request for a meeting has been made."


Prosecutor Roth: to Perrone pg 3 line 24-25 before we start, you are okay waiving your client's presence?


PG 4 Line 1-2

Perrone: Yes, I have spoken to my client in regards to what's happening here

Judge: Okay all right

**(FACT) Perrone never told, spoken, asked Defendant about waiving his right to be in that meeting. Defendant never waived his right be there)

PG 4 Line 4-10

Perrone: I don't think that there is necessity to appoint another attorney at this point in time. I think it would be realisticly have a negative effect. My client at this point in time, intends to utilize my services through the sentencing, based upon conversation I have had with him.


JUDGE Line 11-19

14

Okay, I don't have any issue with that. I meant, the issue that came up due to the question of when your availability was going to be present at the time, I suggested that we needed to appoint someone in the event that was necessary so that they would have some time to prepare for sentencing. But if you don't have an availability issue, I don't have any problem with you continuing.

Perrone: I do not

Judge: All right

PG 4 Line 22-25

Roth: ***We do***


Judge: Okay

Roth: Based upon information and belief, the chief judge is aware of some ongoing issues. I believe State Bar may be aware of some ongoing issues. Mr. Perrone has been removed from some other cases in this Court recently.


We don't think it would be appropriate for him to continue with representation in this case. (pg 5 Line 1-5).


(pg 5 Line 6-18)

Judge: Well, you have to sort of enumerate why you feel that would be the case. I mean, I know chief Judge is aware of somethings. So, I don't know. I guess the question is, what is Mr. Perrone's status currently? And it would seem that if he is like certified, clear to go, that "would be up to Mr. Uraz", I think to lay out those options for him. So we might have to come back tomorrow and have Mr. Uraz, brought over so that we can make a record, if that's what Mr. Uraz wants to do. I guess I don't have any difficulties with it. Okay?

Perrone: I would have no problem with that

Judge: All right, one of the concerns I do have, is in the light of the timing of your health situation, did that have an impact or effect on your representation for Mr. Uraz during the trial?

**PG 6

Perrone: No

Judge: Well, I know that's your opinion. I'm just saying

Perrone: The record speaks for itself

PG 6 Line 5

Judge: Well I don't want this case coming back because someone later, suppose you arent the appellate counsel, all right, look at it and raise the issue on what was your status at the time of the trial. I am just being realistic here. And even though "you have indicate that Mr. Uraz wants you to continue", which is his right, So if I make that record, okay. But I would think at some point that might be an issue.

Perrone: I discussed with Mr. Uraz the propriety of any ineffective assistance of counsel arguments as it pertains to the appellate issues and deferred to the appropriate appellate counsel on those issues, and told him, quite frankly, if he would intend to go down that road, that he would have the ability.

Now frankly based upon my review, it doesn's appear that's going to be a very good argument, given the record that was established over two weeks in this trial.

PG 7

Perrone: So I anticipate based upon my conversations with Mr. Uraz, that he would intend to move forward

***(Never happened)

Perrone for the record "I did have a family situation that was addressed.
*** I am bipolar. At this point in time I'm appropriately medicated". (pg 7 line 4-9). Some of the most successful and highly intelligent people in society have symptoms of Bipolar.
***(This means Mr. Perrone was not medicated during and before the trial)

PG 7 Line 10-13

Judge: Well I don't have any bias against that. I guess the question is, *** Were you properly medicated during the trial. I can see that being and issue somewhere down the road.

***Perrone: I wasn't having an active episode at the time during trial, and the record speaks for itself, Everyone is entitled to a defense, I understand

Judge: Well I would agree the record speaks for itself, but I am just raising the issue now.

The other issue is that "one of your associates was insisting that we provide the transcripts prior to the time of claim of appeal being filed. We don't do that. You have to filed your claim of appeal, which entitles Mr. Uraz to the transcripts convalescing (recovering). And we continually indicated that the

right to transcripts arises upon the claim of appeal being filed. We were not going to do it before

Perrone: Again, I intend to respect the process, anticipating that it may be viable attempt to get transcripts for preservation purposes. But again, I will defer to the record.

Judge: Well you are always eligible, and I think it was communicated to your associates you can buy the transcripts and preserve it. But if you want the County to pay for it it has to arise only upon Mr. Uraz executing his appellate rights form. We are prepared to do that, so that its clear once it becomes an issue.

Judge: pg 8 Line 16

We are going to have to bring Mr. Uraz over, make a separate record, make sure he is informed on theses issues, and we will go from there.

***(FACT): I this means that Mr. Perrone "was not medicated" at all before and during trial? (he told the defendant that he use THC to calm him down) which was illegal in the State of Michigan at the time unless one had a "Medical Marijuana" Card. 2017

Judge Had private meeting after attorney released from the hospital in his chambers but did NOT have "conflict-free" attorney to represent defendant in that meeting on 12/12/2017.

**(FACT if Perrone was "properly medicated why the prosecutor and judge did not want Perrone to represent defendant for sentencing)**

18

(See pg 3 Line 23-24 hearing transcripts on 12/13/2017). And based on Perrone's explanation if he was properly medicated after the trial judge could have adjourned the sentencing again to 1/24/2018 just to give time for Perrone to prepare for sentencing as well. If Perrone was "available" at that time)**

**(FACT) Mr. Duane Silverthorn was already appointed to defendant to represent him for sentencing on 12/06/2017 (He was appointed originally on 12/16/2017 see attached e-mail from Leanne Whipple)

***(This document was discovered as of July 2022 in the prosecution's file sent under FOIA **** See attached letter to Silverthorn from prosecutor Koop dated 12/18/2017

***It was the prosecution who demanded the change of attorneys see attached letter dated 12/18/2017 from prosecutor Koop to Mr. Silverthorn (defendant's sentencing attorney) about switching of attorney last sentence: "People requested new counsel be appointed for sentencing out an overabundance of caution"

**(FACT one does not become mentally ill overnight it is a life long struggle)**
It is Chemical Inbalance in the Brain,

FACT***(Perrone never asked defendant if he wants to continue with him or not for sentencing)

*** In Michigan other than MCR 9.121. there is really nothing to address this

important issue.

Feature: Malpractice/Attorney Discipline, A time for change, helping attorney who have mental physical illness that precipitate Grievances,

Reporter 75 MI Bar Jnl. 1026 October 1996 by Charles F. Justian

Pinpoint 4

It should be noted that, when an attorney, or more likely his or her family member or legal counsel, notifies the Attorney Grievance Commission that a grievance cannot be responded to because of the attorney's illness or incapacity, the attorney may be placed on VOLUNTARY INACTIVE STATUS. At least, this is the experience of the attorney who received a grievance during his hospital stay for depression. In the event that there is subsequent disciplinary suspension, however, the attorney receives no credit for time period of voluntary removal from the practice of law or even inacacity-type proceedings brought to MCR 9.121.

Pinpoint 6

It should be noted that MCR 9.121(B) allows the Attorney Grievance Commission to allege inacpacity of an attorney. In such case the rule requiring a hearing panel to appoint counsel for an unrepresented attorney. I know of no statistics on how many formal complaints are filed by the Attorney Grievance Commission that allege incapacity; however, where such allegation is not made, an attorney can assert, as provided by subsection (C) of MCR 9.121, that he or she suffered an incapacity, including a mental disability.

The major flaw of subsection (C) however, is that sole practitioners answering their own grievances who may suffer from a mental disability which may mitigate

the alleged misconduct. One more frighten aspects of clinical depression is that it has usually lasted such a long time that it becomes the norm and is recognized by the person as "Normal" (Anosognosia). As a result, the depression attorney referred to did not raise his clinical depression in his response to a formal complaint filed against him and, unlike subsection (B), Hr appeared at the hearing without an attorney and no attorney was appoint for him. The hearing panel learned nothing of his eight week in a hospital or his three years of weekly therapy with a clinical psychologist while it weighed his alleged misconduct, subsection (C) ia a valuable tool for an attorney who can recognize his or her mental incapacity at the time that he or she responds to a formal complaint.

Pinpoint 7

The incidence of suicide in men is higher than in women. The reason for suicide is often tired to question of depression. Again, we have the example of Vince Forst (the white Counsel during Clinton presidency) In men, however, the reason suicide is more prevalent than in women, is referred to by the experts as the JOHN WAYNE SYNDROME, which means that men have taught that they CANNOT ADMIT THAT THEY MAY BE WEAK, SO THEY ARE AFRAID OR UNABLE TO SEEK HELP. This issue was addressed on the good morning america program on Wednesday, July 31, 1996 ABC.

12/13/2017

Hearing about Perrone's condition and appointing another attorney to defendant Mr. Uraz

Judge: (pg 3 Line 14-25)

And so what happened yesterday at the meeting Mr. Uraz is that Mr. Perrone had

an illness, apparently, after the completion of the trial, but before the time

of sentencing. And at one point "we did not know how long or the extent of his

situation, when he would be able to return. So I knew that sentencing was set

for Dec. 20th and so we proceeded to appoint Mr. Silverthorn in place of

Mr. Perrone. That had been done apparently, earlier this last week "December

6th." May be (he was appointed on 12/16/2017 officially see attached email from

Leanne Whipple Court Administrator then dated 12/16/2017.


***(FACT so the other attorney was already appointed on allegedly on *(Dec. 6th)

(it was 12/16/2017) long before judge had a meeting with Perrone in his Chambers

and defendant next day, so who made this decision without asking defendant? or

who represented defendants interest at that time)?


***PG 4 Line 25

Judge: All right, it is my understanding yesterday at the meeting, Mr. Perrone

was saying he wanted to continue to represent you. I indicated that if you

consented to that, I would go along with it.

"But today I have been advised that Silverthorn is going to represent you with

the assistance of Mr. Perrone, is that your understanding?"


**(FACT who changed, advised Judge to drop Perrone on the last minute?)*** As of

12/12/2017 pg. 5 Lone 12-13 Defendant was supposed to be asked about "those

options****


****This document was discovered as of July 2022 in the prosecution's file sent

under FOIA *** see attached letter to Silverthorn from prosecutor Koop dated

12/18/2017

***It was the prosecution who demanded the change of attorneys, see attached letter dated 12/18/2017 from prosecutor Koop to Mr. Silverthorn (defendant's sentencing attorney) about switching of attorney's last sentence:

People required new counsel be appointed for sentencing out an over abundance of caution

Defendant yes (pg. 4)

Judge: So that Mr. Silverthorn would be the attorney of record. Mr. Perrone says that he is available, due to the complexities of the case, or work with Mr. Silverthorn. But Mr. Silverthorn would be the attorney of record.

Defendant: I understand

Judge: is that fine with you? Is that how you wish to handle this matter?

Defendant: Yes Your Honor

Judge: I have to ask these questions.

Defendant: I understand

Judge: Nobody has been making you do this, no threats or other forms of coercion. You haven't consumed any alcohol or drugs have you?

Defendant: Not in last 60 months (Meant 16)


**[Defendant only acknowledged what he heard from judge]***


Judge: Mr. Silverthorn has already been appointed, now that put us in a situation where he can't be ready by next Wednesday (12/20/2017) to handle your sentencing okay?
There will be technology update here in the court room so, the court room is not available until after January 10th


PG 6
Judge: All right any questions for me?


Defendant: Not at this time your Honor


Silverthorn: No I have been able to listen to all, I will work with Mr. Perrone, work with Mr. Uraz, Jan. 24th five or six weeks away, should be plenty of time to be completely and adequately prepared.


Judge: Any comments from prosecution?


Koop: My office will also work with Mr. Silverthorn to make sure he as all discovery to review before the time of sentencing any exhibits that were admitted.


Judge: So I would imagine, which all will aid you, I assume that probation probably be brining up the report that they had scheduled for the 20th on

Friday. So he can get that and see they are talking about.

***FACTS (Silverthorn came towards the end of the hearing, Perrone did not help him with sentencing look at Silverthorn's sentencing memorandum and sentencing transcript (I was not there I did not know what happen, comments)***

BIPOLAR DISORDER: An Organically Based Mental Disorder
*** Mr. Perrone's organic brain damage, Schizophrenia, and Bipolar Disorder can conspire to create several mental impairment, psychosis and other serious mental health problems that burdened him could lead to dangerous behavior, but his behavior was a manifestation of serious illness, not a reflection of his character.

Mr. Jacob Perrone suffered from an extreme case of Bipolar Disorder.

In re Disciplinary proceeding against Mclendon, 120 WN2d 761 Supreme Court of Washington (1993)

Attorney suffered from Bipolar Disorder, the Court found uncontroverted psychiatric testimony that the attorney suffered from an extreme case of an organic brain, disease which involuntary, through a Biochemical process, altered his judgment. In fact, the Court found that prior to the on set of the disorder, the attorney had an excellent reputation and was a capable and well prepared lawyer. Attorney was suspended from practice of law for two years.

An attorney's suffering from bipolar disorder "(An organically based mental disorder)" during the entire time of the attorney's commission of misconduct and

the abatement of the symptoms of the disorder and the misconduct following proper diagnosis and treatment.

Bipolar Disorder is recognized by american psychiatric association, is listed in the american psychiatric association diagnostic and statistical manual of mental disorders and has specific diagnostic criteria.

The disorder is Biochemical in nature and involves abnormal levels of neurotransmitters in the brain which involuntarily trigger cycling between the manic and depressive phases of the illness.

"The Symptoms of the manic phase" are increased activity manifested by increased spending, increased physical activity, agitation, irritability and hostility, the increased activity is accompanied by feelings of Elation, Grandiosity, Exaggerated Self-Esteem, and Impaired Judgement.

Anything they do ordinarily would be increased to the point where it goes beyond judgment.... Frequently in a manic state the person had ideals of grandiosity such as wanting to develop (AN) unrealistic lifestyle, or something that is totally unrelated to their usual activities... Manic phase include "Consequences of actions resulting from impaired judgment, such as financial losses and illegal activities.

Depressive phase are social withdrawal, indecision even in mundane matters, such as attire, lack of confidence, inability to concentrate and think well, and feeling sad, tearful, and suicidal, regarding the severe extent to which judgment is impaired in both phases of Bipolar Disorder is unconverted.

If we have person suffering from a bipolar disorder that would be in a manic stage, how would that affect their mental state, "their ability to form an intent or the ability to know that they acted and be aware of the consequences?"

It would be severely impaired, the same hold true for depression. It accurate being present during a bipolar disorder, particularly the upside, the manic or hypomanic side, is the symptom of impaired judgment.

A person on bipolar manic phase makes decisions that rational people around would say are foolish, foolhardy. A person does not recognize the consequences of those decision or denies them... they don't have the capacity to balance their thinking and their actions,

"It is a Biological change, this is a Biochemical, physiological problem."

Mr. Jacob Perrone suffered from an extreme" case of bipolar disorder before during and after trial.

In this case at the Ginther Hearing, there were no expert witnesses, no psychiatrist to explain about bipolar disorder symptoms.
Courts ignored this matter and only relied Mr. Perrone and his associates then (Mr. Schroeded, Mr. Fernandez, Mr. Vuchkovic) (Prosecutor Mr. Koop and Mr. Roth) and sentencing attorney Mr. Silverthorn.

MRPC 8.3(a) Reporting Professional Misconduct: (a)  A lawyer having a knowledge that another lawyer has committed a significant violations of the Rules of

Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness, or FITNESS as a lawyer shall inform the Attorney Grievance Commission.

Attorney Perrone's mental condition before and during trial according to his peers testimony at Ginther Hearing on 10/04/2021 Nick Fernandez

"Excitable" Guy

Nick: I wouldn't say he "losses his temper" he is an ***Excitable Guy***

Duane Silverthorn: sentencing attorney (after trial)

Duane: Oh I don't recall the date, but it was following the trial and prior to the sentencing.

Walsh did you see anything concerning about Perrone's behavior?

Duane: He was agitated had diffucuity in focusing, was speaking really fast, he was cordial but like I said agitated

**(This is after Perrone's hospital stay, when he was supposedly medicated)***

Therefore Mr. Uraz is asking this court to reverse the conviction and order a new trial based on his attorney's mental illness impairments going back to 2015.

2)

Attorney   Jacob   A.   Perrone   (P71915),   Mental   Impairments   court   documents   from Clinton Oakland County Probate Courts, Lansing Police Report

These documents attached from Oakland,   Clinton   County   probate   Court and Lansing Police Department Report   and   body   cam   footage   of Perrone's major   mental   issues since 2015.

This is a major Brady   material   violation   by prosecutor, because this information was   not   shared   with   defendant   and   his   appeal   attorney   for   both   Ginther Hearings. Only   11/20/2017   Lansing   police   report   was   shared   with   Defendant's sentencing attorney Silverthorn where   he   did   not   share   with defendant on 12/18/2017.

History   of   mental   issues   and   he   committed   perjury   on   record   when   Mr.   Perrone testified under oath on 10/04/2021 Ginther Hearing.

Mr. Perrone, his   associates   (Eric Schroeder, Nick Fernandez), prosecutor Charles Koop,   Jonathan   Roth,   Kahla   Crino. They   all   failed   to   inform   Mr. Uraz, Courts/State Bar/Attorney Grievance Commission/Attorney Discipline Board extend Perrone's mental issues/ Character   and   fitness to be an attorney in the State of Michigan.

Mr. Perrone   had   mental   impairments   since   2015   about   his   "UNTREATED   MENTAL ISSUES" (Bipolar Disorder and Schizophrenia)

This is a major misconduct by Perrone,   30th, circuit court   judges,   and   anyone involved   with   this   case;   Per   MRPC   6.5   and   8.3,   and   by   not   disclosing   this information   to   State   Bar   per   Rule   15,   (charter   and   fitness   of   an   attorney)   and to Uraz (Defendant).

Defendant   reached   out   to   Attorney   Grievance   Commission,   LARA,   Attorney Disciplinary Board, State   Bar   of Michigan, Michigan   indigent   defense   counsel (MIDC), Supreme Court of Michigan

Unfortunately in   the   State   of   Michigan   the   standard   for   handling   mentally impaired attorneys is   very   low.   (As   long   as   they   show   up   to   trial   and   do

29

"Minimal" expectations) it does not matter if one has a mental impairment or not.

Per MCR 9.121 attorney's with character and fitness issues section (C) asks the very same person who is mentally impaired "to defend themselves". This is a major flaw in the process of figuring out if the attorney is really mentally impaired or not.

Here are five (5) independent observations related to Mr. Perrone's action, behaviors, irrational, erratic delusional tendencies. (See attachment A)

***see attachment #1 "Petition for mental health treatment" filled out by Mr. Joseph V. Perrone (Jacob A. Perrone's father) on 11/14/2017 for his involuntary admission to mental hospital in Ann Arbor, MI according to his father on the form section (3)(d):

"08/17 went to Sparrow Hospital with severe anxiety"
(see pretrial status conference hearing transcript 08/15/2017, Perrone not being ready for several motions and judge questions Perrone why he has not done anything for his client and see Perrone's excuses)

"11/17 went to Sparrow Hospital with chest pains left against medical advice"

(The exact date is unknown if Perrone went to hospital during or after the trial, the trial dates for defendant Uraz were between 10/31/2017 - 11/09/2017)

Section (d)(ii):
"Punches holes in walls, is verbally abusive to his wife - had said he will "kill" &/or destroy everyone, will take over Lansing + rule w/ an iron fist,

Perrone's father's statement on the record on 11/14/2017

***THIS HAPPENS WEEKLY FOR THE LAST 2 YEARS AT LEAST***

THIS MEANS PERRONE HAD MENTAL IMPAIRMENTS ILLNESS SIN̲C̲E̲ ̲2̲0̲1̲5̲ ̲U̲N̲M̲E̲D̲I̲C̲A̲T̲E̲D̲ ̲A̲N̲D̲
U̲N̲T̲R̲E̲A̲T̲E̲D̲

section 4: "He has many angry outbursts, disorganized thoughts. He think he is the most intelligent person in the world, he will "destroy" or "kill" everyone, he called himself "my suicidal son" has many anger issues.

11/14/2017 signed by Joseph V. Perrone 15880 Brook Rd. Lansing, MI 48906

See Clinical Certificates by two Prominent Psychiatrist about Perrone's condition ***(attachments #2 and #3)

2) First Mental Hospitalization for Perrone
Clinical Certificate filled by Dr. Rachel L. Glick M.D. (psychiatrist) at UMHS in Ann Arbor MI, on 11/14/2017 at 11:30 am (See attached #2)

Section 5: Other drug dependence: Adderoll (amphetamine, upper)

Section 6: Her diagnosis about Perrone's condition: "Manic, R/O Bipolar, R/O Substance included"

Section 7: "Patient is hyperverbal, agitated + disorganized, family reports he has been worsening, additionally + has been making suicidal statements, has... + has no insight in to symptoms

Section 8(a): DENIES.... but family report he has made threats + at risk of unintentional harm given manic state. (b) Denies... but in current state is at risk of unintentional harm. (d) No insight into current situation, says family is trying to make him out to be sick. I conclude the individual is a person requiring treatment.

I recommend hospitalization
11/14/2017 16:00 pm signed by Dr. Glick.

3) Second Mental Hospitalization for Perrone

Clinical Certificate by Dr. Usha Movva, M.D. (Psychiatrist) on 11/15/2017 at 9:00 am at Saginaw Health Source White Pine Mental Health Clinic (See attached

#3)

Section 4: mentally ill (has a substantial disorder of thought or mood that significantly impairs judgement behavior capacity to recognize reality or ability to cope with the ordinary demands of life)

Sec. 6: Bipolar Disorder NOR
Sec. 7: M. Perrone admitted... ov... petition ... clinical certificate; reportedly punching walls, verbally abusive, reportedly said "he will destroy everyone, talktive.... in.... psyco... certificate...
Sec. 8(a): Impaired Judgment (d) Poor. Pose in... Dose not want to take medication

9) I conclude the individual is person requiring treatment
10) Recommend Hospitalization
11/15/17 9:30 am signed by Dr. Usha Movva, MD

**(see Case 17-29766-MI "request to defer hearing on commitment" by Clinton County Probate Court

Sec. 1(c) Combined hospitalized and alternative treatment up to 90 days with hospitalization not exceed 60 days signed by Barbara Tomeal (P42771) and "notice of Hospitalization and certificate of service" dated 11/16/2017 signed by Marlene Forles

Letter dated 11/24/2017 to Sandra Burk Clintion County Probate Court from White Pine Mental Health Center about Perrone Involuntarily Admitted to Health Source Saginaw White Mental Health Center Perrone being discharged on 11/17/2017 "under a current" Request to defer Mental Health dated 11/16/2017. There remain 59 Hospitalization days under the above document after his discharge.

4) Petition for mental Health Treatment by Lansing Police Officer Robert McBride and the Police report filed on 11/20/2017 at 3:45 pm related to the incident Perrone caused. (See attachment #4)

Sec. 2: Perrone was taken to Sparrow Hospital E.R. #9

Sec. 3: I believe the individual has metal illness (intentionally or unintentionally seriously physically injure self or others, and has engaged in an ACT or ACTS or MADE significant threats that are substantially supportive of his expectation)

Sec. 4: my personal observation:
"As I drove past Perrone he yelled "F..k you quincy", Perrone said he  is #1 attorney in the world, Perrone states he would kill a bunch of people"

Sec 5: The persons interested in these proceedings are: Ashley Perrone (Spouse); Ron Perrone

Signed by Lansing Police Officer McBride

See attached Police Report #1751906153, See page 3
Officers action at the hospital and see attached Body Cam footage
Mr. Gary Chambon, Senior Clerk, has this footage sent by defendant's family.

5) Third mental hospitalization for Perrone
Mr. Perrone was sent to Havenwyck Mental Hospital in Auburn Hills MI 48326 for the "Second time" on 11/20/2017

On 11/21/2017, Clintion County demand for hearing form for Case #17-29766-MI filed by Carmella Mitchell about Perrone:

Sec 2: "PERRONE REFUSES TO ACCEPT PRESCRIBED" treatment

On 11/26/2017 "Order Appointing Attorney"Ms. Lisa Zatyko P74810, appointed to represent Perrone, signed by Judge Lisa Sullivan for Case #17-29766-MI

11/27/2017 Clintion County Probate Court "Notice of Hearing on  Petition for Hospitalization assisted outpatient treatment/judicial admission requested Jacob A. Perrone Case #17-29766-MI

Sec 1: This court is requested to detain you for treatment in a hospital/center

based on petition and the clinical certificates served to you.

Sec 2: A hearing on petition scheduled Oakland County Probate Court on 11/30/2017 before judge Linda S. Hallmark (P28066)

Sec 3: Court appointed attorney Lisa Zatyko (P74810) to represent Perrone signed by Karen Case on 11/27/2017, Mental Health Contact for Clinton County Probate Court.

On 11/27/2017, Clinton County Probate Court "Order and report on alternative health treatment"
It is Order that "Clinton County Counseling Center/Community Mental Health" shall prepare a report assessing the current available following an initial period of court-ordered hospitalization/60 day Order signed by Judge Lisa Sullivan.

On 11/27/2017 Oakland County Probate Court Issued a "subpoena (Order to Appear and/or Produce) or the
Case #2017-380-007-MI (Perrone's second mental episode/impairment) Dr. Leonard Swistak of Havenwyxck Mental Hospital ordered to appear on 11/30/2017 at 8:30 am in the matter of.

Jacob Perrone.
via Clinton County Probate Court request made by Karen Case

On 11/28/2017, Oakland County Probate Court "Notice of hospitalization and certificate of service" for
Case #2017-380-007-MI served personally to Jacob A. Perrone on 11/28/2017 at 9:00 am signed by Bridge...

On 11/28/2017 by Oakland County Probate Court "Certificate of legal counsel/ waiver of attendance" from that Lisa Zatyko attorney appointed for Perrone have seen/consulted Perrone 24 hours before the time set for the hearing.

On 11/29/2017 Clinton County Probate Court Form "Order and Report on Alternative Mental Health Treatment" Case #2017-380-077-MI (Oakland County)by Ms. Carol

Polly, Social Worker from Clinton County CMH.
Sec 2(d): PT requires inpatient hospitalization
Sec 3(e): PT requires inpatient hospitalization
Sec 5: I recommend hospitalization for 30 days, followed by alternative treatment Clinton County CMH (Center for Mental Health)
Sec 6: No insight, refusing medication
Sec 7: "Havenwyck is an acute care psychiatric facility" to provide prescribe treatment program
Sec 8: Clinton County CMH as an alternative treatment
Sec 9: individual has an Blue Cross
signed by Carol Polly on 11/29 2017

On 11/30 2017 Oakland County Probate Court and Clinton County Probate Court "Initial Order after hearing on petition for mental health treatment" for cases # 17-29766-MI (Clinton County) and 2017-380-077-MI (Oakland County) for two separate mental episodes by Perrone
11/14/2017 and 11/20/2017, before Judge Linda Hallmark

1) After the hearing on 11/30/2017 before judge Linda S. Hallmark (P28066)
2) A petition has been filed by Carmella Mitchell (Havenwyck Hospital Director) on 11/21/2017 and Joseph V. Perrone (Jacob A. Perrone's Father on 11/14/2017)

The Court find finds PER: "Stipulation of the parties"
Sec 6: Testimony was given by Dr. Leonard Swistak
Sec 8: There is not an available treatment program that is an alternative to hospitalization or that follows an initial period of hospitalization adequate to meet the individual's treatment needs and is sufficient to prevent harm that the individual may inflict upon self or others within the near future.
Sec 9: Havenwyck Hospital or other suitable hospital can provide treatment. It is Ordered;
Sec 13: The individual receive alternative treatment for no longer than 90 days, supervised by "Community Support Services"
"The respondent shall take medication as prescribed, attend counseling and therapy sessions as directed and maintain residence as direct.
"The individual shall be hospitalized for up to 10 days of the 90-day alternative treatment period".

SeC 16: If the individual refuses to comply with a psychiatrist's order for hospitalization. a peace officer shall take individual into protective custody and transport the individual to the hospital designated by the psychiatrist. Signed by Judge Linda Hallmark on 11/30/2017

Mental Health Hearing Disposition Sheet
Case #2017-380-077-MI
Matter of: Jacob A. Perrone on assignment for Clinton County.


Attendees:
Lisa Zatyko (attorney foe Perrone)
Corp/Petitioner's Counsel: Heather Lewis
Testifying Doctor: Dr. Leonard Swistak


Order Stipulation
1) Combined order (Hospital/alternative treatment)
10 days in/80 days out
Signed by Judge Hallmark on 11/30/2017
"PERRONE COULD NOT HAVE REPRESENTED DEFENDANT FOR SENTENCING DUE TO COURT ORDERS FOR MENTAL TREATMENT"
On 12/06/2017 "Order" by Oakland County Probate Court:
Attorney Services are no longer required and the attorney is released, signed by Judge Hallmark on 12/06/2017


FOOTNOTE:
From: Lisa Zatyko - Zatykolaw@mail. com
Date: Sat, Sep. 3, 2022 at 1:49 AM
Subject: Re: Jacob A. Perrone
To; Tony Ur - tonyur@gmail.com


Hi Tony,

You're welcome. There was no hearing for Jacob on 11/30/2017 as he *agreed to treatment* prior to the hearing. The prosecutor and I went on the record (transcript) to let the judge know this. Heather Lewis was the Assistant prosecutor in Oakland County on Jacob's case.

I only had contact with Jacob the day of the hearing and a few days before the hearing. He essentially refused to speak with me at Havenwyck when I met with him prior to the hearing. Additionally, I only have the court documents that you have.

Take Care,

Lisa Zatyko

MCLS 330.1401

Involuntary Admission To Mental Hospital

1) As used in this chapter person requiring treatment means (A)(B)(C)

SECTION (D) WAS DELETED AS OF MARCH 2019 WHICH MR. PERRONE WAS SUBJECTED TO THEN AT PROBATE COURT HEARING IN 2017

(A) An individual who has mental illness can be reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself or another individual and who has engaged in act or acts or made significant threats that are substantially supportive of the expectation.

(B) An individuals who has mental illness, who as a result of that metal illness is unable to attend to those of his or her basic physical needs such as food, clothing or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic needs.

(C) An individuals who has mental illness, whose judgement is so impaired by that mental illness, and whose lack of understanding of the need for treatment has cause him or her to demonstrate an unwillingness to voluntarily particpipate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition and presents a substantial risk of significant physical or mental harm to the individuals or others in the near future.

2) An individual whose mental processes have been weakened or impaired by dementia, an individuals with primary diagnosis of epilepsy, or an individual with alcoholism or other drug dependence is not a person require treatment (PRT)

under this chapter unless the individual also meets the criteria specified in subssection:

(i) An individual described in this section may be hospitalized under the informal or formal voluntary hospitalization provisions of this chapter if he or she is considered clinically suitable fore hospitalization by the hospital director.

Section (D) was removed in 2019 which applied attorney Jacob Perrone in 2017. (D) an individual who has mental illness, whose understanding at the need for treatment is impaired to the point that he or she is unlikely to voluntarily participate in or adhere to treatment that has been determined necessary to prevent a relapse of harmful deterioration of his or her condition, and whose non-complaince with treatment has been a factor in the individual placement in a psychiatrist hospital prison or jail at least 2 (TWO) times within the last 48 months or whose non-complaince with treatment has been a factor in the individual's committing 1 (one) or more acts attempts nor threats of "serious" violent behavior within the last 48 months. An individual under this subdivision is only eligible to receive assisted outpatient treatment.

---------- Forwarded message ---------
From: Lisa Zatyko < zatykolaw@gmail.com>
Date: Sat, Sep 3, 2022 at 1:49 AM
Subject: Re: Jacob A. Perone
To: Tony Ur < tonyur@gmail.com>

Hi Tony,

You're welcome. There was no hearing for Jacob on 11/30/2017 as he agreed to treatment prior to the hearing. The prosecutor and I went on the record (transcript) to let the judge know this. Heather Lewis was the Assistant prosecutor in Oakland County on Jacob's case.

I only had contact with Jacob the day of the hearing and a few days before the hearing. He essentially refused to speak with me at Havenwyck when I met with him prior to the hearing. Additionally, I only have the court documents that you have.

Take care,
Lisa Zatyko

3) MCL 777.39 (OV 9)

Was Defendant scored incorrectly for (OV 9)   MCLS   777.39   (Number   of victims: Scored)

**OV 9 MCLS 777.39(c) For number of victims (2 to 9 Victims), Defendant was scored 10 points for Solicitation to Murder charges, However if you look at the information (see Attached Complaint Sheets for both charges only have 1 (one) "Victim"/ "Complainant" name is shown as Erika Melke. OV 9 MCLS 777.39(c)(d) Exhibit C --> PSIR

(c) There were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss... ... 10 points

ANALYSIS:

This issue was unpreserved for Court of Appeals to review since it was not objected during sentencing. Unpreserved claims or error for "Plain Error" Lockridge, 498 Mich at 392-393. To establish entitlement to relief under Plain-Error Review, the Defendant must establish that error was occurred and the Error was Plain.

In order to determine whether Defendant is entitled to relief under Lockridge, we must determine whether facts admitted by Defendant or found by the jury were sufficient to access the minimum number of OV parts necessary for "Defendants' score to fall in the cell t the sentencing grid number which he... was sentenced. Lockridge, 498 Mich at 394. If they were not then an "Unconstitutional Constraint" actually impaired the Defendant's Sixth Amendment Right Id. 395 and the Defendant is entitled to have the case "Remanded to the trial court to determine whether that Court would have imposed a materially different sentence but for the Constitutional error.

OV 9 is limited to the facts of the sentencing offense, OV 9 can only be scored in reference to the sentencing offense, People v McGraw, 484 Mich 120 (2009).

2) MCL 777.40 (OV 10)

Was Defendant scored incorrectly 15 points under OV 10 (MCL 777.40) for predatory conduct where the conduct described in the record does not even reflects nothing more than run-of-the-mill planing by jail house informants (Solicitation to Murder is not an "OVERT ACT") to effect crime based on hearsay wrongly admitted abuse of discretion evidence? And for Aggravated Stalking charge scoring was based on falsified perjured evidence and testimony by the Complainant? Both charges were tried at Court "Jointly" under MCR 6.120.

This issue was unpreseved for appellate review because Defendant's "Fill in lawyer" on record did not object this error which is reviewed as "Plain Error". (Defendant's trial Lawyer was switched due to his Mental Incapacitation by the trial Court).
Solicitation to Murder is a offense, "that wouldn't have premeditation. That wouldn't have malice towards it because it is "Not an overt act".

The reason Defendant was scored 15 points based on prosecutor's misrepresentation of the facts based on hand drawn map to his sister about Complainants apartment building which was stolen from him. And based on Complaint's (Erika Melke) perjured testimony and falsified evidence.

01/24/2018 SENTENCING DATE
*** Prosecutor Roth Page 11:
The other thing that I can add for OV 10 Specific predatory conduct: the Map Defendant drew for the other inmates to enable them to find her and her residence, including her apartment number of her residence. Which he should not have known at that time, so that all goes to predatory conduct.
**(Misrepresentation of facts the Map was part of Defendant journal).

Here are the excerpts from pre-trial evidentiary hearing 10/20/2017 and trial (11/03/2017) Sentencing 01/24/2018.

10/20/2017 Evidentiary Hearing
MRE 801, 803 Hearsay Abuse of Discretion decision by Judge about the "Map". pg. 20 Line 6-25.
Roth: The third part of the note, is this also part of the same conversation or a separate (Map)?
Uraz: No it was stolen from me.
Roth: Stolen from you?
Uraz: Because this part of my other documents. (My journal)
Roth: Ok so this is not a note passed between you two?
Uraz: No
Roth: Very good I have no objection to the admission or what described as one and two (Note): To this point I don't think there is any relevance to number three (Map). And he is saying this was not given to somebody

Judge: But he said he wrote it
Roth: He said he wrote it, which would be hearsay. As I understand it, pages one and two re admitted to show the effect on the listener's the effect on the Defendant, if the Defendant is testifying to page 3, (Map) was not given to somebody, then it wouldn't have that relevance. So I have no objection to admitting pages one and two (Notes)

Judge: but it wouldn't be a hearsay, its his document that he wrote
Roth: Right and so we can put in because he is our party opponent. Because its his own "party", it wouldn't be applicable

Perrone: If you look this Map, the nature of drawing on the Map and that could be indicative of Defendant's "Mental State" at the time of the drawing of the Map.

Judge: I hear you so this is an evidentiary hearing, so I am going to allow it.
Roth: That's fine, I ask that it will be separates A and B

pg. 21 Line 19

Judge: "A" should be two pages that were actually authorized by Mr. Uraz and exchanged with other persons. That's a two page document . And that then Exhibit "B" is a document that is simply authorized by Mr. Uraz, but not "Distributed" to anybody all right.

Roth: Thank you Your Honor. (DX# A&B)


Perrone: Move for admission


11/06/2017

*PG 149 Line 13-25

Perrone Exhibit # 39:

Is this first sentence is your handwriting?

Close: yes, that's my handwriting?

***Line 22-24

Perrone: where it says you have to draw me a map, is that your handwriting?

***Close: yes


***PG 151 Line 9-16

The notes written between Defendant was done in one setting not multiple settings.


***Lines 20-21

Prosecutor Koop: whose handwriting is this top line

***(Close: was doing the engagement with all his suggestions)

***Close: that's mine.

***At the end of writing (last entry was close ripped the rest of paper because Defendant wrote "No, I do not want anything to happen to her" Close was suppose to flush all handwritten notes exchanged in the toilet but he ticked the defendant by ripping and throwing the rest away and keep the originals.

***This is why there are two separate documents. (Ex. B, #31, #40) Exhibit


#40

***Close after stealing my journal he added Mike Toves's car color and make and Stan White's home address

***PG 152 Lines 9-12

Koop: Black charger, si that your handwriting?

Close: that's my handwriting.

**Defendant wrote a big "NO" under all notes exchanged this is why there are rip marks on the paper where notes exchanged****

LEGAL STANDARD:

As used in MCL 777.40(1)(a)  ""[p]redatory conduct means pre offense conduct directed at a complainant/victim or a law enforcement officer posing as a victim for the primary purpose of victimization."

MCL 777.40(3)(a) "predatory conduct" means conduct that "OCCURRED BEFORE" the commission of the offense and that was direct at the complainant/victim for the primary purpose of victimization. People v Cannon, 481 Mich 152, 160-161; 749 NW2d 257 (2008)

Predatory conduct encompasses only "those forms of "pre offense conduct that are commonly understood as being "Predatory" in nature e.g. lying in wait and stalking (Defendant-Appellant was in jail at the time of the alleged conducts) as opposed to purely opportunistic criminal conduct or pre offense conduct involving nothing more than run-off-the mill planning to effect a crime or subsequent escape without

MCL 777.43 (OV 13) and MCL.39 (OV 9); MCL 777.40 (OV 10)
(OV 13) should have been scored where the joined offenses in a trial
unfairly scored the Defendant 25 points for each offense (Solicitation to
Murder and Aggv. Stalking). Because these conviction constitute one or two
felony event, they cannot be scored 25 points for three or more crimes
against a person in five year period. People v Carll, 322 Mich App 690
(2018).

MCL 77.43 Provides in part:
1) Offense variable (OV 13) is continuing pattern of criminal behavior,
scored OV 13 by determining which of the following apply and by assigning
the number of points attributable to the one that has the highest number of
points:
C) The offense was part of a pattern of felonious criminal activity
involving 3 or more crime against a person. (15 points)
2) All of the following apply to scoring OV 13
A) For determining the appropriate points under this variable all crimes
within 5 year period, including the sentencing offense, shall be counted
regardless of whether the offense resulted in convicted

In "Carll" tis Court agreed that with the Defendant that:
(A) single felonious act cannot constitute a pattern and that the trial
court erred by concluding otherwise. Although the statute provides guidance
to the court's on how to scored OV 13.
MCL 777.43(2), It does not define the term "continuing pattern of criminal
behavior" the word "Continuing" clearly refers to an event or process that
take place over time. Merriam Webster's Collegiate Dictionary
(11th. ED). Defines "Continuing" as to "keep going or add to", It defines
"Pattern" as "A reliable sample of traits, acts, tendencies, or other
observable characteristics of a person...." Id.

Accordingly, the statute contemplates that three must be more than one
felonious event. Id at 704-705.

In this case at bar: The holding in "Carll" applies equally to Defendant
Mr. Uraz's joined trial. He was involved in one act against the complainant

only by virtue of the same conduct rule of "Blockburger" does he end up with three convictions. The prosecution and trial court has stretched those three cases into joined trials to inflate the minimum guidelines in this case OV 13 is being stretched to create a pattern that doesn't simply exist.

MCL 770. 9(a) SOLICITATION TO MURDER IS NOT AN "ASSAULTIVE CRIME" THERE IS NO LAYING AND WAITING.

SOLICITATION TO MURDER IS "NOT AN OVER ACT"

In People v Jamison 292 Mich App 440 (2011), this court said:
If a Statute, does not provide a definition for particular term, courts must "give the term it's plain and ordinary meaning" when determining the common, ordinary meaning of word or phrase, consulting a dictionary is appropriate.

Merriam Webster's Dictionary and Thesaurus (2007):
Predatory means: 1) Of or relating to plunder 2) Disposed to exploit others 3) Preying upon other animals.

Merriam Webster's Dictionary Of Law (1996).
Conduct means: 1) The act, Manner, or Process of Carrying On Or Managing, 2) An Act Or Omission To Act.

For both charges (Joined) OV 10 should been scored 0 (Zero), correcting this variable alone would change the sentencing guidelines. If this court agrees with the argument, then sentencing is required. People v Fransisco, 474 Mich 82 (2006).

ANALYSIS:
Defendant did not exploit victim vulnerability. MCL.40(3)(b). The statute defines "Exploit as to manipulate a victim for selfish or unethical purpose". "Vulnerability" is defines as "the readily apparent susceptibility of a victim to injury, physical restrain, persuasion or temptation. MCL 777.40(3)(c).

In this case Defendant was already in jail when all theses charges were

45

brought up. Complainant in this these joined cases (Ms. Erika Melke) were 25 years old. These joined case did not involve predatory conduct.

The Supreme Court of North Caroline ruled that hiring an undercover officer posing as a hit man to kill another person does not satisfy the element of committing "An Overt Act" toward completion of the offense. Alleged hiring and paying a hired killer do not satisfy our requirement of "Overt Act". Accordingly because accused did not make an Overt Act (Not Secret) toward completion of the offense. The Court remanded to the Court of Appeals for further remand to the trial court with instructions to vacate accused's conviction for solicitation of murder and for sentencing consistent with court opinion. State v Melton, 821 S.E.2d 424 (N.C 2018).

Allegedly hiring and paying a hired killer...Do not satisfy our requirement of overt acts necessary to prove attempt. Accordingly because Melton did not make an overt act (Not Secret) toward completion of the offense, the Court remanded to the Court of Appeals for further remand to the trial court with instructions to vacate Melton's conviction for attempted murder and for resentencing consistent with the court's opinion. See State v Melton, 821 S.E.2d 424 (N.C. 2018).

Defendant is entitled to resentencing and correction of his presentence report (PSIR) where it contains inaccurate and irrelevant information. Defendant has a due process right to be sentenced on the basis of accurate information. Townsend v Burke, 334 US 736; 68 SCt. 1252; 92 L.Ed.2d 1690 (1984). US Const Fifth Amendment and Fourteenth; Mich Const. 1963 Art 1, 17. Defendant is entitled to resentencing and have his PSIR corrected as it contains inaccurate and irrelevant information.

The purpose of the PSIR is to provide the trial court with relevant and accurate information relating to the offender and the offense" MDOC PD 06.01.140. All statements contained within the PSIR must be "clear and concise and accurate. The contents of PSIR can be challenged for containing inaccurate or irrelevant information. MCL 777.14(6) "Shall be stricken accordingly before the report is transmitted to the MDOC. Defendant requests that the under evaluation and plan of the PSIR be amended to

remove the drafter of the report's subjective and inflammatory comments about Defendant's behavior. (See Defendant's PSIR Pg. 1, paragraph 7 and First paragraph on page 2.

In People v Dixon-Bey, 321 Mich App 490, 525 (2017), The Court said the "relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guideline range continue include:
1) Whether the guideline accurately reflect the seriousness of the crime
2) Factors not considered by the guideline and
3) Factors considered by the guidelines but given inadequate weight. When making this determination and sentencing... A trial court must "justify the sentence imposed in order to facilitate appellate review, "which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been"
The alleged conduct was always deserving of a guideline sentence, which would be presumptively reasonable.

The Court clearly erred in scoring offense variables 10 and 13.

The proper interpretation and application of the sentence guidelines is a legal question that this court reviews de Novo. People v Morson, 471 Mich 248, 255 (2004). "Under the sentencing guideline, the Circuit Court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." People v Hardy, 494 Mich 430, 438 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., The application of the facts to the law, is a question of statutory interpretation, which an Appellate Court reviews de novo."

Since Defendant's original trial counsel was removed from the cases due to mental incapacitation before the sentencing. A substitute Attorney was assigned for sentencing to the Defendant. So any issues with sentencing had to be preserved by the Defendant not the substitute counsel due to him not being involved with the case at all.

Court must vacate the sentences and remand to the trial court with instructions at 0 points.

IF OV 13 is scored at 0 points, the minimum guideline range is reduced below 130-225 Months to 57 to 95 Months in conjunction with the OV 10 correction and a resentencing is required. Francisco, supra.

Relief Requested

Tunc Uraz respectfully asks this Court to vacate his convictions based on the due process arguments presented and grant him a new trial in the alternative, he asks that the Court order corrections to the guideline and hold that the imposition of separate scoring sentencing on a joined single trial was an abused of discretion and remand this case to the trial court.

PSIR CORRECTIONS

CORRECTIONS TO INFORMATION (pg.3 of PSI, form CFJ-284) OBTAINED BY PAROLE AGENT (only wrote bits and pieces  FROM LANSING POLICE DEPARTMENT INCIDENT REPORT # LLA161027011556

THE ELEMENTS OF THE CRIME SOLICITATION TO MURDER ARE;
SOLICITOR:
1) "PURPOSELY SEEKS" TO HAVE SOMEONE KILLED OR
2) TRIES TO "ENGAGE SOMEONE TO DO THE KILLING"

CORRECTION #1

Home Invasion charge (05/26/2016) was dropped per plea agreement (see attached First PSI (plea agreement)
"not authorized charges going back"

CORRECTION #2

Mr. Uraz was already in jail by
08/31/2016 where he turned himself to start his presumed jail sentence per plea agreement. (see Ingham County Jail records)

CORRECTION #3

from PSI pg.3
On10/26/2016," the detective was notified of a possible murder for hire plot"
THIS IS A WRONG STATEMENT EVEN ON THE POLICE REPORT :
pg. 3 of police report ending #556: "R/O presented this investigation to ICPO on  10/26/2016 and a Felony warrant for Stalking (second).

SECOND STALKING CHARGE
The date was 09/26/2016 not 10/26/2016 (see attached warrant date signed by Magistrate Millmore on 09/27/2016)

THIS SEARCH WARRANT WAS ABOUT IP ADDRESSES ALLEGEDLY BELONG TO THE APARTMENT WHERE MR. URAZ WAS ACCUSED OF CREATING A  FAKE INSTAGRAM ACCOUNT AND POSTING PICS UNDER MS.MELKE'S NAME ON 08/27/2016
(see attached expired IP addresses)

MR. URAZ WAS ALSO ACCUSED OF ALLEGEDLY CHANGING THE PASSWORD OF FACEBOOK PAGE BELONGED TO ERIKA MELKE ON 08/31/2016

MR. URAZ WAS  ACCUSED OF ALLEGEDLY SENDING A MESSAGE TO ERIKA MELKE WITH FAKE E-MAIL ACCOUNT CREATED BY HIM.
emelke20@gmail.com
(see attached documents)

CORRECTION #4

Two inmates extorted and solicited Mr. Uraz not the other way around.
The information provided to jailhouse informant allegedly by Mr. Uraz (victim's name ,address, vehicle information, map of the residence and victim's past boyfriend who the defendant also wanted to kill)
ALL ABOVE STATEMENTS ARE INCORRECT BECAUSE DEFENDANT'S JOURNAL WAS STOLEN WHICH HE WROTE PART OF HIS A.A (alcoholic anonymous) meetings, therapy.
  (see attached Jail substance abuse therapist notes/reports by Tim Held dated  09/27/2016, 10/02/2016)***
ALL OTHER INFORMATION WAS FABRICATED BY JAILHOUSE INFORMANTS.

CORRECTION #5

THE FIREARM MR. URAZ WANTED TO BUY FROM HIS CO-WORKER WAS TO COMMIT SUICIDE. (see MSU HR investigation report)

CORRECTION #6

THE MONEY DEPOSITED TO JAILHOUSE INFORMANT'S (REGINALD CLOSE)  JAIL ACCOUNT WAS TO "APPEASE" HIM, BECAUSE MR. URAZ WAS IN FEAR OF MS. MELKE'S AND HIS LIFE AND HE WAS EXTORTED BY INFORMANTS.
(see Reginald Close's criminal history and his charges at that time , home invasion, felony firearm, domestic violence, parole violation) the victim who testified at a preliminary hearing did not show up to trial therefore he was only found guilty of a domestic violence again NO HABITUAL SENTENCING, TIME SERVED IN JAIL,

CORRECTION #6

THE OTHER JAILHOUSE INFORMANT CHARLES ALLEN WHO IS PRISON NOW WITH 10 PAGE CRIMINAL HISTORY GOING BACK TO HIS JUVENILE YEARS WAS ONLY GIVEN 9.5 YEAR UNARMED ROBBERY (IT WAS ARMED ROBBERY) WITH NO HABITUAL SENTENCE ENHANCEMENT.
ALLEN WAS JUST AN ACCOMPLICE/COLLABORATOR TO SUPPORT REGINALD CLOSE'S STORY
SO CHARLES ALLEN FABRICATED HIS OWN STORY AS WELL SO THAT HE CAN GET OF JAIL EARLY (SEE HIS  JAILHOUSE INTERVIEW DATED 10/24/2016****attached

CORRECTION #7

UNDER COVER DETECTIVE ENGAGED, PURPOSEFULLY SOUGHT MR. URAZ
HE IS THE ONE THE ONE WHO SET UP THE VIDEO VISIT HE IS THE ONE ASKED ALL THE QUESTIONS, HE IS THE ONE WHO "ENGAGED" AND "PURPOSEFULLY SOUGHT" MR. URAZ.
see pg 10-11 of police report by U/C Mobley  "I ASKED" URAZ 25 TIMES, AND HE IS THE ONE TOLD MR. URAZ REGINALD CLOSE'S NICK NAME AS "RUFF" WHICH IS VERY DIFFERENT THAN HIS TRIAL TESTIMONY OF "ROUGH".
MR. URAZ DID NOT DISCUSS ANY PRICES NOR WHAT TO DO WITH THE TRASH . MR. URAZ DID NOT REQUEST ANY VIDEOTAPING OF TRASH BEING "BEATEN".
(see the attached transcript of the video call initiated by Detective Mobley) *See police report ending # 556*

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ _____, Appellant    Court of Appeals No. 343695
(Print your name)                                              34 3696

## ISSUE III:

**A.** Write the issue exactly as it was phrased in the Court of Appeals brief.

WAS DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHT VIOLATED BY "FALSITY OF INFERENCES" BOTCHED, PERJURED EVIDENCE(S), PERJURED TESTIMONY BY PROSECUTION WITNESSES; AND PROSECUTION USED TO OBTAIN SEARCH WARRANT (09/27/2016) see AND IMMUNITY GIVEN WAS BASED ON PERJURY TO JAILHOUSE INFORMANTs? (12/01/2016) Preliminary Hearing MRE 608(h)

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☑ 1. The issue raises a serious question about the legality of a law passed by the legislature.
☑ 2. The issue raises a legal principle that is very important to Michigan law.
☑ 3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☑ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

See attached Briefs:

(1) Immunity granted based on false verified statements in support of petition for "Use Immunity" perjury and falsification by prosecuter Charles T. Koop II on court docs. signed on 12/01/2016 for (Jailhouse informants.) MRE 608(h)

(2) Issuance of search warrant, police and (09/27/2016) prosecuter affidavits, signed by magistrate or judge would Trigger the intration of Judicial procedure against the def. INITIVE of <u>sixth amend.</u> right to have a counsel

(3) Was search warrant issued under false/perjured affidavit on 09/27/2017 for (IP) addresses by prosecutron and police..MRE 608(h)

(4) The Use Immunity granted on 12/01/2016, It was not valid/granted for trial to Jailhouse Informants.

(5) See Attached criminal Historys of Jailhouse Informants MRE 608(a) They should have been impeached.

They were given Perrote by 9/5/2017 6weeks before   Trial 9/18/2017

Page 5

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ _____, Appellant    Court of Appeals No. 343695
34 36 96

(Print your name)

## ISSUE IV:

**A.** Write the issue exactly as it was phrased in the Court of Appeals brief.

WERE SUFFICIENCY OF EVIDENCES AND FACTS DID NOT MATCH TO THE ELEMENTS OF THE CRIMES (SOLICITATION TO MURDER AND AGGRAVATED STALKING) DEFENDANT WAS CHARGED WITH; AND TRIAL AND APPEAL ATTORNEYS AND FAILED TO INVESTIGATE READILY AVAILABLE EVIDENCES BEFORE DEFENDANT TRIAL AND BEFORE GINTHER HEARINGS?

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☒ 1.  The issue raises a serious question about the legality of a law passed by the legislature.
☒ 2.  The issue raises a legal principle that is very important to Michigan law.
☒ 3.  The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☒ 4.  The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

*see attached Brief's*

ELEMENTS OF THE CRIME; SOLICITATION TO MURDER

PER; PEOPLE V VANDERLINDER 192 MICH APP 447 (1992).

"PURPOSELY SEEKS" TO HAVE SOMEONE KILLED OR

TRIES TO "ENGAGE SOMEONE TO DO THE KILLING"

① Elements of the crimes did not match the sufficiency of evidences for both charges

② Probable cause conference hearings were not given to defendant for both charges, they were cancelled. McL 766.1

③ Defendant is claiming Actual Innocence on both charges please see attached available/Newly discovered evidences which were NOT Investigated by def's TRIAL attorney and Appeals Attorney

Page 6

*1) IMMUNITY BASED ON FALSE VERIFIED STATEMENT IN SUPPORT OF PETITION FOR USE IMMUNITY, PERJURY AND FALSIFICATION BY PROSECUTOR CHAS T. KOOP II ON COURT DOCUMENTS SIGNED ON 12/01/2016.

12/01/2016 Preliminary Examination
case # 16-2960 FY District Court.

Immunity Given to Jailhouse Informants by Prosecutor Roth

pg.5 Defenfant's attoney Nichols : Dates that given in the immunity it is not accurate, which makes the "Verified Petition Under the statue fatal, void, null.

Pros KOOP:: The dates included, are based on what I had taken from recorded statements by two the witnesses (Close and Allen) as to their recollection of the timing of events. I don't doubt that they aren't-they don't have time down to exact date, and so it's based on what these witnesses said, at least represented.

Judge: grants the immunity based on false statements from Prosecutor Koop based on perjury committed by jailhouse informants (Allen and Close)

THE OUTCOME OF THE MOTION REQUIRED TO COURT TO EVALUATE THE CREDIBILITY OF THE WITNESS. THIS COURT GIVES GREAT DEFERENCE TO TRIAL COURT'S CREDIBILITY ASSESSMENTS.
IN RE CLARK ESTATE 237 MICH APP 387, 395-396;(1999)

Here are the misrepresentations from

FALSE VERIFIED STATEMENT IN SUPPORT OF PETITION FOR USE IMMUNITY by prosecutor KOOP

4) Between August 31st, 2016 and late October 2016 the defendant engaged with and solicited both Reginald Close and Charles Allen individually to carry-out or aid in the Murder of Erika Melke and associates close to her, in exchange for money.

***FACTS: DEFENDANT WAS PUT IN THE DEFENDANT WAS PLACED IN A GENERAL POPULATION (GP) POD ON 08/31/2016 THEN ON 09/01/2016 DEFENDANT WAS MOVED TO SEGREGATION POD 24 HOURS SOLITARY CONFINEMENT ON HIS OWN CELL IN SAME POD WHERE JAILHOUSE INFORMANT CHARLES ALLEN WAS ALREADY LODGED. (SEE MR. URAZ AND CHARLES ALLEN JAIL MOVEMENTS ATTACHMENT).

***FACT: ALLEN WAS IN JAIL FOR 6 MONTHS AT THAT TIME FOR STRANGULATION OF HIS GIRLFRIEND AND DOMESTIC VIOLENCE. (See attached Allen Criminal and jail incarceration History)

DUE TO PHONE RESTRICTIONS REQUESTED BY PROSECUTOR KOOP AND SIGNED BY JUDGE FOR AN ALLEGED 2 PHONE CALLS MADE TO COMPLAINANT MS. MELKE FROM JAIL. (SEE ATTACHMENT)

DEFENDANT COULD NOT HAVE MADE THAT PHONE CALL BECAUSE :

***FACT***
WHY INGHAM COUNTY JAIL PLACED ANYONE WITH PHONE RESTRICTIONS ON SOLITARY CONFINEMENT INSTEAD OF BLOCKING ONE'S PHONE PRIVILEGES ON THE TELEPHONE SYSTEM? IS THIS IS AN ACCEPTED NORM?

1)ONE'S PHONE PRIVILEGES IN JAIL IS NOT TURNED ON UP TO 24 HOURS.

2) DEFENDANT WAS IN HIS GP POD BY 8:44 PM ON 08/31/2016  SEE MR. URAZ 'S JAIL MOVEMENT RECORDS (SEE ATTACHMENT)

3) SEE DEFENDANT'S JAIL TELEPHONE LOGS, THE FIRST CALL WAS PLACED ON 09/01/2016 AT 1:00PM, NOT ON 08/31/2016 .
COMPLAINANT MS. MELKE'S PHONE NUMBER AREA CODE STARTED WITH 231 AT THAT YEAR (SEE ATTACHED POLICE REPORT)
(SEE ATTACHED JAIL FOIA REQUEST ANSWER  ABOUT THE PHONE NUMBER MS. MELKE ALLEGEDLY RECEIVED CALLS
(SEE ATTACHMENT)

ON 09/27/ 2016 MR. URAZ WAS TAKEN OUT OF SOLITARY CONFINEMENT AND PUT IN A MEDICAL CELL #M 4 (ROOM HAD ONLY 2 BUNKS AND DEFENDANT WAS FORCED TO SLEEP ON THE FLOOR) IN THE JAIL WITH BOTH JAILHOUSE INFORMANTS (ALLEN AND CLOSE)
NEXT DAY ON 09/28/2016 ALLEN WAS MOVED TO NEXT MEDICAL CELL #M3 WITH MUHAMMAD FATEEN.
DEFENDANT WAS KEPT WITH REGINALD CLOSE IN THE SAME ROOM TILL 10/07/2016
( SEE JAILHOUSE MOVEMENTS FOR ALLEN AND CLOSE ATTACHMENT      )

DEFENDANT WAS KEPT IN THE SAME POD WITH CLOSE AND ALLEN FOR 2 MORE WEEKS UNTIL CLOSE MOVED ON 10/20/2016 TO ANOTHER POD  AND ALLEN MOVED TO ANOTHER POD ON 10/29/2016 (SEE ALLEN AND CLOSE JAIL MOVEMENT RECORDS )

JOHN PIERCE CONNECTION

REGINALD CLOSE PROFFERED AGAINST JOHN PIERCE (SEE ATTACHED PROFFER AGREEMENT DATED 08/24/2016) REGINALD CLOSE WAS MOVED OUT OF SOLITARY CONFINEMENT POD ON 08/27/2016 DUE TO HIS PROFFER AGREEMENT AGAINST JOHN PIERCE.  DEFENDANT WAS PUT IN THE SAME CELL ON 08/31/2016 WHERE REGINALD CLOSE WAS LODGED BEFORE.

ON 09/27/2016 WHEN EVERYONE WHO WERE ON PHONE RESTRICTIONS MOVED TO MEDICAL FLOOR JOHN PIERCE WAS SEPARATED FROM REST OF THE INMATES BECAUSE PROSECUTION DID NOT WANT JOHN PIERCE TO WARN DEFENDANT ABOUT REGINALD CLOSE PROFFERED AGAINST HIM BECAUSE DEFENDANT WAS LODGED IN THE SAME CELL WITH BOTH JAILHOUSE INFORMANTS.

ON 10/20/2016 ONCE REGINALD CLOSE WAS MOVED FROM THE SAME POD WHERE DEFENDANT WAS LODGED, JOHN PIERCE WAS BROUGHT TO REPLACE CLOSE'S SPOT IN THE SAME POD.

CHARLES ALLEN CONNECTION:

DEFENDANT WAS PLACED IN THE SAME POD WITH CHARLES ALLEN ON 09/01/2016.  ON 09/27/2016 DEFENDANT WAS PLACED IN THE SAME MEDICAL CELL WITH ALLEN.
ON 10/07/2016 DEFENDANT WAS PLACED IN THE SAME POD WITH ALLEN AND CLOSE.
ALLEN WAS MOVED OUT OF THE POD ON 10/29/2016  ONCE ALLEN HAD A INTERVIEW  WITH POLICE ON 10/24/2016.
-------------------------
False verified statement by Prosecution continue;

5) REGINALD CLOSE AND CHARLES ALLEN INDIVIDUALLY "REPRESENTED" TO THE DEFENDANT THAT THEY COULD ASSIST HIM IN SECURING THE MURDER OF MELKE.

***FACT
ELEMENTS OF THE SOLICITATION TO MURDER : USED IN PRELIMINARY HEARING ON 12/13/2016 PG 196 LINES 15-25

IN PPL V VANDERLINDER, 192 MICH APP 447 (1992) A SOLICITATION TO COMMIT MURDER OCCURS WHEN THE SOLICITOR:

1) "PURPOSELY SEEKS"  TO HAVE SOMEONE KILLED AND
2) TRIES TO ENGAGE SOMEONE TO DO THE KILLING.

6) CLOSE REPRESENTED THAT IN-EXCHANGE FOR MONEY, HE COULD INTRODUCE DEFENDANT TO A PERSON THAT WOULD CARRY-OUT THE MURDER OF MELKE. IN FURTHERANCE OF THIS, A PERSON DEFENDANT IDENTIFIED AS HIS ROOMMATE DEPOSITED $160.00 IN CLOSE'S JAIL ACCOUNT. CLOSE STATED THIS DEPOSIT OF MONEY WAS DONE AS A PARTIAL PAYMENT TO SECURE CLOSE'S ASSISTANCE IN THE MURDER OF ERIKA MELKE AND OTHERS ASSOCIATED WITH HER. MOREOVER, CLOSE AND DEFENDANT EXCHANGED WRITTEN CORRESPONDENCE WHERE AT THE ****"REQUEST" OF CLOSE, THE DEFENDANT WROTE DOWN ERIKA MELKE'S NAME, ADDRESS, A DESCRIPTION OF THE VEHICLE WITH A PARTIAL LICENSE PLATE AND DREW A MAP FOR THE LOCATION OF HER APARTMENT.

***FACTS

MONEY DEPOSITED TO CLOSE'S ACCOUNT BY URAZ'S FRIEND ATAMER. DEFENDANT WAS "EXTORED" BY CLOSE BECAUSE HE THREATENED DEF. IF HE DIDN'T PUT ANY MONEY IN HIS JAIL ACCOUNT HE WOULD HARM ERIKA MELKE.
DEFENDANT WAS SCARED OF ERIKA MELKE'S SAFETY AND HIS SAFETY.
MONEY WAS DEPOSITED TO APPEASE HIM AND PROTECT MELKE.
****CLOSE WAS ALLOWED TO KEEP THE MONEY.

***FACTS

THE DEFENDANT ALLEGEDLY SOLICITED REGINALD CLOSE WHO THEN TOLD THE DEFENDANT, "HE HAS A FRIEND WHO WAS GOING TO DO THE KILLING AS A FAVOR (SEE 12/13/2016 PRELIMINARY EXAM TRANS. PG 155)

----------------------
Q: okay you have a friend who owes you money

A: Yes

Q: And did you tell Mr. Uraz this friend was going to do the killing

A: He was going to do it for me

Q: Because he owes you a favor

A: Yes

Q: And Mr. Uraz was going to pay you $1000.00 (one thousand)

A: Yes
----------------------------

DETECTIVE MOBLEY THAN PORTRAYED THE "FRIEND" SENT BY CLOSE, ESSENTIALLY ATTACHING DETECTIVE MOBLEY TO THE SOLICITATION IN COUNT #1.
THE DEFENDANT DID NOT SEEK THE ALLEGED FRIEND OF REGINALD CLOSE. IT WAS DETECTIVE MOBLEY WHO "PURPOSEFULLY SOUGHT" OUT THE DEFENDANT.

SUCH AS IF ONE LOOKS AT THE NOTES EXCHANGED BETWEEN DEFENDANT AND REGINALD CLOSE, IT WAS THE REGINALD CLOSE DID THE SOLICITING AND ENGAGING NOT THE DEFENDANT.
"THERE WAS NEVER A *KILL* SOLICITATION FROM THE DEFENDANT (SEE TRAIL EXHIBIT   THE NOTES WRITTEN BETWEEN DEFENDANT AND CLOSE eligible handwriting is Reginald closer's)

7) FALSE VERIFIED STATEMENT BY PROSECUTION

IN REPONSE TO DEFENDANT'S SOLICITATION OF ALLEN, ALLEN MADE CERTAIN REPRESENTATIONS THAT HE COULD OBTAIN A GUN FOR DEFENDANT OR PUT DEFENDANT IN CONTACT WITH SOMEONE THAT COULD PROVIDE A GUN. IN THE COURSE OF THESE COMMUNICATIONS DEFENDANT OFFERED OFFERED TO PAY ALLEN $2,500.00 FOR HIS ASSISTANCE AND FURTHERANCE OF HIS ATTEMPTS WERE MADE BY DEFENDANT'S ROOMMATE TO.DEPOSIT MONEY INTO ALLEN'S JAIL ACCOUNT, THOUGH UNSUCCESSFUL.

***FACTS***

ALLEN'S KITES SENT TO JAIL DEPUTIES WERE ALL HEARSAY AND THERE WAS NEVER A FIRST KITE ALLEGEDLY SENT IN SEPTEMBER OF 2016 TO JAIL DEPUTY TYRONE CALKINS. (HE WAS NEVER CALLED TO TESTIFY ABOUT THIS)

AND THE SECOND KITE WAS SENT TO CREATE "SNITCH ALIBI", UNTIL AFTER ALLEN WATCHED THE VIDEO CALL BETWEEN DEFENDANT AND DETECTIVE MOBLEY AND ALSO ALLEN CORROBORATED WITH REGINALD CLOSE PRIOR TO VIDEO VISIT BY UNDERCOVER POLICE..

***FACT

THERE WAS NEVER ANY MONEY DISCUSSED WITH ALLEN AND DEFENDANT'S FRIEND NEVER ATTEMPTED TO DEPOSIT MONEY INTO ALLEN'S JAIL ACCOUNT, THERE IS NO COMMUNICATION BETWEEN DEFENDANT AND HIS FRIEND REGARDING TO THIS FABRICATED STORY BY ALLEN AND PROSECUTION SINCE LANSING POLICE TRANSLATED ALL DEFENDANT'S PHONE AND VIDEO CALLS BETWEEN HIM AND HIS FRIEND.

BOTH JAILHOUSE INFORMANTS STOLE DEFENDANT'S JOURNAL (SEE DEFEDANT'S JAILHOUSE SUBSTANCE ABUSE THERAPY REPORTS BY TIM HELD)
AND NOTES/MAP TO HIS SISTER AND FABRICATED THEIR OWN STORIES.
(10/17/2016, Close and 10/24/2016 Allen jail house interviews)

HOWEVER AS IT PERTAINS TO COUNT#3,
IT WAS UNDERCOVER POLICE DETECTIVE WHO "ENGAGED" THE DEFENDANT NOT THE OTHER WAY AROUND.

SECONDLY MR. URAZ, THE DEFENDANT DID NOT INVITE THE ALLEGED HITMAN (DETECTIVE MOBLEY). THIS WAS DONE BY REGINALD CLOSE AND (LANSING POLICE DEPARTMENT DETECTIVE KRUMBACH, DETECTIVE ANDREW HOGAN, DET. BACKUS) NOR AT ANYTIME DID MR. URAZ "ASK" OR "PURPOSELY SOUGHT" DET. MOBLEY TO KILL ANYONE. THIS WAS INFERRED.

IT WAS ALSO INFERRED THAT THE DEFENDANT UNDERSTOOD THE REFERENCES OF CODE WORDS USED DURING EXTRA JUDICIARY OPERATION THAT "TRASH " MEANT DEAD BODIES AND "TWO" FOR THE FIRST BAG AND "FIVE" FOR EACH ADDITIONAL BAG ACTUALLY MEANT $2000.00 (TWO THOUSAND0 AND $500.00 (FIVE HUNDRED) TO HITMEN (see Mobley video visit  transcript 10/24/2016)

****"THIS IN ITSELF IS A TRIPLE STACKED OF INFERENCES WHICH BE LEGALLY IMPERMISSIBLE TO SHOW " PROBABLE CAUSE". REGARDLESS OF THE INFERENCES OR CODES, DET. MOBLEY WAS CALLED UPON BY REGINALD CLOSE, THE DEFENDANT HAD ALLEGEDLY ALREADY AGREED TO PAY REGINALD CLOSE $1000.00 (ONE THOUSAND) AND THE KILLING WOULD BE DONE AS A "FAVOR" OWED TO CLOSE.*****
SO ANY AMOUNT MONEY MOBLEY ALLEGEDLY ASKED IS A FABRICATION.
------- ------- -------
12/01/2016  CONTINUE
ISSUE #2
MOBLEY VIDEO CALL USED "CODED" WORDS RATHER THAN "AMBIGUOUS" LANGUAGE.

PG 8
ATTORNEY NICHOLS : I filed a motion to object or exclude any opinion testimony. It would be the detective who acted as an undercover who used certain slang terms or other terms actually meant to conclude what he believed Mr.Uraz's state of mind was.

MRE 609 Issue

NICHOLS PG 10 LINE 9
MR KOOP PROSECUTOR GAVE ME A "SUMMARY OF WHAT HE THINKS ARE THE "QUALIFYING 609 IMPEACHMENT CONVICTIONS.
DUE TO THEIR CRIMINAL HISTORY I NEED TO HAVE THE COMPLETE INFORMATION.

PG 12
PROSECUTOR KOOP : IT'S MY UNDERSTANDING THAT BASED ON THE LAWS REGARDING LEIN MY OFFICE SAYS "WE DON'T JUST TURN OVER THE ENTIRE CRIMINAL HISTORY BUT DO INFORM THE DEFENSE COUNSEL OF QUALIFYING CONVICTIONS WHICH I PROVIDE TO MR. NICHOLS.

12/01/2016
ALLEN TESTIMONY :
pg 22
KOOP: Did you ever actually hear him talk to with any other inmates about Ms. Melke? Were you ever present for any conversation?
Allen: NO
KOOP: did he ever...(defendant) did the defendant ever relay to you that, you know, he talks about Ms. Melke to another inmate?
ALLEN: NO
pg 24 line 16
KOOP did he ever give you anything about where she lives?
ALLEN: 3925 college town apartments 202. (see  TT -11/07/2017 pg 19)
**FACT HER ADDRESS WAS 4925 COLLEGE TOWN AND THIS INFORMATION WAS USED AT THE CLOSING ARGUMENT BY PROSECUTOR ROTH AND ONCE PERRONE CORRECTED THIS AT CLOSING ON (11/09/2017 pg 152 lines 7-15).
BUT BRUSHED IT OFF BY SAYING HE "MISSPOKE"

*3) IMMUNITY BASED ON FALSE VERIFIED STATEMENT IN SUPPORT OF PETITION FOR USE IMMUNITY, PERJURY AND FALSIFICATION BY PROSECUTOR CHAS T. KOOP II ON COURT DOCUMENTS 12/01/2016

ACCORDING TO ALLEN'S TESTIMONY ON 12/01/2016, 12/13/2016 AND 11/07/2017 TRIAL TESTIMONY

11/07/2017 FIFTH DAY OF TRIAL TUESDAY
***FACTS
***CHARLES ALLEN HAPPENED TO BE IN JAIL FOR A MONTH AT THE TIME OF THE TRIAL 10/25/2017-11/30/2017 (DRUGS, SHOPLIFTING ,RESISTING AN ARREST TOTAL BOND WITH A SIX PAGES WRAP SHEET AND BEING ON PROBATION $500 AND 1 MONTH IN JAIL (See Attached criminal History for Allen and Close)
AGAIN PERRONE FAILED TO GET THIS INFORMATION. WHEN PROSECUTION PERJURED BY SAYING, THEY GOT NOTHING FOR PROFFERING.

***FACT ALLEN WATCH THE WHOLE VIDEO VISIT BEHIND ME ON 10/24/2017 WITH MOBLEY AND QUESTIONED ME ABOUT IT SAYING THAT HE LOOKED LIKE POLICE.

***FACT ALLEN SAW CLOSE EXTORTING DEF. THEREFORE HE WANTED GET INTO ACTION AS WELL.

***FACT I WAS WARNED BY JAIL DEPUTY DEROSA ON POST AND TRUSTEE SEAN MOON ABOUT CLOSE TRYING TO SET DEFENDANT UP (10/21/2016) THIS IS WHY I WAS "SKITTISH" WHEN I WAS TALKING TO UNDERCOVER MOBLEY

***ALLEN'S BACKGROUND FROM ICHAT WAS SENT TO PERRONE ON 09/15/2011

***PGS 9 ,10,12, ALLEN I BECAME FRIENDLY WITH HIM. ALLEN PROMPTED THE DEFENDANT TO MAKE INCRIMINATING STATEMENTS.

ALLEN'S MADE UP NARRATIVES
PG 13 "THIS BITCH GOT A PAY" IS NOT A PHRASE DEF. WOULD USE.
**14 BEATEN HER WITH A BASEBALL BAT, AFTER THAT HE WANTED A PICTURE OF IT.
PG 17 LINE 14 BUT YOU CONTINUED YOUR RELATIONSHIP SHIP WITH DEF.
PLAYED ALONG?
ALLEN YES
**PG 19 ALLEN GIVES A WRONG ADDRES 3925 COLLEGE TOWN APT. 202 ***(4925 DUNKLE RD. COLLEGE TOWN APT. 202).
**PG 21 HE WANTED TO."JACK OFF" TO THEM
***PG 22 GIVEN IMMUNITY FOR TESTIFYING.
**PG 24 LINE 16-25
ALLEN I WROTE TWO KITES

**FACT THERE WAS NEVER A FIRST KITE BECAUSE IT WAS SUPPOSED TO BE BEFORE 09/24/2016 AND GIVEN TO DEP. CALKINS. CALKINS WAS NEVER CALLED TO TESTIFY

*PG 44
ALLEN DELIBERATELY PROMPTED THE DEFENDANT TO MAKE INCRIMINATING STATEMENTS.
PROS ROTH:
AFTER YOUR REMOVED FOR THE ISSUES WITH MUHAMMAD YOU WERE PUT BACK ON POST WITH MR. URAZ.

ALLEN YES
ROTH IS THAT BEFORE OR AFTER YOU WROTE THE FIRST LETTER.
ALLEN THAT'S AFTER
ROTH WHEN YOU WROTE THE SECOND LETTER ON 10/24/2016 ARE YOU STILL ON THE SAME POST WITH
MR. URAZ
ALLEN YES
**PGS 54,55,56 ALLEN STATES HE QUESTIONED THE DEFENDANT ABOUT HIS INTENT BECAUSE HE
WANTED TO KNOW

***PG 50- 51
PERRONE WHAT IS THE FIRST THING THAT YOU TOLD THE OFFICER WHEN YOU SPOKE WITH HIM IN THE
JAIL INTERVIEW? (SEEJAIL.TRANS. PG.2 LINE 16) ALLEN "WHAT'S THE CHANCE OF ME GETTING OUT OF
HERE ON TETHER FOR COOPERATION?

MRE 609 Issue
PG 152  ALLEN PROVIDED ADDESS 3925 DUNCLE ROAD

***ROTH'S RESPONSE TO PERONE, 20 PAGES HIS "MISREPRESENTATIONS"

pg 152 Roth agaiN MISREPRESENTED THE TRUTH
Allen DID SAY 3925 Dunkle rd  and address was never 4925 Dunkle rd. see Allen notes (kite)(11/7/2017 PG 19
ALLEN TESTIMONY

ROTH LINE 7-15
I MISSPOKE WHEN I GAVE THE ADDRESS, I THINK I GAVE THE ADDRESS WRONG IN  CLOSING, LOOK AT
YOUR NOTES (TO JURY)

---------------------
CLOSE PRELIMINARY EXAM
Pg 155 12/13/2016

NICHOLS: AT SOME POINT OUT ON THE OUTSIDE WHEN YOU WERE BOTH OUTM
CLOSE: HE WAS GOING TO GET OUT AND GIVE THE MONEY TO SOMEONE FOR ME.
NICHOLS: TO HOLD FOR YOU?
CLOSE: YEAH, I GUESS SO, HOWEVER, TO HOLD, SPIN, WHATEVER M
NICHOLS: WHO WAS THIS PERSON?
CLOSE: I WANT TO PLED THE 5TH. ON THAT (IT WAS FOR HIS WIFE THAT HE BEAT UP, WHICH HE HAD
CASE PENDING)
KOOP: CAN WE APPROACH, YOUR HONOR?
JUDGE; I TOLD MR. NICHOLS THAT AT THIS POINT IN TIME THAT QUESTION'S NOT PROPER. HE IS GOING
TO ASK YOU SOME OTHER QUESTIONS.

PLEA DEAL GIVEN TO CLOSE FOR HIS CASE
PG 168 LINE 11-18
KOOP: AN OFFER AS BEING YOU WOULD PLEAD GUILTY TO HOME INVASION FIRST DEGREE WITH A CAP
OF 120 MONTHS, IN EXCHANGE, THE PEOPLE WOULD DISMISS THE BALANCE OF YOUR CHARGES AND
THE HABITUAL OFFENDER NOTICE IN FULL OR
YOU PLEAD GUILTY TO HOME INVASION SECOND AND FELONY FIREARM, NO SENTENCING
AGREEMENTS, AND IN EXCHANGE PEOPLE WOULD DISMISS THE BALANCE OF CHARGES  AND THE
HABITUAL OFFENDER NOTICE IN FULL.
THIS IS WHY CLOSE REJECTED THE PLEA DEAL AND PROCEEDED TO TRIAL BECAUSE HIS VICTIM (HIS
ELDELY LADY NEIGHBOR) DID NOT SHOW UP THE TRIAL TO TESTIFY AGAINST HIM ALTHOUGH SHE SHE
TESTIFIED DURING THE PRELIMINARY EXAMINATION YET THE PROSECUTOR DID NOT USE AGAINST HIM
AT THE TRIAL.

"DELIBERATELY CREATED STANDARD"

11/7/2017

Jail DEPUTY SANDRA DOUSE
PG 77
DEF. WAS BOOKED IN ON 08/31/2016 AND MOVED FROM 4POST A DORM, # 2  ON 09/31/2016 TO 5 POST
DORM # 27 , (27 DAYS IN SOLITARY CONFINEMENT FOR BEING ON PHONE RESTRICTIONS)
ON 09/27/2016 DEF MOVED TO MEDICAL #4 (M-4) ****WITH CLOSE AND ALLEN ALTOGETHER IN THE SAME
CELL ***10 DAYS LATER
ON 10/06/2016 DEF. WAS MOVED TO
5 POST B DORM #43

**ON 11/10/2016 DEF. WAS MOVED TO "ISOLATION CELL"  CELL #5( LIGHTS ARE ON 24 HRS A DAY, NO
MATTRESS AND BLANKET BETWEEN 6 AM TILL 10 PM, SHOWERS EVERY 3 DAYS, VERY COLD ROOM, NO
HUMAN CONTACT OTHER THAN MEAL DELIVERY. HE SPENT 116 HOURS THERE AND NO TICKETS WERE
ISSUED BY JAIL SEE JAIL RECORDS

***ON 11/16/2016 DEF. WAS MOVED TO MEDICAL CELL M#5) DEF WAS LOCKED 24 HOURS A DAY UNTIL
03/08/2017 **(5 MONTHS IN SOLITARY)

ANALYSIS:

***THE SCOTUS CONCLUDING THAT BECAUSE OF THE DEFENDANT'S HISTORY WITH AND PROXIMITY TO
THE INFORMANT, LAW ENFORCEMENT "MUST HAVE KNOWN THAT PROPINQUITY (CLOSE PROXIMITY)
LIKELY WOULD LEAD TO THAT RESULT".
SCOTUS ALSO EXPLAINED THAT "THE MERE FACT OF CUSTODY IMPOSES PRESSURES ON THE
ACCUSED; CONFINEMENT MAY BRING INTO PLAY SUBTLE INFLUENCES THAT WILL MAKE HIM
PARTICULARLY SUSCEPTIBLE TO THE PLOYS OF UNDERCOVER GOVERNMENT AGENTS." SCOTUS
CONCLUDED THE GOVERNMENT VIOLATED THE DEFENDANT'S RIGHTS BY "INTENTIONALLY CREATING A
SITUATION LIKELY TO INDUCE (THE DEFENDANT) TO INCRIMINATING STATEMENTS WITHOUT THE
ASSISTANCE OF COUNSEL...."

*4) IMMUNITY BASED ON FALSE VERIFIED STATEMENT IN SUPPORT OF PETITION FOR USE IMMUNITY, PERJURY AND FALSIFICATION BY PROSECUTOR CHAS T. KOOP II ON COURT DOCUMENTS 12/01/2016

"DELIBERATELY CREATED STANDARD"
DEFENDANT WAS PLACED IN THE SAME JAIL CELL WITH JAILHOUSE INFORMANTS ALLEN AND CLOSE
ON SEPARATE OCCASIONS ALLEN AND CLOSE ASKED TO SPEAK TO THE POLICE.
ON 09/27/2016 CLOSE SENT A LETTER TO HIS ATTORNEY WHICH HE HAS DONE SAME ON TWO SEPARATE
OCCASIONS ON OTHER JAIL INMATES IN THE PAST.

ALLEN SENT KITES TO JAIL ADMINISTRATION ALLEGEDLY ONE IN SEPTEMBER 2016 AND THE OTHER
DOCUMENTED ONE IN 10/24/2016.

DEFENDANT REFERS THESE ACTIONS BY JAILHOUSE SNITCHES AS "IMPLIED AGENTS" AND THE
EXTENSION OF THE POLICE WORK WHEN DEFENDANT HAD AN ATTORNEY AT ALL TIMES ON THE
RECORD. DEFENDANT'S RIGHT TO HAVE A REPRESENTATION AT ALL TIMES OTHERWISE IT IS A
VIOLATION OF HIS SIXTH AMEND. RIGHTS.

DEFENDANT HAD AN ATTORNEY ON RECORD AT ALL TIMES BEFORE HE WAS REMANDED TO JAIL AND
DURING HIS JAIL STAY.
DEFENDANT HAD AN ATTORNEY ON RECORD AT ALL TIMES WHEN THERE WAS A SEARCH WARRANT
SIGNED BY A MAGISTRATE ON A FALSE/PERJURED AFFIDAVIT GIVEN BY AFFIANT PROSECUTOR KOOP
ON 09/27/2016.

DEFENDANT'S MENTALLY INCAPACITATED (TWICE SENT TO MENTAL HOSPITAL WITH IN TWO WEEKS
AFTER DEFENDANT'S TRIAL ENDED) ATTORNEY FAILED TO FILE A PRETRIAL MOTION TO SUPPRESS ANY
INFORMATION GIVEN BY JAILHOUSE INFORMANTS.

DEFENDANT DID NOT OBJECT AT TRIAL TO THE TESTIMONY. THE ERROR WAS NOT PRESERVED.
THIS IS AN EVIDENTIARY HEARING ERROR.
 DEFENDANT ARGUES THAT ANY INFORMATION ALLEN AND CLOSE OBTAINED FROM DEFENDANT MUST
BE SUPPRESSED BECAUSE BY THAT POINT:
1) CLOSE WAS ACTING AS AN IMPLIED AGENT OF THE STATE BECAUSE OF HIS AGREEMENT AGAINST
PIERCE AND OTHERS BEFORE. ANY QUESTIONING OF DEFENDANT BY CLOSE WAS A VIOLATION OF
DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL.
2) CLOSE WAS HOUSED WITH DEFENDANT DELIBERATELY BY POLICE AND PROSECUTION ON
PURPOSELY. THIS CREATED AN ENVIRONMENT FOR DEFENDANT TO MAKE INCRIMINATING STATEMENTS
WHICH WAS USED AGAINST HIM.
3) DEFENDANT WAS SENTENCED ON 11/02/2016 FOR HIS FIRST STALKING CHARGE WHERE ACCEPTED A
PLEA DEAL.
4) CLOSE WAS KEPT WITH DEFENDANT UNTIL 10/20/2016 AND ALLEN WAS KEPT WITH DEFENDANT UNTIL
10/29/2016 IN THE SAME JAIL POD.
5) DEFENDANT WAS CHARGED WITH SECOND STALKING CHARGE ON 10/28/2016 HOWEVER ISSUANCE OF
A SEARCH WARRANT ON 09/27/2016 BASED ON "INFERENCE OF FALSITY"

ANALYSIS
THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION GUARANTEES AN ACCUSED, AFTER
INCEPTION OF FORMAL CHARGES, THE RIGHT TO RELY ON COUNSEL AS A "MEDIUM" BETWEEN HIMSELF
AND THE STATE, AND THIS GUARANTEE ENCOMPASSES THE STATE'S AFFIRMATIVE OBLIGATION NOT TO
CIRCUMVENT THE PROTECTIONS ACCORDED AN INDIVIDUAL WHO INVOKES THIS RIGHT. MAINE V

MOULTON, 474 U.S. 159, 176; 106 S CT. 477; 88 L. ED. 2D. 481 (1985).
COURT HAVE NOT HESITATED TO FIND A VIOLATION OF THE RIGHT TO COUNSEL WHERE THE GOVERNMENT HAS INTENTIONALLY CREATED A SITUATION LIKELY TO INDUCE A DEFENDANT TO MAKE INCRIMINATING STATEMENTS WITHOUT THE ASSISTANCE OF COUNSEL AND HAS DELIBERATELY ELICITED THE INCRIMINATING STATEMENTS. MOULTON, SUPRA AT 180; UNITED STATES V HENRY, 447 U.S 264, 274; 100 S CT. 2183; 65 L. ED. 2D 115 (1980); MASSIAH V UNITED STATES 377 U.S. 201; 84 S CT. 1199; 12 L. ED. 2D 246 (1964). UNITED STATES V BRINK, 39 F3D 419, 423-424 (CA 3, 1994).
HOWEVER "A DEFENDANT DOES NOT MAKE OUT A VIOLATION OF [A SIXTH AMENDMENT] RIGHT SIMPLY BY SHOWING THAT AN INFORMANT, EITHER THROUGH PRIOR ARRANGEMENT OR VOLUNTARILY, REPORTED HIS INCRIMINATING STATEMENTS TO THE POLICE. RATHER, THE DEFENDANT MUST DEMONSTRATE THAT THE POLICE AND INFORMANT TOOK SOME ACTION, BEYOND MERE LISTENING, THAT WAS DESIGNED DELIBERATELY TO ELICIT INCRIMINATING REMARKS." KUHLMANN V WILSON, 477 U.S. 436, 459; 106 S CT 2616; 91 L. ED 2D. 364 (1986)

A CRIMINAL DEFENDANT WHO FACES INCARCERATION HAS A CONSTITUTIONAL RIGHT TO COUNSEL AT ALL CRITICAL STAGES OF THE CRIMINAL PROCESS UNDER SIXTH AMENDMENT WHICH S APPLICABLE TO THE STATE THROUGH THE FOURTEENTH AMENDMENT. PPL V WILLIAMS 470 MICH 264 (2004).
A "CONSENT" TO SEARCH IS NOT A CRITICAL STAGE OF CRIMINAL PROCEEDING TO WHICH THE RIGHT TO COUNSEL APPLIES. THE SIXTH AMENDMENT RIGHT TO COUNSEL DOES NOT APPLY FOR A CONSENT TO SEARCH BECAUSE A SEARCH "DOES NOT GENERATE EVIDENCE" BUT MERELY REVEALS EVIDENCE ALREADY IN EXISTENCE AND CERTAIN TO BECOME AVAILABLE TO THE GOVERNMENT IN DUE COURSE.
A REQUEST FOR A CONSENT TO SEARCH IS "NOT A TRIAL-LIKE CONFRONTATION" INSTEAD, IT IS MORE LIKE A REQUEST FOR OTHER TYPES OF PHYSICAL EVIDENCE, SUCH AS HANDWRITING EXEMPLARS AND BLOOD SAMPLES. PPL V MARSACK 231 MICH APP 364 (1998)

ACCOMPLICE AIDED AND ABETTED.
TO SUPPORT A FINDING THAT A DEFENDANT (IN THIS CASE JAILHOUSE INFORMANTS, GOVERMENT AGENTS).AIDED AND ABETTED A CRIME, THE PROSECUTION MUST SHOW THAT;
1) THE CRIME CHARGED WAS COMMITTED BY THE DEFENDANT OR SOME OTHER PERSON.
2) THE DEFENDANT PERFORMED ACTS OR GAVE ENCOURAGEMENT THAT ASSISTED THE COMMISSION OF CRIME.
3) THE DEFENDANT (EITHER) INTENDED THE COMMISSION OF THE CRIME OR HAD KNOWLEDGE THAT THE PRINCIPAL INTENDED ITS COMMISSION AT THE TIME HE GAVE AID AND ENCOURAGEMENT.
PEOPLE V IZARRARAS-PLACANTE, 246 MICH APP 490 (2001)

THE AIDING AND ABETTING STATUE ENCOMPASSES ALL FORMS OF ASSISTANCE RENDERED TO THE PERPETRATOR OF A CRIME AND COMPREHENDS ALL WORDW OR DEEDS THAT MIGHT SUPPORT, ENCOURAGE, OR INCITE THE COMMISSION OF A CRIME.
BOSCA, 310 MICH APL AT 8. MOREOVER "(I)NTENT MAYBE INFERRED FROM A DEFENDANT'S WORDS, ACTS, MEANS OF THE MANNER USED TO COMMIT THE OFFENSE.

mcls 767.39
abolition of distinction between accessory and principle
every person concerned in the commission of an offense whether he directly commits the act constituting the offense or procures, counselsz aids or abets in its commission may here after be prosecuted, indicted, tried and conviction shall be punished as if he had directly commit indicted, tried and conviction shall be punis

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ _____, Appellant    Court of Appeals No. 343695

(Print your name)                                        343696

**NEW ISSUE INSTRUCTIONS:** If you want the Supreme Court to look at errors that were not raised in the Court of Appeals, check **Yes** in the checkbox below and answer parts **A, B,** and **C** for each new issue you raise. There are pages provided for 2 new issues. You may include more pages to raise additional new issues. If you do not have new issues, go to the Relief Requested section on page 10.

☑ YES, I want the Supreme Court to consider the additional grounds for relief contained in the following issues. The issues were not raised in my Court of Appeals brief.

**NEW ISSUE I:**

WERE PROSECUTORS KAHLA CRINO, JONATHAN ROTH, CHARLES KOOP II, AND ATTORNEY ERIC SCHROEDER, DUANE SILVERTHORN FAILED TO DISCLOSE PERRONE'S MENTAL IMPAIRMENT DOCUMENTS (BRADY MATERIAL VIOLATION) AND HIS INVOLUNTARY MENTAL HOSPITAL ADMISSION BEFORE TRIAL AND TWICE IN THE SAME MONTH OF TRIAL (NOVEMBER 2017). THEY ALL FAILED TO PRODUCE CLINTON (11/14/2017) AND OAKLAND (11/20/2017) COUNTY PROBATE COURT'S DOCUMENTS AND LANSING POLICE REPORT FILED AGAINST PERRONE ON 11/20/2017 AND POLICE CAM FOOTAGE FOR DEFENDANT'S BEFORE GINTHER HEARING TOOK PLACE ON 10/04/2021 AND 04/13/2022?

**B.** The Court should review this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☑ 1. The issue raises a serious question about the legality of a law passed by the legislature.
☑ 2. The issue raises a legal principle that is very important to Michigan law.
☑ 3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☑ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any cases and citations, laws, or court rules, etc. that support your argument and explain how they apply to this issue. State the facts that support and explain this issue. If any facts were not presented in the Court of Appeals, explain why. You may add more pages. See Attached AGC Grievances Filed by Defendant and respectives

See legal Malpractice committed by all prosecutors, Attorneys Judges who were involved with / who had a knowledge of Perrone's mental illness/impairment episodes yet they all failed to share this with defendant and his appeal attorney. Blatent Brady violation. They all failed to report Perrone's mental illness to Attorney Grievance Commission. MRPC 8.3(a) 8.4. 3.3. 1.1.

① Body cam video/footage was sent to Mr. GARY Chambers on 09/12/22 and february of 2023 about Perrone's arrest/irrational behavior on 11/20/17

② They all perjured during gintherhearing by not

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC UFAZ _____, Appellant    Court of Appeals No. 34 3695
34 3696

(Print your name)

---

**ISSUE V:**

**A.** Write the issue exactly as it was phrased in the Court of Appeals brief.

*his sentencing attorney D. SILVERTHORN did not have the discovery
package, he was not at the trial, he failed to share Perrone "second"
mental impairment (11/20/2017), and police report, on 12/18/2017 it was
sent to him by prosecutor KOOP

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☑ 1. The issue raises a serious question about the legality of a law passed by the legislature.
☑ 2. The issue raises a legal principle that is very important to Michigan law.
☑ 3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☑ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

See attached AGC response / grievance filed against him
3/31/23                                    october / November 2022

Silverthorn failed to disclose Perrone's Second
Mental impairment probate court records which were
given to him by prosecutor Koop II on 12/18/2017.
He never testified about it during 6 further hearings,
a He perjured by omitting this information to Defendant
and to MI hired by Appeall attorney.

See Def 4/2019 standard 4 Brief Silverthorn's Ineffectives

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ _____, Appellant    Court of Appeals No. 343695
(Print your name)                                          343696

(EXTRANEOUS INFLUENCE).

WHEN JURY #1 MR. NISHON DISCLOSED HIS BIAS AGAINST TURKISH PEOPLE ON RECORD ON (11/03/2017) AFTER HE WAS SWORN-IN AS A JUROR ON (11/02/2017), HE WAS KEPT IMPANELED JURY FOR 8 EXTRA DAYS IMPANELING THE JURY "KN" NOT RANDOMLY PER MCR 6.411 AND MCL 768.18 MCR 2.511(D)(2) JURY IS BIASED FOR OR AGAINST A PARTY OR ATTORN
(Judicial Law making)
WAS TRIAL COURT IN ERR BY IMPROPERLY DISMISSING BIAS JUROR #1 "MR NISHON" AT THE END OF CLOSING PROOFS ON (11/09/2017) WITHOUT HOLDING ANY REMMER HEARING CONDUCTED BY JUDGE TO SEE IF THE IMPANELED JURY WAS POISONED

**B.** The Court should review the Court of Appeals decision on this issue because: Remmer v US 347 US 227 (1954) apply to this issue, but you must check at least 1.)

- ☐ 1. The issue raises a serious question about the legality of a law passed by the legislature.
- ☑ 2. The issue raises a legal principle that is very important to Michigan law.
- ☑ 3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
- ☑ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

WAS DEFENDANT'S ATTORNEY PROVIDED JURY INSTRUCTIONS ON THE FIRST DAY OF TRIAL 10/31/2017 (RATHER THAN LAST DAY) TO COURT AND COURT GAVE BURDEN SHIFTING PRESUMPTIVE GUILT INSTRUCTIONS ON THE LAST DAY OF TRIAL? (PURPOSEFULLY SOUGHT)? DID TRIAL COURT HAVE MISSING JURY INSTRUCTIONS NOT BEING READ TO JURY?

) DID PROSECUTOR ROTH CONFUSED JURY ON HIS FIRST CLOSING ARGUMENT BY TELLING THEM PURPOSEFULLY "ALTERED" SOLICITATION TO MURDER INSTRUCTIONS DIFFERENT THAN WHAT WAS AGREED BY JUDGE ON 11/09/2017, T.T. PG.8 LINES 1-25 (HE USED THE WORD "INTENDED" INSTEAD OF ("PURPOSEFULLY SEEKING") AND JUDGE REFUSED TO GIVE A CURATIVE INSTRUCTIONS TO JURY FOR THIS CONFUSION?

See attached Briefs

Page 5

1)MICHIGAN CRIMINAL JURY INSTRUCTIONS FOR TRIAL SHOULD HAVE BEEN GIVEN TO JURY

1.8 READING OF INFORMATION
1) CHARGES THE DEFENDANT
2) THE DEFENDANT HAS PLED NOT GUILTY TO THIS CHARGE
THE JUDGE SHOULD SAY "INDICTMENT" OR "COMPLAINT" WHERE APPROPRIATE.
see TOT v U.S. 319 US 643 (1943)
***(presumptive evidence created by information) (there is no rational connection between the facts proved and the ultimate fact presumed)
this indictment put the defendant against whom no evidence of guilt has been offered in a procedural situation from which he can escape conviction only by testifying compels him to give evidence against himself in violation of the FIFTH amendment)****

1.9 Defendant is not required to prove (his) innocence or to do anything.

2.14 CAUTION ABOUT PUBLICITY IN CASES OF PUBLIC INTEREST

2.16 JURORS NOT TO CONSIDER INFO FROM OUTSIDE THE COURTROOM

2.24 INSTRUCTIONS TO BE TAKEN AS A WHOLE MCR 2.515(N) INSTRUCT THE JURY BEFORE CLOSING ARGUMENTS.

*3.3 DEFENDANT NOT TESTIFYING , EVERY DEFENDANT HAS THE ABSOLUTE RIGHT NOT TO TESTIFY, WHEN YOU DECIDE THE CASE, YOU MUST NOT CONSIDER THE FACT THAT DEFENDANT DID NOT TESTIFY, IT MUST NOT EFFECT YOUR VERDICT IN ANY WAY

3.4 DEFENDANT IMPEACHMENT BY PRIOR CONVICTION
YOU MAY CONSIDER THIS EVIDENCE ANY IN DECIDING WHETHER YOU BELIEVE THE DEFENDANT IS A TRUTHFUL WITNESS. YOU MAY NOT USE IT FOR ANY OTHER PURPOSE. A POST CONVICTION IS NOT EVIDENCE THAT THE DEFENDANT COMMITTED THE ALLEGED IN THIS CASE

3.8 LESS SERIOUS CRIMES.
3.9 SPECIFIC INTENT (DELETED)
3.10 TIME AND PLACE (VENUE)
THE PROSECUTOR MUST ALSO PROVE A REASONABLE DOUBT THAT THE CRIME OCCURRED ON OR ABOUT (STATE DATE ALLEGED WITH IN_____COUNTY MCL 767.3 JURIS OFFENSES, NEAR COUNTY LINES.

3.11 THE INSTRUCTION SHOULD BE GIVEN AFTER THE ATTORNEYS' CLOSING ARGUMENTS REGARDLESS OF WHETHER THE JURY INSTRUCTIONS ARE GIVEN BEFORE OR AFTER CLOSING ARGUMENT

3.11 DELIBERATIONS AND VERDICT.
THIS INSTRUCTION SHOULD BE GIVEN AFTER THE ATTORNEY'S CLOSING ARGUMENT REGARDLESS  OF WHETHER THE JURY INSTRUCTIONS ARE GIVEN BEFORE OR AFTER CLOSING ARGUMENT

**3.11a REPLACEMENT JUROR.

3.19 SINGLE DEFENDANT MULTIPLE COUNTS, SINGLE WRONGFUL ACT
**(BECAUSE OF JOINT TRIALS OF INTERPRETED AS ONE ACT)

**5.6 CAUTIONARY INSTRUCTION REGARDING ACCOMPLICE TESTIMONY

***(See order granting immunity signed by judge Boyd on 12/01/2016 per
 MCL 780.701. THIS IMMUNITY EXTENDS TO ANY FORM OF AIDING AND ABETTING OR PARTICIPATION IN
VARIOUS CRIMES OUTLINED IN  PARAGRAPH SEVEN (7) OF PEOPLE'S PETITION.
REGINALD G. CLOSE
PARAG.7
REGINALD CLOSE'S WRITTEN COMMUNICATION WITH DEF. OUTLINING ADVANCING PLANS FOR THE
MURDER AND OTHERS, HIS AFFIRMATIVE RESPONSE THAT HE WOULD ASSITS DEF. IN EXCHANGE FOR
MONEY, CLOSE'S ACCEPTANCE OF MONEY IN HIS JAIL ACCOUNT AS A PARTIAL PAYMENT TO SECURE
HIS ASSISTANCE IN CRIMINAL ENTERPRISE WAS ALL DONE WITHOUT KNOWLEDGE OF POLICE, WHICH
COULD CONSTITUTE AS CONSPIRACY OR AIDER AND ABETTOR THEORY)****


CHARLES ALLEN IMMUNITY GIVEN ON 12/01/2016

ix) THE ACTIONS AND ENCOURAGEMENT BY ALLEN IN FURTHERANCE OF THE SOLICITATION OF MURDER
BY DEFENDANT WAS DONE WITHOT ANY PRIOR INVOLVEMENT OR KNOWLEDGE ON BEHALF OF LAW
ENFORCEMENT. THEREFORE, THESE ACTIONS COULD CONSTITUTE THE CRIME OF SOLICITATION OF
MURDER UNDER A CONSPIRACY THEORY OR AIDER AND ABETTOR THEORY.
(Allen's representation that he could obtain or put defendant in contact with someone that could provide a gun)

THEREFORE, THE ISSUE WAS CLOSELY DRAWN AND CAUTIONARY ACCOMPLICE INSTRUCTIONS SHOULD
HAVE BEEN GIVEN SUA SPONTE.

MI CRIM JI
5.6 accomplice testimony *See attached*

IF THE ISSUE IS CLOSELY DRAWN, IT MAY BE ERROR REQUIRING REVERSAL TO FAIL TO GIVE
CAUTIONARY ACCOMPLICE INSTRUCTIONS EVEN IN THE ABSENCE OF A REQUEST. IF THE CASE IS
CLOSELY DRAWN, INSTRUCTIONS SHOULD BE GIVEN SUA SPONTE WHERE ARE NO INDEPENDENT
EYEWITNESSES AND THE QUESTION COMES DOWN TO WHOM TO BELIEVE, THE DEFENDANT OR THE
ACCOMPLICES. PPL V McCOY, 392 MICH 231,240: 220 NW2D 456 (1974), PPL V SMITH, 158 MICH APP 220
(1987)

THE QUESTION CAME DOWN TO WHOM TO BELIEVE, THE DEFENDANT (ESPECIALLY IF HE DID NOT
TESTIFY) OR THE ACCOMPLICES. THIS IS A CREDIBILITY CONTEST BETWEEN DEFENDANT AND
ACCOMPLICES.

***FACT IMMUNITY GIVEN AT DISTRICT COURT TO JAILHOUSE INFORMANTS CLOSE AND ALLEN
THE SAME IMMUNITY WAS NOT GIVEN TO AT TRIAL SEE BELOW LINES:

10/31/2017 FIRST DAY OF TRIAL
PG 31
 PERRONE ASKS FOR USE IMMUNITY DOCUMENTS TO BE SHARED WITH JURY

JUDGE ASKS IS THERE WRITTEN AGREEMENT?

ROTH: THERE IS NOT, YOUR HONOR

PERRONE: THERE WERE SOME COURT FILINGS ABOUT USE IMMUNITY GIVEN TO INFORMANTS

ROTH: THAT WAS A DISTRICT COURT FILING THAT EXPIRED AT THE CONCLUSION OF THE PRELIMINARY
EXAM. WE WILL DETAIL THE TERMS OF "GRANT USE IMMUNITY" DURING THEIR TESTIMONY. (NEVER
HAPPENED)


**FACT PERRONE NEVER EXPLAINED TO JURY WHAT IS A"IMMUNIZED TESTIMONY" BY INFORMANTS
MEAN THAT WHETHER THEY LIE OR NOT THEY ARE PROTECTED.

5.8 CHARACTER EVIDENCE REGARDING CREDIBILITY OF WITNESS.

5.8a CHARACTER EVIDENCE REGARDING CONDUCT OF THE DEFENDANT

5.11 POLICE WITNESS
5.12 PROSECUTOR FAILURE TO PRODUCE WITNESS
5.13 AGREEMENT FOR TESTIMONY (FOR JAILHOUSE INFORMANTS)
6.2 INTOXICATION AS A DEFENSE TO SPECIFIC INTENT CRIME.
MCL 768.37 UNDER THE INFLUENCE OF IMPAIRMENT BY ALCOHOL, LIQUOR OR DRUGS AS DEFENSE
PROHIBITED EXCEPTION :DEFINITION

1)PRESUMPTIVE JURY INSTRUCTIONS AND AFFIRMATIVE DEFENSE INSTRUCTIONS

MRE 302 (b) PRESUMPTIONS

("PURPOSEFULLY SOUGHT" JURY INSTRUCTION GIVEN  FOR SOLICITATION TO MURDER CHARGE MCLS (750.157B(2)) TO PROVE INTENT

PURPOSEFULLY SOUGHT, PRESUMPTIVE JURY INSTRUCTION

THE PASSIVE VERB AND PAST TENSE
CONSTRUCTION OF JURY INSTRUCTIONS FOR SOLICITATION TO MURDER.

BY EMPLOYING A PASSIVE VERB IN THE PAST TENSE, THE MICHIGAN  COURT OF RULES/ MICHIGAN SUPREME  COURT SHOULD   REQUIRE AN ACTION COMPLETED ACCORDING TO  THE  EVIDENCE COMPLAINANT MUST HAVE BEEN PLACED IN DANGER OF PHYSICAL INJURY OR DEATH THE MERE POSSIBILITY OR POTENTIAL OF SUCH DANGER IS NOT SUFFICIENT.

IN THIS CASE ALL JURY INSTRUCTIONS WERE GIVEN  IN PAST PERFECT / PASSIVE VOICE TENSES FORMED SENTENCES

"FIRST, DEFENDANT, THROUGH WORDS OR ACTIONS, OFFERED, PROMISED OR GAVE MONEY SERVICES OR ANYTHING VALUE TO ANOTHER PERSON

SECOND THAT THE DEFENDANT "PURPOSEFULLY SOUGHT" BY HIS WORDS OR ACTIONS, THAT WHAT HE SAID OR DID WOULD "CAUSE " CLOSE, ALLEN, MOBLEY OR ANYONE ON HIS BEHALF KILL ERIKA MELKE."

PPL V CALVIN 216 MICH APP 403 (1996)
THE PRESUMPTION AGAINST THE ACCUSED MUST BE CONSTRUED AS PERMISSIVE OR REBUTTABLE TO ENSURE THAT THE BURDEN OF PROVING ALL ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT REMAINS ON THE PROSECUTION MRE 302(b). SIMILARLY, THE PRESUMPTION IN FAVOR OF THE ACCUSED MUST BE CONSTURED AS PERMISSIVE RATHER THAN AS CONCLUSIVE PRESUMPTION OF INNOCENCE.

MARISSETTE V U.S. 342 US 246 (1952)
A PRESUMPTION WHICH WOULD PERMIT THE JURY TO MAKE AN ASSUMPTION WHICH ALL THE EVIDENCE CONSIDERED TOGETHER DOES NOT LOGICALLY ESTABLISH WOULD GIVE TO A PROVEN FACT AN ARTIFICIAL AND FICTIONAL EFFECT (T)HIS PRESUMPTION WOULD CONFLICT WITH THE OVERRIDING PRESUMPTION OF INNOCENCE WITH WHICH THE LAW ENDOWES THE ACCUSED AND WHICH EXTENDS TO EVERY ELEMENT OF THE CRIMEM

MANN V U.S. 319 F2D 404 (CA 5 1963)
IF AN INFERENCE FROM A FACT OR SET OF FACTS MUST BE OVERCOME WITH OPPOSING EVIDENCE, THEN THE INFERENCE BECOMES A PRESUMPTION AN PLACES A BURDEN ON ACCUSED TO OVERCOME THAT PRESUMPTION. SUCH BURDEN IS SPECIFICALLY HARMFUL WHEN A PERSON IS REQUIRED TO OVERCOME A PRESUMPTION AS TO ANYTHING SUBJECTIVE SUCH AS INTENT OR WILLFULNESS AND BARRIER ALMOST IMPOSSIBLE TO HURDLE RESULTS.

MICHIGAN COURTS HAVE RECENTLY STATED THAT SPECIFIC INTENT CANNOT BE PRESUMED AS A MATTER OF LAW FROM SPECIFIC ACTS OF THE DEFENDANT. PPL V WILLIAMS, 45 MICH APP 636 (1973)

PPL V PEPPER, 389 MICH 317 (1973) (CLEANED UP) "DANGERS OF FAILING TO PROPERLY DISTINGUISH BETWEEN MANDATORY PRESUMPTIONS AND PERMISSIBLE INFERENCES WHICH MAYBE DRAWN BY THE JURY.
IN PPL V MARRIN 31 MICH APP 301 (1971). THE METHODS OF DETERMINING MALICE A FORM OF INTENT FROM DEFENDANT'S CONDUCT.

INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT PROVIDING AFFIRMATIVE DEFENSE

THE DEFENSE OF "POLICE OVER- REACH" BY PERRONE  WAS NOT AN AFFIRMATIVE DEFENSE BECAUSE DEFENDANT DID NOT BEAR THE BURDEN OF NEGATING "INTENT".

**AFFIRMATIVE DEFENSE USED FOR SOLICITATION CASES: BUFFORD, COPE, ROSS, FAISON, KNASIAK, CRAWFORD, REHKOPF, SHAFOU

IN PEOPLE V DORRIS, 95 MICH APP 760 (1980)
  DOCTRINE OF "EJUSDEM GENERIS" (OF THE SAME KIND OR CLASS)  REQUIRES THAT THE TERM "PURPOSELY SOUGHT" BE RESTRICTED TO A DEFINITION WHICH INCORPORATES PRESUMPTION OF GUILT TO THE DEFENDANT.
IN RE MOSBY 360 186 192, 103 NW 2D 462 (1960) ADVISES THE RULE OF "EJUSDEM GENERIS" IS NOT TO BE INVOKED IN EVERY CASE WHERE GENERAL WORDS FOLLOW (OR POSSIBLY PRECEDE) SPECIFIC WORDS. FOR EXAMPLE IT APPLIES ONLY WHERE THE SPECIFIC WORDS RELATE TO SUBJECTS OF SINGLE KIND, CLASS, CHARACTER, OR NATURE, AS NOTED ABOVE IN ALL EVENTS, THE RULE IS USEFUL ONLY FOR THE PURPOSE OF AIDING THE JUDICIAL SEARCH FOR SOMETIMES ELUSIVE "SCRIVENER'S INTENT. (ONE WHO DRAFTED AN INSTRUMENT, FOR e.g. a will, drafting instruments, a copyist, a scribe drafter).

WHERE THE LANGUAGE USED CONSIDERED IN ITS ENTIRETY, DISCLOSES NO PURPOSE OF LIMITING THE GENERAL WORDS USED, THE RULE OF "EJUSDEM GENERIS" MAY NOT BE INVOKED THE DEFECT OR LIMIT THE PUPOSE OF AN ENCAMPMENT.
LEGISLATIVE PRESUMPTIONS ARE VALID SO LONG AS THERE IS A "RATIONAL CONNECTION" BETWEEN THE PROVE FACTS AND THE FACT TO BE PRESUMED.

PPL V GALLAGHER 404 MICH 429 :273 NW 2D 440 (1979)

IF THE PRESUMED FACT IS MORE LIKELY THAN NOT TO FLOW FROM THE PROVEN FACT, THE PRESUMPTION IS CONSTITUTIONALLY VALID. PEOPLE V GALLAGHER SUPRA.
IT IS TRUE THAT THE STATUE SPEAKS TO PRIMA  FACIA EVIDENCE RATHER THAN A MERE PRESUMPTION. HOWEVER IN PEOPLE V KAYNE 268 MICH 186 255 NW 758 (1934) AN ORDINANCE USING HE TERM PRIMA FACIE EVIDENCE, RATHER THAN PRESUMPTION, WAS BEFORE THE MICHIGAN SUPREME COURT. A FAIR READING OF THAT CASE WOULD MAKE IT APPEAR THAT THE COURT HAS GIVEN THESE TERMS THE SAME LEGAL MEANING FOR PURPOSES OF TESTING ON ENACTMENT'S VALIDITY.

IN PPL V JORDAN 51 MICH APP 710 (1974).
  MCL 750.84 (AGBHLTM) IS A SPECIFIC INTENT CRIME, THE COURT FOUND THAT PEOPLE HAD THE BURDEN OF PROOF ON THE INTENT ISSUE, THE JURY WAS INSTRUCTED THAT THE DEFENDANT HAD THE ORIGINAL BURDEN OF GOING FORWARD WITH AT LEAST SOME EVIDENCE TO NEGATE "SPECIFIC INTENT".
THE COURT FOUND THAT THE INSTRUCTION FURTHER STATED THAT THE PRESUMPTION THAT DEFENDANT INTENDED THE NATURAL CONSEQUENCES OF HIS ACTION WAS APPLICABLE UNLESS DEFENDANT OFFERED SOME MEASURE OF CONTRADICTORY EVIDENCE, IN WHICH CASE THE BURDEN OF GOING FORWARD SHIFTED TO THE PROSECUTION. THE COURT HELD THAT THE INSTRUCTION WAS REVERSIBLE ERROR. THE COURT SAID THAT THE PEOPLE BORE THE BURDEN OF PROVING THE INTENT ELEMENT BEYOND A REASONABLE DOUBT QNF THAT THE INSTRUCTION IMPROPERLY SHIFTED THE BURDEN TO DEFENDANT.

Burden Shifting presumption or a conclusive presumption Jury Instructions
Sandstrom V Montana 442 US 510 99 SCt 2450 61 L Ed. 2d 39 1979 US Lexis 113 (1979)
THAT PRESUMED A PERSON INTENDED THE CONSEQUENCES OF HIS VOLUNTARY ACTS CONVICTION
FOR INTENTIONAL HOMICIDE WAS REVERSED BECAUSE THE JURY MAY HAVE INTERPRETED THE
JUDGE'S INSTRUCTION AS CONSTITUTING EITHER A "BURDEN SHIFTING PRESUMPTION" OR
"CONCLUSIVE PRESUMPTION". EITHER INTERPRETATION WOULD HAVE DEPRIVED PETITIONER
(DEFENDANT) OF HIS RIGHT TO DUE PROCESS.
THE COURT HELD THAT THE JURY WAS NOT TOLD THAT THE PRESUMPTION COULD BE REBUTTED BY
PETITIONER'S SIMPLE PRESENTATION OF SOME EVIDENCE OR THAT IT COULD BE REBUTTED AT ALL. A
REASONABLE JURY COULD WELL HAVE INTERPRETED THE PRESUMPTION AS CONCLUSIVE, NOT
TECHNICALLY AS A PRESUMPTION AT ALL, BUT RATHER AS AN IRREBUTTABLE DIRECTION BY THE TRIAL
COURT TO FIND INTENT ONCE CONVINCED OF THE FACTS TRIGGERING THE PRESUMPTION.
THE CHALLENGED JURY INSTRUCTION HAD THE EFFECT OF RELIEVING THE STATE OF THE BURDEN OF
PROOF ON THE CRITICAL QUESTION OF PETITIONER'S STATE OF MIND. UNDER THE TWO POSSIBLE
INTERPRETATIONS OF THE CHALLENGED INSTRUCTION, PRECISELY THAT EFFECT RESULTED, AND THE
INSTRUCTION, THEREFORE REPRESENTEO CONSTITUTIONAL ERROR.
AN INSTRUCTION IMPERMISSIBLY CREATES A CONCLUSIVE PRESUMPTION OF GUILT WHEN IT TAKES AN
ISSUE AWAY FROM THE JURY. SANDSTROM V MONTANA 442 US 510 (1979).
AN INSTRUCTION THAT THE JURY MAY PERCEIVE AS SHIFTING THE BURDEN OF PROOF, HOWEVER MAY
VIOLATE A DEFENDANT'S DUE PROCESS RIGHTS, FURTHER THE EFFECT OF SUCH AN INSTRUCTION IS
NOT ALWAYS REMOVED "BY OTHER CORRECT" INSTRUCTIONS GIVEN AT TRIAL DEALING WITH THE
PRESUMPTION OF INNOCENCE AFFORDED THE ACCUSED AND THE STATE'S BURDEN OF PROVING EACH
AND EVERY ELEMENT BEYOND A REASONABLE DOUBT. PEOPLE V WRIGHT 408 MICH 1, 22;289 NW 2d 1
(1980). Michigan Supreme Court.

Wright and Sandstrom held that due process is violated when the jury is instructed that the law presumes that a
person intends the ordinary consequences of his voluntary acts where a reasonable juror would interpret the
presumption as conclusive or as shifting the burden of persuasion to the defendant on the issue on intent. People v
Sexton, 458 Mich 43 (1998) Michigan Supreme Court.
The trial judge through his instructions informed the jury that there is a presumption of an intent to kill from
1)the action for which the ordinary and natural consequences were the death of another.
2) from the use of a deadly weapon that would ordinarily lead to death
3) The instructions direct the jury to imply malice from a deliberate or cruel act.
According to :
People v Richardson 409 Mich 126 (1980)
People v Woods 416 Mich 581 (1982)
these instructions were erroneous based on Sandstrom V Montana 442 US 510 (1979)
Instructions on mandatory presumptions may shift the burden of production or persuasion and shifting the Burden of
Proof or persuasion on an element of the crime charged violates due process.
COMMON DEFINITION OF "PRESUME" AS "TO SUPPOSE TO BE TRUE WITHOUT PROOF" SANDSTROM,
WEBSTER'S NEW COLLEGE DICTIONARY (1974).
THE PRESUMPTION OF KNOWLEDGE DOES NOT ELIMINATE THE PRESUMPTION OF INNOCENCE OR SHIFT
THE BURDEN OF PROOF. FOURTEENTH AMENDMENT REQUIRES THAT THE PROSECUTION PROVE EVERY
ELEMENT OF A CRIMINAL OFFENSE BEYOND A REASONABLE DOUBT. SANDSTROM
PEOPLE V FIELDS , 450 MICH 94 (1995)

2) PRESUMPTIVE JURY INSTRUCTIONS,
DURESS AND AFFIRMATIVE DEFENSE INSTRUCTIONS

MCLS 750.156B(2)
 SOLICITATION TO MURDER IS NOT A ASSAULTIVE CRIME PER MCLS 770.9a
IT IS NOT AN OVERT-ACT

THE MONEY DEPOSITED TO  CLOSE'S ACCOUNT BY URAZ'S FRIEND ATAMER.
DEFENDANT WAS "EXTORED" BY CLOSE BECAUSE HE THREATENED DEF. IF HE DIDN'T PUT ANY MONEY
IN HIS JAIL ACCOUNT HE WOULD HARM ERIKA MELKE.
DEFENDANT WAS SCARED OF ERIKA MELKE'S SAFETY AND HIS SAFETY.
MONEY WAS DEPOSITED TO APPEASE HIM AND PROTECT MELKE.

 "CLOSE WAS ALLOWED TO KEEP THE MONEY."

Duress jury instructions was not given to jury by PERRONE although he had on his "jury instructions list" which was
given on the FIRST DAY OF TRIAL.

Under  the law there was duress if five things were true

1)the threatening behavior would have made a reasonable person to fear death or serious bodily harm
2) the defendant actually was afraid of death or serious bodily harm
3) the defendant had this fear at the time he acted
4) the defendant committed the act to avoid the threatened harm
5) the situation did not arise because of the defendant's fault or negligence.


PPL.V LEFFEW 2022 MICH LEXIS 166 JAN 2022
THE COURT OF APPEALS ERRED BY ASSUMING THAT DEFENSE OF OTHERS WAS UNAVAILABLE TO
DEFENDANT FACING PROSECUTION FOR NON-ASSULTIVE CRIMES AS THE APPLICABILITY OF THE
DEFENSE MUST BE DETERMINED ON THE PARTICULAR FACTS OF EACH CASE NOT THE CHARGES THE
PROSECUTION BRINGS.
MICHIGAN AND SISTER JURISDICTIONS RECOGNIZE BOTH SELF DEFENSE AND DEFENSE OF OTHER AS
JURISDICTIONS FOR NON-ASSULTIVE CRIMES DUPREE 486 MICH AT 705-706. THAT THE COMMON LAW
AFFIRMATIVE DEFENCE OF DEFENSE OF OTHERS MAY APPLY TO NON ASSAULTIVE CRIMES IS ONLY
STEP ONE.
WHETHER THE "DEFENSE -OF -OTHERS" INSTRUCTIONS IS AVAILABLE TO DEFENDANTS ACCUSED OF
NON ASSAULTIVE CRIMES IS THEREFORE THE FIRST QUESTION.
UNDER THE "DEFENSE- OF- OTHERS" DOCTRINE, "(O)NE MAY USE FORCE IN DEFENSE OF ANOTHER
WHEN HE OR SHEE REASONABLY BELIEVES THE OTHER IS IN IMMEDIATE DANGER OF HARM AND FORCE
IS NECESSARY TO PREVENT THE HARM: DEADLY FORCE IS PERMISSIBLE TO REPELL AN ATTACK WHICH
REASONABLY APPEARS DEADLY (3 A GILLESPIE MI CRIMINAL LAW & PROCEDURE (2d Ed) 91:59 pg. 399 see
also Lafave, substantive criminal law 10.5 pg 222 (3rd. Ed). AS WITH SELF DEFENSE, DEFENSE OF OTHERS IS
GENERALLY NOT AVAILABLE TO A PERSON WHO IS THE INITIAL AGGRESSOR. SEE PPL V RIDDLE 467
MICH 116, 120 n 8:649 NW 2d 30 (2002)
THE APPLICABILITY OF DEFENSE OF OTHERS MUST BE DETERMINED ON THE PARTICULAR FACTS OF
EACH CASE, NOT THE CHARGES THE PROSECUTION BRINGS.
UNDER THE STATE FEDERAL CONSTITUTIONS, A CRIMINAL DEFENDANT HAS A RIGHT TO PRESENT A
DEFENSE MICH CONST ART 1&13 US CONST AMS VI AND XIV, INSTRUCTIONAL ERRORS THAT DIRECTLY

AFFECT A DEFENDANT'S THEORY OF DEFENSE CAN INFRINGE A DEFENDANT'S RIGHT TO PRESENT A DEFENSE. THAT SAID "AFFIRMATIVE-DEFENSE" INSTRUCTION IS NOT AUTOMATIC UPON REQUEST. IN ORDER TO PROPERLY RAISE THE DEFENSE, THE DEFENDANT HAS THE BURDEN OF PRODUCING SOME EVIDENCE FROM WHICH THE JURY CAN CONCLUDE THAT THE ESSENTIAL ELEMENTS OF THE DEFENSE ARE PRESENT. PPL V HAYES, 421 MICH 271 (1984).

MR. URAZ BELIEVE THAT THE COURT SHOULD HAVE INSTRUCTED THE JURY ON THE DEFENSE OF OTHERS AND THEIR ATTORNEY'S FAILURE TO REQUEST THE INSTRUCTION DEPRIVED THEM THEIR SIXTH AND RIGHT TO EFFECTIVE ASSISTANCE OF COURSE US CONST AM VI CONST 1963 ART 1& 20

MCLS 780.971
SHORT TITLE
THIS ACT SHALL BE KNOWN AND MAY BE CITED AS THE "SELF DEFENSE" ACT, DEFENSE COUNSEL DID RENDER INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO REQUEST A JURY INSTRUCTION REFLECTING THAT "SELF DEFENSE" (DEFENDANT WAS SCARED OF HER AND HIS LIFE, TO PROTECT HER/HIS LIFE, MONEY WAS DEPOSITED)

BURDEN SHIFTING CLOSING ARGUMENTS BY PROSECUTOR ROTH

PPL V SMITH 158 MICH APP 220(1987)

INFLAMMATORY STATEMENTS
THE PROSECUTOR SHOULD AVOID IMPLYING IN CLOSING ARGUMENTS TO THE EFFECT THAT DEFENDANT'S ONLY DEFENSE WAS THAT ANOTHER PERSON ACTUALLY DID IT , AND DEFENDANT FAILED TO PROVE THIS. DEFENSE ALTHOUGH THE PRESENTED EVIDENCE ON IT.

BURDEN SHIFTING ARGUMENTS SUCH AS THIS, AS WELL AS THE MERE SUBTLE ARGUMENT THAT DEFENDANT'S COUNSEL HAD FAILED TO LET THE JURY KNOW WHAT DEFENDANT'S EVIDENCE WOULD SHOW, ARE IMPROPER. THE PROSECUTOR SHOULD AVOID OPINION COMMENTS NOT BASED ON THE RECORD.

CURATIVE INSTRUCTIONS FOR CLOSING ARGUMENTS

IN CALDWELL V STATE 2022 GA LEXIS 141 05/03/22 GA SUPREME COURT
THE TRIAL COURT ERRED BY FAILING TO GIVE A CURATIVE INSTRUCTION TO THE JURY IN RESPONSE TO COMMENTS MADE BY THE DISTRICT ATTORNEY DURING CLOSING ARGUMENT BECAUSE HE REFERRED TO A NUMBER OF MATTERS NOT IN EVIDENCE CONCERNING HIS RULE AND AUTHORITY IN CHOOSING WHOM TO INDICTE THE EVIDENCE THAT THE WITNESS WAS AN ACCOMPLICE WAS STRONG AND THE DISTRICT ATTORNEY'S SUGGESTED THAT BECAUSE OF HIS AUTHORITY THE DECISION ABOUT WHETHER THE WITNESS WAS AN "ACCOMPLICE HAD ALREADY BEEN MADE SO THE JURY DID NOT HAVE TO MAKE THAT DETERMINATION."

1.8 READING OF INFORMATION
1) CHARGES THE DEFENDANT
2) THE DEFENDANT HAS PLED NOT GUILTY TO THIS CHARGE
THE JUDGE SHOULD SAY "INDICTMENT" OR "COMPLAINT" WHERE APPROPRIATE.

IN  TOT v U.S. 319 US 643 (1943)

THE GOVERNMENT ARGUES THAT PRESUMPTION CREATED BY THE STATUE MEETS THE TEST OF DUE PROCESS HERETOFORE LAID SOWN BY THIS COURT. THE DEFENDANT'S ASSERTION THAT IT FAILS TO MEET THEM BECAUSE THERE IS NO RATIONAL CONNECTION BETWEEN "THE FACTS  PROVED AND THE ULTIMATE FACT PRESUMED", THAT THE STATUE IS MORE THAN A REGULATION OF THE ORDER OF PROOF BASED UPON THE RELATIVE ACCESSIBILITY OF EVIDENCE TO PROSECUTION AND DEFENSE, AND COSTS AN UNFAIR AND PRACTICALLY IMPOSSIBLE BURDEN OF PERSUASION UPON DEFENDANT. THE INDICTMENT CHARGES THE DEFENDANT WITH ACTION OR FAILURE TO ACT CONTRARY TO THE LAW'S COMMAND. IT DOES NOT CONSTITUTE PROOF OF THE OFFENSE. PROOF OF SOME SORT ON THE PART

OF THE PROSECUTION IS REQUISITE TO FINDING OF GUILT, IT MAY CONSISTS OF TESTIMONY OF THOSE THOSE WHO WITNESSED THE DEFENDANT'S CONDUCT.

MICHIGAN CRIMINAL JURY INSTRUCTIONS : ACCOMPLICE

**PPL V LOCKETT 295 MICH APP 165 (2012)
THE TRIAL COURT DECISION WHETHER TO GIVE A CAUTIONARY ACCOMPLICE INSTRUCTION IS REVIEWED FOR AN ABUSE OF DISCRETION. AN ABUSE OF DISCRETION OCCURS WHEN THE COURT CHOOSES AN OUTCOME THAT FALLS OUTSIDE THE RANGE OF REASONABLE AND PRINCIPLED OUTCOMES.
JURY INSTRUCTION ARE TO BE READ AS A WHOLE AND EVEN IF SOMEWHAT IMPERFECT, NO ERROR EXISTS IF THE INSTRUCTIONS FAILS PRESENTED THE ISSUES TO BE TRIED AND SUFFICIENTLY PROTECTED THE DEFENDANT'S RIGHTS FOR REVERSAL TO BE WARRANTED BASED ON ABSENCE OF A CAUTIONARY ACCOMPLICE INSTRUCTION, A DEFENDANT HAS THE BURDEN TO SHOW THAT IT WAS MORE PROBABLE THAN NOT THAT THE ERROR AFFECTED THE OUTCOME OF THE PROCEEDINGS.

THE PRIMARY PURPOSE OF BOTH AN IMMUNITY AND ACCOMPLICE JURY INSTRUCTION IS TO RAISE THE JURY'S AWARENESS OF THE POTENTIAL ULTERIOR MOTIVES OF THE WITNESS. BOTH THE ACCOMPLICE AND IMMUNITY INSTRUCTIONS CAUTION THE JURY THAT THE WITNESSES MAY HAVE SAME REASON NOT TO TESTIFY TRUTHFULLY. THE RESULT OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT HAD HIS TRIAL COUNSEL CHOSEN THE ACCOMPLICE INSTRUCTION OVER IMMUNITY INSTRUCTION.

SAMPLE ACCOMPLICE IMMUNITY INSTRUCTION SHOULD HAVE BEEN GIVEN:
MI CRIM JI 5.13 YOU HAVE HEARD TESTIMONY THAT WITNESSES (ALLEN AND CLOSE) MADE AN AGREEMENT WITH THE PROSECUTOR ABOUT CHARGE AGAINST HIM IN EXCHANGE FOR HIS TESTIMONY IN THIS TRIAL. YOU HAVE ALSO HEARD EVIDENCE THAT (CLOSE'S AND ALLEN'S CHARGES, DEALS). YOU ARE TO CONSIDER THIS EVIDENCE ONLY AS IT RELATES TO (CLOSE AND ALLEN) CREDIBILITY AS--AS IT MAY TEND TO SHOW (ALLEN'S AND CLOSE'S) SELF INTEREST OR AIM.
"BECAUSE THE TRIAL COURT DID NOT GIVE EITHER 5.13 OR 5.6 THIS QUALIFIES AS PLAIN ERROR."

MI CRIM JI 5:13 AGREEMENT FOR TESTIMONY/PENALTY
THIS INSTRUCTION SHOULD BE USED ONLY WHERE EVIDENCE HAS BEEN ELICITED CONCERNING THE SENTENCING ADVANTAGES OF A PLEA OR DISMISSAL AGREEMENT OFFERED IN EXCHANGE FOR WITNESS'S TESTIMONY IF THAT EVIDENCE RELATES TO THE SAME OFFENSE WITH WHICH THE DEFENDANT IS CHARGED. THE COURT SHOULD RE-INSTRUCT IN ACCORD WITH JI 2.23 THAT THE PENALTY FOR ANY THE DEFENDANT IS NOT TO BE CONSIDERED IN DECIDING THE CASE. 2.23 POSSIBLE PENALTY SHOULD NOT INFLUENCE YOUR DECISION. IT IS THE DUTY OF THE JUDGE TO FIX THE PENALTY WITH IN THE LIMITS PROVIDED BY LAW..

Jury Instruction ACCOMPLICE
HAWKINS 2022 MICH APP LEXIS 855 (2022) 5.13 and 5.6 both ins. would be confusing to jury.
ACCOMPLICE INSTRUCTION
MR. URAZ ARGUES THAT THE TRIAL COURT ERRED BY FAILING TO GIVE M CRIM JI 5.4 AND 5.6 WHEN INSTRUCTING THE JURY. THESE INSTRUCTIONS WOULD HAVE ADVISED THE JURY THAT JAILHOUSE INFORMANTS CLOSE AND ALLEN WERE ACCOMPLICES AND AS SUCH, THE JURY SHOULD CONSIDER THEIR TESTIMONY WITH CAUTION. BECAUSE MR. URAZ DID NOT REQUEST THESE INSTRUCTIONS AT TRIAL, THIS CLAIM OF INSTRUCTIONAL ERROR IS UNPRESERVED AND REVIEW IS LIMITED TO PLAIN ERROR AFFECTING SUBSTANTIAL RIGHTS, CRAINES 460 MICH AT 763-764. MR. URAZ FURTHER ARGUES, HOWEVER THAT DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST THE ACCOMPLICE INSTRUCTION. OUR REVIEW IS LIMITED TO ERRORS APPARENT FROM THE RECORD. PPL V MATSUZAK 263 MICH APP 42 (2004)
M CRIM JI 5.4 WITNESS AS UNDISPUTED ACCOMPLICE

M CRIM JI 5.6 CAUTIONING INSTRUCTION REGARDING ACCOMPLICE TESTIMONY

INFORMANTS BOTH ADMITTED THAT TO BEING OFFERED IMMUNITY IN EXCHANGE FOR THEIR TESTIMONY.
M CRIM JI 5.13
WHICH ADVISES JURY THAT IT MAY CONSIDER A WITNESS'S IMMUNITY AGREEMENT WITH THE PROSECUTION AS IT RELATES TO WITNESS'S CREDIBILITY, AND WHETHER SUCH AGREEMENT TENDS TO SHOW THE WITNESS'S BIAS OR SELF INTEREST ON TESTIFYING. IN LOCKETT 295 MICH APP 165, 185 -186, 814 NW2nd. 95 (2012).THIS COURT HELD THAT WHERE AN ACCOMPLICE WITNESS WAS SUBJECT TO IMMUNITY AGREEMENT, THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO GIVE BOTH 5.13 AND 5.6 BECAUSE TO DO SO WOULD BE CONFUSING TO JURY.

Ppl v SMITH 158 MICH APP 220 229-230 405 NW2d 156 (1987)
DEFENDANT ARGUES THAT THE TRIAL COURT SUA SPONTE SHOULD HAVE GIVEN THE JURY THE CAUTIONARY ACCOMPLICE INSTRUCTION CONTAINED IN CJI 5.6 WHICH INSTRUCTS A JURY TO EXAMINE AN ACCOMPLICE'S TESTIMONY CLOSELY AND WITH GREATER CAUTION AND CARE THAN THE TESTIMONY OF ORDINARY WITNESSES. NO REQUEST WAS MADE FOR THE INSTRUCTION HOWEVER MICHIGAN SUPREME COURT HAS NOTED THAT HN1 IF THE ISSUE IS CLOSELY DRAWN, IT MAY BE ERROR REQUIRING REVERSAL TO FAIL TO GIVE CAUTIONARY ACCOMPLICE INSTRUCTION EVEN THE ABSENCE OF A REQUEST. PPL V McCOY 392 Mich 231, 240: 220 NW 2d 456 (1974). WE MUST DETERMINE WHETHER THE ISSUE OF DEFENDANT'S PARTICIPATION WAS "CLOSELY DRAWN" : A CASE IS CLOSELY DRAWN AND INSTRUCTIONS SHOULD BE GIVEN WHERE THERE ARE NO INDEPENDENT WITNESS AND THE QUESTION COMES DOWN TO WHEN TO BELIEVE THE DEFENDANT OR ACCOMPLICE, PPL V JACKSON 97 MICH APP 660, 606, 296 NW 2d 135 (1980) AND WHERE THE TRIAL BECOMES A CREDIBILITY BATTLE BETWEEN THE ACCOMPLICE AND DEFENDANT. PPL V SMITH 158 MICH APP 220 (1987). PPL V FREDERICKS, 125 MICH APP 114, 121-122; 335 NW 2d 919 (1983)
IT IS ERROR TO FAIL TO GIVE A CAUTIONARY INSTRUCTION REGARDING ACCOPLICE TESTIMONY EVEN IN THE ABSENCE OF REQUEST FOR SUCH AN INSTRUCTION WHERE THE ISSUE IS CLOSELY DRAWN FOR EXAMPLE, WHERE THE ISSUE OF DEFENDANT'S GUILT COMES DOWN TO WHOM TO BELIEVE, THE ACCOMPLICE OR DEFENDANT.
THE TRIAL COURT ERRED WHEN IT FAILED TO SUA SPONTE INSTRUCT THE JURY THAT AN ACCOMPLICE'S TESTIMONY MUST BE EXAMINED WITH GREATER CAUTION.
THE CAUTIONARY ACCOMPLICE INSTRUCTION CJI 2d 5.6 INSTRUCTS THE JURY TO EXAMINE AN ACCOMPLICE'S TESTIMONY CLOSELY WITH GREATER CARE AND CAUTION THAN THE TESTIMONY OF ORDINARY WITNESSES. PPL V RUSSELL, 190 MICH APP 772-723 476 NW 2D 504 (1991) REV'D ON OTHER GROUNDS 439 MICH 921:479 NW 2D 351 (1992). REVERSAL IS ALSO REQUIRED BECAUSE THE TRIAL COURT FAILED TO SUA SPONTE GIVE THE JURY A SPECIFIC INSTRUCTION ON ACCOMPLICE TESTIMONY WITH REGARD TO JAILHOUSE INFORMANTS TESTIMONY AS THE ISSUE OF DEFENDANT'S GUILT WAS "CLOSELY DRAWN

Document: M Crim JI 5.6



---

# M Crim JI 5.6

> **Copy Citation**

**Michigan Model Criminal Jury Instructions**     **Chapter 5 Witnesses**

## M Crim JI 5.6 Cautionary Instruction Regarding Accomplice Testimony

(1)  You should examine an accomplice's testimony closely and be very careful about accepting it.

(2)  You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

(3)  When you decide whether you believe an accomplice, consider the following:

(a)  Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

(b)  Has the accomplice been offered a reward or been promised anything that might lead [him / her] to give false testimony? [*State what the evidence has shown. Enumerate or define reward.*]

(c)  Has the accomplice been promised that [he / she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his / her] testimony?

[(d)  Does the accomplice have a criminal record?]

(4)  In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.

*Use Note*

Use bracketed material as applicable. Where appropriate, list any other grounds or circumstances that have arisen in a particular case. This cautionary instruction may be used even when the defendant, rather than the prosecutor, calls an accomplice. Of course, the instruction should be modified appropriately if the defendant calls the witness. For an example of such a modification, see People v Heikkinen, 250 Mich App 322, 646 NW2d 190 (2002).

*History*

M Crim JI 5.6 (formerly CJI2d 5.6) was CJI 5:2:03; amended January, 1991.

*Reference Guide*

Case Law

> People v Young, 472 Mich 130, 693 NW2d 801 (2005); People v Dumas, 161 Mich 45, 125 NW 766 (1910); People v Walker, 3 Mich App 230, 145 NW2d 25 (1966).

Michigan Model Criminal Jury Instructions

**Content Type:** Jury Instructions

**Terms:** 5.4

**Narrow By:** custom: custom Sources: Michigan Model Criminal Jury Instructions Content Type: Pattern Jury Instructions

**Date and Time:** Jul 07, 2021   12:09:27 p.m. CDT

 Print

Cookie Policy

Terms & Conditions

Document: M Crim JI 5.5

---

# M Crim JI 5.5

| Copy Citation |
| --- |

**Michigan Model Criminal Jury Instructions**     **Chapter 5 Witnesses**

## M Crim JI 5.5 Witness a Disputed Accomplice

(1)  Before you may consider what [*name witness*] said in court, you must decide whether [he / she] took part in the crime the defendant is charged with committing. [*Name witness*] has not admitted taking part in the crime, but there is evidence that could lead you to think that [he / she] did.

(2)  A person who knowingly and willingly helps or cooperates with someone else in committing a crime is called an accomplice.

(3)  When you think about [*name witness*]'s testimony, first decide if [he / she] was an accomplice. If, after thinking about all the evidence, you decide that [he / she] did not take part in this crime, judge [his / her] testimony as you judge that of any other witness. But, if you decide that [*name witness*] was an accomplice, then you must consider [his / her] testimony in the following way:

*Use Note*

This instruction is to be followed by the instruction on weighing testimony of an accomplice, M Crim JI 5.6. If there is a dispute as to the status of the witness as an accomplice, this fact should be submitted to the jury as a separate question for its determination.

*History*

M Crim JI 5.5 (formerly CJI2d 5.5) was CJI 5:2:02; amended January, 1991.

*Reference Guide*

Case Law

People v Young, 472 Mich 130, 693 NW2d 801 (2005); People v Dumas, 161 Mich 45, 125 NW 766 (1910); People v Walker, 3 Mich App 230, 145 NW2d 25 (1966).

Chapter 5 132

*1)11/09/2017 6TH DAY OF TRIAL.
FINAL DAY

***FACT PERRONE NEVER SHARED OR INFORMED DEFENDANT ABOUT JURY INSTRUCTIONS WHICH
ONES HE WAS SUPPOSE TO USE FOR JURY.

***FACT PERRONE WAS NOT READY FOR ANY JURY INSTRUCTIONS LAST DAY OF TRIAL.

PG 3 JURY INSTRUCTIONS
JUDGE : DEFENSE REQUESTED ADDITIONAL ITEMS THE DEFENSE WAS REQUESTING. (INSTRUCTIONS
FOR JURY WAS FILED FIRST DAY OF TRIAL).
PERRONE YES HONOR. THE PROPOSED JURY INSTRUCTIONS WERE "NOT FILED" I DIDN'T SEND
THEM. I SENT THEM TO PROS. ROTH ON THE FIRST DAY OF TRIAL. I BELIEVE. HE HAD AN E-MAIL, HE
HAS A COPY TODAY. WE WILL DISCUSS WHICH ONES ARE AVAILABLE.

9 days after trial started:

(10/31/2017 FIRST DAY OF TRIAL
PG 37
***PERRONE JUST IN REGARDS TO THE NORMAL ISSUES, DEPENDING UPON THE EVIDENCE
PRESENTED, THE DEFENSE MAY SEEK THE "DURESS INSTRUCTION" (NEVER HAPPENED) FOR JURY
INSTRUCTION PURPOSES. I FORWARDED A COPY OF THIS ONE TO MR. ROTH.
***ROTH WHEN WAS IT FORWARDED TO ME?
***PERRONE I JUST SENT TO HIM
ROTH WHEN? I DONT KNOW WHAT THAT MEANS, TIME-WISE.
***PERRONE ABOUT 15 MINUTES AGO***(IN THE MIDDLE OF THE HEARING)***
PG 38
ROTH·OKAY
JUDGE WE ARE PREMATURE ON THAT. SO CERTAINLY WE WILL HAVE AN OPPORTUNITY, AMPLE
OPPORTUNITY TO DISCUSS FINAL INSTRUCTIONS WHEN WE GET TO THAT POINT IN THE CASE. WE
WILL RESERVE THAT. (NEVER HAPPENED)

***PG 4 11/09/2017
PERRONE COMPARES SOLICITATION TO FIRST DEGREE MURDER DELIBERATE, PREMEDITATE,
SOMETHING ASSOCIATED WITH "INTENT", NOT JUST ASSOCIATED WITH INTENT TO KILL. IT SEEMS
INTENT TO KILL IS TOO GENERAL FOR A SPECIFIC INTENT CRIME.

JUDGE LET ME GO BACK AND UNDERSTAND WHAT YOU ARE SUGGESTING THE CHARGE IS
SOLICITATION TO MURDER.?
PERRONE CORRECT
JUDGE AND SO THERE IS AN INSTRUCTION ON THAT. I BELIEVE YOUR ISSUE IS SPECIFIC INTENT. BUT
HOW IS THAT TIED TO THE ELEMENTS OF MURDER?

PG 5
PERRONE
PERRONE : THE JURY INSTRUCTION FOR SOLICITATION HAS A SPACE TO INCORPORATE THE
ELEMENTS OF THE UNDERLYING OFFENSE THAT WAS SOLICITED. "IF WE PUT IN THE ELEMENTS OF
MURDER THERE IS, IN THE JURY INSTRUCTION FOR HOMICIDE, FOR FIRST-DEGREE MURDER,
LANGUAGE ASSOCIATED WITH DELIBERATE ---WHAT DELIBERATE MEANS. THAT THE DEFENDANT
CONSIDERED HE PROS AND CONS OF THE KILLING. THOUGH ABOUT THE PROS AND CONS, CHOOSE
TO HAVE THE MURDER COMMITTED. I THINK WE HAVE TO HAVE THAT AT THE LEVEL OF PPL V FYDA
INDICATED THE SPECIFIC INTENT INSTRUCTION HAS TO BE CAREFULLY DRAFTED. IN THAT CASE
THEY FOUND THAT INSTRUCTION WAS NOT APPROPRIATE BECAUSE IT DIDN'T ARTICULATE "SPECIFIC
INTENT". I THINK THAT'S SOMETHING WE WANT TO BE CAUTIOUS OF HERE.
I THINK THE ELEMENTS ASSOCIATED WITH FIRST DEGREE MURDER, SPECIFIC INTENT ASSOCIATED
WITH DELIBERATE ACTIONS, RANDOM NUMBERS ARE GOING TO BE NECESSARY TO INSTRUCT THE
JURY.
pg 6
ROTH : FYDA CASE DOES NOT SAY WHAT PERRONE SAYS
IN THAT CASE THEY GAVE ELEMENTS, SECOND DEGREE MURDER WITH THE CRIME. THE PROBLEM
WITH THAT SECOND DEGREE MURDER CONTAINS A POSSIBLE MENS REA OF ASSULT (GREAT BODILY

HARM), NOT CONSISTENT WITH OUR CRIMEM THERE WAS A SPECIFIC ERROR FOUND IN THAT CASE. CRAWFORD 232 MICH APP 608 (1998). EXPRESSLY LAYS OUT THE ELEMENTS OF THIS CRIME. "SOLICITATION TO COMMIT MURDER OCCURS WHEN ELEMENT ONE, THE SOLICITOR IS PURPOSELY SEEKING TO HAVE SOMEONE KILLED."
ELEMENT TWO, TRIES TO ENGAGE IN SOMEONE TO DO KILLING."

THAT'S THE LANGUAGE WE INCLUDED IN OUR REQUEST BECAUSE THAT'S THE LANGUAGE COA FOUND IT APPROPRIATE.
2009 CASE PPL V LARRY COA#283364
SAME LANGUAGE
ELEMENT ONE THE SOLICITOR PURPOSELY SEEKS TO HAVE SOMEONE KILLED. AND TWO, TRIES TO ENGAGE SOMEONE TO THE KILLING. THAT'S THE LANGUAGE COA HAS APPROVED.
PG 7
PERRONE COA APPROVAL IS NOT APPROPRIAT. WE HAVE SPECIFIC INTENT, "SPECIFIC INTENT HAS BEEN MOVED FROM THE JURY INSTRUCTION. WE HAVE TO INFUSE SOME ELEMENT OF SPECIFIC INTENT OR INTENT, NOT JUST PURPOSEFULLY INTENDED
***THIS IS SOLICITATION TO COMMIT -FIRST DEGREE MURDER. THERE HAS TO BE SOME STANDARD ASIDE FROM INTENT, THE JURY HAS TO BE INSTRUCTED. WE ARE TALKING ABOUT INTENT HERE. A VERY SPECIFIC ISSUE THAT THE JURY HAS TO BECOME AWARE OF.
THE JURY IS NOT GOING TO BE ABLE TO UNDERSTAND THE NATURE OF "SPECIFIC INTENT BY PURPOSEFULLY INTENT". WE HAVE CASE LAW, CASES CITED. COA OKEYED IT. IT DOESN'T MEAN IT WASN'T REVERSIBLE ERROR IN THOSE CASES.

ROTH THAT'S A MISSTATEMENT OF OF THE LAW. ITS NOT SAYING IT WAS NOT REVERSIBLE ERROR. FYDA SAID NOT REVERSIBLE ERROR. THE OTHER TWO SAID THAT IS CORRECT (CRAWFORD AND LARRY). SO LET'S NOT MISREPRESENT THE LAW.
****PG 8 LINES 1-25
***JUDGE SPECIFIC INTENT YOU ARE ASKING THAT THEY HAVE TO PROVE SPECIFIC INTENT THAT HE REALLY PLANNED ON KILLING HER. IS THAT WHAT YOU ARE SAYING?
**PERRONE YES
JUDGE WELL RIGHT BUT SOLICITATION DOES NOT INVOLVE THAT. SOLICITATION IS SAYING THAT I ATTEMPTED TO GET SOMEBODY TO GO KILL HER. AND I THINK THE WORDS, WHAT'S PURPOSEFUL AND WHAT WAS THE WORDING MR. ROTH?
**ROTH " PURPOSEFULLY SEEKING TO HAVE SOMEONE KILLED. THAT'S THE INTENT"
***JUDGE I'M GOING TO GO WITH THAT.
***PERRONE THANK YOU YOUR HONOR.
JUDGE IS THAT THE INSTRUCTIONS WE HAVE NOW?
ROTH THAT'S THE INSTRUCTIONS AS MS. SMITH WROTE THEM OUT.
JUDGE I DONT KNOW IF THERE IS AN ADDED STEP THAT HAS TO BE PROVED, THAT CONVICTION AND-
-ON SOLICITATION OF INTENT TO MURDER, THAT YOU HAVE TO MEET THE ELEMENTS OF PREMEDITATED MURDER. IN OTHER WORDS, I THINK THE STATEMENT LISTED IN THE CASES CITED BY MR. ROTH COVER THE FACTS IN THIS CASE. IT IS NOT A TWO-TIER LEVEL,
***PG 9
A)YOU SPECIFICALLY HAVE TO SHOW THAT HE SOLICITED SOMEONE
B)HE SOLICITED INTENTIONALLY ONE OF THE KILLERS.
IT'S REALLY JUST ONE STAGE TEST. I THINK ITS COVERED BY THOSE INSTRUCTIONS THAT HAVE BEEN APPROVED BY THE COURT OF APPEALS. ANYTHING ELSE?

***ROTH SO AS TO JURY INSTRUCTIONS THAT MR. PERRONE HAS ASKED FOR I THINK THERE'S ROUGHLY A THIRD OF THEM THAT I DON'T FIND APPLICABLE TO THIS CASE, THAT WE NEED TO ADDRESS AT SOME POINT. IT DOESN'T NEED TO BE NOW. IF DEFENSE COUNSEL WOULD PLEASE SOMEHOW SUBSTANTIATE THROUGH THE DEFENSE TESTIMONY.****


2)11/09/2017 6TH DAY OF TRIAL.
FINAL DAY
***FACT JURY INSTRUCTIONS THAT PERRONE FILED DID NOT INCLUDE "NOT TESTIFYING DEFENDANT"

***FACT PERRONE COULD HAVE IMPEACHED PROSECUTION WITNESSES :CLOSE, ALLEN AND BURNETT BASED ON THEIR PRIOR CONVICTIONS (THEFTS, DRUG CHARGES, LARCENY)

PG 9 CONTINUED LINE 15
JUDGE WHAT ARE THE INSTRUCTIONS THAT WE HAVE THAT ARE AGREED UPON CURRENTLY? IS
THAT THE STANDARD SET OF THE INSTRUCTIONS?
ROTH YES YOUR HONOR
PERRONE  YES
***JUDGE THESE ARE ADDITIONAL INSTRUCTIONS YOU ARE ASKING MR. PERRONE, ABOVE AND
BEYOND?
PERRONE  YES
***PG 10
ROTH SINCE HE HAS FILED THE DOCUMENT, I THINK IT WILL BE FASTER IF I ADDRESSED WHICH ONES
I DON'T FIND APPLICABLE.
***STARTING ON WHAT'S LABELED PAGE 3 OF FIVE TOWARD THE BOTTOM :
***WITNESS IMPEACHMENT BY PRIOR CONVICTION. TO THIS POINT NO WITNESS HAS BEEN
IMPEACHED TOWARDS PRIOR CONVICTION. ****
***JUDGE ARE WE GOING TO HAVE THAT MR. PERRONE NO ONE HAS BEEN IMPEACHED?
***PERRONE AGAIN I DONT ANTICIPATE THAT'S GOING TO COME. IT WOULD COME FROM THE
PROSECUTION'S SIDE AS TO THE WITNESSES THAT I AM GOING TO PROFFER TO THEM
**** (PIERCE AND MUHAMMAD) DEFENSE WITNESSES SOMEHOW PERRONE WOULD NOT IMPEACH
PROSECUTION WITNESSES (CLOSE, ALLEN, BURNETT, WHITE). ***
***ROTH I DONT INTEND TO


***PG 11
ROTH 5.7 ADDICT INFORMER
JUDGE OKAY I DONT THINK ANY EVIDENCE OF ADDICTS, THAT ANYBODY WAS ADDICT WHILE
INCARCERATED. MR. PERRONE?

PERRONE CLOSE HAS PRIOR DRUG CONVICTION, HE WAS IN PRISON FOR SO BASED ON THAT
WOULD NECESSITATE THE ADDICT INFORMANT INSTRUCTION.
***(PERRONE OBVIOUSLY DID NOT KNOW THE DISTINCTION TO BE ADDICT INFORMANT)
*** JUDGE THERE IS NO TESTIMONY ABOUT ANYBODY BEING AN ADDICT. IF THEY WERE ON STREET,
IT MAY BE DIFFERENT, BUT CLOSE WAS IN CUSTODY FOR A LONG TIME.
I DONT THINK WE HAVE THAT HERE

ROTH 5.8 CHARACTER EVIDENCE REGARDING CREDIBILITY OF WITNESS.
***JUDGE HAVE WAS HAD ANY?
ROTH NO
***PERRONE I DONT BELIEVE SO EITHER, UP TO THIS POINT IN TIME.
ROTH 5.8A CHARACTER EVIDENCE REGARDING CONDUCT OF THE DEFENDANT.
***(by not subpoena any of defendant's therapist, friends, neighbor yet relaying on prosecution witness Burnett
and MDOC witnesses for Defense (Pierce and Muhammad) to defendant demeanor and character)***
JUDGE HAVE WE HAD THAT?
***PERRONE WE HAD CHARACTER, KNOWING HIM FOR SOME TIME AT MSU. WE HAD 404B
SIGNIFICANT PRIOR ACTS THAT WERE INTRODUCED.
JUDGE I AM ALLOWING THAT
***ROTH THERE IS A DIFFERENT INSTRUCTION SPECIFIC TO THAT CHARACTER OF THE DEF. PEOPLE
COME AND SAY, I KNOW THE DEF, HE IS A GREAT GUY. WE HAVE HAD SPECIFIC ACTS CAUTIONARY
INSTRUCTION INCLUDED IN THAT
JI M 4.11
JUDGE OKAY WE HAVEN'T HAD ANYBODY COME IN AND TESTIFY AS HIS REPUTATION FOR TRUTH
AND VERACITY?
***PERRONE MDOC DEFENSE WITNESSES ARE GOING TO TESTIFY AS TO VIEW OF HIM AND HIM
BASICALLY BEING GIVEN TO THE INMATES.
JUDGE MDOC WITNESSES ARE LIMITED WHAT THEY CAN TESTIFY TO IN REGARDS TO CHARACTER.
THEY ARE NOT FAMILIAR WITH DEF. REPUTATION FOR TRUTH AND VERACITY IN THE COMMUNITY.
THEY CAN'T REALLY COME IN AND GIVE GENERALLY CHARACTER EVIDENCE.
PG 13
***ROTH THEY CAN ONLY GIVE THE TRUTH AND VERACITY IF THE ***DEF. TESTIFIES OTHERWISE
TRUTH AND VERACITY ISN'T RELEVANT.
**JUDGE THAT'S TRUE ,UNLESS DEF. TESTIFIES
***ROTH 5.8 EVIDENCE OF OTHER DOMESTIC VIOLENCE. THERE WAS NO SPECIFIC D.V. OTHER THAN
STALKING WHICH IS INCLUDED IN 4.11, THE LIMITING INSTRUCTION THAT MR. PERRONE ALREADY
APPROVED.

***( PROSECUTION TALKED DOMESTIC VIOLENCE DURING VOIR DIRE TO JURY TO INFLAME YET THEY DROPPED IT FROM INSTRUCTIONS)

JUDGE 4.11A THAT TALKS ABOUT DOMESTIC VIOLENCE.
ROTH 4.11 SHOULD BE STRUCK.
JUDGE 5.8C SHOULD BE STRUCK

***ROTH 5.12 PROSECUTOR'S FAILURE TO PRODUCE WITNESS.
****PERRONE INAPPLICABLE
ROTH INAPPLICABLE? OKAY STRIKE THAT.
***(MCL767.40a)(1)(3) THE PROSECUTOR ALSO COMPELLED TO RENDER REASONABLE ASSISTANCE IN LOCATING AND SERVING PROCESS UPON WITNESSES UPON THE REQUEST OF THE DEFENDANT)**
**HN2 Steanhouse 313 Mich App1 (2015) **(WHAT EVER HAPPENED TO ANY OTHER WITNESSES DEF. ASKED
BURAK ATAMER, CIHAT OZ)

**PG 14
ROTH 5.13 AGREEMENT FOR TESTIMONY, NO EVIDENCE THAT ANY WITNESS HAS AN AGREEMENT FOR TESTIMONY.
***PERRONE DET. KRUMBACH TESTIFIED THAT HE WOULD PUT A GOOD WORD IN FOR JUDGE CLARKE ON CLOSE'S AND ALLEN'S CASES.
***ROTH CREDIBILITY INSTRUCTION: OF HAVE THERE BEEN ANY PROMISES OR SUGGESTIONS?
**PG 15
PERRONE WE HAVE PROFFER AGREEMENT.
**JUDGE IT CAN'T BE INTERPRETED BY A JURY IF THERE IS NO EVIDENCE OF PROMISE. YOU ARE GOING BY SPECULATION. I THINK THE REAL ISSUE IS AGREEMENT FOR TESTIMONY, POSSIBLE PENALTY.
**PG16
***ROTH 5:13 BEGINS WITH
"YOU HAVE HEARD THAT A WITNESS MADE AN AGREEMENT WITH THE PROSECUTOR ABOUT CHARGES AGAINST HIM."
WELL OBVIOUSLY WE HAVEN'T HAD TESTIMONY ABOUT THAT.
***JUDGE WE DONT HAVE AGREEMENT WITH PROSECUTION. BUT YOU CAN ARGUE THAT TO THE JURY THAT DET. WOULD HELP.
ROTH THAT WOULD BE FAIR.
6.2 INTOXICATION AS A DEFENSE TO A SPECIFIC INTENT CRIME. THERE HAS BEEN NO INDICATION THAT THE DEF. WAS INTOXICATED HE WAS IN JAIL.
***PERRONE I JUST WANT TO LEAVE THAT ALONE.
***DEF. TESTIFIED AT EVIDENTIARY HEARING THAT HE WAS HAVING ALCOHOL AND XANAX WITHDRAWALS. SUBSTANCE ABUSE PERRONE BROUGHT IT FEW TIMES YET NO JURY INSTRUCTIONS OFFERED)
***PG 17
JUDGE HE WAS IN JAIL HOW IS HE GOING TO BE INTOXICATED WHILW HE IS IN CUSTODY?
ROTH OTHER THAN STALKING CASE
PERRONE HE PARTICIPATED IN THE GATS PROGRAM
JUDGE SO IT IS NOT RELEVANT TO THE CASE
ROTH THERE HAS TO BE EVIDENCE AND TESTIMONY THAT HE HAD NO IDEA THAT SUBSTANCES WOULD CAUSE HIM TO BECOME INTOXICATED.
***JUDGE STRIKE THAT BECAUSE THERE HAS BEEN NO TESTIMONY ABOUT INTOXICATION WHEN HE WAS IN JAIL.

ROTH 6.5 INTENT TO INJURE OR DEFRAUD
PERRONE STRIKE THAT
***PG 18
***ROTH 7.8 IDENTIFICATION, NO ISSUE LIKE THAT? I MEAN THE QUESTION IS INTENT OR DID IT HAPPEN? IT'S NOT WHO SOLICITED.
PERRONE REMOVE IDENTIFICATION
***ROTH 7.23 PAST VIOLATION BY COMPLAINANT OR DESCENDENT.
***PERRONE WE CAN GET RID OF THAT.

*3)11/09/2017 6TH DAY OF TRIAL.
FINAL DAY
Pg 18 continued
***ROTH 8.4 INDUCEMENT. THAT'S TO BE GIVEN WITH AIDING AND ABETTING, WHICH NO PARTY IS
REQUESTING, 8.5 SAME THING.
***(PERRONE NEVER MADE ANY REQUEST ABOUT INDUCEMENT AIDING OR ABETTING)
ROTH : 10.2 AGREEMENT (CONSPIRACY CHARGE )
JUDGE THERE IS NO ALLEGATION OF CONSPIRACY
***PERRONE I AGREE FOR 10.2 TO BE REMOVED.
ROTH 10.4 SCOPE IS THE SAME ISSUE.
PERRONE YES
***(See order granting immunity signed by judge Boyd on 12/01/2016 per MCL 780.701. THIS IMMUNITY
EXTENDS TO ANY FORM OF AIDING AND ABETTING OR PARTICIPATION IN VARIOUS CRIMES OUTLINED
IN PARAGRAPH SEVEN (7) OF PEOPLES PETITION.
PARAG.7 ( Allen's representation that he could obtain or put defendant in contact with someone that could
provide a gun, CLOSE'S WRITTEN COMMUNICATION WITH DEF. OUTLINING ADVANCING PLANS FOR THE
MURDER AND OTHERS, HIS AFFIRMATIVE RESPONSE THAT HE WOULD ASSITS DEF. IN EXCHANGE
FOR MONEY, CLOSE'S ACCEPTANCE OF MONEY IN HIS JAIL ACCOUNT AS A PARTIAL PAYMENT TO
SECURE HIS ASSISTANCE IN CRIMINAL ENTERPRISE WAS ALL DONE WITHOUT KNOWLEDGE OF
POLICE, WHICH COULD CONSTITUTE AS CONSPIRACY OR AIDER AND ABETTOR THEORY)****


**PG 19
ROTH 10.7 ENUNCIATION TO DEFENSELESS SOLICITATION. AGAIN, THIS COULD HAVE CHANGED BUT
THUS FAR THERE HAS BEEN NO EVIDENCE OF ENUNCIATION.
***(MOBLEY VIDEO VISIT WAS BEING WATCH BY ALLEN BEHIND DEF. TRANSCRIPT PG.3 LINE 26 "I
CANNOT TALK TO YOU" COMMENT AND WHERE DEF. WOULD NOT PROVIDE ANY ADDRESS, PIC,
DESCRIPTION OF THIS PERSON, FACT THAT DEF. ONLY RESPONDED MOBLEY'S STRONG
ASSERTIONS, AND INCIMENTS, INDUCEMENTS, COMMENTS AND HIM WILLING TO CARRY THE
CONVERSATION)**(DEF..REJECTED, ENDED THE VIDEO VISIT ENGAGED BY MOBLEY ON 10/27/2016)
THIS WAS THE EVIDENCE OF DEF'S ENUNCIATION.)**-
PERRONE DEPENDING UPON THE TESTIMONY WE WILL LEAVE THAT ONE OPEN.**(NEVER HAPPENED)
**ROTH 13.9 lawfulness of confinement affirmative defense. "unlawful imprisonment"
JUDGE STRIKE
ROTH 13.12 DEFINITION OF JAIL
ROTH 13.20 CONCEALING FACTS OR MISLEADING POLICE. THAT'S NOT CHARGED OFFENSE
JUDGE WE DON'T HAVE THAT
ROTH 14.1 PERJURY COMMITTED IN COURSE THAT'S NOT A CHARGED OFFENSE
***PERRONE GET RID OF ALL 14s
***PG 20
PERRONE AS FAR AS HOMICIDE, WE CAN ADDRESS THAT.
**ROTH ALL THE 16s COULD BE STRUCK AS WELL PURSUANT TO THE COURT'S EARLIER RULING
***PERRONE YOU CAN STRIKE 16.1 THROUGH 16.25. I THINK 16.23 STATE OF THE MIND INSTRUCTION,
ADDED SINCE STATE OF MIND IS AT ISSUE HERE.
JUDGE HOMICIDE 16.23, THAT'S NOT ENOUGH THAT DEF. DID AN ACT THAT CAUSED DEATH. THAT'S
NOT RELEVANT HERE.
PERRONE GET RID OF ALL 21.1
JUDGE ALL EXTORTIONS???
****(FACT THAT DEF. WAS EXTORTED AND HE TESTIFIED TO IT EVIDENTIARY HEARING)
PERRONE THAT SUMS IT UP
ROTH WE WILL REVISIT 10.7 (ENUNCIATION) AT THE CONCLUSION OF PROOFS. OTHERWISE WE ARE
IN AGREEMENT
PERRONE YES.


***JUDGE CONFIRMS JURY INSTRUCTIONS CJI #1, PROCEDURAL INSTRUCTIONS, COMPOSITE
STARTING 3s , 4s series except 4.11A and 4.11?


***ROTH 4.11 IS STIPULATED THE LANGUAGE HAS BEEN APPROVED AND IT HAS BEEN PROVIDED.
***PERRONE YES
***JUDGE JI 5.1 WITNESS PRIOR CONVICTION, 5.2 WEIGHING CONFLICT EVIDENCE 5.3 STANDARD
5.11 POLICE WITNESS, 5.13 BECAUSE THERE WAS NO AGREEMENT.

WE HAVE 10.6 FOR SOLICITATION.
***PG 22
ROTH WE HAVE MODIFIED 10.6 PUT THE LANGUAGE OF THE CASE LAW.
"PURPOSEFULLY SEEKING TO HAVE SOMEONE KILLED. THAT'S THE INTENT"
JUDGE WE DONT HAVE ENUNCIATION AT THIS TIME WE ARE HOLDING THAT IN RESERVE.
***ROTH BASED ON COURT'S RULING THIS MORNING THAT WILL NOT CHANGE THE PACKET THAT WE
AGREED UPON

***(FACT AFTER ALL JURY INSTRUCTIONS WERE DISCUSSED PERRONE DECIDED THAT DEF. IS NOT
GOING TO TESTIFY) THIS IS WHY DEFENDANT DECIDED TO TAKE IT TO TRIAL.
PGS 23,24
DEFENDANT WANTS TO EXERCISE HIS RIGHT TO REMAIN SILENT (PG 24, LINES 9-13)
JUDGE CONFIRMED AND MADE DEF. TO TAKE OATH THAT HE DECIDED NOT TO TESTIFY ON RECORD.

AFTER PERRONE PRESSURING DEF. AND HIS FAMILY AGAINST DEF NOT TO TESTIFY (SEE THE E-MAIL
FROM PERRONE TO DEF SISTER). DEF. DECIDED NOT TO TESTIFY. USING 12 PERCENT THE SAMA PERRONE IS NOT TESTIFY DEF

***PG 25
PERRONE I WILL BE ASKING PIERCE ABOUT THE NOTES IF CLOSE INSTIGATED TO EXCHANGE
BETWEEN THEM.
***ROTH THERE IS A 404B PROBLEM BUT NOT WORTH THE ARGUE
***JUDGE NOTES WERE NOT REALLY ALL THAT

***PG 26
ROTH ; ON 11/07/2017 PERRONE WAS INSINUATING THE DEF. HAD POLICE REPORTS IN JAIL BETWEEN
WHEN HE GETS REMANDED UNTIL HE GOT CHARGED. DEF. PRIOR OWN TESTIMONY (EVIDENTIARY
HEARING)
AND COMMON SENSE THAT WAS NOT POSSIBLE.
IF PERRONE CONTINUE WITH THIS THEN HE SHOULD PUT UP A WITNESS OR HAVE DET. KRUMBAXH
TESTIFY TO IT.
ACCORDING TO PERRONE'S LOGIC SINCE CHRIS BERGSTROM REPRESENTED DEFENDANT (from
01/20/2016 till 11/10/2016) AT THE TIME OF THE OTHER CHARGES FILED FOR AFFADAVIT FOR IP
ADDRESSES WARRANT, SECOND STALKING AND SOLICITATION POLICE REPORTS WERE ALL FILED BY
10/27/2016 AND DEF. WAS ARRAIGNED FOR SECOND STALKING ON 10/28/2016 AND FOR SOLICITATION
ON 11/10/2016. DEF WAS NOT ALLOWED TO CALL HIS ATTORNEY THEN CHRIS BERGSTROM BEING ON
PHONE RESTRICTIONS. PROS. KOOP ALSO MADE HIMSELF AND BERGSTROM A ****POTENTIAL
WITNESS FOR SECOND STALKING CHARGES. SINCE DEF. HAD BERGSTROM AT ALL TIMES AS AN
ATTORNEY AND ONCE ALL THE INFORMATION WAS FILED FOR STALKING ON 09/27/2016 (WARRANT)
AND SOLICITATION (CLOSE'S LETTER TO HIS ATTORNEY 09/30/2016 OR JAILHOUSE INTERVIEW WITH
POLICE 10/17/2016) DEFENDANT HAD HIS SIXTH AMENDMENT RIGHTS VIOLATED BECAUSE
SIXTH AMENDMENT RIGHT TO COUNSEL ATTACHES WHEN "ADVERSARIAL LEGAL PROCEEDINGS
HAVE BEEN INITIATED AGAINST A DAY DEFENDANT BY WAY OF INDICTMENT, INFORMATION, FORMAL
CHARGE PRELIMINARY HEARING OR ARRAIGNMENT .
PPL V MADSACK 291 MICH APP 364 (1998).
**PG 28
PERRONE THINKS THAT CLOSE READ A POLICE REPORT FROM 08/2015 FIRT ALLEGED DAMAGE TO
MELKE'S CAR BY DEF. AND BECAUSE OF THE PICS. SHOWN AT COURT ABOUT MELKE'S LIC. PLATE
WHERE CLOSE MAY HAVE SEEN IT.
***(AFTER ALL THAT DEBATE Perrone changed again)
****PERRONE I WONT GO DOWN THAT ROAD I DON'T NEED IT

1) IMPROPER DISMISSAL OF A BIAS JUROR #1

WAS THE DEFENDANT DENIED HIS SIXTH AMENDMENT RIGHT TO AN IMPARTIAL JUROR AND CORRECT PROCEDURE TO ELIMINATE A BIAS JUROR?

FACT THIS PROSPECTIVE BIAS JUROR WAS VOIR DIRE BY JUDGE PROSECUTOR ROTH AND MR. PERRONE EXTENSIVELY:

11/02/2017, PG 12
JURY SELECTION
***BIAS JURY
THE CLERK JUROR NUMBER 1, LARRY ROLAND NISHON

JUDGE: JUROR 1 YOUR COMMUNITY SIR

JUROR: I OKEMOS, MARRIED, NO KIDS, RETIRED, A PODIATRIST, I AM SEMI-RETIRED PHYSICIAN AND RETIRED FROM CHAMPION INFORMATION TECHNOLOGY AT SPARROW. SPOUSE EMPLOYMENT TEACHER'S AID, LEVEL EDUCATION DOCTORATE

PG 13
JUDGE: EVER BEEN A PARTY TO A CASE OR WITNESS IN A CASE, PREVIOUSLY?
JUROR 1 YES

*PG 15 LINE 13-20
JUDGE: RETURNING TO BIAS DUE RACE, GENDER OR OTHER REASONS. ANYBODY HAVE ANY BIASES? JURORS HAVE TO MAKE A DECISION, THAT'S THE BOTTOM LINE. ANYONE HAVE ANY DIFFICULTY DOING THAT? YOU HEARD THE BURDEN OF PROOF LAST WEEK? FAMILIAR WITH THAT BURDEN OF PROOF? FAIR AND IMPARTIAL? THE DEFENDANT HAS THE RIGHT TO REMAIN SILENT. ANY DIFFICULTY WITH THAT CONCEPT?
MR. ROTH?

*ROTH: I WANT TO FOLLOW-UP A LITTLE BIT WITH YOU, JUROR 1 FIRST. YOUR POSITION WITH SPARROW HOSPITAL NOW. COULD YOU TELL ME LITTLE BIT ABOUT WHAT DAY-TO-DAY THAT MEANS?

pg 16
*JUROR 1: I AM A CONTRACT PERSON. IT'S IT WITH REGARD TO ELECTRONIC RECORDS. I DON'T KNOW. I AM WHAT THEY CALL A PHYSICIAN'S CHAMPION. I AM KIND OF A BRIDGE BETWEEN THE IT PEOPLE AND THE DOCS. I AM THE ONW WHO TRAINS ALL THE ITs. I HAVE BEEN INVOLVED SINCE I HAVE BEEN A RETIRED PODIATRIST. I ALSO HAVD A BACKGROUND IN ENGINEERING. I KIND OF BRIDGE THAT GAP WHEN THEY HAVE NEW PROJECTS TAKING ON A HOSPIAL OR WHATEVER. IT'S ON A AN INDIVIDUAL BASIC.

*PERRONE: PG 21 LINE 13-25
"OF THE WALL" OF JURY VOIR DIRE QUESTIONS TO "BIAS" JUROR #1.
(ABOUT HIS JOB COMPUTER IT TRAINER FOR A HOSPITAL)** 2 PAGES LONG NON OF THE OTHER JURORS WERE QUESTIONED THIS WAY.

PERRONE: AS A JUROR 1, "DO YOU HAVE A VEHICLE HAS A LIGHT IN IT THAT SHOWS YOU HOW CLOSE YOU ARE TO-- DOES IT TELL YOU--DO YOU HAVE A VEHICLE THAT TELLS YOU HOW MANY MILES THAT YOU HAVE UNTIL YOU RUN OUT OF GAS?"
JUROR 1: YES

PERRONE: "WHEN YOU GET TO ABOUT 20-30 MILES, IT BLINKS AND TELLS YOU THAT YOU ARE CLOSE "E".
JUROR: 1 YES

PERRONE: DO YOU FILL UP WHEN THE LIGHT FIRST COMES ON OR DO YOU TEST IT AND

WAIT?
JUROR #1: WHEN IT FIRST COME ON.
PG 22
PERRONE: WHY?
JUROR 1: I DONT WANT TO RUN OUT OF GAS.
MR. PERRONE: IS THERE ANYTHING THAT WOULD CAUSE YOU TO BELIEVE THAT YOU MAY RUN OUT OF GAS?
JUROR 1: JUST MY LIGHT
PERRONE DO YOU THINK THAT COMPUTER--- DO YOU THINK YOU HAVE ACTUALLY 27 MILES?
JUROR 1: NO
PERRONE: THAT WOULD BE DUE TO POTENTIALLY COMPUTER ERROR OR SOME OTHER REASON?
JUROR 1 : I THINK THAT THEY ARE SET THAT THE LIGHT GOES OFF WAY BEFORE WHAT IT'S SAYING ON THE SCREEN.

PERRONE: SO YOU THINK THAT YOU ACTUALLY HAVE MORE GAS?
JUROR 1: ABSOLUTELY
PERRONE: BUT YOU STILL FILL UP?
JUROR 1: I STILL UP
PERRONE : YOU ARE MARRIED. HOW LONG HAVE YOU BEEN MARRIED FOR?
JUROR 1: 35 YEARS
PERRONE: HAS IT ALL BEEN BLISS?
JUROR 1: YEAH ACTUALLY IT HAS
PERRONE: CONGRATULATIONS

PG 23 CONTINUED
JUROR 1: SHE'S VERY GOOD WOMEN
PERRONE: AND SHE IS A TEACHER'S AID?
JUROR 1: YES
PERRONE: YOU SEEM VERY INVOLVED IN HELPING PEOPLE?
PERRONE: YES
JUROR 1: YOU VOLUNTEER TO SOMETHING YOU HOLD CLOSE?
JUROR 1: YES.
PERRONE: I WILL STOP PICKING ON YOU
JUROR 1 :THERE WAS A JOKE KIND OF THE OTHER DAY. IF ANYONE WAS A WOLVERINE.

***PERRONE : FOR CAUSE. HAVE YOU HAD ANY TYPE OF FAMILY, FRIENDS THAT WERE INVOLVED IN DOMESTIC VIOLENCE?
JUROR 1: NO

11/02/2017
pg 73 line 18 -19
Perrone: to potential jurors
"if there is anything that you could recall based on my prior questions?
I am getting a little tired of myself.
RUSHING THE JURY VOIR DIRE

11/02/2017
**PG 98 LINE 2-5

Part of preliminary instructions to impaneled jurors by judge CANADY

JUDGE: YOU CAN SEE WE HAVE SEE CHOSEN A JURY OF 14. AFTER YOU HAVE HEARD ALL THE INSTRUCTIONS, WE WILL "DRAW LOTS" TO DECIDE WHICH TWO OF YOU WILL BE DISMISSED".

11/03/2017 THIRD DAY OF TRIAL

***BIAS JUROR #1 LARRY R. NISHON
PAGE 4 LINES 10-25

***JUDGE AT THE CLOSE OF THE YESTERDAY'S SESSION, WE RECEIVED A QUESTION FROM
JUROR NUMBER 1 THAT ASKED: IS HIS REGION-MR. URAZ'S COUNTRY OF ORIGIN--TURKEY.
THAT IS THE NATURE OF HIS QUESTION. HE COMMUNICATED TO MS. SMITH HE MIGHT HAVE A
"BIAS" IF THE ANSWER TO THAT WAS YES. I SENT A MESSAGE TO HIM THROUGH MS. SMITH
THAT THAT **** "WOULD NOT BE THE BASIS FOR HIM TO BE EXCUSED".***
GO HEAD MR. ROTH

ROTH I THINK IT WOULD BE APPROPRIATE, I HATE TO DELAY THINGS FURTHER. BUT I THINK
IT WOULD BE APPROPRIATE TO ASK HIM ABOUT THAT. OBVIOUSLY PROOFS WILL COME OUT,
HIS COUNTRY OF ORIGIN IS TURKEY.
IF THE JUROR IS GOING TO SAY THAT THAT GIVES HIM A BIAS FOR OR AGAINST THE
DEFENDANT, THAT HE CAN'T SET A SIDE, THEN I THINK HE NEEDS TO BE EXCUSED.

PG 5
***JUDGE I HAD THIS COME UP BEFORE. IT ALWAYS RAISES AN ISSUE WHERE SOMEONE
DIDN'T WANT TO SERVE, HAVING TO DO WITH A PERSON OF HISPANIC ORIGIN. AND MY
SOLUTION, AND THAT'S WHAT I AM GOING TO DO IN THIS CASE, IS SIMPLY TO SAY THAT
WHEN WE COME DOWN TO STRIKE THE PEOPLE, WE ARE GOING TO STRIKE NUMBER 1

ROTH THAT'S FINE YOUR HONOR

***JUDGE BY DOING THAT WAY, WE DONT HAVE TO GET INTO WHAT HIS THOUGHTS ARE FOR
OR AGAINST. IT'S JUST A MATTER OF AGREEMENT WE KNOW THAT JUROR NUMBER 1 WOULD
BE STRUCK AT THE CONCLUSION OF THE "PROOFS". ANYTHING YOU WOULD LIKE TO PUT ON
THE RECORD MR. PERRONE?

***PERRONE I THINK INQUIRING AS TO JUROR #1, HIS BIAS, WOULD BE PRUDENT. GIVEN THAT
MR. URAZ IS ACTUALLY A U.S. CITIZEN, WOULD JUST CLEAR UP THAT ISSUE WITH HIM, AT
THIS STAGE, RATHER THAN HIM OPERATING UNDER A BIASED PRESUMPTION.

**FACT
Judge did not have a Remmer hearing that provides defendant with a meaningful opportunity to prove,
question juror bias. see trial transcripts (11/03/2017)
Remmer v US 347 US 227 (1954).
Failure to remove biased juror on a timely basis tainted the entire trial.

2) *2) IMPROPER DISMISSAL OF A BIAS JUROR #1

**BIAS JURY WAS ALLOWED TO SIT IN FOR 9 DAYS UNTIL AFTER THE CLOSING ARGUMENTS
FINISHED ON 11/06/2017 LAST DAY OF TRIAL. (NOT THE PROOFS AS JUDGE STATED). THERE
WAS NO RANDOM DRAW PER MCR. 6.411, MCL 768.18

***THE ONLY WAY BIAS JURY WOULD ASK COUNTRY OF ORIGIN IS FROM CARMEN ELIAS'S
TESTIMONY ON 11/02/2017 PG 154 "DEFENDANT TEXTED HER ABOUT HIM BEING IN TURKEY"
OR JUROR #1 GOOGLED MY NAME AND FOUND OUT ABOUT IT OR PERRONE'S ASSERTION
ABOUT THIS TRIAL HAS INTERNATIONAL ASPECT ON OPENING STATEMENTS.
--------------------------------------------------------------
continued

11/03/2017 Third day of trial

pg 5 line 22-25

* **JUDGE: WELL MY THEORY IS THIS: WE DON'T NEED TO ASK HIM THAT IF WE ARE GOING TO
STRIKE HIM.

***ROTH: I AM IN AGREEMENT. YOUR HONOR

PG 6
***JUDGE SO HE IS NOT GOING TO BE IN THE FINAL 12. THE JURY'S NOT ALLOWED TO
DISCUSS THE CASE AMONGST THEMSELVES, ANYWAYS, UNTIL IT COMES TIME FOR
DELIBERATION. AND THEN THAT WAY--
AND THE OTHER REASON IS, IF WE DO IT THE "OTHER WAY", THERE ARE ALWAYS OTHER
PEOPLE ON THE JURY WHO, ONCE THEY START HEARING THE CASE, DON'T WANT TO HEAR
IT SOMETIMES, IT STARTS A STAMPEDE. SO BY US INDICATING THAT WE WILL STRIKE JUROR
#1, WE DONT HAVE TO GET INTO ANY BACKGROUND. THAT'S HOW I AM GOING TO HANDLE IT.

ROTH THANK YOU YOUR HONOR

PERRONE DID NOT ACKNOWLEDGE JUDGE'S DECISION ON THIS MATTER UNTIL AFTER
CLOSING ARGUMENTS ENDED **
*PG 134
JUDGE LINE 7 ***DID HE WE HAVE A JURY FORM?(VERDICT)

***ROTH IT WAS INCLUDED AND AGREED UPON

***(FACT JURY VERDICT FORM WAS NEVER SHARED WITH DEFENDANT BY PERRONE)

***LINE 22 -25 JUDGE I WANT TO CONFIRM YOU HAD PREVIOUSLY STIPULATED TO STRIKE
JUROR # 1 AS WITHIN THE TWO JURORS TO BE STRICKEN TO GET DOWN 12? NEXT JUROR
WILL BE RANDOMLY SELECTED IN THE USUAL PROCESS.

*BOTH ROTH AND PERRONE
AGGREED
-----------------------------------------------------------
10/11/2017 404b day pretrial
****PG 23 line 12-18 TRIAL START DATE CHANGED FROM 11/2/2017 TO 10/30/2017 (ALL ABOUT
VETERAN'S Day strategy by prosecution 11/10/2017(holiday) and start of Deer hunting weekend which
judge reminded the jury in case if they don't reach a verdict.
-----------------------------------------------------------

11/06/2017 FOURTH day of trial Monday

***PG 169 LINE 3-4
JUDGE REMINDING JURY THAT FRIDAY (11/10/2017) IS A VETERAN'S DAY SO WE WON'T BE A
COURT ON FRIDAY. (THAT WEEKEND WAS ALSO STARTING OF A DEAR HUNTING WEEK IN
MICHIGAN)
PG 168 LINE 9-14

11/07/2017 FIFTH DAY OF TRIAL
PG 168 Line 9-14
JUDGE IS TELLING JURY NO COURT ON 11/8/2016 WEDNESDAY AND BE BACK BY 11/09/2016
AND NO COURT ON 11/10/2016 DUE TO VETERANS DAY
THEN WE WILL COME BACK ON MONDAY (11/13/2017)
"LIKE WE ARE STILL ON TRACK TO ME"
TELLING JURY TO REACH A VERDICT ASAP INVERTEDLY.

11/09/2017 last day of trial
After all CLOSING arguments are finished,
"NOT AFTER THE CONCLUSION OF THE "PROOFS". as judge stated on 11/03/2017 pg.5

****JUDGE DID NOT RANDOMLY EXCUSE THE BIAS JUROR AND DID NOT INSTRUCT THE
JURORS TO DELIBERATE ANEW.***

* 11/09/2017

JUDGE***PG 181 LINE JURYS INCLUDING THE STRUCK ONES HAS TO STAY JUST IN CASE IF OF
THE OTHER JUROR GETS SICK OR CANT COME IN IF YOU CANT REACH A VERDICT TODAY,
YOU HAVE TO COME BACK ON MONDAY. HOPEFULLY THAT"S NOT GOING TO HAPPEN. IT HAS
HAPPENED***COERCION
THATS WHY YOU CAN'T DISCUSS IT WITH ANYONE.
I WOULD ASK THE CLERK TO STRIKE TWO PERSONS, PLEASE

Pg 182 clerk strikes 2 jurors (usingna basket) not randomly but knowingly (#1 bias juror Larry Nishon)
AND juror (#5) Which is against MCR 6.114 Additional jurors.
MCL 768.8 selection, waiver of jurors.

AFTER 2 jurors strikes (1 NOT RANDOMLY).
CLERK ADMINISTERED THE OATH TO NEW JURORS

THE INSTRUCTIONS TELLING THE JUROR START ANEW DELIBERATION NOT GIVEN . MI CRIM JI
3.11A REPLACEMENT JUROR
YOU ARE A NEW JURY AND MUST START OVER WITH YOUR DELIBERATIONS.

Rule MCR 6.411
ADDITIONAL JURORS
THE COURT MAY IMPANEL MORE THAN 12 JURORS. IF MORE THAN THE NUMBER OF JURORS
REQUIRED TO DECIDE THE CASE ARE LEFT ON THE JURY BEFORE DELIBERATIONS ARE TO
BEGIN, THE NAMES OF THE JURORS MUST BE PLACED IN A CONTAINER AND NAMES DRAWN
FROM IT TO REDUCE THE NUMBER OF JURORS TO THE NUMBER REQUIRED TO DECIDE THE
CASE. THE COURT MAY RETAIN THE ALTERNATE JURORS DURING DELIBERATIONS. IF THE
COURT DOES SO, IT SHALL INSTRUCT THE ALTERNATE JURORS NOT TO DISCUSS THE CASE
WITH ANY OTHER PERSON UNTIL THE JURY COMPLETES ITS DELIBERATIONS AND IS
DISCHARGED. IF AN ALTERNATE JUROR REPLACES A JUROR AFTER THE JURY RETIRES TO
CONSIDER ITS VERDICT, THE COURT SHALL INSTRUCT THE JURY TO BEGIN ITS
DELIBERATIONS ANEW.

MCL 768.8 SELECTION AND WAIVER OF JURY
ALL OF THE JURORS SHALL SIT AND HEAR THE CAUSE, SHOULD ANY CONDITION ARISE
DURING THE TRIAL OF THE CAUSE WHICH IN THE OPINION OF THE TRIAL COURT JUSTIFIES
THE EXCUSAL OF ANY OF THE JURORS SO IMPANELED FROM THE SERVICE HE MAY DO SO
AND AND THE TRIAL SHALL PROCEED.
SHALL PLACE THE NAMES ON SLIPS, FOLDED AS TO CONCEAL THE NAMES THEREON, IN A
SUITABLE BOX PROVIDED FOR THAT PURPOSE AND SHALL DRAW THEREFORM THE NAMES
OF SUFFICIENT NUMBER TO REDUCE THE JURY TO 12 MEMBERS.

**(THE TERM 'SHALL'....IS A MANDATORY TERM, NOT A PERMISSIVE ONE") IN RE FORFEITURE
OF BAIL BOND 496 MICH 320 (2014)

PRE SELECTION VOIR DIRE TO POTENTIAL JURORS
THIS WAS REPEATED BY JUDGE TO POTENTIAL JURORS ON

9 days before the final jury instructions.11/09/2017
10/31/2017 PGS 67, 117, 136, 156
ON 11/02/2017 PGS 15, 29,38,94

TO BIAS DUE RACE, GENDER OR OTHER REASONS. ANYBODY HAVE ANY BIASES? JURORS
HAVE TO MAKE A DECISION, THATS THE BOTTOM LINE. ANYONE HAVE ANY DIFFICULTY
DOING THAT? YOU HEARD THE BURDEN OF PROOF LAST WEEK? FAMILIAR WITH THAT
BURDEN OF PROOF? FAIR AND IMPARTIAL? THE DEFENDANT HAS THE RIGHT TO REMAIN

SILENT. ANY DIFFICULTY WITH THAT CONCEPT?

POST SELECTION INSTRUCTIONS DID NOT INCLUDE ABOVE "RIGHT TO REMAIN SLIENT"
COMMENT.
Pg 80 11/02/17
pg 82 impaneled jury sworn in
pg 85,86,87,88
3) IMPROPER DISMISSAL POLICY AND STATUTES
PPL V HORNSBY,251 MICH APP 462, 469 :650 NW2D 700(2002) UNAMBIGUOUS LANGUAGE IN A
STATUE OR COURT RULE IS ENFORCED AS WRITTEN.

MURPHY V SMITH 138 SCT 784,787 (2018)
AS USED IN 42 USC 1982 (E)(D)(2) THE VERB PHRASE "SHALL----" TELLS THE COURT THAT THE
COURT HAS SOME NON-DISCRETIONARY DUTY TO PERFORM. "MEANS MUST"

Cooper v Aaron, 358 Us 1 78 Sct. 1401 (1958) Note: ANY JUDGE WHO DOES NOT COMPLY WITH
HIS OATH TO THE CONSTITUTION OF THE UNITED STATES, WARS AGAINST THAT
CONSTITUTION AND ENGAGES IN ACTS IN VIOLATION OF THE SUPREME LAW OF THE LAND.
"THE JUDGE IS ENGAGED IN ACTS OF TREASON". NOTE ; ART. VI. THIS CONSTITUTION (1791)

THE U.S. SUPREME COURT HAS STATED THAT "NO STATE LEGISLATOR OR EXECUTIVE OR
JUDICIAL OFFICER CAN WAR AGAINST THE CONSTITUTION WITHOUT VIOLATING HIS
UNDERTAKING TO SUPPORT IT." see Also: In Re Sawyer, 124 US 200 (1888), US V Will 449 US 200;
216 101 S.Ct. 471 66 L Ed. 2d. 392 406 (1980); Cohens v Virginia 19 US (6 Wheat) 264, 404 5 L Ed. 25
(1821).

JUDGE CANADY PIERCED VEIL OF JUDICIAL IMPARTIALITY AND VIOLATED DEFENDANT'S
CONSTITUTIONAL RIGHT TO FAIR TRIAL
JUDICIAL PARTIALITY
1) the trial Judge's use of hostile argumentative and prosecutorial tone
2) the fact that witnesses' testimony was not complete
3) The judge's questions at defendant's witnesses or defendant friendly witness were frequentl
combative hostile and designed to impeach.
4) the questions were imbalanced in favor of the prosecution in both frequency and manner. The judges
curative instructions

*3) IMPROPER DISMISSAL POLICY AND STATUTES
PPL V HORNSBY,251 MICH APP 462, 469 :650 NW2D 700(2002) UNAMBIGUOUS LANGUAGE IN A
STATUE OR COURT RULE IS ENFORCED AS WRITTEN.

MURPHY V SMITH 138 SCT 784,787 (2018)
AS USED IN 42 USC 1982 (E)(D)(2) THE VERB PHRASE "SHALL----" TELLS THE COURT THAT THE
COURT HAS SOME NON-DISCRETIONARY DUTY TO PERFORM. "MEANS MUST"

Cooper v Aaron, 358 Us 1 78 Sct. 1401 (1958) Note: ANY JUDGE WHO DOES NOT COMPLY WITH
HIS OATH TO THE CONSTITUTION OF THE UNITED STATES, WARS AGAINST THAT
CONSTITUTION AND ENGAGES IN ACTS IN VIOLATION OF THE SUPREME LAW OF THE LAND.
"THE JUDGE IS ENGAGED IN ACTS OF TREASON". NOTE ; ART. VI. THIS CONSTITUTION (1791)

THE U.S. SUPREME COURT HAS STATED THAT "NO STATE LEGISLATOR OR EXECUTIVE OR
JUDICIAL OFFICER CAN WAR AGAINST THE CONSTITUTION WITHOUT VIOLATING HIS
UNDERTAKING TO SUPPORT IT." see Also: In Re Sawyer, 124 US 200 (1888), US V Will 449 US 200;
216 101 S.Ct. 471 66 L Ed. 2d. 392 406 (1980); Cohens v Virginia 19 US (6 Wheat) 264, 404 5 L Ed. 25

(1821).

JUDGE CANADY PIERCED VEIL OF JUDICIAL IMPARTIALITY AND VIOLATED DEFENDANT'S
CONSTITUTIONAL RIGHT TO FAIR TRIAL
JUDICIAL PARTIALITY
1) the trial Judge's use of hostile argumentative and prosecutorial tone
2) the fact that witnesses' testimony was not complete
3) The judge's questions at defendant's witnesses or defendant friendly witness were frequentl
combative hostile and designed to impeach.
4) the questions were imbalanced in favor of the prosecution in both frequency and manner. The judges
curative instructions

JI CRIM 1.8 READING OF INFORMATION
1)CHARGES TO DEFENDANT
2) DEFENDANT HAS PLED NOT GUILTY TO THIS CHARGE
3) THE JUDGE SHOULD SAY "INDICTMENT" OR COMPLAINT WHERE APPROPRIATE HOWEVER
THE INDICTMENT BEING READ SHOULD NOT CREATE "PRESUMPTIVE EVIDENCE CREATED BY
READING OF THE CHARGES ON INFORMATION SHEET"
IN TOT V U.S. 319 US 463(1943)
THE GOVERNMENT ARGUES THAT THE PRESUMPTION CREATED BY THE STATUE MEETS THE
TEST OF DUE PROCESS HERETOFORE LAID DOWN BY THIS COURT. THE DEFENDANT'S
ASSERTION THAT IT FAILS TO MEET THEM BECAUSE THERE IS NO RATIONAL CONNECTION
BETWEEN "THE FACTS PROVED AND THE ULTIMATE FACT PRESUMED",THAT THE STATUE IS
MORE THAN A REGULATION OF THE ORDER OF PROOF BASED UPON THE RELATIVE
ACCESSIBILITY OF EVIDENCE TO PROSECUTION AND DEFENSE, AND COSTS AN UNFAIR AND
PRACTICALLY IMPOSSIBLE BURDEN OF PERSUASION UPON DEFENDANT.
THE INDICTMENT CHARGES THE DEFENDANT WIRH ACTION OR FAILURE TO ACT CONTRARY
TO THE LAW'S COMMAND. IT DOES NOT CONSTITUTE PROOF OF THE COMMISSION OF THE
OFFENSE. PROOF OF SOME SORT ON THE PART OF THE PROSECUTOR IS REQUISITE TO
FINDING OF GUILT, IT MAY CONSISTS OF TESTIMONY OF THOSE WHO WITNESSED THE
DEFENDANT'S CONDUCT.

"PRESUMPTIVE EVIDENCE CREATED BY INFORMATION SHEET
THIS INDICTMENT PUT THE DEFENDANT AGAINST WHOM "NO EVIDENCE OF GUILT HAS BEEN
OFFERED IN A PROCEDURAL SITUATION" FROM WHICH HE CAN ESCAPE CONVICTION ONLY
BY TESTIFYING. COMPELS HIM TO GIVE EVIDENCE AGAINST HIMSELF IN VIOLATION OF THE
FIFTH AMENDMENT.

IN THIS CASE JUDGE READ THE WHOLE INFO SHEET IN PAST TENSE NOT PRESENT IN TENSE
OR NOT EVEN AN "ALLEGEDLY" WORD ADDED TO THE INDICTMENT.

ON 10/3/2017 PGS 50,51,52

TO POTENTIAL JURORS
JUDGE READ :
AND THE PAPER USED TO CHARGE THE DEFENDANT WITH CRIME IS CALLED INFORMATION.
AND ON THAT SHEET IT EXACTLY STATED THE JURY INSTRUCTIONS FOR AGGRAVATED
STALKING
CHARGE PG 51

***"SHIFTED THE BURDEN OF PROOF BY JUDGE FROM PROSECUTION TO DEFENSE***

#1064 that between 08/23/206 and 09/26/2016 4925 Dunckle Rd. apt 202 city of Lansing, Ingham
County that the Defendant "DID" engage in a willfull course of conduct, invoving repated or continued
harassment of Erika Melke the conduct being such would cause a reasonable persob to feel terrorized
and or frightened and/or intimidated and or threatened and or harassed or molested. Said conduct,
actually causing Erika Melke to feel terrorized and or frightened and/or intimidated and or threatened and
or harassed or molested. And at least one of the actions constituting the offense is in violation of

restraning order, and/or a condition of pretrial release,contrary to statue.

in file 1065 Defendant is charged that between 08/31/2016 and 10/31/2016 at 630 N. Cedar St, county of Ingham, city of Mason, that the defendant in count #1 HOMOCIDE SOLICITATION OF MURDER, "DID" SOLICIT ANOTHER PERSON, REGINLD CLOSE, TO COMMIT MURDER, CONTRARY TO STATUTE.
IN COUNT # 2 THAT THE DEFENDANT "DID" SOLICIT ANOTHER PERSON, CHARLES ALLEN TO COMMIT MURDER.
IN COUNT #3 THAT THE DEFENDANT "DID" SOLICIT ANOTHER PERSON, FRANK MOBLEY TO COMMIT MURDER.
ALL THREE OF THOSE MATTERS ARE CONTRARY TO STATUE.

THE TRIAL COURTS DETERMINATION OF A JUROR'S ABILITY TO RENDER AN IMPARTIAL VERDICT IS REVERSED ONLY WHERE AN APPELLATE COURT FINDS A CLEAR ABUSE OF DISCRETION. RICE V WINKELMAN SUPRA 13 MICH APP 281 (1968)
HUGHES 85 MICH APP 8 (1978)
ANGLIN 6 MICH APP 660
OVERRULING OR MANIFEST NECESSITY.

WAIVER IS DIFFERENT FROM FORFEITURE IS THE FAILURE TO MAKE THE TIMELY ASSERTION OF A RIGHT. WAIVER IS THE INTENTIONAL RELINQUISHMENT OR ABANDONMENT OF A KNOWN RIGHT.
US V OLANO 507 US 733 (1993).

JI CRIM 1.9 DEFENDANT IS NOT REQUIRED TO PROVE HIS INNOCENCE OR TO ANYTHING HOWEVER FOR SOME "AFFIRMATIVE (POSITIVE) DEFENSES" A DEFENDANT MUST PRODUCE EVIDENCE, THE COURT SHOULD INSTRUCT THE JURY ON DEFENDANT'S BURDEN OF PRODUCTION OF EVIDENCE WHERE IT IS MOST APPROPRIATE TO DO SO.
THE COMMITTEE RECOMENDS THAT THIS BE DONE WHEN THE COURT INSTRUCTS ON THE NATURE AND REQUIREMENTS OF THE AFFIRMATIVE DEFENSE ITSELF.

A JURY IMPANELED ACCEPTED, AND SWORN CANNOT BE DISCHARGED EXCEPT TO AGREE, OR FOR SOME OTHER OVERRULING NECESSITY THAT COURTS HOLD NECESSARY TO CONSTITUTE A MISTRIAL

A DEFENDANT IN A CRIMINAL CASE CAN NOT BE IN JEOPARDY UNTIL A JURY IS IMPANELED AND SWORN

**1)** JUROR BIAS VOIR DIRE ISSUE

I)
WAS DEFENDANT'S RIGHT TO HAVE AN ABSOLUTE TO A FAIR AND IMPARTIAL JURY VIOLATED BY COURTS ABUSE OF DISCRETION BY NOT CONDUCTING PROPER VOIR DIRE AGAINST JUROR BIAS

II)
WAS THE COURT'S/POLICE'S ACTIONS AS FAR AS LETTING THEIR DOCKETS TO BE SHOWN TO MEDIA 10 MONTHS BEFORE THE TRIAL WHICH CREATED A RISK WHERE PUT COMPLAINANT'S (ERIKA MELKE) LIFE IN DANGER BY PUBLISHING THE 'SWEAR-IN' FACTS BY POLICE AND THESE EGGREGIOUS ACTIONS BY POLICE AND COURT PUT DEFENDANT IN AN PECULIAR POSITION OF PROTECTING ERIKA MELKE AND HIMSELF FROM OTHER INMATES IN JAIL/PRISON WHILE MR. URAZ IS INCARCERATED?

III)
 WAS DEFENDANT'S RIGHTS WERE VIOLATED WHEN PROSECUTOR KEPT REFERING THIS CASE  AS A "DOMESTIC VIOLENCE" COMMENT REFERRING TO A  "NON-DOMESTIC" RELATIONSHIP WITH NO ANY PHYSICAL ASSAULT TO COMPLAINANT ERIKA MELKE IN THE HEIGHT OF "#MEETOO" MOVEMENT IN 2017 ONLY INFLAMED JURY AND NUDGE THEM TO CHECK OUT THE INTERNET ABOUT DEFENDANT MCLS 600.2950a)(1) non-domestic relationship.

FACT #1
 Other than local news papers,( local newspaper covers Okemos, East Lansing, Lansing, Ingham County) Detroit Free Press, Local Fox 47 TV channels, WNEM Channel 5 Flint station, WLNS local Lansing news and their perspective websites, IF ONE GOOGLES DEFENDANT'S NAME TUNC URAZ THEY WOULD SEE MANY ENTRIES TO THE WORLD WIDE WEB )
(Eg.Crimeonline.com,9and10news.com Washington Times)
***(SEE ATTACHED COPIES OF THE NEWS PAPER AND INTERNET ARTICLES)
WHEN ONE GOOGLE'S DEFENDANT'S NAME AS "TUNC URAZ" FIRST THING WILL POP (BEFORE THE NEWS PAPER ARTICLES)
"PRESIDENT OF TURKISH STUDENT ASSOCIATION AT MICHIGAN STATE UNIVERSITY (1995)."

FACT#2
DEFENDANT WAS APPROACHED BY SEVERAL INMATES TO "HELP" DEFENDANT AS LONG HE WAS WILLING TO "PAY" TO GET ERIKA MELKE. AFTER 01/03/2017 NEWSPAPER ARTICLE PUBLISHED STATE WIDE, REPORTED ONLINE AND TV. DEFENDANT RECEIVED "NOTES" ON HIS FOOD TRAY WHEN J
HE WAS KEPT IN SOLITARY CONFINEMENT WHICH DEFENDANT GAVE THESE NOTES TO HIS ATTORNEY THEN MR.NICHOLS WHERE HE GAVE THEM TO MR. PERRONE BY APRIL 2017.
(SEE ATTACHED COPIES OF LETTERS AND NOTES)

STANDARD OF REVIEW

A DEFENDANT WHO CHOOSES A JURY TRIAL HAS AN ABSOLUTE RIGHT TO A FAIR AND IMPARTIAL JURY. DUNCAN V LOUISIANA, 391 U.S. 145;88 S CT 1444; 20 L. ED. 2DM 491(1968). PPL V MILLER, 411 MICH 321,326;307 NW2D 335(1981). THE PURPOSE OF VOIR DIRE IS TO ELICIT ENOUGH INFORMATION FOR DEVELOPMENT OF A RATIONAL BASIS FOR EXCLUDING THOSE WHO ARE NOT IMPARTIAL FROM THE JURY.
PPL V BROWN 46 MICH APP 592(1973). PPL V HARVEY, 167 MICH APP 734(1988). IN VOIR DIRE, MEANING "TO SPEAK THE TRUTH", POTENTIAL JURORS ARE QUESTIONED IN AN EFFORT TO UNCOVER ANY BIAS THEY MAY HAVE THAT COULD PREVENT THEM FROM FAIRLY DECIDING THE CASE. IT IS THE ONLY MECHANISM, AND THE ONLY SAFEGUARD A DEFENDANT HAS, FOR ENSURING THE RIGHT TO AN IMPARTIAL JURY. THE PROPRIETY OF THE VOIR DIRE IN THIS CASE TURNS ON WHETHER THE "ALREADY BIAS JURY" BEING KEPT ON THE IMPANELED JURY AFTER SWEAR-IN,  FOR 9 DAYS THEREFORE REST OF THE JURORS  AND WHETHER A TRIAL COURT MUST ELICIT MORE THAN MERE SELF- ASSESSMENT IN ORDER TO SAFEGUARD A DEFENDANT'S RIGHT TO AN IMPARTIAL JURY.

THE TRIAL COURT ABUSES ITS DISCRETION BY NOT ADEQUATELY QUESTION JURORS REGARDING POTENTIAL BIAS THAT SO THAT CHALLENGES FOR CAUSE, OR EVEN PEREMPTORY CHALLENGES CAN BE INTELLIGENTLY EXERCISED. FEDORINCHIK V STEWART, 289 MICH 436(1939).

MICHIGAN  COURT OF APPEALS HAS LONG RECOGNIZED THE IMPORTANCE OF A VOIR DIRE THAT ALLOWS THE COURT AND THE PARTIES TO DISCOVER HIDDEN BIAS THAT WOULD RENDER A POTENTIAL JUROR INCOMPETENT.

It is the evident intent of the law to secure a jury that shall come to the consideration of the case unaffected by any previous judgement, opinion or bias with respect either to the parties or subject-matter in controversy, and its important to the rights of parties that may be permitted inquiries that may be the means of discovering facts which will justify the exclusion of a juror. The success of a challenge depends upon eliciting such information from the juror himself, as well as from other sources, as to his state or condition of mind, as will enable a judgement to be formed by the court as to his competency. [Monaghan v Agricultural Fire Ins. Co, 53 Mich 238 (1884)]

IT IS IMPERATIVE, IN SECURING THE RIGHTS OF THE PARTIES TO AN IMPARTIAL JURY, FOR THE COURT TO ALLOW THE ELICITATION OF ENOUGH INFORMATION SO THAT THE COURT ITSELF CSN MAKE AN INDEPENDENT DETERMINATION OF JUROR'S ABILITY TO BE IMPARTIAL.
BOTH MICHIGAN AND FEDERAL LAW SUPPORT THE CONCLUSION THAT THE SUPERFICIAL AND LEADING QUESTIONING THAT TOOK PLACE HERE WAS AN ABUSE OF DISCRETION.

In U.S. v Davis, 583 F2d 190 (CA 5, 1978) EXPLAINED THE NEED FOR SUCH QUESTIONING.
This circuit has determined that it is for the court, not the jurors themselves, to determine whether their impartially has been exposed to. Therefore, when there has been a publicity that would possibly prejudice the defendant's case if it reached the jurors, the court should ask the jurors what information they have received. Then it should ask about the prejudicial effect and it should make an independent determination whether the juror's impartially was destroyed"[Davis at 197, quoting U.S. v Hyde, 448 F2d 815, 848 (CA 5, 1971)

EMPLOYING SIMILAR REASONING, THE COURT IN SILVERTHORNE V U.S., 400 F2d 627(CA 9, 1968), FOUND THAT THE TRIAL COURT'S "VOIR DIRE EXAMINATION DID NOT ADEQUATELY DISPEL THE PROBABILITY OF PREJUDICE ACCURING FROM THE PRE-TRIAL PUBLICITY AND THE JURY PANEL MEMBERS' KNOWLEDGE OF THE CASE. THE COURT PREDICATE ITS CONCLUSION ON TWO GROUNDS:
(1)the questions propounded by the court to the prospective jurors were calculated to evoke responses which were subjective in nature--the jurors were called upon to assess their own impartiality for the court's benefit, and (2) the entire voir dire examination was too general adequately probe the prejudice issue.

68

*2) JUROR BIAS VOIR DIRE ISSUE

IT IS IMPORTANT FOR TRIAL COURTS TO SAFE GUARD A DEFENDANTS RIGHTS TO A FAIR TRIAL BEFORE AN IMPARTIAL JURY DECLARATION OF MISTRIAL MAY BE APPROPRIATE WHERE A TRIAL JUDGE DISCOVERS THAT ONE OR MORE JURORS MIGHT BE BIASED.
PPL V GARDNER 37 MICH APP 520 (1972) LV 387 MICH 771 (1972).
THE TRIAL JUDGE IS THEN PROPERLY PERMITTED TO CONDUCT A VOIR DIRE OR INTERROGATE THE JUROR AND MAKE A FINDING OF BIAS OR LACK OF SAME AND IS ENTITLED TO BROAD DISCRETION IN HIS EXAMINATION.


MCR 2.511(A)(D)(2) IMPANELING JURY
A RANDOM BLIND DRAW IS REQUIRED TO REPLACE A JUROR

MCR 2.512(A)(1) INSTRUCTIONS TO JURY
COURT DIRECTS THE PARTIES MUST FILE WRITTEN REQUEST FOR JURY INSTRUCTIONS AT THE END OF THE PROOFS AND/OR AFTER CLOSING ARGUMENTS.

MCR 2.513 CONDUCT OF JURY TRIAL
(1) THE COURT SHALL PROVIDE EACH JUROR WITH A WRITTEN COPY OF SUCH INSTRUCTIONS
(L) PROSECUTION MAY OFFER REBUTTAL ONLY LIMITED ISSUES RAISED IN DEFENDANT'S CLOSING ARGUMENT
(N)(1) FINAL INSTRUCTIONS TO JURY BEFORE CLOSING ARGUMENTS THE COURT MUST GIVE THE PARTIES A REASONABLE OPPORTUNITY TO SUBMIT WRITTEN REQUEST'S FOR JURY INSTRUCTIONS.
COONES 216 MICH APP 721(1990)
REPLACEMENT OF A JUROR NOT DONE PROPERLY.


THE COURT OF APPEALS WILL REVERSE A DEFENDANT'S CONVICTION WHERE TRIAL COURT DID NOT FOLLOW THE PROCEDURE OUTLINED IN THE MCR FOR REPLACEMENT OF CHALLENGED JURORS EVEN THOUGH DEFENSE COUNSEL FAILED OBJECT TO THE PROCEDURE USED BEFORE THE PROCESS BEGAN IT WAS IMPOSSIBLE OR IMPRACTICAL FOR DEFENSE COUNSEL TO MAKE AN OBJECTION OUT OF THE PRESENCE OF THE JURY.
(PPL V ADKINS 117 MICH APP 583) (1982)

II 10/20/2017 EVIDENTIARY HEARING
MOTION TO VENUE CHANGE
Transcripts :
PGS 114 - 120

PERRONE THERE WAS VIDEO TESTIMONY FROM DEFENDANT'S PRELIMINARY EXAMINATION. THERE WAS HOWEVER THE INFORMATION CONTAINED IN MULTIPLE LANSING STATE JOURNAL AND TOWNE COURIER. ( local newspaper covers Okemos, East Lansing, Lansing, Ingham County)

JUDGE WAS THERE MORE THAN ONE ARTICLE?
PERRONE YES

JUDGE: I MEAN I RECALL ONE ARTICLE, NOT TOO MANY. I DON'T RECALL ANY MEDIA APPEARING AT ANY HEARINGS LIKE WE HAVE IN A LOT OF CASES.

PERRONE:  WELL I HAVE AN ARGUMENT TO PRESERVE THE RECORD, YOUR HONOR. IT IS THE INFLAMMATORY NATURE OF THE ARTICAL BEING THE BASIS FOR  COMMUNITY BIAS. THERE ARE NUMBER OF VERY DEFINITIVE STATEMENTS THAT WERE MADE IN THE ARTICLE.
IF YOU LOOK IN THE FIRST PARAGRAPH, SECOND PARAGRAPH OF THE ARTICLE, FIRST COLUMN, THE BOTTOM OF IT, WE HAVE SPECIFIC AGREEMENTS ASSOCIATED WITH KILLING, "URAZ AGREED TO PAY THE OFFICER $2000 FOR KILLING THE WOMAN AND $500 FOR EVERY ADDITIONAL PERSON. THAT WAS

TRASH. SO OBVIOUSLY THAT WAS EITHER MISINTERPRETED.THAT, IN AND OF ITSELF IS INFLAMMATORY, BECAUSE IT DEFINITIVELY STATES OR CONCLUDES THAT YOU AGREED FOR $2000 OR $500. THAT'S THE DETERMINATION FACTOR THAT THE JURY SHOULD BE LEFT WITH.

WE HAVE STATEMENTS BY THE STATE JOURNAL AND THESE WERE TAKEN FROM "SWEAR-TO", WHERE THEY ARE ATTRIBUTING STATEMENTS TO DETECTIVE KRUMBACH. AND WE HAVE A SPECIFIC INFLAMATORY NATURE WHERE THE ACCUSED WANTED HIM TO TAKE PICTURES OF THE IDENTIFICATION, DISPOSE OF THEBODY, TAKE A PICTURE OF THE VICTIM AFTER BEING BLUDGEONE. THOSE STATEMENS THAT WERE RECEIVED FROM MR. CLOSE THAT WERE ALLEGEDLY DISTRIBUTED TO MR. URAZ, ALTHOUGH THAT DOESNT EVEN COMPORT WITH THE VIDEO THAT WE ARE TALKING ABOUT TODAY WHEN IT SAID THAT WE JUST WANT TO GET IT DONE.(VIDEO VISIT WHICH WAS SET UP AND ENGAGED BY POLICE DET. MOBLEY) THAT'S VERY INFLAMATORY IN NATURE.

THE ARTICLE HAVING THE NUMBER 10 POLICE REPORTS INVOLVING PRIOR ISSUES,WE HAVE ADDRESSED THAT ISSUE ON THE 404B.THERE ARE CERTAIN ISSUES THAT ILL COME, SOME THAT WONT.

AGAIN, FOR THE PUPOSES OF COMMUNITY BIAS, THAT IS INFLAMMATORY IN NATURE IS WHAT THE ARGUMENT IS.

BEYOND THAT, IT IS SOMETHING MORE THAN LIKELY GOING TO PLAY INTO SECOND PRONG, WHICH IS PROPORTIONATE ARGUMENT. THAT IS LIKELY GOING TO BE SOMETHING THAT'S GOING TO REQUIRE VOIR DIRE. I JUST ASK THAT YOUR HONOR ALLOW FOR ADEQUATE VOIR DIRE IN ORDER TO ENSURE THAT WE DONT HAVE ANY TYPE OF INFLAMMATORY NATURETO PROVIDE MR. URAZWITH FAIR TRIAL, JUST TO ENSURE THAT  THE PEOPLE WHO ARE PUT IN THE JURY BX HAVE NOT BEEN INFLUENCED AND ARE ABLE TO MAINTAIN A FIR AND IMPARTIAL MENTALITY.

THE SECOND ASPECT IS BECAUSE OF THE INFLAMMATORY NATURE OF THE ARTICLES, AND THE STATEMENTS THAT WERE INCLUDED BY MR. PALMER (NEWSPAPER REPORTER) AND THE STATE JOURNAL, WE WOULD ASK FOR A MEDIA GAG ORDER IN THIS SO THAT WE DONT HAVE ANY ADDITIONAL INFLAMMATORY STATEMENTS THAT MAY PREJUDICE THE JURY POOL IN THIS MATTER, SOME INSTRUCTIONS ASSOCIATED WITH THE VIDEO IN THE COURTROOM, AS FAR AS WHAT THEY'RE ABLE TO --WHAT THE PEOPLE WAS ABLE TO PUT OUT THERE. WE WILL LEAVE IT UP TO YOUR HONOR'S DISCRETION BASED UPON THE AFFIRMATIONS IN THE MOTION.

PG. 118

PROS. KOOP : WITH REGARDS TO ACTUAL BIAS, THAT'S FOUND WHERE THERE WAS EXTENSIVELY HIGH INFLAMMATORY PRETRIAL PUBLICITY.

TO THE EXTENT THAT THE POOL IS TAINTED, COUNSEL HS ATTACHED TWO ARTICLES. I BELIEVE THEY ARE THE SAME AP ARTICLE FROM THE FACTS THAT WERE FROM THE "SWEAR-TO" WHERE I DONT SEE NUMBER ONE, HOW THEY ARE INFLAMMATORY. AND ESPECIALLY TO THE EXTENT THAT A POOL HAS BEEN TAINTED.

ONE ARTICLE "DONT....AT ALL, FINDS GOOD CAUSE". I DONT THINK WE COULD HAVE ANY MURDER TRIAL OR SOLICITATION MURDER TRIAL IN THIS COUNTRY IF SUCH AN ARTICLE IS ENOUGH TO SHO GOOD CAUSE.

AS COUNSEL  HAS STATED, COMMUNITY BIAS. WELL, THAT'S NOT SOMETHING WE CAN FIND OUT UNTIL THE TIME OF THE JURY TRIAL WHEN THE VIOR DIRE OF THAT PANEL IS TAKEN. SO HE HAS FAILED TO PROVIDE ANY "FACTUAL" SUPPORT FOR THESE CLAIMS. HE BROADLY AND ERRONEOUSLY ASSERTS OF THE LARGE COVERAGE OF THE ARTICLE. IN THIS CASE IT'S NOTHING BUT GENERAL REPORTING FOCUSED ON THE FACTS OF THIS CASE WHICH IS ALMOST ALL OF WHICH ARE GOING TO BE ADMISSIBLE AT TRIAL ANYWAY.

*3) JUROR BIAS VOIR DIRE ISSUE
PG119
GAG ORDER, THERE IS A SIGNIFICANT PRESUMPTION AGAINST PRIOR OF FIRST AMENDMENT RIGHTS, INCLUDING INTENTS OF MEDIA FOR PUBLISHING FACTS AND CIRCUMSTANCES PENDING TRIAL TO JUSTIFY THE IMPOSITION OF A PRIOR RESTRAINT.
"THE ACTIVITY OF RESTRAINT MUST POSE A CLEAR AND PRESENT DANGER  OR A SERIOUS IMMINENT THREAT TO A PROTECTED COMPETING INTEREST".

PROS KOOP : AGAIN THE DEFENDANT HERE HAS WOEFULLY TO CITE WITH ANY SOURCE OF SPECIFICITY, ANY FACTS AND CIRCUMSTANCES ABOUT THIS CASE THAT WOULD JUSTIFY THE SIGNIFICANT REMEDY OF A GAG ORDER.

PG 120
PERRONE: AGAIN MOST OF THE CASES WE HAVE ONE ARTICLE, OKAY, AND THE PROSECUTION IS GOING TO SAY THAT WE ONLY HAVE ONE ARTICLE HERE, BUT WE HAVE THE "INTERNET". MOST OF THE CASES THAT ARE CITED IN AN ERA WHERE INFORMATION WAS NOT ACCESSIBLE.
THE ARGUMENTS THAT ARE MADE BY THE DEFENDANT IN THIS CASE ARE AN INFLAMMATORY NATURE OF THE STATEMENTS THAT WERE INCLUDED IN THE ARTICLES. THERE WAS NOT A SPECIFIC AGREEMENT, THAT IS A FACT QUESTION BEFORE THE JURY. THAT WAS INCLUDED IN THE ARTICLE.
SO AS FAR AS COMMUNITY BIAS IS CONCERNED, THE ARGUMENT THAT THAT'S AN IN INFLAMMATORY NATURE OF THE REPORTING, AND WITH ADVENT OF THE "INTERNET" AND THE ACCESSIBILITY OF THE INFORMATION, THAT KIND OF CHANGES THE DIFFERENCE BETWEEN ONE ARTICLE AND A HUNDRED. BECAUSE THE PRIOR CASES WHERE WE HAVE A HUNDRED ARTICLES AT TIMES WHERE THE INTERNET WAS NOT AT THE SAME LEVEL TODAY. SO WE CANT MAKE THE SAME COMPARISON THAT THE PROSECUTOR IS MAKING THAT THERE IS 100.
BUT THIS ISN'T LIKE THE 100-ARTICLE CASE, BECAUSE WE HAVE THE INTERNET. SO I WOULD ASK THAT YOUR HONOR TAKE INTO ACCOUNT THE INTERNET, THE FACT THAT THE INFORMATION IS STREAMED, ALMOST LIVE. AND THAT OUR JURY POOL IS LIKELY GOING TO HAVE ACCESS TO INFORMATION.
ALTHOUGH YOUR HONOR IS GOING TO INSTRUCT THEM NOT TO, BECAUSE OF THE INUNDATION OF THE INFORMATION, I DONT WANT THE STATE JOURNAL TO HAVE THE OPPORTUNITY TO REPORT THINGS THAT MAY SKEW YOUR JURY,
PG 121
JUDGE: THE COURT IS REALLY SENSITIVE TO CHANGE OF VENUE, I ONLY RECALL SEEING ONE ARTICLE, THERE HAS NOT BEEN ANY MEDIA REQUESTS, NO MEDIA SHOWED UP TO ANY PRETRIAL. BUT THIS DOESN'T QUALIFIES AS A HIGH-PROFILE CASE. THAN JUDGE GIVES EXAMPLES OF CASES WHERE HE DIDN'T UNDERSTAND THE COVERAGE OF THE NEWS ON THE INTERNET HIS FOCUS WAS SOLELY ON PRINT NEWS RATHER THAN THE SAME NEWS BEING RECYCLED ON INTERNET ALL THE TIME.
JUDGES POSITION WAS TO BRING IN THE JURY PANEL AND BE MORE LIBERAL ON CHALLENGES FOR CAUSE TO SEE IF THE JURY POOL HAS BEEN TAINTED OR NOT.
"THERE IS NOTHING THAT SAYS IF W FEEL WE CAN'T GET A JURY, THAT WE STILL CANT CHANGE THE VENUE IN THE EVENT OCCURS.
I CANT NOT EXCLUDE MEDIA FROM THE COURT ROOM. I CANT TELL THE MEDIA REPRESENTATIVE CAN COME IN OBSERVE THAT THEY NOT WRITE ABOUT IT. I DONT THINK THE FACTS IN THIS CASE RISE TO THE LEVEL OF THAT.
PG 122
WE HAVE TO FOCUS ON THE FACT THAT ONCE THE 14 PEOPLE ARE IMPANELED, THEN THAT'S THE 14 WE ARE WORKING WITH, NOT THE ENTIRE COMMUNITY. AND THESE INSTRUCTIONS THAT THEY RECEIVE EVERYDAY, NOT TO REVIEW OR HEAR OR DISCUSS THE CASE, INCLUDING ANY FAMILY MEMBERS ABOUT THE TESTIMONY, WE HAVE NOT RECEIVED ANY VIDEO OR STREAMING REQUESTS. I DENY THE MOTION

10/31/2017 first day of trial
PG 75
ROTH: JUDGE ALSO ASKED IF ANYBODY KNEW ABOUT THE CASE. (HE NEVER DID)
 I WANT TO FOLLOW-UP ON THAT AS WELL. THERE HAS BEEN SOME MEDIA ATTENTION. WHO, IN THE JURY POOL, READS THE LANSING STATE JOURNAL, EITHER ONLINE OR IN PRINT? WHO WATCHES LOCAL NEWS? NEWS

71

I WANT EVERYBODY TO THINK ABOUT THE NEXT QUESTION. ESPECIALLY THOSE PEOPLE SORT OF ENGAGED IN THAT.

THE INFORMATION CHARGES THAT THE DEFENDANT, TUNC URAZ STALKED ERIKA MELKE IN 2016, AND THAT BETWEEN AUGUST AND OCTOBER OF 2016, HE SOLICITED THREE PEOPLE TO KILL HER. TWO OF THEM WERE INMATES IN THE JAIL. ONE OF THEM WAS AN UNDERCOVER POLICE OFFICER. BASED ON THAT INFORMATION, DOES ANYBODY BELIEVE THAT THEY READ OR HEARD ABOUT THIS CASE BEFORE?

(again prosecution is using "PAST TENSE" NOT PRESENT TENSE OR ADDING "ALLEGEDLY" TO THE INFORMATION ABOVE WHEN READING "THE INFORMATION TO JURORS". AND TELLING JURORS WHERE TO GO TO "READ" ABOUT THIS CASE.

PG 98
PERRONE
THERE IS GOING TO BE INTERNATIONAL COMPONENTS ASSOCIATED WITH THIS CASE THAT YOU WILL HAVE TO MAKE A DECISION, BE HELD ACCOUNTABLE AS TO THE BIAS ISSUE. ANYBODY HERE BIASED, AS TO 14 INDIVIDUALS, AS TO WHERE WE ARE AT TODAY'S SOCIETY, BEEN THINKING THEY COULD BE FAIR AND IMPARTIAL IF AN INDIVIDUAL WAS NOT BORN IN THE U.S. WHAT DO YOU THINK ABOUT TRUMP'S IMMIGRATION PLAN?

(pg. 99 ,juror #9 naturalized U.S citizen which was excused by prosecution pg 108 without any reason).

***FACT***DEFENDANT IS A NATURAL LANSING, MICHIGAN BORN CITIZEN OF U.S.A.

PG 100
PERRONE
ALL RIGHT WE ARE ALL IN AGREEMENT THAT WE CAN SET A SIDE THE BIASES AND REMAIN FAIR AND IMPARTIAL IN THIS CASE AS IT
REVOLVES AROUND IMMIGRATION STATUS.

****FACT***DEFENDANT IS A NATURAL LANSING, MICHIGAN BORN CITIZEN OF U.S.A.

PG 102
PERRONE
WE ALSO HAD SOME TALK ABOUT MEDIA. DID ANYBODY HERE READ ANYTHING IN THE PAPER, OR HEAR ANYTHING ON THE NEWS ASSOCIATED WITH THIS CASE, THAT YOU CAN RECALL?

PG 122
PERRONE; AS FAR AS THE INTERNATIONAL COMPONENTS ASSOCIATED WITH THIS, DO YOU THINK YOU COULD BE FAIR AND IMPARTIAL GIVEN THAT THERE IS AND INTERNATIONAL CONTEX? DO YOU THINK THE INTERNATIONAL CONTEXT ASSOCIATED WITH THIS WOULD SWAY YOUR DECISION EITHER WAY?
PG 123
DOES INTERNATIONAL COMPONENT TO THIS, IN SOMEONE WHO IS AFFILIATED WITH THE CASE IS A FOREIGNER, WOULD YOU PROVIDE THEM WITH LESS CREDIBILITY?

***FACT***DEFENDANT IS A NATURAL LANSING, MICHIGAN BORN CITIZEN OF U.S.A.

PG 140
PERRONE
ANYONE ASSOCIATED WITH THE INTERNATIONAL NATURE OF THIS CASE THAT WOULD PROVIDE ANY TYPE OF INABILITY TO BE FAIR AND IMPARTIAL TO ANY OF THE JURORS? NO ONE HAS SEEN ANYTHING ON THE MEDIA OR IN THE PAPER AS IT RELATED TO THIS CASE THAT CAN BE RECALLED RIGHT NOW AT LEAST?

*4) JUROR BIAS VOIR DIRE ISSUE

10/31/2017pg 167
PERRONE:
 THERE IS GOING TO BE A SUBSTANCE ABUSE COMPONENT TO THIS CASE GIVEN THAT YOU ARE IN SUBSTANCE ABUSE, DO YOU THINK YOUR VIEWPOINT ON SOMEBODY WHO IS A SUBSTANCE ABUSER INTERFERES WITH YOUR ABILITY TO BE FAIR AND IMPARTIAL?

PG 174
PERRONE
****WOULD YOU USE MR. URAZ'S NATIONAL ORIGIN AGAINST HIM, OR WOULD YOU BE ABLE TO MAINTAIN A FAIR AND IMPARTIAL OUTLOOK REGARDLESS OF THEIR NATIONAL ORIGIN.
****(THIS QUESTION MUST HAVE ANY JURY GOOGLE DEFENDANTS NAME)***

PG 175
TRUMP TRAVEL BAN AND SOCIAL CLIMATE IN USA AS IT RELATES TO RACE?

11/02/2017

PERRONE
PG47
JUROR 10 I REMEMBER READING ABOUT THIS IN THE STATE JOURNAL
PERRONE
THAT'S OUR NEXT QUESTION
YOU READ ABOUT THIS CASE IN THE STATE JOURNAL. YOU UNDERSTAND THAT OBVIOUSLY THE STANDARDS FOR WHAT GOES IN THE PRINT ARE VERY ARE VERY DIFFERENT FOR WHAT THE STANDARDS OF WHAT GOES IN THE COURTROOM?
BASED ON WHAT YOU HAVE READ IN THE NEWSPAPER AND ONLINE, DO YOU BELIEVE YOU DECIDED ANY OF THE FACTS OF THIS CASE?

PERRONE SO WHAT THE COURT WOULD ASK YOU TO DO, WHAT WE WOULD ASK YOU TO DO, BOTH SIDES COME HERE WITH A FRESH SLATE, PUT ASIDE WHATEVER YOU MAY READ, BECAUSE THINGS MAY BE DIFFERENT. ARE YOU ABLE TO DO THAT?
JUROR 10 NO

PG 52 ROTH DISMISSES JUROR #10

PG 65
ROTH
TO JUROR 11 DO YOU BELIEVE YOU HAVE HEARD ANYTHING ABOUT THIS CASE IN THE MEDIA?
JUROR #11 NO
11/02/2017
JUDGE'S DECISION ABOUT MEDIA BIAS AND CHANGE OF VENUE
PG 82
ROTH; MR. PERRONE AND I DISCUSSED THIS MORNING, WHEN THE COURT RULED PREVIOUSLY ON THE VENUE CHALLENGE. THERE IS OBVIOUSLY A SECOND PRONG TO THE SPECIFIC RULE. THE FIRST PART OF THE COURT RULE--THERE IS SO MUCH MEDIA THAT IS IMPOSSIBLE TO GET AN APPROPRIATE JURY. THE SECOND PRONG IS, AFTER HAVING SPOKEN TO JURORS, ARE THEY ARE AN APPROPRIATE JURY, AND IN SPEAKING WITH MR. PERRONE THIS MORNING, AT LEAST BEFORE WE BROUGHT THEM IN TODAY, I THINK THE INTENT WAS THAT THEY ARE NOT ASKING THE COURT TO CONSIDER THE SECOND PRONG IN LIGHT OF THE VERY MINIMAL COVERAGE THAT IS TALKED ABOUT BY THE JURORS. BUT I WILL DEFER TO HIM ON THAT.

PERRONE YES INITIALLY I WASN'T OF THE OPINION THAT THAT WAS GOING TO CREATE AN ISSUE GIVEN THE JUROR TESTIFIED THAT HIS OPINION OF THE CASE WOULD BE AS RESULT OF HIM READING THE ARTICLE

PG83 CONTINUE
IT'S THE DEFENSE'S POSITION THAT THE INFLAMMATORY NATURE OF THE ARTICLE AND THE GENERAL
ALLEGATIONS THAT WERE TAKEN STRAIGHT FROM "SWEAR-TO", DO NOT COMPORT WITH THE FACTS OF
THIS CASE, AND WOULD INFLAME ANYONE WHO READ THAT ARTICLE(S). AND THERE ARE--IT MAKES IN
POSSIBLE AS A RESULT OF JUST THE INFLAMMATORY NATURE OF THAT ARTICLE, BASED UPON WHAT
THE JUROR TESTIFIED TO TODAY AS HIS OPINION AT READING THE ARTICLE, THAT THIS WOULD NOT BE
AN APPROPRIATE VENUE. ANYBODY WHO HAD THAT ABILITY TO READ THAT IN CIRCULATION, LOCALLY,
MORE THAN LIKELY WOULD HAVE THE SAME TYPE OF A FEELING AS INDICATED BY THAT JUROR. PRIOR
TO HIM INDICATING THAT, I WAS NOT GOING TO RENEW THE MOTION. BUT GIVEN THAT HE HAS
INDICATED, BASED UPON HIS REVIEW, IT SEEMS TO ME THE INFLAMMATORY NATURE OF THE ARTICLE
MERITS THE ARGUMENT.

JUDGE : WE HAVE 55 JURORS IN THE POOL. ONE OR TWO MAY HAVE HAD SOME CONTACT WITH THE
ARTICLE. THE OTHER ONE SAID THEY MAY HAVE SEEN IT. THEY DIDN'T KNOW, THEY DIDN'T RECALL
ANYTHING ABOUT IT. THIS PARTICULAR JUROR, WHO IS SEATED IN SEAT #10 AT THIS TIME SAID HE READ
THE ARTICLE AND HE FELT BASED ON HIS READING OF THE ARTICLE, THAT WOULD RENDER HIM UNABLE
TO BE UNBIASED.
PG84
AS TO HOW THAT SPREAD TO THE ENTIRE PANEL, IN LIGHT OF THE FACT THERE WERE ONLY THREE OF
THE PEOPLE IN THE POOL WHO SAID THEY HAD SEEN THE ARTICLE, THE COURT DOES NOT FIND THAT
THAT'S INFLAMMATORY. I CREDIT THE JUROR FOR HIS HONESTY. BUT HE WAS THE ONLY ONE WHO HAD
READ THE ARTICLE, HAD FORMED AN OPINION. THERE WERE ONLY TWO, MAYBE THREE OTHER ONES
WHO HAD READ THE ARTICLE AND SAID THEY DID NOT FORM AN OPINION. BUT I DONT SEE HOW THAT
RISES TO TAINTING THE ENTIRE POOL OR CHANGING THE VENUE BECAUSE SOMEBODY READ THE
ARTICLE.
SO BASED ON THAT I WILL STAND ON MY ORIGINAL DECISION AND DENY THE REQUEST.

HERE ARE SOME EXAMPLES OF ABOUT JURY TAINTING ISSUES:

11/03/2017
**THE ONLY WAY BIAS JURY WOULD ASK COUNTRY OF ORIGIN IS FROM ELIAS'S TESTIMONY 11/02/2017
PG 154 "DEFENDANT TEXTED HER ABOUT HIM BEING IN TURKEY" OR JUROR #1 GOOGLED MY NAME AND
FOUND OUT ABOUT IT OR PERRONE'S ASSERTION ABOUT THIS TRIAL HAS INTERNATIONAL ASPECT ON
OPENING STATEMENTS.
OR
WHEN ONE GOOGLE'S DEFENDANT'S NAME AS "TUNC URAZ" FIRST THING WILL POP (BEFORE THE NEWS
PAPER ARTICLES)
"PRESIDENT OF TURKISH STUDENT ASSOCIATION AT MICHIGAN STATE UNIVERSITY (1995)."

11/02/2017
*ROTH REFERS STALKING AS DOMESTIC VIOLENCE ON A NON DOMESTIC RELATIONSHIP WITH NO
PHYSICAL ABUSE AT ALL
 "THE QUESTION IS, IS IT GOING TO AFFECT YOU IN SUCH A WAY THAT YOU WON'T BE FAIR AND
IMPARTIAL?

***THIS "DOMESTIC VIOLENCE" COMMENT REFERRING "NON-DOMESTIC" RELATIONSHIP WITH NO ANY
PHYSICAL ASSAULT TO COMPLAINANT ERIKA MELKE IN THE HEIGHT OF "#MEETOO" MOVEMENT ONLY
INFLAMED JURY. AND NUDGE THEM TO CHECK OUT THE INTERNET ABOUT DEFENDANT.

10/20/2017 Evidentiary hearing
pg 120 newspaper article about me on
FOIA became (FOSA) FREEDOM OF SOLICITATION ACT I WAS SOLICITED BY OTHER INMATES AT JAIL
AFTER THE NEWS PAPER ARTICLE RUN ON 01/03/2017
(show the notes passed) my name is on all the food trays due to diabetic condition received sugar free items,
I WAS TRYING TO PROTECT HER LIFE AND MY LIFE FROM CRIMINALS, I WAS SCARED FOR HER AND MY

74

LIFE. I WASN'T TRYING TO GET HER HURT I WAS TRYING TO PROTECT HER.

THE ONLY DIFFERENCE DIFFERENCE IN THE CASE BELOW:
PPL V TYBURSKI, 445 MICH 606 (1994)
THERE WAS NO INTERNET AND THE INFORMATION  WAS NOT READILY AVAILABLE UNDER THE FINGER
TIPS OF INDIVIDUALS AND THE NEWS (INFORMATION) WAS NOT EASILY ACCESSABLE TO THE MASSES.

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont).**

TUNC URAZ _____, Appellant    Court of Appeals No. 343695
(Print your name)                                                    343696

**NEW ISSUE INSTRUCTIONS:** If you want the Supreme Court to look at errors that were not raised in the Court of Appeals, check **Yes** in the checkbox below and answer boxes **A, B,** and **C** for each new issue you raise. There are pages provided for 2 new issues. You may include more pages to raise additional new issues. If you do not have new issues, go to the Relief Requested section on page 10.

☒ YES, I want the Supreme Court to consider the additional grounds for relief contained in the following issues. The issues were not raised in my Court of Appeals brief.

**NEW ISSUE I:**

**A.** Write the new issue you want the Court to consider:

WAS RETAINED ATTORNEY MR. BERGSTROM VIOLATED ATTORNEY – CLIENT PRIVILEGE COMMUNICATION BY TESTIFYING AGAINST DEFENDANT AT HIS TRIAL AND PROSECUTOR KOOP BECAME A WITNESS FOR THE SAME ISSUE AT THE TRIAL? (PROSECUTION/JUDGE VIOLATED, DID NOT RESPECT NOR CONSIDER ATTORNEY/CLIENT PRIVILEGE
US v ZOLIN 491 US 554 (1980) HN2
ATTORNEYS CANNOT TESTIFY TO PRIOR WRONGDOINGS BUT TO FUTURE WRONGDOING.

**B.** The Court should review this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☒ 1.  The issue raises a serious question about the legality of a law passed by the legislature.
☒ 2.  The issue raises a legal principle that is very important to Michigan law.
☒ 3.  The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☒ 4.  The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any cases and citations, laws, or court rules, etc. that support your argument and explain how they apply to this issue. State the facts that support and explain this issue. If any facts were not presented in the Court of Appeals, explain why. You may add more pages.

See Attached Brief and exhibits about attorney-client privilege.
See 11/02/2016 Trans. for first stalking charge Sentencing where Prosecutor Koop II admits that he is a witness/conflict with second stalking charge.

Page 8

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

_Tunc Uraz_ , Appellant      Court of Appeals No. 34 3695
(Print your name)                                        34 3696

**ISSUE IV:**

**A.** Write the issue exactly as it was phrased in the Court of Appeals brief.

DID MENTALLY IMPAIRED TRAIL ATTORNEY PROVIDED "INEXPLICABLY INCOMPETENT" BEHAVIOR WITH HIS OFF REMARK QUESTIONS TO JURY DURING VOIR DIRE AND HIS REPRESENTATION BY NOT INVESTIGATING READILY AVAILABLE EVIDENCE(S) AND PRESENTING REASONABLE DOUBT(S) TO TRIAL COURT AND JURY?

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☒1. The issue raises a serious question about the legality of a law passed by the legislature.
☒2. The issue raises a legal principle that is very important to Michigan law.
☒3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☒4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

See attached list of ineffectivenesses by Ferrone
See Pretrial transcripts 08/15/17, 10/11/17, 10/20/17, 10/31/17, 05/02/17

(1) He was not ready for trial, motions were filed late See 2/13/17, 10/31/17

(2) Did not subpeana any defense witnesses because he did not get paid lost time from the county see 10/20/2017 pgs 126-147 witness Debocle, Did not know who is who. He just put names on the list so that he can turn in a witness list, did not contact any of them on the list nor subpened them nor investigated any of the witnesses. The witness list was sent to him 6 months prior to trial start date.

(3) See the witness list that was sent to him 6 months prior to trial explaining him who is who and to what they would be testifying to See 4/19 standard 4 brief

(4) MCR 9.121 (CC) asks mentally ill person to explain what is wrong with him/her. A mentally ill person would not know/understand what is wrong with her/him. They would think they are fine see (ANASOGNOSIA) Not recognizing their mental illness.

Page 6

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ _____, Appellant    Court of Appeals No. 343695
(Print your name)                                                    343696

**INSTRUCTIONS:** In the sections below, write out those issues you want to raise in the Supreme Court that were raised in the Court of Appeals in either a brief prepared by your attorney or a supplemental brief that you prepared. To raise new issues, go to page 8.

## ISSUES RAISED IN COURT OF APPEALS

**ISSUE I:**

WAS DEFENDANT'S APPELLATE COUNSEL INEFFECTIVE;

BY NOT RAISING THE ISSUES NECESSARY NOT PROPERLY INVESTIGATING ACTUAL INNOCENCE CLAIMS BASED ON AVAILABLE/DISCOVERED EVIDENCES BY DEFENDANT. APPEAL ATTORNEY APPOINTED FOR 4 YEARS TO DEFENDANT AND
*trial attorney PERRONE failed to investigate actual innocence claims and subpoena important/necessary witnesses on timely basis before trial.

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☑1. The issue raises a serious question about the legality of a law passed by the legislature.
☑2. The issue raises a legal principle that is very important to Michigan law.
☑3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☑4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

IGNORING PERRONE'S MENTAL ISSUES GOING BACK TO 2015 AND SHE WOULD/DID NOT REQUEST A SECOND GINTHER HEARING BASED ON NEWLY DISCOVERED EVIDENCE ABOUT PERRONE'S MENTAL ISSUES?

NOT BEING FULLY PREPARED FOR GITHER HEARINGS ALTHOUGH SHE HAD 18 MONTHS TO GET READY AND

FAILED TO BRING IN A MENTAL HEALTH EXPERT A PSYCHIATRIST TO EXPLAIN ON RECORD ABOUT SCHIZOPHRENIA EFFECTED BIPOLAR WITH SUBSTANCE ABUSE DISORDER AND IT'S LONG TERM EFFECTS ON HUMAN BRAIN.

INSTEAD SHE HIRED A PRIVATE INVESTIGATOR TO ASK OTHER ATTORNEYS IF THEY NOTICED PERRONE'S MENTAL ISSUES/IMPAIRMENTS.

DEFENDANT'S APPEAL ATTORNEY FAILED TO INVESTIGATE ISSUES DEFENDANT "PRESERVED ON RECORD" DURING HIS SENTENCING 01/24/2018 AND AT HIS GINTHER HEARING ON 04/13/2022 UP TO 35 ISSUES WERE PRESERVED BY DEFENDANT SINCE HIS

*See attached Briefs.*

Page 3

**4) ATTORNEY-CLIENT PRIVILEGE VIOLATION, PROSECUTOR AS A WITNESS**

A)
Was Defendant's retained attorney for his first stalking charge, Mr. Chris Bergstrom violated sacred attorney-client privilege by testifying against him during his jury trial?

B)
Did the prosecutor Mr. Koop II became a witness in defendant's trial? *See* ~~11/02/2016~~ *hearing trans: (16-1064 FH & 16-1065-FC)*
*See* ~~~~  *11/02/2006 TT*
11/02/16                                                       ~~~~   11/02/206

A: Analysis:

The trial judge abused his discretion by allowing defendant's retained lawyer to testify against him. This claim was not preserved at the trial and the original appeal briefs filed in 2019.

Courts review this issue as abuse of discretion.

On 08/23/2016 "before" the plea hearing Mr. Bergstrom "showed" an apology letter to the prosecutor Mr. Chas T. Koop II which was addressed to complainant Ms. Melke. The letter was written on 08/11/2016 in Mr. Bergstrom office.
When Mr. Uraz was charged with a second stalking charge and solicitation to Murder (3 counts) which had joined trials, the prosecutor Mr.Chas T. Koop also became a witness as Mr. Chris Bergstrom did. (see please see the e-mail messages by Mr. Bergstrom sent to Defendant's sister November 2nd. and 11th, 2016 ( attachment #    ) where Mr. Bergstrom himself declaring that "their office advised the Judge any materials requested were "protected' by the attorney client privilege that only defendant could waive." (11/11/2016).

In attorney client-privilege 3 (three) part test of US v Voigt 89 F3d 1050 (CA 3, 1996) "outrageousness" would warrant the exclusion of evidence for due process requiring defendant to show all of the following:

1) the personal attorney-client relationship between attorney and the defendant
2) deliberate intrusion into that relationship
3) Actual and substantial prejudice
Ppl V July (#354379)

Please see defendant's First plea agreement PSIR from October 2016  Defendant pled guilty to orally added CT II, dismissing CT I and OTHER CHARGES IN CTN 16-5067, WILL NOT AUTHORIZE CHARGES GOING BACKWARDS STARTING 08/23/2016 Cobb's agreement max 0-6 months. ~~~~

Please see the trial transcript 11/03/17, pages 61-80 please see the dialogue between prosecutor, Judge and defendant's attorney when judge offered "qualified immunity" to Mr. Chris Bergstrom retained attorney to testify against the defendant.

Trial Transcript pg. 61 Line 23-25 on 11/03/17:

Prosecutor Roth:

"Mr. Bergstrom has brought with him letter the Defendant provided to him to give to the prosecution at the time of his prior sentencing. The Court has already ruled that, that letter was not privileged because it was intended for "OUTSIDE" parties."

Mr. Bergstrom violated attorney client privilege and prosecutor (see evidentiary hearing rules,) since defendant did NOT testify during his trial any testimony he gave in his evidentiary hearing CAN NOT be used against him. see (Ppl v. Kanka, 2006 Mich App Lexis 3570 (2006) "If the defendant testified at the evidentiary hearing but did NOT testify at the trial the defendant's evidentiary hearing testimony could NOT be used against him on the issue of guilt. Brynum Supra at 600-601.(Ppl v. Brynum 21 Mich App 596-175 NW 2nd 870(1970) same as Walker case (Ppl v. Walker 374 Mich 331, 132 NW 2nd 87 (1965)

Evidentiary Hearing Testimony : It can only be used if the defendant testifies in trial to rebut his testimony during the trial.

In D'Angelo 401 Mich 167 (1977)
HN8 Since objective test for entrapment does not look at defendant's so called predisposition to commit the crimes charged but focuses instead upon the challenged governmental activity, the defendant will not be required to admit criminal act in order to raise the entrapment issue.

ANY TESTIMONY THE DEFENDANT GIVES AT THE ENTRAPMENT HEARINGS INCLUDING HIS POSSIBLE ADMISSION OF THE CRIME CHARGED OR SAME ASPECT OF IT, WILL NOT BE ADMISSIBLE AGAINST HIM IN THE CASE IN CHIEF FOR SUBSTANTIVE PURPOSES AS AN ADMISSION, BUT SHOULD THE DEFENDANT GIVE TESTIMONY BEFORE THE JURY IN THE CASE IN CHIEF ON A MATERIAL MATTER INCONSISTENT WITH HIS ENTRAPMENT HEARING TESTIMONY, THE PRIOR INCONSISTENT TESTIMONY MAY BE ADMITTED IN COURT'S DECISION TO IMPEACH HIS CREDIBILITY.

HN9 Ppl V. D'Angelo 401 Mich 167, Where the court said the defendant will not be required to ADMIT the criminal act in order to raise the entrapment issue.

Defendant was also asked questions about his past actions against the complainant during the evidentiary hearing. Defendants testimony was used against at his trial where defendant's where defendant did not testify at all.
(Ppl. V. Warren 401 Mich) (1977)

United States Supreme Court decision about attorney client privilege and attorneys testifying against their clients

United States v Zolin 491 U.S. 554 (1989)

HN 2 Attorney Client Privilege Exceptions
The attorney-client privilege is not without costs, Since the privilege has the effect of withholding relevant information from a fact finders it applies only where necessary to achieve its purpose.

The attorney-client privilege MUST  necessarily protect the confidences of "WRONG DOERS", but the reason for that protection-the centrality of open client and attorney communication to the proper functioning of our adversary system of justice..."cease[es] to operate at certain point, namely where desired advice refers NOT TO "PRIOR" WRONG DOING BUT TO "FUTURE" WRONG DOING" 8 Wing more, 2298 pg. 573 (emphasis in original)

Clark v. United States 289 U.S. 15 (1933)
It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy" between lawyer and client does not extent to communications "made for that the purpose of getting advice for the commission of a "fraud or crime".

2) ATTORNEY-CLIENT PRIVILEGE VIOLATION, PROSECUTOR AS A WITNESS

Ppl V Nash 418 Mich 196 (1983)
We think the attorney-client privilege should and can be  preserved even a the theory the attorney surrenders the evidence he has in his possession. The prosecution, upon receipt of such evidence from an attorney, where charge against the attorney's client is contemplated, (presently or in the future) should be well aware of the existence of the attorney-client privilege. Therefore the state when attempting to introduce such evidence at the trial should take extreme precautions to make certain that the source of evidence is not "disclosed" in the presence of the jury and prejudicial error is not committed" Olwell, Supra 64, Wash 2d 833-834.

In People V Paasche, 207 Mich App 698 (1994).
HN 10 The courts have established a procedure to protect the defendant's rights when the trial court is confronted with a potential witness who plans to assert a testimonial privilege. First, a trial court must determine whether the witness understands the privilege and must provide an adequate explanation if the witness does not. The court must then hold an evidentiary hearing outside the jury's presence to determine the validity of the witness' claim of privilege. If the court determines the assertion of the privilege to be valid, the inquiry ends and the witness is excused. If the assertion of the privilege is not legitimate in the opinion of the trial judge, the court must then consider methods to induce the witness to testify, such as contemp and other proceedings. If the witness continues to assert the privilege, the court must proceed to trial without the witness, because there is no other way to prevent prejudice to the defendant.

Defendant's  rights were violated. Thus, he should be entitled to a new trial. Upon retrial, attorney-client privilege should protected and respected.

11/03/17, pages 61-80 please see the dialogue between prosecutor, Judge and defendant's attorney when judge offered "qualified immunity" to Mr. Chris Bergstrom retained attorney to testify against the defendant.

pg. 61 Line 23-25 on 11/03/17 (see trial transcript) :

Prosecutor Roth:
"Mr. Bergstrom has brought with him letter the Defendant provided to him to give to the prosecution at the time of his prior sentencing. The Court has already ruled that, that letter was not privileged because it was intended for "OUTSIDE" parties."

*****"This ruling was not done by the courts, see Evidentiary Hearing 10/20/2017" nor it was not part of the People's motion. on 10/03/2017 and 10/23/2017. Prosecution again used day defendant's Evidentiary Hearing testimony against the defendant at his trial.

Therefore prosecution Mr. Roth committed perjury.

(see People's motion to Admit other acts evidence pursuant to MRE 404(B) dated 10/03/2017).

See People's motion to reconsider prior MRE 404(B) ruling on 10/23/2017

B.
Did the prosecutor Mr. Koop II became a potential witness in defendant's trial?
Please see attached e-mail messages from Mr. Bergstrom to defendant's sister about him and Prosecutor becoming a potential witnesses for the trial

B. Analysis

Mr. Bergstrom by showing this letter in question to Prosecutor Chas Koop II, he had been subpoenaed in this case by the same prosecutor who has seen this letter,  thereby made him and prosecutor Koop II were witnesses in this new charges (second stalking charge) see e-mail messages from Mr. Bergstrom to defendant's sister dated 11/02/2016. (attachment #17).

Ppl V Tesen 276 Mich App 134 (2007)
"We conclude that because prosecutor had assumed a lead role in investigation the case and, therefore was likely to be necessary witness at trial the disqualification order was not clearly erroneous and we affirm.

HN2 The trial courts findings of fact in regard to a motion for disqualification of counsel are reviewed for Clear Error. However, the appellate court reviews the trial court's applications of the relevant law the facts De NOVO. Further, the application of "ethical norms" to a decision whether to disqualify counsel is also reviewed DE NOVO.

HN5 The Michigan Rules of Professional Conduct prohibit attorneys from acting as a advocate at trials where they are likely to be necessary witnesses. MRPC 3.7

Ppl v Squire, 123 Mich App 700 (1983)

The trial court had erroneously ruled that if defendant's attorney testified on relevant and probative matters, the prosecution could cross-examine him on matters within the attorney-client privilege.

HN1 Michigan recognizes that party does not waive the attorney-client privilege by presenting his or her attorney as a witness to testify regarding matters not communicated by the client.
neuropathy

APPENDIX:

TESTIMONY #1

Evidentiary Hearing 10/20/2017
about the courts alleged ruling about the letter in question being admitted as a evidence

pg. 57 Line 1-25
testimony of defendant Mr. Uraz and prosecutor Johnathan Roth asking the questions

Roth: I want to show you what has been marked as proposed Exhibit M-5. There is an e-mail that you sent to her during that time correct? I say e-mail, but you sent it to her digitally somehow, I guess, is a better way of saying it.

Defendant : I gave the same letter to my lawyer

Roth: Because you wrote this, correct?

Defendant : I wrote the letter. Yes

Roth: And you gave one copy to your lawyer to give to Erika, correct?

Defendant : Yes

Roth: And  you actually sent a copy directly to her, correct?

Defendant: No, that is not my e-mail

Roth : You wrote the letter

Defendant: I wrote the letter

Roth: And you are saying this isn't an e-mail account from you?

Defendant: No

 ATTORNEY-CLIENT PRIVILEGE VIOLATION, PROSECUTOR AS A WITNESS

08/23/2016 PLEA HEARING FOR FIRST STALKING (THIS IS  THE DAY THE LETTER TO MELKE WAS SHOWN TO PROSECUTOR KOOP).

PAGE 10 LINE 13
 KOOP : FOR ADDED COUNT 2 OF AGGRAVATED STALKING CASE #  CTN 16-5607 ANOTHER COUNT OF AGGRAVATED STALKING

PAGE 10 LINES 21-25
KOOP THAT PEOPLE WOULD NOT AUTHORIZE CHARGES GOING BACKWARDS FOR THE DEFENDANT'S COURSE OF CONDUCT, OR ALLEGED COURSE OF CONDUCT CONCERNING ACCESSING THE DEFENDANT'S E-MAIL, CHANGING THE VICTIM'S E-MAIL PASSWORD, APPEARING AT HER RESIDENCE, AND CALLING HER PLACE OF EMPLOYMENT AND FOLLOWING HER, AND SLASHING OF TIRES AS WELL.

08/31/ 2016  CASE # 16-534-FH DEFENDANT REMANDED TO JAIL AT ABOUT 3:35 PM (see hearing transcript time stamp by court transcriber)
AND PROSECUTOR

***SET UP***

10/19/2016 (CASES 16-1064-FH AND 16-1065 FC) **** AGGRAVATED STALKING CASE AND SOLICITATION TO MURDER CASES WERE ALREADY JOINED ON BY PROSECUTION BEFORE EVEN DEFENDANT ARRAIGNED ON 11/10/2016 FOR SOLICITATION TO MURDER CHARGES THEREFORE FROM 08/31/2016 TILL 10/19/2016 WHERE DEFENDANT WAS HOUSED WITH GOVERNMENT AGENTS (JAILHOUSE INFORMANTS) WHEN HE HAD AN ATTORNEY ON RECORD AND THE CHARGING INFORMATION WAS ALREADY FILED UNDER CASE # 16- 1064 FH AND 16-1065 FC
**SIXTH AMENDMENT RIGHT TO COUNSEL ATTACHES WHEN "ADVERSARIAL LEGAL PROCEEDINGS HAVE BEEN INITIATED AGAINST A DAY DEFENDANT BY WAY OF INDICTMENT, INFORMATION, FORMAL CHARGE PRELIMINARY HEARING OR ARRAIGNMENT
PPL V MARSACK 231 MICH APP 364 (1998)
example:
**9/27/2016 WARRANT SIGNED BY MAGISTRATE AND PROSECUTING ATTORNEY KOOP AND AND THE OTHER CHARGING INFORMATION MUST HAVE GENERATED BETWEEN 08/31/16 and 10/19/2016 where defendant was entitled an attorney by SIXTH AMENDMENT AND FOURTEENTH AMENDMENT OF US AND MICHIGAN CONSTITUTION.


THE SENTENCING IS POSTPONED TILL 11/02/2016 SO THAT DEFENDANT COULD BE CHARGED WITH SECOND STALKING CHARGE.

 11/02/2016 CASE # 16-534-FH
Sentencing transcript for the first aggravated Stalking charge
prosecutor Koop admitting on the record that he is a potential witness for second stalking charge.


pg 3 lines 15-30
Koop : the defendant has been charged with an initial count of aggravated stalking. It is my understanding it's set for a preliminary exam conference this Friday (which was waived by Mr. Jeffrey Rothstein without my knowledge 11/04/2016, and then he was switched with Mr. Perrone,  again with out my knowledge)

PG 4 LINES 1-25
MR. BERGSTORM : AS I  UNDERSTAND THE CHARGES, THERE IS A DISTINCT POSSIBILITY THAT BOTH MYSELF AND MR. KOOP WOULD BE WITNESSES IN THIS CASE..I WOULD ASK THAT WE BE ADJOURNED

TWO WEEKS SO I CAN DETERMINE WHETHER OR NOT I'M CONFLICTED OUT. I THINK THERE IS A GOOD CHANCE I AM. I'LL TRY TO SECURE A COUNSEL AND SEE IF WE CAN ADDRESS ALL ISSUES AND BRING THIS TO A CONCLUSION BEFORE SENTENCING.
I MADE A REQUEST FOR A POLICE REPORT AND HAVEN'T SEEN THAT YET. BUT I DO HAVE MY CLIENT'S PERMISSION TO DO THAT.

JUDGE MR. KOOP?

MR KOOP : I WOULD AGREE THAT AT LEAST MR. BERGSTROM AND PERHAPS MYSELF ARE WITNESSES IN THE NEW CASE . I DONT UNDERSTAND THAT, BUT I DO AGREE, AND HAVE NO OBJECTION TO THE ADJOURNMENT FOR TWO WEEKS

line 22 pg 4
JUDGE: IF I PROCEED WITH SENTENCING TODAY, THAT TAKES CARE OF ANY POTENTIAL CONFLICT THAT WOULD FLOW DOWN TO THIS CASE ALL RIGHT?

PAGE 5 LINES
BECAUSE IF YOU WERE CONFLICTED OUT ON THE NEW CASE, I THINK, BY REFERENCE, YOU WOULD BE CONFLICTED OUT ON THIS CASE, TOO. I RATHER JUST PROCEED TODAY AND SENTENCE HIM GUIDELINES MAXIMUM AND PLACE HIM ON PROBATION.

BERGSTROM OKAY I DONT KNOW IF THE OTHER MATTER COULD BE RESOLVED AS PART OF THIS. BUT I'M CONFIDENT THERE HAS BEEN CONFLICTS WITH MR. KOOP AND I.

JUDGE I RATHER PROCEED WITH SENTENCING ON THIS TODAY

BY SENTENCING THE DEFENDANT ON 11/02/2016, JUDGE GAVE MORE LEVERAGE TO PROSECUTOR TO ADD SECOND HABITUAL ENHANCEMENT CHARGE FOR OTHER OFFENSES.

THE DEFENDANT'S FIRST EVER PLEA DEAL FELONY HE WAS SENTENCED 6 MONTHS IN JAIL WITH NO "EARNED EARLY RELEASE" NO TRUSTEE JOBS, AND 5 YEARS PROBATION,
DEFENDANT  WAS TOLD ONLY 0-3 MONTHS MAX JAIL TIME SINCE DEFENDANT HAD NO CRIMINAL HISTORY.

THEREFORE SINCE THE  COMPLAINANT RECEIVED AN ALLEGED FROM DEFENDANT WHICH WAS SHOWN TO PROSECUTOR KOOP "BEFORE" THE PLEA HEARING BY DEFENDANT'S ATTORNEY BERGSTROM, DEFENDANT SHOULD NOT HAVE BEEN CHARGED FOR THE ALLEGED LETTER AND MADE PROSECUTOR AND DEFENDANT'S ATTORNEY BOTH WITNESSES.

SINCE PERRONE DID DO ANY INVESTIGATION OR READING DEFEDANT'S LETTERS OR TRANSCRIPTS FROM 08/23/2016 AND 11/02/2106. HE DID  OBJECT PROSECUTOR KOOP ACTING  AS A PROSECUTOR IN DEFENDANT'S TRIAL WHERE HE SHOULD HAVE BEEN A WITNESS.

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ _____, Appellant   Court of Appeals No. 343695
(Print your name)                                                  343696

**NEW ISSUE II:**

**A.** Write the new issue you want the Court to consider:

WAS DEFENDANT'S TRIAL JUDGE CANADY INEFFECTIVE, BIAS, ABUSED HIS DISCRETION AND PIERCED VEIL OF JUDICIAL IMPARTIALITY. VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO FAIR TRIAL; BEFORE, DURING AND AFTER TRIAL (GINTHER HEARING) WITH HIS RULINGS WHICH DISQUALIFIED HIM AS A JUDGE BASED ON TOTALITY OF CIRCUMSTANCES? (JOINDER OF TWO CASES, EVIDENTIARY/ENTRAPMENT HEARING, 404b BAD ACTS DECISION CAUSE PREJUDICE).

**B.** The Court should review this issue because: (Check all the boxes you think apply to this issue, but you must check at least 1.)

☒ 1. The issue raises a serious question about the legality of a law passed by the legislature.
☒ 2. The issue raises a legal principle that is very important to Michigan law.
☒ 3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☒ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any cases and citations, laws, or court rules, etc. that support your argument and explain how they apply to this issue. State the facts that support and explain this issue. If any facts were not presented in the Court of Appeals, explain why. You may add more

JUDGE KNEW ABOUT PERRONE'S MENTAL ILLNESS BY 11/30/2017, BUT HE CHOOSE NOT TO REPORT IT TO AGC THEREFORE, HE BECAME A WITNESS IN GINTHER HEARINGS AND AN ACCOMPLICE BY NOT REPORTING IT AND COVERING IT UP? (MRPC 8.3e)
See Attached Briefs, Judicial Law making "People V Javens 464 Mich 1032 (2 aud)

● USED WRONG CASE LAW TO DECIDE IF THE DEFENDANT HAS BEEN ENTRAPPED OR NOT.
PPL V JONES 48 MICH APP 33
"THE COURT HELD THAT DEFENDANT COULD NOT SIMULTANEOUSLY DENY THE COMMISSION OF THE CRIME AND ASSERT THE DEFENSE OF ENTRAPMENT. HOWEVER MATHEWS V UNITED STATES, 485 U.S. 58 (1988) (LEd HN 4B) BY SCOTUS AGREED THAT ACCUSED CAN DENY THE COMMISSION OF CRIME AND ENTRAPMENT SIMULTANEOUSLY. Long standing entrapment defense rule was "abrogated" by SCOTUS

● JOINED BOTH CASES WHICH PREJUDICED EACH OTHER based on same scheme and plan by MCR 6.120 this Forced the defendant not to testify in his trial. Based on Same victim and both charges are related being extension of the stalking. "Well, it seems solicitation for murder is ultimate harassment" by judge Canady
JUDGE CANADY DID ALL OF THE ARGUMENTINSTEAD OF PROSECUTOR ON 02/28/2017 (SEE HEARING TRANSCRIPTS).

Allowed Defendants Evidenciary/Entrapment hearing to be used against him at trial and 404(b) past bad Acts decisions. Defendant did not testify at his trial.
People v. D'Angelo 401 Mich 167 (1977) HN0.8.
People V. KANKA 2006 Mich App 3570 (2006) pinpoint 4,5

JUDGE CANADY'S ABUSE OF DISCRETIONS

WHEN (DISCRETION IS) INVOKED AS A GUIDE TO JUDICIAL ACTION IT MEANS A SOUND DISCRETION, THAT IS TO SAY A DISCRETION EXERCISED NOT ARBITRARILY OR WILLFULLY, BUT WITH REGARD TO WHAT IS RIGHT AND EQUITABLE UNDER THE CIRCUMSTANCES AND THE LAW AND DIRECTED BY REASON AND CONSCIENCE OF THE JUDGE TO A JUST RESULT.
LOGNES V GREEN 282 US 531 (1931)
SUPREME COURT OF U.S.

POET V TRAVERSE CITY OST. HOSP. 433 MICH 228 (1989) MICHIGAN SUPREME COURT

**CRIMINAL PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)**

TUNC URAZ , Appellant     Court of Appeals No. 343695
(Print your name)                                                    343696

## ISSUE II:

**A.** Write the issue exactly as it was phrased in the Court of Appeals brief.

DID THE PROSECUTION USED DEFENDANT'S EVIDENTIARY HEARING TESTIMONY AGAINST HIM AT TRIAL TO INTRODUCE PAST BAD ACTS WHERE DEFENDANT DID NOT TESTIFY AT HIS TRIAL? 10/20/2017

Judge Allowed defendant's evidentiary hearing testimony against him at his trial Ppl v D'Angelo, 401 Mich 167 (1977) HN 8 and Ppl v. Kanka 2006 Mich App 3570 (2006) PIN POINT 4,5 If a defendant choose NOT to testify, defendant's evidentiary hearing testimony COULD NOT BE USED AGAINST HIM CASE IN CHIEF.                                                          think

apply to this issue, but you must check at least 1.)

☑ 1. The issue raises a serious question about the legality of a law passed by the legislature.
☑ 2. The issue raises a legal principle that is very important to Michigan law.
☑ 3. The Court of Appeals decision is clearly wrong and will cause material injustice to me.
☑ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** Explain why you think the choices you checked in "B" apply to this issue. List any <u>cases</u> and state any <u>facts</u> that you want the Supreme Court to consider even if they were not included in your Court of Appeals brief. If you think the Court of Appeals mixed up any facts about this issue, explain below. If you need more space, you may add more pages.

① See attached (filed) Brief Standard 4 filed in April/May 2019

② See Attached Malicios Prosecution Brief          by defendant

③ See Attached MSU attempted Gun Purchase post NY state Rifle and Pistol Assc. Inc Et AL V Bruen 142 Sct 2111 (2022)
See Case precedent United States V Combs 2/2/23
2023 U.S Dist Lexis 17068 Dist. Kentucky central Div (attached)

④ Abuse of Discretion Joinder MCR 6.120 Brief

⑤ Predisposition/entrapment Brief

⑥ Letter written to Judge CAVADY dtd 4/13/22 Ginther hearing w/ issues put on record. 5/23/22

⑦ Second Mental Impairment of Perrone is discovered letter to Judge 5/21/22

⑧ Probable cause hearings conferences for both cases were cancelled and never given to Defendant per MCR 766.11

∏)DISQUALIFICATION OF JUDGE CLINTON CANADY III, 30th. Circuit Court Ingham County,

MR. URAZ'S DUE PROCESS RIGHT TO FAIR TRIAL BEFORE A FAIR TRIAL TRIBUNAL WAS VIOLATED WHEN:

1) TRIAL COURT JUDGE WAS NOT DISQUALIFIED FROM PRESIDING OVER CURRENT CASES, WHEN HE HAD HAD ALREADY OVER MR. URAZ'A PPO CASES INVOLVING THE SAME COURSE OF CONDUCT AND ESSENTIALLY ALREADY FOUND MR. URAZ GUILTY OF THAT CONDUCT.

2) THE SAME JUDGE ACCEPTED PLEA DEALS (NOLLE PROSEQUE) FOR JAIL HOUSE INFORMANT IN 2011 WHO WAS A WITNESS IN DEFENDANT'S TRIAL AS A "PROFFERING JAILHOUSE WITNESS"
(Ingham county Case # 09-000033-FH and 09--001099-FH
05/03/2011 all signed by judge Canady)

3) SAME JUDGE JOINED THE BOTH CASES INTO ONE TRIAL WHICH PREJUDICED DEFENDANT AND CASE AGAINST EACH OTHER (AGGRAVATED STALKING AND SOLICITATION TO MURDER).

ISSUE OF PRESERVATION AND STANDARD OF REVIEW:

TRIAL COUNSEL FAILED/PRESERVED THIS ISSUE BY MOVING FOR DISQUALIFICATION IN THE TRIAL COURT. THE MOTION TO DISQUALIFY WAS DENIED ON 08/15/2017 AND 08/23/2017 BY THE VERY SAME JUDGE. THIS COURT REVIEWS AN ORDER DENYING THE DISQUALIFICATION OF A TRIAL JUDGE FOR AN ABUSE OF DISCRETION. CZUPRYNSKI V BAY CIRCUIT JUDGE 166 MICH APP 118, 124 420 NW 2d 141 (1988). THE TRIAL COURT'S APPLICATION OF THE LAW TO THE FACTS WHEN DECIDING A MOTION TO DISQUALIFY IS REVIEWED DE NOVO. PPL V WADE 283 MICH APP 462,469,771 NW 2d 447 (2009).

ARGUMENT:

A) DUE PROCESS, THE STATE AND FEDERAL CONSTITUTIONS, AND MCL 2.003 ALL.REQUIRE RECUSAL/DISQUALIFICATION WHERE THERE IS AN UNCONSTITUTIONAL POTENTIAL FOR BIAS.

A FAIR TRIAL IN A FAIR TRIBUNAL IS A BASIC REQUIREMENT OF DUE PROCESS.

IN RE MURCHISON, 349 US 133, 136, 71 S. CT 623, 625 99 L ED 942 (1955).
A DEFENDANT HAS THE RIGHT TO A FAIR TRIAL AND IMPARTIAL TRIAL UNDER BOTH U.S. AND MI CONSTITUTIONS. SEE U.S. CONST. AM. VI; CONST 1963 ART 1 & 20.
THIS RIGHT IS VIOLATED WHEN THE TRIAL COURT'S CONDUCT "PIERCES THE VEIL OF JUDICIAL IMPARTIALITY" PPL V CONLEY, 270 MICH APP 301,307-308 715 NW 2D 377 (2006).
RECUSAL OF A JUDGE IS REQUIRED WHEN "THE PROBABILITY OF ACTUAL BIAS ON THE PART OF THE JUDGE OR DECISION MAKER IS TOO HIGH TO BE CONSTITUTIONALLY TOLERABLE" (WITHRAW V LARKIN, 421 US 35,47,95 SCT. 1456 43 L ED 2D 712(1975).

THE US SUPREME COURT ARTICULATED A "STRINGENT RULE" IN A CRIMINAL CASE ARISING OUT OF MICHIGAN " EVERY PROCEDURE WHICH WOULD OFFER A POSSIBLE TEMPTATION TO THE AVERAGE MAN AS JUDGE....NOT TO HOLD THE BALANCE NICE, CLEAR AND TRUE BETWEEN THE STATE AND THE ACCUSED DENIES THE LATTER DUE PROCESS OF LAW." EMPHASIS ADDED. INTERNAL QUOTATION MARKS REMOVED. IN RE MURCHISON, 349 US 133, 136, 71 S. CT 623, 625 99 L ED 942 (1955). THE COURT EXPLAINED THAT STRINGENT RULE IS NECESSARY BECAUSE JUSTICE AND APPEARANCE OF JUSTICE ARE INEXORABLY TIED TO EACH OTHER " SUCH A STRINGENT RULE MAY SOMETIMES BAR TRIAL BY JUDGES WHO HAVE NO ACTUAL BIAS AND WHO WOULD DO THEIR VERY BEST TO WEIGH THE SCALES OF JUSTICE EQUALLY BETWEEN CONTENDING PARTIES. BUT TO PERFORM ITS HIGH FUNCTION IN THE BEST WAY JUSTICE MUST SATISFY THE APPEARANCE OF JUSTICE". INTERNAL QUOTATION MARKS REMOVED ID. " THE INQUIRY IS AN OBJECTIVE ONE. THE COURT ASKS NOT WHETHER THE JUDGE IS ACTUALLY SUBJECTIVELY BIASED, BUT WHETHER THE AVERAGE JUDGE IN HIS POSITION IS LIKELY TO BE NEUTRAL, OR WHAT HER/HIS THERE IS AN UNCONSTITUTIONAL POTENTIAL FOR BIAS." EMPHASIS ADDED. (CAPERTON V. AT MASSEY COAL CO, 556 US 868, 880-81,129 SCT 2252, 2261-62, 173 L ED 2D 1208 (2009)).

THE US SUPREME COURT HAS DISQUALIFIED JUDGES AND DECISION MAKERS WITHOUT A SHOWING OF ACTUAL BIAS IN SITUATIONS WHERE "EXPERIENCE TEACHES THAT THE PROBABILITY OF ACTUAL BIAS ON THE PART OF THE JUDGE OR DECISION MAKER IS TOO HIGH TO BE CONSTITUTIONALLY TOLERABLE". AMONG THE SITUATIONS IDENTIFIED BY THE COURT AS PRESENTING THAT RISKS ARE WHERE THE JUDGE OR DECISION MAKER.
1) HAS PECUNIARY INTEREST IN OUTCOME
2) "HAS BEEN THE TARGET OF PERSONAL ABUSE OR CRITICISM FROM THE PARTY BEFORE HIM
3) IN "ENMESHED IN (OTHER) MATTERS INVOLVING PETITIONER...."
4) MIGHT HAVE BEEN PREJUDGED THE CASE BECAUSE OF PRIOR PARTICIPATION AS AN ACCUSER, INVESTIGATOR, FACT FINDER OR INITIAL DECISION MAKER (ID AT 351,235 N.W. 2D 352 (CITATION OMITTED EMPHASIS ADDED).

CAIN V MDOC, 451 MICH 470, 498,548 NW 2D 210, 223 (1996)
MCR 2.003(C)(1)(B) ALSO PROTECTS A DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIBUNAL AND TRIBUNAL THAT PROVIDES THE APPEARANCE OF FAIRNESS;

1) DISQUALIFICATION OF A JUDGE IS WARRANTED FOR REASONS THAT INCLUDE, BUT ARE NOT LIMITED TO THE FOLLOWING
(B) THE JUDGE, BASED ON OBJECTIVE PERCEPTIONS, HAS EITHER (1) A SERIOUS RISK OF ACTUAL BIAS IMPACTING THE DUE PROCESS RIGHTS OF A PARTY AS ENUNCIATED IN [CAPERTON V. AT MASSEY COAL CO, 556 US 868, 880-81,129 SCT 2252, 2261-62, 173 L ED 2D 1208 (2009).] OR (2) HAS FAILED TO ADHERE TO THE APPEARANCE OF IMPROPRIETY STANDARD SET FORTH IN CANON 2 OF THE MICHIGAN CODE OF JUDICIAL CONDUCT.

IN MURCHISON, SUPRA, A TRIAL COURT JUDGE IN MICHIGAN ACTING AS ONE-MAN GRAND JURY, QUESTIONED TWO WITNESSES IN A SECRET HEARING IN CHAMBERS. THE TRIAL COURT JUDGE SUBSEQUENTLY CHARGED THE SAME WITNESS WITH PERJURY AND CRIMINAL CONTEMPT BASED UPON STATEMENTS THEY MARRIED IN THOSE SECRET CHAMBERS HEARINGS. AND, THE SAME TRIAL COURT JUDGE SUBSEQUENTLY TRIED THE CASES AND CONVICTED THE WITNESSES OF THE CHARGES.

THE U.S. SUPREME COURT HOLD "IT WAS A VIOLATION OF DUE PROCESS FOR THE "JUDGE-GRAND JURY" TO TRY THESE PETITIONERS, AND IT WAS THEREFORE ERROR FOR THE SUPREME COURT OF MICHIGAN TO UPHOLD THE CONVICTIONS"

THE COURT REVERSED THE JUDGEMENTS AND REMANDED THE CASES TO THE TRIAL COURT. MURCHISON, SUPRA, 349 US AT 139, 75 SCT AT 627.

THE JUDGE'S PRIOR RELATIONSHIP WITH THE DEFENDANT, AS WELL AS THE INFORMATION ACQUIRED FROM PRIOR PROCEEDING, WAS OF CRITICAL IMPART. THE COURT OBSERVED, "THE JUDGE WHOM DUE PROCESS REQUIRES TO BE IMPARTIAL IN WEIGHING THE EVIDENCE PRESENTED BEFORE HIM CALLED ON HIS OWN PERSONAL KNOWLEDGE AND IMPRESSION OF WHAT HAD OCCURRED

2)DISQUALIFICATION OF JUDGE CLINTON CANADY III, 30th. Circuit Court Ingham County,

IN THE GRAND JURY ROOM AND HIS JUDGMENT WAS BASED IN PART ON THIS IMPRESSION, THE ACCURACY OF WHICH COULD NOT BE TESTED BY ADEQUATE CROSS-EXAMINATION".
MURCHISON SUPRA , 349 US AT 138 75 S. CT 626, 99 L ED 942 (1955).

THIS CASE IS SIMILAR TO MURCHISON, SUPRA, HERE THE HOME INVASION CHARGE IMPLICATED THE AGGRAVATING STALKING CHARGE AS AN ELEMENT OF THAT OFFENSE, JUDGE CANADY III HAD PERSONAL KNOWLEDGE OF FACTS UNDERLYING THE OFFENSE OF AGGRAVATED STALKING FROM THE TESTIMONY PROVIDED AT THE PPO HEARING. MOREOVER, THE ISSUANCE OF THE PPO REQUIRED JUDGE CANADY TO FIND FACTS TO SUPPORT IT. SHE/HE WOULD HAD TO HAVE ALREADY FOUND MR. URAZ GUILTY OF THE UNDERLYING CONDUCT-THE SAME CONDUCT UNDERLYING THE HOME INVASION (SECOND DEGREE) AND AGGRAVATED STALKING CHARGES. WHILE THE SOLICITATION TO MURDER CASE INVOLVED DIFFERENT SET OF UNDERLYING FACTS, THEY WERE INTERRELATED, A TRIAL ON THAT CHARGE (GIVEN ALLEGATIONS) WOULD HAVE INVOLVED A FINDING THAT MR. URAZ (DEFENDANT) IS A PERSON INCLINED TO THREATEN, HARASS AND HARM OTHER INDIVIDUALS-A CHARACTERIZATION JUDGE CANADY HAD ALREADY MADE ABOUT MR. URAZ IN PPO, HOME INVASION AND STALKING CASES HE WAS PRESIDING OVER. UNDER THE CIRCUMSTANCES, THERE IS NO WAY MR. URAZ COULD HAVE EVALUATED HIS OPTION TO WAIVE HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL, KNOWING THAT H EWOULD BE FORCED TO APPEAR BEFORE A JUDGE WHO HAD ALREADY DEEMED HIM "GUILTY" OF THE UNDERLYING BEHAVIOR IN RELATED CASES. AS TRIAL COUNSEL ARTICULATED, WHILE DEFENDANT WOULD HAVE HAD THE RIGHT TO HAVE A JURY ACT AS FACT-FINDER (RATHER THAN THE JUDGE), THE JUDGE WOULD HAVE BEEN THE SOLE FINDER OF FACT, IN DECIDING MOTION FOR DIRECTED VERDICT AT THE END OF THE PROSECUTOR'S CASE IN CHIEF. FURTHER EVIDENCING THE PREJUDICE DEFENDANT IS THAT THE TRIAL COURT CALLED UPON ITS PERSONAL KNOWLEDGE OF FACTS OUTSIDE OF THE CURRENT CASE AT SENTENCING REFERENCING DEFENDANT'S TESTIMONY AT THE EVIDENTIARY HEARING PROCEEDING, WHAT ITS DEEMED AS "MONTHS" OF ABUSIVE BEHAVIOR, AND DIRECTLY RELATING THAT KNOWLEDGE TO THE IMPOSITION OF "ANY TERM OF YEAR" SENTENCE CONCURRENTLY WITH AGGRAVATED STALKING SENTENCE.
DEFENDANT WAS NOT REQUIRED TO SHOW ACTUAL BIAS, ONLY THE POTENTIAL FOR BIAS. HERE THE POTENTIAL FOR BIAS WAS SO HIGH THAT MR. URAZ NOT FEEL THAT HE COULD RECEIVE A FAIR TRIAL. HE ALERTED (TRIED) THE TRIAL COURT TO THIS THROUGH HIS TRIAL COUNSEL (WHOM CHECKED HIMSELF TO PSYC-WARD 3 DAYS AFTER THE TRIAL) BUT ULTIMATELY WENT TRIAL ON JOINED CASES RATHER THAN FACED WITH THE CHOICE BETWEEN PLEADING GUILTY AND TRIAL BEFORE JUDGE WHO WAS ENMESHED IN HIS CASE. HE ASKS THIS COURT TO REVERSE. THE DENIAL OF HIS MOTION TO DISQUALIFY JUDGE CANADY AND REMAND THE FOR PROCEEDINGS BEFORE A DIFFERENT JUDGE.

HERE ARE SOME EXAMPLES OF JUDGE CANADY'S BIAS DECISIONS:

"Well, it seems solicitation for murder is ultimate harassment" (2/28/2017 pg.3, #16-1064-FH, 16-1065-FH)
pg.11 "why severe it? then it becomes a judicial economy issue because even it's severed jury is going to want to know how did we get here? (Stalking vs Solicitation to murder)

Judge CANADY did all the talking and arguments

ABA Standards on joinder offenses which provide

a) whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to severance of the offenses
b) The court, on application of the prosecuting attorney, or on application of the defendant other that under subsection (a) should grant a severance of offenses whenever (i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or (ii) if during trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

In severance context, a court should consider whether in view of the number of offenses charged and complexity of

the evidence to be offered, a trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

In severance context, a trial court must first determine whether the offenses are joined solely because they are of the same or similar character. If they are, severance is MANDATORY. If they are not, the court must then decide whether severance would promote a just determination of guilt or innocence as to each offense

In a severance context, if charges are joined solely because they are of the same or similar character, a defendant has an ABSOLUTE RIGHT TO SEVER. But that is not to say that severance will not lie when the offenses are not joined solely because they are of the same or similar character. In that circumstance, severance may still be appropriate, although not mandated, because a trial court must determine whether a trier of fact will be able to fairly and intelligently judge each offense. The trial court is vested with discretion in this matter, and in the exercise of that discretion it must balance the interest of the defendant with the interest of the State.

In a severance context, a trial court must look to the number and complexity of the offenses charged and determine whether a trier of fact can PARSE the evidence and apply the law with regard to each charge. If the trier of fact CANNOT DO SO FAIRLY, AND INTELLIGENTLY, SEVERANCE WOULD BE IN ORDER.

JUDGE CANADY PIERCED VEIL OF JUDICIAL IMPARTIALITY AND VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO FAIR TRIAL
JUDICIAL PARTIALITY
1) the trial Judge's use of hostile argumentative and prosecutorial tone
2) the fact that witnesses' testimony was not complete
3) The judge's questions at defendant's witnesses or defendant friendly witness were frequentl combative hostile and designed to impeach.
4) the questions were imbalanced in favor of the prosecution in both frequency and manner. The judges curative instructions

3)DISQUALIFICATION OF JUDGE CLINTON CANADY III, 30th. Circuit Court Ingham County,

confidential with his actions throughout the trial and were not sufficient to overcome the partiality the judge exhibited against the defendant.
Ppl v John Granderson, Ppl v Thomas Jr, 02/18/29 COA # 325315, 325530

Cooper v Aaron, 358 Us 1 78 Sct. 1401 (1958) Note: ANY JUDGE WHO DOES NOT COMPLY WITH HIS OATH TO THE CONSTITUTION OF THE UNITED STATES, WARS AGAINST THAT CONSTITUTION AND ENGAGES IN ACTS IN VIOLATION OF THE SUPREME LAW OF THE LAND. "THE JUDGE IS ENGAGED IN ACTS OF TREASON". NOTE ; ART. VI. THIS CONSTITUTION (1791)

THE U.S. SUPREME COURT HAS STATED THAT "NO STATE LEGISLATOR OR EXECUTIVE OR JUDICIAL OFFICER CAN WAR AGAINST THE CONSTITUTION WITHOUT VIOLATING HIS UNDERTAKING TO SUPPORT IT." see Also: In Re Sawyer, 124 US 200 (1888), US V Will 449 US 200; 216 101 S.Ct. 471 66 L Ed. 2d. 392 406 (1980); Cohens v Virginia 19 US (6 Wheat) 264, 404 5 L Ed. 25 (1821).

JUDGE CANADY'S "ABUSE OF DISCRETIONS" TO DISQUALIFY HIM

1) Blocked Defendant's Phone and video visit privileges based on false allegations, and forced defendant to speak English to his family (son, wife, sister, brother) who are residing in Turkey for 11 months 09/13/2016- 07/13/2017.

2) Allowed bias jury to sit in 6 days right until jury deliberations started and switched him with an alternative. Judge did not have a Remmer hearing that provides defendant with a meaningful opportunity to prove juror bias. see trial transcripts (11/03/2017)
Remmer v US 347 US 227 (1954).

3) USED WRONG CASE LAW TO DECIDE IF THE DEFENDANT HAS BEEN ENTRAPPED OR NOT.
PPL V JONES 48 MICH APP 33
"THE COURT HELD THAT DEFENDANT COULD NOT SIMULTANEOUSLY DENY THE COMMISSION OF THE CRIME AND ASSERT THE DEFENSE OF ENTRAPMENT. HOWEVER MATHEWS V UNITED STATES, 485 U.S. 58 (1988) (LEd HN 4B) BY SCOTUS AGREED THAT ACCUSED CAN DENY THE COMMISSION OF CRIME AND ENTRAPMENT SIMULTANEOUSLY. Long standing entrapment defense rule was "abrogated" by SCOTUS

4) JOINED BOTH CASES WHICH PREJUDICED EACH OTHER based on same scheme and plan by MCR 6.120 this Forced the defendant not to testify in his trial. Based on Same victim and both charges are related being extension of the stalking. "Well, it seems solicitation for murder is ultimate harassment" by judge Canady
JUDGE CANADY DID ALL OF THE ARGUMENTINSTEAD OF PROSECUTOR ON 02/28/2017 (SEE HEARING TRANSCRIPTS).

5) ALLOWED SAME ATTORNEY TO CONTINUE REPRESENT DEFENDANT REGARDLESS OF HIS SHORTCOMINGS (NO INVESTIGATION OF WITNESSES, NOT FILING MOTIONS ON A TIMELY MANNER, NOT FILING WITNESS LIST ON TIME AS OF 10/18/2017 FOR A TRIAL ABOUT TO START ON 10/31/2017
See 05/02, 08/15, 10/11, 10/20 2017 pretrial hearing transcripts

6) FORCED DEFENDANT TO HAVE HIS GINTHER HEARING ON ZOOM RATHER THAN IN PERSON.

7) Appointed mentally deficient attorney knowingly who ~~checked himself~~ *was taken* to psychology ward 3 days after the trial, *and hismonte ( issues gary back to 2015*

8) Had private meeting after attorney released from the hospital in his chambers but did not have "conflict-free" attorney to represent defendant in that meeting on 12/13/2017.
Downs v Commonwealth KY 2020 Lexis 222 (2020)

9)Allowed prosecutor Koop to continue as a prosecutor although he became a witness in the trial by seeing a letter written by defendant to complainant shown by defendant's attorney at that time. Ppl v Tesen 276 Mich App 134

10) Allowed defendant's then attorney to testify against him (for his alleged past crime not future) at his trial for

defendant's first stalking charge.
US v ZOLIN 491 US 554 (1980) HN2
ATTORNEYS CANNOT TESTIFY TO PRIOR WRONGDOINGS BUT TO FUTURE WRONGDOING.

11) Allowed defendant's Turkish Consulate visit but put a deputy at the door of the meeting to make sure that consulate representative and defendant to speak English only to each other. (VCCR Article 36). Vienna convention of Counselor Relations.

12) Allowed defendant's evidentiary hearing testimony against him at his trial Ppl v D'Angelo, 401 Mich 167 (1977) HN 8 and Ppl v. Kanka 2006 Mich App 3570 (2006) PIN POINT 4,5  If a defendant choose NOT to testify, defendant's evidentiary hearing testimony COULD NOT BE USED AGAINST HIM CASE IN CHIEF.

13) Allowed jailhouse informants testimony in trial although defendant had a attorney attached (violation of SIXTH amendment rights)  at that time and did not impeach the informants based on their criminal history(He was a judge before to one of the informants)
US V Henry 477 US 264  SCOTUS (1980).Intentionally creating a situation likely to induce the defendant to make incriminating statements without the assistance of counsel
Brewer V Williams 430 US 387 (1977)
Massiah v US 377 US 201(1964)

14) Charged defendant 2 attorney fees, 2 court costs, 2 fees for the joined trials, 2 DNA fees (Ppl v ORT 2020 Mich App Lexis 4049). Charged defendant restitution for uncharged, unproven conducts.

15) Allowed hearsay testimony from prosecution witnesses

16) Did no give the correct criminal jury instructions to jurors. (purposefully sought) see 10.6 Solicitation to Commit a Felony.

17) Judge did not have an objective test of entrapment focuses on proprietary of the government conduct which resulted in the charges against the defendant's "predisposition" to commit the crime charged.
Ppl v D'Angelo, 401 Mich 167 (1977).
PPL V ALTMAN 1998 MICH APP LEXIS 2548 (1998)
The participation of a police officer posing as an assassin for hire, could not support an entrapment defense because the plans ORIGINATED WITH DEFENDANT. In this case undercover police officer ENGAGED THE DEFENDANT WITH HIS OWN PLANS THEREFORE IT WAS AN ENTRAPMENT.

18)Judge  Cancelled his bond when Solicitation to murder is a non violent crime see MCL 777.9a which deserves a bond see Ppl v Javens 469 Mich 1032 (2004). Doctrine of absurd results and judicial law making.

19) allowed Brady information first day of trial without giving enough time to lawyer, did not question prosecution being late disclosure

4) DISQUALIFICATION OF JUDGE CLINTON CANADY III, 30th. Circuit Court Ingham County,

20) ALLOWED PROSECUTION USE WRONG LAWS AT 404b MOTIONS AND ALLOWED A VERY PREJUDICIAL MSU GUN INCIDENT BACK INTO 404B BAD ACTS ON THE FIRST DAY OF TRIAL AFTER HE DECIDED NOT TO ALLOW IT, BEING TO PREJUDICIAL ON 10/20/2017 EVIDENTIARY HEARING

21) UNREPORTED MENTAL DISABILITY OF LAWYERS BY COURTS IS CONSIDERED A "MISCONDUCT" BY ABA STANDARDS RESOLUTION 102.106(2015).

22) 30th. CIRCUIT COURT JUDGE CANADY AND CHIEF JUDGE GARCIA THEN  FAILED TO REPORT ATTORNEY MR. PERRONE'S MENTAL INCAPACITATION TO ATTORNEY GRIEVANCE COMMISSION. PER : MRPC 8.3(a) Reporting Professional Misconduct :
(a) A lawyer having a knowledge that another lawyer has committed a significant violations of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or FITNESS as a lawyer shall inform the Attorney Grievance Commission.
Notes : Self-regulations of the legal profession requires when they know of a violation of the Rukest of Professional Conduct (MPRC). Lawyer have a similar OBLIGATION with respect to judicial misconduct. An apparently isolated violation my indicate a pattern of misconduct that only a disciplinary investigation can uncover. REPORTING A VIOLATION is especially important where the VICTIM is unlikely to discover the offense.
If a lawyer were obliged to report every violation of the rules, the failure to report any violation would it self be a professional offense. Such a requirement existed in many jurisdictions but proved to be unenforceable. This rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A measure of judgement is, therefore required in complying with the provisions of this rule. The term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.

In, Grievance Administration V Fieger, 476 Mich 231 (2006) Michigan Supreme Court.
HN33
IN OTHER WORDS, A JUDGE IS OBLIGATED TO INFORM THE ATTORNEY GRIEVANCE COMMISSION ON ATTORNEY'S PERCEIVED MISCONDUCT; TO FAIL TO DO SO IS TO VIOLATE ON EXPLICIT ETHICS RULE. THIS RULE DOES NOT DISTINGUISH BETWEEN A JUDGE WHO OBSERVES THE ALLEGED MISCONDUCT AND A JUDGE WHO IS THE OBJECT OF IT. BUT UNDER JUSTICE WEAVER'S REASONING, A JUDGE MUST EITHER TURN A BLIND EYE TO ATTORNEY MISCONDUCT OR RISK DISQUALIFICATION. THI CANNOT BE. ON THE CONTRARY, A JUDGE WHO MEETS HIS OR HER ETHICAL OBLIGATION TO REPORT ATTORNEY'S MISCONDUCT IS NOT THEREBY ASSUMED TO BE BIASED OR UNABLE TO REVIEW IMPARTIALLY CASES THAT CAME BEFORE HIM OR HER.
ABUSE OF DISCRETION EXAMPLES
02/28/2017 TT pgs 3-15
JUDGE:BUT IT IS THE SAME VICTIM
DISTINGUISHING FACTOR BETWEEN STALKING AND SOLICITATION BECAUSE SHE DOESNT HAVE KNOWLEDGE.
NICHOLS:SO IT IS NOT NECESSARILY MOTIVE. IT'S STATE OF MIND ALTHOUGH MOTIVE IS STATE OF MIND.
JUDGE:IF WE SEVERED IT, IT WOULD STILL SEEM THAT'S GOING TO BE RELEVANT TO GIVE THE JURY THE INFORMATION ABOUT HOW DID HE GET HERE.

PERRONE:MCR 6.120 THIS IS NOT A SAME CONDUCT, SERIES OF CONNECTED ACTS OR A SINGLE PLAN OR SCHEME.

JUDGE:ISNT IT THE SAME CONDUCT JUST TAKEN TO DIFFERENT LEVEL?
BECAUSE SOLICITATION IS RELEVANT WHY SEVERE IT?
THEN BECOMES JUDICIAL ECONOMY BECAUSE PROSECUTION WOULD MOTION, THAT IT'S GOING TO BE RELEVANT. 'WE ARENT GOING TO BE ABLE TO HAVE A TRIAL AND HAVE PROBLEMS WITH URAZ DEFENDING HIS SOLICITATION OF MURDER IN VACUUM BECAUSE JURY IS GOING TO WANT TO KNOW HOW DID HE GET HERE, WHY IS HE DOING THIS, WHAT ISTHE NATURE OFTHIS, WHAT IS THE NATURE OF THEIR RELATIONSHIP, WHAT HAS HPPENED BEFORE , SO TO ME IT SEEMS MORE THAT'S A CONNECTED SERIES OF ACTS VERSUS SPECIFICALLY WHAT HAPPENED.

PERRONE:AS FAR AS THE SAME CONDUCT, THIS IS ISOLATED IN TIME FOR THE SAME CONDUCT TO THE GROUNDS ARISING TO FACILITATE JOINDER.

JUDGE: MCR 6.120 (B)(1)
JOINDER IS APPROPRIATE IF OFFENSES ARE RELATED BASED ON
-SAME CONDUCT OR TRANSACTION OR SERIES OF CONNECTED ACTS (WE DO HAVE A SERIES OF CONNECTED ACTS) 0R SERIES OF ACTS CONSTITUTING PARTS OF A SINGLE SCHEME OR PLAN. FOCUSING ON THE VICTIM.

PERRONE: MCR 6.120(B)(2) POTENTIAL FOR CONFUSION OR PREJUDICE , SOLICITATION CASE WULD BE TRIED BASED ON STALKING EVENTS, SIGNIFICANTLY CONFUSE THE JURY

10/20/2017 EVIDENTIARY HEARING  HEARSAY DECISION BY JUDGE
pg 20 LINE 6-25
ROTH: THE THIRD PART OF THE NOTE, IS THIS ALSO PART OF THE SAME CONVERSATION OR A SEPARATE (MAP)?
URAZ: NO IT WAS STOLEN FROM ME.
ROTH : STOLEN FROM YOU?
URAZ: BECAUSE THIS IS PART OF MY OTHER DOCUMENTS. (MY JOURNAL)
ROTH: OK SO THIS IS NOT A NOTE PASSED BETWEEN YOU TWO?
URAZ: NO
ROTH: VERY GOOD I HAVE  NO OBJECTION TO THE ADMISSION OR WHAT WAS DESCRIBED AS ONE AND TWO (NOTES). TO THIS POINT I DONT THINK THERE IS ANY RELEVANCE TO NUMBER THREE (MAP). AND HE IS SAYING THIS WAS NOT GIVEN TO SOMEBODY

JUDGE:  BUT HE SAID HE WROTE IT

ROTH:  HE SAID HE WROTE IT, WHICH WOULD BE HEARSAY. AS I UNDERSTAND IT, PAGES ONE AND TWO ARE ADMITTED TO SHOW THE EFFECT ON THE LISTENER'S THE EFFECT ON THE DEFENDANT, IF THE DEFENDANT IS TESTIFYING TO PAGE 3 (MAP) WAS NOT GIVEN TO SOMEBODY, THEN IT WOULDN'T HAVE THAT RELEVANCE. SO I HAVE NO OBJECTION TO ADMITTING PAGES ONE AND TWO (NOTES)

JUDGE: BUT IT WOULDN'T BE A HEARSAY IT'S HIS DOCUMENT THAT HE WROTE

ROTH:RIGHT AND SO WE CAN PUT IN BECAUSE HE IS OUR PARTY OPPONENT. BECAUSE IT'S HIS OWN "PARTY", IT WOULDN'T BE APPLICABLE

PERRONE:  IF YOU LOOK THIS MAP, THE NATURE OF DRAWING ON THE MAP AND THAT COULD BE INDICATIVE OF DEFENDANT'S "MENTAL STATE"  AT THE TIME OF THE DRAWING OF THE MAP.
JUDGE: I HEAR YOU SO THIS IS AN EVIDENTIARY HEARING, SO I AM GOING TO ALLOW IT.
ROTH:THAT'S FINE, I ASK THAT IT WILL BE SEPARATES A AND B
pg 21 line 19
JUDGE: "A" SHOULD BE TWO PAGES THAT WERE ACTUALLY AUTHORED BY MR. URAZ AND EXCHANGED WITH OTHER PERSONS. THAT'S A TWO PAGE DOCUMENT. AND THAN THEN EXHIBIT "B"  IS A DOCUMENT THAT IS THE "MAP"

## RELIEF REQUESTED

**9.** For the above reasons I request that the Supreme Court grant my application for leave to appeal or order any

other relief that it decides I am entitled to receive.

_04/11/2023_
(Date)

_Tunc Uraz_
(Sign your name)

_TUNC URAZ   114653_
(Print your name and, if incarcerated, MDOC number)

_Muskegon Correctional facility_
(Print the name of the correctional facility if incarcerated)

_2400 S. Sheridan Dr._
(Print your address or address of the correctional facility)

_Muskegon, MI  49442_

**After this page, you should attach copies of the trial court and Court of Appeals decisions
being appealed and any other required documents, such as the PSIR or transcript of jury
instructions (if the PSIR or transcript were not filed with the Court of Appeals).**

Page 10

# IN THE MICHIGAN SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v   *TUNC URAZ*

(Print your name)

Defendant-Appellant.

Supreme Court No. _____
(leave blank)

Court of Appeals No. 343695, 343696
(See Court of Appeals decision)

Trial Court No. 16-001004-FH; 16-001065-FC
(See Court of Appeals brief or PSIR.)

## MOTION TO WAIVE FEES

For the reasons stated in the affidavit of indigency below, I request that this Court GRANT a waiver pursuant to MCR 7.319(C) of all fees required for filing the attached pleading because I am indigent and the provisions of MCL 600.2963 requiring prisoners to pay filing fees do not apply to appeals from a decision involving a criminal conviction.

04/11/2023
(Date)

*Tunc Uraz*
(Sign your name)

TUNC URAZ 114653
(Print your name and, if incarcerated, MDOC number)

RECEIVED
APR 14 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

## AFFIDAVIT OF INDIGENCY

My name and MDOC number (if incarcerated) are  TUNC URAZ 114653

I am incarcerated at  Muskegon Correctional facility  in  Muskegon, MI 49442
(Name of correctional facility)          (City, state and zip code)

I attest that I cannot pay the filing fee. (Check the boxes that apply to you.)

☒ My only source of income is from my prison job and I make $ 11.00 per day. Month
☒ I have no income.
☒ I have no assets that can be converted to cash.
☒ The Court of Appeals waived my fees in that court.

I declare that the statements above are true to the best of my knowledge, information and belief.

04/11/2023
(Date)

*Tunc Uraz*
(Sign your name)

TUNC URAZ 114653
(Print your name and, if incarcerated, MDOC number)

Muskegon Correctional Facility
(Print name of correctional facility if incarcerated)

2400 S. Sheridan Dr
(Print your address or address of correctional facility)

Muskegon MI 49442

Page 11

## IN THE MICHIGAN SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Supreme Court No. _____
(Leave blank)

v

Plaintiff-Appellee,

Court of Appeals No. _343695, 343696_
(See Court of Appeals decision)

_TUNC URAZ_

(Print your name)

Trial Court No. _16-001064-FH & 16-001065_ FC
(See Court of Appeals brief or PSIR)

Defendant-Appellant.

---

## PROOF OF SERVICE

On _04_ / _11_, 20_23_, I mailed by U.S. mail 1 copy of the documents checked below:

☑ Application for Leave to Appeal
☑ Copy of Trial Court decision being appealed
☑ Copy of Court of Appeals decision being appealed
☑ PSIR (required **only** if you are raising an issue related to the sentence imposed on your conviction **and** the PSIR was not previously filed with the Court of Appeals)
☑ Transcript of jury instructions (required **only** if you are raising an issue related to a jury instruction at trial **and** the transcript was not previously filed with the Court of Appeals)
☑ Motion to Waive Fees / Affidavit of Indigency
☑ Proof of Service
☑ Other: _Attorney Grievance Commission, Grievances and responses from attorneys. Defendants rebuttals._

***You do not have to provide any briefs or other documents filed in the trial court or Court of Appeals***

TO: _Ingham County_ County Prosecutor
(Name of county)
_303 W. Kalamazoo St, 4th floor_
(Street address)
_LANSING_, MI _48933_
(City)          (Zip Code)

I declare that the statements above are true to the best of my knowledge, information and belief.

_04/11/2023_
(Date)

_Tunc Uraz_
(Sign your name)

_TUNC URAZ 116653_
(Print your name and, if incarcerated, MDOC number)

_Muskegon Correctional facility_
(Print name of correctional facility if incarcerated)

_2400 S. Sheridan Dr._
(Print your address or address of correctional facility)

_Muskegon, MI 49442_

RECEIVED
APR 14 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

Page 12

**COVER LETTER**

04/11/2023
(Date of mailing to the Supreme Court)

RECEIVED
APR 14 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

Clerk's Office
Michigan Supreme Court
Hall of Justice
P.O. Box 30052
Lansing, MI 48909

RE:   PEOPLE OF THE STATE OF MICHIGAN v   TUNC URAZ
(Print your name)

Supreme Court No. _____   (Leave blank - the Clerk will assign a number for you.)
Court of Appeals No. 343695, 343696 (Get this number from the Court of Appeals decision.)
Trial Court No. 16-001064-FH   (Get this number from Court of Appeals brief or the PSIR.)
16-001065-FC

Dear Clerk:

Enclosed please find the originals of the documents checked below.  (Put a check mark in the boxes of the documents you are sending.)  I am indigent and cannot provide four copies.  ⊗

☒ Application for Leave to Appeal
☒ Copy of Trial Court decision
☒ Copy of Court of Appeals decision
☒ PSIR (required **only** if you raise an issue related to the sentence imposed on your conviction **and** the PSIR was not previously filed with the Court of Appeals)
☒ Transcript of jury instructions (required **only** if you are challenging an instruction on appeal **and** the transcript was not previously filed with the Court of Appeals)
☒ Motion to Waive Fees / Affidavit of Indigency
☒ Proof of Service
☒ Other  Attorney Grievance Commission Grievances filed or Responses sent

***You do not have to provide any briefs or other documents filed in the trial court or Court of Appeals***

Tunc Uraz
(Sign your name)
TUNC URAZ 114653
(Print your name and, if incarcerated, MDOC number)
Muskegon Correctional facility
(Print name of correctional facility if incarcerated)
2400 S. Sheridan Dr.
(Print your address or address of correctional facility)
Muskegon, MI 49442

Copy sent to:
Ingham County 30th. Circ Ct
Prosecutor

### INSTRUCTIONS

1.   You will need 2 copies <u>and</u> the originals of this letter and the pleadings listed above.

2.   Mail the originals of this letter and the pleadings to the Supreme Court Clerk.

3.   Mail 1 copy of this letter and the pleadings to the prosecutor.

4.   Keep 1 copy of this letter and the pleadings for your file.

RECEIVED by MSC 5/23/2023 1:35:39 PM

STATE OF MICHIGAN

IN THE SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,
     Plaintiff-Appellee,

Supreme Court No. 165560

Court of Appeals Nos. 343695; 343696

V

LC Nos. 16-1064-FH; 16-1065-FC

TUNC URAZ,
     Defendant-Appellant.

_____/

**PEOPLE'S ANSWER TO DEFENDANT'S
APPLICATION FOR LEAVE TO APPEAL**

JOHN J. DEWANE
     INGHAM COUNTY PROSECUTING ATTORNEY

KAHLA D. CRINO
     APPELLATE DIVISION CHIEF

BUSINESS ADDRESS:
     303 W. Kalamazoo Street, 4th Floor
     Lansing, Michigan 48933

The People of the State of Michigan, through Ingham County Prosecutor, John J. Dewane, and Assistant Prosecuting Attorney, Kahla D. Crino, ask this Court to deny Defendant Tunc Uraz's application for leave to appeal, and state as follows:

1. Defendant filed an application for leave in this Court on April 14, 2023.

2. Defendant's application (at least as served on the People) consists of a series of loose pages and stapled packets. The bundle includes some of the documents from the Attorney Grievance Commission (AGC) complaints that Defendant filed against the trial and appellate attorneys in his case.

3. Defendant appears to raise the same arguments that he raised in the Court of Appeals (though some of them are phrased differently than they were in the Court of Appeals). To that extent, the People rely on and incorporate their post-remand brief on appeal (Attachment 1) and post-remand brief in response to Defendant's post-remand supplement (Attachment 2).

4. Defendant also raises additional arguments regarding his AGC complaints. Defendant's AGC documents are not a part of the record in this case. At this time, the People decline to answer anything pertaining to the AGC because those issues are not properly before this Court as a part of the appeal from Defendant's convictions.[1]

---

[1] Undersigned counsel would share any AGC related documents in her possession if requested by the Court. The AGC complaints against Jonathan Roth, Charles Koop, and undersigned counsel have been unsubstantiated and closed by the AGC. Undersigned counsel is not directly aware of what happened with Defendant's other AGC complaints.

2

RECEIVED by MSC 5/23/2023 1:35:39 PM

5. The bundle of documents that Defendant served on the People also raises many numerous new arguments that Defendant did not advance in the Court of Appeals or trial court. While it is true that submissions from pro se litigants are to be "liberally construed" and are to be held to "less stringent standards," the People have struggled to ascertain Defendant's arguments, and thus cannot provide a direct response at this time. *See Estelle v Gamble,* 429 US 97, 106; 97 SCt 285; 50 LEd2d 251 (1976).

6. However, from what the People can decipher, none of the new arguments call for this Court to deviate from its usual practice of declining to address arguments that were not properly raised below.[2]

7. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998). However, if this Court has been more successful than the People at ascertaining Defendant's new arguments and has interest in any of them, the People would file a supplemental answer if directed by the Court.

---

[2] "Issues raised for the first time on appeal are not ordinarily subject to review." *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993).

RECEIVED by MSC 5/23/2023 1:35:39 PM

8. The Court of Appeals decision affirming Defendant's convictions was not clearly erroneous and will not cause material injustice. MCR 7.305(B)(5)(a).

9. The Court of Appeals decision affirming Defendant's convictions does not conflict with a Supreme Court decision or another decision by the Court of Appeals. MCR 7.305(B)(5)(b).

10. Defendant's application does not demonstrate any of the other grounds for granting leave to appeal. MCR 7.305(B)(1)-(3).

11. In sum, Defendant's application raises no issues worthy of this Court's review, and it should be denied.

## RELIEF REQUESTED

WHEREFORE, the People respectfully request that this Court deny Defendant's Application for Leave to Appeal.

*/S/ Kahla D. Crino*

Dated: May 23, 2023

_____
Kahla D. Crino (P71012)
Appellate Division Chief

## CERTIFICATION OF WORD COUNT

There are 617 countable words in this brief.

*/S/ Kahla D. Crino*

Dated: May 23, 2023

_____
Kahla D. Crino (P71012)
Appellate Division Chief

4

RECEIVED by MSC 5/23/2023 1:35:39 PM

## CERTIFICATE OF SERVICE

On May 23, 2023, I served a copy of the People's Answer to Defendant's

Application for Leave to Appeal on:

Tunc Uraz (MDOC #114653)
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI

I declare that the statements above are true to the best of my knowledge, information,

and belief

/s/ Lisa Renee Davis
_____

Lisa Renee Davis

STATE OF MICHIGAN
IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,
    Plaintiff-Appellee,

Court of Appeals Nos.
343695 & 343696

V

Circuit Court Nos.
16-1065-FC & 16-1064-FH

TUNC URAZ,
    Defendant-Appellant.

_____/

**PEOPLE'S SUPPLEMENTAL BRIEF ON APPEAL (POST-REMAND)**
**ORAL ARGUMENT REQUESTED**

CAROL A. SIEMON (P32946)
    INGHAM COUNTY PROSECUTING ATTORNEY

KAHLA D. CRINO (P71012)
    APPELLATE DIVISION CHIEF

BUSINESS ADDRESS
    303 W. Kalamazoo Street, 4th Floor
    Lansing, MI 48933
    (517) 483-6228
    kcrino@ingham.org

RECEIVED by MSC 5/23/2023 1:35:39 PM

# TABLE OF CONTENTS

Table of Authorities ................................................................................ iii

Statement of Appellate Jurisdiction and Judgment Subject to Appeal ............... iv

Counter-Statement of the Question Involved ........................................ v

Counter-Statement of Facts ................................................................ 1

Argument ........................................................................................ 13

    I.    Defendant's *Ginther* hearing revealed that: 1) Defendant's attorney, Mr. Perrone was diagnosed with a mental illness *after* Defendant's trial; 2) Mr. Perrone did not exhibit symptoms of his mental illness *during* Defendant's trial, and 3) Mr. Perrone provided effective assistance of counsel. Defendant did not establish the factual predicate for his ineffective assistance claim or actual prejudice. The trial court did not abuse its discretion by finding that Mr. Perrone provided effective assistance of counsel and denying Defendant's motion for new trial. ................... 13

    Relief Requested ........................................................................ 25

RECEIVED by MSC 5/23/2023 1:35:39 PM

# TABLE OF AUTHORITIES

**Cases**

*Cullen v Pinholster*, 563 US 170; 131 S Ct 1388; 179 L Ed 2d 557 (2011) ................ 14

*Harrington v Richter,* 562 US 86; 131 S Ct 770; 178 L Ed 2d 624 (2011) .......... 14, 15

*In re Ayres,* 239 Mich App 8; 197 NW2d 106 (1999).................................................... 18

*People v Carbin,* 463 Mich 590; 623 NW2d 884 (2001) ............................................. 14

*People v Dendel,* 481 Mich 114; 748 NW2d 859 (2008) ............................................. 14

*People v Hopson,* 178 Mich App 406; 444 NW2d 167 (1989)...................................... 18

*People v LeBlanc*, 465 Mich 575; 640 NW2d 246 (2002) ..................................... 13, 14

*People v Orlewicz*, 293 Mich App 96; 809 NW2d 194 (2011)...................................... 14

*People v Stewart* (On Remand), 219 Mich App 38; 555 NW2d 715 (1996) ................ 16

*Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)... 15, 22

*Wiggins v Smith,* 539 US 510; 123 S Ct 2527; 156 L Ed 2d 471 (2003) .................... 15

**Rules**

MRE 404(b) ................................................................................................................... 21

iii

RECEIVED by MSC 5/23/2023 1:35:39 PM

**STATEMENT OF APPELLATE JURISDICTION AND JUDGMENT
SUBJECT TO APPEAL**

On March 6, 2020, this Court remanded to the trial court for a *Ginther*.[1] In its

order, this Court stated that it retained jurisdiction. On August 8, 2022, the trial

court found that Defendant was not denied effective assistance of counsel.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1993).

RECEIVED by MSC 5/23/2023 1:35:39 PM

**COUNTER-STATEMENT OF THE QUESTION INVOLVED**

**I.  Defendant's *Ginther* hearing revealed that: 1) Defendant's attorney, Mr. Perrone was diagnosed with a mental illness *after* Defendant's trial; 2) Mr. Perrone did not exhibit symptoms of his mental illness *during* Defendant's trial, and 3) Mr. Perrone provided effective assistance of counsel. Defendant did not establish the factual predicate for his ineffective assistance claim or actual prejudice. Did the trial court abuse its discretion by finding that Mr. Perrone provided effective assistance of counsel and denying Defendant's motion for new trial?**

Plaintiff-Appellee answers: No.

Defendant-Appellant answers: Yes.

Trial Court answered: No.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## COUNTER-STATEMENT OF FACTS

Defendant Tunc Uraz stalked his ex-girlfriend Erika Melke and solicited two jail inmates and an undercover officer to murder her after she ended a romantic relationship with him. As a result, a jury found him guilty of aggravated stalking and three counts of solicitation of murder.

Defendant and Ms. Melke were in a dating relationship from the end of 2012 or beginning of 2013 until June 2015. (11/3/17, 10). They met when Defendant worked at the Michigan State University Cafeteria and Ms. Melke was a student. (11/3/17, 9). During the relationship, Defendant and Ms. Melke communicated in English, and Defendant taught a culinary arts management class in English. (11/3/17, 10-11).

When Ms. Melke ended the relationship, Defendant was not happy. (11/3/17, 11). After the relationship ended, Defendant still tried to communicate with Ms. Melke and work on their issues. (11/3/17, 11-12). Ms. Melke asked Defendant to leave her alone, but he refused. (11/3/17, 12). In July of 2015, Ms. Melke moved from one unit in her apartment complex to another unit, and Defendant helped her move. (11/3/17, 12-15). Defendant did not have a key to Ms. Melke's apartment. (11/3/17, 14-15).

During the evening on August 24, 2015, someone peeled Ms. Melke's registration tag off of her car, and damaged her car by keying it. (11/3/17, 15-17). On September 29, 2015, Defendant confronted Ms. Melke while she was grocery shopping at Kroger. Defendant asked Ms. Melke about a man that she was dating. Ms. Melke asked Defendant to leave her alone and left the store. Defendant also left without

RECEIVED by MSC 5/23/2023 1:35:39 PM

buying anything. (11/3/17, 18-19). During this time, Defendant was still trying to communicate with Ms. Melke by text message. (11/3/17, 20).

On December 31, 2015, Defendant confronted Ms. Melke while she was celebrating New Year's Eve at Dave and Busters with her then boyfriend, Stan White, and their friends Noelle VanSlembrouck and Zeb Baldwin. (11/3/17, 20). Defendant tried to make Ms. Melke come outside to talk to him. (11/3/17, 20). When she refused, he began slandering her, calling her a slut, and trying to talk to Mr. White. (11/3/17, 20). Ms. Melke felt scared and unsafe. (11/3/17, 21). Management had to escort Defendant out of the restaurant. (11/3/17, 22). That evening, when Ms. Melke and Mr. White left Dave and Busters, the tires on Mr. White's vehicle had been punctured on their side walls. (11/2/17, 178-179).

Ms. Melke obtained a Personal Protection Order and served Defendant on January 21, 2016. (11/3/17, 21). On February 13, 2016, Defendant texted Ms. Melke and called her a "Ho." (11/3/17, 24).  On March 26, 2016, Defendant confronted Ms. Melke in the parking lot of Best Buy in Okemos. (11/3/17, 25). As Ms. Melke was pulling into the parking lot, she noticed Defendant's vehicle behind her. (11/3/17, 25). Defendant pulled up next to Ms. Melke, rolled down his window, and tried to talk to her. (11/3/17, 25). Ms. Melke took pictures of Defendant using her phone, stayed inside her car, and called the police. (11/3/17, 26-27). Defendant only left the parking lot when police arrived. (11/2/17, 131). Ms. Melke was upset, crying, and distraught. (11/3/17, 132).

RECEIVED by MSC 5/23/2023 1:35:39 PM

On April 8, 2016, Ms. Melke was in Petoskey at her mother's home. (11/3/17, 27). Defendant called Ms. Melke from his mother's phone. His mother's name appeared on Melke's mother's caller ID, and Ms. Melke did not answer the call. (11/3/17, 28). Ms. Melke did not inform Defendant that she was going to Petoskey. (11/3/17, 28). On May 16, 2016, Ms. Melke stayed at White's house. During the night, Defendant egged Ms. Melke's vehicle and punctured the tires on Mr. White's vehicle again. (11/3/17, 29; 11/2/17, 183). After this, Defendant also began texting Mr. White. Defendant did not identify himself in the text messages, but asked Mr. White to meet with him to work out their differences. Mr. White responded by calling the sender by Defendant's name, confronting him about damaging his vehicle and Ms. Melke's vehicle, and declining to meet with him. The sender did not express confusion and responded in a manner that made it clear he was Defendant. (11/2/17, 185-189). After this, Ms. Melke ended her relationship with Mr. White because she did not want to put him in continued danger. (11/3/17, 30-31).

Also in April 2016, Defendant attempted to obtain a gun and ammunition. Defendant stated that he could not do it the "legal way." (11/6/17, 96). Defendant asked Patrick Burnett, his co-worker at the Michigan State University, to get him a gun and bullets. Defendant asked Mr. Burnett, "Do you trust me?" (11/6/17, 92). Defendant stated that he really needed it, appeared to be serious, and stated that did not want to get a gun the legal way. (11/6/17, 94-96). The day after asking Mr. Burnett to get a gun and bullets for him, Defendant again approached Mr. Burnett, and made the same request again. (11/6/17, 97). Mr. Burnett knew it was not a joke, and

reported the conversation to his supervisor. Defendant was terminated from his employment at Michigan State University for making this request. (11/6/17, 99).

In May 2016, Ms. Melke placed a security camera in her bedroom because she was concerned that Defendant had entered her apartment without her knowledge or consent. Ms. Melke was correct. On May 25, 2016, Defendant was caught on camera looking around inside Ms. Melke's room. Defendant appeared to be looking in an area where Ms. Melke had placed tickets for an upcoming Drake concert. A bra, underwear, and a pair of shoes also went missing from Ms. Melke's bedroom. (11/3/17, 31-35).

On July 17, 2016, Carmen Elias, Ms. Melke's roommate and Ms. Melke saw Defendant parked outside of Ms. Melke's bedroom. (11/3/17, 35-36; 11/2/17, 146-148). Ms. Elias went to the parking lot, and Defendant drove away. Defendant then texted Ms. Elias and stated that he was in Turkey. (11/2/17, 147-148). A few weeks later, Ms. Elias found that the lug nuts on her tires had been loosened while it was parked outside her apartment. (11/2/17, 155).

On July 13, 2016, Ms. Melke obtained another Personal Protection Order. (11/3/17, 36). On August 15, 2016, Defendant began trying to access and change the password on Ms. Melke's Facebook account (11/3/17, 37). Defendant also created an Instagram account in Ms. Melke's name. He used pictures from Ms. Melke's actual Facebook account, and pictures of a dildo and posted them on the fake Instagram account. He also posted various pictures and messages that pertained to "cheating." (11/3/17, 37-42). This activity was linked to the apartment complex where Defendant

RECEIVED by MSC 5/23/2023 1:35:39 PM

and Defendant's associate Burak Atamar lived through search warrants for the IP addresses associated with the activity. (11/3/17, 83, 102-110). On August 16, 2016, Ms. Melke attended the Drake concert associated with the tickets Defendant appeared to look at when he broke into her bedroom in May of 2016. (11/3/17, 48). When she returned to her vehicle, her tires were again punctured by stabs to the side walls. (11/48-50).

Defendant was charged with home invasion second degree and aggravated stalking in file 16-534-FH and placed in the Ingham County Jail. Defendant called Ms. Melke two times from the Ingham County jail. Defendant had prerecorded a message that said, "I hope you're happy." (11/3/17, 46-48). Defendant wrote a letter for Ms. Melke and gave it to his former attorney Chris Bergstrom, to give to the prosecutor for Ms. Melke. The letter contained various demands, questions, and statements regarding their relationship. Defendant pleaded guilty to Aggravated Stalking on August 23, 2016, for his stalking conduct from before that date. Defendant admitted that his conduct was designed to scare or intimidate Ms. Melke. (11/3/17, 69).

On August 31, 2016 Defendant created a fake email account using Ms. Melke's name. He sent Ms. Melke a copy of the same letter he had provided to Bergstrom. This was a violation of the PPO and no contact order. (11/3/17, 44, 74-75). On August 27 and 31, 2016, Melke received notifications regarding changes to her Facebook password. This activity was linked to the apartment complex where Defendant lived through search warrants for the IP addresses associated with the activity. (11/3/17,

RECEIVED by MSC 5/23/2023 1:35:39 PM

83, 102-110). Defendant's GPS tether also showed that he was present at the physical location associated with the IP address on August 27, 2017 and August 31, 2017 when the activity occurred. (11/2/17, 115-119). Before Defendant was sentenced on his first aggravated stalking case, he was charged with aggravated stalking in file 16-1064-FH for his stalking conduct between the dates of August 23, 2017 and September 26, 2017. Defendant's sentencing in his first aggravated stalking file was on November 2, 2017. At that hearing, Defendant admitted to using alcohol since 1985, but denied ever abusing controlled substances. (11/3/17, 70-72).  Defendant was sentenced to six months in the Ingham County Jail in file 16-534-FH.

While serving his sentence, Defendant began soliciting other inmates to murder Ms. Melke. Defendant wanted Ms. Melke to die because he believed she had ruined his life, lied to him, and cheated on him. Because of this, Defendant wanted to "get rid of her" (11/3/17, 138) and stated "this bitch got to pay." (11/7/17, 13). Defendant was charged in file 16-1065-FC with three counts of solicitation to murder.

The first person Defendant solicited to murder Ms. Melke was Charles Allen. Defendant and Mr. Allen were housed together for a period of time in a medical unit. They became friendly and Defendant began to talk to Allen about Melke. Defendant told Allen that he was in jail for stalking Ms. Melke. (11/7/17, 10-11). Defendant told Allen that he wanted to get back at Ms. Melke, and stated "this bitch got to pay." (11/7/17, 13). Defendant then made numerous, specific solicitations of Allen. Defendant asked Allen to beat Ms. Melke with a baseball bat. He stated that he wanted her "fucked up" and that he wanted pictures of it. (11/7/17, 14). Defendant

6

RECEIVED by MSC 5/23/2023 1:35:39 PM

then asked Allen to kill Ms. Melke. He specified that he wanted her beaten beyond recognition with a bat and that he wanted it to be recorded so that he could masturbate to it. Defendant also requested Ms. Melke's ID. (11/7/17, 20-21). Defendant specified that he wanted Ms. Melke's body to be dumped where no one would find her. (11/7/17, 16). Defendant agreed to pay Allen $2,500 in exchange for killing Ms. Melke. (11/7/17, 16-18). Defendant told Mr. Allen where Ms. Melke lived, what type of car she drove, and warned him that she has a camera in her house. Defendant also requested a gun so that he could go after the guy Ms. Melke "cheated" with. (11/7/17, 21-22). Mr. Allen went along with the conversations, but had no intentions of doing anything Defendant asked. (11/7/17, 22).

Mr. Allen notified a jail deputy about what Defendant had requested. (11/7/17, 24-25). Mr. Allen was interviewed by Detective Matt Krumbach, and during the interview, Mr. Allen asked if he could get out of jail. Detective Krumback told Defendant no, but that he could tell Mr. Allen's probation officer that Mr. Allen was helpful. (11/7/17, 27-28). Mr. Allen stated that no one took advantage of Defendant or hurt him while he was in jail. (11/7/17, 39, 68). Mr. Allen cooperated with law enforcement for the sake of Ms. Melke's life, and because it was the right thing to do. (11/7/17, 28, 69-70).

The second person Defendant solicited to murder Ms. Melke was Reginald Close. Mr. Close's nickname was "Rough." (11/3/17, 131). Defendant, Mr. Allen, and Mr. Close were assigned to the medical unit at the same time, and that is where Defendant and Mr. Close met. (11/3/17, 134-135). Defendant began talking to Mr.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Close about Ms. Melke within 48 hours of meeting him. (11/3/17, 136-138). Defendant told Mr. Close that Ms. Melke ruined his life, lied to him, and cheated on him. Defendant told Mr. Close that he had stalked her, entered her house, and that it was her fault that he was in jail. (11/3/17, 138). Defendant stated that he was going to get rid of her. (11/3/17, 138). Defendant stated that he had lost his job at MSU because he tried to get a gun from a coworker in order to kill Ms. Melke. (11/3/17, 139). Defendant stated that he sliced Ms. Melke's tires while she was at a Drake concert and that he was able to access her phone through her iCloud. (11/3/17, 140-141).

Defendant asked Mr. Close if he knew anyone who could have Ms. Melke killed and make it look like a robbery. (11/3/17, 143). By the time this conversation took place, Mr. Allen had been moved to another location in the jail. (11/3/17, 143-144). Defendant asked Mr. Close if he could help by killing Ms. Melke. (11/3/17, 145). Mr. Close notified his lawyer after he realized that Defendant was serious about killing Ms. Melke. (11/3/17, 145). Mr. Close agreed to help Defendant kill Ms. Melke. Defendant provided Ms. Melke's address, Mr. White's address, Ms. Melke's Facebook information, a map to Ms. Melke's apartment, Ms. Melke's car information, and Ms. Melke's job information. (11/3/17, 153-156). Defendant agreed to pay $1,000 for Ms. Melke's murder. (11/3/17, 147). Defendant made arrangements for his associate to place some money in Mr. Close's jail account. (11/3/17, 157).

Detective Andrew Hogan, interviewed Mr. Close. (11/6/17, 106). Mr. Close did not receive anything in exchange for his statement or testimony. He was provided with immunity for agreeing to help Defendant kill Ms. Melke. (11/3/17, 146, 160-161).

RECEIVED by MSC 5/23/2023 1:35:39 PM

Detective Hogan checked Mr. Close's jail account, and verified that someone made a deposit $133.59 on October 13, 2016. (11/6/17, 108-109). Detective Hogan obtained a picture of the person who made the deposit. (11/6/17, 109-110). Detective Hogan verified that Defendant never complained of threats, assaults, or promises from other inmates. (11/6/17, 110-111).

The third person Defendant solicited to murder Ms. Melke was Officer Frank Mobley. Officer Mobley made contact with Defendant in an undercover capacity and pretended to be a "hit man." (11/6/17, 117). He was provided with basic information regarding Defendant's previous solicitations, and was pretending that he was Mr. Close's friend from Detroit. (11/6/17, 117-119). Officer Mobley called Defendant for the first time on October 18, 2016, using a video chat option for jail calls. The call was not successful. (11/6/17, 121). Officer Mobley called again on October 24, 2016. Defendant answered, and the entire call was recorded. (11/6/17, 121). Officer Mobley told Defendant that "Rough" had told him that Defendant needed someone to "take out the trash." (11/6/17, 123). Throughout the call, Officer Mobley referred to Ms. Melke as the "trash," however, he made it clear that this was code for Ms. Melke, the person Defendant wanted to have killed. They discussed whether Defendant wanted Officer Mobley to "beat" the trash, whether he should "spill" the trash all over the house, whether he should beat the trash with a bat, whether he would want the scene to be cleaned up afterward, what color hair the trash had. Defendant stated that he wanted it done quickly, throw it out clean. (11/6/17, 123-127). They discussed the address where the trash would be, and Defendant stated that Rough would have that

RECEIVED by MSC 5/23/2023 1:35:39 PM

information because he had written it all down. (11/6/17, 126-127). Defendant stated that he was certain that he wanted it done. They discussed how completion would be verified, and that Defendant would pay Officer Mobley $2,000 for the first "bag" and $500 for any others. Defendant specified that he wanted the "trash" taken care of before November 2, which was his sentencing date.

Approximately a week before Defendant's trial began, the prosecutor provided Mr. Perrone with handwritten notes that were exchanged between Reginald Close and another inmate named John Pierce. (11/2/17, 6). The notes did not pertain to Defendant's case. (11/6/17, 7). The notes were written before Mr. Close contacted his attorney about Defendant's case. (11/6/17, 23). Mr. Perrone utilized the notes as a part of his defense to show that Mr. Close had a habit of communicating with other inmates in an attempt to help his own case. One of the notes also stated that the author was a good liar, however, it was Mr. Pierce, not Mr. Close, who wrote that portion of the note. (11/9/17, 65-66). One of the notes also stated that the author could pass a polygraph. Mr. Perrone at one point stated that he believed it was Mr. Close who had written that statement. (11/3/17, 6-7).

Mr. Perrone filed a motion to sever and an entrapment motion on Defendant's behalf. (2/28/17, 3-19; 10/20/17, 8-105). Both were denied before trial after extensive hearings. Mr. Perrone also responded and argued against the prosecutor's motion to admit evidence pursuant to MRE 404b. (10/11/17, 3-22). Mr. Perrone's defense included arguing that the jury should keep an open mind, that Defendant was presumed innocent, that the Defendant does not have to do anything, and that the

RECEIVED by MSC 5/23/2023 1:35:39 PM

prosecutor must prove beyond a reasonable doubt that Defendant is guilty. (11/2/17, 114-120; 11/9/17, 135). Mr. Perrone also argued that the evidence against Defendant was manufactured, and that Mr. Allen and Mr. Close took advantage of Defendant and provided testimony in an attempt to benefit their own situations. (11/2/17, 121-127; 11/9/17, 138-139). Mr. Perrone also argued that the evidence that was admitted pursuant to MRE 404b was not a part of the charged conduct in the case. (11/9/17, 137-138, 145). Throughout the trial, Mr. Perrone cross-examined witnesses and attempted to elicit testimony consistent with Defendant's theory of the case. Also throughout trial, Defendant was represented by two attorneys: Mr. Perrone, and Eric Schroeder.

The jury convicted Defendant of three counts of solicitation to commit murder and one count of aggravated stalking. (11/9/17, 186). On December 12, 2017, Perrone informed the trial court of several things: first, that he has bipolar disorder, which he takes medication for. (12/12/17, 6-7); second that he *did not* have an active episode during the trial (12/12/17, 7); third, that his diagnosis did not impact his representation of Defendant. (12/12/17, 5). On December 13, 2017, a hearing was held regarding the information Mr. Perrone provided. The trial court informed Defendant that Mr. Perrone had an illness "*after the completion of the trial*, but before the time of sentencing." (12/13/17, 3, emphasis added). The trial court appointed another attorney, Duane Silverthorn to represent Defendant, however, Defendant requested that Perrone continue representing him along with Mr. Silverthorn. (12/13/17, 4). Defendant agreed that this arrangement was fine with him and that it was what he

RECEIVED by MSC 5/23/2023 1:35:39 PM

wanted. (12/13/17, 4). Defendant's sentencing was adjourned from December 20, 2017 to January 24, 2018 so that Mr. Silverthorn could prepare. (12/13/17, 5-6). Defendant was sentenced to 200-360 months for each count of solicitation of murder, and 36-90 months for aggravated stalking, with credit for 443 days. (1/24/18, 37).

Defendant appealed his convictions. His appeal included a motion to remand for a *Ginther* hearing. On March 6, 2020, this Court remanded to the trial court to hold a *Ginther* hearing on Defendant's claims of ineffective assistance of counsel. Defendant's ineffective assistance related arguments on appeal were that one of his attorneys, Mr. Perrone, had a mental breakdown during trial and provided ineffective assistance of counsel by: 1) failing to impeach witnesses with prior theft convictions, 2) giving an inadequate closing argument, 3) sending a particular email to Defendant's sister during the trial, and 4) an alleged delay between questions while cross examining a witness. Defendant continued to pursue these claims at his *Ginther* hearing. The *Ginther* hearing was delayed due to the COVID-19 pandemic and the necessity of holding the *Ginther* hearing with Defendant's in-person presence.

At the *Ginther* hearing, Defendant testified on his own behalf and called seven witnesses: 1) his trial counsel Mr. Perrone; 2) his trial counsel Eric Schroeder; 3) Mr. Perrone's trial assistant Nicholas Fernandez, 4) the second chair trial prosecutor, Charles Koop; 5) his attorney at sentencing, Mr. Silverthorn, 6) an employee from Mr. Perrone's office, Andrew Vuckovich. The relevant facts from the *Ginther* hearing will be set forth in the argument section.

On August 8, 2022, the trial court denied Defendant's motion for new trial.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## ARGUMENT

**I.**     **Defendant's *Ginther* hearing revealed that: 1) Defendant's attorney, Mr. Perrone was diagnosed with a mental illness *after* Defendant's trial; 2) Mr. Perrone did not exhibit symptoms of his mental illness *during* Defendant's trial, and 3) Mr. Perrone provided effective assistance of counsel. Defendant did not establish the factual predicate for his ineffective assistance claim or actual prejudice. The trial court did not abuse its discretion by finding that Mr. Perrone provided effective assistance of counsel and denying Defendant's motion for new trial.**

### Defendant's Argument

Defendant argues that Mr. Perrone was nearing a mental breakdown during trial. Defendant also argues that Mr. Perrone provided ineffective assistance of counsel by: 1) failing to impeach witnesses with prior theft convictions, 2) giving an inadequate closing argument, 3) sending a particular email to Defendant's sister during the trial, and 4) alleged delays between questions while cross examining a witness.

### Issue Preservation

Defendant raised these arguments in his motion to remand, motion for new trial, and during his *Ginther* hearing. These arguments are preserved.

### Standard of Review

Whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel."

RECEIVED by MSC 5/23/2023 1:35:39 PM

*Id.* A trial court's findings of fact are reviewed for clear error.  *Id.*  Issues of law are reviewed de novo.  *Id.* "A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion." *People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194, 200 (2011), app den, cause remanded 493 Mich 916; 823 NW2d 428 (2012).

## Discussion

A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden.  To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 U S 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994).  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* supra at 687.  In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy.  *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687.  To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [*People v Dendel,* 481 Mich 114, 124-125; 748 NW2d 859 (2008), quoting *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001).]

"The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v Richter,* 562 US 86; 131 S Ct 770, 788; 178 L Ed 2d 624 (2011), quoting *Strickland v Washington,* 466 US 668, 690

14

RECEIVED by MSC 5/23/2023 1:35:39 PM

(1984). "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Harrington, supra* at 789, quoting *Strickland, supra* at 689. "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington, supra* at 789. "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington, supra* at 790, quoting *Wiggins v Smith,* 539 US 510, 525; 123 S Ct 2527; 156 L Ed 2d 471 (2003). Counsel's performance must be viewed from an objective standard, not from "counsel's subjective state of mind." *Harrington, supra* at 790. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id. at* 791. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart* (On Remand), 219 Mich App 38, 42; 555 NW2d 715 (1996).

## 1.     Perrone did not have a mental breakdown during Defendant's trial.

Defendant's argument that he received ineffective assistance of counsel comes broadly from his insistence that Mr. Perrone had a mental breakdown during trial. Defendant did not establish the factual predicate for this claim. In fact, the credible testimony from the *Ginther* hearing established that Mr. Perrone's mental breakdown occurred after the trial. First, Mr. Perrone informed the trial court that

he did not have a mental health diagnosis before Defendant's trial and that from his perspective, he did not have symptoms during trial. (10/4/21, 14). Mr. Perrone informed this the trial court that he did not have any issues with his mental health on any day of Defendant's trial. (10/4/21, 22, 23, 24, 26, 29, 34-35). Mr. Perrone told the trial court that he had an issue with his mental health about a week after trial. (10/4/21, 35). This episode, approximately a week after trial, led to Mr. Perrone being diagnosed with bipolar disorder. (10/4/21, 35). The next time Mr. Perrone saw Defendant, Mr. Perrone informed Defendant of his mental health diagnosis and Defendant asked Mr. Perrone to continue to represent him. (10/4/21, 36-37). Mr. Perrone informed the trial court that if he had had a mental breakdown or bipolar episode in court it would have been obvious everyone, he would have been unintelligible, and those present would have been calling for help for him. (10/4/21, 37-38). Additionally, Mr. Perrone explained that he did not have any general mental decline during the trial. (10/4/21, 38). [2]

Second, Eric Schroder, who was present during trial as second chair attorney for Mr. Perrone, testified that he did not observe Mr. Perrone have any issues with his mental health during trial. Mr. Schroeder explained to the trial court that he understood his ethical obligations under Michigan Rules of Professional Conduct 1.1, and 8.3 and that he did not see anything regarding Mr. Perrone's representation that gave him pause based on his ethical obligations. (10/4/21, 46-47). As to Defendant's

---

[2] Perrone should be commended for his candor and willingness to publicly testify about these private and difficult matters at Defendant's *Ginther* hearing.

RECEIVED by MSC 5/23/2023 1:35:39 PM

specific claims, Mr. Schroeder told the trial court that Mr. Perrone did not have a mental breakdown during trial. (10/4/21, 49). Mr. Schroeder told the trial court that "to his knowledge" Mr. Perrone did not have a mental decline during trial. (10/4/21, 50).

Third, Nick Fernandez testified that he did not see any "downturn" in Perrone's behavior during trial, however, Mr. Fernandez did recall an outburst that was directed at either the prosecutor or a detective. (10/4/21, 52).

Fourth, the second chair prosecutor, Mr. Koop, also agreed with the other witnesses that Mr. Perrone did not have a mental breakdown during trial (10/4/21, 55). Similarly, Andrew Vuckovich did not recall issues or changes in Perrone's behavior during the relevant timeframe. (10/4/21, 63-64).[3]

Last, the first chair trial prosecutor, Jonathan Roth, did not observe Mr. Perrone have a mental breakdown during the course of Defendant's trial. Mr. Roth's testimony was unique among the other witnesses in that he had known Mr. Perrone for 10-12 years before this trial. Mr. Roth and Mr. Perrone attended law school together. Mr. Roth did not notice anything different about Mr. Perrone during the trial than he had seen any other time before. (4/13/22, 6-7). Mr. Roth informed this Court that he did not observe Mr. Perrone have a mental breakdown or mental decline on any of Defendant's trial dates. (4/13/22, 11, 12, 14, 17, 20).

---

[3] Vuckovich characterized Perrone as a "jerk" and an "asshole," but not as related to Perrone's mental health. (10/4/21, 64).

17

RECEIVED by MSC 5/23/2023 1:35:39 PM

Mr. Perrone simply did not experience mental decline or a mental breakdown during trial. With that understanding, we will move on to Defendant's more specific allegations of error.

**2.    Perrone was not ineffective for failing to impeach two witnesses with prior convictions.**

Defendant asserts that trial counsel should have impeached Mr. Close and Mr. Allen with their prior theft related convictions. The decisions whether and how to cross-examine witnesses are matters of trial strategy. *In re Ayres,* 239 Mich App 8, 23; 197 NW2d 106 (1999); *People v Hopson,* 178 Mich App 406, 412; 444 NW2d 167 (1989).

Here, Mr. Perrone did not impeach Mr. Allen or Mr. Close with previous theft related convictions, however, the jury knew they were both in jail because that is where they met Defendant. The jury knew that Mr. Close and Mr. Allen were Ingham County Jail inmates. The jury also knew that when he testified, Mr. Close was incarcerated with the Michigan Department of Corrections (11/3/17, 131). Mr. Perrone also attacked Mr. Close's and Mr. Allen's credibility in numerous other ways. Mr. Perrone cross examined Mr. Close regarding the fact that he tried to help other inmates with their cases, and that he had tried to help John Pierce. (11/6/17, 6-7). Perrone elicited testimony that Mr. Close had proffered on other cases and that his original trial date for his own case was adjourned. (11/6/17, 9-13). Mr. Perrone also elicited testimony that Mr. Close was worried that Defendant was setting him up (11/6/17, 17). Mr. Perrone even elicited testimony from Mr. Close that Mr. Close and

18

RECEIVED by MSC 5/23/2023 1:35:39 PM

Mr. Allen had a conversation about Defendant's attempts to have Ms. Melke killed. (11/6/17, 49).

As to Mr. Allen, Mr. Perrone elicited testimony that Mr. Allen was placed on phone restrictions because he wasn't following instructions in the jail. (11/6/17, 31). Mr. Perrone elicited testimony from Mr. Allen that he tried to help Defendant be more comfortable in jail, and that Defendant seemed scared. (11/6/17, 39). Mr. Perrone elicited testimony from Mr. Allen that Mr. Allen believed it would be easy for someone to take advantage of Defendant. (11/6/17, 47).  Mr. Perrone also elicited testimony that Mr. Allen initially came forward with information about Defendant to try to get out of jail early. (11/6/17, 51).

At the *Ginther* hearing, Mr. Perrone explained that this was his first court appointed capital case, but that he felt that the other methods of impeachment that he utilized (as described above) were "very good" ways to impeach. (10/4/21, 11). Mr. Roth explained that nothing about his trial strategy (as the prosecutor) would have changed if Mr. Perrone had impeached Mr. Allen and Mr. Close with their misdemeanor convictions. (4/13/22, 19). Mr. Roth explained that Mr. Close and Mr. Allen's credibility was not dependent on convictions or misdemeanors because the jury was aware that they were in jail and had done bad things. He explained that their credibility came from the corroborating evidence of their claims. (4/13/22, 19, 22). Mr. Roth also explained that this type of impeachment would not have changed the substantial evidence of Defendant's guilt. (4/13/22, 20).

RECEIVED by MSC 5/23/2023 1:35:39 PM

Thus, the failure to impeach Mr. Close and Mr. Allen with prior theft related convictions did not deny Defendant effective assistance of counsel, and in fact, Mr. Perrone elicited other information during cross examination that he was able to use to attack Mr. Close's and Mr. Allen's credibility, or lend support to his theory of the case. It is not reasonable to assert that had the jury been aware of their prior convictions, that they would have then disregarded their testimony and the other evidence of Defendant's guilt.

### 3.   Mr. Perrone's closing argument was appropriate and effective.

Defendant asserts that Mr. Perrone was ineffective because he gave an inadequate closing argument. This is simply incorrect. During pretrial motions, opening statements, cross-examination of witnesses, and closing arguments, Mr. Perrone presented Defendant's theory of the case.

Mr. Perrone's defense included arguing that the jury should keep an open mind, that Defendant was presumed innocent, that the Defendant does not have to do anything, and that the prosecutor must prove beyond a reasonable doubt that Defendant is guilty. (11/2/17, 114-120; 11/9/17, 135). Mr. Perrone also argued that the evidence against Defendant was manufactured, and that Mr. Allen and Mr. Close took advantage of Defendant and provided testimony in an attempt to benefit their own situations. (11/2/17, 121-127; 11/9/17, 138-139). Mr. Perrone also argued that the evidence that was admitted pursuant to MRE 404(b) was not a part of the charged conduct in the case. (11/9/17, 137-138, 145). Throughout the trial, Mr. Perrone cross-examined witnesses and attempted to elicit testimony consistent with Defendant's

RECEIVED by MSC 5/23/2023 1:35:39 PM

theory of the case. Also throughout trial, Defendant was represented by two attorneys: Mr. Perrone and Mr. Schroeder.

At the *Ginther* hearing, Perrone testified that his closing argument was consistent with the trial strategy that he and Defendant agreed upon. (10/4/21, 33). Mr. Perrone agreed that he utilized the facts that he elicited during testimony as a part of his closing argument. (10/4/21, 33). Some of the facts and arguments from Mr. Perrone's closing argument were: 1) that Mr. Burnett thought Defendant looked scared during the conversation Mr. Burnett and Defendant had about the gun[4]; 2) that Defendant did not take any action toward committing the crimes; 3) that some conversations were initiated by other people; 4) that some of the language that Officer Mobley used was arguably ambiguous; 5) that certain witnesses were not credible; 6) that the police engaged in deliberate conduct, 7) and that there was reasonable doubt. (10/4/21, 33-34). Mr. Perrone also made arguments consistent with the jury instruction modification that he obtained. (10/4/21, 33).

Defendant points to two specific passages from Mr. Perrone's closing argument in support of his argument that Mr. Perrone provided ineffective assistance of counsel during his closing arguments. While these passages are odd, Mr. Schroeder testified that the only issue he observed during Mr. Perrone's closing argument was that he might have lost his train of thought on one occasion. (10/4/21, 48). It may be that

---

[4] The implication being that Defendant wanted the gun for his protection, not to scare, harm, or kill Ms. Melke.

21

RECEIVED by MSC 5/23/2023 1:35:39 PM

these passages are what Mr. Schroeder referenced.[5] Mr. Roth testified that he did not observe any glaring issues with Mr. Perrone's closing argument. (4/13/22, 20). In the context of the entire closing argument and the strategy that Defendant agreed to, these two passages alone do not establish that "counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* supra at 687.

### 4.    Perrone's email to Defendant's sister has nothing to do with his representation of Defendant.

As a part of his *Ginther* hearing, Defendant submitted to the trial court what purported to be an email that Mr. Perrone sent to Defendant's sister during the trial. As to the content of the email, Mr. Perrone testified at the *Ginther* hearing that he thought they would receive a not guilty verdict and that ten million dollars would be a small award in an unlawful imprisonment case. He also testified that he may have been "a little bit expansive," but he "was trying to keep their moral up." (10/4/21, 40). Though some of the statements contained in the email are odd, Defendant has not articulated how this email impacted Mr. Perrone's representation of Defendant.

### 5.    Mr. Perrone's delay between questions while cross examining Mr. Allen was not ineffective assistance of counsel.

Defendant argues that a statement made by Mr. Roth at trial regarding Defendant's cross examination of Mr. Allen is an example of ineffective assistance of

---

[5] Defendant cited specific passages for the first time in his supplemental brief on appeal in this Court. Because of this, these passages were not a topic of testimony at the *Ginther* hearing.

RECEIVED by MSC 5/23/2023 1:35:39 PM

counsel.   Again, Defendant has not explained how any prolonged delay between questions, even if it did occur, was ineffective assistance of counsel. At the *Ginther* hearing, Mr. Perrone, Mr. Schroeder, and Mr. Roth testified regarding this portion of the transcripts and this allegation. Mr. Perrone testified that he did not believe the delay between questions was actually three minutes long. (10/4/21, 28). Mr. Perrone testified that the cross examination was not as Mr. Roth stated, rambling on for hours. Further, Mr. Perrone testified that in his view, Mr. Roth was trying to undermine Mr. Perrone's cross examination. Mr. Perrone testified that Mr. Roth's objections contained exaggerations that were not consistent with what happened in court. (10/4/21, 28). Similarly, Mr. Schroeder testified that there was not three minutes between each question, and that Mr. Perrone's cross examination of Mr. Allen was lengthy because there was a lot of material to cover. (10/4/21, 50). In contrast, Mr. Roth had a different view. Mr. Roth testified that by his estimate, it *was* literally minutes between questions. (4/13/22, 16). Mr. Roth also testified that Mr. Perrone's cross examination of Mr. Allen was longer than it needed to be. (4/13/22, 16). Mr. Roth's perception was that the delay was intentional, and that it was a part of a trial strategy. (4/13/22, 16-17). Mr. Roth testified that in his view, it was an attempt to dilute the testimony of the most important witnesses. (4/13/22, 17).

And it is possible that the truth is somewhere in the middle. It may be that as Mr. Roth testified, the delay was a part of an intentional trial strategy to dilute certain testimony. Correspondingly, Mr. Perrone and Mr. Schroeder might also be correct that the delay was not actually three minutes between each question.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Regardless, any delay, if it existed, does not establish ineffective assistance of counsel.

**6.      Defendant was not prejudiced.**

Finally, even if these alleged errors were so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment," Defendant cannot establish prejudice. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. This is a burden Defendant cannot meet. The jury heard overwhelming evidence of Defendant's guilt from Ms. Melke, Mr. White, and other witnesses who experienced Defendant's stalking behavior first-hand. The jury heard from three witnesses, Mr. Close, Mr. Allen, and Officer Mobley, all of whom described how Defendant solicited them to murder Ms. Melke. The jury watched a video of Defendant soliciting Officer Mobley. Additionally, during Defendant's entrapment hearing and his previous stalking plea, Defendant admitted to nearly every component of the evidence against him. Therefore, Defendant cannot establish that but for counsel's errors, the result of the proceeding would have been different. Defendant did not receive ineffective assistance of counsel.

RECEIVED by MSC 5/23/2023 1:35:39 PM

**RELIEF REQUESTED**

WHEREFORE, the People respectfully request that this Court affirm Defendant's convictions.

Respectfully submitted,

*/S/ Kahla D. Crino*

Dated: September 12, 2022
_____
Kahla D. Crino (P71012)
Appellate Division Chief
303 W. Kalamazoo Street
Lansing, MI 48823
(517) 483-6228
kcrino@ingham.org

**MCR 7.212(B)(3) STATEMENT**

There are 6,526 countable words in this brief.

*/S/ Kahla D. Crino*

Dated: September 12, 2022
_____
Kahla D. Crino (P71012)

25

STATE OF MICHIGAN
IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,
    Plaintiff-Appellee,

Court of Appeals Nos.
343695 & 343696

V

Circuit Court Nos.
16-1065-FC & 16-1064-FH

TUNC URAZ,
    Defendant-Appellant.

_____/

**PEOPLE'S RESPONSE TO SUPPLEMENTAL
STANDARD-4 BRIEF (POST-REMAND)**

**ORAL ARGUMENT REQUESTED**

CAROL A. SIEMON (P32946)
    INGHAM COUNTY PROSECUTING ATTORNEY

KAHLA D. CRINO (P71012)
    APPELLATE DIVISION CHIEF

BUSINESS ADDRESS
    303 W. Kalamazoo Street, 4th Floor
    Lansing, MI 48933
    (517) 483-6228
    kcrino@ingham.org

RECEIVED by MSC 5/23/2023 1:35:39 PM

The People of the State of Michigan, through Ingham County Prosecutor, Carol A. Siemon and Assistant Prosecuting Attorney, Kahla D. Crino, state as follows in response to Defendant's Supplemental Standard-4 Brief:

1. On November 9, 2022, Defendant's attorney, Susan Walsh, filed a motion for this Court to accept a supplemental Standard-4 brief prepared by Defendant Tunc Uraz.

2. On November 17, 2022, this Court granted the motion, but limited to the issue of ineffective assistance of counsel.

3. The People have filed three previous briefs in this Court: 1) a July 10, 2019 brief on appeal; 2) a February 19, 2020 response to Defendant's Standard-4 brief; and 3) a post-remand supplemental brief on appeal.

4. These briefs adequately address the ineffective assistance of counsel arguments that are contained throughout Defendant's supplemental Standard-4 brief and are incorporated in our answer to Defendant's supplemental Standard-4 brief. (Attachments 1, 2, and 3).

5. However, in reviewing these briefs, one factual correction is required based on Mr. Perrone's testimony at the *Ginther* hearing. Before having heard Mr. Perrone's testimony, the People believed, based on Mr. Perrone's statements to the trial court on December 12, 2017, that Mr. Perrone was diagnosed as bipolar before Mr. Uraz's trial, and thus framed our argument as though Mr. Perrone was a person *previously* diagnosed with bipolar disorder.[1] Mr. Perrone's testimony at the *Ginther* hearing corrected this misconception. At the *Ginther* hearing, Mr. Perrone testified that he did not have a mental health diagnosis before Defendant's trial and that from his perspective, he did not have symptoms during trial. (10/4/21, 14). Mr.

---

[1] On December 12, 2017, Perrone informed the trial court of several things: first, that he has bipolar disorder, which he takes medication for. (12/12/17, 6-7); second that he *did not* have an active episode during the trial (12/12/17, 7); third, that his diagnosis did not impact his representation of Defendant. (12/12/17, 5).

2

RECEIVED by MSC 5/23/2023 1:35:39 PM

Perrone testified that he did not have any issues with his mental health on any day of Defendant's trial. (10/4/21, 22, 23, 24, 26, 29, 34-35). Mr. Perrone told the trial court that he had an issue with his mental health about a week after trial. (10/4/21, 35). This episode, approximately a week after trial, led to Mr. Perrone being diagnosed with bipolar disorder. (10/4/21, 35).

## RELIEF REQUESTED

WHEREFORE, the People respectfully request that this Court affirm Defendant's convictions.

Respectfully submitted,

*/S/ Kahla D. Crino*

_____

Dated: November 28, 2022

Kahla D. Crino (P71012)
Appellate Division Chief
303 W. Kalamazoo Street
Lansing, MI 48823
(517) 483-6228
kcrino@ingham.org

3

Attachment 1

RECEIVED by MSC 5/23/2023 1:35:39 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

                                   Court of Appeals Nos. 343695

V                                           343696

                                   Circuit Court Nos. 16-1064-FH

                                       16-1065-FH

TUNC URAZ,

     Defendant-Appellant.

_____/

**PEOPLE'S BRIEF ON APPEAL**

**ORAL ARGUMENT NOT REQUESTED**

CAROL A. SIEMON
     INGHAM COUNTY PROSECUTING ATTORNEY

KAHLA D. CRINO
     APPELLATE DIVISION CHIEF

BUSINESS ADDRESS
     303 W. Kalamazoo Street, 4th Floor
     Lansing, Michigan 48933

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................iii

COUNTER STATEMENT OF QUESTIONS PRESENTED ........................... v

STATEMENT OF APPELLATE JURISDICTION.........................................vii

COUNTER STATEMENT OF FACTS ........................................................... 1

ARGUMENT

   I.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING DEFENDANT'S PREVIOUS ACTS OF STALKING PURSUANT TO MRE 404(B) TO SHOW INTENT, SCHEME, AND SYSTEM IN DOING AN ACT. ................... 12

   II.  THE TRIAL COURT DID NOT ERR BY DENYING DEFENDANT'S MOTION FOR SEVERANCE, BECAUSE THE CHARGES WERE A SERIES OF CONNECTED ACTS OR A SERIES OF ACTS CONSTITUTING PARTS OF A SINGLE SCHEME OR PLAN ................................................................ 21

   III.  BECAUSE THE NOTES BETWEEN CLOSE AND PIERCE WERE DISCLOSED TO THE DEFENSE THE WEEK BEFORE TRIAL AND WERE UTILIZED BY DEFENDANT AT TRIAL, THERE WAS NO *BRADY* VIOLATION AND DEFENDANT WAS NOT DENIED A FAIR TRIAL. ....................................... 26

   IV.  BECAUSE DEFENDANT DID NOT MEET HIS BURDEN OF SHOWING THAT HE WAS ENTRAPPED, THE TRIAL COURT PROPERLY DENIED DEFENDANT'S MOTION TO DISMISS BASED ON ENTRAPMENT. .................. 29

   V.  DEFENDANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL MERELY BECAUSE TRIAL COUNSEL WAS A PERSON PREVIOUSLY DIAGNOSED WITH A MENTAL ILLNESS WHO RECEIVED TREATMENT FOR HIS MENTAL ILLNESS AFTER THE CONCLUSION OF DEFENDANT'S TRIAL. ............................................................. 33

   VI.  THE TRIAL PROSECUTOR DID NOT COMMIT PROSECUTORIAL MISCONDUCT AND DENY DEFENDANT A FAIR TRIAL BY STATING THAT THERE WAS A THREE-MINUTE DELAY BETWEEN QUESTIONS AND THAT DEFENSE COUNSEL RECEIVED A BREAK TO GATHER HIS THOUGHTS. .... 41

RELIEF REQUESTED ................................................................. 44

# TABLE OF AUTHORITIES

## Cases

*Harrington v Richter,* 562 US 86; 131 S Ct 770; 178 L Ed 2d 624 (2011) .................... 35
*Huddleston* v *US*, 485 US 681 (1988) .............................................................................. 15
*In re Ayres,* 239 Mich App 8 (1999) ............................................................................... 36
*People v Ali Elatrache*, unpublished per curiam opinion of the Court of Appeals, issued
    April 19, 2016 (Docket No. 324918) ...................................................................... 24, 25
*People v Babcock,* 469 Mich 247 (2003) ......................................................................... 12
*People v Bynum,* 496 Mich 610 (2014) ............................................................................ 12
*People v Carbin,* 463 Mich 590 (2001) ........................................................................... 34
*People v Chenault*, 495 Mich 142 (2014) ................................................................... 26, 27
*People v Cooper*, 309 Mich App 74 (2015) ............................................................... 41, 42
*People v Dalessandro*, 165 Mich App 569 (1988) .......................................................... 43
*People v Dendel,* 481 Mich 114 (2008) ........................................................................... 34
*People v Fyda,* 288 Mich App 446 (2010) ....................................................................... 29
*People v Gioglio*, 296 Mich App 12 (2012) .................................................................... 34
*People v Goree,* 132 Mich App 693 (1984) ..................................................................... 18
*People v Hopson,* 178 Mich App 406 (1989) ................................................................... 36
*People v LeBlanc*, 465 Mich 575 (2002) ......................................................................... 33
*People v Lockett,* 295 Mich App 165 (2012) ................................................................... 34
*People v Lukity,* 460 Mich 484 (1999) ............................................................................ 12
*People v Mardlin,* 487 Mich 609 (2010) ......................................................................... 14
*People v McLaughlin,* 258 Mich App 635 (2003) ........................................................... 41
*People v Meadows,* 175 Mich App 355 (1989) ............................................................... 18
*People v Mills*, 450 Mich 61 (1995) ................................................................................ 18
*People v Nix,* 301 Mich App 195 (2013) ......................................................................... 33
*People v Ortiz,* 249 Mich App 297 (2001) ...................................................................... 18
*People v Roscoe,* 303 Mich App 633 (2014) ................................................................... 13
*People v Sexton*, 250 Mich App 211 (2002) .................................................................... 30
*People v Stewart* (On Remand), 219 Mich App 38 (1996) .............................................. 35
*People v Stokes,* 312 Mich App 181 (2015) .................................................................... 26
*People v Unger,* 278 Mich App 210 (2008) .................................................................... 42
*People* v *Vandervliet*, 444 Mich 52 (1993) .................................................................... 15
*People v Williams*, 483 Mich 226 (2009) ................................................................... 21, 24
*Strickland v Washington,* 466 US 668 (1984) ................................................................. 35
*United States v Bagley,* 473 US 667; 105 S Ct  3375; 87 L Ed 2d 481 (1985)................ 27
*Wiggins v Smith,* 539 US 510; 123 S Ct 2527; 156 L Ed 2d 471 (2003) ........................ 35
*Wilson v Taylor,* 457 Mich 232 (1998) ........................................................................... 39

## Other Authorities

SJI 4.11 ............................................................................................................................. 20

RECEIVED by MSC 5/23/2023 1:35:39 PM

**Rules**

MCR 6.120(B)(1) ........................................................................................22, 25
MCR 6.120(C) ................................................................................................. 21
MCR 7.215(C) ................................................................................................. 24
MRE 104(b) ..................................................................................................... 15
MRE 401 .......................................................................................................... 16
MRE 402 ..................................................................................................... 15, 16
MRE 404(b) ...................................................... 12, 13, 14, 15, 23, 24, 38
MRE 404(b)(1) ................................................................................................ 14

RECEIVED by MSC 5/23/2023 1:35:39 PM

**COUNTER STATEMENT OF QUESTIONS PRESENTED**

I.   DID THE TRIAL COURT ABUSE ITS DISCRETION BY ADMITTING DEFENDANT'S PREVIOUS ACTS OF STALKING PURSUANT TO MRE 404B TO SHOW INTENT, SCHEME, AND SYSTEM IN DOING AN ACT?

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

II.  DID THE TRIAL COURT ERR BY DENYING DEFENDANT'S MOTION FOR SEVERANCE, WHEN THE CHARGES WERE A SERIES OF CONNECTED  ACTS OR A SERIES OF ACTS CONSTITUTING PARTS OF A SINGLE SCHEME OR PLAN?

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

III. WAS THERE A *BRADY* VIOLATION THAT DENIED DEFENDANT A FAIR TRIAL EVEN THOUGH THE NOTES BETWEEN CLOSE AND PIERCE WERE DISCLOSED TO THE DEFENSE THE WEEK BEFORE TRIAL AND WERE UTILIZED BY DEFENDANT AT TRIAL?

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

IV.  DID THE TRIAL COURT ERR BY DENYING DEFENDANT'S MOTION TO DISMISS BASED ON ENTRAPMENT WHEN DEFENDANT DID NOT MEET HIS BURDEN OF SHOWING THAT HE WAS ENTRAPPED?

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

V. WAS DEFENDANT DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL WAS A PERSON PREVIOUSLY DIAGNOSED WITH A MENTAL ILLNESS WHO RECEIVED TREATMENT FOR HIS MENTAL ILLNESS AFTER THE CONCLUSION OF DEFENDANT'S TRIAL?

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

VI. DID THE TRIAL PROSECUTOR COMMIT PROSECUTORIAL MISCONDUCT AND DENY DEFENDANT A FAIR TRIAL BY STATING THAT THERE WAS A THREE-MINUTE DELAY BETWEEN QUESTIONS AND THAT DEFENSE COUNSEL RECEIVED A BREAK TO GATHER HIS THOUGHTS?

Plaintiff-Appellee answers, "No."
Defendant-Appellant answers, "Yes."

RECEIVED by MSC 5/23/2023 1:35:39 PM

RECEIVED by MSC 5/23/2023 1:35:39 PM

## STATEMENT OF APPELLATE JURISDICTION

The People agree with Defendant's Statement of Jurisdiction.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## COUNTER STATEMENT OF FACTS

Charges against Defendant Tunc Uraz arose because he stalked Erika Melke and solicited two jail inmates and an undercover officer to murder her after she ended a romantic relationship with him.

Defendant and Melke were in a dating relationship from the end of 2012 or beginning of 2013 until June 2015. (11/3/17, 10). They met when Defendant worked at the Michigan State University Cafeteria and Melke was a student. (11/3/17, 9). During the relationship, Defendant and Melke communicated in English, and Defendant taught a culinary arts management class in English. (11/3/17, 10-11).

When Melke ended the relationship, Defendant was not happy. (11/3/17, 11). After the relationship ended, Defendant still tried to communicate with Melke and work on their issues. (11/3/17, 11-12). Melke asked Defendant to leave her alone, but he refused. (11/3/17, 12). In July of 2015, Melke moved from one unit in her apartment complex to another unit, and Defendant helped her move. (11/3/17, 12-15). Defendant did not have a key to Melke's apartment. (11/3/17, 14-15).

During the evening on August 24, 2015, someone peeled Melke's registration tag off of her car, and damaged her car by keying it. (11/3/17, 15-17). On September 29, 2015, Defendant confronted Melke while she was grocery shopping at Kroger. Defendant asked Melke about a man that she was dating. Melke asked Defendant to leave her alone and left the store. Defendant also left without buying anything. (11/3/17, 18-19). During this time, Defendant was still trying to communicate with Melke by text message. (11/3/17, 20).

1

RECEIVED by MSC 5/23/2023 1:35:39 PM

On December 31, 2015, Defendant confronted Melke while she was celebrating New Year's Eve at Dave and Busters with her then boyfriend, Stan White, and their friends Noelle VanSlembrouck and Zeb Baldwin. (11/3/17, 20). Defendant tried to make Melke come outside to talk to him. (11/3/17, 20). When she refused, he began slandering her, calling her a slut, and trying to talk to White. (11/3/17, 20). Melke felt scared and unsafe. (11/3/17, 21). Management had to escort Defendant out of the restaurant. (11/3/17, 22). That evening, when Melke and White left Dave and Busters, the tires on White's vehicle had been punctured on their side walls. (11/2/17, 178-179).

Melke obtained a Personal Protection Order and served Defendant on January 21, 2016. (11/3/17, 21). On February 13, 2016, Defendant texted Melke and called her a "Ho." (11/3/17, 24).  On March 26, 2016, Defendant confronted Melke in the parking lot of Bust Buy in Okemos. (11/3/17, 25). As Melke was pulling into the parking lot, she noticed Defendant's vehicle behind her. (11/3/17, 25). Defendant pulled up next to Melke, rolled down his window, and tried to talk to her. (11/3/17, 25). Melke took pictures of Defendant using her phone, stayed inside her car, and called the police. (11/3/17, 26-27). Defendant only left the parking lot when police arrived. (11/2/17, 131). Melke was upset, crying, and distraught. (11/3/17, 132).

On April 8, 2016, Melke was in Petoskey at her mother's home. (11/3/17, 27). Defendant called Melke from his mother's phone. His mother's name appeared on Melke's mother's caller ID, and Melke did not answer the call. (11/3/17, 28). Melke had not informed Defendant that she was going to Petoskey. (11/3/17, 28). On May 16, 2016, Melke stayed at White's house. During the night, Defendant egged Melke's vehicle and

2

punctured the tires on White's vehicle again. (11/3/17, 29; 11/2/17, 183). After this, Defendant also began texting White. Defendant did not identify himself in the text messages, but asked White to meet with him to work out their differences. White responded by calling the sender by Defendant's name, confronting him about damaging his vehicle and Melke's vehicle, and declining to meet with him. The sender did not express confusion and responded in a manner that made it clear he was Defendant. (11/2/17, 185-189). After this, Melke ended her relationship with White because she did not want to put him in continued danger. (11/3/17, 30-31).

Also in April 2016, Defendant attempted to obtain a gun and ammunition. Defendant stated that he could not do it the "legal way." (11/6/17, 96). Defendant asked Patrick Burnett, his co-worker at the Michigan State University, to get him a gun and bullets. Defendant asked Burnett, "Do you trust me?" (11/6/17, 92). Defendant stated that he really needed it, appeared to be serious, and stated that did not want to get a gun the legal way. (11/6/17, 94-96). The day after asking Burnett to get a gun and bullets for him, Defendant again approached Burnett, and made the same request again. (11/6/17, 97). Burnett knew it was not a joke, and reported the conversation to his supervisor. Defendant was terminated from his employment at Michigan State University for making this request. (11/6/17, 99).

In May 2016, Melke placed a security camera in her bedroom because she was concerned that Defendant had entered her apartment without her knowledge or consent. Melke was correct. On May 25, 2016, Defendant was caught on camera looking around inside Melke's room. Defendant appeared to be looking in an area where Melke had

RECEIVED by MSC 5/23/2023 1:35:39 PM

RECEIVED by MSC 5/23/2023 1:35:39 PM

placed tickets for an upcoming Drake concert. A bra, underwear, and a pair of shoes also went missing from Melke's bedroom. (11/3/17, 31-35).

On July 17, 2016, Carmen Elias, Melke's roommate and Melke saw Defendant parked outside of Melke's bedroom. (11/3/17, 35-36; 11/2/17, 146-148). Elias went to the parking lot, and Defendant drove away. Defendant then texted Elias and stated that he was in Turkey. (11/2/17, 147-148). A few weeks later, Elias found that the lug nuts on her tires had been loosened while it was parked outside her apartment. (11/2/17, 155).

On July 13, 2016, Melke obtained another Personal Protection Order. (11/3/17, 36). On August 15, 2016, Defendant began trying to access and change the password on Melke's Facebook account (11/3/17, 37). Defendant also created an Instagram account in Melke's name. He used pictures from Melke's actual Facebook account, and pictures of a dildo and posted them on the fake Instagram account. He also posted various pictures and messages that pertained to "cheating." (11/3/17, 37-42). This activity was linked to the apartment complex where Defendant and Defendant's associate Burak Atamar lived through search warrants for the IP addresses associated with the activity. (11/3/17, 83, 102-110). On August 16, 2016, Melke attended the Drake concert associated with the tickets Defendant appeared to look at when he broke into her bedroom in May of 2016. (11/3/17, 48). When she returned to her vehicle, her tires were again punctured by stabs to the side walls. (11/48-50).

Defendant was charged with Home Invasion Second Degree and Aggravated Stalking in file 16-534-FH and placed in the Ingham County Jail. (Information, *Attachment 1*). Defendant called Melke two times from the Ingham County jail.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Defendant had prerecorded a message that said, "I hope you're happy." (11/3/17, 46-48). Defendant wrote a letter for Melke and gave it to his former attorney Chris Bergstrom, to give to the prosecutor for Melke. The letter contained various demands, questions, and statements regarding their relationship. Defendant pleaded guilty to Aggravated Stalking on August 23, 2016, for his stalking conduct from before that date. Defendant admitted that his conduct was designed to scare or intimidate Melke. (11/3/17, 69).

On August 31, 2016 Defendant created a fake email account using Melke's name. He sent Melke a copy of the same letter he had provided to Bergstrom. This was a violation of the PPO and no contact order. (11/3/17, 44, 74-75). On August 27 and 31, 2016, Melke received notifications regarding changes to her Facebook password. This activity was linked to the apartment complex where Defendant lived through search warrants for the IP addresses associated with the activity. (11/3/17, 83, 102-110). Defendant's GPS tether also showed that he was present at the physical location associated with the IP address on August 27, 2017 and August 31, 2017 when the activity occurred. (11/2/17, 115-119). Before Defendant was sentenced on his first aggravated stalking case, he was charged with aggravated stalking in file 16-1064-FH for his stalking conduct between the dates of August 23, 2017 and September 26, 2017. (Information, *Attachment 2*). Defendant's sentencing in his first aggravated stalking file was on November 2, 2017. At that hearing, Defendant admitted to using alcohol since 1985, but denied ever abusing controlled substances. (11/3/17, 70-72).  Defendant was sentenced to six months in the Ingham County Jail in file 16-534-FH.

RECEIVED by MSC 5/23/2023 1:35:39 PM

While serving his sentence, Defendant began soliciting other inmates to murder Melke. Defendant wanted Melke to die because he believed she had ruined his life, lied to him, and cheated on him. Because of this, Defendant wanted to "get rid of her" (11/3/17, 138) and stated "this bitch got to pay." (11/7/17, 13). Defendant was charged in file 16-1065-FC with three counts of solicitation to murder. (Information, *Attachment 3*).

The first person Defendant solicited to murder Melke was Charles Allen. Defendant and Allen were housed together for a period of time in a medical unit. They became friendly and Defendant began to talk to Allen about Melke. Defendant told Allen that he was in jail for stalking Melke. (11/7/17, 10-11). Defendant told Allen that he wanted to get back at Melke, and stated "this bitch got to pay." (11/7/17, 13). Defendant then made numerous, specific solicitations of Allen. Defendant asked Allen to beat Melke with a baseball bat. He stated that he wanted her "fucked up" and that he wanted pictures of it. (11/7/17, 14). Defendant then asked Allen to kill Ms. Melke. He specified that he wanted her beaten beyond recognition with a bat and that he wanted it to be recorded so that he could masturbate to it. Defendant also requested Melke's ID. (11/7/17, 20-21). Defendant specified that he wanted Melke's body to be dumped where no one would find her. (11/7/17, 16). Defendant agreed to pay Allen $2,500 in exchange for killing Melke. (11/7/17, 16-18). Defendant told Allen where Melke lived, what type of car she drove, and warned him that she has a camera in her house. Defendant also requested a gun so that he could go after the guy Melke "cheated" with. (11/7/17, 21-22). Allen went along with the conversations, but had no intentions of doing anything Defendant asked. (11/7/17, 22).

6

RECEIVED by MSC 5/23/2023 1:35:39 PM

Allen notified a jail deputy about what Defendant had requested. (11/7/17, 24-25). Allen was interviewed by Detective Matt Krumbach, and during the interview, Allen asked if he could get out of jail. Detective Krumback told Defendant no, but that he could tell Mr. Allen's probation officer that Allen was helpful. (11/7/17, 27-28). Allen stated that no one took advantage of Defendant or hurt him while he was in jail. (11/7/17, 39, 68). Allen cooperated with law enforcement for the sake of Melke's life, and because it was the right thing to do. (11/7/17, 28, 69-70).

The second person Defendant solicited to murder Melke was Reginald Close. Close's nickname was "Rough." (11/3/17, 131). Defendant, Allen, and Close were assigned to the medical unit at the same time, and that is where Defendant and Close met. (11/3/17, 134-135). Defendant began talking to Close about Melke within 48 hours of meeting him. (11/3/17, 136-138). Defendant told Close that Melke ruined his life, lied to him, and cheated on him. Defendant told Close that he had stalked her, entered her house, and that it was her fault that he was in jail. (11/3/17, 138). Defendant stated that he was going to get rid of her. (11/3/17, 138). Defendant stated that he had lost his job at MSU because he tried to get a gun from a coworker in order to kill Melke. (11/3/17, 139). Defendant stated that he sliced Melke's tires while she was at a Drake concert and that he was able to access her phone through her iCloud. (11/3/17, 140-141).

Defendant asked Close if he knew anyone who could have Melke killed and make it look like a robbery. (11/3/17, 143). By the time this conversation took place, Allen had been moved to another location in the jail. (11/3/17, 143-144). Defendant asked Close if he could help by killing Melke. (11/3/17, 145). Close notified his lawyer after he realized

that Defendant was serious about killing Melke. (11/3/17, 145). Close agreed to help Defendant kill Melke. Defendant provided Melke's address, White's address, Melke's Facebook information, a map to Melke's apartment, Melke's car information, and Melke's job information. (11/3/17, 153-156). Defendant agreed to pay $1,000 for Melke's murder. (11/3/17, 147). Defendant made arrangements for his associate, to place some money in Close's jail account. (11/3/17, 157).

Detective Andrew Hogan, interviewed Close. (11/6/17, 106). Close did not receive anything in exchange for his statement or testimony. He was provided with immunity for agreeing to help Defendant kill Melke. (11/3/17, 146, 160-161). Detective Hogan checked Close's jail account, and verified that someone made a deposit $133.59 on October 13, 2016. (11/6/17, 108-109). Detective Hogan obtained a picture of the person who made the deposit. (11/6/17, 109-110). Detective Hogan verified that Defendant never complained of threats, assaults, or promises from other inmates. (11/6/17, 110-111).

The third person Defendant solicited to murder Melke was Officer Frank Mobley. Officer Mobley made contact with Defendant in an undercover capacity and pretended to be a "hit man." (11/6/17, 117). He was provided with basic information regarding Defendant's previous solicitations, and was pretending that he was Close's friend from Detroit. (11/6/17, 117-119). Officer Mobley called Defendant for the first time on October 18, 2016, using a video chat option for jail calls. The call was not successful. (11/6/17, 121). Officer Mobley called again on October 24, 2016. Defendant answered, and the entire call was recorded. (11/6/17, 121). Officer Mobley told Defendant that

RECEIVED by MSC 5/23/2023 1:35:39 PM

"Rough" had told him that Defendant needed someone to "take out the trash." (11/6/17, 123). Throughout the call, Officer Mobley referred to Melke as the "trash," however, he made it clear that this was code for Melke, the person Defendant wanted to have killed. They discussed whether Defendant wanted Officer Mobley to "beat" the trash, whether he should "spill" the trash all over the house, whether he should beat the trash with a bat, whether he would want the scene to be cleaned up afterward, what color hair the trash had. Defendant stated that he wanted it done quickly, throw it out clean. (11/6/17, 123-127). They discussed the address where the trash would be, and Defendant stated that Rough would have that information because he had written it all down. (11/6/17, 126-127). Defendant stated that he was certain that he wanted it done. They discussed how completion would be verified, and that Defendant would pay Officer Mobley $2,000 for the first "bag" and $500 for any others. Defendant specified that he wanted the "trash" taken care of before November 2, which was his sentencing date.

Approximately a week before Defendant's trial began, the prosecutor provided Perrone with handwritten notes that were exchanged between Reginald Close and another inmate named John Pierce. (11/2/17, 6; *Attachment 4*). The notes did not pertain to Defendant's case. (11/6/17, 7). The notes were written before Close contacted his attorney about Defendant's case. (11/6/17, 23). Perrone utilized the notes as a part of his defense to show that Close had a habit of communicating with other inmates in an attempt to help his own case. One of the notes also stated that the author was a good liar, however, it was Pierce, not Close, who wrote that portion of the note. (11/9/17, 65-66).

RECEIVED by MSC 5/23/2023 1:35:39 PM

One of the notes also stated that the author could pass a polygraph. Perrone at one point stated that he believed it was Close who had written that statement. (11/3/17, 6-7).

Perrone filed a motion to sever and an entrapment motion on Defendant's behalf. (2/28/17, 3-19; 10/20/17, 8-105). Both were denied before trial after extensive hearings. Perrone also responded and argued against the prosecutor's motion to admit evidence pursuant to MRE 404b. (10/11/17, 3-22). Perrone's defense included arguing that the jury should keep an open mind, that Defendant was presumed innocent, that the Defendant does not have to do anything, and that the prosecutor must prove beyond a reasonable doubt that Defendant is guilty. (11/2/17, 114-120; 11/9/17, 135). Perrone also argued that the evidence against Defendant was manufactured, and that Allen and Close took advantage of Defendant and provided testimony in an attempt to benefit their own situations. (11/2/17, 121-127; 11/9/17, 138-139). Perrone also argued that the evidence that was admitted pursuant to MRE 404b was not a part of the charged conduct in the case. (11/9/17, 137-138, 145). Throughout the trial, Perrone cross-examined witnesses and attempted to elicit testimony consistent with Defendant's theory of the case. Also throughout trial, Defendant was represented by two attorneys—Perrone, and Eric Schroeder.

Defendant was convicted of three counts of Solicitation to Commit Murder and one count of Aggravated Stalking. (11/9/17, 186). On December 12, 2017, Perrone informed the Court of several things: first, that he has bipolar disorder, which he takes medication for. (12/12/17, 6-7); second that he *did not* have an active episode during the trial (12/12/17, 7); third, that his diagnosis did not impact his representation of

RECEIVED by MSC 5/23/2023 1:35:39 PM

Defendant. (12/12/17, 5). On December 13, 2017, a hearing was held regarding the information Perrone provided. The trial Court informed Defendant that Perrone had an illness "*after the completion of the trial*, but before the time of sentencing." (12/13/17, 3). The court appointed another attorney, Duane Silverthorn to represent Defendant, however, *Defendant requested that Perrone continue representing him* along with Mr. Silverthorn. (12/13/17, 4). Defendant agreed that this arrangement was fine with him and that it was what he wanted. (12/13/17, 4). Defendant's sentencing was adjourned from December 20, 2017 to January 24, 2018 so that Silverthorn could prepare. (12/13/17, 5-6). Defendant was sentenced to 200-360 months for each count of Solicitation of Murder, and 36-90 months for Aggravated Stalking, with credit for 443 days. (1/24/18, 37).

RECEIVED by MSC 5/23/2023 1:35:39 PM

## ARGUMENT

## I.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING DEFENDANT'S PREVIOUS ACTS OF STALKING PURSUANT TO MRE 404(B) TO SHOW INTENT, SCHEME, AND SYSTEM IN DOING AN ACT.

### Defendant's Argument

Defendant argues the trial court abused its discretion by admitting Defendant's previous acts of stalking Melke pursuant to MRE 404(b). Defendant argues that the probative value of the other acts evidence was outweighed by the risk of unfair prejudice. Defendant argues that he was denied a fair trial based on the number of other acts that were admitted pursuant to MRE 404(b).

### Issue Preservation

Defendant objected to the admission of Defendant's previous acts of stalking the victim. This argument is preserved.

### Standard of Review

This Court reviews a trial court's decision regarding whether to admit evidence for an abuse of discretion.  *People v Lukity,* 460 Mich 484, 488 (1999).  An abuse of discretion occurs "when the trial court chooses an outcome falling outside [the] principled range of outcomes." *People v Babcock,* 469 Mich 247, 269 (2003). When the decision whether to admit evidence involves a preliminary question of law, e.g. whether a rule of evidence or statute precludes admission of the evidence, this Court reviews the issue de novo. *Lukity, supra* at 488.  "[I]t is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Bynum,* 496 Mich 610, 623 (2014).

RECEIVED by MSC 5/23/2023 1:35:39 PM

"A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Roscoe,* 303 Mich App 633, 639 (2014).

### People's Argument

Files 16-1064-FH and 16-1065-FC were joined for trial. Defendant's three solicitations of murder were a culmination of Defendant's increasingly dangerous, two-year fixation on Melke. The prosecutor argued that Defendant's stalking behavior between August 2015 and July 2017 should be admitted to show motive, intent, and common plan or scheme. The prosecutor filed a timely motion to admit other acts pursuant to MRE 404(b), specifically:

1. Defendant's damage to Melke's vehicle, August  2015;
2. Defendant's messages to White asking to meet, and uninvited harassment at Dave and Busters on New Year's Eve, December 2015-January 2016;
3. Defendant's notice of Melke's January 20, 2016 Personal Protection Order;
4. Defendant's messages to White asking to meet, January 30, 2016;
5. Defendant's message to Melke calling her a "Ho," January 30, 2016;
6. Defendant's confrontation of Melke at Best Buy, March 26, 2016;
7. Defendant's two attempts illegally purchase a gun and ammunition from Burnett, April 5 and 7, 2016;
8. Defendant's phone calls to Melke at her mother's house, April 8, 2016;
9. Defendant's damage to Melke's vehicle at White's house, May 2016;
10. Defendant's damage to White's vehicle, May 2016;
11. Defendant's messages to White asking to meet, May 2016;
12. Defendant's messages to Melke asking to make amends, May 2016;
13. Defendant's home invasion at Melke's apartment, May 25, 2016;
14. Defendant appears in Melke's parking lot and texts Melke's roommate that he is in Turkey, July 17, 2016;
15. Defendant's notice that Melke's Personal Protection Order was extended another year, July 22, 2016;
16. Defendant slashes Melke's tires, August 15, 2016;

13

RECEIVED by MSC 5/23/2023 1:35:39 PM

17. Defendant sends a letter to Melke's mother asking her to write him, September 2016;

18. Defendant's notice that Melke's Personal Protection order was extended five years, July 22, 2017.[Prosecutor's Motion to Admit Other Acts Evidence Pursuant to MRE 404b, *Attachment 5*]

The prosecutor argued that the proposed other acts evidence fit into three different categories: 1. Damage to property, 2. Appearance at location, and 3. Unwanted communications. In addition to these categories, was the Defendant's attempt to illegally buy a firearm and ammunition. (10/11/17, 3-4).[1]   The prosecutor argued that the other acts evidence was offered to show Defendant's common plan or system in stalking Melke, as well as his motive and intent in subsequently soliciting three people to kill Melke. The prosecutor argued that Defendant repeatedly contacted Melke after their breakup, and when this failed, he expanded the scope of his behavior to her friends and family. Once he was incarcerated and he could no longer see or contact her, he solicited three people to kill her because he believed she had ruined his life by breaking up with him and dating someone else or "cheating" as Defendant viewed it.

MRE 404(b) "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin,* 487 Mich. 609, 616 (2010).

MRE 404(b)(1) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

---

[1] The trial court initially found that this would not be admitted pursuant to MRE 404(b), however after Defendant admitted to this conduct, the court reconsidered its ruling and allowed it to be admitted pursuant to MRE 404(b).

14

RECEIVED by MSC 5/23/2023 1:35:39 PM

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

According to *People* v *Vandervliet*, 444 Mich 52 (1993) and *Huddleston* v *US*, 485 US 681 (1988), other acts evidence is admissible if it satisfies the following four-pronged test:

1. The evidence must be offered for a proper purpose under  404(b);
2. The evidence must be relevant under MRE 402 as enforced through MRE 104(b);
3. The probative value of the evidence must not be substantially outweighed by unfair prejudice;
4. The trial court may, upon request, provide a limiting instruction.

**1.   The evidence was offered for a proper purpose under MRE 404(b).**

The prosecutor offered the other acts evidence to prove motive, intent and common system or plan in doing an act. Defendant's motive and intent was to stalk and kill Melke because she broke up with him and he believed that she was responsible for ruining his life. By stalking her, he intended to frighten and intimidate her, as he had previously admitted. By attempting to have her killed, he was motivated by a desire to get back at Melke for ruining his life. Motive and intent are proper purposes pursuant to MRE 404(b). Defendant's stalking charge in 16-1064-FH was merely a continuation and escalation of the previous two years that he stalked Melke. It was an ongoing course of conduct. In order for the jury to properly evaluate this conduct it was necessary for them to hear about the context in which it occurred, that it was a part of Defendant's ongoing behavior. Similarly, in order to understand Defendant's solicitation of Melke's murder, it

15

RECEIVED by MSC 5/23/2023 1:35:39 PM

was also necessary for the jury to understand the reason, motivation, and intent behind it. The solicitations to murder Melke were the final culmination of Defendant's plan. System or plan in doing an act are also proper purposes pursuant to MRE 404(b).

### 2.  The evidence was relevant under MRE 402.

MRE 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

MRE 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible."

Defendant had been continually stalking Melke in various ways during the two years leading up to the charged stalking conduct in 16-1064-FH and 16-1065-FC. Defendant had also previously admitted that his intent in stalking Melke was to intimidate or frighten Melke. This is highly relevant to whether by continuing the same type of stalking conduct, Defendant's intent continued to be what he had previously admitted to. Defendant's previous acts of stalking Melke are certainly relevant to whether he factually continued to engage in the same type of conduct and whether it was his continued intent to frighten and intimidate her.

Similarly, Defendant's prolonged and escalated stalking of Melke, beginning with their breakup, is relevant to why Defendant would want to kill her. From Defendant's perspective based on his own admissions, Melke cheated on him and caused him to lose

RECEIVED by MSC 5/23/2023 1:35:39 PM

his job. Defendant believed that Melke deserved to die a violent death simply because she ended their relationship and persisted in not wanting to have a relationship with him. As the prosecutor argued, Defendant believed that if he could not have Melke, then no one would. Defendant's own statements to Close and Allen give further insight into how Defendant's stalking behavior culminated with his attempts to have her killed. Defendant told Close that Melke ruined his life, lied to him, and cheated on him. Defendant told Close that he had stalked her, entered her house, and that it was her fault that he was in jail. (11/3/17, 138). Defendant told Allen that he was in jail for stalking Melke, that he wanted to get back at Melke, and stated "this bitch got to pay." (11/7/17, 10-11, 13). Defendants own statements explain the relevance of the other acts evidence. Defendant wanted to kill Melke as revenge for the fact that she left him and didn't want to be with him.

Defendant's attempts to obtain an illegal gun and ammunition are also relevant to his later attempts to have Melke killed. Defendant made it clear that he could not do it the "legal way." (11/6/17, 96). Defendant stated that he really needed it, appeared to be serious, and reiterated that did not want to get a gun the legal way. (11/6/17, 94-96). This all occurred in the spring of 2016, in the midst of a time when Defendant's instances of stalking Melke were especially repetitive. The other acts evidence was relevant to Defendant's stalking and solicitation of murder charges in files 16-1064-FH and 16-1065-FC.

RECEIVED by MSC 5/23/2023 1:35:39 PM

### 3. The probative value of the evidence was not substantially outweighed by unfair prejudice.

The probative value of the evidence was not substantially outweighed by unfair prejudice. "[U]nfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Goree,* 132 Mich App 693, 702–703 (1984). Evidence is unfairly prejudicial if there is a danger that marginally probative evidence will be given undue weight by the jury or cause the jury to decide the case on an improper basis such as emotion. *People v Ortiz,* 249 Mich App 297, 306 (2001), *People v Meadows,* 175 Mich App 355, 361 (1989). Unfair prejudice does not mean that the evidence will merely be damaging to the defendant's case. *See People v Mills*, 450 Mich 61, 75 (1995).

It is highly unlikely that Defendant's previous stalking behavior would cause a jury to react with bias, sympathy, anger, shock, or a similar emotion. While Defendant's previous stalking behavior certainly tends to show that Defendant's stalking behavior continued and that Defendant's desire to kill Melke was motivated by revenge, the incidents themselves are not such that a jury would react with bias, sympathy, anger, or shock, and thus make a decision on an inappropriate basis. The conduct was not overtly violent or sexual. Rather, it consisted largely of attempts to contact Melke, either directly or through friends and family, damage to Melke or White's property, and appearing various time's at Melke's location.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Defendant argues that the other acts evidence was unfairly prejudicial because it portrayed Defendant as an obsessed stalker. However, that was precisely the People's position at trial. Defendant argues that the large number of instances of stalking unfairly buttressed the charges for solicitation of murder. This is however incorrect. There was no room for confusion on this point. Instructions from the court, arguments by the prosecutor, and arguments by the defense made it clear that the prosecutor had to prove the elements of each offense beyond a reasonable doubt and that the other acts evidence could only be considered for a limited purpose. Defendant's argument that the large number of witnesses led to confusion is similarly incorrect. The jury did not express any confusion on this point.

Unfair prejudice does not mean the evidence will merely be damaging to Defendant's case. There is no question that the other acts evidence was damaging to Defendant's case. Without the other acts evidence, the jury would have heard, with no context whatsoever, about two instances of stalking conduct followed by three attempts to solicit Melke's murder. In the absence of the context provided by the other acts evidence, this simply would not have been a complete or accurate picture of what occurred, and the jury would have been left with no true way to determine Defendant's motive, intent, and plan. While this makes the other acts evidence highly relevant it, does not then also make the other acts evidence unfairly prejudicial, but instead merely a component of Defendant's case based exclusively on Defendant's own conduct.

Defendant argues that the other acts evidence was damaging to his case, and he is certainly correct, but it did not cause the jury to decide the case on an improper basis.

19

Instead, it showed the jury how after Melke ended the relationship, Defendant did become an obsessed and dangerous stalker. It showed how his conduct in stalking Melke continued and escalated, and ultimately how based on a desire for revenge for all of Melke's perceived slights, Defendant tried to have Melke murdered.

### 4. The trial court provided a limiting instruction.

The trial court also provided a limiting instruction based on Michigan Standard Criminal Jury Instruction 4.11. The instruction was customized to only include the relevant purposes that the jury could consider the other acts evidence for. It stated:

> You have heard evidence that was introduced to show that the Defendant committed other acts for which he is not on trial. If you believe this evidence, you must be very careful and only to consider it for certain purposes. You may only think only about whether this evidence tends to show, one, that the defendant had a reason to commit the crimes. Two, that the defendant specifically meant to repeatedly contact Erika Melke against her wishes, and/or that the Defendant used a plan, system, or characteristic scheme that he had used before or since. You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the Defendant is a bad person or that he is likely to commit crimes. You must not convict here because you think he is guilty of other bad conduct. All the evidence must convince you, beyond a reasonable doubt, that the Defendant committed the alleged crime, or you must find him not guilty. [(11/9/17, 175-176).]

Thus the jury was properly instructed to only consider the other acts evidence for proper and relevant purposes.

RECEIVED by MSC 5/23/2023 1:35:39 PM

RECEIVED by MSC 5/23/2023 1:35:39 PM

**II.   THE   TRIAL   COURT   DID   NOT   ERR   BY   DENYING DEFENDANT'S MOTION FOR SEVERANCE, BECAUSE THE CHARGES WERE A SERIES OF CONNECTED   ACTS OR A SERIES   OF   ACTS   CONSTITUTING   PARTS   OF   A   SINGLE SCHEME OR PLAN**

### Defendant's Argument

Defendant argues that his multiple charges and the other acts evidence were too confusing for the jury and cast Defendant as an obsessed stalker. Defendant argues that severance of Defendant's files would have alleviated the jury's confusion and the perception that he was an obsessed stalker.

### Issue Preservation

Defendant filed a motion to sever trial for his files and the individual counts of Solicitation of Murder. This argument is preserved.

### Standard of Review

"To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate. Because this case presents a mixed question of fact and law, it is subject to both a clear error and a de novo standard of review." *People v Williams*, 483 Mich 226, 231 (2009).

### People's Argument

Defendant's charges were properly joined because they were a series of connected acts or a series of acts constituting part of a single scheme or plan. MCR 6.120(C) states that the trial court "must sever for separate trials offenses that are not related as defined in

21

RECEIVED by MSC 5/23/2023 1:35:39 PM

subrule (B)(1)." Offenses are related if they are based on "(a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1).

Here, Defendant began stalking Melke after she ended their relationship. Defendant continued stalking Melke for approximately two years and culminated his stalking behavior with three attempts to have Melke killed. Defendant's own reasons for soliciting Melke's murder were that he wanted her to pay. This series of connected acts or series of acts constituting parts of a single scheme or plan consisted of numerous instances of unwanted contact. Defendant was charged with Home Invasion Second Degree and Aggravated Stalking in file 16-534-FH and placed in the Ingham County Jail. (Information, *Attachment 1*). Defendant called Melke two times from the Ingham County jail. Defendant had prerecorded a message that said, "I hope you're happy." (11/3/17, 46-48). Defendant wrote a letter for Melke and gave it to his former attorney Chris Bergstrom, to give to the prosecutor for Melke. The letter contained various demands, questions, and statements regarding their relationship. Defendant pleaded guilty to Aggravated Stalking on August 23, 2016 for his stalking conduct from before that date. Defendant admitted that his conduct was designed to scare or intimidate Melke. (11/3/17, 69).

On August 31, 2016 Defendant created a fake email account using Melke's name. He sent Melke a copy of the same letter he had provided to Bergstrom. This was a violation of the PPO and no contact order. (11/3/17, 44, 74-75). On August 27 and 31, 2016, Melke received notifications regarding changes to her Facebook password. This

22

RECEIVED by MSC 5/23/2023 1:35:39 PM

activity was linked to the apartment complex where Defendant lived through search warrants for the IP addresses associated with the activity. (11/3/17, 83, 102-110). Defendant's GPS tether also showed that he was present at the physical location associated with the IP address on August 27, 2017 and August 31, 2017 when the activity occurred. (11/2/17, 115-119). Before Defendant was sentenced on his first aggravated stalking case, he was charged with aggravated stalking in file 16-1064-FH for his stalking conduct between the dates of August 23, 2017 and September 26, 2017. (Information, *Attachment 2*). Defendant's sentencing in his first aggravated stalking file was on November 2, 2017. Defendant was sentenced to six months in the Ingham County Jail in file 16-534-FH.

While serving his sentence, Defendant began soliciting other inmates to murder Melke. Defendant wanted Melke to die because he believed she had ruined his life, lied to him, and cheated on him. Because of this, Defendant wanted to "get rid of her" (11/3/17, 138) and stated "this bitch got to pay." (11/7/17, 13). Defendant was charged in file 16-1065-FC with three counts of solicitation to murder. (Information, *Attachment 3*).

Before Defendant was even sentenced, he continued to persist in harassing Melke with continued stalking between the dates of August 23, 2017 and September 26, 2017, culminating with his three solicitations to murder Melke. Though Defendant pleaded guilty in file 16-534-FH, his plan of stalking and intimidating Melke not only continued, it escalated.

It is also appropriate to consider that evidence of Defendant stalking Melke would have been admitted at trial pursuant to MRE 404(b) even if severance of his stalking

RECEIVED by MSC 5/23/2023 1:35:39 PM

charge and solicitation of murder charges were granted. Correspondingly, had each individual count of solicitation to murder been tried separately, evidence of the other two would have also been admitted pursuant to MRE 404(b).  Our Supreme Court reached a similar conclusion in *People v Williams*, 483 Mich 226, 237 (2009), where the Court stated, "[h]ere, even if the charges were tried separately, evidence from each crime would have been admissible in the trial of the other because of the common scheme or plan." *Id.* The admissibility of evidence in other trials is an important consideration because "[j]oinder of ... other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial."

This Court also reached a similar conclusion in *People v Ali Elatrache*, unpublished per curiam opinion of the Court of Appeals, issued April 19, 2016 (Docket No. 324918) (*Attachment 6*).[2] In *Elatrache*, the defendant relentlessly stalked and harassed the victim "S" after she ended a romantic relationship with him. His stalking and harassment ultimately culminated when he murdered S's father. The defendant argued that the stalking proofs were merely being used to bolster the murder proofs, that the crimes were unrelated, and that they should be severed. *Id.* at 15. The prosecutor argued that S's father's murder was the ultimate harassment that S suffered in that "defendant killed her father, he did what he knew would hurt her the most. The ultimate aggravated stalking…." *Id.* The trial court denied the defendant's motion to sever, and found that the crimes were "intertwined," and relevant to premeditation and deliberation.

---

[2] Pursuant to MCR 7.215(C), this unpublished case is not cited for a proposition of law, but rather to show how this Court has previously viewed a case where stalking served as motivation for another crime, and the trial court appropriately refused to sever charges.

24

Defendant later pleaded guilty to aggravated stalking and proceeded to trial for murdering S's father. Notably, this Court also upheld the use of the defendant's stalking behavior toward S as MRE 404(b) evidence in the defendant's murder trial. *Id*. at 17-19.

Like the defendant in *Elatrache*, here, Defendant relentlessly stalked and harassed the victim after she ended their relationship. In both cases, the stalking escalated, until finally, the Defendant here attempted to have Melke murdered three times, and Elatrache successfully murdered S's father. In both cases, the end of the relationships, the anger and unwillingness to accept the end of the relationships, and a continued desire to control their victims ultimately led to the commission of other crimes. Just as the stalking in *Elatrache* was entwined with the defendant's murder of S's father, Defendant's stalking of Melke is entwined with Defendant's attempts to have Melke killed.  Defendant's actions in stalking and attempting to have Melke killed were a series of connected acts or a series of acts constituting parts of a single scheme or plan pursuant to MCR 6.120(B)(1), and joinder was appropriate.

RECEIVED by MSC 5/23/2023 1:35:39 PM

### III. BECAUSE THE NOTES BETWEEN CLOSE AND PIERCE WERE DISCLOSED TO THE DEFENSE THE WEEK BEFORE TRIAL AND WERE UTILIZED BY DEFENDANT AT TRIAL, THERE WAS NO *BRADY* VIOLATION AND DEFENDANT WAS NOT DENIED A FAIR TRIAL.

#### Defendant's Argument

Defendant argues that the notes between Close and Pierce were disclosed the first day of trial, and thus defense counsel could not properly defend against the charges. Defendant argues that he could have used the notes as a part of his entrapment motion and that the late disclosure was a *Brady* violation.

#### Issue Preservation

Defendant stated that he might move to dismiss based on the timing of when he was provided the notes. Ultimately, Defendant did not raise this argument.[3]

#### Standard of Review

"This Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *People v Stokes,* 312 Mich App 181, 189 (2015).

#### People's Argument

"[T]he components of a '*true Brady* violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150 (2014)(emphasis added). To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A

---

[3] On November 6, 2017, the trial court referenced the notes, stated that he reviewed them, and found that they were not exculpatory. It is unclear as to whether this was associated with a motion. (11/6/17, 62-63).

RECEIVED by MSC 5/23/2023 1:35:39 PM

'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*.; *United States v Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). There is no *Brady* violation here because the evidence was provided to Defendant, and though only marginally favorable to Defendant, was admitted at trial, and used as a part of his defense.

### 1. The prosecutor did not suppress the notes.

Defendant incorrectly asserts that the notes were not provided to Defendant. However, approximately a week before Defendant's trial began, the prosecutor provided Perrone with the handwritten notes that were exchanged between Reginald Close and another inmate named John Pierce. (11/2/17, 6; *Attachment 4*). Thus, this element is not met.

### 2. The notes were not favorable to the defense.

First, the notes did not pertain to Defendant's case. (11/6/17, 7). The notes were written before Close contacted his attorney about Defendant's case. (11/6/17, 23). One of the notes also stated that the author was a good liar, however, it was Pierce, not Close, who wrote that portion of the note. (11/9/17, 65-66).  Perrone attempted to utilize the notes as a part of his defense to show that Close had a habit of communicating with other inmates in an attempt to help his own case, but he was not able to establish that it was Close who claimed to be a good liar. One of the notes also stated that the author could pass a polygraph. Perrone at one point stated that he believed it was Close who had written that statement. (11/3/17, 6-7). Thus, the notes were not favorable to the defense because Close did not write the statements that Defendant wished to attribute to him.

John Peirce testified as a witness for the defense and confirmed that he wrote the portion of the note where the author claimed to be a good liar.

### 3.  The notes were not material.

While materiality is typically established where there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different, this analysis is inapplicable here because the notes were both disclosed and utilized as a part of Defendant's strategy. Defendant attempts to meet this element by arguing that the outcome of his motion for severance would have been different if the notes had been disclosed earlier, but this is incorrect. As previously discussed, severance pertains to whether the offenses are related. The notes between Close and Peirce have absolutely nothing to do with whether Defendant was an obsessed stalker for a period of two years, culminating with attempts to have Melke killed and whether Defendant's act of stalking Melke was related to his attempts to have her killed for breaking up with him and rebuffing his advances.

RECEIVED by MSC 5/23/2023 1:35:39 PM

**IV. BECAUSE DEFENDANT DID NOT MEET HIS BURDEN OF SHOWING THAT HE WAS ENTRAPPED, THE TRIAL COURT PROPERLY DENIED DEFENDANT'S MOTION TO DISMISS BASED ON ENTRAPMENT.**

### Defendant's Argument

Defendant argues that the trial court erred by denying his entrapment motion because while he was in jail he was withdrawing from alcohol and drugs, he was vulnerable due to his placement in segregation, he had "mental health issues," and he was generally naive regarding jail. Defendant also argues that his motion should have been granted based on "the use of jailhouse snitches looking for favorable treatment."

### Issue Preservation

Defendant filed a motion alleging that Defendant was entrapped. This argument is preserved.

### Standard of Review

Whether entrapment occurred is determined by considering the facts of each case and is a question of law for this Court to decide de novo. The trial court must make specific findings regarding entrapment, and this Court reviews its findings under the clearly erroneous standard. The findings are clearly erroneous if this Court is left with a firm conviction that a mistake was made. [*People v Fyda,* 288 Mich App 446, 456 (2010) (citations omitted).]

### People's Argument

Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances, or (2) the police engage in conduct so reprehensible that it cannot be tolerated by the court. The defendant bears the burden of proving entrapment by a preponderance of the evidence. The test for entrapment is objective and focuses on the propriety of the government's conduct that resulted in the charges against the defendant rather than on the defendant's predisposition to commit the crime. Entrapment will not be found where the

29

RECEIVED by MSC 5/23/2023 1:35:39 PM

> police did nothing more than present the defendant with the opportunity to commit the crime of which he was convicted. [*People v Sexton*, 250 Mich App 211 (2002)(internal quotations and citations omitted).]

Here, Perrone filed a pretrial motion and brief alleging that Defendant was entrapped. The trial court held a hearing on Defendant's arguments. Defendant took the stand and testified that he has PTSD, substance abuse problems, and is manic depressive. (10/20/17, 11). Defendant testified that that he has abused alcohol and benzodiazepines for 30 years. (10/20/17, 12).[4] Defendant stated that while he was on the medical unit, he was inside 24 hours per day. (10/20/17, 10-11). Defendant stated that Allen offered to help with his case and that Allen did this with everyone. Defendant testified that he and Close wrote notes to one another about his case, but that it was Close's idea and that it was just talk. (10/20/17, 23). Defendant stated that Close offered to help Defendant beat his case. (10/20/17, 25). Defendant stated that he was being "extorted" by Close and Allen, but did not explain what this meant. (10/20/17, 32). Defendant testified that when he received Officer Mobley's call, he was not expecting a call about killing Melke. (10/20/17, 26-27). Defendant admitted to nearly every instance of stalking conduct, including his attempts to illegally obtain a handgun from a coworker at Michigan State University.

Also at the entrapment hearing, Detective Krumbach testified that Allen and Close were not working under police direction on anything and were never asked to gather information. (10/20/17, 94). Allen and Close did not have proffer agreements regarding their statements or testimony. (10/20/17, 93-94).

---

[4] Defendant did not report this at his previous sentencing.

30

RECEIVED by MSC 5/23/2023 1:35:39 PM

The trial court denied Defendant's entrapment motion. The trial court stated that as to the first prong of the test, it found that Defendant had engaged in an escalation of activities that endangered Melke. The trial court found that "the police didn't really do anything. Close or Allen were not the agents. They were in the cell…And Close and Allen were not agents of the police. And they took the information about Mr. Uraz discussing solicitation of the victim in this matter to authorities. Authorities got it, they investigated it. And then they had the undercover agent make the call." (10/20/17, 109-110). The trial court also stated that in the video call with Officer Mobley, Defendant referenced "Rough" and told Officer Mobley that Rough would have all of the victim/intended target's information. The trial court found that as to Close and Allen, the police didn't do anything and that Close and Allen were not agents. As to Mobley, the trial court watched the video of the call, and found that Defendant did not express confusion, and participated in the conversation by talking about what he wanted to happen and explaining that "Rough" would have additional details. (10/20/17, 109-110).

Though it was not specifically discussed by the court, it is also significant that because Close and Allen were not agents of the police, and Defendant freely solicited each of them to murder Melke, he was not an otherwise law abiding citizen who was induced to commit a crime. Instead, when given a third opportunity to solicit an undercover officer to murder Melke, Defendant did so freely, as he had already done two times before with individuals who were not acting at the direction of law enforcement. Thus, the trial court properly denied Defendant's entrapment motion because the police did not engage in impermissible conduct that would induce an otherwise law abiding

RECEIVED by MSC 5/23/2023 1:35:39 PM

citizen to commit a crime under similar circumstances. Defendant had been stalking Melke for two years—he was certainly not law abiding. Defendant solicited Melke's murder on multiple occasions with Close and Allen before officers were ever involved in his case. Once Officer Mobley called Defendant, Defendant merely continued to solicit Melke's murder as he had already done through several conversations with Close and Allen.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## V. DEFENDANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL MERELY BECAUSE TRIAL COUNSEL WAS A PERSON PREVIOUSLY DIAGNOSED WITH A MENTAL ILLNESS WHO RECEIVED TREATMENT FOR HIS MENTAL ILLNESS AFTER THE CONCLUSION OF DEFENDANT'S TRIAL.

### Defendant's Argument

Defendant argues that one of his attorneys, Perrone, had a mental breakdown during trial and provided ineffective assistance of counsel by: 1) failing to impeach witnesses with prior theft convictions, 2) giving an inadequate closing argument, 3) sending a particular email to Defendant's sister during the trial, and 4) an alleged delay between questions while cross examining a witness.

### Issue Preservation

Defendant did not move for a new trial in the trial court. In fact, after his conviction, he continued to request and receive Perrone's assistance. This argument is not preserved.

### Standard of Review

Whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id.*. The trial court's findings of fact are reviewed for clear error. *Id.* Issues of law are reviewed de novo. *Id.*

Defendant did not preserve this claim by moving for the new trial in the trial court. *People v Nix,* 301 Mich App 195, 207 (2013). "Unpreserved issues concerning

33

ineffective assistance of counsel are reviewed for errors apparent on the record." *People*

*v Lockett,* 295 Mich App 165, 186 (2012).

### People's Argument

A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden.  To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 U S 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994).  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* supra at 687.  In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy.  *Id.* at 690.[5]  "Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.* at 687.  To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim.  [*People v Dendel,* 481 Mich 114, 124-125 (2008), quoting *People v Carbin,* 463 Mich 590, 599-600 (2001).]

---

[5] Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to "affirmatively entertain the range of possible reasons" that counsel may have had for proceeding as he or she did.  *Cullen v Pinholster*, 563 US [170]; 131 S Ct 1388, 1407; 179 L Ed 2d 557 (2011).  That inquiry is objective; although the reviewing court may not engage in a *post hoc* rationalization of the counsel's decision-making that contradicts the available evidence, neither may courts insist that counsel confirm every aspect of the strategic basis for his or her actions.  *Harrington v Richter*, 562 US [86]; 131 S Ct 770, 790; 178 L Ed 2d 624 (2011).  Accordingly, a reviewing court must conclude that the defendant's trial counsel's act or omission fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission. *Pinholster*, 131 S Ct at 1407. [*People v Gioglio*, 296 Mich App 12, 22-23; 815 NW2d 589, vacated in part on other grounds 493 Mich 864; 820 NW2d 922 (2012).]

RECEIVED by MSC 5/23/2023 1:35:39 PM

RECEIVED by MSC 5/23/2023 1:35:39 PM

"The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v Richter,* 562 US 86; 131 S Ct 770, 788; 178 L Ed 2d 624 (2011), quoting *Strickland v Washington,* 466 US 668, 690 (1984).  "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Harrington, supra* at 789, quoting *Strickland, supra* at 689.  "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington, supra* at 789.  "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington, supra* at 790, quoting *Wiggins v Smith,* 539 US 510, 525; 123 S Ct 2527; 156 L Ed 2d 471 (2003).  Counsel's performance must be viewed from an objective standard, not from "counsel's subjective state of mind." *Harrington, supra* at 790.  "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id. at* 791.  "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart* (On Remand), 219 Mich App 38, 42 (1996).

On December 12, 2017, Perrone informed the Court of several things: first, that he has bipolar disorder, which he takes medication for. (12/12/17, 6-7); second that he *did not* have an active episode during the trial (12/12/17, 7); third, that his diagnosis did not

RECEIVED by MSC 5/23/2023 1:35:39 PM

impact his representation of Defendant. (12/12/17, 5). On December 13, 2017, a hearing was held regarding the information Perrone provided. The trial Court informed Defendant that Perrone had an illness "*after the completion of the trial*, but before the time of sentencing." (12/13/17, 3). The court appointed another attorney, Duane Silverthorn to represent Defendant, however, *Defendant requested that Perrone continue representing him* along with Silverthorn. (12/13/17, 4). Defendant agreed that this arrangement was fine with him and that it was what he wanted. (12/13/17, 4). Defendant's sentencing was adjourned from December 20, 2017 to January 24, 2018 so that Silverthorn could prepare. (12/13/17, 5-6). Nonetheless, Defendant argues that trial counsel's mental illness manifested as ineffective assistance in the following ways:

### 1.   Failure to impeach Close and Allen with prior convictions

Defendant asserts that trial counsel should have impeached Close and Allen with their prior theft related convictions. The decisions whether and how to cross-examine witnesses are matters of trial strategy. *In re Ayres,* 239 Mich App 8, 23 (1999); *People v Hopson,* 178 Mich App 406, 412 (1989).  Ineffective assistance of counsel can take the form of a failure to cross-examine witnesses only if the failure deprives the defendant of a substantial defense. *Hopson, supra.*

Here, Perrone did not impeach Allen or Close with previous theft related convictions, however, the jury would have known that they were each in jail because that is how they met Defendant. Thus the failure to cross-examine on this point did not deprive Defendant of a substantial defense. The jury knew that Close and Allen were Ingham County Jail inmates. The jury also knew that when he testified, Close was

RECEIVED by MSC 5/23/2023 1:35:39 PM

incarcerated with the Michigan Department of Corrections (11/3/17, 131). Perrone also attacked Close's and Allen's credibility in numerous other ways. Perrone cross examined Close regarding the fact that he tried to help other inmates with their cases, and that he had tried to help John Pierce. (11/6/17, 6-7). Perrone elicited testimony that Close had proffered on other cases and that his original trial date for his own case was adjourned. (11/6/17, 9-13). Perrone also elicited testimony that Close was worried that Defendant was setting him up (11/6/17, 17). Perrone even elicited testimony from Close that Close and Allen had a conversation about Defendant's attempts to have Melke killed. (11/6/17, 49).

As to Allen, Perrone elicited testimony that Allen was placed on phone restrictions because he wasn't following instructions in the jail. (11/6/17, 31). Perrone elicited testimony from Allen that he tried to help Defendant be more comfortable in jail, and that Defendant seemed scared. (11/6/17, 39). Perrone elicited testimony from Allen that Allen believed it would be easy for someone to take advantage of Defendant. (11/6/17, 47). Perrone also elicited testimony that Allen initially came forward with information about Defendant to try to get out of jail early. (11/6/17, 51).

Thus the failure to impeach Close and Allen with prior theft related convictions did not deny Defendant a substantial defense, and in fact, Perrone elicited other information during cross examination that he was able to use to attack Close's and Allen's credibility, or lend support to his theory of the case. It is not reasonable to assert that had the jury been aware of their prior convictions, that they would have then disregarded their testimony.

RECEIVED by MSC 5/23/2023 1:35:39 PM

### 2) Perrone's closing argument

Defendant asserts that Perrone was ineffective because he gave an inadequate closing argument. This is simply incorrect. During pretrial motions, opening statements, cross-examination of witnesses, and closing arguments, Perrone presented Defendant's theory of the case.

Perrone filed a motion to sever and an entrapment motion on Defendant's behalf. (2/28/17, 3-19; 10/20/17, 8-105). Both were denied before trial after extensive hearings. Perrone also responded and argued against the prosecutor's motion to admit evidence pursuant to MRE 404b. (10/11/17, 3-22). Perrone's defense included arguing that the jury should keep an open mind, that Defendant was presumed innocent, that the Defendant does not have to do anything, and that the prosecutor must prove beyond a reasonable doubt that Defendant is guilty. (11/2/17, 114-120; 11/9/17, 135). Perrone also argued that the evidence against Defendant was manufactured, and that Allen and Close took advantage of Defendant and provided testimony in an attempt to benefit their own situations. (11/2/17, 121-127; 11/9/17, 138-139). Perrone also argued that the evidence that was admitted pursuant to MRE 404(b) was not a part of the charged conduct in the case. (11/9/17, 137-138, 145). Throughout the trial, Perrone cross-examined witnesses and attempted to elicit testimony consistent with Defendant's theory of the case. Also throughout trial, Defendant was represented by two attorneys—Perrone, and Eric Schroeder. Though Defendant asserts that Perrone's closing argument was an example of ineffective assistance of counsel, he fails to explain what was wrong with it, or what should have instead been presented. "It is not sufficient for a party simply to announce a

38

RECEIVED by MSC 5/23/2023 1:35:39 PM

position ... and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor,* 457 Mich 232, 243 (1998) (quotations and citations omitted).

### 3) Email to Defendant's sister

Defendant has attached what purports to be an email that Perrone sent to Defendant's sister during the trial as evidence of ineffective assistance of counsel. Though some of the statements contained in the email are certainly odd, Defendant has not articulated how this email impacted Perrone's representation of Defendant. *See Id*.

### 4) Alleged delay between questions while cross examining Allen

Defendant argues that a statement by the prosecutor regarding Defendant's cross examination of Allen is an example of ineffective assistance of counsel.   Again, Defendant has not explained how any prolonged delay between questions, even if it did occur was ineffective assistance of counsel. While cross examining Allen, Perrone elicited testimony that Allen was placed on phone restrictions because he wasn't following instructions in the jail. (11/6/17, 31). Perrone elicited testimony from Allen that he tried to help Defendant be more comfortable in jail, and that Defendant seemed scared. (11/6/17, 39). Perrone elicited testimony from Allen that Allen believed it would be easy for someone to take advantage of Defendant. (11/6/17, 47).   Perrone also elicited testimony that Allen initially came forward with information about Defendant to try to get out of jail early. (11/6/17, 51).   Thus it is unclear why a delay in questions, if it occurred, was evidence of ineffective assistance of counsel. *See Id*.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Finally, even if these alleged errors were so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment," Defendant cannot establish prejudice. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. This is a burden Defendant cannot meet. The jury heard overwhelming evidence of Defendant's guilt from Melke, White, and other witnesses who experienced Defendant's stalking behavior first-hand. The jury heard from three witnesses, Close, Allen, and Officer Mobley, all of whom described how Defendant solicited them to murder Melke. The jury watched a video of Defendant soliciting Officer Mobley. Also of note is the fact that during his entrapment hearing and his previous stalking plea, Defendant admitted to nearly every component of the evidence against him. Therefore, Defendant cannot establish that but for counsel's errors, the result of the proceeding would have been different. Defendant did not receive ineffective assistance of counsel.

RECEIVED by MSC 5/23/2023 1:35:39 PM

**VI.    THE    TRIAL    PROSECUTOR    DID    NOT    COMMIT PROSECUTORIAL MISCONDUCT AND DENY DEFENDANT A FAIR TRIAL BY STATING THAT THERE WAS A THREE-MINUTE DELAY BETWEEN QUESTIONS AND THAT DEFENSE COUNSEL RECEIVED A BREAK TO GATHER HIS THOUGHTS.**

### Defendant's Argument

Defendant argues that the trial prosecutor committed prosecutorial misconduct and denied Defendant a fair trial by stating that there was a three-minute break between defense counsel's questions and that defense counsel received a break to gather his thoughts. Defendant asserts that these comments were made "in the name of securing a conviction" and to "inflame prejudice."

### Issue Preservation

Defense counsel did not object to the trial prosecutor's comments. This argument is not preserved.

### Standard of Review

Where a defendant fails to object to an alleged prosecutorial impropriety, the issue is reviewed for plain error. A plain error is one that is "clear or obvious," and the error must affect the defendant's "substantial rights." That is, the defendant must have been prejudiced by the plain error. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." [*People v Cooper*, 309 Mich App 74, 88 (2015)(citations and quotation marks omitted).]

### People's Argument

It is well settled that a prosecutor may not personally attack defense counsel, *People v McLaughlin,* 258 Mich App 635, 646 (2003), or "suggest that defense counsel is intentionally attempting to mislead the jury," *People v Unger,* 278 Mich App 210, 236

41

RECEIVED by MSC 5/23/2023 1:35:39 PM

(2008). This Court has distinguished between prosecutor "error" and prosecutor "misconduct" as follows:

> Although we recognize that the phrase "prosecutorial misconduct" has become a term of art in criminal appeals, we agree that the term "misconduct" is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's *88 conduct violates the rules of professional conduct or constitutes illegal conduct. See, e.g., MRPC 8.4. In the vast majority of cases, the conduct about which a defendant complains is premised on the contention that the prosecutor made a technical or inadvertent error at trial—which is not the kind of conduct that would warrant discipline under our code of professional conduct. Therefore, we agree that these claims of error might be better and more fairly presented as claims of "prosecutorial error," with only the most extreme cases rising to the level of "prosecutorial misconduct." No matter what operative phrase is used, we must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial. [*Cooper*, 309 Mich App at 87-88.]

During Perrone's cross examination of Allen, the prosecutor stated, "Your honor, I am going to object. This is three minutes between questions. This cross-examination rambles on for hours." (11/7/17, 60). The court responded, "I can't help that." (11/7/17, 60). The prosecutor responded, "We took a break so he could gather his thoughts." (11/7/17, 60). The court responded, "This is a serious matter. So he can utilize whatever strategy he so desires." (11/7/17, 61). Defendant argues that the prosecutor made these comments to convince the jury of Defendant's guilt because he did not have sufficient evidence. (Defendant's Brief on Appeal, 31).

Though the prosecutor's comments were certainly not necessary, and may have been better addressed off the record, the comments regarding delay between questions and taking a break did not deny Defendant a fair trial. *See Id*. Defendant asserts that the prosecutor's comments regarding delay and taking a break are comparable to the

RECEIVED by MSC 5/23/2023 1:35:39 PM

prosecutor's comments in *People v Dalessandro*, 165 Mich App 569 (1988), but does not provide a complete discussion of the comments at issue in *Dalessandro*. In *Dalessandro*, the prosecutor gave a closing argument rife with personal attacks on defense counsel, including arguments that he was intentionally misleading the jury, and that he fabricated evidence with the intention to mislead and presented perjured testimony. The prosecutor in *Dalessandor* also made extensive appeals for the jury to sympathize with the victim. This Court found that these comments collectively denied the defendant a fair trial.

Such comments are not present here. While the prosecutor's comments were unnecessary, they were also isolated, did not pertain to the evidence or directly denigrate defense counsel. Additionally, they were not incorporated into the prosecutor's closing arguments. The jury was also appropriately instructed that the lawyer's statements and arguments are not evidence, and juries are presumed to follow their instructions. (11/9/17, 166-167). The prosecutor's comments did not deny Defendant a fair trial.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## RELIEF REQUESTED

WHEREFORE, the People respectfully request that this court affirm Defendant's convictions and sentence.

Respectfully submitted,
CAROL A. SIEMON
INGHAM COUNTY PROSECUTOR


/s/ Kahla D. Crino

_____
Kahla D. Crino (P71012)
Dated: July 10, 2019        Appellate Division Chief

Attachment 2

RECEIVED by MSC 5/23/2023 1:35:39 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

                              Court of Appeals Nos.  343695
V                                          343696

                              Circuit Court Nos. 16-1064-FH
                                      16-1065-FH

TUNC URAZ,

      Defendant-Appellant.

_____/

**PEOPLE'S RESPONSE TO DEFENDANT'S
STANDARD-4 SUPPLEMENTAL BRIEF
ORAL ARGUMENT NOT REQUESTED**

CAROL A. SIEMON
      INGHAM COUNTY PROSECUTING ATTORNEY

KAHLA D. CRINO
      APPELLATE DIVISION CHIEF

PREPARED BY:
      JAMES HARRIES
      STUDENT INTERN

BUSINESS ADDRESS
      303 W. Kalamazoo Street, 4th Floor
      Lansing, Michigan 48933

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................iii

COUNTER STATEMENT OF QUESTIONS PRESENTED ...............................v

STATEMENT OF APPELLATE JURISDICTION .................................................vi

INTRODUCTION ....................................................................... 1

COUNTER STATEMENT OF FACTS ....................................... 2

ARGUMENT ............................................................................ 1

I. BECAUSE DEFENDANT WAS CONVICTED AT TRIAL BASED ON SUFFICIENT EVIDENCE OF GUILT HE CANNOT RAISE THE ARGUMENT THAT THE DISTRICT COURT'S BIND OVER DECISION WAS ERRONIOUS. ... 1

II. DEFENDANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL MERELY BECAUSE TRIAL COUNSEL WAS A PERSON PREVIOUSLY DIAGNOSED WITH A MENTAL ILLNESS WHO RECEIVED TREATMENT FOR HIS MENTAL ILLNESS AFTER THE CONCLUSION OF DEFENDANT'S TRIAL. ...................................... 6

III. TRIAL COUNSEL WAS NOT INEFECTIVE FOR FAILING TO OBJECT TO THE ADMISSION OF DEFENDANT'S STATEMENTS, FAILING TO PRESENT A DIMINISHED CAPACITY DEFENSE, AND FAILING TO CALL CERTAIN WITNESSES. .................................. 8

IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING DEFENDANT'S ENTRAPMENT MOTION, ADMITTING EVIDENCE OF DEFENDANT'S STATEMENTS, ADMITTING MRE 404(B) EVIDENCE, AND ALLOWING A JUROR WHO COMMENTED ON DEFENDANT'S RACE TO REMAIN ON THE JURY UNTIL THE CLOSE OF PROOFS. ................................................................24

V. THE TRIAL COURT DID NOT ERR BY SCORING OV 4, 6, AND 10, AND BY ORDERING RESTITUTION, COSTS AND FINES IN BOTH OF DEFENDANT'S FILES. ............................................32

RELIEF REQUESTED ..........................................39

RECEIVED by MSC 5/23/2023 1:35:39 PM

# TABLE OF AUTHORITIES

**Cases**

*Brewer v Williams*, 430 US 387 (1977) ........................................................ 14

*Harrington v Richter,* 562 US 86; 131 S Ct 770; 178 L Ed 2d 624 (2011) .. 10, 11

*Montejo v Louisiana*, 556 US 778; 129 S Ct 2079; 173 LEd2d 955 (2009) ....... 12

*Moore v Illinois*, 434 US 220; 98 S Ct 458; 54 LEd2d 424 (1977) ..................... 12

*People v Babcock*, 469 Mich 247 (2003) ........................................................ 28

*People v Budzyn*, 456 Mich 77 (1997) ........................................................... 32

*People v Burhans*, 166 Mich App 758 (1988) ............................................... 11

*People v Bynum*, 496 Mich 610 (2014) ......................................................... 28

*People v Carbin,* 463 Mich 590 (2001) .......................................................... 10

*People v Carines*, 460 Mich 750 (1999) ............................................. 36, 37, 38

*People v Carpenter*, 464 Mich 223 (2001) .................................................... 17

*People v Cross,* 281 Mich App 737 (2008) .................................................... 37

*People v D'Angelo*, 401 Mich 167 (1977) ............................................... 33, 34

*People v Dendel,* 481 Mich 114 (2008) ......................................................... 10

*People v Fyda,* 288 Mich App 446 (2010) ..................................................... 28

*People v Grant*, 455 Mich 221 (1997) ........................................................... 41

*People v Hall,* 435 Mich 599 (1990) ............................................................... 2

*People v Hardy*, 494 Mich 430 (2013) .......................................................... 37

*People v Harrington*, 258 Mich App 703 (2003) ..................................... 12, 13

*People v Harris,* 185 Mich App 100 (1990) ............................................. 17, 18

*People v Johnson*, 315 Mich App 163 (2016) ............................................... 36

*People v Julian,* 171 Mich App 153 (1988) ................................................... 21

*People v Kammeraad*, 307 Mich App 98 (2014) .......................................... 18

*People v Kelly,* 186 Mich App 524 (1990) ............................................... 21, 42

*People v Kimble*, 470 Mich 305 (2004) ........................................................ 36

*People v Konopka*, 309 Mich App 354 (2015) ............................................. 42

*People v LeBlanc*, 465 Mich 575 (2002) ............................................... 6, 7, 8

*People v Lockett,* 295 Mich App 165 (2012) ............................................. 7, 9

*People v Loper*, 299 Mich App 451 (2013) ................................................... 37

*People v Lukity*, 460 Mich 484 (1999) ......................................................... 28

*People v McKinley,* 255 Mich App 20 (2003) ................................................. 1

*People v Nix,* 301 Mich App 195 (2013) ..................................................... 7, 9

*People v Perkins,* 468 Mich 448 (2003) .......................................................... 1

*People v Rockey,* 237 Mich App 74 (1999) ................................................... 21

*People v Stewart* (On Remand), 219 Mich App 38 (1996) ............................ 11

*People v Tate*, 244 Mich App 553 (2001) ..................................................... 29

*People v Wilson*, 469 Mich 1018 (2004) ......................................................... 1

*People v Yost,* 468 Mich 122 (2003) ............................................................... 2

*Strickland v Washington,* 466 US 668 (1984) .............................................. 10

RECEIVED by MSC 5/23/2023 1:35:39 PM

*United States v Wade*, 388 US 218, 228, 87 S Ct 1926, 18 LEd2d 1149 (1967) ............................................................................................................ 12

*Wiggins v Smith,* 539 US 510; 123 S Ct 2527; 156 L Ed 2d 471 (2003) ............ 11

Statutes

MCL 330.2020(1) .................................................................................. 17
MCL 768.21a ........................................................................................ 19
MCL 769.1k(1)(b)(*iii*) ..................................................................... 41, 42
MCL 777.22(1) ...................................................................................... 39
MCL 777.34 ........................................................................................... 38
MCL 777.36 ........................................................................................... 40
MCL 777.40 ........................................................................................... 38

Rules

MCR 6.125(B) ....................................................................................... 17
MRE 404(b) ................................................................................ 23, 27, 33, 34

Constitutional Provisions

Const 1963, art 1, §17 ............................................................................ 11
Const 1963, art 1, §20 ............................................................................ 11
US Const, Am V ..................................................................................... 11
US Const, Am VI ............................................................................. 11, 12

## COUNTER STATEMENT OF QUESTIONS PRESENTED

**I.  DEFENDANT WAS CONVICTED AT TRIAL BASED ON SUFFICIENT EVIDENCE OF GUILT. CAN THIS COURT ADDRESS DEFENDANT'S CLAIM THAT THE DISTRICT COURT'S BINDOVER DECISION WAS ERRONIOUS?**

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

**II.  DID DEFENDANT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL MERELY BECAUSE TRIAL COUNSEL WAS A PERSON PREVIOUSLY DIAGNOSED WITH A MENTAL ILLNESS WHO RECEIVED TREATMENT FOR HIS MENTAL ILLNESS AFTER THE CONCLUSION OF DEFENDANT'S TRIAL?**

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

**III.  WAS TRIAL COUNSEL INEFECTIVE FOR FAILING TO OBJECT TO THE ADMISSION OF DEFENDANT'S STATEMENTS, FAILING TO PRESENT A DIMINISHED CAPACITY DEFENSE, AND FAILING TO CALL CERTAIN WITNESSES?**

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

**IV.  DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING DEFENDANT'S ENTRAPMENT MOTION, ADMITTING EVIDENCE OF DEFENDANT'S STATEMENTS, ADMITTING MRE 404(B) EVIDENCE, AND ALLOWING A JUROR WHO COMMENTED ON DEFENDANT'S RACE TO REMAIN ON THE JURY UNTIL THE CLOSE OF PROOFS?**

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

**V.  DID THE TRIAL COURT ERR BY SCORING OV 4, 6, AND 10, AND BY ORDERING RESTITUTION, COSTS AND FINES IN BOTH OF DEFENDANT'S FILES?**

> Plaintiff-Appellee answers, "No."
> Defendant-Appellant answers, "Yes."

RECEIVED by MSC 5/23/2023 1:35:39 PM

## STATEMENT OF APPELLATE JURISDICTION

Defendant may file a supplemental brief in propria persona pursuant to Administrative Order 2004-6, Standard 4. Because Defendant's propria persona brief was received within 84 days of February 22, 2019, this Court has jurisdiction.

RECEIVED by MSC 5/23/2023 1:35:39 PM

# INTRODUCTION

Defendant filed a Standard 4 Brief raising fourteen different arguments that do not appear to be in any particular order. The People have rearranged and organized these arguments to facilitate both responding and the appellate review of Defendant's arguments. The People's response will address Defendant's fourteen arguments in the following manner:

I. District court bind over decision (Defendant's Argument 10)
II. Trial counsel's mental illness (Defendant's Argument 3)
III. Ineffective assistance of counsel arguments
   - Trial counsel should have objected to Defendant's statements on the basis of the Fifth Amendment and Sixth Amendment (Defendant's Argument 1 and 14)
   - Trial counsel failed to investigate/present diminished capacity, criminal responsibility, competency (Defendant's Argument 2)
   - Trial counsel failed to investigate and call witnesses (Defendant's Argument 4)
IV. Trial Court abuse of discretion arguments
   - The trial court should have granted Defendant's entrapment motion (Defendant's Argument 5)
   - The trial court shouldn't have admitted recordings of Defendant's statements because they were obtained in violation of his Fifth and Sixth Amendment right to counsel (Defendant's Argument 6)
   - Juror with bias remained until close of proofs (Defendant's Argument 7)
   - Admitting MRE 404(b) evidence (Defendant's Argument 11)
   - Granting MRE 404(b) motion for reconsideration (Defendant's Argument 8)
V. Sentencing arguments
   - Scoring OV 6 at 50 points was a cruel and unusual punishment and the jury was not instructed on degrees of solicitation (Defendant's Argument 9)
   - OV 4 and OV 10 were improperly scored based on facts that were not proven beyond a reasonable doubt (Defendant's Argument 13)
   - Restitution, fines, costs and assessments should not have been charged in both files (Defendant's Argument )

RECEIVED by MSC 5/23/2023 1:35:39 PM

## COUNTER STATEMENT OF FACTS

The People incorporate the counterstatement of facts from their brief on appeal by reference.

# ARGUMENT

## I. BECAUSE DEFENDANT WAS CONVICTED AT TRIAL BASED ON SUFFICIENT EVIDENCE OF GUILT HE CANNOT RAISE THE ARGUMENT THAT THE DISTRICT COURT'S BIND OVER DECISION WAS ERRONIOUS.

### Defendant's Argument

Defendant argues that the district court should not have bound him over for trial in on a third count of solicitation of murder. (Defendant's Argument 10)

### Issue Preservation

Defendant did not file a motion to quash bind over. This argument is not preserved.

### Standard of Review

The circuit court reviews the district court's decision regarding a motion to bind over for an abuse of discretion.  *People v Perkins,* 468 Mich 448, 452 (2003).  This Court reviews de novo the circuit court's decision regarding whether the district court abused its discretion.  *People v McKinley,* 255 Mich App 20, 25 (2003).

### People's Argument

Because Defendant was convicted based on sufficient evidence of guilt, Defendant cannot challenge the district court's bind over decision. "If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Wilson*, 469 Mich 1018 (2004); *People v Hall,* 435 Mich 599, 601-603 (1990); *People v Yost,* 468 Mich 122, 124 n. 2 (2003).

1

RECEIVED by MSC 5/23/2023 1:35:39 PM

Defendant has not raised the argument that he was convicted based on insufficient evidence. Still, the evidence of Defendant's guilt was overwhelming. Defendant persistently stalked Melke and broke into her home. While he was awaiting sentencing, he continued to engage in stalking behavior. While serving his sentence, Defendant began soliciting other inmates to murder Melke. Defendant wanted Melke to die because he believed she had ruined his life, lied to him, and cheated on him. Because of this, Defendant wanted to "get rid of her" (11/3/17, 138) and stated "this bitch got to pay." (11/7/17, 13). Defendant was charged in file 16-1065-FC with three counts of solicitation to murder.

The first person Defendant solicited to murder Melke was Charles Allen. Defendant and Allen were housed together for a period of time in a medical unit. They became friendly and Defendant began to talk to Allen about Melke. Defendant told Allen that he was in jail for stalking Melke. (11/7/17, 10-11). Defendant told Allen that he wanted to get back at Melke, and stated "this bitch got to pay." (11/7/17, 13). Defendant then made numerous, specific solicitations of Allen. Defendant asked Allen to beat Melke with a baseball bat. He stated that he wanted her "fucked up" and that he wanted pictures of it. (11/7/17, 14). Defendant then asked Allen to kill Melke. He specified that he wanted her beaten beyond recognition with a bat and that he wanted it to be recorded so that he could masturbate to it. Defendant also requested Melke's ID. (11/7/17, 20-21). Defendant specified that he wanted Melke's body to be dumped where no one would find her. (11/7/17, 16). Defendant agreed to pay Allen $2,500 in exchange for killing Melke. (11/7/17, 16-18). Defendant told Allen

RECEIVED by MSC 5/23/2023 1:35:39 PM

where Melke lived, what type of car she drove, and warned him that she has a camera in her house. Defendant also requested a gun so that he could go after the guy Melke "cheated" with. (11/7/17, 21-22). Allen went along with the conversations, but had no intentions of doing anything Defendant asked. (11/7/17, 22).

Allen notified a jail deputy about what Defendant had requested. (11/7/17, 24-25). Allen was interviewed by Detective Matt Krumbach, and during the interview, Allen asked if he could get out of jail. Detective Krumback told Defendant no, but that he could tell Allen's probation officer that Allen was helpful. (11/7/17, 27-28). Allen stated that no one took advantage of Defendant or hurt him while he was in jail. (11/7/17, 39, 68). Allen cooperated with law enforcement for the sake of Melke's life, and because it was the right thing to do. (11/7/17, 28, 69-70).

The second person Defendant solicited to murder Melke was Reginald Close. Close's nickname was "Rough." (11/3/17, 131). Defendant, Allen, and Close were assigned to the medical unit at the same time, and that is where Defendant and Close met. (11/3/17, 134-135). Defendant began talking to Close about Melke within 48 hours of meeting him. (11/3/17, 136-138). Defendant told Close that Melke ruined his life, lied to him, and cheated on him. Defendant told Close that he had stalked her, entered her house, and that it was her fault that he was in jail. (11/3/17, 138). Defendant stated that he was going to get rid of her. (11/3/17, 138). Defendant stated that he had lost his job at MSU because he tried to get a gun from a coworker in order to kill Melke. (11/3/17, 139). Defendant stated that he sliced Melke's tires while she

RECEIVED by MSC 5/23/2023 1:35:39 PM

was at a Drake concert and that he was able to access her phone through her iCloud. (11/3/17, 140-141).

Defendant asked Close if he knew anyone who could have Melke killed and make it look like a robbery. (11/3/17, 143). By the time this conversation took place, Allen had been moved to another location in the jail. (11/3/17, 143-144). Defendant asked Close if he could help by killing Melke. (11/3/17, 145). Close notified his lawyer after he realized that Defendant was serious about killing Melke. (11/3/17, 145). Close agreed to help Defendant kill Melke. Defendant provided Melke's address, White's address, Melke's Facebook information, a map to Melke's apartment, Melke's car information, and Melke's job information. (11/3/17, 153-156). Defendant agreed to pay $1,000 for Melke's murder. (11/3/17, 147). Defendant made arrangements for his associate, to place some money in Close's jail account. (11/3/17, 157).

Detective Andrew Hogan, interviewed Close. (11/6/17, 106). Close did not receive anything in exchange for his statement or testimony. He was provided with immunity for agreeing to help Defendant kill Melke. (11/3/17, 146, 160-161). Detective Hogan checked Close's jail account, and verified that someone made a deposit $133.59 on October 13, 2016. (11/6/17, 108-109). Detective Hogan obtained a picture of the person who made the deposit. (11/6/17, 109-110). Detective Hogan verified that Defendant never complained of threats, assaults, or promises from other inmates. (11/6/17, 110-111).

The third person Defendant solicited to murder Melke was Officer Frank Mobley. Officer Mobley made contact with Defendant in an undercover capacity and

RECEIVED by MSC 5/23/2023 1:35:39 PM

pretended to be a "hit man." (11/6/17, 117). He was provided with basic information regarding Defendant's previous solicitations, and was pretending that he was Close's friend from Detroit. (11/6/17, 117-119). Officer Mobley called Defendant for the first time on October 18, 2016, using a video chat option for jail calls. The call was not successful. (11/6/17, 121). Officer Mobley called again on October 24, 2016. Defendant answered, and the entire call was recorded. (11/6/17, 121). Officer Mobley told Defendant that "Rough" had told him that Defendant needed someone to "take out the trash." (11/6/17, 123). Throughout the call, Officer Mobley referred to Melke as the "trash," however, he made it clear that this was code for Melke, the person Defendant wanted to have killed. They discussed whether Defendant wanted Officer Mobley to "beat" the trash, whether he should "spill" the trash all over the house, whether he should beat the trash with a bat, whether he would want the scene to be cleaned up afterward, what color hair the trash had. Defendant stated that he wanted it done quickly, throw it out clean. (11/6/17, 123-127). They discussed the address where the trash would be, and Defendant stated that Rough would have that information because he had written it all down. (11/6/17, 126-127). Defendant stated that he was certain that he wanted it done. They discussed how completion would be verified, and that Defendant would pay Officer Mobley $2,000 for the first "bag" and $500 for any others. Defendant specified that he wanted the "trash" taken care of before November 2, which was his sentencing date.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Based on all of this, there was sufficient evidence to convict Defendant of three counts of solicitation to commit murder, and Defendant cannot challenge the district court's bind over decision on appeal.

## II. DEFENDANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL MERELY BECAUSE TRIAL COUNSEL WAS A PERSON PREVIOUSLY DIAGNOSED WITH A MENTAL ILLNESS WHO RECEIVED TREATMENT FOR HIS MENTAL ILLNESS AFTER THE CONCLUSION OF DEFENDANT'S TRIAL.

### Defendant's Argument

Defendant argues that one of his attorneys, Perrone, had a mental breakdown during trial and provided ineffective assistance of counsel by: 1) failing to impeach witnesses with prior theft convictions, 2) giving an inadequate closing argument, 3) sending a particular email to Defendant's sister during the trial, and 4) an alleged delay between questions while cross examining a witness. (Defendant's Argument 3)

### Issue Preservation

Defendant did not move for a new trial in the trial court. In fact, after his conviction, he continued to request and receive Perrone's assistance. This argument is not preserved.

### Standard of Review

Whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id.* The trial

6

RECEIVED by MSC 5/23/2023 1:35:39 PM

court's findings of fact are reviewed for clear error.  *Id*.  Issues of law are reviewed de novo.  *Id*.

Defendant did not preserve this claim by moving for the new trial in the trial court.  *People v Nix,* 301 Mich App 195, 207 (2013).  "Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *People v Lockett,* 295 Mich App 165, 186 (2012).

## People's Argument

This argument was thoroughly addressed by the People in their Brief on Appeal. The People incorporate their Argument V from their Brief on Appeal by reference.

**III. TRIAL COUNSEL WAS NOT INEFECTIVE FOR FAILING TO OBJECT TO THE ADMISSION OF DEFENDANT'S STATEMENTS, FAILING TO PRESENT A DIMINISHED CAPACITY DEFENSE, AND FAILING TO CALL CERTAIN WITNESSES.**

### Defendant's Argument

Defendant argues that trial counsel was ineffective for the following reasons:

1) trial counsel should have objected to the admission of Defendant's statements on the basis of the Fifth Amendment and Sixth Amendment (Defendant's Argument 1 and 14);

2) Trial counsel failed to investigate/present diminished capacity, criminal responsibility, competency (Defendant's Argument 2); and

3) Trial counsel failed to investigate and call witnesses. (Defendant's Argument 4)

### Issue Preservation

Defendant did not move for a new trial in the trial court. After his conviction, he continued to request and receive Perrone's assistance. This argument is not preserved.

### Standard of Review

Whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id.*. The trial court's findings of fact are reviewed for clear error. *Id.* Issues of law are reviewed de novo. *Id.*

Defendant did not preserve this claim by moving for the new trial in the trial court. *People v Nix,* 301 Mich App 195, 207 (2013). "Unpreserved issues concerning

8

RECEIVED by MSC 5/23/2023 1:35:39 PM

ineffective assistance of counsel are reviewed for errors apparent on the record." *People v Lockett,* 295 Mich App 165, 186 (2012).

**People's Argument**

Trial counsel was not ineffective for failing to object to the admission of Defendant's statements on the basis of the Fifth or Sixth Amendment because Defendant was not subjected to custodial interrogation and his jailhouse conversations were not critical stages of the proceedings. Trial counsel was not ineffective for failing to investigate and pursue a diminished capacity defense because that defense is not legally available. Trial counsel was not ineffective for failing to pursue competency and criminal responsibility because there is no credible evidence that Defendant was incompetent or not criminally responsible. Finally, trial counsel was not ineffective for failing to call the witnesses suggested by Defendant on appeal because their absence did not deny Defendant a substantial defense.

> A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden. To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 U S 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* supra at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating

9

RECEIVED by MSC 5/23/2023 1:35:39 PM

both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [*People v Dendel,* 481 Mich 114, 124-125 (2008), quoting *People v Carbin,* 463 Mich 590, 599-600 (2001).]

"The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v Richter,* 562 US 86; 131 S Ct 770, 788; 178 L Ed 2d 624 (2011), quoting *Strickland v Washington,* 466 US 668, 690 (1984). "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Harrington, supra* at 789, quoting *Strickland, supra* at 689. "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington, supra* at 789. "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington, supra* at 790, quoting *Wiggins v Smith,* 539 US 510, 525; 123 S Ct 2527; 156 L Ed 2d 471 (2003). Counsel's performance must be viewed from an objective standard, not from "counsel's subjective state of mind." *Harrington, supra* at 790. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id. at* 791. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart* (On Remand), 219 Mich App 38, 42 (1996).

RECEIVED by MSC 5/23/2023 1:35:39 PM

**Trial counsel was not ineffective for failing to object to the admission of Defendant's statements on the basis of the Fifth and Sixth Amendment because Defendant was not subjected to custodial interrogation and his jailhouse conversations were not critical stages of the proceedings.**

The right to counsel is guaranteed under both the Fifth and Sixth Amendments of the United States Constitution and Michigan's Constitution. US Const, Am V, Am VI; Const 1963, art 1, §17, Const 1963, art 1, §20.  This right to counsel "extends to all 'critical' stages of the proceedings where counsel's absence might harm defendant's right to a fair trial." *People v Burhans*, 166 Mich App 758, 764 (1988), citing *United States v Wade*, 388 US 218, 228, 87 S Ct 1926, 18 LEd2d 1149 (1967).  The Sixth Amendment right to counsel attaches once criminal proceedings have been initiated. *Moore v Illinois*, 434 US 220, 231; 98 S Ct 458; 54 LEd2d 424 (1977).  "The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." *People v Harrington*, 258 Mich App 703, 706 (2003), quoting US Const, Am VI.  The Sixth Amendment affords an accused the right to rely on counsel as an intermediary between him and the state. *Harrington, supra* at 706.

Once the Sixth Amendment right to counsel has attached, it may still be waived.  *Montejo v Louisiana*, 556 US 778, 786–787; 129 S Ct 2079; 173 LEd2d 955 (2009).

Once the Sixth Amendment right to counsel has attached, it may still be waived.  *Montejo v Louisiana*, 556 US 778, 786–787; 129 S Ct 2079; 173 LEd2d 955 (2009). "When a defendant invokes the Sixth Amendment right to counsel, any subsequent waiver of this right in a *police-initiated custodial interview* is ineffective

RECEIVED by MSC 5/23/2023 1:35:39 PM

with respect to the charges filed against the defendant. An exception to this rule exists where the defendant initiates the contact and makes a valid waiver of his rights." *People v Harrington*, 258 Mich App 703, 706 (2003).

Close and Allen are not police officers or agents of the police. The conversations Defendant chose to have with Close and Allen cannot be characterized as custodial interrogations, but rather, conversations Defendant wanted to have because he had decided to have Melke killed. Thus it was not necessary for the jail inmates or the officer posing as a hit man to advise Defendant of his Miranda rights. The Sixth Amendment right to counsel extends to "critical" stages of Defendant's proceedings. As such, Defendant was not entitled to have counsel present with him in custody for every voluntary conversation that he chose to have with another inmate. The time Defendant spent in custody cannot be characterized as a "critical" stage for purposes of the Sixth Amendment right to counsel. The same is true for Defendant's phone call with Officer Mobley while Officer Mobley pretended to be a hit man. Defendant sought a conversation with Officer Mobley because he believed that he was a hit man. During that conversation, he believed that Officer Mobley was a friend of Close's whom Close had put Defendant in contact with for the purpose of having Melke killed. This is a conversation Defendant voluntarily participated in, it cannot be characterized as custodial interrogation or a critical phase of proceedings. Voluntary conversations with inmates are not custodial interrogations for purposes of Miranda warnings and Defendant's Fifth Amendment rights and they are not critical phases of proceedings for purposes of the Sixth Amendment right to counsel.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Defendant argues his rights were violated because the police officers and their "agents" made statements that were deliberately intended to elicit incriminating evidence from him in violation of his Sixth Amendment right to counsel. In support, Defendant points to *Brewer v Williams*, 430 US 387, 401 (1977). However, *Brewer* is distinguishable. The defendant in *Brewer* was transported by police to Des Moines and the police had agreed with the defendant's counsel not to interrogate the defendant during the trip. *Id.* at 387. One of the officers asked a question that seemed deliberately intended to elicit an incriminating statement from the defendant. The Supreme Court in *Brewer* held that the question and the answer that resulted were a violation of the defendant's rights. In the instant case however, Defendant's counsel had no such agreement with the police and Defendant was not subjected to custodial interrogation.

Defendant also argues that this "deliberate elicitation of incriminating statements" standard from *Brewer* should also apply to the statements he made to Close and Allen because they were part a plot to trick Defendant and because they acted as agents of the police when they discussed the murder plot with Defendant. Defendant claims these men were agents of the police because their motive for telling the police about Defendant was to lessen their own penalties. However, only one of the two men stated that his initial intent in coming forwards was to potentially receive a lower sentence. Additionally, neither Close nor Allen received any kind of benefit for giving the information to the police. (10/20/17, 93-94). Defendant also

RECEIVED by MSC 5/23/2023 1:35:39 PM

claims that the two men were agents because they initiated contact with the Defendant and aided in planning and gathering more information about Defendant.

However, evidence on the record indicates that Defendant was the one who approached both men regarding the murder plot and, while Allen did approach Defendant first, it was only to ask why Defendant was in jail. Additionally, the police only became involved after they received reports from Close and Allen stating that Defendant had approached them and solicited them to murder Melke—meaning that Close and Allen could not have been acting as "agents of the police" as Defendant claims when he made these incriminating statements to Close and Allen. Defendant also argues that an agency relationship can be implied between the police and Close and Allen because the two men admitted to "deliberately eliciting incriminating information while acting as confidants of the Defendant. First, that would only be of concern if the two men were already agents, and second, Close and Allen testified they "played along" with Defendant when he was asking if they knew anyone who could murder Melke because they wanted to know how serious he was.[1] Trial counsel was not ineffective for failing to object on the basis of the Fifth or Sixth Amendment.

---

[1] (11/3/17, p 143-144; 11/7/17, p 17-24).

RECEIVED by MSC 5/23/2023 1:35:39 PM

**Trial counsel was not ineffective for failing to investigate and pursue a diminished capacity defense because that defense is not legally available. Trial counsel was not ineffective for failing to pursue competency and criminal responsibility because there is no credible evidence that Defendant was incompetent or not criminally responsible.**

Defendant argues that his trial counsel was ineffective because he failed to present evidence or consult an expert regarding whether Defendant's diminished state of mind that undermined the specific intent required for his solicitation of intent to commit murder charges. Defendant argues that his counsel should have consulted an expert regarding Defendant's state of mind or requested a continuance to have a psychiatric evaluation done because it would allegedly show that Defendant had a diminished state of mind that would have undermined the specific intent requirement.

Defendant's own description of his "diminished state of mind" at a motion regarding the proposed defense of entrapment was:

> Being in jail for the first time in my life. Put into solitary confinement was a surprise the next day. I wasn't expecting that. And it's the loneliness. You start hallucinating. I had high blood pressure, hypertension, manic depressive situations. We got through every little thing that solitary confinement can do to you. Your focus changes. You start thinking over and over and over many times every little detail in your life, what happened then. You start getting frustrated most of the time. I also had experienced – like I would read a book and I would not remember what I read after a while. Then I would read over it again because – the scarcity of items, you beg for a book. I wasn't allowed to buy any commissary for the first month. Of course, no phone calls, whatsoever, you, taken away. (10/20/17, p 13).

Defendant also described being "held for 23 hours" and being in "withdrawal" due to benzoids and alcohol, as well as potentially suffering from depression. (*Id.* at 152-56). Regardless of how Defendant was feeling, trial counsel was not ineffective

RECEIVED by MSC 5/23/2023 1:35:39 PM

for failing to pursue a diminished capacity defense because diminished capacity was abolished by *People v Carpenter*, 464 Mich 223 (2001).

Defendant asserts that trial counsel was not effective for failing to pursue a competency evaluation. Defendants facing criminal charges are presumed competent to stand trial. MCL 330.2020(1) states:

> A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial.

The issue of a defendant's competence to stand trial may be raised at any time during proceedings against the defendant by the court or the parties. MCR 6.125(B) states:

> The issue of the defendant's competence to stand trial or to participate in other criminal proceedings may be raised at any time during the proceedings against the defendant. The issue may be raised by the court before which such proceedings are pending or being held, or by motion of a party….

In *People v Harris,* 185 Mich App 100 (1990), the Court of Appeals stated: "Although the determination of a defendant's competence is within the trial court's discretion, a trial court has the duty of raising the issue of incompetence where facts are brought to its attention which raise a "bona fide doubt" as to the defendant's competence." *Harris*, 185 Mich App at 102.

> "[T]he test for such a bona fide doubt is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Maxwell v Roe,* 606 F 3d 561, 568 (9th Cir 2010) (citation and quotation marks omitted). Evidence of

RECEIVED by MSC 5/23/2023 1:35:39 PM

> a defendant's irrational behavior, a defendant's demeanor, and a defendant's prior medical record relative to competence are all relevant in determining whether further inquiry in regard to competency is required. *Drope v Missouri,* 420 US 162, 180, 95 S Ct 896, 43 L Ed 2d 103 (1975). "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id.* [*People v Kammeraad*, 307 Mich App 98, 138-39 (2014) *app den* 497 Mich 1014 (2015).]

Here, Defendant displayed no irrational behaviors and there was no indication whatsoever that he may be incompetent. Defendant took the stand at his own entrapment hearing and testified as to why he believed he was entrapped. At Defendant's sentencing, Defendant requested that Perrone continue to assist in his representation. Defendant requested that OV 6 be challenged and provided information about this to his attorney. Defendant argued with the court regarding various facts from his case. On appeal, Defendant has continued to demonstrate his competence by learning that he could file a Standard 4 brief and addressing arguments to this Court.

On appeal, Defendant argues that because he was diagnosed with having depression, anxiety, suicidal thoughts, and chaotic emotions, that he was not competent. Even if we take this assertion as being true, it does not establish that Defendant did not understand the nature and object of the proceedings against him or that he was incapable of assisting in his defense in a rational manner. In fact, the record demonstrates that Defendant assisted with his defense in a rational manner by testifying at a pretrial motion and expressing his opinion at sentencing.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Defendant asserts that trial counsel was ineffective for failing to pursue an evaluation for criminal responsibility. A Defendant is not criminally responsible if at the time of the offense he was legally insane. MCL 768.21a states:

> It is and affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense. An individual is legally insane if, as a result of mental illness as defined in section 400 of the mental health code, 1974 PA 258, MCL 330.1400, or as a result of having an intellectual disability as defined in section 100b of the mental health code, 1974 PA 258, MCL 330.1100b, that person lacks substantial capacity either to appreciate the nature and quality or wrongfulness of his or her conduct or to conform his or her conduct to the requirements of law. Mental illness or otherwise having an intellectual disability does not otherwise constitute a defense of legal insanity.

Again, even if we assume that Defendant was mentally ill, his mental illness, Defendant still had the substantial capacity to appreciate the nature and quality or wrongfulness of his actions and the ability to conform his conduct to the requirements of law. All of Defendant's actions in committing these offenses demonstrate that he understood what he was doing, and did it because he wanted to. Defendant was motivated by jealousy and rage that Melke had left him. When he solicited her murder, he stated that he wanted Melke to die because he believed she had ruined his life, lied to him, and cheated on him. Because of this, Defendant wanted to "get rid of her" (11/3/17, 138) and stated "this bitch got to pay." (11/7/17, 13). He stated that he wanted her "fucked up" and that he wanted pictures of it. (11/7/17, 14). Defendant then asked Allen to kill Melke. He specified that he wanted her beaten beyond recognition with a bat and that he wanted it to be recorded so that he could masturbate to it. Defendant also requested Melke's ID. (11/7/17, 20-21).  Defendant

RECEIVED by MSC 5/23/2023 1:35:39 PM

specified that he wanted Melke's body to be dumped where no one would find her. (11/7/17, 16). Defendant told Close that Melke ruined his life, lied to him, and cheated on him. Defendant told Close that he had stalked her, entered her house, and that it was her fault that he was in jail. (11/3/17, 138). Defendant stated that he was going to get rid of her. (11/3/17, 138).

Defendant took further, intentional actions as a part of his plan. Defendant provided Melke's address, White's address, Melke's Facebook information, a map to Melke's apartment, Melke's car information, and Melke's job information to Close. (11/3/17, 153-156). Defendant agreed to pay $1,000 for Melke's murder. (11/3/17, 147). Defendant made arrangements for his associate, to place some money in Close's jail account. (11/3/17, 157).  When Defendant talked to Officer Mobley, he made the assumption that all of this information was already provided to Officer Mobley by Rough. Additionally, Defendant's evasiveness during his conversation with Officer Mobley further confirms that he understood the wrongfulness of his conduct and that he wanted to be careful of what he said. Defendant knew what he was doing was wrong, but he wanted to kill Melke so badly, that he ultimately did not care.  For all of these reasons, trial counsel was not incompetent for failing to pursue competency or criminal responsibility evaluations.

**Trial counsel was not ineffective for failing to call the witnesses suggested by Defendant on appeal because their absence did not deny Defendant a substantial defense.**

Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *People v Rockey,* 237 Mich

RECEIVED by MSC 5/23/2023 1:35:39 PM

App 74, 76 (1999).  Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense.  *People v Julian,* 171 Mich App 153 (1988).  A substantial defense is one that might have made a difference in the outcome of the trial.  *People v Kelly,* 186 Mich App 524, 526 (1990).

Defendant argues that his trial counsel was ineffective because he failed to investigate or call any relevant witnesses that would have had a material impact on Defendant's case in chief. Defendant claims that his counsel was unprofessional when he provided a list of 30 witnesses that he failed to properly investigate and that Defendant's rights and ability to put on a defense were substantially affected when his counsel failed to call several witnesses during the trial that Defendant believes would have given materially relevant testimony. However, not a single one of these witnesses had any testimony that would have had any effect on Defendant's trial.

Defendant argues that, Kathy Edmonds should have testified and argues that Edmonds would have testified about an abundance of trash at Defendant's house to give credence to the argument that Defendant though Officer Mobley was contacting him to take out "literal" trash rather than a hit. However, given that Officer Mobley was asking Defendant "what color hair the 'trash' had" and "whether he wanted the trash beaten with a bat" or whether he "wanted the trash spread all over" it's unlikely this testimony from Edmonds would have been persuasive. (*Id.* at 70-75).

Defendant argues that two inmate workers from the Ingham County jail should have testified. According to Defendant, these two men would be able to testify

RECEIVED by MSC 5/23/2023 1:35:39 PM

about the interactions, communications, and solicitations between Defendant, Close, and Allen. Such testimony would have been inadmissible as hearsay.

Defendant argues that four witnesses should have been called to testify about how Close and Allen became involved in their own cases. Such testimony would also be inadmissible as hearsay and would not be relevant to Defendant's case.

Defendant argues that two character witnesses should have been called, however, Defendant provides no information regarding what these witness would have said. Thus it is impossible to determine if their testimony would have been admissible and whether their absence denied Defendant a substantial defense.

Defendant argues that a man was with him when he stalked Melke at Dave and Busters in 2015 and that that person should have been called as a witness. The substance of this individual's proposed testimony is not specified. However, because Defendant was stalking Melke on this occasion, this individual may be an aider and abettor in Defendant's stalking behavior. It is also unclear as to whether it would be admissible. The incident in 2015 was part of the admitted MRE 404(b) evidence. Melke and Stan White testified about the Dave and Buster's incident. There was no mention of anyone being with Defendant when he started harassing Melke at the Dave and Buster's or when he was escorted out so it is unclear what this witness would testify to and whether it would be credible. Regardless, it is unclear how the absence of this witness denied Defendant a substantial defense.

Defendant argues that his friend Burak Atamer should have been called to testify regarding how he deposited money in Reginald Close's jail account. However,

RECEIVED by MSC 5/23/2023 1:35:39 PM

Close himself testified about this and Defendant offers no argument how Atamer's testimony would be different. Defendant also argues that a private investigator who investigated Close's "shady background" should have been called. Defendant makes no argument about what this background is, why it would have been important at his trial, or how it would have been admissible.

Finally, Defendant argues that Dr. Sharon Hobbs should have been called to testify regarding her treatment of Defendant prior to the alleged offenses. It is unclear how this testimony would be admissible.

The absence of testimony from these witnesses did not deny Defendant a substantial defense. In fact, Perrone and Schroeder provided Defendant with effective representation and a substantial defense without all of the witnesses suggested by Defendant on appeal. Perrone engaged in pretrial motion practice on behalf of Defendant by filing a motion to sever and an entrapment motion. (2/28/17, 3-19; 10/20/17, 8-105). Both were denied before trial after extensive hearings. Perrone also responded and argued against the prosecutor's motion to admit evidence pursuant to MRE 404b. (10/11/17, 3-22). Perrone's defense included arguing that the jury should keep an open mind, that Defendant was presumed innocent, that the Defendant does not have to do anything, and that the prosecutor must prove beyond a reasonable doubt that Defendant is guilty. (11/2/17, 114-120; 11/9/17, 135). Perrone also argued that the evidence against Defendant was manufactured, and that Allen and Close took advantage of Defendant and provided testimony in an attempt to benefit their own situations. (11/2/17, 121-127; 11/9/17, 138-139). Perrone also argued that the evidence that was admitted pursuant to

RECEIVED by MSC 5/23/2023 1:35:39 PM

MRE 404b was not a part of the charged conduct in the case. (11/9/17, 137-138, 145). Throughout the trial, Perrone cross-examined witnesses and attempted to elicit testimony consistent with Defendant's theory of the case. Throughout trial, Defendant was represented by both of his attorneys—Perrone, and Eric Schroeder.

Finally, even if these alleged errors were so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment," Defendant cannot establish prejudice. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. This is a burden Defendant cannot meet. The jury heard overwhelming evidence of Defendant's guilt from Melke, White, and other witnesses who experienced Defendant's stalking behavior first-hand. The jury heard from three witnesses, Close, Allen, and Officer Mobley, all of whom described how Defendant solicited them to murder Melke. The jury watched a video of Defendant soliciting Officer Mobley. Also of note is the fact that during his entrapment hearing and his previous stalking plea, Defendant admitted to nearly every component of the evidence against him. Therefore, Defendant cannot establish that but for counsel's errors, the result of the proceeding would have been different. Defendant did not receive ineffective assistance of counsel.

RECEIVED by MSC 5/23/2023 1:35:39 PM

**IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING DEFENDANT'S ENTRAPMENT MOTION, ADMITTING EVIDENCE OF DEFENDANT'S STATEMENTS, ADMITTING MRE 404(B) EVIDENCE, AND ALLOWING A JUROR WHO COMMENTED ON DEFENDANT'S RACE TO REMAIN ON THE JURY UNTIL THE CLOSE OF PROOFS.**

### Defendant's Arguments

#### 1. Entrapment

Defendant argues the trial court erred by denying his entrapment motion (Defendant's Argument 5) because while he was in jail, he was withdrawing from alcohol and drugs, he was vulnerable due to his placement in segregation, he had "mental health issues," and he was generally naive regarding jail. Defendant also argues that his motion should have been granted based on "the use of jailhouse snitches looking for favorable treatment."

#### 2. Defendant's Statements

Defendant argues the trial court erred by admitting recordings of Defendant's statements because they were obtained in violation of his Fifth Amendment rights and his Sixth Amendment right to counsel. (Defendant's Argument 6).

#### 3. Juror

Defendant argues that the trial court erred because it did not immediately excuse one of the jury members who claimed he may potentially have a bias against Defendant if Defendant was of Turkish descent. Defendant argues that allowing the jury member to remain on the jury until the end of closing arguments allowed the juror's bias to taint the jury against him in violation of Defendant's rights. (Defendant's Argument 7).

RECEIVED by MSC 5/23/2023 1:35:39 PM

### 4. MRE 404(b)

Defendant argues that the trial court erred by admitting the proposed MRE 404(b) evidence. (Defendant's Argument 11). Defendant also argues that the trial court should not have granted the People's motion for reconsideration as to MRE 404(b) evidence of Defendant's attempts to buy a firearm. (Defendant's Argument 8).

**Issue Preservation**

### 1. Entrapment

Defendant filed a motion alleging that Defendant was entrapped. This argument is preserved for appellate review.

### 2. Defendant's Statements

Defendant did not object to the admission of his statements on the basis of the Fifth or Sixth Amendment. This argument is not preserved.

### 3. Juror

Though Defendant requested that the trial court voir dire the juror, Defendant did not object to the trial court's proposal to excuse the juror at the close of proofs. This argument is not preserved.

### 4. MRE 404(b)

Defendant objected to the admission of the other acts evidence at both the hearing to admit the motion and his trial, therefore, this issue would be preserved for appellate review.

RECEIVED by MSC 5/23/2023 1:35:39 PM

**Standard of Review**

1. **Entrapment**

   Whether entrapment occurred is determined by considering the facts of each case and is a question of law for this Court to decide de novo. The trial court must make specific findings regarding entrapment, and this Court reviews its findings under the clearly erroneous standard. The findings are clearly erroneous if this Court is left with a firm conviction that a mistake was made. [*People v Fyda,* 288 Mich App 446, 456 (2010) (citations omitted).]

2. **Defendant's Statements and MRE 404(b)**

This Court reviews a trial court's decision regarding whether to admit evidence for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488 (1999). An abuse of discretion occurs "when the trial court chooses an outcome falling outside [the] principled range of outcomes." *People v Babcock*, 469 Mich 247, 269 (2003). When the decision whether to admit evidence involves a preliminary question of law, e.g. whether a rule of evidence or statute precludes admission of the evidence, this Court reviews the issue de novo. *Lukity*, supra at 488. "[I]t is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Bynum*, 496 Mich 610, 623 (2014).

3. **Juror**

   "[A] trial court's decision to remove a juror will be reversed only when there has been a clear abuse of discretion. *People v Dry Land Marina, Inc.,* 175 Mich App 322, 325 (1989). An abuse of discretion will be found only when an unprejudiced person, considering the facts on which the trial court acted, would conclude that there was no justification or excuse for the ruling made. *People v Ullah,* 216 Mich App. 669, 673 (1996)." *People v Tate*, 244 Mich App 553, 559 (2001)(parallel citations removed).

RECEIVED by MSC 5/23/2023 1:35:39 PM

**People's Argument**

### 1. Entrapment

This argument was thoroughly addressed by the People in their Brief on Appeal. The People incorporate their argument from Question Presented IV in the People's Brief on Appeal in response to this argument.

### 2. Defendant's Statements

Just as trial counsel was not ineffective for failing to object to the admission of Defendant's statements on the basis of the Fifth and Sixth Amendments, the trial court did not abuse its discretion by admitting these statements. Defendant was not subjected to custodial interrogation and his voluntary conversations with those he came into contact with in the Ingham County Jail are not "critical" proceedings for purposes of the Sixth Amendment.

Defendant argues that his Fifth Amendment rights were violated because he was tricked into making incriminating statements to inmates and an undercover police officer without being made aware of his *Miranda* rights first. Defendant argues that because of this alleged failure, any and all statements he made to Reginald Close, Charles Allen, and Officer Mobley, as well as all statements he made at the evidentiary hearing on October 20, 2017 must be suppressed because these statements were allegedly obtained in violation of his rights.

Defendant's claims that his statements should be suppressed because he was not advised of his *Miranda* rights are baseless and incorrect and there was no need to advise Defendant of his *Miranda* rights since he was never subjected to a custodial interrogation. Defendant could have ended his phone call with Officer Mobley at any

27

RECEIVED by MSC 5/23/2023 1:35:39 PM

time, and Defendant was not being questioned or interrogated, he was voluntarily talking to someone he believed was a hit man to set up a murder for hire. Therefore, as Defendant was not the subject of a custodial interrogation when he spoke to Officer Mobley, there was no need to advise him of his *Miranda* rights.[2]

Defendant claims that his statements to Close and Allen should also be suppressed because they were in violation of his *Miranda* rights. Defendant claims that they were acting as "agents" of the police. However neither Close nor Allen were acting as agents of the police in this case as the majority of their discussions with Defendant regarding the solicitations took place before the police got involved, only one of the two men stated that he came forwards initially in hopes of getting a reduced sentence, and because neither of the men actually received any kind of special treatment in return for the information on Defendant. Since neither of the men were acting as agents of the police, they were not required to advise Defendant of his *Miranda* rights. Additionally, none of the statements that Defendant made to either Close or Allen were involuntary, and there is no indication that Defendant was unable to terminate his conversations with Close and Allen. Defendant was not subjected to a "custodial interrogation" by either of the men for the purposes of *Miranda*.

For all of these reasons, Defendant's Fifth and Sixth Amendment rights were not violated and the trial court did not abuse its discretion by admitting Defendant's statements.

---

[2] Furthermore, it would make no sense from a policy standpoint to require undercover officers to read suspects their *Miranda* rights anytime they spoke as it would completely defeat the purpose of being "undercover."

RECEIVED by MSC 5/23/2023 1:35:39 PM

### 3.  Juror

The trial court did not abuse its discretion by excusing the juror who expressed they may have a bias if Defendant is Turkish. The trial court excused this juror before deliberations began, so it is not possible that the juror's perspective or bias influenced the jury. Defendant argues speculatively that it did, but there is no evidence to support this.

> In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences. Second, the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict. Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict. [*People v Budzyn*, 456 Mich 77, 88–89 (1997)(internal citations and footnotes removed).]

Here, Defendant's claim fails at each step. Defendant first cannot establish that the jury was exposed to the excused juror's bias. Second, even if they were, Defendant cannot establish a real and substantial possibility that it could have affected the jury's verdict. This is akin to claiming that if a person shares their opinion on something with another person, that person would then adopt the opinion as their own. This is not reasonable. Even if we were to assume that the juror told someone else on the jury about their bias, it would not be reasonable to claim the bias would be adopted by anyone who heard about it. Finally, the alleged bias is not related to a material aspect of the case, and there is no direct connection between the excused juror's bias and the verdict. This is because the juror who expressed a bias

RECEIVED by MSC 5/23/2023 1:35:39 PM

did not even participate in deliberations. For all of these reasons, the trial court did not abuse its discretion by excusing the juror before deliberations began.

### 4. Admission of MRE 404(B) Evidence and motion for reconsideration of MRE 404(b) evidence.

Defendant's argument as to the initial MRE 404(b) decision was thoroughly addressed in the People's Brief on Appeal in Question Presented I and the associated argument. The People incorporate that component of their brief on appeal by reference.

Defendant raises a related argument in his assertion that the trial court abused its discretion by considering his testimony at his entrapment hearing to reconsider its ruling regarding Defendant's attempts to buy a gun. Defendant argues that this amounts to using his statements from his entrapment hearing substantively at his trial. However, Defendant's testimony at his entrapment hearing was not used substantively at his trial. His testimony merely caused the trial court to appropriately reconsider its MRE 404(b) ruling as to Defendant's attempts to buy a gun. Defendant points to *People v D'Angelo*, 401 Mich 167, 178 (1977) in support of his argument. In *D'Angelo*, the Supreme Court of Michigan stated that:

> When the defendant raises the issue of entrapment, whether before or during trial, the appropriate procedure will require the trial court to conduct an evidentiary hearing in the jury's absence . . . Any testimony the defendant gives at the entrapment hearing, including his possible admission of the crime charged or some aspect of it, will not be admissible against him in the case in chief for substantive purposes as an admission, but should the defendant give testimony before the jury in the case in chief on a material matter inconsistent with his entrapment hearing testimony, the prior inconsistent testimony may be admitted in the court's discretion to impeach his credibility. *D'Angelo*, 401 Mich at 177-78.

RECEIVED by MSC 5/23/2023 1:35:39 PM

*D'Angelo* does not address what happened at Defendant's trial because Defendant's statements were not used against him. In all other respects the trial court's ruling as to the admissibility of evidence pursuant to MRE 404(b) was appropriate. The People thoroughly addressed the trial court's ruling in Question Presented I of the People's Brief on Appeal. The People incorporate their argument from Question Presented I by reference.

RECEIVED by MSC 5/23/2023 1:35:39 PM

**V. THE TRIAL COURT DID NOT ERR BY SCORING OV 4, 6, AND 10, AND BY ORDERING RESTITUTION, COSTS AND FINES IN BOTH OF DEFENDANT'S FILES.**

### Defendant's Arguments

**1. OV 4 and OV 10**

Defendant argues that OV 4 and OV 10 were improperly scored in that the facts did not support scoring them and because the jury did not find Defendant guilty of causing psychological injury or predatory conduct. (Defendant's Argument 13)

**2. OV6**

Defendant argues that OV 6 was improperly scored because he did not intend to kill Melke and the jury was not instructed regarding the varying degrees of murder that one could solicit. (Defendant's Argument 9). Defendant argues that scoring OV 6 was a cruel and unusual punishment, but does not elaborate on this argument.

**3. Restitution**

Defendant argues that he was improperly ordered to pay restitution for uncharged conduct.

**4. Fines and Costs**

Defendant argues that he should not have been assessed fines and costs in each of his cases because16-1064-FH and 16-1065-FC were joined for trial.

### Issue Preservation

**1. OV 4 and OV 10**

The trial court heard from the prosecutor regarding OV 4 and OV 10, but Defendant did not object to the scoring of OV 4 or OV 10.

RECEIVED by MSC 5/23/2023 1:35:39 PM

### 2. OV 6

Defendant's counsel objected to the scoring of OV 6 at 50 points at Defendant's sentencing hearing. (1/24/18, 9). The argument that OV 6 should not have been scored is preserved. The argument that scoring OV 6 is a cruel and unusual punishment is not preserved.

### 3. Restitution, Fines, and Costs

Defendant did not object to restitution, court costs, or fees at sentencing. These arguments are not preserved. To preserve a challenge regarding a trial court's imposition of court costs, a defendant must object when the trial court orders him to pay the contested court costs. *People v Johnson*, 315 Mich App 163, 197(2016).

## Standard of Review

### 1. OV 4 OV 6, and OV 10

To preserve a challenge to the guidelines scoring, the defendant must raise the issue at sentencing, in a motion for resentencing, or in a proper motion to remand. *People v Kimble*, 470 Mich 305, 309 (2004). Unpreserved scoring errors are reviewable on appeal if the error has resulted in a sentence that is outside the appropriate guidelines range. *Id.* at 310-311. This Court reviews unpreserved scoring challenges for plain error that affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764 (1999). However, if the Defendant advises the sentencing court that he or she agrees with the guidelines as scored, any claim of error is waived for appellate review. *People v Loper*, 299 Mich App 451, 472 (2013).

RECEIVED by MSC 5/23/2023 1:35:39 PM

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438 (2013).

### 2. Restitution

The trial court's decision regarding the amount of restitution ordered is reviewed for an abuse of discretion. *People v Cross,* 281 Mich App 737, 739 (2008).

### 3. Fines and Costs

This Court reviews unpreserved issues regarding the trial court's decision to order a defendant to pay court costs for plain error affecting substantial rights. *Id.*, citing *People v Carines*, 460 Mich 750, 763 (1999). To avoid forfeiture under the plain-error standard, the defendant must satisfy three elements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. Generally, the third element requires the defendant to demonstrate prejudice, "i.e., that the error affected the outcome of the lower court proceedings." *Id.* Even if the defendant has demonstrated all three elements, reversal is appropriate "only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (citation and quotation marks omitted).

RECEIVED by MSC 5/23/2023 1:35:39 PM

**People's Argument**

### 1. OV 4 and OV 10

Offense Variable 4 is scored at 10 points when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34. The trial court heard evidence that after Defendant and Melke broke up, Melke was "anxious, scared, and upset" any time she was asked about Defendant (11/2/17, p 161); Melke felt she needed to break up with Stan White because she did not want to "put him and his family in danger" due to Defendant's escalating harassments (11/3/17, p 30); Melke felt she was being watched and needed to seclude herself from others much more than she should. (1/24/18, p 15). Based on this, the trial court correctly concluded that Melke suffered serious psychological injury requiring medical treatment.

"Offense variable 10 is exploitation of a vulnerable victim." MCL 777.40. Offense Variable 10 is scored at 15 points when predatory conduct was involved. "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation. *Id*. "Predatory conduct" means pre offense conduct directed at a victim, or a law enforcement officer posing as a potential victim, for the primary purpose of victimization. *Id*. The trial court specifically addressed whether Defendant's conduct was predatory. In concluding that OV 10 was properly scored, Defendant considered the totality of Defendant's stalking behavior toward Melke. This included his prior convictions for home invasion and aggravated stalking. (1/24/18, 10). The trial court also addressed Defendant's action of drawing a

35

RECEIVED by MSC 5/23/2023 1:35:39 PM

map with Melke's personal information on it and providing that map to inmates at the Ingham County Jail so that they could murder her. (1/24/18, 10-13). The testimony from Melke, White, Melke's friends, the police, Close, and Allen established Defendant's constant and escalating harassment and stalking of Melke. Defendant's prior domestic relationship and intimate knowledge of Melke made her vulnerable to injury and harassment by Defendant, and Defendant's action of persistently soliciting Melke's murder was predatory. OV 10 was appropriately scored at 15 points.

### 2. OV 6

Offense Variable 6 is scored when the sentencing offense is solicitation to commit homicide. MCL 777.22(1). OV 6 is scored at 50 points if:

The offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer. MCL 777.36.

Here, Defendant solicited three different people to murder Melke. Defendant was specific regarding what he wanted to have happen, and made it clear that he wanted her to die a violent death. The trial court correctly found that Defendant had the premeditated intent to kill when he solicited Melke's murder on three occasions. (1/24/18, 12-14).

RECEIVED by MSC 5/23/2023 1:35:39 PM

### 3.  Restitution

Defendant waived the right to challenge the amount of restitution ordered when he failed to object to the amount of restitution. *People v Grant*, 455 Mich 221, 224 (1997). If Defendant's waiver is overlooked, Defendant is not entitled to a reduction in the restitution he currently owes because he cannot establish plain error.

Defendant argues that his court order to pay $2273.00 in restitution was improper because it was based on "uncharged conduct" Defendant claims that the acts of property damage done to Melke and Stan White's vehicles should not be attributed to him and he should not be ordered to pay restitution because, though he was the primary suspect, he was never charged or convicted of these crimes. However, what Defendant fails to mention is that three separate witnesses testified at the trial that Defendant was the most likely person who could have perpetrated the acts of property damage. When asked about the property damage, Defendant did not deny it. Close testified that Defendant told him he was the one who damaged to Melke and Stan White's vehicles. (10/20/17, 43; 11/2/17, 183; 11/3/17, 51, 140). The trial court did not abuse its discretion by ordering restitution because these acts were part of Defendant's course of conduct in stalking Melke. As such, these acts of property damage are part of the "conduct which gives rise to the conviction."

### 4.  Fines and Costs

MCL 769.1k(1)(b)(*iii*) states:

Until October 17, 2020, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

RECEIVED by MSC 5/23/2023 1:35:39 PM

    (A) Salaries and benefits for relevant court personnel.
    (B) Goods and services necessary for the operation of the court.
    (C) Necessary expenses for the operation and maintenance of court
    buildings and facilities.

Courts are not required to separately calculate the costs incurred for each trial, but a trial court must "establish a factual basis" for the costs imposed pursuant MCL 769.1k(1)(b)(*iii*) . *People v Konopka*, 309 Mich App 354, 359 (2015).

    Defendant does not argue that the court was not authorized to impose costs or that the costs imposed were not authorized by statute. Instead, he argues that costs should not have been imposed in each of his files. Defendant has failed to present any statutes, case law, or other legal basis in support of this claim and only provides a definition of the legislative intent behind imposing costs on a defendant. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis of his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly,* 231 Mich App 627, 640-641 (1998).

    It should however be noted that Defendant was not ordered to pay restitution twice. The judgment of sentence for file 16-1065-FC states that restitution is ordered in the amount of $2,273, and the judgment of sentence for file 16-1064-FH states that no restitution was ordered.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## RELIEF REQUESTED

WHEREFORE, the People respectfully request that this court affirm Defendant's convictions and sentence.

Respectfully submitted,

CAROL A. SIEMON
INGHAM COUNTY PROSECUTOR

Dated: February 19, 2020

/s/ Kahla D. Crino
Kahla D. Crino (P71012)
Appellate Division Chief

## CERTIFICATE OF SERVICE

On February 19, 2020, I served a copy of the People's Response to Defendant's Standard 4 Brief on Defendant by first-class mail addressed to:

Tunc Uraz
MDOC #114653
Alger Correctional Facility
N6141 Industrial Park Drive
Munising, MI 49862

I declare that the statements above are true to the best of my knowledge, information, and belief.

/s/ Lisa Renee Davis
Lisa Renee Davis

Attachment 3

RECEIVED by MSC 5/23/2023 1:35:39 PM

STATE OF MICHIGAN
IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,
   Plaintiff-Appellee,

Court of Appeals Nos.
343695 & 343696

V

Circuit Court Nos.
16-1065-FC & 16-1064-FH

TUNC URAZ,
   Defendant-Appellant.

_____/

**PEOPLE'S SUPPLEMENTAL BRIEF ON APPEAL (POST-REMAND)**
**ORAL ARGUMENT REQUESTED**

CAROL A. SIEMON (P32946)
   INGHAM COUNTY PROSECUTING ATTORNEY

KAHLA D. CRINO (P71012)
   APPELLATE DIVISION CHIEF

BUSINESS ADDRESS
   303 W. Kalamazoo Street, 4th Floor
   Lansing, MI 48933
   (517) 483-6228
   kcrino@ingham.org

RECEIVED by MSC 5/23/2023 1:35:39 PM

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

Statement of Appellate Jurisdiction and Judgment Subject to Appeal ............... iv

Counter-Statement of the Question Involved ...................................................... v

Counter-Statement of Facts .................................................................................. 1

Argument ............................................................................................................. 13

    I.    Defendant's *Ginther* hearing revealed that: 1) Defendant's attorney, Mr. Perrone was diagnosed with a mental illness *after* Defendant's trial; 2) Mr. Perrone did not exhibit symptoms of his mental illness *during* Defendant's trial, and 3) Mr. Perrone provided effective assistance of counsel. Defendant did not establish the factual predicate for his ineffective assistance claim or actual prejudice. The trial court did not abuse its discretion by finding that Mr. Perrone provided effective assistance of counsel and denying Defendant's motion for new trial. ................... 13

    Relief Requested ....................................................................................... 25

RECEIVED by MSC 5/23/2023 1:35:39 PM

# TABLE OF AUTHORITIES

**Cases**

*Cullen v Pinholster*, 563 US 170; 131 S Ct 1388; 179 L Ed 2d 557 (2011) ............... 14

*Harrington v Richter,* 562 US 86; 131 S Ct 770; 178 L Ed 2d 624 (2011) .......... 14, 15

*In re Ayres,* 239 Mich App 8; 197 NW2d 106 (1999).................................................. 18

*People v Carbin,* 463 Mich 590; 623 NW2d 884 (2001) ............................................ 14

*People v Dendel,* 481 Mich 114; 748 NW2d 859 (2008) ............................................ 14

*People v Hopson,* 178 Mich App 406; 444 NW2d 167 (1989)..................................... 18

*People v LeBlanc*, 465 Mich 575; 640 NW2d 246 (2002) ..................................... 13, 14

*People v Orlewicz*, 293 Mich App 96; 809 NW2d 194 (2011)..................................... 14

*People v Stewart* (On Remand), 219 Mich App 38; 555 NW2d 715 (1996) ............... 16

*Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)... 15, 22

*Wiggins v Smith,* 539 US 510; 123 S Ct 2527; 156 L Ed 2d 471 (2003) ................... 15

**Rules**

MRE 404(b) .............................................................................................................. 21

RECEIVED by MSC 5/23/2023 1:35:39 PM

## STATEMENT OF APPELLATE JURISDICTION AND JUDGMENT SUBJECT TO APPEAL

On March 6, 2020, this Court remanded to the trial court for a *Ginther*.[1] In its order, this Court stated that it retained jurisdiction. On August 8, 2022, the trial court found that Defendant was not denied effective assistance of counsel.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1993).

RECEIVED by MSC 5/23/2023 1:35:39 PM

**COUNTER-STATEMENT OF THE QUESTION INVOLVED**

**I.  Defendant's *Ginther* hearing revealed that: 1) Defendant's attorney, Mr. Perrone was diagnosed with a mental illness *after* Defendant's trial; 2) Mr. Perrone did not exhibit symptoms of his mental illness *during* Defendant's trial, and 3) Mr. Perrone provided effective assistance of counsel. Defendant did not establish the factual predicate for his ineffective assistance claim or actual prejudice. Did the trial court abuse its discretion by finding that Mr. Perrone provided effective assistance of counsel and denying Defendant's motion for new trial?**

Plaintiff-Appellee answers: No.

Defendant-Appellant answers: Yes.

Trial Court answered: No.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## COUNTER-STATEMENT OF FACTS

Defendant Tunc Uraz stalked his ex-girlfriend Erika Melke and solicited two jail inmates and an undercover officer to murder her after she ended a romantic relationship with him. As a result, a jury found him guilty of aggravated stalking and three counts of solicitation of murder.

Defendant and Ms. Melke were in a dating relationship from the end of 2012 or beginning of 2013 until June 2015. (11/3/17, 10). They met when Defendant worked at the Michigan State University Cafeteria and Ms. Melke was a student. (11/3/17, 9). During the relationship, Defendant and Ms. Melke communicated in English, and Defendant taught a culinary arts management class in English. (11/3/17, 10-11).

When Ms. Melke ended the relationship, Defendant was not happy. (11/3/17, 11). After the relationship ended, Defendant still tried to communicate with Ms. Melke and work on their issues. (11/3/17, 11-12). Ms. Melke asked Defendant to leave her alone, but he refused. (11/3/17, 12). In July of 2015, Ms. Melke moved from one unit in her apartment complex to another unit, and Defendant helped her move. (11/3/17, 12-15). Defendant did not have a key to Ms. Melke's apartment. (11/3/17, 14-15).

During the evening on August 24, 2015, someone peeled Ms. Melke's registration tag off of her car, and damaged her car by keying it. (11/3/17, 15-17). On September 29, 2015, Defendant confronted Ms. Melke while she was grocery shopping at Kroger. Defendant asked Ms. Melke about a man that she was dating. Ms. Melke asked Defendant to leave her alone and left the store. Defendant also left without

RECEIVED by MSC 5/23/2023 1:35:39 PM

buying anything. (11/3/17, 18-19). During this time, Defendant was still trying to communicate with Ms. Melke by text message. (11/3/17, 20).

On December 31, 2015, Defendant confronted Ms. Melke while she was celebrating New Year's Eve at Dave and Busters with her then boyfriend, Stan White, and their friends Noelle VanSlembrouck and Zeb Baldwin. (11/3/17, 20). Defendant tried to make Ms. Melke come outside to talk to him. (11/3/17, 20). When she refused, he began slandering her, calling her a slut, and trying to talk to Mr. White. (11/3/17, 20). Ms. Melke felt scared and unsafe. (11/3/17, 21). Management had to escort Defendant out of the restaurant. (11/3/17, 22). That evening, when Ms. Melke and Mr. White left Dave and Busters, the tires on Mr. White's vehicle had been punctured on their side walls. (11/2/17, 178-179).

Ms. Melke obtained a Personal Protection Order and served Defendant on January 21, 2016. (11/3/17, 21). On February 13, 2016, Defendant texted Ms. Melke and called her a "Ho." (11/3/17, 24).  On March 26, 2016, Defendant confronted Ms. Melke in the parking lot of Best Buy in Okemos. (11/3/17, 25). As Ms. Melke was pulling into the parking lot, she noticed Defendant's vehicle behind her. (11/3/17, 25). Defendant pulled up next to Ms. Melke, rolled down his window, and tried to talk to her. (11/3/17, 25). Ms. Melke took pictures of Defendant using her phone, stayed inside her car, and called the police. (11/3/17, 26-27). Defendant only left the parking lot when police arrived. (11/2/17, 131). Ms. Melke was upset, crying, and distraught. (11/3/17, 132).

On April 8, 2016, Ms. Melke was in Petoskey at her mother's home. (11/3/17, 27). Defendant called Ms. Melke from his mother's phone. His mother's name appeared on Melke's mother's caller ID, and Ms. Melke did not answer the call. (11/3/17, 28). Ms. Melke did not inform Defendant that she was going to Petoskey. (11/3/17, 28). On May 16, 2016, Ms. Melke stayed at White's house. During the night, Defendant egged Ms. Melke's vehicle and punctured the tires on Mr. White's vehicle again. (11/3/17, 29; 11/2/17, 183). After this, Defendant also began texting Mr. White. Defendant did not identify himself in the text messages, but asked Mr. White to meet with him to work out their differences. Mr. White responded by calling the sender by Defendant's name, confronting him about damaging his vehicle and Ms. Melke's vehicle, and declining to meet with him. The sender did not express confusion and responded in a manner that made it clear he was Defendant. (11/2/17, 185-189). After this, Ms. Melke ended her relationship with Mr. White because she did not want to put him in continued danger. (11/3/17, 30-31).

Also in April 2016, Defendant attempted to obtain a gun and ammunition. Defendant stated that he could not do it the "legal way." (11/6/17, 96). Defendant asked Patrick Burnett, his co-worker at the Michigan State University, to get him a gun and bullets. Defendant asked Mr. Burnett, "Do you trust me?" (11/6/17, 92). Defendant stated that he really needed it, appeared to be serious, and stated that did not want to get a gun the legal way. (11/6/17, 94-96). The day after asking Mr. Burnett to get a gun and bullets for him, Defendant again approached Mr. Burnett, and made the same request again. (11/6/17, 97). Mr. Burnett knew it was not a joke, and

RECEIVED by MSC 5/23/2023 1:35:39 PM

reported the conversation to his supervisor. Defendant was terminated from his employment at Michigan State University for making this request. (11/6/17, 99).

In May 2016, Ms. Melke placed a security camera in her bedroom because she was concerned that Defendant had entered her apartment without her knowledge or consent. Ms. Melke was correct. On May 25, 2016, Defendant was caught on camera looking around inside Ms. Melke's room. Defendant appeared to be looking in an area where Ms. Melke had placed tickets for an upcoming Drake concert. A bra, underwear, and a pair of shoes also went missing from Ms. Melke's bedroom. (11/3/17, 31-35).

On July 17, 2016, Carmen Elias, Ms. Melke's roommate and Ms. Melke saw Defendant parked outside of Ms. Melke's bedroom. (11/3/17, 35-36; 11/2/17, 146-148). Ms. Elias went to the parking lot, and Defendant drove away. Defendant then texted Ms. Elias and stated that he was in Turkey. (11/2/17, 147-148). A few weeks later, Ms. Elias found that the lug nuts on her tires had been loosened while it was parked outside her apartment. (11/2/17, 155).

On July 13, 2016, Ms. Melke obtained another Personal Protection Order. (11/3/17, 36). On August 15, 2016, Defendant began trying to access and change the password on Ms. Melke's Facebook account (11/3/17, 37). Defendant also created an Instagram account in Ms. Melke's name. He used pictures from Ms. Melke's actual Facebook account, and pictures of a dildo and posted them on the fake Instagram account. He also posted various pictures and messages that pertained to "cheating." (11/3/17, 37-42). This activity was linked to the apartment complex where Defendant

RECEIVED by MSC 5/23/2023 1:35:39 PM

and Defendant's associate Burak Atamar lived through search warrants for the IP addresses associated with the activity. (11/3/17, 83, 102-110). On August 16, 2016, Ms. Melke attended the Drake concert associated with the tickets Defendant appeared to look at when he broke into her bedroom in May of 2016. (11/3/17, 48). When she returned to her vehicle, her tires were again punctured by stabs to the side walls. (11/48-50).

Defendant was charged with home invasion second degree and aggravated stalking in file 16-534-FH and placed in the Ingham County Jail. Defendant called Ms. Melke two times from the Ingham County jail. Defendant had prerecorded a message that said, "I hope you're happy." (11/3/17, 46-48). Defendant wrote a letter for Ms. Melke and gave it to his former attorney Chris Bergstrom, to give to the prosecutor for Ms. Melke. The letter contained various demands, questions, and statements regarding their relationship. Defendant pleaded guilty to Aggravated Stalking on August 23, 2016, for his stalking conduct from before that date. Defendant admitted that his conduct was designed to scare or intimidate Ms. Melke. (11/3/17, 69).

On August 31, 2016 Defendant created a fake email account using Ms. Melke's name. He sent Ms. Melke a copy of the same letter he had provided to Bergstrom. This was a violation of the PPO and no contact order. (11/3/17, 44, 74-75). On August 27 and 31, 2016, Melke received notifications regarding changes to her Facebook password. This activity was linked to the apartment complex where Defendant lived through search warrants for the IP addresses associated with the activity. (11/3/17,

RECEIVED by MSC 5/23/2023 1:35:39 PM

83, 102-110). Defendant's GPS tether also showed that he was present at the physical location associated with the IP address on August 27, 2017 and August 31, 2017 when the activity occurred. (11/2/17, 115-119). Before Defendant was sentenced on his first aggravated stalking case, he was charged with aggravated stalking in file 16-1064-FH for his stalking conduct between the dates of August 23, 2017 and September 26, 2017. Defendant's sentencing in his first aggravated stalking file was on November 2, 2017. At that hearing, Defendant admitted to using alcohol since 1985, but denied ever abusing controlled substances. (11/3/17, 70-72).  Defendant was sentenced to six months in the Ingham County Jail in file 16-534-FH.

While serving his sentence, Defendant began soliciting other inmates to murder Ms. Melke. Defendant wanted Ms. Melke to die because he believed she had ruined his life, lied to him, and cheated on him. Because of this, Defendant wanted to "get rid of her" (11/3/17, 138) and stated "this bitch got to pay." (11/7/17, 13). Defendant was charged in file 16-1065-FC with three counts of solicitation to murder.

The first person Defendant solicited to murder Ms. Melke was Charles Allen. Defendant and Mr. Allen were housed together for a period of time in a medical unit. They became friendly and Defendant began to talk to Allen about Melke. Defendant told Allen that he was in jail for stalking Ms. Melke. (11/7/17, 10-11). Defendant told Allen that he wanted to get back at Ms. Melke, and stated "this bitch got to pay." (11/7/17, 13). Defendant then made numerous, specific solicitations of Allen. Defendant asked Allen to beat Ms. Melke with a baseball bat. He stated that he wanted her "fucked up" and that he wanted pictures of it. (11/7/17, 14). Defendant

RECEIVED by MSC 5/23/2023 1:35:39 PM

then asked Allen to kill Ms. Melke. He specified that he wanted her beaten beyond recognition with a bat and that he wanted it to be recorded so that he could masturbate to it. Defendant also requested Ms. Melke's ID. (11/7/17, 20-21). Defendant specified that he wanted Ms. Melke's body to be dumped where no one would find her. (11/7/17, 16). Defendant agreed to pay Allen $2,500 in exchange for killing Ms. Melke. (11/7/17, 16-18). Defendant told Mr. Allen where Ms. Melke lived, what type of car she drove, and warned him that she has a camera in her house. Defendant also requested a gun so that he could go after the guy Ms. Melke "cheated" with. (11/7/17, 21-22). Mr. Allen went along with the conversations, but had no intentions of doing anything Defendant asked. (11/7/17, 22).

Mr. Allen notified a jail deputy about what Defendant had requested. (11/7/17, 24-25). Mr. Allen was interviewed by Detective Matt Krumbach, and during the interview, Mr. Allen asked if he could get out of jail. Detective Krumback told Defendant no, but that he could tell Mr. Allen's probation officer that Mr. Allen was helpful. (11/7/17, 27-28). Mr. Allen stated that no one took advantage of Defendant or hurt him while he was in jail. (11/7/17, 39, 68). Mr. Allen cooperated with law enforcement for the sake of Ms. Melke's life, and because it was the right thing to do. (11/7/17, 28, 69-70).

The second person Defendant solicited to murder Ms. Melke was Reginald Close. Mr. Close's nickname was "Rough." (11/3/17, 131). Defendant, Mr. Allen, and Mr. Close were assigned to the medical unit at the same time, and that is where Defendant and Mr. Close met. (11/3/17, 134-135). Defendant began talking to Mr.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Close about Ms. Melke within 48 hours of meeting him. (11/3/17, 136-138). Defendant told Mr. Close that Ms. Melke ruined his life, lied to him, and cheated on him. Defendant told Mr. Close that he had stalked her, entered her house, and that it was her fault that he was in jail. (11/3/17, 138). Defendant stated that he was going to get rid of her. (11/3/17, 138). Defendant stated that he had lost his job at MSU because he tried to get a gun from a coworker in order to kill Ms. Melke. (11/3/17, 139). Defendant stated that he sliced Ms. Melke's tires while she was at a Drake concert and that he was able to access her phone through her iCloud. (11/3/17, 140-141).

Defendant asked Mr. Close if he knew anyone who could have Ms. Melke killed and make it look like a robbery. (11/3/17, 143). By the time this conversation took place, Mr. Allen had been moved to another location in the jail. (11/3/17, 143-144). Defendant asked Mr. Close if he could help by killing Ms. Melke. (11/3/17, 145). Mr. Close notified his lawyer after he realized that Defendant was serious about killing Ms. Melke. (11/3/17, 145). Mr. Close agreed to help Defendant kill Ms. Melke. Defendant provided Ms. Melke's address, Mr. White's address, Ms. Melke's Facebook information, a map to Ms. Melke's apartment, Ms. Melke's car information, and Ms. Melke's job information. (11/3/17, 153-156). Defendant agreed to pay $1,000 for Ms. Melke's murder. (11/3/17, 147). Defendant made arrangements for his associate to place some money in Mr. Close's jail account. (11/3/17, 157).

Detective Andrew Hogan, interviewed Mr. Close. (11/6/17, 106). Mr. Close did not receive anything in exchange for his statement or testimony. He was provided with immunity for agreeing to help Defendant kill Ms. Melke. (11/3/17, 146, 160-161).

RECEIVED by MSC 5/23/2023 1:35:39 PM

Detective Hogan checked Mr. Close's jail account, and verified that someone made a deposit $133.59 on October 13, 2016. (11/6/17, 108-109). Detective Hogan obtained a picture of the person who made the deposit. (11/6/17, 109-110). Detective Hogan verified that Defendant never complained of threats, assaults, or promises from other inmates. (11/6/17, 110-111).

The third person Defendant solicited to murder Ms. Melke was Officer Frank Mobley. Officer Mobley made contact with Defendant in an undercover capacity and pretended to be a "hit man." (11/6/17, 117). He was provided with basic information regarding Defendant's previous solicitations, and was pretending that he was Mr. Close's friend from Detroit. (11/6/17, 117-119). Officer Mobley called Defendant for the first time on October 18, 2016, using a video chat option for jail calls. The call was not successful. (11/6/17, 121). Officer Mobley called again on October 24, 2016. Defendant answered, and the entire call was recorded. (11/6/17, 121). Officer Mobley told Defendant that "Rough" had told him that Defendant needed someone to "take out the trash." (11/6/17, 123). Throughout the call, Officer Mobley referred to Ms. Melke as the "trash," however, he made it clear that this was code for Ms. Melke, the person Defendant wanted to have killed. They discussed whether Defendant wanted Officer Mobley to "beat" the trash, whether he should "spill" the trash all over the house, whether he should beat the trash with a bat, whether he would want the scene to be cleaned up afterward, what color hair the trash had. Defendant stated that he wanted it done quickly, throw it out clean. (11/6/17, 123-127). They discussed the address where the trash would be, and Defendant stated that Rough would have that

RECEIVED by MSC 5/23/2023 1:35:39 PM

information because he had written it all down. (11/6/17, 126-127). Defendant stated that he was certain that he wanted it done. They discussed how completion would be verified, and that Defendant would pay Officer Mobley $2,000 for the first "bag" and $500 for any others. Defendant specified that he wanted the "trash" taken care of before November 2, which was his sentencing date.

Approximately a week before Defendant's trial began, the prosecutor provided Mr. Perrone with handwritten notes that were exchanged between Reginald Close and another inmate named John Pierce. (11/2/17, 6). The notes did not pertain to Defendant's case. (11/6/17, 7). The notes were written before Mr. Close contacted his attorney about Defendant's case. (11/6/17, 23). Mr. Perrone utilized the notes as a part of his defense to show that Mr. Close had a habit of communicating with other inmates in an attempt to help his own case. One of the notes also stated that the author was a good liar, however, it was Mr. Pierce, not Mr. Close, who wrote that portion of the note. (11/9/17, 65-66). One of the notes also stated that the author could pass a polygraph. Mr. Perrone at one point stated that he believed it was Mr. Close who had written that statement. (11/3/17, 6-7).

Mr. Perrone filed a motion to sever and an entrapment motion on Defendant's behalf. (2/28/17, 3-19; 10/20/17, 8-105). Both were denied before trial after extensive hearings. Mr. Perrone also responded and argued against the prosecutor's motion to admit evidence pursuant to MRE 404b. (10/11/17, 3-22). Mr. Perrone's defense included arguing that the jury should keep an open mind, that Defendant was presumed innocent, that the Defendant does not have to do anything, and that the

RECEIVED by MSC 5/23/2023 1:35:39 PM

prosecutor must prove beyond a reasonable doubt that Defendant is guilty. (11/2/17, 114-120; 11/9/17, 135). Mr. Perrone also argued that the evidence against Defendant was manufactured, and that Mr. Allen and Mr. Close took advantage of Defendant and provided testimony in an attempt to benefit their own situations. (11/2/17, 121-127; 11/9/17, 138-139). Mr. Perrone also argued that the evidence that was admitted pursuant to MRE 404b was not a part of the charged conduct in the case. (11/9/17, 137-138, 145). Throughout the trial, Mr. Perrone cross-examined witnesses and attempted to elicit testimony consistent with Defendant's theory of the case. Also throughout trial, Defendant was represented by two attorneys: Mr. Perrone, and Eric Schroeder.

The jury convicted Defendant of three counts of solicitation to commit murder and one count of aggravated stalking. (11/9/17, 186). On December 12, 2017, Perrone informed the trial court of several things: first, that he has bipolar disorder, which he takes medication for. (12/12/17, 6-7); second that he *did not* have an active episode during the trial (12/12/17, 7); third, that his diagnosis did not impact his representation of Defendant. (12/12/17, 5). On December 13, 2017, a hearing was held regarding the information Mr. Perrone provided. The trial court informed Defendant that Mr. Perrone had an illness "*after the completion of the trial*, but before the time of sentencing." (12/13/17, 3, emphasis added). The trial court appointed another attorney, Duane Silverthorn to represent Defendant, however, Defendant requested that Perrone continue representing him along with Mr. Silverthorn. (12/13/17, 4). Defendant agreed that this arrangement was fine with him and that it was what he

RECEIVED by MSC 5/23/2023 1:35:39 PM

wanted. (12/13/17, 4). Defendant's sentencing was adjourned from December 20, 2017 to January 24, 2018 so that Mr. Silverthorn could prepare. (12/13/17, 5-6). Defendant was sentenced to 200-360 months for each count of solicitation of murder, and 36-90 months for aggravated stalking, with credit for 443 days. (1/24/18, 37).

Defendant appealed his convictions. His appeal included a motion to remand for a *Ginther* hearing. On March 6, 2020, this Court remanded to the trial court to hold a *Ginther* hearing on Defendant's claims of ineffective assistance of counsel. Defendant's ineffective assistance related arguments on appeal were that one of his attorneys, Mr. Perrone, had a mental breakdown during trial and provided ineffective assistance of counsel by: 1) failing to impeach witnesses with prior theft convictions, 2) giving an inadequate closing argument, 3) sending a particular email to Defendant's sister during the trial, and 4) an alleged delay between questions while cross examining a witness. Defendant continued to pursue these claims at his *Ginther* hearing. The *Ginther* hearing was delayed due to the COVID-19 pandemic and the necessity of holding the *Ginther* hearing with Defendant's in-person presence.

At the *Ginther* hearing, Defendant testified on his own behalf and called seven witnesses: 1) his trial counsel Mr. Perrone; 2) his trial counsel Eric Schroeder; 3) Mr. Perrone's trial assistant Nicholas Fernandez, 4) the second chair trial prosecutor, Charles Koop; 5) his attorney at sentencing, Mr. Silverthorn, 6) an employee from Mr. Perrone's office, Andrew Vuckovich. The relevant facts from the *Ginther* hearing will be set forth in the argument section.

On August 8, 2022, the trial court denied Defendant's motion for new trial.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## ARGUMENT

I.      **Defendant's *Ginther* hearing revealed that: 1) Defendant's attorney, Mr. Perrone was diagnosed with a mental illness *after* Defendant's trial; 2) Mr. Perrone did not exhibit symptoms of his mental illness *during* Defendant's trial, and 3) Mr. Perrone provided effective assistance of counsel. Defendant did not establish the factual predicate for his ineffective assistance claim or actual prejudice. The trial court did not abuse its discretion by finding that Mr. Perrone provided effective assistance of counsel and denying Defendant's motion for new trial.**

### Defendant's Argument

Defendant argues that Mr. Perrone was nearing a mental breakdown during trial. Defendant also argues that Mr. Perrone provided ineffective assistance of counsel by: 1) failing to impeach witnesses with prior theft convictions, 2) giving an inadequate closing argument, 3) sending a particular email to Defendant's sister during the trial, and 4) alleged delays between questions while cross examining a witness.

### Issue Preservation

Defendant raised these arguments in his motion to remand, motion for new trial, and during his *Ginther* hearing. These arguments are preserved.

### Standard of Review

Whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel."

RECEIVED by MSC 5/23/2023 1:35:39 PM

*Id.* A trial court's findings of fact are reviewed for clear error. *Id.* Issues of law are reviewed de novo. *Id.* "A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion." *People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194, 200 (2011), app den, cause remanded 493 Mich 916; 823 NW2d 428 (2012).

### Discussion

A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden. To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 U S 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* supra at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [*People v Dendel,* 481 Mich 114, 124-125; 748 NW2d 859 (2008), quoting *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001).]

"The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v Richter,* 562 US 86; 131 S Ct 770, 788; 178 L Ed 2d 624 (2011), quoting *Strickland v Washington,* 466 US 668, 690

RECEIVED by MSC 5/23/2023 1:35:39 PM

(1984).  "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Harrington, supra* at 789, quoting *Strickland, supra* at 689.  "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington, supra* at 789.  "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'"  *Harrington, supra* at 790, quoting *Wiggins v Smith,* 539 US 510, 525; 123 S Ct 2527; 156 L Ed 2d 471 (2003). Counsel's performance must be viewed from an objective standard, not from "counsel's subjective state of mind." *Harrington, supra* at 790.  "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id. at* 791.  "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart* (On Remand), 219 Mich App 38, 42; 555 NW2d 715 (1996).

### 1.      Perrone did not have a mental breakdown during Defendant's trial.

Defendant's argument that he received ineffective assistance of counsel comes broadly from his insistence that Mr. Perrone had a mental breakdown during trial. Defendant did not establish the factual predicate for this claim. In fact, the credible testimony from the *Ginther* hearing established that Mr. Perrone's mental breakdown occurred after the trial. First, Mr. Perrone informed the trial court that

15

RECEIVED by MSC 5/23/2023 1:35:39 PM

he did not have a mental health diagnosis before Defendant's trial and that from his perspective, he did not have symptoms during trial. (10/4/21, 14). Mr. Perrone informed this the trial court that he did not have any issues with his mental health on any day of Defendant's trial. (10/4/21, 22, 23, 24, 26, 29, 34-35). Mr. Perrone told the trial court that he had an issue with his mental health about a week after trial. (10/4/21, 35). This episode, approximately a week after trial, led to Mr. Perrone being diagnosed with bipolar disorder. (10/4/21, 35). The next time Mr. Perrone saw Defendant, Mr. Perrone informed Defendant of his mental health diagnosis and Defendant asked Mr. Perrone to continue to represent him. (10/4/21, 36-37). Mr. Perrone informed the trial court that if he had had a mental breakdown or bipolar episode in court it would have been obvious everyone, he would have been unintelligible, and those present would have been calling for help for him. (10/4/21, 37-38). Additionally, Mr. Perrone explained that he did not have any general mental decline during the trial. (10/4/21, 38). [2]

Second, Eric Schroder, who was present during trial as second chair attorney for Mr. Perrone, testified that he did not observe Mr. Perrone have any issues with his mental health during trial. Mr. Schroeder explained to the trial court that he understood his ethical obligations under Michigan Rules of Professional Conduct 1.1, and 8.3 and that he did not see anything regarding Mr. Perrone's representation that gave him pause based on his ethical obligations. (10/4/21, 46-47). As to Defendant's

---

[2] Perrone should be commended for his candor and willingness to publicly testify about these private and difficult matters at Defendant's *Ginther* hearing.

RECEIVED by MSC 5/23/2023 1:35:39 PM

specific claims, Mr. Schroeder told the trial court that Mr. Perrone did not have a mental breakdown during trial. (10/4/21, 49). Mr. Schroeder told the trial court that "to his knowledge" Mr. Perrone did not have a mental decline during trial. (10/4/21, 50).

Third, Nick Fernandez testified that he did not see any "downturn" in Perrone's behavior during trial, however, Mr. Fernandez did recall an outburst that was directed at either the prosecutor or a detective. (10/4/21, 52).

Fourth, the second chair prosecutor, Mr. Koop, also agreed with the other witnesses that Mr. Perrone did not have a mental breakdown during trial (10/4/21, 55). Similarly, Andrew Vuckovich did not recall issues or changes in Perrone's behavior during the relevant timeframe. (10/4/21, 63-64).[3]

Last, the first chair trial prosecutor, Jonathan Roth, did not observe Mr. Perrone have a mental breakdown during the course of Defendant's trial. Mr. Roth's testimony was unique among the other witnesses in that he had known Mr. Perrone for 10-12 years before this trial. Mr. Roth and Mr. Perrone attended law school together. Mr. Roth did not notice anything different about Mr. Perrone during the trial than he had seen any other time before. (4/13/22, 6-7). Mr. Roth informed this Court that he did not observe Mr. Perrone have a mental breakdown or mental decline on any of Defendant's trial dates. (4/13/22, 11, 12, 14, 17, 20).

---

[3] Vuckovich characterized Perrone as a "jerk" and an "asshole," but not as related to Perrone's mental health. (10/4/21, 64).

17

RECEIVED by MSC 5/23/2023 1:35:39 PM

Mr. Perrone simply did not experience mental decline or a mental breakdown during trial. With that understanding, we will move on to Defendant's more specific allegations of error.

**2.    Perrone was not ineffective for failing to impeach two witnesses with prior convictions.**

Defendant asserts that trial counsel should have impeached Mr. Close and Mr. Allen with their prior theft related convictions. The decisions whether and how to cross-examine witnesses are matters of trial strategy. *In re Ayres,* 239 Mich App 8, 23; 197 NW2d 106 (1999); *People v Hopson,* 178 Mich App 406, 412; 444 NW2d 167 (1989).

Here, Mr. Perrone did not impeach Mr. Allen or Mr. Close with previous theft related convictions, however, the jury knew they were both in jail because that is where they met Defendant. The jury knew that Mr. Close and Mr. Allen were Ingham County Jail inmates. The jury also knew that when he testified, Mr. Close was incarcerated with the Michigan Department of Corrections (11/3/17, 131). Mr. Perrone also attacked Mr. Close's and Mr. Allen's credibility in numerous other ways. Mr. Perrone cross examined Mr. Close regarding the fact that he tried to help other inmates with their cases, and that he had tried to help John Pierce. (11/6/17, 6-7). Perrone elicited testimony that Mr. Close had proffered on other cases and that his original trial date for his own case was adjourned. (11/6/17, 9-13). Mr. Perrone also elicited testimony that Mr. Close was worried that Defendant was setting him up (11/6/17, 17). Mr. Perrone even elicited testimony from Mr. Close that Mr. Close and

18

RECEIVED by MSC 5/23/2023 1:35:39 PM

Mr. Allen had a conversation about Defendant's attempts to have Ms. Melke killed. (11/6/17, 49).

As to Mr. Allen, Mr. Perrone elicited testimony that Mr. Allen was placed on phone restrictions because he wasn't following instructions in the jail. (11/6/17, 31). Mr. Perrone elicited testimony from Mr. Allen that he tried to help Defendant be more comfortable in jail, and that Defendant seemed scared. (11/6/17, 39). Mr. Perrone elicited testimony from Mr. Allen that Mr. Allen believed it would be easy for someone to take advantage of Defendant. (11/6/17, 47).  Mr. Perrone also elicited testimony that Mr. Allen initially came forward with information about Defendant to try to get out of jail early. (11/6/17, 51).

At the *Ginther* hearing, Mr. Perrone explained that this was his first court appointed capital case, but that he felt that the other methods of impeachment that he utilized (as described above) were "very good" ways to impeach. (10/4/21, 11). Mr. Roth explained that nothing about his trial strategy (as the prosecutor) would have changed if Mr. Perrone had impeached Mr. Allen and Mr. Close with their misdemeanor convictions. (4/13/22, 19). Mr. Roth explained that Mr. Close and Mr. Allen's credibility was not dependent on convictions or misdemeanors because the jury was aware that they were in jail and had done bad things. He explained that their credibility came from the corroborating evidence of their claims. (4/13/22, 19, 22). Mr. Roth also explained that this type of impeachment would not have changed the substantial evidence of Defendant's guilt. (4/13/22, 20).

RECEIVED by MSC 5/23/2023 1:35:39 PM

Thus, the failure to impeach Mr. Close and Mr. Allen with prior theft related convictions did not deny Defendant effective assistance of counsel, and in fact, Mr. Perrone elicited other information during cross examination that he was able to use to attack Mr. Close's and Mr. Allen's credibility, or lend support to his theory of the case. It is not reasonable to assert that had the jury been aware of their prior convictions, that they would have then disregarded their testimony and the other evidence of Defendant's guilt.

**3.      Mr. Perrone's closing argument was appropriate and effective.**

Defendant asserts that Mr. Perrone was ineffective because he gave an inadequate closing argument. This is simply incorrect. During pretrial motions, opening statements, cross-examination of witnesses, and closing arguments, Mr. Perrone presented Defendant's theory of the case.

Mr. Perrone's defense included arguing that the jury should keep an open mind, that Defendant was presumed innocent, that the Defendant does not have to do anything, and that the prosecutor must prove beyond a reasonable doubt that Defendant is guilty. (11/2/17, 114-120; 11/9/17, 135). Mr. Perrone also argued that the evidence against Defendant was manufactured, and that Mr. Allen and Mr. Close took advantage of Defendant and provided testimony in an attempt to benefit their own situations. (11/2/17, 121-127; 11/9/17, 138-139). Mr. Perrone also argued that the evidence that was admitted pursuant to MRE 404(b) was not a part of the charged conduct in the case. (11/9/17, 137-138, 145). Throughout the trial, Mr. Perrone cross-examined witnesses and attempted to elicit testimony consistent with Defendant's

RECEIVED by MSC 5/23/2023 1:35:39 PM

theory of the case. Also throughout trial, Defendant was represented by two attorneys: Mr. Perrone and Mr. Schroeder.

At the *Ginther* hearing, Perrone testified that his closing argument was consistent with the trial strategy that he and Defendant agreed upon. (10/4/21, 33). Mr. Perrone agreed that he utilized the facts that he elicited during testimony as a part of his closing argument. (10/4/21, 33). Some of the facts and arguments from Mr. Perrone's closing argument were: 1) that Mr. Burnett thought Defendant looked scared during the conversation Mr. Burnett and Defendant had about the gun[4]; 2) that Defendant did not take any action toward committing the crimes; 3) that some conversations were initiated by other people; 4) that some of the language that Officer Mobley used was arguably ambiguous; 5) that certain witnesses were not credible; 6) that the police engaged in deliberate conduct, 7) and that there was reasonable doubt. (10/4/21, 33-34). Mr. Perrone also made arguments consistent with the jury instruction modification that he obtained. (10/4/21, 33).

Defendant points to two specific passages from Mr. Perrone's closing argument in support of his argument that Mr. Perrone provided ineffective assistance of counsel during his closing arguments. While these passages are odd, Mr. Schroeder testified that the only issue he observed during Mr. Perrone's closing argument was that he might have lost his train of thought on one occasion. (10/4/21, 48). It may be that

---

[4] The implication being that Defendant wanted the gun for his protection, not to scare, harm, or kill Ms. Melke.

RECEIVED by MSC 5/23/2023 1:35:39 PM

these passages are what Mr. Schroeder referenced.[5] Mr. Roth testified that he did not observe any glaring issues with Mr. Perrone's closing argument. (4/13/22, 20). In the context of the entire closing argument and the strategy that Defendant agreed to, these two passages alone do not establish that "counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* supra at 687.

### 4. Perrone's email to Defendant's sister has nothing to do with his representation of Defendant.

As a part of his *Ginther* hearing, Defendant submitted to the trial court what purported to be an email that Mr. Perrone sent to Defendant's sister during the trial. As to the content of the email, Mr. Perrone testified at the *Ginther* hearing that he thought they would receive a not guilty verdict and that ten million dollars would be a small award in an unlawful imprisonment case. He also testified that he may have been "a little bit expansive," but he "was trying to keep their moral up." (10/4/21, 40). Though some of the statements contained in the email are odd, Defendant has not articulated how this email impacted Mr. Perrone's representation of Defendant.

### 5. Mr. Perrone's delay between questions while cross examining Mr. Allen was not ineffective assistance of counsel.

Defendant argues that a statement made by Mr. Roth at trial regarding Defendant's cross examination of Mr. Allen is an example of ineffective assistance of

---

[5] Defendant cited specific passages for the first time in his supplemental brief on appeal in this Court. Because of this, these passages were not a topic of testimony at the *Ginther* hearing.

RECEIVED by MSC 5/23/2023 1:35:39 PM

counsel.   Again, Defendant has not explained how any prolonged delay between questions, even if it did occur, was ineffective assistance of counsel. At the *Ginther* hearing, Mr. Perrone, Mr. Schroeder, and Mr. Roth testified regarding this portion of the transcripts and this allegation. Mr. Perrone testified that he did not believe the delay between questions was actually three minutes long. (10/4/21, 28). Mr. Perrone testified that the cross examination was not as Mr. Roth stated, rambling on for hours. Further, Mr. Perrone testified that in his view, Mr. Roth was trying to undermine Mr. Perrone's cross examination. Mr. Perrone testified that Mr. Roth's objections contained exaggerations that were not consistent with what happened in court. (10/4/21, 28). Similarly, Mr. Schroeder testified that there was not three minutes between each question, and that Mr. Perrone's cross examination of Mr. Allen was lengthy because there was a lot of material to cover. (10/4/21, 50). In contrast, Mr. Roth had a different view. Mr. Roth testified that by his estimate, it *was* literally minutes between questions. (4/13/22, 16). Mr. Roth also testified that Mr. Perrone's cross examination of Mr. Allen was longer than it needed to be. (4/13/22, 16). Mr. Roth's perception was that the delay was intentional, and that it was a part of a trial strategy. (4/13/22, 16-17). Mr. Roth testified that in his view, it was an attempt to dilute the testimony of the most important witnesses. (4/13/22, 17).

And it is possible that the truth is somewhere in the middle. It may be that as Mr. Roth testified, the delay was a part of an intentional trial strategy to dilute certain testimony. Correspondingly, Mr. Perrone and Mr. Schroeder might also be correct that the delay was not actually three minutes between each question.

RECEIVED by MSC 5/23/2023 1:35:39 PM

Regardless, any delay, if it existed, does not establish ineffective assistance of counsel.

### 6. Defendant was not prejudiced.

Finally, even if these alleged errors were so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment," Defendant cannot establish prejudice. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. This is a burden Defendant cannot meet. The jury heard overwhelming evidence of Defendant's guilt from Ms. Melke, Mr. White, and other witnesses who experienced Defendant's stalking behavior first-hand. The jury heard from three witnesses, Mr. Close, Mr. Allen, and Officer Mobley, all of whom described how Defendant solicited them to murder Ms. Melke. The jury watched a video of Defendant soliciting Officer Mobley. Additionally, during Defendant's entrapment hearing and his previous stalking plea, Defendant admitted to nearly every component of the evidence against him. Therefore, Defendant cannot establish that but for counsel's errors, the result of the proceeding would have been different. Defendant did not receive ineffective assistance of counsel.

RECEIVED by MSC 5/23/2023 1:35:39 PM

## RELIEF REQUESTED

WHEREFORE, the People respectfully request that this Court affirm Defendant's convictions.

Respectfully submitted,

*/S/ Kahla D. Crino*

Dated: September 12, 2022
_____
Kahla D. Crino (P71012)
Appellate Division Chief
303 W. Kalamazoo Street
Lansing, MI 48823
(517) 483-6228
kcrino@ingham.org

## MCR 7.212(B)(3) STATEMENT

There are 6,526 countable words in this brief.

*/S/ Kahla D. Crino*

Dated: September 12, 2022
_____
Kahla D. Crino (P71012)

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:27 PM EST, Letter ID: 1788131665
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/06/2023 18:08:25

Please do not reply to this email

1)          STATE OF MICHIGAN
            IN THE SUPREME COURT

PEOPLE
APPEALE - PLAINTIFF
                          SC#s:165560, 165561
V.                        COA#s 343695, 343696
                          LC#s 16-1064 FH;16-1065-FC

TUNC URAZ
DEFENDANT -APPELLANT
-------------------------------------/

"ORAL ARGUMENT IS REQUESTED" PER MCR 7.214(A)

REBUTTAL/ REFUTATION TO INGHAM COUNTY PROSECUTORS' ANSWER TO DEFENDANT'S APPLICATION FOR LEAVE TO APPEAL FILED WITH MICHIGAN SUPREME COURT AS A "COMPLAINT" ON 05/23/2030.

DEFENDANT IS ASKING THIS HONORABLE COURT TO ACCEPT HIS CROSS BRIEF PER MCR 2.312 AND DEFENDANT WOULD LIKE TO POINT OUT PALPABLE ERROR(S) PER MCR 2.119 (F)(3); AT PROSECUTION'S "COMPLAINT(S)".

DEFENDANT IS ASKING THIS HONORABLE COURT AND INGHAM COUNTY PROSECUTOR(S) TO "ASCERTAIN" ISSUES BELOW;

DEFENDANT HAVE PROOFS OF FRAUD AND PERJURY ON COURTS AND HE ASKING THIS HONORABLE COURT TO ORDER AN INDEPENDENT INVESTIGATION PER MCR 2.612(C)(3) FRAUD ON COURT PER :

>DEFENDANT IS CLAIMING ACTUAL INNOCENCE.
SEE ATT. MOTION AND BRIEF.


>SUFFICIENCY OF EVIDENCES ; PROSECUTION WITNESSES   COMMITTED PERJURY UNDER OATH. PER MCLS 750.422
VIOLATION OF DUE PROCESSES, CONFRONTATION CLAUSE VIOLATIONS, FALSIFIED INFORMATION USED ON AFFIDAVIT TO OBTAIN SEARCH WARRANT BY PROSECUTOR KOOP AND DET. KRUMBACH. PER MCLS 750.423
FALSITY OF INFERENCES FALSIFYING EVIDENCE, (see att. Brief)

>FRAUD BY JURY FOREPERSON (JUROR #2)
USING A FALSE NAME ON HIS JURY SUMMONS/QUESTIONNAIRE. (RYAN GIBBS PETTY) HIS LAST NAME WAS "CARTER" THEN. (SEE ATT.) P/I FINDINGS.

>  ATTORNEYS'/PROSECUTORS' GINTHER  HEARING(S) TESTIMONIES GIVEN BY ATTORNEYS, PROSECUTORS ON 10/04/2021, 04/13/2022

> ATTORNEYS'/PROSECUTORS' RESPONSES TO PRIVATE INVESTIGATOR (JAMES D. HOPPE) AFFIDAVITS GIVEN BY ATTORNEYS/PROSECUTORS,

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1788131665 [P 2/3]

---

You have received a **jpay** letter, the fastest way to get mail

---

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:27 PM EST,   Letter ID: 1788131665
Location : MCF
Housing : UNIT 4100B01

>ATTORNEYS'/PROSECUTORS' RESPONSES TO AGC.

> JUDGES WHO HAD KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENTS EPISODES YET CHOSE NOT TO REPORT TO AGC ( CHIEF JUSTICE THEN JUDGE R. J. GARCIA (P37670) IN (2017-2018), JUDGE C. CANADY III (P23262) AND JUDGE R. E. AQUILINA (P37670) ALL FAILED TO REPORT PERRONE'S MENTAL IMPAIRMENT EPISODES TO AGC AND PROPER AUTHORITIES.

> ALL ATTORNEYS WHO TESTIFIED DURING GINTHER HEARING CHOSE TO DISREGARD THEIR OATH AND UNDER THEIR SWORN TESTIMONIES PURPOSEFULLY TO " OMIT" NOT "DISCLOSE" THEIR KNOWLEDGE OF PERRONE'S EXTENSIVE MENTAL IMPAIRMENT EPISODES.

>DEFENDANT DISCOVERED OAKLAND COUNTY PROBATE COURT DOCS RELATED TO PERRONE'S MENTAL IMPAIRMENT(S) EPISODES DATING BACK TO 2015 IN LATE AUGUST 2022 YET AGC REFUSED TO START ANOTHER INVESTIGATION.

1) WHY INGHAM COUNTY (ATTORNEYS/PROSECUTORS) TESTIMONIES DURING GINTHER HEARINGS WERE DIFFERENT THAN THEIR ANSWERS TO PRIVATE INVESTIGATOR AND RESPONSES TO AGC. (SEE 10/04/2021 AND 04/13/2022) GINTHER HEARING TRANSCRIPTS AND P/I AFFIDAVITS 09/23/2021 -10/01/2021)

2)WHY THEIR ANSWERS WERE DIFFERENT TO P/I JAMES HOPPE THAN; IN COURT TESTIMONIES AND RESPONSES TO AGC. (SEE P/I affidavits dated between 09/23/2021 -10/01/2021)

3)WHY ALL ATTORNEYS RESPONSES ARE DIFFERENT TO AGC GRIEVANCES ALONG WITH NOT DISCLOSED BRADY MATERIALS (OAKLAND COUNTY PROBATE COURT PRT FORMS, POLICE RECORDS) THAN TO PRIVATE INVESTIGATOR AND IN COURT TESTIMONIES. SEE RESPONSES FROM :

E. SCHROEDER (AGC#22-2094) , D. SILVERTHORN , (AGC#22-2095), MS. K. CRINO'S (AGC#22-1542) JONATHAN C. ROTH (AGC#22-1543) , CHARLES T. KOOP II (AGC#22-152 His RESPONSE WAS NEVER RECEIVED FROM AGC)

4) WHY ALL THE JUDGES, PROSECUTORS AND ATTORNEYS WHO KNEW ABOUT PERRONE'S MENTAL IMPAIRMENTS EPISODE(S) AND FAILED TO REPORT IT TO AGC?

EXCEPT ONE UNKNOWN BRAVE PROSECUTOR FROM INGHAM COUNTY ON 12/11/2017 (DISCLOSED by Ms. CRINO in her response to AGC ) WHO CHOSE TO STAY ANONYMOUS DUE TO HIS SAFETY.

5) WHY AGC TOOK SO LONG TO RESPOND DEFENDANT'S GRIEVANCE FILED AGAINST PERRONE (AGC# 18-09564) HOWEVER AGC REACHED THEIR DECISION (4) (FOUR) LATER YEARS (04-2018 -05/2022)

THERE WERE MANY PATTERN OF EXTENSIVE MENTAL ISSUES OF PERRONE; THEY WERE DOCUMENTED AND WITNESSED BY :

PERRONE'S FATHER; JOSEPH V. PERRONE, PERRONE'S WIFE ; ASHLEY PERRONE
PERRONE'S UNCLE(S) ATTORNEYS ;WILLIAM PERRONE (P27591) AND TIMOTHY PERRONE (P37940),
AN UNKNOWN PROSECUTOR (WILLIAM CRINO P27591) , MS. ELIZABETH ALLEN (P75179) (her e-mail to J. Roth sent on 12/02/2017 disclosed by Roth in his response to AGC).  (INGHAM COUNTY PROSECUTORS)
LANSING POLICE OFFC. ROBERT McBRIDE see
(PRT FORM AND BODY CAM).

DEFENDANT MR. TUNC URAZ. (emailed to Clerk Mr. Gary Chambon at COA in September 2022 as part of defendant's appeal and again in February 2023)

see NOTES under MRPC 8.3; Self-regulations of the legal profession requires when they know of a violation of the Michigan Rules of Professional Conduct. (MRPC).

---

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 6/6/2023 6:08:27 PM EST,    Letter ID: 1788131665
Location : MCF
Housing :  UNIT 4100B01

Lawyer have a similar OBLIGATION with respect to judicial misconduct.
An apparently isolated violation may indicate a PATTERN of MISCONDUCT that only a DISCIPLINARY investigation can uncover.
REPORTING A VIOLATION IS ESPECIALLY IMPORTANT WHERE THE VICTIM IS UNLIKELY TO DISCOVER THE OFFENSE.

"OMISSION IS LYING"

IS THIS  ETHICAL PER MRPC 8.3 (a) MRPC 8.4(b)(e)

 case precedent

IN GRIEVANCE ADMINISTRATION V. FIEGER, 476 MICH 231 (2006) MICHIGAN SUPREME COURT

HN33 IN OTHER WORDS, A JUDGE IS OBLIGATED TO INFORM THE AGC ON ATTORNEY'S PERCEIVED MISCONDUCT; TO FAIL TO DO SO IS TO VIOLATE ON EXPLICIT ETHICS RULE, THIS RULE DOES NOT DISTINGUISH BETWEEN A JUDGE WHO OBSERVES THE ALLEGED MISCONDUCT AND A JUDGE WHO IS THE OBJECT OF IT, BUT UNDER JUSTICE WEAVER'S REASONING, A JUDGE MUST EITHER TURN A BLIND EYE TO ATTORNEY MISCONDUCT OR RISK DISQUALIFICATION. THIS CANNOT BE. ON THE CONTRARY, JUDGE WHO MEETS HIS OR HER ETHICAL OBLIGATION TO REPORT ATTORNEY'S MISCONDUCT IS NOT THEREBY ASSUMED TO BE BIASED OR UNABLE TO REVIEW IMPARTIALLY CASES THAT CAME BEFORE HIM OR HER.

**You have received a *jpay* letter, the fastest way to get mail**

From    : TUNC URAZ, ID: 114653
To :  Information Services
Date :  6/6/2023 6:08:24 PM EST,    Letter ID: 1788131646
Location :  MCF
Housing :  UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/06/2023 18:08:23

Please do not reply to this email

2) REBUTTAL/ REFUTATION TO INGHAM COUNTY PROSECUTORS' ANSWER TO DEFENDANT'S APPLICATION FOR LEAVE TO APPEAL

PALPABLE ERROR(S) PER MCR 2.119 (F)(3) AT PROSECUTION'S "COMPLAINT(S)".

DEFENDANT DID MAIL AN EXPLANATION LETTER(S) TO MS. CRINO ABOUT THE BRIEFS SENT TO HER AND SUPREME COURT ON 04/11/2023, 04/28/2023, 05/19/2023

DEFENDANT'S  response TO MS. CRINO'S "COMPLAINT(S) in order :

#2) DEFENDANT'S BRIEFS (BUNDLE(S))AS MS. CRINO CALLS THEM) CONSISTED OF THE ATTORNEY GRIEVANCE COMMISSION (AGC) DOCUMENTS; BECAUSE ATTORNEYS WHO TESTIFIED ON 10/04/2021 AND 04/13/2022 GINTHER HEARINGS CHOSE TO COMMITT PERJURY ON RECORD  DURING THEIR TESTIMONIES IN BOTH HEARINGS.

DEFENDANT WAS ALSO DEPRIVED OF DOCUMENTS RELATED TO ATTORNEY JACOB A. PERRONE'S "FIRST AND SECOND"  MENTAL IMPAIRMENT EPISODES(see response written by Ms. CRINO to AGC 10/24/22)

#3) PLEASE SEE  DEFENDANT'S RESPONSE/ REBUTTAL TO MS. CRINO'S BRIEFS DATED 09/12/2022 AND 11/28/2022

PROSECUTION'S BRIEFS ARE FULL OF SAME MISTAKES AND FALSIFIED INFERENCES/ FACTS WHERE DEFENDANT REFUTED WITH TRUTH AND ALL ATTORNEY'S AGC RESPONSES.

THE ONLY DIFFERENCE IS DEFENDANT'S APPEAL ATTORNEY DID NOT ALLOW DEFENDANT FILE MORE THAN 50 PAGES WITH COA BECAUSE OF PAGE LIMITATIONS, INSTEAD OF MOTION COA TO ASK FOR INCREASED PAGE LIMIT DUE TO VAST AMOUNT OF ISSUES; DEFENDANT'S STANDARD 4 BRIEFS WERE SENT BACK/DENIED 3 TIMES BY MS.WALSH.

DEFENDANT ASKED/MOTION MICHIGAN SUPREME COURT TO EXCEED HIS PAGE LIMIT AND IT WAS GRANTED ON 04/18/2023 BY CHIEF JUSTICE HONORABLE JUDGE CLEMENTS.

# 4) PLEASE COMPARE ATTORNEYS (ROTH, KOOP, SCHROEDER, CRINO, SILVERTHORN, PERRONE) TESTIMONIES AT THE GINTHER HEARING TRANSCRIPTS AND THEIR ANSWERS TO PRIVATE INVESTIGATOR JAMES D. HOPPE ABOUT PERRONE'S MENTAL EPISODES AND LOOK AT THE RESPONSES THEY PROVIDED TO AGC. YOU WILL SEE A HUGE INCONSISTENCIES IN THEIR ANSWERS/REASONS/EXPLANATIONS OF THEIR "KNOWLEDGE" RELATED TO PERRONE'S MENTAL IMPAIRMENT EPISODES

THEREFORE ALL THESE GRIEVANCES/ RESPONSES TO AGC ARE SUBSTANTIATED BY DEFENDANT AND THEY ARE NOT "ADJUDICATED FACTS"

AND SINCE GINTHER HEARING(S) WERE GRANTED ON THE ISSUES THAT WERE BROUGHT UP IN REMAND FILED BY ATTORNEY WALSH AND STANDARD 4 BRIEFS FILED BY DEFENDANT IN 2019. (ALL ABOUT PERRONE'S INEFFECTIVENESS DUE TO HIS MENTAL IMPAIRMENT EPISODES DATING BACK TO 2015.

#5) HERE IS MY SITUATION IN PRISON ABOUT "ACCESS TO COURTS" STANDARD FOR PRISONERS AT MDOC;

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:24 PM EST,   Letter ID: 1788131646
Location : MCF
Housing : UNIT 4100B01

1) I AM ONLY ALLOWED TO HAVE $11.00 PER MONTH IN MY ACCOUNT FROM MY PRISON JOB TO MYSELF FOR ALL MY NEEDS BECAUSE:

>MY FAMILY CANNOT AFFORD TO SUPPORT ME BECAUSE THEY LIVE IN TURKEY AND THE CURRENCY EXCHANGE US DOLLARS VS TURKISH LIRA IS VERY EXPENSIVE

>ALTHOUGH BOTH CHARGES JOINED BY JUDGE CANADY PER MCR 6.121 UNFAIRLY PREJUDICED EACH OTHER

>DURING SENTENCING JUDGE CANADY DECIDED TO SEPARATE THE CHARGES AND APPLY COURT COSTS, FINES, FEES, DNA FEES, AND RESTITUTION SEPARATELY (BASED ON UNPROVEN/UNCHARGED MISCONDUCTS FOR A CAR THAT DID NOT EXIST) (THERE WERE NO REPAIR ESTIMATES/ INVOICES WERE SHOWN AS A PROOF)

THIS WAS BASED ON PROSECUTOR ROTH'S FALSIFIED/ MISAPPLICATION OF COMPLAINANT'S LOSSES WITHOUT ANY PROOF TO SHOW/ PERJURY AND DEFENDANT'S INEFFECTIVE ASSISTANCE OF SENTENCING ATTORNEY SILVERTHORN FOR NOT DOING HIS RESEARCH.

>BECAUSE OF THIS SEPARATION ANYTHING OVER $50.00 DOLLARS IN MY PRISON ACCOUNT IS TAKEN DIRECTLY TO BOTH CASES RESTITUTION AND COURT COSTS.

> IN 2019 ATTORNEY GENERAL SCFRA DIVISION UNDER (STATE CORRECTIONAL FACILITIES REIMBURSEMENT ACT)
MCLS 800.401,403,404, FORFEITED MY 401K AND 403B PENSION AMOUNT OF $25000.00 WHICH WAS MY SON'S COLLEGE TUITION MONEY WAS TAKEN WITHOUT PROPER DUE PROCESS ALTHOUGH DEFENDANT EXPLAINED TO THE COURTS THAT HE IS STILL MARRIED AND HAS A CHILD UNDER 18.

>BECAUSE THEY DO NOT LIVE IN USA (THEY ARE BOTH U.S. CITIZENS) BUT IN TURKEY, COURTS ALLOWED TO GARNISH %90 PERCENT AMOUNT YEARLY NEXT 10 YEARS PER TIAA (PENSION MANAGEMENT COMPANY) RULES.
DEFENDANT APPEALED HOWEVER THIS "LEGALIZED THEFT" IS ALLOWED BY COURTS.

>SEE CASE NUMBERS:
LC# 19-247-CZ, MICOA# 349487 MISUPRA# 161163
MI FED. WEST. DIST. # 1:20-CV-1219 , SIXTH CIRCUIT APPEALS COURT 21-1542

1)BECAUSE DEFENDANT APPEALED THIS LEGALIZED FORFEITURE ALL THE WAY TO SIXTH CIRCUIT COURT DEFENDANT HAD TO PAY COURT FILING FEES FROM HIS PRISON ACCOUNT IN INSTALLMENTS (ANY AMOUNT BETWEEN $11.00 -$50.00 goes to court filing fees including 10% left from SCFRA amount.)

2) BECAUSE DEFENDANTS PENSION MONEY IS TAKEN ALL COVID STIMULUS PAYMENTS ARE SPENT ON DEFENDANT'S FAMILY EXPENSES IN TURKEY SINCE HIS SON IS UNDER 18 AND HIS WIFE IS MENTALLY NOT STABLE.

3) THIS PRISON (MUSKEGON CORR. FAC.) (MDOC) REFUSES TO MAKE LEGAL COPIES ON LOAN IF ONE DOES NOT HAVE SUFFICIENT FUNDS IN THEIR ACCOUNT. (which limits one's ability to file proper paperwork, obtain proper copies, access to courts greatly)

4) ONLY LEGAL MAIL IS ALLOWED WHETHER ONE HAS FUNDS OR NOT. (ONLY USPS WITH NO TRACKING #) 04/28/23 SUPPLEMENTAL FILINGS BY DEFENDANT LOST IN THE MAIL TO MICHIGAN SUPREME COURT AND 30th CIRCUIT CT. (STILL BEING SEARCHED BY USPS)

THEREFORE DEFENDANT HAS TO MAKE CHOICES EVERY DAY/ MONTH WHETHER TO PURCHASE HYGIENE ITEMS, FOOD, STAMPED ENVELOPES, A PEN, A PAPER, A PENCIL, TO CONTACT HIS FAMILY,

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:24 PM EST, Letter ID: 1788131646
Location : MCF
Housing : UNIT 4100B01

MAKE PHONE CALLS,PRINT JPAY BRIEFS FOR COURTS... ETC...OR MAKE LEGAL COPIES.... WITH $11.00 MONTH ONLY...

AS MS. CRINO MENTIONED ; AS FOR PRO SE LITIGANTS ARE TO BE "LIBERALLY CONSTRUED, LESS STRINGENT STANDARDS" DEFENDANT IS FORCED TO WRITE BY HAND MOST OF HIS LETTERS TO COURTS DUE TO "STRINGENT STIPULATIONS PUT ON BY JUDGE CANADY, 30TH. CIRCUIT COURT PROSECUTOR'S OFFICE AND MDOC.

DEFENDANT IS ASKING MS. CRINO AND MR. DEWANE TO TELL HIM WHAT THEY NEED EXACTLY SINCE ALL THE BRIEFS ARE THE SAME WHICH WERE FILED BY DEFENDANT AND MS. CRINO HAD ALL THE COPIES SENT TO HER FOR PRIOR APPEALS LAST YEAR AFTER GINTHER HEARINGS.

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:23 PM EST,   Letter ID: 1788131633
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/06/2023 18:08:22

Please do not reply to this email

3)REBUTTAL/ REFUTATION TO INGHAM COUNTY PROSECUTORS' ANSWER TO DEFENDANT'S APPLICATION FOR LEAVE TO APPEAL

DEFENDANT'S APPEAL ATTORNEY MS. WALSH WOULD NOT GIVE ANY CLERICAL SUPPORT TO DEFENDANT DURING HIS APPEALS IF ANY SHE TOLD HIM TO WRITE BY HAND.

SIMPLY DEFENDANT CANNOT AFFORD MAKING COPIES OF THE SAME BRIEFS OVER AND OVER AGAIN JUST LIKE MS. CRINO'S OFFICE DOES (FOR EXAMPLE THEY SENT THE SAME BRIEF TWICE DATED 09/12/2022 (ATT .#1 AND ATT. #3) ON 05/23/2023 FILINGS.

#6 ALL THE ISSUES WERE RAISED BY DEFENDANT'S FIRST APPEAL IN APRIL OF 2019 AND DEFENDANT PUT ALL THE ISSUES ON RECORD DURING HIS SENTENCING ON 01/24/18 (S.T PGS 23-45) AND ON HIS GINTHER HEARING TESTIMONY ON 04/23/22 (G.T. PGS 45-65) TOTAL OF 35 ISSUES. SINCE HIS MENTALLY IMPAIRED ATTORNEY PERRONE WAS NOT PART OF SENTENCING AND HIS COURT APPOINTED SENTENCING ATTORNEY SILVERTHORN WAS NOT READY OF ANY ISSUES PUT ON THE RECORD (AS HE TOLD TO THE COURTS "I was not at the trial , I don't know what took place)
AND,
COURT APPOINTED INEFFECTIVE ASSISTANCE OF APPEAL COUNSEL MS. WALSH WOULD NOT ACCEPT NOR INVESTIGATE ALL THE ISSUES PRESENTED TO HER BY DEFENDANT SEVERAL TIMES.

MS. WALSH FAILED TO REQUEST ANY DISCOVERY MATERIALS FROM PERRONE AND MS. CRINO , FAILED TO BRING UP VIABLE ISSUES AND FAILED TO BRING IN A MENTAL HEALTH EXPERT TO TESTIFY ABOUT SCHIZOPHRENIA INDUCED BIPOPAR DISORDER ON UNMEDICATED AND UNTREATED INDIVIDUALS.

MR. SILVERTHORN DID NOT TURN IN 12/18/2017 PERRONE RELATED MENTAL TREATMENT PROBATE COURT RECORDS TO MS. WALSH AND DID NOT TESTIFY ABOUT IT. HE DOES NOT REMEMBER WHY...AND JUDGE CANADY KNEW ABOUT IT...(SEE HIS RESPONSE)

PERRONE LIED AND HID ABOUT HIS FIRST MENTAL EPISODE IN HIS OWN GINTHER HEARINGS ALONG WITH MANY OTHER ISSUES....SECOND MENTAL EPISODE, LIED TO COURTS ABOUT HIS OWN ACTIONS BEFORE AND DURING TRIAL, AFTER TRIAL.

ERIC SCHROEDER FAILED TO TESTIFY ABOUT PERRONE'S FIRST MENTAL IMPAIRMENT...AND PERRONE'S SHORT COMINGS BEFORE TRIAL AND ACCUSED DEFENDANT BEING A VERY " DEMANDING CLIENT"....

MS. CRINO FAILED AND OR "FORGOT"TO TURN IN BRADY MATERIAL TO DEFENDANT AND HIS APPEAL ATTORNEY (UNKNOWN PROSECUTOR GRIEVANCE FILED AGAINST PERRONE)

MR. ROTH FAILED TO SHARE PERRONE'S THREATS, HARASSMENTS TOWARDS BILL CRINO (prosecutor) DOCUMENTED BY PROSECUTOR ELIZABETH ALLEN

AGC DID NOT FIND ANY WRONG DOING FOR ALL THE ATTORNEYS ABOVE INCLUDING AGC REFUSED TO START ANOTHER INVESTIGATION ABOUT PERRONE'S MENTAL EPISODES AFTER DEFENDANT PROVIDED PROOF THAT HIS MENTAL ISSUES DATED BACK TO 2015 (SEE HIS FATHER'S PRT FROM FILLED ON 11/14/2017.

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:23 PM EST,   Letter ID: 1788131633
Location : MCF
Housing : UNIT 4100B01

AGC APPOINTED A SPECIAL COUNSEL TO INVESTIGATE CRINO AND ROTH'S ACTIONS WHOM HAD HIS OWN ETHICAL PROBLEMS/ISSUES OAKLAND COUNTY PROSECUTOR: MR. ROBERT NOVY (see case PEOPLE V. KELLAM 2013 MICH APP LEXIS 22100 (2013))

SO HOW CAN ONE TRUST THE INTEGRITY OF AN APPOINTED INVESTIGATOR WHO HAS HIS OWN ETHICAL ISSUES?

CHIEF JUDGE THEN R. GARCIA, JUDGE CANADY AND JUDGE AQUILINA ALL FAILED TO REPORT PERRONE'S MENTAL EPISODES TO AGC AND PROPER AUTHORITIES.

THEY DECIDED HANDLE IT WITHIN THE COUNTY WHICH CREATED "JUDICIAL LAW MAKING" AND "ABSURD RESULTS DOCTRINE"

#7) I CAN MAIL MOST OF THE BRIEFS AGAIN TO MS.CRINO IF SHE WOULD SPECIFY WHICH ONES SHE NEEDS SPECIFICALLY. I CAN HAVE THEM E-MAILED TO HER AS WELL, IF SHE WOULD ALLOW ME.

ATTORNEYS MISTAKES, INCOMPETENCE, COMMITTING PERJURY UNDER OATH, IGNORING THEIR OATH WHICH THEY HAVE TAKEN TO BECOME AN ATTORNEY, THEIR UNETHICAL ACTIONS SHOULD NOT/ CANNOT BECOME DEFENDANTS BURDEN TO SHOW PREJUDICE CONSTANTLY.

ON 12/12/2017 IN JUDGES CHAMBERS HEARINGS DEFENDANT DID NOT HAVE "CONFLICT-FREE" ATTORNEY TO REPRESENT HIS INTEREST. PERRONE'S MENTAL IMPAIRMENT EPISODE EVALUATION TO SEE IF HE IS FIT TO REPRESENT DEFENDANT FOR SENTENCING; where PERRONE was placed in the untenable position of defending his own interests which were adverse to his clients.

12/13/2017 IN COURT HEARING DEFENDANT DID NOT HAVE CONFLICT FREE ATTORNEY TO REPRESENT HIS INTEREST

SINCE BOTH HEARINGS WERE CRITICAL STAGES OF POST TRIAL BEFORE SENTENCING, IT WAS CRUCIAL TO HAVE A CLEAR MINDED ATTORNEY TO REPRESENT DEFENDANT'S INTEREST. DEFENDANT'S SIXTH AMEND. RIGHTS WERE VIOLATED.

DUANE SILVERTHORN WAS NOT PART OF THESE HEARINGS SEE HIS RESPONSE TO AGC 03/31/2023

SEE MRPC 1.7(b)(1)

CASE PRECEDENT :

DOWNS V COMMONWEALTH
2020 KY LEXIS 222,
SUPREME COURT OF KENTUCKY, 07/09/2020

DEFENDANT IS CLAIMING ACTUAL INNOCENCE
SINCE HIS COURT APPOINTED MENTALLY IMPAIRED ATTORNEY AND APPEAL COUNSEL BOTH FAILED TO INVESTIGATE READILY AVAILABLE EVIDENCE.

SEE ATTACHED BRIEF PERJURED TESTIMONY BY PROSECUTION WITNESSES. FALSIFIED INFERENCES, VIOLATIONS OF DUE PROCESS, FAULTY GPS EQUIPMENT, PERJURED AFFIDAVITS BY PROSECUTION AND LANSING POLICE TO OBTAIN A SEARCH WARRANT.

THEREFORE DEFENDANT IS ASKING THIS HONORABLE COURT : TO ACCEPT HIS APPLICATION FOR LEAVE TO APPEAL.

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:23 PM EST, Letter ID: 1788131633
Location : MCF
Housing : UNIT 4100B01

TO APPOINT A BOARD CERTIFIED DOCTOR(S) OPINION THAT RESPONDENT (PERRONE) SUFFERED FROM A PSYCHOTIC DISORDER THAT AFFECTED HIS ABILITY TO INTERPRET REALITY AND MAKE RATIONAL JUDGEMENTS IN UNMEDICATED, UNDIAGNOSED SCHIZOPHRENIA INDUCED BIPOLAR EPISODE(S) WITH ADDED METHAMPHETAMINES AND MARIJUANA BEFORE AND DURING DEFENDANT'S TRIAL.

SCHIZOPHRENIA IS CHARACTERIZED BY WITHDRAWAL FROM REALITY, IS UNPREDICTABLE EMOTIONAL RESPONSE, INTROVERSION AND REGRESSION INAPPROPRIATE RESPONSE AND UNSOCIAL BEHAVIOR.

SCHIZOPHRENIFORM RESEMBLES OR HAS THE GENERAL CHARACTERISTICS OF SCHIZOPHRENIA. THIS TYPE OF METAL DISORDER MANIFESTS ITSELF THROUGH CHARACTERISTICS DISTURBANCES COMMUNICATION, LANGUAGE, THOUGHT, MOOD, PERCEPTION AND BEHAVIOR.

MCR 9.121 SECTION (C) ASKS THE VERY SAME PERSON MENTALLY IMPAIRED WHAT IS WRONG WITH HER/HIM TO DEFEND HIM/HERSELF AND EXPECT AN REASONABLE ANSWER.. SO MENTALLY IMPAIRED PERSON IS SUPPOSE TO RECOGNIZE THEIR MENTAL IMPAIRMENTS?

THIS IS AN UNCONSTITUTIONAL RULE PUT IN PLACE BY COURTS AGAINST THE PERSON WHO IS LOOKING FOR A FAIR AND THROUGH INVESTIGATION.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:22 PM EST,    Letter ID: 1788131611
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/06/2023 18:08:20

Please do not reply to this email

4)REBUTTAL/ REFUTATION TO INGHAM COUNTY PROSECUTORS' ANSWER TO DEFENDANT'S APPLICATION FOR LEAVE TO APPEAL


INSTEAD OF ASKING VERY SAME PERSON (PERRONE) TO FIGURE OUT THEIR OWN MENTAL ILLNESS ALONG WITH OTHER ATTORNEYS TO "TESTIFY" ABOUT THEIR PERCEPTIONS OF ONE'S MENTAL IMPAIRMENTS WHO ARE NOT QUALIFIED TO DO SO.

DEFENDANT IS ASKING THIS COURT TO ORDER AN EVIDENTIARY HEARING TO ALL PARTIES WHO ARE INVOLVED WITH THIS COVER UP, NEGLIGENCE, COMMITTING PERJURY UNDER OATH TO TESTIFY TRUTHFULLY THIS TIME ABOUT:

MRPC 1.1(c) neglected a legal matter

ATTORNEYS WHO failed to seek the lawful objectives of his client/defendant through reasonably against means permitted by law, in violation of ; MRPC 1.2 (a)

MRPC 1.3 (a) failed to act with reasonable diligence

MRPC 1.4(a)(b) failed to communicate with his client

MRPC 3.4 (a) unlawfully obstruct another party's access to evidence; unlawfully alter, destroy, or conceal a document or other material having potential evidentiary rule or counsel or assist another person to do any such act(b) falsify evidence, counsel or assist a witness to testify falsely (c)(d)(e)(f)(1)(2)

MRPC 3.7 (A)(1)(2)(3) A LAWYER SHALL NOT ACT AS ADVOCATE AT TRIAL IN WHICH THE LAWYER IS LIKELY TO BE NECESSARY WITNESS

MRPC 3.8 Special responsibility of a prosecutor
prosecutor(s) Roth, Koop II, Crino negligently ignored. necessary documents to be disclosed before Ginther Hearings (Perrone's mental episodes/probate Court records)
(a)(b)(c)(d)(e)

MRPC 6.5(a) failed to treat with courtesy and respect all persons involved in the legal process.

Respondent(s) failed to provide information demanded by Attorney Grievance Commission (AGC) violation of; MRPC 8.1 (a)(2)

MRPC 8.1 BAR ADMISSION AND DISCIPLINARY MATTERS

(NOT REPORTING PERRONE'S MENTAL INCAPACITATION EPISODES ;FITNESS TO BE AN ATTORNEY WAS NOT REPORTED BY 30TH. CIRCUIT COURT JUDGES, PROSECUTORS AND ATTORNEYS TO ATTORNEY GRIEVANCE COMMISSION (AGC) PURPOSEFULLY ) "MISCONDUCT"

THE DUTY IMPOSED BY THIS RULE APPLIES TO LAWYER'S OWN ADMISSION OR DISCIPLINE AS WELL AS THAT OF OTHERS. THUS IT IS A SEPARATE PROFESSIONAL OFFENSE FOR A LAWYER TO KNOWINGLY

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1788131611 [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:22 PM EST, Letter ID: 1788131611
Location : MCF
Housing : UNIT 4100B01

MAKE A MISREPRESENTATION OR OMISSION IN CONNECTION WITH DISCIPLINARY INVESTIGATION OF THE LAWYER'S OWN CONDUCT.

THIS RULE ALSO REQUIRES AFFIRMATIVE CLARIFICATION OF ANY MISUNDERSTANDING ON THE PART OF THE ADMISSIONS OR DISCIPLINARY AUTHORITY OF THE PERSON INVOLVED BECAUSE AWARE.

MRPC 8.2 JUDICIAL AND LEGAL OFFICIALS
notes: Assessment by lawyers are relied on in evaluating or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as Attorney General, prosecuting attorney and PUBLIC DEFENDER. EXPRESSING HONEST AND CANDID OPINIONS ON SUCH MATTERS CONTRIBUTES TO IMPROVING THE ADMINISTRATION OF JUSTICE.

MRPC 8.3 (a)(b) neither lawyers, prosecutors, judges of Ingham County none of them reported Perrone's mental episodes to AGC except one "ethical unknown" prosecutor from Ingham County who preferred to stay anonymous because of possible retaliation from Perrone (see attached e-mail from Prosecutor Elizabeth Allen to Prosecutor Roth about Perrone's hostile, harassment treatment towards them and Prosecutor William (Bill) Crino) see 12/11/2017 "unknown prosecutor" grievance filed against PERRONE.
(MURDER CASE JUDGE WAS AQUILINA) see E. Schroeder AGC response dated 02/02/2023

MRPC 8.4 (a)(b) engaged in conduct which involved dishonesty, fraud, deceit, misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyers' honesty, trustworthiness, or fitness as a lawyer, contrary to;

MCR 9.104(A)(1-6) exposed in legal profession or the courts to obloquy, contempt, censure or reproach, in violation of ;

MCR 9.113(A) MADE MISREPRESENTATION IN HIS ANSWERS TO COURTS

MRE 603 VIOLATION OATH OF AFFIRMATION TO TELL THE TRUTH

START AN INVESTIGATION AGAINST THE JUDGES WHO CHOSE NOT TO REPORT THIS HONORABLE SUPREME COURT OF MICHIGAN , JUDICIAL TENURE COMMISSION STANDARDS SET I. : IN RE BROWN 461 MICH 1291 (1999)

MCR 9.104(A)(1)(2)(3)(4)
MCR 9.205(A)
MCJC CANON 1,CANON 2A, CANON 2 C, CANON 3(A)(1)

CHARGE ALL COURT "OFFICERS" CHOSE NOT TO REPORT PERRONE'S MENTAL IMPAIRMENTS EPISODE(S) TO AGC KNOWINGLY; THEREFORE THEY ALL BECAME ACCOMPLICES AND BECOME COCONSPIRATORS PER (MCLS 750.157a) IN THIS RACKETEERING (RICO) PER (MCLS 750.159g)
(i)concerning fraud
(w) A felony of section 218, concerning false pretenses
(hh) A violation of section 422,423,424 or 425 concerning perjury or subornation of perjury

RESPECTFULLY SUBMITTED

*Tunc Uraz*

Mr. TUNC URAZ #114653
Muskegon Correctional Facility

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/6/2023 6:08:22 PM EST, Letter ID: 1788131611
Location : MCF
Housing : UNIT 4100B01

2400 S. Sheridan Dr.
Muskegon MI 49442



Proof of Service
These documents and its attachments were sent to Ingham county prosecuter's office VIA MDOC Expedited Mail on 06/09/23

Tunc Uraz

6/8/23

Dear Clerk
Please accept documents
and briefs since 4/28/23
Mailings were never received
by Supreme court and
Ingham county prosecutors'
office.

Thank you very much
Respectfully Submitted

Tonc Uno

These are supplemental
standout & Briefs were not
available Then.

You have received a **Jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 6/5/2023 3:24:19 AM EST,    Letter ID: 1786887335
Location : MCF
Housing : UNIT 4100B01
**pre-paid stamp included**

7mart 2020 saat 08:45
mahkeme kaydini transvript ettirdim pek birsey yok gibi bakalim ne karar vericekle asagida bulabilirsin

TRANSCRIPTION  *03/06/2020  COA ORAL ARGUMENT*

A: ...343695 and 343696. People of the State of Michigan vs. Uraz... Am I pronouncing that

correctly?

B: Yes.

A: Close enough? Alright, go ahead.

B: Good morning your honour. Susan Welsh on behalf of defendant Tunç Uraz. I understand

that the Court has thoroughly reviewed this matter. There has been extensive briefing

including standard [court brief]. So I'm just going to focus in on what I think is the most

important aspect of this case. And that is the solicitation of murder charges and how by

joining the cases and allowing in 2-days-worth of testimony about similar acts made it

impossible for the defendant to get a fair trial on those 'solicitation of murder' charges.

C: Miss Welsh, can I stop you?

B: Yes.

C: I am more interested in the fact that it appears that at some point the attorney... the defence

attorney here had... let's say... some mental health issues. And I don't know that the record

that is in front of us currently is sufficient for us to make a determination as to how and if

those issues affected that attorney's ability to perform effectively.

B: Yes, that was going to be my next sentence. Added to what I just got done saying is that

there was issues with late-coming evidence and an attorney who was, unfortunately, on a very

shaky ground. And I did file second motion to remand and I think that it is just necessary in

this case to get testimony from the people who were there. From reading black and white, I

can't... I don't think anybody can really know what happened.

A: Playing off what Judge [Latoca] said, I agree.
*Letica*
B: Okay, then I am going to just leave it at that because I think that that is something that the

court seems to be agreeing. It needs to be delved into before....

A: Little closer to the microphone...

**Jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1786887335 [P 2/2]

*You have received a* **jpay** *letter, the fastest way to get mail*

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 6/5/2023 3:24:19 AM EST,    Letter ID: 1786887335
Location : MCF
Housing : UNIT 4100B01


B: Before other decisions can be made in this matter.

C: I think we would appreciate that.

B: Okay, thank you.

A: Thank you very much. Thanks for being here. That matter is submitted...

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

**Daily Transaction Summary: May 01, 2023 - May 31, 2023**

Page 1

### Offender Information

| | | | |
|---|---|---|---|
| Offender Number: 0114653 | Institution: MCF | Living Unit: Unit 4 | Primary Balance: $45.96 |
| Offender Name: Uraz, Tunc | Housing Facility: MCF | Cell: 100 | Available Balance: $34.17 |
| Account Status: Open | Tier: 01 | Bed: B | |

### Primary Trust Transactions

| Date | Transaction Type | Payer / Paid To | Voucher Number | Deposit | Expense | Balance | Loc Code |
|---|---|---|---|---|---|---|---|
| 05/01/2023 | | | | | | $21.75 | |
| 05/12/2023 08:21:55 AM | MCF-Institutional Services | 500 - Institutional Services | | $20.52 | | $42.27 | MCF |
| 05/13/2023 04:00:03 AM | Court Filing Fee (Federal) | U.S. DISTRICT COURT WEST MICHIGAN | | | ($1.60) | $40.67 | COF |
| 05/13/2023 04:00:03 AM | Court Filing Fee (Federal) | U.S. DISTRICT COURT WEST MICHIGAN | | | ($4.10) | $36.57 | COF |
| 05/13/2023 04:00:03 AM | Court Filing Fee (Federal) | U.S. DISTRICT COURT WEST MICHIGAN | | | ($0.16) | $36.41 | COF |
| 05/13/2023 04:00:03 AM | Court Filing Fee (Federal) | U.S. DISTRICT COURT WEST MICHIGAN | | | ($4.10) | $32.31 | COF |
| 05/13/2023 04:00:03 AM | Court Filing Fee (Federal) | U.S. DISTRICT COURT WEST MICHIGAN | | | ($4.10) | $28.21 | COF |
| 05/13/2023 04:00:03 AM | Court Filing Fee (State) - IET | MICHIGAN SUPREME COURT | | | ($5.42) | $22.79 | COF |
| 05/16/2023 07:40:17 PM | Kiosk Request | JPay Inc. | | | ($11.00) | $11.79 | COF |
| 05/31/2023 09:02:24 AM | Obligation Refund | U.S. District Court Western | | $34.17 | | $45.96 | COF |
| 05/31/2023 | | | | $54.69 | ($30.48) | $45.96 | |

### Savings

| Date | | | Deposit | Expense | Balance | Loc Code |
|---|---|---|---|---|---|---|
| 05/01/2023 | | | | | $0.00 | |
| No Activity | | | | | | |
| 05/31/2023 | | | $0.00 | $0.00 | $0.00 | |

### Holds - Current as of Date and Time of Report

| Date Held | Hold Type | Notes | Amount |
|---|---|---|---|
| | | | $0.01 |
| 10/16/2020 | Obligation | Auto Hold for - 16-001065-FC | $0.01 |
| 03/11/2022 | Obligation | Auto Hold for - 16-001065-FC | $0.01 |
| 01/03/2023 | Obligation | Auto Hold for - 16-001065-FC | $5.88 |
| 01/17/2023 | Obligation | Auto Hold for - 16-001065-FC | $5.88 |
| 01/17/2023 | Obligation | Auto Hold for - 16-001064-FH | |

### Remaining Obligations - Current as of Date and Time of Report

Michigan Department Of Corrections - MCF

6/1/2023 09:36 AM

**Daily Transaction Summary (0114653 - Tunc Uraz cont.): May 01, 2023 - May 31, 2023**

Page 3

| Description | Paid To | Max Per Period | Ordered | Transfer | Outside Source | Held | Paid | Written Off | Total Remaining |
|---|---|---|---|---|---|---|---|---|---|
| LEGAL COPIES - MCF 052121 LGL COPY1 | MCF INSTITUTIONAL SERVICES | N/A | $2.70 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.70 |
| LEGAL COPIES - MCF 052121 LGL COPY2 | MCF INSTITUTIONAL SERVICES | N/A | $2.70 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.70 |
| LEGAL COPIES - MCF 052522 LG COPY | MCF INSTITUTIONAL SERVICES | N/A | $19.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $19.60 |
| LEGAL COPIES - MCF 052522 LG COPY2 | MCF INSTITUTIONAL SERVICES | N/A | $7.20 | $0.00 | $0.00 | N/A | $0.00 | N/A | $7.20 |
| LEGAL COPIES - MCF 052523 LG COPY | MCF INSTITUTIONAL SERVICES | N/A | $0.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.60 |
| LEGAL COPIES - MCF 052523 LG COPY1 | MCF INSTITUTIONAL SERVICES | N/A | $0.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.60 |
| LEGAL COPIES - MCF 052523 LG COPY2 | MCF INSTITUTIONAL SERVICES | N/A | $0.84 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.84 |
| LEGAL COPIES - MCF 060121 LGL COPY | MCF INSTITUTIONAL SERVICES | N/A | $3.50 | $0.00 | $0.00 | N/A | $0.00 | N/A | $3.50 |
| LEGAL COPIES - MCF 060121 LGL COPY2 | MCF INSTITUTIONAL SERVICES | N/A | $2.40 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.40 |
| LEGAL COPIES - MCF 060121 LGL COPY3 | MCF INSTITUTIONAL SERVICES | N/A | $1.50 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.50 |
| LEGAL COPIES - MCF 060121 LGL COPY4 | MCF INSTITUTIONAL SERVICES | N/A | $1.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.60 |
| LEGAL COPIES - MCF 060121 LGL COPY5 | MCF INSTITUTIONAL SERVICES | N/A | $1.50 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.50 |
| LEGAL COPIES - MCF 060821 LGL COPY | MCF INSTITUTIONAL SERVICES | N/A | $0.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.60 |
| LEGAL COPIES - MCF 061121 LGL COPY | MCF INSTITUTIONAL SERVICES | N/A | $1.00 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.00 |
| LEGAL COPIES - MCF 062121 LGL COPY | MCF INSTITUTIONAL SERVICES | N/A | $0.40 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.40 |
| LEGAL COPIES - MCF 062121 LGL COPY1 | MCF INSTITUTIONAL SERVICES | N/A | $2.80 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.80 |
| LEGAL COPIES - MCF 062121 LGL COPY2 | MCF INSTITUTIONAL SERVICES | N/A | $1.30 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.30 |
| LEGAL COPIES - MCF 062121 LGL COPY3 | MCF INSTITUTIONAL SERVICES | N/A | $2.70 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.70 |
| LEGAL COPIES - MCF 062121 LGL COPY4 | MCF INSTITUTIONAL SERVICES | N/A | $5.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $5.60 |
| LEGAL COPIES - MCF 063021 LGL COPY | MCF INSTITUTIONAL SERVICES | N/A | $0.40 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.40 |
| LEGAL COPIES - MCF 063021 LGL COPY1 | MCF INSTITUTIONAL SERVICES | N/A | $4.20 | $0.00 | $0.00 | N/A | $0.00 | N/A | $4.20 |
| LEGAL COPIES - MCF 070622 LG COPY | MCF INSTITUTIONAL SERVICES | N/A | $9.20 | $0.00 | $0.00 | N/A | $0.00 | N/A | $9.20 |
| LEGAL COPIES - MCF 071221 LGL COPY | MCF INSTITUTIONAL SERVICES | N/A | $0.80 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.80 |

6/1/2023 09:36 AM

**Daily Transaction Summary (0114653 - Tunc Uraz cont.): May 01, 2023 - May 31, 2023**

Page 5

| Description | Paid To | Max Per Period | Ordered | Transfer | Outside Source | Held | Paid | Written Off | Total Remaining |
|---|---|---|---|---|---|---|---|---|---|
| LEGAL POSTAGE - PBF - MCF 031622 LG POST | MCF PBF Postage | N/A | $0.53 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.53 |
| LEGAL POSTAGE - PBF - MCF 032921 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 032921 LGL POST2 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 033022 LG POST | MCF PBF Postage | N/A | $0.73 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.73 |
| LEGAL POSTAGE - PBF - MCF 033023 LG POST | MCF PBF Postage | N/A | $0.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.60 |
| LEGAL POSTAGE - PBF - MCF 040121 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 040121 LGL POST2 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 040121 LGL POST3 | MCF PBF Postage | N/A | $0.91 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.91 |
| LEGAL POSTAGE - PBF - MCF 040121 LGL POST4 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 040121 LGL POST5 | MCF PBF Postage | N/A | $2.20 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.20 |
| LEGAL POSTAGE - PBF - MCF 040523 LG POST | MCF PBF Postage | N/A | $0.84 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.84 |
| LEGAL POSTAGE - PBF - MCF 040622 LG POST | MCF PBF Postage | N/A | $1.13 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.13 |
| LEGAL POSTAGE - PBF - MCF 040821 LGL POST | MCF PBF Postage | N/A | $0.91 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.91 |
| LEGAL POSTAGE - PBF - MCF 040821 LGL POST2 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 040821 LGL POST3 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 041423 LG POST | MCF PBF Postage | N/A | $11.45 | $0.00 | $0.00 | N/A | $7.46 | N/A | $3.99 |
| LEGAL POSTAGE - PBF - MCF 041423 LG POST1 | MCF PBF Postage | N/A | $15.25 | $0.00 | $0.00 | N/A | $0.00 | N/A | $15.25 |
| LEGAL POSTAGE - PBF - MCF 042123 LG POST | MCF PBF Postage | N/A | $0.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.60 |
| LEGAL POSTAGE - PBF - MCF 042321 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 042321 LGL POST1 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 050523 LG POST | MCF PBF Postage | N/A | $3.18 | $0.00 | $0.00 | N/A | $0.00 | N/A | $3.18 |
| LEGAL POSTAGE - PBF - MCF 050523 LG POST1 | MCF PBF Postage | N/A | $2.22 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.22 |
| LEGAL POSTAGE - PBF - MCF 050622 LG POST | MCF PBF Postage | N/A | $1.96 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.96 |

6/1/2023 09:36 AM

**Daily Transaction Summary (0114653 - Tunc Uraz cont.): May 01, 2023 - May 31, 2023**

| Description | Paid To | Max Per Period | Ordered | Transfer | Outside Source | Held | Paid | Written Off | Total Remaining |
|---|---|---|---|---|---|---|---|---|---|
| LEGAL POSTAGE - PBF - MCF 063021 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 063021 LGL POST1 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 070721 LGL POST | MCF PBF Postage | N/A | $0.91 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.91 |
| LEGAL POSTAGE - PBF - MCF 070721 LGL POST1 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 070721 LGL POST2 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 070721 LGL POST3 | MCF PBF Postage | N/A | $0.71 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.71 |
| LEGAL POSTAGE - PBF - MCF 071321 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 072222 LG POST | MCF PBF Postage | N/A | $0.57 | $0.00 | $0.00 | N/A | $0.03 | N/A | $0.54 |
| LEGAL POSTAGE - PBF - MCF 072821 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 072821 LGL POST1 | MCF PBF Postage | N/A | $0.71 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.71 |
| LEGAL POSTAGE - PBF - MCF 080322 LG POST | MCF PBF Postage | N/A | $1.29 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.29 |
| LEGAL POSTAGE - PBF - MCF 080322 LG POST1 | MCF PBF Postage | N/A | $0.81 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.81 |
| LEGAL POSTAGE - PBF - MCF 080322 LG POST2 | MCF PBF Postage | N/A | $0.57 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.57 |
| LEGAL POSTAGE - PBF - MCF 080521 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 080521 LGL POST1 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 080521 LGL POST2 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 081022 LG POST | MCF PBF Postage | N/A | $0.81 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.81 |
| LEGAL POSTAGE - PBF - MCF 081921 LGL POST | MCF PBF Postage | N/A | $2.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.60 |
| LEGAL POSTAGE - PBF - MCF 081921 LGL POST1 | MCF PBF Postage | N/A | $2.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.60 |
| LEGAL POSTAGE - PBF - MCF 082521 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 082521 LGL POST1 | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 090321 LGL POST | MCF PBF Postage | N/A | $0.51 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.51 |
| LEGAL POSTAGE - PBF - MCF 090722 LG POST | MCF PBF Postage | N/A | $12.20 | $0.00 | $0.00 | N/A | $0.00 | N/A | $12.20 |

6/1/2023 09:36 AM

**Daily Transaction Summary (0114653 - Tunc Uraz cont.): May 01, 2023 - May 31, 2023**

Page 9

| Description | Paid To | Max Per Period | Ordered | Transfer | Outside Source | Held | Paid | Written Off | Total Remaining |
|---|---|---|---|---|---|---|---|---|---|
| LEGAL POSTAGE - PBF - MCF 121422 LG POST | MCF PBF Postage | N/A | $3.12 | $0.00 | $0.00 | N/A | $0.80 | N/A | $2.32 |
| LEGAL POSTAGE - PBF - MCF 121622 LG POST | MCF PBF Postage | N/A | $3.12 | $0.00 | $0.00 | N/A | $0.00 | N/A | $3.12 |
| LEGAL POSTAGE - PBF - MCF 122122 LG POST | MCF PBF Postage | N/A | $0.57 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.57 |
| LEGAL POSTAGE - PBF - MCF LG POST 12623 | MCF PBF Postage | N/A | $0.60 | $0.00 | $0.00 | N/A | $0.00 | N/A | $0.60 |
| LEGAL POSTAGE - PBF - MCF LG POST 12623 2 | MCF PBF Postage | N/A | $1.08 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.08 |
| LEGAL POSTAGE - PBF - MCF PBF Postage | MCF PBF Postage | N/A | $1.08 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.08 |
| LEGAL POSTAGE - PBF - MCF LGL STAMPS 01232 | MCF PBF Postage | N/A | $1.92 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.92 |
| NOTARY - MCF 042321 NOTARY | MCF PBF Notary | N/A | $2.00 | $0.00 | $0.00 | N/A | $0.00 | N/A | $2.00 |
| NOTARY - MCF 042921 NOTARY | MCF PBF Notary | N/A | $1.00 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.00 |
| NOTARY - MCF 111221 NOTARY | MCF PBF Notary | N/A | $1.00 | $0.00 | $0.00 | N/A | $0.00 | N/A | $1.00 |
| Court Filing Fee - Court Filing Fee (State) - IET - 2020-034637-CZ | MICHIGAN SUPREME COURT | N/A | $323.00 | $0.00 | $0.00 | N/A | $41.68 | N/A | $281.32 |
| Restitution - Court Charges - 16-091064-FH | 30TH CIRCUIT COURT INGHAM | N/A | $1,658.00 | $195.04 | $0.00 | $5.88 | $740.43 | N/A | $716.65 |
| Restitution - Court Charges - 16-001065-FC | 30TH CIRCUIT COURT INGHAM | N/A | $1,794.00 | $0.00 | $0.00 | $0.03 | $0.00 | N/A | $1,793.97 |
| Restitution - Victim - 16-001065-FC | 30TH CIRCUIT COURT INGHAM | N/A | $2,273.00 | $195.12 | $0.00 | $5.88 | $740.43 | N/A | $1,331.57 |

Total: $4,564.24

Michigan Department Of Corrections - MCF

6/1/2023 09:36 AM

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1706269902  [P 1/3]

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 2/23/2023 3:14:50 PM EST,   Letter ID: 1706269902
Location : MCF
Housing : UNIT 4100B01

1) MOTION FOR IMMEDIATE CONSIDERATION BASED ON ACTUAL INNOCENCE.

STATEMENT OF QUESTIONS
ISSUE #1

DOES A TRIAL COURT HAS A RIGHT TO GRANT A NEW TRIAL BASED ON MCL 770.1 WHEN IT RECOGNIZES THAT JUSTICE HAS NOT BEEN DONE BASED ON PERJURED TESTIMONY, FALSIFIED EVIDENCE AND MISSING BRADY INFORMATION?

DEFENDANT APPELLANT ANSWERS "YES"
PROSECUTOR: UNKNOWN

DEFENDANT(MR. TUNC URAZ) WAS FOUND GUILTY BY JURY TRIAL OF MISJOINDER CASES ON 11/09/2017 AND SENTENCED TO 16-30 YEARS (SECOND HABITUAL) CONCURENTLY ON 01/24/2018 FOR 3 COUNTS OF SOLICITATION TO MURDER BASED ON JAILHOUSE INFORMANTS UNRELIABLE TESTIMONY AND 1 COUNT OF AGGRAVATED STALKING BASED ON FALSIFIED EVIDENCE.

THE COURT OF APPEALS GRANTED A GINTHER HEARING ON 03/06/2020 BASED ON DEFENDANT'S TRIAL ATTORNEY CHECKING HIMSELF TO A MENTAL INSTITUTION 3 DAYS AFTER THE TRIAL.

ANALYSIS

THIS ISSUE HAS BEEN PRESERVED BY MR. TUNC URAZ AT HIS SENTENCING SINCE HIS "FILL-IN LAWYER" WAS NOT PART OF DEFENDANT'S TRIAL.
THIS IS REVIEWED DE NOVO

"IN GENERAL A TRIAL COURT" MAY ORDER A NEW TRIAL ON ANY GROUND THAT WARRANTS A REVERSAL OF THE CONVICTION BECAUSE IT BELIEVES THE VERDICT HAS RESULTED IN A MISCARRIAGE OF JUSTICE "MCR 6.431(B); SEE ALSO MCL 770.1. A MISCARRIAGE OF JUSTICE OCCURS WHEN AN ASSERTED ERROR UNDERMINES "THE RELIABILITY OF THE VERDICT". PEOPLE V LUKITY, 460 MICH 484, 495; 596 NW2d 607 (1999). TO DETERMINE WHETHER AN ASSERTED ERROR UNDERMINES THE RELIABILITY OF THE VERDICT, A REVIEWING COURT MUST ASSESS THE ALLEGED ERROR IN THE CONTEXT OF THE UNTAINTED EVIDENCE TO DETERMINE WHETHER IT IS MORE PROBABLE THAN NOT THAT A DIFFERENT OUTCOME WOULD HAVE RESULTED WITHOUT THE ERROR. Id.

MR. URAZ'S CONVICTION MUST BE REVERSED PURSUANT MCL 770.1 BECAUSE "JUSTICE HAS NOT BEEN DONE". WHEN AN INDIVIDUAL HAS BEEN CONVICTED ON THE BASIS OF PERJURY.

A MAN WHO WAS FALSELY ACCUSED OF CRIME MUST LANGUISH IN PRISON UNTIL AND AFTER THE ISSUES ARE RESOLVED

THE TRIAL COURT HAS THE DISCRETION TO "SUA SPONTE" ORDER A NEW TRIAL PURSUANT TO MCL 770.1 WHETHER OR NOT APPELLATE COUNSEL RAISED THE ISSUE OF ACTUAL INNOCENCE OR MISCARRIAGE OF JUSTICE.
IN PEOPLE V. HAMPTON, 407 MICH 354, 285 NW 2d 284 (1979) AND MCL 770.1 PROVIDES:
THE COURT IN WHICH THE TRIAL OF ANY INDICTMENT SHALL BE HAD MAY GRANT A NEW TRIAL TO THE DEFENDANT FOR CAUSE FOR WHICH BY LAW A NEW TRIAL MAYBE GRANTED OR "WHEN IT SHALL APPEAR TO THE COURT THAT JUSTICE HAS NOT BEEN DONE" AND ON SUCH TERMS OR CONDITIONS AS THE COURT SHALL DIRECT" (EMPHASIS ADDED).
UNDER THIS STATUE, A NEW TRIAL BE GRANTED IF THE JUDGE FINDS THAT THE GUILTY VERDICT WAS NOT ACCORDANCE WITH THE EVIDENCE INTRODUCED AND THAT AN INJUSTICE HAS BEEN DONE.
PEOPLE V HENSSLER, 48 MICH 49, 51, 11 NW 804 (1882); PEOPLE V JOHNSON, 391 MICH 834, 218 NW2d 378 (1974). SEE ALSO, GCR 1963,
527.1 (5). THE DECISION WHETHER TO GRANT OR DENY A MOTION FOR A NEW TRIAL IS ENTRUSTED TO THE DISCRETION OF THE COURT AND THAT DECISION WILL NOT BE DISTURBED ON APPEAL WITHOUT

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1706269902 [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 2/23/2023 3:14:50 PM EST,   Letter ID: 1706269902
Location : MCF
Housing : UNIT 4100B01

SHOWING OF AN ABUSE OF DISCRETION, PEOPLE V ANDREWS, 360 MICH 572, 104 NW2d 199 (1960); PEOPLE V. LOWESTEIN, 309 MICH 94, 14 NW2d 794 (1944).

A PROSECUTOR'S ROLE AND RESPONSIBILITY IS TO SEEK JUSTICE AND NOT MERELY CONVICT. PEOPLE V DOBEK, 274 MICH APP 58, 63, 732 NW2d 546 (2007).

THE PROSECUTOR MAY REQUEST A RIGID ADHERENCE TO PROCEDURAL RULES THAN TAKING A STAND AGAINST THE MOST APPALLING ASSAULT UPON THE INTEGRITY AND REPUTATION OF ANY COURT-PERJURY.

PERJURY SHOWS A DEEP DISRESPECT TO THE COURT AND COMPLETE LACK OF CONCERN FOR THE OUTCOME TO THE DEFENDANT. THE LEGISLATURE TAKES FALSE STATEMENTS COMMITTED IN COURTS VERY SERIOUSLY.
PERJURY IN A CAPITAL CASE IS PUNISHABLE BY LIFE IN PRISON.

THE FAIR ASCERTAINMENT OF TRUTH;
WHAT IS EVEN MOST BOTHERSOME IN THIS CASE, IS THAT PROSECUTION WAS MADE AWARE OF THE POSSIBILITY OF A BRADY AND GIGLIO VIOLATIONS A YEAR BEFORE THE CASE COMMENCED AND YET PROSECUTION WOULD NOT PROVIDE THE REQUIRED BRADY INFORMATION ON A TIMELY BASIS (IT WAS PROVIDED ON THE THIRD DAY OF TRIAL ON LIMITED FASHION, BASED ON JUDGE'S CLOSE PROXIMITY DECISION BASED OF THE BRADY INFORMATION ONLY TOOK PLACE AT THAT "TIME" IN JAIL NOT PREVIOUS PROFFERS WITH THE SAME INFORMANTS IN THE PAST).
PROSECUTION STILL GAVE IMMUNITY TO THE JAILHOUSE INFORMANTS SO THAT EVEN IF THEY PERJURED UNDER OATH. EVEN THE "COMPLAINANT" PERJURED UNDER OATH ALONG WITH OTHER PROSECUTION WITNESSES.
ONE WONDERS WHY THE PROSECUTION DIDN'T INVESTIGATE THIS ASSERTION AND SO AS HIS COURT APPOINTED, MENTALLY INCAPACITATED ATTORNEY JACOB PERRONE.

DEFENDANT FILED A SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION FOR NEW TRIAL, ARGUING NOW THAT HE IS ENTITLED FOR A NEW TRIAL ON THE BASIS OF NEWLY DISCOVERED EVIDENCE INCLUDING EVIDENCE THAT HIS TRIAL ATTORNEY IGNORED, DID NOT INVESTIGATE, AND FALSIFIED EVIDENCE, PERJURED TESTIMONY BY COMPLAINANT/VICTIM ERIKA MELKE BY NOT REVEALING THE TRUTH.

THE TRIAL COURT SHOULD GRANT THE MOTION FOR NEW TRIAL CONCLUDING THAT COMPLAINANT/VICTIM IN THIS MATTER PERJURED HERSELF ON THE STAND AND THAT (I)F ALL THE EVIDENCES WOULD HAVE BEEN AVAILABLE TO DEFENSE COUNSEL OR DEFENDANT TO IMPEACH HER TESTIMONY AT TRIAL, THERE MORE THAN LIKELY COULD HAVE BEEN A DIFFERENT RESULT. THE NEW TRIAL IS NECESSARY BECAUSE OF THE PERJURED TESTIMONY.
IN PEOPLE V CANTER 197 MICH APP 550 (1992) THIS COURT HAD ENTERED AN ORDER REMANDING THE CASE ON THE ISSUE OF WHETHER CERTAIN TESTIMONY CONSTITUTED NEWLY DISCOVERED EVIDENCE, AND ON REMAND THE TRIAL COURT PRECLUDED THE DEFENDANT FROM PRESENTING WITNESSES ON THE SUBJECT OF PROSECUTORIAL MISCONDUCT, INCLUDING "SUBORNING" PERJURY.

THE DISCOVERY THAT TESTIMONY INTRODUCED OF TRIAL WAS PERJURED MAY BE GROUNDS FOR NEW TRIAL. PEOPLE V MECHURA 205 MICH APP 481 (1994).
2) MOTION FOR IMMEDIATE CONSIDERATION BASED ON ACTUAL INNOCENCE.

IN PEOPLE V WIMBERLY, 384 MICH 62, 179 NW2d 623 (1970) STATES THE FOLLOWING: THE LEGAL CONCEPT OF A CRIMINAL TRIAL HAS CHANGED CONSIDERABLY IN MODERN TIMES. IT IS SEEN AS AN ARENA WHERE TWO LAWYER GLADIATORS DUEL WITH THE ACCUSED'S FATE HANGING ON THE OUTCOME AND MORE AS AN INQUIRY AS AN PRIMARILY DIRECTED TOWARD THE FAIR ASCERTAINMENT OF TRUTH.

WHERE, DEFENDANT-APPELLANT, TUNC URAZ ASKS THIS HONORABLE COURT TO IMMEDIATELY CONSIDER, SPECIFICALLY AUTHORIZED BY STATUTE (MCL 770.1) TO CORRECT UNDENIABLE WRONGS

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1706269902 [P 3/3]

*You have received a* **Jpay** *letter, the fastest way to get mail*

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 2/23/2023 3:14:50 PM EST,   Letter ID: 1706269902
Location : MCF
Housing : UNIT 4100B01

AND EGREGIOUS INJUSTICES THAT ARE SUBSEQUENTLY DISCOVERED THAT HAD OCCURRED IN ITS COURTROOM.
JUSTICE IS NOT SERVED WHEN THE TRIAL COURT DOES NOT HAVE THE DISCRETION TO CORRECT AN EGREGIOUS WRONG AND MUST SIMPLY SEND IT BACK TO THE APPELLATE COURT WHERE IT MAY BE A YEAR OR TWO BEFORE THE COURT OF APPEALS EITHER AGREE WITH COUNSEL'S ARGUMENT AND THE EVIDENTIARY RECORD OR NOT.
ALL THE WHILE, AN INNOCENT INDIVIDUAL WHO DESCRIBES HIMSELF AS "A FOREIGN PERSON UNWILLING TO AFFILIATE WITH A "PRISON CROWD" LANGUISHES IN PRISON WHERE HIS LIFE IS AT RISK EVERY SINGLE DAY.

THIS COURT HAVE THE POWER TO AVOID THE GRAVE INJUSTICE OF AN INNOCENT MAN BEING IN PRISON, WHILE HIS U.S. BORN SON IS SUFFERING FROM MAJOR DEPRESSION IN A ORPHANAGE IN TURKEY.

RESPECTFULLY SUBMITTED
TUNC URAZ

**Jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/11/2022 3:00:48 PM EST,    Letter ID: 1542491376
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/11/2022 15:00:46

Please do not reply to this email

1) Impossibility DEFENSE
 DEFENDANT'S ATTORNEY FAILED TO PROVIDE A "IMPOSSIBILITY DEFENSE" DUE TO NOT INVESTIGATING
EVIDENCE AVAILABLE FOR ACTUAL INNOCENCE AND DIFFERENT CIRCUMSTANCES IN FACT THE OTHER
WAY AROUND; DEFENDANT WAS SOLICITED BY JAILHOUSE INFORMANTS (CLOSE AND ALLEN) AND
UNDERCOVER POLICE DETECTIVE MOBLEY?

BACKGROUND;

DEFENDANT REMANDED HIMSELF TO JAIL ON 08/31/2016, TO START HIS PRESUMED JAIL SENTENCE
EARLY (PPO VIOLATIONS) PER HIS ATTORNEY'S ADVICE.
DEFENDANT ACCEPTED A PLEA DEAL WHERE HE WAS TOLD MAXIMUM 3 MONTHS OF JAIL BECAUSE HE
DID NOT HAVE ANY "CRIMINAL" HISTORY.
IN 2015- 2016 DEFENDANT LOST HIS MOTHER TO CANCER, HIM AND HIS WIFE SEPARATED AND SHE
MOVED TO TURKEY WITH THEIR 10 YEAR OLD SON, HE LOST HIS JOB OF 25 YEARS AT MSU (BECAUSE HE
WANTED TO BUY A GUN FROM HIS COWORKER, HE WANTED END HIS LIFE ), HE FORECLOSED HIS
FAMILY HOME OF 15 YEARS, HE WAS ON HEAVY PSY MEDS AND ALCOHOL (XANAX) HIS GIRLFRIEND
BROKE UP WITH HIM AND FILED A PPO AGAINST HIM DUE TO DEFENDANT'S REPEATED ATTEMPTS TO
RECONCILE (DEFENDANT'S THINKING PROCESS WAS IMPAIRED DUE TO DRUGS AND ALCOHOL.

INGHAM COUNTY JAIL IMPOSSIBILITY FACTS:

ALLEGEDLY DEFENDANT MADE TWO PHONE CALLS  TO COMPLAINANT (MS. MELKE) FROM JAIL ON THE
SAME NIGHT. AFTER HE WAS TAKEN TO HIS DORM.

HERE ARE THE DOCTRINE OF IMPOSSIBILITIES:

ACCORDING TO JAIL RECORDS DEFENDANT WAS BOOKED BY 8:00 PM AND BY 8:44 PM, HE WAS IN HIS
DORMITORY, THE ALLEGED PHONE CALLS WERE MADE AT 9:06PM AND 9:12 PM WITH ONLY AUTOMATED
JAIL VOICE MESSAGE "I HOPE YOU ARE HAPPY"
DEFENDANT COULDN'T HAVE MADE THOSE PHONE CALLS BECAUSE:
IT TAKES UP TO  24 HOURS FOR A ONE'S PHONE ACCOUNT TO BE ACTIVATED IN JAIL.
DEFENDANT'S JAIL PHONE RECORDS  (SEE ATTACHED) DOES NOT SHOW MS. MELKE'S PHONE NUMBER
(STARTED WITH 231 AREA CODE SEE ATTACHED) BEING DIALED FROM DEFENDANT'S ACCOUNT.
DEFENDANT'S FIRST PHONE CALL WAS AT 1:00 PM NEXT DAY AT 13:30 PM (1:30PM)TO JAIL COMMISSARY
TO ORDER SOME STORE ITEMS AREA CODE STARTED WITH 866)

THE PHONE NUMBER ON MS. MELKE
CALLER ID SHOWED 517 833 4513 (SECURUS, JAIL PHONE SERVICE PROVIDER) PHONE NUMBER WHEN
DEFENDANT REQUESTED UNDER FOIA MCLS 15.243.

*DEFENDANT WAS AT 30TH CIRCUIT COURTHOUSE ON 313 W KALAMAZOO ST IN LANSING AT 3:30 PM,  SO
HOW CAN HE BE BOOKED IN JAIL AND AT 3:05 PM AND HAVE THE TETHER  REMOVED AT THAT TIME YET
HE WAS SUPPOSE TO BE IN THE COURTHOUSE DOWNTOWN LANSING AND ALSO ALLEGEDLY SENT THAT
EMAIL AT 3:32pm?
***(FACT INGHAM COUNTY JAIL ADDRESS IS 640 CEDAR ST. MASON, MI 49854
55TH. DISTRICT COURT ADDRESS
700 BUHL AVE. MASON MI RIGHT NEXT TO INGHAM JAIL)

OTHER IMPOSSIBILITIES:

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1542491376 [P 2/3]

*You have received a jpay letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/11/2022 3:00:48 PM EST,  Letter ID: 1542491376
Location : MCF
Housing : UNIT 4100B01

ALLEGEDLY MS. MELKE RECEIVED AN E-MAIL FROM DEFENDANT AT 3:32 PM TO HER E-MAIL ACCOUNT ELM4494@GMAIL.COM FROM AN ANOTHER E-MAIL ACCOUNT EMELKE20@GMAIL.COM, WHERE SHE CLAIMED IT DOES NOT BELONG TO HER

11/03/2017 Trial Tran.
PGS 45,46,47,48
***DEFENDANT COULD NOT HAVE SENT THAT E-MAIL MESSAGE TO MELKE BECAUSE HE WAS IN JAIL AT THAT TIME (LOOK AT THE GPS TETHER LOCATIONS AND TIMES)

***THE ALLEGED E-MAIL ACCOUNT THE MESSAGE WAS SENT FROM WAS ACTUALLY CREATED BY MELKE IN 2009 "LONG BEFORE MEETING THE DEFENDANT" SEE GOOGLE SCRIBDS ACCOUNT CREATION DATES
PG 45 LINE 13,14 MELKE LYING
PG 46 LINE 4-5 MELKE LYING
"I HAVE NEVER SEEN THAT E-MAIL ACCOUNT BEFORE"

11/06/2017
**ON 10/19/2016 AT NOON DEFENDANT HAD A VIDEO VISIT SCHEDULED BY AN UNKNOWN PERSON(IN 2016 ONE COULD NOT LOGIN AND SEE WHO SCHEDULED A VIDEO VISIT ON SECURUS JAIL KIOSK IN THE DORM ONLY SHOWED THE TIME THAT ONE IS SUPPOSED TO HAVE THE VISIT. WHICH WAS CANCELLED BY THE POLICE BECAUSE CLOSE WAS WITH DEFENDANT IN THE SAME DORM WHERE DEFENDANT WOULD HAVE HAD CLOSE TO COME AND CONFIRM HIS "FRIEND" TYRONE JONES (TJ) FAKE NAME CREATED BY POLICE).

* ***PG 116
***WITNESS UNDERCOVER POLICE FRANK MOBLEY
***FACT
SECURUS VIDEO CALLS IN JAIL
IT CAN ONLY BE SETUP FROM AN INDIVIDUALS OUTSIDE THE JAIL.

***FACT
IN OCTOBER OF 2016 SECURUS VIDEO KIOSK WOULD NOT LET ANY INMATE TO LOGIN THEIR ACCOUNT TO SEE WHO IS SCHEDULED A VIDEO VISIT

INGHAM COUNTY JAIL ONLY ALLOWED 4 VIDEO VISITS A WEEK
(3 PAID, 1 FREE)

DEFENDANT'S VIDEO VISITS THAT WEEK WAS TOTAL OF 6 BECAUSE HE ALREADY HAD 4 VISITS BEFORE MOBLEY SCHEDULED FIFTH AND SIXTH VIDEO VISITS

***FACTS:
Defendand was Engaged by Undercover Police Mobley
He engaged def. by setting up a video visit first on 10/19/2016 (after sentencing is postponed and Close was still in the Dorm with def. (he was removed on 10/20/2016 see jail recods) and 10/24/2016 (Allen watched the whole video convesation with UC) and 10/26/2016. I ended the meeting because I knew he was police Due to Jail video visit policy and deputy Calkins kept asking me why did I ended the visit 3 times which was unheard of)
**FACT CLOSE'S (NICKNAME/ALIASES : AS "ROUGH" BUT ON THE VIDEO VISIT ENGAGED BY UNDER COVER POLICE MOBLEY , HE USED THE NAME "RUFF" (THAT'S HOW IT WAS TRANSCRIBED) HOWEVER NO ONE INDICATED ON THE RECORD AT THE PRELIMINARY HEARING WHO HAD THE NICK/ALIASES NAME "ROUGH" AND MOBLEY WAS THE FIRST ONE MENTIONED HIS NICK NAME AS "RUFF"
ON DEFENDANT'S EVIDENTIARY HEARING 10/20/2017 PG 69 LINES 7-13
DEFENDANT SPELLED CLOSE'S ALIAS/NICK NAME AS "ROUGH" BUT PROS. ROTH SPELLED AS "RUFF"
HIS MDOC OTIS SHOWS HIS ALIAS AS "RUFF"

PG 119 LINE 9-10
ROTH :"ROUGH" WAS THE STREET NAME YOU ARE PROVIDED WITH?

*jpay Tell your friends and family to visit www.jpay.com to write letters and send money!*

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1542491376 [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 7/11/2022 3:00:48 PM EST,    Letter ID: 1542491376
Location :  MCF
Housing :  UNIT 4100B01

MOBLEY YES SIR

**PG 120 LINE 4-6
ROTH WHO ARRANGED THAT VIDEO VISIT WITH THE DEFENDANT.
MOBLEY LIEUTENANT ROBERT BACKUS
ROTH WHEN WAS YOUR FIRST ATTEMPT TO MAKE CONTACT WITH HIM?
MOBLEY THAT WAS OCTOBER

LANSING POLICE AND MOBLEY ENGAGED DEF.  DEF. DID NOT ENGAGE ANYONE

PGS 122-123-124-125

MOBLEY ASKED HER HOUSE ADDRESS VERSUS HER APARTMENT ADDRESS
DEFENDANT NEVER PROVIDED ANY ADDRESS TO MOBLEY NOR DESCRIPTION OF ANYONE.

***PG 126 LINE 8-12
ROTH SO AT THIS TIME I AM GOING TO MOVE FOR ADMISSION PROPOSED EXHIBIT 44 AND 45, "THOUGH
WE WILL NOT BE DISTRIBUTING THE TRANSCRIPT TO THE JURY UNTIL AFTER THE VIDEO IS PLAYED, IS
MY UNDERSTANDING?

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1542491361 [P 1/2]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 7/11/2022 3:00:48 PM EST,    Letter ID: 1542491361
Location : MCF
Housing :  UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/11/2022 15:00:44

Please do not reply to this email

2)IMPOSSIBILITY DEFENSE

*
**PERRONE OBJECTED TO TRANSCRIPTION OF VIDEO NOT GIVEN TO JURY BEFORE PLAYING THE VIDEO

10/26/16 MOBLEY SET UP A VIDEO ENGAGE VISIT AGAIN (6TH. ONE THAT WEEK)
***AT THIS POINT DEFENDANT ABANDONED THE SOLICITATION TO MURDER BECAUSE IN FACT HE WAS
SOLICITED BY UNDERCOVER POLICE MOBLEY
DEFENDANT HANG UP THE VISIT
ALTHOUGH JAIL DEPUTY KEPT ASKING WHY THE DEFENDANT WOULD NOT TALK? (which any deputy never
cared before if an jail detainee denied a video call)


DEFENDANT HAD TRASH LEFT IN HIS HOUSE WHERE HIS NEIGHBOR THEN KATHY EDMONDS WOULD
HAVE TESTIFIED TO THAT

Def. was asked questions and Def only acknowledged them I did not instigate anything.. they went through my
paperwork journal

comment by def.(ruff should have given you the address.) I was referring to my own HOUSE address and would not
give it to him this is why I made that comment to get mobley off the subject.

***LPD POLICE REPORT # LLA 161027011556 PAGES 8-11
MOBLEY'S EXPLANATION OF VIDEO VISIT FROM MOBLEY TO DEFENDANT
HE USED THE TERM "I ASKED URAZ" 23 TIMES (MOBLEY WAS ENGAGING THE DEFENDANT) NOT THE
OTHER WAY AROUND.

***PG 131 LINE 3-4
MOBLEY TO PERRONE
***MOBLEY I DIDN'T KNOW HIM AT ALL. HE DIDN'T KNOW ME AT ALL. I JUST "INITIATED" A
CONVERSATION***

**PG 133 LINE 16-19
PERRONE   "ROUGH" BEING BLACK, YOU WERE CHOOSEN  SINCE YOU WERE BLACK
**MOBLEY I DIDN'T EVEN KNOW ROUGH WAS BLACK

(PERJURY BECAUSE CLOSE HAS PROFFERED 3 TIMES FOR LANSING POLICE BEFORE, DETECTIVE
MOBLEY MUST HAVE LOOKED AT CLOSE'S MDOC OTIS SHEET TO SEE HIS NICK NAME AS "RUFF" THAT
WHEN HE WOULD HAVE SEEN CLOSE'S RACE AS "BLACK" )

***PG135 LINE 2-5
MOBLEY BASICALLY IT WAS JUST TRYING TO GET HIM TO "INCRIMINATE" HIMSELF. IT WAS SIMPLE. I
MEAN "JUST TRY TO GET HIM TO SAY WHAT HE WANTED DONE."

PG 136 LINE 24-25
PERRONE YOU WERE USING AS A TECHNIQUE TO GET HIM TO REPEAT HIMSELF?
***PG 137 LINE 1
**MOBLEY SOMETIMES. A COUPLE OF TIMES. YEP
**PG143 LINE 14 -21

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1542491361 [P 2/2]

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/11/2022 3:00:48 PM EST,   Letter ID: 1542491361
Location : MCF
Housing : UNIT 4100B01

PERRONE DID YOU PRESSURE HIM/ASK HIM  FOR A DOWN PAYMENT?
MOBLEY YES
PERRONE DID YOU RECEIVE A DOWN PAYMENT?
MOBLEY NO.
***PG 145 LINE 1-8
PERRONE WHY DID YOU MAKE THE THIRD CALL?
MOBLEY TO TRY TO GET MORE EVIDENCE ON HIM.
PERRONE HE NEVER GAVE YOU AN ADDRESS ON THAT VIDEO? NEVER GAVE YOU A HAIR COLOR?
NEVER GAVE YOU A CAR?
MOBLEY NO, SIR (3 TIMES).

SEE CASE PPL V SALAZAR 1985 MICH APP 2412 (1985)

IT WAS UNDERCOVER POLICE MOBLEY WHO SOLICITED THE DEFENDANT TO PARTICIPATE IN THE CRIME
AND NOT THE OTHER WAY AROUND
PURPOSELY SOUGHT" , INCIMENT ,ENGAGEMENT REQUIRES AN URGING, A PERSUADING, OR THE LIKE.
BUT THE RECORD, WHEN READ AS A WHOLE, DOES NOT REFLECT THAT THE DEFENDANT URGED,
PERSUADED POLICE MOBLEY ,CHARLES ALLEN , REGINALD CLOSE TO PARTICIPATE IN ANY CAPACITY IN
THE KILLING OF▮▮▮▮▮▮▮▮▮▮▮ARGUABLY, THE TESTIMONY MAY HAVE SUPPORT A CONVICTION FOR
SOLICITATION TO KILL ERIKA MELKE, BUT DOES NOT SUPPORT A CONVICTION FOR SOLICITATION
MURDER UNDER THE STATUE.

MELKE

10/20/2017 evidentiary hearing
  pg74 line8  comment (ruff should have given you the address.) I was referring to my own HOUSE address and
would not give it to him this is why I made that comment to get mobley off the subject. I would not provide any
address to him due to he may steal items from my house.

10/26/2016
  Defendant ended the meeting because he knew he was police Due to Jail video visit policy and deputy Calkins kept
asking me why did I ended the visit 3 times which was unheard of.
Allen told after the video visit that (T.J.) Det. Mobley  looked like a Police

9.3 IMPOSSIBILITY DEFENSE MCL 750.92
A PERSON CAN BE FOUND GUILTY OF ATTEMPTING TO COMMIT A CRIME EVEN IF HE COULD NOT FINISH
THE CRIME BECAUSE CIRCUMSTANCES TURNED OUT TO BE DIFFERENT THAN HE EXPECTED OR HE WAS
STOPPED BEFORE HE COULD FINISH
PPL V THOUSAND 465 MICH 149 (2001).

9.4 ABANDONMENT AS DEFENSE
1) ATTEMPT
THE DEFENSE/ONE OF THE DEFENDANT RAISED BY THE DEFENDANT IS THAT HE IS NOT GUILTY OF
BECAUSE HE FREELY AND COMPLETELY GAVE UP THE IDEA OF COMMITTING THE CRIME.
THIS DEFENSE IS CALLED "ABANDONMENT"
2) MUST BE DISAPPROVED BY THE PROSECUTION ARE RAISED BY THE DEFENDANT.
3) ABANDONMENT MUST BE A CHOICE OF FREE WILL.
4) THE ABANDONMENT OF THE ATTEMPTED CRIME MUST BE COMPLETED.

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/11/2022 3:00:45 PM EST,    Letter ID: 1542491341
Location : MCF
Housing :  UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/11/2022 15:00:42

Please do not reply to this email

3) IMPOSSIBILITY DEFENSE
CONCERT TICKET PERJURY

DEF. DID NOT TAKE ANYTHING FROM HER APARTMENT ESPECIALLY CONCERT TICKETS, SEE POLICE REPORT, LISTED NO TICKETS
BECAUSE ACTUAL PHYSICAL  CONCERT TICKETS WENT ON SALE APRIL 29th AT THE PALACE 2016
ONLINE SALES STARTED "MAY 26 2016" THE SAME DATE THAT POLICE REPORT FILED ON  05/26/2016 (LLA16052605269)
THE INCIDENT HAPPENED ON 05/25/2016 (DAY BEFORE) THE CONCERT TICKETS WENT ON SALE.

HER (MOTION AND ORDER TO SHOW CAUSE VIOLATING VALID PPO ORDER FILED BASED ON THE THINGS MISSING FROM HER APARTMENT DID NOT INCLUDE CONCERT TICKETS (16-139-PP)

HOWEVER THE POLICE REPORT FILED ON 08/16/16 FOR A INCIDENT OCCURRED ON 08/15/2016 (LLA16081608705) MELKE DECLARED "THAT CONCERT TICKETS WERE LEFT OUT ON THE FLOOR DURING THAT BURGLARY" ON 05/25/2016

HOWEVER HER STATEMENT TO PROSECUTOR KOOP  "HAD HER TIRES SLASHED AT A CONCERT IN THE DETROIT AREA AND ALSO SOMEONE HAD "INTERCEPTED" HER E-MAIL AND REROUTED HER CONCERT TICKETS SO SHE HAD TO PURCHASE REPLACEMENT TICKETS "

(SEE THE E-MAIL SENT BY DEF. ATTORNEY THEN MR. BERGSTROM ON 08/26/2016)

SHE PURCHASED "ELECTRONIC" TICKETS FOR THE SAME CONCERT YEAR BEFORE ONLINE IN 2015, SUBPOENA HER CREDIT CARD STATEMENTS FOR JUNE-JULY-AUGUST 2016 TO PROVE THAT THEY THEY WERE ELECTRONIC TICKETS NOT PHYSICAL TICKETS.

FACT:  DEFENDANT HAD A TETHER ON FOR THE MONTH OF AUGUST 2016 YET PROSECUTION CONVENIENTLY DID NOT INCLUDE DEFENDANT'S WHEREABOUTS ON 08/15/2016 (WHEN HER TIRES SLASHED AND YET NEXT DAY DEFENDANT WAS TRACKED TO DETROIT AIRPORT AND NORTH EAST OF DETROIT TO LOOK AT RV'S. AND THE E-MAIL ALSO INFERRED THAT DEF. MAY HAVE BEEN IN THE AREA OF CONCERT JOE LOUIS ARENA 19 STEVE YZERMAN DR. DETROIT MI 48826 DOWNTOWN DETROIT.

DEFENDANT SPENT THE NIGHT 08/16/2016  AT A OKEMOS HOTEL AND NEXT MORNING 08/17/16 BECAUSE HE WAS A UBER DRIVER IN 2016, HE WENT TO ADDRESS 4801 DUNCKLE ROAD TO PICK UP A CUSTOMER. (3 MILE DRIVE IN 30 MINUTES)
HER ADDRESS WAS 4925 DUNCKLE DRIVE.

***DEFENDANT'S EVIDENTIARY HEARING TESTIMONY WAS USED AGAINST HIM ALTHOUGH HE DID NOT TESTIFY AT THE TRIAL.***

**HER FACEBOOK WAS NEVER HACKED BY DEFENDANT NOR FAKE  INSTAGRAM ACCOUNT WAS NEVER CREATED ALLEGEDLY. EVEN IF IT WAS CREATED IT WOULD BE A "CONSTITUTIONALITY PROTECTED SPEECH"

*** PG 37 LINES 13-
MELKE AUGUST 15 2016 MY FACEBOOK ACCOUNT HE WAS TRYING TO GET HACKED INTO.
DEF WAS NOT THE ONE TRYING TO RESET IT.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1542491341  [P 2/3]

**You have received a jpay letter, the fastest way to get mail**

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/11/2022 3:00:45 PM EST,   Letter ID: 1542491341
Location : MCF
Housing :  UNIT 4100B01

**PGS 38,39,40
MELKE IS SAYING THAT SHE NEVER SENT THOSE PICS WHICH WERE POSTED ON THIS "FAKE INSTAGRAM" ACCOUNT. (PICS WERE POSTED ON HER FB/INSTGRAM PAGE)

**PGS 41,42
***ALLEGED FAKE "INSTAGRAM ACCOUNT" HAD 198 PEOPLE AS FRIENDS (PROS. SEE PHOTOS)
AND
 SHE IS THE ONE WHO CONTACTED DEFENDANT  FIRST BY SENDING DEFENDANT A MESSAGE FROM THE SAME "FAKE INSTAGRAM ACCOUNT"
"ONE CANNOT MESSAGE DIRECTLY TO THE "CREATER OF THE ACCOUNT UNLESS THE ACCOUNT OWNER ACCEPTS THAT PERSON AS A "FRIEND" FIRST. SEE (**PG 59 LINE 12-18)

AUGUST 27TH 2016 NOTIFICATION WAS SENT FROM "EXPIRED IP ADDRESSES"

***AUGUST 31ST 2016 NOTIFICATION WAS SENT TO HER VIA EMAIL WHICH BELONGED TO HER (rika_thinkgreen@hotmail.com)

***IF PERRONE WOULD HAVE DONE HIS INVESTIGATION PROPERLY, THE SEARCH WARRANT DATED 09/27/2016
PG. 2 E(1) "ON OR ABOUT AUG. 27, 2016 AND AUG. 31, 2016, ERIKA MELKE RECEIVED A NOTIFICATION THROUGH "HER PERSONAL EMAIL ACCOUNT THAT THE PASSWORD FOR HER FACEBOOK SOCIAL MEDIA ACCOUNT HAD BEEN CHANGED.

THE NOTIFICATION MELKE PROVIDED AS A EVIDENCE STATED: YOUR FACEBOOK PASSWORD WAS "RESET" "USING" THE EMAIL ADDRESS BELONGS TO HER.
(rika_thinkgreen@hotmail.com)
ON AUG.31,2016.

SO DEFENDANT DID NOT, COULD NOT HAVE CHANGED THE PASSWORD SINCE SHE DID BY HERSELF AND BLAMED THE DEF.

THEREFORE DETECTIVE AND PROSECUTOR KOOP FALSIFIED THE SEARCH WARRANT SIGNED BY A MAGISTRATE/JUDGE TO GET A SEARCH WARRANT BASED ON PERJURED/FALSIFIED INFORMATION.

11/03/2017 Melke
PG. 93 LINE 7-9
***NORMALLY WE CAN ACTUALLY TRACK IT DOWN TO ACTUAL ***MAC ADDRESS (IPHONE- APPLE WHICH ERIKA MELKE HAD ONE)***, WHICH IS UNIQUE ADDRESS PER DEVICE. BUT BECAUSE OF THE TIMING AND THE NETWORK ADDRESS TRANSITION, WE WERE ONLY BE ABLE TO SHOW WHERE PHYSICALLY THAT IP ADDRESS IS CONFIGURED, AND IN WHAT POOL.SO THAT'S WHAT HE ASKED ME. THAT'S WHAT WE SHARED.

***FACT MELKE OWNED MAC/APPLE IPHONE

***3 IP ADDRESSES FOR 3 BUILDINGS

(72.44.103.129) (72.44.103.166) (72.44.103.178)

***PG 94 LINE 3-6
PERRONE SO YOU WEREN'T ABLE TO OBTAIN A UNIQUE ADDRESS BECAUSE OF THE DELAY?

***LAING I WAS UNABLE TO TRACK THAT IP ADDRESS TO AN ACTUAL MAC(APPLE/IPHONE) ADDRESS

*SO THE NEXT SEGMENT IS THERE. AND THEN FINALLY THE NORTH POINTE BUILDING C (***72.44.103.129)

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1542491341 [P 3/3]

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/11/2022 3:00:45 PM EST,  Letter ID: 1542491341
Location : MCF
Housing : UNIT 4100B01

WHICH WOULD CONTAIN THE IP ADDRESSES IN QUESTION.

PERRONE ARE EXPIRED IP ADDRESSES RECYCLED?
LAING THEY WOULD GO BACK IN THE POOL.
PERRONE THEY WOULD BE REUSED BY SOMEONE ELSE?
**LAING YES IT HAPPENS AFTER YOU HAVE A POOL OF PUBLIC, AND YOU HAVE A POOL OF PRIVATE. AND THEN YOU DO A FUNCTION CALLED "ADDRESS TRANSLATION", WHICH THE PRIVATE ADDRESS IS THEN TRANSLATED TO PUBLIC ADDRESS, AND RHE PUBLIC ADDRESS IS WHAT'S SEEN ON THE INTERNET.

***PG 99 LINE 22
PERRONE CAN YOU TRACK DOWN THE UNIT, WHICH SUBSCRIBER HAS THE IP ADDRESS?
**LAING WE WERE ABLE TO TRACK DOWN TO "WHAT UNIT ON REALTIME OR WITHIN 24 HOURS" OF THE REQUEST.(ORIGINAL REQUEST/WARRANT WAS SENT ON 09/27/2016 IT WAS RESPONDED BY LAING IN 09/30/2016, ONE MONTH AFTER THE ALLEGED IP ADDRESSES USED)
PG 102
KOOP THOSE WERE BOTH BUILDING C ?
LAING YES

THIS IS A SPECULATION BY MR. LAING BECAUSE DOCUMENTS HE PROVIDED DOES NOT LIST WHICH IP NUMBERS BELONGS TO WHICH APARTMENT IN THE BUILDINGS.

each building has its own IP number with that IP number it has IP numbers belongs to each apartment number but there is no list of which apartment gets which IP number other than MR. Laing's testimony inferring that building C had those IP numbers within
(defendant's apartment had "two" 2 expired IP numbers, unreliable evidence)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1775860941 [P 1/6]

You have received a **JPay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 5/23/2023 10:38:01 AM EST,   Letter ID: 1775860941
Location : MCF
Housing : UNIT 4100B01


martele gonderim juri transcripelrin 27 ve 30 kasim 1-2 ve on yazi ile ekte ardanin resimleri var martelein sana cevabi var
tulayada gonderdim kşmseden senin mektubuna ardayla ilgili gelen mesaj yok


---------- Forwarded message ---------
From: Chuck Martell < cwmartell.hra@live.com>
Date: Mon, May 22, 2023 at 5:14 PM
Subject: RE: INFORMATION ON JUROR PETTY
To: Tony Ur < tonyur@gmail.com>


Tony,

   Thanks for the quick reply. I have done some background checking on all three jurors, and the only discrepancy I found was with RYAN PETTY. I am fairly certain that had the prosecutor or the defense attorney known of PETTY's other name, or his bankruptcy case, they would have excused him from the jury pool. At least it gives you something more than if he was prejudiced against TURKISH people.

   I have copies of a number of juror questionnaires, and they include the following: "you are declaring under penalty of perjury that everything you have stated in this document is true and correct". If DIANE CHILLERS made them all raise their right hands and swear under oath, then the crime of PERJURY comes into play. We need to see the juror questionnaire that PETTY completed with his signature to make sure that the information he indicated was not TRUE and CORRECT, and that he committed the crime of perjury.
If you want me to do so, I can call and interview all three: Petty, Nishon and Castillo. With PETTY I would not disclose any of the information I know about him, but would merely ask him the generic questions.

   Do you want me to go ahead and interview them now, or wait until we have a copy of the questionnaire for each. I think I need to talk with CHILLERS to determine if they keep those records for this length of time. We may then need to track down the prosecutor and your defense attorney to see if they have kept those records.

   CHARLES MARTELL

-------- Forwarded message ---------
From: Chuck Martell < cwmartell.HRA@live.com>
Date: Mon, May 22, 2023 at 11:51 PM
Subject: JURY QUESTIONNAIRE
To: dchillers@ingham.org < dchillers@ingham.org>
Cc: Cindy Martell < cam.hamilton@live.com>


Diane,


I have discovered that there was a juror on the jury in my clients trial who probably should not have been there. The jurors name was RYAN GIBBS PETTY, but his actual name was RYAN GIBBS CARTER. He changed the name on his MICHIGAN driver's license on 04-28-2022 from CARTER to PETTY, and we were trying to figure out why.


My client has given me the authority to tell you his name and his case number:


   CASE NO: 2016-001065-FC

**JPay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 5/23/2023 10:38:01 AM EST,    Letter ID: 1775860941
Location : MCF
Housing : UNIT 4100B01


PEOPLE vs TUNC URAZ

CHARGE:        SOLICITATION OF MURDER

JURY VERDICT:  01-24-2018

CASE NO: 2016-001064-FH

PEOPLE vs TUNC URAZ

CHARGE:        STALKING AGGRAVATED

JURY VERDICT:  01-24-2018


Can you determine whether you would still have the JURY QUESTIONNAIRE form in your files so we can see what RYAN answered on that form.


Can you tell me the names of the Assistant Prosecutors on those two files so that I may check with their offices also.


In reviewing the REGISTER OF ACTIONS in those two files it became very clear that there was a GINTHER HEARING on both files on 4-27-2022, the day before RYAN went to the MSOS and changed his name. Does it seem to you that there was any reason RYAN may have become concerned that someone in the court might have realized that he was deceptive when he wrote his name on his jury questionnaire? It has become very clear in my investigation that RYAN's name was clearly CARTER at the time of the trial.


Please contact my cell phone with any questions.


Sent from Mail for Windows

CHARLES MARTELL

LICENSED PRIVATE INVESTIGATOR

HAMILTON RESEARCH ASSOCIATES, LLC

6632 TELEGRAPH RD

SUITE 288


**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

*You have received a* **jpay** *letter, the fastest way to get mail*

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 5/24/2023 1:21:12 AM EST,   Letter ID: 1776449831
Location : MCF
Housing : UNIT 4100B01

Selam Asagida Chuck ve erdincden gelen mesaj var
Arda sinava calismayi birakti hicbirsey yapmak istemiyor. Ne bok yerse yer.ardanin liseyi bitirme belgesi yok cunku
okul daha kapanmadi.diploma almadi.yok dil sonucu Amerika icin birsey ifade etmez bunu sen daha iyi biliyorsun.
Simdiden birsey göndermeye gerek yok.toefl girmesi gerek

m: Chuck Martell < cwmartell.hra@live.com>
Date: Tue, May 23, 2023 at 10:34℗M
Subject: RE: Response to tunc's jury transcripts
To: Tony Ur < tonyur@gmail.com>
Cc: aysemu@yahoo.com < aysemu@yahoo.com>, Cindy Martell < cam.hamilton@live.com>

TONY,

I received your email with the transcripts attached.  It would appear to me that the Appeals Court turned down your
appeal on the issue of a "BIASED JUROR".

I think the more salient argument would be that a juror actually lied about his name, even when questioned by the
judge.  At the time of this trial, PETTY's actual name was CARTER.  He didn't change his driver's license name to
PETTY until 4-28-2022.  We have documents to prove this.  So as evidence and proof we need to get several more
documents:

   The juror questionnaire PETTY-CARTER filled out by himself in 2017.
   A copy of his bankruptcy case he filed in the name of CARTER on 6-20-2001.
   A copy of his driving license history showing his name change from CARTER to PETTY.
   A copy of the speeding ticket he received on September 6, 2018 – should show CARTER.
   A copy of the speeding ticket he received on February 9, 2020 – should show CARTER.
The document he showed to the MSOS on 4-28-2022 to change his last name from CARTER to PETTY.
   A copy of his application for an LLC dated 8-30-2007 showing his name as CARTER.
   An Affidavit signed by DAWN RENEE (WEAVER) CARTER, the co-debtor in the BANKRUPTCY.
   A copy of the marriage license when RYAN CARTER married DAWN CARTER.
   A copy of the marriage license when RYAN CARTER married GINA ERIN PETTY.
A copy of the BIRTH CERTIFICATE when RYAN GIBBS CARTER was born to his mother, MARILYN E. CARTER
(76 yrs) and his      father, GLEN EDWARD CARTER (deceased) in July of 1972.

I think you need to start thinking about some more money for my services.  I called this morning and spoke with Diane
Chillers about whether the court maintains the JUROR QUESTIONNAIRE for five years.  DIANE referred further
questions to GLORIA McGRUDER who is in charge of the JUROR's OFFICE, and would know that answer.  DIANE
also said she has given my emails to JUDGE CANADY who should be calling me soon.

At some point we will be needing the help of an attorney.  I can refer you to several competent attorneys who would
be a much better bet than JACOB PERRONE or MICHAEL NICHOLS.

Sent from Mail for Windows
CHARLES MARTELL

merhaba aysem hanim ,tunc
sana dedigim dizi bugun yada yarin baslayacak saat 9 da bak belki begenirsin turkiyeyi gostermeleri guzel
beni bu hapishanede yeni yere gectim gelmeye calis jeriatric porter lar var ben issizim ameliyat olacagim icin sana
yazmistim buradaki okullari yaparsan burayi sversin daha sakin bir yer fazla kavga yok sikici gibi
turkiyeden haberler baktim ne oldu anlamadim sinan da onu destekleyecek zannederim kazanir anlamadim bu kadar
aptal bir toplum hile oldumu anlamadim bu hafta eger bir mucize olmassa kazanir bizde mahvolduk
degismesini isterdim
simdilik hoscakal
allah yardimciniz olsun
bu second look ve good times gelecek sanada yarar

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 5/25/2023 5:46:01 AM EST,    Letter ID: 1777312681   Parent Letter ID: 1776540641
Location : MCF
Housing : UNIT 4100B01


bu martell seni sikiyor.arda hiyari yanina geliyor haberi  mi? yok otel baktırıyorsun???


--------- Forwarded message ---------
From: Chuck Martell < cwmartell.hra@live.com>
Date: Wed, May 24, 2023 at 6:51 PM
Subject: RE: Response to tunc's jury transcripts
To: Tony Ur < tonyur@gmail.com>
Cc: aysemu@yahoo.com < aysemu@yahoo.com>, Cindy Martell < cam.hamilton@live.com>


tony,

I believe focusing on PETTY would have the best chance of changing your conviction status.  There are (in most cases) several top reasons on which to focus an APPEAL:

INADEQUATE REPRESENTATION – ASSISTANCE OF COUNSEL
          MOTION TO SUPPRESS A STATEMENT- OR OTHER EVIDENCE
          LACK OF SUFFICIENT EVIDENCE
          PROSECUTORIAL MISCONDUCT
          INCORRECT JURY INSTRUCTION
          EXCESSIVE OR UNLAWFUL SENTENCE
          INCORRECT EVIDENTIARY RULING
          INCORRECT FACTUAL EVIDENCE
          MISUSE OR MISTAKE OF THE LAW
          CONSTITUTIONAL RIGHTS VIOLATIONS
JUROR MISCONDUCT

In my research over the last several years, and in working with a number of APPEALS ATTORNEYS, I understand that a claim of JUROR MISCONDUCT can be one of the most powerful arguments in an appeal.  In one APPEAL document I have found the following wording:

          "Purposely concealing relevant information about themselves which could affect their ability to be an impartial juror".

What could be more relevant than PETTY concealing the fact that his last name (his birth name) was actually CARTER.  How "IMPARTIAL" could CARTER-PETTY have been when he was committing the crime of PERJURY while sitting right there during your trial.  The evidence will (hopefully) show that he outright lied.

You asked me how much more work my investigation is going to take.  I believe you hired me to help you get out of jail.  To accomplish that feat will take some substantial work in rounding up the evidence necessary to convince JUDGE CANADY to rule in your favor.

In an APPEAL's case I worked several years ago, a juror had lied about her criminal record.  My investigation showed that she had been charged with EMBEZZLEMENT at a former employers software company, but worked out a deal through her attorney to avoid conviction if she re-paid the money.  We were able to document the EMBEZZLEMENT and got her discharged from the jury.  Most courts do not do an extensive back ground check on each juror.  They tend to rely on the information a juror enters on the QUESTIONNAIRE form "UNDER THE PENALTY OF PERJURY".  In your case, if they had done a more extensive back ground check, like my staff just did, the court would have discovered the lie PETTY told about his last name, and the fact that he had filed bankruptcy.

At some point I need to stop.  I have already checked out LARRY NISHON who is a retired doctor in Okemos, Michigan.  I can make contact with him, but it is quite apparent that he did not lie on his juror questionnaire form.  The argument about him was that he was a biased juror, but I do not feel that this issue would be persuasive with JUDGE CANADY.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1777312681 [P 2/2]

---

**You have received a _jpay_ letter, the fastest way to get mail**

From : aysem uraz,  CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 5/25/2023 5:46:01 AM EST,    Letter ID: 1777312681   Parent Letter ID: 1776540641
Location : MCF
Housing : UNIT 4100B01

I have already checked out PAMELA CASTILLO who currently lives in North Las Vegas, NEVADA. The argument about her was that she improperly spoke to a person during your trial. I can make contact with her, but I do not feel that this issue would be persuasive with JUDGE CANADY.

If you have someone on the outside I can work with that person to get SOME of the necessary documents. It will still take more of my time that I will have to charge you for.

If you want to get out of jail, your family is going to have to come up with some additional funds. I need at least another $1000 in order to continue the investigation. My staff will be sending an invoice to you within the next few days.

Sent from Mail for Windows
CHARLES MARTELL
LICENSED PRIVATE INVESTIGATOR


---------- Forwarded message ---------
From: Chuck Martell < cwmartell.HRA@live.com>
Date: Wed, May 24, 2023 at 10:22 PM
Subject: GLORIA McGRUDER
To: Tony Ur < tonyur@gmail.com>, aysemu@yahoo.com < aysemu@yahoo.com>
Cc: Cindy Martell < cam.hamilton@live.com>


Tony,

I just spoke with GLORIA McGRUDER who is the JURY COORDINATOR for the INGHAM COUNTY CIRCUIT COURT. She said that they only keep the QUESTIONNAIREs for 3 years, so they would not have the form that RYAN completed. She did confirm that his name is in their system as RYAN GIBBS PETTY, born 7-21-1972. I asked for her email address but she referred further questions to SCOTT LEROY who she identified as the COURT ADMINISTRATOR.

I have talked with Scott today who told me that an attorney would have to file a MOTION to get the judges attention. I have the names of several APPEALs attorneys with whom I have worked in the past, so I can make contact with them to see if they are interested, and what their fees might be.

I could track down your attorney JACOB PERRONE to see if he has the questionnaire, or track down the prosecutor in a similar quest.

Or there is a legal office called the "INNOCENCE PROJECT" who could supply an attorney without charge.

Let me know what you want to do next.

Sent from Mail for Windows
CHARLES MARTELL
LICENSED PRIVATE INVESTIGATOR
HAMILTON RESEARCH ASSOCIATES,

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1774383431 [P 1/5]

You have received a **jpay** letter, the fastest way to get mail

From    : TUNC URAZ, ID: 114653
To : Information Services
Date : 5/21/2023 12:03:33 PM EST,    Letter ID: 1774383431
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 05/21/2023 12:03:31

Please do not reply to this email

DEAR MR. MARTELL,

Would you please share with my sister your findings about  juror # 2 and send me a copy as well of your findings?

JUST IN CASE IF YOU WOULD LIKE TO QUESTION THEM (JURORS)  ABOUT THEIR ANSWERS DURING THEIR VOIR DIRE

HERE IS THE TRANSCRIPTS OF VOIR DIRE FOR JUROR #2  RYAN GIBBS PETTY AND JUROR #11 PAMELA ANN CASTILLO JUROR. AND JUROR #1 LARRY R. NISHON

FIRST DAY OF TRIAL

10/31/2017 PG 44

JUDGE INTRODUCING:

"DIANE CHILLERS"  THE CLERK FOR TRIAL WHO WOULD DRAW THE NAMES OF POTENTIAL JURORS TO SIT, ADMINISTER OATHS THEN  SHE WILL COME BACK AT THE END OF THE TRIAL TO ADMINISTER OATHS AND STRIKE TWO WITNESSES.

10/31/2017 JURY VOIR DIRE(JURY FOREPERSON)

PG.127

JUROR #2

RYAN GIBBS PETTY

JUDGE : JUROR #2 WHAT IS YOUR COMMUNITY?

JUROR#2 :HOLT

JUDGE : MARRIED OR SINGLE?

PG.128

JUROR #2 : MARRIED

JUDGE : ANY CHILDREN UNDER 18?

JUROR #2 : TEN, 8 AND ALMOST 3.

JUDGE: YOUR EMPLOYMENT?

JUROR #2 : I AM A SALES REP AND JOB MANAGER FOR A ROOFING COMPANY.

JUDGE : SPOUSE'S EMPLOYMENT?

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1774383431  [P 2/5]

**You have received a _jpay_ letter, the fastest way to get mail**

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 5/21/2023 12:03:33 PM EST,   Letter ID: 1774383431
Location : MCF
Housing : UNIT 4100B01


JUROR #2: NONE

JUDGE: YOUR LEVEL EDUCATION?

JUROR #2: HIGH SCHOOL

PG 130:

JUDGE: DO HAVE ANY OTHER PRIOR ENGAGEMENTS ?

JUROR #2: I AM IN COMMISSION SALES. I WON'T MAKE ANY MONEY AT ALL THROUGH THIS PROCESS IF IT'S A 3-WEEK PROCESS. I NEED TO SUPPORT MY FAMILY.

JUDGE:WHAT ABOUT ANY LAW ENFORCEMENT AS FRIEND?

JUROR #2: I HAVE FRIENDS AT CHURCH THAT ARE THREE POLICE OFFICERS, ONE STATE, ONE LOCAL, ONE COUNTY.

PG.140

PROSECUTOR JONATHAN C. ROTH : DO YOU FEEL ACCOUNTABLE EVALUATING WHETHER OR NOT THEY ARE TELLING THE TRUTH (WITNESSES), OR DO YOU FEEL YOU COULD NOT LISTEN TO SOMEBODY WHO WAS IN JAIL?

JUROR #2: YES. I COULD BE IMPARTIAL.

PG 141.

DEFENDANT'S ATTORNEY JACOB A. PERRONE: JUROR #2 WHAT IS YOUR POSITION ON GUN RIGHTS?

JUROR #2: I HAVE FIREARMS. I OBTAINED THEM LEGALLY. I HAVE THEM REGISTERED AND I CARRY THEM LEGALLY.

11/09/2017 pg 186
Jury foreperson is Juror #2 is the one signed the verdict form.

I AM NOT SURE IF YOU CAN GET A SECURITY CAMERA FOOTAGE OF THE COURT ROOM FOR THE DAYS AND TIMES BELOW (MY FAMILY TRIED TO OBTAIN THE FOOTAGES, HOWEVER 30TH. CIRCUIT COURT WOULD NOT RELEASE ANY IN COURT SECURITY CAMERA FOOTAGE TO PUBLIC UNDER FOIA REQUEST)

PAMELA ANN CASTILLO  was talking to Victim's mother's name; Katherine Beckett  (she was listed and read as a potential witness at the beginning of the trial) they were sitting next to each other during jury selection and voir dire on 10/31/2017 between 11:00am -2:00pm and again sitting next to each other on  11/02/2017 8:00 am -11:00 am

PG.63

11/02/2017

JURY # 11 PAMELA ANN CASTILLO.


JUDGE : YOUR COMMUNITY MA'AM?

JUROR #11: INGHAM

**_jpay_** Tell your friends and family to visit www.jpay.com to write letters and send money!

16-1064-FH

# VERDICT FORM

**People v Tunc Uraz**
**DOCKET NO.:  16-1064-FH & 16-01065-FC**

**POSSIBLE VERDICTS:** You may find the Defendant either not guilty or guilty on each charge.

**DOCKET NO.:  16-1064-FH**

## COUNT I
## AGGRAVATED STALKING

NOT GUILTY

~~GUILTY~~

**DOCKET NO.:  16-01065-FC**

## COUNT I
## SOLICITATION OF MURDER

NOT GUILTY

~~GUILTY~~

## COUNT II
## SOLICITATION OF MURDER

NOT GUILTY

~~GUILTY~~

FILED-30th CIRCUIT COURT

NOV 0 2 2017

BY: _____
Deputy Clerk

## COUNT III
## SOLICITATION OF MURDER

NOT GUILTY

~~GUILTY~~

_____        ← RYAN GIBBS        11/9/17
SIGNATURE OF FOREPERSON                PRTN (CAPTER)        DATE

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1725924838  [P 1/3]

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/20/2023 10:55:58 PM EST,   Letter ID: 1725924838
Location : MCF
Housing :  UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/20/2023 22:55:46

Please do not reply to this email

1) GINTHER HEARING PERJURY BY PERRONE AND OTHERS

10/04/2021 Ginther Hearing transcript

After Ms. Crino's very specific questioning of Perrone see pgs. 12-35 finally the main question:

Pg 35 Lines 4-25
Crino : Did an issue arise with your mental health?

Perrone: Yes about a week after the trial, I took a trip to DALLAS right after I got done with the trial and didn't sleep really, I had to fly sooner than anticipated for a family issue, which caused "significant exhaustion" which led to me having some different---I had to go to hospital because of the "exhaustion"  which caused my family significant concern, which ended up leading to having an episode, A "BIPOLAR DISORDER"

Crino: OK is it fair to say, then a week after the verdict in this case, you had an episode and that episode led to a mental health diagnosis?
Perrone: Yes
Crino: OK you mentioned Bipolar, is that the diagnosis that you ultimately received?
Perrone : Yes

**FACT: MR. PERRONE DID NOT GO TO DALLAS, HE WAS SENT TO MENTAL HOSPITAL PSYCH WARD BEFORE 11/14/2017 INVOLUNTARY BY HIS FATHER AND WIFE.

***HERE IS THE PROOF THAT PERRONE  WAS LYING UNDER OATH; (penalty under perjury)

SEE (attac.    ) ERIC SCHROEDER'S ANSWER TO AGC dated 02/06/2023 pg 2 prag.2
"In part..I LEARNED FROM PERRONE'S FAMILY THAT OVER THE WEEKEND THAT PERRONE HAD EXPERIENCED A MENTAL HEALTH EPISODE. HE WAS HOSPITALIZED FOR 3 DAYS AND RELEASED THAT FRIDAY".

Pg. 36 continued 04/13/2022 Ginther hearing
Crino: Did you share that information with Uraz the next time you saw him?
Perrone : Yes
Crino: How and when exactly did that occur?
Perrone: As soon as I was available, I spoke with Uraz and explained to him why I had been unavailable and then, we had to address the court with it.
Crino: Did Mr. Uraz tell you that he wanted you to continue representing him?
Perrone: He did
Crino: What did he say exactly?
Perrone: Given the nature of our relationship at that point in the time he was happy with I have done and the efforts that I'd put it, so he told me that he wanted me to continue as his attorney.

FACT : HE DIDN'T SHARE ANYTHING WITH ME,. MY FAMILY TOLD ME AFTER HIS CRAZY TEXT MESSAGE TO MY SISTER between 11/13/2017 to 12/06/2017  (see attachment #4)
and e-mail mes

pg 36 Line 16
Crino : On December 12th, 2017 there was an in chambers conference with the court, correct? And you were present for that?

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/20/2023 10:55:58 PM EST,   Letter ID: 1725924838
Location : MCF
Housing : UNIT 4100B01

A: YES TO ALL
Q: WERE THE ACUTE ISSUES WITH THIS EPISODE THAT YOU HAD RESOLVED BY THAT--DAY

PERRONE I BELIEVE YES
Q: AND YOU INFORMED COURT THAT DAY THAT MR. URAZ WANTED YOU TO CONTINUE REPRESENTING
HIM CORRECT?

A : YES
PG 37
CRINO : AND YOU INFORMED THE COURT ON THAT DAY THAT YOU DID NOT HAVE AN EPISODE DURING
TRIAL, CORRECT?
A: CORRECT
Q: ON DECEMBER 13th.2017, the next day, you were in court again correct?
A: Yes
Q: And on that day Mr. Uraz, on the record, requested that you continue representing him correct?
A: YES

FACTS:
****PERJURY ON 12/11/2017 AN UNKNOWN PROSECUTOR FILED A GRIEVANCE AGAINST HIM AS WELL
(see Ms. Crino's response to AGC October 20th 2022 attachment #1 and #2)

MR. ROTH INSISTED ON SWITCHING PERRONE On 12/12/2017 judges chambers hearing
ON 12/14/2017 (Silverthorn was appointed see attached e-mail from Valerie Roper to prosecutors)

***I did NOT agree PERRONE  representing me for my sentencing on originally scheduled  12/20/2017 and it was
postponed to 11/24/2018 due change of attorneys.

****FACT: MS. CRINO KEEP SAYING THAT MR. PERRONE'S MENTAL ILLNESS HAPPENED AFTER TRIAL BUT
HE WAS STILL MY ATTORNEY ON RECORD UNTIL 12/13/2017 IN COURT HEARING WHEN IT WAS SWITCHED
TO SILVERTHORN

12/12/2017 hearing was held at judge's chambers with
Jonathan Roth, Charles Koop, Jacob Perrone, Eric Schroeder, Nick Fernandez were in attendance.

I WAS  DEPRIVED OF MY RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE
PROCEEDINGS (12/12/2017, JUDGES IN-CHAMBERS MEETING) WHEN  (PERRONE)  WAS PLACED IN THE
UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO HIS CLIENTS?
(Perrone admitted on record that he was not medicated before and during trial )pg.7 lines 4-9

HE PERJURED SAYING THAT I HAD MY APPROVAL TO REPRESENT ME FOR SENTENCING, THIS COULD
HAVE BEEN IMPOSSIBLE BECAUSE THE 12/18/2017 DOCS SENT TO SILVERTHORN CONTAINED A "Initial
order after hearing on petition for mental heath treatment" ORDER FROM JUDGE HALLMARK (Oakland County)
SIGNED ON 11/30/2017,  FOR PERRONE SPENT 10 DAYS IN HOSPITAL AND 80 DAYS OUTPATIENT
TREATMENT (COMBINED ORDER), THEREFORE PERRONE WAS NOT ELIGIBLE/FIT TO REPRESENT ME.

PG 37 LINE 23
CRINO: IF YOU HAD HAD SOME KIND OF AN ACTIVE EPISODE THAT HAPPENED DURING TRIAL, WHAT
WOULD THAT HAVE LOOKED LIKD AND WOULD IT HAVE BEEN POSSIBLE FOR YOU TO CONTINUE
LITIGATING A SERIOUS OFFENSE LIKE THIS?
A: I WOULD HAVE BEEN UNINTELLIGIBLE.
Q: OKAY, SO IT WOULD HAVE BEEN OBVIOUS TO THE COURT THAT THIS COULDN'T CONTINUE?
A: IT WOULD HAVE BEEN OBVIOUS, YES
Q: IT WOULD HAVE BEEN OBVIOUS TO EVERYONE?
A: IT WOULD HAVE BEEN OBVIOUS TO JURY...
Q: WE WOULD HAVE BEEN CALLING FOR HELP FOR YOU?
A: YES

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1725924838  [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 3/20/2023 10:55:58 PM EST,    Letter ID: 1725924838
Location : MCF
Housing :  UNIT 4100B01

Q: FAIR TO SAY THERE WAS NO EPISODE THAT OCCURRED DURING TRIAL, CORRECT?
A: CORRECT
Q: IN TERMS OF YOUR GENERAL MENTAL HEALTH AND ABILITY, WAS THERE A DECLINE THAT OCCURED
DURING TRIAL?
A: NO, I DONT BELIEVE SO.

CRINO ASKED PERRONE IF HE HAD A MENTAL BREAKDOWN EACH DAY OF THE TRIAL DAY BY DAY IF
PERRONE NOTICED ABOUT PERRONE'S BEHAVIOR OR ANY "INEFFECTIVENESS" REPRESENTING ME
DURING THE TRIAL.

(this line of questioning by CRINO did not  make sense because what is mentally impaired person is going to say
about their behavior during trial, how would they even understand, recognize,  know, diagnose their own mental
ailments)

The flaw in MCR 9.121 Section (C) asking the respondent/ sole practioner answering their own grievances who may
suffer from a mental disability may not recognize that he or she even has a disability which may mitigate the alleged
misconduct.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1631937259  [P 1/3]

---

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/12/2022 7:27:45 PM EST,   Letter ID: 1631937259
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 11/12/2022 19:27:33

Please do not reply to this email

2) GINTHER HEARING PERJURY BY PERRONE,  BY ERIC SCHROEDER , BY
NICHOLAS FERNANDEZ

pg 38 line 24 Walsh redirect :
Q: Are you familiar with defendant's Exhibit A from the hearing regarding your---the decision to have somebody else
do sentencing? It's an e-mail that you sent to Aysem Uraz (my sister) and Cenk URAZ (brother)  on 11/08/2017
during the trial?

pg 39.

A : I HAVE TO SEE IT.

Line 11 Perrone:Yes I can Recall this now..I...I believe that after we started with the trial that we were going to try to
get the most out of it. And I thought we did fairly well during trial. And there did appear to be some dejection on the
Prosecutor's part (PERRONE'S OWN DELUSIONS).
I THINK THAT WAS AFTER THE TRIAL HAD BEEN CONCLUDED, ***(PERJURY see attachment #5, E-MAIL
MESSAGE WAS SENT ON 11/08/2017 BY 10:00 AM AND TRIAL WAS OVER BY (11/09/2017 BY 5:00PM)
continue
BUT I WAS TRYING TO BE POSITIVE FOR MR.URAZ AFTER HE WOULD MADE THE DECISION TO GO TO
TRIAL AND THERE WAS NO OTHER OPTION

PG 41
LINE 12 ,Walsh : so you don't believe that your bipolar disorder impeded you from getting sleep during that time?

Perrone : NO

LINE 23, CRINO : That was an email sent to family member of the Defendant's during the course of the trial?
Correct?

A: I think it was the end of trial.

FACT : IT WAS SENT 10:00AM IN THE MORNING ON 11/08/2017 TRIAL ENDED ON 11/09/2017 BY 5:00PM

PERJURY BY SCHROEDER

10/04/21 PG 46,LINE 5-8

PROSECUTOR CRINO TO ERIC SCHROEDER
Q: ...AND EVEN ASSISTING ATTORNEY YOU UNDERSTAND THAT YOU HAVE ETHICAL OBLIGATIONS TO
YOUR CLIENT, CORRECT?
A: YES

Pg. 46 Line 16-25

Q: AND THOSE OBLIGATIONS INCLUDE HANDLING A DUTY TO INFORM THE AGC REGARDING MATTERS
THAT RAISE A SUBSTANTIAL QUESTION AS TO ANOTHER LAWYER'S HONESTY, TRUSTWORTHINESS, OR
FITNESS AS LAWYER, CORRECT?

A: YES

---

_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1631937259  [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 11/12/2022 7:27:45 PM EST,   Letter ID: 1631937259
Location : MCF
Housing :  UNIT 4100B01

Q: AND THAT'S UNDER RULE 8.3, CORRECT?

A: YES

Q: AND YOU UNDERSTOOD ALL OF THOSE OBLIGATIONS IN 2017?

A: YES

Q: YOU UNDERSTAND THEM AS WELL TODAY, CORRECT?

A: YES

pg 49 line 22
Crino : Did you observe Mr. Perrone have  mental breakdown during trial.
Eric: Not during trial
pg 49 line 1
Crino: Perrone's mental ability to try the case declined during trial, did that happen?
Eric: Not to my knowledge
Crino: Perrone failed to properly cross-examine the State's witnesses and defense witnesses? Did that occur?
A: NO

First Schroeder IS not qualified to answer questions about Perrone's  mental health.

**FACTS : HERE IS THE PERJURY BY SCHROEDER AND HE FAILED TO REPORT IT TO AGC :

1) SEE ATTACHED EMAIL MESSAGES EXCHANGED BETWEEN SCHROEDER AND MR. CENK URAZ (brother of
Tunc Uraz between 11/20/2017 -12/01/2017 ) (see attachment #6)

2) SEE ATTACHMENT #1 SENT BY MS. CRINO TO AGC LATE OCTOBER 2022 ABOUT AN UNKNOWN
PROSECUTOR FILED A GRIEVANCE AGAINST PERRONE ON 12/11/2017 FOR CONSTANTLY HARASSING
HIM (PHONE, VOICE MESSAGE, TEXT MESSAGE E-MAIL)

3) He failed to disclose any information given to him by prosecution 12/18/2017 (attachment #3)

ERIC SCHROEDER FAILED TO REPORT ALL INSTANCES ABOVE TO AGC, FAILED TO DISCLOSE ANYTHING
TO PRIVATE INVESTIGATOR IN SEPTEMBER 2021, TESTIFY ABOUT IT AT MY GINTHER HEARING.

ERIC SCHROEDER FAILED TO TESTIFY ABOUT PERRONE'S INEFFECTIVENESS BEFORE AND DURING
TRIAL.

SUCH AS
after His very well choreographed Ginther hearing testimony with prosecutor Crino that he never noticed anything
wrong with Perrone before and during trial otherwise you would have reported it. per MCR 1.1, 6.5, 8.3

DEFENDANT saw Schroeder more than Perrone at county jail and according to his testimony Schroeder just started
working for Perrone in September 2017 as part-time employee,  Defendant  trusted you to relay messages to
Perrone, about trial strategy

SCHROEDER knows as well as Defendant does that Perrone was not ready at all for trial

SEE ATTACHED PERRONE INEFFECTIVENESS LIST WHERE SCHROEDER FAILED TO PREVENT, REPORT
OR STOP.

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1631937259  [P 3/3]**

*You have received a* **Jpay** *letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/12/2022 7:27:45 PM EST,   Letter ID: 1631937259
Location : MCF
Housing : UNIT 4100B01


FACT
11/06/2017 THIS IS THE FOURTH DAY OF TRIAL
PGS 170,171,172
HERE IS THE "A" LIST INGHAM COUNTY COURT APPOINTED ATTORNEY PERRONE

THIS IS ABOUT PERRONE NOT SENDING WRITS FOR MDOC WITNESSES ON TIME (HE FORGOT)
SO PERRONE THINKING IS HE CAN DO THE CLOSING ARGUMENT AND AND THEN BRING THE MDOC WITNESSES TO TESTIFY.
JUDGE SAVED PERRONE BY POSTPONING CLOSING ARGUMENTS TO 11/09/2017

11/07/2017 Incident by Perrone taking so long to cross examine

FACT:  THE OBJECTION WAS MADE BY ROTH (this was Roth's trial strategy to be condescending, sarcastic, full of objections to ruin Perrone's concentration, he was rude towards him and tormented him)
ON 11/07/2017 TRIAL TRANSCRIPT
PG 59 LINE 5
IN THE MIDDLE OF CROSS EXAMINATION OF CHARLES M. ALLEN (jailhouse informant)
 BY PERRONE JUDGE CANADY DECIDED TO TAKE MORNING RECESS, PERRONE WAS STRUGGLING , AS HE WAS TRYING TO ASK QUESTIONS ,HE LOOKED  ALMOST LIKE PERRONE WAS OUT OF IT,

Pg 60 lines 2-25
Roth : Your honor, I am going to object This is 3 minutes between questions, this cross examination rambles on for hours (classic bipolar symptoms shown by Perrone)

NICHOLAS FERNANDEZ

PERRONE'S LIFE LONG FRIEND AND ASSISTANT DURING TRIAL

PG 52 SUSAN WALSH TO FERNANDEZ line 6-25

Q: How did you met Perrone and what role did you play in the trial?

A: I've known Perrone since middle Schools, my role was limited more of an administrative role.

Q: Did you see any downturn in Perrone's behavior during the course of the trial?

A: not during the course of trial NO
 Q: You didn't see him losing his temper or having any kind of outbursts or anything like that during the course of trial.?
A: There was one or two occasions, I believe it was after the jury dismissed, that he....I don't know what you want to call it....an outburst maybe directed at prosecution table, and I believe Detective Krumbach, He just raised his voice.

FACT : PERRONE THOUGHT THAT (delusions) DETECTIVE KRUMBACH,
last day of trial 11/09/2017 transcripts
pg. 131  line 20
Perrone pointing to Krumbach
"If he is going to laugh at me again?
All he does is laugh?"

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/12/2022 7:27:46 PM EST,    Letter ID: 1631937272
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 11/12/2022 19:27:34

Please do not reply to this email

3) PERJURY BY NICHOLAS FERNANDEZ AND CHARLES T. KOOP
DUANE SILVERTHORN, ANDREW VUCKOVICH,  GINTHER HEARING 10/04/2021

NICHOLAS FERNANDEZ CONTINUE....

Q: WAS THAT OUT OF CHARACTER FOR MR. PERRONE?
A : NO
Q: IN YOUR LONG HISTORY WITH HIM, HAD SEEN LOSE HIS TEMPER ON OTHER OCCASIONS?
A: I WOULDN'T SAY LOSE HIS TEMPER, HE'S AN EXCITABLE GUY.
Q: SO LIKE A HIGH ENERGY PERSON IS WHAT YOU ARE SAYING?
A: YES, HIGH ENERGY
pg53 line 22
Walsh ; So you would say that although he had this---you know, kind of raised his temper a little bit at the ---at the end of the trial you didn't think that that impacted his ability to handle the trial?
A: yes you are correct

FACT : SO HERE ARE THE PERJURY
LIFE LONG FRIEND OF PERRONE WOULD HAVE KNOWN PERRONE'S OTHER DELUSIONAL OUTBURST, AND HIM LOSING HIS TEMPER, HAVE ANXIETY ENDING UP AT SPARROW HOSPITAL in August 2017 BEFORE TRIAL AND AFTER THE TRIAL SINCE HE LOST TRIAL THAT WAS THE BREAKING POINT FOR PERRONE.

Fernandez failed to testify about this to private investigator as well

Fact : PERRONE'S ORGANIC BRAIN DAMAGE SCHIZOPHRENIA AND BIPOLAR DISORDER CAN CONSPRIRE TO CREATE SEVERAL MENTAL IMPAIRMENT PSYCHOSIS AND OTHER SERIOUS MENTAL HEALTH PROBLEMS THAT BURDENED HIM COULD LEAD TO DANGEROUS BEHAVIOR. BUT HIS BEHAVIOR WAS A MANIFESTATION OF SERIOUS ILLNESS NOT A REFLECTION OF HIS CHARACTER.

GINTHER HEARING PERJURY BY PROSECUTOR KOOP pg. 55 line 23

Q: Did you notice any changes during the trial in Mr. Perrone's condition or ability to handle the trial?
A : Not during the pendency of the trial NO
pg 56
Q: Did you notice that he was distracted or fatigued or anything like that?
A: I did not notice that
Q: do you think that his...anything about his mental health condition affected his ability to properly defend Mr. URAZ
A: NO

Koop is not qualified to answer questions about Perrone's mental health

FACT PERRONE WAS STILL MY APPOINTED ATTORNEY TILL 12/13/2017 UNTIL IT WAS SWITCHED TO SILVERTHORN.

THEREFORE HE FAILED TO TALK ABOUT PERRONE'S SECOND MENTAL IMPAIRMENT WITH POLICE REPORT DATED 11/20/2017 AND SOMEHOW THE CLINTON COUNTY PROBATE COURT DOCUMENTS WHICH WERE FAXED BY OAKLAND COUNTY TO INGHAM COUNTY ONLY HAD JUDGE HALLMARK'S ORDER DATED 11/30/2017.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1631937272  [P 2/3]

---

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 11/12/2022 7:27:46 PM EST,    Letter ID: 1631937272
Location :  MCF
Housing :  UNIT 4100B01

SOMEHOW INGHAM COUNTY PROSECUTOR'S OFFICE PREFERRED, INTENTIONALLY DID NOT SHARE THE REST OF THE OAKLAND COUNTY PROBATE COURT DOCUMENTS FAXED/SENT TO THEIR OFFICE (see attachment #1) ABOUT PERRONE'S EXPANSIVE INVOLUNTARY MENTAL IMPAIRMENTS SUCH AS PRT FORM FILLED BY HIS FATHER (DATED 11/14/2017) AND CLINICAL CERTIFICATES BY DR. GLICK AND DR. MOVVA, DATED 11/14/2017, AND 11/15/2017.
PERRONE HAD 2 (TWO) INVOLUNTARY MENTAL HOSPITAL ADMISSION AFTER TRIAL BUT HE ALSO HAD MANY MENTAL ISSUES GOING BACK TO 2015 (SEE PRT FORM BOTTOM OF THE PAGE FILLED BY PERRONE'S FATHER.)

pgs 57,58,59
PERJURY BY SILVERTHORN on Ginther Hearing

FACT: ON 12/18/2017  prosecutor Koop ONLY shared this information with attorney Duane Silverthorn, however SILVERTHORN Had choosen not to share this vital docs with Mr. URAZ before his sentencing on 01/24/2018.

Although Mr. Silverthorn testified on 10/04/2021 at my Ginther Hearing, he never bothered to share any of the attached docs with court at that time.

His only testimony was based on him had a meeting with Perrone late December 2017, Perrone was "distraught and not coherent" "disorganized" thoughts etc..
(see hearing transcript 10/04/2021 pgs.57,58,59) pay attention to pg.58

Walsh: Did you note any---notice anything concerning about Mr. Perrone's behavior?

Silverthorn: he was agitated, had difficulty focusing. He was speaking really fast. He was cordial but like I said, agitated.

Line 20 by Ms. Walsh's question to Silverthorn :
Do you think is there anything else that you have any information about that would help the court make a determination as to whether there was effective assistance of counsel?

pg 59
Silverthorn: (in part) ...I thought it was concerning, the focus wasn't there and that he was speaking so quickly and clearly whether he was that way during the trial, I would have no way knowing.

ANDREW VUCKOVICH  PG 61
HE WORKED FOR PERRONE BETWEEN 2014-2017

PERRONE ACCUSED VUCKOVICH AT 08/15/2017 STATUS CONFERENCE HEARING FOR NOT BEING READY FOR MOTIONS HE WAS SUPPOSE TO FILE AND OTHER TRIAL MATTERS.
VUCKOVICH QUIT DUE TO HIS PERSONAL PROBLEMS, AND VUCKOVICH TOLD ME THAT 2017 SUMMER HE HAD A BABY AND HIS GRANDMOTHER PASSED AWAY.
WHEN HE SHOWED AT JAIL ON 06/30/2017, I SPECIFICALLY GAVE HIM WITNESS LIST FOR PERRONE TO BE INVESTIGATED.

PG 64 ,LINE 4

Q: DID YOU NOTICE ANY PROBLEMS WITH HIS MENTAL HEALTH? OR HIS HEALTH IN GENERAL WHEN YOU HAD THOSE DISCUSSIONS WITH HIM?

A: (in part) I THOUGHT THAT HE, YOU KNOW, WAS AN ASSHOLE LIKE...I AM SORRY....I THOUGHT HE WAS A JERK LIKE MANY PEOPLE WOULD SAY THEY THINK THEIR BOSSES ARE.

---

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1631937272  [P 3/3]**

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/12/2022 7:27:46 PM EST,    Letter ID: 1631937272
Location : MCF
Housing : UNIT 4100B01

PETITION for Mental HEALTH TREATMENT") PRT FORM FILLED BY PERRONE'S FATHER   CONFIRMS VUCKOVICH'S OBSERVATIONS :

SEE SECTION (D)(i):
08/17 Went to Sparrow Hospital with severe anxiety [before my trial]

11/17 went to Sparrow Hospital w/chest pains left Against medical advice (most likely right after my trial ended 11/09/2017)

sec (ii)
"Punches holes in walls, is verbally abusive to his wife, has said he will "KILL" &/or destroy everyone, will take over Lansing + w/an iron fist..

****"THIS HAPPENS WEEKLY FOR  THE LAST TWO YEARS AT LEAST"****

(this means Perrone has been  Paranoid Schizoaffective disorder, Bipolar Type at least since 2015 or even before, untreated, unmedicated, undiagnosed)

2nd page
SEC 4 (a)
"HE HAS MANY ANGRY OUTBURSTS, DISORGANIZED THOUGHTS, HE THINKS HE IS THE MOST INTELLIGENT PERSON IN THE WORLD, HE WILL "DESTROY" OR KILL EVERYONE, HE HAD CALLED HIMSELF "MY SUICIDAL SON", HAS MANY ANGER ISSUES.
signed by Joseph V. Perrone 11/14/2017

*You have received a* **jpay** *letter, the fastest way to get mail*

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/1/2023 11:19:28 PM EST,   Letter ID: 1711460222
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/01/2023 23:19:26

Please do not reply to this email

4) PERJURY BY JONATHAN C. ROTH GINTHER HEARING TESTIMONY 04/13/2022

Ginther hearing was granted 03/06/2020 and with Covid delays my first hearing was on 10/04/2021 (18 months later and another 6 months later on 4/13/2022 when I testified total of 24 months). (it was postponed because Roth was the prosecutor for Governor Kidnapping Plot, with U.S. Federal Courts during that time).

04/13/22 pg. 6 Line 3
WALSH TO ROTH
Q: DO YOU THINK THAT MR. PERRONE'S CONDITION AFFECTED HIS ABILITY TO PROPERLY DEFEND MR. URAZ DURING THE TRIAL?
A: I DO NOT
Q: WHAT DO YOU BASE THAT OPINION?
A: I'VE KNOWN PERRONE A LONG TIME, I WENT TO LAW SCHOOL WITH HIM. HE WAS IN MY SECTION IN MY FIRST YEAR OF LAW SCHOOL.
SO BY THE TIME WE TRIED THE CASE, I HAD KNOWN HIM PROBABLY 10,12 YEARS. I DIDN'T NOTICE ANYTHING DIFFERENT ABOUT HIM DURING THE COURSE OF TRIAL, THAN I DID ANY TIME BEFORE. I DON'T THINK THAT HE MADE ANY DECISIONS THAT INDICATED THAT HE WAS HAVING DIFFICULTIES MAKING GOOD DECISIONS, SO THERE WAS NOTHING THAT...I NOTICED THAT WOULD INDICATE THAT.

***PERJURY***#1

04/13/2022, pg 20 line 20
Crino : NOW SOMETIME AFTER THE JURY'S VERDICT YOU 'VE INFORMED THAT MR. PERRONE HAD SOME TYPE OF EPISODE. HOW IS IT THAT YOU WERE INFORMED OF THAT?
PG 21
A: BY THE EMAIL, IT WAS AROUND... I THINK IT WAS ON 12/02/2017, I RECEIVED AN EMAIL INDICATING THAT...HE HAD HAD WHAT WE REFER AS PRT PROCEEDINGS, I THINK IN OAKLAND COUNTY AND THAT IS THE EXTENT OF THE DETAIL THAT I KNOW
Q: PERRONE DID NOT REPRESENT THE DEFENDANT AT SENTENCING, SILVERTHORN DID ?
A: THAT'S CORRECT MR. PERRONE DID REPRESENT HIM AT A HEARING THAT WE HAD WITH---WITH YOUR HONOR IN THE JURY ROOM, SO SOMETIME BETWEEN VERDICT AND SENTENCING, SO THERE WAS SOME CONTINUED REPRESENTATION
Q: AND THAT WAS ACTUALLY AT THE DEFENDANTS REQUEST IF I RECALL
A : THAT IS CORRECT.


FACTS: PERRONE WAS MY APPOINTED ATTORNEY UNTIL 12/14/2017 AND BECAUSE OF HIS MENTAL IMPAIRMENTS PROSECUTOR ROTH OBJECTED PERRONE TO REPRESENT ME FOR SENTENCING ON 12/12/2017 JUDGES CHAMBERS HEARING ABOUT PERRONE MENTAL IMPAIRMENT STATUS.

FACT:

See "initial order after hearing on petition for mental health treatment" pgs 5/20 - 6/20 (this document was part of 12/18/2017 documents given to Silverthorn by prosecutor Koop)

FACTS ****AND "SUPPOSEDLY ONLY" THIS TWO PAGE DOCUMENT FAXED TO INGHAM COUNTY PROSECUTOR'S OFFICE ON 12/06/2017 FROM OAKLAND COUNTY PROBATE COURT, WHICH IS HARD TO BELIEVE THAT REST OF PERRONE MENTAL PROBATE COURT DOCUMENTS WERE NOT SENT AT THE

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1711460222 [P 2/3]**

You have received a *jpay* letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/1/2023 11:19:28 PM EST,   Letter ID: 1711460222
Location : MCF
Housing : UNIT 4100B01

SAME TIME? AND PROSECUTOR KOOP CHOSE NOT TO SHARE THE REST OF THE PROBATE DOCS WITH SILVERTHORN (another cover up by Ingham County prosecutor's office)

***04/13/2022 GINTHER HEARING TESTIMONY PG. 43-51 MS. CRINO BADGERED MR. URAZ ABOUT 12/13/2017 DECISIONS MADE BY JUDGE TELLING HIM PERRONE WOULD BE REPLACED BY SILVERTHORN AND PERRONE WOULD HELP HIM OUT IF NEEDED FOR SENTENCING.

ALL I DID WAS TO ACKNOWLEDGED WHAT I HEARD FROM JUDGE, BUT MS. CRINO SOMEHOW BELIEVED THAT I AGREED TO THIS ARRANGEMENT.

WELL AFTER SEEING OAKLAND/CLINTON COUNTY RECORDS, ON 11/30/2017 JUDGE ORDERED PERRONE TO HAVE 90 DAYS OF MENTAL HEALTH TREATMENT 10 DAYS WAS ALREADY SPENT INTERMITTENTLY BETWEEN 11/14/2017 -11/30/2017.

PERRONE COULD NOT HAVE REPRESENTED ME ANYWAYS BECAUSE HE WAS ORDERED TO GO MENTAL HEALTH TREATMENT THROUGH COMMUNITY MENTAL HEALTH FOR 80 DAYS.

THIS IS WHY MR. ROTH INSISTED ON SWITCHING PERRONE. ON 12/12/2017 , ON 12/14/2017 SILVERTHORN WAS APPOINTED.

****FACT: MS. CRINO KEEP SAYING THAT MR. PERRONE'S MENTAL ILLNESS HAPPENED AFTER TRIAL BUT HE WAS STILL MY ATTORNEY ON RECORD UNTIL 12/13/2017 IN COURT HEARING WHEN IT WAS SWITCHED TO SILVERTHORN

"CONFLICT FREE ATTORNEY"

12/12/2017 hearing was held at judge's chambers (please request a transcript of both  hearings from Ms. Crino) in this meeting :
Jonathan Roth, Charles Koop, Jacob Perrone, Eric Schroeder, Nick Fernandez were in attendance.

I WAS  DEPRIVED OF MY RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (12/12/2017, JUDGES IN-CHAMBERS MEETING) WHEN (PERRONE) WAS PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO HIS CLIENTS? (Perrone admitted on record that he was not medicated before and during trial )pg.7 lines 4-9

AND on 12/13/2017 in court hearing about appointing SILVERTHORN

****PERJURY #2

 MR. ROTH'S ANSWERS TO PRIVATE INVESTIGATOR JAMES D. HOPPE

ROTH'S INTERVIEW ON 09/23/2021 JAMES D. HOPPE "HE IS NOT AWARE THAT PERRONE SUFFERED ANY MENTAL OR PHYSICAL HEALTH CRISIS" (see attached report)

ROTH NOT DISCLOSING ATTACHMENT 2 OF HIS BRIEF IN HIS TESTIMONY

Attachments #9 by Mr. Roth ; Is talking about Ms. Elizabeth Allen Prosecutor at Ingham County sent an emal to ROTH about Perrone being "PRT'ed past two weeks and was calling Bill from therez he had a hearing this week in Clinton County (11/30/2017)

If Perrone was released , she was thinking about someone "Boeve" to patrol Roth's house randomly, she thinks it's more serious.

DEC 2nd 2017 email to Ms. Allen

Roth: He is concerned about Perrone's harassing calls, if he is released or not?

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1711460222  [P 3/3]**

*You have received a* **JPay** *letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  3/1/2023 11:19:28 PM EST,    Letter ID: 1711460222
Location : MCF
Housing :  UNIT 4100B01

LANSING POLICE REPORT WAS FILED ON 11/20/2017, AND YES IT WAS "PRINTED" ON 12/05/2017 HOWEVER SOMEONE FROM INGHAM COUNTY PROSECUTOR OFFICE PROBABLY REQUESTED IT THAT IS WHY IT WAS PRINTED ON 12/05/2017

THE HEARING WAS AT OAKLAND COUNTY ON 11/30/2017, NOT AT CLINTON COUNTY, (INITIAL ORDER AFTER HEARING ON PETITION FOR MENTAL HEALTH TREATMENT" WAS HELD ON RECORD AT OAKLAND COUNTY PROBATE COURT  AND THAN IT WAS FAXED TO CLINTON COUNTY ON 12/06/2017

(OC FAX SERVER STANDS FOR OAKLAND COUNTY)

PLEASE PAY ATTENTION TO CASE NUMBERS CLINTON COUNTY IS : 17-29766-MI AND OAKLAND COUNTY IS 2017-380,077-MI

INTERESTINGLY MY ORIGINAL COPY THAT I HAVE FROM OAKLAND COUNTY DOES NOT HAVE FAX HEADING (see attached)

HOWEVER  OAKLAND COUNTY CASE NUMBER HAS LINE OVER IT AFTER IT WAS FAXED TO CLINTON COUNTY.

AND IT WAS FILED ON 12/06/2017 STAMP FROM CLINTON COUNTY

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1631937239 [P 1/2]**

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/12/2022 7:27:43 PM EST,  Letter ID: 1631937239
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 11/12/2022 19:27:31

Please do not reply to this email

JDH CONSULTING SERVICES, LLC
PO BOX 943, TROY, MI 48099,
(586) 404 8354
PRIVATE INVESTIGATOR :JAMES D. HOPPE ASKED ABOUT PERRONE'S MENTAL STATE TO ALL THE ATTORNEYS WHO TESTIFIED AT DEFENDANT'S GINTHER HEARING ON 10/04/21 AND 04/13/2022

1) ERIC SCHROEDER ON 09/23/2021
(in part) ....believes that Perrone was "dialed in" during the trial and any mental issues experienced by Perrone were very well after the URAZ trial.
(in part)... Perrone as being focused during the trial and  nothing that Perrone did caused Schroeder to question Perrone's abiliiy to defend URAZ.....did not notice any change in Peer one's behavior during the trial....

NICHOLAS FERNANDEZ ON 10/01/2021
He is a licensed attorney in Florida
(in part)....he has known Perrone since grade school.....advised that  during the URAZ trial he noticed a "downturn" in the behavior of Perrone indicting that Perrone seemed to lose his TEMPER MORE FREQUENTLY and  HAD MORE EMOTIONAL OUTBURSTS......however does not believe that Perrone's emotional state negatively impacted his ability to effectively defend Uraz ..... Perrone was well prepared for trial and be seemed to make good decisions during the trial.....

CHARLES T. KOOP II, 09/23/2021
(in part)....Koop advised that he "HEARD" that Perrone may have had a mental health issue sometime after the trial but not before or during the trial.
Koop recalled an objection that he made concerning Perrone taking several minutes between questions.....
looked like he was rambling....

FACT:  THE OBJECTION WAS MADE BY ROTH NOT KOOP (this was Roth's trial strategy to be condescending, sarcastic, full of objections to ruin Perrone's concentration, he was rude towards him and tormented him)
ON 11/07/2017 TRIAL TRANSCRIPT
PG 59 LINE 5
IN THE MIDDLE OF CROSS EXAMINATION OF CHARLES M. ALLEN (jailhouse informant)
 BY PERRONE JUDGE CANADY DECIDED TO TAKE MORNING RECESS
PERRONE WAS STRUGGLING , AS HE WAS TRYING TO ASK QUESTIONS ,HE LOOKED  ALMOST LIKE PERRONE WAS OUT OF IT,

Pg 60 lines 2-25
Roth : Your honor, I am going to object This is 3 minutes between questions, this cross examination rambles on for hours

DUANE SILVERTHORN , 09/27/2021

SILVERTHORN was only appointed for sentencing, Perrone dropped of the URAZ file shortly after the trial ended. SILVERTHORN DESCRIBED PERRONE AS BEING "OFF" AND AS A "NON-STOP"  TALKER, ALMOST PATHOLOGICALLY SO. IN SILVERTHORN'S OPINION PERRONE SEEMED TO BE "FLYING", ALMOST AS HE WAS AN AMPHETAMINE USER. SILVERTHORN DOES NOT KNOW ANYTHING ABOUT PERRONE'S BEHAVIOR AT TRIAL AND SILVERTHORN HAS NOT EXAMINED THE TRIAL RECORD TO SEE WHAT HAPPENED AT

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1631937239  [P 2/2]

You have received a **JPay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  11/12/2022 7:27:43 PM EST,    Letter ID: 1631937239
Location :  MCF
Housing :  UNIT 4100B01

TRIAL.

ANDREW VUCKOVICH, 09/23/2021

(in part).DID NOT KNOW WHAT PERRONE'S CONDITION AT THE TIME OF THE TRIAL, PERRONE WAS "ALWAYS AN ASSSHOLE" .....VUCKOVICH DESCRIBED PERRONE'S BEHAVIOR DURING TRIAL AS "BUSINESS AS USUAL"

 JONATHAN C.  ROTH, 09/23/2021
(in part)...Roth has known Perrone since law school (over 9 years) and that Perrone has not changed....AND HE IS NOT AWARE THAT PERRONE SUFFERED ANY MENTAL OR PHYSICAL HEALTH CRISES. ROTH DOES NOT BELIEVE THAG ANY OF PERRONE'S DECISIONS OR ACTIONS PREJUDICED URAZ......URAZ'S ACTIONS, SPECIFICALLY HIS MEETINGS WITH UNDERCOVER OFFICERS, WERE VERY PREJUDICIAL TO HIMSELF. ROTH COULD NOT RECALL ANY DECISION MADE BY PERRONE THAT PREJUDICES THE DEFENSE OF URAZ.

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1726635763 [P 1/3]**

---

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/21/2023 8:52:29 PM EST,   Letter ID: 1726635763
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/21/2023 20:52:15

Please do not reply to this email

1) PER MCR 1.1, 3.3, 6.5 , 8.3 , 8.4

J. PERRONE, MS. CRINO, J. ROTH , C. T KOOP II , D SILVERTHORN, E. SCHROEDER, ELIZABETH ALLEN,
BILL CRINO, NICK FERNANDEZ
30th. Circuit Court
JUDGE CLINTON CANADY, JUDGE RICHARD GARCIA
KAHLA CRINO
SUSAN K. WALSH
ATTORNEY GRIEVANCE COMMISSION LARA
SCOA
STATE BAR OF MICHIGAN

THEY ALL   FAILED TO REPORT PERRONE'S MENTAL IMPAIRMENTS TO ATTORNEY GRIEVANCE
COMMISSION THIS IS WHY THEY SHOULD BE ALL  DISCIPLINED, SANCTIONS INCLUDING JUDGES WHO
IGNORED THIS INFORMATION AND THEY ARE  ALL BOUND  ETHICALLY TO REPORT. THEY SHOULD HAVE
REPORTED THIS MAJOR MISCONDUCT BY PERRONE TO AGC ASAP. THIS IS THE BASIS FOR  ALL THESE
GRIEVANCES.
JUDGES WHO KNEW ABOUT PERRONE'S MENTAL ISSUES AND CHOOSE NOT TO DO ANYTHING SHOULD
ALSO BE REPORTED TO.JUDICIAL TENURE COMMISSION.

ONLY ONE "UNKNOWN PERSON"  PERSON FROM INGHAM COUNTY PROSECUTOR'S OFFICE  REPORTED
THIS MISCONDUCT BY PERRONE
AND HE WANTED TO STAY ANONYMOUS FOR MOST LIKELY RETALIATION PURPOSES.
THAT UNKNOWN PERSON COULD BE ROTH ALSO BASED ON HIS INTERVIEW HE GAVE TO PRIVATE
INVESTIGATOR ON 09/23/2021
(in part) he has known Perrone since law school over 9 years, **[it was the same analogy used in the Grievance filed
on 12/11/2017 by this unknown person.

PER MCR 9.104 ANY ACTS OR OMISSION BY AN ATTORNEY, INDIVIDUALLY OR IN CONCERT  WITH
ANOTHER PERSON, IS MISCONDUCT AND GROUNDS FOR DISCIPLINE WHETHER OR NOT OCCURRING IN
THE COURSE OF ATTORNEY-CLIENT RELATIONSHIP.

OMISSION OF ANY QUESTIONS OR ANSWERS ASKED IS LYING

MALICE IS EQUATED WITH "RECKLESS DISREGARD OF THE RIGHTS OF ANOTHER, (ODOM V WAYNE
COUNTY 482 MICH 459 (2008)

ACCORDING TO ABA STANDARDS RESOLUTION 102.106(2015) UNREPORTED MENTAL IMPAIRMENT IS
CONSIDERED A MISCONDUCT.

REBUTTAL TO MR. ROTH'S BRIEF:

MR. ROTH IS COMMITTING A PERJURY HERE IS WHY:

1) MR. ROTH'S ANSWERS TO PRIVATE INVESTIGATOR JAMES D. HOPPE

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1726635763 [P 2/3]

---

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/21/2023 8:52:29 PM EST,   Letter ID: 1726635763
Location : MCF
Housing : UNIT 4100B01

ROTH'S INTERVIEW ON 09/23/2021 JAMES D. HOPPE "HE IS NOT AWARE THAT PERRONE SUFFERED ANY MENTAL OR PHYSICAL HEALTH CRISIS" (see attached report)

ROTH NOT DISCLOSING ATTACHMENT 2 OF HIS BRIEF IN HIS TESTIMONY

Attachments #9 by Mr. Roth ;  Is talking about Ms. Elizabeth Allen Prosecutor at Ingham County sent an emal to ROTH about Perrone being "PRT'ed past two weeks and was calling Bill from therez he had a hearing this week in Clinton County (11/30/2017)

If Perrone was released , she was thinking about someone "Boeve" to patrol Roth's house randomly, she thinks it's more serious.

DEC 2nd 2017 email to Ms. Allen

Roth: He is concerned about Perrone's harassing calls, if he is released or not?

LANSING POLICE REPORT WAS FILED ON 11/20/2017, AND YES IT WAS PRINTED ON 12/05/2017 HOWEVER SOMEONE FROM INGHAM COUNTY PROSECUTOR OFFICE PROBABLY REQUESTED IT THAT IS WHY IT WAS PRINTED ON 12/05/2017

THE HEARING WAS AT OAKLAND COUNTY ON 11/30/2017, NOT AT CLINTON COUNTY, (INITIAL ORDER AFTER HEARING ON PETITION FOR MENTAL HEALTH TREATMENT" WAS HELD ON RECORD AT OAKLAND COUNTY PROBATE COURT  AND THAN IT WAS FAXED TO CLINTON COUNTY ON 12/06/2017
(OC FAX SERVER STANDS FOR OAKLAND COUNTY)

PLEASE PAY ATTENTION TO CASE NUMBERS OAKLAND COUNTY IS : 17-29766-MI AND CLINTON COUNTY IS 2017-380,077-MI
 INTERESTINGLY MY ORIGINAL COPY THAT I HAVE FROM OAKLAND COUNTY DOES NOT HAVE FAX HEADING (see attached)

HOWEVER  OAKLAND COUNTY CASE NUMBER HAS LINE OVER IT AFTER IT WAS FAXED TO CLINTON COUNTY.

AND IT WAS FILED ON 12/06/2017 STAMP FROM CLINTON COUNTY
 (see attached)

HOWEVER THESE DOCUMENTS WERE NON EXISTENT TO MY SISTER WHEN SHE REQUESTED THEM.

SO FOR ROTH TO SAY, PRT WAS AVAILABLE ON 12/06/2017 IS NOT CORRECT BECAUSE IT WAS AVAILABLE AT OAKLAND COUNTY BY 11/30/2017 AND ROTH KNEW IT WAS FROM OAKLAND COUNTY NOT CLINTON. BECAUSE SOMEONE FROM PROSECUTOR'S OFFICE REQUESTED THOSE DOCUMENTS AND FOLLOWED UP ON "INITIAL ORDER FOR MENTAL HEALTH TREATMENT" FORM

SO I AM ASKING AGC TO INVESTIGATE WHY CLINTON COUNTY WOULD NOT LOCATE THE DOCUMENTS WITH CLINTON COUNTY CASE NUMBER.

ANOTHER COVER UP?

PERJURY BY CHARLES KOOP II:

ON 09/23/2021, MR. KOOP WAS INTERVIEWED BY PRIVATE INVESTIGATOR JAMES D. HOPPE,JDH CONSULTING SERVICES LLC. TROY MICHIGAN (586) 404 8354

---

**_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!**

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1726635763  [P 3/3]**

---

*You have received a* **jpay** *letter, the fastest way to get mail*

---

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 3/21/2023 8:52:29 PM EST,    Letter ID: 1726635763
Location : MCF
Housing :  UNIT 4100B01

(IN PART) KOOP WAS THE LEAD PROSECUTOR IN THE TRIAL, KOOP ADVISED THAT HE "HEARD" THAT PERRONE MAY HAVE HAD A MENTAL HEALTH ISSUE SOMETIME AFTER THE TRIAL BUT NOT BEFORE OR DURING THE TRIAL. KOOP DOES NOT REMEMBER ANY CHANGE IN PERRONE'S BEHAVIOR DURING THE TRIAL.

SO NO MENTION OF 12/18/2017 DISCLOSURE TO DUANE SILVERTHORN ABOUT PERRONE'S MENTAL IMPAIRMENT, PRT FORM, LANSING POLICE REPORT DATED 11/20/2017 AND OAKLAND/CLINTON COUNTY PROBATE COURT DECISION ON 11/30/2017

HERE IS HIS TESTIMONY ON 10/04/2021 AT GINTHER HEARING
PG. 55
WALSH : DID YOU NOTICE ANY CHANGES DURING THE TRIAL IN MR. PERRONE'S CONDITION OR ABILITY TO HANDLE THE TRIAL?/
KOOP: NOT DURING THE PENDENCY OF THE TRIAL, NO

PG: 56
WALSH: DID YOU NOTICE THAT HE WAS DISTRACTED OR FATIGUED OR ANYTHING LIKE THAT
KOOP : I DID NOT NOTICE THAT

***LINE 11
Walsh : okay, Is there anything else that you think that the court should know about things that might have happened behind the scenes that would help the court in making this determination as whether Mr. Uraz had effective assistance of counsel

KOOP: NOT THAT I AM AWARE OF, NO

NO QUESTIONS ASKED BY MS. CRINO TO MR. KOOP.

MR. KOOP CONVENIENTLY FORGOT TO MENTION HIS MESSAGE TO SILVERTHORN DATED 12/18/2017 ABOUT APPOINTING HIM AS A SENTENCING COUNSEL "OUT OF ABUNDANCE OF CAUTION" ALONG WITH ATTACHED POLICE REPORT AND PRT REPORT 11/20/2017
AND OAKLAND/CLINTON COUNTY PROBATE COURT RECORDS 11/30/2017

SO I AM ASKING AGC TO FIND OUT HOW AND WHEN  DID INGHAM COUNTY PROSECUTOR'S OFFICE FOUND OUT ABOUT PERRONE'S MENTAL ISSUES?

AND HOW DID PROSECUTORS' OFFICE RETRIEVED THOSE DOCUMENTS SENT TO SILVERTHORN ON 12/18/2017?

THEY HAD REST OF THE DOCS FROM OAKLAND COUNTY PROBATE COURT BUT THEY ONLY CHOOSE TO SHARE PORTION OF IT (11/20/2017) SECOND MENTAL IMPAIRMENT OF PERRONE.

---

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1726635746  [P 1/2]**

---

*You have received a* **jpay** *letter, the fastest way to get mail*

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/21/2023 8:52:28 PM EST,   Letter ID: 1726635746
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/21/2023 20:52:13

Please do not reply to this email

2) PER MCR 1.1, 3.3,6.5, 8.3 , 8.4

KOOP continue

MR. KOOP ALSO BECAME A WITNESS IN MY TRIAL BY ACCEPTING TO SEE A LETTER WRITTEN TO COMPLAINANT ALLEGEDLY BY ME.

I FILED GRIEVANCE AGAINST MR. CHRISTOPHER BERGSTROM (MY RETAINED ATTORNEY FOR MY FIRST STALKING CHARGE IN EARLY 2016 WHERE I ACCEPTED A PLEA DEAL AND REMANDED MYSELF TO JAIL TO START MY PRESUMED JAIL SENTENCE EARLY.

MR. BERGSTROM VIOLATED ATTORNEY CLIENT PRIVILEGE BY TESTIFYING AGAINST ME AT MY TRIAL. I GRIEVED HIM WITH AGC IN 2018 AND YOUR ORGANIZATION DID NOT FIND ANY WRONG DOING.

MR. BERGSTROM SHOWED THIS LETTER TO KOOP AND WHEN I WAS CHARGED WITH SECOND STALKING SO KOOP BECAME A WITNESS IN MY TRIAL( SEE 11/02/2016  #16-0534-FH pg.4 lines 1-25 sentencing transcript).

I WAS ORIGINALLY SCHEDULED TO BE SENTENCED ON 10/19/2016 BUT KOOP POSTPONED IT SO THAT JAILHOUSE INFORMANTS CAN GATHER MORE FABRICATED EVIDENCE AGAINST ME.

HIS AFFIDAVIT FOR SEARCH WARRANT SIGNED BY MAGISTRATE WAS FULL FALSE INFERENCES AND INFORMATION PERJURED TESTIMONY.

WHICH MAKES KOOP A MALICIOUS PROSECUTOR.

I BELIEVE HE HAD A RELATIONSHIP WITH THE VICTIM AS WELL, THIS IS WHY HE TOOK THIS CASE TO THE HEART AND FALSIFIED, LIED, ALTERED EVIDENCE TO CONVICT ME.

see my sentencing transcript 01/24/2018 page 4. your e-mail messages between with complainant MELKE and you, I have them.

I CAN PROVIDE EVIDENCE TO AGC IF AGC WANTS TO FOLLOW UP WITH THESE ACCUSATIONS.

PER MPCR 1.1, 6.5, 8.3, 8.4, NONE OF THE INGHAM COUNTY PROSECUTORS, STAFF, JUDGES; EXCEPT ONE PROSECUTOR TOOK THIS MATTER SERIOUSLY AND I DO NOT KNOW HIS/HER NAME BECAUSE HE/SHE WANTED TO STAY ANONYMOUS BECAUSE OF THE RETALIATION HE/SHE MAY RECEIVE FROM JACOB A. PERRONE.
(please ask Ms. Kahla Crino to send you a copy of her response to AGC.

AGC'S AND INGHAM COUNTY'S (JUDGES, PROSECUTORS AND OTHERS) THEIR  COMPLACENCY TO THIS IMPORTANT MISCONDUCT BY PERRONE IS APPALLING.
ESPECIALLY  PROSECUTORS  MS.CRINO'S,  ROTH'S,  KOOP'S    NONCHALANT,  LACKADAISICAL ATTITUDE/APPROACH TO THIS SERIOUS MATTER IS NOT ACCEPTABLE.

THIS IS MAJOR BRADY VIOLATION AND ETHICS VIOLATION

THE PROSECUTOR'S WHO TESTIFIED UNDER OATH AT GINTHER HEARING FAILED TO DISCLOSE

---

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1726635746  [P 2/2]**

You have received a *jpay* letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/21/2023 8:52:28 PM EST,    Letter ID: 1726635746
Location : MCF
Housing : UNIT 4100B01

PERRONE'S "SECOND MENTAL IMPAIRMENT" (11/20/2017)
AND MANAGED TO HIDE HIS "FIRST MENTAL IMPAIRMENT" ON (3 DAYS AFTER MY TRIAL) 11/13/2017.

FACT : PERRONE WAS HIDING HIS FIRST MENTAL IMPAIRMENT EPISODE,

ROTH, SCHROEDER, FERNANDEZ, KOOP, SILVERTHORN
ALL COMMITTED PERJURY BASED ON CONCEALING INFORMATION FROM DEFENDANT AND HIS APPEAL
ATTORNEY. THEY DID NOT DIVULGE ANY INFORMATION OR SPEAK TRUTHFULLY TO PRIVATE
INVESTIGATOR AND DID NOT TESTIFY FACTS UNDER OATH AT BOTH GINTHER HEARINGS ABOUT
PERRONE'S EXTEND OF MENTAL IMPAIRMENT EPISODES (FIRST ONE AND SECOND ONE)

MRPC 8.3(a) REPORTING PROFESSIONAL MISCONDUCT

(a) A LAWYER HAVING A KNOWLEDGE THAT ANOTHER LAWYER HAS COMMITTED A SIGNIFICANT
VIOLATIONS OF THE RULES OF PROFESSIONAL CONDUCT THAT RAISES A SUBSTANTIAL QUESTION AS
TO THAT LAWYER'S HONESTY, TRUSTWORTHINESS, OR FITNESS AS A LAWYER SHALL INFORM THE AGC

UNFORTUNATELY THIS "COMPLACENCY BY AGC, JUDGES, PROSECUTORS, ATTORNEYS WHO HAD
KNOWLEDGE OF PERRONE'S MENTAL ISSUES AND CHOOSE NOT TO REPORT/FILE GRIEVANCE, TURN A
BLIND EYE,  TAKE ANY ACTION TO THIS ALARMING SHOULD BE DISQUALIFIED FOR THEIR MAJOR
EXPLICIT MISCONDUCT.

PERRONE DID NOT GO TO DALLAS PER HIS TESTIMONY AT HIS GINTHER HEARING ON 10/04/2021 see
hearing transcript pg 35

HERE IS THE PROOF THAT PERRONE  WAS LYING UNDER OATH; penalty for perjury at his Ginther hearing

See ERIC SCHROEDER'S RESPONSE TO AGC #(22-2094) ON 02/06/2023 pg 2 paragraphs  1 and 2
that Perrone went to Sparrow hospital in August 2017 before trial with anxiety

 in part..I LEARNED FROM PERRONE'S FAMILY THAT OVER THE WEEKEND THAT PERRONE HAD
EXPERIENCED A MENTAL HEALTH EPISODE. HE WAS HOSPITALIZED FOR 3 DAYS AND RELEASED THAT
FRIDAY". (between 11/10/17-11/17/17 and 11/20/2017- 11/30/2017)

PLEASE SEE: GRIEVANCE ADMINISTRATION V FIEGER 476 MICH 231 (2006) MI SUPREME COURT
HN33 (IN PART) ...A JUDGE IS OBLIGATED TO INFORM THE ATTORNEY GRIEVANCE COMMISSION ON
ATTORNEY'S PERCEIVED MISCONDUCT ; TO FAIL TO DO SO IS TO VIOLATE ON EXPLICIT ETHICS RULE....A
JUDGE MUST EITHER TURN A BLIND EYE TO ATTORNEY MISCONDUCT OR RISK DISQUALIFICATION. THIS
CANNOT BE. ON THE CONTRARY, A JUDGE WHO MEETS HIS OR HER ETHICAL OBLIGATION TO REPORT
ATTORNEY'S MISCONDUCT IS NOT THEREBY ASSUMED TO BE BIASED OR UNABLE TO REVIEW
IMPARTIALLY CASES THAT CAME BEFORE HIM OR HER...

DEFENDANT HAD TO FILE GRIEVANCES AGAINST JACOB PERRONE,  CRINO, ROTH, KOOP, ERIC
SCHROEDER, DUANE SILVERTHORN
BECAUSE THEY WOULDN'T TELL THE TRUTH UNDER OATH DURING GINTHER HEARINGS ON RECORD AND
TO P/I HIRED BY SUSAN WALSH.
THEY ALL CHOSE TO LIE ABOUT PERRONE'S MENTAL ILLNESS.

I DID NOT HAVE  "A FAIR TRIAL DEFENDED BY CONSTITUTIONALLY COMPETENT TRIAL COUNSEL"

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 4/3/2023 11:11:59 PM EST,   Letter ID: 1736473056
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 04/03/2023 23:12:06

Please do not reply to this email

PERJURED TESTIMONY ANALYSIS

PROSECUTOR PRESENTED FALSE TESTIMONY, DEFENDANT WAS DENIED HIS RIGHT TO DUE PROCESS
WHERE THE PROSECUTION'S WITNESS' TESTIFIED PURSUANT TO AN AGREEMENT THAT REQUIRED HIS
TRUTHFUL TESTIMONY AND PROSECUTOR FAILED TO FULFILL HER/HIS CONSTITUTIONAL OBLIGATION
TO REPORT THE WITNESS' PERJURY TO DEFENDANT AND THE TRIAL COURT WHEN SHE/HE DETERMINED
THAT THEY (JAILHOUSE INFORMANTS, THEREBY DISQUALIFYING THEM FROM THE GRANT OF IMMUNITY
AND PROSECUTOR WITNESSES BEFORE AND DURING TRIAL)

AS FOR DEFENDANT'S GINTHER HEARINGS   (ATTORNEYS, PROSECUTORS WHO TESTIFIED; LIED UNDER
OATH). AND MS. KAHLA CRINO DID NOT CORRECT THEM.

PROSECUTOR VIOLATED TO REPORT
A PROSECUTOR'S USE OF FALSE TESTIMONY IS A VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS
PEOPLE V BROWN, 506 MICH 440 (2020). DUE PROCESS VIOLATING IS CONSTITUTIONAL QUESTION THAT
IS REVIEWED DE NOVO, PEOPLE V SMITH 498 MICH 466 (2015).

A TRIAL COURT "MAY ORDER A NEW TRIAL ON ANY GROUND THAT WOULD SUPPORT APPELLATE
REVERSAL THE CONVICTION OR BECAUSE IT BELIEVES THAT THE VERDICT HAS RESULTED IN A
MISCARRIAGE OF JUSTICE; MCR 6.431(B),

THIS COURT REVIEWS A TRIAL COURT'S DECISION WHETHER TO GRANT A NEW TRIAL FOR AN ABUSE OF
DISCRETION. PEOPLE V JONES 236 MICH APP 396 (1999)
A TRIAL COURT ABUSES ITS DISCRETION WHEN IT SELECTS AN OUTCOME THAT FALLA OUTSIDE THE
RANGE OF REASONABLE OUTCOMES. PEOPLE V ROGERS 335 MICH APP 172 (2020).
A PROSECUTION HAS AN AFFIRMATIVE DUTY TO CORRECT FALSE TESTIMONY WHEN IT ARISES, THE
BLAMEWORTHINESS OF THE PROSECUTOR IS IRRELEVANT SMITH 498 MICH AT 476. THE CRUCIAL
INQUIRY FOR DUE PROCESS PURPOSES IS THE "EFFECT OF A PROSECUTOR'S FAILURE TO CORRECT
FALSE TESTIMONY "AND NOT EVERY CONTRADICTION OR EVERY INSTANCE OF MISTAKEN OR
INACCURATE TESTIMONY COULD IN ANY REASONABLE LIKELY HOOD HAVE AFFECTED THE JUDGEMENT
OF THE JURY (CLEANED UP) IN SMITH 498 MICH AT 477,
GIGLIO V US 405 US 150 (1972)
NAPUE V ILLINOIS 360 US 264 (1959)
REQUIRES PROSECUTION TO TELL COURT THAT WITNESS IS LYING, MISLEADING.

THE GOVERNMENT'S OBLIGATION TO CORRECT THAT THE STATEMENT IS COMPELLING AS IT IS A
SITUATION WHERE THE GOVERNMENT KNOWS THAT THE WITNESS IS INTENTIONALLY COMMITTING
PERJURY. US V HARRIS 498 F2d 1164, 1169 (CA 3 1974)

THIS CASE IS SAME AS OTHER CASE WHICH A PROSECUTION PRESENTED PERJURED TESTIMONY. IN
SMITH, THE PROSECUTION DID NOT CORRECT A WITNESS'S TESTIMONY THAT HE HAD NOT RECEIVED
ANY COMPENSATION FOR INFORMATION CENTRAL TO THE DEFENDANT'S PROSECUTION SMITH 498 MICH
AT 478.
THE PROSECUTOR WAS AWARE THAT AN OFFICER GIVEN A PRETRIAL TESTIMONY THAT THE WITNESS
HAD BEEN COMPENSATED. AT TRIAL HOWEVER THE PROSECUTOR CAREFULLY LIMITED QUESTIONING
OF THE WITNESS AND NEVER SOUGHT TO CLARIFY THAT THE WITNESS HAD BEEN COMPENSATED FOR
HIS COOPERATION. MOREOVER THE PROSECUTION CAPITALIZED ON AND EXPLOITED THE WITNESS'S
FALSE TESTIMONY IN HER CLOSING ARGUMENT ID AT 480.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a *jpay* letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 4/3/2023 11:12:01 PM EST,   Letter ID: 1736473071
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 04/03/2023 23:12:07

Please do not reply to this email

CONFLICT OF INTEREST, CONFLICT - FREE  ATTORNEY

COURT APPEALS DID NOT ANSWER "CONFLICT -FREE" ATTORNEY QUESTION ON THE SUPPLEMENTAL STANDARD 4 BRIEF SUBMITTED ON 11/17/2022 (SIXTH AMEND. VIOLATION)

case precedent ;

Downs v Commonwealth, 2020 Ky. Lexis 222
Supreme Court of Kentucky , 07/09/2020
(see attached)

MRPC 1.7(b) A LAWYER SHALL NOT REPRESENT A CLIENT IF THE REPRESENTATION OF THAT CLIENT MAYBE MATERIALLY LIMITED BY THE LAWYER'S RESPONSIBILITY TO ANOTHER CLIENT OR TO A THIRD PERSON OR:
"BY THE LAWYER'S OWN INTEREST".
UNLESS
1) The lawyer reasonably believe's the representation will not be adversely affected and
2) the client consents AFTER CONSULTATION. (did not happen)


DEFENDANT'S SIXTH AMENDMENT RIGHTS WERE VIOLATED WHEN HE  DID NOT HAVE "CONFLICT- FREE" ATTORNEY REPRESENTATION TO REPRESENT HIS INTEREST  DURING JUDGE'S (CLINTON CANADY III) IN CHAMBERS HEARING (12/12/2017)  WITH JACOB PERRONE, ERIC SCHROEDER, NICHOLAS FERNANDEZ, PROSECUTORS THEN
JONATHAN C. ROTH, CHARLES T. KOOP II,

DEFENDANT WAS  DEPRIVED OF HIS  RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (12/12/2017, JUDGES IN-CHAMBERS MEETING) WHEN  (PERRONE) WAS PLACED IN THE  UNTENABLE POSITION OF DEFENDING  HIS OWN INTERESTS  WHICH WERE  ADVERSE TO HIS CLIENT'S.

ON 12/13/2017 IN THE COURT WHEN DEFENDANT WAS TOLD THAT PERRONE WOULD BE DROPPED AND DUANE SILVERTHORN WOULD BE APPOINTED (12/14/2017)  TO SENTENCING ONLY. PERRONE WOULD "HELP" SILVERTHORN...AGAIN DEFENDANT DID NOT HAVE A CONFLICT-FREE ATTORNEY TO REPRESENT HIS INTEREST/RIGHTS IN THIS HEARING, SILVERTHORN CAME IN LAST MINUTES OF THE HEARING TO ACCEPT THE APPOINTMENT AS A COUNSEL FOR SENTENCING

PERRONE  SHOULD/COULD  NOT  HAVE  BEEN  EVEN  ALLOWED/ABLE  TO  "HELP"  (he  didn't)   Duane SILVERTHORN with sentencing as COA put it on its decision on 01/19/2023;   DEFENDANT could not have "ACQUIESCED" to courts' decision for Perrone to help newly appointed sentencing attorney with sentencing, because; defendant did not have a "CONFLICT-FREE" ATTORNEY to represent his interests during both hearings. (12/12/2017, 12/13/2017)


STANDARD OF REVIEW

JUDGE'S ABUSE OF DISCRETION IS REVIEWED DE NOVO.

FACTS AND TIME TIME -LINE

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1736473071  [P 2/3]

---

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 4/3/2023 11:12:01 PM EST,   Letter ID: 1736473071
Location : MCF
Housing : UNIT 4100B01

DEFENDANT WAS FOUND GUILTY ON (JOINT TRIAL) 11/09/2017 TO 3 COUNTS OF SOLICITATION TO MURDER (MCL 750.157b(2) AND 1 COUNT OF AGGRAVATING STALKING 750.411i.
HIS SENTENCING DAY WAS ORIGINALLY SCHEDULED FOR 12/20/2017 HOWEVER, IT WAS SWITCHED TO ANOTHER ATTORNEY (DUANE SILVERTHORN) BY JUDGE ON 12/14/2017; DUE TRIAL ATTORNEY'S MENTAL IMPAIRMENT ISSUES. DEFENDANT WAS NOT AWARE OF PERRONE'S  EXTENSIVE MENTAL ISSUES GOING BACK TO 2015 UNTIL AFTER GINTHER HEARINGS.

COURT OF APPEALS GRANTED GINTHER HEARING ON 03/06/2020 ONLY BASED ON  ATTORNEY JACOB A. PERRONE INEXPLICABLE E-MAIL MESSAGE WHICH WAS SENT TO DEFENDANT'S FAMILY ON 11/08/2017 A DAY BEFORE TRIAL ENDED.

PROBATE COURT DOCUMENTS RELATED TO PERRONE WERE OBTAINED BY DEFENDANTS FAMILY BASED ON  JONATHAN C. ROTH' S  TESTIMONY ON 04/13/2022 Ginther Hearing transcript pg 20-21

Prosecutor Crino : ...now sometime after jury's verdict, you have indicated that you were informed that Mr. Perrone had some type of episode how is it that you were informed of that?

Roth: By the way of an e-mail, it was December 2nd., 2017, I received and an e-mail indicating that he had has what we refer as PRT proceedings, I think in Oakland County, and that's the extended of detail that I know."
(MCL 330.1401(a)(b)(c)).

AFTER THE HEARING TESTIMONY OF ROTH ; DEFENDANT'S FAMILY REQUESTED PROSECUTOR FILE IN MAY 2022, AFTER RECEIVING PACKET, DEFENDANT DISCOVERED THAT ON 12/18/2017 PROSECUTOR THEN CHARLES KOOP II SENT TO DUANE SILVERTHORN; "LIMITED" "SOME"  PROBATE COURT RECORDS RELATED TO PERRONE'S ONLY "SECOND" MENTAL EPISODE, LANSING POLICE REPORT AND PERSON REQUIRING TREATMENT (PRT) FORM, "INITIAL ORDER AFTER HEARING ON PETITION FOR MENTAL HEALTH TREATMENT" (form PCM 214)   Signed by judge Linda Hallmark on 11/30/2017.

ALL THESE DOCUMENTS WERE NOT MADE PART OF DEFENDANT'S SENTENCING MEMORANDUM (see attached) by Duane SILVERTHORN
(MR. SILVERTHORN HAS BEEN GRIEVED TO AGC IN NOVEMBER 2022)(see attached)

THE REST OF THE PROBATE COURT RECORDS INCLUDING PERRONE'S "FIRST MENTAL EPISODE" (OAKLAND AND CLINTON COUNTY PROBATE COURT RECORDS, LANSING POLICE REPORT) WERE ALL KEPT HIDDEN, NOT DISCLOSED TO DEFENDANT AND HIS APPEAL ATTORNEY BEFORE DEFENDANT'S APPEAL FILED IN 2019 AND BEFORE HIS GINTHER HEARINGS IN 10/04/2021 AND 04/13/2022.

CASE PRECEDENTS :

IN ORDER TO ESTABLISH THAT DEFENSE COUNSEL PROVIDED INEFFECTIVE ON THE BASIS OF A CONFLICT OF INTEREST, DEFENDANT MUST SHOW THAT AN ACTUAL CONFLICT OF INTEREST NEGATIVELY IMPACTED HIS ATTORNEYS PERFORMANCE. PEOPLE V SMITH, 456 MICH 543 (1998) MICHIGAN SUPREME COURT.

IN ORDER TO DEMONSTRATE THAT A CONFLICT OF INTEREST HAS VIOLATED DEFENDANT'S SIXTH AMEND. RIGHTS; A DEFENDANT MUST ESTABLISH THAT ACTUAL CONFLICT OF INTEREST ADVERSELY AFFECTED HIS LAWYER'S PERFORMANCE; WHICH CALLS FOR
A HEIGHTENED STANDARD IN CONFLICT OF INTEREST CLAIMS BECAUSE "IT IS DIFFICULT TO MEASURE THE PRECISE EFFECT ON THE DEFENSE OF REPRESENTATION CORRUPTED BY CONFLICTING INTERESTS. THIS HEIGHTENED STANDARD IS NOT A RULE OF PREJUDICE PER SE RATHER (P)REJUDICE IS PRESUMED ONLY IF THE DEFENDANT DEMONSTRATES THAT COUNSEL ACTIVELY REPRESENTED CONFLICTING INTERESTS AND THAT AN ACTUAL CONFLICT OF INTEREST ADVERSELY AFFECTED HIS LAWYER'S PERFORMANCE ID AT 557.(CUYLER V SULLIVAN 446 US 335 (1980) U.S. SUPREME COURT)

Missing Attorney per MCR 6.505(A)

**_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!**

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1736473071 [P 3/3]**

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 4/3/2023 11:12:01 PM EST,    Letter ID: 1736473071
Location : MCF
Housing : UNIT 4100B01

IN PEOPLE V PAGE 2001 MICH LEXIS 833 (2001) MICHIGAN SUPREME COURT

IN People v EVANS 2023 MICH APP 2151 (2023) INGHAM COUNTY 30th Cir. Ct.

The circuit court record shows that the judge heard oral argument by the prosecution on the defendant's motion for relief from judgement but he did NOT APPOINT A COUNSEL TO REPRESENT DEFENDANT AT THAT HEARING AS REQUIRED BY MCR. 6.505(A). Both cases were ordered to appoint counsel.

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1711460206  [P 1/2]

You have received a *jpay* letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  3/1/2023 11:19:26 PM EST,    Letter ID: 1711460206
Location : MCF
Housing :  UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/01/2023 23:19:25

Please do not reply to this email

"ACQUIESCED" STANDARD used BY COURT OF APPEALS BRIEF ON 01/19/2023 under (A) COUNSEL'S
ILLNESS pg 9-10)

ACQUIESCE (V) ; TO CONSENT OR COMPLY PASSIVELY OR WITHOUT PROTEST,
(user note; when acquisence takes a preposition, it is usually used in (acquiesced in the ruling) but sometimes with to
(acquiesced to her parents wishes). "Acquiesced with is obsolete"
ACQUIESCENCE (NOUN) 1) PASSIVE ASSENT OR AGREEMENT WITHOUT PROTEST.
ACQUIESCENT (ADJ) DISPOSED OR WILLING TO ACQUIESCENCE ; ADV (ACQUIESCENTLY)
American Heritage College dictionary, third edition) (1997)

ON 12/13/2017 HEARING THAT DEFENDANT HAD AT 30th. CIRCUIT COURT, JUDGE APPOINTED MR. DUANE
SILVERTHORN TO REPRESENT MR. URAZ FOR HIS SENTENCING ONLY COMMING UP ON 01/24/2018.

DURING THAT HEARING DEFENDANT URAZ DID NOT HAVE "CONFLICT- FREE" ATTORNEY TO REPRESENT
HIS INTEREST. (SEE HEARING FOOTAGE HE WAS SITTING ALONE, SILVERTHORN CAME LAST MINUTE
BEFORE HEARING ENDED).

FOR DEFENDANT TO MAKE AN ACQUIESCED/ACQUIESCENT DECISION ABOUT ANOTHER ATTORNEY WHO
IS GOING REPRESENT MR. URAZ FOR HIS SENTENCING IS ABSURD BECAUSE A NEW ATTORNEY WOULD
NOT KNOW WHAT HAPPENED DURING TRIAL.
IN FACT MR. SILVERTHORN'S ASSISTANT REQUESTED DISCOVERY (current and future) PACKAGES FROM
PROSECUTOR'S OFFICE ON 01/09/2018 AND THE REPONSE FROM PROSECUTOR'S OFFICE ON 01/10/2018
WAS : "THE PREVIOUS DA ON THIS CASE, JACOB PERRONE, HAS ALREADY RECEIVED DISCOVERY IN THIS
MATTER, PLEASE CONTACT HIS OFFICE IN ORDER TO RECEIVE DISCOVERY" (see attached)

PROSECUTOR'S OFFICE DIRECTED TO CONTACT PERRONE FOR DISCOVERY PACKAGES FOR
DEFENDANT'S CASE. PERRONE ALREADY WAS DROPPED FROM ALL THE CASES IN THE COUNTY PER HIS
MENTAL ISSUES (SEE 12/12/2017, JUDGE'S CHAMBERS MEETING AND 12/11/2017 UNKNOWN PROSECUTOR
WHO FILED GRIEVANCE FILED AGAINST PERRONE) AND PERRONE WAS ON A COURT ORDERED
11/30/2017 MENTAL HEALTH TREATMENT FOR 80 DAYS.


FOR HIS SENTENCING ATTORNEYS' SUBSTANDARD REPRESENTATION OF MR. URAZ (he kept repeating he
was not at trial, he didn't know, this proves he didn't get any "help" from anyone yet alone discovery packages from
anyone)  AND PROSECUTION NOT PROVIDING ANY "HELP" WHICH WAS OFFERED BY PROSECUTOR KOOP
ON 12/13/2017 IS ALONE INEFFECTIVE ASSISTANCE OF COUNSEL BY ITSELF.

SEE SILVERTHORNS' TESTIMONY ON 10/04/2021 AND HIS EXPLANATIONS TO PRIVATE INVESTIGATOR IN
SEPTEMBER 2021, PERRONE WAS IN NO SHAPE TO "HELP, ASSIST" YET ALONE PROVIDE ANY DISCOVERY
MATERIALS BEFORE SENTENCING TO PERRONE.

DEFENDANT ONLY "ACKNOWLEDGED" WHAT JUDGE ORDERED ON 12/13/2017, HE HAD TO "ACQUIESCE"
BECAUSE HE HAD NO CONFLICT-FREE REPRESENTATION ON 12/12/2017 AND 12/13/2017 TO REPRESENT
AND/OR GIVE HIM ADVICE.

DEFENDANT DEPRIVED OF HIS RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE
PROCEEDINGS (12/12/2017, JUDGES IN-CHAMBERS MEETING) WHEN HIS COUNSEL (PERRONE) WAS
PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1711460206  [P 2/2]

You have received a **JPay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/1/2023 11:19:26 PM EST,   Letter ID: 1711460206
Location : MCF
Housing : UNIT 4100B01

HIS CLIENTS?

ii)WAS DEFENDANT DEPRIVED AN "CONFLICT-FREE" ATTORNEY ON 12/13/2017 IN COURT HEARING, CRITICAL STAGE FOR  SIXTH AMENDMENT PURPOSES INCLUDES CIRCUMSTANCES IN WHICH ACCUSED MUST FIND HIMSELF CONFRONTED JUST AS AT TRIAL, BY THE PROCEDURAL SYSTEM, OR BY HIS EXPERT ADVERSARY, OR BY BOTH?

**Duane Silverthorn**

To:
Subject:                    Tunc Uraz as to Duane Silverthorn, AGC File 22-2095
Attachments:            URAZ COURT RECORD.pdf


Cynthia C. Bullington
Assistant Deputy Administrator
Attorney Grievance Commission


RE: Tunc Uraz as to Duane Silverthorn
     AGC File No. 22-2095


Ms. Bullington:

Attached is printout of the Circuit Court Record for Mr. Uraz in Ingham County Circuit Court File 16-001064-FH. There is a companion File No. 16-001065-FH that has essentially identical entries as both cases tracked along with each other and were tried at the same time. So, to avoid unnecessary redundancy, only File 1064 is attached. Any remaining documents which I might have attached are already provided by Mr. Uraz in his complaint.

I have attached the circuit court record to illustrate the incredibly extensive history contained in the underlying cases that form the basis for Mr. Uraz's grievance against me (and, others). The history reflects that this is the proverbial case in which no stone was left unturned – prior to trial, during trial and then later during the very lengthy the appellate process. Mr. Uraz now had resorted to the attorney grievance process as the appellate process has not afforded him the relief he seeks.

It is correct that I was appointed to take over Mr. Uraz's cases on or about December 14, 2017. It is also correct that I was appointed at the request of the prosecutor following a December 12, 2017 meeting between the prosecutor, Mr. Uraz's trial counsel, Jacob Perrone and Judge Clinton Canady III, who conducted the trial. I was not present for that meeting. However, I understand that all persons present at the meeting concluded that Mr. Perrone could continue to represent Mr. Uraz through sentencing. The purpose for the meeting was to discuss Mr. Perrone's being petitioned to Ingham County Probate Court in November 2017 for mental health treatment by Lansing Police Officer Robert McBride. The petition was filed due to an incident witnessed by Officer McBride on November 20, 2017. The incident is summarized in Lansing Police Report #1751906153 submitted to the AGC by Mr. Uraz. All persons present at the December 12th meeting were aware of the petition as that was the *raison d'etre* for even having the meeting. It was the petition for mental health treatment and not any pre-trial or during trial concerns regarding Mr. Perrone's performance that caused the prosecutor to then request that Judge Canady appoint replacement counsel – "out of an abundance of caution".

When I first got the case, I met in my office with Mr. Perrone for the first and only time. This would have been in late December 2017. It was during this meeting that I made my personal observations of Mr. Perrone which later formed the basis for my testimony during Mr. Perrone's *Ginther* hearing. During the meeting, Mr. Perrone was candid with me about the petition for mental health treatment. He was also able to very well describe all of the pretrial and trial motions, strategy, etc., during his

1

handling of the case. I believe I met with Mr. Uraz some days later. At that initial meeting, it was not me, but Mr. Uraz who raised the subject of Mr. Perrone's petition for mental health treatment. Mr. Uraz was very animated as he believed that he had been convicted because of negligence on the part of Mr. Perrone. I advised Mr. Uraz that mental illness alone would not necessarily raise the need for a new trial. More specifically, I indicated that there must be some correlation between an attorneys' mental illness that causes a failure to competently represent the client. Such correlation could then either borne out or ruled out by an examination of the record.

Generally, I believe that process is what has occurred in Mr. Uraz's case. Unfortunately for him, the process has not provided him the relief sought.

More specifically, I think that Mr. Uraz is making the claim that I willfully failed to inform him, Judge Canady and Mr. Uraz's appellate investigator and appellate counsel of a mental health petition filed several weeks following the end of a trial that ended in November 2017.

I believe that the easiest was to do so is to answer the specific numerical allegations of Mr. Uraz's complaint as itemized by subparagraphs in allegation #7. The answers appear in reverse order from 6 back to 1 as I believe that truth of why this grievance has been filed appears in the final question concerning a conspiracy (in effect).

Question and my Response:

#7.6 "Are you part of this purposeful cover-up by Ingham County court (sic), Judges, prosecutors about Perrone's mental impairments?

> No. I worked ethically for Mr. Uraz. I did not submit a copy of the petition for mental health treatment in my lengthy submission of documents (also, a copy of which is provided by this grievance) for sentencing as Judge Canady was already well aware of the filing. As I have already written in this response, the fact of the petition was actually the sole reason the case was transferred to me from Mr. Perrone. It had already been considered by the judge. Perhaps if the petition for mental health treatment had been filed *prior to trial* rather than *several weeks following the conclusion of trial* Mr. Perrone's competency to conduct a trial would have been an issue. As it was, both the trial court and apparently, appellate courts have concluded that Mr. Uraz had received a fair trial and is convictions have been upheld.

#7.5 "Why didn't you testify about his (12/18/2017) docs at (sic) ginther hearing on 10/04/2021?"

> I didn't testify about the documents because I was not asked the question. The appellate attorney is entitled to be provided the same discovery as I am. I was not going to question the appellate attorney's strategy. Perhaps the strategy (correctly so) was to try to tie defects in representation by Mr. Perrone during pre-trial and trial motion to his mental capacity. If that were the case, then it would require personal testimony from persons capable of providing such testimony. I was not that person. I could only testify that in my meeting with Mr. Perrone more than a month following trial – he behaved oddly. I testified to that. Mr. Uraz certainly must have informed his appellate counsel of the petition for mental health treatment. If appellate counsel had asked me about the petition I would have testified that I was aware of it as was Mr. Uraz and that's why I was appointed. If the appellate counsel had gone further and asked my opinion as to whether Mr. Perrone's mental condition during the trial affected either his performance at trial or the outcome of the trial, I would have truthfully testified that I had no idea as I was not present at the trial.

2

#7.4   "Did you purposely hold back the (12/18/17) documents to be part of your sentencing memorandum?"

I did not file a sentencing memorandum. I filed a letter transmitting numerous documents Mr. Uraz and his family had provided me that Mr. Uraz I wished for the court to consider. I made corrections to the report, reviewed Sentencing Guidelines scoring and allocuted on behalf of Mr. Uraz orally on the record in open court. The court was already aware of the petition for mental health services. AGAIN – THAT'S WHY I WAS APPOINTED. Finally, I strongly resent the implication throughout Mr. Uraz's grievance that I purposely or intentionally withheld information from the court as part of a conspiracy to have him convicted. Neither Mr. Uraz nor his case would cause me to commit an unethical act that cause me to lose my license to practice law.

#7.3   "Did Ms. Walsh requested (sic) any discovery packages about my case?"

I remember speaking with Ms. Walsh, but do not remember what we spoke about other than my personal observations of Mr. Perrone. However, this would not be unusual for an appellate attorney to only discuss matters such as personal observations or work product. Unlike discovery and court documents those things cannot be obtained by an appellate attorney's request to the prosecutor.

#7.2   "Why did Mr. Silverthorn did not did not share this (12/17/202017) documents with me and my appeal attorney, Susan Walsh?"

I don't know that I didn't share the documents with Mr. Uraz. My practice is to provide documents to clients. I will state unequivocally, however, that Mr. Uraz was very well aware of the petition for mental health treatment as that was nearly the sole topic of our first and subsequent conversations. Finally, I would have NEVER knowingly failed to disclose an important document to an appellate attorney or investigator – even though I know that such person can obtain such document themselves, with or without my assistance. I have no recollection of Susan Walsh asking about such documents. If she had, I would have either sent them (if accessible as the paper file was in archives) or told her about them  I probably assumed she was aware – because Mr. Uraz was aware.

#7.1   "Why did Mr. Silverthorn neglected (sic) to share this vital 12/18/2017 documents with courts (sic) during my sentencing?

I believe that this has already been answered. The petition for mental health treatment was the reason I was appointed by Judge Canady. He was already aware of the document. I was not present for the entire *Ginther* hearing. I am not aware of the arguments made in Mr. Uraz's appeal. I am not an appellate attorney, however, I am aware that the Court of Appeals receives all transcripts for hearings on any contested matter, including all motions prior to and during trial. I must assume that all arguments made concerning Mr. Perron's mental condition affecting the outcome of trial were negated by the evidence presented and rulings made during such proceedings.


If the AGC wishes an additional reply, I would be happy to provide one.

Sincerely,

3

Duane D. Silverthorn

*D. uave D. Silverthorn*

Duane D. Silverthorn
Office of the Public Defender
Senior Assistant Public Defender
320 N. Washington Square, Ste. 100
Lansing, Michigan 48933
517-679-2979
dsilverthorn@ingham.org

"This electronic message, including any attachments, is confidential and intended solely for use of the intended recipient(s). This message may contain information that is privileged or otherwise protected from disclosure by applicable law. Any unauthorized disclosure, dissemination, use or reproduction is strictly prohibited. If you have received this message in error, you must delete it permanently and notify the sender immediately."

# JDH Consulting Services, LLC
### P. O. Box 943 • Troy, Michigan 48099 • 586 404 8354 • TIN 27-5218315

September 27, 2021

### Report of Interview

Interviewee: **DUANE SILVERTHORN**
Date: 9-27-2021
Investigator: James D. Hoppe

    Duena Silverthorn, currently employed by the Ingham County Public Defender, 517-679-2979, was interviewed regarding Jacob Perrone and Perrone's representation of Tunc Uraz. Silverthirn advised that he was assigned this case for sentencing purposes and he only me Perrone, the trial attorney, when Perrone dropped off the Uraz file shortly after the trial ended. Silverthorn came to the Ingham County Defender Office in 2019 after over 30 years in private practice.

    Silverthoirn described Perrone as being "off" and as a non-stop talker, almost pathologically so. In Silverthorn's opinion Perrone seemed to be 'flying', almost as if he was an amphetamine user. Silverthoirn does not know anything about Perrone's behavior at trial and Silverthorn has not examined the trial record to see what happened at trial.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1622245905 [P 1/3]

You have received a **JPay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/29/2022 5:00:37 PM EST, Letter ID: 1622245905
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/29/2022 17:00:36

Please do not reply to this email

TO:
ATTORNEY GRIEVANCE COMMISSION PNC CENTER
755 W. BIG BEAVER RD. ST 2100
TROY, MI 48084

ATTORNEY INFORMATION :

MR. DUANE D. SILVERTHORN, ESQ (P36964)
SENIOR PUBLIC DEFENDER
OFFICE OF THE PUBLIC DEFENDER
320 N. WASHINGTON SQ. STE 100
LANSING, MI 48933

Complainant information :
Tunc Uraz #114653
Muskegon Correctional Facility
2400 S.Sheridan Dr.
Muskegon, MI 49442

Relationship to attorney complained of: I was the Client to Mr. Silverthorn and he was appointed to me on 12/14/2017 by Ingham County Circuit Court Judge Canady, due to my Original trial attorney Perrone was not deemed to represent me due to his mental impairments.

Dear AGC,
thank you for your assistance in this matter.

Mr. Duane D. Silverthorn was appointed as a sentencing attorney for my sentencing day on 01/24/2018.

After my Ginther hearings, (10/04/21 and 04/13/2022) in May of 2022,
I requested prosecutor's file for my case, in that file I discovered late July 2022 ; Mr. Perrone's 11/20/2017 Lansing Police report and PRT (person requiring treatment) for mental impairment, Clinton County "initial order after hearing on petition for mental Health Treatment", a letter from Prosecutor then to Mr. Silverthorn disclosing this information dated 12/18/2017.(see attached docs)

I grieved Ms. Kahla Crino and Mr. Jonathan Roth, Mr. Charles Koop for with AGC (Attorney Grievance Commission) for not sharing this very crucial documents with me and my appeal attorney so that we could have used them as part of my appeals and Ginther hearings.

The response I received from Crino and Roth was , "prosecutor Koop shared this information with his attorney Duane Silverthorn on 12/18/2017.

Although Mr. Silverthorn testified on 10/04/2021 at my Ginther Hearing, he never bothered to share any of the attached docs with court at that time.

His only testimony was based on him had a meeting with Perrone late December 2017, Perrone was "distraught and not coherent" "disorganized" thoughts etc..
(see hearing transcript 10/04/2021 pgs.57,58,59) pay attention to pg.59

**JPay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1622245905  [P 2/3]

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/29/2022 5:00:37 PM EST,   Letter ID: 1622245905
Location : MCF
Housing : UNIT 4100B01

Line 10 Walsh: Did you note any---notice anything concerning about Mr. Perrone's behavior?

Silverthorn: he was agitated, had difficulty focusing. He was speaking really fast. He was cordial but like I said, agitated.

Line 20 by Ms. Walsh's question to Silverthorn :
Do you think is there anything else that you have any information about that would help the court make a determination as to whether there was effective assistance of counsel?

Silverthorn: (in part) ...I thought it was concerning, the focus wasn't there and that he was speaking so quickly and clearly whether he was that wat during the trial, I would have no way knowing.

MS. WALSH HIRED A PRIVATE INVESTIGATOR TO INTERVIEW GINTHER HEARING ATTORNEYS ABOUT PERRONE'S BEHAVIOR BEFORE, DURING, AND AFTER TRIAL:

(please contact below to get a copy of this interview)

Mr. James D. Hoppe
JDH CONSULTING SERVICES, LLC
PO BOX 943, TROY MI 48099,
(586) 404 8354

09/27/2021
(In part) Silverthorn described Perrone a being "off" and as nonstop talker, almost pathologically so.... Perrone seemed to be "flying", almost as if he was an amphetamine user....

AGAIN NOTHING ABOUT 12/18/2017 DOCUMENTS SUBMITTED TO HIM BY CHARLES KOOP

PER HIS TESTIMONY MR. SILVERTHORN FAILED TO DISCLOSE/TESTIFY  ANY ATTACHED DOCUMENTS SUBMITTED ON 12/18/2017.

HERE ARE MY QUESTIONS TO MR. SILVERTHORN TO ANSWER:

Mr.Silverthorn would you please kindly tell me:

1) why did you neglected to share this vital information with me and my appeal attorney Susan K. Walsh? (12/18/2017 docs sent by Mr.Koop)

My family sent you his unprofessional email and his text messages from him to my sister (see attached)

I only had list of psyc meds given to Perrone at Saginaw Mental hospital on 11/14/2017, because Perrone gave them to me accidentally on 12/13/2017 before the hearing.
(If I had the other docs. by Koop sent you, I would have had a better Ginther hearing and appeal process.  I would had a different strategy/trajectory for my appeal process, such as requesting all PRT forms from Oakland and Clinton County Including Perrone father's PRT request talking about Perrone has been like this at least two years prior to my trial.

 2) Did Ms. Susan K. Walsh requested any discovery packages from you related to my case?  and did you sent her any discovery docs. including Docs from 12/18/2017 sent to you by Koop?

3) Did you purposefully held the documents back/not disclosed from Mr. Koop (12/18/2017) to be part of your sentencing memorandum for me?which there was none
(see attached), you only included Perrone's crazy email which he sent my family on 11/08/2017

4) Why didn't you testify about this 12-18-2017 documents at Ginther Hearing on 10/04/2021.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1622245905 [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/29/2022 5:00:37 PM EST,   Letter ID: 1622245905
Location : MCF
Housing : UNIT 4100B01

I did see  your request from Ingham County Prosecutor about my discovery package, part of the prosecutor's file for my sentencing.

Perrone had 2 two mental hospital involuntary stays in November 2017 after my trial which ended on 11/09/2017.

On 11/14/2017 Perrone was involuntarily sent to Sparrow Hospital Mental ward then transferred to UofM hospital in Ann Arbor on 11/14/2017 and from there sent to HealthSource mental hospital in Saginaw on 11/14/2017, he left Saginaw on 3 days later on 11/17/2017 with his own choice against doctors advice and on 11/20/2017 his second mental impairment happened and ended in Auburn Hills Havenwyc Mental Hospital for another week and he was forced to see Probate Court Judge Hallmark and he did not want to see appointed attorney and judge Hallmark for his 11/30/2017 Oakland County.

Please answer my questions at your earliest convenience and take look at Clinton/ Oakland and Probate court documents attached along with Perrone's Lansing police body cam footage.

Thank you for your input and hope that you would answer questions.

Respectfully Submitted

Tunc Uraz 114653
Muskegon Correctional Facility
2400 S.Sheridan Dr.
Muskegon, MI 49442

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1737423852 [P 1/3]

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 4/4/2023 10:57:32 PM EST,   Letter ID: 1737423852
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 04/04/2023 22:57:02

Please do not reply to this email

TO:  MS. CYNTHIA BULLINGTON
ATTORNEY GRIEVANCE COMMISSION PNC CENTER
755 W. BIG BEAVER RD. ST 2100
TROY, MI 48084

From :
Tunc Uraz #114653
Muskegon Correctional Facility
2400 S.Sheridan Dr.
Muskegon, MI 49442

RE : REBUTTAL TO ATTORNEY MR. DUANE D. SILVERTHORN (P36964) AGC# 22-2095 "E-MAIL MESSAGE"
RESPONSE  SENT TO AGC ON AN UNKNOWN DATE BUT SENT TO MR. URAZ ON 03/31/2023 BY AGC.

Dear MS. BULLINGTON,

thank you for your assistance in this matter.

SUPREME COURT OF UNITED STATES
THE RIGHT TO COUNSEL GUARANTEED BY CONSTITUTION CONTEMPLATES THE SERVICES OF AN
ATTORNEY DEVOTED SOLELY TO THE INTEREST OF HIS CLIENT
VON MOTKE V. GILLES 332 US 708 (1948)

THE BASIS OF ONE TO BE ABLE TO  EFFICIENTLY APPEAL HIS CASE IS; IF THE ISSUE(S) ARE PRESERVED
ON THE RECORD PROPERLY.

THE TRIAL COURT NOR APPEALS COURT NEVER ADDRESSED THIS (Perrone mental impairment)  ISSUE
PROPERLY, BECAUSE  IT WAS NOT PRESERVED AT ALL; DURING SENTENCING NOR GINTHER HEARINGS
OF DEFENDANT.

IT IS SAD, TRAGIC AND SHOCKING THAT SOMEONE LIKE MR. SILVERTHORN (senior public defender) WHO IS
VERY EXPERIENCED AND "ETHICAL" DID NOT MAKE AN EFFORT TO PRESEVE PERRONE'S "SECOND"
MENTAL IMPAIRMENT EPISODE ON THE RECORD DURING  SENTENCING AND GINTHER HEARING,
BECAUSE "MY APPEAL ATTORNEY NEVER ASKED FOR IT" AND IT WAS NOT PROVIDED BY PROSECUTION
TO HER AS WELL.

THE EXCUSE OF "APPELLATE ATTORNEY DID NOT ASK AND I WAS NOT GOING TO QUESTION THE
APPELLATE STRATEGY"; IS A VERY BAD EXCUSE BECAUSE PER Ms. Crino's AGC response Pg. 2 prag. 2 in
October 2022, MS. WALSH NEVER ASKED FOR PROSECUTOR FILES IN THIS CASE NOR SHE WAS NOT
PROVIDED ANY OF PERRONE'S SECOND MENTAL IMPAIRMENT DOCS AS WELL THIS IS WHY
SILVERTHORN SHOULD HAVE DISCLOSED THEM DURING SENTENCING AND/OR GINTHER HEARING.

ONE CANNOT ASK QUESTIONS ABOUT SOMETHING IF THEY DON'T KNOW ABOUT IT. (Walsh was informed
about Perrone's Probate court record in late August of 2022 same time AGC was notified as well But both Ms. Walsh
and AGC chose to stay complacent about this discovered court docs. proving that Perrone' mental illness was going
back to 2015)

IF YOU LOOK AT COURT OF APPEALS DECISION ON 01/19/2023 #343695, # 343696 People v URAZ, under
section V (ineffective assistance of counsel) A)counsel's illness COA is taking what is said on record during Ginther

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1737423852 [P 2/3]

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 4/4/2023 10:57:32 PM EST,   Letter ID: 1737423852
Location : MCF
Housing : UNIT 4100B01

hearing and look at footnote #7 "in his pro se supp. brief filed after remand, defendant purportedly cites to the mental health records of counsel trial counsel. THERE IS NO INDICATION THAT THOSE RECORDS WERE ADMITTED AT THE GINTHER HEARING....WE LIMIT OUR EVALUATION OF MENTAL HEALTH ISSUE TO THE TESTIMONY ELICITED AT THE HEARING. AS A GENERAL RULE, [A]PPEALS TO THE COA ARE HEARD ON THE ORIGINAL RECORD" MCR 7.210(A), AND THE PARTIES MAY NOT EXPAND THE RECORD ON APPEAL. PPL v Nix 301 Mich All 195 (2013).

BECAUSE MR. SILVERTHORN DECIDED TO OMIT (12/18/2017)   DOCS FROM PROSECUTOR DURING SENTENCING AND GINTHER HEARING AND HIS EXCUSE OF JUDGE CANADY WAS AWARE OF FILING WHICH MAKES JUDGE and SILVERTHORN and rest of the attorneys all ACCOMPLICES PER MRPC 8.3 (a) FOR NOT REPORTING THIS TO AGC WHICH IS A MAJOR MISCONDUCT.

PER MCR 9.104 ANY ACTS OR OMISSION BY AN ATTORNEY, INDIVIDUALLY OR IN CONCERT WITH ANOTHER PERSON, IS MISCONDUCT AND GROUNDS FOR DISCIPLINE WHETHER OR NOT OCCURRING IN THE COURSE OF ATTORNEY-CLIENT RELATIONSHIP.

SILVERTHORN VISITED ME TWICE
12/19/2017 and 01/23/2018

ON 12/19/2017 SILVERTHORN WAS GIVEN:  (SEE attch.)
PERRONE'S MENTAL HOSPITAL MEDICATION CHART  (perrone gave it to me accidentally on 12/13/2017) SHOWING WHAT TIME AND DATE SAGINAW  WHITEPINE HOSPITAL ADMISSION TIME DATED 11/14/2017(THIS WAS PERRONE'S FIRST MENTAL IMPAIRMENT EPISODE HOSPITAL ADMISSION RIGHT AFTER HE WAS TRANSFERRED FROM UOFM MEDICAL HOSPITAL ON 11/13/2017.

I WAS NOT AWARE OF ANY OTHER PRT FORMS AT THAT TIME

ATTORNEY SILVERTHORN DID NOT SUBMIT THIS DOCUMENT AS PROOF OF PERRONE'S (FIRST MENTAL EPISODE).

ATTORNEY SILVERTHORN WAS ALSO   PROVIDED WITH PERRONE'S INEXPLICABLY  CRAZY E-MAIL MESSAGE TO MY FAMILY ON 11/08/2017 A DAY BEFORE TRIAL ENDED ,and PERRONE'S crazy  text messages Perrone sent to my sister
(see attached)

HE ONLY CHOSE TO SUBMIT ONLY PERRONE'S CRAZY E-MAIL TO MY FAMILY AS TO PERRONE'S MENTAL IMPAIRMENT ISSUE.

HE CHOSE NOT TO SUBMIT ON RECORD TO COURT PART OF HIS "LETTER" PERRONE'S SECOND MENTAL IMPAIRMENT ON 11/20/2017 WHICH WAS SENT TO HIM BY PROSECUTOR THEN C. KOOP II, ON 12/18/2017.

IF HE WOULD HAVE MADE THOSE DOCUMENTS PART OF THE RECORD During sentencing and Ginther HEARING, or provide them to appeal attorney Ms.Walsh
IT WOULD HAVE BEEN A VERY DIFFERENT OUT COME FOR  APPEAL AND COMPLAINTS FILED AGAINST PERRONE IN APRIL OF 2018.

HOWEVER MR. SILVERTHORN'S ASSISTANT REQUESTED DISCOVERY  PACKAGES FROM PROSECUTOR'S OFFICE ON 01/09/2018 AND THE REPONSE FROM PROSECUTOR'S OFFICE ON 01/10/2018 WAS : "THE PREVIOUS DA ON THIS CASE, JACOB PERRONE, HAS ALREADY RECEIVED DISCOVERY IN THIS MATTER, PLEASE CONTACT HIS OFFICE IN ORDER TO RECEIVE DISCOVERY" (see attac.)
(SILVERTHORN was directed to get discovery docs from Perrone who has been dropped from all the cases in the county and ordered a mental health treatment) Perrone never provided any docs to SILVERTHORN.

UNFORTUNATELY COMPLACENCY BY AGC, JUDGES, PROSECUTORS, ATTORNEYS WHO HAD KNOWLEDGE OF PERRONE'S MENTAL ISSUES AND CHOSE NOT TO REPORT/FILE GRIEVANCE, TURN A BLIND EYE,  TAKE NO ACTION TO THIS ALARMING ISSUE; THEY SHOULD BE ALL REPRIMANDED FOR

**TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1737423852  [P 3/3]**

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 4/4/2023 10:57:32 PM EST,    Letter ID: 1737423852
Location : MCF
Housing :  UNIT 4100B01

THEIR MAJOR UNETHICAL MISCONDUCT.

DEFENDANT HAD TO FILE GRIEVANCES AGAINST JACOB PERRONE,   CRINO, ROTH, KOOP, ERIC
SCHROEDER, DUANE SILVERTHORN
BECAUSE THEY WOULD NOT TELL THE TRUTH UNDER OATH DURING GINTHER HEARINGS ON RECORD
AND TO P/I HIRED BY SUSAN WALSH.
THEY ALL CHOSE TO LIE ABOUT PERRONE'S MENTAL ILLNESS.

FILING GRIEVANCES TO AGC WAS THE ONLY WAY TO GET THESE ATTORNEYS TO TELL THE TRUTH AT
LEAST THEY HAVE A RESPECT FOR AGC BUT NOT TO COURTS.


RESPECTFULLY SUBMITTED


TUNC URAZ

①

7/21/2022

STATE OF Michigan
Attorney Grievance Commission
755 W. big Beaver Rd St 2100
Troy MI 48084

Attorney Information
Mr Charles T. Koop II (P.75188)
Muskegon County Prosecutor's office
990 Terrace St. FL 5
Hall of Justice
Muskegon, MI 49442

Complaint Information
Mr. TUNC URAZ #1114653
Muskegon Correctional Facility
2400 S. Sheridan Dr.
Muskegon, MI 49442

Relation ship to Attorney Complained of's
aganst my counsel prosecutor Mr Koop was working for
30th Circuit court, Ingham County prosecutor's office
then in 2017, however this complaint is based on testimony
that was given on 10/04/21 and 4/13/2022 at
a Ginther hearing

Type of Case: Criminal

Q.

CAse Number / court where filed
People v Tunc URAZ
Ingham County 30th Circuit Court, Lansing MI
Case #'S 16-10-06-FH and 16-1065 FC
COA # 343695, 343696

Statement of alleged Misconduct:

Why did Mr Koop Choose to wait ~~(12)~~ 12 twelve days
days 12/18/2017 To disclose Mr Perrone's Second
Mental impairment incident to Mr Silverman?
The fax about Perrone's Second mental episode was faxed on 12/6/17
to Ingham County Prosecutor's office, from Clinton County Probate

Why did Mr Koop Choose not to share these
documents (12/18/17)(pdf) Before or at Judges'
Chambers meeting on 12/12/2017 and on 12/13/17
at Defendant's hearing where Defendant did not
have any conflict-free "representation at Both
of these court hearings?
   See Mr Koop's testimony on 10/04/21 at Gunther
hearing pg. 55-56 (line 11)

Appeal | Atty WALSH: Is there anything else that you
think that the court should know about things that
Might have happened behind the scenes that would
help the court in making this determination as to
whether Mr. URAZ had effective assistance of
cansel?
Koop "Not that I'm aware of, NO"
Mr. Koop chose not to disclose 12/18/17 probate
court docs that he sent to D. Silverman. Ommission Lying

③

Charles T. Koop # 09/23/21 answers to Private
dective/Investigator. JDH consulting Services LLC
about Perrone's mental episodes, hired by S.K.Welsh
appeal attorney to find out if attorneys noticed anything
odd about Perrone's behavior

(INPART) "Koop advised that he "heard" that
Perrone may have had a mental health issue sometime
after the trial but not before or during trial??
see attached

   Again Mr Koop chose not to disclose 12/18/17
probate court records to P.I.


See  4/13/2022 Mr Jonothon Roth's testimony
at Ginther hearing pg 20-21

(Inpart) CLIENCE sometime after Jury's verdict
(11/09/17) you have indicated that you were informed
that Mr Perrone had some type of episode?
  How is that you were informed of that?
Roth: by the way of an email, it was on 12/2/17
I received an email indicators that he had has
what we refer as PRT Proceeding's, I think
in Oakland county and that's the extent of the
detail that I know"
  Mr Roth is talking an email message he received
from Ms Elizabeth Allen (Ingham Ca Prosecutor) but
on that email It does not talk about Oakland or
Clinton County PRT forms related to Perrone

④

(See attached)

Mr Roth Must have heard or knew about the faxed docs from Clinton county Probate court to Ingham canty Prosecuter's office on 12/6/2017

Defendant's family based on Mr Roth's testimony requested from Ingham county Prosecuter's office files under defendants name (FOIA) and also requested Oakland canty Probate court docs based on Roth's testimony.

In both docs (Prosecuter and Oakland canty) Defendant Discovered that 12/18/2017 pros. Koch notified Mr Silverthorn about Perrone's second Mental impairment episode and from Oakland canty Defendant discovered Perrone's first and history of mental illness going back to 2015

Both prosecuters lied under oath because until another hearing is completed There was only one mental episode by Perrone.

⟶ Mr Koch failed to Report this misconduct by Perrone to AGC per MRPC 6.5, 8.3, 8.4 MCR 9.104.

⟶ Mr Koch failed to testify about Perrone's Mental episodes and failed to disclose these important documents to Defendant and his appeal attorney Susan K WALSH

⑤

① Mr. URAZ Asking AGC to Inquire
Why Mr. Koop chose not to Disclose Perrone's
Mental impairment episodes at Judges chambers
Meeting/hearing on 12/12/2017 and in court
hearing on 12/13/2017 and Gunther Hearing on
10/04/21 or before to Ms. S. K. Walsh greed atty.

② Why did Mr. Koop waited 12 Days from the
day he received Clinton County probate court docs
about Perrone's Second Mental illness (12/06/17).
Mr. Koop waited until 12/18/2017 to sent them
to Mr. Silverthorn.

③ Why he didn't protect defendant's rights "right
to have conflict-free attorney at 12/12/17 and
02/13/2017 where Perrone was placed in the untenable
position of defending his own interest which were
adverse to Mr. URAZ.

④ Who advised Judge CANADY to have
Mr. Silverthorn to represent Mr. URAZ for Sentencing

⑤ Who exactly received the faxed docs
from Clinton County on 12/06/17 and how did
they find out about these documents?

Respectfully Submitted

Tunc Urz

## Koop, Chas

| | |
|---|---|
| **From:** | Koop, Chas |
| **Sent:** | Monday, December 18, 2017 3:25 PM |
| **To:** | 'DDLSILVERTHORN@GMAIL.COM' |
| **Subject:** | Tunc Uraz |
| **Attachments:** | SKM_654e17121815351.pdf |

Duane,

See attached letter with enclosed documents.  I've placed a physical copy in the mail, but wanted to email you as well.

Thanks,

**Chas. T. Koop, II**
Assistant Prosecuting Attorney
Ingham County Prosecutor's Office
303 W. Kalamazoo St.
Lansing, MI 48933
p. 517-483-6517 (direct)
ckoop@ingham.org

# CAROL A. SIEMON
### INGHAM COUNTY PROSECUTING ATTORNEY

LISA MCCORMICK
*Chief Assistant Prosecutor*



JOHN J. DEWANE
*Deputy Chief Assistant Prosecutor*

December 18, 2017

Duane Silverthorn
2155 Commons Pkwy
Okemos, MI 48864

Re:   *People v. Tunc Uraz* 16-001064-FH & 16-001065-FC

Dear Mr. Silverthorn,

Enclosed please find Lansing Police Report #1751906153, Petition for Mental Health Treatment, and Initial Order after Hearing on Petition for Mental Health Treatment. The enclosed documents relate to the defendant's trial counsel, Mr. Jacob Perrone. The Prosecutor's Office is disclosing these documents so that you may be fully informed in your representation of Mr. Uraz.

At an in-chambers meeting with Judge Canady held on December 12, 2017, Mr. Perrone disclosed that he has been diagnosed as bi-polar. During this meeting Mr. Perrone further disclosed he was not having an "episode" during the trial of *People v. Tunc Uraz* and that he felt he could continue to represent the defendant through sentencing. While the prosecution did not see anything during trial contrary to the representations of Mr. Perrone, the People requested that new counsel be appointed for sentencing out an abundance of caution.

If you have any further questions, please do not hesitate to contact myself or Jonathan Roth.

Respectfully,

Chas. T. Koop, II
Assistant Prosecutor

OC Fax Server          12/6/2017 9:41:00 AM   PAGE   1/003   Fax Server

Nov. 27. 2017 11:04AM                                    No. 7780   P. 5/20

Approved, SCAO                                    PCS CODE: OHA/OAO
                                                 TCS CODE: OFH/OAO

| STATE OF MICHIGAN<br>PROBATE COURT<br>COUNTY OF CLINTON | INITIAL ORDER AFTER<br>HEARING ON PETITION FOR<br>MENTAL HEALTH TREATMENT | FILE NO.<br>17-29766-MI<br>2017-3800-77-MI |
|---|---|---|

In the matter of JACOB ALAN PERRONE
First, middle, and last name

| Court ORI<br>MI900131 | Date of Birth<br>02/22/1982 | Place of birth<br>Lansing, Michigan | | Race<br>CA | Sex<br>M |
|---|---|---|---|---|---|
| Current address of individual<br>3555 Shearwater Lane, East Lansing, MI 48823 | | | | | |

1. Date of Hearing: November 30, 2017        Judge: Linda S Hallmark      (P28066)
                                        Acting by SCAO assignment           Bar no.

2. A petition has been filed by Carmella Mitchell / Joseph V. PERRONE    asserting that the individual named
                               Petitioner name (type or print)

above is a person requiring treatment.

THE COURT FINDS: Per Stipulation of the parties.

3. Notice of hearing has been given according to law.

4. The individual  ☒ was present in court.     ☐ was not present for reasons stated on the record,
   The hearing was  ☐ with                      ☒ without a jury.

   Present were: Lisa Zatyko        (P74810)                          , attorney for the individual, and

   HEATHER LEWIS                                                      , attorney for the petitioner.

☐ 5. Testimony of a physician, psychiatrist, or licensed psychologist was waived by the individual and the individual's attorney.
6. ☒ Testimony was given by Dr. Leonard Ewistall
   ☐ Testimony was not given because the parties stipulated to entry of the order.

☐ 7. By clear and convincing evidence, the individual is a person requiring treatment because the individual has a mental illness,
   ☐ a. and as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally
        seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are
        substantially supportive of this expectation.
   ☐ b. and as a result of that mental illness is unable to attend to those basic physical needs that must be attended to in
        order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic
        physical needs.
   ☐ c. whose judgment is so impaired by that mental illness that s/he is unable to understand his/her need for treatment, and
        whose impaired judgment, on the basis of competent clinical opinion, presents a substantial risk of significant physical
        or mental harm to the individual or presents a substantial risk of physical harm to others in the near future.
   ☐ d. and as a result of that mental illness, the individual's understanding of the need for treatment is impaired to the point
        that s/he is unlikely to voluntarily participate in or to adhere to recommended treatment that has been determined
        necessary to prevent a relapse or harmful deterioration of his/her condition, and the individual's noncompliance with
        treatment has been a factor in the individual's placement in a psychiatric hospital, jail, and/or prison at least two
        times within the last 48 months and/or in committing one or more acts, attempts, or threats of serious violent behavior
        within the last 48 months.

☒ 8. There  ☐ is  ☒ is not      an available treatment program that is an alternative to hospitalization or that follows an
     initial period of hospitalization adequate to meet the individual's treatment needs and is sufficient to prevent harm that the
     individual may inflict upon self or others within the near future.

☒ 9.  Havenwyck Hospital or other suitable                          hospital can provide treatment,
     which is adequate and appropriate to this individual's condition,

☐ 10. The individual is not a person requiring treatment.

(SEE SECOND PAGE)
Do not write below this line - For court use only

FILED
DEC 6 2017
CLINTON COUNTY PROBATE COURT

MCL 330.1401, MCL 330.1464a, MCL 330.1465, MCL 330.1468, MCL 330.1469, MCL 330.1470,
PCM 214  (9/18) INITIAL ORDER AFTER HEARING ON PETITION FOR MENTAL HEALTH TREATMENT  MCL 330.1472a(1)

2017029766MI

OC Fax Server          12/6/2017 9:41:00 AM   PAGE   2/003   Fax Server

Nov. 27. 2017 11:04AM                                    No. 7780   P. 6/20

2017-38002-MI

Initial Order After Hearing on Petition for Mental Health Treatment   (8/16)          File No. 17-29766-MI

**IT IS ORDERED:**

11. Any hospitalization of the individual for mental health treatment shall occur in the hospital listed in item 9.

☐ 12. The individual be hospitalized for up to _____ days.
    1 to 60 days

☑ 13. The individual receive alternative treatment for no longer than 90 days, supervised by

   Community Support Services
   Community mental health services or other designated entity

   as follows: The respondent shall take medication as prescribed, attend counseling and therapy sessions as directed, and maintain

   residence as directed.

   ☑ The individual shall be hospitalized for up to 10 days of the 90-day alternative treatment period.
                                              1 to 60 days

      ☐ An initial hospitalization period shall be up to _____ days.
                                                    1 to 60 days

☐ 14. The individual receive assisted outpatient treatment for no longer than 180 days, supervised by

   Community Support Services
   Community mental health services or other designated entity

   a. The following assisted outpatient treatment services are ordered: (See MCL 330.1468(2)(c) for specific services.)

   The respondent shall take medication as prescribed, attend counseling and therapy sessions as directed, and maintain

   residence as directed.

      ☐ b. The individual shall be hospitalized for up to _____ days of the 180-day assisted outpatient treatment period.
                                                   1 to 60 days

         ☐ An initial hospitalization period shall be up to _____ days.
                                                       1 to 60 days

☐ 15. The petition is   ☐ denied on the merits.   ☐ dismissed.   ☐ withdrawn.

☑ 16. If the individual refuses to comply with a psychiatrist's order for hospitalization, a peace officer shall take the individual
       into protective custody and transport the individual to the hospital designated by the psychiatrist.

17. If item 12, 13, or 14b is checked, the Michigan State Police shall immediately enter the individual's identifying information
    in this court order on LEIN.

18. If felony charges have been previously dismissed under MCL 330.2044(1)(b) and the time for petitioning to refile charges
    has not elapsed, not less than 30 days before the scheduled release or discharge:

    a. the director of the treating facility shall notify the prosecutor's office in the county in which charges against the person
       were originally brought that the patient's release or discharge is pending.

    b. the patient to be released or discharged shall undergo a competency examination as described in MCL 330.2026. A copy
       of the written report of the examination along with the notice required in item 18a above shall be submitted to the
       prosecutor's office in the county in which the charges against the patient were originally brought. The written report is
       admissible as provided in MCL 330.2030(3).

November 30 , 2017
Date

_____
Judge   Linda S Hallmark        (P28066)
        Acting by SCAO assignment

---------- Forwarded message ----------
From: Lisa Zatyko < zatykolaw@gmail.com>
Date: Sat, Sep 3, 2022 at 1:49 AM
Subject: Re: Jacob A. Perone
To: Tony Ur < tonyur@gmail.com>


Hi Tony,

You're welcome. There was no hearing for Jacob on 11/30/2017 as he agreed to treatment prior to the hearing. The prosecutor and I went on the record (transcript) to let the judge know this. Heather Lewis was the Assistant prosecutor in Oakland County on Jacob's case.

I only had contact with Jacob the day of the hearing and a few days before the hearing. He essentially refused to speak with me at Havenwyck when I met with him prior to the hearing. Additionally, I only have the court documents that you have.

Take care,
Lisa Zatyko

1Nov. 22. 2017 8:01AM THSOUF___MC          (FAX    780 No. 7767    P. 9:002/008

PCS CODE: PFH/PAS
TCS CODE: IPFH/PFH/PAS

Approved, SCAO

| STATE OF MICHIGAN PROBATE COURT COUNTY OF Clinton | PETITION FOR MENTAL HEALTH TREATMENT | FILE NO. 17-29766-MI |

In the matter of Jacob Alan Perrone
First, middle, and last name

XXX-XX-____
Last four digits of SSN

| Court ORI | Date of Birth 2/22/82 | Place of Birth Lansing MI | Race C.4 | Sex M |

1. I, Joseph V. Perrone, an adult Father, specify whether a relative, neighbor, peace officer, etc. petition because:
Name (type or print)

I believe the individual named above needs treatment.

2. The individual was born 2/22/82, has a permanent residence in East Lansing, MI
County at 3565 Shear water lane, East Lansing MI 48823
Street address                    City        State      Zip
and can presently be found at 1500 E Medical Center Drive; Ann Arbor, MI
Facility name or other address

☐ This petition is for a person who was found not guilty by reason of insanity in this county.      Date Found Date 11.14.17  4810.9   2247  JMD

3. I believe the individual has mental illness and

☑ a. as a result of that mental illness, the individual can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation.

☐ b. as a result of that mental illness, the individual is unable to attend to those basic physical needs that must be attended to in order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic physical needs.

☑ c. the individual's judgment is so impaired by that mental illness that s/he is unable to understand his/her need for treatment, and whose impaired judgment, on the basis of competent clinical opinion, presents a substantial risk of significant physical or mental harm to the individual or presents a substantial risk of physical harm to others in the near future.

☑ d. the individual's understanding of the need for treatment is impaired to the point that s/he is unlikely to voluntarily participate in or to adhere to treatment that has been determined necessary to prevent a relapse or harmful deterioration of his/her condition. The individual's noncompliance with treatment has been a factor in the individual's
☐ i. placement in  ☐ a psychiatric hospital  ☐ jail  ☐ prison  at least two times within the last 48 months.
(Specify the name(s) and location(s) of the hospital, jail, or prison and the date(s) of hospitalization or incarceration.)
8/17 Went to Sparrow Hospital with Severe Anxiety
11/17 Went to Sparrow Hospital w chest pains Left Against medical advice

AND/OR

☑ ii. committing one or more acts, attempts, or threats of serious violent behavior within the last 48 months.
(Specify the acts, attempts, or threats of serious violent behavior.)
Punches holes in walls, is verbally abusive to his wife, has said he will "Kill"
½ or destroy everyone, will take over Lansing + rule w/ an iron fist
This happens weekly for the last 2 years at least

(SEE SECOND PAGE)

USE NOTE: If this form is being filed in the circuit court family division, please enter the court name and county in the upper left-hand corner of the form.

Do not write below this line - For court use only

FILED

Pttn + Certs provided   NOV 16 2017
as info only for   CLINTON COUNTY PROBATE COURT
filing Demand for Hearing.
11-22-17

2017 29766 MI

MCL 330.1100a(20), MCL 330.1400, MCL 330.1423, MCL 330.1427,
MCL 330.1434, MCL 330.1438, MCL 330.2050, MCR 5.125(C)(18)

PCM 201 (6/16) PETITION FOR MENTAL HEALTH TREATMENT

Nov. 22. 2017 8:02AM THSOU...  JMC                    (FA     )790 No. 7767    P. 10.003/008

Petition for Mental Health Treatment   (9/16)                                   File No. _____

4. The conclusions stated above are based on

a. my personal observation of the person doing the following acts and saying the following things:

He has many angry outbursts, disorganized thoughts. He thinks he is the
most intelligent person in the world, He will "destroy" or "Kill" everyone
H had called himself "my Suicidal Son" Has many Anger Issues

b. the following conduct and statements that others have seen or heard and have told me about:

_____

_____

by: _____
Witness name                Complete address                    Telephone no.

5. The persons interested in these proceedings are:

| NAME | RELATIONSHIP | ADDRESS | TELEPHONE |
|------|--------------|---------|-----------|
|      | Spouse       |         |           |
|      | Guardian*    |         |           |
|      |              |         |           |

*(Specify the county where the guardianship was established and the case number.) _____

6. The individual ☐ is ☒ is not a veteran.

☐ 7. Attached is a  ☒ clinical certificate by a physician or licensed psychologist taken within the last 72 hours.
                     ☐ clinical certificate by a psychiatrist taken within the last 72 hours.
                     ☐ petition/affidavit for examination (form PCM 209a) because an examination could not be secured.

8. I request the court to determine the individual to be a person requiring treatment and

☒ a. (Check if item 3a, 3b, or 3c is checked.) order appropriate mental health treatment.
☐ b. (Check if item 3d is checked.) order that the individual participate in assisted outpatient treatment without hospitalization.

☐ 9. I request the individual be hospitalized pending a hearing.

I declare under the penalties of perjury that this petition/application has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

Signature of attorney _____     Date   11/14/17

Name (type or print) _____   Bar no.   Signature of petitioner _____

Address _____                            Address   15880 Brook Rd
                                                    Lansing, MI 48906
City, state, zip _____   Telephone no.   City, state, zip.
                                                    517-290-1150
                                                    Home telephone no.      Work telephone no.

| FOR HOSPITAL USE ONLY | This petition for mental health treatment was received by the hospital on  11-14-17  at  2220 |
|                       |                                                        Date              Time |
|                       | Signature of hospital representative |

11/27/2017

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1511065989  [P 1/1]

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/4/2022 8:32:20 PM EST,    Letter ID: 1511065989
Location : MCF
Housing :  UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/04/2022 20:32:19

Please do not reply to this email

INVOLUNTARY ADMISSION TO MENTAL HOSPITAL
MCLS 330.1401 PERSON REQUIRING TREATMENT (PRT)  DEFINED; EXCEPTION
1) AS USED IN THIS CHAPTER PERSON REQUIRING TREATMENT MEANS (A)(B)(C) SEC (D) WAS DELETED IN MARCH OF 2019

A) AN INDIVIDUAL WHO HAS MEN
TAL ILLNESS, AND WHO AS A RESULT OF THAT MENTAL ILLNESS CAN BE REASONABLY BE EXPECTED WITHIN THE NEAR FUTURE TO INTENTIONALLY OR UNINTENTIONALLY SERIOUSLY PHYSICALLY INJURE HIMSELF, HERSELF OR ANOTHER INDIVIDUAL AND WHO HAS ENGAGED IN A ACT OR ACTS OR MADE SIGNIFICANT THREATS THAT ARE SUBSTANTIALLY SUPPORTIVE OF THE EXPECTATION
B) AN INDIVIDUAL WHO HAS MENTAL ILLNESS, AND WHO AS A RESULT OF THAT MENTAL ILLNESS IS UNABLE TO ATTEND TO THOSE OF HIS OR HER BASIC PHYSICAL NEEDS SUCH AS FOOD, CLOTHING OR SHELTER THAT MUST BE ATTENDED TO IN ORDER FOR THE INDIVIDUAL TO AVOID SERIOUS HARM IN THE NEAR FUTURE, AND WHO HAS DEMONSTRATED THAT INABILITY BY FAILING TO ATTEND TO THOSE BASIC NEEDS
(C) AN INDIVIDUAL WHO HAS MENTAL ILLNESS, WHOSE JUDGEMENT IS SO IMPAIRED BY THAT MENTAL ILLNESS, AND WHOSE LACK OF UNDERSTANDING OF THE NEED FOR TREATMENT HAS CAUSED HIM OR HER TO DEMONSTRATE AN UNWILLINGNESS TO VOLUNTARILY PARTICIPATE IN OR ADHERE TO TREATMENT THAT IS NECESSARY, ON THE BASIS OF COMPETENT CLINICAL OPINION, TO PREVENT A RELAPSE OR HARMFUL DETERIORATION OF HIS OR HER CONDITION AND PRESENTS A SUBSTANTIAL RISK OF SIGNIFICANT PHYSICAL OR MENTAL HARM TO THE INDIVIDUALS OR OTHERS IN THE NEAR FUTURE
2) AN INDIVIDUAL WHOSE MENTAL PROCESSES HAVE BEEN WEAKENED OR IMPAIRED BY DEMENTIA, AN INDIVIDUALS L WITH PRIMARY DIAGNOSIS OF EPILEPSY, OR AN INDIVIDUAL WITH ALCOHOLISM OR OTHER DRUG DEPENDENCE IS NOT A PERSON  REQUIRING TREATMENT (PRT) UNDER THIS CHAPTER UNLESS THE INDIVIDUAL ALSO MEETS THE CRITERIA SPECIFIED IN SUBSECTION
i) AN INDIVIDUAL DESCRIBED IN THIS SECTION MAY BE HOSPITALIZED UNDER THE INFORMAL OR FORMAL VOLUNTARY HOSPITALIZATION PROVISIONS OF THIS CHAPTER IF HE OR SHE IS CONSIDERED CLINICALLY SUITABLE FOR HOSPITALIZATION BY THE HOSPITAL DIRECTOR



IN 2017 version,  in 2019 March Section (d) was removed this applied in attorney Perrone's situation
(d) AN INDIVIDUAL WHO HAS MENTAL ILLNESS, WHOSE UNDERSTANDING AT THE NEED FOR TREATMENT IS IMPAIRED TO THE POINT THAT HE OR SHE IS UNLIKELY TO VOLUNTARILY PARTICIPATE IN OR ADHERE TO TREATMENT THAT HAS BEEN DETERMINED NECESSARY TO PREVENT A RELAPSE OR HARMFUL DETERIORATION OF HIS OR HER CONDITION, AND WHOSE NON-COMPLAINCE WITH TREATMENT HAS BEEN A FACTOR IN THE INDIVIDUAL PLACEMENT IN A PSYCHIATRIST HOSPITAL, PRISON OR JAIL AT LEAST 2 TIMES WITHIN THE LAST 48 MONTHS OR WHOSE NONCOMPLIANCE WITH TREATMENT HAS BEEN A FACTOR IN THE INDIVIDUAL'S COMMITTING 1 OR MORE ACTS ATTEMPTS NOR THREATS OF "SERIOUS" VIOLENT BEHAVIOR WITHIN THE LAST 48 MONTHS. AN INDIVIDUAL UNDER THIS SUBDIVISION IS ONLY ELIGIBLE TO RECEIVE ASSISTED OUTPATIENT TREATMENT.

Approved, SCAO

PCS CODE: PFH/PAS
TCS CODE: IPFH/PFH/PAS

| STATE OF MICHIGAN PROBATE COURT COUNTY OF | PETITION FOR MENTAL HEALTH TREATMENT | FILE NO. |
|---|---|---|

In the matter of _JACOB ALAN Perrone_
First, middle, and last name
XXX-XX-
Last four digits of SSN

| Court ORI 335 1900 | Date of Birth 02-22-82 | Place of Birth LANSING MI | Race W | Sex M |
|---|---|---|---|---|

1. I, _Robert McBride_, an adult _Peace OFFICER_ _____ petition because
   Name (type or print)                    specify whether a relative, neighbor, peace officer, etc.
   I believe the individual named above needs treatment.

2. The individual was born _02-22-82_, has a permanent residence in _Ingham_
   Date
   County at _3535 Clearwater LA. EAST LANSING MI 48823_
   Street address                    City                    State                    ZIP
   and can presently be found at _SPARROW Hospital E.R. #9_
   Facility name or other address

☐ This petition is for a person who was found not guilty by reason of insanity in this county.

3. I believe the individual has mental illness and

☒ a. as a result of that mental illness, the individual can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation.

☐ b. as a result of that mental illness, the individual is unable to attend to those basic physical needs that must be attended to in order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic physical needs.

☐ c. the individual's judgment is so impaired by that mental illness that s/he is unable to understand his/her need for treatment, and whose impaired judgment, on the basis of competent clinical opinion, presents a substantial risk of significant physical or mental harm to the individual or presents a substantial risk of physical harm to others in the near future.

☐ d. the individual's understanding of the need for treatment is impaired to the point that s/he is unlikely to voluntarily participate in or to adhere to treatment that has been determined necessary to prevent a relapse or harmful deterioration of his/her condition. The individual's noncompliance with treatment has been a factor in the individual's
   ☐ i. placement in ☐ a psychiatric hospital ☐ jail ☐ prison at least two times within the last 48 months.
   (Specify the name[s] and location[s] of the hospital, jail, or prison and the date[s] of hospitalization or incarceration.)
   _____
   _____

AND/OR
   ☐ ii. committing one or more acts, attempts, or threats of serious violent behavior within the last 48 months.
   (Specify the acts, attempts, or threats of serious violent behavior.)
   _____
   _____

(SEE SECOND PAGE)

USE NOTE: If this form is being filed in the circuit court family division, please enter the court name and county in the upper left-hand corner of the form.

Do not write below this line - For court use only

PCM 201 (6/16) PETITION FOR MENTAL HEALTH TREATMENT

MCL 330.1100a(29), MCL 330.1401, MCL 330.1423, MCL 330.1427, MCL 330.1434, MCL 330.1468, MCL 330.2050, MCR 5.125(C)(18)

Petition for Mental Health Treatment  (0/16)                    File No. _____

4. The conclusions stated above are based on

    a. my personal observation of the person doing the following acts and saying the following things:

As I drove PAST Perrone he yelled Fuck you Quincy "
Perrone said he is #1 Defense Attorney in the world. Perrone states
he would kill A bunk of people

    b. the following conduct and statements that others have seen or heard and have told me about:

_____

_____

by: _____          _____          Telephone no. _____
    Witness name                              Complete address

5. The persons interested in these proceedings are:

| NAME | RELATIONSHIP | ADDRESS | TELEPHONE |
|---|---|---|---|
| Ashley Perrone | Spouse | 3535 Shoemater Lane | 517-818-7590 |
| RON Perrone | Guardian* | 15880 Brook Rd LANsing MI | |

*(Specify the county where the guardianship was established and the case number.) _____

6. The individual  [ ] is  [X] is not a veteran.

[ ] 7. Attached is a  [ ] clinical certificate by a physician or licensed psychologist taken within the last 72 hours.
                [ ] clinical certificate by a psychiatrist taken within the last 72 hours.
                [ ] petition/affidavit for examination (form PCM 209a) because an examination could not be secured.

8. I request the court to determine the individual to be a person requiring treatment and

    [X] a. (Check if item 3a, 3b, or 3c is checked.) order appropriate mental health treatment.
    [ ] b. (Check if item 3d is checked.) order that the individual participate in assisted outpatient treatment without hospitalization.

[ ] 9. I request the individual be hospitalized pending a hearing.

I declare under the penalties of perjury that this petition/application has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

_____          Date _____
Signature of attorney                                Signature of petitioner

_____  Bar no. ___          120 W. Michigan
Name (type or print)                                 Address

_____                          LANsing, MI 48915
Address                                              City, state, zip

_____  Telephone no. ___
City, state, zip

                                    Home telephone no. _____     Work telephone no. _____

| FOR HOSPITAL USE ONLY | This petition for mental health treatment was received by the hospital on Date _____ at Time _____ |
|---|---|
| | Signature of hospital representative _____ |

**NSING POLICE**
**MENT**
**.eport**



Case No.  1751906153
Case Status  Inactive
Report Date/Time: 11/20/2017 3:45:25 PM
Reporting Officer: McBride, Robert

**FILE CLASS/OFFENSE:**
92004 - Civil Custodies - Insanity (Mental)

**NATURE OF INCIDENT:**
PRT/WILLOW/JACOBPERRONE/SOCIETY/RMCBRIDE

**OCCURRED ON:**          11/20/2017 3:45:30 PM
**(and Between)**

**VENUE:** Willow / Gr Riv   LANSING, MI  48906
**CITY/TOWNSHIP:** 95 - Lansing, Ingham

| VICTIM: | | |
|---|---|---|
| | | VICTIM OF: 9908 - 92004 - Civil Custodies - Insanity (Mental) |
| | | VICTIM TYPE: Society/Public |
| | DOB: | AGE: |
| RACE: | SEX: | JUV: |
| HGT: | WGT: | HAIR: |
| EYES: | ETH: | Circumstances: |
| SSN: | DLN: | DL State: |
| ADDRESS INFORMATION: | | |
| | | |
| Phone Information: | | Emails: |
| | | |
| NOTES: | | |

| WITNESS: BULLOCK, ROBERT JAMES | | |
|---|---|---|
| | DOB: | AGE: |
| RACE: White | SEX: Male | JUV: |
| HGT: | WGT: | HAIR: |
| EYES: | ETH: | Circumstances: |
| SSN: | DLN: | DL State: |
| ADDRESS INFORMATION: | | |
| H - Home: 209 Kipling LANSING, MI  48906 INGHAM US  -- UNITED STATES | | |
| Phone Information: | | Emails: |
| H - Home: (517) 927-6306 | | |
| : | | |
| NOTES: | | |

| SUSPECT: PERRONE, JACOB ALAN | | |
|---|---|---|
| | DOB: 02/22/1982 | AGE: 35 |
| RACE: White | SEX: Male | JUV: N - No |
| HGT: 6' 1" | WGT: 160 | HAIR: |
| EYES: Green | ETH: | Circumstances: |
| SMT: | | |
| SSN: | DLN: P650356040138 | DL State: Michigan |
| ADDRESS INFORMATION: | | |
| H - Home: 3555 Sherwater Ln EAST LANSING, MI  48823 INGHAM US  - UNITED STATES | | |
| Phone Information: | | Emails : |
| H - Home: (517) 719-4657 | | |
| NOTES: | | |



**LAPD - LANSING POLICE DEPARTMENT**
**Case Report**

Case No.  1751906153
Case Status  Inactive
Report Date/Time: 11/20/2017 3:45:25 PM
Reporting Officer: McBride, Robert

---

**FORCE LEVEL DETAILS**        FORCE USED: **N - No**
HANDGUN USE:                RIFLE USE:              SHOTGUN LL:
HANDGUN DISPLAY:            RIFLE DISPLAY:          .40mm LL:
PCA USE:                    ASP USE:                TASER USE:
PCA DISPLAY:                ASP DISPLAY:            HANDCUFFING:
PPCT:
OTHER:



**LAPD - LANSING POLICE DEPARTMENT**
**Case Report**

Case No.  1751906153
Report Date/Time: 11/20/2017 3:45:25 PM
Reporting Officer: McBride, Robert

---

**NARRATIVE:**
McBride, Robert
11/20/2017 4:06:07 PM
SUMMARY:
 While driving in a marked patrol vehicle I was flagged down by Robert Bullock in reference to a passenger he was having problems with.
DATE / TIME:
 11-20-2017 1400
VENUE:
 Grand River and Willow, City of Lansing, County of Ingham, State of Michigan
ROBERT JAMES BULLOCK STATEMENT:
 Bullock is employed by Dean Transportation and was acting as a driver for the accused Jacob Perrone. As I drove past Bullock and Perrone, Perrone yelled out of the window "Fuck you Quincy". I initially ignored the slur but I could see Bullock trying to get me to come back. I backed up and made contact with Bullock.
 Bullock stated Perrone appeared to be having a mental crisis. Bullock states Perrone was saying a lot of weird stuff and did not feel comfortable continuing to drive the vehicle with Perrone in it. I told Bullock that I would see what I could do to help.
OFFICER ACTIONS:
 I requested a second unit come on scene to assist me. As I was waiting for the second unit, Perrone exited the vehicle he was in and got into my patrol car. I made contact with Perrone while he was in my patrol car and got his ID. Perrone appeared to be having very severe mood swings. He would be calm for a moment and then begin cursing and yelling. Perrone would make references to himself being God. Perrone told me that he was supposed to have lunch with his uncle Bill Perrone. Based on Perrone's very erratic behavior I asked for Uncle Bill's phone number. I ended up having to Google the office that Bill Perrone worked for.
 I spoke with Bill Perrone via telephone and he told me that Jacob had just gotten out of some type of mental crisis. Bill Perrone gave me Ron Perrone's (Jacob's father) phone number. I called and told Ron that I was taking Jacob to Sparrow and Ron stated he would meet us there. Ron told me that Jacob was having a mental crisis and that he needed help.
 By this time I requested Sgt. Mills come to the scene. I, Officer Evans and Sgt. Mills all went to Sparrow hospital. Jacob Perrone was not in cuffs and ran from us as we were walking into Sparrow Hospital. Jacob stopped at his father's car and was placed in handcuffs at that time. Jacob continued to have up and down moments while at Sparrow hospital.
BODY CAMERA:
 My interactions with Jacob Perrone were recorded on my body camera.
PRT:
 I filled out PRT paperwork for Jacob Perrone. His father Ron Perrone was at the hospital and able to give input on why Jacob needed treatment. I left the scene after Sparrow ER staff told us that we could leave.
DISPOSITION:
 NRF

---

February 6, 2023

Cynthia Bullington
Attorney Grievance Commission
Buhl Building
535 Griswold, Suite 1700
Detroit, MI 48226

RE:   Tunc Uraz as to Eric Schroeder
      AGC File No. 22-2094

Dear Ms. Bullington:

This writing is in response to the request for investigation reference above.   In March,

2017, I worked as an associate attorney for the Perrone Law firm.  I started as a part-time

attorney but moved to full-time in September, 2017.  I left my employment with Perrone Law on

December 31, 2017.

After reviewing court records, Mr. Perrone initially represented Mr. Uraz prior to my

employment. Mr. Perrone was re-appointed to represent Mr. Uraz a couple of months after I

started my employment with the firm.  Mr. Perrone was lead counsel on the case, I assisted him

with the tasks I was assigned by him.  Mr. Perrone asked me to assist him with Mr. Uraz's trial

by questioning two prosecution witnesses.  In preparation for Mr. Uraz's trial, we worked

numerous hours to prepare, including nights and weekends.  At no time prior to or during Mr.

Uraz's trial did I observe Mr. Perrone engage in any behavior that would indicate to me that he

was unable to practice law.

Mr. Uraz was a very demanding client. He would write Mr. Perrone letters on at least a

weekly basis and demand Mr. Perrone come visit him in every letter at the county jail.  When

Mr. Perrone was unable to meet with Mr. Uraz due to other commitments, he would ask me to go

instead.  After each meeting with Mr. Uraz, I would always report to Mr. Perrone on what was

discussed, normally during a phone conversation in the jail parking lot. At no time was Mr.

Perrone's failure to meet with Mr. Uraz related to a physical or mental illness.

Mr. Uraz has alleged Mr. Perrone was hospitalized in August, 2017 for anxiety and chest

pains. I vaguely recall Mr. Perrone had a hospital visit around that time but I do not recall the

reason for this visit.

Mr. Uraz's trial concluded on November 9 or 10, 2017. The following Monday

(November 13, 2017) I received a call from Mr. Perrone indicating that he would not be

available for work that day because he was dealing with a "family issue" and he would explain

more later. I did not hear from Mr. Perrone for more than a day. The following evening, I

received a voicemail from Mr. Perrone from a number I did not recognize. I looked up the phone

number Mr. Perrone called from and it was from a mental treatment facility. I learned from Mr.

Perrone's family that over the weekend that Mr. Perrone had experienced a mental health

episode. He was hospitalized for three days and released that Friday.

The following Monday, November 20, 2017, Mr. Perrone experienced another mental

health episode and was again hospitalized. On that day I spoke with Mr. Perrone on the phone

and observed him in-person for several minutes. His behavior was abnormal from my previous

experiences from him. He had not exhibited this behavior prior to or during Mr. Uraz's trial.

Mr. Uraz has alleged in his request for investigation that Mr. Perrone allegedly contacted

and threatened the prosecutors involved in his case. I do not have any personal knowledge of Mr.

Perrone contacting any prosecutors during this time.

Upon learning of Mr. Perrone's hospitalization, I immediately took over his cases and

attended all hearings scheduled during his absence. I informed Mr. Perrone's clients that Mr.

Perrone has having a health issue and was unavailable. I also sought advice from other attorneys on how to address Mr. Perrone's absence and with any issues I came across in his cases.

One issue that immediately arose was that Mr. Perrone was scheduled to go to trial in a murder case in an A-level court appointed case in the 30th Circuit Court. Since I was not an A-level attorney, I informed the Court that Mr. Perrone was unavailable. I met with Judge Aquilina of the 30th Circuit Court who was presiding over the murder case. This meeting occurred on or about November 22, 2017. After advising Judge Aquiliana of the situation, the case was re-assigned from Mr. Perrone to another attorney. She also determined that she would see about reassigning Mr. Perrone's other A-level cases, including Mr. Uraz's case. There were other cases Mr. Perrone had that were above my level of competence where I ultimately advised these clients to obtain new counsel.

Mr. Uraz's sentencing hearing was originally scheduled for the end of December. Since I was unsure about the length of Mr. Perrone's absence, I did not immediately advise Mr. Uraz of Mr. Perrone's situation. Once I became aware that Mr. Perrone may not be able to continue as counsel for Mr. Uraz, I advised him and his family of the situation.

Mr. Perrone was released from the hospital in mid-December. When he was released, his behavior was normal and he did not appear to be experiencing a mental health episode. Mr. Perrone and Mr. Uraz participated in a status conference where the decision was made that Mr. Uraz should have new counsel. Based upon information and belief, Mr. Perrone also met with Mr. Uraz to talk to him about the situation.

Following his sentencing, Mr. Uraz used Mr. Perrone's health issue as grounds to appeal his sentence and conviction. In his pleadings, he alleged that I had knowledge that Mr. Perrone

had experienced a mental health episode during his trial. Mr. Uraz's case was remanded from the Michigan Court of Appeals to the 30th Circuit Court for a *Ginther* hearing. The *Ginther* hearing was held in October 2022. I was subpoenaed to testify at the hearing. Prior to the hearing, I voluntarily spoke with the assistant prosecutor and an investigator hired by Mr. Uraz's attorney. I answered all of their questions fully and honestly. I also appeared for the *Ginther* hearing and again answered all questions asked of me by the prosecutor and Mr. Uraz's attorney. I answered these questions fully and honestly.

The Court ruled against Mr. Uraz, finding no evidence that Mr. Perrone was experiencing a mental health episode during Mr. Uraz's trial. This ruling was recently affirmed by the Michigan Court of appeals. It was not until after Mr. Uraz's appeal was denied that he filed this request for investigation, more than five years after these events occurred.

In conclusion, Mr. Perrone suffered a temporary medical condition and received treatment for that condition. While Mr. Perrone was hospitalized, he was not involved in the practice of law as I oversaw his cases. Once his treatment was complete, he was able to practice law. Since Mr. Perrone was able to return to the practice of law following his hospitalization, I saw no need to contact the state bar. When I discussed the matter with other attorneys, I was not advised that contacting the state bar was necessary. My actions in informing the court of Mr. Perrone's absence and having his cases reassigned show I was not trying to hide his absence from anyone.

Further, Mr. Uraz alleges that other attorneys filed grievances against Mr. Perrone during this time. However, in reviewing the state bar website, Mr. Perrone has no instances of the state bar taking any action against his license. Since the State Bar determined no action against Mr.

Perrone's license was needed, this is further evidence that I did not need to contact the State Bar concerning Mr. Perrone.

Sincerely,

Eric Schroeder P79518

# JDH Consulting Services, LLC
## P. O. Box 943 • Troy, Michigan 48099 • 586 404 8354 • TIN 27-5218315

September 23, 2021

### Report of Interview

Interviewee: Attorney Eric Schroeder (517-918-5354)
Date:9-23-2021
Investigator:  James D. Hoppe

     Attorney Eric Schroeder was interviewed regarding Attorney Jacob Perrone and specifically Perrone's defense of Tunc Uraz.  Schroeder advised that the Uraz trial occurred in October, 2017 and that he assisted Perrone before and during the trial. Schroeder believes that Perrone was 'dialed in' during the trial and any mental health issues experienced by Perrone were well after the Uraz trial.
     Schroeder advised that everything Perrone did during the trial made sense to him. Schroeder characterized Perrone as being focused during the trial and nothing that Perrone did caused Schroeder to question Perrone's ability to defend Uraz. Schroeder did not notice any change in Perrone's behavior during the trial.  Schroeder could not recall any decision made by Perrone during the trial that might have prejudiced Uraz and Schroeder believes that Uraz received a fair trial and good representation from Perrone.

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Inspector Services
Date : 10/31/2022 8:50:40 PM EST,   Letter ID: 1623633231
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/31/2022 20:50:40

Please do not reply to this email

AGC SCHROEDER

TO:
ATTORNEY GRIEVANCE COMMISSION PNC CENTER
755 W. BIG BEAVER RD. ST 2100
TROY, MI 48084

ATTORNEY INFORMATION :

MR. ERIC SCHROEDER (P79518)
NICHOLS LAW FIRM
3452 E. LAKE LANSING RD
EAST LANSING MI 48823
eSchroeder@nicholslaw.net

Complainant information :
Tunc Uraz #114653
Muskegon Correctional Facility
2400 S.Sheridan Dr.
Muskegon, MI 49442

Relationship to attorney complained of: ERIC SCHROEDER WAS A PART TIME ATTORNEY IN 2017 HELPING MR. JACOB PERRONE WITH MY TRIAL

Re: Jacob A. Perrone and your Ginther hearing testimony

Dear Mr. Schroeder,
please see attached pdf file dated (which was sent to you via email) 12/18/2017 from Ingham County prosecutor to D. Silverthorn and Oakland County, Clinton County
probate court papers about Perrone's PRT treatment at mental hospitals twice after my trial ended on 11/09/2017.

On 11/14/2017 Perrone was involuntarily sent to Sparrow Hospital Mental ward then transferred to UofM hospital in Ann Arbor on 11/14/2017 and from there sent to HealthSource mental hospital in Saginaw on 11/14/2017, he left Saginaw on 3 days later on 11/17/2017 with his own choice against doctors advice and on 11/20/2017 his second mental impairment (Lansing Police report/PRT form ) happened and ended in Auburn Hills Havenwyc Mental Hospital for another week and he was forced to see Probate Court Judge Hallmark on 11/30/2017.

And especially pay attention to PRT form filled by Joseph V. Perrone (Father of Jacob Perrone) on 11/14/2017 talking about Perrone being this way since least two years (since 2015)
and Perrone went to Sparrow hospital for anxiety and chest pains in August of 2017 (do you know the exact date),?
and right after trial 11/17   (do you know the exact date and what happened exactly?)

Please answer my questions at your earliest convenience and see attached e-mails to my family sent by you in November 2017 about Perrone.

After your very well choreographed Ginther hearing testimony with prosecutor Crino that you never noticed anything wrong with Perrone before and during trial otherwise you would have reported it. per MCR 1.1, 6.5, 8.3, 8.4

YOU FAILED TO REPORT PERRONE'S MENTAL BREAKDOWN TO AGC.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

*You have received a* **jpay** *letter, the fastest way to get mail*

From  : TUNC URAZ, ID: 114653
To : Inspector Services
Date : 10/31/2022 8:50:40 PM EST,    Letter ID: 1623633231
Location : MCF
Housing : UNIT 4100B01

BECAUSE PERRONE WAS STILL MY ATTORNEY UNTIL 12/13/2017.

AFTER RECEIVING MS. CRINO'S RESPONSE TO AGC. ANOTHER UNKNOWN PROSECUTOR FORM INGHAM COUNTY FILED A GRIEVANCE AGAINST PERRONE BASED ON HIS MENTAL IMPAIRMENTS AND BEHAVIOR. (request to see copies of their responses from CRINO and Roth to AGC) behavior towards him and his case which again Perrone was appointed in July for a murder trial about to start on 12/04/2017 was postponed to April 23 2018 and Perrone was dropped from the case (do yu know the prosecutor's name)? according to their explanations Perrone kept calling "Bill" I think assuming Bill Crino related to Kahla Crino and left crazy messages with him as well. Perrone was. accusing Roth for "lying and cheating" him in my trial they even asked police to patrol their streets where they live just to feel safe in case Perrone was released early from the mental hospital.
ON THAT GRIEVANCE YOUR NAME AND MS. TIFFANY DEBRUIN'S NAMES WERE MENTIONED AS WELL.

SO THIS MEANS THERE WAS ANOTHER PERSON GRIEVED PERRONE OTHER THAN ME AND YOU FAILED TO TALK ABOUT THAT IN MY GINTHER HEARING. OMISSION IS LYING.

YOU FAILED TO REPORT THAT PERRONE WAS AT SPARROW HOSPITAL IN AUGUST OF 2017 FOR ANXIETY RELATED ISSUES/CHESTNPAINS., BEFORE MY TRIAL

If you remember I saw you more than Perrone at county jail and according to your testimony you just started working for Perrone in September 2017 as part-time employee, I trusted you to relay messages to Perrone, about trial strategy, witnesses, what to ask to witnesses including main Prosecution witness Erika Melke which you did not ask any of the questions I gave you to ask.

You know as well as I do that Perrone was not ready at all for my trial, his was not ready with pretrial motions, turned jury instructions on the first day of trial.

He did not subpoena any Res Gestea witnesses for defense , nor did any investigation to any claims I made, he was mixing up who is who on the witness list which he turned in 7 days before trial starred and expected prosecution to subpoena all defense witnesses because he did not get paid last time from the county according to his words on 10/20/2017 evidentiary hearing.

During trial he was having psychosis, delusions,  uncontrollable laughs of the wall remarks etc.

He pist off jury members by asking them bizarre questions and no strategy at all , turned in jury instructions on the first day of trial , did not object very late Brady material disclosure about Jailhouse informants snitching on others at county with immunity given to them.

They (Prosecutors and judges, including you) hid all attached information from me about Perrone's mental issues which I collected all under FOIA.

Did you ever see  12/18/2017 document sent to Silverthorn from Koop about Perrone's Lansing police report and PRT form?

you did communicated with my brother see attached e-mails about Perrone being in hospital and I should retain "A" list lawyer

were you the one requested transcripts on 12/12/2017 judge's in chamber meeting about if Perrone can represent me or not? where Perrone was representing his self interest not mine. I did not have conflict-free attorney to represent my interest and on 12/13/2017 as well

Did Perrone go to Dallas right after my trial ended on 11/09/2017? how did he end up at sparrow mental hospital on 11/13/2017 and 11/14/2017 UofM mental hospital and and eventually at Saginaw mental hospital. for 3 days and released against doctor's orders and another  mental episode on 11/20/2017

PERRONE WAS NOT MEDICATED BEFORE AND DURING TRIAL AND YOU MUST HAVE NOTICED SOME KIND OF ODDITY WITH HIM

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1623633231  [P 3/3]

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To :  Inspector Services
Date :  10/31/2022 8:50:40 PM EST,    Letter ID: 1623633231
Location :  MCF
Housing :  UNIT 4100B01

Thank you for your input and hope that you would answer all my  questions honestly this time.

Respectfully

Tunc Uraz

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

MICHAEL V. GOETZ
*GRIEVANCE ADMINISTRATOR*
KIMBERLY L. UHURU
*DEPUTY ADMINISTRATOR*
CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*
SARAH C. LINDSEY
*GENERAL COUNSEL*

**STATE OF MICHIGAN**

**ATTORNEY GRIEVANCE COMMISSION**

*ASSOCIATE COUNSEL*

EMILY A. DOWNEY
JOHN K. BURGESS
MICHAEL K. MAZUR
KENNETH E. FRAZEE
PAMELA I. LINVILLE
CORA L. MORGAN
ROBERT W. NOVY
GRAHAM G. LEACH
MARY A. BOWEN
AUSTIN D. BLESSING-NELSON

PNC CENTER
755 W. BIG BEAVER RD., SUITE 2100
TROY, MICHIGAN 48084
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

March 16, 2023

**PERSONAL AND CONFIDENTIAL**

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

**RE:     Tunc Uraz as to Eric Schroeder**
         **AGC File No. 22-2094**

Dear Mr. Uraz:

The Commission is authorized to investigate, and when necessary, prosecute charges of attorney misconduct.  After preliminary investigation and careful review of the materials in this file by the Commission's staff, it has been determined that the matters raised in your Request for Investigation will not be pursued further.

Your Request for Investigation has been thoroughly reviewed. The facts as you have stated in your Request for Investigation do not constitute professional misconduct. We note Mr. Schroeder's explanations that, prior to and at the time of trial, Mr. Schroeder did not notice signs of mental instability in Mr. Perone. Further, the appellate courts have had the opportunity to review your claims in this regard and have not granted relief. We regret that we can be of no further assistance to you.

Our office feels Eric Schroeder has answered your allegations adequately.  I am enclosing a copy of the answer for your review.  We will take no further action.

Please be advised that this matter is being closed under the authority granted to the Grievance Administrator pursuant to Michigan Court Rule 9.112(C)(1)(a).

I hope that this letter adequately explains my office's position in this matter.

Very truly yours,

*Cynthia C. Bullington/jmb*

Cynthia C. Bullington
Assistant Deputy Administrator

CCB/jmb
Enclosure
cc: Eric Schroeder

MICHAEL V. GOETZ
*GRIEVANCE ADMINISTRATOR*

KIMBERLY L. UHURU
*DEPUTY ADMINISTRATOR*

CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*

SARAH C. LINDSEY
*GENERAL COUNSEL*

**STATE OF MICHIGAN**

**ATTORNEY GRIEVANCE COMMISSION**

*ASSOCIATE COUNSEL*

EMILY A. DOWNEY
JOHN K. BURGESS
MICHAEL K. MAZUR
KENNETH E. FRAZEE
PAMELA I. LINVILLE
CORA L. MORGAN
ROBERT W. NOVY
GRAHAM G. LEACH
MARY A. BOWEN
AUSTIN D. BLESSING-NELSON

PNC CENTER
755 W. BIG BEAVER RD., SUITE 2100
TROY, MICHIGAN 48084
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

March 16, 2023

**PERSONAL AND CONFIDENTIAL**

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

RE:     **Tunc Uraz as to Eric Schroeder**
        **AGC File No. 22-2094**

Dear Mr. Uraz:

The Commission is authorized to investigate, and when necessary, prosecute charges of attorney misconduct. After preliminary investigation and careful review of the materials in this file by the Commission's staff, it has been determined that the matters raised in your Request for Investigation will not be pursued further.

Your Request for Investigation has been thoroughly reviewed. The facts as you have stated in your Request for Investigation do not constitute professional misconduct. We note Mr. Schroeder's explanations that, prior to and at the time of trial, Mr. Schroeder did not notice signs of mental instability in Mr. Perone. Further, the appellate courts have had the opportunity to review your claims in this regard and have not granted relief. We regret that we can be of no further assistance to you.

Our office feels Eric Schroeder has answered your allegations adequately. I am enclosing a copy of the answer for your review. We will take no further action.

Please be advised that this matter is being closed under the authority granted to the Grievance Administrator pursuant to Michigan Court Rule 9.112(C)(1)(a).

I hope that this letter adequately explains my office's position in this matter.

Very truly yours,

*Cynthia C. Bullington/jmb*

Cynthia C. Bullington
Assistant Deputy Administrator

CCB/jmb
Enclosure
cc: Eric Schroeder

①

3/21/23

To Ms. CYNTHIA C. Billington
Assistant Deputy Administrator
755 W. Big Beaver Rd, St 2100
We care TROY, MI 48084

From TWC URÀZ #114653
Muskegon Correctional Facility
2400 S. Sheridan Dr
Muskegon, MI 49442

Re: Grievance filed against Mr Eric Schroeder
AGC # 22-2094

Dear Ms Billington
Thank you for sending me the response from Mr Eric
Schroeder. Here are the reasons for these
grievances filed against these attorneys to
expose their lies and complicent and ethically
chasing Not to report Perrone's Mental illness
to AGC
(1) None of these attorneys/prosecutors chose not
to Grieve Perrone per MCPC 11, 33, 6.5
8.3, 8.4 except one unknown prosecutor filed
a grievance against Perrone on 12/11/2018 which Ms
Chino disclosed along with emails from Ms E Allen
(Attachive #8 #9) October 2022

②

② See Perrone's Testimony dated 10/04/21 see page 35
Lines 4-25 Perrone testifies under oath penalty for perjury
that he took a trip to Dallas — "caused significant
exhaustion" — which caused my family significant concern
— leading to having an episode & I, Peter Anzaldi's

Per Mr. Schroeder response on 2/6/23 to AGC # 22-2074
pg 2 Para 2 "over the weekend the Peter had
claimed a mental health episode. He was hospitalized
for 3 days and released.) weekend 11/10/17 — 11/13/17
So this means he never travelled to Dallas

③ Why do I need to grieve all these attorneys to get the
tell the truth? They don't lie to AGC but they
have no problem lying on record at the court hearings.
and to while investigators & Perrone's condition this case

④ Look at Perrone's response to AGC on 05/25/2023 page 5
towards the end "I also claim that I started that I get
Stuck with two murder cases" which he was appointed. Now
after seeing unknown prosecutor's grievance on 12/4/2017 and
seeing Eric Schroeder answer to AGC, Perrone did have a
murder case appointed to him in July of 2017 and he
was dropped by Judge Aquilina of the 30th circuit court
Perrone was dropped from all the cases in the early of the
time including mine (See pg 3 E. Schroeder letters unknown prosecutor

Brief item (1) November 21 2017 3rd paragraph)

⑤ See ABA resolution 106 (requires courts to maintain an open
discussion and report these kind of misconducts See !!
AmericanBar.org/lawyer_assistance/resources/rise_law_pane



⑥ Per MCR 4.104 Any Act or omission by an attorney, individually or in concert with another lawyer, is misconduct and grounds for discipline, whether or not occurring in the course of attorney-client relationship. Omission is lying.

② I proved to AGC over and over again that Ferrone's mental illness - you have to be 2015 with his failure - PLT faxed filed on 4/19/21 to his Dismissal AGC wrote letter dated 08/19/21 addressed to me still telling me Ferrone's mental episodes happened several days after trial.

⑧ Per MCR 9.121 which is huge flaw in the investigation, AGC after each case is asking mentally ill person what is wrong with him by asking other attorneys for mentally mental illness when they are not qualified to do so.

Ms. Billington all I was looking for an honest investigation from AGC by appointing a special counsel and a neutral health expert to investigate the extent of Ferrone's mental illness and its affect on other cases as well. MRPC 8.3(a)

MRPC "A lawyer having in knowledge that another lawyer has committed a significant violation of the MRPC that raises a substantial question as to that lawyer's honesty. Trustworthiness, or fitness as a lawyer shall

④

All I was expecting from AGC After 4
years of investigation to come up with somekind
Of an investigation and finding the truth

I cant wait to see what kind of answer
Mr Duane Silverthorn is going to give or already
given about hiding 12/18/2017 Docs (About Perrone's
Second mental episode with police) and not sharing
with me, my appeal attorney or with AGC

I effected all attorneys Judges Prosecutors
when they took the oath with state bar to become
an attorney to honer their oaths but I guess
that is too much to ask in state of Michigan
Thank you for reading this letter.

Respectfully

Turc Uraz

Ⓑ They all failed to report Perrone's mental
issues this is the bases of all these grievances
and AGC is being complacent cluirin

J. PAUL JANES
*VICE-CHAIRPERSON*

LATOYA M. WILLIS
*SECRETARY*

*MEMBERS*
CHERYL A. BUSH
JAMES WEBB
KATHLEEN HICKY
WALLACE E. SMITH
KENDRAH B. ROBINSON
SAMY Y. WASSEF, MD

STATE OF MICHIGAN

# ATTORNEY GRIEVANCE COMMISSION

PNC CENTER
755 W. BIG BEAVER, SUITE 2100
TROY, MI 48084
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

KIMBERLY L. UHURU
*DEPUTY ADMINISTRATOR*

CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*

SARAH C. LINDSEY
*GENERAL COUNSEL*

*ASSOCIATE COUNSEL*
EMILY A. DOWNEY
JOHN K. BURGESS
MICHAEL K. MAZUR
KENNETH E. FRAZEE
PAMELA I. LINVILLE
CORA L. MORGAN
ROBERT W. NOVY
GRAHAM G. LEACH
MARY A. BOWEN
AUSTIN D. BLESSING-NELSON

April 4, 2023

## PERSONAL AND CONFIDENTIAL

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

RE:   **Tunc Uraz as to Eric Schroeder**
**AGC File No: 22-2094**

Dear M. Uraz:

We are in receipt of your letter dated March 21, 2023. We decline to reopen this investigation based on the reasons set forth in our original letter. Your most recent correspondence does not provide a basis for reopening this matter. No further action will be taken by this office.

Sincerely,

*Kimberly L. Uhuru*

Kimberly L. Uhuru
Deputy Administrator

KLU/ysb

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:38 PM EST,    Letter ID: 1623633195
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)                                    AGC
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01       NOV 04 2022
Date: 10/31/2022 20:50:38

Please do not reply to this email

AGC REBUTTAL

TO :
MS. CYNTHIA C. BULLINGTON
ASSITANT DEPUTY ADMINISTRATOR
ATTORNEY GRIEVANCE COMMISSION PNC CENTER
755 W. BIG BEAVER RD. ST 2100
TROY, MI 48084

FROM :
TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

Re: Rebuttal to :
1) Ms. Kahla Crino's (AGC File # 22-1542
2) Mr.Jonathan Roth's (AGC File # 22-1543)
3) AGC 's decision about Mr. Charles T. Koop II not being culpable in this matter (AGC File # 22-1544) 09/27/2022

Dear Ms. Bullington,

First I would like to thank you for letting me write a rebuttal to Ms. Crino's and Mr. Roth's responses to AGC.

Please try to read everything thoroughly with all the attachments.

Second:  Ms. Crino's envelope came open here I am not sure if anything is missing, would you please kindly send me another copy of her response (not the transcripts just her response letter and it's attachments #8 and #9)

AND

PLEASE SEND ME BACK COPIES OF ALL THE BRIEFS/ ATTACHMENTS THAT I SENT YOU IN THIS BRIEF BECAUSE THERE IS NO WAY I CAN GET COPIES OF THOSE DOCUMENTS IN PRISON DUE TO BEING "NOT ACTIVE COURT CASE".

FACTS:

1) MR. PERRONE HAD A MENTAL BREAKDOWN AND ENDED UP IN  MENTAL HOSPITALS TWICE IN THE MONTH OF NOVEMBER 2017 (11/14/2017 AND 11/20/2017).
 Mr. Uraz's trial was over on 11/09/2017.

When I first grieved Mr. Perrone in April 2018 (AGC Case # 18-0956) and send a rebuttal to Perrone's response in July of 2018, I did not hear back from AGC until I wrote a letter in January of 2022 inquiring if there is a decision made about the grievance?

On 18th. May 2022 after "4 years of investigation" Ms. Charise Anderson's response was:  (in part) And its monthly session on 03/16/2022, the AGC determined that the evidence reviewed did not warrant further action by commission...investigation closed...

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a jpay letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:38 PM EST,   Letter ID: 1623633195
Location : MCF
Housing : UNIT 4100B01

(she was the counsel appointed to this investigation, back in April 24 ,2018 and June 26th 2018, [letters you sent me back then] )

2)My family requested to see prosecution's file from Ingham County in May 2022 , in late July, once I received the files, I discovered that 12/18/2017, Mr. Koop informed Mr. Duane Silverthorn about Perrone's Second mental impairment dated 11/20/2017 along with Lansing Police report and PRT form, Oakland County judge decision dated 11/30/2017.(although the document said Clinton county with two case numbers # 17-29766-MI [Clinton] and 2017-380,077-MI [Oakland]

I immediately grieved Ms. Crino, Mr. Roth and Mr. Koop late July of 2022 for not disclosing this information to my Appeal Attorney Ms. Susan K. Walsh and myself before my Ginther hearings.
3) Late August, based on Mr. Roth's Ginther hearing testimony, my family requested under FOIA all Perrone and case related documents from Clinton County Probate Court, she was told none of the records exist/ not located # 17-29766-MI from Clinton County Clerk ;Deb Sutherland and Deputy clerk; Courtney Beard. (see attached messages to my sister Ms. Aysem Uraz.)

So on 07/21/2022 my family checked with Oakland County Case # 2017-380,077-MI, requested all documents related to Perrone and she was told documents are not available under FOIA but anyone can come down and request the documents in Person as long as willing to pay $1.00 per page (27 pages total) so one of friend's went down to Oakland County and retrieved them. (see attached message from Mr. Edward Hutton III , Oakland Probate Court)

At the same time my family obtained Lansing Police bodycam footage about Perrone's erratic behavior on 11/20/2017.

I immediately asked my family to email them to all AGC members (AGC email addresses does not accept larger files) ASAP on 08/26/2022. Therefore the docs and video was e-mailed to AGC members personal business email addresses. (see attached message)

I wanted to restart the investigation against Perrone with this newly found/discovered available evidences.

3) So as Ms. Uhuru's letter which was dated on 08/29/2022 only stated verbatim :
(in part) "After a Ginther hearing, the court denied your motion, finding that Mr. Perrone did not provide ineffective assistance of counsel. The commission investigation determined Mr. Perrone's medical issues occurred "SEVERAL DAYS AFTER" your trial, and there was insufficient evidence that they affected your trial."

I believe Ms. Uhuru is only focusing on Perrone's Second Mental impairment dated 11/20/2017, not the FIRST Mental Impairment dated 11/14/2017.
PLEASE SEE (attached) :PETITION FOR MENTAL HEALTH TREATMENT" FORM FILED BY PERRONE'S FATHER ON 11/14/2017 (which was part of the 27 page documents obtained from Oakland County and sent to AGC members via e-mail on 08/26/2022)

My jury trial ended on 11/09/2017 at 4:45pm. Perrone was at UofM mental hospital in the morning on 11/14/2017 (less than 90 hours later).
I am sure Perrone had a mental breakdown before 11/14/2017.

SEE SECTION (D)(i):
08/17 Went to Sparrow Hospital with severe anxiety [before my trial]

11/17 went to Sparrow Hospital w/chest pains left Against medical advice (most likely right after my trial ended 11/09/2017)

sec (ii)
"Punches holes in walls, is verbally abusive to his wife, has said he will "KILL" &/or destroy everyone, will take over Lansing + w/an iron fist..

MCF Lock:UNIT 4100B01 ID:1623633195 [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:38 PM EST,          Letter ID: 1623633195
Location : MCF
Housing  : UNIT 4100B01

****"THIS HAPPENS WEEKLY FOR THE LAST TWO YEARS AT LEAST"****

(this means Perrone has been  Paranoid Schizoaffective disorder, Bipolar Type at least since 2015 or even before, untreated, unmedicated, undiagnosed)

2nd page
SEC 4 (a)
"HE HAS MANY ANGRY OUTBURSTS, DISORGANIZED THOUGHTS, HE THINKS HE IS THE MOST INTELLIGENT PERSON IN THE WORLD, HE WILL "DESTROY" OR KILL EVERYONE, HE HAD CALLED HIMSELF "MY SUICIDAL SON", HAS MANY ANGER ISSUES.
signed by Joseph V. Perrone 11/14/2017

SEE THE REST OF THE PROBATE (CLINTON/OAKLAND) COURT DOCUMENTS (ATTACHED). ATTORNEY JACOB PERRONE, PSCY EVALUATIONS, PERRONE REFUSED FOR TREATMENT AND MEDICATION AND REFUSED TO MEET COURT APPOINTED ATTORNEY MS. LISA ZATYKON(see attached email end of the brief)

TUNC URAZ, 114653 MCF Lock:UNIT 4100B01  ID:1623633215  [P 1/2]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 10/31/2022 8:50:40 PM EST,   Letter ID: 1623633215
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/31/2022 20:50:39

Please do not reply to this email

2) REBUTTAL AGC

THE GINTHER HEARING WAS GRANTED SOLELY BASED ON PERRONE'S E-MAIL to his sister, brother (dated 11/08/2017 one day before the trial ended) , HIS TEXT MESSAGES TO HIS SISTER,  HIS PSCY MEDS GIVEN TO HIM ON 11/14/2017 AT HEALTHSOURCE WHITE PINE MENTAL HOSPITAL (PERRONE handed them to me accidentally on 12/13/2017 before in court hearing)   (SEE ATTACHED Documents)

see COA Register of Actions Case #'s 343695 and 343696  (People V Uraz 2019 Mich App 742 (04/15/2019) and People V Uraz 2020 Mich App Lexis 1740, (03/06/2020)

REBUTTAL TO MS. CRINO'S BRIEF:

 GINTHER  HEARING  ONLY  ADDRESSED  ONY  PERRONE'S  SECOND  MENTAL  HOSPITALIZATION  ON 11/20/2017.

HERE ARE THE FACTS : MOST LIKELY MY MAACS/COURT APPOINTED APPEAL ATTORNEY MS. SUSAN K. WALSH, DID NOT REQUEST ANY DISCOVERY PACKAGE FROM INGHAM COUNTY PROSECUTOR, SHE ONLY REQUESTED PRE-TRIAL, TRIAL AND SENTENCING TRANSCRIPTS. (Per Mr. Perrone's response to AGC [#18-0956] dated 05/29/2018 addressed to Ms. Bullington) pg. 7 "I have yet to hear  heard from his appeal attorney and will make copies available upon request". I turned over over copies of documents requested by Mr. Uraz at his sentencing through his attorney. Further, I sent Mr. Uraz copies of his file in its entirety on May 29, 2018. (Yes he did but there were so many "missing, not disclosed documents", I noticed once I received Prosecution's file in July 2022).

When Mr. Silverthorn requested (01/10/2018) discovery package from prosecutor's office, he was told to contact Perrone to get them from him (see attached e-mail messages, read both sides)

Ms. Walsh  NEGLECTED  (see attached letter to Ingham County dated 03/26/2018)  TO GET TRANSCRIPTS RELATED TO PERRONE'S MENTAL COMPETENCY HEARINGS IF HE IS FIT TO REPRESENT ME FOR SENTENCING.

12/12/2017 hearing was held at judge's chambers (see attached transcript) In this meeting :
Jonathan Roth, Charles Koop, Jacob Perrone, Eric Schroeder, Nick Fernandez were in attendance.

I  WAS  DEPRIVED  OF  MY RIGHT TO CONFLICT-FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (12/12/2017, JUDGES IN-CHAMBERS MEETING) WHEN (PERRONE) WAS PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH WERE ADVERSE TO HIS CLIENTS? (Perrone admitted on record that he was not medicated before and during trial )pg.7 lines 4-9
HE PERJURED SAYING THAT I HAD MY APPROVAL TO REPRESENT ME FOR SENTENCING, THIS COULD HAVE BEEN IMPOSSIBLE BECAUSE THE 12/18/2017 DOCS SENT TO SILVERTHORN CONTAINED A "Initial order after hearing on petition for mental heath treatment" ORDER FROM JUDGE HALLMARK (Oakland County) SIGNED ON 11/30/2017,  FOR PERRONE SPENT 10 DAYS IN HOSPITAL AND 80 DAYS OUTPATIENT TREATMENT (COMBINED ORDER), THEREFORE PERRONE WAS NOT ELIGIBLE/FIT TO REPRESENT ME.

THIS IS WHY PROSECUTOR ROTH OBJECTED PERRONE TO REPRESENT ME (12/12/2017, pg 4 line 22-25 and pg 5 lines 1-13, (state Bar and Chief Judge (Richard Gracia)  is aware of Perrone's mental impairment and him removed from other cases)

ON 12/13/2017 WHEN I WAS CALLED TO COURT TO "LAY OUT OPTIONS" WHETHER PERRONE WOULD CONTINUE TO REPRESENT ME FOR SENTENCING, YET THE DECISION WAS ALREADY MADE BY JUDGE TO

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1623633215 [P 2/2]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:40 PM EST,   Letter ID: 1623633215
Location : MCF
Housing : UNIT 4100B01

DROP PERRONE AND APPOINT SILVERTHORN TO REPRESENT ME.
see attached (12/13/2017) transcripts.

ONCE AGAIN I WAS DENIED TO HAVE A CONFLICT-FREE ATTORNEY TO REPRESENT MY INTEREST IN THIS HEARING AS WELL 12/13/2017. PERRONE WAS NOT ALLOWED TO SIT NEXT TO ME AND Mr. Silverthorn arrived last 3 minutes of the hearing (please request to see camera footage of this hearing, my family tried but no luck). (please see attached case from Kentucky Supreme Court July 2020 decision based on exact same circumstances as mine, the conviction was overturned for not having a conflict-free attorney) (Downs v Commonwealth, 2020 Ky. Lexis 222 Supreme Court of Kentucky , 07/09/2020

MS. CRINO'S BRIEF TO AGC HER EXPLANATION SECOND PARAGRAPH (PG .2) (in part) ..."I have a personal practice of providing discovery to any appellate attorney who has trouble obtaining discovery from trial counsel...I did not locate a request from Ms. Walsh.... (most likely Ms. Walsh did not request any discovery package neither from Perrone NOR Silverthorn) therefore the 12/18/2018 docs. sent to Silverthorn from KOOP were never disclosed to Ms. Walsh NOR myself.

This means Ms. Crino failed to provide this vital document (12/18/2017, Perrone PRT forms) to Ms. Walsh and I regardless with her (don't ask, don't tell policy).

Ginther hearing was granted 03/06/2020 and with Covid delays my first hearing was on 10/04/2021 (18 months later and another 6 months later on 4/13/2022 when I testified total of 24 months). (it was postponed because Roth was the prosecutor for Governor Kidnapping Plot, with U.S. Federal Courts). Ms. Crino had Plenty of time to review/read any "trial level correspondence".

THIRD PARAGRAPH PG.2 (in part) I do not routinely read trial-level correspondence as part of an appeal unless there is a special reason to do so...I was not personally aware ...they existed Before Mr. Uraz's Ginther hearing...) Well please take look at Ms. Crino's Ginther hearing transcripts dated 10/04/2021, MS. CRINO WAS VERY THROUGH EXAMINING EACH WITNESS. (see pgs from 12-45) SHE TOOK HER TIME AND ASKED VERY DETAILED QUESTIONS TO PERRONE AND TO SCHROEDER.

SHE ASKED PERRONE IF HE HAD A MENTAL BREAKDOWN EACH DAY OF THE TRIAL DAY BY DAY IF PERRONE NOTICED ABOUT PERRONE'S BEHAVIOR OR ANY "INEFFECTIVENESS" REPRESENTING ME DURING THE TRIAL.

(this doesn't make sense because what is mentally impaired person is going to say about their behavior, how would they even understand, know, diagnose their own ailments , ANASOGNOSIA one denying their own mental illness )

See the flaw in MCR 9.121 Section (C) asking the respondent/ sole practioner answering their own grievances who may suffer from a mental disability may not recognize that he or she even has a disability which may mitigate the alleged misconduct.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1623633181 [P 1/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:37 PM EST,   Letter ID: 1623633181
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/31/2022 20:50:37

Please do not reply to this email

3) REBUTTAL AGC

ONE MORE ASPECT OF CLINICAL DEPRESSION IS THAT IT HAS USUALLY LASTED SUCH A LONG TIME THAT BECOMES THE NORM AND IS RECOGNIZED BY THE VICTIM (IN THIS CASE ATTORNEY) AS NORMAL. (SEE ARTICLE BY CHARLES F. JUSTIAN. 75 MI BAR JNL.1026 OCTOBER 1996)
FEATURE: MALPRACTICE/ ATTORNEY DISCIPLINE: A TIME FOR CHANGE; HELPING ATTORNEYS WHO HAVE MENTAL OR PHYSICAL ILLNESSES THAT PRECIPITATE GRIEVANCES

MS.CRINO'S FOURTH ,FIFTH and SIXTH PARAGRAPH explanation

MY APPEAL ATTORNEY WAS NOT EVEN READY FOR THIS HEARING AT ALL , ALTHOUGH I SENT HER SEVERAL DOCUMENTS, QUESTIONS TO ASK EACH WITNESS, SHE DIDN'T EVEN BRING IN A EXPERT WITNESS TO TESTIFY ABOUT TRAITS OF BIPOLAR/ SCHIZOAFFECTIVE DISORDER, BORDERLINE-PERSONALITY DISORDER AND ADDERALL-USE DISORDER (AMPHETAMINE).

COURT OF APPEALS REMAND ORDER Dated 03/06/2020 specifically stated: "ARE LIMITED TO THE ISSUES RAISED IN THE MOTION TO REMAND"

Here are the issues Ms. Walsh raised on her motion to remand 02/22/2019

1) Severance of cases based on sheer number of prior bad act evidence
2) introduction of Unduly prejudicial evidence concerning prior bad acts
3) prosecution's failure to disclose Brady Material (same as now)
4)Denial Mr. Uraz's motion to dismiss based on entrapment
5)defense counsel Mental breakdown of trial counsel during trial, (not effectively try the case, failed to cross examine witnesses (defense and prosecution), failed to impeach based on their theft related conviction
6)Prosecution's misconduct which consisted of denigrating defense counsel in front of the jury.

AFTER MS. WALSH'S VERY "LIMITED" QUESTIONING OF PERRONE, MS. CRINO STARTED ASKING QUESTIONS BEYOND THE SCOPE OF THE ISSUES RAISED IN MS. WALSH'S BRIEF TO PERRONE. SEE GINTHER HEARING TRANSCRIPTS PGS.14 -16

ALTHOUGH MS. WALSH OBJECTED THIS LINE OF QUESTIONING, JUDGE ALLOWED IT.

THIS WAS A CLEAR ABUSE OF DISCRETION BY ALLOWING PROSECUTOR TO QUESTION MR. PERRONE ANS HIS BEHAVIOR DURING TRIAL AND ONLY "HAND PICKED" ISSUES TO SHOW "FAVORABLE" OUTCOME FOR MR. PERRONE.

AFTER ASKING PERRONE IF HE HAD MENTAL BREAKDOWN EACH DAY OF TRIAL, NOT EVEN ASKED ABOUT THE CRAZY E-MAIL PERRONE SENT TO MY FAMILY ON 11/08/2017 (day before trial ended)

****FACT NO ONE COMES DOWN WITH A MENTAL ILLNESS OVERNIGHT, IT IS A LIFE LONG STRUGGLE, (see Perrone's father PRT form filled on 11/14/2017, which says he has been like that least 2 years)

PERRONE'S ORGANIC BRAIN DAMAGE SCHIZOPHRENIA AND BIPOLAR DISORDER CAN CONSPRIRE TO CREATE SEVERAL MENTAL IMPAIRMENT PSYCHOSIS AND OTHER SERIOUS MENTAL HEALTH PROBLEMS THAT BURDENED HIM COULD LEAD TO DANGEROUS BEHAVIOR. BUT HIS BEHAVIOR WAS A MANIFESTATION OF SERIOUS ILLNESS NOT A REFLECTION OF HIS CHARACTER.

From TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1623633181  [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:37 PM EST,   Letter ID: 1623633181
Location : MCF
Housing : UNIT 4100B01

SO HERE ARE PERJURY COMMITED BY PERRONE ON RECORD ON 10/04/2021  GINTHER HEARING TRANSCRIPTS
After Ms. Crino's very specific questioning of Perrone see pgs. 12-35 finally the main question:

Pg 35 Lines 4-25
Crino : Did an issue arise with your mental health?

Perrone: Yes about a week after the trial, I took a trip to Dallas right after I got done with the trial and didn't sleep really, I had to fly sooner than anticipated for a family issue, which caused "significant exhaustion" which led to me having some different---I had to go to hospital because of the "exhaustion" which caused my family significant concern, which ended up leading to having an episode, A "BIPOLAR DISORDER"

Crino: OK is it fair to say, then a week after the verdict in this case, you had an episode and that episode led to a mental health diagnosis?

Perrone: Yes

Crino: OK you mentioned Bipolar, Is that the diagnosis that you ultimately received?

Perrone : Yes

FACT :

See attachments sent by Ms. Crino

1) attachment# 8  This Person grieved Perrone on 12/11/2017 to Attorney Grievance Commission due to Perrone harassing him constantly during that time period.

Well although he wanted to stay anonymous if you look at attachment# 9 it talks about email from Elizabeth Allen to Roth about "Bill" (William Crino) is being harassed by Perrone constantly. I am assuming he is related to Ms. Kahla Crino, or it he could be Roth based on his interview gave to P/I 09/23/2021.

SO BASED ON PERRONE'S FATHER PRT FORM DATED 11/14/2017 AND MR. BILL CRINO'S EXPLANATION OF PERRONE'S BIZARRE BEHAVIOR TOWARDS HIM, HERE IS THE TIMELINE, my trial ended 11/09/2017

FROM UNKNOWN PERSON AGC GRIEVANCE:

first meeting scheduled 11/15/2017 for a jury trial about the start on 12/04/2017  (murder) here is lie by Perrone (pg 3 of his response to AGC dated 05/29/2018, #5 towards the end "I also deny that I stated that I got stuck with two murder cases" which he was appointed on July 2017.

I am assuming the Person on Attachment # 8 is Bill Crino Based on Ms.Elizabeth Allen's email to Roth attachment 9 (since he wanted to remain anonymous , names were all redacted)

Perrone sent this person message on 11/10/2017 Veterans day to his work e-mail to call him after 11:30 on 11/13/2017 Monday : phone call/left message from Perrone about family problems mainly related to his "father".

Second meeting scheduled 11/17/2017 called this person and told him "everything is resolved" THAT WAS THE DAY PERRONE LEFT SAGINAW WHITE PINE MENTAL HOSPITAL WITH HIS OWN WILL.

11/19/2017, Sunday Perrone sent a email wanted to have meeting on 11/20/2017, But he didn't show up 11/21/2017 Perrone called this person told him that  "his father inappropriately  put him in a f...ing psyc ward at Sparrow Hospital"

2) Attachments #9 by Ms Crino;  Is talking about Ms. Elizabeth Allen Prosecutor at Ingham County sent an emal to

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1623633181 [P 3/3]

**You have received a jpay letter, the fastest way to get mail**

From    : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:37 PM EST,    Letter ID: 1623633181
Location : MCF
Housing : UNIT 4100B01

ROTH about Perrone being "PRT'ed past two weeks and was calling Bill from therez he had a hearing this week in Clinton County (11/30/2017)

If Perrone was released , she was thinking about someone "Boeve" to patrol Roth's house randomly, she thinks it's more serious.

DEC 2nd 2017 email to Ms. Allen
Roth: He is concerned about Perrone's harassing calls, if he is released or not.

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:36 PM EST, Letter ID: 1623633168
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/31/2022 20:50:36

Please do not reply to this email

4) AGC 10/31/2022

11/30/2017 Elizabeth Allen sent a message to Roth about Perrone calling Bill Crino 5-6 times a day, Leaving phone messages , placed phone to ROTH, "SEVERAL TIMES" , rambling voicemails, about Roth and how Perrone is obsessed with about Roth "lied" and "cheated" on the URAZ case, Bill is approached her and told her that he is concerned about Perrone obsession and anger towards Roth.

SO BASED ON BOTH MS. CRINO'S (8-9) attachments AND MR. ROTH'S ATTACHMENT (#2) AND MR. PERRONE'S FATHER'S PRT FORM FILED ON 11/14/2017,

***IT IS SAFE TO SAY THAT MR. PERRONE DID NOT GO TO DALLAS, HE WAS SENT TO MENTAL HOSPITAL PSYCH WARD ON OR BEFORE 11/14/2017 INVOLUNTARY BY HIS FATHER AND WIFE.

Pg. 36 continued 04/13/2022 Ginther hearing
Crino: Did you share that information with Uraz the next time you saw him?
Perrone : Yes
Crino: How and when exactly did that occur?
Perrone: As soon as I was available, I spoke with Uraz and explained to him why I had been unavailable and then, we had to address the court with it.
Crino: Did Mr. Uraz tell you that he wanted you to continue representing him?
Perrone: He did
Crino: What did he say exactly?
Perrone: Given the nature of our relationship at that point in the time he was happy with I have done and the efforts that I'd put it, so he told me that he wanted me to continue as his attorney.

FACT : HE DIDN'T SHARE ANYTHING WITH ME,. MY FAMILY TOLD ME AFTER HIS CRAZY TEXT MESSAGE TO MY SISTER (see attached).

04/13/2022 GINTHER HEARING TESTIMONY PG. 43-51 MS. CRINO BADGERED MR. URAZ ABOUT 12/13/2017 DECISIONS MADE BY JUDGE TELLING HIM PERRONE WOULD BE REPLACED BY SILVERTHORN AND PERRONE WOULD HELP HIM OUT IF NEEDED FOR SENTENCING.

ALL I DID WAS TO ACKNOWLEDGED WHAT I HEARD FROM JUDGE, BUT MS. CRINO SOMEHOW BELIEVED THAT I AGREED TO THIS ARRANGEMENT.

WELL AFTER SEEING OAKLAND/CLINTON COUNTY RECORDS, ON 11/30/2017 JUDGE ORDERED PERRONE TO HAVE 90 DAYS OF MENTAL HEALTH TREATMENT 10 DAYS WAS ALREADY SPENT INTERMITTENTLY BETWEEN 11/14/2017 -11/30/2017.

JUDGE ORDERED TO HAVE 80 DAYS OF OUTPATIENT TREATMENT AT LOCAL COMMUNITY MENTAL HEALTH CENTER WITH HIS PSYCH MEDS.

PERRONE COULD NOT HAVE REPRESENTED ME REGARDLESS BECAUSE OF COURT ORDER TREATMENT. THIS IS WHY MR. ROTH INSISTED ON SWITCHING PERRONE.

I did not agree to him representing me for my sentencing on originally scheduled 12/20/2017 and it was postponed to 11/24/2018 due change of attorneys.

FACT: MS. CRINO KEEP SAYING THAT MR. PERRONE'S MENTAL ILLNESS HAPPENED AFTER TRIAL BUT HE

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1623633168 [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:36 PM EST,    Letter ID: 1623633168
Location : MCF
Housing : UNIT 4100B01

WAS STILL MY ATTORNEY ON RECORD UNTIL 12/13/2017 IN COURT HEARING WHEN IT WAS SWITCHED TO SILVERTHORN

FACTS :

>SINCE ALL THESE ATTACHMENTS BY MS. CRINO AND ROTH ARE COMMING LIGHT
AND
>MS. ELIZABETH ALLENS E-MAIL MESSAGES
AND
>THE GRIEVANCE FILED AGAINST PERRONE BY THIS "UNKNOWN" PERSON ON 12/11/2017 1 DAYS BEFORE JUDGES CHAMBERS MEETING.
MS. CRINO SHOULD HAVE KNOWN ABOUT PERRONE'S EXTENDED MENTAL ISSUES. HER EXCUSE OF I DIDN'T KNOW, I WAS NOT AWARE OF THIS IS NOT A EXCUSE ESPECIALLY PERRONE HARASSING/STALKING SOMEONE SHE KNOWS (BILL CRINO)

> 12/18/2017 KOOP MESSAGE TO SILVERTHORN ABOUT 11/20/2017 POLICE REPORT AND PRT REPORT ABOUT PERRONE.

>AGC'S COMPLACENCY TOWARDS 12/11/2017 GRIEVANCE AGAINST PERRONE BY A INGHAM COUNTY PROSECUTOR
AND
>MY GRIEVANCE AGAINST PERRONE IN APRIL 2018,
AND
>AGC'S RESPONSE TO ME 4 YEARS LATER SAYING THAT, THERE WAS NOTHING WRONG WITH PERRONE ALTHOUGH THERE IS CLEAR PATTERN OF MISCONDUCT BY PERRONE.
AND
>I HAD TO FILE GRIEVANCES AGAINST CRINO, ROTH AND KOOP IN JULY OF 2022 ATTACHING 11/20/2017 PERRONE PRT AND POLICE FORMS, TO GET THEM ADMIT PROVIDE MORE EVIDENCE.
> PROBATE COURT DOCUMENTS 27 pages FROM OAKLAND AND CLINTON DISCOVERED THAT ON 11/14/2017 PERRONE'S FATHER ON HIS PRT FORM SAYING THAT PERRONE HAS BEEN MENTALLY ILL AT LEAST PRIOR TO MY TRIAL (2015)

I DID ASK MY APPEAL ATTORNEY TO FILE MOTION FOR A SECOND GINTHER HEARING TO EXPAND THE RECORD BY INCLUDING
JOSEPH V. PERRONE (Perrone's Father)
Ashley Perrone (His wife)
Lansing Police officer (McBride)
Ron Perrone (not sure relationship)
William Perrone (Perrone's uncle) his name is on police report.

NEW DISCOVERED MATERIAL;

MS. ELIZABETH ALLEN AND
UNKNOWN PERSON WHO FILED A GRIEVANCE AGAINST PERRONE ON 12/11/2017 (I think it was Bill Crino) the reason it is redacted because he is related to Ms. Crino which makes her "accomplice" in this matter. She should had had known about this grievance by default.

I AM ASKING AGC TO ACKNOWLEDGE PERRONE'S MENTAL ILLNESS, REQUEST AN INDEPENDENT INVESTIGATION BY APPOINTING A PSYCHOLOGIST TO EVALUATE PERRONE'S HISTORY OF MENTAL ILLNESS, REACH OUT EVERY ONE NAMED ABOVE TO GET THEIR NAMES INCLUDING JUDGES RICHARD GARCIA, CLINTON CANADY AND ANY OTHER JUDGE KNOW ABOUT OR EXPERIENCED PERRONE'S MENTAL AILMENTS.

APPOINT AN INDEPENDENT INVESTIGATOR TO DELVE INTO PERRONE'S LIFE TO SEE HOW LONG HE HAS BEEN MENTALLY ILL.

You have received a **JPay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To :  Information Services
Date : 10/31/2022 8:50:36 PM EST,    Letter ID: 1623633168
Location : MCF
Housing : UNIT 4100B01

THIS IS WHY AFTER ALL THIS INFORMATION CAME INTO LIGHT
ABOUT PERRONE'S BIZARRE AND ERRATIC BEHAVIOR TOWARDS PEOPLE LISTED ABOVE IT WOULD BE
VIOLATION OF MRPC 6.5
AND AS FOR MRPC 8.3 IN BOTH WAYS FOR ROTH NOT DISCLOSING ATTACHMENT 2 IN HIS TESTIMONY OR
HIS INTERVIEW WITH PRIVATE INVESTIGATOR ON 09/23/2021 JAMES D. HOPPE "HE IS NOT AWARE THAT
PERRONE SUFFERED ANY MENTAL OR PHYSICAL HEALTH CRISIS" (see attached report)
AND MS. CRINO's NONCHALANT ATTITUDE OF "I DIDN'T KNOW" IS NOT AN EXCUSE.

I AM EXPECTING AGC TO TAKE AN ACTION AGAINST ALL ATTORNEYS INCLUDING JUDGES WHO HAS
INVOLVED WITH THIS COVER UP.
INCLUDING AGC IT SELF AS AN ORGANIZATION TO APPROACH MENTAL ILL/IMPAIRED  ATTORNEYS WITH
MORE SERIOUS INVESTIGATION AND CHANGE MCR 9.121 SECTION (C) stop asking what is wrong the very
same person who is mentally impaired to defend themselves.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1623633160  [P 1/2]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:34 PM EST,   Letter ID: 1623633160
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/31/2022 20:50:34

Please do not reply to this email

5) 10/31/2022 AGC

MS. CRINO CONVENIENTLY IGNORED PERRONE'S EMAIL TO MY FAMILY ON 11/08/2017 AND WHEN MS. WALSH ASKED ABOUT PERRONE'S RESPONSE WAS: (in part) ...during trial and did appear to be some dejection on prosecutor's part****(DELUSION) I THINK THAT WAS AFTER THE TRIAL (PERJURY) HAD BEEN CONCLUDED. BUT INWAS TRYING TO BE POSITIVE FOR MR. URAZ AFTER HE MADE THE DECISION TO GO TO TRIAL, THERE WAS NO OTHER OPTION ....I was trying to give hope to his family (by lying to them) (in part)
10/04/2021 pgs. 39-40 Lines 1-25
FACT THAT E-MAIL (attached) was sent on 11/08/2017 at 10:00 am, trial was concluded by 4:45 pm on 11/09/2017


FOR MS. CRINO TO SAY IN HER BRIEF, I FAILED TO PUT/SUBMIT PERRONE'S TEXT MESSAGES TO MY SISTER AND HIS PSYCH MED SHEET ON THE RECORD AS AN EVIDENCE, I TRIED HOWEVER I WAS STOPPED BY JUDGE CANADY, SEE GINTHER HEARING 04/13/2022 PG 40 Lines 7-16

AND MY  20 YEARS + EXPERIENCED APPEAL ATTORNEY (SUSAN K. WALSH) DID NOT BOTHER TO INTRODUCE THEM AT THAT TIME. ALTHOUGH THEY WERE PART OF MY STANDARD 4 BRIEFS WHICH WERE FILED IN APRIL 2019 MS. CRINO'S INTERN IN FEBRUARY 2020 WROTE A RESPONSE BRIEF TO MY STANDARD 4, IF HE WOULD HAVE PAID ATTENTION TO THE EXHIBITS OF MY STANDARD 4, HE OR MS. CRINO WOULD HAVE SEEN PERRONE'S PSCH MEDS SHEET AND HIS CRAZY TEXT MESSAGES TO MY SISTER.

APPEAL ATTORNEY WALSH 04/13/2022 PG 64  Line 22-24 shows you Ms. Walsh's  preparedness to this Ginther hearing,
Judge asks both Crino and Walsh to submit briefs
Walsh: "Yea, I know Ms. Crino is a trial GAL and I think she does an excellent job. I AM A WRITER, SO I WOULD PREFER TO DO A BRIEF.
this is why I have asked SADO to either give support to Walsh, or replace her with another Ginther experienced attorney.


PERRONE'S DEALINGS, SPARING BETWEEN HIM AND ROTH AS PERRONE PUT IT VERY LIGHTLY "GAMESMANSHIP" BETWEEN ADULTS.
SO HERE ARE THE REALTIO OF THIS EGREGIOUS ACTS COMMITTED BY AGC, COURTS, PROSECUTORS, JUDGES AND COURT APPOINTED ATTORNEYS.

IT DOESN'T MATTER WHETHER PERRONE'S MENTAL ILLNESS HAPPENED AFTER MY TRIAL OR NOT WHAT MATTER IS THE FACT THAT NO ONE EXCEPT I AND AN UNKNOWN PERSON PROSECUTOR HAD THE GUTS TO GRIEVE PERRONE FOR HIS MISCONDUCT OF NOT REPORTING HIS MENTAL IMPAIRMENTS.

IT IS PROSECUTOR'S SWORN DUTY TO PROTECT DEFENDANT'S RIGHTS NOT IGNORE THEM, BY HIDING THIS EVIDENCE FROM ME IS NOT RIGHT.

THIS IS A MAJOR BRADY VIOLATION ON THEIR PART :

"TRYING TO MINIMIZE THEIR CULPABILITY BY SAYING," I DIDN'T KNOW OR I FORGOT" ESPECIALLY FROM TWO GOOD PROSECUTORS.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/31/2022 8:50:34 PM EST,    Letter ID: 1623633160
Location : MCF
Housing : UNIT 4100B01

CRINO AND ROTH HAVE BEEN HOLDING ON TO THIS EXCULPATORY EVIDENCE SINCE 2017 AND I BELIEVE

THIS IS PEOPLE'S LIFE AT STAKE HERE,

WOULD YOU FLY WITH A PILOT WHO IS MENTALLY IMPAIRED, NOT MEDICATED, UNTRATED, UNDIAGNOSED?

WOULD YOU LET A DOCTOR/SURGEON TO OPERATE ON YOU WHO HAS A MENTAL ILLNESS? NOT MEDICATED? OF COURSE NOT.

THESE ARE ALL MALPRACTICES.
WHY IT IS NOT THE SAME FOR ATTORNEYS WITH MENTAL ILLNESS?

DIMINISHED CAPACITY DEFENSE IS NOT ALLOWED FOR DEFENDANT IN MICHIGAN, THEREFORE WHY DIMINISHED CAPACITY ATTORNEY IS ALLOWED TO REPRESENT A CLIENT?
THESE TWO ISSUES ARE INTERTWINED WITH EACH OTHER.

ONE CANNOT FORM A SPECIFIC INTENT TO DEFEND SOMEONE WHEN THEY HAVE MENTAL ILLNESS.

MICHIGAN LAWYERS WEEKLY NEWSPAPER (MILAWYERSWEEKLY.COM)

SEE VOLUME 34 NUMBER 26 APRIL 27 2020
"Michigan Supreme Court revises mental health inquiry on bar exam application : "conduct-based question" will replace "diagnoses-based questions" , meaning potential lawyer/attorney will be asked a conduct based question "if any behavior IN THE PAST 5 YEARS COULD CALL INTO QUESTION their ability to practice law properly.

SO IN THE STATE BAR MICHIGAN IS ASKING MENTALLY IMPAIRED POTENTIAL ATTORNEY CANDIDATES : WHAT IS WRONG WITH THEM ONLY 5 YEARS PRIOR TO THEIR APPLICATION ANYTHING BEFORE THAT CUT OFF DATE DOES NOT MATTER. (IF THEY HAVE THE CHARACTER AND FITNESS TO BE AN ATTORNEY)

THANK YOU FOR ALLOWING ME TO RESPOND


RESPECTFULLY SUBMITTED


TUNC URAZ

*Tunc Uraz*

October 20, 2022

Attorney Grievance Commission
PNC Center
755 W. Big Beaver Rd., Ste. 2100
Troy, MI 48084

Re: Tunc Uraz as to Kahla D. Crino, AGC File No. 22-1542

To Whom It May Concern:

I am writing in response to your request for investigation regarding "Tunc Uraz as to Kahla D. Crino, AGC File No. 22-1542." I am currently the Appellate Division Chief of the Ingham County Prosecutor's Office. I became involved with Mr. Uraz's file in that capacity after he filed his claim of appeal in the Court of Appeals on May 3, 2018 (No. 343695 and No. 343696). Since then, I have filed briefs on appeal and appeared at Mr. Uraz's *Ginther* hearings on behalf of the People. I am including the most recent Court of Appeals brief that I filed and both transcripts from Mr. Uraz's *Ginther* hearing. Attachments 1, 2, and 3. I was not involved with Mr. Uraz's trial in 2017 or the discovery that the Ingham County Prosecutor's Office sent to Mr. Uraz as a part of the trial.

Mr. Uraz makes several related arguments, and I will address each individually. First, Mr. Uraz argues that I did not disclose Mr. Perrone's second "mental episode" and various documents to him and to the trial court before his *Ginther* hearing. Request for Investigation, p 1. Mr. Uraz attached a series of documents to his request for investigation that he argues I did not disclose to him before his *Ginther* hearing. These documents include the following items:

1) A letter from Ingham County Assistant Prosecutor Chas Koop to Mr. Uraz's attorney Duane Silverthorn[1] dated December 18, 2017. It was the cover letter for items 2, 3, and 4 when they were provided to Mr. Uraz on December 18, 2017;
2) A petition to have Mr. Perrone designated as a person requiring treatment;
3) A police report regarding Mr. Perrone;
4) An order regarding Mr. Perrone's designation as a person requiring treatment;
5) A document titled "Patient Drug Information" from Sparrow Hospital;
6) An email between Mr. Perrone and Mr. Uraz's family members;
7) A series of text message screen shots.

AGC

OCT 24 2022

---

[1] Mr. Silverthorn substituted for Mr. Perrone for purposes of Mr. Uraz's sentencing.

1

While I was not involved with Mr. Uraz's file in 2017, I have reviewed the Ingham County Prosecutor's Office's electronic files and determined that items 1-4 (letter, petition, police report, and order) were emailed and mailed to Mr. Silverthorn for Mr. Uraz's file on December 18, 2017, approximately three years and ten months before his first *Ginther* hearing.[2] I have attached the relevant email, letter, and attachments as they were sent on December 18, 2017. I have also included Mr. Koop's case note about the disclosure. Attachment 4 (case note, email, letter, PRT petition, LPD report, and order).

Mr. Silverthorn was responsible for providing all discovery to Mr. Uraz's appellate attorney, Ms. Susan Walsh under MCR 6.005(H)(5). However, I have a personal practice of providing discovery to any appellate attorney who has trouble obtaining discovery from trial court counsel. I have reviewed my email correspondence with Ms. Walsh, and I did not locate a request from Ms. Walsh indicating she had trouble receiving discovery from trial counsel under the procedure outlined in MCR 6.005(H)(5). I also do not remember a problem being otherwise brought to my attention.

As the assistant prosecutor appearing at Mr. Uraz's *Ginther* hearing in 2021 and 2022, I did not personally choose to admit these previously disclosed items as evidence for several reasons. First, I had not seen them at that time because they were entered in our electronic file system as "correspondence" in December of 2017. I do not routinely read trial-level correspondence as a part of an appeal unless there is a special reason to do so. I was not personally aware that items 1-4 existed before Mr. Uraz's *Ginther* hearing.

Second, the purpose of the *Ginther* hearing was for Mr. Uraz to have an opportunity to create a factual record to support his argument that Mr. Perrone provided ineffective assistance of counsel *during* Mr. Uraz's trial. While what happened after trial is certainly a related issue, it does not directly address the determination that the trial court had to make at Mr. Uraz's *Ginther* hearing: whether Mr. Perrone provided ineffective assistance of counsel through inadequate trial preparation or trial performance.

Third, as the moving party alleging ineffective assistance of counsel, Mr. Uraz and his appellate attorney, Ms. Walsh had the burden of establishing the factual predicate for their claims. As such, it was Mr. Uraz and Ms. Walsh's role to determine the best evidence for supporting their arguments.

Fourth, Mr. Perrone appeared at the *Ginther* hearing and willingly testified about what happened during and after Mr. Uraz's trial and about his mental breakdown

---

[2] Uraz's *Ginther* hearing was held over the course of two days, October 4, 2021 and April 13, 2022.

and diagnosis after the trial. The People did not dispute that Mr. Perrone had a serious mental breakdown *after* Mr. Uraz's trial, as established through testimony at the *Ginther* hearing. Documents showing the same would have added little to the trial court's determination of whether Mr. Perrone provided ineffective assistance of counsel during trial.



Last, Mr. Uraz originally claimed that the mental breakdown began *during* trial. Part of my strategy on cross-examination of witnesses at the *Ginther* hearing was to show that it happened *after* trial, consistent with what Mr. Perrone and other witnesses informed me during my preparation for the hearings. Though I did not consider admitting items 2-4 at the *Ginther* hearing (because I did not know that they existed at the time), in hindsight, they would have refuted Mr. Uraz's claims by showing that Mr. Perrone's mental breakdown occurred after trial.

As to item 5 (Patient Drug Information), I am not familiar with this document. I have reviewed the Ingham County Prosecutor's Office electronic files, and I did not locate it there. However, Mr. Uraz appeared to reference this document or something similar during his *Ginther* hearing testimony. Mr. Uraz explained that Mr. Perrone gave Mr. Uraz hospital records on "the 13th" and that the records stated Mr. Perrone had schizophrenia and bipolar disorder and that he was prescribed medication. It appears Mr. Uraz had item 5 or something similar in his possession at his *Ginther* hearing on April 13, 2022, but for whatever reason, chose to testify about it rather than admit it. 4/13/22, 59.



As to item 6 (email), I have seen this email before because Mr. Uraz shared it with the Ingham County Prosecutor's Office as a part of his appeal of right. It was "Attachment A" to his brief on appeal, which was filed February 22, 2019. I have included the un-redacted version here. Attachment 5.[3] Ms. Walsh and I also questioned Mr. Perrone about it at Mr. Uraz's *Ginther* hearing. 10/4/21, 38-42.

As to item 7 (text messages), I am not familiar with this document. I have reviewed the Ingham County Prosecutor's Office electronic file, and I did not locate it there. Additionally, Mr. Uraz appeared to have this document in his possession when he testified at his *Ginther* hearing because he quoted a portion of it during his testimony. 4/13/22, 40.



Additionally, even though Mr. Uraz chose not to attempt to admit items 1-4 at his *Ginther* hearing, he did email them directly to the trial court on July 2, 2022, before the trial court denied his motion for new trial on August 8, 2022. Attachment 6 (Mr.



---

[3] Mr. Uraz's attached version redacted Mr. Perrone's advice that Mr. Uraz not testify.

Uraz's email and attachments to the trial court), Attachment 7 (August 8, 2022 Order).

Mr. Uraz next paraphrases an exchange between myself and Jonathan Roth, the trial prosecutor in Mr. Uraz's case that occurred at Mr. Uraz's *Ginther* hearing on April 13, 2022. The portion of the transcript cited by Mr. Uraz actually reads as follows:

> Crino: Now sometime after the jury's verdict you've indicated that you were informed that Mr. Perrone had some type of an episode. How is it that you were informed of that?
>
> Roth: By way of an email.
>
> Crino: Uh-huh.
>
> Roth: It was around – I think it was on December 2, 2017 I received an email indicating that –that he had had what we refer to as PRT proceedings, I think in Oakland County.  And that's the extent of the detail that I know. [4/13/22, 20-21.]

Mr. Uraz goes on to argue that Mr. Roth's testimony is perjury because "until now" there was only one incident, and the *Ginther* hearing was based on that single incident. Request for Investigation, p 1-2.

 Based on my communications with Mr. Roth about this request for investigation, Mr. Roth was wrong in remembering that the PRT proceedings were in Oakland County instead of Clinton County, but he believes the rest of the testimony was accurate. Additionally, Mr. Roth's testimony does not appear to be inconsistent with the documents my office shared with Mr. Uraz on December 18, 2017.

 I am not certain what is meant by Mr. Uraz's terminology of "first" mental breakdown and "second" mental breakdown, but there was no dispute that Mr. Perrone had a serious mental breakdown after Mr. Uraz's trial. Though I cannot say for sure, it appears that what Mr. Uraz references as the first and second episodes, are continuations of a prolonged episode that occurred after his jury verdict. Mr. Perrone provided some testimony about the specifics at his *Ginther* hearing, but no one requested a day-by-day explanation of his post-trial mental breakdown. 4/13/22, 35.

Mr. Uraz goes on to argue that I failed to "disclose/share these important documents" with him and with the "AGC per MRPC 6.5 and MRPC 8.3" Request for Investigation, p 2. As explained above, these items were disclosed to Mr. Uraz by my office on December 18, 2017, before my involvement with his case. I presume that it why he has them now.

MRPC 6.5(a) pertains to a lawyer's duty to treat with courtesy and respect all persons involved in the legal process. Though Mr. Uraz cites this rule, he does not

explain what conduct violated this rule (other than his claim that the documents he attached were not disclosed to him). I have included my most recent appellate brief in this matter and the full transcripts of the *Ginther* hearing in case they might be helpful in evaluating this argument. Attachment 1, 2, and 3.

MRPC 8.3 pertains to a lawyer's duty to report certain behavior by other attorneys to the Attorney Grievance Commission. Because my involvement with this case came well after Mr. Perrone's mental breakdown, I was not in a position to directly report his issues to the AGC. However, another Ingham County assistant prosecutor who did have personal knowledge requested an investigation regarding Mr. Perrone on December 11, 2017. The request included the police report and petition that was provided to Mr. Uraz on December 18, 2017. Attachment 8. I was aware of the request for investigation, but did not see it personally until I began working on this answer.[4] I have also had direct communications with the Attorney Grievance Commission regarding Mr. Perrone's issues and Defendant's appeal of right. Sharice Anderson previously requested that I keep her informed regarding the outcome of Defendant's appeal, which is still pending.

Mr. Uraz goes on to request the email that Mr. Roth referenced in his testimony at the *Ginther* hearing. Request for Investigation, p 2. This email was never a part of Mr. Uraz's Ingham County Prosecutor's Office file, and I was not aware of it until Mr. Roth informed me that he was including it as a part of his answer to Mr. Uraz's request for investigation against him. Because Mr. Roth shared a copy with me last week, I have it in my possession now and have attached it to my answer. Attachment 9.[5]

Mr. Uraz then makes two requests that appear to be directed to the AGC. He requests that the AGC:

- Subpoena or request all court files and police reports related to Mr. Perrone's 11/20/17 mental breakdown from Clinton County Probate court. Request for Investigation, p 2.

- Investigate whether 30th Circuit Court judges, prosecutors, and staff were aware of Mr. Perrone's mental condition and why they failed to report it to the AGC. Request for Investigation, p 2.

Beyond what I shared in this response I do not have any personal knowledge about what other prosecutors, judges, or court staff knew about Mr. Perrone's mental health issues. I also do not have possession of any files from Clinton County.

---


[4] ████████████████████████████████████████████████████████


[5] Redactions were made by Mr. Roth, as explained in his answer.

Please let me know if you have any questions or concerns, or require additional information, and I will do my best to assist.

Sincerely,

Kahla D. Crino
303 W. Kalamazoo
Lansing, MI 48933
kcrino@ingham.org

6

Attachment 6

| | |
|---|---|
| **From:** | Valerie Roper |
| **To:** | Kahla Crino |
| **Subject:** | FW: additional info for case 16-001064-FH and 16-001065-FC Tunc Uraz |
| **Date:** | Monday, July 18, 2022 2:11:20 PM |
| **Attachments:** | Redacted - URAZ _ TUNC - 02, CIRCUIT_COURT - PA - Redacted_Image - 16-007405 - 12-18-2017.pdf |

FYI.

**From:** Aysem Uraz <aysemu@yahoo.com>
**Sent:** Monday, July 18, 2022 1:50 PM
**To:** Clinton Canady <CCanady@ingham.org>
**Cc:** tjabraham@msn.com; Samuel Kane <SKane@ingham.org>; Valerie Roper
<VRoper@ingham.org>; UrazCenk <urazcenk@gmail.com>
**Subject:** additional info for case 16-001064-FH and 16-001065-FC Tunc Uraz

STATE OF MICHIGAN
INGHAM COUNTY 30th. JUDICIAL COURT, LANSING MICHIGAN.

TO :

HONORABLE JUDGE CANADY III
30th. CIRCUIT COURT
313 W. KALAMAZOO STREET
LANSING, MI 48933

FROM:
TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

Re: Mr. Perrone's "SECOND" MENTAL IMPAIRMENT EPISODE IN THE MONTH OF NOVEMBER 2017. THIS
INFORMATION WAS NOT DISCLOSED BY MS. CRINO INGHAM COUNTY PROSECUTOR TO DEFENDANT'S
APPEAL ATTORNEY AND TO DEFENDANT FOR HIS GINTHER HEARING AND APPEAL PROCESS.

DEAR HONORABLE JUDGE Canady III,

Based on

**"NEWLY DISCOVERED EVIDENCE"**

Mr. PERRONE WAS SENT TO A MENTAL HOSPITAL "SECOND" TIME PER MCL 330.1401 STARTED PRT
PROCEEDINGS (person requiring treatment) and per Probate
Court orders. IN CLINTON COUNTY PROBATE COURT AND LANSING POLICE DEPARTMENT REPORT
DATED 11/20/2017

In Prosecution's files which MR. URAZ received very recently End of June 2022 (it was requested end of April
2022).

Mr. Uraz found out Perrone's PRT (person requiring treatment) per MCL 330.1401 mental treatment request per
courts CLINTON county probate court (for his "SECOND" time episode of mental breakdown and hospital stay)
with in the same month of NOVEMBER 2017)

Attachment 8



State of Michigan

# Attorney Grievance Commission

535 Griswold St, Suite 1700
Detroit, MI 48226
www.agcmi.org

### Request for Investigation Form

Instructions:

A request for investigation of an attorney must describe the alleged misconduct (including time and place), be signed by the complainant, and be filed with the Grievance Administrator. Please fill out this entire form, specifically setting forth all the facts and circumstances of the alleged misconduct. You may attach copies of supporting documents to this form. Please provide an additional copy of this form and all attachments upon submission.

Only one attorney may be listed in this form. If you have a complaint against more than one attorney, you must file a separate form for each attorney.

(Please Type or Print):

Attorney Information:

Full Name and P Number: Jacob Alan Perrone (P-71915)

Address (number and street): 221 West Lake Lansing Road, Suite 200

City: East Lansing     State: MI     Zip Code: 48823

Telephone: (517) 351-0332

⚹ Complainant Information:

Mr. ⊗     Ms. ◯     Dr. ◯     Hon. ◯

Your Name: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Address (number and street): ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

City: ▇▇▇▇▇     State: ▇▇▇▇     Zip Code: ▇▇▇▇

Telephone (Home): ▇▇▇     (Cell): ▇▇▇     (Work): ▇▇▇

E-mail: ▇▇▇▇▇▇▇▇▇

Date: 12/11/17     Your Signature: ▇▇▇▇▇▇

⚹ Please Note: Complainant wishes to remain anonymous. Please see Attached.

Relationship to attorney complained of:

Client ☐  Opposing party ☐  Opposing counsel ☒  Judge ☐  Employer/Supervisor ☐  Other ☐

If other was checked, please specify:

_N/A_

Date Attorney was hired/retained:

_Appointed: July, 2017_

Type of Case Involved (eg: criminal, divorce, civil):

_Criminal case; homicide._ ███████████

Case Number/Court where filed:

███████████████████████████████████████

Statement of alleged misconduct: (You must make a statement of facts. You may attach as many additional pages as necessary to fully set forth all the relevant facts and circumstances surrounding your request for investigation.)

✱ Please see attached memo and supporting documents.

**PLEASE NOTE:  I respectfully ask to remain anonymous in this complaint/referral.**

My name is  I am an Assistant Prosecutor with the Ingham County Prosecutor's Office.

Pursuant to my ethical obligations as a member of the State Bar, I am writing to make a character and fitness referral/complaint on an attorney: **Jacob Alan Perrone (P-71915).** Mr. Perrone's professional address is: **221 West Lake Lansing Road Suite 200, East Lansing, MI 48823.** His office phone number is: **(517) 351-0332.** The reason for this character and fitness referral/complaint is that, upon information and belief, Mr. Perrone may currently be suffering from a diagnosed mental health disorder, and may not be fit to practice law in the State of Michigan at this time without further clearance.

The reasons I wish to remain anonymous are that I know Mr. Perrone, and have historically had a good, friendly professional relationship with him. I do not believe these circumstances are intentional or his fault and I believe that sadly, Mr. Perrone is dealing with serious organic mental health issues beyond his control. Secondly, I believe that this complaint/referral may be investigated and substantiated by objective evidence from law enforcement and mental health providers. Though I do hopefully wish to remain anonymous, I am of course willing to be interviewed regarding this matter, and provide additional evidence as needed.

**History:**

I am assigned as the trial prosecutor on the case of  This case is currently pending in the Ingham County Circuit Court ████████████ A jury trial in this matter was previously scheduled for December 4, 2017. Prior to the events stated below, Jacob Perrone was the Defendant ██████'s court appointed attorney.

**Summary of Events:**

Prior to the December 4th, 2017 trial date, I repeatedly attempted to have in person meetings with Mr. Perrone at my office to discuss the ████ case.  Per my normal pre-trial procedure, the clearly stated purposes of meeting with Attorney Perrone were: 1) to review in detail the trial exhibit list, both  to ensure that Mr. Perrone was in possession of all relevant discovery materials and also to discuss potential evidentiary stipulations; 2) to review in detail the trial witness list to assure that all relevant witnesses were endorsed, discuss the substance of witness testimony, and reach potential witness stipulations, and; 3) carefully discuss the anticipated evidence, sentencing guidelines, and the possibility of resolution by guilty plea prior to trial.

**A. First Scheduled Meeting Date:**

The first meeting with Mr. Perrone was set for Wednesday, November 15, 2017 at 9:30 a.m.

*a.  Friday, November 10, 2017·*

On Friday, November 10, 2017 (five days prior to our first scheduled meeting) I received an e-mail from Mr. Perrone about the case that I simply considered *odd* in that it was not very pertinent to case review or trial preparation. Despite the content however, I responded to Mr. Perrone via e-mail and encouraged that we discuss all relevant issues at our scheduled meeting on November 15, 2017.

b.  *Monday November 13, 2017:*

On that following Monday, November 13, 2017, I received a phone call from Mr. Perrone. During that call, Mr. Perrone's demeanor was uncharacteristic and strange. He advised that he would be unable to meet with me as scheduled on Wednesday due to serious *"family problems"* involving his father.

**B.  Second Scheduled Meeting:**

Given Mr. Perrone's stated personal issues, we agreed via telephone to reschedule our meeting for Friday November 17, 2017.

a.  *Cancellation of November 17, 2017 Meeting:*

Prior to this rescheduled meeting, I received a second call from Mr. Perrone. He advised that the issues with his family and father were still ongoing, and that he would not be able to attend the rescheduled November 17, 2017 meeting. Mr. Perrone also indicated that because of his ongoing personal *"family"* problems he would likely be unable to proceed to trial as scheduled on December 4, 2017 and would probably be requesting an adjournment. Based on this representation, an in-chambers conference with Judge ████ was scheduled for Tuesday, November 21, 2017 at noon to discuss a potential trial adjournment.

b. *Friday November 17, 2017 Phone Message:*

On Friday November 17, 2017 I received a phone message from Mr. Perrone on my office phone. Mr. Perrone *now* indicated that the personal problems with his family had apparently been *resolved,* and that he would *not be* requesting an adjournment of the trial. He advised that he would be working on the ▬▬ file all weekend to prepare for trial.

c. *Sunday November 19, 2017 to Monday November 20, 2017:*

On Sunday, November 19, 2017 Mr. Perrone sent me an e-mail (on my work e-mail) indicating that he wanted to have a meeting the next day, Monday,  November 20, 2017 any time after 2:00 p.m.  Mr. Perrone requested that ▬▬▬▬▬▬▬▬▬ also be present at the meeting (for an unspecified reason). Mr. Perrone wrote in this e-mail that he wanted to meet prior to our in-chambers conference with Judge ▬▬▬ Mr. Perrone advised that I should call him after 11:00 a.m. on Monday to schedule our meeting.

After I received this e-mail on Monday, November 19, 2017 I was surprised: first, Mr. Perrone had *cancelled* our first two scheduled meetings; second, there was no reason why ▬▬▬▬▬▬▬▬▬ needed to attend a standard meeting to review evidence, witnesses, and discovery, and third; if the case was now going forward to trial as scheduled, there would be no need to even *have* an in-chambers conference with Judge ▬▬▬ let alone rush to meet before speaking to the Judge.

By this time, not knowing what was *really* going on with Mr. Perrone, I was starting to get very frustrated with his professional conduct, especially in light of the upcoming trial date. Despite my frustration, I called Mr. Perrone's office after 11:00 a.m. as instructed and left a message to set up a meeting with Mr. Perrone, myself and ▬▬▬▬▬▬▬▬▬▬

at 2:30 p.m. I received no response to my message, and at 12:28 p.m. I sent a follow-up e-mail advising Mr. Perrone either to be at my office at 2:30 for the meeting, or to let me know if he was not attending. Mr. Perrone did not show up for the meeting, and did not call or contact me.

    *d.  November 21, 2017:*

On Tuesday November 21, 2017 I arrived at work to find two (2) voice mail messages from Mr. Perrone. In the first message (left on November 20) Mr. Perrone advised that his family had *"inappropriately put him in a f\*\*king psych ward"* at Sparrow Hospital in Lansing. Mr. Perrone's demeanor was obviously agitated, erratic and indicative of someone who was, unfortunately having a mental health crisis.

    Mr. Perrone's second message (left on November 21) had a similarly agitated, erratic tone. Mr. Perrone advised me that he was in *"Havenwyck."* I subsequently learned that Havenwyck Hospital is a psychiatric hospital located in Auburn Hills, MI.

    On November 21, 2017 I met in chambers with Judge ███████ Mr. Perrone's legal associate, Attorney Eric Schroeder, and Attorney Tiffany DeBruin who was acting as Mr. Perrone's representative. Mr. Schroeder and Ms. DeBruin advised Judge ███████ that Mr. Perrone had been "hospitalized" and could not continue as attorney of record in the ███ homicide case. Based on this representation, Judge ███████ adjourned the ███ homicide trial from December 4, 2017 to April 23, 2018. Judge ██████ also *removed* Mr. Perrone as attorney of record, contacted Ingham County Pre-Trial Services and requested that another attorney be appointed.

    *e.  Involuntary Commitment on Monday November 20, 2017:*

The next day, I spoke with Lansing Police Department Detective ███████████ who is the investigating officer on the ███ homicide case. I called Detective ██████████ to advise him that the ███ homicide trial had been adjourned and to discontinue the witness subpoena process. During this phone call, I was advised that on Monday afternoon, November 20, 2017 Mr. Perrone had contact with Officer Robert McBride from the Lansing Police Department. As a result of this contact, Mr. Perrone was taken to Sparrow Hospital. There, Officer McBride petitioned to involuntarily admit Mr. Perrone into Sparrow Hospital for mental health evaluation and treatment. In the petition, Officer McBride alleges that he believes Mr. Perrone has mental illness, and *"as a result of that mental illness, the individual can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation."* Officer McBride detailed some of his personal observations, noting that *"Perrone said he is #1 Defense Attorney in the world. Perrone states he would kill a bunch of people."*

Based on the petition and a subsequent evaluation, Mr. Perrone was then involuntarily admitted into the Sparrow Hospital Psychiatric Unit. A copy of the Lansing Police Department Incident Report and Officer McBride's *Petition for Mental Health Treatment* are attached hereto.

*f. Continued Hospitalization:*

Upon information and belief, after hospitalization at Sparrow Hospital, Mr. Perrone did in fact remain hospitalized in Havenwyck Hospital. During his hospitalization, I received numerous phone messages from Mr. Perrone on my work phone, at least two (2) that were long after completion of normal business hours. Given that he had been removed from the ███████ homicide case (and apparently knew that) Mr. Perrone had absolutely *no* professional reason to

contact me.   I observed the content of his messages to be erratic, and indicative of someone who was involved in a continued mental health crisis. Of particular concern, was a message that expressed a continued fixation on the trial conduct of Ingham County Assistant Prosecutor Jonathon Roth who had just completed a jury trial with Mr. Perrone less than two (2) weeks before Mr. Perrone was hospitalized at Sparrow Hospital. I have saved some of the voice messages that Mr. Perrone left for me on my voice mail and can reproduce those upon request.

I also received at least one (1) direct phone call from Mr. Perrone during the week of December 4, 2017. I am unaware if Mr. Perrone was or was not hospitalized at the time of this call. Upon speaking to him, my observations were that he appeared medicated, certainly less agitated and paranoid, but obviously still recovering from a mental health episode.

g. *Practice of Law:*

My understanding is that Mr. Perrone is now out of the hospital and apparently intends to continue practicing law. Based upon my contacts with Mr. Perrone prior to, during, and after his acute mental health crisis it is my opinion that Mr. Perrone may not be mentally or emotionally fit *at this time* to practice law. At a minimum, it is my personal and ethical opinion that Mr. Perrone's mental health crisis requires that the Attorney Grievance Commission conduct a fitness inquiry to determine Mr. Perrone's fitness to practice law.

Attorney Grievance Commission
PNC Center
755 W. Big Beaver Rd., Ste 2100
Troy, MI 48084


October 12, 2022


To whom it may concern:

I am writing in response to your Request for Investigation regarding Tunc Uraz (AGC File No. 22-1543).

Uraz was charged in the Ingham County Circuit Court with one count of aggravated stalking of his ex-girlfriend and three counts of soliciting others to murder her. I prosecuted the case with Assistant Prosecuting Attorney Charles Koop; Jacob Perrone was court-appointed counsel for Uraz at trial. Approximately a week after trial, Perrone suffered a bipolar episode. New counsel was appointed, and Uraz was sentenced to 200 to 360 months in the Michigan Department of Corrections. Uraz appealed his conviction claiming, among other things, that Perrone's bipolar episode was, in fact, during trial and caused him to provide ineffective assistance. Following a lengthy *Ginther* hearing on this issue, the trial court rejected Uraz's claim, finding that Perrone provided effective assistance and that there was no evidence supporting Uraz's assertions regarding Perrone.[1]

Uraz alleges that I committed perjury in the following testimony I provided during the *Ginther* hearing, which he paraphrased in his complaint.

| | |
|---|---|
| Crino: | Now sometime after the jury's verdict you've indicated that you were informed that Mr. Perrone had some type of an episode. How is it that you were informed of that? |
| Roth: | By way of an email. |
| Crino: | Uh-huh. |
| Roth: | It was around – I think it was on December 2, 2017 I received an email indicating that – that he had had what we refer to as PRT proceedings, I think in Oakland County. And that's the extent of the detail that I know. |

(Attachment 1.)

---

[1] Uraz's appeal is currently pending in the Michigan Court of Appeals:
https://www.courts.michigan.gov/c/courts/coa/case/343695 &
https://www.courts.michigan.gov/c/courts/coa/case/343696.

I am providing the referenced email, redacting addresses and some unrelated, private communication. (Attachment 2.) I received this message at a personal address while on vacation after trial. While I was wrong in remembering that the PRT proceedings were in Oakland County, instead of Clinton County, the rest of my testimony was accurate. This was, to the best of my recollection, the first I heard of Mr. Perrone's "episode."

Uraz references several other documents that he alleges were in the electronic case file at the Ingham County Prosecutor's Office. I no longer work there so I have not verified that to be true, though I am skeptical that the Prosecutor's Office would have access to the document labeled "HealthSource Saginaw Patient Drug Information," containing a portion of Mr. Perrone's personal medical records. Moreover, the other records do not contradict my testimony. The Lansing Police Department report indicates that it was printed on December 5, 2017:

| Case Report Page 1 of 3 | Reporting Officer: McBride, Robert Case No. 1751906153 | Printed: December 5, 2017 - 9:59 AM |
|---|---|---|

The header on the Initial Order After Hearing on Petition for Mental Health Treatment indicates that it was faxed on December 6, 2017:

OC Fax Server          12/6/2017 9:41:00 AM   PAGE   1/003    Fax Server

I went on vacation after the trial, from November 26, 2017, through December 8, 2017, with no phone and limited internet access. It appears the Prosecutor's Office received these documents while I was away, and certainly after the December 2 email. I have no memory of seeing or reviewing them when I returned. Assistant Prosecuting Attorney Charles Koop was the primary docket attorney assigned to the case. The documents would have gone directly to him, which is why he provided them to Uraz's new attorney on December 18, 2017.

Uraz also inquires, "WHY MR. ROTH DID NOT WANT MR. PERRONE (ALLEGEDLY PERRONE WAS PROPERLY MEDICATED AT THAT TIME) TO REPRESENT MR. URAZ FOR SENTENCING" at a hearing on December 12, 2017. Given my limited knowledge about Mr. Perrone's condition and the wealth of court-appointed attorneys available, it seemed proper to offer Uraz a new attorney to assist him with sentencing, in an abundance of caution.

Uraz makes several additional requests that I believe are directed to the AGC and not to myself:

- a subpoena/request for Mr. Perrone's nonpublic Clinton County Probate Court file

- Lansing Police Department reports regarding Mr. Perrone
- determine if Ingham County Chief Judge Richard Garcia knew about Mr. Perrone's "ongoing issues"
- determine who advised Judge Canady to have Mr. Silverthorn represent Uraz at sentencing.
- an AGC investigation regarding who at the Ingham County Circuit Court and the Ingham County Prosecutor's Office knew about "and failed to report Mr. Perrone's mental condition."

Please let me know if you have any questions or concerns, or require any other information. Thank you for your attention in this matter.

Sincerely,

Jonathan Roth
330 Ionia Ave. NW, Suite 501
Grand Rapids, MI 49503
jonathan.roth@usdoj.gov

| | | |
|---|---|---|
| 1 | | criminals was part of your case, correct? |
| 2 | A | Certainly. |
| 3 | Q | Would impeachment with those prior misdemeanors have done |
| 4 | | anything to change the substantial evidence of Mr. Uraz's |
| 5 | | guilt? |
| 6 | A | No. |
| 7 | Q | Did you observe Mr. Perrone have a mental breakdown that day? |
| 8 | A | I did not. |
| 9 | Q | Did you observe him experience any type of mental decline |
| 10 | | that day? |
| 11 | A | I did not. |
| 12 | Q | And he gave a closing argument, correct? |
| 13 | A | Yes. |
| 14 | Q | Did you observe any glaring issues with that closing |
| 15 | | argument? |
| 16 | A | I did not. |
| 17 | Q | And the jury ultimately found the Defendant guilty of all |
| 18 | | counts, correct? |
| 19 | A | They did. |
| 20 | Q | Now sometime after the jury's verdict you've indicated that |
| 21 | | you were informed that Mr. Perrone had some type of episode. |
| 22 | | How is it that you were informed of that? |
| 23 | A | By way of an email. |
| 24 | Q | Uh-huh. |
| 25 | A | It was around -- I think it was on December 2nd, 2017 I |

| 1 | | received an email indicating that -- that he had had what we |
| 2 | | refer to as PRT proceedings, I think in Oakland County.  And |
| 3 | | that's the extent of the detail that I know. |
| 4 | Q | And ultimately Mr. Perrone did not represent the Defendant at |
| 5 | | sentencing.  Mr. Duane Silverthorn did, correct? |
| 6 | A | That's correct.  Mr. Perrone did represent him at a hearing |
| 7 | | that we had with -- with your Honor in the jury room, so |
| 8 | | sometime between verdict and sentencing.  So there was some |
| 9 | | continued representation. |
| 10 | Q | Correct.  And that was actually at the Defendant's request, |
| 11 | | if I recall. |
| 12 | A | I think that's correct. |
| 13 | Q | Okay.  And in your view, was there substantial evidence of |
| 14 | | the Defendant's guilt in this case? |
| 15 | A | Overwhelming. |
| 16 | Q | Did you observe anything about Mr. Perrone's mental health or |
| 17 | | performance that you believe impacted the jury's verdict in |
| 18 | | this case? |
| 19 | A | I did not. |
| 20 | |        MS. CRINO:  Thank you. |
| 21 | |        THE COURT:  Any questions, Ms. Walsh? |
| 22 | |        MS. WALSH:  Yes. |
| 23 | |        **REDIRECT EXAMINATION** |
| 24 | BY MS. WALSH: | |
| 25 | Q | Well, that was a very detailed overview.  And I just would |

ATTACHMENT 2

From: Elizabeth Allen 
Subject: Re: Perrone
Date: December 2, 2017 at 9:45 AM
To: Jonathan C. Roth

He was PRT'ed for the past two weeks and was calling Bill from there. He had a hearing this week in Clinton County. I'm not sure what happened or whether they released him. I'll see what I can find out next week.

If he's out, I was thinking of just asking Boeve to drive by your house randomly (he's always patrolling this area) while you're out of town.

Sorry to bug you on vacation. It could be nothing, but since Perrone's been committed, I think it's more serious.

On Dec 2, 2017, at 9:33 AM, Jonathan C. Roth  wrote:

Thanks for letting me know. Any update as to Perrone's status? That influences how concerning these calls are.

On Nov 30, 2017, at 10:58 AM, Elizabeth Allen

I know you're "unplugged," but I thought you might check your personal email. Apparently since Perrone has been hospitalized, he's taken a liking to Bill and calls him repeatedly. As in, called Bill at least 5-6 times the other day, several of these calls being after work hours. He mostly leaves rambling voicemails and the topic of these calls is mostly you. Bill said he's not threatening necessarily, but obsessed with how you "lied" and "cheated" on the Uraz case, etc. The calls are angry enough that Bill approached me separately and said he was concerned about Perrone's obsession and anger in regards to you.

Maybe he'll cool off while you're gone, but he might also get more obsessed, so I wanted to give you a heads up

MICHAEL V. GOETZ
*GRIEVANCE ADMINISTRATOR*
KIMBERLY L. UHURU
*DEPUTY ADMINISTRATOR*
CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*
SARAH C. LINDSEY
*GENERAL COUNSEL*

STATE OF MICHIGAN
# ATTORNEY GRIEVANCE COMMISSION

*ASSOCIATE COUNSEL*
EMILY A. DOWNEY
JOHN K. BURGESS
CHARISE L. ANDERSON
NATHAN C. PITLUK
MICHAEL K. MAZUR
KENNETH E. FRAZEE
PAMELA I. LINVILLE
CORA L. MORGAN
ROBERT W. NOVY
GRAHAM G. LEACH

PNC CENTER
755 W. BIG BEAVER RD., SUITE 2100
TROY, MICHIGAN 48084
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

September 27, 2022

**PERSONAL AND CONFIDENTIAL**

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

RE:     **Tunc Uraz as to Charles T. Koop II**
        **AGC File No. 22-1544**

Dear Tunc Uraz:

This office received your Request for Investigation, however, the allegations in your complaint are insufficient to warrant review by the Commission. Accordingly, after careful review by the staff, this matter is being closed under the authority of the Grievance Administrator pursuant to Michigan Court Rule 9.112 (C)(1) (a).

Your Request for Investigation has been thoroughly reviewed. The facts as you have stated in your Request for Investigation do not constitute professional misconduct. We regret that we can be of no further assistance to you.

Charles Thomas Koop has been provided with a copy of your Request for Investigation. If my staff or I can be of service to you in the future, please do not hesitate to contact us again.

Very truly yours,

*Cynthia C. Bullington/meg*

Cynthia C. Bullington
Assistant Deputy Administrator

CCB/meg
cc:  Charles Thomas Koop (w/enclosure)

J. PAUL JANES
*VICE-CHAIRPERSON*

LATOYA M. WILLIS
*SECRETARY*

*MEMBERS*
CHERYL A. BUSH
JAMES WEBB
KATHLEEN HICKEY
WALLACE E. SMITH
KENDRAH B. ROBINSON
SAMY Y. WASSEF, MD

KIMBERLY L. UHURU
*DEPUTY ADMINISTRATOR*

CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*

SARAH C. LINDSEY
*GENERAL COUNSEL*

*ASSOCIATE COUNSEL*
EMILY A. DOWNEY
JOHN K. BURGESS
MICHAEL K. MAZUR
KENNETH E. FRAZEE
PAMELA I. LINVILLE
CORA L. MORGAN
ROBERT W. NOVY
GRAHAM G. LEACH
MARY A. BOWEN
AUSTIN D. BLESSING-NELSON

# ATTORNEY GRIEVANCE COMMISSION

PNC CENTER
755 W. BIG BEAVER RD., SUITE 2100
TROY, MI 48084
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

January 18, 2023

**PERSONAL AND CONFIDENTIAL**

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

RE:   **Tunc Uraz as to Jonathan C. Roth**
      **AGC File No. 22-1543**

Dear Mr. Uraz:

Your Request for Investigation was filed on September 7, 2022, alleging improper conduct of Attorney Jonathan C. Roth.  Following an investigation, this matter was submitted to the Commissioners for their review and decision.

At its regular monthly session on January 18, 2023, the Attorney Grievance Commission determined that the evidence reviewed did not warrant further action by the Commission.   Therefore, pursuant to MCR 9.114(A)(2), the Commission directed that this Request for Investigation be closed.

If I can be of further assistance to you, please do not hesitate to call.

Very truly yours,

Robert W. Novy
Senior Associate Counsel

RWN/laa
cc: Jonathan C. Roth

*CHAIRPERSON*
J. PAUL JANES
*VICE-CHAIRPERSON*

LATOYA M. WILLIS
*SECRETARY*

*MEMBERS*
CHERYL A. BUSH
JAMES WEBB
KATHLEEN HICKEY
WALLACE E. SMITH
KENDRAH B. ROBINSON
SAMY Y. WASSEF, MD

*GRIEVANCE ADMINISTRATOR*
KIMBERLY L. UHURU
*DEPUTY ADMINISTRATOR*

CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*

SARAH C. LINDSEY
*GENERAL COUNSEL*

*ASSOCIATE COUNSEL*
EMILY A. DOWNEY
JOHN K. BURGESS
MICHAEL K. MAZUR
KENNETH E. FRAZEE
PAMELA I. LINVILLE
CORA L. MORGAN
ROBERT W. NOVY
GRAHAM G. LEACH
MARY A. BOWEN
AUSTIN D. BLESSING-NELSON

# ATTORNEY GRIEVANCE COMMISSION

PNC CENTER
755 W. BIG BEAVER RD., SUITE 2100
TROY, MI 48084
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

January 18, 2023

## PERSONAL AND CONFIDENTIAL

Tunc Uraz
#114653
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

**RE:    Tunc Uraz as to Kahla D. Crino**
**AGC File No. 22-1542**

Dear Mr. Uraz:

Your Request for Investigation was filed on August 2, 2022, alleging improper conduct of Attorney Kahla D. Crino. Following an investigation, this matter was submitted to the Commissioners for their review and decision.

At its regular monthly session on January 18, 2023, the Attorney Grievance Commission determined that the evidence reviewed did not warrant further action by the Commission. Therefore, pursuant to MCR 9.114(A)(2), the Commission directed that this Request for Investigation be closed.

If I can be of further assistance to you, please do not hesitate to call.

Very truly yours,

Robert W. Novy
Senior Associate Counsel

RWN/laa
cc:  Kahla D. Crino

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1505884014  [P 1/2]

7

You have received a **JPay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 5/30/2022 6:09:15 AM EST,    Letter ID: 1505884014
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 05/30/2022 06:09:14

Please do not reply to this email

TO:
MS. CHARISE L. ANDERSON
SENIOR ASSOCIATE COUNSEL
MICHIGAN ATTORNEY GRIEVANCE COMMISSION
755 W. BIG BEAVER RD. SUITE 2100
TROY, MI 48084

FROM :
MR. TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

RE:
AGC #18-0956
TUNC URAZ AS TO JACOB A. PERRONE. RESPONSE TO LETTER RECEIVED ON 05/20/2022
---------------------------------------------/
People V TUNC URAZ
INGHAM COUNTY 30th. CIRCUIT COURT, LANSING, MI
CASE #'s 16 10-64 FH & 16 10-65 FC
COA# 343695 & 343696
---------------------------------------------/
MOTION FOR RECONSIDERATION PER MCR 9.118 (E)

DEAR MS. ANDERSON,

THANK YOU FOR YOUR LETTER DATED 05/22/2022.
FINALLY EXPLAINING THE RESULT OF OF THE "INVESTIGATION" WHICH LASTED "FOUR" (4) YEARS TO
THIS DATE ORIGINAL WHICH THE ORIGINAL FILING WAS SENT ON 04/20/2018.

I SENT A REBUTTAL RESPONSE TO MR. JACOB A. PERRONE'S RESPONSE BRIEF ON 07/20/2018 TO
ATTORNEY GRIEVANCE COMMISSION (AGC).

ON 01/06/2022, I SENT A LETTER TO AGC INQUIRING ABOUT THE RESULTS OF THE INVESTIGATION.

BECAUSE I HAVE HAD NOT HEARD FROM ATTORNEY GRIEVANCE COMMISSION FOR A WHILE.

I HAD A GINTHER HEARING GRANTED TO ME ON 03/06/2020 BY COURT OF APPEALS PEOPLE V URAZ, 2020
MICH APP LEXIS 1740, (DUE TO MR. PERRONE'S INEFFECTIVE ASSISTANCE OF COUNSEL).
THE FIRST HEARING WAS  SCHEDULED ON 10/04/2021 AND THE SECOND ON WAS SCHEDULED ON
04/13/2022. THE REASON FOR EXTENDED DELAYS WERE  DUE TO COVID RESTRICTIONS AND BECAUSE I
WANTED THIS HEARING IN PERSON NOT ON ZOOM. AND BECAUSE OF PROSECUTOR ROTH C. ROTH
(P 72030) HIS CURRENT JOB IS THE ASSISTANT U.S. ATTORNEY
AT THE END OF THE TWO GINTHER HEARINGS, I FOUND OUT THAT:

1) MR. PERRONE IS NOT PRACTICING CURRENTLY

2) THE REASON HE WAS SENT TO A MENTAL HOSPITAL PER  MCL 330.1401 STARTED  PRT PROCEEDINGS
(person requires treatment) and per Probate

**JPay** Tell your friends and family to visit www.jpay.com to write letters and send money!



You have received a *jpay* letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 5/30/2022 6:09:15 AM EST,   Letter ID: 1505884014
Location : MCF
Housing : UNIT 4100B01

Court orders IN OAKLAND COUNTY
 HE MUST have sent to Saginaw HealthCore psychiatric hospital for an "Involuntary admission" on 11/14/2017 23:14 pm please see attached admission papers

3) AND HIS MENTAL INCAPACITATION WAS NOT REPORTED TO AGC OR STATE BAR.
MR. PERRONE ALSO "FAILED" TO REPORT HIS CONDITION TO AGC.
30th. CIRCUIT COURT JUDGES AND PROSECUTOR JONATHAN C. ROTH FAILED TO REPORT MR.PERRONE'S MENTAL ISSUES TO AGC.

THIS IS A CLEAR MISCONDUCT PER MRPC  6.5(b) , 8.3 MRPC

4) PLEASE PROVIDE ME A COPIES OF COMMISSION'S  "INVESTIGATION IN THIS MATTER" AND "THE MONTHLY SESSION NOTES, DOCUMENTS, EXHIBITS" ON 03/16/2022.

I DO NOT WANT TO APPEAL THIS TO MICHIGAN SUPREME COURT YET BECAUSE THIS INVESTIGATION SHOULD RE-START UNDER THE 'NEWLY DISCOVERED' EVIDENCE AND INFORMATION.

THIS IS MISCONDUCT AND VIOLATION  BY AGC FAILING TO INVESTIGATE.

MCR : 9.103 (A) , 9.104(A)(1)(2)(3)(4)(6)(7), 9.105(A), 9.109 , 9.113(B)(2),
9.114(C)(1)(a)(b)(c)  (E) request if nonpublic court file exists  (please request MR. Perrone's file from Oakland COUNTY probate court.

 9.119,
PERRONE  did not follow:  9.121(C)(1)(a)(b)(c)(d)(2)(3), 9.122, 9.123, 9.124, 9.126, 9.202(B)
Adjournments  MCR 2.503 (F)(1)(3)(4)

PLEASE SEE THE ATTACHED DOCUMENTS ABOUT THE PERRONE'S INCIDENTS, HIS GINTHER HEARING TESTIMONIES BY HIM AND HIS PEERS ABOUT HIS CONDITION. BEFORE DURING AND AFTER THE TRIAL.

PLEASE SEE ATTACHED GRIEVANCE  DOCUMENT AGAINST MR. JONATHAN C. ROTH (P 72030) BECAUSE HE FAILED TO REPORT MR. PERRONE'S MENTAL ISSUES TO AGC.

RESPECTFULLY SUBMITTED

*Tunc Uraz*

TUNC URAZ #114653

p.s.
MR. JACOB A. PERRONE'S  ORGANIC BRAIN DAMAGE, SCHIZOPHRENIA, AND BIPOLAR DISORDER CAN CONSPIRE TO CREATE SEVERAL MENTAL IMPAIRMENT, PSYCHOSIS AND OTHER SERIOUS MENTAL HEALTH PROBLEMS THAT BURDENED HIM COULD LEAD TO DANGEROUS BEHAVIOR, BUT HIS BEHAVIOR WAS A MANIFESTATION OF SERIOUS ILLNESS, NOT A REFLECTION OF HIS CHARACTER.

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

VICTOR A. FITZ
*CHAIRPERSON*

VALERIE R. WHITE
*VICE-CHAIRPERSON*

MEGAN K. CAVANAGH
*SECRETARY*

*MEMBERS*
CATHY JOAN PIETROFESA
JEFFREY J. SAKWA
LATOYA M. WILLIS
CHERYL A. BUSH
THOMAS G. KIENBAUM
JAMES WEBB

**STATE OF MICHIGAN**

**ATTORNEY GRIEVANCE COMMISSION**

BUHL BUILDING
535 GRISWOLD, SUITE 1700
DETROIT, MICHIGAN 48226
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

ALAN M. GERSHEL
*GRIEVANCE ADMINISTRATOR*

ROBERT E. EDICK
*DEPUTY ADMINISTRATOR*

CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*

*ASSOCIATE COUNSEL*
STEPHEN P. VELLA
RHONDA SPENCER-POZEHL
EMILY A. DOWNEY
KIMBERLY L. UHURU
DINA P. DAJANI
JOHN K. BURGESS
CHARISE L. ANDERSON
SARAH C. LINDSEY
JORDAN D. PATERRA
NATHAN C. PITLUK
MICHAEL K. MAZUR

April 24, 2018

**PERSONAL AND CONFIDENTIAL**

Tunc Uraz #114653
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

(Sent)
4/9/18

RE:   **Tunc Uraz as to Jacob A. Perrone**
      **AGC File No. 18-0956**

Dear Mr. Uraz:

This letter is to acknowledge receipt of your Request for Investigation.

Your Request for Investigation is being assigned to a member of the Commission staff for review. We must determine (1) if this is a matter that falls within the Commission's jurisdiction; (2) whether the facts you have provided indicate a violation of any of the rules which the Commission enforces; and (3) whether further investigation is warranted.

If further action is warranted, a full investigation will be instituted. Upon completion of such an investigation the matter will be referred to the Commission for its consideration. If we need additional facts or information from you, a member of our staff will be in touch with you to obtain them.

If, on the other hand, we determine after preliminary investigation that the complaints contained in your Request for Investigation do not merit further attention by the commission, you will be notified of that determination in writing.

Please be assured that we are acting as expeditiously as we can to give your matter careful attention. You will receive written notice of our decision promptly after we conclude our work.

Thank you for bringing this matter to the attention of the Attorney Grievance Commission.

Very truly yours,

Cynthia C. Bullington
Assistant Deputy Administrator

CCB/jmb

VICTOR S. VELIZ
*CHAIRPERSON*

VALERIE R. WHITE
*VICE-CHAIRPERSON*

MEGAN K. CAVANAGH
*SECRETARY*

*MEMBERS*
CATHY JOAN PIETROFESA
JEFFREY J. SAKWA
LATOYA M. WILLIS
CHERYL A. BUSH
THOMAS G. KIENBAUM
JAMES WEBB

ALAN M. GERSHEL
*GRIEVANCE ADMINISTRATOR*

ROBERT E. EDICK
*DEPUTY ADMINISTRATOR*

CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*

*ASSOCIATE COUNSEL*
STEPHEN P. VELLA
RHONDA SPENCER POZEHL
EMILY A. DOWNEY
KIMBERLY L. UHURU
DINA P. DAJANI
JOHN K. BURGESS
CHARISE L. ANDERSON
SARAH C. LINDSEY
JORDAN D. PATERRA
NATHAN C. PITLUK
MICHAEL K. MAZUR

## STATE OF MICHIGAN

# ATTORNEY GRIEVANCE COMMISSION

BUHL BUILDING
535 GRISWOLD, SUITE 1700
DETROIT, MICHIGAN 48226
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

June 26, 2018

**PERSONAL AND CONFIDENTIAL**

Tunc Uraz
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

Donald D. Campbell, Respondent's Counsel
Collins Einhorn Farrell PC
4000 Town Ctr Ste 909
Southfield, MI 48075-1408

**Re: Tunc Uraz as to Jacob A. Perrone**
    **AGC File No. 18-0956**

The above-referenced file has been assigned to Associate Counsel Charise L. Anderson to investigate. With this letter, a copy of Attorney Jacob Alan Perrone's answer is being provided to Tunc Uraz. It is the obligation of each party to maintain a current and accurate address and telephone number with this office. Should either party wish to comment further, please direct all correspondence to Associate Counsel Charise L. Anderson referencing the AGC file number above.

/ysb
Enclosure

THOMAS G. KIENBAUM
*CHAIRPERSON*

J. PAUL JANES
*VICE-CHAIRPERSON*

LATOYA M. WILLIS
*SECRETARY*

*MEMBERS*
JEFFREY J. SAKWA
CHERYL A. BUSH
JAMES WEBB
MARY CHARTIER
KATHLEEN HICKEY
WALLACE E. SMITH

STATE OF MICHIGAN
ATTORNEY GRIEVANCE
COMMISSION

PNC CENTER
755 W. BIG BEAVER, SUITE 2100
TROY, MI 48084
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

MICHAEL V. GOETZ
*GRIEVANCE ADMINISTRATOR*

KIMBERLY L. UHURU
*DEPUTY ADMINISTRATOR*

CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*

SARAH C. LINDSEY
*GENERAL COUNSEL*

*ASSOCIATE COUNSEL*
EMILY A. DOWNEY
JOHN K. BURGESS
CHARISE L. ANDERSON
JORDAN D. PATERRA
NATHAN C. PITLUK
MICHAEL K. MAZUR
KENNETH E. FRAZEE III
CANDIS I. NAJOR
PAMELA I. LINVILLE
CORA L. MORGAN

May 18, 2022

**PERSONAL AND CONFIDENTIAL**

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

RE:   Tunc Uraz as to Jacob A. Perrone
       AGC File No. 18-0956

Dear Mr. Uraz:

Your Request for Investigation was filed on April 9, 2018, alleging improper conduct of Jacob A. Perrone.  Following an investigation, this matter was submitted to the Commissioners for their review and decision.

At its regular monthly session on March 16, 2022, the Attorney Grievance Commission determined that the evidence reviewed did not warrant further action by the Commission.  Therefore, pursuant to MCR 9.114(A)(2), the Commission directed that this Request for Investigation be closed.

If I can be of further assistance to you, please do not hesitate to call.

Very truly yours,

/s/ Charise L. Anderson

Charise L. Anderson
Senior Associate Counsel

CLA/rlg

cc:  Donald D. Campbell, Respondent's Counsel

J. PAUL JANES
*VICE-CHAIRPERSON*

LATOYA M. WILLIS
*SECRETARY*

*MEMBERS*
JEFFREY J. SAKWA
CHERYL A. BUSH
JAMES WEBB
MARY CHARTIER
KATHLEEN HICKEY
WALLACE E. SMITH

# ATTORNEY GRIEVANCE
# COMMISSION

KIMBERLY L. UHURU
*DEPUTY ADMINISTRATOR*

CYNTHIA C. BULLINGTON
*ASSISTANT DEPUTY ADMINISTRATOR*

SARAH C. LINDSEY
*GENERAL COUNSEL*

*ASSOCIATE COUNSEL*
EMILY A. DOWNEY
JOHN K. BURGESS
CHARISE L. ANDERSON
NATHAN C. PITLUK
MICHAEL K. MAZUR
KENNETH E. FRAZEE
PAMELA I. LINVILLE
CORA L. MORGAN
ROBERT W. NOVY
GRAHAM G. LEACH

PNC CENTER
755 W. BIG BEAVER RD., SUITE 2100
TROY, MI 48084
TELEPHONE (313) 961-6585
WWW.AGCMI.ORG

August 29, 2022

**PERSONAL AND CONFIDENTIAL**

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

Re:  **Tunc Uraz as to Jacob Alan Perrone**
     **AGC File No.  18-0956**

Dear Mr. Uraz:

This letter is in response to your recent email to Commission Chairperson Thomas Kienbaum, which we have treated as a request for reconsideration.

You filed a request for investigation alleging ineffective assistance of counsel, and we reviewed your criminal proceeding. We note that your case was remanded to the trial court on a motion for new trial. After a *Ginther* hearing, the court denied your motion, finding that Mr. Perrone did not provide ineffective assistance of counsel. The Commission investigation determined Mr. Perrone's medical issues occurred several days after your trial, and there was insufficient evidence that they affected your trial. Given these circumstances, we decline to reopen this matter.

I hope this explanation provides you with an understanding of why your file was closed. If you remain dissatisfied with this decision, you have the option of filing a complaint for superintending control with the Michigan Supreme Court within 182 days of the dismissal letter. A copy of the filing instructions is enclosed.

Sincerely,

Kimberly L. Uhuru
Deputy Administrator

KLU/laa
Enclosure

| You have received a **jpay** letter, the fastest way to get mail |

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/21/2022 12:38:12 PM EST,    Letter ID: 1550288572
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/21/2022 12:38:12

Please do not reply to this email

STATE OF MICHIGAN
INGHAM COUNTY 30th. JUDICIAL COURT, LANSING MICHIGAN.

TO :

HONORABLE JUDGE CANADY III
30th. CIRCUIT COURT
313 W. KALAMAZOO STREET
LANSING, MI 48933

FROM:
TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

CASE #16-1064 FH - 16-1065 FC

Re: Mr. Perrone's "SECOND" MENTAL IMPAIRMENT EPISODE IN THE MONTH OF NOVEMBER 2017. THIS INFORMATION WAS NOT DISCLOSED BY MS. CRINO INGHAM COUNTY PROSECUTOR TO DEFENDANT'S APPEAL ATTORNEY AND TO DEFENDANT FOR HIS GINTHER HEARING AND APPEAL PROCESS.

DEAR HONORABLE JUDGE Canady III,

Based on

**"NEWLY DISCOVERED EVIDENCE"**

Mr. PERRONE WAS SENT TO A MENTAL HOSPITAL "SECOND" TIME PER MCL 330.1401 STARTED PRT PROCEEDINGS (person requiring treatment) and per Probate
Court orders. IN CLINTON COUNTY PROBATE COURT AND LANSING POLICE DEPARTMENT REPORT DATED 11/20/2017

In Prosecution's files which MR. URAZ received very recently End of June 2022 (it was requested end of April 2022).

Mr. Uraz found out Perrone's PRT (person requiring treatment) per MCL 330.1401 mental treatment request per courts CLINTON county probate court (for his "SECOND" time episode of mental breakdown and hospital stay) with in the same month of NOVEMBER 2017)

THESE HIDDEN/NOT SHARED/NOT DISCLOSED DOCUMENTS CONSISTED OF :

1) Lansing Police Department report about Mr. Perrone's SECOND mental breakdown on 11/20/2017 case# 175190653

2) "initial order after hearing on petition for mental treatment" Clinton county probate court filed on 12/06/2017 (need all 20 pages faxed to courts) defendant only have pages #5 and #6.

| **jpay** Tell your friends and family to visit www.jpay.com to write letters and send money! |

TUNC URAZ ID:114653 MCF Lock:UNIT 4100B01 ID:1550288572 [P 2/3]

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/21/2022 12:38:12 PM EST,    Letter ID: 1550288572
Location : MCF
Housing : UNIT 4100B01

3) "petition for mental health treatment" form filled by police officer see item #4 observation of the person doing the following acts saying the following things:

" as I drove past Perrone, he yelled "fuck you Quincy" . Perrone said he is # 1 Defense attorney in the world, Perrone states he would kill a bunch of people"

BECAUSE UNTIL NOW THERE WAS ONLY ONE MENTAL IMPAIRMENT  INCIDENT WITH MR. PERRONE AND WHOLE GINTHER HEARING WAS GIVEN BASED ON THAT INCIDENT (SEE ATTACHED HOSPITAL ADMISSION PAPERS DATED 11/14/2017)

and if you look at the dates he had second  episode of mental breakdown and sent to mental hospital  on 11/20/2017, right after he was released from his first mental hospital which he stayed on 11-14-2017- not sure when he was released assuming 5 days later. (see attached first mental hospital record)

THIS SECOND PERRONE INCIDENT ON 11/20/2017  WAS NOT SHARED WITH YOU ON 12/12/2017 JUDGE'S CHAMBERS MEETING AND ON 12/13/2017 HEARING WITH THE DEFENDANT ABOUT MR. PERRONE'S MENTAL IMPAIRMENT AT BOTH TIMES.

A PROSECUTOR'S ROLE AND RESPONSIBILITY IS TO SEEK JUSTICE AND NOT MERELY CONVICT. PEOPLE V DOBEK, 274 MICH APP 58, 63, 732 NW2d 546 (2007).

THE PROSECUTOR MAY REQUEST A RIGID ADHERENCE TO PROCEDURAL RULES THAN TAKING A STAND AGAINST THE MOST APPALLING ASSAULT UPON THE INTEGRITY AND REPUTATION OF ANY COURT-PERJURY.

PERJURY SHOWS A DEEP DISRESPECT TO THE COURT AND COMPLETE LACK OF CONCERN FOR THE OUTCOME TO THE DEFENDANT. THE LEGISLATURE TAKES FALSE STATEMENTS COMMITTED IN COURTS VERY SERIOUSLY.

PERJURY IN A CAPITAL CASE IS PUNISHABLE BY LIFE IN PRISON.

THE FAIR ASCERTAINMENT OF TRUTH;

WHAT IS EVEN MOST BOTHERSOME IN THIS CASE, IS THAT PROSECUTION WAS MADE AWARE OF MENTALLY INCAPACITATED ATTORNEY JACOB PERRONE BY 12/02/2017 PER MR. ROTH'S TESTIMONY ON 04/13/2017 GINTHER HEARING.

THIS "SECOND" MENTAL IMPAIRMENT OF MR. PERRONE WAS NOT BROUGHT UP  AT THE JUDGE'S CHAMBERS MEETING ON 12/12/2017 AND ON 12/13/2017 TO DEFENDANT AS WELL.

PLEASE LOOK AT THE DATE ON THE LETTER (12/18/2017)  SENT TO MY SENTENCING ATTORNEY DUANE SILVERTHORN BY PROSECUTOR THEN CHAS KOOP. 6 DAYS AFTER THE HEARINGS.

 Defendant was deprived of his right to conflict-free counsel during a critical stage in the proceedings when his counsel (PERRONE) was placed in the UNTENABLE POSITION OF defending his own interests which were adverse to his client's.

see case precedent:

DOWNS V. COMMONWEALTH
2020 KY. LEXIS 222 (2020)
SUPREME COURT OF KENTUCKY
JULY, 9, 2020 RENDERED

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1550288572 [P 3/3]

You have received a **JPay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/21/2022 12:38:12 PM EST, Letter ID: 1550288572
Location : MCF
Housing : UNIT 4100B01

THERE WERE NO ONE (A CONFLICT- FREE ATTORNEY) TO REPRESENT DEFENDANT'S INTEREST AT THE 12/12/2017 MEETING AT JUDGES CHAMBERS AND 12/13/2017 HEARING.

THESE CRUCIAL DOCUMENTS WAS KEPT HIDDEN BY PROSECUTION NOT TO REVEAL MR. PERRONE'S SECOND MENTAL BREAKDOWN AND HOSPITAL STAY.

DEFENDANT AND HIS APPEAL ATTORNEY COULD HAVE USED THIS INFORMATION DURING MR. URAZ'S GINTHER HEARING TO QUESTION HIM ABOUT SECOND INCIDENT AND AT HIS APPEAL PROCESS.

THIS COURT HAVE THE POWER TO AVOID THE GRAVE INJUSTICE OF AN INNOCENT MAN BEING IN PRISON, WHILE HIS U.S. BORN SON IS SUFFERING FROM MAJOR DEPRESSION IN A ORPHANAGE IN TURKEY.

RESPECTFULLY SUBMITTED

TUNC URAZ

ATTACHMENTS :

1) MR. PERRONE'S "FIRST" MENTAL HOSPITAL ADMISSION PAPERS DATED 11/14/2017

2) Lansing Police Department Incident report about Mr. Perrone's "SECOND" mental breakdown on 11/20/2017 case# 175190653

3) "petition for mental health treatment" form filled by police officer on 11/20/2017 about Mr. PERRONE'S mental impairment and comments that day.

4) "initial order after hearing on petition for mental treatment" Clinton county probate court filed on 12/06/2017 (need all 20 pages faxed to courts) defendant only have pages #5 and #6.

5) Letter to MR. SILVERTHORN dated 12/18/2017 written by Mr. KOOP about Mr. PERRONE'S SECOND MENTAL IMPAIRMENT.

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  4/4/2023 10:57:31 PM EST,   Letter ID: 1737423838
Location :  MCF
Housing :  UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 04/04/2023 22:57:00

Please do not reply to this email

AGC WALSH

TO:
ATTORNEY GRIEVANCE COMMISSION PNC CENTER
755 W. BIG BEAVER RD. ST 2100
TROY, MI 48084

ATTORNEY INFORMATION :

MS. SUSAN K. WALSH (P40447)
PO BOX 157
NORTHVILLE, MI 48167-0157
skwalsh44@gmail.com

Complainant information :

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S.Sheridan Dr.
Muskegon, MI 49442

Relationship to attorney complained of:  MS.WALSH WAS A MAACS APPOINTED APPEALS ATTORNEY TO TUNC URAZ IN MARCH 2018

Dear AGC,
thank you for your assistance in this matter.

AFTER RECEIVING MS. CRINO'S # (22-1542).AND MR. SILVERTHORN'S #(22-2095) RESPONSES TO AGC, MS.WALSH FAILED TO GET PROSECUTOR'S  FILE AND FAILED TO REQUEST A SECOND GINTHER HEARING BASED ON PERRONE'S PROBATE COURT RECORDS DISCOVERED LATE AUGUST 2022.

MS. WASH WAS DEFENDANT'S APPEAL ATTORNEY FROM FEBRUARY 2018 TILL JANUARY OF 2023,  5 YEARS TOTAL

SHE FILED HER FIRST BRIEF WITH COURT OF APPEALS IN APRIL 2019 AND HER REMAND FOR GINTHER HEARING IN APRIL OF 2020,

SHE ONLY MET DEFENDANT 3 TIMES VIA VIDEO ZOOM 30 MIN EACH AND 2 PHONE CALLS TOTAL IN 5 YEARS

HER BRIEFS HAD MISTAKES, MISREPRESENTATIONS OF FACTS AND WHAT TOOK PLACE DURING TRIAL (SEE ATTACHED BRIEF ANALYSIS BY DEFENDANT)

DEFENDANT SENT HER HIS ACTUAL CLAIM OF INNOCENCE AND ALL THE PHYSICAL EVIDENCES AS EARLY AS MAY OF 2019 WITH NEWLY DISCOVERED AND AVAILABLE EVIDENCES.  WALSH DID NOT DO ANY INVESTIGATION, NOR USED THIS ACTUAL CLAIM OF INNOCENCE BRIEFS/GINTHER HEARING.

SHE BARELY FOCUSED ON PERRONE'S INEFFECTIVENESS ISSUES "DURING TRIAL" NOT BEFORE OR AFTER TRIAL. (Pretrial not filing witness list until 7 days before trial, late filing of pretrial motions, def. evidentiary

*You have received a* **JPay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 4/4/2023 10:57:31 PM EST,     Letter ID: 1737423838
Location : MCF
Housing : UNIT 4100B01

hearing testimony used against him, after trial not having a "conflict-free attorney" to represent defendant's rights during 12/12/17 and 12/13/17 hearings.

SHE FAILED TO BRING IN AN EXPERT WITNESS PSYCHOLOGIST/ PSYCHIATRIC TO TESTIFY ABOUT EFFECTS OF UNDIAGNOSED, UNTREATED SUBSTANCE INDUCED SCHIZOPHRENIA- BIPOLAR EFFECTIVE DISORDER AND ITS EFFECTS ON INDIVIDUALS AND THEIR DECISION MAKING PROCESSES WHEN ONE HAS A MENTAL ILLNESS.

INSTEAD SHE HIRED A PRIVATE INVESTIGATOR TO ASK OTHER ATTORNEYS PERCEPTIONS OF PERRONE'S MENTAL GRADATIONS/ISSUES WHOM NONE OF THEM (ATTORNEYS) ARE QUALIFIED TO DIAGNOSE, NOTICE MENTAL ILLNESS

HERE ARE MS. SUSAN K. WALSH'S INEFFECTIVENESS ISSUES:

Ms. Walsh's qualifications/experiences for this Ginther hearing, was not enough.

(I HAVE ASKED MAACS AND SADO TO GIVE THEIR SUPPORT TO WALSH OR APPOINT ANOTHER MORE EXPERIENCED LITIGATION SUPPORT APPEAL ATTORNEY
(IN March of 2020 and July of 2021 via letters, I was told Ms. Walsh would be adequate)

see GINTHER HEARING, 04/13/2022 PG 64 LIne 22-24 :

Judge asks both Crino and Walsh to submit briefs after GINTHER HEARINGS:

Walsh: "Yea, I know Ms. Crino is a trial GAL and I think she does an excellent job. I AM A WRITER, SO I WOULD PREFER TO DO A BRIEF.
this is why I have asked SADO to either give support to Walsh, or replace her with another Ginther experienced attorney.

MS. WALSH SENT BACK MY SUPPLEMENTAL STANDARD 4 BRIEF 3 TIMES BACK TO ME BECAUSE IT WAS MORE THAN 50 PAGES AND NOT ALLOWED PER MCR 7.212, (and took pictures of my briefs anticipation of a grievance)
HOW EVER NUMBER OF ISSUES I PUT ON RECORD DURING SENTENCING ON 01/24/2018, FIFTEEN (15), see pgs 19-30
AND DURING GINTHER HEARING 10/04/22, TESTIMONY TWENTY (20) see pages 44-64,

TOTAL OF 35 ISSUES

She did not motion COA to allow defendant file more than 50 pages..

My 20 years + appeal attorney appointed by MAACS:
MS. SUSAN K. WALSH  FAILED TO REQUEST DISCOVERY OR NEVER RECEIVED DISCOVERY PACKAGE FROM PROSECTOR CRINO, DUANE SILVERTHORN AND JACOB PERRONE

THIS GRIEVANCE IS FILED BECAUSE;

IN MS. CRINO'S BRIEF (# 22-1542)TO AGC HER EXPLANATION SECOND PARAGRAPH (PG .2) (in part) ..."I have a personal practice of providing discovery to any appellate attorney who has trouble obtaining discovery from trial counsel...I did not locate a request from Ms. Walsh....therefore the 12/18/2018 docs. sent to Silverthorn from KOOP were never disclosed to Ms. Walsh NOR myself.

Per Mr. Perrone's response to AGC [#18-0956] dated 05/29/2018 pg. 7 "I have yet to hear from his appeal attorney and will make copies available upon request". I turned over over copies of documents requested by Mr. Uraz at his sentencing through his attorney. Further, I sent Mr. Uraz copies of his file in its entirety on May 29, 2018. ( there were so many documents "missing, not disclosed documents compare to Prosecution's file I received in July 2022.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1737423838 [P 3/3]

**You have received a _JPay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  4/4/2023 10:57:31 PM EST,    Letter ID: 1737423838
Location :  MCF
Housing :  UNIT 4100B01

Per SILVERTHORN's grievance responses on 03/31/2023 to questions # 7.2,7.3,7.5, he had talked to Ms. Walsh but never provided 12/18/2017 docs to her.

QUESTIONS TO MS..WALSH

1) WHY DID YOU IGNORE ACTUAL INNOCENCE CLAIMS BY DEF. WITH EVIDENCE SENT TO YOU IN MAY OF 2019 NOR YOU DID NOT USE THEM AT GINTHER HEARINGS?
2) WHY DIDN'T YOU MOTION FOR A SECOND GINTHER HEARING AFTER DEF. PROVED THAT PERRONE'S MENTAL ISSUES WENT BACK TO 2015? which were sent to you late August 2022?
3)Why didn't you bring in a mental health expert to testify about effects/traits of Bipolar/ schizophrenia on brain and how long episodes last?
(instead you hired a P/I to ask attorneys what was wrong with Perrone, none of them are qualified to answer)
4) Why wouldn't you use Perrone first hospital stay medication doc. as part of appeal/Ginther which was sent to you in 2019 along with his crazy messages Perrone sent to my sister?
5) Did you contact Atty. Jeffrey Rothstein to find out why he was dropped and Perrone appointed without my consent on 11/16/2016?
6) What did Perrone tell you about his Mental illness since he perjured under oath during his Ginther HEARING saying that he went to Dallas on 10/04/2021.
7) WHY DIDN'T YOU CONTACT ALEX RUSEK ( Informant R. Close's atty he had immunity for the letter he sent to him about def. his real intentions)
8) Why did you stop responding to my messages after May of 2022?

9)Why didn't you use the questions I have sent you via email on 09/06/21 for Ginther Hearings.
10) Why didn't you fix the mistakes on hour brief filed on 02/2019?
11) Do you honestly believe that you met the standards of indigent criminal appeal for attorneys (2004-6)?
12) Why didn't you ask for discovery packages from ; prosecutor's office, Perrone, Crino, Silverthorn.
Especially Silverthorn is accusing you for not asking for them?
13) why didn't  use a major Sixth Amend. violation against defendant on 12/12/2017 and 12/13/2017 hearings where defendant did not have 'conflict-free' attorney to represent his interest? (perrone's mental incapacitation where he was placed in the untenable position of defending his own interests which were adverse to his clients)? I did sent you a case precedent as  early as Summer of 2021.
14) What did Perrone tell you about his mental impairment episodes?



Please do not reply to this email

1)ANALYSIS OF PROSECUTOR CRINO'S CROSS BRIEF FILED AT COURT OF APPEALS ON 09/12/2022

INEFFECTIVENESS AND INCOMPETENCE OF JACOB PERRONE

PEOPLE V STRADDER 394 MICH 193 (1975) SUPREME COURT OF MICHIGAN

DEFENDANT ARGUED THAT HE WAS DEPRIVED OF A FAIR TRIAL BECAUSE OF INEFFECTIVE ASSISTANCE OF COUNSEL,
COUNSEL FAILED TO HIS CLIENT DURING THE 109 DAYS PRECEDING DEFENDANT'S TRIAL,
FAILED TO INTERVIEW CALL PROBABLY IMPORTANT WITNESSES, FAILED TO PERFECT AN AVAILABLE INSANITY DEFENSE
(IN THIS CASE; IMPEACHMENT OF JAILHOUSE INFORMANTS CRIMINAL BACKGROUNDS PER MRE 609)
CONCOCTED AN IRRATIONAL DEFENSE, AND CONDUCTED HIMSELF IN A BIZARRE IF NOT CONTEMPTUOUS MANNER.
THE COURT FOUND THAT THESE ACTIONS RESULTED IN INEFFECTIVE ASSISTANCE FOR FAILURE OF DEFENDANT'S COUNSEL TO DEMONSTRATE ADEQUATE COMPETENCE AND ADEQUATE DILIGENCE TO ASSURE A FAIR TRIAL.
THE COURT REVERSED THE CONVICTION AND ORDERED A NEW TRIAL.

[T]HE TRIAL WAS A FARCE, OR A MOCKERY OF JUSTICE OR WAS SHOCKING TO THE CONSCIENCE OF THE REVIEWING COURT, OR THE THE REVIEWING COURT, OR THE PURPORTED REPRESENTATION WAS ONLY PERFUCTORY, IN BAD FAITH, A SHAM , PRETENSE, OR WITHOUT ADEQUATE OPPORTUNITY FOR CONFERENCE AND PREPARATION, WILLIAMS V BETO 354 F2D 698, 704 (CA 5, 1965)
(SEE PEOPLE V HUSBAND, 50 MICH 46 (1973), PEOPLE V GREENE, 42 MICH APP 154 (1972)
WE INTERPRET THE RIGHT TO COUNSEL AS THE RIGHT TO EFFECTIVE COUNSEL.
WE INTERPRET THE RIGHT TO COUNSEL TO MEAN NOT ERRORLESS COUNSEL, AND NOT COUNSEL JUDGED IN EFFECTIVE BY HINDSIGHT, BUT COUNSEL REASONABLY LIKELY TO RENDER AND RENDERING EFFECTIVE ASSISTANCE (EMPHASIS ORGINAL).
WEST V LOUISIANA 478 F2D 1026, 1033 (CA 5, 1973)

INEFFECTIVE ASSISTANCE OF COUNSEL (IAC) STANDARDS PER
STATE V. THOMAS 157 W . VA 640 SUPREME COURT OF APPEALS (1974)

IAC DERELICTIONS WERE AS FOLLOWS

1) FAILURE TO OBJECT TO OR MOVE FOR THE SUPPRESSION OF EVIDENCE SEIZED INCIDENT TO AN UNLAWFUL ARREST PRESCRIBED BY FOURTH AMENDMENT OF U.S.C
2) FAILURE TO OBJECT TO THE INTRODUCTION OF EVIDENCE OF COLLATERAL CRIMES IN A MANNER PREJUDICIAL TO THE ACCUSED.
3) FAILURE TO MOVE FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S EVIDENCE
4) FAILURE TO ASSIGN GROUNDS IN A MOTION TO SET ASIDE THE VERDICT AND AFFORD THE DEFENDANT, A NEW TRIAL.
5) FAILURE TO FILE AN APPEAL ON BEHALF OF DEFENDANT WITHIN THE SAME LIMITS PRESCRIBED BY LAW.
6) DEFENSE COUNSEL INADVERTENTLY CORROBORATED THE STATE'S CASE AND AIDED IN SECURING HIS CLIENT'S CONVICTION BY CONDUCTIVE BY
THESE CONCLUSIONS LEAP FROM THE SILENT RECORD AND PALPABLY DONESTICK THAT DEFENDANT'S COUNSEL DID NOT REPRESENT HIS CLIENT'S BEST INTEREST

OTHER COURTS HAVE INTERPRETED THIS APPROACH AS DID THE WEST VIRGINIA SUPREME COA, REQUIRING DEFENDANT TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT HIS OR HER ATTORNEY DID NOT POSSESS: THE NORMAKL CUSTOMARY SKILL AND KNOWLEDGE OF THE LAW. THIS TEST, WHICH HAS CHARACTERISTICS IN COMMON WITH MALPRACTICE STANDARD APPLIED TO PHYSICIANS AND OTHER PROFESSIONS, HAS WORTH IN THAT IF PROVIDES THE COURT WITH MEASURABLE INDICIA WITH WHICH TO JUDGE AND COMPARE COUNSEL'S EFFORTS (STATE V. THOMAS)

SHAM TRIAL STANDARD :

IN BEASLEY V U.S., 491 F2D 687 (CA 6 1974) 'SHAM TRIAL" STANDARD: HELD THAT THE PETITIONER DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL "BEFORE AND DURING TRIAL"
491 F2D 687, 696, WHILE THE OPINION SPOKE LARGELY TO QUESTIONS OF COMPETENCY , THIS REFERENCE MUST ALSO INCLUDE THE DISTRICT COURT'S FINDINGS OF FAILURE "TO INTERVIEW ANY RES GESTAE WITNESSES BEFORE TRIAL EXCEPT ONE, POOR ONE AND OF COUNSEL CONDUCTING "NO MORE THAN A CURSORY INVESTIGATION OF THE FACTS PRIOR TO TRIAL. 491 F2D 687,691

PEOPLE V DEGRAFFENREID 19 MICH APP 702;173 NW 2ND 317 (1969) : DEFENDANT RECEIVED A SHAM TRIAL BECAUSE PER SHAM RULES:
DEFENDANT CAN MAY REQUEST A NEW TRIAL BECAUSE HE WAS REPRESENTED BY A BAD LAWYER
OR
DEFENDANT MAY REQUEST A NEW TRIAL BECAUSE OF SERIOUS MISTAKE MADE BY A GOOD LAWYER, 19 MICH APP 702, 173

STANDARDS:

1)AS TO INCOMPETENCY THERE IS THE FAMILIAR ANALYSIS OF 'SHAM" TRIAL. HOWEVER, AT A DIFFERENT PART IN HIS DGRAFFENREID OPINION, JUSTICE THEN JUDGE LEVIN:"THE QUESTION OF COMPETENCE IN THE LIGHT OF A FAIR TRIAL, 'WHERE LAWYER'S MISTAKE IS OF SUCH SERIOUS PROPORTION THAT IT MAY HAVE BEEN DECISIVE" A NEW TRIAL MAY BE APPROPRIATE 19 MICH APP 702, 716

2) WITHOUT ADEQUATE OPPORTUNITY FOR CONFERENCE AND PREPARATION, WILLIAMS V BETO.

3) LACK OF DUE DILIGENCE WAS RECOGNIZED AS A FACTOR TO BE CONSIDERED INEFFECTIVENESS OF COUNSEL BY THIS COURT
HOLT V. STATE BAR GRIEVANCE BOARD, 388 MICH 50 199 NW 2D 195 (1972).
WE NOTED THAT CANON 6 REQUIRES GENERALLY: "A LAWYER SHOULD REPRESENT A CLIENT COMPLETELY, 388 MICH 50,63
ACCORDING TO DICIPLINE RULE 6101 (A)(2) FAILING TO ACT COMPETENTLY:
(A) A LAWYER SHALL NOT:
(2) HANDLE A LEGAL MATERIAL WITHOUT PREPARATION ADEQUATE IN THE CIRCUMSTANCES, 388 MICH 50,63

IN BEASLEY SUPRA

1) COUNSEL'S INCOMPETENCE IN THE INSTANT CASE WAS MANIFESTED BY MANY OF THE SAME FACTORS CONDEMNED BY DISTRICT COURT IN BEASLEY SUPRA:

HE DID NOT INTERVIEW OR CALL ALL POSSIBLE WITNESSES AN, IN FACT, DID NOT DISCOVER MOST OF THEM UNTIL IN THE MIDST OF TRIAL, WHEN IT WAS, IN FACT, TOO LATE

2) HE FAILED TO MEET WITH HIS CLIENT DURING THE PERIOD BEFORE TRIAL AND, CONSEQUENTLY, DID NOT DEVELOP A COHERENT STRATEGY WITH DEFENDANT, DID NOT LEARN THE DETAILS OF DEFENDANT'S HISTORY AND WAS UNABLE TO CONSTRUCT A VIABLE DEFENSE, WHEN THERE WAS, IN FACT, AMPLE EVIDENCE AVAILABLE HAD HE "ASSIDUOUSLY" PREPARED.

IN THE INSTANT CASE DEFENDANT'S COUNSEL NEITHER INVESTIGATED THE VIABLE DEFENSE HE PLANNED TO PRESENT, NOR CONTROVERSIAL ARE HE CHOSE TO PRESENT. ADDITIONALLY HIS CONDUCT WAS NEITHER PROPER NOR UNCONTEMPTUOUS.

WITNESSES HE DID CALL (MDOC INMATES WHO LACKED CREDIBILITY) COULD ONLY BE RATIONALIZED BY A BIZARRE AND IMPLAUSIBLE DEFENSE STRATEGY.

Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4103B01
Date: 09/19/2022 20:51:11

Please do not reply to this email

2) ANALYSIS OF PROSECUTOR CRINO'S  CROSS BRIEF FILED AT COURT OF APPEALS ON 09/12/2022


"THE ELEMENTS OF THE CRIME MATTER NOT THE CONDUCT"

 ELEMENTS OF THE SOLICITATION TO MURDER :

IN PEOPLE V VANDERLINDER, 192 MICH APP 447 (1992), A SOLICITATION TO MURDER OCCUR WHEN THE SOLICITOR:
1) "PURPOSELY SEEKS" SOMEONE KILLED AND
2) TRIES TO ENGAGE SOMEONE TO DO THE KILLING


THE SCOTUS APPLIED THE "CATEGORICAL APPROACH" US V. DAVIS 139 SCT. 2319 (2019)

"A COURT MAY NOT LOOK AT DEFENDANT'S ACTUAL CONDUCT UNDER THE CATEGORICAL APPROACHED, ONLY THE ELEMENTS OF THE OFFENSE IN QUESTION"

IN THIS CASE ALTHOUGH PROSECUTOR KOOP USED THE ELEMENTS ABOVE DURING PRELIMINARY EXAM IN 12/2016,THE SAME ELEMENTS WERE IGNORED BY TRIAL JUDGE AND PERRON, AND PROSECUTOR'S SINCE:  DEFENDANT WAS "PURPOSEFULLY SOUGHT" BY JAILHOUSE INFORMANTS AND UNDERCOVER POLICE.

"THE MOST INTELLIGENT AND EDUCATED LAYMAN HAS SMALL AND SOMETIMES NO SKILL IN SCIENCE OF LAW."
 POWELL V ALABAMA 287 US 45 68-69 (1932)


PROSECUTOR MS. CRINO ONLY FOCUSED ON PERRONE'S DEFENSE THAT HE PRESENTED, ACCORDING TO HER ; PERRON DID EVERYTHING RIGHT AND THE EVIDENCE PRESENTED WAS TOO STRONG AGAINST THE DEFENDANT.

HERE IS THE WRONG THINKING, ANALOGY OF MS. CRINO:

1) GINTHER HEARING WAS ONLY GIVEN BASED ON THE EMAIL MESSAGE SENT BY PERRONE TO DEFENDANT'S FAMILY ONE DAY BEFORE THE TRIAL ENDED (11/08/2017),

2) IF PERRONE DID A " GREAT JOB" THEN WHY DID HE AND THE DEFENDANT LOST THE TRIAL?

3) ON 04/13/2022 DEFENDANT URAZ TESTIFIED AT HIS GINTHER HEARING AND MANAGED TO PUT 20 (TWENTY) ISSUES ON RECORD WHERE PERRONE AND COURTS FAILED TO PROTECT DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS.

4) PERRONE'S  MENTAL IMPAIRMENT TOOK PLACE 3 DAYS AFTER DEFENDANT'S TRIAL WAS ENDED 11/09/2017 TRIAL ENDED AT 4:30PM
11/14/2017 9:30 AM PERRONE WAS HOSPITALIZED AT UNIVERSITY OF MICHIGAN HOSPITAL MENTAL WARD
.

5) MS. CRINO KEPT PUSHING THE IDEA THAT DEFENDANT WAS "SOMEHOW O.K. WITH PERRONE HELPING

APPOINTED SENTENCING ATTORNEY MR. SILVERTHORN WITH DEFENDANT'S UPCOMING SENTENCING
(11/24/2018)

THIS WOULD HAVE BEEN IMPOSSIBLE BECAUSE PERRONE WAS REQUIRED TO GO THROUGH A 90
(NINETY)
DAY TREATMENT (10 DAYS IN THE HOSPITAL AND 80 DAYS OUT PATIENT) COMBINED

6) LOOK AT ATTACHED PERRONE'S FATHER AND WIFE FILLED   (PETITION FOR MENTAL HEALTH
TREATMENT FROM)

see attachment #1 "Petition for mental health treatment" filled out by Mr. Joseph V. Perrone (Jacob A. Perrone's
father) on 11/14/2017 for his involuntary admission to mental hospital in Ann Arbor, MI.
according to his father on the form section (3)(d):

"08/17 went to Sparrow Hospital with severe anxiety"
(see pretrial status conference hearing transcript 08/15/2017, Perrone not being ready for several motions and judge
questions Perrone why he has not done anything for his Client and see Perrone's excuses)

"11/17 went to Sparrow Hospital with Chest pains left Against Medical advice" LOOSING THE TRIAL TRIGGERED
HIS BIPOLAR MANIC DEPRESSIVE EPISODE

(The exact date is unknown if Perrone went to hospital during or after the trial, the trial dates for defendant Uraz were
between 10/31/2017-11/09/2017)

section (d) (ii) : "punches holes in walls, is verbally abusive to his wife- has said he will "kill" &/or destroy everyone,
will take over Lansing + rule w/ an iron fist,

** THIS HAPPENS WEEKLY FOR THE LAST 2 YEARS AT LEAST."**

this means Perrone has been mentally impaired since 2015, unmedicated and untreated.

***(PRT & CERTS PROVIDED AS INFO ONLY FOR FILING, DEMANDED (Perrone) FOR HEARING 11/22/2017)

section 4: "He has many angry outbursts, disorganized thoughts. He thinks he is the most intelligent person in the
world, he wil "destroy" or "kill" everyone, he called himself "my suicidal son" has many anger issues.

11/14/2017 by Joseph V. Perrone 15880 Brook Rd. Lansing, MI 48906


PERRONE WAS APPOINTED TO MR. URAZ ON

11/16/2016 FOR SOLICITATION CHARGES

DEFENDANT SWITCHED ATTORNEYS ON 11/20/2016 MICHAEL NICHOLS TO REPRESENT HIM FOR
SOLICITATION CHARGES

PERRONE APPOINTED FOR SECOND STALKING CHARGES UNBEKNOWNST TO DEFENDANT ON 11/16/2016
BY FORGING HIS INITIALS ON THE SUBSTATION FORM.

DEFENDANT ONLY SAW PERRONE AT JAIL ON 12/13/2016 (WHERE HE WAIVED THE PRELIM. OR SECOND
STALKING CHARGE BECAUSE HE WAS LATE THAT DAY AND UNPREPARED) AND DURING PRE-TRIAL
HEARINGS AT COURT ONCE MONTH TILL 05/02/2017.

FROM 05/02/2017 TILL 08/15/2017 MORE THAN 100 DAYS DEFENDANT DID NOT SEE PERRONE AT JAIL TO
PREPARE FOR TRIAL AND AFTER 8/15/2017, DEFENDANT DID NOT SEE PERRONE TILL 10/11/2017

To : Information Services
Date : 9/19/2022 8:54:11 PM EST    Letter ID : 1503607983
Location : MCF
Housing : UNIT 4103B01

PRETRIAL HEARING AND 11/20/2017

DEFENDANT WAS DEPRIVED OF AN EFFECTIVE ASSISTANCE OF COUNSEL FOR HIS TRIAL BECAUSE HIS COURT APPOINTED ATTORNEY WOULD NOT COME AND MEET HIM IN JAIL MEANING FULLY FOR 12 MONTHS, 300 DAYS. SEE DEFENDANT'S JAIL ATTORNEY VISIT LOGS.

PERRONE NEVER TALKED/CONSULTED WITH DEFENDANT ABOUT HIS TRIAL STRATEGY AND ABOUT WHICH WITNESSES TO CALL.
SEE 10/20/2017 TRANS PG 124-147 WITNESS DEBACLE
SEE 11/07/2017 TT STILL NO WRITS DONE FOR MDOC WITNESSES (THIS IS "A" LIST ATTY. APPOINTED BY COURTS

DEFENDANT DID NOT HAVE TWO ATTORNEYS REPRESENTED HIM
BECAUSE PERRONE WAS "ABSENT" PER CRONIC STANDARDS FROM THE TRIAL DUE TO HIS MENTAL IMPAIRMENTS
AND ERIC SCHROEDER WAS A PART TIME VERY INEXPERIENCED ATTORNEY JUST "HELPED" PERRONE VERY PART TIME AS HE JOINED PERRONE'S PRACTICE IN SEPTEMBER OF 2017 (ONE MONTH BEFORE THE TRIAL) SEE DEFENDANT'S JAIL LOGS.

PERRONE LIED UNDER OATH ON THE STAND ON 10/04/2021 GINTHER HEARING SAYING THAT HE WENT TO DALLAS AND CAME BACK FOR FAMILY EMERGENCY; IN FACT HE NEVER WENT TO DALLAS, HE WAS SENT TO MENTAL HOSPITAL INVOLUNTARILY BY HIS FATHER'S AND WIFE'S PETITION TO TREATMENT FORM, ON 11/14/2017, 9:30 AM (3 DAYS AFTER TRIAL) NOT AS PROSECUTOR CRINO PERJURED BY SAYING (PERRONE HAD A MENTAL EPISODE ONE WEEK AFTER THE TRIAL).


THEREFORE DEFENDANT IS ASKING THIS COURT TO REVERSE HIS CONVICTION AND GRANT HIM A NEW TRIAL.

RESPECTFULLY

SUBMITTED

TUNC URAZ

MICHIGAN DEPARTMENT OF CORRECTIONS
**DISBURSEMENT AUTHORIZATION/CATALOG ORDER FORM**

CAR-100
4835-1100
10/08

Prisoners write clearly-illegible/incomplete forms will not be processed.          Date:

Prisoner Number:          Prisoner's Last Name:          Institution:          Lock Number:

Pay To: _____

Address: _____

_____

Cost/Amount

$ _____

Reason/Description: (If to relative, identify relationship) _____

**COMPLETE THIS PORTION FOR CATALOG ORDERS ONLY**

| Page No. | Description of Item | Unit | Catalog Number | Color | Size | Qty | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | $ | $ |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Sub-Total _____ $ _____

Delivery Costs _____ $ _____

Tax (if applicable) _____ $ _____

Total Amount Enclosed _____ $ _____

_____          _____
Prisoner's Signature          Date          Deputy Warden or Authorized Agent          Date

_____          _____
R.U.M. or Authorized Agent          Date          Warden or Authorized Agent          Date

| | | |
|---|---|---|
| Code | Actual Expense | Batch Number |

Distribution: White-Business Office; Canary-Vendor; Pink-Property; Goldenrod-Prisoner

DEFENDANT'S RESPONSE TO PROSECUTION'S BRIEF DATED 11/28/2022(POST REMAND SUPPLEMENTAL STANDARD -4 BRIEF)

RESPONSE TO ITEM #5 ABOUT PERRONE'S MENTAL ILLNESS/IMPAIRMENT DISCLOSURE PERJURY AT GINTHER HEARING;
10/04/2021 SEE ATTACHED BRIEFS:

#5 "HOWEVER, IN REVIEWING THESE BRIEFS, ONE FACTUAL CORRECTION IS REQUIRED BASED ON PERRONE'S TESTIMONY AT THE GINTHER HEARING. BEFORE HAVING HEARD PERRONE'S TESTIMONY, THE PEOPLE BELIEVED, BASED ON MR. PERRONE'S STATEMENTS TO THE TRIAL COURT ON 12/12/2017, THAT PERRONE WAS DIAGNOSED AS BIPOLAR BEFORE MR. URAZ'S TRIAL, AND THIS FRAMED OUR ARGUMENT AS THOUGH MR. PERRONE WAS A PERSON "PREVIOUSLY" DIAGNOSED WITH BIPOLAR DISORDER.
MR. PERRONE'S TESTIMONY AT THE GINTHER HEARING CORRECTED THIS MISCONCEPTION. AT THE GINTHER HEARING, PERRONE'S TESTIFIED THAT HE DID NOT HAVE MENTAL HEALTH DIAGNOSIS BEFORE DEFENDANT'S TRIAL AND THAT FROM HIS PERPECTIVE, HE DID NOT HAVE SYMPTOMS DURING TRIAL (10/04/2021). PERRONE TESTIFIED THAT HE DID NOT HAVE ANY ISSUES WITH HIS MENTAL HEALTH ON DAY OF DEFENDANT'S TRIAL. PERRONE TOLD THE TRIAL COURT THAT HE HAD AN ISSUE WITH HIS MENTAL HEALTH ABOUT A WEEK AFTER TRIAL. THIS EPISODE, APPROXIMATELY A WEEK AFTER TRIAL, LED TO MR. PERRONE BEING DIAGNOSED WITH BIPOLAR DISODER.

FACTS;

> PERRONE WAS REPRESENTING HIS INTEREST DURING JUDGES CHAMBERS HEARING ON 12/12/2017 NOT DEFENDANTS.

> DEFENDANT WAS DEPRIVED OF HIS RIGHT TO CONFLICT- FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (JUDGES CHAMBERS MEETING ON 12/12/2017 AND 12/13/2017 IN COURT HEARING) WHEN PERRONE WAS PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH ADVERSE TO HIS CLIENTS.

PERRONE LIED UNDER OATH DURING HIS GINTHER HEARING

> HE HAD MENTAL IMPAIRMENTS SINCE 2015 ABOUT HIS "UNTREATED MENTAL ISSUES". (BIPOLAR I DISORDER AND SCHIZOPHRENIA (ANASOGNOSIA "ONE DENYING THEIR OWN MENTAL ILLNESS OR NOT BE AWARE OF IT")

THIS IS A BRADY MATERIAL VIOLATION BY PROSECUTION, BECAUSE THIS INFORMATION WAS NOT SHARED WITH DEFENDANT AND HIS APPEAL ATTORNEY FOR BOTH GINTHER HEARINGS . ONLY 11/20/17 LANSING POLICE REPORT WAS SHARED WITH DEFENDANT'S SENTENCING ATTY. SILVERTHORN WHERE HE DID NOT SHARE WITH DEFENDANT ON 12/18/17.

PROSECUTOR MS. CRINO FAILED TO DISCLOSE THAT PERRONE WAS GRIEVED BY ANOTHER PROSECUTOR AT INGHAM COUNTY ON 12/11/2017 (DEFENDANT HAD TO GRIEVE HER TO GET THE TRUTH) SEE HER RESPONSE WITH ATTACHMENTS TO ATTORNEY GRIEVANCE COMMISSION CASE # 22-1542 AND 22-1543,

HISTORY OF MENTAL ISSUES AND HE COMMITTED PERJURY ON RECORD WHEN MR. PERRONE TESTIFIED UNDER OATH ON 10/04/2021 GINTHER HEARING

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

see attachment #1 "Petition for mental health treatment" filled out by Mr. Joseph V. Perrone (Jacob A. Perrone's father) on 11/14/2017 for his involuntary admission to mental hospital in Ann Arbor, MI.
according to his father on the form section (3)(d):

"08/17 went to Sparrow Hospital with severe anxiety"
(see pretrial status conference hearing transcript 08/15/2017, Perrone not being ready for several motions and judge questions Perrone why he has not done anything for his Client and see Perrone's excuses)

"11/17 went to Sparrow Hospital with Chest pains left Against Medical advice"

(The exact date is unknown if Perrone went to hospital during or after the trial, the trial dates for defendant Uraz were between 10/31/2017-11/09/2017)

section (d) (ii) :
************
 "punches holes in walls, is verbally abusive to his wife- has said he will "kill" &/or destroy everyone, will take over Lansing + rule w/ an iron fist,

PERRONE'S FATHER STATEMENT ON RECORD ON 11/14/2017

****"THIS HAPPENS WEEKLY FOR THE LAST 2 YEARS AT LEAST."*****

this means Perrone had mental impairments since 2015, unmedicated and untreated
**********

***(PRT & CERTS PROVIDED AS INFO ONLY FOR FILING, DEMANDED (Perrone) FOR HEARING 11/22/2017)

section 4: "He has many angry outbursts, disorganized thoughts. He thinks he is the most intelligent person in the world, he wil "destroy" or "kill" everyone, he called himself "my suicidal son" has many anger issues.

11/14/2017 by Joseph V. Perrone 15880 Brook Rd. Lansing, MI 48906


THIS MEANS PERRONE ALWAYS HAD MENTAL ISSUES LONG BEFORE DEFENDANT'S TRIAL SINCE 2015.

PERRONE ADMITTED THAT HE WAS NOT TAKING ANY MEDICATION BEFORE OR DURING TRIAL FOR BIPOLAR DISORDER HE WAS UNDIAGNOSED AND UNTREATED FOR THIS MENTAL ILLNESS.

PERRONE WAS IN MENTAL HOSPITAL 90 HOURS AFTER THE DEFENDANT'S TRIAL ENDED   (11/09/2017 5:00PM) HE WAS IN MENTAL HOSPITAL BY 11/13/2017.

PERRONE COULD NOT HAVE REPRESENTED DEFENDANT FOR SENTENCING AS FAR AS "HELPING SILVERTHORN" BECAUSE HE HAS COURT ORDER FROM OAKLAND COUNTY PROBATE COURT JUDGE TO BE TREATED FOR MENTAL ILLNESS FOR 10 DAYS IN HOSPITAL AND 80 DAYS OUTPATIENT TREATMENT BY COMMUNITY MENTAL HEALTH SEE CASE
case # 2017-380-077-MI  (OAKLAND COUNTY PROBATE COURT)
CASE#17-29766-MI (CLINTON COUNTY PROBATE COURT)
LANSING POLICE REPORT #  1751906153  11/20/2017
see page 3

Officers Actions at the hospital and see attached Body Cam Footage

Mr. Gary Chambon, Senior Clerk, has this footage sent by defendant
09/13/2022

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

SEE PERRONE'S DELUSION EMAIL TO HIS FAMILY SENT ON 11/08/2017 AND THE PICTURES AND TEXT MESSAGES BETWEEN 11/13/2017 TILL 12/06/20

THEREFORE DEFENDANT IS ENTITLED TO A NEW TRIAL BASED ON PERRONE'S MENTAL ILLNESS AND HIS MAJOR INEFFECTIVENESS DURING HIS TRIAL.

*Tin Vru*

*12/06/22*

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

Agency. Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4103B01
Date: 12/02/2022 08:55:47

Please do not reply to this email

DEFENDANT'S RESPONSE TO PROSECUTION'S BRIEF DATED 11/28/2022(POST REMAND SUPPLEMENTAL STANDARD -4 BRIEF)

RESPONSE TO ITEM #5 ABOUT PERRONE'S MENTAL ILLNESS/IMPAIRMENT DISCLOSURE PERJURY AT GINTHER HEARING;
10/04/2021 SEE ATTACHED BRIEFS:

#5 "HOWEVER, IN REVIEWING THESE BRIEFS, ONE FACTUAL CORRECTION IS REQUIRED BASED ON PERRONE'S TESTIMONY AT THE GINTHER HEARING. BEFORE HAVING HEARD PERRONE'S TESTIMONY, THE PEOPLE BELIEVED, BASED ON MR. PERRONE'S STATEMENTS TO THE TRIAL COURT ON 12/12/2017, THAT PERRONE WAS DIAGNOSED AS BIPOLAR BEFORE MR. URAZ'S TRIAL, AND THIS FRAMED OUR ARGUMENT AS THOUGH MR. PERRONE WAS A PERSON "PREVIOUSLY" DIAGNOSED WITH BIPOLAR DISORDER.
MR. PERRONE'S  TESTIMONY AT THE GINTHER HEARING CORRECTED THIS MISCONCEPTION. AT THE GINTHER HEARING, PERRONE'S TESTIFIED THAT HE DID NOT HAVE MENTAL HEALTH DIAGNOSIS BEFORE DEFENDANT'S TRIAL AND THAT FROM HIS PERPECTIVE, HE DID NOT HAVE SYMPTOMS DURING TRIAL (10/04/2021). PERRONE TESTIFIED THAT HE DID NOT HAVE ANY ISSUES WITH HIS MENTAL HEALTH ON DAY OF DEFENDANT'S TRIAL. PERRONE TOLD THE TRIAL COURT THAT HE HAD AN ISSUE WITH HIS MENTAL HEALTH ABOUT A WEEK AFTER TRIAL. THIS EPISODE, APPROXIMATELY A WEEK AFTER TRIAL, LED TO MR. PERRONE BEING DIAGNOSED WITH BIPOLAR DISODER.

FACTS;

> PERRONE WAS REPRESENTING HIS INTEREST DURING JUDGES CHAMBERS HEARING ON 12/12/2017 NOT DEFENDANTS.

> DEFENDANT WAS DEPRIVED OF HIS RIGHT TO CONFLICT- FREE COUNSEL DURING A CRITICAL STAGE IN THE PROCEEDINGS (JUDGES CHAMBERS MEETING ON 12/12/2017 AND 12/13/2017 IN COURT HEARING) WHEN PERRONE WAS PLACED IN THE UNTENABLE POSITION OF DEFENDING HIS OWN INTERESTS WHICH ADVERSE TO HIS CLIENTS.

PERRONE LIED UNDER OATH DURING HIS GINTHER HEARING

> HE  HAD MENTAL IMPAIRMENTS SINCE 2015 ABOUT HIS "UNTREATED MENTAL ISSUES". (BIPOLAR I DISORDER AND SCHIZOPHRENIA (ANASOGNOSIA "ONE DENYING THEIR OWN MENTAL ILLNESS OR NOT BE AWARE OF IT")

THIS IS A BRADY MATERIAL VIOLATION BY PROSECUTION, BECAUSE THIS INFORMATION WAS NOT SHARED WITH DEFENDANT AND HIS APPEAL ATTORNEY FOR BOTH GINTHER HEARINGS . ONLY 11/20/17 LANSING POLICE REPORT WAS SHARED WITH DEFENDANT'S SENTENCING ATTY. SILVERTHORN WHERE HE DID NOT SHARE WITH DEFENDANT ON 12/18/17.

PROSECUTOR MS. CRINO FAILED TO DISCLOSE THAT PERRONE WAS GRIEVED BY ANOTHER PROSECUTOR AT INGHAM COUNTY ON 12/11/2017 (DEFENDANT HAD TO GRIEVE HER TO GET THE TRUTH) SEE HER RESPONSE WITH ATTACHMENTS TO ATTORNEY GRIEVANCE COMMISSION CASE # 22-1542 AND 22-1543,

HISTORY OF MENTAL ISSUES AND HE COMMITTED PERJURY ON RECORD WHEN MR. PERRONE TESTIFIED UNDER OATH ON 10/04/2021 GINTHER HEARING

see attachment #1 "Petition for mental health treatment" filled out by Mr. Joseph V. Perrone (Jacob A. Perrone's father) on 11/14/2017 for his involuntary admission to mental hospital in Ann Arbor, MI.
according to his father on the form section (3)(d):

"08/17 went to Sparrow Hospital with severe anxiety"
(see pretrial status conference hearing transcript 08/15/2017, Perrone not being ready for several motions and judge questions Perrone why he has not done anything for his Client and see Perrone's excuses)

"11/17 went to Sparrow Hospital with Chest pains left Against Medical advice"

(The exact date is unknown if Perrone went to hospital during or after the trial, the trial dates for defendant Uraz were between 10/31/2017-11/09/2017)

section (d) (ii) :
************
"punches holes in walls, is verbally abusive to his wife- has said he will "kill" &/or destroy everyone, will take over Lansing + rule w/ an iron fist,

PERRONE'S FATHER STATEMENT ON RECORD ON 11/14/2017

****"THIS HAPPENS WEEKLY FOR THE LAST 2 YEARS AT LEAST."*****

this means Perrone had mental impairments since 2015, unmedicated and untreated
************

***(PRT & CERTS PROVIDED AS INFO ONLY FOR FILING, DEMANDED (Perrone) FOR HEARING 11/22/2017)

section 4: "He has many angry outbursts, disorganized thoughts. He thinks he is the most intelligent person in the world, he wil "destroy" or "kill" everyone, he called himself "my suicidal son" has many anger issues.

11/14/2017 by Joseph V. Perrone 15880 Brook Rd. Lansing, MI 48906


THIS MEANS PERRONE ALWAYS HAD MENTAL ISSUES LONG BEFORE DEFENDANT'S TRIAL SINCE 2015.

PERRONE ADMITTED THAT HE WAS NOT TAKING ANY MEDICATION BEFORE OR DURING TRIAL FOR BIPOLAR DISORDER HE WAS UNDIAGNOSED AND UNTREATED FOR THIS MENTAL ILLNESS.

PERRONE WAS IN MENTAL HOSPITAL 90 HOURS AFTER THE DEFENDANT'S TRIAL ENDED    (11/09/2017 5:00PM) HE WAS IN MENTAL HOSPITAL BY 11/13/2017.

PERRONE COULD NOT HAVE REPRESENTED DEFENDANT FOR SENTENCING AS FAR AS "HELPING SILVERTHORN" BECAUSE HE HAS COURT ORDER FROM OAKLAND COUNTY PROBATE COURT JUDGE TO BE TREATED FOR MENTAL ILLNESS FOR 10 DAYS IN HOSPITAL AND 80 DAYS OUTPATIENT TREATMENT BY COMMUNITY MENTAL HEALTH SEE CASE
case # 2017-380-077-MI  (OAKLAND COUNTY PROBATE COURT)
CASE#17-29766-MI (CLINTON COUNTY PROBATE COURT)
LANSING POLICE REPORT # 1751906153 11/20/2017
see page 3

Officers Actions at the hospital and see attached Body Cam Footage

Mr. Gary Chambon, Senior Clerk,  has this footage sent by defendant
09/13/2022

To : Information Services
Date : 12/2/2022 8:55:45 AM EST    Letter ID : 1045825147
Location : MCF
Housing : UNIT 4103B01

SEE PERRONE'S DELUSION EMAIL TO HIS FAMILY SENT ON 11/08/2017 AND THE PICTURES AND TEXT
MESSAGES BETWEEN 11/13/2017 TILL 12/06/20

THEREFORE DEFENDANT IS ENTITLED TO A NEW TRIAL BASED ON PERRONE'S MENTAL ILLNESS AND HIS
MAJOR INEFFECTIVENESS DURING HIS TRIAL.



TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1631937221 [P 1/3]

**You have received a JPay letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/12/2022 7:27:42 PM EST,    Letter ID: 1631937221
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 11/12/2022 19:27:30

Please do not reply to this email

HISTORY of PERRONE'S INEFFECTIVENESS

I ACCEPTED A PLEA DEAL FOR FIRST AGGRAVATED STALKING CHARGE AND REMANDED MYSELF TO JAIL TO START MY PRESUMED JAIL SENTENCE EARLY.(08/31/2016) until my sentencing on 11/02/2016.
I HAD A ATTORNEY CHRISTOPHER BERGSTROM (P28459) from 01/20/2016 till 11/02/2016

I WAS PUT ON PHONE RESTRICTIONS FOR SOMETHING I DIDN'T DO AND PUT IN SOLITARY CONFINEMENT FOR A MONTH AND LATER PUT IN A SAME CELL WITH JAILHOUSE INFORMANTS WHICH CREATED AN ENVIRONMENT WHERE I MADE INCRIMINATING STATEMENTS WHICH WERE USED AGAINST ME, JAILHOUSE INFORMANTS FABRICATED A STORY LINE TO GET BETTER DEALS ON THEIR CRIMES SENTENCES

I was charged with second stalking charge on 10/28/2016
and
I was charged with 3 counts of solicitation to murder on 11/10/2016

Perrone WAS APPOINTED ON 11/16/2016 FOR SOLICITATION TO MURDER CHARGE AND I RETAINED ANOTHER ATTORNEY FOR PRELIMINARY EXAM And some pretrial hearings MICHAEL J. NICHOLS. 11/20/2016-3/22/2017

Perrone was appointed again on 12/13/2016 FOR second AGGRAVATING STALKING CHARGE
and he was re appointed to solicitation to murder charge on 03/22/2017 by judge when I could not afford my paid attorney anymore because in February in 2017 judge joined two cases which it prejudiced each other and created a unfair trial for me, because I would not accept a plea deal.

PERRONE SHOWED UP LATE TO SECOND AGGRAVATED STALKING CHARGE PRELIMINARY HEARING, 12/14/2016 , HE DID NOT HAVE HIS STATE BAR ID ON HIM JUDGE HAD TO VOUCH FOR HIM. HE WAIVED IT BECAUSE HE DID NOT DO ANY INVESTIGATION FOR PRELIMINARY HEARING (see attached Jail logs)
ALTHOUGH HE SAW ME NIGHT BEFORE ON 12/13/2016 AFTER JAIL VISIT HOURS ENDED HE WAS NOT READY FOR PRELIMINARY HEARING BECAUSE MY ORIGINAL APPOINTED ATTORNEY JEFFERY ROTHSTEIN WAS SWITCHED DAY BEFORE MY PRELIMINARY EXAM AND ATTORNEY SUBySTITUTION FORM MY SIGNATURE/INITIALS WAS FORGED BY PERRONE. (see attached su
He never asked to reschedule the preliminary HEARING.

TRIAL STARTED ON 10/31/2017 ENDED ON 11/09/2017

Here some examples of what Perrone did not do to get ready for trial and did not do during and after trial..

1) Perrone was appointed to both cases by 03/22/2017

2) Last pretrial was on 05/02/2017

3) Defendant did see Perrone more than 100 days while he was in jail. (see jail attorney visit logs)

4) he did not prepare any motions on status conference nor turned in any witness list on 08/15/2017 see transcript

5) 10/11/2017 was not ready for 404b past acts hearing, substandard motions with no case law cited, no witness list

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/12/2022 7:27:42 PM EST, Letter ID: 1631937221
Location : MCF
Housing : UNIT 4100B01

6) 10/20/2017 Was not ready for evidentiary hearing at all, did not tell me what to say or not, prosecutor used my evidentiary hearing testimonial at my trial against me (I did not testify during trial)

7)see 10/20/2017 evidentiary hearing transcript see witness debacle by Perrone pgs. 124-147

8) He didn't know who is who on the witness list mixed up names, genders of witnesses and turned the list in very 10/23/2017

9) Perrone did not subpoena any material or Res Gestea witnesses for defense , nor did any investigation on them, he expected prosecutor office to help him subpoena defense witnesses because he did not get paid form. county last time

10) only brought in two MDOC prisoners to testify for defense who lacked credibility, which he seen them via video conference on 10/26/2017, 4 days before trial again no investigation

11) he forgot to do a writ to bring them in on the last minute (TT 11/06/2017 pg 170-)

12)Language interpreter had a different dialect of Turkish which hindered me not to testify

13) allowed prosecution to change the start day of trial from 11/02/2017 to 10/31/2017

14) Allowed prosecution to bring in 404b past misconduct first day of trial instead of asking for continuance to investigate see 10/31/2017, same misconduct was denied by judge on 10/11/2017

15) DID NOT IMPEACH TO JAILHOUSE INFORMANTS BASED ON THEIR CRIMINAL BACKGROUND , did not do reliability hearing    (def. family provided him this information beginning of September 2017

16) Turned in jury instructions for defense first day of trial not after last closing arguments are done on 11/09/2017. There were many missing instructions
missed jury instructions for
defendant not testifying Cr. JI 3.3
accomplice/informant instructions Cr. JI 5.4, 5.5, 5.6, 5.13
witness impeachment Cr. JI 5.1
police witness Cr. JI 5.11
Mere presence.insufficient Cr JI.8.5

17) Allowed bias jury (3rd. day of trial 1 of the juror's disclosed that he is BIAS against Turkish people) sit in the impaneled jury for 9 days, did not ask for a Remmer hearing if he poison the jury pool or not.(TT11/03/2017)

18) Allowed prosecution to bring in Brady material on the 3rd. day of trial and did not ask for a continuation to investigate fully (TT 10/31/2017 and 11/03/2017) did not object dismissal. of a bias jury (judge made it look like juror was switched with alternate juror after the closing arguments were done, judge did not follow proper procedure MCR 6.411 or MCL 768.8

19) Did not bring in any other persons who jailhouse informants proffered against

20) During VOIR DIRE turned off many jury by his odd and condescending questions/ comments (see yelp.com) review 11/10/2017 under Jacob Perrone

21) Perrone had a ANXIETY attack ENDED UP AT SPARROW HOSPITAL in August 2017 BEFORE TRIAL AND AFTER THE TRIAL November 2017 SINCE HE LOST TRIAL THAT WAS THE BREAKING POINT FOR PERRONE.

22) Did not ask the court to bring in Expert witness about jailhouse informants

23) asked to bring in a federal prisoner to testify in the middle of the trial

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 11/12/2022 7:27:42 PM EST, Letter ID: 1631937221
Location : MCF
Housing : UNIT 4100B01

24) changed the jury instructions for solicitation to muder (MI C JI 10.7 from "intended" to "purposefully sought" a "presumed guilty" instruction

25) 12/12/2017 judge's in chambers meeting Perrone was representing his interest not mine. on 12/13/2017 in court hearing when SILVERTHORN appointed per prosecution insisted
I did not have conflict free attorney to represent me both da

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 29, 2024

Elizabeth T. Clement,
Chief Justice

165560-1 (163)

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
          Plaintiff-Appellee,

v                                                         SC:  165560-1
                                                          COA:  343695, 343696
                                                          Ingham CC:  16-001064-FH
TUNC URAZ,                                                                  16-001065-FC
          Defendant-Appellant.

_____/

          On order of the Court, the motion for reconsideration of this Court's January 30, 2024 order is considered, and it is DENIED, because we are not persuaded that reconsideration of our previous order is warranted.  MCR 7.311(G).



          I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 29, 2024



p0422

Clerk

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990420  [P 1/4]

---

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 2/14/2024 11:26:36 PM EST,    Letter ID: 1961990420
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 02/14/2024 23:26:35

Please do not reply to this email

RECEIVED
FEB 22 2024
LARRY S. ROYSTER
CLERK SUPREME COURT

MICHIGAN SUPREME COURT
STATE OF MICHIGAN

PEOPLE

V.

SC#s:165560, 165561
COA#s 343695,343696
LC #s: 16-1064 FH;16-1065-FC

DEFENDANT

MR. TUNC URAZ #114653

MUSKEGON   CORRECTIONAL FACILITY
2400 S. SHERIDAN DR
MUSKEGON, MI 49442
------------------------------—/

MOTION FOR RECONSIDERATION PER MCR 7.311(G), 2.119(F) DECISION FOR DENIAL OF CLAIM OF APPEAL ON 01/30/2024 (PEOPLE V. URAZ, MICH LEXIS 247)

"WE ARE NOT PERSUADED THAT THE QUESTIONS PRESENTED SHOULD BE REVIEWED BY THIS COURT"

****"ORAL ARGUMENT REQUESTED"***

MOTION TO EXPAND THE RECORD,

MOTION TO ORDER LOWER COURT TO HOLD AN EVIDENTIARY HEARING BASED ON PERJURY BY JACOB A. PERRONE

MOTION TO APPOINT AN ATTORNEY PREFERABLY FROM:  SADO (STATE APPELATE DEFENDERS OFFICE)

MOTION TO GRANT EXTRA BRIEFS ADDED FOR  RECONSIDERATION  PER MCR 7.306

---

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990420  [P 2/4]

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 2/14/2024 11:26:36 PM EST,    Letter ID: 1961990420
Location : MCF
Housing : UNIT 4100B01

MOTION FOR PEREMPTORY REVERSAL TO TAKE JUDICIAL NOTICE

MOTION FOR EQUITABLE RELIEF FROM JUDGEMENT

PER 2.119 (F)(3) THE MOVING PARTY MUST DEMONSTRATE A PALPABLE ERROR BY WHICH THE COURT AND THE PARTIES HAVE BEEN MISLEAD AND SHOW THAT DEFENDANT DISPOSITION OF THE MOTION MUST RESULT FROM CORRECTION OF THE ERROR.

HERE ARE THE PALPABLE ERRORS FOR MICHIGAN SUPREME COURT NEEDS TO RECONSIDER AND MAKE A DECISION  ABOUT DEFENDANTS CLAIM OF APPEAL.

ERROR # 1

PER MCR 2.612(C)(1)(3)(d)& MCLS 2.305, MCLS 24.263, ,MCR 2.605

DEFENDANT IS ASKING MICHIGAN SUPREME COURT TO MAKE AN DECLARATORY RULING BASED FRAUD COMMITTED BY INGHAM COUNTY COURTS, PROSECUTORS, AND ATTORNEYS WHO ACTED IN COORDINATION TO HIDE AND NOT TO DISCLOSE EXTEND OF COURT APPOINTED ATTORNEY JACOB A. PERRONE'S (P79715)  MENTAL HEALTH IMPAIRMENT(S), EPISODE(S) DATING BACK TO 2015 DOCUMENTED BY HIS FATHER AND WIFE. (PROBATE COURT RECORDS FROM OAKLAND COUNTY)

(SEE ATTACHED BRIEF DECLARATORY RULING)

(SEE ATTACHED BRIEF FRAUD UPON COURTS)

DEFENDANT SENT (IN HIS STANDARD 4)  TO MICHIGAN SUPREME COURT IN APRIL OF 2023 ; ALL ATTORNEYS, PROSECUTORS WHO WERE GRIEVED BY DEFENDANT TO ATTORNEY GRIEVANCE COMMISSION (AGC) BY DEFENDANT;  SINCE DEFENDANT COULD NOT  APPEAL FOR ALL OF THEM INDIVIDUALLY (TOTAL OF EIGHT 8), AND THEY WERE ALL MADE PART OF HIS CRIMINAL APPEAL;

JACOB A. PERRONE (P71915), ERIC SCHROEDER (P79518) DUANE SILVERTHORN (P36964), JONATHAN C. ROTH (P72030), CHARLES T. KOOP II (P75188), KAHLA D. CRINO (P71012), ELIZABETH ALLEN (P75179), SUSAN K. WALSH(P40447)

DEFENDANT IS ASKING SUPREME COURT TO MAKE A DECISION ABOUT IF THERE HAVE BEEN ANY MISCONDUCT(S) BY JUDGES, PROSECUTORS, ATTORNEYS PER MRPC(S), MCR(S) AND MCLS.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1961990420 [P 3/4]

**You have received a jpay letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 2/14/2024 11:26:36 PM EST,   Letter ID: 1961990420
Location : MCF
Housing : UNIT 4100B01

SEE ATTACHED COMPLAINT(S) SENT TO JUDICIAL TENURE COMMISSION ABOUT JUDGES FILED BY DEFENDANT. PER MCR 9.104(1-6) AND CANONS VIOLATED BY THEM

RICHARD J. GARCIA (P38996), CLINTON CANADY
(P23262), ROSEMARY AQUILINA (P37670), CORI E. BARKMAN (P61470)

DEFENDANT RIGHTFULLY FEELS THAT: COURT OF APPEALS JUDGES: THOMAS C. CAMERON, DOUGLAS B. SHAPIRO, ANICA LETICA AND THEIR LAW CLERKS ARE ALSO COMMITTED FRAUD BY NOT INVESTIGATING PROPERLY ATTORNEY JACOB A. PERRONE'S MENTAL ILLNESS GOING BACK TO 2015.

THEY MADE THEIR DECISION BASED ON PERRONE'S AND OTHER'S PERJURED TESTIMONIES IN GINTHER HEARING WHICH DEFENDANT PROVED THEIR MISCONDUCTS BY GRIEVING THEM ALL INDIVIDUALLY AND DISCOVERED THAT ANOTHER PROSECUTOR FROM INGHAM COUNTY FILED GRIEVANCE AGAINST PERRONE BECAUSE HE WAS SCARED, STALKED, HARASSED BY PERRONE CONSTANTLY IN NOVEMBER OF 2017. (WILLIAM "BILL"CRINO P47892) SEE KAHLA D. CRINO'S (P71012) RESPONSE ATTACHMENTS TO AGC OCTOBER 2022.

THE LEAST COA AND MI SUPREME COURT COULD HAVE DONE IS TO ORDER AN EVIDENTIARY HEARING TO FIND OUT TRUTH ABOUT PERRONE'S MENTAL ILLNESS SINCE HIM AND THE REST (ATTORNEYS AND PROSECUTORS) CHOSE TO LIE, OMIT, HIDE NECESSARY INFORMATION UNDER OATH DURING PERRONE'S GINTHER HEARING.

MS. SUSAN K. WALSH (MAACS APPOINTED APPEAL ATTORNEY) FAILED TO BRING IN A MENTAL HEALTH EXPERT TO TESTIFY ABOUT SCHIZOPHRENIA INDUCED BIPOLAR DISORDER WITH HALLUCINATIONS AND SUBSTANCE ABUSE methamphetamine (ADDEROLL), MARIJUANA.
(OR FAILED TO BRING IN THE PSYCHOLOGISTS WHO TREATED PERRONE IN AUGUST AND NOVEMBER OF 2017).

INSTEAD SHE HIRED A PRIVATE INVESTIGATOR TO ASK OTHER ATTORNEYS AND PROSECUTORS IF THEY NOTICED ANYTHING WRONG WITH PERRONE'S MENTAL IMPAIRMENTS, EPISODES BEHAVIOR/DEMEANOR/SPEECH/MOOD/MANNERS ONLY DURING TRIAL NOT BEFORE OR AFTER.

SEE/COMPARE THEIR ANSWERS TO PRIVATE INVESTIGATOR/ THEIR TESTIMONIES DURING GINTHER HEARING AND THEIR RESPONSES TO ATTORNEY GRIEVANCE COMMISSION. (ALL DIFFERENT ANSWERS)

NEITHER ATTORNEYS, JUDGES NOR PROSECUTORS ARE TRAINED AS A MENTAL HEALTHCARE EXPERTS TO ANALYZE, NOTICE OR DECIDE ONE'S MENTAL FACULTIES AND GRADATIONS.

A MAJOR FLAW OF MCR 9.121 SECTION (C)(1) THE MENTALLY ILL PERSON (respondent) IS REQUIRED TO EXPLAIN WHAT IS WRONG WITH HIM/HER. ONE WHO IS MENTALLY IMPAIRED/ILL CANNOT DIAGNOSE OR RECOGNIZE THEIR OWN MENTAL ISSUES. ANASOGNOSIA : is a MENTAL illness where the patient is in denial of mentally ill.

THIS IS AN UNCONSTITUTIONAL RULE AGAINST DEFENDANTS RIGHTS.

SEE DEFENDANT'S BRIEF AND EXHIBITS SENT IN APRIL 2023 TO MICHIGAN SUPREME COURT.
ABOUT PERRONE'S PROVEN MENTAL IMPAIRMENTS GOING BACK TO 2015.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990432  [P 1/4]

**You have received a _jpay_ letter, the fastest way to get mail**

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 2/14/2024 11:26:37 PM EST,   Letter ID: 1961990432
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 02/14/2024 23:26:36

Please do not reply to this email

ERROR #2

MICHIGAN SUPREME COURT NEEDS TO CLARIFY TEST TO DETERMINE WHEN PERSON BECOMES AGENT OF THE STATE AND RULES ON JAILHOUSE INFORMANTS REQUIRING  SUPPRESSION OF DEFENDANT'S STATEMENTS :

DEFENDANT'S SIXTH AMENDMENT,  FOURTEENTH AMENDMENT AND MICHIGAN CONSTITUTE : ARTICLE I & SEC 20 : RIGHTS WERE VIOLATED;
RIGHT TO COUNSEL ATTACHES  WHEN AN ADVERSARY JUDICIAL PROCESS IS INITIATED BY STATE.

PROPHYLACTIC RIGHT TO COUNSEL PER U.S. SUPREME COURT JURISPRUDENCE RELATING TO FIFTH AMENDMENT (RIGHT AGAINST COMPELLED SELF INCRIMINATION MCNEIL V WISCONSIN 501 U.S. 171 (1991)

DEFENDANT WAS DENIED  COUNSEL WHEN QUESTIONED BY JAILHOUSE INFORMANTS WHO WERE ACTING AS AN AGENT OF THE STATE  TO ELICIT INCRIMINATING STATEMENTS WHEN HE WAS PLACED PURPOSEFULLY IN THE SAME CELL WITH JAILHOUSE INFORMANTS.

DEFENDANT'S PROTECTION AGAINST POLICE INTERROGATION OF A DEFENDANT IN THE ABSENCE OF COUNSEL-AND THE EXCLUSION EVIDENCE DERIVED FROM SUCH AN INTERROGATION-CAN APPLY NOT ONLY WHEN THE INTERROGATION IS CONDUCTED DIRECTLY BY THE POLICE, BUT ALSO WHEN THE QUESTIONING IS BY A PRIVATE CITIZEN ACTING AS AN AGENT (JAILHOUSE INFORMANTS) OF THE POLICE.

SEE CASE PRECEDENT OREGON SUPREME COURT.

STATE V. BENTON 534 P.3d 724,  08/10/2023

DEFENDANT'S FIFTH AMENDMENT  RIGHTS WERE VIOLATED BY  "CUSTODIAL INTERROGATION" STANDARDS BY STATE AGENTS JAILHOUSE INFORMANTS AND UNDERCOVER POLICE MOBLEY. (PURPOSEFULLY SOUGHT AFTER DEFENDANT)

SEE BARRITT FACTORS FOR MIRANDA RIGHTS  (325 MICH APP 556 (2018)

MIRANDA WARNINGS ARE NOT REQUIRED UNLESS THE ACCUSED IS SUBJECT TO A "CUSTODIAL INTERROGATION" (ZAHN 234 MICH APP 438 (1999)

**_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!**

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990432  [P 2/4]

**You have received a *jpay* letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 2/14/2024 11:26:37 PM EST,     Letter ID: 1961990432
Location : MCF
Housing :  UNIT 4100B01

COA 01/19/2023 DECISION PG. 18 (X). MIRANDA VIOLATION USED A WRONG CASE PRECEDENT
TO FIT THEIR NARRATIVE IGNORED MICHIGAN CASE LAWS ABOUT "CUSTODIAL INTERROGATION" , AND
WHOLE VIDEO VISIT WAS WATCHED BY INFORMANT C. ALLEN

THIS WAS AGAINST DEFENDANT'S FOURTEENTH AMENDMENT RIGHTS AND THE ELEMENTS OF THE
CRIME:

***ELEMENTS OF THE SOLICITATION TO MURDER***

1) The solicitor "PURPOSEFULLY" to have someone killed
2) Tries to " ENGAGE" someone to the killing.

PEOPLE V VANDERLINDER, 192 MICH APP 447 (1992)

IN DEFENDANT'S CASE A SEARCH WARRANT ISSUED ON 09/27/2016 AND HE WAS CHARGED WITH
SECOND AGGRAVATED STALKING CHARGE ON 10/28/2016 AND HE WAS CHARGED WITH  SOLICITATION
TO MURDER ON 11/10/2016

ISSUANCE  OF A SEARCH WARRANT BY MAGISTRATE BASED ON PERJURY & FALSIFIED, BOTCHED
EVIDENCE BY PROSECUTOR AND POLICE.(see attached brief, see attached botched search warrant)

ISSUANCE OF A USE IMMUNITY GIVEN TO JAIL HOUSE INFORMANTS BASED ON PERJURY AND FALSE
INFERENCES BY PROSECUTOR AND POLICE.
(see attached brief and USE immunity docs signed by judge THOMAS BOYD)

SEE STANDARD 4 BRIEF SENT BY DEFENDANT IN APRIL 2019.  ISSUE # 1

ERROR #3

WAS DEFENDANT'S EVIDENTIARY/ ENTRAPMENT HEARING TESTIMONY WAS USED AGAINST HIM AT HIS
TRIAL (10/20/2017)?

MICHIGAN SUPREME COURT FAILED TO ANSWER
IF ONE'S EVIDENTIARY HEARING CAN BE USED AGAINST HIM "CASE-IN CHIEF ". THIS IS THE ISSUE WHICH
WHICH WAS BROUGHT TO COA AND MI SUPREME COURT.

(see COA BRIEF 01/19/2024, PG 9,  FOOTNOTE #6)

(SEE ATTACHED BRIEF: PREDISPOSITION/ ENTRAPMENT)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990432  [P 3/4]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 2/14/2024 11:26:37 PM EST,    Letter ID: 1961990432
Location : MCF
Housing :  UNIT 4100B01

SEE CASE PRECEDENTS:

PEOPLE V D'ANGELO 401 MICH 167 (1977) HN 8

PEOPLE V KANKA, 2006 MICH APP 3570 (2006)
HN 4&5

JUDGE CANADY'S DECISION ABOUT

"ONE CANNOT CLAIM INNOCENCE AND ENTRAPMENT" DECISION BASED ON A WRONG CASE PRECEDENT.

(10/20/2017, pg. 108)

(PEOPLE V. JONES 48 MICH APP 33 (1974),  A "direct verdict" requested by defendant claimed innocence and entrapment in the middle of the trial)

JUDGE CANADY INTERPRETED THE CASE PRECEDENT  OUT OF IT'S CONTEXT.

IN MATTHEWS V. UNITED STATES 485 US 58 (1988)

"ONE CAN CLAIM AND INSERT ENTRAPMENT SIMULTANEOUSLY."

SEE STANDARD 4 BRIEF SENT BY DEFENDANT IN APRIL 2019. ISSUE # 8

THE ONLY TESTIMONY WAS GIVEN ABOUT MSU GUN INCIDENT WAS AT THE GINTHER HEARING AND BROUGHT UP BY JAILHOUSE INFORMANTS INTERVIEW WITH THE POLICE IN OCTOBER OF 2016, WHERE THEY ELICITED INCRIMINATING STATEMENTS FROM DEFENDANT.

DEFENDANT'S POLICE INTERVIEW WITH MSU POLICE WAS ENDED ABRUPTLY BECAUSE HE HAD A ATTORNEY ON FILE (CHRIS BERGSTROM) AND ANY TESTIMONY GIVEN TO HUMAN RESOURCES INTERVIEW SHOULD HAVE BEEN SUPPRESSED BY THE COURTS BECAUSE OF IN RE GARRITY 385 U.S. 483 (1967)  ( RIGHTS/RULES)  BY U.S. SUPREME COURT CASE PRECEDENT. ANY INTERVIEW GIVEN BY EMPLOYEE TO IT'S HR DEPT. CANNOT BE USED IN A CRIMINAL CASE IF THERE IS A COERCION OF REMOVAL FROM THE OFFICE.

ERROR #4

CONFLICT FREE ATTORNEY (see attached brief)

DEFENDANT WAS DENIED A "CONFLICT-FREE" ATTORNEY DURING 12/12/2017 HEARING WITHOUT AN ATTORNEY  AND ON 12/13/2017 (see TRANSCRIPTS)  WHERE APPOINTED ATTORNEY  CAME IN LATE TO THE COURT ROOM 10 MIN AFTER THE HEARING STARTED  AND MR. URAZ DID NOT HAVE A "CONFLICT-FREE" ATTORNEY TO CONSULT HIM FOR HIS RIGHTS.

CASE  precedent: (see PG.6)

DOWNS V COMMONWEALTH
2020 KY LEXIS 222,

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990432  [P 4/4]

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 2/14/2024 11:26:37 PM EST,   Letter ID: 1961990432
Location : MCF
Housing : UNIT 4100B01

SUPREME COURT OF KENTUCKY, 07/09/2020

ON 12/12/2017 HEARING see Pgs.4,5,6 AND SEE
DEFENDANT DID NOT HAVE "CONFLICT-FREE" ATTORNEY TO  REPRESENT HIS INTEREST WHEN
PERRONE WAS DEFENDING HIS UNTENABLE INTEREST ADVERSE TO DEFENDANT'S.
PERRONE PERJURED SAYING THAT MR. URAZ AGREED TO CONTINUE TO REPRESENT HIM FOR HIS
SENTENCING (12/13/2017).

SEE:

SEE CONFLICT FREE ATTORNEY BRIEF SENT IN APRIL OF 2023 to MI SUPREME COURT

ACQUIESCED" STANDARD USED BY COA ON 01/19/2023 /"CONFLICT- FREE" ATTORNEY BRIEF (pg. 10 of
COA Brief)

ERROR #5

SEE ACTUAL CLAIM OF INNOCENCE NOT ANSWERED BY COURT OF APPEALS AND SUPREME COURT.

SEE BRIEF SUFFICIENCY OF EVIDENCES SENT TO COA IN FEBRUARY OF 2023.

ERROR #6

DEFENDANT DID NOT HAVE HIS PROBABLE CAUSE CONFERENCE FOR BOTH CHARGES PER MCL 766.13
 (see attached brief)

DEFENDANT IS ASKING MICHIGAN SUPREME COURT TO RECONSIDER THEIR DECISION AND REMAND
FOR AN EVIDENTIARY HEARING TO SET THE RECORD STRAIGHT.

RESPECTFULLY SUBMITTED

*Tunc Uraz*

TUNC URAZ #114653

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990436  [P 1/3]

You have received a **Jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To :  Information Services
Date : 2/14/2024 11:26:38 PM EST,    Letter ID: 1961990436
Location : MCF
Housing :  UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 02/14/2024 23:26:37

Please do not reply to this email

I declare under penalties of perjury that this reconsideration and relief from judgement motion has been examined by me and its contents are true to the best of my knowledge, and belief "

Tunc Uraz

*Tunc Ur*

Proof of Mailing

I, Tunc Uraz mailed this letter and attached exhibits to MI SUPREME COURT AND INGHAM COUNTY PROSECUTOR'S OFFICE on  02 / 16 / 2024  via MDOC Legal Mail procedure.

TUNC URAZ #114653

*Tunc Ur*

A MISTAKE REPEATED MORE THAN ONCE IS A DECISION" Paulo Coelho


FOOTNOTES:

01/19/2023 COURT OF APPEALS DECISION SEE

**PG. 9  A. COUNSEL'S ILLNESS (footnotes #7) BASED ON PERRONE'S PERJURED TESTIMONY DURING GINTHER HEARING COA AND MI SUPREME COURT SINCE DID NOT PAY ATTENTION TO  PERRONE'S HEALTH RECORDS ABOUT HOW WERE THEY OBTAINED? AND WHY WEREN'T THEY ADMITTED AT GINTHER HEARINGS ? BECAUSE THEY WERE NOT SHARED WITH DEFENDANT UNTIL:

THEY WERE OBTAINED BASED ON GINTHER HEARING TESTIMONY OF JONATHAN C. ROTH ON 04/13/2022.(see ROTH'S AGC BRIEF Exhibit B)

PERRONE'S PROBATE COURT MENTAL HEALTH DOCUMENTS (PERSON REQUIRING TREATMENT FORMS) WERE ALL HIDDEN AND NOT SHARED WITH DEFENDANT AND HIS APPEAL ATTORNEY PRIOR TO GINTHER HEARINGS. THEY WERE DISCOVERED AFTER THE FACT.

**Jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990436  [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 2/14/2024 11:26:38 PM EST,    Letter ID: 1961990436
Location : MCF
Housing : UNIT 4100B01

THIS IS WHY DEFENDANT THOSE RECORDS WERE NOT ADMITTED AT THE GINTHER HEARING BECAUSE THEY WERE HELD BACK IN PURPOSEFULLY.

(see pgs 9, 10 COA minimizing PERRONE'S MENTAL GRADATIONS)

(see pg. 10 COA minimizing jailhouse informants criminal history and using only prosecution brief as basis for their reasoning) if there is requests Mr. URAZ CAN SEND TOTAL OF 50 PAGES  CRIMINAL RECORDS + THEIR MDOC RECORDS AS WELL, THEIR ORIGINAL CHARGES  WERE STRANGULATION, DOMESTIC VIOLENCE WITH FIREARM, DRUG CHARGES WHERE THEY BOTH DID TIME WITH MDOC) MR. URAZ PURPOSEFULLY PLACE IN THE SAME CELL/AND DORM WITH THESE INFORMANTS. MRE 609 Stipulates that any convicted person with theft and drug CHARGES their testimony can be impeached based on DISHONESTY AND CREDIBILITY.

PER MCR 9.202(B) AND MCLS CONST. ART VI & SEC. 30, MICHIGAN SUPREME COURT AND JUDICIAL TENURE COMMISSION HAS A RIGHT TO REMOVE A JUDGE FOR......(in part)  PHYSICAL OR MENTAL DISABILITY..... STANDARDS SET IN ;

IN RE BROWN 461 MICH 1291 (1999)

PLEASE SEE ATTACHED CASE PRECEDENTS SET BY JUDICIAL TENURE COMMISSION, MICHIGAN SUPREME COURT :

IN RE SANDERS 498 MICH 856 (2015) MICHIGAN SUPREME COURT

IN RE JUDGE 849 N.W. 2d 26 (2014)

THESE CASES WERE ABOUT MENTALLY IMPAIRED JUDGES WHO WERE REMOVED FROM THEIR POSITIONS AND ORDERED TO BE SEEN BY AN INDEPENDENT MENTAL HEALTH CARE EXPERT.

HOWEVER THE SAME STANDARDS WERE NOT GIVEN/ORDERED TO PERRONE BY ANY COURTS NOR ATTORNEY GRIEVANCE COMMISSION.

WHY THIS DOUBLE STANDARD BEING DONE DELIBERATELY TO MR. URAZ

IN RE SANDERS 498 MICH 856 (2015) MICHIGAN SUPREME COURT

THE JUDGE WAS REMOVED FROM OFFICE;

1) THE JUDGE SUFFERED FROM A MENTAL DISABILITY THAT PREVENTED OF HER JUDICIAL DUTIES; A BROAD CERTIFIED PSYCHIATRIST OPINED THAT SHE SUFFERED FROM A PSYCHOTIC DISORDER THAT AFFECTED HER ABILITY TO INTERPRET REALITY AND MAKE RATIONAL JUDGEMENTS.

2) THE JUDGE COMMITTED MISCONDUCT BY MAKING NUMEROUS INTENTIONAL MISREPRESENTATION TO THE MICHIGAN JUDICIAL TENURE COMMISSION REGARDING HER MEDICAL CONDITION AND EFFORTS TO TREAT IT; SHE ALSO MADE FALSE STATEMENTS TO THE COMMISSION REGARDING THE SCHEDULING OF AN INDEPENDENT PSYCHIATRIC EXAMINATION.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1961990436 [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 2/14/2024 11:26:38 PM EST,   Letter ID: 1961990436
Location : MCF
Housing : UNIT 4100B01

3) CONDUCT CLEARLY PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE AS DEFINED BY MICHIGAN CONSTITUTION 1903 AS AMEND. ART 6 SEC. 20 AND MCR 9.205

4) FAILURE TO ESTABLISH, MAINTAIN, ENFORCE AND PERSONALLY OBSERVE HIGH STANDARDS OF CONDUCT SO THAT THE INTEGRITY AND INDEPENDENCE OF JUDICIARY MAYBE PRESERVED CONTRARY MCJC CANON 1

5) IRRESPONSIBLE OR IMPROPER CONDUCT THAT ERODES PUBLIC CONFIDENCE IN THE JUDICIARY; IN VIOLATION OF MCJC CANON 2A

6) CONDUCT INVOLVING IMPROPRIETY AND APPEARANCE OF IMPROPRIETY CONTRARY TO MCJC CANON 2A

7) CONDUCT THAT IS CONTRARY TO JUSTICE ETHICS, HONESTY OR GOOD MORALS CONTRARY TO MCR 9.104(3)

8) CONDUCT THAT VIOLATES THE STANDARD OR RULES OF PROFESSIONAL CONDUCT ADOPTED BY SUPREME COURT CONTRARY TO MCR 9.104(4)

9) CONDUCT THAT IS PREJUDICIAL TO THE PROPER ADMINISTRATION OF JUSTICE; IN VIOLATION OF MCR 9.104 (1)(2)


BROWN STANDARDS:

IN RE BROWN 461 MICH 1291(1999-2000)
MICHIGAN SUPREME COURT;

BROWN FACTORS ENUNCIATED BY MICHIGAN SUPREME COURT; APPROPRIATE SANCTIONS

EVERYTHING ELSE BEING EQUAL;

1) Misconduct that is part of a "pattern or practice" is more serious than a isolated instance of misconduct

2) Misconduct on the Bench is usually more serious than same Misconduct off the Bench

3) Misconduct that is prejudicial to the actual administration of justice is more serious than Misconduct that is prejudicial only to the appearance of proprietary.

4) Misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than Misconduct that does

5) Misconduct that occurs spontaneously is less serious than Misconduct that is premeditated or deliberated

6) Misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than Misconduct that merely delays such discovery

7) Misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender or religion are more serious than breaches of justice that do not disparage the integrity of a class of citizenship.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1961990406 [P 1/3]

**You have received a JPay letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Inspector Services
Date : 2/14/2024 11:26:35 PM EST,   Letter ID: 1961990406
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 02/14/2024 23:26:34

Please do not reply to this email

FACTS:

MR. TUNC URAZ REMANDED HIMSELF (08/31/2016) VOLUNTARILY TO INGHAM COUNTY JAIL TO START HIS PRESUMED JAIL SENTENCE EARLY, (SUGGESTED BY THEN HIS RETAINED ATTORNEY).
AS PART OF HIS PLEA DEAL FOR AGGRAVATED STALKING CHARGE AGAINST HIS EX-GIRLFRIEND.

MR. URAZ WAS GOING THROUGH A MID LIFE CRISES ABUSING BENZODIAZEPINE (XANAX) AND ALCOHOL. HE LOST HIS JOB OF 25 YEARS, LOST HIS MOTHER AND MOTHER IN LAW IN THE SAME YEAR, HE DECLARED BANKRUPTCY, FORECLOSED HIS FAMILY HOME AFTER 15 YEARS, HE LOST ALL HIS FAMILY POSSESSIONS, HE WAS SEPARATED FROM HIS WIFE WHOM HE HAS BEEN MARRIED FOR 15 YEARS AT THAT TIME. SHE MOVED TO TURKEY WITH THEIR 10 YEAR OLD SON.

AFTER FIRST DAY OF HIS "VOLUNTEERED" INCARCERATION, MR. URAZ WAS PLACED IN SOLITARY CONFINEMENT FOR ALLEGEDLY CALLING HIS GIRLFRIEND FROM JAIL.

ALTHOUGH MR. URAZ'S JAIL PHONE RECORDS AND HIS MOVEMENT REPORTS SHOWED THAT MR. URAZ DID NOT/COULD NOT HAVE MADE THAT PHONE CALL. PER PROSECUTOR CHARLES T. KOOP II AND JUDGE CANADY OF 30th. CIRCUIT COURT (THEN), ONE SIDED DECISION WITHOUT ANY DUE PROCESS GIVEN HAD DECIDED THAT MR. URAZ'S PHONE PRIVILEGES SHOULD BE SUSPENDED UNTIL AFTER HIS SENTENCING.

INGHAM COUNTY JAIL ADMINISTRATION/PROSECUTOR CHARLES KOOP II, DECIDED TO PUT MR. URAZ INTO A SOLITARY CONFINEMENT FOR A MONTH INSTEAD OF BLOCKING HIS JAIL PHONE PRIVILEGES ONLY FOR THE PHONE NUMBER THAT HE ALLEGEDLY CALLED ON "DO NOT CALL/BLOCK LIST"

AFTER MONTH OF SOLITARY CONFINEMENT, ALCOHOL AND XANAX WITHDRAWALS. MR. URAZ'S THOUGHT PROCESS WAS SEVERELY IMPAIRED, HE WAS EMOTIONALLY DRAINED, HE HAD TREMORS, HIS PSYCHOSIS DIMINISHED SEVERELY DUE VERY MINIMUM MEANINGFUL HUMAN CONTACT.

HE WAS NOT ALLOWED TO MAKE ANY PHONE CALLS/CONTACT INCLUDING TO HIS ATTORNEY.
AS PRETRIAL/ SENTENCEE DETAINEE.

SEE CASE # 1:19 CV 550 (TUNC URAZ V INGHAM COUNTY) WESTERN DISTRICT MICHIGAN FEDERAL COURT OF U.S.

AFTER A MONTH SOLITARY CONFINEMENT MR. URAZ WAS PLACED IN THE ***"SAME CELL"*** WITH JAILHOUSE INFORMANTS ON PURPOSEFULLY, WHERE HE MADE INCRIMINATING STATEMENTS DUE TO HIS FRUSTRATION WITH SOLITARY CONFINEMENT HE HAD TO ENDURED UNFAIRLY FOR SOMETHING HE DID NOT DO. FOR A MONTH WITH ANY MEANINGFUL HUMAN CONTACT.

DEFENDANT HAD HIS RETAINED ATTORNEY CHRIS BERGSTROM FOR HIS FIRST AGGRAVATED STALKING CHARGE WHERE HE ACCEPTED A PLEA DEAL FOR UP TO 6 MONTHS IN JAIL.

BERGSTROM WAS DEFENDANT'S ATTORNEY FROM 01/20/2016 TILL 11/02/2016

DEFENDANT WAS CHARGED WITH SECOND AGGRAVATED STALKING CHARGE ON 10/28/2016 AND THEN SOLICITATION TO MURDER ON 11/10/2016

**JPay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1961990406 [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Inspector Services
Date : 2/14/2024 11:26:35 PM EST,    Letter ID: 1961990406
Location : MCF
Housing : UNIT 4100B01

RIGHT TO COUNSEL IS OFFENSE SPECIFIC HOWEVER PLEASE LOOK AT THE DATES TO MAKE DECISION

08/31/2016  ATTORNEY CHRIS BERGSTROM

09/01/2016 PUT IN A SOLITARY CONFINEMENT
(for an alleged phone call madre from jail to complainant) see attached jail phone logs under defendant's jail number and jail movement records,
defendant did not could not have made that call based on physics evidence.

***09/27/2016 PUT IN THE SAME CELL WITH JAILHOUSE INFORMANTS (ALLEN AND CLOSE)

09/27/2016 SEARCH WARRANT INITIATED BY PROSECUTOR BY KOOP WITH FALSE INFORMATION AND LANSING POLICE  BASED ON FALSE AND PERJURED AFFIDAVIT BY DETECTIVE KRUMBACH
SIGNED BY MAGISTRATE BLUMER

10/07/2016 MOVED TO SAME POD WITH THE JAILHOUSE INFORMANTS

10/19/2016 DEFENDANT'S SENTENCING POSTPONED ON PURPOSELY  BY PROSECUTOR KOOP SO THAT DEFENDANT CAN BE CHARGED WITH SECOND AGGRAVATED STALKING

10/19/2016 DETECTIVE MOBLEY SCHEDULED A VIDEO VISIT WITH DEFENDANT BUT CANCELLED IT ON THE LAST MINUTE

10/20/2016 (INFORMANT CLOSE REMOVED AWAY FROM DEFENDANT'S POD)

10/24/2016 DETECTIVE MOBLEY SCHEDULED ANOTHER VIDEO VISIT WITH DEFENDANT
WATCHED BY JAILHOUSE INFORMANT CHARLES ALLEN

10/26/2016 DETECTIVE MOBLEY SCHEDULED ANOTHER VIDEO VISIT WITH DEFENDANT BUT DEFENDANT ENDED THE VISIT

10/28/2016 DEFENDANT CHARGED WITH SECOND AGGRAVATED STALKING

10/30/2016 JAILHOUSE INFORMANT CHARLES ALLEN IS REMOVED FROM DEFENDANT'S POD

11/02/2016 DEFENDANT SENTENCED TO 6 MONTHS JAIL TIME AND 5 YEARS PROBATION (HIS FIRST EVER FELONY THAT HE EVER HAD) ATTORNEY CHRIS BERGSTROM IN ATTENDANCE

11/4/2016 and 11/10/2016 PROBABLE CAUSE HEARINGS CANCELLED BY DISTRICT COURT JUDGE DELUCA

11/10/2016 DEFENDANT CHARGED WITH SECOND  AGGRAVATED  STALKING. FOR AN ALLEGED PHONE CALL AND ALLEGED Facebook PASSWORD HACKING ON 08/23/2016 AND 08/31/2016, (Defendant could not have done that because IP numbers were expired and MAC (MACHINE ACCESS CODES) FROM ALLEGED DEVICES DID NOT EXIST.

FACT : INTERNET SERVICE PROVIDER (SPARTAN NET) WAS BASED OUT OF EAST LANSING SO ANYONE WHO HAD SPARTAN NET IP ADDRESS (SERVICE) IT DOESN'T MATTER THEY LIVED:  IT WOULD STILL

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1961990406  [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Inspector Services
Date :  2/14/2024 11:26:35 PM EST,     Letter ID: 1961990406
Location :  MCF
Housing :  UNIT 4100B01

SHOW LOCATION AS  EAST LANSING.
(COMPLAINANT LIVE IN THE SAME APARTMENT COMPLEX MANAGED BY THE SAME MANAGEMENT COMPANY (DTN MNGMT) WHICH HAD THE SAME INTERNET SERVICER SPARTAN NET.

THE E-MAIL ADDRESS USED TO CHANGE HER FACEBOOK ACCOUNT PASSWORD IS BELONGS TO COMPLAINANT NOT THE DEFENDANT
SEE ACTUAL CLAIM OF INNOCENCE AND SUFFICIENCY OF EVIDENCE BRIEFS SENT IN APRIL AND OF 2023

ATTORNEY SWITCHED TO JACOB A. PERRONE FROM JEFFERY ROTHSTEIN WITHOUT DEFENDANT'S APPROVAL AND HIS INITIALS WERE FORGES BY PERRONE.

11/17/2023 PROBABLE CAUSE CONFERENCE POSTPONED BY JUDGE BOYD.


12/01/2016 AND 12/13/2016 HAD PRELIMINARY HEARING FOR SOLICITATION CHARGES

12/14/2017 PRELIMINARY HEARING FOR SECOND AGGV. STALKING  CANCELLED BY ATTORNEY PERRONE BECAUSE HE WAS LATE TO THE HEARING AND SHOWED UP WITHOUT HIS STATE BAR ID.
 (see Ingham county jail logs)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381234 [P 1/2]

**You have received a *jpay* letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:40 PM EST, Letter ID: 1730381234
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/26/2023 22:11:45

Please do not reply to this email

1) SUFFICIENCY OF EVIDENCES

WERE SUFFICIENCY OF EVIDENCES AND FACTS DID NOT MATCH TO THE ELEMENTS OF THE CRIMES FOR BOTH (SOLICITATION TO MURDER AND AGGRAVATED STALKING).
THERE WASN'T ENOUGH PROBABLE CAUSE TO CHARGE DEFENDANT BOTH CRIMES. WERE HIS TRIAL AND APPEAL ATTORNEYS BOTH FAILED TO INVESTIGATE READILY AVAILABLE/NEW EVIDENCES (ACTUAL INNOCENCE CLAIMS) BEFORE DEFENDANT'S TRIAL AND BEFORE GINTHER HEARINGS?
DEFENDANT WAS NOT GIVEN A PROBABLE CAUSE CONFERENCE FOR BOTH CHARGES?

DEFENDANT SAYS YES
PROSECUTOR SAYS NO

STANDARD OF REVIEW

THE CHALLENGE TO SUFFICIENCY OF EVIDENCE IS REVIEWED DENOVO
PEOPLE V SOLOMONSON 261 MICH APP 657 (2004)

PEOPLE V COX 268 MICH APP 440 (2005) MICHIGAN SUPREME COURT EXPLAINED : WHEN DETERMINING WHETHER SUFFICIENT EVIDENCE HAS BEEN PRESENTED TO SUSTAIN A CONVICTION A COURT MUST VIEW THE EVIDENCE IN LIGHT MOST FAVORABLE TO THE PROSECUTION AND DETERMINE WHETHER ANY RATIONAL TIER OF FACT COULD HAVE FOUND THAT ESSENTIAL ELEMENTS OF THE CRIME WERE PROVEN BEYOND A REASONABLE DOUBT, PEOPLE V WOLFE, 440 MICH 508 (1992).

IT IS WELL ESTABLISHED IN MICHIGAN THAT "ALL ELEMENTS" OF THE CRIMINAL OFFENSE ARE "IN ISSUE" WHEN DEFENDANT ENTERS A PLEA OF NOT GUILTY. (People V. Mills, 450 MICH 61 (1995) (MI Supreme Ct.)

THE ELEMENTS OF THE OFFENSE ARE ALWAYS IN ISSUE AND THUS, MATERIAL. (People V. Crawford, 458 MICH 376 (1998)(cleaned up).(MI Supreme Ct.)

BECAUSE THE PROSECUTION MUST CARRY THE BURDEN OF PROVING "EVERY ELEMENT" BEYOND A REASONABLE DOUBT, REGARDLESS OF WHETHER THE DEFENDANT SPECIFICALLY DISPUTED OR OFFERS TO STIPULATE ANY OF THE ELEMENTS, THE ELEMENTS OF THE OFFENSE ARE ALWAYS "IN ISSUE" AND THUS MATERIAL. (Old Chief V. United States, 519 U.S. 172(1997) U.S. Supreme Court

ALLEYNE V. UNITED STATES 570 U.S. 99 (06/17/2013) U.S. SUPREME COURT.
THE SIXTH AMEND PROVIDES THAT "ACCUSED" OF A "CRIME" HAVE THE RIGHT "BY AN IMPARTIAL JURY". THIS RIGHT, INJUNCTION WITH THE DUE PROCESS CLAUSE REQUIRES THAT EACH ELEMENT OF A CRIME BE PROVED TO THE JURY BEYOND A REASONABLE DOUBT. THE SUBSTANCE AND SCOPE OF THIS RIGHT DEPEND UPON THE PROPER DESIGNATION OF THE FACTS THAT ARE ELEMENTS. U.S. V GAUDIN 515 U.S 506 115 SCT 2310 132 L 2d 444 (1995), In Re Winship, 397 U.S 358 364 90 Sct. 1068, 25 L. ED. 2d 368 (1970)

THE TEST DETERMINING THE SUFFICIENCY OF EVIDENCE IN A CRIMINAL CASE IS WHETHER THE EVIDENCE, VIEWED IN A LIGHT MOST FAVORABLE TO THE PEOPLE, WOULD WARRANT A REASONABLE JUROR IN FINDING GUILT BEYOND A REASONABLE DOUBT. PEOPLE V NOWACK, 462 MICH 392 (2000).

DEFENDANT INSERTS ACTUAL CLAIM OF INNOCENCE

SCHLUP GATEWAY INNOCENCE CLAIM:

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381234 [P 2/2]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:40 PM EST,    Letter ID: 1730381234
Location : MCF
Housing : UNIT 4100B01

REQUIRES AN EXAMINATION OF ALL THE EVIDENCE AND A THRESHOLD DETERMINATION ABOUT THE PETITIONS CLAIM OF INNOCENCE THAT IS SEPARATE FROM ITS INQUIRY INTO THE FAIRNESS OF HIS TRIAL. THE STANDARD IS INTENDED TO FOCUS THE INQUIRY ON ACTUAL INNOCENCE. THE DISTRICT COURT MUST MAKE A HOLISTIC DETERMINATION OF HOW A REASONABLE JUROR WOULD PERCEIVE ALL OF THE EVIDENCE IN THE RECORD ONLY IF THE DISTRICT COURT DETERMINES THAT A REASONABLE JUROR WOULD MORE THAN LIKELY HAVE REASONABLE DOUBT DOES IT THEN CONSIDER THE PETITIONER'S PROCEDURALLY DEFAULTED CLAIMS. SCHLUP V DELO 513 U.S. 298 (1995).

THE SCHLUP STANDARD DOES NOT REQUIRE ABSOLUTE CERTAINTY ABOUT THE PETITIONERS GUILT OR INNOCENCE. A PETITIONER'S BURDEN AT THE GATEWAY STAGE IS TO DEMONSTRATE THAT MORE LIKELY THAN NOT IN LIGHT OF THE NEW EVIDENCE NO REASONABLE JUROR WOULD FIND HIM GUILTY BEYOND REASONABLE DOUBT. SEE HOUSE V BELL U.S. 518-538 SCT. 2064 1662 ED. 2D1 (2016).

PEOPLE V SWAIN 288 MICH APP 609 (2010), COURT HAS INSTRUCTED THAT "ACTUAL INNOCENCE STANDARD A STRONGER SHOWING THAN THAT NEEDED TO ESTABLISH PREJUDICE" IN A INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM SCHLUP 513 U.S. AT 342

NEW RELIABLE EVIDENCE "ACTUAL INNOCENCE MEANS FACTUAL INNOCENCE, NOT MERE LEGAL INSUFFICIENCY" BOUSLEY V. U.S. 523 U.S 614,623 (1998). THUS (T)0 BE CREDIBLE SUCH CLAIM DEFENDANT TO SUPPORT HIS ALLEGATIONS OF CONSTITUTIONAL ERROR WITH RELIABLE EVIDENCE-WHETHER AT BE EXCULPATORY SCIENTIFIC EVIDENCE TRUSTWORTHY EYEWITNESS ACCOUNTS OR CRITICAL PHYSICAL EVIDENCE THAT WAS NOT PRESENTED AT TRIAL. SCHLUP U.S. AT 342

THE EVIDENCE MAY BE EITHER "NEWLY DISCOVERED" OR BOTH, SCHLUP 513 U.S. AT 34, SOUTER, 395 F3D AT 589-590.

RELIEF FROM JUDGEMENT 4 PRONG TEST NEWLY DISCOVERED EVIDENCE, PEOPLE V JOHNSON 502 MICH 541 (2018) IN ORDER FOR A NEW TRIAL TO BE GRANTED ON THE BASIS OF NEWLY DISCOVERED EVIDENCE, A DEFENDANT MUST SHOW THAT;
1) THE EVIDENCE ITSELF, NOT MERELY ITS MATERIALITY WAS NEWLY DISCOVERED
2) THE NEWLY DISCOVERED EVIDENCE WAS NOT CUMULATIVE
3) THE PARTY COULD NOT, USING REASONABLE DILIGENCE, HAVE DISCOVERED AND PRODUCED THE EVIDENCE AT TRIAL
4)THE NEW EVIDENCE MAKES A DIFFERENT RESULTS PROBABLE ON RETRIAL,
PEOPLE CRESS 468 MICH AT 692

THEREFORE DEFENDANT ARGUES THAT HE SUFFERED CUMULATIVE PREJUDICE FROM HIS TRIAL COUNSEL'S PERFORMANCE (SEE ATTACHED LIST OF INEFFECTIVE ASSISTANCE OF COUNSEL AND APPEAL COUNSEL)

THE CUMULATIVE EFFECT OF NUMBERS OF ERROR MAY AMOUNT TO ERROR REQUIRING REVERSAL PEOPLE V COOPER 236 MICH APP 643, 659-660;601 NW 2D. 409 (1999). UNDER THE CUMULATIVE ERROR DOCTRINE, REVERSAL AND REMAND FOR NEW TRIAL IS APPROPRIATE WHERE THE CUMULATIVE EFFECT OF.SEVERAL ERRORS ESTABLISHES THAT THE DEFENDANT DID NOT RECEIVE A FAIR TRIAL EVEN THOUGH NO ONE ERROR BY ITSELF WARRANTED A NEW TRIAL. PEOPLE V BAHODA, 448 MICH 261, 292 N 64, 531 NW 2D 659 (1995). THE TEST ON APPEAL IS WHETHER THE DEFENDANT RECEIVED A FAIR TRIAL, DESPITE ANY IRREGULARITIES OR WHETHER THE IRREGULARITIES SO UNDERMINED THE FAIRNESS OF THE TRIAL THAT NEW TRIAL IS WARRANTED, PEOPLE V SKOWRANSKI, 61 MICH APP 71, 77 232 NW 2D 306 (1975). TO DETERMINE WHETHER THE CUMULATIVE EFFECT OF "ERRORS". PEOPLE V LEBLANC 465 MICH 575, 591 12 640 NW2D (2002)

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381215 [P 1/3]

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:36 PM EST, Letter ID: 1730381215
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/26/2023 22:11:43

Please do not reply to this email

2)SUFFICIENCY OF EVIDENCES

IN THIS CASE AT BAR DEFENDANT PRESENTS NEW RELIABLE EVIDENCE(S) WHICH WERE "NOT BROUGHT" BY HIS TRIAL AND APPEAL ATTORNEYS, BECAUSE THEY DID NOT DO ANY INVESTIGATION, WHICH COULD HAVE BEEN DONE BY BOTH COUNSELS OR EVEN THE PROSECUTOR, WHO KNEW OR SHOULD HAVE KNOWN.
DEFENDANT'S MENTALLY IMPAIRED ATTORNEY DID NOT INVESTIGATE NEITHER HIS APPEAL ATTORNEY INVESTIGATE AS WELL. (she was notified all these newly evidences in 2019 see attached letter)

DEFENDANT IS ENTITLED TO A NEW TRIAL BASED ON MCR 2.611(A)(1)(a)(b)(c)(d)(e)(f)(g)(h)

1) "NEW TRIAL MAY BE GRANTED TO ALL OR SOME OF THE PARTIES, ON ALL OR SOME OF THE ISSUES. WHENEVER THEIR SUBSTANTIAL RIGHTS ARE MATERIALLY AFFECTED, FOR ANY OF THE FOLLOWING REASONS".

MCR 2.612 (C)(1) (a)(b)(c)(f)

GROUNDS FOR RELIEF FROM JUDGEMENT
1) ON MOTION AND ON JUST TERMS,
HE COURT MAY RELIEVE A PARTY OR THE LEGAL REPRESENTATIVE OF A PARTY FROM A FINAL JUDGEMENT, ORDER, OR PROCEEDING ON THE FOLLOWING GROUNDS;

TRIAL COUNSEL WOULD NOT CONTACT DEFENDANT'S WITNESSES BECAUSE HE EXPECTED PROSECUTION TO SUBPOENA THEM SINCE HE DID NOT GET PAID LAST TIME FROM THE COUNTY. (see 10/20/2017 Evidentiary Hear. pg 124-144)

MCL 750.157b SOLICITATION TO MURDER STATUE ELEMENTS:

UNDER MICHIGAN LAW THE CRIME OF SOLICITATION TO COMMIT MURDER REQUIRES "PREMEDITATION AND DELIBERATION"
SOLICITATION TO MURDER IS A SPECIFIC INTENT CRIME THAT REQUIRES PROOF THAT THE DEFENDANT INTENDED THAT A MURDER WOULD IN FACT BE COMMITTED.

THE ELEMENTS OF THE CRIME SOLICITATION TO MURDER ARE;
SOLICITOR: (used at trial)

PEOPLE V VANDERLINDER 192 MICH APP 447 (1992)

1) "PURPOSELY SEEKS" TO HAVE SOMEONE KILLED OR

2) TRIES TO "ENGAGE SOMEONE TO DO THE KILLING"

IN PEOPLE V KNASIAK 1999 APP LEXIS 1203 (1999)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381215 [P 2/3]

**You have received a jpay letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:38 PM EST,   Letter ID: 1730381215
Location : MCF
Housing : UNIT 4100B01

"SOLICITATION INVOLVES ACTUAL "ADVANCE PLANNING AND FOREKNOWLEDGE" AS IS REFLECTED BY THE SOLICITOR'S DECIDING TO HAVE SOME CRIMINAL ACT PERFORMED BY A "THIRD PARTY" ON THE SOLICITOR'S "BEHEST, SEARCHING OUT AN INDIVIDUAL TO ENGAGE IN A CRIMINAL ACT, AND ACTING TO ENGAGE THE THIRD PARTY TO COMMIT THE CRIMINAL ACT" FURTHER MORE SOLICITATION STATUE-PUNISHES THE ACTUAL "ADVANCE" PLANNING AND THE ACTS TAKEN IN "PREPARATION" FOR COMMITTING THE SUBSTANTIVE CRIMINAL ACTS-THE PLANNING INVOLVED IN SOLICITATION CONNOTES PREMEDITATION AND DELIBERATION, ACCORDINGLY SOLICITATION OF MURDER SHARES THE ELEMENTS OF PREMEDITATION AND DELIBERATION WITH "FIRST DEGREE MURDER". AS SUCH, SOLICITATION OF MURDER IS INCONSISTENT WITH SECOND DEGREE MURDER, THAT BEING "ONE" DOES NOT PLAN TO COMMIT AN UNPLANNED SUBSTANTIVE CRIME. 1999 MICH APP 1203 AT 13.

IN PEOPLE V ALTMAN 1998 MICH ALL LEXIS 2548 (1998) : "THE PARTICIPATION OF A POLICE OFFICER POSING AS AN ASSASSIN FOR HIRE, COULD NOT SUPPORT AN ENTRAPMENT DEFENSE BECAUSE THE PLANS ORIGINATED WITH DEFENDANT".

IN THIS CASE AT BAR ALL THE PLANS WERE ORIGINATED BY DETECTIVE MOBLEY AND UNRELIABLE/UNVERIFIED FABRICATION STORIES/TESTIMONY OF JAILHOUSE INFORMANTS WHOM THEY "PURPOSEFULLY SOUGHT, ENGAGED, SOLICITED" THE DEFENDANT WITH THEIR OWN PLANS, THEREFORE; THIS WAS AN ENTRAPMENT.

IN PEOPLE V GERHARD 2020 MICH APP LEXIS 7768 (2021) BY HONORABLE JUDGE AMY RONAYNE KRAUSE: "ONCE A PERSON OFFERS 'ANOTHER' MONEY TO COMMIT A MURDER HE OR SHE HAS COMMITTED THE CRIME OF 'SOLICITATION' TO COMMIT MURDER REGARDLESS OF MONEY ACTUALLY CHANGES HANDS OR WHETHER THE MURDER IS ACTUALLY COMMITTED.

IN THIS CASE ALL "MONEY" OFFERINGS CAME FROM JAILHOUSE INFORMANTS ARBITRARY AMOUNTS AND POLICE MOBLEY, NOT DEFENDANT

"HYBRID LEGAL IMPOSSIBILITY"

IN People v Thousand 465 Mich 149 (2001) SUPREME COURT OF MICHIGAN

BASIS OF THE DOCTRINE OF LEGAL IMPOSSIBILITY ,THE SUPREME COURT CONCLUDED THAT, ALTHOUGH THE APPEALS COURT ERRED TO EXTENT THAT IT RELIED UPON THE CONCEPT OF "IMPOSSIBILITY" IN DISMISSING THE CHARGE OF SOLICITATION OF THIRD-DEGREE CSC, THE CHARGE WAS NEVERTHELESS PROPERLY DISMISSED BECAUSE THERE WAS NO EVIDENCE THAT DEFENDANT SOLICITED ANY PERSON TO COMMIT A FELONY OR TO DO OR OMIT TO DO AN ACT WHICH IF "COMPLETED" WOULD COMPLETED WOULD CONSTITUTE A FELONY AS PROHIBITED BY MCL 750.157b.

"PURSUANT TO PLAIN STATUTORY LANGUAGE, THE PROSECUTION WAS REQUIRED TO PRESENT EVIDENCE THAT DEFENDANT REQUESTED THAT ANOTHER PERSON PERFORM A CRIMINAL ACT".

THE EVIDENCE HERE SHOWS ONLY THAT DEFENDANT REQUESTED THAT "BEKKA" (UNDERCOVER POLICE DEPUTY LICZBINSKI) ENGAGE IN SEXUAL ACTS WITH HIM.

WHILE THE REQUESTED ACTS MIGHT WELL HAVE CONSTITUTED A CRIME ON DEFENDAN'S PART, "BEKKA" UNDERCOVER POLICE DETECTIVE LICZBINSKI) WOULD NOT HAVE COMMITTED THIRD-DEGREE CSC HAD SHE (OR HE) DONE AS DEFENDANT SUGGESTED.

WHAT IS LACKING HERE IS DEFENDANT'S REQUEST TO ANOTHER PERSON TO COMMIT A CRIME. "BEKKA" (UNDERCOVER POLICE DEPUTY LICZBINSKI), THE FOURTEEN- YEAR-OLD ONLINE PERSONA OF DEPUTY LICZBINSKI, WAS NOT ASKED TO COMMIT A CRIME. THAT IS, WHILE IT WOULD BE CRIME TO ENGAGE IN SEXUAL INTERCOURSE WITH A FOURTEEN-YEAR-OLD GIRL, A FOURTEEN YEAR OLD GIRL IS NOT COMMITTING A CRIMINAL OFFENSE (OR AT LEAST NOT CSC III) BY ENGAGING IN A SEXUAL INTERCOURSE WITH AN ADULT. THUS, WHETHER WE LOOK AT THIS CASE A DEFENDANT ASKING

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381215  [P 3/3]

---

You have received a **jpay** letter, the fastest way to get mail

---

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 3/26/2023 10:11:38 PM EST,     Letter ID: 1730381215
Location : MCF
Housing : UNIT 4100B01

FOURTEEN YEAR OLD "BEKKA" TO ENGAGE IN A SEXUAL INTERCOURSE WITH HIM OR AS DEFENDANT ASKING (UNDERCOVER POLICE  DEPUTY LICZBINSKI) TO ENGAGE IN SEXUAL INTERCOURSE WITH HIM, HE DID NOT ASK ANOTHER PERSON TO COMMIT CSC...

THE ELEMENT OF THE STATUTORY OFFENSE IS MISSING AND THAT THE SOLICITATION CHARGE WAS THEREFORE PROPERLY DISMISSED.

THE SOLICITATION STATUTE REQUIRES THAT THE DEFENDANT SOLICIT SOMEONE ELSE TO COMMIT A FELONY, PEOPLE V. THOUSAND 465 MICH 149 (2006).

CONSTITUTIONAL OBLIGATIONS OF DUE PROCESS AND FUNDAMENTAL FAIRNESS PROSECUTORS MUST REPORT TO THE TRIAL COURT AND THE DEFENDANT WHEN GOVERNMENT WITNESSES LIE UNDER OATH. PEOPLE V HERNDON 246 MICH APL 371 (2001).

---

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381199  [P 1/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:37 PM EST,   Letter ID: 1730381199
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/26/2023 22:11:41

Please do not reply to this email

3)SUFFICIENCY OF EVIDENCES

SEE ATTACHED PRELIMINARY EXAM 12/13/2016 REGINALD CLOSE pgs 125-169 TESTIMONY HOW HE ENGAGED THE DEFENDANT PURPOSEFULLY and collaborated with Charles Allen

see 12/01/2016 Attorney Nichols questioning methods used in the engagement of undercover police Mobley pg 56-57 12/13/2017 testimony how Undercover Mobley purposefully engaged defendant pgs 171-186

See trial transcripts  Reginald Close 11/03/2017 TRIAL TESTIMONY PGS. 135-162

11/06/2017 PERRONE QUESTIONING REGINALD CLOSE
TT PG 4-90

ANDREW HOGAN LANSING POLICE DETECTIVE PG.104-116 CONFIRMS THAT REGINALD CLOSE HAS BEEN A POLICE AGENT FOR THREE OTHER CASES IN THE PAST.

PG 119 -145 DETECTIVE MOBLEY TESTIFYING ABOUT PURPOSEFULLY ENGAGING DEFENDANT.

SEE ATTACHED MOBLEY VIDEO CALL TRANSCRIPT WITH DEFENDANT. AND THE POLICE REPORT

LANSING POLICE , JAILHOUSE POLICE AGENTS (INFORMANTS)/ UNDERCOVER POLICE PURPOSEFULLY SOUGHT, SOLICITED, CONTACTED, ENGAGED, INDUCED, PRESSURED ENTICED DEFENDANT WITH CODED/AMBIGUOUS LANGUAGE (SEE T.T. 11/06/2017 PGS 119-125 AND 130-140) (MOBLEY ENGAGED THS DEFENDANT, MOBLEY INITIATED THE CONVERSATION

MOBLEY SAID THE NAME OF THE PERSON  "RUFF" FIRST  (R. CLOSE'S ALIAS NAME)(see video visit tras. page 2 Line 4 )
( see police report LLA # 161027011556 pg 8-11) (MOBLEY "I ASKED" HE SAID MORE THAN 25 TIMES TO DEFENDANT)

NO ONE PUT ON A RECORD THAT WHO IS "RUFF"? (During preliminary hearings)  REGINALD CLOSE'S ALIAS NAME IS "RUFF" (see MDOC OTIS sheet). HOWEVER DURING TRIAL HIS ALIAS NAME WAS REFERRED AS "ROUGH". see TT (11/03/2017) pg 131 Line 10-13
(TWO DIFFERENT PERSONS)

**R. CLOSE WAS IN JAIL FOR HOME INVASION, FELON WITH FIREARM, DOMESTIC VIOLENCE AND HE WAS MOVED AWAY  FROM  INMATE JOHN PIERCE BECAUSE HE HAD PROFFERED AGAINST HIM AND CHRIS SHIMBERGER (ANOTHER INMATE).

YET DEFENDANT WAS PUT IN A SAME CELL WITH SAME JAILHOUSE SNITCHES ON PURPOSEFULLY BY POLICE AND PROSECUTION. (see jail movement records)

DEFENDANT NEVER PROVIDED A PICTURE OF ERIKA MELKE NOR HER ADDRESS TO U/C POLICE AND JAILHOUSE INFORMANTS HOWEVER SINCE HIS JOURNAL WAS STOLEN FROM HIM, JAILHOUSE INFORMANTS OBTAINED INFORMATION ABOUT HER APARTMENT ADDRESS, MAP, WORK, AND DESCRIPTION OF HER CAR.
(see attached jailhouse substance abuse therapist Tim Held's reports about defendant's journal).

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381199  [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:37 PM EST,     Letter ID: 1730381199
Location : MCF
Housing : UNIT 4100B01

See police report pgs 8-11 Mobley Sought, engaged defendant more than 25 times (I asked him...)."I WAS TRYING TO GET HIM TO INCRIMINATE HIMSELF, I WAS TRYING TO GET HIM TO SAY WHAT I WANTED HIM TO SAY" LLA # 161027011556

SEE ATTACHED VIDEO VISIT TRANSCRIPTS.I between Mobley and defendant)

WHOLE CONVERSATION WITH MOBLEY IS ABOUT "BEATING A TRASH WITH RED HAIR" (Melke has a BLONDE hair)

PER REGINALD CLOSE'S PLAN/PLOT: HE OWED MONEY TO HIS FRIEND (MOBLEY) $1000 HOWEVER AT THE VIDEO VISIT MOBLEY ASKED FOR $2500 AND $500 EXTRA PER TRASH BAG. DEFENDANT HAD A FORECLOSED HOME AND HAD REAL TRASH IT HAD TO BE REMOVED. (DEF. NEIGHBOR KATHY EDMOND WOULD HAVE TESTIFIED TO THIS)
AND SOMEHOW ACCORDING TO POLICE AND PROSECUTION THOUGHT THAT ALTHOUGH ENGLISH IS DEFENDANT'S          SECOND          LANGUAGE,          DEFENDANT          UNDERSTOOD AMBIGUOUS/CODED/ASSUMING/METAPHORIC WORDS/LANGUAGE USED BY POLICE MOBLEY.

DEFENDANT DID LEAVE A TRASH BEHIND IN HIS HOUSE WHERE CATHY EDMOND (neighbor) WOULD HAVE TESTIFIED TO THAT. (defendant foreclosed his house and declared bankruptcy in  2015- 2016).

FACTS ABOUT VIDEO VISITS AT JAIL

*IN 2016 SECURUS VIDEO VISITS WERE ONLY SCHEDULED FROM OUTSIDE AND NO INMATE WAS ALLOWED TO SIGN TO SEE WHO SCHEDULED A VIDEO VISIT

* ONE IS ONLY ALLOWED TO HAVE 3 PAID 1 FREE TOTAL OF 4 VISITS PER WEEK (that week defendant had 6 visits total)

* 10/19/2016 Mobley set up video visit when Jailhouse informant (Reginald Close was in the same POD with defendant this is why Mobley cancelled the visit)

* 10/24/2016 Mobley set up a second visit where C.ALLEN WATCHED THE WHOLE VISIT BEHIND DEFENDANT.

MOBLEY WAS THE ONE WHO ENGAGED, PURSUIT, PURPOSEFULLY SOUGHT DEFENDANT

10/27/2016 MOBLEY SET UP THIRD VISIT WHERE DEFENDANT HUNG UP THE PHONE AND MOBLEY TRIED TO "ENGAGE" SEVERAL TIMES WITH JAIL DEPUTY TO GET ME TO TALK TO HIM"
DEFENDANT "RENOUNCED" THE ENGAGED PLOY BY DENYING THE VISIT.

JAIL HOUSE INFORMANTS WERE POLICE AGENTS this was confirmed by trial testimony of Lansing Police Department detective Andrew Hogan, (T.T. 11/06/2017 pgs 114-115)
WHERE THEY PRESSURED, ENTICED, INDUCED DEFENDANT, EXTORTED DEFENDANT BY STEALING HIS JOURNAL AND FABRICATED STORIES. ACCORDINGLY

UNDER MICHIGAN LAW, "SOLICIT" IS STATUTORILY DEFINED AS AN "OFFER TO GIVE, PROMISE TO GIVE, OR GIVE ANY MONEY, SERVICES, OR ANYTHING OF VALUE, OR TO FORGIVE OR PROMISE TO FORGIVE A DEBT OR OBLIGATION" MCL 750.157(b)

(PEOPLE V CRAWFORD 232 MICH APP 608 (1998))

IN PEOPLE V JULLIET, 439 MICH 14 (1991) MICHIGAN SUPREME COURT FOUND THAT; THE SECOND DEFENDANT WAS ENTRAPPED BECAUSE.... INFORMANT WAS THE "INCESSANT" REQUESTS AND OTHER

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381199  [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To :  Information Services
Date : 3/26/2023 10:11:37 PM EST,    Letter ID: 1730381199
Location :  MCF
Housing :  UNIT 4100B01

ACTIVITIES UNDERTAKEN BY THE INFORMANT, A CIRCUMSTANCE IN WHICH ANY NORMALLY LAW-ABIDING PERSON MIGHT BE INDUCED INTO COMMITTING A CRIME TO HELP A FRIEND.....DEFENDANT WAS ENTRAPPED BECAUSE THE INFORMANT, POSING AS A FRIEND, "MANIPULATED" THE DEFENDANT INTO CRIMINAL ACTS.

IN THIS CASE DEFENDANT DID NOT REMAND HIMSELF TO JAIL TO SOLICIT ANYONE TO COMMIT MURDER, (HE WAS NOT PREDISPOSED) HE CAME TO JAIL TO START HIS PRESUMED JAIL SENTENCE PART OF HIS PLEA DEAL. ONCE IN JAIL DEFENDANT WAS SUBJECTED TO INHUMANE TREATMENT OF SOLITARY CONFINEMENT FOR A MONTH FOR THE ALLEGED PHONE CALL TO COMPLAINANT AND THAN PUT IN WITH JAILHOUSE INFORMANTS IN THE SAME CELL FOR 3 WEEKS. (this was done "PURPOSEFULLY" BY PROSECUTION/POLICE TO ENTRAPMENT DEFENDANT.
BECAUSE DEFENDANT'S JOURNAL (defendant was journalling while he was in solitary confinement not to lose his mind) WAS STOLEN FROM HIM AND IT WAS USED TO EXTORT MONEY FROM HIM BY CARRIER CRIMINALS WHEN HE RESISTED AFTER A WHILE SAME CRIMINALS FABRICATED STORIES TO BENEFIT THEMSELVES.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381190 [P 1/3]

**You have received a *jpay* letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:36 PM EST,    Letter ID: 1730381190
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/26/2023 22:11:41

Please do not reply to this email

4) SUFFICIENCY OF EVIDENCE

POLICE DELIBERATELY CREATED A SITUATION (PROPINQUITY, CLOSE PROXIMITY) TO PUT VULNERABLE DEFENDANT AFTER A MONTH OF SOLITARY CONFINEMENT WITH JAILHOUSE INFORMANTS (U.S. V HENRY 477 US 264 (1980))

MONEY DEPOSITED R. CLOSE'S JAIL  ACCOUNT WAS TO APPEASE HIM, BECAUSE DEFENDANT WAS BEING EXTORTED BY R. CLOSE AND C. ALLEN  DUE TO THE THINGS I  WROTE IN HIS JOURNAL. (SEE ATTACHED EVALUATION REPORT  TIM HELD SUBSTANCE ABUSE THERAPIST AT JAIL ABOUT PROOF OF EXISTENCE OF MY JOURNAL).

PURPOSEFULLY SOUGHT", INCIMENT, ENGAGEMENT REQUIRES AN URGING, A PERSUADING, OR THE LIKE. BUT THE RECORD, WHEN READ AS A WHOLE, DOES NOT REFLECT THAT THE DEFENDANT URGED, PERSUADED UNDERCOVER POLICE HITMAN FRANK MOBLEY, JAILHOUSE INFORMANTS REGINALD G. CLOSE AND CHARLES ALLEN TO PARTICIPATE IN ANY CAPACITY IN THE KILLING OF COMPLAINANT ARGUABLY, THEIR UN-VERIFIED AND REPREHENSIBLE ACTS/TESTIMONY OF POLICE MAY HAVE SUPPORT A CONVICTION FOR SOLICITATION TO KILL ERIKA MELKE, BUT DOES NOT SUPPORT A CONVICTION FOR SOLICITATION MURDER UNDER THE STATUE  MCL 750.157b(2) AND ELEMENTS OF THE CRIME. PEOPLE V SALAZAR 140 MICH APP 137 (1985)

***SEE ATTACHED DEFENDANTS FIRST STANDARD 4 FILED IN APRIL 2019

5) SUFFICIENCY OF EVIDENCES

B)

ELEMENTS OF AGGRAVATED STALKING 750.411(I)

AGGRAVATED STALKING CONSISTS OF THE CRIME OF STALKING AND PRESENCE OF AN AGGRAVATING CIRCUMSTANCE SPECIFIED IN  750.411(I)(2). People V. Threatt, 254 Mich App 504, 505, 657 NW 2d 819(2002).

STALKING IS A WILLFUL COURSE OF CONDUCT INVOLVING REPEATED OR CONTINUING HARASSMENT OF ANOTHER INDIVIDUAL THAT WOULD CAUSE A REASONABLE PERSON TO FEEL TERRORIZED, FRIGHTENED, INTIMIDATED, THREATENED, HARASSED OR MOLESTED AND THAT ACTUALLY CAUSES THE VICTIM TO  FEEL TERRORIZED, FRIGHTENED, INTIMIDATED, THREATENED, HARASSED OR MOLESTED. MCL 750.411(I)(e)(d).

STALKING IS ELEVATED TO AGGRAVATING STALKING WHEN AMONG OTHER POSSIBLE SCENARIOS, THE ACTIONS CONSTITUTING THE OFFENSE OF STALKING ARE IN VIOLATION OF A CONDITION OF PROBATION OR AN RESTRAINING ORDER. MCL 750.411(I)(2)(a)(b).

HOWEVER IN THIS CASE DEFENDANT WAS CHARGED WITH SECOND STALKING ON BETWEEN 08/23/2016 and 09/20/2016 per police report #161024011444

BASED ON FALSITY OF INFERENCES, ALTERED EVIDENCE, PERJURY BY POLICE, PROSECUTION, COMPLAINANT AND IMPOSSIBILITY OF DEFENDANT COMMITTING AGGRAVATED STALKING GIVEN THE CIRCUMSTANCES THAT HE WAS IN JAIL AT THAT TIME.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381190 [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:36 PM EST,    Letter ID: 1730381190
Location : MCF
Housing : UNIT 4100B01

Basis for this charge was the alleged latter sent to complainant Melke on 08/31/2016 at 3:32 pm from an email address allegedly created by def. see 10/19/2016 email sent by Chas Koop

HERE THE NEW EVIDENCE ACTUAL CLAIM OF EVIDENCES: (based on perjured/falsified Police and prosecution charges)

DEFENDANT ACCEPTED A PLEA DEAL FOR HIS FIRST STALKING CHARGE ON 08/23/2016 AND JUDGE ORDERED NOT TO AUTHORIZE ANY CHARGES GOING BACK FROM THE DATE 08/23/2017 (SEE FIRST PSI) case # 16-534-PP AND DEFENDANT ALSO SPENT ONE NIGHT IN JAIL THAT DAY AND WAS RELEASED ON 08/24/2016 AND ON 08/31/2016 HE WAS REMANDED TO JAIL TO START HIS PRESUMED JAIL SENTENCE AND PUT IN A SOLITARY CONFINEMENT ON 09/01/2016 see attached Ingham County Jail History of Incarceration and Jail movement records)

ALLEGED PHONE CALL FROM JAIL TO COMPLAINANT ON 08/31/2016 AT 9:05 PM AND 9:10 PM COMPLAINANT'S PHONE NUMBER STARTED WITH (231) AREA CODE
DEFENDANT DID NOT AND COULD NOT HAVE PLACED THAT PHONE CALL. SEE ATTACHED JAIL PHONE LOGS FOR DEFENDANT FIRST CALL TO WAS MADE ON 09/01/2016 AT 12:00N TO HIS ATTORNEY, NOT ON 08/31/2016

LOOK AT JAIL MOVEMENT RECORDS DEFENDANT WAS MOVED TO HIS POD/ROOM BY 8:44PM AND DEFENDANT'S PHONE PRIVILEGES WAS NOT TURNED ON UNTIL THE MORNING OF 09/01/2016. SO DEFENDANT COULD NOT HAVE MADE THOSE ALLEGED PHONE CALLS ON 08/31/2016

SEE TRIAL TRANSCRIPTS FOR RICHARD LAING SPARTAN-NET CEO ABOUT IP (INTERNET PROTOCOL) ADDRESSES TESTIMONY
11/03/2017 pg 93
SPARTAN NET CEO THEN ; RICHARD LAING TESTIFYING
LAING : We were asked to recorver any information that we had in regard to the IP addresses any record that we had of, you know, any devices that those IP addresses have
NORMALLY WE CAN ACTUALLY TRACK IT DOWN TO ACTUAL ***MAC ADDRESS *** (IPHONE-APPLE WHICH COMPLAINANT ERIKA MELKE HAD ONE)***WHICH IS UNIQUE ADDRESS PER DEVICE, BUT BECAUSE OF THE TIMING AND NETWORK ADDRESS TRANSITION WE WERE ONLY BE ABLE TO SHOW WHERE PHYSICALLY THAT IP ADDRESS IS CONFIGURED, AND IN WHAT POOL THAT'S WHAT THEY ASKED ME, THAT'S IS WHAT WE SHARED
***FACT MELKE OWNED MAC/IPHONE
***3 IP ADDRESSES NONE OF MATCHES THE BUILDING IP #'S AND THEY WERE ALL "EXPIRED" ALLEGEDLY ERIKA MELKE'S SOCIAL MEDIA ACCOUNT HACKED.

(72.44.103.129)(72.44.103.166)(72.44.103.178)

ERIKA MELKE LIVED IN A APARTMENT COMPLEX MANAGED BY DTN PROPERTY MANAGEMENT IN LANSING WHERE SAME IP COMPANY SERVICED (SPARTAN NET) THEIR INTERNET CONNECTION. (2015-2016)

SHE USED TO LIVE IN EAST LANSING WHERE HER APARTMENT COMPLEX WAS SERVICED BY SAME IP COMPANY SPARTAN NET AS WELL  (2013-2015). MANAGED BY DTN PROPERTY MANAGEMENT.

***ANYONE WHO LIVED IN DTN MANAGED PROPERTY WITH SPARTAN NET IP SERVICE HAD A ACCESS TO OTHER IP ADDRESSES.***

PG 94 LINE 3-6
PERRONE: SO YOU WEREN'T ABLE TO OBTAIN A UNIQUE ADDRESS BECAUSE OF THE DELAY?

***LAING : I WAS UNABLE  TO TRACK TO AN ACTUAL MAC(APPLE/IPHONE) ADDRESS

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381190 [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 3/26/2023 10:11:36 PM EST,     Letter ID: 1730381190
Location : MCF
Housing : UNIT 4100B01

see attached doc Actual Spartan Net IP addresses showing per building
they dont match the address of the defendant.

FACT ALLEGED HACKING WAS DONE ON 08/27/16 AND 08/31/2016
SEARCH WARRANT WAS REQUESTED ON 09/27/2016 AND IT WAS ANSWERED BY 09/30/2016 SO
THEREFORE ALL THE IP ADDRESSES COMPROMISED/EXPIRED AND ASSIGNED TO OTHERS IN THE SAME
BUILDING (C) WHICH THE ADDRESS WAS 1250 HASLETT ROAD.
HOWEVER PROSECUTION AND POLICE USED  1240 HASLETT  IN THEIR REPORTS/AFFIDAVITS PER
TETHER GPS AND IT SHOWED DEFENDANT IN THE CORNER OF HASSLETT AND SAGINAW HWY.
CONJUNCTION.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381177  [P 1/3]

---

**You have received a jpay letter, the fastest way to get mail**

From  : TUNC URAZ, ID: 114653
To :  Information Services
Date :  3/26/2023 10:11:35 PM EST,     Letter ID: 1730381177
Location :  MCF
Housing :  UNIT 4100B01

---

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/26/2023 22:11:40

Please do not reply to this email

5) SUFFICIENCY OF EVIDENCES

See attached Social media password change notifications, on 08/27/2016 it was done by "Galaxy" phone yet Mr. Laing tracked to MAC(IPhone/Apple) product but not to the Actual location

08/31/2016 the password was changed via e-mail address (rika_thinkgreen@hotmail.com)
which belonged to Erika Melke
see attached e-mails exchanged between defendant and Erika Melke in 2014. THE SEARCH WARRANT AFFIDAVIT ONLY SAID "MELKE" RECEIVED A MESSAGE FROM FACEBOOK SAYING THAT HER ACCOUNT PASSWORD WAS CHANGED BUT IT FAILED SAY HOW IT IS CHANGED AND WITH WHAT E-MAIL ADDRESS USED (rika_thinkgreen@hotmail.com) which belonged to Melke (see attached notification docs).

Defendant was at 1135 E. Grand River Bells Pizza between 12:00N till 4:00pm
but GPS showed his location 100 feet away 1089 E. Grand River Ave middle of the street.  GPS TETHER WAS FAULTY YET IT WAS USED AGAINST DEFENDANT AT TRIAL BY PROSECUTORS/POLICE FALSIFYING THE RECORD TO JURY.

THE  EMAIL ACCOUNT WHERE SHE ALLEGEDLY RECEIVED A LETTER FROM DEFENDANT see attached Google scribds
(emelke20@gmail.com)
this e-mail account was created by Erika Melke in November 2009 see attached GOOGLE SCRIBDS SHOWING ACCOUNT WAS SET UP NOVEMBER 2009 LONG BEFORE DEFENDANT AND MELKE MET. (and email messages sent by her, she committed perjury at trial testimony see 11/03/2017 pgs 45-46)

6) AGGV. STALKING SUFFICIENCY OF EVIDENCES
11/03/2017

PICTURES POSTED (they all belonged to her def.had no access )  ON ALLEGED FAKE INSTAGRAM ACCOUNT ALLEGEDLY BY DEFENDANT :
HERE ARE THE FACTS;
IT HAD 198 PEOPLE AS FRIENDS, IT WAS AN ESTABLISHED BY MELKE FOR SOME TIME

MELKE ON RECORD DURING TRIAL
"I SENT THE MESSAGE FIRST TO FAKE INSTAGRAM PAGE" ONE CANNOT SEND MESSAGE TO SOMEONE UNLESS THEY ARE FRIENDS ON THAT PAGE SO THIS MEANS SHE WAS THE CREATER/OWNER OF THAT INSTAGRAM  ACCOUNT TO BE ABLE TO SEND MESSAGE TO DEFENDANT.

THIS MEANS MELKE RESET/CHANGED HER OWN FAKE INSTAGRAM/FACEBOOK PAGE AND USED HER OWN PICTURES.

BECAUSE NOTIFICATION WAS SENT TO HER OWN PERSONAL E-MAIL ACCOUNT.

BERNARD BROWN CENTENNIAL JAIL GPS TETHER ADMINISTRATOR TESTIMONY ON TAKE CENTRAL. LOCATION WITHIN THAT RADIUS, LONGITUDE AND LATITUDE FOR MORE SPECIFIC LOCATION,
(SIX SATELLITES, REAL TIME)
 HOWEVER THE GPS LOCATIONS AND TIMES WERE  WRONG AT ALL TIMES

see attached GPS times and locations
on 08/31/2016 MOVEMENTS

---

**jpay Tell your friends and family to visit www.jpay.com to write letters and send money!**

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381177  [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:35 PM EST,    Letter ID: 1730381177
Location : MCF
Housing : UNIT 4100B01

DEFENDANT WAS AT COURTHOUSE ADDRESS 313 W. KALAMAZOO LANSING

262 W. KALAMAZOO
272 W. ST JOSEPH HWY MICHIGAN SHERIFF ASSOC.
277 W KALAMAZOO INGHAM PROBATION OFFICE

defendant was at courthouse at 3:30 pm 313 W. Kalamazoo Lansing to remand himself to Ingham County Jail which is located 640 N. Cedar St. Mason MI (20 miles away from the court house)

HOWEVER DEFENDANT'S GPS LOCATION SHOWED HIM AT JAIL AT 3:05 pm  (see attached GPS ) his tether removed

defendant. cannot be in two places in the same time frame

The e-mail address  (emelke20@gmail.com)  with a letter Melke claims that she received from defendant at 3:32 pm could have been impossible because defendant was in jail at time and day (08/31/2016),

and the e-mail address belongs to her.
The same letter was shown to Prosecutor Koop (which made him a witness)  by his retained attorney Bergstrom on 08/23/2016 (see attached GPS records, and emails sent by Bergstrom)

SEE ATTACHED NEW EVIDENCE AND REASONABLE DOUBT LISTS

WHERE DEFENDANT'S MENTALLY IMPAIRED ATTORNEY DID NOT INVESTIGATE NEITHER HIS APPEAL ATTORNEY DIDN'T INVESTIGATE AS WELL. (she was notified all these newly  evidences in 2019 see attached letters)
BESTBUY  INCIDENT  ON  03/26/2016  SEE  MERIDIAN  TOWNSHIP  (SUPPLEMENTAL)  POLICE REPORT/INTERVIEW DVD/CD (APPEAL ATTORNEY SUSAN K. WALSH HAS A COPY) DEFENDANT TURNED HIMSELF IN, HE WAS NOT ARRESTED BY OFFICER KING, SEE ATTACHED BRIEF (Confrontation Clause VIOLATION Under SIXTH Amendment)

**FACTS : OFFICER KING WAS NOT THE ARRESTING OFFICER THAT DAY (03/26/2016), DEFENDANT TURNED HIM SELF IN MERIDIAN TOWNSHIP POLICE DEPARTMENT AT 9:30 PM AT NIGHT WHERE HE WAS INTERVIEWED BY OFFICER AARON McCONAUGHY (SEE THE POLICE INTERVIEW CD/VIDEO AND BOOKED THAT DAY , SPENT THE NIGHT AT INGHAM COUNTY JAIL.
(see attached Supplemental police report # 1692602458 , prepared by Officer ARRON McCONAUGHY)

THIS SUPPLEMENTAL REPORT WAS NOT MADE PART OF THE TRIAL BY MENTALLY IMPAIRED PERRONE, BY PROSECUTION ON PURPOSEFULLY.

PROSECUTION'S ASSERTION OF MR. URAZ'S GUILT WAS INCORPORATED WITHIN OFFICER KING'S TESTIMONY THROUGH AN INDIRECT METHOD THAT CHECKS ALL THE BOXES AS "UNCONFRONTED TESTIMONIAL HEARSAY" : AN "OUT-OF-COURT ASSERTION",  TESTIMONIAL 'IN NATURE, ADMITTED FOR ITS TRUTH.

SEE TT 11/02/2017 PG 137 OFFICER KING POINTED AT DETECTIVE KRUMBACH WHEN HE WAS IDENTIFYING DEFENDANT, PROSECUTOR HAD TO DIRECT HIM TO TO POINT AT DEFENDANT. (see trial footage)

HERE IS THE "ARRESTING OFFICER'S" REPORT OFFICER AARON McCONAUGHY (IN PART)

"ON SATURDAY 03/26/2016 AT 21:30 HOURS, I WAS THAT THE SUSPECT FROM AN EARLIER PPO VIOLATION CASE WAS COMING INTO THE POLICE DEPARTMENT TO TALK TO AN OFFICER ABOUT THE

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381177  [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From    : TUNC URAZ, ID: 114653
To :  Information Services
Date :  3/26/2023 10:11:35 PM EST,     Letter ID: 1730381177
Location :  MCF
Housing :  UNIT 4100B01

CASE. OFFICER KING ADVISED ME OF THE DETAILS OF THE PRIOR INCIDENT AT THE BEGINNING OF MY SHIFT. "

"TUNC UNDERSTOOD HE MADE MISTAKE AND HE WOULD LIKE IT DOCUMENTED THAT HE DID COME INTO THE POLICE DEPARTMENT WILLINGLY TO GET THIS MATTER TAKEN CARE OF."

THE VCD VIDEO RECORDING OF THE POLICE INTERVIEW APPEAL ATTORNEY SUSAN K. WALSH HAVE IT.

FACT : DEFENDANT DID NOT TESTIFY DURING THE TRIAL HOWEVER HIS EVIDENTIARY HEARING TESTIMONY BEFORE TRIAL WAS USED AGAINST HIM AT HIS TRIAL. (SEE  10/20/2017 EVIDENTIARY hearing PG 44)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381157 [P 1/3]

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:33 PM EST,   Letter ID: 1730381157
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/26/2023 22:11:38

Please do not reply to this email

6) SUFFICIENCY OF EVIDENCES

CONCERT TICKET PERJURY ON 05/25/2016 DEFENDANT WAS CHARGED WITH SECOND DEGREE HOME
INVASION AND MELKE CLAIMED THAT SOME OF HER PERSONAL ITEMS WERE MISSING BUT DID NOT TALK
ABOUT ANY CONCERT TICKETS ON PPO AND POLICE REPORT HOWEVER THE POLICE REPORT FILED ON
08/15/2016 CLAIMED THAT THE CONCERT TICKETS WERE STOLEN ON 05/25/2016 HOWEVER THE FACT IT
ONLINE SALES FOR TICKETS STARTED ON 05/26/201

#HERE IS THE PERJURY COMMITTED BY PERRONE ON RECORD ON 10/04/2021 GINTHER HEARING
pg 14 Lines 13-22

Here is the carefully crafted question by Crino: "diagnosed" meaning Perrone didn't know he had mental illness
before or during trial. And again here are the FLAWS in MCR 9.121 (C) in questioning a mentally impaired person is
being asked to diagnose their own mental illness along with other attorneys who are NOT QUALIFIED TO
DIAGNOSE OR MENTAL HEALTH EXPERTS TO KNOW/UNDERSTAND MENTAL ILLNESS.

PROSECUTOR K. CRINO :

in part....DID YOU HAVE ANY ACTIVE MENTAL HEALTH DIAGNOSIS THAT YOU WERE AWARE OF AT THAT
TIME?
PERRONE : NO

CRINO: DURING HIS TRIAL DID ANY SYMPTOMS GIVE YOU CONCERN THAT THERE MIGHT BE A MENTAL
HEALTH ISSUE DURING THAT TRIAL?

PERRONE:NOT FROM MY PERSPECTIVE

CRINO: in part BEFORE MR. URAZ'S TRIAL DID YOU HAVE ANY KIND OF MENTAL HEALTH DIAGNOSES?

PERRONE : NO

HERE IS THE PERJURY BY PERRONE ON RECORD ;

see GINTHER HEARING Trans.
Pg 35 Lines 4-25

Crino : Did have an issue arise with your mental health?

Perrone: Yes about a week after the trial, I took a trip to Dallas right after I got done with the trial and didn't sleep
really, I had to fly sooner than anticipated for a family issue, which caused "significant exhaustion" which led to me
having some different---I had to go to hospital because of the "exhaustion" which caused my family significant
concern, which ended up leading to having an episode, A "BIPOLAR DISORDER"

Crino: OK is it fair to say, then a week after the verdict in this case, you had an episode and that episode led to a
mental health diagnosis?

Perrone: Yes

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381157 [P 2/3]

**You have received a _jpay_ letter, the fastest way to get mail**

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:33 PM EST,    Letter ID: 1730381157
Location : MCF
Housing : UNIT 4100B01

Crino: OK you mentioned Bipolar, Is that the diagnosis that you ultimately received?

Perrone : Yes

HERE IS THE TRUTH;
please see his father's PRT form filled on 11/14/2017, Perrone's mental issues was going back to 2015 and he went to Sparrow Hospital in August 2017 before trial and in November 2017 right after trial before he was sent to UofM hospital on 11/13/2017.
tidal dates were (10/31/2017-11/09/2017)

SEE ERIC SCHROEDER'S RESPONSE TO AGC (#22-2094) dated 02/06/2023 pg 2 prags. 1 and 2
that in August 2017 before trial Perrone went to Sparrow Hospital for.anxiety

"in part..I LEARNED FROM PERRONE'S FAMILY THAT OVER THE WEEKEND THAT PERRONE HAD EXPERIENCED A MENTAL HEALTH EPISODE. HE WAS HOSPITALIZED FOR 3 DAYS AND RELEASED THAT FRIDAY".

THIS MEANS AS PERRONE LIED ON 10/04/2021
 HE DIDN'T GO TO DALLAS,  MY TRIAL ENDED 11/09/2017
HE WAS SENT TO SPARROW HOSPITAL FOR THE WEEKEND BETWEEN (11/10/2017-11/14/2017)  AND THEN UOFM HOSPITAL AND THEN SAGINAW WHITEPINE MENTAL HOSPITAL. RELEASED ON 11/17/2017 and 11/20/2017 back to Mental hospital with Police PRT.

THIS IS WHY DEFENDANT HAD TO GRIEVE EVERY SINGLE ATTORNEY/PROSECUTOR TO GET THE TRUTH WHO HAD KNOWLEDGE OF PERRONE'S MENTAL ILLNESS BUT CHOSE NOT TO REPORT IT PER MRPC 8.3, 3.3,.8.4, 1.1,.6.5 AND STAYED COMPLACENT AND LIED ON RECORD. THIS NOT THE OATH THEY TOOK SWEARED TO BECOME AN ATTORNEY.
THEY ALL COMMITTED PERJURY ON RECORD.


ISSUE:

MR. URAZ WAS DEPRIVED OF HIS STATE AND FEDERAL RIGHTS TO DUE PROCESS AND FAIR TRIAL WHERE THE PROSECUTION SUPPRESSED CRITICAL EVIDENCE THAT COULD HAVE BEEN USED AT HIS GINTHER HEARING (ATTORNEYS EXTENDED MENTAL ILLNESS GOING BACK TO 2015) AND DEFENDANT'S ACTUAL INNOCENCE CLAIM READILY AVAILABLE EVIDENCES WERE SUPPRESSED, ALTERED /FALSIFIED BY POLICE AND PROSECUTION IN THEIR AFFIDAVIT FOR SEARCH WARRANT AND IMMUNITY LETTERS GIVEN TO JAILHOUSE INFORMANTS

STANDARD OF REVIEW

THE "DE NOVO" STANDARD OF REVIEW APPLIES TO A TRIAL COURT'S DETERMINATION OF WHETHER A BRADY VIOLATION OCCURED, SEE e.g., UNITED STATES V GRAHAM, 484 F3D 413,416-417 (CA 6, 2007)

ANALYSIS:

A DEFENDANT IN A CRIMINAL TRIAL HAS THE DUE PROCESS RIGHT " TO SEEK OUT THE TRUTH IN THE PROCESS OF DEFENDING HIMSELF" DAVIS V ALASKA, 415 US 308, 320; (1974), THIS INCLUDES THE RIGHT TO SHOW THAT SOMEONE ELSE COMMITTED THE CRIME.
ROCK V ARKANSAS, 483 US 44 (1987)
HOLMES V S. CAROLINA, 574 U.S. 319 (2006)
CHAMBERS V MISSISSIPPI, 410 U.S. 284, 93 S CT 1038 (1973)

The Court in Holmes said;
Just because the prosecution's evidence, if credited, would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case.

_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381157  [P 3/3]

**You have received a _jpay_ letter, the fastest way to get mail**

From  : TUNC URAZ, ID: 114653
To :  Information Services
Date : 3/26/2023 10:11:33 PM EST,    Letter ID: 1730381157
Location :  MCF
Housing :  UNIT 4100B01

MR. TUNC URAZ WAS NOT AFFORDED THE OPPORTUNITY TO SHOW THAT HIS MENTALLY IMPAIRED ATTORNEY HAD ISSUES WITH OTHER PROSECUTORS, BECAUSE PROSECUTION WITHHELD ALL EVIDENCE PERTAINING TO AN INVESTIGATION OF JACOB PERRONE.
APPEAL COUNSEL WAS COMPLETELY UNAWARE OF "OTHER EVIDENCES EXISTED BASED PERRONE'S OTHER ISSUES"

DEFENDANT DID NOT HAVE A CONFLICT FREE ATTORNEY TO.REPRESENT HIS INTEREST AFTER PERRONE'S MENTAL IMPAIRMENTS CAME OUT AND DEFENDANT WAS NOT REPRESENTED DURING BOTH HEARINGS 12/12/2017 AND 12/13/2017. WHICH VIOLATED DEF. SIXTH AMEND. RIGHT (SEE CASE Precedent).
 Downs v Commonwealth, 2020 Ky. Lexis 222
Supreme Court of Kentucky , 07/09/2020

THE PROSECUTION HAS A FEDERAL CONSTITUTIONAL DUTY TO PROVIDE EXCULPATORY EVIDENCE TO A CRIMINAL DEFENDANT.
BRADY V MARYLAND, 373 US 83 (1963). THE SUPPRESSION OF FAVORABLE EVIDENCE THAT IS MATERIAL TO THE QUESTION OF GUILT OR PUNISHMENT VIOLATES DUE PROCESS, IRRESPECTIVE OF THE GOOD OR BAD FAITH OF THE PRODUCTION. BRADY, 373 U.S. AT 87. THIS OBLIGATION TO DISCLOSE EXTENDS EQUALLY TO IMPEACHMENT EVIDENCE. U.S. V BAGLEY, 473 US 667, 676 (1985). THE EVIDENCE AT ISSUE NEED NOT BE SPECIFICALLY REQUESTED BY DEFENSE COUNSEL

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1730381145  [P 1/2]

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:33 PM EST,    Letter ID: 1730381145
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 03/26/2023 22:11:37

Please do not reply to this email

7) SUFFICIENCY OF EVIDENCES

THE EVIDENCE AT ISSUE NEED NOT BE SPECIFICALLY REQUESTED BY DEFENSE COUNSEL. U.S. V AGURS, 427 US 97, 107-110 (1976). THIS DUTY TO DISCLOSE EXTENDS TO OTHER AGENTS ACTING ON BEHALF OF THE GOVERNMENT, INCLUDING THE POLICE. KYLES V WHITELY, 514 U.S. 419,437 (1995)

IN ORDER TO CONSTITUTE A BRADY VIOLATION:
1) EVIDENCE IN QUESTION MUST BE FAVORABLE TO THE DEFENDANT
2) THE STATE MUST HAVE SUPPRESSED THE EVIDENCE; AND
3) THE SUPPRESSION MUST HAVE RESULTED IN PREJUDICE. STRICKLER V. GREENE, 527 U.S. 263 281-82 (1999). PREJUDICE, OR "MATERIALITY", IS ESTABLISHED WHEN THERE IS A REASONABLE PROBABILITY" DOES NOT REQUIRE A DEMONSTRATION THAT THE SUPPRESSED EVIDENCE WOULD MORE LIKELY THAN NOT HAVE RESULTED IN AN ACQUITTAL, BUT MERELY THAT CONFIDENCE IN THE OUTCOME OF THE TRIAL IS UNDERMINED. ID

THE SUPPRESSION OF EFFECTIVE IMPEACHMENT EVIDENCE WHEN THE PROSECUTION'S CASE PRIMARILY DEPENDS ON ONE INCRIMINATING WITNESSES TESTIMONY IS PREJUDICIAL. IN DISCUSSING THE STANDARD OF MATERIALITY, THE SUPREME COURT IN BANKS V DRETSKE DISTINGUISHES A CASE WHERE A WITNESS' TESTIMONY IS "CRUCIAL TO THE PROSECUTION," FROM CASES LIKE STRICLER, WHERE THE COURT FOUND THE WITNESS' TESTIMONY WHO DEFENDANT SOUGHT TO IMPEACH AS "CUMULATIVE" AND "HARDLY SIGNIFICANT." BANKS V DRETSKE, 540 U.S. 668, 700-01 (2004). THE DEFENDANT MUST HAVE AN OPPORTUNITY TO COMPLETELY IMPEACH WITNESSES, AND "BROAD LATITUDE TO PROBE [INFORMANTS]
CREDIBILITY BY CROSS-EXAMINATION" IN THE FACE OF POTENTIALLY UNRELIABLE AND TESTIMONY. ID AT 702 (brackets in quotation, internal citation omitted).

PRODUCING ENOUGH EVIDENCE TO REQUIRE AN ACQUITTAL IS ABOVE AND BEYOND THE LEVEL OF MATERIALITY SUFFICIENT FOR A BRADY VIOLATION;
The fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial. For that reason the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal.... if the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice.
AGURS, SUPRA, 427 U.S. at 111.

BECAUSE PROSECUTOR SUPPRESSED EVIDENCE THAT WAS BOTH FAVORABLE AND MATERIAL TO THE DEFENSE, MR. TUNC URAZ IS ENTITLED TO THE REVERSAL OF HIS CONVICTION.

THIS TRIAL COURT SHOULD GRANT TUNC URAZ RELIEF UNDER MCL 770.1, MCR 6.431, OR MCR 6.502, BECAUSE THE NEW EVIDENCE SHOWS THAT THERE HAS BEEN A MISCARRIAGE OF JUSTICE AND THAT TUNC URAZ IS ACTUALLY INNOCENT, AND INCARCERATION OF AN INNOCENT MAN VIOLATES THE DUE PROCESS CLAUSE OF BOTH STATE AND FEDERAL CONSTITUTION AND THEIR RESPECTIVE PROHIBITIONS AGAINST CRUEL AND/OR UNUSUAL PUNISHMENT.

APPLICABLE LAW

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1730381145 [P 2/2]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 3/26/2023 10:11:33 PM EST,   Letter ID: 1730381145
Location : MCF
Housing : UNIT 4100B01

2) A defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgement or a claim of new evidence that was not discovered before the first such motion. The clerk shall refer a successive motion that asserts that one of these exceptions is applicable to the judge to whom the case is assigned for a determination whether the motion is within one of the exceptions.
The court may waive the provision of this rule if it concluded that there is a significant possibility that the defendant is innocent of the crime.

GOOD CAUSE

PRIOR APPELLATE COUNSEL'S INEFFECTIVE ASSISTANCE IN FAILING TO INVESTIGATE AND RAISE AN OBVIOUSLY MERITORIOUS ISSUE ON APPEAL MAY SATISFY THE "GOOD CAUSE" REQUIREMENT. SEE GENERALLY, PEOPLE V REED, 449 MICH 375, 535 NW2D 496(1995). [T]HE COURT MAY WAIVE THE "GOOD CAUSE" REQUIREMENT OF MCR 6.508(D)(3)(A) IF IT CONCLUDES THAT THERE IS A SIGNIFICANT POSSIBILITY THAT THE DEFENDANT IS INNOCENT OF THE CRIME." PEOPLE V MCSWAIN, 259 MICH APP 654, 676 NW2D 236 (2003), CITING MCR 6.508(D)(3)

ANALYSIS

OUR SUPREME COURT HAS LONG RECOGNIZED THAT A NEW TRIAL MAY BE WARRANTED ON THE BASIS OF NEWLY DISCOVERED EVIDENCE. SEE PEOPLE V RAO, 491 MICH, 271,279. AND YET, A JUDICIAL AVENUE MUST REMAIN OPEN FOR THE RARE CASE WHERE, AFTER A NEW EVIDENCE IS DISCOVERED, JUSTICE NECESSITATES A NEW TRIAL.

IN PEOPLE V JOHNSON, 502 MICH 541, HOWEVER, OUR SUPREME COURT EXPANDED THE SECOND CLASS OF EVIDENCE BEYOND JUST THE "NEWLY DISCOVERED EVIDENCE" TO INCLUDE NOW ALL OF "THE EVIDENCE THAT WOULD BE PRESENTED ON RETRIAL" JOHNSON, 502 MICH AT 571. AS THE JOHNSON COURT CLARIFIED, "THUS, THE EVIDENCE THAT MUST BE TAKEN INTO CONSIDERATION WHEN ASSESSING A CLAIM OF NEWLY DISCOVERED EVIDENCE IS NOT SIMPLY THE EVIDENCE PRESENTED AT THE ORIGINAL TRIAL, BUT ALSO THE EVIDENCE THAT WOULD BE PRESENTED AT A NEW TRIAL" ID. THIS INCLUDES, BUT IMPORTANTLY IS NOT LIMITED TO WHAT, STRICTLY SPEAKING, WOULD QUALIFY AS "NEWLY DISCOVERED EVIDENCE" TO SUPPORT A NEW MOTION FOR NEW TRIAL.

CONCLUSION

A "VERDICT OR CONCLUSION ONLY WEAKLY SUPPORTED BY THE RECORD IS MORE LIKELY TO HAVE BEEN AFFECTED BY ERRORS THAN ONE WITH OVERWHELMING RECORD TO SUPPORT."
STRICKLAND V WASHINGTON, 466 US 668 (1984). HERE, WITH MANY NEWLY DISCOVERED EVIDENCE, THE VERDICT IS WEAKLY SUPPORTED BY THE RECORD, WHICH MAKES THE ERROR PREJUDICIAL. MONTGOMERY V BAGLEY, 581 F3D 440 (6th. Cir. 2009)
DEFENSE COUNSEL'S MENTAL IMPAIRMENTS AT THE BEFORE, DURING AND AFTER TRIAL FAILED HIM TO DO INVESTIGATION, CALL WITNESSES, HIS DELUSIONS DURING TRIAL HURT DEFENDANT, TURNED JURY OFF. MOCKERY OF THE TRIAL COURT.

IF THE PROSECUTION AND LANSING POLICE HADN'T SUPPRESSED/ALTERED/FALSIFIED CRITICAL INFORMATION OF READILY AVAILABLE EVIDENCE, AND OF THE TRIAL COUNSEL AND APPELLATE COUNSEL WOULD HAVE HAD INVESTIGATED; DEFENDANT WOULD HAVE HAD A DIFFERENT STORY.

A mistake repeated more than once is a decision
Paulo coelho

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1800516853 [P 1/3]

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:38 PM EST, Letter ID: 1800516853
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/22/2023 20:21:37

Please do not reply to this email

1) JUDGES AND ATTORNEYS, PROSECUTORS WHO HAD KNOWLEDGE OF PERRONE'S MENTAL
IMPAIRMENT EPISODE(S) AND CHOSE NOT TO REPORT IT TO AGC. (ATTORNEY GRIEVANCE COMMISSION)
except one ethical prosecutor.

FRAUD (n) : 1) A DECEPTION DELIBERATELY PRACTICED TO SECURE UNFAIR OR UNLAWFUL GAIN
2) A PIECE OF TRICKERY, A TRICK
3a) ONE THAT DEFRAUDS: A CHEAT b) ONE WHO ASSUMES A FALSE POSE; AN IMPOSTER

FRAUDULENT (adj) : 1) ENGAGING IN FRAUD; DECEITFUL
2) CHARACTERIZED BY, CONSTITUTING,OR GAINED BY FRAUD (FRAUDULENCE, FRAUDULENTLY)
(The American Heritage College Dictionary ,Third Edition (1997)
DECLARATORY RULING & DECLARATORY JUDGEMENT

MCR 2.612(C)(3) & MCLS 2.305, MCLS 24.263,

BASED ON TESTIMONIES OF ATTORNEYS AT GINTHER HEARINGS: PLAINTIFF URAZ IS BRINGING AN
INDEPENDENT ACTION A FRAUD ON COURT PER MCR 2.612 (C)(3) AND MR. URAZ CLAIMING THAT ALL
THE ATTORNEYS WHO TESTIFIED AND PARTICIPATED AS PROSECUTOR AND JUDGE HAD THE
KNOWLEDGE OF PERRONE'S FIRST MENTAL IMPAIRMENT EPISODE ON 11/10/2017 AND SECOND MENTAL
IMPAIRMENT EPISODE ON 11/20/2017

MR. URAZ IS ASKING THIS COURT TO MAKE A DECLARATORY JUDGEMENT PER MCLS 2.305(A)(B)(D)(F) IF
AND WHY ANY OF THE JUDGES, PROSECUTORS AND ATTORNEYS WHO KNEW ABOUT PERRONE'S
MENTAL IMPAIRMENT EPISODE(S) HERE ARE THE PROOFS OF FRAUD, PERJURY AND MISCONDUCT PER
MCR 9.104, MRPC 1.1, 6.5, 8.3, 8.4(a), ALL COURT "OFFICERS" CHOSE NOT TO REPORT IT TO AGC
KNOWINGLY; THEREFORE THEY ALL BECAME ACCOMPLICES AND BECOME COCONSPIRATORS (MCLS
750.157a) IN THIS RACKETEERING (RICO) (MCLS 750.159g)
(i)concerning fraud
(w) A felony of section 218, concerning false pretenses
(hh) A violation of section 422,423,424 or 425 concerning perjury or subornation of perjury

PROOFS OF FRAUD:

HERE IS THE PROOF THAT CHIEF JUSTICE THEN
RICHARD J. GARCIA (P 38996) AND JUDGE CLINTON CANADY (P23262), JUDGE ROSEMARY E. AQUILINA
(P 37670) ; THEY ALL HAD THE KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENT EPISODE(S)

1)

12/12/2017 (page 4)

Participants of judge's chambers meeting/hearing :
(judge Canady, Prosecutors Jonathan Roth and Charles T. Koop II, Attorneys Jacob A. PERRONE, Eric Schroeder,
Nicholas Fernandez (paralegal for PERRONE)

(IN PART)

Pg 5 lines 1-5

**_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!**

*You have received a jpay letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  6/22/2023 8:21:38 PM EST,   Letter ID: 1800516853
Location :  MCF
Housing :  UNIT 4100B01

Prosecutor Roth:
Based on upon information and belief, "THE CHIEF JUDGE" (RICHARD GARCIA then) IS AWARE OF SOME ONGOING ISSUER. I BELIEVE, WE DON'T THINK IT WOULD BE APPROPRIATE FOR HIM TO CONTINUE WITH REPRESENTATION"

JUDGE CANADY (PG. 5  LINES 6-18):

WELL, YOU HAVE TO SORT OF ENUMERATE WHY YOU FEEL THAT WOULD BE THE CASE. I MEAN, I KNOW "CHIEF JUDGE" (RICHARD GARCIA, THEN) IS AWARE OF SOMETHINGS, SO I DON'T KNOW, I GUESS THE QUESTION IS WHAT IS MR. PERRONE'S STATUS CURRENTLY? AND IT WOULD SEEM THAT IF HE IS LIKE CERTIFIED, CLEAR TO GO,  THAT WOULD BE UP TO MR. URAZ.
SO WE MIGHT HAVE TO COME BACK TOMORROW SO THAT WE CAN MAKE OF RECORD IF THAT'S MR. URAZ WANTS TO DO. I GUESS, I DON'T HAVE ANY DIFFICULTIES WITH IT OK?

HERE IS WHY THEN CHIEF JUDGE GARCIA BECAME CULPABLE WHEN HE KNEW ABOUT PERRONE'S MENTAL IMPAIRMENTS ;

06/16/2020 SEE (attached);THE EMAIL MESSAGE SENT BY GEORGE CHURCH WHEN HE WAS ASKED ABOUT WHO WAS IN CHARGE WITH APPOINTING ATTORNEYS TO INDIGENT DEFENDANTS BETWEEN 2016-2018.

MR. GEORGE CHURCH,: " INGHAM COUNTY OFFICE OF THE PUBLIC DEFENDER  WAS CREATED ESSENTIALLY WHEN I BEGAN WORKING ON 01/02/2019. Mr. PERRONE WAS/IS A PRIVATE ATTORNEY WAS APPROVED BY THE CIRCUIT COURT JUDGES, TO HANDLE INDIGENT CASES PRIOR TO THE CREATION OF THE OFFICE. JUDGE GARCIA, AS PRESIDING JUDGE, WAS PROBABLY AS DIRECTLY IN CONTROL OF HIS "PERFORMANCE" AS ANYONE.

BECAUSE HE NEVER (PERRONE) WORKED FOR ME, I NEVER SUSPENDED HIM OR REINSTATED HIM TO HANDLING INDIGENT CASES. I WOULD ADDRESS THESE QUESTIONS TO THE CIRCUIT COURT ADMINISTRATOR AS THEIR OFFICE CONTROLLED APPOINTMENTS AT THAT TIME. GEORGE STRANDER; GSTRANDER@INGHAM.ORG.
I HAVE FORWARDED THIS COMMUNICATION TO HIM SO HE IS PART OF THE CONVERSATION.

On 06/19/2020 The same questions were asked to Mr. George STRANDER but he never responded to any of the email message from Mr. Church and I.  (see attached)

ON 08/24/2021 ATTORNEYS DISCIPLINE BOARD MR. OWEN MONTGOMERY WAS ASKED : JACOB A. PERRONE (71915) ; has he ever been suspended in 2017or 2018, due to temporary mental incapacitation? (see attached)

His answer on 08/25/2021: Good Morning. We received your message to our 'Contact US' form on our website, P 71915
HAS NO RECORD OF DISCIPLINE, OR BEING TRANSFERRED TO INACTIVE STATE FOR MENTAL INCAPACITATION.

OWEN R. MONTGOMERY, CASE MANAGER
ATTORNEY DISCIPLINE BOARD (see attached)

see 03/31/2023 BRIEF SENT BY SILVERTHORN

DUANE SILVERTHORN'S RESPONSE TO AGC ABOUT PERRONE'S MENTAL IMPAIRMENT EPISODES AND WHY HE WOULDN'T DISCLOSE PERRONE'S SECOND MENTAL IMPAIRMENT EPISODE (12/18/2017) DOCS SENT TO HIM BY PROSECUTOR THEN CHARLES T. KOOP II.
MR. SILVERTHORN PURPOSEFULLY  FAILED TO MAKE PERRONE'S MENTAL IMPAIRMENT EPISODE DOCS PART OF DEFENDANT'S SENTENCING.

TUNC URAZ.114653 MCF Lock:UNIT 4100B01 ID:1800516853 [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:38 PM EST, Letter ID: 1800516853
Location : MCF
Housing : UNIT 4100B01

03/31/23 Brief by SILVERTHORN (see attached)

pg. 1 paragraph 3

(in part)...All persons present at December 12th. meeting were AWARE OF THE PETITION AS THAT WAS THE "RAISON D'ETER" FOR EVEN HAVING THE MEETING.

***"I WAS NOT PART OF THAT MEETING"***

***DEFENDANT DID NOT HAVE A "CONFLICT-FREE" ATTORNEY TO REPRESENT HIS INTEREST IN BOTH HEARINGS PERRONE was placed in the untenable position of defending his own interests which were adverse to his clients.

(*** THIS MEANS PERRONE ONLY DISCLOSED HIS SECOND MENTAL IMPAIRMENT EPISODE o (11/20/2017) NOT THE FIRST ONE TOOK PLACE ON 11/10/2017 RIGHT AFTER TRIAL)***

pg.2 QUESTIONS AND MY RESPONSE

#7.6 Are you part of this purposeful cover-up by Ingham County Court (sic), Judges, Prosecutors about PERRONE'S mental impairments?

(in part)...I DID NOT SUBMIT A COPY OF THE PETITION FOR MENTAL HEALTH TREATMENT (PERRONE's second mental impairment episode) FOR SENTENCING AS JUDGE CANADY WAS ***"ALREADY WELL AWARE OF THE FILING ".***....IT HAD ALREADY BEEN CONSIDERED BY THE JUDGE

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:37 PM EST,   Letter ID: 1800516840
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/22/2023 20:21:36

Please do not reply to this email

2)JUDGES AND ATTORNEYS, PROSECUTORS   WHO HAD KNOWLEDGE OF PERRONE'S MENTAL
IMPAIRMENT EPISODE(S) AND CHOSE NOT TO REPORT IT TO AGC

#7.5 " Why didn't you testify about his (12/18/2017) docs at (sic) GINTHER hearing on 10/04/2021

" I didn't testify about the documents because "I was not asked the question. The appellate attorney is entitled to be
provided the same discontinued as I am. I was not going question the appellate attorneys' strategy.
***(FACT APPELLATE ATTORNEY WAS NOT PROVIDED 12/18/2017 DOCS "PERRONE'S second mental
MENTAL IMPAIRMENT EPISODE" BECAUSE MS. SUSAN K. WALSH NEVER ASKED FOR IT (MAACS appointed
appeal attorney in February of 2018 and she stayed as my attorney for 5 years until February of 2023, she was only
provided PERRONE'S first mental impairment medication chart dated  11/14/2017, given to defendant by PERRONE
on 12/13/2017 in court hearing accidentally)
MR. SILVERTHORN, MS.CRINO, PROSECUTORS ROTH AND KOOP II, (SEE THEIR RESPONSES TO AGC)

Pg.3

#7.4 Did you purposely hold back the (12/18/2017) docs to be part of your sentencing memorandum?

(in part)...THE COURT (JUDGE CANADY, JUDGE R. GARCIA,  JUDGE AQUILIANA) WAS ALREADY AWARE OF
THE PRT PETITION FOR MENTAL HEALTH SERVICES...AGAIN THAT'S WHY I WAS APPOINTED.

#7.3 DID MS. WALSH REQUESTED (SIC) ANY DISCOVERY PACKAGES about MY CASE?

(in part)...Unlike discovery and court documents those things CANNOT BE obtained by an appellate attorneys'
request to the prosecutor. (see attached answer)
WHAT MR. SILVERTHORN IS SAYING DOES NOT MAKE SENSE BECAUSE PER MS. CRINO'S ANSWERS TO
AGC SEE BELOW:

#7.2 WHY DID MR. SILVERTHORN DID NOT SHARE THIS (12/18/2017) docs WITH ME AND MY APPEAL
ATTORNEY SUSAN K. WALSH?

"I DON'T KNOW THAT I DIDN'T SHARE THE DOCS. WITH MR. URAZ. MY PRACTICE IS TO PROVIDE
DOCUMENTS TO CLIENTS. I WILL STATE UNEQUIVOCALLY, HOWEVER, THAT MR. URAZ WAS VERY WELL
AWARE OF THE PETITION FOR MENTAL HEALTH TREATMENT AS THAT WAS NEARLY THE SOLE TOPIC OF
OUR CONVERSATION.....

HERE IS INCONSISTENCIES ABOUT MR. SILVERTHORN'S ANSWER;

> As a defendant I was only aware of Mr. PERRONE'S mental hospital medication chart which PERRONE gave them
to me accidentally on 12/13/2017 after the hearing with bunch of other docs given to him by my family. So I WAS
NOT AWARE OF PETITION FOR TREATMENT (PRT) forms NEITHER MY APPEAL ATTORNEY. IF I  WAS MADE
AWARE OF IT IN 2018 RIGHT AFTER SENTENCING (01/24/2018). MY FAMILY WOULD HAVE OBTAINED ALL
OAKLAND AND CLINTON COUNTY PROBATE COURT DOCUMENTS UNDER FOIA AND TRAJECTORY OF MY
APPEAL PROCESS WOULD HAVE BEEN VERY DIFFERENT.

#7.1 WHY DID MR.SILVERTHORN NEGLECTED TO SHARE THIS VITAL 12/18/2017 documents with courts during
my sentencing?

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:37 PM EST, Letter ID: 1800516840
Location : MCF
Housing : UNIT 4100B01

(in part) THE PETITION FOR MENTAL TREATMENT WAS THE REASON I WAS APPOINTED BY "JUDGE CANADY". HE WAS ALREADY AWARE OF THE DOCUMENT......

[ON 05/10/2023, AGC'S DECISION ABOUT NOT FINDING ANY WRONG DOING BY SILVERTHORN WAS AN EXPECTED DECISION BY DEFENDANT SINCE AGC IS PART OF THIS FRAUD AS WELL.]

SEE attached MS. CRINO'S RESPONSE TO AGC ON 10/20/2017 pg. 2 paragraphs #1, #2, #3 TO REFUTE SILVERTHORN'S EXPLANATIONS TO AGC.

(in part) pg. 2 PARAG. #1

While I was not involved with Mr.Uraz's file in 2017, I have reviewed the Ingham County Prosecutor's Office's electronic files and determined that (PERRONE'S SECOND mental impairment episode on 11/20/2017, PRT FORM, POLICE REPORT , AND ORDER) were emailed and mailed to Mr. SILVERTHORN, for Mr. Uraz's file on 12/18/2017, approximately 3 years and ten months before his first GINTHER hearing. I have attached the relevant email, or letter, and attachments as they were sent 12/18/2017. I have also included Mr. Koop's case note about the disclosure.

02/06/2023 ERIC SCHROEDER'S RESPONSE TO AGC

JUDGE ROSEMARY E. AQUILINA (P 37670) OF INGHAM COUNTY

(in part) pg. 3 PARAGRAPH # 2
"One issue that immediately arose was that Mr. PERRONE was scheduled to go to trial in a murder case in A-Level court appointed case in 30th. Circuit Court. Since I was not an A- Level attorney, Informed the court that Mr.PERRONE was unavailable. I met with "Judge AQUILINA" of the 30th. Circuit Court who was presiding over the murder case.
This meeting occurred on or about November 22, 2017. After advising judge AQUILINA of the situation, the case was reassigned from Mr. PERRONE to an another attorney. She also determined that she would see about reassigning Mr. PERRONE'S other A-Level cases, including Mr.Uraz's case.
There were other cases Mr.PERRONE had that were above my level of competence where Ultimately advised these clients to obtain new counsel.

12/11/2017 Grievance filed by an " unknown prosecutor" with AGC against PERRONE (the only ethical person at Ingham County 30th. Circuit court) per MRPC 8.3, 8.4 and MCR 9.104

SEE PG 7. subsection [d. November 21, 2017] PARAG. 3

On November 21, 2017 I met in chambers with Judge (redacted name is AQUILINA per Eric Schroeder' AGC response on 02/06/23) Mr. Perrone's legal associate, Attorney Eric Schroeder and Attorney Tiffany DeBruin who was acting as Mr. Perrone's representative. Mr. Schroeder and Ms. DeBruin advised Judge AQUILINA that Mr. Perrone had been "hospitalized" and could not continue as ATTORNEY of record in the (redacted) homicide case. Based on this representation , Judge Aquliana adjourned the (redacted) homicide trial from 12/04/2017 to April 23, 2018. Judge AQUILINA also REMOVED Mr. Perrone as attorney of record, contacted Ingham County Pre-Trial Services and requested that another attorney be appointed.

pg 9 under heading : g. Practice of law

(in part) ...it is my PERSONAL AND ETHICAL opinion that Mr. Perrone's mental health crisis requires that ATTORNEY GRIEVANCE COMMISSION CONDUCT A FITNESS INQUIRY TO DETERMINE MR. PERRONE'S FITNESS TO PRACTICE.

AGC DID NOT/FAILED TO CONDUCT AN INVESTIGATION AND OR INQUIRY TO DETERMINE PERRONE'S FITNESS TO PRACTICE EVEN AFTER BOTH GRIEVANCES WERE FILED SUBSEQUENTLY AGAINST HIM.

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a jpay letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 10:45:14 AM EST,    Letter ID: 1883654459
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/22/2023 10:45:13

Please do not reply to this email

1) DECLARATORY - MI SUPRA

STATE OF MICHIGAN
IN THE SUPREME COURT

PEOPLE
APPEALE - PLAINTIFF

SC#s:165560, 165561
V.                    COA#s 343695,343696
LC#s 16-1064 FH;16-1065-FC

TUNC URAZ
DEFENDANT -APPELLANT
-------------------------------------/

"ORAL ARGUMENT IS REQUESTED"  PER MCR 7.214(A)

MR. URAZ IS ASKING   MICHIGAN SUPREME COURT TO MAKE A DECLARATORY RULING AND A
DECLARATORY JUDGEMENT ; FRAUD UPON COURTS PER:

MCR 2.612(C)(3) & MCLS 2.305, MCLS 24.263, ,MCR 2.605

BASED ON TESTIMONIES OF ATTORNEYS AT GINTHER HEARING(S) ON 10/04/2021 AND 04/13/2022

THEIR ANSWERS TO PRIVATE INVESTIGATOR JAMES D. HOPPE AND THEIR RESPONSES TO ATTORNEY
GRIEVANCE COMMISSION.

MR. URAZ IS BRINGING AN INDEPENDENT ACTION  A FRAUD ON COURT PER MCR 2.612 (C)(3) AND MR.
URAZ CLAIMING THAT ALL THE ATTORNEYS WHO TESTIFIED AND PARTICIPATED AS PROSECUTOR AND
JUDGES HAD THE KNOWLEDGE OF PERRONE'S FIRST MENTAL IMPAIRMENT EPISODE ON 11/10/2017 AND
SECOND MENTAL IMPAIRMENT EPISODE ON 11/20/2017, YET THEY ALL FAILED TO REPORT THIS
MISCONDUCT TO ATTORNEY GRIEVANCE COMMISSION EXCEPT ONE BRAVE UNKNOWN PROSECUTOR
(BILL (WILLIAM) CRINO) PER ATTORNEY ERIC SCHROEDER'S RESPONSE TO ATTORNEY GRIEVANCE
COMMISSION ON 02/06/2023.

MCR 2.605 IT PROVIDES IN PERTINENT PART "IN CASE OF ACTUAL CONTROVERSY WITHIN ITS
JURISDICTION A MICHIGAN COURT OF RECORD MAY DECLARE THE RIGHTS AND OTHER LEGAL
RELATIONS OF AN INTERESTED PARTY SEEKING A DECLARATORY JUDGEMENT, WHETHER OR NOT
OTHER RELIEF IS OR COULD BE SOUGHT OR GRANTED" INDEED "[T]HAT A DECLARATORY JUDGEMENT
MUST ADDRESS AN "ACTUAL CONTROVERSY" IS CENTRAL TO THE LEGITIMACY OF DEVICE"

MR. URAZ IS ASKING THIS COURT TO MAKE A DECLARATORY JUDGEMENT PER MCLS 2.305(A)(B)(D)(F) IF
AND WHY ANY OF THE JUDGES, PROSECUTORS AND ATTORNEYS WHO KNEW ABOUT PERRONE'S
MENTAL IMPAIRMENT EPISODE(S) HERE ARE THE PROOFS OF FRAUD, PERJURY AND MISCONDUCT PER
MCR 9.104, MRPC 1.1, 6.5, 8.3, 8.4(a), ALL COURT "OFFICERS" CHOSE NOT TO REPORT IT TO AGC
KNOWINGLY;  THEREFORE THEY ALL BECAME ACCOMPLICES AND BECOME  COCONSPIRATORS (MCLS

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1883654459 [P 2/3]

**You have received a *jpay* letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 10:45:14 AM EST,    Letter ID: 1883654459
Location : MCF
Housing : UNIT 4100B01

750.157a) IN THIS RACKETEERING (RICO) (MCLS 750.159g)
(i)concerning fraud
(w) A felony of section 218, concerning false pretenses
(hh) A violation of section 422,423,424 or 425 concerning perjury or subornation of perjury

A DECLARATORY JUDGEMENT IS "[A] BINDING ADJUDICATION OF THE RIGHTS AND STATUS OF THE
LITIGANTS AND [WHICH] IS CONCLUSIVE IN A SUBSEQUENT ACTION BETWEEN THE PARTIES AS TO THE
MATTERS DECLARED". DECLARATORY JUDGEMENTS ARE PROCEDURAL REMEDIES WHICH ALLOW
PARTIES TO AVOID MULTIPLE LITIGATION BY SEEKING A "DETERMINATION" OF QUESTIONS FORMERLY
NOT AMENABLE TO JUDICIAL DETERMINATION.

IN KIEFER V KIEFER 212 MICH APP 171, 182 536 NW 2d 873 (1995) (holding that " the 1 year term time applies to
MCR 2.612(C)(3) EXCEPT WHEN PLAINTIFF BRINGS AN ***"INDEPENDENT ACTION"***
THAT CLAIMS EITHER THE PLAINTIFF DID NOT HAVE ACTUAL NOTICE OR THERE WAS A FRAUD ON THE
COURT").

IN PEOPLE V SCHULTZ 2010 MICH APP 976 (2010)
MCR 2.612(C)(1)(b); NEWLY DISCOVERED EVIDENCE WHICH BY DUE DILIGENCE COULD NOT HAVE BEEN
DISCOVERED (EXTEND OF PERRONE'S FIRST AND SECOND MENTAL IMPAIRMENT EPISODE)

PROOF OF FRAUD AND PERJURY ON COURT
AND ASKING THIS HONORABLE COURT TO :

START AN INDEPENDENT INVESTIGATION PER MCR 2.612(C)(3) FRAUD ON COURT PER THEIR GINTHER
HEARING TESTIMONY GIVEN BY ATTORNEYS ON 10/04/2021 AND 04/13/2022

SEE ATTACHED BRIEFS BY MR. URAZ

1)

UNKNOWN PROSECUTOR (BILL CRINO) GRIEVANCE FILED TO AGC ON 12/11/2017
DISCLOSED BY MS. KAHLA D. CRINO IN HER RESPONSE TO ATTORNEY GRIEVANCE COMMISSION
(OCTOBER 2022) WHEN SHE WAS GRIEVED BY PLAINTIFF IN JULY OF 2022 FOR WITHHOLDING A "BRADY
MATERIAL" ( EXTEND OF PATTERN OF PERRONE'S FIRST AND SECOND MENTAL IMPAIRMENT EPISODE(S))
BEFORE GINTHER HEARINGS CONDUCTED FOR DEFENDANT AND HIS APPEAL ATTORNEY SUSAN K.
WALSH. (see plaintiffs REBUTTAL to AGC ABOUT CRINO'S AND ROTH'S FAILURE TO DISCLOSE)

2)

JUDGE CANADY'S KNOWLEDGE ABOUT PERRONE'S MENTAL IMPAIRMENT EPISODE(S) see 12/12/2017 and
03/31/2023 SILVERTHORN'S RESPONSE TO AGC why he would not disclose 12/18/2017 PERRONE'S SECOND
MENTAL IMPAIRMENT EPISODE

3)

JUSTICE AQUILINA'S KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENT EPISODE(S) (see Eric Schroeder's
02/06/2023) Response to AGC pg. about Judge AQULINA being informed about PERRONE'S MENTAL
IMPAIRMENT EPISODES from an unknown prosecutor and ordering replacing PERRONE'S APPOINTED CASES
BY COUNTY with other attorneys

4)

CHIEF JUSTICE RICHARD GARCIA (THEN)KNOWLEDGE OF ABOUT PERRONE'S MENTAL IMPAIRMENT
EPISODE(S) (see 12/12/2017) judges chambers. pg. 4 comment by Prosecutor Roth.

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 10:45:14 AM EST, Letter ID: 1883654459
Location : MCF
Housing : UNIT 4100B01

5)

PERRONE'S 12/12/2017 JUDGES CHAMBERS HEARING DEFENDANT DID NOT HAVE A CONFLICT-FREE ATTORNEY TO REPRESENT HIS INTEREST. (SEE SILVERTHORN RESPONSE TO AGC ON 03/31/2023). PERRONE was placed in the untenable position of defending his own interests which were adverse to his clients. THIS WAS A VIOLATION OF DEFENDANTS' SIXTH AMENDMENT RIGHTS

6)

12/18/2017 SILVERTHORN'S KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENT EPISODE BUT FAILED TO SHARE IT WITH DEFENDANT AND HIS APPEAL ATTORNEY AND HE FAILED TO REPORT IT TO AGC.

7)

TESTIMONY BY PROSECUTOR ROTH BY THEN 04/13/2022
ABOUT HIS KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENT EPISODE BUT FAILED TO REPORT IT TO AGC AND P/I HIRED BY APPEAL ATTORNEY WALSH.

8)

ROTH'S DISCLOSURE TO AGC ABOUT THE e-mail MESSAGE HE RECEIVED FROM PROSECUTOR ELIZABETH ALLEN DATED DEC. 2nd 2017 about PERRONE'S HARASSMENT AND THREATS TO PROSECUTOR WILLIAM (BILL) CRINO

9)

PERRONE'S PERJURED TESTIMONY ON 10/04/2021 THAT HE WENT TO DALLAS RIGHT AFTER TRIAL. YET WAS SENT TO MENTAL HOSPITAL BY HIS FAMILY (see Eric Schroeder's AGC response pg 2)

_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 10:45:13 AM EST,    Letter ID: 1883654449
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/22/2023 10:45:12

Please do not reply to this email

2)DECLARATORY RULING & DECLARATORY JUDGEMENT- MI SUPRA

10)

ERIC SCHROEDER PERJURY ON 10/04/ 2021 GINTHER HEARING TESTIMONY ABOUT PERRONE'S MENTAL ISSUES  VERSUS HIS RESPONSE TO AGC AND TO PRIVATE INVESTIGATOR

11)

DUANE SILVERTHORN'S RESPONSE TO AGC ABOUT WHY HE WOULD NOT DISCLOSE PERRONE'S SECOND MENTAL EPISODE. AND THE REBUTTAL BY DEFENDANT.

12) FRAUD BY JUROR #2 RYAN GIBBS PETTY (JURY FOREPERSON) HIS ORIGINAL NAME WAS RYAN GIBBS CARTER. HOWEVER HE PERJURED ON HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE AND SIGNING THE JURY VERDICT FORM AS RYAN GIBBS PETTY.
SEE PRIVATE INVESTIGATOR CHARLES W. MARTELL'S FINDINGS.

GRIEVED ATTORNEYS RESPONSES TO AGC :

1) DISCLOSED BY MS. CRINO AFTER SHE WAS GRIEVED
SEE HER RESPONSE TO AGC:
"AN Unknown PROSECUTOR from Ingham County had the courage to file a grievance against Perrone on 12/11/2017 which was not disclosed by CRINO nor AGC before GINTHER hearings (see attached) and her excuse was " I DIDN'T KNOW IT EXISTED" for  PERRONE'S second mental episode docs 12/18/2017 and 12/11/2017 an unknown prosecutor grievance against PERRONE (AGC did not do any investigations at all)OR THEY WOULD NOT SHARE RESULTS WITH DEFENDANT.

UNKNOWN PROSECUTOR WAS WORRIED/SCARED FOR HIS LIFE BEING IN DANGER AND HIS SAFETY BECAUSE OF PERRONE'S  CONSTANT BADGERING AND  HARASSMENT AGAINST HIM. HE FELT THREATENED BY PERRONE THAT HE WANTED TO STAY ANONYMOUS.

2) An email sent by prosecutor Ms. Elizabeth Allen to prosecutor Roth on 12/03/2017 (see attached) about PERRONE'S bizarre/violent/harassing behavior towards Roth and Prosecutor William (Bill) CRINO (see attached)
ALL DISCLOSED BY ROTH AFTER HE WAS GRIEVED TO AGC.

3) Roth implied in his AGC response that the prosecutor office only received PERRONE'S second mental episode from Clinton County on 12/06/2017(Clinton county denied the FOIA request from defendant's family stating the reason that same docs. Koop sent to SILVERTHORN on 12/18/2017 DID NOT EXIST)!

ALL OAKLAND COUNTY PROBATE COURT DOCUMENTS WERE FAXED TO CLINTON COUNTY ON 11/30/2017 AND THEN TO INGHAM COUNTY TO BY 12/06/2017 BUT YET ONLY PERRONE'S SECOND MENTAL EPISODE WAS DISCLOSED TO SILVERTHORN BY PROSECUTION.

"PERRONE'S FIRST MENTAL EPISODE (11/10/2017, A DAY AFTER TRIAL) WAS NOT DISCLOSED".

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1883654449 [P 2/3]

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 10:45:13 AM EST, Letter ID: 1883654449
Location : MCF
Housing : UNIT 4100B01

4) KOOP'S RESPONSE TO AGC WAS NEVER RECEIVED BY DEFENDANT BUT HIS EXCUSE WAS 12/18/2017 DOCS (PERRONE'S SECOND MENTAL EPISODE AND POLICE REPORT, PRT FORM BY HIS FATHER ) WERE ALL GIVEN TO D. SILVERTHORN (defendant's sentencing attorney) ON 12/18/2017

5) E. Schroeder's response to AGC exposed Perrone's PERJURY DURING GINTHER hearing: that in fact he was sent to psycward at Sparrow Hospital in Lansing and then transferred to UofM hospital on 11/10/2017 right after defendant's trial was over. INSTEAD PERRONE TESTIFIED THAT "A WEEK AFTER TRIAL HE WENT TO DALLAS... AND CAME BACK FOR A FAMILY EMERGENCY"
AND THE FACT THAT JUDGE AQUILINA WAS AWARE OF PERRONE'S MENTAL EPISODES AND FAILED TO REPORT IT TO AGC.

ALL DISCLOSED BY SCHROEDER AFTER HE WAS GRIEVED TO AGC.

6) SILVERTHORN'S RESPONSE TO AGC ON 03/31/23 WAS THAT JUDGE CANADY WAS AWARE OF PERRONE'S
MENTAL BREAKDOWNS AND THIS IS WHY HE DIDN'T/WOULDN'T SHARE 12/18/2017 DOCUMENTS WITH DEFENDANT AND HIS APPEAL ATTORNEY WALSH AND WALSH NEVER QUESTIONED HIM ABOUT IT DURING GINTHER HEARINGS. "ONE CANNOT QUESTION ABOUT SPECIFIC TOPIC IF IT IS NOT DISCLOSED TO HER/HIM.
HE DOESN'T KNOW WHY HE DIDN'T DISCLOSED 12/18/2017 DOCS TO WALSH. (see attached response)
DISCLOSED BY SILVERTHORN AFTER HE WAS GRIEVED TO AGC.

IN FACT SILVERTHORN WAS APPOINTED ON 12/14/2017 (see his grievance response to AGC)

7) SUSAN K. WALSH IS BEING GRIEVED TO AGC CURRENTLY FOR HER BEING INEFFECTIVE ASSISTANCE OF APPEAL COUNSEL AND NOT BEING READY FOR GINTHER HEARINGS (hired a private investigator to ask other attorneys if they noticed anything odd/about PERRONE'S BEHAVIOR "ONLY DURING" TRIAL) (ATTORNEYS ARE NOT TRAINED TO BE MENTAL HEALTH EXPERTS)
MS. WALSH FAILED TO BRING IN A MENTAL HEALTH EXPERT TO TESTIFY ABOUT SCHIZOPHRENIA INDUCED BIPOLAR DISORDER WITH HALLUCINATIONS AND SUBSTANCE ABUSE methamphetamine (ADDEROLL), MARIJUANA.

BUT A MAJOR FLAW OF MCR 9.121 SECTION (C)(1) THE MENTALLY ILL PERSON (respondent) IS REQUIRED TO EXPLAIN WHAT IS WRONG WITH HIM/HER. ONE WHO IS MENTALLY IMPAIRED/ILL CANNOT DIAGNOSE OR RECOGNIZE THEIR OWN MENTAL ISSUES. ANASOGNOSIA : is a MENTAL illness where the patient is in denial of mentally ill. THIS IS AN UNCONSTITUTIONAL RULE AGAINST DEFENDANTS RIGHTS.

SEE PERRONE'S GLOWING POSITIVE REVIEWS AT AVVO.COM (ATTORNEY REVIEW WEBSITE) AFTER HE WAS " PROPERLY MEDICATED" FOR HIS BIPOLAR DISORDER.
BETWEEN 2018-2019.

see attached

Judge Canady: Judge's chamber's hearing about PERRONE'S MENTAL IMPAIRMENT EPISODE EVALUATION WHERE where PERRONE was placed in the untenable position of defending his own interests which were adverse to his clients. DEFENDANT DID NOT HAVE A "CONFLICT-FREE" ATTORNEY TO REPRESENT HIS INTEREST IN THAT MEETING/HEARING. (see 03/31/23)

PG 7 LINES 4-9
PERRONE: I did have a family situation that was addressed. I am BIPOLAR, at this point in time " I AM APPROPRIATELY MEDICATED. (***THIS MEANS PERRONE WAS NOT AWARE OF HIS MENTAL IMPAIRMENT GOING BACK TO 2015 AND HE WAS MEDICATED FOR HIS IMPAIRMENT BEFORE AND DURING TRIAL FOR HIS BIPOLAR CONDITION)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1883654449 [P 3/3]

You have received a *jpay* letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 10:45:13 AM EST,    Letter ID: 1883654449
Location : MCF
Housing : UNIT 4100B01

"Some of the most successful and highly  intelligent people have symptoms of BIPOLAR".

HE ONLY CHOSE TO DISCLOSE PERRONE'S CRAZY VULGAR EMAIL MESSAGE SENT TO DEFENDANT'S FAMILY (see attached)

SILVERTHORN DID NOT DISCLOSE PERRONE'S CRAZY/    BIZARRE, VULGAR TEXT MESSAGES TO DEFENDANT'S SISTER (see attached)

SEE INGHAM COUNTY OFFICE OF THE PUBLIC DEFENDER RUSSELL CHURCH'S  ANSWER TO DEFENDANT ABOUT  JUDGE GARCIA AND GEORGE STRANDER (Ct. Admin.then) was appointing attorneys

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a *jpay* letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 9:10:49 PM EST,    Letter ID: 1800549660
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/22/2023 21:10:47

Please do not reply to this email

POTENTIAL WITNESSES LIST FOR DECLARATORY JUDGMENT

PER MCL 767.40a(5) PLAINTIFF MR. URAZ IS ASKING PROSECUTOR'S OFFICE OF INGHAM COUNTY TO GIVE HIM REASONABLE ASSISTANCE IN LOCATING/CONTACTING WITNESSES... TO TESTIFY....

SINCE PLAINTIFF IS INCARCERATED AND HIS ACCESS TO COURTS AND WITNESSES ARE LIMITED.

THESE ARE THE ATTORNEYS, PROSECUTORS, JUDGES WHO HAD KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENTS AND EPISODES:

JACOB A. PERRONE ,DEFENDANT (P71915)

JOSEPH V. PERRONE , DEF. FATHER

ASHLEY PERRONE , DEF. WIFE

TIMOTHY PERRONE, DEF UNCLE(P37940)

WILLIAM PERRONE, DEF. UNCLE(P27591)

DR.LEONARD SWISTAK HEAVNWYCK MENTAL HOSPITAL, PSYCHOLOGIST, AUBURN HILLS, MI

DR. RACHEL L. GLICK UOFM HEALTH SYSTEM PSYCHOLOGIST, AUBURN HILLS, MI

DR. USHA MOVVA WHITEPINE MENTAL HOSPITAL, PSYCHOLOGIST, SAGINAW, MI

CARMEN MITCHELL ADMINISTRATOR HEAVNWYCK MENTAL HOSPITAL

CAROL POLLY SOCIAL WORKER HEAVNWYCK MENTAL HOSPITAL

LISA ZATYKO ATTORNEY APPOINTED BY OAKLAND COUNTY PROBATE COURT (P74810)

KAHLA D. CRINO CHIEF APPELLATE PROSECUTOR(P71012)

JONATHAN C. ROTH(P72030)

CHARLES T. KOOPII(P75188)

ERIC SCHROEDER (P79518)

NICHOLAS FERNANDEZ THEN PARALEGAL FOR JACOB A. PERRONE

DUANE D. SILVERTHORN (P36964)

LANSING POLICE OFFICER ROBERT MCBRIDE AND HIS BODY CAM AND REPORT 11/20/2017

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1800549660 [P 2/3]

You have received a **JPay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 9:10:49 PM EST,  Letter ID: 1800549660
Location : MCF
Housing : UNIT 4100B01


ELIZABETH ALLEN PROSECUTOR (P75179)

WILLIAM (BILL) CRINO(P47892)

JUDGE CLINTON CANADY (P23262)

JUDGE ROSEMARY E. AQUILINA(P37670)

JUDGE RICHARD J. GARCIA (P38996)

ROBERT NOVY , (P52866) SENIOR ASSOCIATE  INVESTIGATOR APPOINTED BY AGC TO INVESTIGATE WRONG DOING BY K.CRINO AND J.C. ROTH (OAKLAND COUNTY PROSECUTOR)

GEORGE STRANDER INGHAM COUNTY 30TH. CIRCUIT COURT ADMINISTRATOR THEN

LEIGH ANN WHIPPLE 30TH. CIRCUIT COURT ADMINISTRATOR THEN

MS. CYNTHIA C. BULLINGTON ASSISTANT DEPUTY ADMINISTRATOR, AGC

KIMBERLEY UHURU , DEPUTY ADMINISTRATOR, AGC

COURTNEY BEARD, DEPUTY CLERK CLINTON COUNTY

DEB SUTHERLAND, CLINTON COUNTY CLERK AND REGISTER OF DEEDS

DONALD D. CAMPBELL (P 43088) AGC ATTORNEY APPOINTED TO PERRONE.

CAROL SIEMON (P32946) INGHAM COUNTY PROSECUTOR THEN.

ANDREW VUCKOVICH (P78819)

RUSSELL CHURCH INGHAM COUNTY PUBLIC DEFENDER'S OFFICE


REQUEST/MOTION TO WAVE COURT FILING FEES
PER MCR

PLEASE SEE ATTACHED PLAINTIFF'S 12 MONTH PRISONER ACCOUNT STATEMENT.

HERE IS MY SITUATION IN PRISON ABOUT "ACCESS TO COURTS" STANDARD FOR PRISONERS AT MDOC;

1) I AM ONLY ALLOWED TO HAVE $11.00 PER MONTH IN MY ACCOUNT FROM MY PRISON JOB TO MYSELF FOR ALL MY NEEDS BECAUSE:

>MY FAMILY CANNOT AFFORD TO SUPPORT ME BECAUSE THEY LIVE IN TURKEY AND THE CURRENCY EXCHANGE US DOLLARS VS TURKISH LIRA IS VERY EXPENSIVE

>ALTHOUGH BOTH CHARGES JOINED BY JUDGE CANADY PER MCR 6.121 UNFAIRLY PREJUDICED EACH OTHER

>DURING SENTENCING JUDGE CANADY DECIDED TO SEPARATE THE CHARGES AND APPLY COURT COSTS, FINES, FEES, DNA FEES, AND RESTITUTION  SEPARATELY (BASED ON UNPROVEN/UNCHARGED MISCONDUCTS FOR A CAR THAT DID NOT EXIST) (THERE WERE NO REPAIR ESTIMATES/ INVOICES WERE SHOWN AS A PROOF)

**JPay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1800549660 [P 3/3]

**You have received a *jpay* letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 9:10:49 PM EST,   Letter ID: 1800549660
Location : MCF
Housing : UNIT 4100B01

THIS WAS BASED ON PROSECUTOR ROTH'S FALSIFIED/ MISAPPLICATION OF COMPLAINANT'S LOSSES WITHOUT ANY PROOF TO SHOW/ PERJURY AND DEFENDANT'S INEFFECTIVE ASSISTANCE OF SENTENCING ATTORNEY SILVERTHORN FOR NOT DOING HIS RESEARCH.

>BECAUSE OF THIS SEPARATION ANYTHING OVER $50.00 DOLLARS IN MY PRISON ACCOUNT IS TAKEN DIRECTLY TO BOTH CASES RESTITUTION AND COURT COSTS.

> IN 2019 ATTORNEY GENERAL SCFRA DIVISION UNDER (STATE CORRECTIONAL FACILITIES REIMBURSEMENT ACT)
MCLS 800.401,403,404, FORFEITED MY 401K AND 403B PENSION AMOUNT OF $25000.00 WHICH WAS MY SON'S COLLEGE TUITION MONEY WAS TAKEN WITHOUT PROPER DUE PROCESS ALTHOUGH DEFENDANT EXPLAINED TO THE COURTS THAT HE IS STILL MARRIED AND HAS A CHILD UNDER 18.

>BECAUSE THEY DO NOT LIVE IN USA (THEY ARE BOTH U.S. CITIZENS) BUT IN TURKEY, COURTS ALLOWED TO GARNISH %90 PERCENT AMOUNT YEARLY NEXT 10 YEARS PER TIAA (PENSION MANAGEMENT COMPANY) RULES.
DEFENDANT APPEALED HOWEVER THIS "LEGALIZED THEFT" IS ALLOWED BY COURTS.

>SEE CASE NUMBERS:
LC# 19-247-CZ, MICOA# 349487 MISUPRA# 161163
MI FED. WEST. DIST. # 1:20-CV-1219 , SIXTH CIRCUIT APPEALS COURT 21-1542

1)BECAUSE DEFENDANT APPEALED THIS LEGALIZED FORFEITURE ALL THE WAY TO SIXTH CIRCUIT COURT DEFENDANT HAD TO PAY COURT FILING FEES FROM HIS PRISON ACCOUNT IN INSTALLMENTS (ANY AMOUNT BETWEEN $11.00 -$50.00 goes to court filing fees including 10% left from SCFRA amount.)

2) BECAUSE DEFENDANTS PENSION MONEY IS TAKEN ALL COVID STIMULUS PAYMENTS ARE SPENT ON DEFENDANT'S FAMILY EXPENSES IN TURKEY SINCE HIS SON IS UNDER 18 AND HIS WIFE IS MENTALLY NOT STABLE.

3) THIS PRISON (MUSKEGON CORR. FAC.) (MDOC) REFUSES TO MAKE LEGAL COPIES ON LOAN IF ONE DOES NOT HAVE SUFFICIENT FUNDS IN THEIR ACCOUNT. (which limits one's ability to file proper paperwork, obtain proper copies, access to courts greatly)

4) ONLY LEGAL MAIL IS ALLOWED WHETHER ONE HAS FUNDS OR NOT. (ONLY USPS WITH NO TRACKING #) 04/28/23 SUPPLEMENTAL FILINGS BY DEFENDANT LOST IN THE MAIL TO MICHIGAN SUPREME COURT AND 30th CIRCUIT CT. (STILL BEING SEARCHED BY USPS)

THEREFORE DEFENDANT HAS TO MAKE CHOICES EVERY DAY/ MONTH WHETHER TO PURCHASE HYGIENE ITEMS, FOOD, STAMPED ENVELOPES, A PEN, A PAPER, A PENCIL, TO CONTACT HIS FAMILY, MAKE PHONE CALLS,PRINT JPAY BRIEFS FOR COURTS... ETC...OR MAKE LEGAL COPIES.... WITH $11.00 MONTH ONLY...

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/18/2023 11:29:21 PM EST,    Letter ID: 1818830943
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/18/2023 23:29:20

Please do not reply to this email

1)EXHIBITS FOR DECLARATORY RULING AND A DECLARATORY JUDGEMENT PER:
MCR 2.612(C)(3) & MCLS 2.305, MCLS 24.263, ,MCR 2.605


EXHIBIT A

GRIEVANCE FILED AGAINST PERRONE IN APRIL OF 2018 BY DEFENDANT MR. TUNC URAZ TO ATTORNEY GRIEVANCE COMMISSION (AGC)

CONFIRMATION LETTER SENT BY ATTORNEY GRIEVANCE COMMISSION IN APRIL 2018

JACOB A. PERRONE'S RESPONSE TO AGC JULY 2018

DEFENDANT URAZ'S RESPONSE/REBUTTAL TO AGC AGAINST PERRONE'S RESPONSE

DEFENDANT URAZ'S PROOF OF MAILING TO AGC ASKING ABOUT THE RESULT OF THEIR "INVESTIGATION" JAN. 2022

AGC'S RESPONSE LETTER TO DEFENDANT URAZ IN MAY OF 2022 (4 YEARS LATER THEY DID NOT FIND ANY WRONG DOING)

SEE PERRONE'S VULGAR AND IRRATIONAL EMAIL MESSAGE DATED 11/08/2017 TO DEFENDANT'S SISTER AND BROTHER (ONE DAY BEFORE TRIAL WAS OVER)

SEE PERRONE'S VULGAR AND IRRATIONAL TEXT MESSAGES EXCHANGED BETWEEN DEFENDANT'S SISTER AFTER TRIAL AND DURING HIS MENTAL HOSPITAL STAYS.

SEE YELP.COM REVIEWS BY A TRIAL SPECTATOR ABOUT PERRONE'S IRRATIONAL BEHAVIORS DURING TRIAL

SEE INGHAM PUBLIC DEFENDER THEN ADMINISTRATOR MR. RUSSELL. CHURCH'S  EMAIL MESSAGE/ANSWER TO MR. URAZ ABOUT CHIEF THEN JUDGE R. GARCIA BEING IN CHARGE WITH INDIGENT DEFENSE ATTORNEY APPOINTMENTS ALONG WITH COURT ADMIN. THEN GEORGE STRANDER AND LEIGH ANN WHIPPLE

INGHAM COUNTY JAIL SHERIFF'S LOG 12/14/2016 PERRONE WAS LATE FOR PRELIMINARY HEARING AND FORGOT HIS STATE BAR ID THAT MORNING. THIS IS WHY HE CANCELLED HEARING AND BOUND IT OVER WITHOUT ANY INVESTIGATION. ALTHOUGH HE WAS AT JAIL 12/13/2016 AFTER ATTORNEY VISIT HOURS AFTER 9:00PM AND DID NOT MENTION ABOUT CANCELLING THE HEARING.

SEE MEDICATION(S) GIVEN TO PERRONE DURING HIS FIRST EPISODE HOSPITAL STAY 11/14/2017 SCHIZOPHRENIA/BIPOLAR

PERRONE'S CHEST TATTOO SHOWN TO DEFENDANT BY HIM (TIGER/PANTHER) IN OCTOBER 2016 JAIL VISIT BEFORE TRIAL.

ON 12/12/2017 AND 12/13/2017 HEARINGS
DEFENDANT DID NOT HAVE "CONFLICT-FREE" ATTY. TO  REPRESENT HIS INTEREST WHEN PERRONE WAS DEFENDING HIS UNTENABLE INTEREST ADVERSE TO DEFENDANT'S.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1818830943 [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  7/18/2023 11:29:21 PM EST,    Letter ID: 1818830943
Location : MCF
Housing :  UNIT 4100B01

PERRONE PERJURED SAYING THAT MR. URAZ AGREED TO CONTINUE TO REPRESENT HIM FOR HIS SENTENCING

SEE MRPC 1.7(b)(1)
 precedent
DOWNS V COMMONWEALTH
2020 KY LEXIS 222,
SUPREME COURT OF KENTUCKY, 07/09/2020

EXHIBIT B

AFTER RECEIVING PROSECUTOR'S FILE UNDER FOIA BY DEFENDANT'S FAMILY; DEFENDANT DISCOVERED IN JULY 2022 ; DOCUMENTS HIDDEN IN PROSECUTOR'S FILES DATED "12/18/2017 pdf" files PERRONE'S "SECOND" MENTAL IMPAIRMENT EPISODE DATED 11/20/2017 WITH LANSING POLICE REPORT AND PRT FORM SIGNED BY OFFICER R. MCBRIDE AND OAKLAND COUNTY PROBATE COURT JUDGE HALLMARK'S ORDER FOR MENTAL HEALTH TREATMENT FOR PERRONE.

***THIS INFORMATION/DOCUMENTS WERE NOT SHARED WITH DEFENDANT AND HIS APPEAL ATTORNEY BY INGHAM COUNTY PROSECUTOR'S THEN CHARLES T. KOOPII, JONATHAN C. ROTH; CHIEF APPELLATE PROSECUTOR MS. KAHLA D. CRINO AND DEFENDANT'S SENTENCING ATTORNEY SILVERTHORN.

EXHIBIT C

JULY 2022

DEFENDANT'S LETTER TO JUDGE CANADY AND ATTORNEY GRIEVANCE COMMISSION ABOUT PERRONE'S SECOND MENTAL IMPAIRMENT EPISODE

JULY 2022 DEFENDANT FILED GRIEVANCES AGAINST PROSECUTORS THEN C.KOOP II AND J. C. ROTH AND CHIEF APPELLATE PROSECUTOR MS. CRINO FOR NOT DISCLOSING PERRONE'S MENTAL IMPAIRMENT EPISODE(S) BEFORE DEFENDANT'S GINTHER HEARINGS.

EXHIBIT D

AUGUST 2022 DEFENDANT'S FAMILY OBTAINED UNDER FOIA:

PERRONE'S PROBATE COURT DOCUMENTS FROM OAKLAND AND CLINTON COUNTY ABOUT PERRONE'S MENTAL IMPAIRMENT(S) EPISODE(S) DISCOVERED PER PROSECUTOR JONATHAN C. ROTH'S GINTHER HEARING TESTIMONY ON 04/22/2022.

SEE LISA ZYTKO'S (ATTY. APPOINTED TO PERRONE BY OAKLAND COUNTY PROBATE COURT) RESPONSE TO DEFENDANT'S MESSAGE ABOUT PERRONE REFUSING TO GO TO COURT AND FACE THE JUDGE.

PERJURY BY CLINTON COUNTY CLERK DEB SUTHERLAND DENYING FOIA REQUEST BY DEFENDANT'S FAMILY FOR PERRONE'S "NON -EXISTING" PROBATE RECORDS ALTHOUGH PROBATE COURT RECORDS OBTAINED FROM OAKLAND COUNTY ARE CLEARLY HAVE CLINTON COUNTY COURT STAMP AND CASE NUMBER.

 CLINTON COUNTY # 17-29766-MI
OAKLAND COUNTY # 2017 -380,077-MI

SEE ATTACHED E-MAIL MESSAGES EXCHANGED BETWEEN MS. URAZ AND CLINTON COUNTY DEPUTY CLERK THEN MS. COURTNEY BEARD IN AUGUST 2022

(SHE COULD NOT FIND ANY FILES UNDER THE CASE NUMBERS AND NAME JACOB A. PERRONE).

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **JPAY** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/18/2023 11:29:21 PM EST,  Letter ID: 1818830943
Location : MCF
Housing : UNIT 4100B01

CLINTON COUNTY MAY HAVE FAXED THE LANSING POLICE REPORT AND PRT FORM AND JUDGE HALLMARK'S DECISION TO INGHAM COUNTY ON 12/06/2017 OR AFTER.

DEFENDANT URAZ'S REQUEST FROM AGC TO REVIEW PERRONE'S MENTAL ISSUES GOING BACK TO 2015 DOCUMENTED BY HIS FATHER JOSEPH V. PERRONE ON 11/14/2017 PRT FORM TO COURTS (PERSON REQUIRING TREATMENT) OTHER PRT FORMS FILLED BY PERRONE'S FATHER , WIFE (ASHLEY PERRONE), UNCLE (WILLIAM PERRONE) POLICE OFFICER (R. MCBRIDE) 11/20/2017

AUGUST 29TH. 2022 AGC WOULD NOT START ANOTHER INVESTIGATION AGAINST PERRONE CLAIMING THAT ON HIS MENTAL IMPAIRMENT EPISODE(S) HAPPENED "SEVERAL DAYS" AFTER DEFENDANT'S TRIAL WAS OVER.
AGC FAILED TO SEE PERRONE'S MENTAL ISSUES GOING BACK TO 2015.

DEFENDANT SENT AGC ALL OAKLAND AND CLINTON COUNTY PROBATE COURT RECORDS RELATED TO PERRONE'S MENTAL IMPAIRMENTS AND HOW HE REFUSED TREATMENT AND JUDGE ORDERED HIM TO GO 10 DAYS IN HOSPITAL AND 80 DAYS OUT PATIENT TREATMENT WITH COMMUNITY MENTAL HEALTH TREATMENT.


EXHIBIT E

DEFENDANT RECEIVED RESPONSES BACK FROM AGC MS. CRINO AND ROTH'S ANSWERS TO GRIEVANCES FILED AGAINST THEM. OCT. 2022

IN THE RESPONSES MS. CRINO CLAIMED THAT SHE DIDN'T KNOW THAT 12/18/2017 PDF DOCUMENTS EXISTED BECAUSE SHE DOES NOT PAY ATTENTION TO "TRIAL LEVEL CORRESPONDENCE" AND SHE DISCLOSED ANOTHER GRIEVANCE FILED BY AN "UNKNOWN PROSECUTOR" TO AGC AGAINST PERRONE ON 12/11/2017 BASED ON PERRONE'S ON GOING HARASSMENTS AGAINST HIM "BILL" (WILLIAM CRINO).

MR. ROTH DISCLOSED EMAIL MESSAGES BETWEEN HIM AND PROS. MS. ELIZABETH ALLEN; TALKING ABOUT PERRONE'S ON GOING HARASSMENTS TOWARDS "BILL" (PROS. W. CRINO)

AGC DID NOT FIND ANY WRONG DOING WITH KOOPII ACTIONS BY NOT DISCLOSING PERRONE'S SECOND MENTAL EPISODE 12/18/2017 DOCS TO DEFENDANT AND HIS APPEAL ATTY.

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 7/18/2023 11:29:20 PM EST,     Letter ID: 1818830937
Location : MCF
Housing :  UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/18/2023 23:29:19

Please do not reply to this email

2)EXHIBITS FOR DECLARATORY


EXHIBIT E (continued)

THE MAIN REASON DEFENDANT FILED GRIEVANCES AGAINST ATTORNEYS/PROSECUTORS BECAUSE
THEY ALL FAILED TO DISCLOSED PERTINENT INFORMATION ABOUT PERRONE'S "PATTERN" OF
IRRATIONAL BEHAVIORS (MENTAL IMPAIRMENT(S) EPISODE(S) BEFORE AND/OR DURING, AFTER
GINTHER HEARINGS TESTIMONIES GIVEN BY THEM. (10/04/2021 AND 04/13/2022)

SEE DEFENDANT'S REBUTTAL BRIEF  TO RESPONSES OF MS. CRINO, ROTH AND KOOPII.

SEE RESPONSES GIVEN TO PRIVATE INVESTIGATOR JAMES D. HOPPE BY ROTH, KOOPII


AGC APPOINTED A SPECIAL COUNSEL TO INVESTIGATE CRINO'S AND ROTH'S ACTIONS  WHOM HAD HIS
OWN ETHICAL PROBLEMS/ISSUES  OAKLAND COUNTY PROSECUTOR: MR. ROBERT NOVY

(see case PEOPLE V. KELLAM 2013 MICH APP LEXIS 22100 (2013))

SO HOW CAN ONE TRUST THE INTEGRITY OF AN APPOINTED INVESTIGATOR BY AGC WHO HAS HIS OWN
ETHICAL ISSUES.


EXHIBIT F


DEFENDANT FILED GRIEVANCES AGAINST ATTORNEYS ERIC SCHROEDER AND DUANE SILVERTHORN
(12/18/2017 PDF DOCS) (JANUARY 2023)  FOR NOT DISCLOSING PERRONE'S MENTAL IMPAIRMENT
EPISODES BEFORE, DURING AND/OR AFTER GINTHER HEARINGS TESTIMONIES. (TO HIS APPEAL
ATTORNEY SUSAN K. WALSH AND TO DEFENDANT)

ERIC SCHROEDER'S RESPONSE TO AGC IMPLICATED JUDGE AQUILINA FOR NOT REPORTING PERRONE'S
MENTAL IMPAIRMENT EPISODES TO AGC MCR 9.104 (1-6)
CANONS 1 AND ALSO PROVES THAT PERRONE HAD A MURDER TRIAL COMING UP ALTHOUGH PERRONE
DENIED THIS IN HIS RESPONSE TO AGC. (FEBRUARY 2023)

DUANE SILVERTHORN A VERY "ETHICAL" ATTORNEY AS HE CLAIMED THAT SINCE JUDGE CANADY KNEW
ABOUT PERRONE'S MENTAL IMPAIRMENT EPISODES HE DIDN'T SEE THE NEED TO DISCLOSE DURING HIS
GINTHER HEARING AND "HE DOESN'T "KNOW" WHY HE DIDN'T DISCLOSE THE 12/18/2018 PDF DOCS TO
APPEAL ATTORNEY AND THE DEFENDANT URAZ.(MARCH 2023)

ERIC SCHROEDER FAILED TO TESTIFY DURING HIS GINTHER HEARING TESTIMONY THAT PERRONE WAS
SENT TO MENTAL HOSPITAL ONE DAY AFTER DEFENDANT'S TRIAL WAS OVER ON 11/10/2017.
YET MR. SCHROEDER WAS QUESTIONED BY MS. CRINO A WELL ORGANIZED CROSS EXAMINATION
MAKING SCHROEDER AN EXPERT TO NOTICE PERRONE'S MENTAL IMPAIRMENT EPISODES.

SEE DEFENDANT'S REBUTTAL TO RESPONSES OF SCHROEDER AND SILVERTHORN.

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/18/2023 11:29:20 PM EST,    Letter ID: 1818830937
Location : MCF
Housing : UNIT 4100B01

SEE RESPONSES GIVEN TO P/I JAMES D. HOPPE BY SCHROEDER, SILVERTHORN AND PERRONE'S LIFE LONG FRIEND NICHOLAS FERNANDEZ.

ALL PROSECUTORS AND ATTORNEYS RESPONSES TO AGC CONTRADICTS THE TESTIMONIES THEY HAVE GIVEN DURING GINTHER HEARINGS AND CONTRADICTS THEIR ANSWERS TO PRIVATE INVESTIGATOR JAMES D. HOPPE.


EXHIBIT G


SEE DEFENDANT'S GRIEVANCE FILED AGAINST MS. SUSAN K. WALSH (DEFENDANT'S MAACS APPOINTED APPEAL ATTORNEY FOR 5 YEARS WHERE SHE FAILED TO BRING IN A EXPERT WITNESS A PSYCHIATRIC DOCTOR TO TESTIFY ABOUT SCHIZOPHRENIA EFFECTED BIPOLAR DISORDER AND SUBSTANCE ABUSE BY PERRONE TO CONTROL HIS MOODS (MARIJUANA, THC METHAMPHETAMINE ADDEROLL)

INSTEAD SHE HIRED A PRIVATE INVESTIGATOR TO "ASK" OTHER ATTORNEYS IF THEY NOTICED ANYTHING WRONG WITH PERRONE DURING TRIAL. NONE OF THESE ATTORNEYS ARE EXPERTS/ DOCTORS TO RECOGNIZE MENTAL ILLNESSES AND THEIR TRAITS/EFFECTS AS AN INDIVIDUAL.

MCR 9.121(C) AGC ASKS VERY SAME PERSON
TO IDENTIFY WHAT IS WRONG WITH THEM MENTALLY AND ANSWER THE GRIEVANCE(S) ACCORDINGLY.

ANASOGNOSIA IS ;ONE NOT RECOGNIZING THEIR OWN MENTAL IMPAIRMENTS/ ILLNESSES, WHICH PERRONE DENIED THE SEVERITY OF HIS MENTAL GRADATIONS.

THIS IS AGAINST DEFENDANT'S RIGHTS AND UNCONSTITUTIONAL.

SEE GINTHER HEARING TESTIMONIES OF ALL THE ATTORNEYS TESTIFIED UNDER OATH WHOM HAVE CHOSEN TO "OMIT" ABOUT EXTEND OF PERRONE'S MENTAL ILLNESS DURING BOTH GINTHER HEARINGS.

THE REGISTER OF ACTIONS UNDER DEFENDANT'S
 CASE #'S AT INGHAM COUNTY 30TH. CIRCUIT COURT 16-001064 FH AND 16-001065 FC. DOES NOT SHOW/REFLECT CHANGE OF ATTORNEYS ON 12/14/2017 TO DUANE SILVERTHORN

ON 12/18/2017 IT DOES NOT SHOW/REFLECT PERRONE'S SECOND MENTAL EPISODE DOCUMENTS BEING SENT TO SILVERTHORN WHICH CONSISTED OF POLICE REPORT DATED 11/20/2017, PERSON REQUIRING TREATMENT (PRT FORM) AND OAKLAND COUNTY PROBATE COURT JUDGE LINDA HALLMARK'S DECISION ABOUT PERRONE RECEIVING 10 DAYS IN MENTAL HOSPITAL AND 80 DAYS COMMUNITY MENTAL HEALTH (CMH) TREATMENT.

NONE OF THESE ENTRIES WERE MADE INTO THE REGISTER OF ACTIONS PURPOSEFULLY SO THAT DEFENDANT WOULD NOT FIND OUT EXTEND OF ATTORNEY PERRONE'S MENTAL AILMENTS (SEE ATTHC. REGISTER OF ACTIONS FOR BOTH CASES)

AGC DID NOT FIND ANY WRONGDOING WITH ALL ATTORNEYS AND THEIR ACTIONS AGAINST DEFENDANT'S RIGHT TO KNOW THE TRUTH.


EXHIBIT H

SEE PERRONE FORGING DEFENDANT'S INITIALS ON "SUBSTITUTION OF ATTORNEY FORM ON 11/16/2016 WITHOUT DEFENDANT'S CONSENT; HE REPLACED ATTORNEY J. ROTHSTEIN FOR THE SECOND AGGRAVATED STALKING CHARGE.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1818830937 [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/18/2023 11:29:20 PM EST, Letter ID: 1818830937
Location : MCF
Housing : UNIT 4100B01

DEFENDANT'S FIRST RETAINED ATTORNEY TESTIFIED AGAINST DEFENDANT AT HIS TRIAL VIOLATED ATTORNEY-CLIENT PRIVILEGE ABOUT A ALLEGED LETTER SENT TO COMPLAINANT MELKE; WHICH PROSECUTOR KOOP INITIATED SECOND AGGRAVATED STALKING CHARGE BASED ON THIS LETTER WHICH WAS FROM COMPLAINANT'S OWN EMAIL ADDRESS.

SEE MCL 330.1400 PRT ORDERS BY COURTS

PERRONE'S PROBATE COURT RECORDS/ PRT DOCS FROM HIS FATHER, WIFE, UNCLE, POLICE AND LANSING POLICE REPORT BY OFFICER R. MCBRIDE'S BODY CAM FOOTAGE OF PERRONE'S ERRATIC BEHAVIOR ON 11/20/2017

PERJURED AND FALSIFIED AFFIDAVIT FOR SEARCH WARRANT BY LANSING POLICE DET. KRUMBACH, PROSECUTOR THEN KOOPII
PERJURED AND FALSIFIED IMMUNITY REQUEST BY PROSECUTOR KOOP FOR JAILHOUSE INFORMANTS

MS. CRINO HAS THE BRIEFS BY DEFENDANT.

BRIEFS WRITTEN BY MS. CRINO ON 09/12/2022 PG 16. FOOTNOTE " PERRONE SHOULD BE COMMENDED FOR HIS CANDOR AND WILLINGNESS TO PUBLICLY TESTIFY ABOUT THESE PRIVATE AND DIFFICULT MATTERS AT DEFENDANT'S HEARINGS" WHERE PERRONE COMMITTED PERJURY UNDER OATH.

MS.CRINO IS AGREEING WITH PERRONE'S PERJURED ABOUT HIS METAL IMPAIRMENTS EPISODES ON 11/10/2017 AND 11/20/2017

AND ON 11/28/2022 BRIEF MS. CRINO AGAIN DENYING PERRONE'S FIRST MENTAL IMPAIRMENT EPISODE ON 11/10/2017, SECOND EPISODE ON 11/20/2017
AND IGNORING PERRONE'S MENTAL ILLNESS DATED BACK TO 2015

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1883839638 [P 1/3]

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 5:16:53 PM EST,    Letter ID: 1883839638
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/22/2023 17:16:52

Please do not reply to this email

1) FRAUD UPON COURT

WAS MR. TUNC URAZ'S CONSTITUTIONAL RIGHTS UNDER SIXTH AND FOURTEENTH AMEND. WERE
VIOLATED BY STATE AND COUNTY CREATED DANGER BY APPOINTING A UNTREATED, UNDIAGNOSED
MENTALLY IMPAIRED ATTORNEY (schizophrenia, Bipolar disorder with substance Abuse) JACOB A. PERRONE,
(P71915) WITH A PATTERN OF BEHAVIORAL ISSUES TO AN INDIGENT DEFENDANT, WHICH IN RETURN
CREATED FRAUD UPON COURTS WHEN MR. PERRONE, PROSECUTORS, ATTORNEYS PERJURED UNDER
OATH, WOULD NOT TURN OVER A BRADY MATERIAL UNTIL GRIEVED AND THEY  STAYED COMPLACENT
INCLUDING JUDGES WHO CHOSE NOT TO REPORT MISCONDUCT?

UBI JUS, IBI REMEDIUM :
"THE PRINCIPAL THAT WERE ONE'S RIGHT IS INVADED OR DESTROYED,THE LAW GIVES A REMEDY TO
PROTECT IT OR DAMAGES FOR ITS LOSS" IS INDEED A DEEP-SEATED PRINCIPLE OF ANGOLO-AMERICAN
LAW

MR.TUNC URAZ HAS PLAUSIBLY ALLEGES THAT INGHAM COUNTY CIRCUIT COURT JUDGE(S) AND COURT
ADMINISTRATORS (JUDGE R. GARCIA, GEORGE STRANDER , LEIGH ANN WHIPPLE, PERRONE'S FATHER
JOSEPH V. PERRONE, WIFE ASHLEY PERRONE, PERRONE'S UNCLES TIMOTHY PERRONE AND WILLIAM
PERRONE), MICHIGAN STATE BAR, ATTORNEY GRIEVANCE COMMISSION
IN CONTEMPTUOUS BEHAVIOR BY NOT TAKING ACTION AGAINST PERRONE,NOT INVESTIGATING
PROPERLY AND ASKING THE MENTALLY IMPAIRED ATTORNEY TO DEFEND HIMSELF PER MCR 9.121(C)
WHERE ONE CANNOT RECOGNIZE THEIR OWN MENTAL AILMENTS, GRADATIONS; ANASOGNOSIA WHICH
STANDS FOR ONE NOT BEING ABLE TO ACCEPT THEIR OWN MENTAL ILLNESS, WHICH IS LIFE LONG
STRUGGLE IN ONE'S LIFE.

INGHAM COUNTY COURTS BY APPOINTING AND NOT REPORTING MENTALLY IMPAIRED ATTORNEY
(DOCUMENTED SINCE 2015) INCREASED THE RISK THAT A MENTALLY UNSTABLE ATTORNEY WITH
UNTREATED SCHIZOPHRENIA INDUCED EXTREME BIPOLAR DISORDER WITH SUBSTANCE ABUSE
(METHAMPHETAMINE, ADDEROLL & THC) ; SUSPECTED OF HARBORING VIOLENT THOUGHTS WOULD
HARM OTHERS WHEN THEY DISCOVERED HIS PRESENCE, HIS ATTITUDE, HIS BEHAVIOR WITH THIS
IMMINENT ULTIMATUM.

See PRT FORMS FILLED OUT BY HIS FATHER ON 11/14/2017 AND BY LANSING POLICE OFFICER MCBRIDE
AND POLICE REPORT ON 11/20/2017, OAKLAND COUNTY PROBATE COURT RECORDS WITH, FOUR
Separate  HOSPITAL RECORDS (SPARROW HOSP. U.of Michigan H. Serv. Hosp., Saginaw WhitePine Mental
Hosp., Heavenwyck Mental Hospital, Auburn Hills.

SCHIZOPHRENIA IS CHARACTERIZED BY WITHDRAWAL FROM REALITY, UNPREDICTABLE EMOTIONAL
RESPONSE, INTROVERSION AND REGRESSION INAPPROPRIATE RESPONSE AND UNSOCIAL BEHAVIOR.

SCHIZOPHRENIFORM RESEMBLES OR HAS THE GENERAL CHARACTERISTICS OF SCHIZOPHRENIA. THIS
TYPE OF MENTAL DISORDER MANIFESTS ITSELF THROUGH CHARACTERISTIC DISTURBANCES OF
COMMUNICATION, LANGUAGE, THOUGHT, MOOD, PERCEPTION AND BEHAVIOR.

MR. URAZ  HAS  SUFFICIENTLY ALLEGED FACTS SUPPORTING AN INFERENCE THAT JUDGE(S), COURT
ADMINISTRATORS, PERRONE'S FAMILY WERE AWARE THAT PERRONE PRESENTED A SUBSTANTIAL RISK
OF DEADLY HARM TO OTHERS

_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1883839638 [P 2/3]

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 5:16:53 PM EST,    Letter ID: 1883839638
Location : MCF
Housing : UNIT 4100B01

BASED ON HIS ALLEGATIONS, MR. TUNC URAZ IS ENTITLED TO PROCEED TO DISCOVER TO LEARN WHAT EVIDENCE SUPPORTS TO THEIR CONTENTION THAT INGHAM COUNTY 30th. CIRCUIT COURT, PERRONE AND HIS FAMILY'S FAILURE TO ADDRESS A KNOWN RISK OF DANGER ROSE TO THE "CONSCIENCE-SHOCKING AND INEXPLICABLY INCOMPETENT STANDARD OF LAWYERING.

MR. URAZ HAS SUFFICIENTLY ALLEGED THAT INGHAM COUNTY VIOLATED MR. URAZ'S SUBSTANTIVE DUE PROCESS RIGHTS.

TUNC URAZ ALLEGEDLY ASSERTING THAT INGHAM COUNTY, MR. PERRONE AND HIS FAMILY TOOK ACTIONS THAT ENDANGERED PLAINTIFF'S CONSTITUTIONAL RIGHTS DUE PROCESS WHICH SUFFICE TO SURVIVE A QUALIFIED IMMUNITY DEFENSE.

ANALYSIS

(see FRANZ V OXFORD COMMUNITY SCHOOL DIST. 2023 U.S. DIST. LEXIS 84008. NO 22-CV-11448, 05/12/2023)

1) AFFIRMATIVE ACTS MORE THAN FAILURE TO ACT

2) AFFIRMATIVE ACTS INCREASE TO RISK OF HARM

CULPABILITY

TO HAVE THE REQUISITE OF CULPABILITY FOR A STATE CREATED DANGER CLAIM;
[A]N OFFICIAL MUST BE AWARE OF FACTS WHICH THE INFERENCE COULD BE DRAWN THAT SUBSTANTIAL RISK OF SERIOUS HARM EXISTS, AND HER (OR SHE) MUST ALSO DRAW INFERENCE"
(JANE DOE V.JACKSON LOC. DIST. BD of EDU, 954 F3D 925 933 (6th Cir. 2020)(cleaned up)

TO DRAW SUCH INFERENCE, " A PUBLIC OFFICER MUST KNOW OF MORE THAN A GENERAL RISK OF HARM. THE OFFICIAL MUST KNOW OF THE SPECIFIC RISK THAT LATER DEVELOPS ID AT 934 (EMPHASIS IN ORIGINAL). THEN, [H]AVING DRAWN THE INFERENCE, THE OFFICIAL NEXT MUST ACT OR FAIL TO ACT IN A MANNER DEMONSTRATING RECKLESS OR CALLOUS IN DEFERENCE TOWARD THE INDIVIDUAL'S RIGHTS. ID 933 (CLEANED UP) eg. OFFICIALS RESPONSE MUST CONSTITUTE "CALLOUS DISREGARD OR CONSCIENCE-SHOCKING BEHAVIOR" ID AT 935.

INGHAM COUNTY IS LIABLE UNDER A SUPERVISORY LIABILITY THEORY SINCE INGHAM COUNTY JUDGES, ADMINISTRATORS HIS FAMILY WHO KNEW ABOUT PERRONE'S MENTAL ILLNESS.

MR. URAZ SUBMIT THAT INGHAM COUNTY IS LIABLE FOR COUNTY CREATED DANGER CLAIMS BECAUSE THE "ACTIVELY ENCOURAGED" CONSTITUTIONAL VIOLATIONS SUCH THAT A SUPERVISORY LIABILITY FRAME WORK APPLIES.
THIS THEORY REQUIRES A SHOWING THAT INGHAM COUNTY "[ ] ENCOURAGED.....[ ]PARTICIPATED IN.....[ ] AUTHORIZED, APPROVED OR KNOWINGLY "ACQUIESCED" IN THE CONSTITUTIONAL VIOLATION. DOE V. CITY OF ROSEVILLE, 296 F3d 431 440 (6th. Cir 2002)

CONTEMPT OF COURT IS A WILLFUL ACT, OMISSION, OR STATEMENT THAT TENDS TO IMPAIR THE AUTHORITY OR IMPEDE THE FUNCTIONING OF A COURT. DEVILLA V FISCHER CORP. (IN RE ROBERTSON) 209 MICH APP 433 (1995)  CONTEMPT CAN EITHER BE CIVIL OR CRIMINAL IN NATURE. (IN RE MURPHY) 2023 MICH APP LEXIS 953. COA; 02/09/2023

SINCE "OMISSION" IS LYING ALL THE ATTORNEYS WHO TESTIFIED DURING GINTHER HEARINGS AND WHOM EVER HAD KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENTS AND EPISODES BUT CHOSE NOT TO REPORT IT TO AGC WOULD BE IN CONTEMPT WITH COURTS.

GENERALLY, AN ACT OR OMISSION IS CAUSE IN FACT OF AN INJURY ONLY THE INJURY COULD NOT HAVE OCCURRED WITHOUT (OR "BUT FOR") THAT ACT OR OMISSION WHILE A PLAINTIFF NEED NOT PROVE

_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1883839638  [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 10/22/2023 5:16:53 PM EST,     Letter ID: 1883839638
Location :  MCF
Housing :  UNIT 4100B01


THAT AN ACT OR OMISSION WAS THE SOLE CATALYST FOR HIS INJURIES, HE MUST INTRODUCE
EVIDENCE PERMITTING THE JURY TO CONCLUDE THAT ACT OR OMISSION WAS A CAUSE"
(CRAIG V OAKWOOD HOSP. 471 MICH 67 (2004) MI SUPREME CT.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1883839632 [P 1/3]

**You have received a** *jpay* **letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 5:16:52 PM EST,     Letter ID: 1883839632
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/22/2023 17:16:51

Please do not reply to this email

2) FRAUD UPON COURT


THESE ARE FRAUDS UPON COURT PURPORTED/ COMMITTED BY MR. JACOB A PERRONE, INGHAM
COUNTY JUDGES , PROSECUTORS (THEN AND NOW) , ATTORNEYS WHO WERE INVOLVED WITH
DEFENDANT'S CASE, APPELLATE ATTORNEY,  ATTORNEY GRIEVANCE COMMISSION  WHO WERE ALL
INVOLVED WITH THIS ISSUE.
THEY CONFABULATED/CONCEALED THE ISSUE THINKING THAT IT WOULD NEVER SURFACE.

THIS IS A RACKETEERING RICO PER
MCLS 750.159g (i)(w)(hh)

SEE

MRPC 1.1, 1.6, 6.5, 3.4
MRPC 8.3
MRPC 8.4 (a)(b)(e) engaged in conduct which involved dishonesty, fraud, deceit, misrepresentation or violation of the
criminal law, where such conduct reflects adversely on the lawyers' honesty, trustworthiness, or fitness as a lawyer

MCR 2.311(A)

MCR 9.104(1-6) exposed in legal profession or the courts to obloquy, contempt, censure or reproach, in violation of ;

MCR 9.113(A) MADE MISREPRESENTATION IN THEIR ANSWERS TO COURTS AND ATTORNEY GRIEVANCE
COMMISSION

MCR 9.119 (7) THERE WERE NO INVESTIGATIONS DONE WHETHER JACOB A. PERRONE WAS FIT TO BE AN
ATTORNEY TO HAVE THE PRIVILEGE  TO REPRESENT PUBLIC AS AN ATTORNEY

MCR 9.123 (3)  ELIGIBILITY FOR REINSTATEMENT

MCR 9.203(A)(B)(C)(D)

(B) (in part).....the commission may examine decisions incident to a complaint of judicial MISCONDUCT, DISABILITY
or/any other circumstance....AN INTENTIONAL REFUSAL TO FROM FOLLOW THE LAW OR COURT RULE CAN
BE A JUDICIAL MISCONDUCT. (In Re Hague 412 Mich 532 (1982) MI Supreme Court.


MCR 9.207

MCR 9.111

MCLS 600.1701(c)(g) NEGLECT AND VIOLATION OF DUTY OR MISCONDUCT BY COURT OFFICALS

CANON 2(A)(B)
CANON 3(A)(1)(3)(4)(11)(14)
CANON 3(B)(1)(3) "A JUDGE SHOULD TAKE OR INITIATE APPROPRIATE DISCIPLINARY MEASURES AGAINST
A JUDGE OR LAWYER FOR UNPROFESSIONAL CONDUCT OF WHICH THE JUDGE MAY BECOME AWARE.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1883839632  [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 5:16:52 PM EST,     Letter ID: 1883839632
Location : MCF
Housing : UNIT 4100B01


(MRPC 8.4(c))

In Re Davis 991 N.W. 2d 212 (2023) MI Supreme Ct.
In Re Green 2023 Mich Lexis 1152 (2023)


PER MCR 2.112 PLEADING SPECIAL MATTERS

(B)FRAUD, MISTAKE, OR CONDITION OF MIND
(1)IN ALLEGATIONS OF FRAUD OR MISTAKE, THE CIRCUMSTANCES CONSTITUTING FRAUD OR MISTAKE MUST BE STATED WITH PARTICULARITY.
(2) MALICE, INTENT, KNOWLEDGE, AND OTHER CONDITIONS OF MIND MAYBE ALLEGED GENERALLY

MCLS 750.505 OBSTRUCTION OF JUSTICE
ANY PERSON WHO SHALL COMMIT ANY INDICTABLE OFFENSE AT THE COMMON LAW, FOR THE PUNISHMENT OF WHICH NO PROVISION IS EXPRESSLY MADE BY ANY STATUE OF THIS STATE, SHALL BE GUILTY OF A FELONY, PUNISHABLE BY IMPRISONMENT IN STATE PRISON FOR 5 YEARS OR $10,000.

MCLS 750.422 PERJURY COMMITTED IN COURTS; ANY PERSON WHO, BEING LAWFULLY REQUIRED TO DEPOSE THE TRUTH IN ANY PROCEEDING IN COURT OF JUSTICE SHALL COMMIT PERJURY, IF SUCH PERJURY WAS COMMITTED ON THE TRIAL OF AN INDICTMENT FOR A CAPITAL CRIME, BY IMPRISONMENT IN THE STATE PRISON FOR LIFE, OR ANY OTHER CASE, BY IMPRISONMENT IN STATE PRISON FOR NOT MORE THAN 15 YEARS.

MCLS 750.423 (1)(2)(i)(iii) PERJURY PENALTY ; "RECORD" AND "SIGNED" DEFINED
[A] WILLFULLY FALSE STATEMENT ABOUT ANY MATTER OR THING CONCERNING WHICH AN OATH WAS AUTHORIZED OR REQUIRED FALLS WITHIN THE STATUTORY DEFINITION OF PERJURY AND THUS MAY BE CHARGED AS PERJURY IF A PROSECUTOR SO CHOOSES
PEOPLE V LIVELY 470 MICH 248 (2004)

(B)FRAUD, MISTAKE OR CONDITION OF MIND

1) IN ALLEGATIONS OF FRAUD OR MISTAKE, THE CIRCUMSTANCES CONSTITUTING FRAUD OR MISTAKE MUST BE STATED WITH PARTICULARITY.

2)MALICE, INTENT, KNOWLEDGE, AND OTHER CONDITIONS OF MIND MAY BE ALLEGED GENERALLY.

750.483a (1)(5) PROHIBITED ACTS
penalties "retaliate" "official proceedings" and "threaten or intimidate"

1) (a) withhold or refuse to produce any testimony, information, document or thing AFTER THE COURT HAS ORDERED IT TO BE PRODUCED FOLLOWING A HEARING

5) A person shall not do any of he following

(a) knowingly and intentionally remove, alter conceal, destroy, or otherwise tamper with evidence to be offered in present or future official proceedings.

(b) after evidence at an official proceedings that he or she recklessly disregards as false.


EACH ELEMENT ESTABLISHING FRAUD AND DECEIT MUST BE PROVED WITH REASONABLE DEGREE OF CERTAINTY AND ALL THEM FOUND TO EXIST.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1883839632  [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 5:16:52 PM EST,    Letter ID: 1883839632
Location :  MCF
Housing :  UNIT 4100B01

HOLLOWAY V CAREER DECISIONS, 100 MICH APP 561 (1981)

ELEMENTS ESSENTIAL TO ESTABLISH FRAUD AND DECEIT ARE :

1) THAT DEFENDANT MATERIAL REPRESENTATION

2) THAT IT WAS FALSE

3) THAT WHEN HE MADE IT, HE KNEW IT WAS FALSE OR MADE IT RECKLESSLY WITHOUT KNOWLEDGE OF ITS TRUTH AND ITS POSITIVE ASSERTIONS

4) THAT HE MADE IT WITH INTENTION THAT IT SHOULD BE ACTED UPON PLAINTIFF

5) THAT PLAINTIFF ACTED IN RELIANCE UPON IT AND

6) THAT HE THEREBY SUFFERED INJURY

HOLLOWAY V CAREER DECISIONS, 100 MICH APP 561 (1980)


A FRAUD IS PERPETRATED ON THE COURT WHEN SOME MATERIAL FACT IS CONCEALED FROM THAT COURT OR WHEN SOME MATERIAL MISREPRESENTATION IS MADE TO THE COURT.
MACARTHUR V MILITCH 110 MICH APP 389 (1980)


A PLAINTIFF, WHEN PLEADING A CLAIM OF FRAUD, MUST PLEAD THAT HE ACTED IN RELIANCE ON DEFENDANT'S FRAUDULENT REPRESENTATION
VAN MARTER V AMERICAN FIDELITY FIRE INS. CO. 114 MICH APP 171 (1982)

AN ESSENTIAL ELEMENT OF THE TORT OF FRAUD IS RELIANCE UPON FRAUDULENT REPRESENTATION OR CONDUCT WHICH AMOUNTS TO FRAUD AT LAW AND AN AGGRIEVED PARTY MUST ALLEGE A CASUAL LINK BETWEEN A DEFENDANT'S INEQUITABLE CONDUCT AND THE RESULTING HARM.
EMERICK V. SAGINAW 104 MICH APP 243 (1981)


TAKE LOOK AT THE REGISTER OF ACTIONS UNDER DEFENDANT'S
 CASE #'S AT INGHAM COUNTY 30TH. CIRCUIT COURT 16-001064 FH AND 16-001065 FC. DOES NOT SHOW/REFLECT CHANGE OF ATTORNEYS ON 12/14/2017 TO DUANE SILVERTHORN

ON 12/18/2017 IT DOES NOT SHOW/REFLECT PERRONE'S SECOND MENTAL EPISODE DOCUMENTS BEING SENT TO SILVERTHORN WHICH CONSISTED OF POLICE REPORT DATED 11/20/2017, PERSON REQUIRING TREATMENT (PRT FORM) AND OAKLAND COUNTY PROBATE COURT JUDGE LINDA HALLMARK'S DECISION ABOUT PERRONE RECEIVING 10 DAYS IN MENTAL HOSPITAL AND 80 DAYS COMMUNITY MENTAL HEALTH (CMH) TREATMENT.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a _jpay_ letter, the fastest way to get mail**

From  : TUNC URAZ, ID: 114653
To :  Information Services
Date : 10/22/2023 5:16:51 PM EST,    Letter ID: 1883839624
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 10/22/2023 17:16:50

Please do not reply to this email

3) FRAUD UPON COURT

NONE OF THESE ENTRIES WERE MADE INTO THE REGISTER OF ACTIONS PURPOSEFULLY SO THAT DEFENDANT WOULD NOT FIND OUT EXTEND OF ATTORNEY PERRONE'S MENTAL AILMENTS  (SEE ATTACHED REGISTER OF ACTIONS FOR BOTH CASES)

AGC APPOINTED A SPECIAL COUNSEL TO INVESTIGATE CRINO'S AND ROTH'S ACTIONS  WHOM HAD HIS OWN ETHICAL PROBLEMS/ISSUES  OAKLAND COUNTY PROSECUTOR: MR.  ROBERT NOVY (see case PEOPLE V. KELLAM 2013 MICH APP LEXIS 22100 (2013))

HOW CAN ONE TRUST THE INTEGRITY OF AN APPOINTED INVESTIGATOR WHO HAS HIS OWN ETHICAL ISSUES?

MCLS 600.1701(c)(g) NEGLECT AND VIOLATION OF DUTY OR MISCONDUCT BY COURT OFFICALS

MCR 2.311(A) FAILED TO ORDER MENTAL EXAMINATION OF PERSONS...

MCLS 330.2022 PROCEEDING AGAINST INCOMPETENT DEFENDANT PROHIBITED PRETRIAL MOTIONS PRESERVATION AND ADMISSIBILITY OF EVIDENCE

1) A DEFENDANT WHO IS DETERMINED INCOMPETENT TO STAND TRIAL SHALL NOT BE PROCEEDED AGAINST WHILE HE/SHE IS INCOMPETENT

2) ANY PRETRIAL MOTION MAY BE MADE BY EITHER THE DEFENSE OR PROSECUTION WHILE DEFENDANT IS INCOMPETENT TO STAND TRIAL AND THE ISSUES PRESENTED BY THE MOTION SHALL BE HEARD AND DECIDED IF THE PRESENCE OF THE DEFENDANT IS NOT ESSENTIAL FOR FAIR HEARING AND DECISION ON THE MOTION.

3) WHEN IT APPEARS THAT EVIDENCE ESSENTIAL TO THE CASE THE DEFENSE OR PROSECUTION PLAN TO PRESENT MIGHT NOT BE AVAILABLE AT THE TIME OF TRIAL, THE COURT SHALL ALLOW SUCH EVIDENCE TO BE TAKEN AND PRESERVED. EVIDENCE TAKEN SHALL BE ADMISSIBLE AT THE TRIAL ONLY IF IT IS NOT OTHERWISE AVAILABLE, PROCEDURES FOR THE TAKING AND PRESERVING OF EVIDENCE UNDER THIS SUBSECTION, AND THE CONDITIONS UNDER WHICH SHALL BE ADMISSIBLE AT TRIAL SHALL BE PROVIDED BY COURT RULE

INCOMPETENCE OF  A DEFENDANT TO STAND TRIAL IN (CRIMINAL CASES)

MCLS 330.2020, 330.2022,330.2024,330.2026,330.2028,
330.2030, 330.2031, 330.2032, 330.2034, 330.2036, 330.2038, 330.2040, 330.1400


STRUCTURAL INVENTORY OF  MALINGERER SYMPTOMOLOGY (SIMS)

1) EVALUATION OF COMPETENCE/TO STAND TRIAL (ECST-R)

2) TEST OF MEMORY MALINGERING

3) MILLER FORENSICS ASSESSMENT OF SYMPTOMS TEST (M-FAST)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1883839624  [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 5:16:51 PM EST,    Letter ID: 1883839624
Location : MCF
Housing : UNIT 4100B01

4) STRUCTURED INTERVIEW OF REPORTED SYMPTOMS SECOND EDITION (SIRS-2)

5) PERSONALITY ASSESSMENT INVENTORY (PAI)

6) WECHSTER ADULT INTELLIGENCE SCALE FOURTH EDITION

7) VALIDITY INDICATOR PROFILE (VIP) D.E. 50012

IN PEOPLE V PATTEN 2019 MICH APP LEXIS 7118
(2019)
(in part)....with respect to the issue of defendant's competency to stand trial on the charged offenses MCLS
330.2020(1). A defendant presumed competent to stand trial ;determination of incompetency. A defendant effect of
medication: statement by physician
1) A defendant to a criminal charge shall be presumed competent to stand trial, he shall be determined incompetent
to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the
proceedings against him or her of assisting in his defense in a "RATIONAL" manner. The court shall determine the
capacity of a defendant to assist in his defense by his ability to perform tasks reasonably necessary for him to
perform in the preparation of his defense and during his trial.

2) A defendant shall not be determined incompetent to stand trial because psychotropic drugs or other medication
have been or being administrated under proper medical direction, and even though without such medication the
defendant might be incompetent to stand trial. However when defendant is receiving SUCH MEDICATION, THE
COURT MAY, PRIOR MAKING ITS DETERMINATION ON THE ISSUE OF INCOMPETENCE TO STAND TRIAL,
REQUIRE THE FILING OF STATEMENT BY THE TREATING PHYSICIAN THAT SUCH MEDICATION WILL NOT
ADVERSELY AFFECT DEFENDANT'S UNDERSTANDING OF THE PROCEEDINGS OR HIS ABILITY TO ASSIST
IN HIS DEFENSE.

ALL THE MCLS ABOVE ARE FOR A DEFENDANT WHO IS MENTALLY INCOMPETENT IMPAIRED AND SHE OR
HE WOULD BE SENT TO FORENSICS CENTER TO BE EVALUATED.

YET IN THE STATE OF MICHIGAN THERE IS NOTHING TO EVALUATE MENTALLY ILL, INCOMPETENT,
IMPAIRED ATTORNEY TO EVALUATE HIS OR HER MENTAL COMPETENCE.

ONLY MCR 9.121(C) DEALS WITH MENTALLY INCOMPETENT ATTORNEY AND ASKS THE VERY SAME
PERSON TO DO A SELF EVALUATION OF THEIR MENTAL INCOMPETENCE.

PLEASE TAKE A LOOK AT GLOBAL ASSESSMENT OF FUNCTIONING (GAF) SCALE score
PERRONE'S GAF IS EITHER BETWEEN 1-10 AND/OR 20-30

see attached GAF SCORING SHEET as a REFERENCE

SEE PERRONE'S THREATENING COMMENTS ABOUT "KILLING OTHERS" AND BEING A "SUICIDAL SON"
PERRONE'S FATHER'S COMMENTS ON PERSON REQUIRING TREATMENT (PRT) FORM/ OR PERRONE
REFUSING TO TAKE HIS PSYC MEDICATIONS, REFUSING THE TREATMENT/ LEAVING THE MENTAL
HOSPITAL INVOLUNTARILY.

DR. RACHEL GLICK'S COMMENTS

Dr. USHA MOVVA'S COMMENTS

DR. LEONARD SWISTAK COMMENTS

THE POWER TO REGULATE AND DISCIPLINE MEMBERS OF THE BAR RESTS ULTIMATELY WITH MICHIGAN

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1883839624 [P 3/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 10/22/2023 5:16:51 PM EST,    Letter ID: 1883839624
Location : MCF
Housing : UNIT 4100B01

SUPREME COURT PURSUANT TO CONSTITUTIONAL MANDATE. (MICHIGAN CONST art VI $ 5) (Grievance Admin. V August 438 Mich 296 (1991), In Re Schossberg V State Bar Grievance Brd. 388 Mich 389 (1972)

THUS MICHIGAN SUPREME COURT HAS THE FINAL SAY AND NOT THE GRIEVANCE BOARD OR THE COMMISSION WHO ARE MERELY ENTRUSTED WITH SOME ABILITY TO ENFORCE THE RULES

THEREFORE MR. URAZ IS ASKING THIS HONORABLE  COMMISSION TO INVESTIGATE:

INGHAM  COUNTY  COURT  JUDGES,  ATTORNEYS  AND  PROSECUTORS,  ATTORNEY  GRIEVANCE COMMISSION  WERE ALL IN CONTEMPT OF THE COURT.

THEREFORE MR. URAZ IS ASKING THIS HONORABLE COURT TO APPOINT A MASTER PER MCR 9.117  OR AN INDEPENDENT INVESTIGATOR TO INVESTIGATE PERRONE'S "MENTAL DISABILITY [  ] PREVENTS THE PERFORMANCE  OF  HIS  JUDICIAL  DUTIES"  AND  "DUE  TO  HIS  DELUSIONS,  (PERRONE)  COULD  NOT INTERPRET REALITY CORRECTLY AND COULD NOT MAKE RATIONAL DECISIONS".

THESE ARE FRAUDS UPON COURT PURPORTED/ COMMITTED BY MR. JACOB A  PERRONE, INGHAM COUNTY  PROSECUTORS  (THEN AND NOW)  , ATTORNEYS WHO WERE INVOLVED WITH DEFENDANT'S CASE,  APPELLATE  ATTORNEY,  JUDGES  AND ATTORNEY GRIEVANCE COMMISSION  WHO WERE ALL INVOLVED WITH THIS ISSUE.

RESPECTFULLY SUBMITTED

*Tunc Ura*

TUNC URAZ

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 18, 2023

Elizabeth T. Clement,
Chief Justice

Brian K. Zahra
David F. Viviano
165560-1(143)
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
   Plaintiff-Appellee,

           SC: 165560, 165561
v          COA: 343695, 343696
          Ingham CC: 16-001064-FH,
              16-001065-FH

TUNC URAZ,
   Defendant-Appellant.
_____/

   On order of the Chief Justice, the motion of defendant-appellant to exceed the page limitation of his application for leave to appeal is GRANTED.  The application submitted on April 14, 2023, is accepted for filing.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

   April 18, 2023       
                  Clerk

04/10/2023

SUPREME COURT OF MICHIGAN
STATE OF MICHIGAN

PEOPLE                    MI SUPPALL;
                          COA# 343695; 343696
        V                 LC#16-1064-FH; 16-1065 FC

RECEIVED APR 14 2023 LARRY S. ROYSTER CLERK SUPREME COURT

TUNC URAZ

MOTION OF DEFENDANT-APPELLANT
TO EXCEED THE PAGE LIMIT FOR HIS
APPLICATION FOR LEAVE TO APPEAL
FOR HIS Supplemental STANDARD 4-Brief

Defendant-appellant is asking this honorable courts'
Mercy, understanding and tolerance to honor his motion
TO Exceed the page limit for his application
for leave to appeal for his supplemental Standard 4
brief from 50 pages to 100 pages; due sheer
amount of complex issues which were not answered by
Court of Appeals; Both cases were tried Jointly
and evidences were used in both of them which caused
Prejudice against defendant and confused the Jury.
① Defendant is claiming ACTUAL INNOCENCE
CLAIM BASED ON NEWLY/AVAILABLE
EVIDENCES WHICH WERE IGNORED AND NOT
INVESTIGATED BY HIS TRIAL AND APPELLATE
ATTORNEYS.

② PER MCR 7.212 (B)(5) Defendant has No Access to Word processing system

③ Defendant has over 100 exhibits 100 and attachments / Transcripts, pretrial - trial - post trial and further

④ Defendant understands that he has No constitutional right to represent himself (Martinez v Cant of Appeals CA 528 US 152 (2000))

⑤ Defendant would like to raise issues (People v Good Mich App LEXIS 1608 (2013)

⑥ Defendant is bringing 14 issues Total, please allow the issues to be brought up at Michigan Supreme court

Defendant appreciates this honorable courts understanding and tolerance.

Respectfully Submitted

TUNC URAZ # 114653
Muskegon Corr. Fac.
2400 S. Sheridan Dr.
Muskegon MI 49442

STATE OF MICHIGAN

IN THE SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,
     Plaintiff-Appellee,

Supreme Court No. 165560

Court of Appeals Nos. 343695; 343696

V

LC Nos. 16-1064-FH; 16-1065-FC

TUNC URAZ,
     Defendant-Appellant.

_____/

**AMENDED CERTIFICATE OF SERVICE**

On May 23, 2023, I served a copy of the People's Answer to Defendant's

Application for Leave to Appeal on:

Tunc Uraz (MDOC #114653)
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442

I declare that the statements above are true to the best of my knowledge, information,

and belief

/s/ Lisa Renee Davis

_____

Lisa Renee Davis

RECEIVED

MAY 26 2023

LARRY S. ROYSTER
CLERK SUPREME COURT

To Whom it may Concern

RE: Tune Uraz 114653
    Muskegon Correctional Facility

My Name is Chaplain Chuck Lyons
and I have known Tune for Seven yrs now.
I First met Tune at the Ingham County
Jail on the 5th of September I recieved
a note from the medical department-post,
That Chaplain Chuck Should See Tune URAZ
for Counsil, I did and about 4 mo. of Counsil
on Dec. 12, 2016 Recieved Jesus Christ as
his Lord and Saviour, and in a few weeks
Tune was taken out of Quarantine and
placed in a regular post where I stayed
with him as this Chaplain, it has been a
joyous time and a blessing to see Tune
grow in the LORD. He soon started
Takeing Bible Course, These are Studies
from Grand Rapids BiBle in Grand Rapids MC.
He also enrolled in most of the betterment
Classes offered in the correctional Facilitys
that he was in at the time, Tune's Surrender
was not only to the Lord but complete in all
his actions, it didn't matter what post
Tune was assigned to, The deputys of
that post were most glad to have him
Tune was a model inmate and still is - Tune
is a big man with a humble heart and a
Love for Christ Jesus, he helped keep the
peace in the Dorms he would Share The
Next Page

Word of God in all situations, he helped
keep the calm in which ever post he was in.
Tune is now in the Muskegon Correctional
Facility in Muskegon MI, at 2400 S. Sheridan DR.
Muskegon MI. 49442, Tune was #114653
When Tune was sent the The Muskegon Facility
he entered The Calvin Prison program. one
of his studies is Developing Christian men,
Academic Transitions, Communications classes.
Tune shared with me that it is Gods gift to
him, Tune should never went to prison, he
should have been pardend while at Ingham
County Jail. Tune had bad representation from
State orderd Lawyers looking only for a pay
Check I have sit in on one of his hearings
it was a sad thing to see his Lawyer sat
there and shook her head and spoke maybe
3 Times and not in Tune's defence, in another
hearing Tune's Layer was taken off the case because
of a mental problem. I am not serving as Chaplain
at The Ingham Co. Jail now, but am still serving
as Tunes Chaplain, I believe The Court should
look again and lett Tune go back To Turcky His
son and family need him. I hope you can help
him, Tune is a good and a changed man.
                    Thank you
                       Chuck Lyons

STATE OF MICHIGAN 04/22/2023

Michigan Supreme Court

People                          SC # 165560, 165561
                                 COA# 343695, 343696
V                  Inform LC # 16-1064-FA, 16-1065 FC

TUNC URAZ

Motion of defendant-Appellant to submit
Supplemental documents for application for Leave
to appeal for Standard 4 briefs

Defendant Appellant is asking this honorable courts
Mercy, understanding and tolerance to honor his motion
to accept supplemental documents for his application
for leave to appeal for his Standard 4 Brief which
was submitted on 4/11/23, this honorable court
granted defendant request to exceed page limit
on 4/18/23 and accepted his Brief for filing on
4/21/23.
        The reason defendant sending these documents
late is due to number of photocopies, he is allowed
to have in prison due his "indigent status"
        I do appreciate this honorable courts understanding
and mercy to this matter.
Respectfully submitted
        Tunc Uraz

RECEIVED
MAY 24 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

Proof of Service

This Motion, and its attachments are served to
VIA  DOC expedited mail  on  4/28/2025
To  Ingham County Prosecutor's office. Kahla D. Crino

Tenc Urn

5/19/23

To: Circuit Court Clerk's office
~30th Circuit Court
P.O. Box 40771
Lansing, MI 48901

RECEIVED
MAY 24 2023
LARRY S. ROYSTER
CLERK, SUPREME COURT

From: Tune URAZ # 114653
Muskegon Correctional Facility
2400 S. Sheridan Dr.
Muskegon, MI 49442

Re: Lost Briefs in mail which was sent on 4/28/23
Did you / have you received them?
SC#: 165560, 165561, COA# 343695, 343696
Ingham CC # 16-000 1064 - FH
# 16-001065 - FC

Dear Clerk:

Would you please check your records to see if the documents sent to circuit court on 4/28/23, has it been received by courts or not? They were addressed to m. Kahla D. Crino, Appellate Chief Division. (see attached proof of mailing.)

Some The documents were also sent to Michigan Supreme Court on 4/28/23 (see attached proof of mailing)

If you received them would you please kindly send copies either:

① To my prison address because they were one of a kind here are no other copies available.

② or mail them to Michigan Supreme Court ...the case #'s above, and copies to me

If you did not receive them please let
Me know. I try to figure out another way.
But please let me know either way

I appreciate your help and understanding
to this matter.

Respectfully Submitted

Tone Vine

Proof of Service

Copy of this letter was sent/served to

Michigan Supreme court Clerks office
on 5/19/23  VIA MDOC expedited legal

Mail on 5/19/23

Respectfully

Tuc Vine

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-318

DISBURSEMENT AUTHORIZATION **(EXPEDITED LEGAL MAIL – PRISONER)**

REV. 11/15   4835-3318

**Please PRINT clearly, illegible and/or incomplete forms will not be processed.**

Lock _4-100-5_    Institution _MCF_

Prisoner Number _114653_    Prisoner Name
Type or Print Clearly _URAZ_

[X] Legal Postage    [ ] Filing Fee    $ _____    [ ] Certified Mail (Must Be a Court Ordered Requirement)

[ ] New Case    [X] Case Number _165560, 165561_

Pay To _Mail Room_

Mailing Address _Michigan Supreme Court Clerks office_
_Hall of Justice PO Box 30052_
_LANSING, MI 48909_

### The Following Section Must Be Completed in Authorizing Staff Member's Presence

Prisoner Signature _Izac Uru_    Date & Time Submitted _4/28/23 1. 815am_

Received by
Type or Print Name & Title _Wendell PC_    Staff Signature _____

Date & Time Received by Authorizing Staff _4/28/23 / 0815_

**Authorization Denied**

[ ] Does not meet definition of legal mail or court filing fee as identified in OP 05.03.118

[ ] Not hand delivered to authorizing staff member    [ ] New case or case number not on form

[ ] Does not include court order for handling as certified mail    [ ] Other, (explain)

[ ] Prisoner refused to sign & date in staff member's presence

Denied by
Type or Print Name & Title _____    Signature _____

### Section Below to be Completed by Mail Room Staff

Placed in Mail by
Type or Print Name & Title _G Scanlon-AoA_    Signature _G Scanlon_

Postage Amount    $ _.78_    Date Placed in Outgoing Mail _4/28/23_

### Only Business Office staff are to Write in the Section Below

Postage    $ _____    Total Obligation    $ _____    [ ] Court Filing Fee Denied Due to NSF

Filing Fee    $ _____    Check # _____

Date Copy Sent to Prisoner _____

Processed by
Type or Print Name & Title _____    Signature _____

RECEIVED
MAY 24 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

DISTRIBUTION: [ ] Prisoner Accounting   [ ] Prisoner   [ ] Counselor's File   [ ] Prisoner

CAJ-617
03/02
4835-0817

# Legal Mail and Court Filing Fee Logbook – Mail Room/Control Center

Facility: _____

Monthly Report: _____

| Date Received From Housing Unit Staff | Prisoner Name/Number | Court Docket Number or "New Case" | Type of Disbursement | | | Housing Unit Staff Initials | Filing Fee Date/Time disbursement faxed or hand delivered to Business Office | Filing Fee Date/Time check received from Business Office | Date/Time Placed in Outgoing Mail | Comments and Mail Room Initials |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Postage | Filing Fee | Both | | | | | |
| 4/18/13 | Davis 114653 | 165560 | ✓ | N | N | 0 | - | - | 4/18/23 JD | 12:30 pm |
| 4/18/13 | Davis 114653 | 165561 165561 | ✓ | N | N | 0 | - | - | 4/18/23 JD | 12:30 pm |

RECEIVED
MAY 24 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

5/19/23

Dear Clerk,

This is the copy of the letter
I mailed to 30th cir. ct. clerk
on 5/19/23 asking if they have
received the docs./Briefs which were
sent on 4/28/23. Please see
proof mailing, mail room logs, and the
copies of letter and motion dated
4/28/23. I have also asked the
Post Master in Muskegon to investigate
these important court docs. Please let
me know either;
① If you receive them
② If you receive copies from
30th. cir. ct.



③ Please let me know if I
need to re mail docs/Briefs
again once I get them copied.
as soon as possible

I appreciate your understanding
to this matter
Respectfully submitted

Tunc Uren

4/28/23

To Mr Larry Royster
Supreme Court Clerk
PO Box 30052, Michigan Hall of Justice
LANSING, MI 48909

from TUNC URAZ 114653                    Case #165560, 165561
Muskegon Correctional facility           COA# 343695, 343696
2400 S. Sheridan Dr.                     Ingham CC: 161064-Ft
Muskegon, MI 49442                               161065 FC

Re. Supplemental Docs for application for leave to appeal
for Supreme Court Standard 4

Dear Mr Royster
Would you please kindly accept attached
documents to this letter for my Briefs which was
Mailed on 4/11/23. The reason these documents
were Late due to number of photocopies I am allowed
to have in prison due to "Indigent" status
    I do appreciate your understanding to this matter.

Respectfully Submitted

Tunc Uraz

Proof of Service. the attached docs. are served via
MDOC expedited Legal mail on 4/28/2023 to
[cut off] Carla Prosecutors office Ms. Kohle D. Comm[cut off]

*RECEIVED*
*MAY 24 2023*
*LARRY S. ROYSTER*
*CLERK SUPREME COURT*

①

06/22/23

To: Michigan Supreme Court
Office of the Clerk
Michigan Hall of Justice
PO box 30052
Lansing, MI 48909

RECEIVED
JUN 28 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

from TUNC URAZ 116653
Muskegon Corr Fac.
2400 S. Sheridan Dr
Muskegon, MI 49442

Re: SC: 165560, 165561, COA: 343695, 343696
LC: 16-1064 FH; 16-001065 FC

Motion to stay application for leave to appeal
and hold it in ABEYANCE PENDING
Exhaustion of 30th Court Ingham county
decision newly discovered Jury Misconduct

① This honorable court Accepted Mr. URAZ's
application for leave to appeal on April 21st 2023

② On 05/01/2023 defendant hired a private
Investigater to Investigate possible Juror
Misconduct. (see attached cv/resume of
Mr. Charles Martell with Hamilton Research
Group Assc.

(1)

(3) see Attached brief about Juror #2
and Juror #1 Misconduct

Juror #2 Filled out Jury questionaire
with a false Name Ryan Gibbs Petty
he was sworn in as Juror and during VOIR
DIRE as a Ryan Gibbs Petty, he was
selected as Juror fore person and signed
the Jury verdict form as Ryan Gibbs Petty.
He was impanelled as a Juror under the
Name Ryan Gibbs Petty. However his
Birth name was RYAN Gibbs CARTER
and he was using his wifes Lost name
as Petty and he waited until after defendant
Cmther hearing was over on 4/28/22 and on
4/22/22 he changed his false name from
Petty to CARTER.

(4) Juror #1 LARRY R. Nishan after he was sworn
in and impanelled as Juror and an extensive
VOIR DIRE. He told the court that he was bra
against Turkish people, Defendant wanted to
Know how Mr. Nishan found out about Defendant
~~chang~~ heritage Turkish.
Since Double Jeopardy attaches once to Jury
is sworn in Defendant would like to want

to see what circuit Court Judge would decide to let private investigator to contact Jurors #1,#2 since defendants original trial Judge was retired as of 5/18/23 (Judge CAVANY) and Newly appointed Judge recused himself (Judge Jamo).

Defendant is asking chief Judge Joyce Draganchuck of 30th circuit court to make decision and hold an evidentiary hearing until this matter is resolved.

I appreciate Michigan Supreme Courts patience with this matter.

Respectfully Submitted

Tunc Urez

**RECEIVED**
JUN 2 8 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

Proof of Service
on 06/23/23 This letter/motion and briefs about Juror misconduct was mailed to 30th circuit court chief Judge and prosecutors office. via MDOC legal mail procedure. T

RECEIVED

JUN 28 2023

CLERK LARRY S. ROYSTER
MICHIGAN SUPREME COURT

**You have received a jpay letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/20/2023 11:06:39 PM EST,  Letter ID: 1799088374
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/20/2023 23:06:38

Please do not reply to this email

TO :

HONORABLE JUDGE  JOYCE DRAGANCHUCK
CHIEF CIRCUIT JUDGE
30th Circuit Court, INGHAM COUNTY
313 W. KALAMAZOO ST.
LANSING, MI 48933-2041

FROM:

MR. TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

case#'s 16-1064 FH;16-1065-FC;  COA#s 343695, 343696 SC#s:165560, 165561

RE : JURY #2 USED A FALSE NAME HE MISREPRESENTED HIS IDENTIFICATION  RYAN GIBBS PETTY
(CARTER) , AFTER HE WAS SWORN IN.
(see VOIR DIRE for Juror #2 ,T.T. 10/31/2017, PGS 127,128,130,140,141)
(see juror #2  see TT 11/09/2017 pg .186 who signed the VERDICT form as a. jury foreperson) PER CR. JI. 3.11

JUROR #1 TOLD JUDGE THAT HE WAS BIAS AGAINST
TURKISH PEOPLE AFTER HE WAS SWORN IN AND IMPANELLED AS A JUROR.
(see extensive VOIR DIRE T.T 11/02/2017 pgs 12-23 done by judge/prosecutor/defense attorney to JUROR#1)
(see T.T 11/03/2017 pgs 4-6 BIAS JUROR DECISION BY JUDGE CANADY)

DEAR HONORABLE CHIEF JUDGE DRAGANCHUCK,

WOULD YOU PLEASE ALLOW PRIVATE INVESTIGATOR MR. CHARLES W. MARTELL TO CONTACT JUROR#2
AND JUROR#1; TO FIND OUT ABOUT WHY HE  USED  FALSE NAME (JUROR #2) AND DECLARING HIS  BIAS
AGAINST TURKISH ETHNICITY (JUROR #1) AFTER THEY WERE BOTH IMPANELLED AND SWORN IN.

SINCE JUDGE CANADY  (RETIRED) AND JUDGE JAMO (RECUSED HIMSELF)  ON 06/12/2023.
THIS IS WHY I AM  CONTACTING YOU DIRECTLY. I HAVE NO JUDGE APPOINTED TO ME YET.

THIS IS AN EMERGENCY MOTION/REQUEST BASED ON JUROR #2 MISREPRESENTED HIS IDENTIFICATION
ON HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE AT THE BEGINNING OF THE TRIAL. EVENTUALLY
HE WAS SELECTED AS JUROR #2 AND AS A JURY FOREPERSON
AFTER HE WAS IMPANELLED AND SWORN IN.

PLEASE CHECK WITH MS. D. CHILLERS (JUDGE CANADY'S CLERK) AND MS. LILES (JUDGE JAMO'S CLERK)

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/20/2023 11:06:39 PM EST, Letter ID: 1799088374
Location : MCF
Housing : UNIT 4100B01

ABOUT THE PROOFS SENT BY MR. CHARLES W. MARTELL;
JUROR #2 RYAN GIBBS PETTY (CARTER) USING FALSE NAME ON JURY QUESTIONNAIRE AND DURING VOIR DIRE ON 10/31/2017 AND SIGNED HIS NAME AS "RYAN GIBBS PETTY" ON JURY VERDICT FORM ON 11/09/2017 AS A JUROR FOREPERSON. (see attached)

HERE ARE THE INCONSISTENCIES:

SENT BY PRIVATE INVESTIGATOR MR. CHARLES MARTELL TO JUDGE CANADY ON 05/18/2023 (RETIRED) AND JUDGE JAMO (RECUSED HIMSELF) ON 06/12/2023

> JURY VERDICT FORM SIGNED AS RYAN PETTY ON 11/09/2017

>RYAN GIBBS PETTY (CARTER) (see email dated 05/23/2023)

>HE FILLED OUT JURY QUESTIONNAIRE AS LAST NAME "PETTY" IN 2016/2017 (unfortunately questionnaire is not available to see due to courts only keep them on file for 3 years after the trial) this was told to P/I MARTELL by Gloria McGruder (jury coordinator) however she confirmed that juror#2 name as Ryan Gibbs Petty with a D.O.B 07/21/1972     in their system and Scott Leroy (Court administrator) on 05/24/2023.

>HE DECLARED BANKRUPTCY IN 2001 UNDER THE NAME CARTER.

>ON 09/06/2018 SPEEDING TICKET WAS WRITTEN AS "CARTER"

>MI DRIVER LICENCE UNDER THE NAME "PETTY"

>HE CHANGED HIS LAST NAME TO "CARTER" OFFICIALLY ON   04/28/2022 TO OBTAIN A NEW MI DRIVER LICENSE

>COPY OF HIS APPLICATION FOR AN LLC DATED 08/30/2007 SHOWS HIS LAST NAME AS "CARTER"

>CO-DEBTOR IN BANKRUPTCY SIGNED BY DAWN RENEE (WEAVER) "CARTER"

>HIS MARRIAGE LICENCE WHEN RYAN "CARTER" MARRIED DAWN "CARTER".

>HIS MARRIAGE LICENCE WHEN RYAN GIBBS "CARTER" MARRIED GINA ERIN "PETTY".

>VOTER REGISTRATION CARDS UNDER TWO DIFFERENT NAMES (PETTY-CARTER)

>HIS BIRTH CERTIFICATE WHEN RYAN GIBBS "CARTER" WAS BORN in July 21st. of 1972; TO HIS MOTHER MARILYN E. "CARTER" (76 YEARS OLD A HIS FATHER ; GLEN EDWARD "CARTER" (deceased).

MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS INTEGRITY IN QUESTION.

JUROR #1 WAS KEPT TOTAL OF 9 DAYS IN IMPANELED JUROR AND SWITCHED WITH AN ALTERNATE JUROR AFTER CLOSING ARGUMENTS AND  RIGHT BEFORE JURY RETIRED TO REACH A VERDICT.

JUROR#1 WAS STRICKEN (STRIKE) WITH AN ALTERNATE JUROR "KNOWINGLY" NOT "RANDOMLY". THIS WAS A JUDICIAL LAW MAKING AND RULE MAKING WHICH PER (MCL 768.18 AND MCR. 6.411) WHICH CREATED ABSURD RESULTS DOCTRINE.

JUDGE CANADY NEVER HELD A REMMER HEARING TO FIND OUT HOW JUROR #1 WOULD BE BIAS AGAINST TURKISH ETHNICITY AND HOW DID HE FIND OUT ABOUT DEFENDANT'S ETHNICITY AND WHETHER HE POISONED THE OTHER JUROR'S DURING THOSE 9 DAYS.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/20/2023 11:06:39 PM EST,   Letter ID: 1799088374
Location : MCF
Housing : UNIT 4100B01

IMPROPER PROCEDURE UTILIZED AT TRIAL RESULTED JUROR BEING RELEASED FROM THE PANEL. MCR 6.411
THE PROPER WAY TO DETERMINE ALTERNATE JUROR IS BY RANDOM SELECTION.

ALTHOUGH COURT OF APPEALS DID NOT FIND ANY
"EXTRANEOUS INFLUENCE" ON JURY ON THEIR DECISION ON 01/19/2023. COA NEVER READ DEFENDANT'S BRIEF ABOUT "IMPROPER DISMISSAL OF JUROR #1".

IMPANELLING THE JURY

MCR 2.511(D) (2) JURY IS BIASED FOR OR AGAINST A PARTY OR ATTORNEY.

A NEW TRIAL MAYBE GRANTED PER MCR 2.611(A)(1)(b) MISCONDUCT OF THE JURY....

BOTH JURY MISCONDUCTS CREATED MANIFEST INJUSTICE AND NECESSITY IN DEFENDANT'S TRIAL.

SEE ATTACHED BRIEFS AND PLEASE ORDER AN EVIDENTIARY HEARING TO BRING IN JUROR #2 (RYAN GIBBS PETTY) AND JUROR #1 (LARRY R. NISHON)
TO TESTIFY UNDER OATH.

RESPECTFULLY SUBMITTED

*Tunc Uraz*

TUNC URAZ

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/19/2023 7:55:31 PM EST, Letter ID: 1798101914
Location : MCF
Housing : UNIT 4100B01

RECEIVED
JUN 28 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/19/2023 19:55:30

Please do not reply to this email

1) JUROR MISCONDUCT/ MANIFEST INJUSTICE

WAS JUROR #2 RYAN GIBBS PETTY (CARTER) PRESENTED FALSE ANSWERS IN HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE JURY SELECTION AND ULTIMATELY BECAME JURY FOREPERSON ;

WAS HIS VERDICT NOT RELIABLE WHICH PREJUDICED DEFENDANT BECAUSE ULTIMATELY MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS INTEGRITY IN QUESTION?

THEREFORE DEFENDANT IS ASKING THIS HONORABLE COURT ;

1) REVERSE AND REMAND UNRELIABLE VERDICT OF "GUILTY"; VACATE DEFENDANT'S SENTENCES AND GRANT A NEW TRIAL ; ONCE JURY IS SWORN IN; DOUBLE JEOPARDY ATTACHES THEREFORE CANNOT BE CHARGED TWICE FOR THE SAME CRIMES AGAINST HIS FIFTH AMENDMENT RIGHTS; U.S V JORN 400 US 470 (1971) DOUBLE JEOPARDY generally ATTACHES at the time the jury is selected and sworn" people v MEHALL 454 Mich 1 (1997).
IF ANY MISCONDUCT BY IMPANELLED JURORS RISES IT WOULD BE A "MANIFEST INJUSTICE/NECESSITY" PER
MCR 2.511(D)(2)jury bias against a party...
MCR 2.611(A)(1)(b)A new trial may be granted....misconduct of a juror....

2)DEFENDANT IS ASKING HONORABLE COURT ;TO ORDER AN EVIDENTIARY HEARING BASED ON JUROR#2 FOREPERSON PROVIDING FALSE ANSWERS ON JURY QUESTIONNAIRE AND DURING HIS VOIR DIRE.
AND
JURORS#1,#2,#11 MISCONDUCTS UNDER OATH

3) DEFENDANT IS ASKING THIS HONORABLE COURT; TO ORDER/PRODUCE JUROR #2 JURY QUESTIONNAIRE AND HIS FEDERAL FIREARM PURCHASE APPLICATION FORM BASED ON HIS TESTIMONY HE GAVE UNDER OATH DURING VOIR DIRE. (PENALTY FOR PERJURY UNDER OATH)

4) HAVE PRIVATE INVESTIGATOR COME AND TESTIFY IN OPEN COURT ABOUT HIS FINDINGS (CHARLES W. MARTELL)

5) COURT TO ORDER COPY OF HIS JURY QUESTIONNAIRE FROM 2016- 2017 AND HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER
18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...

FROM TRIAL TRANS. (in part)

JUROR# 2 RYAN GIBBS PETTY (CARTER), FALSE LAST NAME WHEN HE FILLED OUT HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE ON 10/31/2017.
(SEE ATTACHED T.T. 10/31/2017, PGS 127,128,130,140,141)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1798101914 [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/19/2023 7:55:31 PM EST, Letter ID: 1798101914
Location : MCF
Housing : UNIT 4100B01


(IN PART)

10/31/2017 JURY VOIR DIRE

PG. 127

JUROR #2

RYAN GIBBS PETTY

JUDGE : JUROR #2 WHAT IS YOUR COMMUNITY?

JUROR#2 :HOLT.......

(IN PART)

PG. 141

ATTORNEY JACOB A. PERRONE TO JUROR#2 : "WHAT IS YOUR POSITION ON GUN RIGHTS?

JUROR #2: I HAVE FIREARMS. I OBTAINED THEM LEGALLY. I HAVE THEM REGISTERED AND I CARRY THEM LEGALLY.

(IN PART) AFTER JURY REACHED THEIR VERDICT

11/09/2017 PG. 186

JUDGE: WHO IS THE FOREPERSON?

JUROR#2: YES

JUDGE : DID YOU SIGN THE FORM?

JUROR#2: I DID YOUR HONOR


>>>BACKGROUND AND FACTS:


ON 05/01/2023, DEFENDANT HIRED A LICENSED PRIVATE INVESTIGATOR :

MR. CHARLES W. MARTELL (AGENCY# 3701206460)
(SEE ATTACHED CREDENTIALS)

HAMILTON RESEARCH ASSOCIATES, LLC

DEFENDANT ASKED MR. MARTELL TO CONTACT/INVESTIGATE JURORS #1 , #2, #11 AND HIS CHOICE OF A FOURTH JUROR; TO FIND OUT IF JUROR#1 TAINTED/POISONED IMPANELED SWORN JURORS ABOUT HIS "BIASNESS " AGAINST TURKISH PEOPLE AND HOW HE FOUND OUT DEFENDANT'S ORIGIN BEING TURKISH.

JUROR#1 :LARRY R. NISHON'S DISCLOSURE ON THIRD DAY OF TRIAL (11/03/2017) AFTER HE WAS SWORN IN AS A JUROR ; HE DISCLOSED TO COURT THAT HE WAS BIASED AGAINST TURKISH PEOPLE IF THE DEFENDANT WAS FROM TURKEY....BIAS JUROR WAS KEPT WITH IMPANELED SWORN JURORS NEXT 9 DAYS AND DISMISSED RIGHT BEFORE JURY RETIRED TO REACH THEIR VERDICT. (SEE DEFENDANT'S "IMPROPER DISMISSAL OF JUROR #1" BRIEF)

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1798101914 [P 3/3]

## You have received a *jpay* letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/19/2023 7:55:31 PM EST,  Letter ID: 1798101914
Location : MCF
Housing : UNIT 4100B01

SEE T.T. 11/02/2017 PGS. 12,13,15,16, 21,22,23 (EXTENSIVE VOIR DIRE WERE DONE TO JUROR#1 BY JUDGE CANADY , THEN PROSECUTOR ROTH AND DEFENDANT'S ATTORNEY JACOB A. PERRONE)

(SEE T.T.11/03/2017 PGS 4,5) JUDGES ABUSE OF DISCRETION ABOUT NOT DISMISSING JUROR#1 AND NOT HOLDING A REMMER HEARING TO SEE IF THE IMPANELED SWORN JURORS ARE POISONED/TAINTED BY JUROR#1.
U.S. v. REMMER, 347 US 227 (1954)

JUDGE CANADY'S DECISION WAS TO KEEP JUROR#1 NEXT 9 DAYS IN IMPANELED SWORN JURORS AND REPLACE HIM WITH AN ALTERNATE JUROR RIGHT AFTER CLOSING ARGUMENTS. JUDGE DID NOT WANTED TO START A STAMPEDE WITH OTHER JURORS.....
(SEE T.T. 11/09/2017 PGS. 181-182)

JUDGE CANADY CREATED HIS OWN RULE INSTEAD FOLLOWING MCR 6.411 AND MCL 768.18 REPLACING JUROR ALTERNATE KNOWINGLY INSTEAD OF RANDOMLY. ("JUDICIAL LAW MAKING, ABSURD RESULTS DOCTRINE" BY JUDGE CANADY) SEE PEOPLE V. JAVENS, 469 MICH 1032 (2004).

DEFENDANT WANTED TO LEARN; HOW JUROR #1 FOUND OUT DID DEFENDANT'S HERITAGE (TURKISH) BECAUSE IF JUROR #1 SEARCHED INTERNET ABOUT DEFENDANT'S NAME: TUNC URAZ SOMEHOW HOW WOULD HE KNOW THAT NAME LIKE DEFENDANT'S WOULD BE TURKISH...

JUROR#11 PAMELA ANN CASTILLO WAS SEEN TALKING TO COMPLAINANT'S (ERIKA MELKE) MOTHER KATHERINE BECKETT ON FIRST DAY OF TRIAL DURING POTENTIAL JUROR POOL (THEY WERE SITTING NEXT TO EACH OTHER) WHEN DEFENDANT ASKED HIS ATTORNEY PERRONE TO FIND OUT ; WHY COMPLAINANT'S MOTHER WAS SITTING/ MIXED IN WITH POTENTIAL JURORS?
PROSECUTOR ROTH'S RESPONSE WAS " WELL SHE IS NOT LISTED AS A WITNESS..."

ON 01/24/2018 (SEE SENTENCING TRANS. PG.25) DURING SENTENCING WHEN DEFENDANT TOLD/ASKED JUDGE WHY HE ALLOWED COMPLAINANT'S MOTHER SIT WITH POTENTIAL JUROR POOL?

JUDGE'S RESPONSE WAS: "ANYBODY CAN COME IN AND SIT ;  I CAN NOT EXCLUDE ANYONE SITTING IN THE COURT ROOM DURING JURY SELECTION".

1)
DEFENDANT WANTED TO KNOW ; WHAT DID JUROR#11 PAMELA A. CASTILLO TALKED TO COMPLAINANT'S MOTHER ABOUT AND WHAT DID HER MOTHER SAY ABOUT DEFENDANT TO HER (ANY COMMENTS WHICH WOULD BE JURY TEMPERING ) EVEN AFTER ONE BEING SELECTED AS A JUROR

2) DID BIAS JUROR #1 EVER MADE ANY COMMENTS ABOUT TURKISH PEOPLE HERITAGE TO IMPANELED JURORS NEXT 9 DAYS WHEN HE WAS KEPT WITH THE SWORN JURORS.

JUROR #2; JURY FOREPERSON;
RYAN GIBBS PETTY (CARTER); see attached e-mail messages sent to DEFENDANT by P/I MARTELL

ON 5/15/2023 DEFENDANT SENT P/I MARTELL INFORMATION ABOUT JUROR#2 RYAN GIBBS PATTY

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1798101903 [P 1/2]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/19/2023 7:55:30 PM EST, Letter ID: 1798101903
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/19/2023 19:55:29

Please do not reply to this email

3) JUROR MISCONDUCT/ MANIFEST INJUSTICE

MANIFEST INJUSTICE: HAS BEEN DEFINED AS "[A]N ERROR IN THE TRIAL COURT THAT IS DIRECT, OBVIOUS, AND OBSERVABLE. (BLACK'S LAW DICTIONARY 974 (7th Ed. 1989) IN OTHER WORDS " A SHOWING OF MANIFEST IN JUSTICE REQUIRES THAT THERE EXISTS A FUNDAMENTAL FLOW IN THE COURT'S DECISION THAT WITHOUT CORRECTION WOULD LEAD TO A RESULT THAT IS BOTH INEQUITABLE AND NOT IN LINE WITH APPLICABLE POLICY.

REVIEW IS LIMITED TO WHETHER FAILURE TO REVIEW WOULD DEPRIVE THE DEFENDANT OF A FAIR TRIAL FO RESULT IN MANIFEST INJUSTICE. PEOPLE V OSBY 291 MICH APP 412 (2011)

MCR 2.510(C) provides that on completion, the jury questionnaire shall be filled with the court clerk or the jury board. The only person's allowed to examine the questionnaire are; the judges of the court; clerk and deputy clerks; parties to actions in which the juror is called to serve and their attorneys; and persons authorized access by court rule or by court order. The attorneys must be given a reasonable time to examine the questionnaires before being called on to challenge for cause. The questionnaires must be kept on file for 3 years from the time they are filled out.

MI CRIM JI 3.11

YOU SHOULD FIRST CHOOSE A FOREPERSON. THE FOREPERSON SHOULD SEE TO IT THAT YOUR DISCUSSION ARE CARRIED IN A BUSINESSLIKE WAY AND THAT EVERYONE HAS FAIR CHANCE TO BE HEARD.

THEREFORE DEFENDANT IS ASKING THIS HONORABLE COURT TO ORDER AN EVIDENTIARY HEARING TO EXPAND THE RECORD.

DEFENDANT IS ASKING THIS HONORABLE COURT TO VACATE HIS SENTENCE AND GRANT HIM A NEW TRIAL.

1) REVERSE AND REMAND UNRELIABLE VERDICT OF "GUILTY"; VACATE DEFENDANT'S SENTENCES AND GRANT A NEW TRIAL ; ONCE JURY IS SWORN IN; DOUBLE JEOPARDY ATTACHES THEREFORE CANNOT BE CHARGED TWICE FOR THE SAME CRIMES AGAINST HIS FIFTH AMENDMENT RIGHTS; U.S V JORN 400 US 470 (1971) DOUBLE JEOPARDY generally ATTACHES at the time the jury is selected and sworn" people v MEHALL 454 Mich 1 (1997).
IF ANY MISCONDUCT BY IMPANELLED JURORS RISES IT WOULD BE A "MANIFEST INJUSTICE/NECESSITY" PER
MCR 2.511(D)(2)jury bias against a party...
MCR 2.611(A)(1)(b)A new trial may be granted....misconduct of a juror....

2)DEFENDANT IS ASKING HONORABLE COURT ;TO ORDER AN EVIDENTIARY HEARING BASED ON JUROR#2 FOREPERSON PROVIDING FALSE ANSWERS ON JURY QUESTIONNAIRE AND DURING HIS VOIR DIRE.
AND
JURORS#1,#2,#11 MISCONDUCTS UNDER OATH

**You have received a jpay letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/19/2023 7:55:30 PM EST, Letter ID: 1798101903
Location : MCF
Housing : UNIT 4100B01

3) DEFENDANT IS ASKING THIS HONORABLE COURT; TO ORDER/PRODUCE JUROR #2 JURY QUESTIONNAIRE AND HIS FEDERAL FIREARM PURCHASE APPLICATION FORM BASED ON HIS TESTIMONY HE GAVE UNDER OATH DURING VOIR DIRE. (PENALTY FOR PERJURY UNDER OATH)

4) HAVE PRIVATE INVESTIGATOR COME AND TESTIFY IN OPEN COURT ABOUT HIS FINDINGS (CHARLES W. MARTELL)

5) COURT TO ORDER COPY OF HIS JURY QUESTIONNAIRE FROM 2016- 2017 AND HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER
18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...


RESPECTFULLY SUBMITTED

*Tunc Ura*

TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442


Proof of Service
    This Brief and attachments were Mailed to
30th Circuit court chief Judge and Prosecutors
office on 06/22/23 VIA MDOC
Legal Mail Procedure
                        *Tunc Uraz*

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : CHARLES MARTELL, CustomerID: 30906295
To : TUNC URAZ, ID: 114653
Date : 6/9/2023 3:41:11 PM EST, Letter ID: 1790481601
Location : MCF
Housing : UNIT 4100B01

RECEIVED
JUN 28 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

TONY,

This morning I mailed a letter to JUDGE JAMO. The letter included the following documents:

HRA Investigative report dated MAY 22, 2023 re: RYAN GIBBS (CARTER) PETTY
EXHIBIT NO ! - conversations with D CHILLERS, G McGRUDER, & S LEROY
and blank juror Questionnaire form
EXHIBIT NO 2 - trail transcript of JUDGE CANADY doing VOIR DIRE of Juror Petty
EXHIBIT NO 3 - bankruptcy documents filed by CARTER/PETTY
EXHIBIT NO 4 - MI driver's license of PETTY/CARTER
EXHIBIT NO 5 - Included in NO 4
EXHIBIT NO 6 - MI documents of TATTOO in name of CARTER
EXHIBIT NO 7 - Voter registration records in name of PETTY/CARTER

I am not certain that the judge will pay much attention to this evidence, even though he should. A good judge would immediately declare a mistrial, and either let you out of jail, or at least try you again.

I did not raise the issue of a biased juror because I think the issue with the greatest chance of success is the JUROR MISCONDUCT.

Now I have said this before. I need you to get me some more money so I can do further work. I will send you an INVOICE tomorrow.

CHUCK MARTELL
HAMILTON RESEARCH ASSOCIATES, LLC
CELL: 248-804-8877

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send

**You have received a jpay letter, the fastest way to get mail**

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 6/20/2023 3:03:43 PM EST,   Letter ID: 1798780217
Location : MCF
Housing : UNIT 4100B01

----- İletilmiş Mesaj -----

Kimden: "Chuck Martell" <cwmartell.HRA@live.com>

Kime: "Tony Ur" <tonyur@gmail.com>, "aysemu@yahoo.com" <aysemu@yahoo.com>

Bilgi:

Gönderildi: 22:00''20e' 20 Haz 2023 Sal

Konu: EMAIL FROM LILES

TONY,


Yesterday, June 19, 2023 I sent an email to JANELL LILES asking about the replacement JUDGE. This morning I received a response indicating that "assigning a new judge could take some time".


I agree with you, TONY. If you closely read my email to LILES I pointed out that the single most important fact was that CARTER/PETTY committed the crime of FRAUD and PERJURY either with his driver's license in MICHIGAN or with the INGHAM COUNTY court.


DRIVER'S LICENSE INFORMATION


When CARTER originally applied for his first driver's license in 1982 when he was 16 years old, his name was RYAN GIBBS CARTER. He never changed the name to PETTY until 2022.


I am a former police officer and I know that the laws in MICHIGAN require that all of the information on a person's driver's license must be current and correct. The law applies to "ALL INFORMATION" including the name, the address, the date of birth, the endorsements, the sight prescriptions, etc. This law is the reason that a new bride, who took her husbands name, has to make the correction on her driver's license "IMMEDIATELY".


When a police officer stops a vehicle and asks to see the driver's license of the driver of a car he has pulled over, the first thing he looks at is the name, the address, and the date of birth. The officer will always ask "is this your current address".


In times past, there had to be a "CHANGE OF ADDRESS" sticker applied to the back of a driver's license card. In today's world, however, the change to a driver's license information can be done instantly by computer in the MSOS local office. A new driver's license paper document is then printed out by the MSOS personnel and given to the MICHIGAN resident. The "hard copy" license is mailed to the address on the license.

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

From : aysem uraz, CustomerID: 20469429
To  : TUNC URAZ, ID: 114653
Date : 6/20/2023 3:03:43 PM EST,   Letter ID: 1798780217
Location : MCF
Housing : UNIT 4100B01

At some point in his serving as a JUROR in the trial of URAZ, CARTER/PETTY would have been sworn in under penalty of PERJURY. IF he was being honest, he would have informed the court of the duplicity of his names. It is unfortunate that the court never checked him out as they should have done:

      NAME

      ADDRESS

      DATE OF BIRTH

      SOCIAL SECURITY NUMBER

      DRIVING RECORD

      VEHICLE REGISTRATIONS

      CRIMINAL HISTORY

      COURT LITIGATION HISTORY

If the court had done their due-diligence in checking out their jurors, with PETTY they would have discovered that he lied under oath, the duplicity of his two names, and the fact that he filed bankruptcy in the name of CARTER. The court investigator would have discovered that the name on his driver's license was CARTER, and that he had the same social security number in both names. The INVESTIGATOR would also have discovered that CARTER/PETTY had previous vehicles registered in the name of CARTER. I seriously doubt that CARTER/PETTY would have been accepted as a juror, had the court known those issues.

SIGNATURE ON THE VERDICT FORM

If it is true that as the FOREMAN of the jury CARTER/PETTY signed the verdict form as RYAN GIBBS PETTY in the year of 2017, then he committed an even additional act of FRAUD and PERJURY. At the time he signed that form with his name as PETTY, the name on his driver's license was still CARTER.

MOTION FOR A MISTRIAL

The fact remains that they did not discover those issues, and accepted him as a member of your jury. That mistake was on the court, and not on you. When a motion is filed for a MISTRIAL with a claim of JUROR MISCONDUCT, a wise judge should immediately declare a mis-trial and release you from jail.

CHANCE OF SUCCESS

Tony, while I cannot guarantee that this will succeed in getting you released (that decision is not mine to make), I have had great luck in past cases of convincing a judge to make that decision.

**You have received a JPAY letter, the fastest way to get mail**

From : aysem uraz, CustomerID: 20469429
To    : TUNC URAZ, ID: 114653
Date : 6/20/2023 3:03:43 PM EST.   Letter ID: 1798780217
Location : MCF
Housing : UNIT 4100B01

Sent from Mail for Windows

CHARLES MARTELL

LICENSED PRIVATE INVESTIGATOR

HAMILTON RESEARCH ASSOCIATES, LLC

6632 TELEGRAPH RD

SUITE 288

BLOOMFIELD HILLS, MI 48301

OFFICE: 248-269-9090

CELL: 248-804-8877

EMAIL: cwmartell.hra@live.com

PRIVILEGED – NOT SUBJECT TO SUBPOENA



# Hamilton Research
### ASSOCIATES, LLC

## CHARLES MARTELL

6632 Telelgraph Rd Suite 288
Bloomfield Hills, MI 48301
cwmartell.hra@live.com

OFFICE 248-269-9090
FAX 248-413-8003
VERIZON CELL 248-804-8877

P.O. Box 30052
Lansing, Michigan 48909



Phone: (517) 373-0120

# Michigan Supreme Court
## Office of the Clerk

July 27, 2023

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S Sheridan Dr
Muskegon, MI 49442

RE: *People v Tunc Uraz*, SC 165560

This is in response to a letter received from you today requesting the Register of Actions in the above captioned case.

A copy of the Register of Actions is enclosed which shows that the Motion and Supplement dated 4-28-2023 was received and docketed on 5-24-2023.

Respectfully,
Clerk's Office

Enclosure

07/24/23

To: Mr. Larry Royster
Supreme Court Clerk, Michigan
Po Box 30052, Michigan Hall of Justice
Lansing MI 48909

From: Tunc URAZ #114653
Muskegon correctional facility
2400 S. Sheridan Dr.
Muskegon, MI 49442



RECEIVED
JUL 27 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

Re: Lost Briefs and letters sent on 04/28/23
case# 165560, 16561 CoA# 343695, 343696
LC# 161064-FH, 161065-FC
Supplemental docs, Motion to accept.

Dear clerk.

Would you please kindly check your records
if attached letter and motion along with supplemental
Briefs Docs sent on 04/28/23. Please the
copies of a letter and a motion and proof of mailing
from MDOC mail room roster. It was lost before.
  I appreciate your help and diligence in this
matter. I did write to Local Postmaster to
investigate 3 weeks after the date 04/28/23.
  Respectfully submitted, ⊗ If received please notify me.
  Tunc Uraz                  or put it on the Register of
                                      Actions

STATE of MICHIGAN 04/22/2023

Michigan Supreme Court

People

RECEIVED

JUL 27 2023

LARRY S. ROYSTER
CLERK SUPREME COURT

V

SC # 165560, 165561
COA # 343695, 343696
LC # 16-1064-FH, 16-1065-FC

TUNC URAZ

Motion of defendant-Appellant to submit
supplemental documents for application for Leave
to appeal for Standard 4 Briefs

Defendant Appellant is asking this honorable court's
Mercy, understanding and tolerance to honor his motion
to accept supplemental documents for his application
for leave to appeal for his Standard 4 Brief which
was submitted on 4/11/23, this honorable court
granted defendant request to exceed page limit
on 4/18/23 and accepted his Brief for filing on
4/21/23.
      The reason defendant sending these documents
late is due to number of photocopies, he is allowed
to have in prison due his "indigent status"
      I do appreciate this honorable court's understanding
and mercy to this matter.
Respectfully submitted
      Tunc Uraz

Proof of Service

Proof of Service

This motion, and its attachments are served to
UEA IDOC expedited mail on 4/28/2023
TO Inghm County Prosecuter's office. Kahle A. enno

TCnc Vin

RECEIVED
JUL 27 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

CAL-617
03/02
4835-0617

## Legal Mail and Court Filing Fee Logbook – Mail Room/Control Center

Facility: _____

Monthly Report: _____

| Date Received From Housing Unit Staff | Prisoner Name/Number | Court Docket Number or "New Case" | Type of Disbursement | | | Housing Unit Staff Initials | Filing Fee Date/Time disbursement faxed or hand delivered to Business Office | Filing Fee Date/Time check received from Business Office | Date/Time Placed in Outgoing Mail | Comments and Mail Room Initials |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Postage | Filing Fee | Both | | | | | |
| 4/18/23 | Winz 414653 | 1655601 | ✓ | N | ✓ | ⊘ | / | / | 4/28/23 MD | MD 12:30 pm |
| 4/28/23 Winz 114653 | | 1655601 | ✓ | N | N | ⊘ | / | / | 4/28/23 MD | MD 12:30 pm |

4/28/23

To  Mr Larry Royster
Supreme court Clerk
PO Box 30052, Michigan Hall of Justice
LANSING, MI 48909

from  Tunc URAZ 114653                Case #165560, 165561
Muskegon Correctional facility         COA# 343695, 343696
2400 S. Sheridan Dr.                    Ingham CC: 161064-FA
Muskegon, MI 49442                          161065 FC

Re.  Supplemental Docs for application for leave to appeal
for Supreme court. Standar 4

Dear Mr Royster
Would you please kindly accept attached
documents to this letter for my briefs which was
Mailed on 4/11/23. The reason these documents
were Late due to number of photocopies I am allowed
to have in prison due to "Indigent" status
    I do appreciate your understanding to this matter.

Respectfully Submitted

Tunc Uraz

Proof of Service  the attached docs. are served via
MDOC expedited Legal mail on 4/28/2023 to
Ingham County prosecutors office Ms: Kahla D. Crino



P.O. Box 30052                                                    Phone: (517) 373-0120
Lansing, Michigan 48909

# Michigan Supreme Court
## Office of the Clerk

August 4, 2023

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S Sheridan Dr
Muskegon, MI 49442

RE: *People v Tunc Uraz*, SC 165560-165561

This is in response to a letter received from you yesterday raising various issues about ongoing trial-court actions.  The cases referenced above are an appeal from trial-court judgments entered in 2018.  You may not add current matters to your appeal.

If you have a recent trial-court order or opinion related to the new issues you are attempting to raise through your most recent letter, you may appeal it to the Court of Appeals (PO Box 30022, Lansing, MI 48909).  If you receive an order or opinion of the Court of Appeals with which you are dissatisfied, then you may file an application for leave to appeal to this Court under MCR 7.305.

The Court has access to the full trial-court record, as well as anything filed in the Court of Appeals.  So it is not necessary to continue supplementing the record.  With very limited exceptions, an appellate court is limited to reviewing the pleadings and evidence that the trial court reviewed when it issued the judgments being appealed.

In addition, you may not file papers into the above-referenced cases or into any case without serving opposing counsel and filing proof of service.

We are returning your papers.

Respectfully,
Office of the Supreme Court Clerk

Enclosure

State of Michigan                                    7/31/23
Michigan Supreme Court

People  v  Tunc URAZ

SC# 165560, 165561
COA #'s 343695, 343696
LC# 16-1064 FH; 16-1065FC

RECEIVED
AUG 03 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

Dear Clerk,
this letter is about Declaratory Judgement, Declaratory
policy per MCR 2.612(C)(3), MCLS 2.305, MCLS 24.263
MCR 2.605, Froud on court by attorneys, prosecuters who
testified on 10/04/21 and 4/13/22 by "omitting" necessary
information about Mr. Jacob A. Perrone's mental impairment(s)
and Ingham County chief Appellate prosecuter holding a
vital document(s) related to Perrone's mental impairment(s).
Kahla D. Crino. please see attached Briefs.
     However when this declaratory Judgement. mailed to
Ingham county circuit court on June 22/23 Judge
Jamo was my new appointed Judge because Judge
CANADY retired.
     I mailed the Declaratory Judgement Briefs to
current Chief Judge Dragachuk since she would
be impartial to the decision process.
     On 06/23/23 A new Judge Aquilina was appointed
because Judge Jamo recused himself per MCR 2.003
on 06/12/23. I am informing Michigan Supreme court

07/24/23

To: Honorable Judge Aquilina
    30th Circuit Court Judge
    313 W. Kalamazoo St.
    Lansing, MI 48933, 4641

From: T. W.C. [illegible] # 114653
     Muskegon Correctional Facility
     2400 S. Sheridan Dr.
     Muskegon, MI 49442

Re: Declaratory Ruling, Declaratory Judgment Remedies
    Removal per MCR 2.003(B)(c)(a)(b)(c)(d)
    MCL (remedy)

Dear Honorable Judge Aquilina

    Per MCR 2.003(B)(c)(a)(b)(c)(d) of Cannon # 2
of MCJC:
        A Judge shall avoid impropriety and the
appearance of impropriety, in all activities, when the Judge
has shared personal, declaratory, or remedy relationship in
a case (proceeding) should therefore is required
        Judge to recuse or disqualify.
        Cite law Williams 546 US 368
        Johnson v. Patagonia Court [illegible]   203 Mich
        App. Court 448 (1993)
        Switzyako U., et al claims Judge recuse 513 124
        Caperton v. Massey                        5/04/

        Thank you

                              CC To Judge Draznachek 7/24/23

*You have received a* **jpay** *letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/18/2023 11:29:19 PM EST,   Letter ID: 1818830929
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/18/2023 23:29:18

Please do not reply to this email

TO :

HONORABLE JUDGE AQUILINA
CIRCUIT COURT JUDGE
30th Circuit Court, INGHAM COUNTY
313 W. KALAMAZOO ST.
LANSING, MI 48933-2041

FROM:

MR. TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

RECEIVED
AUG 03 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

30th.Cir. Ct.# s 16-1064 FH;16-1065-FC;
COA#s 343695, 343696
SC#s:165560, 165561

RE :
DECLARATORY RULING & DECLARATORY JUDGEMENT PER MCR 2.612(C)(3) & MCLS 2.305, MCR 2.605,
MCLS 24.263, EXHIBITS RELATED TO (FRAUD UPON COURT),
RECUSAL OF JUDGE AQUILINA PER SEPARATION-OF- POWERS- CLAUSE

DEAR HONORABLE JUDGE AQUILINA,

THE LAW CLERK OF CHIEF JUDGE DRAGANCHUK; PER MICHAEL LEWYCKY REQUEST AND DENIAL OF
ORIGINAL EXHIBITS WHICH WERE SENT VIA EMAIL TO YOU ON 07/04/23; I WAS TOLD THAT SINCE INGHAM
COUNTY CIRCUIT COURT DOES NOT ACCEPT ELECTRONIC FILING , I AM SENDING YOU ORIGINALS IN
ORDER PER EXHIBITS A THROUGH F. (see copy of EMAIL MESSAGE sent on 7/5/23 BY MR. LEWYCKY).

(please advise/show me the local court rule about not accepting electronic exhibit submission)

SINCE JUDGE CANADY BECAME A VISITING JUDGE   AND JUDGE JAMO (RECUSED HIMSELF) ON
06/12/2023.

YOU WERE APPOINTED ON 06/23/2023 BY CHIEF JUDGE DRAGANCHUK.

HOWEVER THE REASON BRIEFS WERE MAILED (DECLARATORY JUDGEMENT/RULING) TO CHIEF JUDGE
DRAGANCHUK, THAT SHE WOULD BE IMPARTIAL PARTY TO READ THE BRIEFS WHICH IMPLICATES 3
(THREE) JUDGES FROM INGHAM COUNTY 30th. CIRCUIT COURT INCLUDING YOU HONORABLE JUDGE
AQUILINA.
OTHER JUDGES ARE (R. GARCIA, C. CANADY III)

JUDGE AQUILINA IS IMPLICATED IN DECLARATORY JUDGEMENT FRAUD UPON COURT BRIEFS BASED ON

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/18/2023 11:29:19 PM EST,   Letter ID: 1818830929
Location : MCF
Housing : UNIT 4100B01

HER KNOWLEDGE OF JACOB A. PERRONE'S MENTAL IMPAIRMENTS/EPISODES AND SHE FAILED TO REPORT IT TO ATTORNEY GRIEVANCE COMMISSION PER MRC 9.104(1-6), MCR 9.113(A) MCR 9.121,MRPC 8.1(a)(1)(2), 8.3(a)(b), 8.4(a)(b)(c)(e)
MCJC CANONS #2(A)(B)(C), #3 (I)(5)(8)(9), #3 B(2)(3)

HONORABLE JUDGE AQUILINA READING AND DECIDING THIS DECLARATORY JUDGEMENT BRIEFS WOULD BE VIOLATING THE "SEPARATION OF POWERS" CLAUSE.

FOR DEFENDANT MR. URAZ WILL EVER RECEIVE A FUNDAMENTALLY FAIR AND IMPARTIAL DECISION/OPINION ; AS A STARTING POINT, THE JUDGE MUST BE SEPARATED TO HAVE AN UNBIASED OPINION. THE IMPARTIALLY OF MIND CANNOT BE ACHIEVED WHEN THE VERY SAME JUDGE (AQUILINA) BEING IMPLICATED IN FRAUD UPON COURT BRIEFS (DECLARATORY); THIS WOULD BE THE INTERNAL CONFLICT OF INTEREST.

JUDGE AQUILINA'S KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENT EPISODES
SEE ATTORNEY ERIC SCHROEDER'S RESPONSE TO AGC ON 02/06/2023 PG.# 3 PRAG.2 starting with "One issue that......") EXHIBIT

THEN CHIEF JUDGE GARCIA WAS IMPLICATED ON 12/12/2017 AT JUDGES CHAMBERS MEETING/HEARING TO DETERMINE PERRONE'S MENTAL IMPAIRMENT EPISODES AND IF HE CAN CONTINUE TO REPRESENT DEFENDANT MR. URAZ. JUDGE GARCIA WAS OVERSEE THE OFFICE WHO APPOINTED ATTORNEYS TO INDIGENT DEFENDANTS ALONG WITH GEORGE STRANDER AND LEIGH ANN WHIPPLE.

>(SEE ATTACHED EMAIL SENT BY MR. RUSSELL CHURCH TO DEFENDANT URAZ)


JUDGE CLINTON WAS IN THE KNOW AT ALL TIMES ABOUT PERRONE'S MENTAL IMPAIRMENT EPISODES
>(see 12/12/2017 and 12/13/2017 HEARING transcripts, WHERE DEFENDANT DID NOT HAVE " CONFLICT FREE ATTORNEY " TO REPRESENT HIS INTEREST, WHERE PERRONE WAS DEFENDING HIS UNTENABLE INTEREST ADVERSE TO DEFENDANT'S.

>see defendant's appointed sentencing attorney DUANE SILVERTHORN'S RESPONSE TO ATTORNEY GRIEVANCE COMMISSION see pg 3 #7.1 answer on sent by AGC ON 03/31/2023

ANOTHER FRAUD WAS IF YOU WOULD LOOK AT THE REGISTER OF ACTIONS BETWEEN 12/13/2017 TILL 01/24/2018 (SENTENCING DAY) THERE IS NO ENTRY DONE ON 12/18/2017 (ANOTHER COVER UP) ABOUT PERRONE'S SECOND MENTAL IMPAIRMENT EPISODE WHEN THEN PROSECUTOR CHARLES KOOP SENT NOTIFICATION TO ATTORNEY SILVERTHORN YET BOTH KOOP AND SILVERTHORN FAILED TO SHARE IT WITH DEFENDANT AND HIS APPEAL ATTORNEY MS. SUSAN K. WALSH THESE VITAL DOCUMENTS.

I APPRECIATE YOUR HELP AND UNDERSTANDING IN THIS MATTER. PLEASE ADVISE AT YOUR EARLIEST CONVENIENCE.


RESPECTFULLY SUBMITTED

*Tunc Uraz*

MR. TUNC URAZ # 114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1818830929 [P 3/3]

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/18/2023 11:29:19 PM EST,    Letter ID: 1818830929
Location : MCF
Housing : UNIT 4100B01

see MRPC 8.3(a)(b)(e)REPORTING PROFESSIONAL MISCONDUCT
(a) A LAWYER HAVING A KNOWLEDGE THAT ANOTHER LAWYER HAS COMMITTED A SIGNIFICANT VIOLATIONS OF THE RULES OF PROFESSIONAL CONDUCT THAT RAISES A SUBSTANTIAL QUESTION AS TO THAT LAWYER'S HONESTY, TRUSTWORTHINESS, OR "FITNESS" AS A LAWYER SHALL INFORM THE ATTORNEY GRIEVANCE COMMISSION.

NOTE: Self-regulations of the legal profession requires when they know of a violation of the Michigan Rules of Professional Conduct. (MRPC).
Lawyer have a similar OBLIGATION with respect to judicial misconduct......
PATTERN of MISCONDUCT that only a DISCIPLINARY investigation can uncover.
REPORTING A VIOLATION IS ESPECIALLY IMPORTANT WHERE THE VICTIM (DEFENDANT) IS UNLIKELY TO DISCOVER THE OFFENSE.

THIS RULE LIMITS THE REPORTING OBLIGATION TO THOSE OFFENSES THAT A SELF-REGULATING PROFESSION MUST VIGOROUSLY ENDEAVOR TO PREVENT. A MEASURE OF JUDGEMENT IS, THEREFORE REQUIRED IN COMPLYING WITH THE PROVISIONS OF THIS RULE.

THE TERM "SUBSTANTIAL" REFERS TO THE SERIOUSNESS OF THE POSSIBLE OFFENSE AND NOT THE QUANTUM OF EVIDENCE OF WHICH THE LAWYER IS AWARE.

IN GRIEVANCE ADMINISTRATION V. FIEGER, 476 MICH 231 (2006) MISUPREME CT.

HN33 IN OTHER WORDS, A JUDGE IS OBLIGATED TO INFORM THE AGC ON ATTORNEY'S PERCEIVED MISCONDUCT; TO FAIL TO DO SO IS TO VIOLATE ON EXPLICIT ETHICS RULE, THIS RULE DOES NOT DISTINGUISH BETWEEN A JUDGE WHO OBSERVES THE ALLEGED MISCONDUCT AND A JUDGE WHO IS THE OBJECT OF IT, BUT UNDER JUSTICE WEAVER'S REASONING, A JUDGEWHO OBSERVES THE ALLEGED MISCONDUCT AND A JUDGE WHO IS THE OBJECT OF IT, BUT UNDER JUSTICE WEAVER'S REASONING, A JUDGE MUST EITHER TURN A BLIND EYE TO ATTORNEY MISCONDUCT OR RISK DISQUALIFICATION. THIS CANNOT BE ON THE CONTRARY, JUDGE WHO MEETS HIS OR HER ETHICAL TO REPORT ATTORNEY'S MISCONDUCT IS NOT THEREBY ASSUMED TO BE BIASED OR UNABLE TO REVIEW IMPARTIALLY CASES THAT CAME BEFORE HIM OR HER.

# *Ingham County*
# *30th Judicial Circuit Court*

P.O. Box 40771
Lansing, MI  48901-7971
Telephone: 517 • 483 • 6500

**JOYCE DRAGANCHUK**
Chief Circuit Judge

**SHAUNA DUNNINGS**
Chief Probate Judge
Chief Circuit Judge *Pro Tempore*

**LISA McCORMICK**
Presiding Judge Family Division



**SCOTT LEROY**
*Interim* Circuit Court Administrator
Deputy Court Administrator/
Juvenile Division

**HELEN WALKER**
Deputy Court Administrator /
Friend of the Court

**NICHOLAS HEFTY**
Deputy Court Administrator /
General Trial Division

June 29, 2023

Tunc Uraz, #114653
Muskegon Correctional
2600 S. Sheridan Drive
Muskegon, MI 49442

      Re: *People v Tunc Uraz*, Case File Nos.: 16-001065-FC, 16-001064-FH

Mr. Uraz:

Chief Judge Joyce Draganchuk received your request for declaratory ruling/declaratory judgment, as well as your emergency motion/request on June 28, 2023.  You believe no circuit judge was assigned to your two closed case files after Judge Clinton Canady's retirement and Judge James S. Jamo's recusal.  Court records, however, indicate that both criminal case files were reassigned on June 26, 2023, to Judge Rosemarie E. Aquilina.  Your documents were forwarded accordingly.

Respectfully,

Michael G. Lewycky
Law Clerk to Chief Judge Joyce Draganchuk

cc:    Law Clerk to Hon. Rosemarie E. Aquilina

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz,  CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 7/6/2023 1:16:43 AM EST,   Letter ID: 1809883589
Location : MCF
Housing : UNIT 4100B01
**pre-paid stamp included**


mahkemeden gelen cevap


---------- Forwarded message ---------
From: Michael Lewycky < MLewycky@ingham.org>
Date: Wed, Jul 5, 2023 at 4:27 PM
Subject: DECLARATORY JUDGEMENT EXHIBITS RELATED TO JACOB A. PERRONE (P71915)
To: tonyur@gmail.com < tonyur@gmail.com>
Cc: Danielle Huettner < DHuettner@ingham.org>, Logan Byrne < LByrne@ingham.org>


Good morning.

Please be advised that no action will be taken regarding the below-quoted email that you sent on July 5, 2023.  The
Ingham County Circuit Court does not accept electronic filing.  The Clerk's Office is open from 8:30 am to 4:30 pm
Monday through Friday (excluding holidays) if you wish to file any documents for Tunc Uraz in person.  Otherwise,
documents submitted for filing should be mailed directly to the Clerk of the Court.

Thank you.




_____

Michael G. Lewycky

Law Clerk/Court Officer to Chief Judge Joyce Draganchuk

Thirtieth Circuit Court - Ingham County

517-483-6482

Ayrica sana mahkemden gonderilen mektubu kopyasini koymus


---------- Forwarded message ---------
From: Michael Lewycky < MLewycky@ingham.org>
Date: Wed, Jul 5, 2023 at 4:25 PM
Subject: TUNC URAZ CASE # 16-1064 FH, 16-1065 FC
To: tonyur@gmail.com < tonyur@gmail.com>
Cc: Danielle Huettner < DHuettner@ingham.org>, Logan Byrne < LByrne@ingham.org>


Good morning.

Please see the attached letter that was mailed directly to Tunc Uraz, MDOC #114653, on June 29, 2023.

Thank you.




_____

Michael G. Lewycky

Law Clerk/Court Officer to Chief Judge Joyce Draganchuk

*You have received a* **jpay** *letter, the fastest way to get mail*

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 7/6/2023 1:16:43 AM EST,   Letter ID: 1809883589
Location : MCF
Housing : UNIT 4100B01

Thirtieth Circuit Court - Ingham County

517-483-6482

mektup aciklamasi:

Ingham County 30th Judicial Circuit Court

P.O. Box 40771 Lansing, MI 48901-7971 Telephone: 517-483-6500

JOYCE DRAGANCHUK Chief Circuit Judge

SHAUNA DUNNINGS Chief Probate Judge Chief Circuit Judge Pro Tempore

LISA MCCORMICK Presiding Judge Family Division

SCOTT LEROY

Interins Circuit Court Administrator Deputy Court Administrator/

Juvenile Division

HELEN WALKER Deputy Court Administrator/ Friend of the Court

NICHOLAS HEFTY Deputy Court Administrator/ General Trial Division

June 29, 2023

Tunc Uraz, #114653 Muskegon Correctional 2600 S. Sheridan Drive Muskegon, MI 49442

Re: People v Tunc Uraz, Case File Nos.: 16-001065-FC, 16-001064-FH

Mr. Uraz:

Chief Judge Joyce Draganchuk received your request for declaratory ruling/declaratory judgment, as well as your emergency motion/request on June 28, 2023. You believe no circuit judge was assigned to your two closed case files after Judge Clinton Canady's retirement and Judge James S. Jamo's recusal. Court records, however, indicate that both criminal case files were reassigned on June 26, 2023, to Judge Rosemarie E. Aquilina. Your documents were forwarded accordingly.

Respectfully,

Michael G. Lewycky Law Clerk to Chief Judge Joyce Draganchuk

Cc:

Law Clerk to Hon. Rosemarie E. Aquilina

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1810161971  [P 1/3]

---

*You have received a* **Jpay** *letter, the fastest way to get mail*

---

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/6/2023 2:55:22 PM EST,   Letter ID: 1810161971
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/06/2023 14:55:18

**Please do not reply to this email**


MLEWYCKY@INGHAM.ORG

SUBJECT : DECLARATORY JUDGEMENT EXHIBITS RELATED TO  FRAUD ON COURTS JACOB A. PERRONE

DEAR MR. LEWYCKY,

I APPRECIATE YOUR EXPLANATIONS,   GUIDANCE AND PATIENCE YOU HAVE SHOWN ME OVER THE YEARS.

I DID RECEIVE THE LETTER SENT TO YOU ON 06/29/23 ABOUT CASE BEING REASSIGNED TO JUDGE AQUILINA TELLING ME ALL THE DOCUMENTS FORWARDED TO JUDGE AQUILINA. THANK YOU (SAME E-MAIL EXHIBITS WERE MAILED TO JUDGE AQUILINA AS WELL)

I WILL  (MAIL VIA MDOC EXPEDITED MAIL PROCEDURE) ALL THE EXHIBITS TO JUDGE AQUILINA AS SOON AS POSSIBLE.

HOWEVER THE EMAIL ATTACHMENT(S) THAT YOU RECEIVED ABOUT DECLARATORY JUDGEMENT (FRAUD UPON COURT)  ATTACHMENT(S) WERE ALSO SENT TO PROSECUTORS J. DEWANE AND MS. KAHLA CRINO BEFORE FOR THE SAME RELATED ISSUES MANY TIMES.

MY CONCERN(S) ARE ; I HAVE BEEN MAILING DOCUMENTS RELATED TO MY CASE AND OTHER MATTERS TO MS. CRINO DIRECTLY, HOWEVER I DO NOT SEE THEM BEING RECEIVED ON THE REGISTER OF ACTIONS RELATED TO MY CASE AND OTHER ISSUES. ( CASE#'s 16-1064 FH AND 16-1065 FC)

I WONDER IF THE CLERKS READ/LOOK AT THE SAME EXHIBITS (DIGITIZED)  THAT WERE SENT VIA MAIL MANY TIMES TO JUDGE CANADY AND HIS CLERK(S), PROSECUTOR MS. CRINO MANY TIMES BEFORE.

IS THERE FILE THAT ALL THESE EXHIBITS KEPT?

IN FACT THE DOCUMENTS WHICH WERE SENT ON 04/28/2023 VIA MDOC EXPEDITED  MAIL PROCEDURE WERE "LOST" IN THE MAIL.(ASK JUDGE JAMO'S CLERK MS. KACIE SMITH DATED 05/31/2023 sent TO ME a letter saying THEY NEVER RECEIVED IT)


I HAVE MAILED MANY LEGAL DOCUMENTS SINCE THEN TO 30TH CIRCUIT COURT BUT,  I CANNOT CONFIRM ONE WAY OR ANOTHER IF ANY OF THESE LEGAL MAILS/DOCUMENTS/ BRIEFS/ EXHIBITS ARE RECEIVED BY 30TH CIRCUIT COURT BECAUSE THEY ARE NOT LOGGED INTO REGISTER OF ACTIONS UNDER MY CASE NUMBER(S) , NOR I RECEIVE A CONFIRMATION MAIL FROM 30TH. CIRCUIT COURT ABOUT RECEIVING THEM.

THIS IS WHY I ASKED MY FAMILY TO DIGITIZE ALL THE EXHIBITS UNDER ONE FILE INCLUDING POLICE BODY CAM FOOTAGE OF PERRONE AND EMAIL THEM DIRECTLY TO THE COURTS ATTENTION; THIS WAY IT IS GUARANTEED THAT COURTS WOULD RECEIVE THEM.

WILL THERE BE A NEW CASE# ASSIGNED TO DECLARATORY JUDGEMENT REQUEST?

---

TUNC URAZ 114653 MCF Lock:UNIT 4100B01  ID:1810161971  [P 2/3]

You have received a **Jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  7/6/2023 2:55:22 PM EST,     Letter ID: 1810161971
Location :  MCF
Housing :  UNIT 4100B01


THE REASON IT WAS MAILED (DECLARATORY) TO CHIEF JUDGE DRAGANCHUK, BECAUSE SHE WOULD BE IMPARTIAL. BECAUSE;

JUDGE AQUILINA IS IMPLICATED IN DECLARATORY JUDGEMENT FRAUD UPON COURT BRIEFS BASED ON HER KNOWLEDGE OF JACOB A. PERRONE'S MENTAL IMPAIRMENTS/EPISODES AND SHE FAILED TO REPORT IT TO ATTORNEY GRIEVANCE COMMISSION PER MRC 9.104(1-6), MRC 9.121 AND MRPC 8.3 AND MRPC 8.4, MCJC CANONS 1 (INTEGRITY) AND 2A (IMPROPRIETY )

(SEE ATTORNEY ERIC SCHROEDER'S RESPONSE TO AGC ON 02/06/2023 PG.# 3 PRAG.2 starting with "One issue that......")



THANK YOU VERY MUCH FOR YOUR UNDERSTANDING IN THIS MATTER


RESPECTFULLY SUBMITTED


MR. TUNC URAZ # 114653 (complainant/defendant)
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN RD.
MUSKEGON, MI 49442

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1800516930 [P 1/3]

*You have received a* **JPay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:44 PM EST, Letter ID: 1800516930
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/22/2023 20:21:43

Please do not reply to this email

1) DECLARATORY

STATE OF MICHIGAN
INGHAM COUNTY 30th. CIRCUIT COURT

PEOPLE
APPEALE - PLAINTIFF
                  SC#s:165560, 165561
V.              COA#s 343695, 343696
                  LC#s 16-1064 FH;16-1065-FC

TUNC URAZ
DEFENDANT -APPELLANT
-------------------------------------/

"ORAL ARGUMENT IS REQUESTED" PER MCR 7.214(A)

MR. URAZ IS ASKING THIS HONORABLE CHIEF JUSTICE DRAGANCHUCK TO MAKE A DECLARATORY RULING AND A DECLARATORY JUDGEMENT PER:

MCR 2.612(C)(3) & MCLS 2.305, MCLS 24.263, ,MCR 2.605

BASED ON TESTIMONIES OF ATTORNEYS AT GINTHER HEARING(S) ON 10/04/2021 AND 04/13/2022 THEIR ANSWERS TO PRIVATE INVESTIGATOR JAMES D. HOPPE AND THEIR RESPONSES TO ATTORNEY GRIEVANCE COMMISSION.

FRAUD BY JUROR #2 RYAN GIBBS PETTY, HE USED HIS WIFE'S LAST NAME "PETTY" INSTEAD OF HIS ORIGINAL BIRTH LAST NAME "CARTER" ON JURY QUESTIONNAIRE DURING VOIR DIRE AT TRIAL AND SIGNED THE JURY VERDICT FORM AS JUROR FOREPERSON RYAN GIBBS PETTY

MR. URAZ IS BRINGING AN INDEPENDENT ACTION A FRAUD ON COURT PER MCR 2.612 (C)(3) AND MR. URAZ CLAIMING THAT ALL THE ATTORNEYS WHO TESTIFIED AND PARTICIPATED AS PROSECUTOR AND JUDGES HAD THE KNOWLEDGE OF PERRONE'S FIRST MENTAL IMPAIRMENT EPISODE ON 11/10/2017 AND SECOND MENTAL IMPAIRMENT EPISODE ON 11/20/2017, YET THEY ALL FAILED TO REPORT THIS MISCONDUCT TO ATTORNEY GRIEVANCE COMMISSION EXCEPT ONE BRAVE UNKNOWN PROSECUTOR (BILL (WILLIAM) CRINO) PER ATTORNEY ERIC SCHROEDER'S RESPONSE TO ATTORNEY GRIEVANCE COMMISSION ON 02/06/2023.

MCR 2.605 IT PROVIDES IN PERTINENT PART "IN CASE OF ACTUAL CONTROVERSY WITHIN ITS JURISDICTION A MICHIGAN COURT OF RECORD MAY DECLARE THE RIGHTS AND OTHER LEGAL RELATIONS OF AN INTERESTED PARTY SEEKING A DECLARATORY JUDGEMENT, WHETHER OR NOT OTHER RELIEF IS OR COULD BE SOUGHT OR GRANTED" INDEED "[T]HAT A DECLARATORY JUDGEMENT MUST ADDRESS AN "ACTUAL CONTROVERSY" IS CENTRAL TO THE LEGITIMACY OF DEVICE"

MR. URAZ IS ASKING THIS COURT TO MAKE A DECLARATORY JUDGEMENT PER MCLS 2.305(A)(B)(D)(F) IF AND WHY ANY OF THE JUDGES, PROSECUTORS AND ATTORNEYS WHO KNEW ABOUT PERRONE'S MENTAL IMPAIRMENT EPISODE(S) HERE ARE THE PROOFS OF FRAUD, PERJURY AND MISCONDUCT PER MCR 9.104, MRPC 1.1, 6.5, 8.3, 8.4(a), ALL COURT "OFFICERS" CHOSE NOT TO REPORT IT TO AGC

**JPay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:44 PM EST,     Letter ID: 1800516930
Location : MCF
Housing : UNIT 4100B01

KNOWINGLY;  THEREFORE THEY ALL BECAME ACCOMPLICES AND BECOME  COCONSPIRATORS (MCLS 750.157a) IN THIS  RACKETEERING (RICO) (MCLS 750.159g)
(i)concerning fraud
(w) A felony of section 218, concerning false pretenses
(hh) A violation of section 422,423,424 or 425 concerning perjury or subornation of perjury

A DECLARATORY JUDGEMENT IS "[A] BINDING ADJUDICATION OF THE RIGHTS AND STATUS OF THE LITIGANTS AND [WHICH] IS CONCLUSIVE IN A SUBSEQUENT ACTION BETWEEN THE PARTIES AS TO THE MATTERS DECLARED". DECLARATORY JUDGEMENTS ARE PROCEDURAL REMEDIES WHICH ALLOW PARTIES TO AVOID MULTIPLE LITIGATION BY SEEKING A "DETERMINATION" OF QUESTIONS FORMERLY NOT AMENABLE TO JUDICIAL DETERMINATION.

IN KIEFER V KIEFER 212 MICH APP 171, 182 536 NW 2d 873 (1995) (holding that " the 1 year term time applies to MCR 2.612(C)(3) EXCEPT WHEN PLAINTIFF BRINGS AN ***"INDEPENDENT ACTION"*** THAT CLAIMS EITHER THE PLAINTIFF DID NOT HAVE ACTUAL NOTICE OR THERE WAS A FRAUD ON THE COURT").

IN PEOPLE V SCHULTZ 2010 MICH APP 976 (2010)
MCR 2.612(C)(1)(b); NEWLY DISCOVERED EVIDENCE WHICH BY DUE DILIGENCE COULD NOT HAVE BEEN DISCOVERED (EXTEND OF PERRONE'S FIRST AND SECOND MENTAL IMPAIRMENT EPISODE)

PROOF OF FRAUD AND PERJURY ON COURT
AND ASKING THIS HONORABLE COURT TO :

START AN INDEPENDENT INVESTIGATION PER MCR 2.612(C)(3) FRAUD ON COURT PER THEIR GINTHER HEARING TESTIMONY GIVEN BY ATTORNEYS  ON 10/04/2021 AND 04/13/2022

SEE ATTACHED BRIEFS BY MR. URAZ

1)

UNKNOWN PROSECUTOR (BILL CRINO) GRIEVANCE FILED TO AGC ON 12/11/2017
DISCLOSED BY MS. KAHLA D. CRINO IN HER RESPONSE TO ATTORNEY GRIEVANCE COMMISSION (OCTOBER 2022)  WHEN SHE WAS GRIEVED BY PLAINTIFF  IN JULY OF 2022 FOR WITHHOLDING A "BRADY MATERIAL" ( EXTEND OF PATTERN OF PERRONE'S FIRST AND SECOND MENTAL IMPAIRMENT EPISODE(S)) BEFORE GINTHER HEARINGS CONDUCTED FOR DEFENDANT AND HIS APPEAL ATTORNEY SUSAN K. WALSH. (see plaintiffs REBUTTAL to AGC ABOUT CRINO'S AND ROTH'S  FAILURE TO DISCLOSE)

2)

JUDGE CANADY'S KNOWLEDGE ABOUT PERRONE'S MENTAL IMPAIRMENT EPISODE(S) see 12/12/2017 and 03/31/2023 SILVERTHORN'S RESPONSE TO AGC why he would not disclose 12/18/2017 PERRONE'S SECOND MENTAL IMPAIRMENT EPISODE

3)

JUSTICE AQUILINA'S  KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENT EPISODE(S) (see Eric Schroeder's 02/06/2023) Response to AGC pg. about Judge AQULINA being informed about PERRONE'S MENTAL IMPAIRMENT EPISODES from an unknown prosecutor and ordering replacing PERRONE'S APPOINTED CASES BY COUNTY with other attorneys

4)

CHIEF JUSTICE RICHARD GARCIA (THEN)KNOWLEDGE OF ABOUT  PERRONE'S MENTAL IMPAIRMENT EPISODE(S) (see 12/12/2017) judges chambers. pg. 4 comment by Prosecutor Roth.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **JPay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:44 PM EST, Letter ID: 1800516930
Location : MCF
Housing : UNIT 4100B01

5)

PERRONE'S 12/12/2017 JUDGES CHAMBERS HEARING DEFENDANT DID NOT HAVE A CONFLICT-FREE ATTORNEY TO REPRESENT HIS INTEREST. (SEE SILVERTHORN RESPONSE TO AGC ON 03/31/2023). PERRONE was placed in the untenable position of defending his own interests which were adverse to his clients. THIS WAS A VIOLATION OF DEFENDANTS' SIXTH AMENDMENT RIGHTS

6)

12/18/2017 SILVERTHORN'S KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENT EPISODE BUT FAILED TO SHARE IT WITH DEFENDANT AND HIS APPEAL ATTORNEY AND HE FAILED TO REPORT IT TO AGC.

7)

TESTIMONY BY PROSECUTOR ROTH BY THEN 04/13/2022
ABOUT HIS KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENT EPISODE BUT FAILED TO REPORT IT TO AGC AND P/I HIRED BY APPEAL ATTORNEY WALSH.

8)

ROTH'S DISCLOSURE TO AGC ABOUT THE e-mail MESSAGE HE RECEIVED FROM PROSECUTOR ELIZABETH ALLEN DATED DEC. 2nd 2017 about PERRONE'S HARASSMENT AND THREATS TO PROSECUTOR WILLIAM (BILL) CRINO.

**JPay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To :  Information Services
Date : 6/22/2023 8:21:41 PM EST,    Letter ID: 1800516885
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/22/2023 20:21:40

Please do not reply to this email

2)DECLARATORY RULING & DECLARATORY JUDGEMENT

9)

PERRONE'S PERJURED TESTIMONY ON 10/04/2021 THAT HE WENT TO DALLAS RIGHT AFTER TRIAL. YET WAS SENT TO MENTAL HOSPITAL BY HIS FAMILY (see Eric Schroeder's AGC response pg 2)

10)

ERIC SCHROEDER PERJURY ON 10/04/ 2021 GINTHER HEARING TESTIMONY ABOUT PERRONE'S MENTAL ISSUES  VERSUS HIS RESPONSE TO AGC AND TO PRIVATE INVESTIGATOR

11)

DUANE SILVERTHORN'S RESPONSE TO AGC ABOUT WHY HE WOULD NOT DISCLOSE PERRONE'S SECOND MENTAL EPISODE. AND THE REBUTTAL BY DEFENDANT.

12) FRAUD BY JUROR #2 RYAN GIBBS PETTY (JURY FOREPERSON) HIS ORIGINAL NAME WAS RYAN GIBBS CARTER. HOWEVER HE PERJURED ON HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE AND SIGNING THE JURY VERDICT FORM AS RYAN GIBBS PETTY.
SEE PRIVATE INVESTIGATOR CHARLES W. MARTELL'S FINDINGS.

GRIEVED ATTORNEYS RESPONSES TO AGC :

1) DISCLOSED BY MS. CRINO AFTER SHE WAS GRIEVED
SEE HER RESPONSE TO AGC:
"AN Unknown PROSECUTOR from Ingham County had the courage to file a grievance against Perrone on 12/11/2017 which was not disclosed by CRINO nor AGC before GINTHER hearings (see attached) and her excuse was " I DIDN'T KNOW IT EXISTED" for  PERRONE'S second mental episode docs 12/18/2017 and 12/11/2017 an unknown prosecutor grievance against PERRONE (AGC did not do any investigations at all)OR THEY WOULD NOT SHARE RESULTS WITH DEFENDANT.

UNKNOWN PROSECUTOR WAS WORRIED/SCARED FOR HIS LIFE BEING IN DANGER AND HIS SAFETY BECAUSE OF PERRONE'S   CONSTANT BADGERING AND   HARASSMENT AGAINST HIM. HE FELT THREATENED BY PERRONE THAT HE WANTED TO STAY ANONYMOUS.

2) An email sent by prosecutor Ms. Elizabeth Allen to prosecutor Roth on 12/03/2017 (see attached) about PERRONE'S bizarre/violent/harassing behavior towards Roth and Prosecutor William (Bill) CRINO (see attached)
ALL DISCLOSED BY ROTH AFTER HE WAS GRIEVED TO AGC.

3) Roth implied in his AGC response that the prosecutor office only received PERRONE'S second mental episode from Clinton County on 12/06/2017(Clinton county denied the FOIA request from defendant's family stating the reason that same docs. Koop sent to SILVERTHORN on 12/18/2017  DID NOT EXIST)!

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a *jpay* letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:41 PM EST,   Letter ID: 1800516885
Location : MCF
Housing : UNIT 4100B01

ALL OAKLAND COUNTY PROBATE COURT DOCUMENTS WERE FAXED TO CLINTON COUNTY ON 11/30/2017 AND THEN TO INGHAM COUNTY TO BY 12/06/2017 BUT YET ONLY PERRONE'S SECOND MENTAL EPISODE WAS DISCLOSED TO SILVERTHORN BY PROSECUTION.

"PERRONE'S FIRST MENTAL EPISODE (11/10/2017, A DAY AFTER TRIAL) WAS NOT DISCLOSED".

4) KOOP'S RESPONSE TO AGC WAS NEVER RECEIVED BY DEFENDANT BUT HIS EXCUSE WAS 12/18/2017 DOCS  (PERRONE'S SECOND MENTAL EPISODE AND POLICE REPORT, PRT FORM BY HIS FATHER ) WERE ALL GIVEN TO D. SILVERTHORN (defendant's sentencing attorney) ON 12/18/2017

5) E. Schroeder's response to AGC exposed Perrone's PERJURY DURING GINTHER hearing:   that in fact he was sent to psycward at Sparrow Hospital in Lansing and then transferred to UofM hospital on 11/10/2017 right after defendant's trial was over.  INSTEAD PERRONE TESTIFIED THAT "A WEEK AFTER TRIAL HE WENT TO DALLAS... AND CAME BACK FOR A FAMILY EMERGENCY"
AND THE FACT THAT JUDGE AQUILINA WAS AWARE OF PERRONE'S MENTAL EPISODES AND FAILED TO REPORT IT TO AGC.

ALL DISCLOSED BY SCHROEDER AFTER HE WAS GRIEVED TO AGC.

6) SILVERTHORN'S RESPONSE TO AGC ON 03/31/23 WAS THAT JUDGE CANADY WAS AWARE OF PERRONE'S
MENTAL BREAKDOWNS AND THIS IS WHY HE DIDN'T/WOULDN'T SHARE 12/18/2017 DOCUMENTS WITH DEFENDANT AND HIS APPEAL ATTORNEY WALSH AND WALSH NEVER QUESTIONED HIM ABOUT IT DURING GINTHER HEARINGS. "ONE CANNOT QUESTION ABOUT SPECIFIC TOPIC IF IT IS NOT DISCLOSED TO HER/HIM.
HE DOESN'T KNOW WHY HE DIDN'T DISCLOSED 12/18/2017 DOCS TO WALSH. (see attached response)
DISCLOSED BY SILVERTHORN AFTER HE WAS GRIEVED TO AGC.

IN FACT SILVERTHORN WAS APPOINTED ON 12/14/2017 (see his grievance response to AGC)

7) SUSAN K. WALSH IS BEING GRIEVED TO AGC CURRENTLY FOR HER BEING INEFFECTIVE ASSISTANCE OF APPEAL COUNSEL AND NOT BEING READY FOR GINTHER HEARINGS (hired a private investigator to ask other attorneys if they noticed anything odd/about PERRONE'S BEHAVIOR "ONLY DURING" TRIAL) (ATTORNEYS ARE NOT TRAINED TO BE MENTAL HEALTH EXPERTS)
MS. WALSH FAILED TO BRING IN A MENTAL HEALTH EXPERT TO TESTIFY ABOUT SCHIZOPHRENIA INDUCED BIPOLAR DISORDER WITH HALLUCINATIONS AND SUBSTANCE ABUSE methamphetamine (ADDEROLL), MARIJUANA.

BUT A MAJOR FLAW OF MCR 9.121 SECTION (C)(1) THE MENTALLY ILL PERSON (respondent) IS REQUIRED TO EXPLAIN WHAT IS WRONG WITH HIM/HER. ONE WHO IS MENTALLY IMPAIRED/ILL CANNOT DIAGNOSE OR RECOGNIZE THEIR OWN MENTAL ISSUES. ANASOGNOSIA  : is a MENTAL illness where the patient is in denial of mentally ill. THIS IS AN UNCONSTITUTIONAL RULE AGAINST DEFENDANTS RIGHTS.


SEE PERRONE'S GLOWING POSITIVE REVIEWS AT AVVO.COM (ATTORNEY REVIEW WEBSITE) AFTER HE WAS " PROPERLY MEDICATED" FOR HIS BIPOLAR DISORDER.
BETWEEN 2018-2019.

see attached


Judge Canady:  Judge's chamber's hearing  about PERRONE'S MENTAL IMPAIRMENT EPISODE EVALUATION WHERE  where PERRONE was placed in the untenable position of defending his own interests which were adverse to his clients. DEFENDANT DID NOT HAVE A "CONFLICT-FREE" ATTORNEY TO REPRESENT HIS INTEREST IN THAT MEETING/HEARING. (see 03/31/23)

*You have received a Jpay letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:41 PM EST,   Letter ID: 1800516885
Location : MCF
Housing : UNIT 4100B01

PG 7 LINES 4-9
PERRONE: I did have a family situation that was addressed. I am BIPOLAR, at this point in time " I AM APPROPRIATELY MEDICATED. (***THIS MEANS PERRONE WAS NOT AWARE OF HIS MENTAL IMPAIRMENT GOING BACK TO 2015 AND HE WAS MEDICATED FOR HIS IMPAIRMENT BEFORE AND DURING TRIAL FOR HIS BIPOLAR CONDITION)

"Some of the most successful and highly  intelligent people have symptoms of BIPOLAR".

HE ONLY CHOSE TO DISCLOSE PERRONE'S CRAZY VULGAR EMAIL MESSAGE SENT TO DEFENDANT'S FAMILY (see attached)

SILVERTHORN DID NOT DISCLOSE PERRONE'S CRAZY/    BIZARRE, VULGAR TEXT MESSAGES TO DEFENDANT'S SISTER (see attached)

SEE INGHAM COUNTY OFFICE OF THE PUBLIC DEFENDER RUSSELL CHURCH'S ANSWER TO DEFENDANT ABOUT  JUDGE GARCIA AND GEORGE STRANDER (Ct. Admin.then) was appointing attorneys

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:39 PM EST,    Letter ID: 1800516871
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/22/2023 20:21:39

Please do not reply to this email

3)DECLARATORY RULING & DECLARATORY JUDGEMENT

Attorney Jacob A. Perrone, other Attorneys, prosecutors, and judges all acted in unison to cover up Perrone's mental impairment(s), neglected to report them to Attorney Grievance Commission (AGC)

Here are the MRPC's, MRE's, MCR's MCLS, and Canon (2)(A)(B):

they did not obey any and/or had have broken, they were all coconspirators in this, concerning false pretenses, perjury, or subornation of perjury, witnesses threat or intimidation and fraud. They all acted in unison to cover up Perrone's Mental impairments and their misconducts.

VIOLATION OF :

1.1(c) neglected a legal matter

failed to seek the lawful objectives of his client through reasonably against means permitted by law, in violation of ; MRPC 1.2 (a)

MRPC 1.3 (a) failed to act with reasonable diligence

MRPC 1.4(a)(b) failed to communicate with his client

MRPC 3.4 (a) unlawfully obstruct another party's access to evidence; unlawfully alter, destroy, or conceal a document or other material having potential evidentiary rule or counsel or assist another person to do any such act(b) falsify evidence, counsel or assist a witness to testify falsely (c)(d)(e)(f)(1)(2)

MRPC 3.7 (A)(1)(2)(3) A LAWYER SHALL NOT ACT AS ADVOCATE AT TRIAL IN WHICH THE LAWYER IS LIKELY TO BE NECESSARY WITNESS

MRPC 3.8 Special responsibility of a prosecutor
prosecutor(s) Roth, Koop II, Crino negligently ignored. necessary documents to be disclosed before Ginther Hearings (Perrone's mental episodes/probate Court records)
(a)(b)(c)(d)(e)

MRPC 6.5(a) failed to treat with courtesy and respect all persons involved in the legal process.

Respondent(s) failed to provide information demanded by Attorney Grievance Commission (AGC) violation of; MRPC 8.1 (a)(2)

MRPC 8.3 (a)(b) neither lawyers, prosecutors, judges of Ingham County none of them reported Perrone's mental episodes to AGC except one "ethical unknown" prosecutor from Ingham County who preferred to stay anonymous because of possible retaliation from Perrone (see attached e-mail from Prosecutor Elizabeth Allen to Prosecutor Roth about Perrone's hostile, harassment treatment towards them and Prosecutor William (Bill) Crino) see 12/11/2017 "unknown prosecutor" grievance filed against PERRONE.
(MURDER CASE JUDGE WAS AQUILINA) see E. Schroeder AGC response dated 02/02/2023

ENGAGED IN A CONDUCT WHICH VIOLATED RULES OF PROFESSIONAL CONDUCT CONTRARY TO MRPC 8.4(a)

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:39 PM EST,   Letter ID: 1800516871
Location : MCF
Housing : UNIT 4100B01

MRPC 8.4 (a)(b) engaged in conduct which involved dishonesty, fraud, deceit, misrepresentation or violation of the criminal law, where such conduct reflects adversely on the lawyers' honesty, trustworthiness, or fitness as a lawyer, contrary to;

MCR 9.104(1) exposed in legal profession or the courts to obloquy, contempt, censure or reproach, in violation of ;

ENGAGED IN A CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE, IN VIOLATION OF MCR 9.104 (2)

ENGAGED IN A CONDUCT THAT IS CONTRARY TO JUSTICE ETHICS, HONESTY OR GOOD MORALS, IN VIOLATION OF MCR 9.104 (3)

VIOLATED THE STANDARDS OF RULES OF PROFESSIONAL RESPONSIBILITY ADOPTED BY THE SUPREME COURT CONTRARY TO MCR 9.104(4)

ENGAGED IN CONDUCT IN [SIC] THAT VIOLATES A CRIMINAL LAW OF A STATE AND THE U.S. , TO WIT, MCL 750.122 (3)(6) IN VIOLATION OF MCR 9.104(5); MADE KNOWING MISREPRESENTATION OF FACTS OR CIRCUMVENT IN HIS ANSWER TO THE REQUEST FOR INVESTIGATION IN VIOLATION OF MCR 9.104(6) AND MADE MISREPRESENTATION IN HIS ANSWER TO THE REQUEST
FOR INVESTIGATION, IN VIOLATION OF MCR 9.113(A)

THE DUTY IMPOSED BY THIS RULE APPLIES TO A LAWYER'S OWN "ADMISSION" OR DISCIPLINE AS WELL AS THAT OF OTHERS. THUS IT IS A SEPARATE PROFESSIONAL OFFENSE FOR A LAWYER TO KNOWINGLY MAKE A MISREPRESENTATION OR OMISSION IN CONNECTION WITH DISCIPLINARY INVESTIGATION OF THE LAWYER'S OWN CONDUCT.

Perrone admitted on record that he was had a untreated, unmedicated schizophrenia affected substance abuse induced bipolar disorder episode. see judges chambers hearing trans. (12/12/2017)pg. 4

ALL JUDGES, ATTORNEYS, PROSECUTORS PURPOSEFULLY "OMITTED PERRONE'S SECOND MENTAL IMPAIRMENT EPISODE (they all tried to make it look like there was only ONE MINOR INCIDENT OF PERRONE MENTAL IMPAIRMENT EPISODE) FROM DEFENDANT BEFORE HIS SENTENCING ON 01/24/2018 AND BEFORE HIS GINTHER HEARINGS FROM DEFENDANT AND HIS APPEAL ATTORNEY SUSAN K. WALSH BEFORE GINTHER HEARINGS WHICH WAS GRANTED BASED ON PERRONE'S MENTAL ILLNESS.

ALL COURT "OFFICERS" CHOSE NOT TO REPORT IT TO AGC KNOWINGLY; THEREFORE THEY ALL BECAME ACCOMPLICES AND BECOME COCONSPIRATORS (MCLS 750.157a) IN THIS RACKETEERING (RICO) (MCLS 750.159g)

THIS RULE ALSO REQUIRES AFFIRMATIVE CLARIFICATION OF ANY MISUNDERSTANDING ON THE PART OF THE ADMISSION OR DISCIPLINARY AUTHORITY OF THE PERSON INVOLVED BECAUSE AWARE.

Any persons who is involved in this matter should be charged criminally (see below) :

Racketeering (MCLS 750.159g)
(i)concerning fraud
(w) A felony of section 218, concerning false pretenses
(hh) A violation of section 422,423,424 or 425 concerning perjury or subornation of perjury

MCLS 750.122(3)(6) Prohibited acts witnesses threat or intimidation, affirmative defense, violation as felony penalties applied

MCL 767.39
(E)VERY PERSON CONCERNED IN THE COMMISSION OF AN OFFENSE WHETHER HE/SHE DIRECTLY

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 8:21:39 PM EST,    Letter ID: 1800516871
Location : MCF
Housing : UNIT 4100B01

COMMITS THE ACT CONSTITUTES THE OFFENSE OR PROCURES, COUNSELS, AIDS OR ABETS IN THIS ITS COMMISSION MAY HERE AFTER BE PROSECUTED, INDICTED, TRIED AND ON CONVICTION SHALL BE PUNISHED AS IF HE/SHE HAD DIRECTLY COMMITTED SUCH OFFENSE.

PROTECTION OF DISABLED PERSONS AMERICANS WITH DISABLED ACT (ADA) WHILE ADA ACT OF 1990 42 USCS 12101-12213 PROHIBITS EMPLOYERS AND PUBLIC ENTITIES FROM DISCRIMINATING AGAINST INDIVIDUALS WHO HAVE A PHYSICAL OR MENTAL IMPAIRMENT,

HOWEVER IT DOES NOT PROHIBIT  COURTS FROM INQUIRING INTO WHETHER AN ATTORNEY'S PERFORMANCE WAS IMPAIRED BY A MENTAL CONDITION WHILE REPRESENTING A CLIENT, NOR DO THE AMERICAN BAR ASSOCIATION ADMINISTRATION GUIDELINES.

*Tunc Uraz*

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 9:10:49 PM EST,    Letter ID: 1800549660
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/22/2023 21:10:47

Please do not reply to this email

POTENTIAL WITNESSES  LIST FOR DECLARATORY JUDGMENT

PER MCL 767.40a(5)  PLAINTIFF MR. URAZ IS ASKING PROSECUTOR'S OFFICE OF INGHAM COUNTY  TO GIVE HIM REASONABLE ASSISTANCE IN LOCATING/CONTACTING WITNESSES... TO TESTIFY....

SINCE PLAINTIFF IS INCARCERATED AND HIS ACCESS TO COURTS AND WITNESSES ARE LIMITED.

THESE ARE THE ATTORNEYS, PROSECUTORS, JUDGES WHO HAD KNOWLEDGE OF PERRONE'S MENTAL IMPAIRMENTS AND EPISODES:

JACOB A. PERRONE ,DEFENDANT (P71915)

JOSEPH V. PERRONE , DEF. FATHER

ASHLEY PERRONE , DEF. WIFE

TIMOTHY PERRONE, DEF UNCLE(P37940)

WILLIAM PERRONE, DEF. UNCLE(P27591)

DR.LEONARD SWISTAK HEAVNWYCK MENTAL HOSPITAL, PSYCHOLOGIST, AUBURN HILLS, MI

DR. RACHEL L. GLICK UOFM HEALTH SYSTEM PSYCHOLOGIST, AUBURN HILLS, MI

DR. USHA MOVVA WHITEPINE MENTAL HOSPITAL, PSYCHOLOGIST, SAGINAW, MI

CARMEN MITCHELL ADMINISTRATOR HEAVNWYCK MENTAL HOSPITAL

CAROL POLLY SOCIAL WORKER HEAVNWYCK MENTAL HOSPITAL

LISA ZATYKO ATTORNEY APPOINTED BY OAKLAND COUNTY PROBATE COURT (P74810)

KAHLA D. CRINO CHIEF APPELLATE PROSECUTOR(P71012)

JONATHAN C. ROTH(P72030)

CHARLES T. KOOPII(P75188)

ERIC SCHROEDER (P79518)

NICHOLAS FERNANDEZ THEN PARALEGAL FOR JACOB A. PERRONE

DUANE D. SILVERTHORN (P36964)

LANSING POLICE OFFICER ROBERT MCBRIDE AND HIS BODY CAM AND REPORT 11/20/2017

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 9:10:49 PM EST, Letter ID: 1800549660
Location : MCF
Housing : UNIT 4100B01

ELIZABETH ALLEN PROSECUTOR (P75179)

WILLIAM (BILL) CRINO(P47892)

JUDGE CLINTON CANADY (P23262)

JUDGE ROSEMARY E. AQUILINA(P37670)

JUDGE RICHARD J. GARCIA (P38996)

ROBERT NOVY , (P52866) SENIOR ASSOCIATE INVESTIGATOR APPOINTED BY AGC TO INVESTIGATE WRONG DOING BY K.CRINO AND J.C. ROTH (OAKLAND COUNTY PROSECUTOR)

GEORGE STRANDER INGHAM COUNTY 30TH. CIRCUIT COURT ADMINISTRATOR THEN

LEIGH ANN WHIPPLE 30TH. CIRCUIT COURT ADMINISTRATOR THEN

MS. CYNTHIA C. BULLINGTON ASSISTANT DEPUTY ADMINISTRATOR, AGC

KIMBERLEY UHURU , DEPUTY ADMINISTRATOR, AGC

COURTNEY BEARD, DEPUTY CLERK CLINTON COUNTY

DEB SUTHERLAND, CLINTON COUNTY CLERK AND REGISTER OF DEEDS

DONALD D. CAMPBELL (P 43088) AGC ATTORNEY APPOINTED TO PERRONE.

CAROL SIEMON (P32946) INGHAM COUNTY PROSECUTOR THEN.

ANDREW VUCKOVICH (P78819)

RUSSELL CHURCH INGHAM COUNTY PUBLIC DEFENDER'S OFFICE


REQUEST/MOTION TO WAVE COURT FILING FEES
PER MCR

PLEASE SEE ATTACHED PLAINTIFF'S 12 MONTH PRISONER ACCOUNT STATEMENT.

HERE IS MY SITUATION IN PRISON ABOUT "ACCESS TO COURTS" STANDARD FOR PRISONERS AT MDOC;

1) I AM ONLY ALLOWED TO HAVE $11.00 PER MONTH IN MY ACCOUNT FROM MY PRISON JOB TO MYSELF FOR ALL MY NEEDS BECAUSE:

>MY FAMILY CANNOT AFFORD TO SUPPORT ME BECAUSE THEY LIVE IN TURKEY AND THE CURRENCY EXCHANGE US DOLLARS VS TURKISH LIRA IS VERY EXPENSIVE

>ALTHOUGH BOTH CHARGES JOINED BY JUDGE CANADY PER MCR 6.121 UNFAIRLY PREJUDICED EACH OTHER

>DURING SENTENCING JUDGE CANADY DECIDED TO SEPARATE THE CHARGES AND APPLY COURT COSTS, FINES, FEES, DNA FEES, AND RESTITUTION SEPARATELY (BASED ON UNPROVEN/UNCHARGED MISCONDUCTS FOR A CAR THAT DID NOT EXIST) (THERE WERE NO REPAIR ESTIMATES/ INVOICES WERE SHOWN AS A PROOF)

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/22/2023 9:10:49 PM EST, Letter ID: 1800549660
Location : MCF
Housing : UNIT 4100B01

THIS WAS BASED ON PROSECUTOR ROTH'S FALSIFIED/ MISAPPLICATION OF COMPLAINANT'S LOSSES WITHOUT ANY PROOF TO SHOW/ PERJURY AND DEFENDANT'S INEFFECTIVE ASSISTANCE OF SENTENCING ATTORNEY SILVERTHORN FOR NOT DOING HIS RESEARCH.

>BECAUSE OF THIS SEPARATION ANYTHING OVER $50.00 DOLLARS IN MY PRISON ACCOUNT IS TAKEN DIRECTLY TO BOTH CASES RESTITUTION AND COURT COSTS.

> IN 2019 ATTORNEY GENERAL SCFRA DIVISION UNDER (STATE CORRECTIONAL FACILITIES REIMBURSEMENT ACT)
MCLS 800.401,403,404, FORFEITED MY 401K AND 403B PENSION AMOUNT OF $25000.00 WHICH WAS MY SON'S COLLEGE TUITION MONEY WAS TAKEN WITHOUT PROPER DUE PROCESS ALTHOUGH DEFENDANT EXPLAINED TO THE COURTS THAT HE IS STILL MARRIED AND HAS A CHILD UNDER 18.

>BECAUSE THEY DO NOT LIVE IN USA (THEY ARE BOTH U.S. CITIZENS) BUT IN TURKEY, COURTS ALLOWED TO GARNISH %90 PERCENT AMOUNT YEARLY NEXT 10 YEARS PER TIAA (PENSION MANAGEMENT COMPANY) RULES.
DEFENDANT APPEALED HOWEVER THIS "LEGALIZED THEFT" IS ALLOWED BY COURTS.

>SEE CASE NUMBERS:
LC# 19-247-CZ, MICOA# 349487 MISUPRA# 161163
MI FED. WEST. DIST. # 1:20-CV-1219 , SIXTH CIRCUIT APPEALS COURT 21-1542

1)BECAUSE DEFENDANT APPEALED THIS LEGALIZED FORFEITURE ALL THE WAY TO SIXTH CIRCUIT COURT DEFENDANT HAD TO PAY COURT FILING FEES FROM HIS PRISON ACCOUNT IN INSTALLMENTS (ANY AMOUNT BETWEEN $11.00 -$50.00 goes to court filing fees including 10% left from SCFRA amount.)

2) BECAUSE DEFENDANTS PENSION MONEY IS TAKEN ALL COVID STIMULUS PAYMENTS ARE SPENT ON DEFENDANT'S FAMILY EXPENSES IN TURKEY SINCE HIS SON IS UNDER 18 AND HIS WIFE IS MENTALLY NOT STABLE.

3) THIS PRISON (MUSKEGON CORR. FAC.) (MDOC) REFUSES TO MAKE LEGAL COPIES ON LOAN IF ONE DOES NOT HAVE SUFFICIENT FUNDS IN THEIR ACCOUNT. (which limits one's ability to file proper paperwork, obtain proper copies, access to courts greatly)

4) ONLY LEGAL MAIL IS ALLOWED WHETHER ONE HAS FUNDS OR NOT. (ONLY USPS WITH NO TRACKING #) 04/28/23 SUPPLEMENTAL FILINGS BY DEFENDANT LOST IN THE MAIL TO MICHIGAN SUPREME COURT AND 30th CIRCUIT CT. (STILL BEING SEARCHED BY USPS)

THEREFORE DEFENDANT HAS TO MAKE CHOICES EVERY DAY/ MONTH WHETHER TO PURCHASE HYGIENE ITEMS, FOOD, STAMPED ENVELOPES, A PEN, A PAPER, A PENCIL, TO CONTACT HIS FAMILY, MAKE PHONE CALLS,PRINT JPAY BRIEFS FOR COURTS... ETC...OR MAKE LEGAL COPIES.... WITH $11.00 MONTH ONLY...

08/28/23

To: Clerk's office
Michigan Supreme court
Hall of Justice
PO box 30052
Lansing, MI 48909

RECEIVED
SEP 01 2023
LARRY S. ROYSTER
CLERK SUPREME COURT

from: TUNC URAZ 114653
Muskegon correctional facilities
2400 S. Sheridan Dr
Muskegon, MI 49462

Re: Abeyance Request sent on 06/20/23 based
on Newly discovered Jury Misconduct, Update
LC Case # 16-1064 FH, 16-1065-FC, COA# 343695
                                                              343696
SC#165560, 165561

Dear Clerk
On 06/20/23 I asked Michigan Supreme court Motion
to stay application for leave to appeal and hold
it in ABEYANCE pending exhaustion of 30th
court Ingham county decision Newly discovered
Jury Misconduct

On 7/13/2023 At a session held at 30th
circuit court Judge Aquilina, which defendant
was not part of, Judge would not call private
Investigator chuck Martell to testify.
                                                              ⟶

On 08/17/2023 Judge Aquilina decided unilaterally to deny defendant's Motion for evidentiary hearing and a new trial based Juror Misconduct. See Attachment #1

On 08/28/23 Defendant mailed a reconsideration Brief per MCR 2.119 CF)(3) for her decision 08/17/2023 denial of defendants Motion. See attachment #2

Therefore Defendant is asking this honorable court to continue Motion to stay application for leave to appeal and hold it in ABEYANCE pending exhaustion of 30th court Ingham county decision. Anewly discovered Jury Misconduct, reconsideration Brief.

Defendant will appeal Judges decision if the reconsideration Brief is denied also. Defendant will motion the Supreme court at that time to continue the ABEYANCE.
Please let me know if there are other alternative to this situation that I am in.

Thank You for everything
Respectfully submitted.
Tina Ume

P.O.of-Mal This letter and its attachments are served to on 8/28/23
Judge Aquilina, Ingham county prosecutors office

08/28/23

To. Honorable Judge Aquilina
30th Circuit court Judge, Ingham County
313 W. Kalamazoo St.
Lansing, MI 48933-2041

from   Tino Urra 116653
Muskegon Correctional facility
2400 S. Sheridan Dr.
Muskegon, MI 49442

Re. Order denying defendant's motion for evidentiary hearing
and new trial based on Jury Misconduct. 08/17/2023
(case. 16-1064-FH - 16-1065-FC)

Dear Honorable Judge Aquilina,

→ Please accept my reconsideration brief attached
for MCR 2.119 (F)(3)

→ Please order transcripts for the session held on 07/13/23
for MCR 6.433 and people V cross, 30 mich App 326 (1971)
In order for me to prepare and appeal your decision

→ I was not part of the session/hearing you had on
7/13/23.

→ Since this motion was part of my criminal appeal
for MCR 6.425 please appoint me an appellate counsel
to help me with my appeal to your decision

→ Michigan Supreme court is keeping my application for
leave to appeal in ABEYANCE until 30th circuit
court and court of Appeals makes decisions about  →

your decision dated 02/17/23. The Allergone was
in effect since 06/28/23

Your denial brief suggested that I did not cite
any case law, statutory Authority or factual Justification
to satisfy my Motion about Juror Misconduct.
however I did cite, used case law, statutory
Authorities, and factual Justifications which included
an affidavit from private investigator Mr. Chuck Martell
see my original Brief.
Juror #2 Ryan Gibbs Petty was in contempt
of court by giving/using his false/fake name
on Jury Questionnaire, before and after Jury
was Impanelled; he swore in and signed the
Jury verdict form with his false/fake name as
a Jury foreperson.
Per MCLS 600,1346 Acts punishable
as contemps (f)(h)(I)
  contempt of court is willful act, omission, or
statement that tends to impair the authority or impede
the functions of court. In re contempt of Robertson
209 Mich App 433, (1995)

Respectfully Submitted

Tино Um

This letter and attachments were secured to Prosecutor's office

Judge Rowlina
Michigan Supreme
court

08/28/23

To: Ingham County Prosecutor's Office
30th Circuit Court
303 W. Kalamazoo 4th Flr.
Lansing, MI 48933-2021

From Tino Uroz 114653
Muskegon Correctional facility
2400 S. Sheridan Dr.
Muskegon MI 49442

Re: Order Denying defendant's motion for Juror Misconduct
evidentiary hearing and new trial dated 08/17/2023
by Judge Aquilina case 161064 FH - 16-10-65 FC

This letter is notice of Intent to your
office about Defendant requesting
(1) See attached reconsideration Brief to Judge's
decision
(2) I will be appealing to Judge's decision with
Court of Appeals
(3) Please provide transcripts for the session/hearing
held on 07/13/2023, since I was not part of this
hearing per MCR 6.433 and People v Cross 30 Mich App
32.6 (1971)
(4) I requested an appointment of an attorney to
continue my appeal since this motion was part of
My Criminal appeal per MCR 6.425

→ Michigan Supreme Court, is keeping my application for leave to appeal in ABEYANCE until 30th Circuit Court and court of Appeals makes decisions dated 08/17/23. The ABEYANCE was in effect since 06/28/23.

→ I am asking Prosecutors office why Register of Actions in My case(s) is not reflecting any entries since 04/06/23 and 06/26/2023 I have Mailed Many briefs to your court and Judge(s) offices none of My briefs are showing under any of the register of actions, Please inform Me about this

→ who is the new chief Appellate Counsel for the Ingham County Prosecutor's office?

Thank You very Much for your attention

Respectfully, submitted

Timo Uren

This letter was served to Judge Aquilina, Michigan Supreme court, on 08/24/23 Via legal Mail

08/29/23

To: Clerk

(1) I will be mailing the original
brief as soon as I can
get legal copies, I am only
allowed to have certain
number of copies per month
Judge Aquilina's brief

(2) Please see the Lawsuit
filed at Clinton County
Circuit court "legal malpractice"
on 08/10/23 against Jacob
A. Perrone for his perjural
testimony on his Ginther hearings
Tyree Urra V. Jacob A. Perrone

Attachment #3

You have received a **JPAY** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/24/2023 11:31:17 PM EST,   Letter ID: 1844742971
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 08/24/2023 23:31:17

Please do not reply to this email

ORDER DENYING DEFENDANT'S MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL

JUDGE ROSEMARY AQUILINA

At a session held on 07/13/2023

On June 30th., Defendant, TUNC URAZ, filed an evidentiary motion to allow a private investigator to contact former jurors and grant a new trial.

In his motion Defendant makes several arguments that THIS COURT DOES NOT FIND IT PERSUASIVE

First Defendant claims that JUROR #2 committed Perjury by using a married last name rather than his birth last name and that this discrepancy denied Defendant a fair trial. As stated in defendant's motion, the standard for JUROR misrepresentation in VOIR DIRE is " it is proper and appropriate to grant a new trial when affidavits or testimony are presented confirming that matters have been falsely denied or concealed on VOIR DIRE, if these matter's would establish the juror's incompetency or disqualification or would lead parties to challenge him or her and if the affidavits are not proffered to show misconduct of a JUROR or jury for the purpose of impeaching their verdict. People v Graham, 84 Mich App 663, 666-667 (1978). THE ALLEGATION THAT JUROR #2 USED A MARRIED LAST NAME IS INSUFFICIENT TO DEMONSTRATE INCOMPETENCY OR DISQUALIFICATION

Defendant also claims that JUROR #1 prejudiced the jury against Defendant when he indicated that he was racist against Turkish people. Defendant alleges that juror #1 was dismissed before deliberation began, but defendant also claims that JUROR #1 spread those racist beliefs to the rest of the jury over the course of his tenure as a juror. The motion alleges that this court did not dismiss JUROR #1 immediately to prevent "a stampede with other jurors." ULTIMATELY, DEFENDANT'S ARGUMENT IS NOT PERSUASIVE. DEFENDANT FAILS TO ARTICULATE ANY EVIDENCE THAT JUROR #1 SPREAD RACIST BELIEFS TO THE REMAINDER OF THE JURY AND FAILS TO ACCOUNT FOR THAT FACT THAT JURORS ARE UNABLE TO DISCUSS THE CASE PRIOR TO DELIBERATIONS. AS SUCH, DEFENDANT HAS FAILED TO PERSUADE THIS COURT THAT JUROR #1 TAINTED THE JURY.

Finally, defendant claims juror #11 was seen talking to one of the parties' mother on the first day of jury selection. Defendant alleges that when this issue was raised, judge CANADY responded "[a]nybody can come in and sit; I cannot exclude anyone sitting in the court room during jury selection." The mother was not listed as a witness and was therefore free to sit in the court room and view the trial. There is no evidence presented that juror#11 was tainted by this alleged interaction. Therefore Defendant's argument is not PERSUASIVE.

Ultimately, Defendant's motion must fail because he has failed to provide any PERSUASIVE legal argument to support his motion.

Unfortunately, " a party may not leave it to this court to search for authority to sustain or reject its position." Leitch V. Switchenko,169 Mich App 761, 764 (1988).

IN OTHER WORDS, IT IS NOT THE DUTY OF THIS COURT TO FIND A CASE LAW, STATUTORY AUTHORITY, OR FACTUAL JUSTIFICATION TO SATISFY DEFENDANT'S MOTION.

AS SUCH, DEFENDANT'S MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL MUST BE DENIED BECAUSE DEFENDANT FAILED TO STATE A CLAIM FOR RELIEF WHICH MAY GRANTED.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **JPay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date :  8/24/2023 11:31:17 PM EST,   Letter ID: 1844742971
Location : MCF
Housing :  UNIT 4100B01

NOW THEREFORE, IT IS ORDERED; DEFENDANT'S MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL
SHALL BE DENIED FOR THE REASONS STATED ABOVE.

SO IT IS ORDERED

17 AUGUST 2023

Rosemarie E. AQUILINA
30th. Circuit Court Judge.

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1846428895 [P 1/4]

# You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:43 PM EST, Letter ID: 1846428895
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 08/27/2023 22:31:42

Please do not reply to this email

STATE OF MICHIGAN
INGHAM CTY. 30th. CIR. CT.

TO :

HON. JUDGE R. E. AQUILINA
CIR. CT. JUDGE
30th CIR Ct., INGHAM CTY.
313 W. KALAMAZOO ST.
LANSING, MI 48933-2041

FROM:

MR. TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

30th.Cir.Ct.# s 16-1064 FH;16-1065-FC;
COA#s 343695, 343696
SC#s:165560,165561
----------------------/

MOTION FOR RECONSIDERATION/REBUTTAL PER MCR 2.119(F)(3) FOR THE DECISION MADE ON 08/17/2023, DENYING THE MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL BASED ON JUROR MISCONDUCT.

2.119 (F)(3)
THE MOVING PARTY MUST DEMONSTRATE A PALPABLE ERROR BY WHICH THE COURT AND THE PARTIES HAVE BEEN MISLEAD AND SHOW THAT DEFENDANT DISPOSITION OF THE MOTION MUST RESULT FROM CORRECTION OF THE ERROR.

ORAL ARGUMENT REQUESTED PER MCR 7.214

DEAR HONORABLE JUDGE AQUILINA,

IN INGHAM COUNTY WHEN A POTENTIAL JUROR FILLS OUT THEIR JUROR QUESTIONNAIRE AND THE ANSWERS THEY PROVIDE IS ACCEPTED AS TRUTH ; ONCE ONE SIGNS THAT QUESTIONNAIRE; SAME JUROR BEFORE AND/OR AFTER IMPANELLING JURORS; THE OATH ONE TAKES TO BE TRUTHFUL, IT IS ASSUMED THAT PERSON WOULD BE HONEST. (SO THERE IS NO PENALTY FOR PERJURY) ?

IS THIS THE STANDARD AT INGHAM COUNTY CIRCUIT COURT?

OR

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1846428895 [P 2/4]



You have received a **Jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:43 PM EST,    Letter ID: 1846428895
Location : MCF
Housing : UNIT 4100B01

IS THIS YOUR JUDICIAL LAW AND RULE MAKING? "ABSURD RESULTS DOCTRINE" Javens 469 MICH 1032 (2004).

BUT OF COURSE COURT APPOINTED MENTALLY IMPAIRED DEFENSE COUNSEL OF DEFENDANT (JACOB A. PERRONE) DID NOT READ THE JUROR QUESTIONNAIRES BEFORE VOIR DIRE, EVEN IF DEFENDANT'S COUNSEL HAD DONE SO JUROR WOULD HAVE KEPT THE SAME NAME.

HERE IS THE CASE LAW :

IN GUSTAFSON V. MORRISON 57 MICH APP 655 (1975) "THE PLAINTIFF APPEALED ARGUING THAT THE TRIAL COURT ERRED IN FAILING TO GRANT HER MOTION FOR A NEW TRIAL ON THE GROUND THAT A JUROR GAVE FALSE ANSWERS IN RESPONSE TO QUESTIONS ON HIS JURY QUESTIONNAIRE AND DURING JURY VOIR DIRE. THIS COURT FOUND THAT THE JUROR DID GIVE FALSE ANSWERS ON THE JURY QUESTIONNAIRE AND DURING VOIR DIRE AND REVERSED THE TRIAL COURT'S DENIAL OF PLAINTIFFS' MOTION FOR A NEW TRIAL BASED ON THE JUROR'S FALSE STATEMENTS.

THE COURT'S RATIONALE FOR REVERSING THE TRIAL COURT WAS THAT THE PLAINTIFF WOULD HAVE SUCCESSFULLY CHALLENGED THE JUROR FOR CAUSE IF THE JUROR HAD BEEN TRUTHFUL AND THAT THE JURY WAS THEREFORE AN IMPROPERLY CONSTITUTED TRIBUNAL.

STATUES:

MCL 600.1354(1) NONCOMPLIANCE WITH CHAPTERS AS GROUNDS FOR REQUESTING CONTINUANCE OR CLAIMING INVALIDITY OF VERDICT.....

"...... unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial"

MCR 2.510 (B)(2) JUROR PERSONAL HISTORY QUESTIONNAIRE........
ANSWERING THE QUESTIONNAIRE FALSELY, IS CONTEMPT OF COURT.

MCR 2.511 IMPANELLING THE JURY
(D) CHALLENGES FOR CAUSE
(1) NOT QUALIFIED TO BE A JUROR
(3) IS BIASED FOR OR AGAINST TO A PARTY OR ATTORNEY.

CHALLENGE FOR CAUSE
MCR 6.412 (D)(2)
PROCEDURE..... EXCUSE THE JUROR FROM THE PANEL

MCR 2.611(A)(1)(b) A NEW TRIAL AND AMENDMENT OF JUDGEMENT
(A) GROUNDS
(1) NEW TRIAL MAYBE GRANTED.....SUBSTANTIAL RIGHTS ARE MATERIALLY AFFECTED
(b) MISCONDUCT THE JURY OR THE PREVAILING PARTY

DEFENDANT PROVIDED/QUOTED SPECIFIC TRIAL TRANSCRIPT PAGES AND TESTIMONY TO PROVE THAT EVERYTHING WAS ON RECORD YET YOUR BRIEF USES "ALLEGEDLY" WORD TO MAKE IT SOUND LIKE DEFENDANT MADE UP THESE JUROR ISSUES.

YOUR BRIEF/DECISION IMPLIES FOR JUROR #2 THAT :

(from second parag.#1,pg#2 in part)....."if these matter's would establish the juror's incompetency or disqualification or would lead parties to challenge him or her and if the affidavits are not proffered to show misconduct of a JUROR or

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:43 PM EST,     Letter ID: 1846428895
Location : MCF
Housing : UNIT 4100B01

jury for the purpose of impeaching their verdict. People v Graham, 84 Mich App 663, 666-667 (1978)".
"THE ALLEGATION THAT JUROR #2 USED A MARRIED LAST NAME IS INSUFFICIENT TO DEMONSTRATE INCOMPETENCY OR DISQUALIFICATION"

***HE HAD A DOUBLE IDENTITY***

THE PRIVATE INVESTIGATOR (MR. CHARLES W. MARTELL) WAS HIRED TO INVESTIGATE AND THEN SENT HIS FINDINGS/PROOFS, RELATED DOCUMENTS WITH HIS SIGNED AFFIDAVIT TO THIS COURT.

MR. MARTELL IS AN EX-LAW ENFORCEMENT OFFICER WHO IS VERY EXPERIENCED AND HAS TESTIFIED IN MANY TRAILS AS AN EXPERT WITNESS, HIS QUALIFICATIONS ARE IMPLACABLE
(DEFENDANT HAS SENT HIS CV/RESUME TO THIS COURT)

THIS IS WHY DEFENDANT ASKED/MOTIONED THIS COURT TO ORDER AN EVIDENTIARY HEARING TO HAVE THE JUROR #2 TO TESTIFY ON RECORD WHY HE USED HIS FAKE/FALSE NAME.

>HE USED A FAKE/FALSE NAME ON HIS JUROR QUESTIONNAIRE AND

>SWORE IN BEFORE AND AFTER IMPANELED JURY WITH HIS FALSE/FAKE NAME AND

>SIGNED THE JURY VERDICT FORM AS A "JUROR FOREPERSON " WITH HIS FALSE AND FAKE NAME. (MRE 606(3))

TO PROVE JUROR#2 "DISQUALIFICATION" :

(1) PRIVATE INVESTIGATOR TRIED TO GET JURY QUESTIONNAIRE FROM JURY COORDINATOR MS. GLORIA McGRUDER BUT HE WAS TOLD THE QUESTIONNAIRES ARE ONLY KEPT 3 YEARS AFTER THE TRIAL.

(2) THEN I ASKED MY FAMILY TO CONTACT IRON MOUNTAIN RECORDS MANAGEMENT COMPANY IN MICHIGAN TO FIND THIS "MISSING JUROR#2 JURY QUESTIONNAIRE" (still working on it last two months because of the "red tape" requests from IRON MOUNTAIN DOC. MNGT. COMPANY)

(3) I ASKED INGHAM COUNTY PROSECUTOR'S OFFICE AND THEN PROSECUTOR KAHLA D. CRINO TO PROVIDE THIS JUROR#2 JUROR QUESTIONNAIRE AS WELL (STILL WAITING). IT SHOULD HAVE BEEN PART OF MY TRIAL RECORDS.

I AM ASKING THIS COURT TO FIND/DISCLOSE THE JURY QUESTIONNAIRE FILLED BY JUROR#2

PER;

(COMPONENT 19 OF THE MICHIGAN TRIAL COURT CASE FILE MANAGEMENT STANDARDS).

(4) I PROVIDED SPECIFIC PAGE NUMBERS AND LINE BY LINE TRIAL TRANSCRIPTS WORDING FOR JURY #2 VOIR DIRE AND HIS ANSWERS.

I AM NOT SURE WHAT ELSE I COULD HAVE PROVIDED TO THIS COURT TO PROVE AND PROVIDE DOCUMENTATION(S) THAT JUROR #2 WAS A "FRAUD".

RYAN GIBBS PETTY (CARTER) COINCIDENTALLY CHANGED HIS LAST NAME TO "CARTER" ON 04/28/2022

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1846428895 [P 4/4]

You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:43 PM EST,     Letter ID: 1846428895
Location : MCF
Housing : UNIT 4100B01


AT SECRETARY OF STATE TO GET HIS NEW DRIVER LICENCE;  RIGHT AFTER DEFENDANT'S SECOND
GINTHER HEARING WAS ENDED ON 04/13/2023

**You have received a** *jpay* **letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:44 PM EST,   Letter ID: 1846428904
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 08/27/2023 22:31:43

Please do not reply to this email

2) RECONSIDERATION FOR JUROR MISCONDUCTS

HERE ARE THE INCONSISTENCIES COMMITTED BY JUROR #2 RYAN GIBBS PETTY, WHICH WERE
SENT BY PRIVATE INVESTIGATOR MR. CHARLES MARTELL TO THIS COURT ON 06/12/2023 IN AN AFFIDAVIT
SIGNED BY HIM.

> JURY VERDICT FORM SIGNED AS RYAN PETTY ON 11/09/2017

>RYAN GIBBS PETTY (CARTER) (see email dated 05/23/2023)

>HE FILLED OUT JURY QUESTIONNAIRE AS LAST NAME "PETTY" IN 2016/2017

>HE DECLARED BANKRUPTCY IN 2001 UNDER THE NAME CARTER.

>ON 09/06/2018 SPEEDING TICKET WAS WRITTEN AS "CARTER"

>MI DRIVER LICENCE UNDER THE NAME "PETTY"

>HE CHANGED HIS LAST NAME TO "CARTER" OFFICIALLY ON   04/28/2022 TO OBTAIN A NEW MI DRIVER
LICENSE

>COPY OF HIS APPLICATION FOR AN LLC DATED 08/30/2007 SHOWS HIS LAST NAME AS "CARTER"

>CO-DEBTOR IN BANKRUPTCY SIGNED BY DAWN RENEE (WEAVER) "CARTER"

>HIS MARRIAGE LICENCE WHEN RYAN "CARTER" MARRIED DAWN "CARTER".

>HIS MARRIAGE LICENCE WHEN RYAN GIBBS "CARTER" MARRIED GINA ERIN "PETTY".

>VOTER REGISTRATION CARDS UNDER TWO DIFFERENT NAMES (PETTY-CARTER)

>HIS BIRTH CERTIFICATE WHEN RYAN GIBBS  "CARTER" WAS BORN TO HIS MOTHER MARILYN E.
"CARTER" (76 YEARS OLD A HIS FATHER ; GLEN EDWARD "CARTER" (deceased) in July of 1972.

> OBTAINED A SOCIAL SECURITY NUMBER UNDER HIS FAKE NAME

> OBTAIN HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER HIS VOIR
DIRE TESTIMONY
18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...


MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF
AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS
INTEGRITY IN QUESTION.

ON 10/31/2017 (SEE T.T. 10/31/2017, PGS 127,128,130,140,141)

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a *jpay* letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:44 PM EST,   Letter ID: 1846428904
Location : MCF
Housing : UNIT 4100B01

JUROR #1

TO PROVE JUROR#1 "DISQUALIFICATION"

(from parag.#2 pg.2 in part).... ULTIMATELY, DEFENDANT'S ARGUMENT IS NOT PERSUASIVE. DEFENDANT FAILS TO ARTICULATE ANY EVIDENCE THAT JUROR #1 SPREAD RACIST BELIEFS TO THE REMAINDER OF THE JURY AND FAILS TO ACCOUNT FOR THAT FACT THAT JURORS ARE UNABLE TO DISCUSS THE CASE PRIOR TO DELIBERATIONS. AS SUCH, DEFENDANT HAS FAILED TO PERSUADE THIS COURT THAT JUROR #1 TAINTED THE JURY.

I PROVIDED SPECIFIC TRIAL TRANSCRIPT Pg. NUMBERS,  RECORDS/TESTIMONY FROM JUROR #1 EXTENSIVE VOIR DIRE AND HIS DISCLOSURE OF HIS "BIASNESS" AGAINST TURKISH PEOPLE ON RECORD AFTER HE WAS SWORN IN AS AN IMPANELED JUROR.

THIS IS WHY I ASKED THIS HONORABLE COURT TO ORDER AND EVIDENTIARY HEARING AND IN MY BRIEF TO SHOW/PROVE THAT:

> WHY IS JURY#1 IS BIAS AGAINST TURKISH ETHNICITY AND WHETHER HE SHARED HIS BIASNESS WITH OTHER JURORS NEXT 7 DAYS WHEN HE WAS KEPT IN THE IMPANELED JURORS AFTER HE WAS SWORN IN

>IMPROPER PROCEDURE UTILIZED AT TRIAL RESULTED JUROR BEING RELEASED FROM THE PANEL PER MCR 6.411 AND MCL 768.18
(THE PROPER WAY TO DETERMINE/REPLACE AN ALTERNATE JUROR IS BY RANDOM SELECTION NOT KNOWINGLY).

THIS WAS A JUDICIAL LAW AND RULE MAKING BY JUDGE CANADY.

MCR 2.511(D) (2) JURY IS BIASED FOR OR AGAINST A PARTY OR ATTORNEY.

THE PURPOSE OF VOIR DIRE IS TO ELICIT ENOUGH INFORMATION FOR DEVELOPMENT OF A RATIONAL BASIS FOR EXCLUDING THOSE WHO ARE NOT IMPARTIAL FROM THE JURY.

SEE PEOPLE V MILLER 482 MICH 540 (2008) MI SUPREME COURT

SEE T.T. 11/02/2017 PGS. 12,13,15,16, 21,22,23 (EXTENSIVE VOIR DIRE WERE DONE TO JUROR#1 BY JUDGE CANADY , THEN PROSECUTOR ROTH AND DEFENDANT'S ATTORNEY JACOB A. PERRONE)

(SEE T.T.11/03/2017 PGS 4,5) JUDGES ABUSE OF DISCRETION ABOUT NOT DISMISSING JUROR#1 AND NOT HOLDING A REMMER HEARING TO SEE IF THE IMPANELED SWORN JURORS ARE POISONED/TAINTED BY JUROR#1.
U.S. v. REMMER, 347 US 227 (1954)

(SEE T.T. 11/09/2017 PGS. 181-182)

THIS IS "JUDICIAL LAW MAKING, ABSURD RESULTS DOCTRINE" BY JUDGE CANADY AND BY JUDGE AQUILINA SEE PEOPLE V. JAVENS, 469 MICH 1032 (2004).

JUROR 11

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a *jpay* letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:44 PM EST,   Letter ID: 1846428904
Location : MCF
Housing : UNIT 4100B01

(in part paragraph # pg2) defendant claims juror #11 was seen talking to one of the parties' mother on the first day of jury selection. Defendant alleges that when this issue was raised, judge CANADY responded "[a]nybody can come in and sit; I cannot exclude anyone sitting in the court room during jury selection." The mother was not listed as a witness and was therefore free to sit in the court room and view the trial. There is no evidence presented that juror#11 was tainted by this alleged interaction. Therefore Defendant's argument is not PERSUASIVE.

THIS IS WHY I ASKED THE TRIAL FOOTAGE TO BE SHOWN/REVIEWED SHOWN SEVERAL TIMES TO SEE THE MISCONDUCT PER MRE 606 (1)(2) ON 10/31/2017 (from 8:30 am till 12:00N)

FROM THE DENIAL BRIEF DATED (08/17/2023) last parag. pg 2

"Ultimately, Defendant's motion must fail because he has failed to provide any PERSUASIVE legal argument to support his motion.
Unfortunately, " a party may not leave it to this court to search for authority to sustain or reject its position." Leitch V. Switchenko,169 Mich App 761, 764 (1988).

"IN OTHER WORDS, IT IS NOT THE DUTY OF THIS COURT TO FIND A CASE LAW, STATUTORY AUTHORITY, OR FACTUAL JUSTIFICATION TO SATISFY DEFENDANT'S MOTION".

THIS COURT ERRED IN CONSULTING AUTHORITY DEALING WITH CIVIL LAW CASE

MCR 7.212(A)(7) BRIEFS

THE ARGUMENT PORTION OF THE BRIEF MUST PROVIDE SUPPORTING AUTHORITIES AND FACTS MUST BE SUPPORTED BY REFERENCE TO THE PLEADINGS.

WHEN RULING MOTION UNDER MCR 2.116 (C)(10) (TESTS FOR FACTUAL SUPPORT FOR CLAIM); THE COURT MUST CONSIDER THE AFFIDAVITS, PLEADINGS, DISPOSITIONS, ADMISSIONS, AS WELL AS OTHER DOCUMENTARY EVIDENCE, AND GRANT THE MOTION ONLY WHEN THE COURT IS SATISFIED THAT IS IMPOSSIBLE FOR THE CLAIM TO BE SUPPORTED AT TRIAL BECAUSE OF SOME DEFICIENCY THAT CANNOT BE OVERCOME. SCHIPPERS V SPX CORP. 186 MICH APP 595 (1990).

MCR 2.116 (G)(4) PROVIDES " AN ADVERSE PARTY MAY NOT REST UPON THE MERE ALLEGATIONS OR DENIALS OF HIS OR HER PLEADING, BUT MUST BY AFFIDAVITS OR AS OTHERWISE PROVIDED BY THIS RULE, SET FORTH SPECIFIC FACTS SHOWING THAT THERE IS A GENUINE ISSUE FOR TRIAL FOR WHICH CLAIMS RAISED... UNLESS THE ERROR COMPLAINED OF HAS RESULTED IN A MISCARRIAGE OF JUSTICE

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:40 PM EST,    Letter ID: 1846428865
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 08/27/2023 22:31:39

Please do not reply to this email

3) RECONSIDERATION FOR JUROR MISCONDUCTS

>>>ANALYSIS AND CASE PRECEDENTS<<<

DEFENDANT USED IN HIS BRIEF "JUROR MISCONDUCT" WHICH WAS SENT TO THIS COURT ON 06/28/2023:

"CASE LAW(S), STATUTORY AUTHORITIE(S), OR FACTUAL JUSTIFICATION(S)"

REVERSE AND REMAND UNRELIABLE VERDICT OF "GUILTY"; VACATE DEFENDANT'S SENTENCES AND GRANT A NEW TRIAL ; ONCE JURY IS SWORN IN; DOUBLE JEOPARDY ATTACHES THEREFORE CANNOT BE CHARGED TWICE FOR THE SAME CRIMES AGAINST HIS FIFTH AMENDMENT RIGHTS; U.S V JORN 400 US 470 (1971) DOUBLE JEOPARDY generally ATTACHES at the time the jury is selected and sworn" people v MEHALL 454 Mich 1 (1997).
IF ANY MISCONDUCT BY IMPANELLED JURORS RISES IT WOULD BE A "MANIFEST INJUSTICE/NECESSITY" PER:
MCR 2.511(D)(2)jury bias against a party...
MCR 2.611(A)(1)(b)A new trial may be granted....misconduct of a juror....

MANIFEST INJUSTICE: HAS BEEN DEFINED AS "[A]N ERROR IN THE TRIAL COURT THAT IS DIRECT, OBVIOUS, AND OBSERVABLE. (BLACK'S LAW DICTIONARY 974 (7th Ed. 1989) IN OTHER WORDS " A SHOWING OF MANIFEST IN JUSTICE REQUIRES THAT THERE EXISTS A FUNDAMENTAL FLOW IN THE COURT'S DECISION THAT WITHOUT CORRECTION WOULD LEAD TO A RESULT THAT IS BOTH INEQUITABLE AND NOT IN LINE WITH APPLICABLE POLICY.

REVIEW IS LIMITED TO WHETHER FAILURE TO REVIEW WOULD DEPRIVE THE DEFENDANT OF A FAIR TRIAL FO RESULT IN MANIFEST INJUSTICE. PEOPLE V OSBY 291 MICH APP 412 (2011)

MCR 2.510(C) provides that on completion, the jury questionnaire shall be filled with the court clerk or the jury board. The only person's allowed to examine the questionnaire are; the judges of the court; clerk and deputy clerks; parties to actions in which the juror is called to serve and their attorneys; and persons authorized access by court rule or by court order. The attorneys must be given a reasonable time to examine the questionnaires before being called on to challenge for cause. The questionnaires must be kept on file for 3 years from the time they are filled out.

COURT TO ORDER COPY OF HIS JURY QUESTIONNAIRE FROM 2016- 2017 AND HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER
18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...

MRE 606(b) validity into of verdict or indictment (1) whether extraneous prejudicial information was improperly brought to jury's attention (2) whether any outside influence was brought to bear upon any juror or (3) whether there was mistake in entering the verdict onto the verdict form.

MRE 103 RULINGS ON EVIDENCE
(a) effect of erroneous ruling
(2) offer of proof

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date :  8/27/2023 10:31:40 PM EST,    Letter ID: 1846428865
Location :  MCF
Housing :  UNIT 4100B01

(d) plain error

FALSE ANSWERS BY JUROR TO QUESTIONS ON VOIR DIRE WHETHER INTENTIONAL OR UNINTENTIONAL DENY THE DEFENDANT A FAIR TRIAL, IF CORRECT ANSWERS WOULD HAVE LED THE PARTICIPATE TO CHALLENGE HIM .
PEOPLE V. GRAHAM 84 MICH APP 663 (1978)

"IN VOIR DIRE MEANING ***"TO SPEAK THE TRUTH"*** POTENTIAL JURORS ARE QUESTIONED IN AN EFFORT TO UNCOVER ANY BIAS THEY MAY HAVE THAT COULD PREVENT DECIDING THE CASE" PEOPLE V TYBURSKI 445 MICH 606 (1994) (cleaned up)

DEFENDANT IS ENTITLED A RELIEF FROM A VERDICT BECAUSE OF DISALLOWANCE OF VOIR DIRE ONLY HE CAN PROVE THAT HE WAS ACTUALLY PREJUDICED BY THE PRESENCE OF THE JUROR IN QUESTION OR THAT THE JUROR WAS PROPERLY EXCUSABLE FOR CAUSE.
BYNUM V THE ESAB GROUP INC. 467 MICH 280 (2002)
PEOPLE V HANNUM 362 MICH 660 (1961)
PEOPLE V DEHAVEN 321 MICH 327 (1948)

A NEW TRIAL MUST BE GRANTED WHEN IT APPEARS THAT A JUROR GAVE UNTRUTHFUL ANSWERS DURING VOIR DIRE, WHEREAS TRUTHFUL ANSWERS WOULD HAVE ALLOWED A SUCCESSFUL CHALLENGE FOR CAUSE. (COLLIER V. WESTLAND ARENA INC. 183 MICH APP 251 (1990)

IN GUSTAFSON V. MORRISON 57 MICH APP 655 (1975) lv. 394 Mich 755 (1975) " LITIGANTS UNQUESTIONABLE RIGHT TO TRUTHFUL ANSWERS FROM A PROSPECTIVE JUROR ON VOIR DIRE. COUNSEL HAS A RIGHT TO RELY ON THE TRUTHFULNESS OF A JURY QUESTIONNAIRE BECAUSE IT IS DESIGNED TO PROVIDE A BASIS FOR INTELLIGENT CHALLENGING. HOWEVER UPON DISCOVERY OF A JUROR'S FALSE STATEMENTS AFTER TRIAL AND VERDICT, A MOVING PARTY MUST PRESENT TO THE COURT SOMETHING MORE THAN THE MERE FACT OF THE FALSITY OF THE ANSWERS. "There must be a showing of actual prejudice or it must be established to the satisfaction of the trial court that moving party would have successfully challenged for cause or otherwise dismissed the juror in question had the truth been revealed prior to trial.

PEOPLE V SCHRAM 378 MICH 145 (1966)
(Citizens Com.&Sav. Bank V ENBERG,15 MICH APP 438 (1968).

IT IS PROPER AND APPROPRIATE TO GRANT A NEW TRIAL WHERE TESTIMONY OR AFFIDAVITS ARE PRESENTED CONFORMING THAT MATTERS HAVE BEEN FALSELY DENIED OR CONCEALED ON VOIR DIRE; IF THOSE MATTERS WOULD ESTABLISH A JUROR'S INCOMPETENCY OR DISQUALIFICATION OR LEAD A PARTY TO CHALLENGE THE JUROR AND IF THE TESTIMONY OR AFFIDAVITS ARE NOT PREFERRED TO SHOW MISCONDUCT OF JUROR OR JURY FEAR THE PURPOSE OF IMPEACHING THE VERDICT. PEOPLE V GRAHAM 84 MICH APP 663 (1978). PEOPLE V. KAGE 193 MICH APP 49 (1992).

IN SULLIVAN V STATE 155 MISS 629 638 (125 So 115,117) IN WHICH THE COURT ADOPTED THIS RULE SAYING;
A LITIGANT HAS NOT VESTED RIGHT IN A PARTICULAR JUROR, OUT ONLY A RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY QUALIFIED UNDER THE LAW....WE THINK THE COURT, IN STANDING THE JUROR A SIDE OR SUSTAINING THE CHALLENGE, WAS ACTING UPON A QUESTION WHERE DIFFERENT REASONABLE CONCLUSIONS MIGHT BE REACHED AS TO THE QUALIFICATION OF THE JURORS, AND THERE IS NOTHING TO SUGGEST THAT THE JUDGE DESIRED ANYTHING OTHER THAN TO SECURE TO THE DEFENDANT THAT FAIR AND IMPARTIAL ACCORDED TO DEFENDANT BY THE LAW".

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:40 PM EST,   Letter ID: 1846428865
Location : MCF
Housing : UNIT 4100B01

CONCLUSION:

THEREFORE DEFENDANT IS ASKING THIS HONORABLE COURT TO REVIEW THE MOTION AND TRIAL TRANSCRIPTS ONE MORE TIME AND ORDER AN EVIDENTIARY HEARING TO EXPAND THE RECORD.

DEFENDANT IS ASKING THIS HONORABLE COURT TO VACATE HIS SENTENCE AND GRANT HIM A NEW TRIAL PER MANIFEST IN JUSTICE.

RESPECTFULLY SUBMITTED

*Tunc Uaz*

TUNC URAZ

Proof of service : on 08/29/23 defendant mailed this brief to:

30th Circuit Court Judge Aquilina
Ingham County prosecutors office
Michigan Supreme court

*Tunc Uraz*

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To  : TUNC URAZ, ID: 114653
Date : 8/23/2023 2:42:42 PM EST,  Letter ID: 1843679101  Parent Letter ID: 1843586259
Location : MCF
Housing : UNIT 4100B01

Clinton county 29th circuit court
case Details
Additional Resources
Case ID
2023-0000012321-NM
Court Location
29th Circuit Court - Clinton - St. Johns
Case Entitlement
URAZ V PERRONE
Judge of Record
BARKMAN,CORI,E.
Date Filed
08/10/2023
Case Status
OPEN
Closed Date
Balance
Parties (2)
Hide
Party Name
URAZ,TUNC,114653
Party Type/Number
PLAINTIFF - 1
Attorney Name
Alternate Name(s)
Answer Date
Service Date
Disposition
Disposition Date
Party Name
PERRONE,JACOB,A
Party Type/Number
DEFENDANT - 1
Age
41 (1982)
Attorney Name
Alternate Name(s)
Answer Date
Service Date
Disposition
Disposition Date
Bonds (0)
Events (4)

Event Date
08/10/2023
Description
AFFIDAVIT AND ORDER, SUSPENSION OF FEES/COSTS
Party/Count
Event No./Clerk
1 - RP
Comment
WAIVER/SUSPENSION OF FEES AND COSTS (AFFIDAVIT AND ORDER)
Judge
BARKMAN,CORI,E.
Attorney

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URA 653 MCF Lock:UNIT 4100B01 ID:1843679101 [P 2/5]

## You have received a JPAY letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To : TUNC URAZ, ID: 114653
Date : 8/23/2023 2:42:42 PM EST, Letter ID: 1843679101 Parent Letter ID: 1843586259
Location : MCF
Housing : UNIT 4100B01

, ,

Description
FEES WAIVED SUMMONS AND COMPLAINT
Party/Count
Event No./Clerk
2 - RP
Judge
BARKMAN,CORI,E.
Attorney

, ,

Description
LETTER
Party/Count
Event No./Clerk
3 - RP
Judge
BARKMAN,CORI,E.
Attorney

, ,

Description
LETTER
Party/Count
Event No./Clerk
4 - RP
Judge
BARKMAN,CORI,E.
Attorney

,

Michigan court of apeals
se Header
Case Number
COA #343695 MSC #165560
Case Status
MSC Pending on Application
COA Case Concluded; File Open
Consolidated Appeals
COA #343696
Case Concluded; File Open
Parties & Attorneys to the Case - Court of Appeals
1
PEOPLE OF MI
Plaintiff - Appellee
Attorney(s)
CRINO KAHLA D
#71012 Prosecutor
2
URAZ TUNC
Defendant - Appellant
Attorney(s)
WALSH SUSAN K
#40447 Appointed
Parties & Attorneys to the Case - Supreme Court

RECEIVED by MSC 9/25/2023 9:16:56 AM

# JOHN J. DEWANE
## INGHAM COUNTY PROSECUTING ATTORNEY



**NICOLE R. MATUSKO**
*Chief Assistant Prosecutor*

**WILLIAM O. CRINO**
*Deputy Chief Assistant Prosecutor*

September 25, 2023

Clerk of the Court                    Clerk of the Court
Michigan Supreme Court                Michigan Court of Appeals
Via E-filing                          Via E-filing

Re: Ingham County Prosecuting Attorney internal case transfers

To whom it may concern:

Assistant Prosecuting Attorney Kahla Crino is no longer employed by our office.  Please update your records to reflect that the following cases of theirs have been internally transferred to me, Elizabeth L. Allen (P75179).

Supreme Court:
Jason Brown, MSC 164258
Tunc Uraz, MSC 165560
Kyvon Wells, MSC 165969
Joy Piland, MSC 166094

Court of Appeals:
Thomas Marney Sr., COA 359845
Ali Kejjan, COA 359988
In Re Piland, COA 362338
Clarence Street, COA 363410
Yenier Conde, COA 363499
Daniel Fayia COA 363993
In Re Gienapp-Shaw COA 366274

Thank you for your attention to these matters.
Sincerely,

*/S/ Elizabeth L. Allen*

Elizabeth L. Allen (P75179)
Appellate Division Chief
303 W. Kalamazoo Street
Lansing, MI 48823
(517) 483-6271
eallen@ingham.org

10/30/2023

To: Michigan Supreme Court
Office of the Clerk.
PO Box 30052
LANSING, MI  48909

From: TUNC URAZ #114653
Muskegon Correctional Facility
2400 S. Sheridan Dr.
Muskegon, MI 49442

Re: Motion to stay application for leave to Appeal
and hold it Abeyance pending exhaustion of 30th
Cir. ct. Judge Aquilina's decision on newly discovered
Juror/Jury misconducts, Reconsideration brief and
Court of Appeals decision.

Dear Clerk,
Please accept attached Briefs about
Juror Misconduct along with exhibits.

① 06/30/23 Def. filed an evidentory hearing motion
to allow Private Investigater to contact former
Jurors and grated a new trial (See attch. #1)

② On a "session" held on 7/13/23 at Ingham County
court house Judge Aquilina denied the motion
without any hearing or any transcripts available
(see attach. #2)  8/17/2023

③ On 08/29/23 Defendant Sent an ⟶

Reconsideration Brief Based on her decision
per MCR 2.119 (f)(3) (See attach #3)

④ I am still waiting Judge Aquilina's decision
for the reconsideration Brief since it has been
more than 56 days per MCR 8.107(A)(B)
(Reconsideration Brief was sent on 08/29/23.

I did ask Judge Aquilina to appoint me on
appeal attorney to appeal her decision on 09/29/23
(see attachment #4) proof of mailing to the clerk of
the court at Ingham County

(Attachment #5) letter was mailed to prosecutor
and court clerk (Ingham) asking about missing
briefs on defendant's register of actions for case
# 16-1064 FA and #16-1065-FC, including change
of attorney on 12/14/2017 and letter from pros. Koop
to attorney Silverthorn on 12/14/2017 was not
entered as a action on def. register.

I am still trying to get copies of private Investigator
submitted to Judges (JAMO, CANADY, Aquilina)
his findings about fake/false name Jeran and
the transcript of 7/13/23 session. But I have
not been provided by courts
Respectfully Submitted              proof of mailing this letter
Tene Urie                           and attachments were sent on
                                    10/24/23 to COA and Ingham

To

Michigan
Court of Appeals
925 W. ottawa st.
PO Box 30222
LANSING, MI 48909

10/20/2023

Case# SC 165500, 61
COA 348695, 96
LC 10-10664-FH #6106SFC

from

Tyree UPAC 114553
Muskegon correctional facility
2400 S. Sheridan Dr
Muskegon, MI 49442

Re  Motion for Emergency Appeal to Juror
Misconduct/fraud upon court /Declaratory
Judgment Briefs   MCR 3.305 superintending control
ORAL Argument Requested per MCL 7.214
Judge Aguilina is LATE / NOT Responding
Defendants Reconsideration brief on Juror
Misconduct and Declaratory Judgment briefs
per MCL 8.107(A) (AWON 3.ACS) MCR 3305
    This court have in general superintending
control over all state courts pursuant to 1963
Cost VI, see 4, MCL 3305
    Per Private Investigator findings (see that #1
(1) On 06/20/2023 Def filed a motion for an evidentiary
hearing based on Juror Misconduct. who used
a fake/false name at defendants trial after he
W/s sworn in became Juror foreperson (see #2)
(2) ON session hold on 7/13/23 Judge Aguilina

without any transcript she denied defendant's
Motion (See #3)

(3) On 08/29/23 Def Sent a Reconsideration
Brief to Judge Aquilina Based on her decision
on 08/17/2023 (See #4)

(4) on 7/1/23 Defendant sent Declaratory
Ruling and a Declaratory Judgement Briefs
with exhibits to 30th circuit court To Chief
Judge DRAGANCHUK and subsequently to
Judge Aquilina (she was appointed since Judge
SAMO (recused himself) chosen by lot (Judge
CANADY Trial Judge retired)

(5) Defendant Sent an Order regarding
appointment of an Appellate Counsel and
requested transcript from 30th circuit court.
On 09/29/23  I have not received any
response (see #5)

(6) 30th circuit court Clerk is failing to enter
all my Briefs Motions requests to register of
actions under my case Numbers (see #5)


Please accept my appeals accordingly Please
contact me if you have any questions.
     Respectfully Submitted
          Tenc Uma                          09/10/2023
(proof of mailing) This letter and packet was sent to
30th circuit court, MI Supreme ct, COA, and Judge Aquila

Attach. 1

# M.D.O.C. VISITING APPLICATION

CAJ-103 ■ REV. 03/15 ■ 4835-0103

## Instructions For Visitors Filling Out This Application

This is an application to visit a prisoner in a Michigan correctional facility. All questions in section A and B must be answered. If a question does not apply, write Not Applicable on the line. ALL questions in Section C must be checked YES or NO. If you check YES, you must supply the requested information. All entries on this form must be clearly printed and legible. This form must be legibly signed and dated as indicated in Section D. Forms that are not legible will not be processed. Section E must be completed if applicant is a minor. Do not complete Section F. Mail the completed application to the mail room or deliver to the information desk of the facility you are requesting to visit. Do not mail the application to the prisoner. Including a self-addressed-stamped envelope when this application is returned will ensure that you receive notification of your approval or denial to visit. Without a self-addressed-stamped envelope, you will be notified only if your application is denied.

**YOUR DRIVER LICENSE #** _____ (State) / _____ (Number)     **OR State ID #** _____ (State) / _____ (Number)

**Your Full Name (Please print)**

_____ (Last)     _____ (First)     _____ (Middle)

**Prisoner Name** **A**

_____ (Last)     _____ (First)     _____ (Middle)

**Your Address** _____ (Street)     _____ (Apt. #)

_____ (City)     _____ (State)     _____ (Zip)

**Prisoner Number** _____

**Your Date and Place of Birth** _____ / _____ / _____ (Mo./Day/Yr.)     **(City)** _____     **(State)** _____

List ALL other names you have used (including aliases, maiden name, and names by previous marriages)

**CHECK ONE**

(Last) _____ (First) _____ (Middle) _____     ☐ MALE **B**

(Last) _____ (First) _____ (Middle) _____     ☐ FEMALE

(Last) _____ (First) _____ (Middle) _____

**Your relationship to the prisoner** _____
(Are you the parent, grandparent, stepparent, spouse, child, sibling, father/mother-in-law, stepchild, grandchild, stepbrother/sister, etc.)

Are you now or have you ever been a MDOC employee or provider of contractual services to the MDOC?   ☐ YES  ☐ NO

Work location _____

Are you a prisoner or a former prisoner who was incarcerated in a state or federal prison in any jurisdiction? ☐ YES  ☐ NO

If so, what city & state _____ Date _____

Ever been restricted from visiting a prisoner?   ☐ YES  ☐ NO   Prisoner name & number _____ **C**

Date & reason for restriction _____

Are you currently on Parole / Probation for a felony? ☐ YES  ☐ NO   What city & state _____

Have you ever been convicted of a FELONY?  ☐ YES  ☐ NO   When (mo. /yr.) _____ City & state _____

Conviction _____ (List all convictions • use additional paper if necessary)

## I SUBMIT THAT ALL OF THE INFORMATION IS TRUE **D**

_____ SIGNATURE OF VISITOR APPLICANT     _____ DATE

## TO BE COMPLETED IF VISITOR IS A MINOR (unless emancipated)

I submit that above named minor is a child, stepchild, grandchild, sibling, half-sibling, or step-sibling of this prisoner. I also understand that all children must be accompanied by an adult immediate family member or a legal guardian of the child. **E**

## I SUBMIT THAT ALL OF THE INFORMATION IS TRUE

_____ SIGNATURE OF THIS CHILD'S NON-INCARCERATED PARENT OR LEGAL GUARDIAN

**NOTE: A COPY of the minor's birth certificate, certificate of adoption or court order establishing paternity must be submitted with this application. These copies of documents will not be returned but will be destroyed when the verification process is complete. An original or a certified true copy of birth certificate, certificate of adoption, a court order establishing paternity or a valid picture ID of the minor must be presented at each visit.**

## STAFF USE ONLY (Type or Print Legibly)

Facility MDOC Visiting Application processed at _____     Self-addressed-stamped envelope included?  ☐ Yes  ☐ No

Checks completed ☐ On Visitor List  ☐ PSI reviewed  ☐ LEIN completed  ☐ Application complete   Date received _____

Signature of Reviewer _____ Date _____

Application ☐ APPROVED  ☐ DENIED     Approved / Denied by _____ Date _____ **F**

Warden's Signature (if applicant is a prisoner, former prisoner or is on parole or probation) _____

Reason for denial _____

Other comments _____

If you have been denied access to a corrections facility because of criminal history information obtained from the LEIN network,
☐  You may inquire about outstanding warrants by appearing at a police department and presenting identification.
☐  You may obtain a copy of your Michigan criminal history record at www.michigan.gov/ichat. There is a fee for this service.

Entered in Visitor Tracking _____ (Initials)     _____ (Date)

NOTE: If form copied from the MDOC website, duplication and distribution by reviewing facility is required after the approval process is complete.

Distribution: ☐ Institution Record Office File  ☐ Counselor File  ☐ Information Desk  ☐ Visitor

**You have received a *jpay* letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 6/29/2023 11:43:59 PM EST,   Letter ID: 1805711292
Location : MCF
Housing :  UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/29/2023 23:43:58

Please do not reply to this email

TO :

HONORABLE JUDGE AQUILINA
CIRCUIT COURT JUDGE
30th Circuit Court, INGHAM COUNTY
313 W. KALAMAZOO ST.
LANSING, MI 48933-2041

FROM:

MR. TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442


case#'s 16-1064 FH;16-1065-FC;  COA#s 343695, 343696 SC#s:165560, 165561


RE : JURY #2 USED A FALSE NAME HE MISREPRESENTED HIS IDENTIFICATION  RYAN GIBBS PETTY
(CARTER) , AFTER HE WAS SWORN IN.
(see VOIR DIRE for Juror #2 ,T.T. 10/31/2017, PGS 127,128,130,140,141)
(see juror #2  see TT 11/09/2017 pg .186 who signed the VERDICT form as a. jury foreperson) PER CR. JI. 3.11


JUROR #1 TOLD JUDGE THAT HE WAS BIAS AGAINST
TURKISH PEOPLE AFTER HE WAS SWORN IN AND IMPANELLED AS A JUROR.
(see extensive VOIR DIRE T.T 11/02/2017 pgs 12-23 done by judge/prosecutor/defense attorney to JUROR#1)
(see T.T 11/03/2017 pgs 4-6 BIAS JUROR DECISION BY JUDGE CANADY)


DEAR HONORABLE JUDGE AQUILINA,

SINCE JUDGE CANADY (RETIRED) AND JUDGE JAMO (RECUSED HIMSELF) ON 06/12/2023.
AND YOU WERE APPOINTED ON 06/23/2023 BY JUDGE DRAGANCHUK

~~this emergency motion/request based on juror #2 misrepresented~~

THIS IS AN EMERGENCY MOTION/REQUEST BASED ON JUROR #2 MISREPRESENTED HIS IDENTIFICATION
ON HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE AT THE BEGINNING OF THE TRIAL. EVENTUALLY
HE WAS SELECTED AS JUROR #2 AND AS A JURY FOREPERSON
AFTER HE WAS IMPANELLED AND SWORN IN.

WOULD YOU PLEASE ALLOW PRIVATE INVESTIGATOR MR. CHARLES W. MARTELL TO CONTACT JUROR#2
AND JUROR#1; TO FIND OUT ABOUT WHY HE  USED  FALSE NAME (JUROR #2) AND DECLARING HIS  BIAS
AGAINST TURKISH ETHNICITY (JUROR #1) AFTER THEY WERE BOTH IMPANELLED AND SWORN IN.

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/29/2023 11:43:59 PM EST,    Letter ID: 1805711292
Location : MCF
Housing : UNIT 4100B01

WOULD YOU PLEASE ORDER AN EVIDENTIARY HEARING BASED ON JUROR MISCONDUCTS?

WOULD YOU PLEASE APPOINT ME AN ATTORNEY TO REPRESENT MY INTEREST AND PREPARE MOTIONS AS NEEDED?

WOULD YOU PLEASE HAVE PRIVATE INVESTIGATOR CHARLES MARTELL COME AND TESTIFY AS AN EXPERT WITNESS FOR EVIDENTIARY HEARING?

PLEASE ASK MS. D. CHILLERS (JUDGE CANADY'S CLERK) AND MS. LILES (JUDGE JAMO'S CLERK) ABOUT THE PROOFS SENT BY MR. CHARLES W. MARTELL;
JUROR #2 RYAN GIBBS PETTY (CARTER) USING FALSE NAME ON JURY QUESTIONNAIRE AND DURING VOIR DIRE ON 10/31/2017 AND SIGNED HIS NAME AS "RYAN GIBBS PETTY" ON JURY VERDICT FORM ON 11/09/2017 AS A JUROR FOREPERSON.

HERE ARE THE INCONSISTENCIES:

SENT BY PRIVATE INVESTIGATOR MR. CHARLES MARTELL TO JUDGE CANADY ON 05/18/2023 (RETIRED) AND JUDGE JAMO (RECUSED HIMSELF) ON 06/12/2023

> JURY VERDICT FORM SIGNED AS RYAN PETTY ON 11/09/2017

>RYAN GIBBS PETTY (CARTER) (see email dated 05/23/2023)

>HE FILLED OUT JURY QUESTIONNAIRE AS LAST NAME "PETTY" IN 2016/2017 (unfortunately questionnaire is not available to see due to courts only keep them on file for 3 years after the trial) this was told to P/I MARTELL by Gloria McGruder (jury coordinator) however she confirmed that juror#2 name as Ryan Gibbs Petty with a D.O.B 07/21/1972         in their system and Scott Leroy (Court administrator) on 05/24/2023.

>HE DECLARED BANKRUPTCY IN 2001 UNDER THE NAME CARTER.

>ON 09/06/2018 SPEEDING TICKET WAS WRITTEN AS "CARTER"

>MI DRIVER LICENCE UNDER THE NAME "PETTY"

>HE CHANGED HIS LAST NAME TO "CARTER" OFFICIALLY ON   04/28/2022 TO OBTAIN A NEW MI DRIVER LICENSE

>COPY OF HIS APPLICATION FOR AN LLC DATED 08/30/2007 SHOWS HIS LAST NAME AS "CARTER"

>CO-DEBTOR IN BANKRUPTCY SIGNED BY DAWN RENEE (WEAVER) "CARTER"

>HIS MARRIAGE LICENCE WHEN RYAN "CARTER" MARRIED DAWN "CARTER".

>HIS MARRIAGE LICENCE WHEN RYAN GIBBS "CARTER" MARRIED GINA ERIN "PETTY".

>VOTER REGISTRATION CARDS UNDER TWO DIFFERENT NAMES (PETTY-CARTER)

>HIS BIRTH CERTIFICATE WHEN RYAN GIBBS  "CARTER" WAS BORN  in July 21st. of 1972; TO HIS MOTHER MARILYN E. "CARTER" (76 YEARS OLD A HIS FATHER ; GLEN EDWARD "CARTER" (deceased).

> HE HAS A SOCIAL SECURITY NUMBER UNDER HIS FAKE NAME.

MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS

**You have received a _jpay_ letter, the fastest way to get mail**

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/29/2023 11:43:59 PM EST,    Letter ID: 1805711292
Location : MCF
Housing : UNIT 4100B01

INTEGRITY IN QUESTION.

JUROR #1 WAS KEPT TOTAL OF 9 DAYS IN IMPANELED JUROR AND SWITCHED WITH AN ALTERNATE JUROR AFTER CLOSING ARGUMENTS AND RIGHT BEFORE JURY RETIRED TO REACH A VERDICT.

JUROR#1 WAS STRICKEN (STRIKE) WITH AN ALTERNATE JUROR "KNOWINGLY" NOT "RANDOMLY". THIS WAS A JUDICIAL LAW MAKING AND RULE MAKING WHICH PER (MCL 768.18 AND MCR. 6.411) WHICH CREATED ABSURD RESULTS DOCTRINE.

JUDGE CANADY NEVER HELD A REMMER HEARING TO FIND OUT HOW JUROR #1 WOULD BE BIAS AGAINST TURKISH ETHNICITY AND HOW DID HE FIND OUT ABOUT DEFENDANT'S ETHNICITY AND WHETHER HE POISONED THE OTHER JUROR'S DURING THOSE 9 DAYS.

IMPROPER PROCEDURE UTILIZED AT TRIAL RESULTED JUROR BEING RELEASED FROM THE PANEL. MCR 6.411
THE PROPER WAY TO DETERMINE ALTERNATE JUROR IS BY RANDOM SELECTION.

ALTHOUGH COURT OF APPEALS DID NOT FIND ANY
"EXTRANEOUS INFLUENCE" ON JURY ON THEIR DECISION ON 01/19/2023. COA NEVER READ DEFENDANT'S BRIEF ABOUT "IMPROPER DISMISSAL OF JUROR #1".

IMPANELLING THE JURY

MCR 2.511(D) (2) JURY IS BIASED FOR OR AGAINST A PARTY OR ATTORNEY.

A NEW TRIAL MAYBE GRANTED PER MCR 2.611(A)(1)(b) MISCONDUCT OF THE JURY....

BOTH JURY MISCONDUCTS CREATED MANIFEST INJUSTICE AND NECESSITY IN DEFENDANT'S TRIAL.

SEE ATTACHED BRIEFS AND PLEASE ORDER AN EVIDENTIARY HEARING TO BRING IN JUROR #2 (RYAN GIBBS PETTY) AND JUROR #1 (LARRY R. NISHON)
TO TESTIFY UNDER OATH.

RESPECTFULLY SUBMITTED

_Tunc Uraz_

TUNC URAZ

Attach

#2

# M.D.O.C. VISITING APPLICATION

CAJ-103 ▪ REV. 03/15 ▪ 4835-0103

## Instructions For Visitors Filling Out This Application

This is an application to visit a prisoner in a Michigan correctional facility. All questions in section A and B must be answered. If a question does not apply, write Not Applicable on the line. ALL questions in Section C must be checked YES or NO. If you check YES, you must supply the requested information. All entries on this form must be clearly printed and legible. This form must be legibly signed and dated as indicated in Section D. Forms that are not legible will not be processed. Section E must be completed if applicant is a minor. Do not complete Section F. Mail the completed application to the mail room or deliver to the information desk of the facility you are requesting to visit. Do not mail the application to the prisoner. Including a self-addressed-stamped envelope when this application is returned will ensure that you receive notification of your approval or denial to visit. Without a self-addressed-stamped envelope, you will be notified only if your application is denied.

YOUR DRIVER LICENSE # _____ (State) / _____ (Number)     OR State ID # _____ (State) / _____ (Number)

**Your Full Name (Please print)**

_____ (Last) _____ (First) _____ (Middle)

**Your Address** _____ (Street) _____ (Apt. #)

_____ (City) _____ (State) _____ (Zip)

| | |
|---|---|
| Prisoner Name | **A** |
| _____ (Last) _____ (First) _____ (Middle) | |
| Prisoner Number _____ | |

**Your Date and Place of Birth** _____ / _____ / _____ (Mo./Day/Yr.)  _____ (City)  _____ (State)

List ALL other names you have used (including aliases, maiden name, and names by previous marriages)

| | | | CHECK ONE | |
|---|---|---|---|---|
| (Last) _____ | (First) _____ | (Middle) _____ | ☐ MALE | **B** |
| (Last) _____ | (First) _____ | (Middle) _____ | | |
| (Last) _____ | (First) _____ | (Middle) _____ | ☐ FEMALE | |

**Your relationship to the prisoner** _____
(Are you the parent, grandparent, stepparent, spouse, child, sibling, father/mother-in-law, stepchild, grandchild, stepbrother/sister, etc.)

Are you now or have you ever been a MDOC employee or provider of contractual services to the MDOC?  ☐ YES ☐ NO

Work location _____

Are you a prisoner or a former prisoner who was incarcerated in a state or federal prison in any jurisdiction? ☐ YES ☐ NO

If so, what city & state _____ Date _____

Ever been restricted from visiting a prisoner?  ☐ YES ☐ NO  Prisoner name & number _____

Date & reason for restriction _____ **C**

Are you currently on Parole / Probation for a felony? ☐ YES ☐ NO  What city & state _____

Have you ever been convicted of a FELONY? ☐ YES ☐ NO  When (mo. /yr.) _____ City & state _____

Conviction _____ (List all convictions ▪ use additional paper if necessary)

**I SUBMIT THAT ALL OF THE INFORMATION IS TRUE**    **D**

SIGNATURE OF VISITOR APPLICANT          DATE

## TO BE COMPLETED IF VISITOR IS A MINOR (unless emancipated)

I submit that above named minor is a child, stepchild, grandchild, sibling, half-sibling, or step-sibling of this prisoner. I also understand that all children must be accompanied by an adult immediate family member or a legal guardian of the child.  **E**

**I SUBMIT THAT ALL OF THE INFORMATION IS TRUE**

SIGNATURE OF THIS CHILD'S NON-INCARCERATED PARENT OR LEGAL GUARDIAN

**NOTE: A COPY of the minor's birth certificate, certificate of adoption or court order establishing paternity must be submitted with this application. These copies of documents will not be returned but will be destroyed when the verification process is complete. An original or a certified true copy of birth certificate, certificate of adoption, a court order establishing paternity or a valid picture ID of the minor must be presented at each visit.**

## STAFF USE ONLY (Type or Print Legibly)

Facility MDOC Visiting Application processed at _____     Self-addressed-stamped envelope included? ☐ Yes ☐ No

Checks completed ☐ On Visitor List ☐ PSI reviewed ☐ LEIN completed ☐ Application complete  Date received _____

Signature of Reviewer _____ Date _____

Application ☐ APPROVED ☐ DENIED     Approved / Denied by _____ Date _____ **F**

Warden's Signature (if applicant is a prisoner, former prisoner or is on parole or probation) _____

Reason for denial _____

Other comments _____

If you have been denied access to a corrections facility because of criminal history information obtained from the LEIN network,
☐ You may inquire about outstanding warrants by appearing at a police department and presenting identification.
☐ You may obtain a copy of your Michigan criminal history record at www.michigan.gov/ichat. There is a fee for this service.

Entered in Visitor Tracking _____
(Initials) _____ (Date)

NOTE: If form copied from the MDOC website, duplication and distribution by reviewing facility is required after the approval process is complete.

Distribution: ☐ Institution Record Office File ☐ Counselor File ☐ Information Desk ☐ Visitor

You have received a **Jpay** letter, the fastest way to get mail

From  : TUNC URAZ, ID: 114653
To :  Information Services
Date : 6/11/2023 7:26:02 PM EST,   Letter ID: 1791823075
Location : MCF
Housing :  UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/11/2023 19:26:00

Please do not reply to this email

WAS JUROR #2 RYAN GIBBS PETTY (CARTER) PRESENTED FALSE ANSWERS IN HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE JURY SELECTION AND ULTIMATELY BECAME JURY FOREPERSON ;
WAS HIS VERDICT NOT RELIABLE WHICH PREJUDICED DEFENDANT BECAUSE ULTIMATELY MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS INTEGRITY IN QUESTION?

THEREFORE DEFENDANT IS ASKING THIS HONORABLE COURT ;

1) REVERSE AND REMAND UNRELIABLE VERDICT OF "GUILTY"; VACATE DEFENDANT'S SENTENCES AND GRANT A NEW TRIAL ; ONCE JURY IS SWORN IN; DOUBLE JEOPARDY ATTACHES THEREFORE CANNOT BE CHARGED TWICE FOR THE SAME CRIMES AGAINST HIS FIFTH AMENDMENT RIGHTS; U.S V JORN 400 US 470 (1971) DOUBLE JEOPARDY generally ATTACHES at the time the jury is selected and sworn" people v MEHALL 454 Mich 1 (1997).
IF ANY MISCONDUCT BY IMPANELLED JURORS RISES IT WOULD BE A "MANIFEST INJUSTICE/NECESSITY" PER
MCR 2.511(D)(2)jury bias against a party...
MCR 2.611(A)(1)(b)A new trial may be granted....misconduct of a juror....

2)DEFENDANT IS ASKING HONORABLE COURT ;TO ORDER AN EVIDENTIARY HEARING BASED ON JUROR#2 FOREPERSON PROVIDING FALSE ANSWERS ON JURY QUESTIONNAIRE AND DURING HIS VOIR DIRE.
AND
JURORS#1,#2,#11 MISCONDUCTS UNDER OATH

3) DEFENDANT IS ASKING THIS HONORABLE COURT;  TO ORDER/PRODUCE JUROR #2 JURY QUESTIONNAIRE AND HIS FEDERAL FIREARM PURCHASE APPLICATION FORM BASED ON HIS TESTIMONY HE GAVE UNDER OATH DURING VOIR DIRE. (PENALTY FOR PERJURY UNDER OATH)

4) HAVE PRIVATE INVESTIGATOR COME AND TESTIFY IN OPEN COURT ABOUT HIS FINDINGS (CHARLES W. MARTELL)

5) COURT TO ORDER COPY OF HIS JURY QUESTIONNAIRE FROM 2016- 2017 AND HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER
18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...

FROM TRIAL TRANS. (in part)

JUROR# 2 RYAN GIBBS PETTY (CARTER), FALSE LAST NAME WHEN HE FILLED OUT HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE ON 10/31/2017.
(SEE ATTACHED T.T. 10/31/2017, PGS 127,128,130,140,141)

(IN PART)

10/31/2017 JURY VOIR DIRE

**Jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/11/2023 7:26:02 PM EST,  Letter ID: 1791823075
Location : MCF
Housing : UNIT 4100B01

PG. 127

JUROR #2

RYAN GIBBS PETTY

JUDGE : JUROR #2 WHAT IS YOUR COMMUNITY?

JUROR#2 :HOLT.......

(IN PART)

PG. 141

ATTORNEY JACOB A. PERRONE TO JUROR#2 : "WHAT IS YOUR POSITION ON GUN RIGHTS?

JUROR #2: I HAVE FIREARMS. I OBTAINED THEM LEGALLY. I HAVE THEM REGISTERED AND I CARRY THEM LEGALLY.

(IN PART) AFTER JURY REACHED THEIR VERDICT

11/09/2017 PG. 186

JUDGE: WHO IS THE FOREPERSON?

JUROR#2: YES

JUDGE : DID YOU SIGN THE FORM?

JUROR#2: I DID YOUR HONOR

>>>BACKGROUND AND FACTS:

ON 05/01/2023, DEFENDANT HIRED A LICENSED PRIVATE INVESTIGATOR :

MR. CHARLES W. MARTELL (AGENCY# 3701206460)
(SEE ATTACHED CREDENTIALS)

HAMILTON RESEARCH ASSOCIATES, LLC

DEFENDANT ASKED MR. MARTELL TO CONTACT/INVESTIGATE JURORS #1 , #2, #11 AND HIS CHOICE OF A FOURTH JUROR; TO FIND OUT IF JUROR#1 TAINTED/POISONED IMPANELED SWORN JURORS ABOUT HIS "BIASNESS " AGAINST TURKISH PEOPLE AND HOW HE FOUND OUT DEFENDANT'S ORIGIN BEING TURKISH.

JUROR#1 :LARRY R. NISHON'S DISCLOSURE ON THIRD DAY OF TRIAL (11/03/2017) AFTER HE WAS SWORN IN AS A JUROR ; HE DISCLOSED TO COURT THAT HE WAS BIASED AGAINST TURKISH PEOPLE IF THE DEFENDANT WAS FROM TURKEY....BIAS JUROR WAS KEPT WITH IMPANELED SWORN JURORS NEXT 9 DAYS AND DISMISSED RIGHT BEFORE JURY RETIRED TO REACH THEIR VERDICT. (SEE DEFENDANT'S "IMPROPER DISMISSAL OF JUROR#1" BRIEF)

SEE T.T. 11/02/2017 PGS. 12,13,15,16, 21,22,23 (EXTENSIVE VOIR DIRE WERE DONE TO JUROR#1 BY JUDGE CANADY , THEN PROSECUTOR ROTH AND DEFENDANT'S ATTORNEY JACOB A. PERRONE)

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/11/2023 7:26:02 PM EST,   Letter ID: 1791823075
Location : MCF
Housing : UNIT 4100B01

(SEE T.T.11/03/2017 PGS 4,5) JUDGES ABUSE OF DISCRETION ABOUT NOT DISMISSING JUROR#1 AND NOT HOLDING A REMMER HEARING TO SEE IF THE IMPANELED SWORN JURORS ARE POISONED/TAINTED BY JUROR#1.
U.S. v. REMMER, 347 US 227 (1954)

JUDGE CANADY'S DECISION WAS TO KEEP JUROR#1 NEXT 9 DAYS IN IMPANELED SWORN JURORS AND REPLACE HIM WITH AN ALTERNATE JUROR RIGHT AFTER CLOSING ARGUMENTS. JUDGE DID NOT WANTED TO START A STAMPEDE WITH OTHER JURORS.....
(SEE T.T. 11/09/2017 PGS. 181-182)

JUDGE CANADY CREATED HIS OWN RULE INSTEAD FOLLOWING MCR 6.411 AND MCL 768.18 REPLACING JUROR ALTERNATE KNOWINGLY INSTEAD OF RANDOMLY. ("JUDICIAL LAW MAKING, ABSURD RESULTS DOCTRINE" BY JUDGE CANADY) SEE PEOPLE V. JAVENS, 469 MICH 1032 (2004).

DEFENDANT WANTED TO LEARN; HOW JUROR #1 FOUND OUT DID DEFENDANT'S HERITAGE (TURKISH) BECAUSE IF JUROR #1 SEARCHED INTERNET ABOUT DEFENDANT'S NAME: TUNC URAZ SOMEHOW HOW WOULD HE KNOW THAT NAME LIKE DEFENDANT'S WOULD BE TURKISH...

JUROR#11 PAMELA ANN CASTILLO WAS SEEN TALKING TO COMPLAINANT'S (ERIKA MELKE) MOTHER KATHERINE BECKETT ON FIRST DAY OF TRIAL DURING POTENTIAL JUROR POOL (THEY WERE SITTING NEXT TO EACH OTHER) WHEN DEFENDANT ASKED HIS ATTORNEY PERRONE TO FIND OUT ; WHY COMPLAINANT'S MOTHER WAS SITTING/ MIXED IN WITH POTENTIAL JURORS?
PROSECUTOR ROTH'S RESPONSE WAS " WELL SHE IS NOT LISTED AS A WITNESS..."

ON 01/24/2018 (SEE SENTENCING TRANS. PG.25) DURING SENTENCING WHEN DEFENDANT TOLD/ASKED JUDGE WHY HE ALLOWED COMPLAINANT'S MOTHER SIT WITH POTENTIAL JUROR POOL?

JUDGE'S RESPONSE WAS: "ANYBODY CAN COME IN AND SIT ;  I CAN NOT EXCLUDE ANYONE SITTING IN THE COURT ROOM DURING JURY SELECTION".

1)
DEFENDANT WANTED TO KNOW ; WHAT DID JUROR#11 PAMELA A. CASTILLO TALKED TO COMPLAINANT'S MOTHER ABOUT AND WHAT DID HER MOTHER SAY ABOUT DEFENDANT TO HER (ANY COMMENTS WHICH WOULD BE JURY TEMPERING ) EVEN AFTER ONE BEING SELECTED AS A JUROR

2) DID BIAS JUROR #1 EVER MADE ANY COMMENTS ABOUT TURKISH PEOPLE HERITAGE TO IMPANELED JURORS NEXT 9 DAYS WHEN HE WAS KEPT WITH THE SWORN JURORS.

JUROR #2; JURY FOREPERSON;
RYAN GIBBS PETTY (CARTER); see attached e-mail messages sent to DEFENDANT by P/I MARTELL

ON 5/15/2023 DEFENDANT SENT P/I MARTELL INFORMATION ABOUT JUROR#2 RYAN GIBBS PATTY

ON 05/20/2023 P/I MARTELL ASKED ME TO CALL HIM ABOUT " MAJOR INCONSISTENCIES" IN THE BACKGROUND OF ONE OF THE JURORS.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/11/2023 7:26:00 PM EST,   Letter ID: 1791823058
Location : MCF
Housing : UNIT 4100B01


Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 06/11/2023 19:25:59

Please do not reply to this email

2) JUROR MISCONDUCTS


I DID NOT WANT P/I MARTELL TO REVEAL MY NAME TO JUDGE CANADY AND HIS CLERK DIANE CHILLERS DUE TO JUDGE'S MANY "ABUSE OF DISCRETIONS" TOWARDS MY RIGHTS TO HAVE A FAIR TRIAL.

BASED ON PRIVATE INVESTIGATOR-CLIENT PRIVILEGE
(see TEZAK V. HUNTINGTON RESEARCH ASSC., LTD (2001)
COA# 215490, CASE 97-002074-NZ (OAKLAND COUNTY CIR.CT.)


HOWEVER I COINCIDED EVENTUALLY THAT TO BE ABLE TO CONTACT JURORS WHO SERVED IN MY TRIAL P/I MARTELL HAS TO CONTACT THE TRIAL JUDGE (CANADY) TO GET HIS "BLESSING" TO CONTACT THE JURORS ; 5 (FIVE) YEARS AFTER MY TRIAL. (trial ended on 11/09/2017 and sentenced on 01/24/2018).

JURY #2 RYAN GIBBS PETTY ; JUROR FOREPERSON
USED A FALSE NAME ON HIS JUROR QUESTIONNAIRE AND DURING JURY VOIR DIRE.

HIS LAST NAME WAS ORIGINALLY "CARTER" AND HE USED "PETTY" ON JURY QUESTIONNAIRE AND DURING VOIR DIRE.

RYAN GIBB PETTY (CARTER)  COINCIDENTALLY CHANGED HIS LAST NAME TO "CARTER" ON 04/28/2022 AT SECRETARY OF STATE TO GET HIS NEW DRIVER LICENCE;  RIGHT AFTER DEFENDANT'S GINTHER HEARING #2 WAS OVER ON 04/13/2022
see attached e-mail messages sent to DEFENDANT by P/I MARTELL)

RYAN GIBBS PETTY'S NAME WAS ACTUALLY RYAN GIBBS CARTER BEFORE, DURING AND AFTER TRIAL UNTIL HE CHANGED IT OFFICIALLY ON 04/28/2022.

HERE ARE THE INCONSISTENCIES:

>RYAN GIBBS PETTY (CARTER) (see email dated 05/23/2023)

>HE FILLED OUT JURY QUESTIONNAIRE AS LAST NAME "PETTY" IN 2016/2017

>HE DECLARED BANKRUPTCY IN 2001 UNDER THE NAME CARTER.

>ON 09/06/2018 SPEEDING TICKET WAS WRITTEN AS "CARTER"

>HE CHANGED HIS LAST NAME TO "CARTER" OFFICIALLY ON  04/28/2022

>COPY OF HIS APPLICATION FOR AN LLC DATED 08/30/2007 SHOWS HIS LAST NAME AS "CARTER"

>CO-DEBTOR IN BANKRUPTCY SIGNED BY DAWN RENEE (WEAVER) "CARTER"

>HIS MARRIAGE LICENCE WHEN RYAN "CARTER" MARRIED DAWN "CARTER".

>HIS MARRIAGE LICENCE WHEN RYAN GIBBS "CARTER" MARRIED GINA ERIN "PETTY".

**_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/11/2023 7:26:00 PM EST,   Letter ID: 1791823058
Location : MCF
Housing : UNIT 4100B01


>HIS BIRTH CERTIFICATE WHEN RYAN GIBBS "CARTER" WAS BORN TO HIS MOTHER MARILYN E. "CARTER" (76 YEARS OLD A HIS FATHER ; GLEN EDWARD "CARTER" (deceased) in July of 1972.

MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS INTEGRITY IN QUESTION.

A NEW TRIAL MAYBE GRANTED PER MCR 2.611(A)(1)(b) MISCONDUCT OF THE JURY....


>>>ANALYSIS AND CASE PRECEDENTS

A NEW TRIAL MUST BE GRANTED WHEN IT APPEARS THAT A JUROR GAVE UNTRUTHFUL ANSWERS DURING VOIR DIRE, WHEREAS TRUTHFUL ANSWERS WOULD HAVE ALLOWED A SUCCESSFUL CHALLENGE FOR CAUSE. (COLLIER V. WESTLAND ARENA INC. 183 MICH APP 251 (1990)

IN GUSTAFSON V. MORRISON 57 MICH APP 655 (1975) lv. 394 Mich 755 (1975) " LITIGANTS UNQUESTIONABLE RIGHT TO TRUTHFUL ANSWERS FROM A PROSPECTIVE JUROR ON VOIR DIRE. COUNSEL HAS A RIGHT TO RELY ON THE TRUTHFULNESS OF A JURY QUESTIONNAIRE BECAUSE IT IS DESIGNED TO PROVIDE A BASIS FOR INTELLIGENT CHALLENGING. HOWEVER UPON DISCOVERY OF A JUROR'S FALSE STATEMENTS AFTER TRIAL AND VERDICT, A MOVING PARTY MUST PRESENT TO THE COURT SOMETHING MORE THAN THE MERE FACT OF THE FALSITY OF THE ANSWERS. "There must be a showing of actual prejudice or it must be established to the satisfaction of the trial court that moving party would have successfully challenged for cause or otherwise dismissed the juror in question had the truth been revealed prior to trial.
PEOPLE V SCHRAM 378 MICH 145 (1966)
(Citizens Com.&Sav. Bank V ENBERG,15 MICH APP 438 (1968).

MCR 2.510(C) provides that on completion, the jury questionnaire shall be filled with the court clerk or the jury board. The only person's allowed to examine the questionnaire are; the judges of the court; clerk and deputy clerks; parties to actions in which the juror is called to serve and their attorneys; and persons authorized access by court rule or by court order. The attorneys must be given a reasonable time to examine the questionnaires before being called on to challenge for cause. The questionnaires must be kept on file for 3 years from the time they are filled out.

IT IS PROPER AND APPROPRIATE TO GRANT A NEW TRIAL WHERE TESTIMONY OR AFFIDAVITS ARE PRESENTED CONFORMING THAT MATTERS HAVE BEEN FALSELY DENIED OR CONCEALED ON VOIR DIRE; IF THOSE MATTERS WOULD ESTABLISH A JUROR'S INCOMPETENCY OR DISQUALIFICATION OR LEAD A PARTY TO CHALLENGE THE JUROR AND IF THE TESTIMONY OR AFFIDAVITS ARE NOT PREFERRED TO SHOW MISCONDUCT OF JUROR OR JURY FEAR THE PURPOSE OF IMPEACHING THE VERDICT. PEOPLE V GRAHIM 84 MICH APP 663 (1978). PEOPLE V. KAGE 193 MICH APP 49 (1992).

IN SULLIVAN V STATE 155 MISS 629 638 (125 So 115,117) IN WHICH THE COURT ADOPTED THIS RULE SAYING;
A LITIGANT HAS NOT VESTED RIGHT IN A PARTICULAR JUROR, OUT ONLY A RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY QUALIFIED UNDER THE LAW....WE THINK THE COURT, IN STANDING THE JUROR A SIDE OR SUSTAINING THE CHALLENGE, WAS ACTING UPON A QUESTION WHERE DIFFERENT REASONABLE CONCLUSIONS MIGHT BE REACHED AS TO THE QUALIFICATION OF THE JURORS, AND THERE IS NOTHING TO SUGGEST THAT THE JUDGE DESIRED ANYTHING OTHER THAN TO SECURE TO THE DEFENDANT THAT FAIR AND IMPARTIAL ACCORDED TO DEFENDANT BY THE LAW".

MANIFEST INJUSTICE: HAS BEEN DEFINED AS "[A]N ERROR IN THE TRIAL COURT THAT IS DIRECT, OBVIOUS, AND OBSERVABLE. (BLACK'S LAW DICTIONARY 974 (7th Ed. 1989) IN OTHER WORDS " A SHOWING OF MANIFEST IN JUSTICE REQUIRES THAT THERE EXISTS A FUNDAMENTAL FLOW IN THE COURT'S DECISION THAT WITHOUT CORRECTION WOULD LEAD TO A RESULT THAT IS BOTH INEQUITABLE AND NOT IN LINE WITH APPLICABLE POLICY.

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 6/11/2023 7:26:00 PM EST,    Letter ID: 1791823058
Location : MCF
Housing : UNIT 4100B01

REVIEW IS LIMITED TO WHETHER FAILURE TO REVIEW WOULD DEPRIVE THE DEFENDANT OF A FAIR TRIAL FO RESULT IN MANIFEST INJUSTICE. PEOPLE V OSBY 291 MICH APP 412 (2011)

MI CRIM JI 3.11

YOU SHOULD FIRST CHOOSE A FOREPERSON. THE FOREPERSON SHOULD SEE TO IT THAT YOUR DISCUSSION ARE CARRIED IN A BUSINESSLIKE WAY AND THAT EVERYONE HAS FAIR CHANCE TO BE HEARD.

THEREFORE DEFENDANT IS ASKING THIS HONORABLE COURT TO ORDER AN EVIDENTIARY HEARING TO EXPAND THE RECORD.

RESPECTFULLY

*Tunc Uraz*

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1773088033 [P 1/1]

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz,  CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 5/19/2023 6:03:36 PM EST,   Letter ID: 1773088033
Location : MCF
Housing : UNIT 4100B01


Android'de Yahoo Postadan gönderildi

----- İletilmiş Mesaj -----

Kimden: "Chuck Martell" <cwmartell.HRA@live.com>

Kime: "Tony Ur" <tonyur@gmail.com>, "aysemu@yahoo.com" <aysemu@yahoo.com>

Bilgi: "'Cindy Martell'" <cam.hamilton@live.com>

Gönderildi: 0:31"20e' 20 May 2023 Cmt

Konu: MAJOR INCONSISTENCIES

TONY,


My office has discovered some major inconsistencies in the background of one of the jurors you wanted checked out.
Please call me at my cell phone as soon as you receive this email.


Sent from Mail for Windows

CHARLES MARTELL

LICENSED PRIVATE INVESTIGATOR

HAMILTON RESEARCH ASSOCIATES, LLC

6632 TELEGRAPH RD

SUITE 288

BLOOMFIELD HILLS, MI 48301

OFFICE: 248-269-9090

CELL: 248-804-8877

EMAIL: cwmartell.hra@live.com


PRIVILEGED – NOT SUBJECT TO SUBPOENA

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

--------- Forwarded message ---------
From: Chuck Martell < cwmartell.HRA@live.com>
Date: Mon, May 22, 2023 at 3:26 PM
Subject: INFORMATION ON JUROR PETTY
To: Tony Ur < tonyur@gmail.com>, aysemu@yahoo.com < aysemu@yahoo.com>
Cc: Cindy Martell < cam.hamilton@live.com>

TONY,

I need you to send me an email authorizing me to disclose to DIANE CHILLERS in the INGHAM CIRCUIT COURT the name of your trial so I can ask her to track down the juror questionnaire form filled out by RYAN GIBBS PETTY. If she cannot find it then we will have to search with the prosecutor and the defense attorney to determine if they have the form.

My office already has the bankruptcy form (shows CARTER), and will be getting the driver's license form from the MICHIGAN SECRETARY OF STATE (in the name of PETTY).

CHARLES MARTELL
LICENSED PRIVATE INVESTIGATOR
HAMILTON RESEARCH ASSOCIATES, LLC

from: Chuck Martell < cwmartell.hra@live.com>
Date: Tue, May 23, 2023 at 10:34 PM
Subject: RE: Response to tunc's jury transcripts
To: Tony Ur < tonyur@gmail.com>
Cc: aysemu@yahoo.com < aysemu@yahoo.com>, Cindy Martell < cam.hamilton@live.com>

TONY,

I received your email with the transcripts attached. It would appear to me that the Appeals Court turned down your appeal on the issue of a "BIASED JUROR".

I think the more salient argument would be that a juror actually lied about his name, even when questioned by the judge. At the time of this trial, PETTY's actual name was CARTER. He didn't change his driver's license name to PETTY until 4-28-2022. We have documents to prove this. So as evidence and proof we need to get several more documents:

The juror questionnaire PETTY-CARTER filled out by himself in 2017.
A copy of his bankruptcy case he filed in the name of CARTER on 6-20-2001.
A copy of his driving license history showing his name change from CARTER to PETTY.
A copy of the speeding ticket he received on September 6, 2018 – should show CARTER.
A copy of the speeding ticket he received on February 9, 2020 – should show CARTER.
The document he showed to the MSOS on 4-28-2022 to change his last name from CARTER to PETTY.
A copy of his application for an LLC dated 8-30-2007 showing his name as CARTER.
An Affidavit signed by DAWN RENEE (WEAVER) CARTER, the co-debtor in the BANKRUPTCY.
A copy of the marriage license when RYAN CARTER married DAWN CARTER.
A copy of the marriage license when RYAN CARTER married GINA ERIN PETTY.
A copy of the BIRTH CERTIFICATE when RYAN GIBBS CARTER was born to his mother, MARILYN E. CARTER (76 yrs) and his father, GLEN EDWARD CARTER (deceased) in July of 1972.

I think you need to start thinking about some more money for my services. I called this morning and spoke with Diane Chillers about whether the court maintains the JUROR QUESTIONNAIRE for five years. DIANE referred further questions to GLORIA McGRUDER who is in charge of the JUROR's OFFICE, and would know that answer. DIANE also said she has given my emails to JUDGE CANADY who should be calling me soon.

At some point we will be needing the help of an attorney. I can refer you to several competent attorneys who woul

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

be a much better bet than JACOB PERRONE or MICHAEL NICHOLS.

Sent from Mail for Windows
CHARLES MARTELL

--------- Forwarded message ---------
From: Chuck Martell < cwmartell.HRA@live.com>
Date: Mon, Jun 12, 2023 at 10:59 PM
Subject: TONY URAZ
To: jliles@ingham.org < jliles@ingham.org>
Cc: Cindy Martell < cam.hamilton@live.com>

Janell,

My information is that you are the JUDICIAL ASSISTANT to JUDGE JAMO.

I am a PRIVATE INVESTIGATOR working for a prisoner, TUNC URAZ who was convicted in JUDGE CANADY's courtroom in 2017. He was found guilty by a jury of several serious crimes including:

SOLICITATION OF A HOMICIDE
AGGRAVATED STALKING
In checking out the background of the jurors from his trial, I found significant discrepancies in the background of RYAN GIBBS PETTY, the jury foreman. PETTY has also been known as RYAN GIBBS CARTER, and he changed his name on his MICHIGAN DRIVER's LICENSE. His name was also changed on his voters registration cards, and he filed bankruptcy previous to his VOIR DIRE as a juror. I am in possession of several documents which show the discrepancies in his background. I would like to send you a copy of these documents so you can show them to the judge.

I believe that PETTY/CARTER should never have been a juror. His failure to disclose these significant discrepancies is the same as being deceitful on his juror questionnaire. I also have the transcript of JUDGE CANADY asking him questions during the VOIR DIRE process, and PETTY/CARTER failed to honestly answer the JUDGE's questions.

Please call my cell phone to discuss this matter more thoroughly.

Sent from Mail for Windows
CHARLES MARTELL
LICENSED PRIVATE INVESTIGATOR (Agency license NO: 3701206460)
HAMILTON RESEARCH ASSOCIATES, LLC
6632 TELEGRAPH RD
SUITE 288
BLOOMFIELD HILLS, MI 48301

--------- Forwarded message ---------
From: Chuck Martell < cwmartell.HRA@live.com>
Date: Mon, Jun 12, 2023 at 11:07 PM
Subject: INTERVIEWING JURORS
To: jliles@ingham.org < jliles@ingham.org>
Cc: Cindy Martell < cam.hamilton@live.com>

JAMELL,

Could you please send me a copy of JUDGE JAMO's position on the interviewing of jurors.

Thank you.

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

----- İletilmiş Mesaj -----

Kimden: "Chuck Martell"
Kime: "Tony Ur" , "aysemu@yahoo.com"
Bilgi:
Gönderildi: 22:00''20e' 20 Haz 2023 Sal
Konu: EMAIL FROM LILES

TONY,

Yesterday, June 19, 2023 I sent an email to JANELL LILES asking about the replacement JUDGE. This morning I received a response indicating that "assigning a new judge could take some time".

I agree with you, TONY. If you closely read my email to LILES I pointed out that the single most important fact was that CARTER/PETTY committed the crime of FRAUD and PERJURY either with his driver's license in MICHIGAN or with the INGHAM COUNTY court.

DRIVER'S LICENSE INFORMATION

When CARTER originally applied for his first driver's license in 1982 when he was 16 years old, his name was RYAN GIBBS CARTER. He never changed the name to PETTY until 2022.

I am a former police officer and I know that the laws in MICHIGAN require that all of the information on a person's driver's license must be current and correct. The law applies to "ALL INFORMATION" including the name, the address, the date of birth, the endorsements, the sight prescriptions, etc. This law is the reason that a new bride, who took her husbands name, has to make the correction on her driver's license "IMMEDIATELY".

When a police officer stops a vehicle and asks to see the driver's license of the driver of a car he has pulled over, the first thing he looks at is the name, the address, and the date of birth. The officer will always ask "is this your current address".

In times past, there had to be a "CHANGE OF ADDRESS" sticker applied to the back of a driver's license card. In today's world, however, the change to a driver's license information can be done instantly by computer in the MSOS local office. A new driver's license paper document is then printed out by the MSOS personnel and given to the MICHIGAN resident. The "hard copy" license is mailed to the address on the license.

When a MICHIGAN resident changes some information on their driver's license, it is a big deal requiring the person to appear at a local SECRETARY OF STATE office and provide documented proof of the reason for the change. A new bride must show her MARRIAGE CERTIFICATE which becomes a permanent part of her MSOS file. If another resident moves, the law requires a change of address form be completed at the MSOS office immediately. A violation of any of these laws can result in a traffic ticket being issued.

When a bride changes her last name on the MICHIGAN DRIVER's LICENSE, the new license shows both names, and the date that the information was changed.

Now when a man changes his last name on his driver's license, the issue of taking the spouses last name is not relevant. The man would have to show a document which would justify the reason that he needed to change the name. IF RYAN GIBBS CARTER changed his name to RYAN GIBBS PETTY, the document should be in his MSOS file permanently. Believe me, the fraud investigators at the MSOS are on alert to drug dealers trying to change their last names to avoid their criminal history.

The seizure laws regarding drug dealers are draconian. If a police officer pulls over a drug dealer and his car is in his name, the officer can seize the car, his drugs, his cash, his jewelry, his home, and his bank accounts. The drug

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

dealer does not even have to be convicted for the seizure to occur. This is the reason that so many drug dealers sign false names for an alternate driver's license. The MSOS employs former STATE POLICE detectives to work on the many, many fraud cases every week.

When HRA personnel checked with the MSOS for the driver's license information on RYAN GIBBS PETTY, it was discovered that he had five different driver's license numbers. In MICHIGAN, the first digit of a driver's license number is the first letter of the last name. When a person has changed his last name, it shows on the driver's license report. So according to the document HRA received from the MSOS, CARTER changed his name to PETTY on 4-22-2022, which totally changed the beginning letter on the driver's license number. That means that if he signed his name as PETTY to a verdict form in 2017, he was either committing FRAUD and PERJURY to the MSOS, or to the INGHAM COUNTY COURT.

INGHAM COUNTY CIRCUIT COURT
Several of the people I have spoken with at the court told me that jurors are selected from the VOTER REGISTRATION roles in the surrounding counties. It could be that the roles showed CARTER/PETTY as RYAN GIBBS PETTY. There are laws covering that a Michigan resident wishing to vote must register under their correct identity. When HRA personnel checked the INGHAM COUNTY voter roles, they found that he had registered under both names, first CARTER, and then later as PETTY.

Now, HRA has done work on these issues for a number of counties in MICHIGAN, OHIO, ILLINOIS, TEXAS, WISCONSIN and other states. We have found that almost every state has the same laws covering the accuracy of the information provided by a person registering to vote. Unfortunately, there is not the same concern with drug dealers getting VOTE cards in false names.

At some point in his serving as a JUROR in the trial of URAZ, CARTER/PETTY would have been sworn in under penalty of PERJURY. IF he was being honest, he would have informed the court of the duplicity of his names. It is unfortunate that the court never checked him out as they should have done:

NAME
ADDRESS
DATE OF BIRTH
SOCIAL SECURITY NUMBER
DRIVING RECORD
VEHICLE REGISTRATIONS
CRIMINAL HISTORY
COURT LITIGATION HISTORY

If the court had done their due-diligence in checking out their jurors, with PETTY they would have discovered that he lied under oath, the duplicity of his two names, and the fact that he filed bankruptcy in the name of CARTER. The court investigator would have discovered that the name on his driver's license was CARTER, and that he had the same social security number in both names. The INVESTIGATOR would also have discovered that CARTER/PETTY had previous vehicles registered in the name of CARTER. I seriously doubt that CARTER/PETTY would have been accepted as a juror, had the court known those issues.
SIGNATURE ON THE VERDICT FORM
If it is true that as the FOREMAN of the jury CARTER/PETTY signed the verdict form as RYAN GIBBS PETTY in the year of 2017, then he committed an even additional act of FRAUD and PERJURY. At the time he signed that form with his name as PETTY, the name on his driver's license was still CARTER.
MOTION FOR A MISTRIAL
The fact remains that they did not discover those issues, and accepted him as a member of your jury. That mistake was on the court, and not on you. When a motion is filed for a MISTRIAL with a claim of JUROR MISCONDUCT, a wise judge should immediately declare a mis-trial and release you from jail.

CHANCE OF SUCCESS

Tony, while I cannot guarantee that this will succeed in getting you released (that decision is not mine to make), I have had great luck in past cases of convincing a judge to make that decision.

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**M.D.O.C. VISITING APPLICATION**                                             CAJ-103 ■ REV. 03/15 ■ 4835-0103

## Instructions For Visitors Filling Out This Application

This is an application to visit a prisoner in a Michigan correctional facility. All questions in section A and B must be answered. If a question does not apply, write Not Applicable on the line. ALL questions in Section C must be checked YES or NO. If you check YES, you must supply the requested information. All entries on this form must be clearly printed and legible. This form must be legibly signed and dated as indicated in Section D. Forms that are not legible will not be processed. Section E must be completed if applicant is a minor. Do not complete Section F. Mail the completed application to the mail room or deliver to the information desk of the facility you are requesting to visit. Do not mail the application to the prisoner. Including a self-addressed-stamped envelope when this application is returned will ensure that you receive notification of your approval or denial to visit. Without a self-addressed-stamped envelope, you will be notified only if your application is denied.

YOUR DRIVER LICENSE # _____ / _____   OR State ID # _____ / _____
                          (State)        (Number)                              (State)        (Number)

**Your Full Name (Please print)**

_____ _____ _____     **A**
   (Last)                (First)                (Middle)
**Your Address** _____
                        (Street)                      (Apt. #)
_____ _____ _____
   (City)                (State)                (Zip)

Prisoner Name _____

_____ _____ _____
   (Last)        (First)        (Middle)
Prisoner Number _____

**Your Date and Place of Birth** _____ / _____ / _____   **(City)** _____   **(State)**_____
                                          (Mo./Day/Yr.)

List ALL other names you have used (including aliases, maiden name, and names by previous marriages)       CHECK ONE
(Last) _____ (First) _____ (Middle) _____    ☐ MALE       **B**
(Last) _____ (First) _____ (Middle) _____    ☐ FEMALE
(Last) _____ (First) _____ (Middle) _____

**Your relationship to the prisoner** _____
(Are you the parent, grandparent, stepparent, spouse, child, sibling, father/mother-in-law, stepchild, grandchild, stepbrother/sister, etc.)

Are you now or have you ever been a MDOC employee or provider of contractual services to the MDOC?   ☐ YES  ☐ NO

Work location _____

Are you a prisoner or a former prisoner who was incarcerated in a state or federal prison in any jurisdiction? ☐ YES  ☐ NO

If so, what city & state _____ Date _____

Ever been restricted from visiting a prisoner?   ☐ YES  ☐ NO   Prisoner name & number _____

Date & reason for restriction _____   **C**

Are you currently on Parole / Probation for a felony?  ☐ YES  ☐ NO   What city & state _____

Have you ever been convicted of a FELONY?  ☐ YES  ☐ NO   When (mo. /yr.) _____ City & state _____

Conviction _____ (List all convictions • use additional paper if necessary)

**I SUBMIT THAT ALL OF THE INFORMATION IS TRUE** _____   **D**
                                          SIGNATURE OF VISITOR APPLICANT          DATE

## TO BE COMPLETED IF VISITOR IS A MINOR (unless emancipated)

I submit that above named minor is a child, stepchild, grandchild, sibling, half-sibling, or step-sibling of this prisoner. I also understand that all children must be accompanied by an adult immediate family member or a legal guardian of the child.      **E**

**I SUBMIT THAT ALL OF THE INFORMATION IS TRUE** _____
                                          SIGNATURE OF THIS CHILD'S NON-INCARCERATED PARENT OR LEGAL GUARDIAN
**NOTE: A COPY of the minor's birth certificate, certificate of adoption or court order establishing paternity must be submitted with this application. These copies of documents will not be returned but will be destroyed when the verification process is complete. An original or a certified true copy of birth certificate, certificate of adoption, a court order establishing paternity or a valid picture ID of the minor must be presented at each visit.**

## STAFF USE ONLY (Type or Print Legibly)

Facility MDOC Visiting Application processed at _____ Self-addressed-stamped envelope included?  ☐ Yes  ☐ No

Checks completed ☐ On Visitor List  ☐ PSI reviewed  ☐ LEIN completed  ☐ Application complete   Date received _____

Signature of Reviewer _____ Date _____

Application ☐ APPROVED  ☐ DENIED        Approved / Denied by _____ Date _____   **F**

Warden's Signature (if applicant is a prisoner, former prisoner or is on parole or probation) _____

Reason for denial _____

Other comments _____

If you have been denied access to a corrections facility because of criminal history information obtained from the LEIN network,
   ☐    You may inquire about outstanding warrants by appearing at a police department and presenting identification.
   ☐    You may obtain a copy of your Michigan criminal history record at www.michigan.gov/ichat. There is a fee for this service.

Entered in Visitor Tracking _____
                              (Initials)                          (Date)

NOTE: If form copied from the MDOC website, duplication and distribution by reviewing facility is required after the approval process is complete.
Distribution:  ☐ Institution Record Office File  ☐ Counselor File  ☐ Information Desk  ☐ Visitor

# STATE OF MICHIGAN

## IN THE 30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff,

v

TUNC URAZ,

        Defendant.

Case No. 16-1064-FH; 16-1065-FC

**HON. ROSEMARIE E. AQUILINA**

**ORDER DENYING MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL**

---

## ORDER DENYING DEFENDANT'S MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL

At a session of said Court held at the Courthouse
In the City of Lansing, County of Ingham, State of Michigan
Thursday, July 13, 2023:

### PRESENT: THE HONORABLE ROSEMARIE E. AQUILINA

On June 30, 2023, Defendant, TUNC URAZ, filed an evidentiary motion to allow a private investigator to contact former jurors and to be granted a new trial. On November 9, 2017, Defendant was convicted of one count of Aggravated Stalking and three counts of Homicide – Solicitation of Murder. On January 24, 2018, Defendant was sentenced to 36 months to 90 months with credit for 453 days served. Defendant's earliest possible release date is July 9, 2033.

In his motion, Defendant makes several arguments that this Court does not find persuasive. First, Defendant claims that, in his trial, Juror #2 committed perjury by using a married last name rather than his birth last name and that this discrepancy denied Defendant a fair trial. As stated in Defendant's Motion, the standard for juror misrepresentation in voir dire is "it is proper and

1

appropriate to grant a new trial when affidavits or testimony are presented confirming that matters have been falsely denied or concealed on voir dire, if these matters would establish the juror's incompetency or disqualification or would lead the parties to challenge him or her and if the affidavits are not proffered to show misconduct of a juror or jury for the purpose of impeaching their verdict. *People v Graham*, 84 Mich App 663, 666-667 (1978). The allegation that Juror #2 used a married last name is insufficient to demonstrate incompetency or disqualification.

Defendant also claims that Juror #1 prejudiced the jury against Defendant when he indicated that he was racists against Turkish people. Defendant alleges that Juror #1 was dismissed before deliberations began, but Defendant also claims that Juror #1 spread those racist beliefs to the rest of the jury over the course of his tenure as a juror. The motion alleges that this Court did not dismiss Juror #1 immediately to prevent "a stampede with other jurors." Ultimately, Defendant's argument is not persuasive. Defendant fails to articulate any evidence that Juror #1 spread racist beliefs to the remainder of the jury and fails to account for that fact that jurors are unable to discuss the case prior to deliberations. As such, Defendant has failed to persuade this Court that Juror #1 tainted the jury.

Finally, Defendant claims that Juror #11 was seen talking to one of the parties' mother on the first day of jury selection. Defendant alleges that when this issue was raised, Judge Canady responded, "[a]nybody can come in and sit; I cannot exclude anyone sitting in the courtroom during jury selection." The mother was not listed as a witness and was therefore free to sit in the courtroom and view the trial. There is no evidence presented that Juror #11 was tainted by this alleged interaction. Therefore Defendant's argument is not persuasive.

Ultimately, Defendant's motion must fail because he has failed to provide any persuasive legal argument to support his motion. Unfortunately, "a party may not leave it to this Court to

search for authority to sustain or reject its position." *Leitch v Switchenko*, 169 Mich App 761, 764

(1988). In other words, it is not the duty of this Court to find case law, statutory authority, or factual

justifications to satisfy Defendant's motion. As such, Defendant's motion for Evidentiary Hearing

and New Trial must be **DENIED** because Defendant failed to state a claim for relief which may

be granted.

 **NOW THEREFORE, IT IS ORDERED:** Defendant's motion for Evidentiary Hearing

and New Trial shall be **DENIED** for the reasons stated above.

 **IT IS SO ORDERED.**

Dated: 17 Aug 23

        **HON. ROSEMARIE E. AQUILINA**
        30th Circuit Court Judge

Thirtieth Judicial Circuit of Michigan
Veterans Memorial Courthouse
P.O. Box 40771
Lansing, Michigan 48901-7971

Toni Uraz # 114653
Muskegon Correctional Facility
2400 Sheridan Dr.
Muskegon, MI 49442

4-100B


RECEIVED
AUG 24 2023
By

US POSTAGE PITNEY BOWES
ZIP 48910
02 4W
0000387070 AUG 22 2023
$ 000.63

Attach.
#4

# M.D.O.C. VISITING APPLICATION

CAJ-103 ■ REV. 03/15 ■ 4835-0103

## Instructions For Visitors Filling Out This Application

This is an application to visit a prisoner in a Michigan correctional facility. All questions in section A and B must be answered. If a question does not apply, write Not Applicable on the line. ALL questions in Section C must be checked YES or NO. If you check YES, you must supply the requested information. All entries on this form must be clearly printed and legible. This form must be legibly signed and dated as indicated in Section D. Forms that are not legible will not be processed. Section E must be completed if applicant is a minor. Do not complete Section F. Mail the completed application to the mail room or deliver to the information desk of the facility you are requesting to visit. Do not mail the application to the prisoner. Including a self-addressed-stamped envelope when this application is returned will ensure that you receive notification of your approval or denial to visit. Without a self-addressed-stamped envelope, you will be notified only if your application is denied.

YOUR DRIVER LICENSE # _____ (State) / _____ (Number)     OR State ID # _____ (State) / _____ (Number)

Your Full Name (Please print) _____ (Last) _____ (First) _____ (Middle)

**A**

Prisoner Name _____ (Last) _____ (First) _____ (Middle)

Your Address _____ (Street) _____ (Apt. #)
_____ (City) _____ (State) _____ (Zip)

Prisoner Number _____

Your Date and Place of Birth _____ / _____ / _____ (Mo./Day/Yr.)     (City) _____     (State) _____

List ALL other names you have used (including aliases, maiden name, and names by previous marriages)
(Last) _____ (First) _____ (Middle) _____
(Last) _____ (First) _____ (Middle) _____
(Last) _____ (First) _____ (Middle) _____

CHECK ONE
☐ MALE
☐ FEMALE

**B**

Your relationship to the prisoner _____
(Are you the parent, grandparent, stepparent, spouse, child, sibling, father/mother-in-law, stepchild, grandchild, stepbrother/sister, etc.)

Are you now or have you ever been a MDOC employee or provider of contractual services to the MDOC? ☐ YES ☐ NO
Work location _____

Are you a prisoner or a former prisoner who was incarcerated in a state or federal prison in any jurisdiction? ☐ YES ☐ NO
If so, what city & state _____

Ever been restricted from visiting a prisoner? ☐ YES ☐ NO   Prisoner name & number _____ Date _____
Date & reason for restriction _____

**C**

Are you currently on Parole / Probation for a felony? ☐ YES ☐ NO   What city & state _____
Have you ever been convicted of a FELONY? ☐ YES ☐ NO   When (mo. /yr.) _____ City & state _____
Conviction _____
(List all convictions • use additional paper if necessary)

## I SUBMIT THAT ALL OF THE INFORMATION IS TRUE

_____ SIGNATURE OF VISITOR APPLICANT     _____ DATE

**D**

## TO BE COMPLETED IF VISITOR IS A MINOR (unless emancipated)

I submit that above named minor is a child, stepchild, grandchild, sibling, half-sibling, or step-sibling of this prisoner. I also understand that all children must be accompanied by an adult immediate family member or a legal guardian of the child.

**E**

## I SUBMIT THAT ALL OF THE INFORMATION IS TRUE

_____ SIGNATURE OF THIS CHILD'S NON-INCARCERATED PARENT OR LEGAL GUARDIAN

NOTE: A COPY of the minor's birth certificate, certificate of adoption or court order establishing paternity must be submitted with this application. These copies of documents will not be returned but will be destroyed when the verification process is complete. An original or a certified true copy of birth certificate, certificate of adoption, a court order establishing paternity or a valid picture ID of the minor must be presented at each visit.

## STAFF USE ONLY (Type or Print Legibly)

Facility MDOC Visiting Application processed at _____
Checks completed ☐ On Visitor List ☐ PSI reviewed ☐ LEIN completed ☐ Application complete   Self-addressed-stamped envelope included? ☐ Yes ☐ No
Signature of Reviewer _____ Date _____   Date received _____
Application ☐ APPROVED ☐ DENIED
Approved / Denied by _____
Warden's Signature (If applicant is a prisoner, former prisoner or is on parole or probation) _____ Date _____
Reason for denial _____
Other comments _____

**F**

If you have been denied access to a corrections facility because of criminal history information obtained from the LEIN network,
☐ You may inquire about outstanding warrants by appearing at a police department and presenting identification.
☐ You may obtain a copy of your Michigan criminal history record at www.michigan.gov/ichat. There is a fee for this service.

Entered in Visitor Tracking _____ (Initials) _____ (Date)

NOTE: If form copied from the MDOC website, duplication and distribution by reviewing facility is required after the approval process is complete.
Distribution: ☐ Institution Record Office File ☐ Counselor File ☐ Information Desk ☐ Visitor

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:43 PM EST,    Letter ID: 1846428895
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 08/27/2023 22:31:42

Please do not reply to this email

STATE OF MICHIGAN
INGHAM CTY. 30th. CIR. CT.

TO :

HON. JUDGE R. E. AQUILINA
CIR. CT. JUDGE
30th CIR Ct., INGHAM CTY.
313 W. KALAMAZOO ST.
LANSING, MI 48933-2041

FROM:

MR. TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

30th.Cir.Ct.# s 16-1064 FH;16-1065-FC;
COA#s 343695, 343696
SC#s:165560,165561
----------------------/

MOTION FOR RECONSIDERATION/REBUTTAL PER MCR 2.119(F)(3) FOR THE DECISION MADE ON
08/17/2023, DENYING THE MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL BASED ON JUROR
MISCONDUCT.

2.119 (F)(3)
THE MOVING PARTY MUST DEMONSTRATE A PALPABLE ERROR BY WHICH THE COURT AND THE PARTIES
HAVE BEEN MISLEAD AND SHOW THAT DEFENDANT DISPOSITION OF THE MOTION MUST RESULT FROM
CORRECTION OF THE ERROR.

ORAL ARGUMENT REQUESTED PER MCR 7.214

DEAR HONORABLE JUDGE AQUILINA,

IN INGHAM COUNTY WHEN A POTENTIAL JUROR FILLS OUT THEIR JUROR QUESTIONNAIRE AND THE
ANSWERS THEY PROVIDE IS ACCEPTED AS TRUTH ; ONCE ONE SIGNS THAT QUESTIONNAIRE; SAME
JUROR BEFORE AND/OR AFTER IMPANELLING JURORS; THE OATH ONE TAKES TO BE TRUTHFUL, IT IS
ASSUMED THAT PERSON WOULD BE HONEST. (SO THERE IS NO PENALTY FOR PERJURY) ?

IS THIS THE STANDARD AT INGHAM COUNTY CIRCUIT COURT?

OR

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 8/27/2023 10:31:43 PM EST,   Letter ID: 1846428895
Location : MCF
Housing : UNIT 4100B01


IS THIS YOUR JUDICIAL LAW AND RULE MAKING? "ABSURD RESULTS DOCTRINE" Javens 469 MICH 1032 (2004).

BUT OF COURSE COURT APPOINTED MENTALLY IMPAIRED DEFENSE COUNSEL OF DEFENDANT (JACOB A. PERRONE) DID NOT READ THE JUROR QUESTIONNAIRES BEFORE VOIR DIRE, EVEN IF DEFENDANT'S COUNSEL HAD DONE SO JUROR WOULD HAVE KEPT THE SAME NAME.

HERE IS THE CASE LAW :

IN GUSTAFSON V. MORRISON 57 MICH APP 655 (1975) "THE PLAINTIFF APPEALED ARGUING THAT THE TRIAL COURT ERRED IN FAILING TO GRANT HER MOTION FOR A NEW TRIAL ON THE GROUND THAT A JUROR GAVE FALSE ANSWERS IN RESPONSE TO QUESTIONS ON HIS JURY QUESTIONNAIRE AND DURING JURY VOIR DIRE. THIS COURT FOUND THAT THE JUROR DID GIVE FALSE ANSWERS ON THE JURY QUESTIONNAIRE AND DURING VOIR DIRE AND REVERSED THE TRIAL COURT'S DENIAL OF PLAINTIFFS' MOTION FOR A NEW TRIAL BASED ON THE JUROR'S FALSE STATEMENTS.

THE COURT'S RATIONALE FOR REVERSING THE TRIAL COURT WAS THAT THE PLAINTIFF WOULD HAVE SUCCESSFULLY CHALLENGED THE JUROR FOR CAUSE IF THE JUROR HAD BEEN TRUTHFUL AND THAT THE JURY WAS THEREFORE AN IMPROPERLY CONSTITUTED TRIBUNAL.

STATUES:

MCL 600.1354(1) NONCOMPLIANCE WITH CHAPTERS AS GROUNDS FOR REQUESTING CONTINUANCE OR CLAIMING INVALIDITY OF VERDICT.....

"...... unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial"

MCR 2.510 (B)(2) JUROR PERSONAL HISTORY QUESTIONNAIRE........
ANSWERING THE QUESTIONNAIRE FALSELY, IS CONTEMPT OF COURT.

MCR 2.511 IMPANELLING THE JURY
(D) CHALLENGES FOR CAUSE
(1) NOT QUALIFIED TO BE A JUROR
(3) IS BIASED FOR OR AGAINST TO A PARTY OR ATTORNEY.

CHALLENGE FOR CAUSE
MCR 6.412 (D)(2)
PROCEDURE..... EXCUSE THE JUROR FROM THE PANEL

MCR 2.611(A)(1)(b) A NEW TRIAL AND AMENDMENT OF JUDGEMENT
(A) GROUNDS
(1) NEW TRIAL MAYBE GRANTED.....SUBSTANTIAL RIGHTS ARE MATERIALLY AFFECTED
(b) MISCONDUCT THE JURY OR THE PREVAILING PARTY


DEFENDANT PROVIDED/QUOTED SPECIFIC TRIAL TRANSCRIPT PAGES AND TESTIMONY TO PROVE THAT EVERYTHING WAS ON RECORD YET YOUR BRIEF USES "ALLEGEDLY" WORD TO MAKE IT SOUND LIKE DEFENDANT MADE UP THESE JUROR ISSUES.

YOUR BRIEF/DECISION IMPLIES FOR JUROR #2 THAT :

(from second parag.#1,pg#2 in part)....."if these matter's would establish the juror's incompetency or disqualification or would lead parties to challenge him or her and if the affidavits are not proffered to show misconduct of a JUROR or

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:43 PM EST,   Letter ID: 1846428895
Location : MCF
Housing : UNIT 4100B01

jury for the purpose of impeaching their verdict. People v Graham, 84 Mich App 663, 666-667 (1978)".
"THE ALLEGATION THAT JUROR #2 USED A MARRIED LAST NAME IS INSUFFICIENT TO DEMONSTRATE INCOMPETENCY OR DISQUALIFICATION"

***HE HAD A DOUBLE IDENTITY***

THE PRIVATE INVESTIGATOR (MR. CHARLES W. MARTELL) WAS HIRED TO INVESTIGATE AND THEN  SENT HIS FINDINGS/PROOFS, RELATED DOCUMENTS  WITH HIS SIGNED AFFIDAVIT TO THIS COURT.

MR. MARTELL IS AN EX-LAW ENFORCEMENT OFFICER WHO IS VERY EXPERIENCED AND HAS TESTIFIED IN MANY TRAILS AS AN EXPERT WITNESS, HIS QUALIFICATIONS ARE IMPLACABLE
(DEFENDANT HAS SENT HIS CV/RESUME TO THIS COURT)

THIS IS WHY DEFENDANT ASKED/MOTIONED THIS COURT TO ORDER AN EVIDENTIARY HEARING TO HAVE THE JUROR #2 TO TESTIFY ON RECORD WHY HE USED HIS FAKE/FALSE NAME.

>HE USED A FAKE/FALSE NAME ON HIS JUROR QUESTIONNAIRE AND

>SWORE IN BEFORE AND AFTER IMPANELED JURY WITH HIS FALSE/FAKE NAME AND

>SIGNED THE JURY VERDICT FORM AS A "JUROR FOREPERSON " WITH HIS FALSE AND FAKE NAME. (MRE 606(3))

TO PROVE JUROR#2 "DISQUALIFICATION" :

(1) PRIVATE INVESTIGATOR TRIED TO GET JURY QUESTIONNAIRE FROM JURY COORDINATOR MS. GLORIA McGRUDER BUT HE WAS TOLD THE QUESTIONNAIRES ARE ONLY KEPT 3 YEARS AFTER THE TRIAL.

(2) THEN I ASKED MY FAMILY TO CONTACT  IRON MOUNTAIN RECORDS MANAGEMENT COMPANY IN MICHIGAN TO FIND THIS "MISSING JUROR#2 JURY QUESTIONNAIRE" (still working on it last two months because of the "red tape" requests from IRON MOUNTAIN DOC. MNGT. COMPANY)

(3)  I ASKED INGHAM COUNTY PROSECUTOR'S OFFICE AND THEN PROSECUTOR KAHLA D. CRINO TO PROVIDE THIS JUROR#2 JUROR QUESTIONNAIRE AS WELL (STILL WAITING). IT SHOULD HAVE BEEN PART OF MY TRIAL RECORDS.

I AM ASKING THIS COURT TO FIND/DISCLOSE THE JURY QUESTIONNAIRE FILLED BY JUROR#2

PER;

(COMPONENT 19 OF THE MICHIGAN TRIAL COURT CASE FILE MANAGEMENT STANDARDS).

(4) I PROVIDED SPECIFIC PAGE NUMBERS AND LINE BY LINE TRIAL TRANSCRIPTS WORDING FOR JURY #2 VOIR DIRE AND HIS ANSWERS.

I AM NOT SURE WHAT ELSE I COULD HAVE PROVIDED TO THIS COURT TO PROVE AND PROVIDE DOCUMENTATION(S) THAT JUROR #2 WAS A "FRAUD".

RYAN GIBBS PETTY (CARTER)  COINCIDENTALLY CHANGED HIS LAST NAME TO "CARTER" ON 04/28/2022

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:43 PM EST, Letter ID: 1846428895
Location : MCF
Housing : UNIT 4100B01

AT SECRETARY OF STATE TO GET HIS NEW DRIVER LICENCE; RIGHT AFTER DEFENDANT'S SECOND GINTHER HEARING WAS ENDED ON 04/13/2023

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1846428904 P 1/81

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:44 PM EST,    Letter ID: 1846428904
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 08/27/2023 22:31:43

Please do not reply to this email

2) RECONSIDERATION FOR JUROR MISCONDUCTS

HERE ARE THE INCONSISTENCIES COMMITTED BY JUROR #2 RYAN GIBBS PETTY, WHICH WERE SENT BY PRIVATE INVESTIGATOR MR. CHARLES MARTELL TO THIS COURT ON 06/12/2023 IN AN AFFIDAVIT SIGNED BY HIM.

> JURY VERDICT FORM SIGNED AS RYAN PETTY ON 11/09/2017

>RYAN GIBBS PETTY (CARTER) (see email dated 05/23/2023)

>HE FILLED OUT JURY QUESTIONNAIRE AS LAST NAME "PETTY" IN 2016/2017

>HE DECLARED BANKRUPTCY IN 2001 UNDER THE NAME CARTER.

>ON 09/06/2018 SPEEDING TICKET WAS WRITTEN AS "CARTER"

>MI DRIVER LICENCE UNDER THE NAME "PETTY"

>HE CHANGED HIS LAST NAME TO "CARTER" OFFICIALLY ON  04/28/2022 TO OBTAIN A NEW MI DRIVER LICENSE

>COPY OF HIS APPLICATION FOR AN LLC DATED 08/30/2007 SHOWS HIS LAST NAME AS "CARTER"

>CO-DEBTOR IN BANKRUPTCY SIGNED BY DAWN RENEE (WEAVER) "CARTER"

>HIS MARRIAGE LICENCE WHEN RYAN "CARTER" MARRIED DAWN "CARTER".

>HIS MARRIAGE LICENCE WHEN RYAN GIBBS "CARTER" MARRIED GINA ERIN "PETTY".

>VOTER REGISTRATION CARDS UNDER TWO DIFFERENT NAMES (PETTY-CARTER)

>HIS BIRTH CERTIFICATE WHEN RYAN GIBBS  "CARTER" WAS BORN TO HIS MOTHER MARILYN E. "CARTER" (76 YEARS OLD A HIS FATHER ; GLEN EDWARD "CARTER" (deceased) in July of 1972.

> OBTAINED A SOCIAL SECURITY NUMBER UNDER HIS FAKE NAME

> OBTAIN HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER HIS VOIR DIRE TESTIMONY

18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...

MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS INTEGRITY IN QUESTION.

ON 10/31/2017 (SEE T.T. 10/31/2017, PGS 127,128,130,140,141)

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

TUNC URAZ 114653 MCF Lock:UNIT 4100B01 ID:1846428904 [P 2/3]

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:44 PM EST,  Letter ID: 1846428904
Location : MCF
Housing : UNIT 4100B01

JUROR #1

TO PROVE JUROR#1 "DISQUALIFICATION"

(from parag.#2 pg.2 in part).... ULTIMATELY, DEFENDANT'S ARGUMENT IS NOT PERSUASIVE. DEFENDANT FAILS TO ARTICULATE ANY EVIDENCE THAT JUROR #1 SPREAD RACIST BELIEFS TO THE REMAINDER OF THE JURY AND FAILS TO ACCOUNT FOR THAT FACT THAT JURORS ARE UNABLE TO DISCUSS THE CASE PRIOR TO DELIBERATIONS. AS SUCH, DEFENDANT HAS FAILED TO PERSUADE THIS COURT THAT JUROR #1 TAINTED THE JURY.

I PROVIDED SPECIFIC TRIAL TRANSCRIPT Pg. NUMBERS, RECORDS/TESTIMONY FROM JUROR #1 EXTENSIVE VOIR DIRE AND HIS DISCLOSURE OF HIS "BIASNESS" AGAINST TURKISH PEOPLE ON RECORD AFTER HE WAS SWORN IN AS AN IMPANELED JUROR.

THIS IS WHY I ASKED THIS HONORABLE COURT TO ORDER AND EVIDENTIARY HEARING AND IN MY BRIEF TO SHOW/PROVE THAT:

> WHY IS JURY#1 IS BIAS AGAINST TURKISH ETHNICITY AND WHETHER HE SHARED HIS BIASNESS WITH OTHER JURORS NEXT 7 DAYS WHEN HE WAS KEPT IN THE IMPANELED JURORS AFTER HE WAS SWORN IN

>IMPROPER PROCEDURE UTILIZED AT TRIAL RESULTED JUROR BEING RELEASED FROM THE PANEL PER MCR 6.411 AND MCL 768.18
(THE PROPER WAY TO DETERMINE/REPLACE AN ALTERNATE JUROR IS BY RANDOM SELECTION NOT KNOWINGLY).

THIS WAS A JUDICIAL LAW AND RULE MAKING BY JUDGE CANADY.

MCR 2.511(D) (2) JURY IS BIASED FOR OR AGAINST A PARTY OR ATTORNEY.

THE PURPOSE OF VOIR DIRE IS TO ELICIT ENOUGH INFORMATION FOR DEVELOPMENT OF A RATIONAL BASIS FOR EXCLUDING THOSE WHO ARE NOT IMPARTIAL FROM THE JURY.

SEE PEOPLE V MILLER 482 MICH 540 (2008) MI SUPREME COURT

SEE T.T. 11/02/2017 PGS. 12,13,15,16, 21,22,23 (EXTENSIVE VOIR DIRE WERE DONE TO JUROR#1 BY JUDGE CANADY , THEN PROSECUTOR ROTH AND DEFENDANT'S ATTORNEY JACOB A. PERRONE)

(SEE T.T.11/03/2017 PGS 4,5) JUDGES ABUSE OF DISCRETION ABOUT NOT DISMISSING JUROR#1 AND NOT HOLDING A REMMER HEARING TO SEE IF THE IMPANELED SWORN JURORS ARE POISONED/TAINTED BY JUROR#1.
U.S. v. REMMER, 347 US 227 (1954)

(SEE T.T. 11/09/2017 PGS. 181-182)

THIS IS "JUDICIAL LAW MAKING, ABSURD RESULTS DOCTRINE" BY JUDGE CANADY AND BY JUDGE AQUILINA SEE PEOPLE V. JAVENS, 469 MICH 1032 (2004).

JUROR 11

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

*You have received a* **JPay** *letter, the fastest way to get mail*

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 8/27/2023 10:31:44 PM EST,     Letter ID: 1846428904
Location : MCF
Housing : UNIT 4100B01

(in part paragraph # pg2) defendant claims juror #11 was seen talking to one of the parties' mother on the first day of jury selection. Defendant alleges that when this issue was raised, judge CANADY responded "[a]nybody can come in and sit; I cannot exclude anyone sitting in the court room during jury selection." The mother was not listed as a witness and was therefore free to sit in the court room and view the trial. There is no evidence presented that juror#11 was tainted by this alleged interaction. Therefore Defendant's argument is not PERSUASIVE.

THIS IS WHY I ASKED THE TRIAL FOOTAGE TO BE SHOWN/REVIEWED SHOWN SEVERAL TIMES  TO SEE THE MISCONDUCT PER MRE 606 (1)(2) ON 10/31/2017 (from 8:30 am till 12:00N)

FROM THE DENIAL BRIEF DATED (08/17/2023) last parag. pg 2

"Ultimately, Defendant's motion must fail because he has failed to provide any PERSUASIVE legal argument to support his motion.
 Unfortunately, " a party may not leave it to this court to search for authority to sustain or reject its position." Leitch V. Switchenko,169 Mich App 761, 764 (1988).

"IN OTHER WORDS, IT IS NOT THE DUTY OF THIS COURT TO FIND A CASE LAW, STATUTORY AUTHORITY, OR FACTUAL JUSTIFICATION  TO SATISFY DEFENDANT'S MOTION".

THIS COURT ERRED IN CONSULTING AUTHORITY DEALING WITH CIVIL LAW CASE

MCR 7.212(A)(7) BRIEFS

THE ARGUMENT PORTION OF THE BRIEF MUST PROVIDE SUPPORTING AUTHORITIES AND FACTS MUST BE SUPPORTED BY REFERENCE TO THE PLEADINGS.

WHEN RULING MOTION UNDER MCR 2.116 (C)(10) (TESTS FOR FACTUAL SUPPORT FOR CLAIM); THE COURT MUST CONSIDER THE AFFIDAVITS, PLEADINGS, DISPOSITIONS, ADMISSIONS, AS WELL AS OTHER DOCUMENTARY EVIDENCE, AND GRANT THE MOTION ONLY WHEN THE COURT IS SATISFIED THAT IS IMPOSSIBLE FOR THE CLAIM TO BE SUPPORTED AT TRIAL BECAUSE OF SOME DEFICIENCY THAT CANNOT BE OVERCOME. SCHIPPERS V SPX CORP. 186 MICH APP 595 (1990).

MCR 2.116 (G)(4) PROVIDES " AN ADVERSE PARTY MAY NOT REST UPON THE MERE ALLEGATIONS OR DENIALS OF HIS OR HER PLEADING, BUT MUST BY AFFIDAVITS OR AS OTHERWISE PROVIDED BY THIS RULE, SET FORTH SPECIFIC FACTS SHOWING THAT THERE IS A GENUINE ISSUE FOR TRIAL FOR WHICH CLAIMS RAISED... UNLESS THE ERROR COMPLAINED OF HAS RESULTED IN A MISCARRIAGE OF JUSTICE

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:40 PM EST, Letter ID: 1846428865
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 08/27/2023 22:31:39

Please do not reply to this email

3) RECONSIDERATION FOR JUROR MISCONDUCTS

>>>ANALYSIS AND CASE PRECEDENTS<<<

DEFENDANT USED IN HIS BRIEF "JUROR MISCONDUCT" WHICH WAS SENT TO THIS COURT ON 06/28/2023:

"CASE LAW(S), STATUTORY AUTHORITIE(S), OR FACTUAL JUSTIFICATION(S)"

REVERSE AND REMAND UNRELIABLE VERDICT OF "GUILTY"; VACATE DEFENDANT'S SENTENCES AND GRANT A NEW TRIAL ; ONCE JURY IS SWORN IN; DOUBLE JEOPARDY ATTACHES THEREFORE CANNOT BE CHARGED TWICE FOR THE SAME CRIMES AGAINST HIS FIFTH AMENDMENT RIGHTS; U.S V JORN 400 US 470 (1971) DOUBLE JEOPARDY generally ATTACHES at the time the jury is selected and sworn" people v MEHALL 454 Mich 1 (1997).
IF ANY MISCONDUCT BY IMPANELLED JURORS RISES IT WOULD BE A "MANIFEST INJUSTICE/NECESSITY" PER:
MCR 2.511(D)(2)jury bias against a party...
MCR 2.611(A)(1)(b)A new trial may be granted....misconduct of a juror....

MANIFEST INJUSTICE: HAS BEEN DEFINED AS "[A]N ERROR IN THE TRIAL COURT THAT IS DIRECT, OBVIOUS, AND OBSERVABLE. (BLACK'S LAW DICTIONARY 974 (7th Ed. 1989) IN OTHER WORDS " A SHOWING OF MANIFEST IN JUSTICE REQUIRES THAT THERE EXISTS A FUNDAMENTAL FLOW IN THE COURT'S DECISION THAT WITHOUT CORRECTION WOULD LEAD TO A RESULT THAT IS BOTH INEQUITABLE AND NOT IN LINE WITH APPLICABLE POLICY.

REVIEW IS LIMITED TO WHETHER FAILURE TO REVIEW WOULD DEPRIVE THE DEFENDANT OF A FAIR TRIAL FO RESULT IN MANIFEST INJUSTICE. PEOPLE V OSBY 291 MICH APP 412 (2011)

MCR 2.510(C) provides that on completion, the jury questionnaire shall be filled with the court clerk or the jury board. The only person's allowed to examine the questionnaire are; the judges of the court; clerk and deputy clerks; parties to actions in which the juror is called to serve and their attorneys; and persons authorized access by court rule or by court order. The attorneys must be given a reasonable time to examine the questionnaires before being called on to challenge for cause. The questionnaires must be kept on file for 3 years from the time they are filled out.

COURT TO ORDER COPY OF HIS JURY QUESTIONNAIRE FROM 2016- 2017 AND HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER
18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...

MRE 606(b) validity into of verdict or indictment (1) whether extraneous prejudicial information was improperly brought to jury's attention (2) whether any outside influence was brought to bear upon any juror or (3) whether there was mistake in entering the verdict onto the verdict form.

MRE 103 RULINGS ON EVIDENCE
(a) effect of erroneous ruling
(b) offer of proof

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From   : TUNC URAZ, ID: 114653
To :  Information Services
Date : 8/27/2023 10:31:40 PM EST,   Letter ID: 1846428865
Location : MCF
Housing :  UNIT 4100B01

(d) plain error

FALSE ANSWERS BY JUROR TO QUESTIONS ON VOIR DIRE WHETHER INTENTIONAL OR UNINTENTIONAL DENY THE DEFENDANT A FAIR TRIAL, IF CORRECT ANSWERS WOULD HAVE LED THE PARTICIPATE TO CHALLENGE HIM .
PEOPLE V. GRAHAM 84 MICH APP 663 (1978)

"IN VOIR DIRE MEANING ***"TO SPEAK THE TRUTH"*** POTENTIAL JURORS ARE QUESTIONED IN AN EFFORT TO UNCOVER ANY BIAS THEY MAY HAVE THAT COULD PREVENT DECIDING THE CASE" PEOPLE V TYBURSKI 445 MICH 606 (1994) (cleaned up)

DEFENDANT IS ENTITLED A RELIEF FROM A VERDICT BECAUSE OF DISALLOWANCE OF VOIR DIRE ONLY HE CAN PROVE THAT HE WAS ACTUALLY PREJUDICED BY THE PRESENCE OF THE JUROR IN QUESTION OR THAT THE JUROR WAS PROPERLY EXCUSABLE FOR CAUSE.
BYNUM V THE ESAB GROUP INC. 467 MICH 280 (2002)
PEOPLE V HANNUM 362 MICH 660 (1961)
PEOPLE V DEHAVEN 321 MICH 327 (1948)

A NEW TRIAL MUST BE GRANTED WHEN IT APPEARS THAT A JUROR GAVE UNTRUTHFUL ANSWERS DURING VOIR DIRE, WHEREAS TRUTHFUL ANSWERS WOULD HAVE ALLOWED A SUCCESSFUL CHALLENGE FOR CAUSE. (COLLIER V. WESTLAND ARENA INC. 183 MICH APP 251 (1990)

IN GUSTAFSON V. MORRISON 57 MICH APP 655 (1975) lv. 394 Mich 755 (1975) " LITIGANTS UNQUESTIONABLE RIGHT TO TRUTHFUL ANSWERS FROM A PROSPECTIVE JUROR ON VOIR DIRE. COUNSEL HAS A RIGHT TO RELY ON THE TRUTHFULNESS OF A JURY QUESTIONNAIRE BECAUSE IT IS DESIGNED TO PROVIDE A BASIS FOR INTELLIGENT CHALLENGING. HOWEVER UPON DISCOVERY OF A JUROR'S FALSE STATEMENTS AFTER TRIAL AND VERDICT, A MOVING PARTY MUST PRESENT TO THE COURT SOMETHING MORE THAN THE MERE FACT OF THE FALSITY OF THE ANSWERS. "There must be a showing of actual prejudice or it must be established to the satisfaction of the trial court that moving party would have successfully challenged for cause or otherwise dismissed the juror in question had the truth been revealed prior to trial.

PEOPLE V SCHRAM 378 MICH 145 (1966)
(Citizens Com.&Sav. Bank V ENBERG,15 MICH APP 438 (1968).

IT IS PROPER AND APPROPRIATE TO GRANT A NEW TRIAL WHERE TESTIMONY OR AFFIDAVITS ARE PRESENTED CONFORMING THAT MATTERS HAVE BEEN FALSELY DENIED OR CONCEALED ON VOIR DIRE; IF THOSE MATTERS WOULD ESTABLISH A JUROR'S INCOMPETENCY OR DISQUALIFICATION OR LEAD A PARTY TO CHALLENGE THE JUROR AND IF THE TESTIMONY OR AFFIDAVITS ARE NOT PREFERRED TO SHOW MISCONDUCT OF JUROR OR JURY FEAR THE PURPOSE OF IMPEACHING THE VERDICT. PEOPLE V GRAHAM 84 MICH APP 663 (1978). PEOPLE V. KAGE 193 MICH APP 49 (1992).

IN SULLIVAN V STATE 155 MISS 629 638 (125 So 115,117) IN WHICH THE COURT ADOPTED THIS RULE SAYING;
A LITIGANT HAS NOT VESTED RIGHT IN A PARTICULAR JUROR, OUT ONLY A RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY QUALIFIED UNDER THE LAW....WE THINK THE COURT, IN STANDING THE JUROR A SIDE OR SUSTAINING THE CHALLENGE, WAS ACTING UPON A QUESTION WHERE DIFFERENT REASONABLE CONCLUSIONS MIGHT BE REACHED AS TO THE QUALIFICATION OF THE JURORS, AND THERE IS NOTHING TO SUGGEST THAT THE JUDGE DESIRED ANYTHING OTHER THAN TO SECURE TO THE DEFENDANT THAT FAIR AND IMPARTIAL ACCORDED TO DEFENDANT BY THE LAW".

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 8/27/2023 10:31:40 PM EST,     Letter ID: 1846428865
Location : MCF
Housing : UNIT 4100B01

CONCLUSION:

THEREFORE DEFENDANT IS ASKING THIS HONORABLE COURT TO REVIEW THE MOTION AND TRIAL TRANSCRIPTS ONE MORE TIME AND ORDER AN EVIDENTIARY HEARING TO EXPAND THE RECORD.

DEFENDANT IS ASKING THIS HONORABLE COURT TO VACATE HIS SENTENCE AND GRANT HIM A NEW TRIAL PER MANIFEST IN JUSTICE.

RESPECTFULLY SUBMITTED

*Tunc Uraz*

TUNC URAZ

Proof of service : on 10/30/23 defendant mailed this brief to: *Ingham county prosecutor's office to Ms Elizabeth Allen*

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

Attach #5

## D.C. VISITING APPLICATION

CAJ-103 ■ REV. 03/15 ■ 4835-0103

### Instructions For Visitors Filling Out This Application

This is an application to visit a prisoner in a Michigan correctional facility. All questions in section A and B must be answered. If a question does not apply, write Not Applicable on the line. ALL questions in Section C must be checked YES or NO. If you check YES, you must supply the requested information. All entries on this form must be clearly printed and legible. This form must be legibly signed and dated as indicated in Section D. Forms that are not legible will not be processed. Section E must be completed if applicant is a minor. Do not complete Section F. Mail the completed application to the mail room or deliver to the information desk of the facility that you are requesting to visit. Do not mail the application to the prisoner. Including a self-addressed-stamped envelope when this application is returned will ensure that you receive notification of your approval or denial to visit. Without a self-addressed-stamped envelope, you will be notified only if your application is denied.

---

YOUR DRIVER LICENSE # _____ / _____ OR State ID # _____ / _____
(State) (Number)                                  (State) (Number)

**Your Full Name (Please print)** _____

(Last)          (First)          (Middle)

| | A |
|---|---|
| Prisoner Name | |

**Your Address** _____
(Street)          (Apt. #)

(Last) (First) (Middle)

_____
(City)          (State)          (Zip)

Prisoner Number _____

**Your Date and Place of Birth** _____ / _____ / _____ **(City)** _____ **(State)** _____
(Mo./Day/Yr.)

List ALL other names you have used (including aliases, maiden name, and names by previous marriages)

CHECK ONE

(Last) _____ (First) _____ (Middle) _____   ☐ MALE

(Last) _____ (First) _____ (Middle) _____   ☐ FEMALE    **B**

(Last) _____ (First) _____ (Middle) _____

**Your relationship to the prisoner** _____
(Are you the parent, grandparent, stepparent, spouse, child, sibling, father/mother-in-law, stepchild, grandchild, stepbrother/sister, etc.)

---

Are you now or have you ever been a MDOC employee or provider of contractual services to the MDOC?    ☐ YES  ☐ NO

Work location _____

Are you a prisoner or a former prisoner who was incarcerated in a state or federal prison in any jurisdiction? ☐ YES  ☐ NO

If so, what city & state _____ Date _____

Ever been restricted from visiting a prisoner?   ☐ YES  ☐ NO   Prisoner name & number _____

Date & reason for restriction _____    **C**

Are you currently on Parole / Probation for a felony? ☐ YES  ☐ NO   What city & state _____

Have you ever been convicted of a FELONY? ☐ YES  ☐ NO   When (mo. /yr.) _____ City & state _____

Conviction _____  (List all convictions • use additional paper if necessary)

---

### I SUBMIT THAT ALL OF THE INFORMATION IS TRUE   **D**

SIGNATURE OF VISITOR APPLICANT                    DATE

---

### TO BE COMPLETED IF VISITOR IS A MINOR (unless emancipated)

I submit that above named minor is a child, stepchild, grandchild, sibling, half-sibling, or step-sibling of this prisoner. I also understand that all children must be accompanied by an adult immediate family member or a legal guardian of the child.   **E**

### I SUBMIT THAT ALL OF THE INFORMATION IS TRUE

SIGNATURE OF THIS CHILD'S NON-INCARCERATED PARENT OR LEGAL GUARDIAN

**NOTE: A COPY of the minor's birth certificate, certificate of adoption or court order establishing paternity must be submitted with this application. These copies of documents will not be returned but will be destroyed when the verification process is complete. An original or a certified true copy of birth certificate, certificate of adoption, a court order establishing paternity or a valid picture ID of the minor must be presented at each visit.**

---

### STAFF USE ONLY (Type or Print Legibly)

Facility MDOC Visiting Application processed at _____ Self-addressed-stamped envelope included?   ☐ Yes  ☐ No

Checks completed ☐ On Visitor List  ☐ PSI reviewed  ☐ LEIN completed  ☐ Application complete   Date received _____

Signature of Reviewer _____ Date _____

Application ☐ APPROVED  ☐ DENIED    Approved / Denied by _____ Date _____

Warden's Signature (if applicant is a prisoner, former prisoner or is on parole or probation) _____    **F**

Reason for denial _____

Other comments _____

If you have been denied access to a corrections facility because of criminal history information obtained from the LEIN network,
☐  You may inquire about outstanding warrants by appearing at a police department and presenting identification.
☐  You may obtain a copy of your Michigan criminal history record at www.michigan.gov/ichat. There is a fee for this service.

Entered in Visitor Tracking _____
(Initials)          (Date)

---

NOTE:  If form copied from the MDOC website, duplication and distribution by reviewing facility is required after the approval process is complete.

Distribution:  ☐ Institution Record Office File   ☐ Counselor File   ☐ Information Desk   ☐ Visitor

TO :
INGHAM COUNTY 30th. CIRCUIT COURT CLERK
313 W. KALAMAZOO ST.
LANSING, MI 48909

FROM : *TUNC URAZ #11465³*
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

RE: BRIEFS THAT WERE NOT ENTERED INTO REGISTER OF ACTIONS

30th.Cir.Ct.# s 16-1064 FH;16-1065-FC;
PEOPLE V.

DEAR 30th. CIRCUIT COURT CLERK

SINCE LAST YEAR NOVEMBER 2022
I HAVE BEEN SENDING BRIEFS TO INGHAM COUNTY PROSECUTOR'S OFFICE MAINLY MS. C. SIMEON AND
MS. K. CRINO AND JUDGES, HOWEVER NONE OF MY BRIEFS ARE BEING REFLECTED/ENTERED ON
REGISTER OF ACTIONS UNDER MY CASE NUMBERS.

CAN YOU PLEASE VERIFY IF THE BRIEFS BELOW HAVE BEEN RECEIVED OR NOT?AND PLEASE SEND ME
AN UPDATED REGISTER OF ACTIONS REFLECTING THE CHANGES BELOW.

HERE ARE THE LIST OF BRIEFS I HAVE SENT SINCE LAST YEAR AND THEY ARE NOT
REFLECTED/ENTERED INTO REGISTER OF ACTIONS.

11/03/2022 SENT A BRIEF to CAROL SIEMON ABOUT
J. ROTH'S AND K. CRINO'S , PERJURY ON THEIR AGC BRIEFS AND MISREPRESENTATION

02/02/2023 COPY OF RECONSIDERATION FOR COA BRIEF SENT TO K. CRINO FOR COA DECISION
01/19/2023

04/11/2023 SENT A COPY OF STANDARD 4 SUPREME COURT BRIEF TO K.CRINO

04/28/2023 EXTRA BRIEFS STANDARD 4 SENT TO K. CRINO AND SUPREME COURT (SILVERTHORN AGC
RESPONSE)

05/19/2023 ASKING THE CLERK IF 30TH. COURT RECEIVED 04/28/2023 DOCS SENT TO MI SUPREME
COURT.

06/08/2023 SENT A BRIEFS TO J. DEWANE ABOUT SAME SIEMON BRIEF ABOUT ROTH'S AND K.CRINO'S ,
PERJURY BRIEFS ON THEIR AGC RESPONSES AND MISREPRESENTATION

06/09/2023 REBUTTAL/ REFUTATION TO INGHAM COUNTY PROSECUTORS' ANSWER TO DEFENDANT'S
APPLICATION FOR LEAVE TO APPEAL FILED WITH MICHIGAN SUPREME COURT AS A "COMPLAINT" ON
05/23/2030

06/12/2023 SENT TO J.DEWANE REBUTTAL/ REFUTATION TO INGHAM COUNTY PROSECUTORS' ANSWER
TO DEFENDANT'S APPLICATION FOR LEAVE TO APPEAL FILED WITH MICHIGAN SUPREME COURT AS A
"COMPLAINT" ON 05/23/2030

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

06/23/2023 JUROR MISCONDUCT BRIEF SENT TO KAHLA CRINO

06/23/2023 JUROR MISCONDUCT BRIEF SENT TO CHIEF JUDGE JOYCE DRAGANCHUK

06/26/2023 DECLARATORY judgement BRIEF SENT TO CHIEF JUDGE JOYCE DRAGANCHUK

06/30/2023 DECLARATORY judgement BRIEF SENT TO JUDGE AQUILINA AND JUROR MISCONDUCT BRIEF SENT TO JUDGE AQUILINA

06/30/2023 ASKED JUDGE DRAGANCHUK TO FORWARD P/I MARTELL'S AFFIDAVIT AND JUROR MISCONDUCT BRIEFS TO JUDGE AQUILINA

07/24/2023 ASKED JUDGE DRAGANCHUK TO RECUSE JUDGE AQUILINA BASED ON JUDGE AQUILINA IMPLICATED ON DECLARATORY JUDGEMENT.

07/24/2023 HARD COPY EVIDENCES/DOCUMENTS SENT TO JUDGE AQUILINA PER MICHAEL LEWYCKY'S LETTER ABOUT INGHAM COUNTY "DOES NOT ACCEPT ELECTRONIC SUBMISSIONS"

08/18/2023 MOTION TO AMEND RESTITUTION MCR 6.430 SENT TO JUDGE AQUILINA

08/18/2023 MOTION TO AMEND RESTITUTION MCR 6.430 SENT TO PROSECUTOR KAHLA D. CRINO

08/29/2023 RECONSIDERATION BRIEF SENT TO JUDGE AQUILINA PER DECISION ORDER DENYING DEFENDANT'S MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL FOR A SESSION HELD ON "07/13/2023 FOR On June 30th.,2023 Defendant, TUNC URAZ, filed an evidentiary motion to allow a private investigator to contact former jurors and grant a new trial."

08/29/2023 RECONSIDERATION BRIEF FOR JUROR MISCONDUCT SENT TO PROSECUTOR ELIZABETH ALLEN ALSO SENT MICHIGAN SUPREME COURT KEEP THE ABEYANCE GOING UNTIL APPEAL PROCESS IS RESOLVED FOR JURY MISCONDUCT.

ALSO :

NONE OF THIS INFORMATION/CHANGES BELOW WERE NOT ENTERED INTO REGISTER OF ACTIONS UNDER MY CASE NUMBERS? WHY?

ON 12/14 /2017 MY ATTORNEY JACOB A. PERRONE WAS SWITCHED WITH ATTORNEY DUANE SILVERTHORN THEN PER JUDGE CANADY'S ORDER.

ON 12/18/2017 THEN PROSECUTOR CHARLES T. KOOP II SENT A LETTER WITH ATTACHMENTS TO DUANE SILVERTHORN ABOUT JACOB A. PERRONE'S SECOND MENTAL IMPAIRMENT WITH OAKLAND COUNTY PROBATE COURT DECISION FOR MENTAL HEALTH TREATMENT AND LANSING POLICE REPORT DATED 11/20/2017 BY OFFICE McBride AND A LETTER FROM INGHAM COUNTY PROSECUTOR EXPLAINING ABOUT PERRONE'S MENTAL IMPAIRMENT ISSUE.(see prosecution file saved under 12/18/2017 PDF file)

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

AN "AFFIDAVIT/LETTER WITH EXHIBITS" ABOUT JUROR MISCONDUCT MOTION WRITTEN/SENT BY PRIVATE INVESTIGATOR CHARLES MARTELL TO:

IN THE MONTH OF MAY 2023 TO JUDGE CANADY

SAME DOCUMENTS TO:

IN THE MONTH OF JUNE TO JUDGE JAMO (JUNE 9th. 2023)

AND SAME DOCUMENTS TO:

IN THE MONTH OF JULY TO JUDGE AQUILINA

WHICH SHE HAD A "SESSION" ON 07/13/2023 AND DECISION REACHED ON 08/17/2023 ABOUT THE MOTION BASED ON JUROR MISCONDUCT.

WHY ARE ANY OF THOSE ENTRIES ENTERED INTO REGISTER OF ACTIONS UNDER MY CASE NUMBERS?

RESPECTFULLY SUBMITTED

TUNC URAZ

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!