UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division-   POOR QUALITY ORIGINAL

TUNC URAZ,

      Petitioner,

Vs.

FREEDEANE ARTIS,

      Respondent,

_____/

USDC Case No.   4:25-cv-10608
Hon. Judge: Shalina D. Kumar
Mag. Judge: David R. Grand

FILED
NOV 26 2025
CLERK'S OFFICE
DETROIT

**Attorney For Defendant:**

Dana Nessel

Nicholas Johnson
Criminal Appellate And Parole
3030 West Grand Blvd, Suite 10-100
Detroit, Michigan 48202
(517) 335-7650

**Petitioner In Pro Per:**

Tunc Uraz #114653
Thumb Correctional Facility
3225 John Conley Drive
Lapeer, Michigan 48446

_____

PETITIONER'S TRAVERSE IN RESPONSE TO
RESPONDENT'S ANSWER IN OPPOSITION.
\*     \*     \*

Prepared By:

Michael Kuzma, esq.
for Petitioner

T A B L E   O F   C O N T E N T S

STANDARD FOR GRANTING RELIEF.....                                    1

CLAIMS RAISED AND EXHAUSTED.....                                     2

INTRODUCTION AND COUNTER STATEMENT OF CASE.....                      3

AGGRAVATED STALKING.....                                             3

SOLICITATION OF MURDER.....                                          4-6

GINTHER HEARING.....                                                 6

PETITIONER DID NOT REQUEST PERRONE CONTINUE TO REPRESENT HIM.....    7

PETITIONER HAS PRESENTED AND EXHAUSTED ALL ISSUES RAISED.....        8-10

JOINDER/MISJOINDER.....                                              10

ENTRAPMENT.....                                                      12

Implied Agency.....                                                  12

SIXTH AMENDMENT RIGHT TO COUNSEL.....                                13

Extraordinary Circumstances.....                                     15

JUROR #2's DUAL IDENTITY/NOT PROCEDURALLY  DEFAULTED.....            16

Prejudice is inferred.....                                           18

JUROR #1's BIAS.....                                                 18

If jurors were instructed not to discuss the case, why would the court be
concerned with a stampede effect.....                                20
The court has made it impossible to create evidentiary support.....  21

INEFFECTIVE ASSISTANCE OF COUNSEL.....                               21

Historical.....                                                      22
Perrone's behavior outside the court room.....                       24
The attorney's and trial court knew the document existed.....        25
No qualified expert testified and the hearing.....                   26
The double differential standard.....                                27
Recent threats to petitioner and his family.....                     28
Perrone never interviewed 30 witnesses.....                          28
Perrone allowed an attorney not of record to cross examine a witness....  29
Prosecutors knew Perrone was suffering from a mental disorder.....   29

CONCLUSION.....

APPENDIX AND EXHIBITS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
Southern Division-

TUNC URAZ,                    )
        Petitioner,           )        USDC Case No. 4:25-cv-10608
                              )
                              )        HON. JUDGE: Shalina D. Kumar
Vs.                           )        MAG. JUDGE: David R. Grand
                              )
                              )
FREEDEANE ARTIS,              )
        Respondent,           )
_____/

## PETITIONER'S TRAVERSE

Petitioner, Tunc Uraz, in propria persona, makes this Traverse in reply to Respondent's answer in opposition to writ of habeas corpus filed September 8, 2025 per 28 U.S.C. § 2248 and Habeas Rule 5 (e).

## STANDARD FOR GRANTING RELIEF

A Federal court may grant habeas relief to a prisoner incarcerated on a state conviction only if the petitioner demonstrates that he is in custody in violation of the constitution or Law of the United States, 28 U.S.C. § 2254(a). A habeas petition may be granted only if a state court's ruling on federal constitutional question "was contrary to, or involved an unreasonable application of, clearly established federal law," or "was based on an unreasonable determination of the facts in light

1.

of the evidence presented in the states court proceeding." 28
U.S.C. § 2254(d)(1) & (d)(2).


**PETITIONER TUNC URAZ HAS RAISED AND EXHAUSTED THE FOLLOWING**
**CLAIMS FOR HABEAS REVIEW**

### Issue- I

PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL
RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHERE TRAIL
COUNSEL FAILED TO REQUEST A CONTINUANCE OR WITHDRAW AS
COUNSEL WHEN HE WAS NEARING A MENTAL BREAKDOWN WHICH
IMPACTED HIS ABILITY TO REASONABLY REPRESENT HIS CLIENT
THROUGH THE PROCEEDINGS IN VIOLATION OF U.S. CONST. AMS VI
AND XIV 1963 ART. 1 § 20.

### Issue- II

PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL
RIGHT TO AN IMPARTIAL JURY WHEN JUROR #2 CONCEALED HIS USE
OF A DUAL IDENTITY AND WHERE HIS DISHONESTY WOULD HAVE
PROVIDED A VALID BASIS TO CHALLENGE FOR CAUSE.

### Issue- III

THE SIX AND FOURTEENTH AMENDMENT OF THE UNITED STATES
CONSTITUTION GUARANTEES A CRIMINAL DEFENDANT WILL RECEIVE A
FAIR TRIAL BY AN IMPARTIAL AND UNBIASED JURY.  U.S. CONST.
AMEND. VI & XIV, COST. 1963 ART 1 & 20

### Issue- IV

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT O A FAIR
TRIAL BY THE COURT'S DECISION DENYING HIS MOTION FOR
SERVERENCE, WHERE THE SHEER NUMBER OF PRIOR BAD ACTS, AS
WELL AS UNRELATED AND UNFOUNDED ALLEGATIONS ADMITTED INTO
EVIDENCE RESULTED IN AN UNFAIR PREJUDICIAL TACTICAL
ADVANTAGE IN VIOLATION OF UNITED STATES SUPREME COURT
PRESIDENT.

### Issue- V

PETITIONER WAS DENIED HIS STATE AND FEDERAL RIGHT TO A FAIR
TRIAL BY THE INTRODUCTION OF UNDULY PREJUDICIAL EVIDENCE
CONCERNING PRIOR BAD ACTS.

## Issue- VI

PETITIONER WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS WHEN THE TRIAL COURT ADMITTED INTO EVIDENCE A VIDEO TAPE AND TRANSCRIBED CONVERSATION THAT WAS OBTAINED IN VIOLATION OF THE PETITIONER'S SIXTH AMENDMENT RIGHT TO COUNSEL.

## Issue- VII

THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S MOTION TO DISMISS BASED ON ENTRAPMENT OF A CRIME THAT WAS MANUFACTURED BY LAW ENFORCEMENT AND THEIR AGENTS/INFORMANTS, AND WHERE THE MICHIGAN COURTS FURTHER BASED THEIR DENIAL UPON AN UNREASONABLE APPLICATION OF FACT AND LAW, CONTRARY TO UNITED STATES AND MICHIGAN SUPREME COURT PRESIDENT.

## INTRODUCTION

Petitioner, Tunc Uraz will stipulate to the information addressed in the introduction found on page(s) 1-2 of Respondent's Answer In Opposition to Petitioner's Writ of Habeas Corpus.

However, Petitioner points out that in the body of the Answer, Respondent has addressed the claims of error out of the order in which Petitioner has presented them in the writ of habeas corpus.

**Under Objection**, this Traverse/Reply will be addressed in the order of Respondent's Answer In Opposition.

## COUNTER STATEMENT OF CASE

**Aggravated Stalking:**

This particular charged offense was based of (3) three distinct indictments.

1.  **Allegations that Petitioner tried to access EM's Facebook account** so as to change her password, was based solely on speculation and not of facts presented. Claiming that Petitioner was the person on the other end of the transaction, who used an expired I.P. address

3.

assigned briefly to an apartment building that his friend was leasing. Respondent also claims that Petitioner's GPS tether placed him at the same location the I.P. address was being used to hack EM's Facebook account. However, the actual "ping" for the tether placed Petitioner at a nearby street corner and not at the location alleged.

**2. Likewise, the allegation that Petitioner created an instagram account in EM's name** was also based on unfounded speculation, and available documents show that neither Petitioner or his friend lived in the building that supported the expired I.P. address at the time of the incident. There is no testimony or investigation reports confirming Petitioner was the perpetrator of this act and;

**3. The last act associated with this charged offense was an alleged phone call from jail,** made by Petitioner just after Petitioner was arrested. Here again, jail phone records indicate that petitioner had no access to the jail phone system at the time of the call. As these allegation had little to no reliable evidentiary support, the sheer volume of the O.B.A evidence was far more prejudicial than probative, and clearly influenced the jury verdict, giving rise to question Michigan Courts affirmation of Petitioner's conviction on this count.


**Solicitation Of Murder:**

The fist mentioned jail house informant is <u>Charles Allen</u>. Mr. Allen admitted that he was hoping to get released early by helping police out with the "Uraz investigation." Mr. Allen indicated that he had a small child he wanted to get home to and Was hoping to cut a deal.

The next jail house informant is <u>Reginald Close</u>, whom has an extensive criminal history with crimes ranging from domestic violence to felony auto theft.  Mr. Close's criminal history indicates that he is quick to "jump-on" cases and provide information to authorities in order to lesson the "blow' (so to speak) against him while entering almost unheard of plea deals with the prosecution, to crimes that would carry a significant amount of time to someone as habitualized as him.

Although Respondent claims that neither of these men were sent back into jail on behalf of the investigators, the record most certainly indicates otherwise.  Reginald Close's testimony on <u>November 6, 2017</u>, where he states that he "was still discussing the matter with Mr. Uraz after speaking with police." (**TT, page 31-32, 11/6/17**).  And where he confirmed that he, Mr. Close was placed back on post with Uraz where he continued to talk about the plot.  <u>Id</u>.

Mr. Allen too, had spoken with police, then found himself back on post with Petitioner.  He testified that he was initiating conversation and gathering information, then wrote a second kite to authorities, once he decided to relay what information he had. (**TT, page 44-55 & 61-69, 11/7/17**).

Reginald Close was put in contact with detectives of the Ingham County Sheriff's Department working with the investigator's and continuing his charade with Petitioner while Detective Mobley set-up the undercover sting operation.  This action provided a factual basis that Detective Mobley was working in concert with Mr. Close and Mr. Allen as an agent of the the government.  Any information gathered, as

such, is fruit of the poisonous tree.

Detective Mobley's unsolicited visit with Petitioner violates a multitude of constitutional protections as argued in the body of the petition, This unsolicited interview produced nothing more than assumptions and innuendos based on coded and encrypted words Detective Mobley used to further his unconstitutional sting operation.

The district court judge, Boyd has stated: "I think there is reasonable doubt about what that conversation means, you know, that is not proof beyond a reasonable doubt." **(Prelim. Exam, page 207-208, 12/16/2018).**

## Ginther Hearing

An evidentiary hearing was held in this matter. Petitioner affirms that he did testify, and that 7 other witnesses testified as well, None of which were qualified as experts in the field of psychology. Other than Petitioner, these witnesses were attorney's and friends of Mr. Perrone. The trial court rendered its decision on the unqualified observations of Mr. Perrone's colleagues.

Post Ginther hearing, Petitioner later discovered documents that support Mr. Perrone's extensive mental disorder in which he had been dealing with from at minimal 2015 until present day of trial proceedings and sentencing when he was removed from Petitioners case. The respondent contends that Mr. Perrone's mental health issues manifested "about a week after trial." **(ECF No. 9. pageID 738, pg23 of 112 pg 19 of Answer).** This is in stark contrast to the facts of the case. Likewise, Mr. Perrone's testimony that he did not have any issues with his mental health on any day of Petitioner's trial is

6.

simply untrue according to the medical records/reports obtained from Oakland County Probate Court. **(Attachment- J ).**

## **Petitioner did not request that Mr. Perrone continue to represent him.**

Respondent argues that Petitioner requested Mr. Perrone to continue to represent him. This is untrue. Petitioner could not have asked Mr. Perrone to continue to represent him because Mr. Perrone was effectively being removed from the case and all other cases in that county due to his mental illness and associated mental health problems. Petitioner did acknowledge that Mr. Perrone could assist his replacement with sentencing issues due to Mr. Perrone's prior involvement with the case. Mr. Perrone would not be the lead in the matter. **(Post-Trial Hearing Transcripts, 12/13/2017)** This should have been considered during trial.

These official conferences were relative to Mr. Perrone's mental health condition and his ability to move foreword in the trial proceedings effectively. Here, Petitioner was denied his right to conflict free counsel at a critical stage of the proceedings in which Petitioner complained. And no one present at these hearings was representing Petitioners interests. In deed, Petitioner was unrepresented.

Bipolar disorders, especially in Mr. Perrone's case are extreme. Mr. Perrone's inflated ego reached the point to where he believed he was "God" prior to trial. **(Attachment-I & J)** There is no way Mr. Perrone would have admitted to rendering ineffective assistance to this hearing or any other hearing. The record reflects, it's simply

7.

not in his nature.

### PETITIONER HAS PRESENTED AND EXHAUSTED ALL ISSUES RAISED

Respondent argues Petitioner has defaulted On several of his claims.  Respondent is incorrect as all claims raised in the 2254 petition have been raised and properly exhausted in the state courts and are ripe for federal review.

The Michigan Courts have had a full and fair opportunity to review the claims, their arguments, evidence and each rendered a decision on it's merits denying relief. §2254(d)(1).

Issue-II of the petition for writ of habeas corpus/Issue-IV of Answer in opposition, claims that juror #2 concealed his use of a dual identity, where his dishonesty would have provided a valid bases to challenge for cause.  This issue was fully presented and exhausted in the state courts and each Michigan court has had a full and fair opportunity to review the issue and its evidence, and where each state court rendered a merits based decision denying relief on the matter. Respondent even acknowledges this fact in the body of their answer in opposition.  (ECF No.9 pageID 787-pg. 72 of 112, pg. 68 of Answer).

On June 30, 2023, Petitioner filed a Motion For New Trial, under MCR 6.431 based on the findings by a private investigator as it Pertained to juror #2.  On July 13, 2023 the 30th Judicial Circuit Court for the County of Ingham disposed and ruled on the motion in a three page opinion and order.  (Attachment- A ). On October 30, 2023, Petitioner filed his timely claim of appeal in the Michigan Court Of Appeals while simultaneously filing a Motion To Stay the proceedings

8.

In the Michigan Supreme Court. (**Case No. 165560 & 165561**). Then on November 22, 2023 the Michigan Court of Appeals incorrectly denied review. Then on January 30, 2024 the Michigan Supreme Court granted petitioner's Motion to supplement but ultimately denied relief. (**Case no. 165560-61**). As such, based On the body of proofs presented, Petitioner has fully presented and exhausted this claim. ATT. A,B,C

In addition, Issue- VI of the petition/Issue- III of respondents answer in opposition claims the Petitioner's right to counsel was violated by the admission of his communications with jail inmates and undercover police officers violated his Sixth Amendment right to counsel, amounted to Custodial interrogation and any evidence obtained was from fruit of the poisoned tree and inadmissible. Custodial Interrogation means questioning initiated by law enforcement officers, and its agents after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Berkemer v. McCarthy, 468 US 420 (1984). "No person shall be compelled in any criminal case to be a witness against himself." US Const. Amend V. In Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed2d 694 (1966) the Supreme Court, in presenting safeguards for the effectuation of the Fifth Amendment, held that, "the prosecution may not use statements... stemming from custodial interrogation of the defendant unless it determines the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. "The safeguards proscribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing." Berkemer v. McCarthy, 468 US 420, 433 (1984). If a suspect is interrogated while in custody, and

he does not voluntarily, knowingly and intelligently waive his <u>Miranda</u> rights, any statement he makes to the police must be suppressed.  <u>Id</u>. at 429.

This claim was also fully presented and exhausted in the state courts.

On April 18, 2019, Petitioner filed a supplemental brief under Michigan's Standard 4 rule, **MCA Case NO. 343695 & 343696**.  This filing was done at the time of his direct appeal.  Petitioner also requested a hearing in the body of his Standard 4 brief, pursuant to <u>People v. Ginther</u>, 390 Mich 436 (1973), which included all issues he presented in the Standard 4 brief filed in the Michigan court of Appeals.  Upon review of his motion for new trial, the Court of Appeals denied relief on the merits of the issue presented. **(Case No. 343695 & 343696)**.  Petitioner filed the same claims in the Michigan Supreme Court in which a merits based decision was rendered on January 30, 2024.  As such, Respondent is incorrect in their belief as Petitioner has fully presented and properly exhausted these claims.


## Respondent's Issue- I

**[Claims-IV & V]. Petitioner's challenge to the trial courts admission of prior bad acts is not cognizable on federal review...** Petitioner disagrees.

### JOINDER/MISJOINDER

The other bad acts evidence introduced at trial was admitted under objection.

In addition to the facts and law presented in Claim- IV of Petition for Writ of Habeas Corpus, Petitioner states the following:

The United States Supreme Court has, in fact, defined the

criteria to which federal court review can offer habeas relief on a misjoinder claim involving "state law" so long as Petitioner can show that misjoinder of the counts resulted in prejudice so great as to deny [him] his right to a fair trial. <u>United States vs. Lane</u>, 474 US 438, 446 (1986). Respondent's claim is without authority here.

The Supreme Court has added: "... So long that it had influence on the jury's verdict." <u>Id</u>. at 449. Misjoinder, in this case, has allowed for the admittance of some (17) uncharged prejudicial allegation which essentially put Petitioner on trial for a multitude of alleged crimes he was never officially charged with or convicted of. These "bad acts" were introduced simply to put petitioner in a bad light and viewed as a "bad man."

**No Specific Cautionary Instruction Was Given To Cure Any Potential Prejudice.**

Respondent claims that the court gave a specific cautionary instruction regarding the multiple charges at issue, and the prosecution burden of proving each element for the charge beyond a reasonable doubt. Respondent is incorrect as no instruction was given.

Petitioner contends that this general instruction referred to by Respondent, in no way satisfies the cautionary instruction rule relative to the admittance of Other Bad Acts Evidence that was based on pure speculation and circumstantial evidence. FRE 404B

In <u>Featherstone v. Estelle</u>, 948 F.2d 1497 (1991), the court stated: "While some prejudice may flow from joinder of offenses in criminal cases, the risk is justified by convenience and **guarded against by limited instructions.**" <u>Id</u>.

In this instant case, the <u>federally cognizable and constitutional</u> question is: Did misjoinder and the resulting sheer number of other bad acts evidence admitted into the trial cause a prejudice so great as to deny Petitioner a fair trial? Not whether or not the elements of the charged offenses were met by the prosecutions proofs. hence, the noted instruction is irrelevant to the question presented.

## Respondent's Issue- II

**[Claim- VII].   Petitioner's claim that the state courts erred by denying his motion to dismiss based on entrapment is not cognizable on federal habeas review.**

In addition to facts and law argued in claim- VII of the petition for writ of habeas corpus, the Petitioner states the following:

Respondent argues that because the United States Supreme Court has not "yet recognized" a constitutionally required entrapment defense, that it limits the scope of this Court to determine whether a conviction under these circumstances violated constitutional law. If that is truly the case, which Petitioner disagrees, then this court can begin the process of defining the rule of law as it pertains to the issue at hand as this is an issue of fist impression.

Although cases like <u>Sherman v. U.S.</u>, 356 US 369 (1958); <u>United States v. Russell</u>, 411 US 423 (1973) and <u>Gorin v. United States</u>, 313 F.2d 641 (CA 1, 1963) have already defined much of the criteria(s) for federal review of state entrapment claims.  This court is encouraged to look upon those ruling for guidance in rendering an opinion on this matter.

## Implied Agency

Witnesses, attorneys, law enforcement and judges alike can certainly express their opinions as to whether or not a jail house informant was actually working as an agent with the investigators for a common goal.  But, equally as convincing is that there is no question that Mr. Close, Mr. Allen and Detective Mobley's actions speak louder than words.  Interestingly enough, in Petitioner's instant case, the two jail house informants testified that they had

**12.**

made contact with law enforcement over the matter, then were sent back into the jail to the same post/cell block as Petitioner with a plan to obtain more Information, furthering the plot to murder EM and to relay that information to investigators to which they admitted was their intent and goal to which they testified to at trial. **(TT, page 31-32, 11/6/17 & TT, pages 44-55, 62-69, 11/7/17).**

Detective Mobley of the Ingham County Sheriff's Department stayed in close contact with Mr. Close, and together they created a sting operation designed to charge Petitioner with conspiracy to commit murder. Petitioner never requested the visit for Detective Mobley, never gave Mobley and money, and never agreed to any terms. Even the Michigan District Court Judge stated that he thought this charge was undoubtedly "questionable" at best. **(Prelim' Exam', page 207-208, 12/16/2017).**

## RESPONDENT'S CLAIM- III

**[CLAIM- VII]- Petitioner's claim that his Sixth Amendment right to counsel was violated by the admission of his communications with jail house inmates and an under-cover police officer...**

In opposition, Respondent first contends that issue- VI of the petition for write of habeas corpus is procedurally defaulted. Petitioner disagrees.

This claim of error was presented to the Michigan Court Of Appeals on direct appeal in the form of a Standard 4 brief with a request for an evidentiary hearing On the matter, filed April of 2019, **Case No.** 343695 & 343696. The court denied relief on this claim on the merits presented. **(ECF No.9 pageID 775 pg. 40 of 112).** Petitioner

13.

subsequently raised all claims in the Michigan Supreme Court on April 13, 2023 and was denied relief on January 30, 2024. **Case No. 165560-61.**

Although Petitioner agrees that no objection was offered in the trial court, he contends that this was due to ineffectiveness of trial counsel as further addressed in that claim of error. However, under "these pretences," the Michigan courts have all had a full and fair opportunity to address the claim and ruled on its merits. Given its constitutional magnitude of the error, it would be a miscarriage of justice for this court to not hear the matter. As such, several federal rulings support that Petitioner's state court filings more that satisfies the criteria for review. See: Castello v. Peoples, **489 US 346, 351 (1989);** Elmore v. Foltz, **768 F.2d 733 (6th Cir. 1985)** and NALI v. Phillips, **681 F.3d 837 (6th Cir. 2012)** stating that a "state court's denial of a motion to remand constitutes adjudication for exhaustion." Indeed, Petitioner motioned for a remand to conduct an evidentiary hearing on the matter and was denied.

Generally, this court reviews de novo the question of whether a petitioner has failed to exhaust his state court remedies. Pinchon v. Myers, **615 F.3d 631, 638 (6th Cir. 2010).** Respondents arguments on **(ECF No.9 pageID.778 filed 9/8/25 pg. 63 of 112, pg. 59 of Answer in Opposition),** that procedural default is not excused by a claim of ineffectiveness-unless some extraordinary circumstances exist is misguided and incorrect. This misdirected contention is inaccurate according to federal court rulings. In Elmore v. Foltz, **768 F.2d 773 (6th Cir. 1985)** it was held that raising an ineffective assistance of

**14.**

counsel claim in a Michigan motion to remand can satisfy the exhaustion requirement. Further holding that a denial of a motion to remand constitutes and adjudication on the merits for exhaustion proposes. Nali v. Phillips, supra. In recognition, Petitioner maintains that he adequately presented this constitutional claim to the state courts via a Standard 4 Supplemental Brief filed in the Michigan Court of Appeals, and the Michigan Supreme Court who also rendered an order, wherein Petitioner requested the matter be returned to the trial court for further proceedings to conduct an evidentiary hearing. The state court's considered the issue on its merits then rendered a decision. Accordingly, Petitioner has satisfied the exhaustion requirement and the matter is ripe for habeas review. Castillo, supra. See Rule 5 documents Michigan Court Of Appeals & Michigan Supreme Court ruling.

More recently, the Sixth Circuit Court OF Appeals defined this very same issue in Fischer v. Nagy, 2025 U.S. App LEXIS 20801, where the court determined that the exhaustion requirement of §2254(b)(1) is met under these circumstances.

Respondent is incorrect in this matter as this claim is fully exhausted and ripe for federal habeas review.

## Extraordinary Circumstances

In the event that this court deem it necessary to show an extraordinary circumstances. Had the State Court agreed that Petitioner's right to counsel was violated in this matter, the charges of solicitation of murder would have had little to no evidentiary

support, the statements from the informants and the video visit records with Detective Mobley could not have been used against Petitioner - The charges would likely have been dropped or in the very least a jury would have had no alternative but to find petitioner not guilty of the allegations.

## <u>RESPONDENT'S CLAIM- IV</u>

[CLAIM-II]- **Petitioner's claim that he was denied an impartial jury based on juror #2 dual identity, is procedurally defaulted.**

The Michigan court's have had a full and fair opportunity to evaluate and rule on this constitutional claim of error. **(ECF No.9, pageID. 787 filed 9/8/25, pg. 72 of 112, pg.68 of Answer in Opposition)**, acknowledges that Petitioner raised this claim in the trial court seeking a new trial and evidentiary hearing. The trial court rendered a three page opinion and order denying relief. On July 13, 2023, Petitioner then filed an appeal with the Michigan Court of Appeals, **case no. 343695 & 343696**, who incorrectly denied Petitioner his ability to present his claim in denying review. On January 30, 2024 the Michigan Supreme Court granted Petitioners motion to supplement, but ultimately denied relief. **(Attachment- A , B ,C  )**

Like the proceeding claim or error, Petitioner did not procedurally default the claim. Once again Respondent is attempting to mislead this court, and Petitioner would object to the Answer in Opposition. Generally, federal courts will review de novo the question of whether a petitioner has failed to exhaust his state remedies. <u>Pinchon v. Myers</u>, <u>supra</u>. In accordance with federal court

rulings, Petitioner has not defaulted on this claim. "A State court's denial of a motion to remand constitutes an adjudication for exhaustion." Castello v. Peoples, id., Elmore v. Foltz, Id., and NALI v. Phillips, Id. As it pertains to Petitioner's claim regarding juror #2, respondent's allegations in (ECF No.9, pageID 778, pg. 73 of 112, pg. 69 of Answer in opposition), Respondent's allegations of a procedural default of this claim in the state courts simply make no sense. Respondent asserts that the issue was presented only to the Michigan Supreme Court as its reason for default. However, respondent omits any filing in the Michigan Court Of Appeals on this issue, then acknowledges that Petitioner did file the claim in the trial court on direct appeal to the Michigan Court of Appeals. Respondent further claims that because Petitioner filed in the trial court, he is now barred from raising the issue in a motion for relief from judgment pursuant to Mich. Ct. R. 6.508(D)(2). Respondent's assertions are simply confusing and legally inept.

Respondent asserts that the issue was presented only to the Michigan Supreme Court. Respondent omits any filing in the Michigan Court of Appeals, then acknowledges that Petitioner did file the claim in the trial court on direct appeal. Respondent further asserts that because Petitioner filed in the trial court, he is not barred from raising the claim in a Motion For Relief From Judgement pursuant to Mich. Ct. R. 6.508(D)(2). Petitioner asserts that Respondent is factually incorrect on this matter as Petitioner directs this court to his proofs demoted in (Attachments- A , B , C   and R5 ) of this Traverse.

## Prejudice need not be shown as prejudice is inferred

In this case, Juror #2 deliberately withheld information that would put into question his integrity, while shedding light on his ability to be deceptive.  His concealment of using a dual identity during traffic violations, business dealings, bankruptcy matters (Attachment- D ) and now during a criminal trial proceeding where he is the trier of fact, is certainly grounds to raise the issue. Knowing this information, either the court, or counsel would have dismissed him for cause.

Bias is therefore inferred and a structural error exist. Accordingly, prejudice is assumed.  Williams v. Bagley, 380 F.3d 932, 945-946 (6th Cir. 2004).

Petitioner will further rely on the facts, evidence and argument presented in this petition for writ of Habeas corpus as it pertains to this claim of error.

### Respondent's Issue- V

[CLAIM-III]- The state appellate court reasonably denied Petitioner's claim regarding JUROR #1's bias.

### Fact #1:

Defense counsel explained to all potential jurors, that there is an international context to the proceedings.  (TT, pg. 122, 10/31/17). All members of the jury again were asked during voir dire: "Would you use Mr. Uraz' national origin against him?  Could you maintain a fair and impartial outlook regardless of their origin?"  (TT, pg. 174, 10/31/17).

**Fact #2**

Juror #1 Larry Nishon was part of a 12 page inquiry during jury voir dire. **(TT, pg. 12-13, 11/2/17)** and at no time during the voir dire did he mention his potential bias towards anyone on ethnicity, let alone of Turkish descent.

**Fact #3**

Juror #1, Larry Nishon, sent a note to the trial judge claiming his bias toward people of Turkish descent. **(TT, pg.4, 11/3/17).**

**Fact #4**

On 11/3/2017, trial counsel requested than an inquiry be conducted into juror #1 bias. **(TT, pg.5)**

**Fact #5**

The trial court, on its own accord and without further inquiry, determined that it wanted to avoid a stampede effect on the other jurors, and let juror #1 remain on the jury panel until the closing of proofs.

**Fact #6**

The trial court refused to allow the defense to question the juror about his bias, and failed to hold a proper inquiry into the matter. Even the prosecution recommended an inquiry into the bias. **(TT, pg.4, 11/3/1)**


**Argument**

Allowing this juror to remain on the jury undoubtedly infected the jury pool. This juror was open and verbally boisterous about his bias. Had defense counsel known about this bias toward people of

**19.**

Turkish descent, juror #1 would have been effectively dismissed for cause during voir dire and the bias would not have infected the jury pool.

The trial judge, based on a stampede theory, decided against holding a proper inquiry, or to give the defense and prosecution an opportunity to question and vet out any potential influence juror #1 may have had on the other juror's, or to what extent his prejudice lies.

**If Jurors were instructed to not discuss the case amongst themselves, why would the court be concerned with a stampede effect on the other jurors?**

Here, the court's main concern was removal of juror #1 causing a stampede effect. In essence, the trial judge solidified petitioner's contention that this juror may not have adhered to the courts limited instruction and would likely discuss the matter with the jury herd, having a poisoning effect in deliberations.

This contention is further made valid when paralleling the trial judges application of the stampede theory with petitioner's assertions of bias infecting the proceedings thusly becomes plausible under the same theory the court used to justify its position on the matter. As removal of juror #1 would have been done outside the presence of the other jurors.

In addition, Respondent maintains that there is no record of actual bias towards the other jurors, quoting: "simply put, there is no record evidence to show juror #1 communicated his bias to any other jurors." **(ECF No. 9 pageID. 793, pg. 78 of 112, pg 74-75 of Answer in opposition).** Petitioner disagrees. Simply put, there is no record

because there was no hearing. Bias is accordingly inferred as potentially high.   Either way, this could only be assumed at this point as there was never an inquiry conducted on the matter and where Petitioner's private investigator was denied access to the jury members for post-trial interviews by the very same judge who refused to hold the proper inquiry at the same time of the infraction.  (Attachment- E ).

**The court Has made it impossible to create evidentiary support of this claim.**

Accordingly, this Honorable Court should grant an evidentiary hearing into this claim of error pursuant to Remmer v. US, **347 US 227 (1954).**

Petitioner will further rely on the facts, evidence and supporting law as discussed in his petitioner for write of habeas corpus.


### Respondent's Issue- VI

[CLAIM- I]- Petitioner was denied his constitutional right to the effective assistance of counsel, where trial counsel failed to request a continuance or withdraw as counsel when he was nearing a mental breakdown which impacted his ability to reasonably represent his client throughout the proceedings, as evidenced by counsel's numerous errors.

In addition to the facts, evidence and arguments raised, Petitioner states disagrees with Respondent's analysis of this issue.

**Evidentiary hearing- Ineffective Assistance Of Counsel**

At the evidentiary hearing held on October 4, 2021, pursuant to Ginther, Id. Petitioner and seven other witnesses testified as to

their observations of defense counsel, Jacob Perrone's performance and odd behavior throughout Petitioner's trial.  The entire evidentiary hearing was based on the analysis of whether or not Mr. Perrone' mental illness adversely effected his performance and abilities during Petitioner's trial, to a level which would constitute ineffectiveness under Strickland standards.  **466 US 688 (1984)** and Petitioner's **Sixth Amendment right to the U.S. Constitution, art 1, § 17, 20.**

Petitioner argued that trial counsel's actions and behavior during the pre-trial and trial proceedings can, in no way be construed as sound trial strategy, and would attribute his errors and unprofessional behaviors to complications of his mental illness.

## HISTORICALLY

Mr. Perrone suffers from an extreme case of bipolar 1 disorder as detailed in his clinical diagnoses with complications of schizophrenia, narcissism, grandiose delusions and aggressive assaultive behavior.  **(Attachment- I )**

It was discovered by petitioner, post-evidentiary hearing, that according to Mr. Perrone's father, Joseph Perrone, Jacob Perrone had been experiencing complications of his disorder on a weekly bases for at least two years prior to the commencement of Petitioner's trial. Insomuch as, Joseph Perrone had his son involuntarily committed into a mental hospital on more than one occasion throughout Petitioner's trial stating on the admittance forms that "for the past two years, Jacob believed 'he was God', threatened to kill his wife and Lansing police officers, take over the city of Lansing and rule it with an iron fist."  **(Attachment- J   )**.   During November of 2017, Jacob

Perrone attacked a school bus driver, and police, he was arrested & mandated to be admitted into Sparrow Hospital for mental evaluation and undergo treatment. (**Attachment- J** ). All during the time of Petitioners trial and subsequent proceedings necessitating Jacob Perrone to be effectively removed from all cases. Yet, trial court believed this behavior was not present during Petitioners trial. Petitioner disagrees.

In addition, there is medical documentation showing that during Petitioner's pretrial proceedings, just prior to trial, Jacob Perrone suffered a severe anxiety attack and was admitted into Sparrow hospital for treatment and psychiatric evaluation ... This evidence was suppressed at the evidentiary hearing. (**Attachment- G, I, J**)

Further obtained medical documentation of Jacob Perrone's eventual hospitalization which took place shortly after the guilty verdict when he was removed from all Ingham County cases, Jacob Perrone was again involuntarily admitted by his father, Joseph Perrone into a psychiatric hospital where he was mandated treatment for a (90) day period due to yet another mental breakdown. (**Attachment- I** )

Jacob Perrone psychiatric documents obtained by Petitioner dated 11/14/2017 are Jacob Perrone's hospital admission papers sighed and filed by Jacob Perrone's father, Joseph Perrone. These documents were part of a Freedom Of Information Act from the Oakland County Probate Court System and are part of the lower court record in this case and are admissible in Petitioner's habeas petition.

## Jacob Perrone's odd behaviors and interactions outside the courtroom

Although, Mr. Perrone's colleagues and business friends may be considered experts in the field of law, they could not testify to the effect bipolar-1 disorder had on Mr. Perrone in this high pressure situation (criminal proceeding). His out of court behavior's, such as communications of complete lunacy and aggressive emails to Petitioner's family members, accepting an unauthorized payment of $500.00 in cash from the Uraz family, even though he was appointed by the court to represent an otherwise indigent defendant. Petitioner was left in fear that if he did not pay the requested $500.00 Mr. Perrone would not represent him sufficiently.

In Mr. Perrone's discussions and communication, he lead both Petitioner and his family to believe that he was going to win big at trial, then sue the county on Petitioner's behalf for ten's of millions of dollars. **(Attachment- K )**. This was not just to communicate confidence to the family as the respondent would like this court to believe, Mr. Perrone was quite serious and this had an injurious effect on Petitioner's realistic ability to assist in his defense in making reasonable decisions that affected the outcome of the trial. Because of this, Petitioner and his family, under the advisement of Mr. Perrone, declined to accept the plea of 8 years. This is the result of the injurious effect.

One of the most recognizable traits of a person with extreme bipolar disorder is an inflated ego. Mr. Perrone truly believed that without doing any real leg-work, he would beat the charges and obtain retribution for Petitioner.

The petitioner for writ of habeas corpus breaks down many of the ways in which Petitioner's pre-trail and trial was effected with injurious implications.

## The attorney's and the trial court knew the documents existed, but concealed them

Additionally, in a grievance filed by Petitioner against sentencing counsel, Mr. Silvertorn, Petitioner asked why these vital documents were not presented during sentencing. Mr. Silverthorn acknowledged that he was aware of them, and even had communications with the prosecutor, Mr. Koop about them. This information was suppressed during the Ginther hearing. (Attachment- F and G)

The relevance of these vital documents is that they refute and impeach testimony provided Mr. Perrone pertaining to his diagnoses of Bipolar-1, and the duration on which he suffered from it prior to, during and after Petitioner's trial. Simply put, they show Mr. Perrone intentionally concealed his mental disorder and the severe complications from Petitioner and continued to deceive the courts about the truth and severity of the implications. Petitioner had a constitutional interest to know if his counsel is mentally capable to adequate;y represent him and Petitioner had a right to be informed in order to make an intelligent decision to accept Mr. Perrone's representation.

According to the documents, Mr. Perrone would have been suffering mental complications during Petitioner's pre-trial and trial proceedings, which Mr. Perrone denied under oath. The documents

**25.**

provide evidence that Mr. Perrone was suffering from complications of his Bipolar-1 disorder for at least "two years" prior to Petitioner's trial and further proves that immediately after the guilty verdict, Mr. Perrone was was involuntarily admitted into a psychiatric hospital for treatment.   The State Court's, Mr. Perrone and respondent would like this court to believe that somehow, Mr. Perrone's long standing complications of his illness magically subsided from 10/31/2017 to 11/9/2017. Without proper treatment, Bipolar-1 disorders just doesn't work like that, and a medical expert was necessary at the <u>Ginther</u> hearing to bring light to this question.

## No qualified expert testified at the Ginther hearing

Respondent and state courts have unreasonably based their assessments of Mr. Perrone's performance on the unqualified observations and testimony of Mr. Perrone's colleagues and friends, none of whom were qualified as experts in the field of psychology.

Respondent further maintains that Mr. Perrone and his colleagues were truthful at the hearing, Mr. Perrone claiming he did not suffer from any complications of his mental illness during the pretrial and trial proceedings, and the others claiming they did not observe any odd behaviors. **(ECF No. 9 PageID.809, 94 of 112, pg. 90 of answer).** Simply put, non of these colleagues and friends whom testified were present during Petitioner's trial.

The United States Court Of Appeals for the Sixth Circuit stated in <u>EQT. Prod v. Phillips</u>, **767 Fed Appx. 626 (6Th Cir. 2019)** quoting <u>Tipton v. Porter</u>, **2010 KY. App (Unpublished) LEXIS 737,** the court

determined: "Expert testimony was required to show the relevance of the doctrine constituted a breach of professional duty... determining whether on the theory constituted negligence, was in deed a matter beyond the ken of a lay person without the assistance of expert testimony." The court held that it was fatal to a finding of neglect. <u>Id</u>.

In this matter, the nexus between facts of the case, Mr. Perrone's illness, unprofessional behaviors and ineffective assistance of counsel requires an expert analysis. Without such there can be no proper ruling.

Accordingly, a new hearing is required on this matter.

## The double differential standard has been met

The respondent at **(ECF No.9 PageID 803, pg. 88 of 112, pg. 84 of Answer)** discusses the elevated standard to obtain habeas relief of a claim of ineffective assistance of counsel, as defined by both <u>Strickland</u> and **28 U.S.C.S § 2254(d)**.

Petitioner points to the evidentiary hearing held in this matter. As previously discussed, the state court's based their ruling on the testimony of unqualified and biased witnesses in the field of psychology and where crucial evidence was effectively suppressed. The trial courts ruling was based on an unreasonable application of <u>Strickland</u> because it did not have all the pieces necessary to make an accurate assessment of the facts relative to Mr. Perrone's inexcusable unprofessional behaviors, and the multitude of errors defined in the petition. This satisfies the higher standards in determining a claim

of ineffective assistance of cousnel.

## Recent threats to Petitioner and Petitioner's family by Mr. Perrone

Jacob Perrone is still fighting his demons and angst toward Petitioner. Mr. Perrone recently filed a response to a civil action filed by Petitioner in which Mr. Perrone did physically threaten Petitioner with physical harm and did threaten the well-being of Petitioner's family and Turkish Embassy. **(Attachment- H )**. Furthermore, Mr. Perrone took the threat to a higher degree of criminality as he sent Petitioner a copy of the pleading allegedly soaked in a foreign unidentified substance intended to hurt, maim, disable or otherwise cause fear in Petitioner. Said pleading was seized by the prison facility administration and sent to the Michigan State Police crime lab for processing. **(Appendix- L ).**

This is just one of many examples of Mr. Perrone's behaviors in which Petitioner felt threatened by throughout his trial. Mr. Perrone continues his onslaught of threats against Petitioner further claiming he "knows people in prison who will get Petitioner."

This court is obligated to conduct further proceedings on this matter prior to ruling.

## Mr. Perrone never interviewed -30- witnesses

In (**ECF No.9, pageID 806, pg. 91 of 112, pg. 87 of answer**), Respondent makes the claim that Mr. Perrone interviewed (30) witnesses. the record is clear, that Mr. Perrone actually refused to to interview the witnesses on the defendants witness list, stating

that: "he had not been paid for witness investigations in the past."
see: (EVH 10/20/2017, pg. 129-133 & 152). Trial counsel was
effectively admonished by the trial court for this breach, then with
the courts assistance, Mr. Perrone was given the means to contact and
interview the witnesses, this occurred three days prior to trial,
however Mr. Perrone opted to interview only three out of the thirty
witness. Petitioner was coerced to pay Mr. Perrone the $500. and was
not able to pay Mr. Perrone more money to conduct this investigation.
Clearly, this adversely effected pre-trial preparation.

## Mr. Perrone allowed an attorney not of record to cross examine prosecution witness, EM

When the prosecutor star witness look the stand, Mr. Perrone
yielded cross examination to Mr. Eric Schroeder, who was not an
attorney of record for Petitioner.

Mr. Shroeder, an extremely young and inexperienced attorney, had
conducted little to no preparation. The opportunity to meaningful
cross examine EM was lost.

Petitioner has a constitutional right to assist in his defense
and to be reasonably informed of trial happenings. Petitioner did not
know this attorney and never participated in any pre-trial
preparations.

## Prosecutor's Roth and Koop knew Mr. Perrone was suffering from a mental disorder during trial proceedings

During trial proceedings, prosecution made objections to Mr.

29.

Perrone's lengthy and seemingly rambling cross examinations.   It was clear to both prosecutor's Roth and Koop that Mr. Perrone was behaving abnormal.   This was not simply a case of losing his train of thought. Mr. Perrone was taking extremely long and dramatic pauses lasting for several minutes in between questions, then asking meaningless questions without any real connection.   Mr. Perrone was "checking out."   This is a clear manifestation of a Bipolar-1 episode ˉ (TT, pg. 60, 11/7/17) that clearly adversely effected Petitioner's defense.

### Conclusion

The state court's rejection of Petitioner's constitutional claims did result in a decision that was contrary to clearly established federal law, unreasonable application of federal law and unreasonable determinations of the facts in light of the evidence presented. Petitioner was entitled to a fair trial in which he did not receive.

Contrary to Respondent's assertion, Petitioner asserts that he is entitled to habeas relief because he has established that the errors had a substantial and injurious effect on the verdict in this matter.

If this court denie s Petitioner's petition, then Petitioner asserts that he is entitled to a certificate of appealability (COA) so as to proceed further, especially in light of the claim Petitioner has raised as it pertains to defense counsel, Mr. Perrone.   Petitioner has made "a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).   Petitioner has shown that reasonable jurist could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were

adequate to deserve encouragement to proceed further. <u>Slack v.</u>
<u>McDaniel</u>, 529 U.S. 473, 483-84 (2000).

      Petitioner Uraz prays this Honorable Court will reject
Respondent's opposition, issue Petitioner writ vacating the conviction
and sentence, and order that Petitioner be afforded a new trial within
(90) days, or be immediately released. In the alternative and
interest of justice, order further proceedings on these claims.


Dated: 11 / 17 /2025        /s/ _Tunc Uraz_____
                                Tunc Uraz
                                Thumb Correctional Facility


## P R O O F  O F  S E R V I C E

    I, Tunc Uraz, hereby certifies that a true copy of this pleading
was mailed to Respondent at the address of record. This pleading was
mailed by first-class mailing, postage fully pre-paid and deposited in
the facility out-going mail box located at his facility of residency
on 11 / 17 /2025


## P R O I F  O F  M A I L I N G

    I, Tunc Uraz hereby certifies that I mailed a true copy of this
pleading entitled Traverse to the United States District Court,
Eastern District, the Honorable Judge Shalina D. Kumar, Magistrate
Judge David R. Grand on 11 / 17 /2025 by first-class mailing, postage
fully paid.


Dated: 11 / 17 /2025        /s/ _Tunc Uraz_____
                                  Tunc Uraz

# A T T A C H M E N T   A P P E N D I X

## Attachment

A –Trial Court's July 13, 2023 – Opinion and Order

B – Michigan Court of Appeal's – Order November 22, 2023

C – Michigan Supreme Court Order – January 30, 2024

D – Private Investigators – Reports and Finding

E – Private Investigators – Communications with trial court

F – Duane Silverthorn's Response to Grievance – see pg II  Para. 7

G – Duane Silverthorn's Communications with Prosecutors

H – Jacob Perrone's Reply to civil suit threatening Uraz and family

I – Perrone's Clinical Certificate- assessment- admittance form

J – Perrone's Petition for mental health and evaluation

K – Communication between Perrone and Uraz Family

L – Contraband Removal – Perrone's Liquid soaked papers sent to Uraz
    Michigan State Police Evidence Locker (MDOC)

# STATE OF MICHIGAN

## IN THE 30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM

PEOPLE OF THE STATE OF MICHIGAN,

                Plaintiff,

v

TUNC URAZ,

          Defendant.

Case No. 16-1064-FH; 16-1065-FC

**HON. ROSEMARIE E. AQUILINA**

**ORDER DENYING MOTION
FOR EVIDENTIARY HEARING
AND NEW TRIAL**

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL

At a session of said Court held at the Courthouse
In the City of Lansing, County of Ingham, State of Michigan
Thursday, July 13, 2023:

### PRESENT: THE HONORABLE ROSEMARIE E. AQUILINA

On June 30, 2023, Defendant, TUNC URAZ, filed an evidentiary motion to allow a private investigator to contact former jurors and to be granted a new trial. On November 9, 2017, Defendant was convicted of one count of Aggravated Stalking and three counts of Homicide – Solicitation of Murder. On January 24, 2018, Defendant was sentenced to 36 months to 90 months with credit for 453 days served. Defendant's earliest possible release date is July 9, 2033.

In his motion, Defendant makes several arguments that this Court does not find persuasive. First, Defendant claims that, in his trial, Juror #2 committed perjury by using a married last name rather than his birth last name and that this discrepancy denied Defendant a fair trial. As stated in Defendant's Motion, the standard for juror misrepresentation in voir dire is "it is proper and

1



appropriate to grant a new trial when affidavits or testimony are presented confirming that matters have been falsely denied or concealed on voir dire, if these matters would establish the juror's incompetency or disqualification or would lead the parties to challenge him or her and if the affidavits are not proffered to show misconduct of a juror or jury for the purpose of impeaching their verdict. *People v Graham*, 84 Mich App 663, 666-667 (1978). The allegation that Juror #2 used a married last name is insufficient to demonstrate incompetency or disqualification.

Defendant also claims that Juror #1 prejudiced the jury against Defendant when he indicated that he was racists against Turkish people. Defendant alleges that Juror #1 was dismissed before deliberations began, but Defendant also claims that Juror #1 spread those racist beliefs to the rest of the jury over the course of his tenure as a juror. The motion alleges that this Court did not dismiss Juror #1 immediately to prevent "a stampede with other jurors." Ultimately, Defendant's argument is not persuasive. Defendant fails to articulate any evidence that Juror #1 spread racist beliefs to the remainder of the jury and fails to account for that fact that jurors are unable to discuss the case prior to deliberations. As such, Defendant has failed to persuade this Court that Juror #1 tainted the jury.

Finally, Defendant claims that Juror #11 was seen talking to one of the parties' mother on the first day of jury selection. Defendant alleges that when this issue was raised, Judge Canady responded, "[a]nybody can come in and sit; I cannot exclude anyone sitting in the courtroom during jury selection." The mother was not listed as a witness and was therefore free to sit in the courtroom and view the trial. There is no evidence presented that Juror #11 was tainted by this alleged interaction. Therefore Defendant's argument is not persuasive.

Ultimately, Defendant's motion must fail because he has failed to provide any persuasive legal argument to support his motion. Unfortunately, "a party may not leave it to this Court to

search for authority to sustain or reject its position." *Leitch v Switchenko*, 169 Mich App 761, 764 (1988). In other words, it is not the duty of this Court to find case law, statutory authority, or factual justifications to satisfy Defendant's motion. As such, Defendant's motion for Evidentiary Hearing and New Trial must be **DENIED** because Defendant failed to state a claim for relief which may be granted.

NOW THEREFORE, IT IS ORDERED: Defendant's motion for Evidentiary Hearing and New Trial shall be **DENIED** for the reasons stated above.

**IT IS SO ORDERED.**

Dated: 17 Aug 23

HON. ROSEMARIE E. AQUILINA
30th Circuit Court Judge

3

*You have received a jpay letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/1/2023 9:46:59 AM EST,    Letter ID: 1806678748
Location : MCF
Housing : UNIT 4100B01

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/01/2023 09:46:57

Please do not reply to this email

TO :

HONORABLE JUDGE AQUILINA
CIRCUIT COURT JUDGE
30th Circuit Court, INGHAM COUNTY
313 W. KALAMAZOO ST.
LANSING, MI 48933-2041

FROM:

MR. TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

case#'s 16-1064 FH;16-1065-FC;  COA#s 343695, 343696 SC#s:165560, 165561

RE : JURY #2 USED A FALSE NAME HE MISREPRESENTED HIS IDENTIFICATION  RYAN GIBBS PETTY
(CARTER) , AFTER HE WAS SWORN IN.
(see VOIR DIRE for Juror #2 ,T.T. 10/31/2017, PGS 127,128,130,140,141)
(see juror #2  see TT 11/09/2017 pg .186 who signed the VERDICT form as a. jury foreperson) PER CR. JI. 3.11

JUROR #1 TOLD JUDGE THAT HE WAS BIAS AGAINST
TURKISH PEOPLE AFTER HE WAS SWORN IN AND IMPANELLED AS A JUROR.
(see extensive VOIR DIRE T.T 11/02/2017 pgs 12-23 done by judge/prosecutor/defense attorney to JUROR#1)
(see T.T 11/03/2017 pgs 4-6 BIAS JUROR DECISION BY JUDGE CANADY)

DEAR HONORABLE JUDGE AQUILINA,

SINCE JUDGE CANADY  (RETIRED) AND JUDGE JAMO (RECUSED HIMSELF) ON 06/12/2023.
AND YOU WERE APPOINTED ON 06/23/2023 BY JUDGE DRAGANCHUK

THIS IS AN EMERGENCY MOTION/REQUEST BASED ON JUROR #2 MISREPRESENTED HIS IDENTIFICATION
ON HIS JURY QUESTIONNAIRE AND DURING VOIR DIRE AT THE BEGINNING OF THE TRIAL. EVENTUALLY
HE WAS SELECTED AS JUROR #2 AND AS A JURY FOREPERSON
AFTER HE WAS IMPANELLED AND SWORN IN.

WOULD YOU PLEASE ALLOW PRIVATE INVESTIGATOR MR. CHARLES W. MARTELL TO CONTACT JUROR#2
AND JUROR#1; TO FIND OUT ABOUT WHY HE  USED  FALSE NAME (JUROR #2) AND DECLARING HIS BIAS
AGAINST TURKISH ETHNICITY (JUROR #1) AFTER THEY WERE BOTH IMPANELLED AND SWORN IN.

WOULD YOU PLEASE ORDER AN EVIDENTIARY HEARING BASED ON JUROR MISCONDUCTS?

jpay Tell your friends and family to visit www.jpay.com to write letters and send money!

## You have received a *jpay* letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/1/2023 9:46:59 AM EST,    Letter ID: 1806678748
Location : MCF
Housing : UNIT 4100B01

WOULD YOU PLEASE APPOINT ME AN ATTORNEY TO REPRESENT MY INTEREST AND PREPARE MOTIONS AS NEEDED?

WOULD YOU PLEASE HAVE PRIVATE INVESTIGATOR CHARLES MARTELL COME AND TESTIFY AS AN EXPERT WITNESS FOR EVIDENTIARY HEARING?

PLEASE ASK MS. D. CHILLERS (JUDGE CANADY'S CLERK) AND MS. LILES (JUDGE JAMO'S CLERK) ABOUT THE PROOFS SENT BY MR. CHARLES W. MARTELL;
JUROR #2 RYAN GIBBS PETTY (CARTER) USING FALSE NAME ON JURY QUESTIONNAIRE AND DURING VOIR DIRE ON 10/31/2017 AND SIGNED HIS NAME AS "RYAN GIBBS PETTY" ON JURY VERDICT FORM ON 11/09/2017 AS A JUROR FOREPERSON.

HERE ARE THE INCONSISTENCIES:

SENT BY PRIVATE INVESTIGATOR MR. CHARLES MARTELL TO JUDGE CANADY ON 05/18/2023 (RETIRED) AND JUDGE JAMO (RECUSED HIMSELF) ON 06/12/2023

> JURY VERDICT FORM SIGNED AS RYAN PETTY ON 11/09/2017

>RYAN GIBBS PETTY (CARTER) (see email dated 05/23/2023)

>HE FILLED OUT JURY QUESTIONNAIRE AS LAST NAME "PETTY" IN 2016/2017 (unfortunately questionnaire is not available to see due to courts only keep them on file for 3 years after the trial) this was told to P/I MARTELL by Gloria McGruder (jury coordinator) however she confirmed that juror#2 name as Ryan Gibbs Petty with a D.O.B 07/21/1972    in their system and Scott Leroy (Court administrator) on 05/24/2023.

>HE DECLARED BANKRUPTCY IN 2001 UNDER THE NAME CARTER.

>ON 09/06/2018 SPEEDING TICKET WAS WRITTEN AS "CARTER"

>MI DRIVER LICENCE UNDER THE NAME "PETTY"

>HE CHANGED HIS LAST NAME TO "CARTER" OFFICIALLY ON   04/28/2022 TO OBTAIN A NEW MI DRIVER LICENSE

>COPY OF HIS APPLICATION FOR AN LLC DATED 08/30/2007 SHOWS HIS LAST NAME AS "CARTER"

>CO-DEBTOR IN BANKRUPTCY SIGNED BY DAWN RENEE (WEAVER) "CARTER"

>HIS MARRIAGE LICENCE WHEN RYAN "CARTER" MARRIED DAWN "CARTER".

>HIS MARRIAGE LICENCE WHEN RYAN GIBBS "CARTER" MARRIED GINA ERIN "PETTY".

>VOTER REGISTRATION CARDS UNDER TWO DIFFERENT NAMES (PETTY-CARTER)

>HIS BIRTH CERTIFICATE WHEN RYAN GIBBS  "CARTER" WAS BORN  in July 21st. of 1972; TO HIS MOTHER MARILYN E. "CARTER" (76 YEARS OLD A HIS FATHER ; GLEN EDWARD "CARTER" (deceased).

> HE HAS A SOCIAL SECURITY NUMBER UNDER HIS FAKE NAME.

MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS INTEGRITY IN QUESTION.

*jpay* Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/1/2023 9:46:59 AM EST, Letter ID: 1806678748
Location : MCF
Housing : UNIT 4100B01

JUROR #1 WAS KEPT TOTAL OF 9 DAYS IN IMPANELED JUROR AND SWITCHED WITH AN ALTERNATE JUROR AFTER CLOSING ARGUMENTS AND RIGHT BEFORE JURY RETIRED TO REACH A VERDICT.

JUROR#1 WAS STRICKEN (STRIKE) WITH AN ALTERNATE JUROR "KNOWINGLY" NOT "RANDOMLY". THIS WAS A JUDICIAL LAW MAKING AND RULE MAKING WHICH PER (MCL 768.18 AND MCR. 6.411) WHICH CREATED ABSURD RESULTS DOCTRINE.

JUDGE CANADY NEVER HELD A REMMER HEARING TO FIND OUT HOW JUROR #1 WOULD BE BIAS AGAINST TURKISH ETHNICITY AND HOW DID HE FIND OUT ABOUT DEFENDANT'S ETHNICITY AND WHETHER HE POISONED THE OTHER JUROR'S DURING THOSE 9 DAYS.

IMPROPER PROCEDURE UTILIZED AT TRIAL RESULTED JUROR BEING RELEASED FROM THE PANEL. MCR 6.411
THE PROPER WAY TO DETERMINE ALTERNATE JUROR IS BY RANDOM SELECTION.

ALTHOUGH COURT OF APPEALS DID NOT FIND ANY
"EXTRANEOUS INFLUENCE" ON JURY ON THEIR DECISION ON 01/19/2023. COA NEVER READ DEFENDANT'S BRIEF ABOUT "IMPROPER DISMISSAL OF JUROR #1".

IMPANELLING THE JURY

MCR 2.511(D) (2) JURY IS BIASED FOR OR AGAINST A PARTY OR ATTORNEY.

A NEW TRIAL MAYBE GRANTED PER MCR 2.611(A)(1)(b) MISCONDUCT OF THE JURY....

BOTH JURY MISCONDUCTS CREATED MANIFEST INJUSTICE AND NECESSITY IN DEFENDANT'S TRIAL.

SEE ATTACHED BRIEFS AND PLEASE ORDER AN EVIDENTIARY HEARING TO BRING IN JUROR #2 (RYAN GIBBS PETTY) AND JUROR #1 (LARRY R. NISHON)
TO TESTIFY UNDER OATH.

RESPECTFULLY SUBMITTED

TUNC URAZ

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To  : TUNC URAZ, ID: 114653
Date : 8/29/2023 8:52:54 AM EST,  Letter ID: 1847355828
Location : MCF
Housing : UNIT 4100B01

STATE OF MICHIGAN
INGHAM CTY. 30th. CIR. CT.

TO :

HON. JUDGE R. E. AQUILINA
CIR. CT. JUDGE
30th CIR Ct., INGHAM CTY.
313 W. KALAMAZOO ST.
LANSING, MI 48933-2041

FROM:

MR. TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

30th.Cir.Ct.# s 16-1064 FH;16-1065-FC;
COA#s 343695, 343696
SC#s:165560,165561
————————/

MOTION FOR RECONSIDERATION/REBUTTAL PER MCR 2.119(F)(3) FOR THE DECISION MADE ON
08/17/2023, DENYING THE MOTION FOR EVIDENTIARY HEARING AND NEW TRIAL BASED ON JUROR
MISCONDUCT.

2.119 (F)(3)
THE MOVING PARTY MUST DEMONSTRATE A PALPABLE ERROR BY WHICH THE COURT AND THE PARTIES
HAVE BEEN MISLEAD AND SHOW THAT DEFENDANT DISPOSITION OF THE MOTION MUST RESULT FROM
CORRECTION OF THE ERROR.

ORAL ARGUMENT REQUESTED PER MCR 7.214

DEAR HONORABLE JUDGE AQUILINA,

IN INGHAM COUNTY WHEN A POTENTIAL JUROR FILLS OUT THEIR JUROR QUESTIONNAIRE AND THE
ANSWERS THEY PROVIDE IS ACCEPTED AS TRUTH ; ONCE ONE SIGNS THAT QUESTIONNAIRE; SAME
JUROR BEFORE AND/OR AFTER IMPANELLING JURORS; THE OATH ONE TAKES TO BE TRUTHFUL, IT IS
ASSUMED THAT PERSON WOULD BE HONEST. (SO THERE IS NO PENALTY FOR PERJURY) ?

IS THIS THE STANDARD AT INGHAM COUNTY CIRCUIT COURT?

OR

IS THIS YOUR JUDICIAL LAW AND RULE MAKING? "ABSURD RESULTS DOCTRINE" Javens 469 MICH 1032
(2004).

BUT OF COURSE COURT APPOINTED MENTALLY IMPAIRED DEFENSE COUNSEL OF DEFENDANT (JACOB
A. PERRONE) DID NOT READ THE JUROR QUESTIONNAIRES BEFORE VOIR DIRE, EVEN IF DEFENDANT'S
COUNSEL HAD DONE SO JUROR WOULD HAVE KEPT THE SAME NAME.

HERE IS THE CASE LAW :

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To  : TUNC URAZ, ID: 114653
Date : 8/29/2023 8:52:54 AM EST,   Letter ID: 1847355828
Location : MCF
Housing : UNIT 4100B01

IN GUSTAFSON V. MORRISON 57 MICH APP 655 (1975) "THE PLAINTIFF APPEALED ARGUING THAT THE TRIAL COURT ERRED IN FAILING TO GRANT HER MOTION FOR A NEW TRIAL ON THE GROUND THAT A JUROR GAVE FALSE ANSWERS IN RESPONSE TO QUESTIONS ON HIS JURY QUESTIONNAIRE AND DURING JURY VOIR DIRE. THIS COURT FOUND THAT THE JUROR DID GIVE FALSE ANSWERS ON THE JURY QUESTIONNAIRE AND DURING VOIR DIRE AND REVERSED THE TRIAL COURT'S DENIAL OF PLAINTIFFS' MOTION FOR A NEW TRIAL BASED ON THE JUROR'S FALSE STATEMENTS.

THE COURT'S RATIONALE FOR REVERSING THE TRIAL COURT WAS THAT THE PLAINTIFF WOULD HAVE SUCCESSFULLY CHALLENGED THE JUROR FOR CAUSE IF THE JUROR HAD BEEN TRUTHFUL AND THAT THE JURY WAS THEREFORE AN IMPROPERLY CONSTITUTED TRIBUNAL.

STATUES:

MCL 600.1354(1) NONCOMPLIANCE WITH CHAPTERS AS GROUNDS FOR REQUESTING CONTINUANCE OR CLAIMING INVALIDITY OF VERDICT.....

"...... unless the party demonstrates actual prejudice to his cause and unless the noncompliance is substantial"

MCR 2.510 (B)(2) JUROR PERSONAL HISTORY QUESTIONNAIRE........
ANSWERING THE QUESTIONNAIRE FALSELY, IS CONTEMPT OF COURT.

MCR 2.511 IMPANELLING THE JURY
(D) CHALLENGES FOR CAUSE
(1) NOT QUALIFIED TO BE A JUROR
(3) IS BIASED FOR OR AGAINST TO A PARTY OR ATTORNEY.

CHALLENGE FOR CAUSE
MCR 6.412 (D)(2)
PROCEDURE..... EXCUSE THE JUROR FROM THE PANEL

MCR 2.611(A)(1)(b) A NEW TRIAL AND AMENDMENT OF JUDGEMENT
(A) GROUNDS
(1) NEW TRIAL MAYBE GRANTED.....SUBSTANTIAL RIGHTS ARE MATERIALLY AFFECTED
(b) MISCONDUCT THE JURY OR THE PREVAILING PARTY

DEFENDANT PROVIDED/QUOTED SPECIFIC TRIAL TRANSCRIPT PAGES AND TESTIMONY TO PROVE THAT EVERYTHING WAS ON RECORD YET YOUR BRIEF USES "ALLEGEDLY" WORD TO MAKE IT SOUND LIKE DEFENDANT MADE UP THESE JUROR ISSUES.

YOUR BRIEF/DECISION IMPLIES FOR JUROR #2 THAT :

(from second parag.#1,pg#2 in part)....."if these matter's would establish the juror's incompetency or disqualification or would lead parties to challenge him or her and if the affidavits are not proffered to show misconduct of a JUROR or jury for the purpose of impeaching their verdict. People v Graham, 84 Mich App 663, 666-667 (1978)".
"THE ALLEGATION THAT JUROR #2 USED A MARRIED LAST NAME IS INSUFFICIENT TO DEMONSTRATE INCOMPETENCY OR DISQUALIFICATION"

***HE HAD A DOUBLE IDENTITY***

THE PRIVATE INVESTIGATOR (MR. CHARLES W. MARTELL) WAS HIRED TO INVESTIGATE AND THEN SENT HIS FINDINGS/PROOFS, RELATED DOCUMENTS WITH HIS SIGNED AFFIDAVIT TO THIS COURT.

MR. MARTELL IS AN EX-LAW ENFORCEMENT OFFICER WHO IS VERY EXPERIENCED AND HAS TESTIFIED IN MANY TRAILS AS AN EXPERT WITNESS, HIS QUALIFICATIONS ARE IMPLACABLE
(DEFENDANT HAS SENT HIS CV/RESUME TO THIS COURT)

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a jpay letter, the fastest way to get mail**

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 8/29/2023 8:52:54 AM EST,   Letter ID: 1847355828
Location : MCF
Housing : UNIT 4100B01

THIS IS WHY DEFENDANT ASKED/MOTIONED THIS COURT TO ORDER AN EVIDENTIARY HEARING TO HAVE THE JUROR #2 TO TESTIFY ON RECORD WHY HE USED HIS FAKE/FALSE NAME.

>HE USED A FAKE/FALSE NAME ON HIS JUROR QUESTIONNAIRE AND

>SWORE IN BEFORE AND AFTER IMPANELED JURY WITH HIS FALSE/FAKE NAME AND

>SIGNED THE JURY VERDICT FORM AS A "JUROR FOREPERSON " WITH HIS FALSE AND FAKE NAME. (MRE 606(3))

TO PROVE JUROR#2 "DISQUALIFICATION" :

(1) PRIVATE INVESTIGATOR TRIED TO GET JURY QUESTIONNAIRE FROM JURY COORDINATOR MS. GLORIA McGRUDER BUT HE WAS TOLD THE QUESTIONNAIRES ARE ONLY KEPT 3 YEARS AFTER THE TRIAL.

(2) THEN I ASKED MY FAMILY TO CONTACT IRON MOUNTAIN RECORDS MANAGEMENT COMPANY IN MICHIGAN TO FIND THIS "MISSING JUROR#2 JURY QUESTIONNAIRE" (still working on it last two months because of the "red tape" requests from IRON MOUNTAIN DOC. MNGT. COMPANY)

(3) I ASKED INGHAM COUNTY PROSECUTOR'S OFFICE AND THEN PROSECUTOR KAHLA D. CRINO TO PROVIDE THIS JUROR#2 JUROR QUESTIONNAIRE AS WELL (STILL WAITING). IT SHOULD HAVE BEEN PART OF MY TRIAL RECORDS.

I AM ASKING THIS COURT TO FIND/DISCLOSE THE JURY QUESTIONNAIRE FILLED BY JUROR#2

PER;

(COMPONENT 19 OF THE MICHIGAN TRIAL COURT CASE FILE MANAGEMENT STANDARDS).

(4) I PROVIDED SPECIFIC PAGE NUMBERS AND LINE BY LINE TRIAL TRANSCRIPTS WORDING FOR JURY #2 VOIR DIRE AND HIS ANSWERS.

I AM NOT SURE WHAT ELSE I COULD HAVE PROVIDED TO THIS COURT TO PROVE AND PROVIDE DOCUMENTATION(S) THAT JUROR #2 WAS A "FRAUD".

RYAN GIBBS PETTY (CARTER) COINCIDENTALLY CHANGED HIS LAST NAME TO "CARTER" ON 04/28/2022 AT SECRETARY OF STATE TO GET HIS NEW DRIVER LICENCE; RIGHT AFTER DEFENDANT'S SECOND GINTHER HEARING WAS ENDED ON 04/13/2023

2) RECONSIDERATION FOR JUROR MISCONDUCTS

HERE ARE THE INCONSISTENCIES COMMITTED BY JUROR #2 RYAN GIBBS PETTY, WHICH WERE SENT BY PRIVATE INVESTIGATOR MR. CHARLES MARTELL TO THIS COURT ON 06/12/2023 IN AN AFFIDAVIT SIGNED BY HIM.

> JURY VERDICT FORM SIGNED AS RYAN PETTY ON 11/09/2017

>RYAN GIBBS PETTY (CARTER) (see email dated 05/23/2023)

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To : TUNC URAZ, ID: 114653
Date : 8/29/2023 8:52:54 AM EST, Letter ID: 1847355828
Location : MCF
Housing : UNIT 4100B01

>HE FILLED OUT JURY QUESTIONNAIRE AS LAST NAME "PETTY" IN 2016/2017

>HE DECLARED BANKRUPTCY IN 2001 UNDER THE NAME CARTER.

>ON 09/06/2018 SPEEDING TICKET WAS WRITTEN AS "CARTER"

>MI DRIVER LICENCE UNDER THE NAME "PETTY"

>HE CHANGED HIS LAST NAME TO "CARTER" OFFICIALLY ON 04/28/2022 TO OBTAIN A NEW MI DRIVER LICENSE

>COPY OF HIS APPLICATION FOR AN LLC DATED 08/30/2007 SHOWS HIS LAST NAME AS "CARTER"

>CO-DEBTOR IN BANKRUPTCY SIGNED BY DAWN RENEE (WEAVER) "CARTER"

>HIS MARRIAGE LICENCE WHEN RYAN "CARTER" MARRIED DAWN "CARTER".

>HIS MARRIAGE LICENCE WHEN RYAN GIBBS "CARTER" MARRIED GINA ERIN "PETTY".

>VOTER REGISTRATION CARDS UNDER TWO DIFFERENT NAMES (PETTY-CARTER)

>HIS BIRTH CERTIFICATE WHEN RYAN GIBBS "CARTER" WAS BORN TO HIS MOTHER MARILYN E. "CARTER" (76 YEARS OLD A HIS FATHER ; GLEN EDWARD "CARTER" (deceased) in July of 1972.

> OBTAINED A SOCIAL SECURITY NUMBER UNDER HIS FAKE NAME

> OBTAIN HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER HIS VOIR DIRE TESTIMONY
18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...

MR. PETTY (CARTER) JUROR#2 "PURPOSELY CONCEALING RELEVANT INFORMATION ABOUT HIMSELF AND HIS BACKGROUND WHICH COULD AFFECT HIS ABILITY TO BE AN IMPARTIAL JUROR WHEN HIS INTEGRITY IN QUESTION.

ON 10/31/2017 (SEE T.T. 10/31/2017, PGS 127,128,130,140,141)

JUROR #1

TO PROVE JUROR#1 "DISQUALIFICATION"

(from parag.#2 pg.2 in part).... ULTIMATELY, DEFENDANT'S ARGUMENT IS NOT PERSUASIVE. DEFENDANT FAILS TO ARTICULATE ANY EVIDENCE THAT JUROR #1 SPREAD RACIST BELIEFS TO THE REMAINDER OF THE JURY AND FAILS TO ACCOUNT FOR THAT FACT THAT JURORS ARE UNABLE TO DISCUSS THE CASE PRIOR TO DELIBERATIONS. AS SUCH, DEFENDANT HAS FAILED TO PERSUADE THIS COURT THAT JUROR #1 TAINTED THE JURY.

I PROVIDED SPECIFIC TRIAL TRANSCRIPT Pg. NUMBERS, RECORDS/TESTIMONY FROM JUROR #1 EXTENSIVE VOIR DIRE AND HIS DISCLOSURE OF HIS "BIASNESS" AGAINST TURKISH PEOPLE ON RECORD AFTER HE WAS SWORN IN AS AN IMPANELED JUROR.

THIS IS WHY I ASKED THIS HONORABLE COURT TO ORDER AND EVIDENTIARY HEARING AND IN MY BRIEF TO SHOW/PROVE THAT:

> WHY IS JURY#1 IS BIAS AGAINST TURKISH ETHNICITY AND WHETHER HE SHARED HIS BIASNESS WITH OTHER JURORS NEXT 7 DAYS WHEN HE WAS KEPT IN THE IMPANELED JURORS AFTER HE WAS SWORN IN

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

**You have received a jpay letter, the fastest way to get mail**

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 8/29/2023 8:52:54 AM EST,   Letter ID: 1847355828
Location : MCF
Housing : UNIT 4100B01

>IMPROPER PROCEDURE UTILIZED AT TRIAL RESULTED JUROR BEING RELEASED FROM THE PANEL PER MCR 6.411 AND MCL 768.18
(THE PROPER WAY TO DETERMINE/REPLACE AN ALTERNATE JUROR IS BY RANDOM SELECTION NOT KNOWINGLY).

THIS WAS A JUDICIAL LAW AND RULE MAKING BY JUDGE CANADY.

MCR 2.511(D) (2) JURY IS BIASED FOR OR AGAINST A PARTY OR ATTORNEY.
THE PURPOSE OF VOIR DIRE IS TO ELICIT ENOUGH INFORMATION FOR DEVELOPMENT OF A RATIONAL BASIS FOR EXCLUDING THOSE WHO ARE NOT IMPARTIAL FROM THE JURY.
SEE PEOPLE V MILLER 482 MICH 540 (2008) MI SUPREME COURT
SEE T.T. 11/02/2017 PGS. 12,13,15,16, 21,22,23 (EXTENSIVE VOIR DIRE WERE DONE TO JUROR#1 BY JUDGE CANADY , THEN PROSECUTOR ROTH AND DEFENDANT'S ATTORNEY JACOB A. PERRONE)

(SEE T.T.11/03/2017 PGS 4,5) JUDGES ABUSE OF DISCRETION ABOUT NOT DISMISSING JUROR#1 AND NOT HOLDING A REMMER HEARING TO SEE IF THE IMPANELED SWORN JURORS ARE POISONED/TAINTED BY JUROR#1.
U.S. v. REMMER, 347 US 227 (1954)

(SEE T.T. 11/09/2017 PGS. 181-182)

THIS IS "JUDICIAL LAW MAKING, ABSURD RESULTS DOCTRINE" BY JUDGE CANADY AND BY JUDGE AQUILINA SEE PEOPLE V. JAVENS, 469 MICH 1032 (2004).

JUROR 11

(in part paragraph # pg2) defendant claims juror #11 was seen talking to one of the parties' mother on the first day of jury selection. Defendant alleges that when this issue was raised, judge CANADY responded "[a]nybody can come in and sit; I cannot exclude anyone sitting in the court room during jury selection." The mother was not listed as a witness and was therefore free to sit in the court room and view the trial. There is no evidence presented that juror#11 was tainted by this alleged interaction. Therefore Defendant's argument is not PERSUASIVE.

THIS IS WHY I ASKED THE TRIAL FOOTAGE TO BE SHOWN/REVIEWED SHOWN SEVERAL TIMES TO SEE THE MISCONDUCT PER MRE 606 (1)(2) ON 10/31/2017 (from 8:30 am till 12:00N)

FROM THE DENIAL BRIEF DATED (08/17/2023) last parag. pg 2

"Ultimately, Defendant's motion must fail because he has failed to provide any PERSUASIVE legal argument to support his motion.
Unfortunately, " a party may not leave it to this court to search for authority to sustain or reject its position." Leitch V. Switchenko,169 Mich App 761, 764 (1988).

"IN OTHER WORDS, IT IS NOT THE DUTY OF THIS COURT TO FIND A CASE LAW, STATUTORY AUTHORITY, OR FACTUAL JUSTIFICATION TO SATISFY DEFENDANT'S MOTION".

THIS COURT ERRED IN CONSULTING AUTHORITY DEALING WITH CIVIL LAW CASE

MCR 7.212(A)(7) BRIEFS

THE ARGUMENT PORTION OF THE BRIEF MUST PROVIDE SUPPORTING AUTHORITIES AND FACTS MUST BE SUPPORTED BY REFERENCE TO THE PLEADINGS.

WHEN RULING MOTION UNDER MCR 2.116 (C)(10) (TESTS FOR FACTUAL SUPPORT FOR CLAIM); THE COURT MUST CONSIDER THE AFFIDAVITS, PLEADINGS, DISPOSITIONS, ADMISSIONS, AS WELL AS OTHER DOCUMENTARY EVIDENCE, AND GRANT THE MOTION ONLY WHEN THE COURT IS SATISFIED THAT IS

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 8/29/2023 8:52:54 AM EST,   Letter ID: 1847355828
Location : MCF
Housing : UNIT 4100B01

IMPOSSIBLE FOR THE CLAIM TO BE SUPPORTED AT TRIAL BECAUSE OF SOME DEFICIENCY THAT CANNOT BE OVERCOME. SCHIPPERS V SPX CORP. 186 MICH APP 595 (1990).

MCR 2.116 (G)(4) PROVIDES " AN ADVERSE PARTY MAY NOT REST UPON THE MERE ALLEGATIONS OR DENIALS OF HIS OR HER PLEADING, BUT MUST BY AFFIDAVITS OR AS OTHERWISE PROVIDED BY THIS RULE, SET FORTH SPECIFIC FACTS SHOWING THAT THERE IS A GENUINE ISSUE FOR TRIAL FOR WHICH CLAIMS RAISED... UNLESS THE ERROR COMPLAINED OF HAS RESULTED IN A MISCARRIAGE OF JUSTICE

3) RECONSIDERATION FOR JUROR MISCONDUCTS

>>>ANALYSIS AND CASE PRECEDENTS<<<

DEFENDANT USED IN HIS BRIEF "JUROR MISCONDUCT" WHICH WAS SENT TO THIS COURT ON 06/28/2023:

"CASE LAW(S), STATUTORY AUTHORITIE(S), OR FACTUAL JUSTIFICATION(S)"

REVERSE AND REMAND UNRELIABLE VERDICT OF "GUILTY"; VACATE DEFENDANT'S SENTENCES AND GRANT A NEW TRIAL ; ONCE JURY IS SWORN IN; DOUBLE JEOPARDY ATTACHES THEREFORE CANNOT BE CHARGED TWICE FOR THE SAME CRIMES AGAINST HIS FIFTH AMENDMENT RIGHTS, U.S V JORN 400 US 470 (1971) DOUBLE JEOPARDY generally ATTACHES at the time the jury is selected and sworn" people v MEHALL 454 Mich 1 (1997).
IF ANY MISCONDUCT BY IMPANELLED JURORS RISES IT WOULD BE A "MANIFEST INJUSTICE/NECESSITY" PER:
MCR 2.511(D)(2)jury bias against a party...
MCR 2.611(A)(1)(b)A new trial may be granted....misconduct of a juror....

MANIFEST INJUSTICE: HAS BEEN DEFINED AS "[A]N ERROR IN THE TRIAL COURT THAT IS DIRECT, OBVIOUS, AND OBSERVABLE. (BLACK'S LAW DICTIONARY 974 (7th Ed. 1989) IN OTHER WORDS " A SHOWING OF MANIFEST IN JUSTICE REQUIRES THAT THERE EXISTS A FUNDAMENTAL FLOW IN THE COURT'S DECISION THAT WITHOUT CORRECTION WOULD LEAD TO A RESULT THAT IS BOTH INEQUITABLE AND NOT IN LINE WITH APPLICABLE POLICY.

REVIEW IS LIMITED TO WHETHER FAILURE TO REVIEW WOULD DEPRIVE THE DEFENDANT OF A FAIR TRIAL FO RESULT IN MANIFEST INJUSTICE. PEOPLE V OSBY 291 MICH APP 412 (2011)

MCR 2.510(C) provides that on completion, the jury questionnaire shall be filled with the court clerk or the jury board. The only person's allowed to examine the questionnaire are; the judges of the court; clerk and deputy clerks; parties to actions in which the juror is called to serve and their attorneys; and persons authorized access by court rule or by court order. The attorneys must be given a reasonable time to examine the questionnaires before being called on to challenge for cause. The questionnaires must be kept on file for 3 years from the time they are filled out.

COURT TO ORDER COPY OF HIS JURY QUESTIONNAIRE FROM 2016- 2017 AND HIS FEDERAL FIREARMS LICENCE APPLICATION TO CHECK WHAT NAME HE USED PER
18 USC 922(a)(6) IT SHALL BE UNLAWFUL..... misrepresented identification...

MRE 606(b) validity into of verdict or indictment (1) whether extraneous prejudicial information was improperly brought to jury's attention (2) whether any outside influence was brought to bear upon any juror or (3) whether there was mistake in entering the verdict onto the verdict form.

MRE 103 RULINGS ON EVIDENCE
(a) effect of erroneous ruling
(2) offer of proof
(d) plain error

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

You have received a **jpay** letter, the fastest way to get mail

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 8/29/2023 8:52:54 AM EST,   Letter ID: 1847355828
Location : MCF
Housing : UNIT 4100B01

FALSE ANSWERS BY JUROR TO QUESTIONS ON VOIR DIRE WHETHER INTENTIONAL OR UNINTENTIONAL DENY THE DEFENDANT A FAIR TRIAL, IF CORRECT ANSWERS WOULD HAVE LED THE PARTICIPATE TO CHALLENGE HIM .
PEOPLE V. GRAHAM 84 MICH APP 663 (1978)

"IN VOIR DIRE MEANING ****"TO SPEAK THE TRUTH"**** POTENTIAL JURORS ARE QUESTIONED IN AN EFFORT TO UNCOVER ANY BIAS THEY MAY HAVE THAT COULD PREVENT DECIDING THE CASE" PEOPLE V TYBURSKI 445 MICH 606 (1994) (cleaned up)

DEFENDANT IS ENTITLED A RELIEF FROM A VERDICT BECAUSE OF DISALLOWANCE OF VOIR DIRE ONLY HE CAN PROVE THAT HE WAS ACTUALLY PREJUDICED BY THE PRESENCE OF THE JUROR IN QUESTION OR THAT THE JUROR WAS PROPERLY EXCUSABLE FOR CAUSE.
BYNUM V THE ESAB GROUP INC. 467 MICH 280 (2002)
PEOPLE V HANNUM 362 MICH 660 (1961)
PEOPLE V DEHAVEN 321 MICH 327 (1948)

A NEW TRIAL MUST BE GRANTED WHEN IT APPEARS THAT A JUROR GAVE UNTRUTHFUL ANSWERS DURING VOIR DIRE, WHEREAS TRUTHFUL ANSWERS WOULD HAVE ALLOWED A SUCCESSFUL CHALLENGE FOR CAUSE. (COLLIER V. WESTLAND ARENA INC. 183 MICH APP 251 (1990)

IN GUSTAFSON V. MORRISON 57 MICH APP 655 (1975) lv. 394 Mich 755 (1975) " LITIGANTS UNQUESTIONABLE RIGHT TO TRUTHFUL ANSWERS FROM A PROSPECTIVE JUROR ON VOIR DIRE. COUNSEL HAS A RIGHT TO RELY ON THE TRUTHFULNESS OF A JURY QUESTIONNAIRE BECAUSE IT IS DESIGNED TO PROVIDE A BASIS FOR INTELLIGENT CHALLENGING. HOWEVER UPON DISCOVERY OF A JUROR'S FALSE STATEMENTS AFTER TRIAL AND VERDICT, A MOVING PARTY MUST PRESENT TO THE COURT SOMETHING MORE THAN THE MERE FACT OF THE FALSITY OF THE ANSWERS. "There must be a showing of actual prejudice or it must be established to the satisfaction of the trial court that moving party would have successfully challenged for cause or otherwise dismissed the juror in question had the truth been revealed prior to trial.

PEOPLE V SCHRAM 378 MICH 145 (1966)
(Citizens Com.&Sav. Bank V ENBERG,15 MICH APP 438 (1968).

IT IS PROPER AND APPROPRIATE TO GRANT A NEW TRIAL WHERE TESTIMONY OR AFFIDAVITS ARE PRESENTED CONFORMING THAT MATTERS HAVE BEEN FALSELY DENIED OR CONCEALED ON VOIR DIRE; IF THOSE MATTERS WOULD ESTABLISH A JUROR'S INCOMPETENCY OR DISQUALIFICATION OR LEAD A PARTY TO CHALLENGE THE JUROR AND IF THE TESTIMONY OR AFFIDAVITS ARE NOT PREFERRED TO SHOW MISCONDUCT OF JUROR OR JURY FEAR THE PURPOSE OF IMPEACHING THE VERDICT. PEOPLE V GRAHAM 84 MICH APP 663 (1978). PEOPLE V. KAGE 193 MICH APP 49 (1992).

IN SULLIVAN V STATE 155 MISS 629 638 (125 So 115,117) IN WHICH THE COURT ADOPTED THIS RULE SAYING;
A LITIGANT HAS NOT VESTED RIGHT IN A PARTICULAR JUROR, OUT ONLY A RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY QUALIFIED UNDER THE LAW....WE THINK THE COURT, IN STANDING THE JUROR A SIDE OR SUSTAINING THE CHALLENGE, WAS ACTING UPON A QUESTION WHERE DIFFERENT REASONABLE CONCLUSIONS MIGHT BE REACHED AS TO THE QUALIFICATION OF THE JURORS, AND THERE IS NOTHING TO SUGGEST THAT THE JUDGE DESIRED ANYTHING OTHER THAN TO SECURE TO THE DEFENDANT THAT FAIR AND IMPARTIAL ACCORDED TO DEFENDANT BY THE LAW".

**jpay** Tell your friends and family to visit www.jpay.com to write letters and send money!

*You have received a* **jpay** *letter, the fastest way to get mail*

From : aysem uraz, CustomerID: 20469429
To   : TUNC URAZ, ID: 114653
Date : 8/29/2023 8:52:54 AM EST,    Letter ID: 1847355828
Location : MCF
Housing : UNIT 4100B01

CONCLUSION:

THEREFORE DEFENDANT IS ASKING THIS HONORABLE COURT TO REVIEW THE MOTION AND TRIAL TRANSCRIPTS ONE MORE TIME AND ORDER AN EVIDENTIARY HEARING TO EXPAND THE RECORD.

DEFENDANT IS ASKING THIS HONORABLE COURT TO VACATE HIS SENTENCE AND GRANT HIM A NEW TRIAL PER MANIFEST IN JUSTICE.

RESPECTFULLY SUBMITTED

TUNC URAZ

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*



ELIZABETH L. GLEICHER
CHIEF JUDGE
MICHAEL F. GADOLA
CHIEF JUDGE PRO TEM
MARK J. CAVANAGH
KATHLEEN JANSEN
JANE E. MARKEY
KIRSTEN FRANK KELLY
CHRISTOPHER M. MURRAY
STEPHEN L. BORRELLO
DEBORAH A. SERVITTO
MICHAEL J. KELLY
DOUGLAS B. SHAPIRO
MARK T. BOONSTRA
MICHAEL J. RIORDAN

COLLEEN A. O'BRIEN
BROCK A. SWARTZLE
THOMAS C. CAMERON
ANICA LETICA
JAMES ROBERT REDFORD
MICHELLE M. RICK
SIMA G. PATEL
NOAH P. HOOD
KRISTINA ROBINSON GARRETT
CHRISTOPHER P. YATES
KATHLEEN A. FEENEY
ALLIE GREENLEAF MALDONADO
JUDGES
JEROME W. ZIMMER JR.
CHIEF CLERK

### State of Michigan
# Court of Appeals
### Lansing Office

November 22, 2023

Tunc Uraz #114653
Muskegon Correctional Facility
2400 S. Sheridan Dr.
Muskegon MI  49442

      Re:  **People of MI v Tunc Uraz**
      Court of Appeals Nos.  **343695; 343696**
      Lower Court Nos.  **16-001064-FH; 16-001065-FC**

Dear Mr. Uraz:

      With this letter I am returning your enclosed motion/correspondence.  It cannot be accepted for filing in these Court of Appeals files because they were concluded in this Court with the issuance of this Court's January 19, 2023 opinion and February 22, 2023 order denying your motion for reconsideration of the opinion.

                            Sincerely,

                            Gary L. Chambon Jr.
                            District Clerk

cc:  Kahla D. Crino
      Susan K. Walsh

Enclosure

DETROIT OFFICE
CADILLAC PLACE
3020 W. GRAND BLVD. SUITE 14-300
DETROIT, MICHIGAN  48202-6020
(313) 972-5678

TROY OFFICE
COLUMBIA CENTER
201 W. BIG BEAVER RD. SUITE 800
TROY, MICHIGAN  48084-4127
(248) 524-8700

GRAND RAPIDS OFFICE
STATE OF MICHIGAN OFFICE BUILDING
350 OTTAWA, N.W.
GRAND RAPIDS, MICHIGAN  49503-2349
(616) 456-1167

LANSING OFFICE
925 W. OTTAWA ST.
P.O. BOX 30022
LANSING, MICHIGAN  48909-7522
(517) 373-0786

COURT OF APPEALS WEB SITE ~ https://www.courts.michigan.gov/courts/court-of-appeals/

343673-C
343696-C
10/30/2023

Michigan

To: Court of Appeals
925 W-Ottawa St
PO Box 30222
LANSING, MI 48909

RETURNED

NOV 22 2023

COURT OF APPEALS
FOURTH DISTRICT
CHIEF CLERK

from The URAZ 114653
Muskegon Correctional facility
2400 S Sheridan Dr
Muskegon, MI 49442

Case# SC 165560, 61
RECEIVED MI COA-LAN
NOV 18 23 AM 11:43 95, 96
LC: 16-1064-Fit f16 1065FC

Re: Motion for Emergency Appeal to Juror
Misconduct/fraud upon court/Declaratory
Judgment Briefs
    ORAL Argument requested per MCR 7.214
Judge Aquilina is LATE/NOT responding
Defendant's Reconsideration Brief on Juror
Misconduct and Declaratory Judgment Briefs
per MCR 8.101(A) CANON 3.AC5), MCR 3.305
    This court have on general superintending
control over all state courts pursuant to 1963
Cost VI, sec 4 MCR 3.305
    per private Investigator findings (see attached)
① On 06/30/2023 Def. filed a motion for an evidentiary
hearing based on Juror Misconduct. who used
a fake/false name at defendant's trial after he
was sworn in, became Juror foreperson (sec #2)
② ON session held on 7/13/23 Judge Aquilina

over →

without any troscript she denied defendant's Motion (see #3)

(3) on 08/29/23 Def sent a Reconsideration Brief to Judge Aquilina based on her decision on 08/17/2023 (see #4)

(4) on 7/1/23 Defendant sent Declaratory Ruling and a Declaratory Judgement Briefs with exhibits to 30th circuit court To chief Judge DRAGANCHUK and subsequently to Judge Aquilina (she was appointed since Judge JAMO recused himself) choosen by lot (Judge CANADY Trial Judge retired) (see # 5) MCR 3.305

(5) Defendant sent an order regarding appointment of an Appellate counsel and requested troscript from 30th circuit court on 09/29/23. I have not received any response (see #6)

(6) 30th circuit court Clerk is failing to enter all my Briefs Motions, requests to Register of actions under my case numbers (see #7)


Please accept my appeals accordingly please contact me if you have any questions.
   Respectfully Submitted
   Tone Vion                                    on 10/30/23
Praf of mailing This letter and packet was sent to 30th circuit court, MI Supreme ct. COA and Judge Aquilina

# Order

January 30, 2024

165560-1 & (150)(152)

**Michigan Supreme Court**
**Lansing, Michigan**

Elizabeth T. Clement,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
           Plaintiff-Appellee,

v

TUNC URAZ,
           Defendant-Appellant.

SC: 165560-1
COA: 343695, 343696
Ingham CC: 16-001064-FH
            16-001065-FC

_____/

On order of the Court, the motion to file a supplement is GRANTED. The application for leave to appeal the January 19, 2023 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court. The motion to stay and hold in abeyance is DENIED.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 30, 2024

s0122

                          Clerk

10/30/2023

To Michigan Supreme Court
Office of the clerk
PO Box XXXX
LANSING MI 48909

Re: TINE DEAZ #114653
Muskegon Correctional facility
2400 S Sheridan Dr
Muskegon, MI 49442

Re: [illegible text]

Dear Clerk
Please accept attached Briefs and Juer
[illegible]

(1) On [illegible] Defendant [illegible]

(2) On [illegible]

(3) On 02/11/23 Defendant sent in reconsideration
---->

(Brief attached on her reasons for MCL 2.117(c)3)
(see attachment.)

Please court calendar limits

I am still waiting Judge Dynan answer for the
(reconsideration) it has now been more than 56
days per MCL 8.107(A)(1) I have attached 8

I told her Judge Dynan in person in an
hearing for Speed production on Dec 11/11/23
(see attachment #9) failure to provide to the court or the
cost of Ingham courts

(Motion #5) was refused to provide on 09/27/23
(attachment #10) failed to provide on Ingham County
including charges of attorney, on 12/16/2023 and
afterwards, all payments due to Ingham was not
registered as needed

I am still trying to get copies of juror records that
clearly to the court created a false book/false
have been withheld all to disprove that Judge had
on 7/3/23 but documents I have not been provided
by courts

Respectfully Submitted
Terri Vir

This letter and attachments were sent via mail to the courts on 10/23



Incarcerated Individual Search   Prison Search   Help   System Status

My Account

Home   Email

Inbox (0)         **Sent**
Compose
Sent              Delete                                                      Next ▶
Buy Stamps
                  From:          CHARLES MARTELL
Stamp Balance (2) Date:          5/15/2023 10:58:43 AM
Transaction History Sent To:     TUNC URAZ

                  Attachments:
                  ─────────────────────────────────────────────────

                  TONY,

                  I just sent an inquiry to Valerie Roper who I have identified as the Judicial
                  Assistant to JUDGE CANADY. I have added your name and your sister's
                  name in the BCC file so that she cannot see who I have copied on this email:

                  "Valerie,

                  I am a licensed PRIVATE INVESTIGATOR in Michigan (Agency license
                  #3701206460). I have a client who was convicted in a criminal case in
                  JUDGE CANADY's court room about five years ago. The client has asked me
                  to interview some jurors from the trial.

                  Can you let me know the POLICIES that JUDGE CANADY has about such
                  interviews."

                  Chuck Martell
                  Hamilton Research Associates, LLC
                  6632 Telegraph
                  Suite 288
                  Bloomfield Hills, MI 48301
                  O: 248-269-9090
                  F: 248-413-8003
                  C: 248-804-8877
                  website: www.privateinvestigatormi.com
                  Email: cwmartell.HRA@live.com
                  PRIVILEGED -NOT SUBJECT TO SUBPOENA

JPay.com                Payment Services    Incarcerated Individual Services   Parole & Probation   Social
  Home                    Money Transfer      Email & VideoGram                  Restitution          Facebook
  About                                       Education                          Supervision Fees     Twitter
  Incarcerated Individual Search              JPay Tablets                       Court Fees           Our Community
  Prison Search                               JPay Video Connect                 Self-Report Fees
  Partner Agency                                                                 Release Cards
  Contact Us
  Help



Legal Agreements  |  Consumer Protection  |  Privacy Policy          An Aventiv company          © 2002-2023 JPay LLC. All Rights Reserved

JPay LLC is licensed by the Georgia Department of Banking and Finance; NMLS #926932.  We are also licensed as a Money Transmitter by the New York State Department of Financial Services.

HAMILTON RESEARCH ASSOCIATES, LLC

# EXHIBIT NO 1

I spoke with the INGHAM COUNTY CIRCUIT COURT JUDGE CANADY's JUDICIAL ADMINISTRATOR DIANE CHILLERS, who referred me to the JURY OFFICE. There I spoke with GLORIA McGRUDER who advised that the original QUESTIONAIRES completed by jurors at the beginning of each trial were destroyed after two years. Therefore, we could not get a copy of the questionnaire completed by RYAN GIBBS PETTY.

McGRUDER confirmed that PETTY's name was in their computer as RYAN GIBBS PETTY, and that PETTY had to have given his name that way for it to be in their system. McGRUDER also confirmed that there was nothing in the computer that would indicate that PETTY had told anyone about his name change.

McGRUDER confirmed that copies of the completed forms would have been distributed to JUDGE CANADY, the prosecutor and the defense attorney so that the information on the questionnaires could be used during the time they were asking the jurors questions during the jury VOIR DIRE.

We did obtain a copy of the blank form which McGRUDER claimed was being used in 2017 to have prospective jurors write down their information before being chosen to serve (SEE COPY ATTACHED).

The clerk was asked if the name change was disclosed by PETTY, would that fact have caused him to be rejected as a juror. The clerk referred further questions to SCOTT LEROY who is the COURT ADMINISTRATOR.

SCOTT LEROY was contacted and said that an attorney would have to file a MOTION for a MISTRIAL to get the judge's attention.

See the attached notes of talks with CHILLERS, McGRUDER, and LEROY. Also attached is a copy of the blank juror's questionnaire form.

HAMILTON RESEARCH ASSOCIATES, LLC

# EXHIBIT NO 2

It was discovered that the original JUROR QUESTIONAIRE completed by JUROR #2 (PETTY) in the year of 2017 was destroyed by the court after two years.  Therefore, this transcript from the trial JUDGE CANADY questioning RYAN GIBBS PETTY on 10/31/2017 was obtained and is attached hereto as EXHIBIT NO 2.

In this transcript, JUDGE CANADY did not ask PETTY about his former employment, did not ask to see PETTY's drivers license, and did not ask about other court cases he was involved in.  If these questions had been asked, JUDGE CANADY would have realized that PETTY's previous name was RYAN GIBBS CARTER, and that he had filed bankruptcy in the name of CARTER.

JUDGE CANADY would also have realized that JUROR #2 had a MICHIGAN driver's license in two different names.

JUDGE CANADY would also have realized that JUROR #2 had filed a BANKRUPTCY case in FLINT in the name of CARTER.

JUDGE CANADY would also have realized that JUROR #2 had been involved in a DIVORCE case in which his name was clearly shown as CARTER.

HAMILTON RESEARCH ASSOCIATES, LLC

5-24-2023

# SCOTT LEROY

COURT ADMINISTRATOR

INGHAM COUNTY CIRCUIT COURT

517-483-6507

SPOKE WITH HIM TODAY

ONLY KEEP JUROR QUESTIONNAIRES FOR 3 YEARS

DO NOT SEND DOCUMENTS TO HIM

AN ATTORNEY MUST FILE A MOTION FOR THE JUDGE TO GET INVOLVED

GLORIA McGRUDER

Chuck Martell <cwmartell.HRA@live.com>

Wed 5/24/2023 3:22 PM

To:Tony Ur <tonyur@gmail.com>;aysemu@yahoo.com <aysemu@yahoo.com>
Cc:'Cindy Martell' <cam.hamilton@live.com>

Tony,

I just spoke with GLORIA McGRUDER who is the JURY COORDINATOR for the INGHAM COUNTY CIRCUIT COURT.
She said that they only keep the QUESTIONNAIREs for 3 years, so they would not have the form that RYAN
completed.  She did confirm that his name is in their system as RYAN GIBBS PETTY, born 7-21-1972.  I asked for her
email address but she referred further questions to SCOTT LEROY who she identified as the COURT
ADMINISTRATOR.

I have talked with Scott today who told me that an attorney would have to file a MOTION to get the judges
attention. I have the names of several APPEALs attorneys with whom I have worked in the past, so I can make
contact with them to see if they are interested, and what their fees might be.

I could track down your attorney JACOB PERRONE to see if he has the questionnaire, or track down the prosecutor
in a similar quest.

Or there is a legal office called the "INNOCENCE PROJECT" who could supply an attorney without charge.

Let me know what you want to do next.

Sent from Mail for Windows
CHARLES MARTELL
        LICENSED PRIVATE INVESTIGATOR
        HAMILTON RESEARCH ASSOCIATES, LLC
        6632 TELEGRAPH RD
        SUITE 288
        BLOOMFIELD HILLS, MI 48301
        OFFICE: 248-269-9090
        CELL: 248-804-8877
        EMAIL: cwmartell.hra@live.com

        PRIVILEGED – NOT SUBJECT TO SUBPOENA

Duane Silverthorn

To:
Subject:                    Tunc Uraz as to Duane Silverthorn, AGC File 22-2095
Attachments:                URAZ COURT RECORD.pdf

Cynthia C. Bullington
Assistant Deputy Administrator
Attorney Grievance Commission              **SEE PAGE 2 PARA. 7**
                                           _____

RE: Tunc Uraz as to Duane Silverthorn
    AGC File No. 22-2095

Ms. Bullington:

Attached is printout of the Circuit Court Record for Mr. Uraz in Ingham County Circuit Court File 16-001064-FH. There is a companion File No. 16-001065-FH that has essentially identical entries as both cases tracked along with each other and were tried at the same time. So, to avoid unnecessary redundancy, only File 1064 is attached. Any remaining documents which I might have attached are already provided by Mr. Uraz in his complaint.

I have attached the circuit court record to illustrate the incredibly extensive history contained in the underlying cases that form the basis for Mr. Uraz's grievance against me (and, others). The history reflects that this is the proverbial case in which no stone was left unturned – prior to trial, during trial and then later during the very lengthy the appellate process. Mr. Uraz now had resorted to the attorney grievance process as the appellate process has not afforded him the relief he seeks.

It is correct that I was appointed to take over Mr. Uraz's cases on or about December 14, 2017. It is also correct that I was appointed at the request of the prosecutor following a December 12, 2017 meeting between the prosecutor, Mr. Uraz's trial counsel, Jacob Perrone and Judge Clinton Canady III, who conducted the trial. I was not present for that meeting. However, I understand that all persons present at the meeting concluded that Mr. Perrone could continue to represent Mr. Uraz through sentencing. The purpose for the meeting was to discuss Mr. Perrone's being petitioned to Ingham County Probate Court in November 2017 for mental health treatment by Lansing Police Officer Robert McBride. The petition was filed due to an incident witnessed by Officer McBride on November 20, 2017. The incident is summarized in Lansing Police Report #1751906153 submitted to the AGC by Mr. Uraz. All persons present at the December 12th meeting were aware of the petition as that was the *raison d'etre* for even having the meeting. It was the petition for mental health treatment and not any pre-trial or during trial concerns regarding Mr. Perrone's performance that caused the prosecutor to then request that Judge Canady appoint replacement counsel – "out of an abundance of caution".

When I first got the case, I met in my office with Mr. Perrone for the first and only time. This would have been in late December 2017. It was during this meeting that I made my personal observations of Mr. Perrone which later formed the basis for my testimony during Mr. Perrone's *Ginther* hearing. During the meeting, Mr. Perrone was candid with me about the petition for mental health treatment. He was also able to very well describe all of the pretrial and trial motions, strategy, etc., during his

1

handling of the case.  I believe I met with Mr. Uraz some days later.  At that initial meeting, it was not me, but Mr. Uraz who raised the subject of Mr. Perrone's petition for mental health treatment.  Mr. Uraz was very animated as he believed that he had been convicted because of negligence on the part of Mr. Perrone.  I advised Mr. Uraz that mental illness alone would not necessarily raise the need for a new trial.  More specifically, I indicated that there must be some correlation between an attorneys' mental illness that causes a failure to competently represent the client.  Such correlation could then either borne out or ruled out by an examination of the record.

Generally, I believe that process is what has occurred in Mr. Uraz's case.  Unfortunately for him, the process has not provided him the relief sought.

More specifically, I think that Mr. Uraz is making the claim that I willfully failed to inform him, Judge Canady and Mr. Uraz's appellate investigator and appellate counsel of a mental health petition filed several weeks following the end of a trial that ended in November 2017.

I believe that the easiest was to do so is to answer the specific numerical allegations of Mr. Uraz's complaint as itemized by subparagraphs in allegation #7.  The answers appear in reverse order from 6 back to 1 as I believe that truth of why this grievance has been filed appears in the final question concerning a conspiracy (in effect).

Question and my Response:

#7.6  "Are you part of this purposeful cover-up by Ingham County court (sic), Judges, prosecutors about Perrone's mental impairments?

    No. I worked ethically for Mr. Uraz.  I did not submit a copy of the petition for mental health treatment in my lengthy submission of documents (also, a copy of which is provided by this grievance) for sentencing as Judge Canady was already well aware of the filing.  As I have already written in this response, the fact of the petition was actually the sole reason the case was transferred to me from Mr. Perrone.  It had already been considered by the judge.  Perhaps if the petition for mental health treatment had been filed **prior to trial** rather than **several weeks following the conclusion of trial** Mr. Perrone's competency to conduct a trial would have been an issue.  As it was, both the trial court and apparently, appellate courts have concluded that Mr. Uraz had received a fair trial and is convictions have been upheld.

#7.5  "Why didn't you testify about his (12/18/2017) docs at (sic) ginther hearing on 10/04/2021?"

    ✱  I didn't testify about the documents because I was not asked the question.  The appellate attorney is entitled to be provided the same discovery as I am.  I was not going to question the appellate attorney's strategy.  Perhaps the strategy (correctly so) was to try to tie defects in representation by Mr. Perrone during pre-trial and trial motion to his  mental capacity. If that were the case, then it would require personal testimony from persons capable of providing such testimony. I was not that person.  I could only testify that in my meeting with Mr. Perrone more than a month following trial – he behaved oddly.  I testified to that.  Mr. Uraz certainly must have informed his appellate counsel of the petition for mental health treatment.  If appellate counsel  had asked me about the petition I would have testified that I was aware of it as was Mr. Uraz and that's why I was appointed.  If the appellate counsel had gone further and asked my opinion as to whether Mr. Perrone's mental condition during the trial affected either his performance at trial or the outcome of the trial, I would have truthfully testified that I had no idea as I was not present at the trial.

#7.4  "Did you purposely hold back the (12/18/17) documents to be part of your sentencing memorandum?"

I did not file a sentencing memorandum. I filed a letter transmitting numerous documents Mr. Uraz and his family had provided me that Mr. Uraz I wished for the court to consider. I made corrections to the report, reviewed Sentencing Guidelines scoring and allocuted on behalf of Mr. Uraz orally on the record in open court.  The court was already aware of the petition for mental health services. AGAIN – THAT'S WHY I WAS APPOINTED. Finally, I strongly resent the implication throughout Mr. Uraz's grievance that I purposely or intentionally withheld information from the court as part of a conspiracy to have him convicted.  Neither Mr. Uraz nor his case would cause me to commit an unethical act that cause me to lose my license to practice law.

#7.3  "Did Ms. Walsh requested (sic) any discovery packages about my case?"

I remember speaking with Ms. Walsh, but do not remember what we spoke about other than my personal observations of Mr. Perrone. However, this would not be unusual for an appellate attorney to only discuss matters such as personal observations or work product. Unlike discovery and court documents those things cannot be obtained by an appellate attorney's request to the prosecutor.

#7.2  "Why did Mr. Silverthorn did not did not share this (12/17/202017) documents with me and my appeal attorney, Susan Walsh?"

I don't know that I didn't share the documents with Mr. Uraz. My practice is to provide documents to clients. I will state unequivocally, however, that Mr. Uraz was very well aware of the petition for mental health treatment as that was nearly the sole topic of our first and subsequent conversations. Finally, I would have NEVER knowingly failed to disclose an important document to an appellate attorney or investigator – even though I know that such person can obtain such document themselves, with or without my assistance. I have no recollection of Susan Walsh asking about such documents. If she had, I would have either sent them (if accessible as the paper file was in archives) or told her about them  I probably assumed she was aware – because Mr. Uraz was aware.

#7.1  "Why did Mr. Silverthorn neglected (sic) to share this vital 12/18/2017 documents with courts (sic) during my sentencing?

I believe that this has already been answered.  The petition for mental health treatment was the reason I was appointed by Judge Canady. He was already aware of the document. I was not present for the entire *Ginther* hearing. I am not aware of the arguments made in Mr. Uraz's appeal. I am not an appellate attorney, however, I am aware that the Court of Appeals receives all transcripts for hearings on any contested matter, including all motions prior to and during trial. I must assume that all arguments made concerning Mr. Perron's mental condition affecting the outcome of trial were negated by the evidence presented and rulings made during such proceedings.

If the AGC wishes an additional reply, I would be happy to provide one.

Sincerely,

3

Duane D. Silverthorn

*Duane D. Silverthorn*

Duane D. Silverthorn
Office of the Public Defender
Senior Assistant Public Defender
320 N. Washington Square, Ste. 100
Lansing, Michigan 48933
517-679-2979
dsilverthorn@ingham.org

"This electronic message, including any attachments, is confidential and intended solely for use of the intended recipient(s). This message may contain information that is privileged or otherwise protected from disclosure by applicable law. Any unauthorized disclosure, dissemination, use or reproduction is strictly prohibited. If you have received this message in error, you must delete it permanently and notify the sender immediately."

4

# CAROL A. SIEMON
## INGHAM COUNTY PROSECUTING ATTORNEY



LISA McCORMICK
*Chief Assistant Prosecutor*

JOHN J. DEWANE
*Deputy Chief Assistant Prosecutor*

December 18, 2017

Duane Silverthorn
2155 Commons Pkwy
Okemos, MI 48864

Re:  *People v. Tunc Uraz* 16-001064-FH & 16-001065-FC

Dear Mr. Silverthorn,

Enclosed please find Lansing Police Report #1751906153, Petition for Mental Health Treatment, and Initial Order after Hearing on Petition for Mental Health Treatment. The enclosed documents relate to the defendant's trial counsel, Mr. Jacob Perrone. The Prosecutor's Office is disclosing these documents so that you may be fully informed in your representation of Mr. Uraz.

At an in-chambers meeting with Judge Canady held on December 12, 2017, Mr. Perrone disclosed that he has been diagnosed as bi-polar. During this meeting Mr. Perrone further disclosed he was not having an "episode" during the trial of *People v. Tunc Uraz* and that he felt he could continue to represent the defendant through sentencing. While the prosecution did not see anything during trial contrary to the representations of Mr. Perrone, the People requested that new counsel be appointed for sentencing out an abundance of caution.

If you have any further questions, please do not hesitate to contact myself or Jonathan Roth.

Respectfully,

Chas. T. Koop, II
Assistant Prosecutor

## Koop, Chas

| | |
|---|---|
| **From:** | Koop, Chas |
| **Sent:** | Monday, December 18, 2017 3:25 PM |
| **To:** | 'DDLSILVERTHORN@GMAIL.COM' |
| **Subject:** | Tunc Uraz |
| **Attachments:** | SKM_654e17121815351.pdf |

Duane,

See attached letter with enclosed documents.  I've placed a physical copy in the mail, but wanted to email you as well.

Thanks,

**Chas. T. Koop, II**
Assistant Prosecuting Attorney
Ingham County Prosecutor's Office
303 W. Kalamazoo St.
Lansing, MI 48933
p. 517-483-6517 (direct)
ckoop@ingham.org

1

# JDH Consulting Services, LLC
P. O. Box 943 • Troy, Michigan 48099 • 586 404 8354 • TIN 27-5218315

September 27, 2021

### Report of Interview

Interviewee: **DUANE SILVERTHORN**
Date: 9-27-2021
Investigator: James D. Hoppe

    Duena Silverthorn, currently employed by the Ingham County Public Defender, 517-679-2979, was interviewed regarding Jacob Perrone and Perrone's representation of Tunc Uraz. Silverthirn advised that he was assigned this case for sentencing purposes and he only me Perrone, the trial attorney, when Perrone dropped off the Uraz file shortly after the trial ended. Silverthorn came to the Ingham County Defender Office in 2019 after over 30 years in private practice.

    Silverthoirn described Perrone as being "off" and as a non-stop talker, almost pathologically so. In Silverthorn's opinion Perrone seemed to be 'flying', almost as if he was an amphetamine user. Silverthoirn does not know anything about Perrone's behavior at trial and Silverthorn has not examined the trial record to see what happened at trial.

**STATE OF MICHIGAN**
**IN THE 54A JUDICIAL DISTRICT COURT FOR THE COUNTY OF INGHAM**
*Civil Division*

**TUNC URAZ, Inmate No. 114653,**

                        Plaintiff,

**v.**

**JACOB ALAN PERRONE**

                        Defendant.

CASE NO. 2025-05377-GC
**HONORABLE: STACIA BUCHANAN**

_____/

**DRAGON LAWYERS PC ©**
*Jacob A. Perrone (P71915)*
Attorneys for Defendant Jacob A. Perrone
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
Phone (517) 803-4657
jacob.perrone@yahoo.com

_____/

## DEFENDANT JACOB A. PERRONE'S MOTION TO STRIKE AND MOTION FOR MORE DEFINITE STATEMENT AND BRIEF IN SUPPORT

_____/

    ***NOW COMES*** Defendant, ***Jacob A. Perrone,*** (hereinafter "*Defendant*") by and through

his attorneys, **DRAGON LAWYERS PC ©**, and *Jacob Alan Perrone, Esq.*, and for his Motion

to Strike and Motion for More Definite Statement states as follows:

    Defendant, ***JACOB A. PERRONE,*** respectfully moves the Court to Dismiss the case and/or

strike the Plaintiff's complaint in its entirety and require the Plaintiff to provide a more definite

statement for Defendant to Answer. Defendant also requests $500.00 in attorney fees for having to

answer this frivolous case and that sanctions be imposed against Mr. Uraz in a monetary amount

1

exceeding $2,000.00 to reiterate to Mr. Uraz he is not entitled to infringe upon innocent people and the court's time with his personal vendettas and fractured reasoning.

## BRIEF IN SUPPORT

### Factual Background

Mr. Uraz was charged in 2017 with Aggravated Stalking and Solicitation to Commit Murder based upon a sting operation done by the Lansing Police Department ("LPD") where they used an undercover officer to act as a hired hitman. Mr. Uraz solicited for the victim to be killed by the purported hit man in a very distinct and easily understandable manner. Although, Mr. Uraz was advised by both my self and his prior retained Mr. Nichols to take a deal he allowed the idiots in jail to overtake his common sense and endeavored to "clear his name", likely so he could stalk and revictimize the victim in the solicitation case. I was contacted repeatedly by representatives of the Turkish Embassy throughout the trial, and they were very upset that I was not sharing status updates with them regarding the case and providing them with an objective viewpoint as to the merits of the case and likely outcomes.  As Mr. Uraz's appointed counsel, I made the judgment call that it would not be in the best interest of Mr. Uraz to disclose evidence and work product regarding the case because not only would it potentially sacrifice merited arguments, but it likely would have led to the Turkish government turning its back on Mr. Uraz.

I want to be extremely clear on the record that regardless of his brother's standing in Turkey I welcome further attacks on my character and professionalism and he is free to stalk me if he so chooses. But I must warn Mr. Uraz that he is wading in water over his or his brother's head and my last stalker left me alone after 4 months because he had had enough and came to terms with the likelihood of retribution if he continued.  Mr. Uraz is not my first stalker, but he may be my last. And yeah, that is a threat.

## Legal Authority and Analysis

### *Rule 2.115. Motion to Correct or to Strike Pleadings.*

    **(A)** Motion for More Definite Statement. If a pleading is so vague or ambiguous that it fails to comply with the requirements of these rules, the opposite party may move for a more definite statement before filing a responsive pleading. The motion must point out the defects complained of and the details desired. If the motion is granted and is not obeyed within 14 days after notice of the order, or within such other time as the court may set, the court may strike the pleading to which the motion was directed or enter an order it deems just.

    **(B)** Motion To Strike. On motion by a party or on the court's own initiative, the court may strike from a pleading redundant, immaterial, impertinent, scandalous, or indecent matter, or may strike all or part of a pleading not drawn in conformity with these rules.

In *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 666 NW2d 271 (2003) the trial court granted defendants' motion to strike several counts and combine others, plaintiff's argument that defendant used motion to strike to test pleadings' legal sufficiency was unwarranted because defendant sought to strike claims as redundant. Plaintiff's complaint in this manner is rambling disorganized and appears to be devoid of legal claim or merit. It is a jumbled and disjointed conspiracy theory. If Plaintiff were realistically intent on addressing his qualms, he should start with the video of the three-week trial that precipitated and was underlying any mental health issues that occurred subsequent to the conclusion of the trial.

    If I was incompetent or mentally ill to the extent that it would have impacted my performance during the grueling, contentious, and extremely emotion it would be objectively verifiable by the video of my performance at the trial. And while this attempt at forwarding a claim is obviously precluded by the Defendant's own allegations that he had a similar case dismissed previously in the 29th Circuit Court, I will allow Mr. Uraz the ability to provide a more definite statement in the interest of fairness and the comity of nations. I want to make sure that Mr. Uraz's brother and family have full access to

all the protections incorporated in the American Justice System. Turkey's justice system is more advanced and progressive than the US system regarding the death penalty, but I can only imagine the life he would lead in a Turkish prison if he was convicted on the same charges. By way of further argument, he would be banished and exiled by his family because of the negative implications his actions would have on them.

Whereas I vociferously disagree with Judge Buchanan's characterization of me as it relates to the allegations in this matter, I represent that I respect her both as a judge and a person and fully understand why she made her ruling. I knew the Judge when she was still an attorney and she was a hell of an attorney, one of the best in the area. I believe it is more of an attestation to the unreliable and since debunked theories and misinformation posited to Judge Buchanan in a frantic effort to avoid the appearance of impropriety by an inexperienced and self-interested young lawyer. I appreciate the unwitting nature of the representations that were made to the Court about me and while it initially was difficult to swallow because of the horrific stigma associated with mental illness, I have since moved past this and wish everyone associated with that case the best.

This was an egregious aggravated stalking case where the Defendant tracked his victim and even showed up randomly at a Dave and Busters in Novi and interrupted a date she was on. He stalked her through the internet, and he stalked her in a multitude of other ways that was presented against him at the trial. The people thought it would be a three-day trial, but the trial stretched out nearly three weeks because of my associates and my diligence, preparation, and commitment to providing Mr. Uraz the best defense. While I was lead chair, Mr. Fernandez and Mr. Schroeder spent countless hours and time to perfect every element of the presentation of the case and participated in questions some of the witnesses strategically.

I have been through the Michigan Attorney Grievance Commission ("AGC") based on this incident and all incidents alleged regarding my mental health and treatment. I have testified in a Ginther hearing and been cross-examined by his appellate attorney regarding any potential underlying pathology that would have limited my ability to appropriately and zealously represent his interests at trial. Mr. Uraz had a bipolar son that lived in Turkey who was possibly going to the state because of his mother's severe bipolar disorder, and we ran numerous hearings, some evidentiary in nature featuring his sister who had traveled from Turkey, to attempt to get Mr. Uraz back to Turkey pending the outcome of the case given the exigent circumstances. Defendant's requests were all denied, likely because of the gravity and egregious nature of Mr. Uraz as to stalking and videotaped attempt to hire a hit man to "take out the trash". It should be noted that Mr. Uraz was talked out of testifying on his own behalf because his testimony was mainly going to be that by take out the trash, he meant the undercover officer posing as a hitman would take his neighbors trash out because she was elderly and he had always done that for her.

I listed about 40 witnesses at Mr. Uraz's direction, most of which were stricken as irrelevant or frivolous. I also filed I believe 3 motions, and one was a motion to change venue because of the relatively limited media coverage but Mr. Uraz insisted so his argument was preserved for appeal. An allegation of a Brady violation was also forwarded because the prosecutor failed to timely turn over witness statements from other inmates that were housed with the Mr. Uraz and his jail snitches in administrative segregation. Mr. Uraz was placed in administrative segregation because he violated probation on an earlier stalking case by stalking the victim again and also stalked her from the jail.

Now, Mr. Uraz disparages my name and likely has the full support of his brother who at the time of trial was the Turkish Ambassador to Russia and since then has been named the Turkish Representative to the Organization of Islamic Nations ("OIC"), which is similar to the North Atlantic

Treaty Organization ("NATO") in the middle east. Mr. Uraz is solely attempting to create an issue because the appeals court didn't rule in his favor on the Brady violation. This trial, because of the effective nature of the defense, caused the jail to change their policy regarding inmates having police reports in their possession because case jumping was exposed in its most basic form.

## Conclusion

Defendant, Jacob A. Perrone, hereby requests that this court either dismiss the matter in its entirely sua sponte as that appears appropriate or Stike the salacious, redundant, and unnecessary complaint that does nothing more than expose civilians to potential harm personal and professionally based on unfounded and attenuated allegations that lack any substance or relevance to any claims or defenses Mr. Uraz could make in the solicitation case or here in his case in chief. After striking the complaint allow Mr. Uraz 14 days to provide a more definite statement so Defendant can appropriately answer to the claims. Allowing this case to stand is a usurpation of the rights of many and invalidate the strictures and foundations of the criminal justice system in America. Mr. Uraz's brother is not bigger than the constitution and he is not bigger than the rule of law. I anticipate that his brother will pull any support for him after he is made aware of all his misgivings and continued behaviors that may negatively impact his brother's standing in the Turkish government and/or social circles. That, also a threat.

Have the Turkish Embassy call me. They have my number. Just don't send that last arrogant pretentious prick who called before. He knows I won't talk to him anyways. Do your time Tunc. Pay your debt to society, get out, and quit imposing your personal problems on innocent and unwitting others. I will be your last stalkee, if it is the last thing I accomplish in a career full of accolades and achievement. Your move Tunc. Choose wisely. And learn appropriate sentence structure if you're going to keep filing lawsuits against me.

I believe they have a law library at Thumb. Which is 1 level above the most minimum security of prisons in Michigan. I got people in Level V looking at me Tunc. Walk away. I defended you vehemently because I assessed your character and found you to be somewhat pleasant at times and conversant. My assessment of you was that you were not violent or dangerous. Misunderstood, emotionally troubled, and frankly a large dose of self-entitled, yes. Frankly, you don't have it in you. Don't play around with people who do. If they sent me to prison, I'd be a level 5, and I would spend my time in administrative segregation because I don't play well with others trying to take advantage of me and when placed in a box, I get uneasy. If what you want is an international issue, it won't happen. You're not important enough. Keep going down this road and you may learn of my importance, and the Turkish government is the least of my concerns. They are all the way in Turkey.

And I could have answered with a simple motion to dismiss on legal grounds but in the interest of the justice that I so painstakingly uphold, I leave the progression of this case to the discretion of the Court.

Respectfully submitted,

**DRAGON LAWYERS PC ©**

Dated: September 26, 2025          /s/*Jacob A. Perrone*
                                    Jacob A. Perrone (P71915)
                                    Attorney for Defendant Jacob A. Perrone
                                    325 East Grand River Ave., suite 250
                                    East Lansing, MI 48823
                                    (517) 719-4657
                                    jacob.perrone@yahoo.com

### PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served on September 26, 2025, via Mi-File and US Mail herein at their respective addresses as disclosed on the pleadings and to Tunc Uraz, Inmate No. 114653, at Thumb Correctional Facility, 3225 John Conley Dr., Lapeer, MI 48446. I declare that the statements above are true to the best of my knowledge, information and belief.

/s/ *Jacob A. Perrone*

PCS CODE: PFH/PAS/APM
TCS CODE: IPFH/PFH/PAS/APM

Approved, SCAO

| STATE OF MICHIGAN PROBATE COURT COUNTY OF | PETITION FOR MENTAL HEALTH TREATMENT ☐ AMENDED | FILE NO. 17-29766-MI |
|---|---|---|

In the matter of _Jacob Alan Perrone_
First, middle, and last name

XXX-XX-8282
Last four digits of SSN

| Court ORI | Date of birth 2-22-92 | Place of birth _Lansing, MI_ | Race W | Sex M |
|---|---|---|---|---|

1. I, _Jake Cortez_ , an adult _Peace Officer_ , petition because
Name (type or print)                    specify whether a relative, neighbor, peace officer, etc.
I believe the individual named above needs treatment.

2. The individual was born _2-22-92_ , has a permanent residence in _Clinton_
                              Date
County at _8552 Shearwater_ , _East Lansing_ , _MI 48823_
          Street address           City            State            Zip
and can presently be found at _Sparrow Hospital_
                              Facility name or other address

☐ This petition is for a person who was found not guilty by reason of insanity in this county (NGRI).

3. I believe the individual has mental illness and
☑ a. as a result of that mental illness, the individual can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation.

☐ b. as a result of that mental illness, the individual is unable to attend to those basic physical needs that must be attended to in order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic physical needs.

☐ c. the individual's judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

4. The conclusions stated above are based on
a. my personal observation of the person doing the following acts and saying the following things:
_Jacob has been making statements non-stop that do not_
_relate to anything happening in this instance; "rambling on"_

b. the following conduct and statements that others have seen or heard and have told me about:
_Jacob told his father (Joseph) that he was going to make world_
_peace by murdering police officers today._

by: _Joseph Vito Perrone_
    Witness name                    Complete address

Telephone no. _5-7-290-1150_

(SEE SECOND PAGE)

Do not write below this line - For court use only

FILED

OCT 13 2020

CLINTON COUNTY PROBATE COURT

PCM 201          LTH TREATMENT          MCL 330.1100a(29), MCL 330.1401, MCL 330.1423, MCL 330.1427, MCL 330.1434, MCL 330.1438, MCL 330.2060, MCR 5.125(C)(18)

2017029766MI

*Jacob Perrone*

Petition for Mental Health Treatment   (12/19)                                    File No. *17-29766-MI*

5. The persons interested in these proceedings are:

| NAME | RELATIONSHIP | ADDRESS | TELEPHONE |
|---|---|---|---|
| *Ashley Perrone* | Spouse | *3555 Clearwater, E.L. MI 48823* | *517.814.7590* |
| | Guardian* | | |
| | | | |

*(Specify the county where the guardianship was established and the case number.) _____

6. The individual ☐ is ☒ is not   a veteran.

☐ 7. Attached is a ☐ clinical certificate by a physician or licensed psychologist taken within the last 72 hours.
☐ clinical certificate by a psychiatrist taken within the last 72 hours.
☐ no clinical certificate is attached because only assisted outpatient treatment is requested.

☐ 8. (For hospitalization and combined treatment only.) An examination could not be secured because: _____
_____

I request:
☐ a. the individual be examined at _____
the preadmission screening unit or hospital designated by the community mental health services program.
☐ b. a peace officer take the individual into protective custody and transport the individual to _____
_____

9. I request the court to determine the individual to be a person requiring treatment and to order:

☐ a. hospitalization only.
☒ b. a combination of hospitalization and assisted outpatient treatment.
☐ c. assisted outpatient treatment without hospitalization.

☒ 10. I request the individual be hospitalized pending a hearing.

I declare under the penalties of perjury that this petition has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

Signature of attorney _____   Date *10-11-20*

Name (type or print) _____   Bar no. _____   Signature of petitioner _____

Address _____   *409 Park Ln*

City, state, zip _____   Telephone no. _____   City, state, zip *East Lansing, MI 48823*

Home telephone no. *N/A*   Work telephone no. *517.319.6897*

| FOR HOSPITAL USE ONLY | This petition for mental health treatment was received by the hospital on Date _____ at Time _____ |
|---|---|
| | Signature of hospital representative _____ |

Approved, SCAO

PCS CODE: CCT
TCS CODE: CCT

| STATE OF MICHIGAN<br>PROBATE COURT<br>COUNTY OF | CLINICAL CERTIFICATE | FILE NO.<br>*17-29766-MI* |
|---|---|---|

In the matter of <u>Jacob Perrone</u>
First, middle, and last name

**TO THE EXAMINER: You must read the following statement to the individual before proceeding with any questions.**

I am authorized by law to examine you for the purpose of advising the court if you have a mental condition which needs treatment and whether such treatment should take place in a hospital or in some other place. I am also here to determine if you should be hospitalized or remain hospitalized before a court hearing is held. I may be required to tell the court what I observe and what you tell me.

1. I am a ☑ psychiatrist. ☐ licensed psychologist. ☐ physician.

2. I certify that on this date I read the above statement to the individual before asking any questions or conducting any examination.

3. I further certify that I, <u>James Eicher MD</u> , personally examined <u>Jacob Perrone</u>
Name (type or print)                                                                                   Patient

at <u>Pine Rest 300 68th St Grand Rapids, MI</u>
Name and address where examination took place

on <u>10/13/20</u> starting at <u>1030 AM</u> and continuing for <u>35</u> minutes.
Date                              Time

**INSTRUCTIONS:** Describe in detail the specific actions, statements, demeanor, and appearance of the individual, together with other information which underlie your conclusion. **Indicate the source of any information not personally known or observed.** If this certificate is to accompany a petition for discharge, state why the individual continues to be or is no longer a person requiring treatment or in need of hospitalization.

4. My determination is that the person is
   ☑ mentally ill (has a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life).
   ☐ not mentally ill.

☐ 5. (if applicable) The person has
   ☐ convulsive disorder.   ☐ alcoholism.   ☐ other drug dependence.
   ☐ mental processes weakened by reason of advanced years.
   ☐ other (specify): _____

6. My diagnosis is: <u>bipolar 1 disorder, manic, severe with psychotic features</u>

7. Facts serving as the basis for my determination are: <u>poor sleep and appetite, threatening to kill police, smashed out own car</u>
<u>window with baseball bat "to get my adderall", believes he is a "secret agent", denies need for treatment</u>

(SEE SECOND PAGE)

**FILED**

Do not write below this line - For court use only

OCT 1 3 2020

CLINTON COUNTY PROBATE COURT

**PCM 208** (12/19) **CLINICAL CERTIFICATE**

MCL 330.1435, MCL 330.1750

2017029766MI

Clinical Certificate   (12/19)                                            File No. _____

8. Explain in the space below the facts which lead you to believe that future conduct may result in (check applicable box)
  ☑ a. likelihood of injury to self.  Facts:
      delusions influencing judgment and behaviors, recently smashed own car window with baseball bat, poor ADLs

      Therefore, I believe that the examined person, as a result of mental illness, can reasonably be expected within the near
      future to intentionally or unintentionally seriously physically injure self.

  ☑ b. likelihood of injury to others.  Facts:
      threatening to kill police

      Therefore, I believe that the examined person, as a result of mental illness, can reasonably be expected within the near
      future to intentionally or unintentionally seriously physically injure others.

  ☑ c. inability to attend to basic physical needs.  Facts:
      poor sleep and appetite

      Therefore, I believe that the examined person, as a result of mental illness, is unable to attend to those basic physical
      needs (such as food, clothing or shelter) that must be attended to in order to avoid serious harm in the near future
      and has demonstrated that inability by failing to attend to those basic physical needs.

  ☑ d. inability to understand need for treatment.  Facts:
      denies need for treatment, refusing to consent for treatment

      Therefore, I believe that the examined person, as a result of mental illness, is so impaired by that mental illness and
      whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to
      voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent
      a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or
      mental harm to himself/herself or others.

9. I conclude the individual      ☑ is    ☐ is not    a person requiring treatment.

10. (optional)  I recommend    ☐ hospitalization only
                               ☑ a combination of hospitalization and assisted outpatient treatment
                               ☐ assisted outpatient treatment without hospitalization

  as follows: Pine Rest _____

  _____

I certify that I am a person authorized by law to certify as to the individual's mental condition. I am not related by blood or
marriage either to the person about whom this certificate is concerned or to any person who has filed, or whom I know to be
planning to file, a petition in this proceeding.  I declare under the penalties of perjury that this certificate has been examined by
me and that its contents are true to the best of my information, knowledge, and belief.

10/13/20                    1200 PM                    Signature
Date                        Time of signing            James Eicher MD 616-455-5000
                                                       Print or type name and business telephone no.

1Nov. 22. 2017¹ 8:01AM.THSOUF.___.MC                          (FAX    780 No. 7767    P. 9⁹.002/008

Approved, SCAO

PCS CODE: PFH/PAS
TCS CODE: IPFH/PFH/PAS

| STATE OF MICHIGAN PROBATE COURT COUNTY OF Clinton | PETITION FOR MENTAL HEALTH TREATMENT | FILE NO. 17-29766-mI |
|---|---|---|

| In the matter of Jacob Alen Perrone | | XXX-XX- |
|---|---|---|
| First, middle, and last name | | Last four digits of SSN |

| Court ORI | Date of Birth 2/22/82 | Place of Birth Lansing MI | Race C A | Sex M |
|---|---|---|---|---|

1. I, Joseph V. Perrone, an adult Father ___ petition because:
   Name (type or print)    specify whether a relative, neighbor, peace officer, etc.

   I believe the individual named above needs treatment.

2. The individual was born 2/22/82, has a permanent residence in East Lansing, MI
   Date

   County at 3565 Shearwater Lane    East Lansing    MI    48823
   Street address                    City             State  ZIP

   and can presently be found at 1500 E Medical Center Drive    Ann Arbor MI.
   Facility name or other address

   ☐ This petition is for a person who was found not guilty by reason of insanity in this county.    Case Filing Date 11.14.17   43/10.9
                                                                                                                      2242
                                                                                                                      JMD

3. I believe the individual has mental illness and

   ☑ a. as a result of that mental illness, the individual can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation.

   ☐ b. as a result of that mental illness, the individual is unable to attend to those basic physical needs that must be attended to in order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic physical needs.

   ☑ c. the individual's judgment is so impaired by that mental illness that s/he is unable to understand his/her need for treatment, and whose impaired judgment, on the basis of competent clinical opinion, presents a substantial risk of significant physical or mental harm to the individual or presents a substantial risk of physical harm to others in the near future.

   ☑ d. the individual's understanding of the need for treatment is impaired to the point that s/he is unlikely to voluntarily participate in or to adhere to treatment that has been determined necessary to prevent a relapse or harmful deterioration of his/her condition. The individual's noncompliance with treatment has been a factor in the individual's
      ☐ i. placement in   ☐ a psychiatric hospital   ☐ jail   ☐ prison    at least two times within the last 48 months.
      (Specify the name(s) and location(s) of the hospital, jail, or prison and the date(s) of hospitalization or incarceration.)
      8/17   Went to Sparrow Hospital with Severe Anxiety
      11/17   Went to Sparrow Hospital w chest pains left Against medical advice

      AND/OR

   ☑ ii. committing one or more acts, attempts, or threats of serious violent behavior within the last 48 months.
      (Specify the acts, attempts, or threats of serious violent behavior.)
      Punches holes in walls, is verbally abusive to his wife has said he will "Kill"
      +/or destroy everyone, will take over Lansing + rule w/ an iron fist
      -This happens weekly for the last 2 years of that
                                    (SEE SECOND PAGE)

   USE NOTE: If this form is being filed in the circuit court family division, please enter the court name and county in the upper left-hand corner of the form.

   Do not write below this line - For court use only    FILED

2017029766MI

PRH + Certs provided NOV 16 2017
as info only for CLINTON COUNTY PROBATE COURT

MCL 330.1100a(25), MCL 330.1401, MCL 330.1423, MCL 330.1427,
MCL 330.1434, MCL 330.1438, MCL 330.2050, MCR 5.125(C)(18)

filing Demand for Hearing.
11·22·17

L 1    PCM 201  (3/16)  PETITION   R ME   AL HEALTH TREATMENT

Nov. 22. 2017  8:02AM  THSOU.___  3MC                (FA   )790No. 7767    P. 10 003/008

Petition for Mental Health Treatment   (9/16)                                    File No. _____

4. The conclusions stated above are based on

a. my personal observation of the person doing the following acts and saying the following things:

He has many angry outbursts, disorganized thoughts, He thinks he is the
most intelligent person in the world, He will "destroy" or "kill" everyone
He has called himself "my suicidal son" Has many Anger Issues

b. the following conduct and statements that others have seen or heard and have told me about:

_____

_____

by: _____
   Witness name            Complete address                              Telephone no.

5. The persons interested in these proceedings are:

| NAME | RELATIONSHIP | ADDRESS | TELEPHONE |
|------|--------------|---------|-----------|
|      | Spouse       |         |           |
|      | Guardian*    |         |           |
|      |              |         |           |

*(Specify the county where the guardianship was established and the case number.) _____

6. The individual  ☐ is  ☒ is not a veteran.

☐ 7. Attached is a  ☒ clinical certificate by a physician or licensed psychologist taken within the last 72 hours.
                    ☐ clinical certificate by a psychiatrist taken within the last 72 hours.
                    ☐ petition/affidavit for examination (form PCM 209e) because an examination could not be secured.

8. I request the court to determine the individual to be a person requiring treatment and

☒ a. (Check if item 3a, 3b, or 3c is checked.) order appropriate mental health treatment.
☐ b. (Check if item 3d is checked.) order that the individual participate in assisted outpatient treatment without hospitalization.

☐ 9. I request the individual be hospitalized pending a hearing.

I declare under the penalties of perjury that this petition/application has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

Signature of attorney _____      Date  11/14/17

Name (type or print) _____  Bar no. ____   Signature of petitioner  Carol V. Lumen

Address _____                    Address  15880 Brook Rd

City, state, zip _____  Telephone no. ____  City, state, zip  Lansing, MI  48906

                                                    Home telephone no.  517-290-1150   Work telephone no.

┌─────────────────────────────────────────────────────────────────────────┐
│ FOR        This petition for mental health treatment was received by the   │
│ HOSPITAL   hospital on  1-14-17  at  2220                                   │
│ USE ONLY                  Date          Time                               │
│            Signature of hospital representative  _____          │
└─────────────────────────────────────────────────────────────────────────┘

11/27/2017

OC Fax Server          12/6/2017 9:41:00 AM   PAGE   1/003   Fax Server

Nov. 27. 2017 11:04AM                                    No. 7780   P. 5/20

Approved, SCAO                                    PCS CODE: OHA/OAO
                                                  TCS CODE: OFW/OAO

| STATE OF MICHIGAN PROBATE COURT COUNTY OF CLINTON | INITIAL ORDER AFTER HEARING ON PETITION FOR MENTAL HEALTH TREATMENT | FILE NO. 17-29766-MI  |
|---|---|---|

2017-30077-MI

In the matter of **JACOB ALAN PERRONE**
First, middle, and last name

| Court ORI | Date of birth | Place of birth | Race | Sex |
|---|---|---|---|---|
| MI190013J | 02/22/1912 | Lansing, Michigan | CA | M |

Current address of individual
3555 Shearwater Lane, East Lansing, MI 48823

1. Date of Hearing: **November 30, 2017**      Judge: **Linda S Hallmark      (P28066)**
                                               Acting by SCAO assignment                 Bar no.
2. A petition has been filed by **Carmella Mitchell / Joseph V. Perrone**          asserting that the individual named
   Petitioner name (type or print)

   above is a person requiring treatment.
   **THE COURT FINDS:** Per stipulation of the parties.
3. Notice of hearing has been given according to law.
4. The individual      ☒ was present in court.      ☐ was not present for reasons stated on the record,
   The hearing was      ☐ with      ☒ without a jury.

   Present were: **Lisa Zatyko      (P74810)**                                    , attorney for the individual, and
   **HEATHER LEWIS**                                                              , attorney for the petitioner.
☐ 5. Testimony of a physician, psychiatrist, or licensed psychologist was waived by the individual and the individual's attorney.
6. ☒ Testimony was given by **Dr. Leonard Swistak**
   ☐ Testimony was not given because the parties stipulated to entry of the order.
☐ 7. By clear and convincing evidence, the individual is a person requiring treatment because the individual has a mental illness,
   ☐ a. and as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally
        seriously physically injure self or others, and has engaged in an act or acts or made significant threats that are
        substantially supportive of this expectation.
   ☐ b. and as a result of that mental illness is unable to attend to those basic physical needs that must be attended to in
        order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic
        physical needs.
   ☐ c. whose judgment is so impaired by that mental illness that s/he is unable to understand his/her need for treatment, and
        whose impaired judgment, on the basis of competent clinical opinion, presents a substantial risk of significant physical
        or mental harm to the individual or presents a substantial risk of physical harm to others in the near future.
   ☐ d. and as a result of that mental illness, the individual's understanding of the need for treatment is impaired to the point
        that s/he is unlikely to voluntarily participate in or to adhere to recommended treatment that has been determined
        necessary to prevent a relapse or harmful deterioration of his/her condition, and the individual's noncompliance with
        treatment has been a factor in the individual's placement in a psychiatric hospital, jail, and/or prison at least two
        times within the last 48 months and/or in committing one or more acts, attempts, or threats of serious violent behavior
        within the last 48 months.
☒ 8. There      ☐ is      ☒ is not      an available treatment program that is an alternative to hospitalization or that follows an
     initial period of hospitalization adequate to meet the individual's treatment needs and is sufficient to prevent harm that the
     individual may inflict upon self or others within the near future.

☒ 9. **Havenwyck Hospital or other suitable**                                    hospital can provide treatment,
     which is adequate and appropriate to the individual's condition.
☐ 10. The individual is not a person requiring treatment.

                              **(SEE SECOND PAGE)**
                    Do not write below this line - For court use only

                                                              FILED

PCM 214   (9/16)   INITIAL ORDER AFTER HEARING ON PETITION FOR MENTAL HEALTH TREATMENT   MCL 330.1401, MCL 330.1464a, MCL 330.1465, MCL 330.1468, MCL 330.1469, MCL 330.1470, MCL 330.1472a(1)

                                                    DEC   6 2017



2017629766MI                                        CLINTON COUNTY PROBATE COURT

Nov. 27. 2017 11:04AM

No. 7780   P. 6/20

2017-380027-M1

Initial Order After Hearing on Petition for Mental Health Treatment  (9/16)          File No. 17-29766-MI

**IT IS ORDERED:**

11. Any hospitalization of the individual for mental health treatment shall occur in the hospital listed in item 9.

☐ 12. The individual be hospitalized for up to _____ days.
                                              1 to 60 days

☑ 13. The individual receive alternative treatment for no longer than 90 days, supervised by

   Community Support Services
   Community mental health services or other designated entity

   as follows: The respondent shall take medication as prescribed, attend counseling and therapy sessions as directed, and maintain

   residence as directed.

   ☑ The individual shall be hospitalized for up to 10 _____ days of the 90-day alternative treatment period.
                                                      1 to 60 days

      ☐ An initial hospitalization period shall be up to _____ days.
                                                         1 to 60 days

☐ 14. The individual receive assisted outpatient treatment for no longer than 180 days, supervised by

   Community Support Services
   Community mental health services or other designated entity

   a. The following assisted outpatient treatment services are ordered: (See MCL 330.1468(2)[c] for specific services.)

      The respondent shall take medication as prescribed, attend counseling and therapy sessions as directed, and maintain

      residence as directed.

   ☐ b. The individual shall be hospitalized for up to _____ days of the 180-day assisted outpatient treatment period.
                                                       1 to 60 days

      ☐ An initial hospitalization period shall be up to _____ days.
                                                         1 to 60 days

☐ 15. The petition is   ☐ denied on the merits.   ☐ dismissed.   ☐ withdrawn.

☑ 16. If the individual refuses to comply with a psychiatrist's order for hospitalization, a peace officer shall take the individual
      into protective custody and transport the individual to the hospital designated by the psychiatrist.

17. If item 12, 13, or 14b is checked, the Michigan State Police shall immediately enter the individual's identifying information
    in this court order on LEIN.

18. If felony charges have been previously dismissed under MCL 330.2044(1)(b) and the time for petitioning to refile charges
    has not elapsed, not less than 30 days before the scheduled release or discharge:

   a. the director of the treating facility shall notify the prosecutor's office in the county in which charges against the person
      were originally brought that the patient's release or discharge is pending.

   b. the patient to be released or discharged shall undergo a competency examination as described in MCL 330.2026. A copy
      of the written report of the examination along with the notice required in item 18a above shall be submitted to the
      prosecutor's office in the county in which the charges against the patient were originally brought. The written report is
      admissible as provided in MCL 330.2030(3).

November 30, 2017
Date

Judge  Linda S Hallmark      (P28066)
Acting by SCAO assignment

*16-1064-FH*
*16-1065-FC*


DEFENDANT'S
EXHIBIT

*A* ✓

Hi Mr. Perrone,
Can I call you now if you are available?                    *Jan 24, 2018*

**From:** Jacob A. Perrone [mailto:jacob@perronelawpc.com]
**Sent:** Wednesday, November 08, 2017 10:07 AM
**To:** Aysem Uraz <aysemu@yahoo.com>
**Cc:** Cenk Uraz <curaz@mfa.gov.tr>
**Subject:** Re: my brother will call u

You can call me now on my cell at (517) 719-4657. I have some very interesting
updates. Cenk. Please also feel free to call. I have clients in Malaysia,Singapore, and China
so I am used to the time change. I tried to explain to the Prosecutor that I work 120 hours a
week but his little mind couple understand the implications. He spent all day today with his
head down looking dejected.... in front of the jury... This doesn't leave us until Thursday
when justice is served. I am anticipating a Not Guilty Verdict on all the major charges. They
are bullshit. I think I may have hung the jury on the Aggravated Stalking case solely as a
result of the prosecutor's ineptitude. If I don't answer send me an email with a phone number
and I will attempt to call back. Thursday is judgment day. Either way I believe that I have
thoroughly established that Tunc's rights were severely violated and if am able toI secure a
Not Guilty Verdict as to the ("frankly complete bullshit") Solicitation Counts I will
immediately file a lawsuit against the Lansing Police Department and the Ingham County
Sheriff's Department and Prosecutor's office. The reason the prosecutor was so visibly
dejected in front of the jury today (I've never seen this before.... You represent your client and
you never lose face) was because I warned him that i was going to sue him in Federal
Court.... He didn't believe me... Now he knows.... IF YOU TALK TO TUNC HE CANNOT
TESTIFY... I THINK THE JIURY MAY COME BACK HUNG ON THE AGG STALKING
CHARGE AND ARE ALMOST GUARANTEED TO COME BACK NOT GUILTY ON
ALL THE SOLICITATION COUNTS. Tunc Got fucked. I will establish $10,000.000.00 in
damages after securing the not guilty verdict. Tunc isn't crazy. The Amercian Justice System
is.... Feel free to call. I will be working on a number of other projects as we get a day off
tomorrow... or today... Like I said, international business doesn't sleep.

On Wed, Nov 8, 2017 at 1:09 AM, Aysem Uraz <aysemu@yahoo.com> wrote:

Dear Mr. Perrone

Thank you for your kind reply.  We really wonder what's going on at Tunc's trial. My brother Cenk Uraz
will call you today.

By the way Turkish Embassy in Washington  made a press release on 6th November 2017. Please find
enclosed .For your info. By the way, you informed  Turkish Consulate in Chicago about Tunc's trial
probably they will be there on thursday

We are hoping to get good news about Tunc          FILED-30th CIRCUIT COURT

Kind regards
Aysem Uraz

BY: _____
Deputy Clerk

*INCL-1*

AYSEM URAZ&MR.JACOB PERRONE CORRESPONDECE VIA TEXT MESSAJE 13NOVEMBER2017-26NOVEMBER2017, 4-5-6 december2017







MICHIGAN DEPARTMENT OF CORRECTIONS
**CONTRABAND REMOVAL RECORD**

CSJ-284
12/01
4835-3284

| Date:<br>**10/20/2025** | Time:<br>**1824** | Staff Member's Name:<br>**Brant** | | Badge Number:<br>**1183800** |
|---|---|---|---|---|
| Prisoner Name:<br>**Uraz** | | Prisoner Number:<br>**114653** | Lock:<br>**fb103** | Facility:<br>**TCF** |

Location Contraband Found: **Multipurpose room building 100**

| ITEM | DESCRIPTION AND REASON FOR CONFISCATION (Describe Fully): |
|---|---|
| 1 | **8 pages of legal mail: suspected to be soaked in unknown substance** |
| 2 | **############################################################################################** |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| ☒ SECURED IN   OR   ☐ TURNED OVER TO: **MSP evidence locker 5** | Date: **10/20/2025** | Time: **1845** |
|---|---|---|
| FOR | | |
| ☐ HEARING   OR   ☒ INSPECTION | | |
| ☐ RETURNED TO PRISONER AFTER INSPECTION & WITHOUT ACTION TAKEN | Date: | Time: |
| Prisoner - Print Name:<br>**Uraz, 114653** | Signature: | |

DISTRIBUTION:   ☐ File Copy   ☐ Attached to NOI/Misconduct Report   ☐ Prisoner   ☐ With Contraband



DRAGON LAWYERS PC
325 EAST GRAND RIVER AVE SUITE 250
EAST LANSING, MI 48823



FB 03

----------AUTO™MIXED ADC 130          PL2 T12 P1 S1189
TUNC URAZ INMATE NO. 114653
THUMB CORRECTIONAL FACILITY
3225 JOHN CONLEY DR
LAPEER MI 48446-2987

ailed_____

ed 10/10/25

RECEIVED

OCT 1 0 2025

TCF MAILROOM

To: Office of the Clerk.
    U.S. Ct for the Eastern Dist of MI
    Theodore Levin U.S. ct House
    231 W. Lafayette Blvd · Rm 564
    Detroit, MI  48226

From: TUNC URAZ #114653
    Thumb Correctional Facility
    3225 John Conley Dr.
    Lapeer, MI  48446

Re: case # 25-10608 - 4:25-CV-10608

    Dear Clerk
    Once you receive the attached documents
petitioner Mr. URAZ's Traverse in Response to MI A.G's
    respondant's Answer in opposition. Brief.
    Would you please kindly send me a
    copy of updated register of action for the
    case number above. The proof that the documents
    received on a timely manner.

    I appreciate your help and understanding in this
matter.
    Happy Holidays

    Respectfully Submitted
    TUNC URAZ



TUNC URA2 1146653
Thumb correctional facility
3225 John Conley Dr.
Aper, MI 48446

Cox # 25-10608-4:25-cv-10608

RECEIVED
NOV 26 2025
CLERK'S OFFICE
U.S. DISTRICT COURT

U.S. MARSHALS

United St...
Theodore Lewin
231 W...
Detroit...

GND ADV

US POSTAGE
$ 010.45°