37

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUNC URAZ,

      Petitioner,

vs

FREDEANE ARTIS (WARDEN),

      Defendant,

_____/

LC No. 16-1064-FH
    16-1065-FC
MCOA No. 343695/96
MSC No. 165560/61
Hon. Shalina D. Kumar
Mag. David R. Grand
Case No. 4:25-cv-10608

F I L E D

DEC 22 2025

CLERK'S OFFICE
DETROIT

MOTION FOR EVIDENTIARY HEARING

Dated: December 14, 2025

_____
Tunc Uraz

Tunc Uraz #114653 In Pro Se
Thumb Correctioal Facility
3225 John Conley Dr.
Lapeer, Michigan 48446

POOR QUALITY ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUNC URAZ,
          Petitioner,

vs

FREDEANE ARTIS (WARDEN),
          Defendant,

LC No. 16-1064-FH
        16-1065-FC
MCOA No. 343695/96
MSC No. 165560/61
Hon. Shalina D. Kumar
Mag. David R. Grand
Case No. 4:25-cv-10608

_____/

MOTION FOR EVIDENTIARY HEARING

The Petitioner, Tunc Uraz, petitioner in pro per, moves for a Federal Evidentiary Hearing, and further states:

1.  Petitioner has filed a Petition for Writ of Habeas Corpus in this Honorable Court. The petition alleges important facts which have not yet been proven because the State courts deprived Petitioner of a meaningfull opportunity to do so. An Evidentiary Hearing is therefore necessary.

2.  Petitioner acknowledges that in **Cullen vs Pinholster,** 131 S.Ct. 1388 (2011), the Supreme Court held that "review under [28 USC 2254(d)(1)]is limited to the record that was before the state court that adjudicated the claim on it's merits". 131 S.Ct. at 1398.  Nevertheless, as Justice Breyer's concurring opinion in **Pinholster** makes clear, and several Federal Courts have since concluded, Federal Evidentiary Hearings remain appropriate in certain circumstances, including

1

(1) where the State Courts did not reslove a claim "on the merits" (ie., rejected the claim for purely procedural reasons), and (2) where the State Courts rejected Petitioner's efforts to develop a factual record, assuming allegations to be true, and unreasonably denied relief on the basis of those allegations alone (leaving the actual facts unresolved). **Id. at 1412** (Breyer, J., concurring in part and dissenting in part). In either scenario, the Federal evidentiary hearing should be conducted under a de novo standard of review, since the deferential standard found in Section 2254(d) either will not apply or will already have been satisfied.

3. Petitioner's case falls into this narrow exception because the State courts evidentiary hearing held pursuant to **People vs Ginther,** 390 Mich 436, 443 (1973), was (1) decided without the benefit of a necessary pschological expert, and (2) where the court refused to consider material evidence that was withheld from the hearing, to which Petitioner was able to obtain post hearing, and

4. Where Petitioner filed a timely motion for the purpose of expanding the record, the trial court refused to consider the supressed evidence, apply it to the claim or issue a rehearing.

5. Petitioner then filed a timely appeal in the Michigan Appeals Court, who also refused to consider the supressed evidence, commenting only how they were concerned with how Petitioner obtained the documents. see (COA opinion and order, pg 9, footnote #7) case No. 343695/96

6. Petitioner filed a timely Application for Leave to Appeal

in the Michigan Supreme Court, but was denied relief. case No. 165560/61

7. It is unclear as to whether the State courts rejected Petitioner's efforts to develop a factual record, or if the court denials were for purely procedural reasons. Either way, the supressed evidence had significant relevance to the need for an expert witness as well as to the overall outcome of the hearing. To which the trial court could not have rendered a fair or accurate decision based on the totallity of the facts and circumstances of the issue at hand.

8. The State court's adjudication was unreasonable and a hearing remains necessary.


For these reasons, Petitioner Tunc Uraz, asks that this Court conduct a de novo federal evidentiary hearing so that petitioner can prove that Respondent is holding him in violation of the United States Constitution.


Respectfully Submitted,

Tunc Uraz  12/1/25

Tunc Uraz # 114653
Thumb Corr. Fac.
3225 John Conley Dr.
Lapeer, Mich 48446

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUNC URAZ,
      Petitioner,

                                    LC No. 16-1064-FH
                                        16-1065-FC
                                    MCOA No. 343695/96
                                    MSC No. 165560/61
vs                                        Hon. Shalina D. Kumar
                                    Mag. David R. Grand
                                    Case No. 4:25-cv-10608

FREDEANE ARTIS (WARDEN),
        Defendant,

_____/

BRIEF IN SUPPORT OF MOTION FOR EVIDENTIARY HEARING

_____

Tunc Uraz #114653 in pro se
Thumb Correctional Fac.
3225 John Conley Dr.
Lapeer, Michigan 48446

BRIEF IN SUPPORT OF MOTION FOR EVIDENTIARY HEARING

Petitioner has filed a Petition for Writ of Habeas Corpus in this Court. The Petition alleges important facts which have not yet been proven because the State Courts deprived Petitioner of an opportunity to do so. An Evidentiary Hearing is therefore necessary.

Petitioner acknowledges that in **Cullen vs Pinholster,** 131 S.Ct. 1388 (2011), the Supreme Court held that "review under [28 USC] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." **131 S.Ct. at 1398.** Nevertheless, as Justice Breyer's concurring opinion in **Pinholster** makes clear, federal evidentiary hearings remain appropriate in certain circumstances, including (1) where the State Courts did resolve the claim "on the merits" (ie. rejected the claim for purely procedural reasons, and (2) where the state courts rejected petitioner's efforts to develop a factual record, assuming his allegations to be true, and unreasonably denied relief on the basis of those allegations alone (leaving the actual facts unresolved).**id. at 1412** (BBreyer J. concurring in part and dissenting in part). See also, **Morris vs Thaler,** 425 Fed Appx. 415 (5th Cir. 2011)(finding a hearing "necessary not to evaluate the state court's decision, but to determine whether [the] allegations are true" - "the precise scenario contemplated by

Justice Breyer ); **Smith vs Cain,** 708F.3d 628, 631 (5th Cir. 2013)("Pinholster...does not bar the federal evidentiary hearing...because the district court first concluded, solely on the basis of the state court record, that the state court s committed legal error, as required under 28 USC §2254(d)(1)").

In either scenario, the federal evidentiary hearing should be conducted under a de novo standard of review, since the deferential standard found in section 2254(d) either will not apply of will already have been satisfied. "Although a state court's decision that stems from an unreasonable application of federal law will usually meet §2254(a)'s requirement that petitioner's custody be in 'violation of the Constitution,' this court will engage in de novo review after a finding of unreasonableness to answer the §2254 (a) question as if the state court never reached the merits. At that point, a federal court can benefit from an evidentiary hearing under §2254(e)." **Quintana vs Chandler,**723 F.3d 849, 852(7th Cir. 2013)(citations omitted). see also **Newman vs Harrington,** 726 F.3d 921, 932 (7th Cir. 2013)

Although the Sixth Circuit stated in **Ballinger vs Prelesnik,** 709 F.3d 558, 561 (6th Cir. 2013), that" district courts are precluded from conducting evidentiary hearings to supplement existing state court records when state court has issued a decision on the merits with respect to the claim at issue" the court was referring to a different scenario, and was obviously not contemplating the scenarios described in Justice Breyer's concurring opinion in **Pinholster.** see **King vs Berguis,** 744

2

F.3d           961,          966-973          (6th      Cir. 2014)(Keith

J. dissenting)(identifying "[1]egitimate issues" of unresolved

fact, and explaining, "While I am satisfied that the record is

sufficient to make an assessment as to whether the state court

judge unreasonably applied [federal law], I am not satisfied

that it is sufficient to reach a conclusion with respect to the

merits of King's due process claim).

Petitioner's case falls into the narrow exception because

the state courts never allowed petitioner to develop the

factual record with respect to the evidence which was withheld

during the state courts evidentiary hearing pursuant to

**Ginther**, where the court based it's decision denying a new

trial, based on the testimony of 7 unqualified witnesses who

where all colleagues of the Attorney [Jacob Perrone].

Where the issue at hand was the effects of trial counsel's

mental illness during the pre-trial and trial phases of the

proceedings.

It was discovered post state court hearing, from documents

discovered through an F.O.I.A. inquiry that trial counsel's

Bipolar 1 disorder and complications thereof had been occurring

on a weekly basis for the better part of (2) two years prior to

and during the Petitioner's trial proceedings. These

complications included but where not limited to: Mr. Perrone

believing he was God, assaultive behaviors attacking both a

school bus driver as well as a Lansing Police vehicle that he

was hospitalized just prior to petitioner's proceedings, but

refused treatment. The documents further expose that Perrone

wanted to kill Lansing police officers, take over the city and rule it with an iron fist.

Petitioner contends that this mind set has continued to this day, when Perrone sent Petitioner a response to a civil suit that was soaked in an unknown substance (currently being tested by Michigan State Police) where the response posed direct threats to the Petitioner and his family, if he continued to pursue the matter. (see appendix A__ )

During the state court evidentiary hearing testimony from Perrones was that his mental illness (Bipolar 1 Disorder) was not discovered until late November of 2017, and did not effect his ability to represent his client, this in concert with his colleagues who testified that they did not notice any odd behaviors during the Uraz trial proceedings.

Also discovered post evidentiary hearing was email communication between Sentencing Counsel and the Prosecutors office affirming that they had knowledge of trial counsel's mental disorder history, and the need to actually remove Perrone from all cases in the Ingham County court system.

These discovered documents, prove that both Perrone and at least 3 of the witnesses knew they were not being truthful and misrepresented the totality of the circumstances.

The Trial Court based it's decison on this perjured testimony, and without the benefit of an expert in the field of psychology. (see TRIAL Court ORDER Aug. 8, 2022 pg(s) 7-10)(Appodix B)

Petitioner attempted to expand the record in the State Trial Court when he filed a correspondence with a Motion for a second

4

**Ginther Hearing,** to which the trial court refused to hear, referring Petitioner to his appellate lawyer. (see Appendix B)

The Federal Courts have stated that a trial judge abuses his discretion if, in making their evidentiary ruling, they relied upon clearly erroneous findings of fact, improperly applied law, or erroneous legal standards. see **Dickson vs Cardiac & Thoratic Surgery of E. Tenn PC.,** 388 F.3d 979 (2004) also see **U.S. vs Stokes,** 388 F.3d 21 (2004).

Also in **Daubert vs Merrill Dow Pharmaceuticals inc.,** 509 US 579, 125 L.Ed 2d 469; 113 S.Ct. 2786 (1993) and in **Kumho Tire vs Carmichael,** 526 US 137 (1999), states that a trial judge has the gate keeping obligation which also applies not only to scientific knowledge, but also to testimony based on technical and "other" specialized knowledge. **Sec. Fed. R. Evid. 702.**

In this matter, when the trial court based it's decision denying relief, it did so on erroneous facts, questionable testimony, suppressed evidence and without the benefit of an expert in the field of psychology.

In this instance it was impossible to conclude that Petitioner was not entitled to relief.

The Michigan Court of Appeals, touched upon the issue in their order and opinion, only concerned with "how did Petitioner obtain these records", but refused to address the issue on it's merits. (see Pg. 9, footnote #7, COA opinion), quoting: "In his pro se supplemental brief filed after remand, defendant purportedly cites to the mental health records of trial counsel. There is no indication that those records were

admitted at the **Ginther Hearing.** It was unclear how defendant obtained the records and whether it was in compliance with the laws protecting the privacy of individual health information, we limit our evaluation of the mental health issue to the testimony elicited at the hearing." (see appendix C)

In turn, Petitioner filed his appeal in the Michigan Supreme Court who denied relief.

For these reasons, Petitioner Tunc Uraz, in pro se, asks this Honorable Court to conduct a de novo Federal Evidentiary Hearing so that Petitioner can prove that Respondent is holding him in violation of the United States Constitution.

Respectfully        Submitted,

Dated: December 14, 2025

Tunc Uraz #114653 in pro se
Thumb    Correctional    Fac.
3225 John Conley Dr
Lapeer,    Michigan    48446

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUNC URAZ,
       Petitioner,

vs

FREDEANE ARTIS (WARDEN),
     Defendant,

_____/

LC No. 16-1064-FH
       16-1065-FC
MCOA No. 343695/96
MSC No. 165560/61
Hon. Shalina D. Kumar
Mag. David R. Grand
Case No. 4:25-cv-10608

CERTIFICATE OF SERVICE

    I, Tunc Uraz, in Pro Se,does hereby declare that I did serve upon the Respondent, (1) copy of his Motion for a Federal Evidentiary Hearing, with a Brief in Support, by placing said documents in the hands of a duly sworn staff member of the Michigan Department of Corrections, to be sent via Prisoner Legal Mail Service, Fist Class U.S. Postage. On December 9 2025

To: Dana Nessel
    Attorney General for the State of Michigan
    C/O: Nicholas Johnson Asst. Att. Gen.
    P.O. Box 30217
    Lansing Michigan 48909

VERIFICATION

    I, Tunc Uraz, Petitioner in Pro Se, states that all information contained in this pleading is true to the best of by information and knowledge, under penalty of perjury.

Respectfully Submitted,

Dated: December 1st 2025

Tunc Uraz, #114653 in Pro Se
Thumb Correctional Fac.
3225 John Conley Dr.
Lapeer, Michigan 48446

A P P E N D I X   A

JACOB PERRONE'S RESPONSE TO CIVIL COMPLAINT

FILED IN 54A DISTRICT COURT; 9/26/2025 2:47 PM

**STATE OF MICHIGAN**
**IN THE 54A JUDICIAL DISTRICT COURT FOR THE COUNTY OF INGHAM**
*Civil Division*

TUNÇ URAZ, Inmate No. 114653,

                Plaintiff,

v.

**JACOB ALAN PERRONE**

                Defendant.

CASE NO. 2025-05377-GC
HONORABLE: STACIA BUCHANAN

_____/

**DRAGON LAWYERS PC ©**
*Jacob A. Perrone (P71915)*
Attorneys for Defendant Jacob A. Perrone
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
Phone: (517) 618-0657
jacob.perrone@yahoo.com

_____/

## DEFENDANT JACOB A. PERRONE'S MOTION TO STRIKE AND MOTION FOR MORE DEFINITE STATEMENT AND BRIEF IN SUPPORT

_____/

    ***NOW COMES*** Defendant, ***Jacob A. Perrone***, (hereinafter "*Defendant*") by and through

his attorneys, **DRAGON LAWYERS PC ©**, and *Jacob Alan Perrone, Esq.*, and for his Motion

to Strike and Motion for More Definite Statement states as follows:

    Defendant, ***JACOB A. PERRONE***, respectfully moves the Court to Dismiss the case and/or

strike the Plaintiff's complaint in its entirety and require the Plaintiff to provide a more definite

statement for Defendant to Answer. Defendant also requests $500.00 in attorney fees for having to

answer this frivolous case and that sanctions be imposed against Mr. Uraz in a monetary amount

1

exceeding $2,000.00 to reiterate to Mr. Uraz he is not entitled to infringe upon innocent people and the court's time with his personal vendettas and fractured reasoning.

## BRIEF IN SUPPORT

### Factual Background

Mr. Uraz was charged in 2017 with Aggravated Stalking and Solicitation to Commit Murder based upon a sting operation done by the Lansing Police Department ("LPD") where they used an undercover officer to act as a hired hitman. Mr. Uraz solicited for the victim to be killed by the purported hit man in a very distinct and easily understandable manner. Although, Mr. Uraz was advised by both my self and his prior retained Mr. Nichols to take a deal he allowed the idiots in jail to overtake his common sense and endeavored to "clear his name", likely so he could stalk and revictimize the victim in the solicitation case. I was contacted repeatedly by representatives of the Turkish Embassy throughout the trial, and they were very upset that I was not sharing status updates with them regarding the case and providing them with an objective viewpoint as to the merits of the case and likely outcomes. As Mr. Uraz's appointed counsel, I made the judgment call that it would not be in the best interest of Mr. Uraz to disclose evidence and work product regarding the case because not only would it potentially sacrifice merited arguments, but it likely would have led to the Turkish government turning its back on Mr. Uraz.

I want to be extremely clear on the record that regardless of his brother's standing in Turkey I welcome further attacks on my character and professionalism and he is free to stalk me if he so chooses. But I must warn Mr. Uraz that he is wading in water over his or his brother's head and my last stalker left me alone after 4 months because he had had enough and came to terms with the likelihood of retribution if he continued. Mr. Uraz is not my first stalker, but he may be my last. And yeah, that is a threat.

2

## Legal Authority and Analysis

*Rule 2.115. Motion to Correct or to Strike Pleadings.*

> **(A)** Motion for More Definite Statement. If a pleading is so vague or ambiguous that it fails to comply with the requirements of these rules, the opposite party may move for a more definite statement before filing a responsive pleading. The motion must point out the defects complained of and the details desired. If the motion is granted and is not obeyed within 14 days after notice of the order, or within such other time as the court may set, the court may strike the pleading to which the motion was directed or enter an order it deems just.

> **(B)** Motion To Strike. On motion by a party or on the court's own initiative, the court may strike from a pleading redundant, immaterial, impertinent, scandalous, or indecent matter, or may strike all or part of a pleading not drawn in conformity with these rules.

In *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 666 NW2d 271 (2003) the trial court granted defendants' motion to strike several counts and combine others, plaintiff's argument that defendant used motion to strike to test pleadings' legal sufficiency was unwarranted because defendant sought to strike claims as redundant. Plaintiff's complaint in this manner is rambling disorganized and appears to be devoid of legal claim or merit.  It is a jumbled and disjointed conspiracy theory.  If Plaintiff were realistically intent on addressing his qualms, he should start with the video of the three-week trial that precipitated and was underlying any mental health issues that occurred subsequent to the conclusion of the trial.

If I was incompetent or mentally ill to the extent that it would have impacted my performance during the grueling, contentious, and extremely emotion it would be objectively verifiable by the video of my performance at the trial. And while this attempt at forwarding a claim is obviously precluded by the Defendant's own allegations that he had a similar case dismissed previously in the 29th Circuit Court, I will allow Mr. Uraz the ability to provide a more definite statement in the interest of fairness and the comity of nations. I want to make sure that Mr. Uraz's brother and family have full access to

all the protections incorporated in the American Justice System. Turkey's justice system is more advanced and progressive than the US system regarding the death penalty, but I can only imagine the life he would lead in a Turkish prison if he was convicted on the same charges. By way of further argument, he would be banished and exiled by his family because of the negative implications his actions would have on them.

Whereas I vociferously disagree with Judge Buchanan's characterization of me as it relates to the allegations in this matter, I represent that I respect her both as a judge and a person and fully understand why she made her ruling. I knew the Judge when she was still an attorney and she was a hell of an attorney, one of the best in the area. I believe it is more of an attestation to the unreliable and since debunked theories and misinformation posited to Judge Buchanan in a frantic effort to avoid the appearance of impropriety by an inexperienced and self-interested young lawyer. I appreciate the unwitting nature of the representations that were made to the Court about me and while it initially was difficult to swallow because of the horrific stigma associated with mental illness, I have since moved past this and wish everyone associated with that case the best.

This was an egregious aggravated stalking case where the Defendant tracked his victim and even showed up randomly at a Dave and Busters in Novi and interrupted a date she was on. He stalked her through the internet, and he stalked her in a multitude of other ways that was presented against him at the trial. The people thought it would be a three-day trial, but the trial stretched out nearly three weeks because of my associates and my diligence, preparation, and commitment to providing Mr. Uraz the best defense. While I was lead chair, Mr. Fernandez and Mr. Schroeder spent countless hours and time to perfect every element of the presentation of the case and participated in questions some of the witnesses strategically.

I have been through the Michigan Attorney Grievance Commission ("AGC") based on this incident and all incidents alleged regarding my mental health and treatment. I have testified in a Ginther hearing and been cross-examined by his appellate attorney regarding any potential underlying pathology that would have limited my ability to appropriately and zealously represent his interests at trial. Mr. Uraz had a bipolar son that lived in Turkey who was possibly going to the state because of his mother's severe bipolar disorder, and we ran numerous hearings, some evidentiary in nature featuring his sister who had traveled from Turkey, to attempt to get Mr. Uraz back to Turkey pending the outcome of the case given the exigent circumstances. Defendant's requests were all denied, likely because of the gravity and egregious nature of Mr. Uraz as to stalking and videotaped attempt to hire a hit man to "take out the trash". It should be noted that Mr. Uraz was talked out of testifying on his own behalf because his testimony was mainly going to be that by take out the trash, he meant the undercover officer posing as a hitman would take his neighbors trash out because she was elderly and he had always done that for her.

I listed about 40 witnesses at Mr. Uraz's direction, most of which were stricken as irrelevant or frivolous. I also filed I believe 3 motions, and one was a motion to change venue because of the relatively limited media coverage but Mr. Uraz insisted so his argument was preserved for appeal. An allegation of a Brady violation was also forwarded because the prosecutor failed to timely turn over witness statements from other inmates that were housed with the Mr. Uraz and his jail snitches in administrative segregation. Mr. Uraz was placed in administrative segregation because he violated probation on an earlier stalking case by stalking the victim again and also stalked her from the jail.

Now, Mr. Uraz disparages my name and likely has the full support of his brother who at the time of trial was the Turkish Ambassador to Russia and since then has been named the Turkish Representative to the Organization of Islamic Nations ("OIC"), which is similar to the North Atlantic

Treaty Organization ("NATO") in the middle east. Mr. Uraz is solely attempting to create an issue

because the appeals court didn't rule in his favor on the Brady violation. This trial, because of the

effective nature of the defense, caused the jail to change their policy regarding inmates having police

reports in their possession because case jumping was exposed in its most basic form.

## Conclusion

Defendant, Jacob A. Perrone, hereby requests that this court either dismiss the matter in its

entirely sua sponte as that appears appropriate or Stike the salacious, redundant, and unnecessary

complaint that does nothing more than expose civilians to potential harm personal and professionally

based on unfounded and attenuated allegations that lack any substance or relevance to any claims or

defenses Mr. Uraz could make in the solicitation case or here in his case in chief. After striking the

complaint allow Mr. Uraz 14 days to provide a more definite statement so Defendant can appropriately

answer to the claims. Allowing this case to stand is a usurpation of the rights of many and invalidate

the strictures and foundations of the criminal justice system in America. Mr. Uraz's brother is not

bigger than the constitution and he is not bigger than the rule of law. I anticipate that his brother will

pull any support for him after he is made aware of all his misgivings and continued behaviors that may

negatively impact his brother's standing in the Turkish government and/or social circles. That, also a

threat.

Have the Turkish Embassy call me. They have my number. Just don't send that last arrogant

pretentious prick who called before. He knows I won't talk to him anyways. Do your time Tunc. Pay

your debt to society, get out, and quit imposing your personal problems on innocent and unwitting

others. I will be your last stalkee, if it is the last thing I accomplish in a career full of accolades and

achievement. Your move Tunc. Choose wisely. And learn appropriate sentence structure if you're

going to keep filing lawsuits against me.

6

I believe they have a law library at Thumb. Which is 1 level above the most minimum security of prisons in Michigan. I got people in Level V looking at me Tunc. Walk away. I defended you vehemently because I assessed your character and found you to be somewhat pleasant at times and conversant. My assessment of you was that you were not violent or dangerous. Misunderstood, emotionally troubled, and frankly a large dose of self-entitled, yes. Frankly, you don't have it in you. Don't play around with people who do. If they sent me to prison, I'd be a level 5, and I would spend my time in administrative segregation because I don't play well with others trying to take advantage of me and when placed in a box, I get uneasy. If what you want is an international issue, it won't happen. You're not important enough. Keep going down this road and you may learn of my importance, and the Turkish government is the least of my concerns. They are all the way in Turkey.

And I could have answered with a simple motion to dismiss on legal grounds but in the interest of the justice that I so painstakingly uphold, I leave the progression of this case to the discretion of the Court.

Respectfully submitted,

## DRAGON LAWYERS PC ©

Dated: September 26, 2025

/s/ *Jacob A. Perrone*
Jacob A. Perrone (P71915)
Attorney for Defendant Jacob A. Perrone
325 East Grand River Ave., suite 250
East Lansing, MI 48823
(517) 719-4657
jacob.perrone@yahoo.com

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served on September 26, 2025, via Mi-File and US Mail herein at their respective addresses as disclosed on the pleadings and to Tunc Uraz, Inmate No. 114653, at Thumb Correctional Facility, 3225 John Conley Dr., Lapeer, MI 48446. I declare that the statements above are true to the best of my knowledge, information and belief.

/s/ *Jacob A. Perrone*

7

MICHIGAN DEPARTMENT OF CORRECTIONS
**CONTRABAND REMOVAL RECORD**

CSJ-284
12/01
4835-3284

| Date: **10/20/2025** | Time: **1824** | Staff Member's Name: **Brant** | | Badge Number: **1183800** |
|---|---|---|---|---|
| Prisoner Name: **Uraz** | | Prisoner Number: **114653** | Lock: **fb103** | Facility: **TCF** |

Location Contraband Found: **Multipurpose room building 100**

| ITEM | DESCRIPTION AND REASON FOR CONFISCATION (Describe Fully): |
|---|---|
| 1 | **8 pages of legal mail: suspected to be soaked in unknown substance** |
| 2 | ######################################################################### |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| ☒ SECURED IN  OR  ☐ TURNED OVER TO: **MSP evidence locker 5** | Date: **10/20/2025** | Time: **1845** |
|---|---|---|

FOR

☐ HEARING  OR  ☒ INSPECTION

| ☐ RETURNED TO PRISONER AFTER INSPECTION & WITHOUT ACTION TAKEN | Date: | Time: |
|---|---|---|

| Prisoner - Print Name: **Uraz, 114653** | Signature: |
|---|---|

DISTRIBUTION:  ☐ File Copy   ☐ Attached to NOI/Misconduct Report   ☐ Prisoner   ☐ With Contraband

MICHIGAN DEPARTMENT OF CORRECTIONS
**CONTRABAND REMOVAL RECORD**

CSJ-284
12/01
4835-3284

| Date:<br>**12/02/2025** | Time:<br>**1746** | Staff Member's Name:<br>**Brent** | Badge Number:<br>**1130772** |
|---|---|---|---|

| Prisoner Name:<br>**Uraz** | Prisoner Number:<br>**114653** | Lock:<br>**FB-103** | Facility:<br>**TCF** |
|---|---|---|---|

Location Contraband Found: **In the issuance of legal mail from the Mailroom**

| ITEM | DESCRIPTION AND REASON FOR CONFISCATION (Describe Fully): |
|---|---|
| 1 | **4 pages of paper: paper suspected to be soaked in an unknown controlled substance.** |
| 2 | **############################################################################################** |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| ☒ SECURED IN OR ☐ TURNED OVER TO: **MSP Evidence Locker #13** | Date: **12/02/2025** | Time: **1810** |
|---|---|---|

FOR
☐ HEARING    OR   ☒ INSPECTION

| ☐ RETURNED TO PRISONER AFTER INSPECTION & WITHOUT ACTION TAKEN | Date: | Time: |
|---|---|---|

Prisoner - Print Name:
**Uraz**

Signature:

DISTRIBUTION:    ☐ File Copy    ☐ Attached to NOI/Misconduct Report    ☐ Prisoner    ☐ With Contraband



DRAGON LAWYERS PC
325 EAST GRAND RIVER AVE SUITE 250
EAST LANSING, MI 48823



FB 03

************AUTO**MIXED ADC 130          PL2 T12  P1 S1189
TUNC URAZ INMATE NO. 114653
THUMB CORRECTIONAL FACILITY
3225 JOHN CONLEY DR
LAPEER MI 48446-2987

ailed_____

ed 10/10/25

RECEIVED

OCT 1 0 2025

TCF MAILROOM

Presorted
First Class Mail
U.S. Postage
PAID
Permit 634
San Francisco, CA

FB 103 

RECEIVED

DEC 0 2 2025

TCF MAILROOM

DRAGON LAWYERS PC
325 EAST GRAND RIVER AVE SUITE 250
EAST LANSING MI 48823

2098 1 AB 0.641
TUNC URAZ
Inmate No Inmate No 114653
3225 John Conley Dr Legal Mail Legal Mail
Lapeer, MI 48446-2987

0000138881
P2 T10 R2098

A P P E N D I X   B

MOTION FOR RE-HEARING PURSUANT TO GINTHER, AND
TRIAL COURT'S RESPONSE

# *Ingham County*
# *30th Judicial Circuit Court*

P.O. Box 40771
Lansing, MI 48901-7971
Telephone: 517 • 483 • 6500

**JOYCE DRAGANCHUK**
Chief Circuit Judge

**SHAUNA DUNNINGS**
Chief Circuit Judge *Pro Tempore* and
Chief Probate Judge

**LISA McCORMICK**
Presiding Judge Family Division



**GEORGE M. STRANDER**
Circuit Court Administrator

**JANICE M. DOOLEY**
Deputy Court Administrator /
General Trial Division

**SCOTT LEROY**
Deputy Court Administrator /
Juvenile Division

**HELEN WALKER**
Deputy Court Administrator /
Friend of the Court

August 4, 2022

Tunc Uraz #114653
c/o Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442-6298

RE:   People of the State of Michigan v Tunc Uraz
      Case No.: 16-1064-FH   and   16-1065-FC

Dear Mr. Hooper:

I am in receipt of your correspondence which was received by my office on July 28, 2022.

Please take note that the information you have provided should be shared with your attorney. I am returning your documentation at this time. Please consult with your attorney for further legal advice.

Sincerely,

Clinton Canady III

Clinton Canady III

CC/vr

Enclosures

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/21/2022 12:38:12

JUL 28 2022
JUDGE CANADY
CIRCUIT COURT

Please do not reply to this email

STATE OF MICHIGAN
INGHAM COUNTY 30th. JUDICIAL COURT, LANSING MICHIGAN.

TO :

HONORABLE JUDGE CANADY III
30th. CIRCUIT COURT
313 W. KALAMAZOO STREET
LANSING, MI 48933

FROM:
TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

CASE  #16-1064 FH - 16-1065 FC

Re: Mr. Perrone's "SECOND" MENTAL IMPAIRMENT  EPISODE IN THE MONTH OF NOVEMBER 2017. THIS INFORMATION WAS NOT DISCLOSED BY MS. CRINO INGHAM COUNTY PROSECUTOR TO DEFENDANT'S APPEAL ATTORNEY AND TO DEFENDANT FOR HIS GINTHER HEARING AND APPEAL PROCESS.

DEAR HONORABLE JUDGE  Canady III,

Based on

**"NEWLY DISCOVERED EVIDENCE"**

Mr.  PERRONE WAS SENT TO A MENTAL HOSPITAL "SECOND" TIME PER  MCL 330.1401 STARTED  PRT PROCEEDINGS   (person requiring treatment) and per Probate
Court orders. IN CLINTON COUNTY PROBATE COURT  AND LANSING POLICE DEPARTMENT REPORT DATED 11/20/2017

In Prosecution's files which MR. URAZ received very recently End of June 2022 (it was requested end of April 2022).

Mr. Uraz found out  Perrone's PRT (person requiring treatment) per MCL 330.1401 mental treatment request per courts CLINTON county probate court (for his "SECOND" time episode of mental breakdown and hospital stay) with in the same month of NOVEMBER 2017)

THESE HIDDEN/NOT SHARED/NOT DISCLOSED  DOCUMENTS CONSISTED OF :

1) Lansing Police Department   report about Mr. Perrone's SECOND  mental breakdown on 11/20/2017 case# 175190653

2) "initial order after hearing on petition for mental treatment" Clinton county probate court filed on 12/06/2017  (need all 20 pages faxed to courts) defendant only have pages #5 and #6.

3) "petition for mental health treatment" form filled by police officer see item #4 observation of the person doing the following acts saying the following things:

" as I drove past Perrone, he yelled "fuck you Quincy" . Perrone said he is # 1 Defense attorney in the world, Perrone states he would kill a bunch of people"

BECAUSE UNTIL NOW THERE WAS ONLY ONE MENTAL IMPAIRMENT INCIDENT WITH MR. PERRONE AND WHOLE GINTHER HEARING WAS GIVEN BASED ON THAT INCIDENT (SEE ATTACHED HOSPITAL ADMISSION PAPERS DATED 11/14/2017)

and if you look at the dates he had second episode of mental breakdown and sent to mental hospital on 11/20/2017, right after he was released from his first mental hospital which he stayed on 11-14-2017- not sure when he was released assuming 5 days later. (see attached first mental hospital record)

THIS SECOND PERRONE INCIDENT ON 11/20/2017 WAS NOT SHARED WITH YOU ON 12/12/2017 JUDGE'S CHAMBERS MEETING AND ON 12/13/2017 HEARING WITH THE DEFENDANT ABOUT MR. PERRONE'S MENTAL IMPAIRMENT AT BOTH TIMES.

A PROSECUTOR'S ROLE AND RESPONSIBILITY IS TO SEEK JUSTICE AND NOT MERELY CONVICT. PEOPLE V DOBEK, 274 MICH APP 58, 63, 732 NW2d 546 (2007).

THE PROSECUTOR MAY REQUEST A RIGID ADHERENCE TO PROCEDURAL RULES THAN TAKING A STAND AGAINST THE MOST APPALLING ASSAULT UPON THE INTEGRITY AND REPUTATION OF ANY COURT-PERJURY.

PERJURY SHOWS A DEEP DISRESPECT TO THE COURT AND COMPLETE LACK OF CONCERN FOR THE OUTCOME TO THE DEFENDANT. THE LEGISLATURE TAKES FALSE STATEMENTS COMMITTED IN COURTS VERY SERIOUSLY.

PERJURY IN A CAPITAL CASE IS PUNISHABLE BY LIFE IN PRISON.

THE FAIR ASCERTAINMENT OF TRUTH;

WHAT IS EVEN MOST BOTHERSOME IN THIS CASE, IS THAT PROSECUTION WAS MADE AWARE OF MENTALLY INCAPACITATED ATTORNEY JACOB PERRONE BY 12/02/2017 PER MR. ROTH'S TESTIMONY ON 04/13/2017 GINTHER HEARING.

THIS "SECOND" MENTAL IMPAIRMENT OF MR. PERRONE WAS NOT BROUGHT UP AT THE JUDGE'S CHAMBERS MEETING ON 12/12/2017 AND ON 12/13/2017 TO DEFENDANT AS WELL.

PLEASE LOOK AT THE DATE ON THE LETTER (12/18/2017) SENT TO MY SENTENCING ATTORNEY DUANE SILVERTHORN BY PROSECUTOR THEN CHAS KOOP. 6 DAYS AFTER THE HEARINGS.

 Defendant was deprived of his right to conflict-free counsel during a critical stage in the proceedings when his counsel (PERRONE) was placed in the UNTENABLE POSITION OF defending his own interests which were adverse to his client's.

see case precedent:

DOWNS V. COMMONWEALTH
2020 KY. LEXIS 222 (2020)
SUPREME COURT OF KENTUCKY
JULY, 9, 2020 RENDERED

THERE WERE NO ONE (A CONFLICT- FREE ATTORNEY) TO REPRESENT DEFENDANT'S INTEREST AT THE 12/12/2017 MEETING AT JUDGES CHAMBERS AND 12/13/2017 HEARING.

THESE CRUCIAL DOCUMENTS WAS KEPT HIDDEN BY PROSECUTION NOT TO REVEAL MR. PERRONE'S SECOND MENTAL BREAKDOWN AND HOSPITAL STAY.

DEFENDANT AND HIS APPEAL ATTORNEY COULD HAVE USED THIS INFORMATION DURING MR. URAZ'S GINTHER HEARING TO QUESTION HIM ABOUT SECOND INCIDENT AND AT HIS APPEAL PROCESS.

THIS COURT HAVE THE POWER TO AVOID THE GRAVE INJUSTICE OF AN INNOCENT MAN BEING IN PRISON, WHILE HIS U.S. BORN SON IS SUFFERING FROM MAJOR DEPRESSION IN A ORPHANAGE IN TURKEY.


RESPECTFULLY SUBMITTED


TUNC URAZ

ATTACHMENTS :

1) MR. PERRONE'S "FIRST" MENTAL HOSPITAL ADMISSION PAPERS DATED 11/14/2017

 2) Lansing Police Department  Incident report about Mr. Perrone's "SECOND" mental breakdown on 11/20/2017 case# 175190653

3) "petition for mental health treatment"  form filled by police officer on 11/20/2017 about Mr. PERRONE'S mental impairment and comments that day.

4) "initial order after hearing on petition for mental treatment" Clinton county probate court filed on 12/06/2017  (need all 20 pages faxed to courts) defendant only have pages #5 and #6.

5) Letter to MR. SILVERTHORN dated 12/18/2017 written by Mr. KOOP about Mr. PERRONE'S SECOND MENTAL IMPAIRMENT.

A P P E N D I X   C

MICHIGAN COURT OF APPEALS OPINION AND ORDER
SEE PAGE #9, FOOTNOTE #7

police conduct. This case is in accordance with *Johnson*, and no error requiring reversal is apparent.[6]

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel was ineffective in several respects. We disagree.

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error and its conclusions of law de novo. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). To obtain relief on the basis of ineffective assistance of counsel, a defendant "must show that counsel's performance fell short of [an] . . . objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the . . . trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citation omitted). A defendant must overcome a strong presumption that counsel's actions were based on sound trial strategy. *Id.* at 388.

## A. COUNSEL'S ILLNESS

On remand, the court conducted an evidentiary hearing to address trial counsel's mental health to determine whether it deprived defendant of the effective assistance of counsel. Trial counsel testified that he was not sleeping well during and after the trial. He took a trip after defendant's trial was complete, but was required to return home early to address a family matter. After his return, trial counsel was hospitalized and treated for a mental health issue.[7] The prosecutors and second chair defense counsel did not notice or report that trial counsel suffered from a mental health issue during the trial. One of the prosecuting attorneys attended law school with trial counsel and had known him for many years. He did not observe any issues that arose during the trial. Although the jail inmates solicited to commit murder had theft-related convictions, trial counsel did not elicit this information, but focused on their motivation to lie. One

---

[6] Given the clear evidence that no entrapment occurred, defendant's argument about whether a defendant can claim entrapment and also assert innocence in a pretrial proceeding need not be reached.

[7] In his pro se supplemental brief filed after remand, defendant purportedly cites to the mental health records of trial counsel. There is no indication that those records were admitted at the *Ginther* hearing. It is unclear how defendant obtained the records and whether it was in compliance with the laws protecting the privacy of individual health information. We limit our evaluation of the mental health issue to the testimony elicited at the hearing. As a general rule, "[a]ppeals to the Court of Appeals are heard on the original record," MCR 7.210(A), and the parties may not expand the record on appeal, *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013).

of the prosecutors opined that deficient performance by trial counsel did not occur in failing to elicit this impeachment evidence. He cited to the limited attention span of the jury and the lack of import of a "shoplifting" conviction, the knowledge that the jail inmates were incarcerated at the time of the solicitation, and the inmate's motivation to benefit from being cooperative with the authorities.

Although defendant testified that he had exposure to individuals with mental illness and opined that trial counsel suffered from the effects before and during trial, the trial court found that this testimony was self-serving. It noted that defendant never objected to trial counsel's performance and was willing to have trial counsel continue his representation after the disclosure of the mental health issue.

Defendant alleges that trial counsel was ineffective for failing to seek a continuance when he began to suffer from mental health issues during the trial as evidenced by his failure to effectively cross-examine witnesses, especially those convicted of theft-related offenses.[8] The trial court, however, did not find that a mental health issue arose during the trial, and we cannot conclude that this finding was clearly erroneous. *Miller*, 326 Mich App at 726. Further, the trial court did not find that trial counsel's questioning of witnesses was ineffective. Rather, it concluded that, in light of the nearly 30 witnesses that trial counsel interviewed, it was a matter of trial strategy to focus on the motivation of the jail inmates to lie to obtain favorable treatment. And, the record reveals that defendant was provided a different attorney when the illness manifested after trial and before sentencing and that defendant acquiesced to this substitution. Defendant points to an e-mail that trial counsel sent to defendant's sister, contending that it demonstrates that trial counsel was acting erratically. Although this e-mail was overly positive and exaggerated the potential success of the criminal trial and possible civil claims, it simply does not reflect that trial counsel was somehow incapacitated during material portions of his representation of defendant or that his

---

[8] Defendant contends that trial counsel was ineffective for failing to cross-examine Allen and Close with certain prior convictions, producing Internet Criminal History Access Tool (ICHAT) information purportedly reflecting a 2011 misdemeanor larceny conviction property valued over $200, but less than $1,000, MCL 750.356(4)(a), for Allen and a 2003 felony conviction for third-degree home invasion, MCL 750.110a(4), for Close. The attached ICHAT records reflect that they were obtained after defendant's conviction, but before his sentencing and they were not part of the lower court record.

Assuming arguendo that we could take judicial notice of such convictions, MRE 201, decisions whether and how to cross-examine witnesses are matters of trial strategy. *People v Petri*, 279 Mich 407, 413; 760 NW2d 882 (2008); *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Even so, counsel's failure to develop defenses by adequately impeaching witnesses may establish ineffective assistance. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

As to Allen, this Court has held that a misdemeanor larceny conviction does not contain an element of dishonesty and is not admissible for impeachment under MRE 609(a)(1). See *People v Parcha*, 227 Mich App 236, 245; 575 NW2d 316 (1997). As to Close, the record does not reflect that that third-degree home invasion necessarily contained an element of theft, as required by MRE 609(a)(2), or an element of dishonesty or false statement, as required under MRE 609(a)(1).

representation of defendant fell below an objective standard of reasonableness. *Ackley*, 497 Mich at 389.

In further support of his claim of ineffective assistance at trial, defendant relies on cross-examination when trial counsel allegedly took a long pause between questions. This contention is premised on a comment by the prosecutor that three minutes was occurring between the questioning. But trial counsel testified that he took time between questions to confer with defendant. Furthermore, the defense counsel acting as second-chair testified that the lapse of time argued by the prosecutor was an exaggeration. The trial court also did not find that trial counsel rambled in his closing argument. Thus, the evidence does not reflect that trial counsel's representation of defendant fell below an objective standard of reasonableness. *Id.* The court remarked that counsel acted in an acceptable manner in defending such a serious case. Defendant has established no basis for a reversal in connection with trial counsel's illness.

## B. DEFENDANT'S MENTAL STATE

In defendant's pro se brief, defendant contends that trial counsel was aware of defendant's poor mental state and should have further investigated, presented evidence of, and consulted an expert after counsel recognized defendant's diminished state of mind at the time of the offense undermined the specific intent necessary to prove the solicitation to commit murder charges. Additionally, defendant asserts that counsel should have requested a continuance to have defendant undergo the necessary psychiatric evaluation. Despite the limited nature of defendant's statement of the question presented, see MCR 7.212(C)(5), defendant also cites MCL 768.20a, which governs the raising of an insanity defense, and argues counsel failed to request that he be sent to the forensic center for evaluation. And defendant further contends that he lacked an appreciation of the wrongfulness of his acts, and, if counsel had presented expert testimony, presumably in support of an insanity defense, there was a reasonable probability of a different outcome at trial.

Defendant did not move for a *Ginther* hearing in connection with this issue, and his earlier motion to remand for such a hearing did not include this issue. Instead, defendant simply argues that his convictions should be reversed and a new trial should be granted.[9] When a *Ginther* hearing has not been requested to address a particular issue, review is limited to the record, and "[i]f the appellate record does not support defendant's assertions, he has waived the issue." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

Defense counsel, however, has a duty to prepare, investigate, and present all substantial defenses. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "[F]ailure to conduct a complete investigation" can constitute ineffective assistance of counsel if that failure creates a "reasonable probability that the result of [the] trial would have been different had the evidence in question been presented." *People v Grant*, 470 Mich 477, 498; 684 NW2d 686 (2004).

---

[9] To support his claims, defendant attaches several documents. Only trial counsel's October 17, 2017 motion to dismiss for entrapment, is in the lower court record, and we cannot consider defendant's additional documents defendant now provides. *Nix*, 301 Mich App at 203.

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TUNC URAZ,

      Defendant-Appellant.

UNPUBLISHED
January 19, 2023

Nos. 343695; 343696
Ingham Circuit Court
LC Nos. 16-001064-FH;
      16-001065-FC

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of aggravated stalking, MCL 750.411i(2), and three counts of solicitation to commit murder, MCL 750.157b(2). The trial court sentenced defendant to 36 to 90 months' imprisonment for the stalking conviction and to three terms of 200 to 360 months' imprisonment for the solicitation to commit murder convictions. The court also imposed various fees and costs. We affirm defendant's convictions and sentences, but vacate the $60 fee for deoxyribonucleic acid (DNA) testing and also vacate a $100 fine.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant and the victim, EM, were in a romantic relationship for approximately 2½ years. Defendant was displeased when EM terminated their relationship. He began harassing her and eventually pleaded guilty—in a separate case from those involved in this appeal—to aggravated stalking. Defendant's prior harassing behavior consisted of many acts, such as invading EM's home, confronting her unexpectedly at an out-of-town restaurant, and damaging her car. The prosecution presented evidence that, while housed in the Ingham County Jail, defendant solicited two fellow inmates and an undercover police officer to murder EM. Accordingly, defendant was charged with three counts of solicitation to murder. He was also charged with aggravated stalking for certain telephone and computer activities that took place in late August of 2016, after the earlier acts encompassed by the prior stalking conviction. Defendant was convicted as charged.

After the trial was completed but before sentencing, defendant's trial counsel suffered from a mental health episode and was hospitalized. He received a diagnosis and treatment. The trial court appointed new counsel to represent defendant at sentencing. In the brief on appeal, defendant

12/16/25

Dear Clerk:

On 12/1/25 I mailed motion
attached to U.S. Dist ct Boston
Dist (see attached proof of mailing)

I have not received a confirmation
letter nor updated register
of actions from courts.

Would you please kindly
check and confirm if the
attached motion received by
courts and send me an updated
register of actions for the
case 25-10608 Hon S. Kumar
and Magistrate D. Grand.
ARTIS V. URAZ.

Happy holidays

Thank you very much

Respectfully submitted

Tinc Ure

**MICHIGAN DEPARTMENT OF CORRECTIONS**

**CSJ-318**

**DISBURSEMENT AUTHORIZATION (EXPEDITED LEGAL MAIL – PRISONER)**

REV. 11/15 4835-3318

**Please PRINT clearly, illegible and/or incomplete forms will not be processed.**

Lock _F5105_  Institution _TCF_

Prisoner Number _116653_

Prisoner Name _URZ_
Type or Print Clearly

☑ Legal Postage  ☐ Filing Fee  $ _____  ☐ Certified Mail (Must Be a Court Ordered Requirement)

☐ New Case  ☒ Case Number _25-CV-10608_

Pay To _Million_

Mailing Address _US District EASTERN District_
_231 W Lafayette 5th floor_
_Detroit, MI 48226 2797_

**The Following Section Must Be Completed In Authorizing Staff Member's Presence**

Prisoner Signature _Tim Urz_  Date & Time Submitted _12/11/25 8:30am_

Received by
Type or Print Name & Title _Jenkins IC_  Staff Signature _____

Date & Time Received by Authorizing Staff _12/11 0830_

**Authorization Denied**

☐ Does not meet definition of legal mail or court filing fee as identified in OP 05.03.118

☐ Not hand delivered to authorizing staff member  ☐ New case or case number not on form

☐ Does not include court order for handling as certified mail  ☐ Other (explain)

☐ Prisoner refused to sign & date in staff member's presence

Denied by
Type or Print Name & Title _____  Signature _____

Placed in Mail by
Type or Print Name & Title _____  Signature _____

Postage Amount  $ _____  Date Placed in Outgoing Mail _____

Postage  $ _____  Total Obligation  $ _____  ☐ Court Filing Fee Denied Due to NSF

Filing Fee  $ _____  Check # _____

Date Copy Sent to Prisoner _____

Processed by
Type or Print Name & Title _____  Signature _____

DISTRIBUTION: ☐ Prisoner Accounting  ☐ Prisoner  ☐ Counselor's File  ☐ Prisoner

Clerk of t...
United States
Eastern District
231 W. Lafaye...
Detroit, MI 48...

U.S. MARSHALS

RECEIVED
DEC 22 2025
CLERK'S OFFICE
U.S. DISTRICT COURT

JUNC UQ42 114653
U.S. Dist. Ct. Eastern
Case # 4:25-CV-10608

Thumb Correctional Facility
3225 John Conley Dr.
Lapeer, MI 48446