35

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUNC URAZ,
      Petitioner,

vs

FREDEANE ARTIS (WARDEN),
      Defendant,

_____/

LC No. 16-1064-FH
     16-1065-FC
MCOA No. 343695/96
MSC No. 165560/61
Hon. Shalina D. Kumar
Mag. David R. Grand
Case No. 4:25-cv-10608

FILED
CLERK'S OFFICE

JAN 0 9 2026

U.S DISTRICT COURT
EASTERN MICHIGAN

MOTION FOR EVIDENTIARY HEARING

Dated: December **1st**, 2025

Tunc Uraz

Tunc Uraz #114653 In Pro Se
Thumb Correctioal Facility
3225 John Conley Dr.
Lapeer, Michigan 48446

POOR QUALITY ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUNC URAZ,
                Petitioner,                     LC No. 16-1064-FH
                                                     16-1065-FC
                                                MCOA No. 343695/96
                                                MSC No. 165560/61
vs                                              Hon. Shalina D. Kumar
                                                Mag. David R. Grand
                                                Case No. 4:25-cv-10608

FREDEANE ARTIS (WARDEN),
                Defendant,

_____/


MOTION FOR EVIDENTIARY HEARING

    The Petitioner, Tunc Uraz, petitioner in pro per, moves for
a Federal Evidentiary Hearing, and further states:

    1.   Petitioner has filed a Petition for Writ of Habeas
Corpus in this Honorable Court. The petition alleges important
facts which have not yet been proven because the State courts
deprived Petitioner of a meaningfull opportunity to do so. An
Evidentiary Hearing is therefore necessary.

    2.   Petitioner acknowledges that in **Cullen vs Pinholster,**
131 S.Ct. 1388 (2011), the Supreme Court held that "review
under [28 USC 2254(d)(1)]is limited to the record that was
before the state court that adjudicated the claim on it's
merits". 131 S.Ct. at 1398. Nevertheless, as Justice Breyer's
concurring opinion in **Pinholster** makes clear, and several
Federal Courts have since concluded, Federal Evidentiary
Hearings remain appropriate in certain circumstances, including

1

(1) where the State Courts did not reslove a claim "on the merits" (ie., rejected the claim for purely procedural reasons), and (2) where the State Courts rejected Petitioner's efforts to develop a factual record, assuming allegations to be true, and unreasonably denied relief on the basis of those allegations alone (leaving the actual facts unresolved). **Id. at 1412** (Breyer, J., concurring in part and dissenting in part). In either scenario, the Federal evidentiary hearing should be conducted under a de novo standard of review, since the deferential standard found in Section 2254(d) either will not apply or will already have been satisfied.

3.  Petitioner's case falls into this narrow exception because the State courts evidentiary hearing held pursuant to **People vs Ginther,** 390 Mich 436, 443 (1973), was (1) decided without the benefit of a necessary pschological expert, and (2) where the court refused to consider material evidence that was withheld from the hearing, to which Petitioner was able to obtain post hearing, and

4.  Where Petitioner filed a timely motion for the purpose of expanding the record, the trial court refused to consider the supressed evidence, apply it to the claim or issue a rehearing.

5.  Petitioner then filed a timely appeal in the Michigan Appeals Court, who also refused to consider the supressed evidence, commenting only how they were concerned with how Petitioner obtained the documents. see (COA opinion and order, pg 9, footnote #7) case No. 343695/96

6.  Petitioner filed a timely Application for Leave to Appeal

in the Michigan Supreme Court,  but was denied relief. case No. 165560/61

7.  It is unclear as to whether the State courts rejected Petitioner's efforts to develop a factual record, or if the court denials were for purely procedural reasons.  Either way, the supressed evidence had significant relevance to the need for an expert witness as well as to the overall outcome of the hearing.  To which the trial court could not have rendered a fair or accurate  decision based on the totallity of the facts and circumstances of the issue at hand.

8.  The State court's adjudication was  unreasonable and a hearing remains necessary.


    For these reasons, Petitioner Tunc Uraz, asks that  this Court conduct a de novo federal evidentiary hearing so that petitioner can prove that Respondent is holding him in violation of the United States Constitution.




                              Respectfully Submitted,

                              _Tunc Urz_  12/1/25

                              Tunc Uraz # 114653
                              Thumb Corr. Fac.
                              3225 John Conley Dr.
                              Lapeer, Mich 48446




                              3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TUNC URAZ,
      Petitioner,

vs

FREDEANE ARTIS (WARDEN),
     Defendant,

_____/

LC No. 16-1064-FH
       16-1065-FC
MCOA No. 343695/96
MSC No. 165560/61
Hon. Shalina D. Kumar
Mag. David R. Grand
Case No. 4:25-cv-10608


BRIEF IN SUPPORT OF MOTION FOR EVIDENTIARY HEARING


_Tunc Uraz_

Tunc Uraz #114653 in pro se
Thumb Correctional Fac.
3225 John Conley Dr.
Lapeer, Michigan 48446

BRIEF IN SUPPORT OF MOTION FOR EVIDENTIARY HEARING

Petitioner has filed a Petition for Writ of Habeas Corpus in this Court. The Petition alleges important facts which have not yet been proven because the State Courts deprived Petitioner of an opportunity to do so. An Evidentiary Hearing is therefore necessary.

Petitioner acknowledges that in **Cullen vs Pinholster,** 131 S.Ct. 1388 (2011), the Supreme Court held that "review under [28 USC] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." **131 S.Ct. at 1398.** Nevertheless, as Justice Breyer's concurring opinion in **Pinholster** makes clear, federal evidentiary hearings remain appropriate in certain circumstances, including (1) where the State Courts did resolve the claim "on the merits" (ie. rejected the claim for purely procedural reasons, and (2) where the state courts rejected petitioner's efforts to develop a factual record, assuming his allegations to be true, and unreasonably denied relief on the basis of those allegations alone (leaving the actual facts unresolved).**id. at 1412** (BBreyer J. concurring in part and dissenting in part). See also, **Morris vs Thaler,** 425 Fed Appx. 415 (5th Cir. 2011)(finding a hearing "necessary not to evaluate the state court's decision, but to determine whether [the] allegations are true" - "the precise scenario contemplated by

1

Justice Breyer ); **Smith vs Cain,** 708F.3d 628, 631 (5th Cir. 2013)("Pinholster...does not bar the federal evidentiary hearing...because the district court first concluded, solely on the basis of the state court record, that the state court s committed legal error, as required under 28 USC §2254(d)(1)").

In either scenario, the federal evidentiary hearing should be conducted under a de novo standard of review, since the deferential standard found in section 2254(d) either will not apply of will already have been satisfied. "Although a state court's decision that stems from an unreasonable application of federal law will usually meet §2254(a)'s requirement that petitioner's custody be in 'violation of the Constitution,' this court will engage in de novo review after a finding of unreasonableness to answer the §2254 (a) question as if the state court never reached the merits. At that point, a federal court can benefit from an evidentiary hearing under §2254(e)." **Quintana vs Chandler,**723 F.3d 849, 852(7th Cir. 2013)(citations omitted). see also **Newman vs Harrington,** 726 F.3d 921, 932 (7th Cir. 2013)

Although the Sixth Circuit stated in **Ballinger vs Prelesnik,** 709 F.3d 558, 561 (6th Cir. 2013), that" district courts are precluded from conducting evidentiary hearings to supplement existing state court records when state court has issued a decision on the merits with respect to the claim at issue" the court was referring to a different scenario, and was obviously not contemplating the scenarios described in Justice Breyer's concurring opinion in **Pinholster.** see **King vs Berguis,** 744

2

F.3d    961,    966-973    (6th    Cir. 2014)(Keith
J. dissenting)(identifying "[l]egitimate issues" of unresolved
fact, and explaining, "While I am satisfied that the record is
sufficient to make an assessment as to whether the state court
judge unreasonably applied [federal law], I am not satisfied
that it is sufficient to reach a conclusion with respect to the
merits of King's due process claim).

Petitioner's case falls into the narrow exception because
the state courts never allowed petitioner to develop the
factual record with respect to the evidence which was withheld
during the state courts evidentiary hearing pursuant to
**Ginther**, where the court based it's decision denying a new
trial, based on the testimony of 7 unqualified witnesses who
where all colleagues of the Attorney [Jacob Perrone].

Where the issue at hand was the effects of trial counsel's
mental illness during the pre-trial and trial phases of the
proceedings.

It was discovered post state court hearing, from documents
discovered through an F.O.I.A. inquiry that trial counsel's
Bipolar 1 disorder and complications thereof had been occurring
on a weekly basis for the better part of (2) two years prior to
and during the Petitioner's trial proceedings. These
complications included but where not limited to: Mr. Perrone
believing he was God, assaultive behaviors attacking both a
school bus driver as well as a Lansing Police vehicle that he
was hospitalized just prior to petitioner's proceedings, but
refused treatment. The documents further expose that Perrone

3

wanted to kill Lansing police officers, take over the city and rule it with an iron fist.

Petitioner contends that this mind set has continued to this day, when Perrone sent Petitioner a response to a civil suit that was soaked in an unknown substance (currently being tested by Michigan State Police) where the response posed direct threats to the Petitioner and his family, if he continued to pursue the matter. (see appendix A__)

During the state court evidentiary hearing testimony from Perrones was that his mental illness (Bipolar 1 Disorder) was not discovered until late November of 2017, and did not effect his ability to represent his client,  this in concert with his colleagues who testified that they did not notice any odd behaviors during the Uraz trial proceedings.

Also discovered post evidentiary hearing was email communication between Sentencing Counsel and the Prosecutors office affirming that they had knowledge of trial counsel's mental disorder history, and the need to actually remove Perrone from all cases in the Ingham County court system.

These discovered documents, prove that both Perrone and at least 3 of the witnesses knew they were not being truthful and misrepresented the totality of the circumstances.

The Trial Court based it's decison on this perjured testimony, and without the benefit of an expert in the field of psychology. (see TRIAL COURT ORDER Aug. 8, 2022 pg(s) 7-10)( Appendix B)

Petitioner attempted to expand the record in the State Trial Court when he filed a correspondence with a Motion for a second

**Ginther Hearing,** to which the trial court refused to hear, referring Petitioner to his appellate lawyer. (see Appendix B)

The Federal Courts have stated that a trial judge abuses his discretion if, in making their evidentiary ruling, they relied upon clearly erroneous findings of fact, improperly applied law, or erroneous legal standards. see **Dickson vs Cardiac & Thoratic Surgery of E. Tenn PC.,** 388 F.3d 979 (2004) also see **U.S. vs Stokes,** 388 F.3d 21 (2004).

Also in **Daubert vs Merrill Dow Pharmaceuticals inc.,** 509 US 579, 125 L.Ed 2d 469; 113 S.Ct. 2786 (1993) and in **Kumho Tire vs Carmichael,** 526 US 137 (1999), states that a trial judge has the gate keeping obligation which also applies not only to scientific knowledge, but also to testimony based on technical and "other" specialized knowledge.**Sec. Fed. R. Evid. 702.**

In this matter, when the trial court based it's decision denying relief, it did so on erroneous facts, questionable testimony, suppressed evidence and without the benefit of an expert in the field of psychology.

In this instance it was impossible to conclude that Petitioner was not entitled to relief.

The Michigan Court of Appeals, touched upon the issue in their order and opinion, only concerned with "how did Petitioner obtain these records", but refused to address the issue on it's merits. (see Pg. 9, footnote #7, COA opinion), quoting: "In his pro se supplemental brief filed after remand, defendant purportedly cites to the mental health records of trial counsel. There is no indication that those records were

5

admitted at the **Ginther Hearing.** It was unclear how defendant obtained the records and whether it was in compliance with the laws protecting the privacy of individual health information, we limit our evaluation of the mental health issue to the testimony elicited at the hearing." (see appendix C)

In turn, Petitioner filed his appeal in the Michigan Supreme Court who denied relief.

For these reasons, Petitioner Tunc Uraz, in pro se, asks this Honorable Court to conduct a de novo Federal Evidentiary Hearing so that Petitioner can prove that Respondent is holding him in violation of the United States Constitution.

Respectfully        Submitted,

Dated: December *1st*, 2025          _Tunc Uraz_

Tunc Uraz #114653 in pro se
Thumb Correctional Fac.
3225 John Conley Dr
Lapeer, Michigan 48446

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUNC URAZ,
      Petitioner,

vs

FREDEANE ARTIS (WARDEN),
     Defendant,

_____/

LC No. 16-1064-FH
     16-1065-FC
MCOA No. 343695/96
MSC No. 165560/61
Hon. Shalina D. Kumar
Mag. David R. Grand
Case No. 4:25-cv-10608

CERTIFICATE OF SERVICE

    I, Tunc Uraz, in Pro Se,does hereby declare that I did serve
upon the Respondent, (1) copy of his Motion for a Federal
Evidentiary Hearing, with a Brief in Support, by placing said
documents in the hands of a duly sworn staff member of the
Michigan Department of Corrections, to be sent via Prisoner
Legal Mail Service, Fist Class U.S. Postage. On December 1st 2025

To: Dana Nessel
    Attorney General for the State of Michigan
    C/O: Nicholas Johnson Asst. Att. Gen.
    P.O. Box 30217
    Lansing Michigan 48909

VERIFICATION

    I, Tunc Uraz, Petitioner in Pro Se, states that all
information contained in this pleading is true to the best of
by information and knowledge, under penalty of perjury.

Respectfully Submitted,

_Tunc Ur_

Dated: December 1st 2025

Tunc Uraz, #114653 in Pro Se
Thumb Correctional Fac.
3225 John Conley Dr.
Lapeer, Michigan 48446

# A P P E N D I X   A

## JACOB PERRONE'S RESPONSE TO CIVIL COMPLAINT



**STATE OF MICHIGAN**
**IN THE 54A JUDICIAL DISTRICT COURT FOR THE COUNTY OF INGHAM**
*Civil Division*

TUNC URAZ, Inmate No. 114653,

                 Plaintiff,

v.

**JACOB ALAN PERRONE**

                 Defendant.

CASE NO. 2025-05377-GC
**HONORABLE: STACIA BUCHANAN**

_____/

**DRAGON LAWYERS PC ©**
*Jacob A. Perrone (P71915)*
Attorneys for Defendant Jacob A. Perrone
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
Phone: (616) 717-5657
jacob.perrone@yahoo.com

_____/

## DEFENDANT JACOB A. PERRONE'S MOTION TO STRIKE AND MOTION FOR MORE DEFINITE STATEMENT AND BRIEF IN SUPPORT

_____/

    ***NOW COMES*** Defendant, ***Jacob A. Perrone***, (hereinafter *"Defendant"*) by and through

his attorneys, **DRAGON LAWYERS PC ©**, and *Jacob Alan Perrone, Esq.*, and for his Motion

to Strike and Motion for More Definite Statement states as follows:

    Defendant, ***JACOB A. PERRONE***, respectfully moves the Court to Dismiss the case and/or

strike the Plaintiff's complaint in its entirety and require the Plaintiff to provide a more definite

statement for Defendant to Answer. Defendant also requests $500.00 in attorney fees for having to

answer this frivolous case and that sanctions be imposed against Mr. Uraz in a monetary amount

FILED IN 54A DISTRICT COURT: 9/26/2025 2:47 PM

1

exceeding $2,000.00 to reiterate to Mr. Uraz he is not entitled to infringe upon innocent people and the court's time with his personal vendettas and fractured reasoning.

## BRIEF IN SUPPORT

### Factual Background

Mr. Uraz was charged in 2017 with Aggravated Stalking and Solicitation to Commit Murder based upon a sting operation done by the Lansing Police Department ("LPD") where they used an undercover officer to act as a hired hitman. Mr. Uraz solicited for the victim to be killed by the purported hit man in a very distinct and easily understandable manner. Although, Mr. Uraz was advised by both my self and his prior retained Mr. Nichols to take a deal he allowed the idiots in jail to overtake his common sense and endeavored to "clear his name", likely so he could stalk and revictimize the victim in the solicitation case. I was contacted repeatedly by representatives of the Turkish Embassy throughout the trial, and they were very upset that I was not sharing status updates with them regarding the case and providing them with an objective viewpoint as to the merits of the case and likely outcomes. As Mr. Uraz's appointed counsel, I made the judgment call that it would not be in the best interest of Mr. Uraz to disclose evidence and work product regarding the case because not only would it potentially sacrifice merited arguments, but it likely would have led to the Turkish government turning its back on Mr. Uraz.

I want to be extremely clear on the record that regardless of his brother's standing in Turkey I welcome further attacks on my character and professionalism and he is free to stalk me if he so chooses. But I must warn Mr. Uraz that he is wading in water over his or his brother's head and my last stalker left me alone after 4 months because he had had enough and came to terms with the likelihood of retribution if he continued. Mr. Uraz is not my first stalker, but he may be my last. And yeah, that is a threat.

## Legal Authority and Analysis

*Rule 2.115. Motion to Correct or to Strike Pleadings.*

**(A)** Motion for More Definite Statement. If a pleading is so vague or ambiguous that it fails to comply with the requirements of these rules, the opposite party may move for a more definite statement before filing a responsive pleading. The motion must point out the defects complained of and the details desired. If the motion is granted and is not obeyed within 14 days after notice of the order, or within such other time as the court may set, the court may strike the pleading to which the motion was directed or enter an order it deems just.

**(B)** Motion To Strike. On motion by a party or on the court's own initiative, the court may strike from a pleading redundant, immaterial, impertinent, scandalous, or indecent matter, or may strike all or part of a pleading not drawn in conformity with these rules.

In *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 666 NW2d 271 (2003) the trial court granted defendants' motion to strike several counts and combine others, plaintiff's argument that defendant used motion to strike to test pleadings' legal sufficiency was unwarranted because defendant sought to strike claims as redundant. Plaintiff's complaint in this manner is rambling disorganized and appears to be devoid of legal claim or merit.  It is a jumbled and disjointed conspiracy theory.  If Plaintiff were realistically intent on addressing his qualms, he should start with the video of the three-week trial that precipitated and was underlying any mental health issues that occurred subsequent to the conclusion of the trial.

If I was incompetent or mentally ill to the extent that it would have impacted my performance during the grueling, contentious, and extremely emotion it would be objectively verifiable by the video of my performance at the trial. And while this attempt at forwarding a claim is obviously precluded by the Defendant's own allegations that he had a similar case dismissed previously in the 29th Circuit Court, I will allow Mr. Uraz the ability to provide a more definite statement in the interest of fairness and the comity of nations. I want to make sure that Mr. Uraz's brother and family have full access to

all the protections incorporated in the American Justice System. Turkey's justice system is more advanced and progressive than the US system regarding the death penalty, but I can only imagine the life he would lead in a Turkish prison if he was convicted on the same charges. By way of further argument, he would be banished and exiled by his family because of the negative implications his actions would have on them.

Whereas I vociferously disagree with Judge Buchanan's characterization of me as it relates to the allegations in this matter, I represent that I respect her both as a judge and a person and fully understand why she made her ruling. I knew the Judge when she was still an attorney and she was a hell of an attorney, one of the best in the area. I believe it is more of an attestation to the unreliable and since debunked theories and misinformation posited to Judge Buchanan in a frantic effort to avoid the appearance of impropriety by an inexperienced and self-interested young lawyer. I appreciate the unwitting nature of the representations that were made to the Court about me and while it initially was difficult to swallow because of the horrific stigma associated with mental illness, I have since moved past this and wish everyone associated with that case the best.

This was an egregious aggravated stalking case where the Defendant tracked his victim and even showed up randomly at a Dave and Busters in Novi and interrupted a date she was on. He stalked her through the internet, and he stalked her in a multitude of other ways that was presented against him at the trial. The people thought it would be a three-day trial, but the trial stretched out nearly three weeks because of my associates and my diligence, preparation, and commitment to providing Mr. Uraz the best defense. While I was lead chair, Mr. Fernandez and Mr. Schroeder spent countless hours and time to perfect every element of the presentation of the case and participated in questions some of the witnesses strategically.

I have been through the Michigan Attorney Grievance Commission ("AGC") based on this incident and all incidents alleged regarding my mental health and treatment. I have testified in a Ginther hearing and been cross-examined by his appellate attorney regarding any potential underlying pathology that would have limited my ability to appropriately and zealously represent his interests at trial. Mr. Uraz had a bipolar son that lived in Turkey who was possibly going to the state because of his mother's severe bipolar disorder, and we ran numerous hearings, some evidentiary in nature featuring his sister who had traveled from Turkey, to attempt to get Mr. Uraz back to Turkey pending the outcome of the case given the exigent circumstances. Defendant's requests were all denied, likely because of the gravity and egregious nature of Mr. Uraz as to stalking and videotaped attempt to hire a hit man to "take out the trash". It should be noted that Mr. Uraz was talked out of testifying on his own behalf because his testimony was mainly going to be that by take out the trash, he meant the undercover officer posing as a hitman would take his neighbors trash out because she was elderly and he had always done that for her.

I listed about 40 witnesses at Mr. Uraz's direction, most of which were stricken as irrelevant or frivolous. I also filed I believe 3 motions, and one was a motion to change venue because of the relatively limited media coverage but Mr. Uraz insisted so his argument was preserved for appeal. An allegation of a Brady violation was also forwarded because the prosecutor failed to timely turn over witness statements from other inmates that were housed with the Mr. Uraz and his jail snitches in administrative segregation. Mr. Uraz was placed in administrative segregation because he violated probation on an earlier stalking case by stalking the victim again and also stalked her from the jail.

Now, Mr. Uraz disparages my name and likely has the full support of his brother who at the time of trial was the Turkish Ambassador to Russia and since then has been named the Turkish Representative to the Organization of Islamic Nations ("OIC"), which is similar to the North Atlantic

5

Treaty Organization ("NATO") in the middle east. Mr. Uraz is solely attempting to create an issue because the appeals court didn't rule in his favor on the Brady violation. This trial, because of the effective nature of the defense, caused the jail to change their policy regarding inmates having police reports in their possession because case jumping was exposed in its most basic form.

## Conclusion

Defendant, Jacob A. Perrone, hereby requests that this court either dismiss the matter in its entirely sua sponte as that appears appropriate or Stike the salacious, redundant, and unnecessary complaint that does nothing more than expose civilians to potential harm personal and professionally based on unfounded and attenuated allegations that lack any substance or relevance to any claims or defenses Mr. Uraz could make in the solicitation case or here in his case in chief. After striking the complaint allow Mr. Uraz 14 days to provide a more definite statement so Defendant can appropriately answer to the claims. Allowing this case to stand is a usurpation of the rights of many and invalidate the strictures and foundations of the criminal justice system in America. Mr. Uraz's brother is not bigger than the constitution and he is not bigger than the rule of law. I anticipate that his brother will pull any support for him after he is made aware of all his misgivings and continued behaviors that may negatively impact his brother's standing in the Turkish government and/or social circles. That, also a threat.

Have the Turkish Embassy call me. They have my number. Just don't send that last arrogant pretentious prick who called before. He knows I won't talk to him anyways. Do your time Tunc. Pay your debt to society, get out, and quit imposing your personal problems on innocent and unwitting others. I will be your last stalkee, if it is the last thing I accomplish in a career full of accolades and achievement. Your move Tunc. Choose wisely. And learn appropriate sentence structure if you're going to keep filing lawsuits against me.

I believe they have a law library at Thumb. Which is 1 level above the most minimum security

of prisons in Michigan.  I got people in Level V looking at me Tunc. Walk away. I defended you

vehemently because I assessed your character and found you to be somewhat pleasant at times and

conversant. My assessment of you was that you were not violent or dangerous. Misunderstood,

emotionally troubled, and frankly a large dose of self-entitled, yes. Frankly, you don't have it in you.

Don't play around with people who do. If they sent me to prison, I'd be a level 5, and I would spend

my time in administrative segregation because I don't play well with others trying to take advantage of

me and when placed in a box, I get uneasy. If what you want is an international issue, it won't happen.

You're not important enough.  Keep going down this road and you may learn of my importance, and

the Turkish government is the least of my concerns. They are all the way in Turkey.

And I could have answered with a simple motion to dismiss on legal grounds but in the

interest of the justice that I so painstakingly uphold, I leave the progression of this case to the

discretion of the Court.

> Respectfully submitted,
>
> **DRAGON LAWYERS PC ©**

Dated: September 26, 2025

> /s/ *Jacob A. Perrone*
> Jacob A. Perrone (P71915)
> Attorney for Defendant Jacob A. Perrone
> 325 East Grand River Ave., suite 250
> East Lansing, MI 48823
> (517) 719-4657
> jacob.perrone@yahoo.com

### PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served on September 26, 2025, via Mi-File and US Mail herein at their respective addresses as disclosed on the pleadings and to Tunc Uraz, Inmate No. 114653, at Thumb Correctional Facility, 3225 John Conley Dr., Lapeer, MI 48446.  I declare that the statements above are true to the best of my knowledge, information and belief.

> /s/ *Jacob A. Perrone*

7

MICHIGAN DEPARTMENT OF CORRECTIONS
**CONTRABAND REMOVAL RECORD**

CSJ-284
12/01
4835-3284

| Date:<br>**10/20/2025** | Time:<br>**1824** | Staff Member's Name:<br>**Brant** | | Badge Number:<br>**1183800** |
|---|---|---|---|---|
| Prisoner Name:<br>**Uraz** | Prisoner Number:<br>**114653** | | Lock:<br>**fb103** | Facility:<br>**TCF** |

Location Contraband Found: **Multipurpose room building 100**

| ITEM | DESCRIPTION AND REASON FOR CONFISCATION (Describe Fully): |
|---|---|
| 1 | **8 pages of legal mail: suspected to be soaked in unknown substance** |
| 2 | ############################################################################ |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| ☒ SECURED IN   OR   ☐ TURNED OVER TO: **MSP evidence locker 5** | Date: **10/20/2025** | Time: **1845** |
|---|---|---|
| FOR | | |
| ☐ HEARING      OR  ☒ INSPECTION | | |

| ☐ RETURNED TO PRISONER AFTER INSPECTION & WITHOUT ACTION TAKEN | Date: | Time: |
|---|---|---|

Prisoner - Print Name:
**Uraz, 114653**

Signature:

DISTRIBUTION:   ☐ File Copy      ☐ Attached to NOI/Misconduct Report      ☐ Prisoner      ☐ With Contraband




FB 03

DRAGON LAWYERS PC
325 EAST GRAND RIVER AVE SUITE 250
EAST LANSING, MI 48823

**********AUTO**MIXED ADC 130          PL2 T12 P1 S1189
TUNC URAZ INMATE NO. 114653
THUMB CORRECTIONAL FACILITY
3225 JOHN CONLEY DR
LAPEER MI 48446-2987

ailed_____
ed 10/10/25

RECEIVED
OCT 1 0 2025
TCF MAILROOM

Pre:
First C
US F
F
San Fre
Permi

A P P E N D I X   B

MOTION FOR RE-HEARING PURSUANT TO GINTHER, AND
TRIAL COURT'S RESPONSE



---

**You have received a _jpay_ letter, the fastest way to get mail**

---

From   : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/21/2022 12:38:12 PM EST,   Letter ID: 1550288572
Location : MCF
Housing : UNIT 4100B01

**RECEIVED**

**JUL 28 2022**

JUDGE CANADY
CIRCUIT COURT

Sent by: TUNC URAZ (114653)
Agency: Michigan Department of Corrections
Facility/Housing Unit: Muskegon Correctional Facility/UNIT 4100B01
Date: 07/21/2022 12:38:12

Please do not reply to this email

STATE OF MICHIGAN
INGHAM COUNTY 30th. JUDICIAL COURT, LANSING MICHIGAN.

TO :

HONORABLE JUDGE CANADY III
30th. CIRCUIT COURT
313 W. KALAMAZOO STREET
LANSING, MI 48933

FROM:
TUNC URAZ #114653
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DR.
MUSKEGON, MI 49442

CASE  #16-1064 FH - 16-1065 FC

Re: Mr. Perrone's "SECOND" MENTAL IMPAIRMENT  EPISODE IN THE MONTH OF NOVEMBER 2017. THIS
INFORMATION WAS NOT DISCLOSED BY MS. CRINO INGHAM COUNTY PROSECUTOR TO DEFENDANT'S
APPEAL ATTORNEY AND TO DEFENDANT FOR HIS GINTHER HEARING AND APPEAL PROCESS.

DEAR HONORABLE JUDGE  Canady III,

Based on

**"NEWLY DISCOVERED EVIDENCE"**

Mr. PERRONE WAS SENT TO A MENTAL HOSPITAL "SECOND" TIME PER  MCL 330.1401 STARTED  PRT
PROCEEDINGS  (person requiring treatment) and per Probate
Court orders. IN CLINTON COUNTY PROBATE COURT  AND LANSING POLICE DEPARTMENT REPORT DATED
11/20/2017

In Prosecution's files which MR. URAZ received very recently End of June 2022 (it was requested end of April 2022).

Mr. Uraz found out  Perrone's PRT (person requiring treatment) per MCL 330.1401 mental treatment request per
courts CLINTON county probate court (for his "SECOND" time episode of mental breakdown and hospital stay) with
in the same month of NOVEMBER 2017)

THESE HIDDEN/NOT SHARED/NOT DISCLOSED  DOCUMENTS CONSISTED OF :

1) Lansing Police Department  report about Mr. Perrone's SECOND mental breakdown on 11/20/2017 case#
175190653

2) "initial order after hearing on petition for mental treatment" Clinton county probate court filed on 12/06/2017  (need
all 20 pages faxed to courts) defendant only have pages #5 and #6.

---

**_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!**

**You have received a _jpay_ letter, the fastest way to get mail**

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/21/2022 12:38:12 PM EST,    Letter ID: 1550288572
Location : MCF
Housing : UNIT 4100B01

3) "petition for mental health treatment" form filled by police officer see item #4 observation of the person doing the following acts saying the following things:

" as I drove past Perrone, he yelled "fuck you Quincy" . Perrone said he is # 1 Defense attorney in the world, Perrone states he would kill a bunch of people"

BECAUSE UNTIL NOW THERE WAS ONLY ONE MENTAL IMPAIRMENT INCIDENT WITH MR. PERRONE AND WHOLE GINTHER HEARING WAS GIVEN BASED ON THAT INCIDENT (SEE ATTACHED HOSPITAL ADMISSION PAPERS DATED 11/14/2017)

and if you look at the dates he had second episode of mental breakdown and sent to mental hospital on 11/20/2017, right after he was released from his first mental hospital which he stayed on 11-14-2017- not sure when he was released assuming 5 days later. (see attached first mental hospital record)

THIS SECOND PERRONE INCIDENT ON 11/20/2017 WAS NOT SHARED WITH YOU ON 12/12/2017 JUDGE'S CHAMBERS MEETING AND ON 12/13/2017 HEARING WITH THE DEFENDANT ABOUT MR. PERRONE'S MENTAL IMPAIRMENT AT BOTH TIMES.

A PROSECUTOR'S ROLE AND RESPONSIBILITY IS TO SEEK JUSTICE AND NOT MERELY CONVICT. PEOPLE V DOBEK, 274 MICH APP 58, 63, 732 NW2d 546 (2007).

THE PROSECUTOR MAY REQUEST A RIGID ADHERENCE TO PROCEDURAL RULES THAN TAKING A STAND AGAINST THE MOST APPALLING ASSAULT UPON THE INTEGRITY AND REPUTATION OF ANY COURT-PERJURY.

PERJURY SHOWS A DEEP DISRESPECT TO THE COURT AND COMPLETE LACK OF CONCERN FOR THE OUTCOME TO THE DEFENDANT. THE LEGISLATURE TAKES FALSE STATEMENTS COMMITTED IN COURTS VERY SERIOUSLY.

PERJURY IN A CAPITAL CASE IS PUNISHABLE BY LIFE IN PRISON.

THE FAIR ASCERTAINMENT OF TRUTH;

WHAT IS EVEN MOST BOTHERSOME IN THIS CASE, IS THAT PROSECUTION WAS MADE AWARE OF MENTALLY INCAPACITATED ATTORNEY JACOB PERRONE BY 12/02/2017 PER MR. ROTH'S TESTIMONY ON 04/13/2017 GINTHER HEARING.

THIS "SECOND" MENTAL IMPAIRMENT OF MR. PERRONE WAS NOT BROUGHT UP AT THE JUDGE'S CHAMBERS MEETING ON 12/12/2017 AND ON 12/13/2017 TO DEFENDANT AS WELL.

PLEASE LOOK AT THE DATE ON THE LETTER (12/18/2017) SENT TO MY SENTENCING ATTORNEY DUANE SILVERTHORN BY PROSECUTOR THEN CHAS KOOP. 6 DAYS AFTER THE HEARINGS.

Defendant was deprived of his right to conflict-free counsel during a critical stage in the proceedings when his counsel (PERRONE) was placed in the UNTENABLE POSITION OF defending his own interests which were adverse to his client's.

see case precedent:

DOWNS V. COMMONWEALTH
2020 KY. LEXIS 222 (2020)
SUPREME COURT OF KENTUCKY
JULY, 9, 2020 RENDERED

**_jpay_ Tell your friends and family to visit www.jpay.com to write letters and send money!**

*You have received a* **jpay** *letter, the fastest way to get mail*

From : TUNC URAZ, ID: 114653
To : Information Services
Date : 7/21/2022 12:38:12 PM EST,    Letter ID: 1550288572
Location : MCF
Housing : UNIT 4100B01

THERE WERE NO ONE (A CONFLICT- FREE ATTORNEY) TO REPRESENT DEFENDANT'S INTEREST AT THE
12/12/2017 MEETING AT JUDGES CHAMBERS AND 12/13/2017 HEARING.

THESE CRUCIAL DOCUMENTS WAS KEPT HIDDEN BY PROSECUTION NOT TO REVEAL MR. PERRONE'S
SECOND MENTAL BREAKDOWN AND HOSPITAL STAY.

DEFENDANT AND HIS APPEAL ATTORNEY COULD HAVE USED THIS INFORMATION DURING MR. URAZ'S
GINTHER HEARING TO QUESTION HIM ABOUT SECOND INCIDENT AND AT HIS APPEAL PROCESS.

THIS COURT HAVE THE POWER TO AVOID THE GRAVE INJUSTICE OF AN INNOCENT MAN BEING IN
PRISON, WHILE HIS U.S. BORN SON IS SUFFERING FROM MAJOR DEPRESSION IN A ORPHANAGE IN
TURKEY.

RESPECTFULLY SUBMITTED

TUNC URAZ

ATTACHMENTS :

1) MR. PERRONE'S "FIRST" MENTAL HOSPITAL ADMISSION PAPERS DATED 11/14/2017

2) Lansing Police Department  Incident report about Mr. Perrone's "SECOND" mental breakdown on 11/20/2017
case# 175190653

3) "petition for mental health treatment" form filled by police officer on 11/20/2017 about Mr. PERRONE'S mental
impairment and comments that day.

4) "initial order after hearing on petition for mental treatment" Clinton county probate court filed on 12/06/2017  (need
all 20 pages faxed to courts) defendant only have pages #5 and #6.

5) Letter to MR. SILVERTHORN dated 12/18/2017 written by Mr. KOOP about Mr. PERRONE'S SECOND MENTAL
IMPAIRMENT.

**jpay** *Tell your friends and family to visit www.jpay.com to write letters and send money!*

# *Ingham County*
# *30th Judicial Circuit Court*

P.O. Box 40771
Lansing, MI 48901-7971
Telephone: 517 • 483 • 6500

**JOYCE DRAGANCHUK**
Chief Circuit Judge

**SHAUNA DUNNINGS**
Chief Circuit Judge *Pro Tempore* and
Chief Probate Judge

**LISA McCORMICK**
Presiding Judge Family Division



**GEORGE M. STRANDER**
Circuit Court Administrator

**JANICE M. DOOLEY**
Deputy Court Administrator /
General Trial Division

**SCOTT LEROY**
Deputy Court Administrator /
Juvenile Division

**HELEN WALKER**
Deputy Court Administrator /
Friend of the Court

August 4, 2022

Tunc Uraz #114653
c/o Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI  49442-6298

RE:   People of the State of Michigan v Tunc Uraz
        Case No.: 16-1064-FH   and   16-1065-FC

Dear Mr. Hooper:

I am in receipt of your correspondence which was received by my office on July 28, 2022.

Please take note that the information you have provided should be shared with your attorney. I am
returning your documentation at this time. Please consult with your attorney for further legal advice.

Sincerely,

Clinton Canady III

Clinton Canady III

CC/vr

Enclosures

from 200 to 360 months for each count of Solicitation of Murder and 36 to 90 months for the count of Aggravated Stalking. Uraz appealed his conviction and made a motion to remand for a *Ginther* hearing on the basis that Perrone provided ineffective assistance of counsel. Specifically, Uraz alleged that Perrone failed to impeach Allen and Close with their prior theft-related offenses and that Perrone's cross-examination and closing argument were inadequate.

### C. Uraz's *Ginther* Hearing and Subsequent Briefing

Due to the COVID-19 Pandemic, the availability of witnesses, and Uraz's request that he attend the hearing in-person, the Court conducted the *Ginther* hearing over two days. The first hearing was held in October 2021 and the next in April 2022. At the hearing, the Court heard from seven witnesses in total. Testimony was received from Perrone, Schroder, and Silverthorn, the three lawyers who represented Uraz. The Court also heard from Nicholas Fernandez and Andrew Vukovich, two individuals who worked at the same firm as Perrone. The prosecutors, Jonathan Roth and Charles Koop, also testified. Uraz testified last.

Perrone testified first. He flatly denied that his subsequent diagnosis and breakdown negatively affected his representation of Uraz in any way. Stating that if he had had an episode, it would have been clear as he would have been "unintelligible." Perrone stood by his trial strategy given the circumstances of the case. While he could not recall if he had known about the theft-related convictions of Allen and Close, he testified that he did considerable investigation into their criminal records. His investigation focused on the benefit that each individual was attempting to obtain by testifying against Uraz, including monitoring one of Closes's existing cases to determine whether Close received a benefit from his testimony. Perrone testified that prior to trial he encouraged Uraz to take a plea as the weight of the evidence weighed heavily against him, but that Uraz appeared

Page 7

out-of-touch with the reality of his circumstances and insisted on going to trial.

Perrone also testified regarding Uraz's specific claims that he was ineffective. Perrone stated any long breaks between his questions to Allen was because he had to consult with Uraz about what further issues Uraz wanted him to question the witness's about. Perrone stated that the prosecutor's remarks to the jury during closing arguments that Perrone had taken "three minutes between questions" and that his cross-examination "rambled on for hours" were exaggerations used to undermine his effectiveness in the eyes of the jury. Regarding the email he sent to Uraz's sister, Perrone testified that he was trying to be positive and that he believed he had done enough to get a not guilty verdict but admitted his claims were perhaps too "expansive" and that he embellished the number of hours a week he worked.

Finally, Perrone testified that he was hospitalized due to exhaustion following a trip to Dallas, which was cut short due to a family issue, and that his bipolar episode followed the hospitalization suddenly and without warning. Perrone believed these events following trial, combined with the natural exhaustion of going through a trial, led to his episode.

Next, Eric Schroder and Nicholas Fernandez testified; both had helped Perrone during trial. Schroder was the second chair attorney and Fernandez worked in an administrative capacity. Both testified that they believed Perrone was not negatively impacted during trial due to his mental state. Schroder testified that if he believed Perrone was unable to adequately represent Uraz, he would have reported it. Schroder testified that Perrone did not take too long between questions and that his cross-examination of Allen did not last for hours, stating that the prosecutor's statements otherwise were exaggerated. Fernandez testified that he knew Perrone since middle school and that Perrone's demeanor, such as raising his voice and being excitable, during trial were not out-of-character as Perrone is generally a

high-energy person.

The last person on Perrone's team to testify was Andrew Vukovich. Vukovich practically ended his job with Perrone before trial and maintained little communication with Perrone during the time of trial. Vukovich's role was also very limited for Perrone's felony cases, but he stated that he was not aware of Perrone having issues during trial.

Uraz's appointed attorney for sentencing, Silverthorn, testified as well. Because Silverthorn was not present during trial and was only appointed to handle Uraz's sentencing, he offered little testimony about Perrone's performance. Silverthorn stated that he first met Perrone after trial and observed that Perrone appeared to be agitated and had trouble focusing.

Both prosecutors, Charles Koop and Jonathan Roth, testified that they believed Perrone was not negatively affected by his condition, nor did he have a mental breakdown at any point during trial. Roth stated that he attended law school with Perrone and that they were in the same section during their first year. Roth stated he believed that Perrone's cross-examination went on for longer than it could have, but that he believed it was part of Perrone's trial strategy. Roth stated that by taking a significant amount of time to cross-examine a key witness, Perrone was hoping to dilute the witness's testimony by putting time between that testimony and the jury's deliberation. Finally, Roth stated that he believed it was not a good strategy to impeach a witness of minor, prior theft convictions when the jury already knew that the witness was in jail.

Uraz was the last person to testify. Uraz claimed that many of his family members have bipolar disorder which enabled him to be able to recognize the signs of a breakdown. Based on this knowledge, he believed Perrone was having an episode during his trial. Specifically, that Perrone made "subtle motions" indicative

Page 9

of bipolar disorder and that Perrone laughed and raised his voice at inappropriate times during trial. However, when asked why he did not raise any concerns about Perrone's condition during the numerous pretrial hearings, the trial, or any of the post-trial hearings, Uraz could only state that he did not believe it was appropriate at the time. He also could not provide a reason why, after his sentencing, he requested Perrone stay on as his attorney despite his later alleged belief knew Perrone was going through a mental breakdown. Following the hearing, the parties provided briefing on the issues.

### STANDARD OF REVIEW

Whether a defendant has been denied effective assistance of counsel is a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579 (2002). Meaning, the judge must first find the facts, and then, based on those facts, determine whether the defendant has been afforded effective assistance. *Id.*

### LAW & ANALYSIS

The Michigan and Federal constitutions guarantee a criminal defendant the effective assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI; *People v Pickens*, 446 Mich 298 (1994) (holding that the Michigan Constitution provides no greater protection for ineffective assistance than its federal counterpart). The ultimate question in an ineffective assistance claim is whether trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *People v Hunter*, 141 Mich App 225, 229-230 (1986).

Michigan has adopted the federal, two-prong *Strickland* test for proving ineffective assistance. *Pickens*, 446 Mich at 325 (citing *Strickland v Washington*, 466 US 668 (1984)). First, a defendant must show that his trial counsel's performance was objectively deficient. *People v Randolph*, 502 Mich 1, 9 (2018).

A P P E N D I X   C

MICHIGAN COURT OF APPEALS OPINION AND ORDER
SEE PAGE #9, FOOTNOTE #7



police conduct. This case is in accordance with *Johnson*, and no error requiring reversal is apparent.[6]

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel was ineffective in several respects. We disagree.

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews a trial court's factual findings for clear error and its conclusions of law de novo. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). To obtain relief on the basis of ineffective assistance of counsel, a defendant "must show that counsel's performance fell short of [an] . . . objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the . . . trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citation omitted). A defendant must overcome a strong presumption that counsel's actions were based on sound trial strategy. *Id.* at 388.

## A. COUNSEL'S ILLNESS

On remand, the court conducted an evidentiary hearing to address trial counsel's mental health to determine whether it deprived defendant of the effective assistance of counsel. Trial counsel testified that he was not sleeping well during and after the trial. He took a trip after defendant's trial was complete, but was required to return home early to address a family matter. After his return, trial counsel was hospitalized and treated for a mental health issue.[7] The prosecutors and second chair defense counsel did not notice or report that trial counsel suffered from a mental health issue during the trial. One of the prosecuting attorneys attended law school with trial counsel and had known him for many years. He did not observe any issues that arose during the trial. Although the jail inmates solicited to commit murder had theft-related convictions, trial counsel did not elicit this information, but focused on their motivation to lie. One

---

[6] Given the clear evidence that no entrapment occurred, defendant's argument about whether a defendant can claim entrapment and also assert innocence in a pretrial proceeding need not be reached.

[7] In his pro se supplemental brief filed after remand, defendant purportedly cites to the mental health records of trial counsel. There is no indication that those records were admitted at the *Ginther* hearing. It is unclear how defendant obtained the records and whether it was in compliance with the laws protecting the privacy of individual health information. We limit our evaluation of the mental health issue to the testimony elicited at the hearing. As a general rule, "[a]ppeals to the Court of Appeals are heard on the original record," MCR 7.210(A), and the parties may not expand the record on appeal, *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013).

Tunc Uraz #114653
Thumb Correctional Facility
3225 John Conley Drive
Lapeer, Michigan 48446

December 1st, 2025

Clerk of the Court
United States District Court
Eastern District of Michigan
Southern Division

Re: Tunc Uraz vs Fredeane Artis (Warden)
    Case No. 4:25-cv-10608
    Hon. Shalina D. Kumar
    Mag. David R. Grand

    Dear Clerk,

    Enclosed for filing please find one (1) copy of the following:

1.  Motion for Evidentiary Hearing
2.  Accompanied Exhibits
3.  Certificate of Service

    I ask that you file this in you usual manner and I thank you in advance for your time.


                              Respectfully      Submitted,


                              Tunc Uraz
                              Petitioner in Pro Se

                              Tunc Uraz



TUNC URAZ #114653
Thumb Correctional Facility
3225 John Conley Dr.
Lapeer, MI 48446
CASE#=25-cv=10608

RECEIVED
JAN 09 2026
CLERK
U.S. DISTRICT COURT
STMich/via Cდ/Wil

U.S. Dist ct. Easton Dist.
of MI. Office of the clerk
Theadare Levin U.S. ct Hse
231 W. Lafayette 5th floor
Detroit, MI 48226-2747

US POST
$0(
ZIP 484##
02 7N
0003033245DEC

FIRST